PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
  WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:     (916) 329-7400
Facsimile:     (916) 329-7435
Email:         ppascuzzi@ffwplaw.com
               jrios@ffwplaw.com
               tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     (415) 434-9100
Facsimile:     (415) 434-3947
Email:         okatz@sheppardmullin.com
               amartin@sheppardmullin.com

Proposed Attorneys for The Roman Catholic
Archbishop of San Francisco

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>        Debtor and<br>        Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**DEBTOR'S EMERGENCY MOTION FOR ORDER (1) AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES, AND EMPLOYEE EXPENSES; (2) TO PAY ACCRUED EMPLOYEE BENEFITS AND TAXES; AND (3) DIRECTING BANKS TO HONOR PAYROLL AND EXPENSE CHECKS**<br><br>Date:      August 24, 2023<br>Time:     1:30 p.m.<br>          Via ZoomGov<br><br>Judge:    Hon. Dennis Montali<br><br>*Hearing Requested on Shortened Time* |

Case: 23-30564   Doc# 7   Filed: 08/21/23   Entered: 08/21/23 14:14:57   Page 1 of 34

# **TABLE OF CONTENTS**

**Page**

I.      JURISDICTION .................................................................................................1

II.     RELIEF REQUESTED .....................................................................................2

III.    BACKGROUND ...............................................................................................3

IV.     PROCEDURAL POSITION OF THIS MOTION .............................................4

V.      FACTUAL BACKGROUND FOR RELIEF REQUESTED ............................4

        A.    Overview of Payroll and Employee Benefits ........................................4
        B.    Pre-petition Payroll ...............................................................................7
        C.    Other Non-Wage Employee Benefits .....................................................8
        D.    Medical Insurance Plan .........................................................................8
        E.    Vacation Pay Obligations .....................................................................11
        F.    Other Employee Benefits ......................................................................11
        G.    Retirement Benefit Plans ......................................................................12
        H.    Pre-petition Amounts Withheld from Employee Paychecks and Related
              Deductions and Payments .....................................................................14
        I.     Reimbursable Expenses .........................................................................15
        J.     Summary ................................................................................................16

VI.     LEGAL ANALYSIS .........................................................................................16

        A.    Immediate Payment of Withheld Amounts and Deductions that Are Not
              Property of the Estate Should Be Allowed ...........................................17
        B.    Immediate Payment of Pre-Petition Employee Wages, Compensation and
              Benefits is Necessary and Is Authorized by 11 U.S.C. §§ 363(b), 507(a) and
              105(a). ...................................................................................................17
        C.    The Payment of Pre-Petition Employee Wages, Compensation and Benefits
              Is Necessary Under Bankruptcy Rule 6003. ........................................22

VII.    RESERVATION OF RIGHTS ..........................................................................23

VIII.   NOTICE .............................................................................................................23

IX.     CONCLUSION ..................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*In re B & W Enters., Inc.*
    713 F.2d 534 (9th Cir. 1983) ............................................................... 21

*In re Barbeques Galore, Inc.*
    Case No. 08-16036 (Bankr. C.D. Cal. Aug. 20, 2008) ............................ 21

*Burchinol v. Cent. Wash. Bank (In re Adam's Apple, Inc.)*
    829 F.2d 1484 (9th Cir, 1987) ........................................................ 20, 21

*In re Columbia Gas Sys., Inc.*
    171 B.R. 189 (Bankr. D. Del. 1994) ..................................................... 20

*In re CoServ*
    273 B.R. 487 (Bankr. N.D. Tex. 2002) ................................................. 18

*In re Frontier Airlines Holdings, Inc.*
    Case No. 08-11298 (Bankr. S.D.N.Y. Apr. 14, 2008) ............................ 21

*In re Gottschalks Inc.*
    09-10157 (Bankr. D. Del. Feb. 10, 2009) .............................................. 21

*In re Gulf Air*
    112 B.R. 152 (Bankr. W.D. La. 1989) ................................................. 21

*In re Hansaben Investments, LLC*
    Case No. 22-30258 (Bankr. N.D. Cal. May 27, 2022 [ECF No. 26]) ...................................... 21

*In re Ionosphere Clubs, Inc.*
    98 B.R. 174 (Bankr. S.D.N.Y. 1989) .......................................... 19, 20, 21

*In re Just for Feet, Inc.*
    242 B.R. 821 (Bankr. D. Del. 1999) ..................................................... 21

*In re Norwich Roman Catholic Diocesan Corp.*
    Case No. 21-20687 (Bankr. D. Conn. July 22, 2021[ECF No. 61]) ...................................... 21

DEBTOR'S EMERGENCY MOTION TO PAY PREPETITION WAGES

*Nw. Engineering Co. v. U.S. Steel Workers*
    863 F.2d 1313 (7th Cir. 1988) ........................................................................... 20

*In re Penn Cent. Transp. Co.*
    467 F.2d 100 (3d Cir. 1972) ............................................................................. 20

*In re Roman Catholic Bishop of Stockton*
    Case No. 14-20371-C-11 (Bankr. E.D. Cal. Jan. 24, 2014 [ECF No. 66]) ........................... 21

*In re The Roman Catholic Bishop of Oakland*
    No. 23-40523 (Bankr. N.D. CA June 22, 2023) [ECF No. 164] ............................................. 21

*In re The Roman Catholic Bishop of Santa Rosa*
    No. 23-10113 (Bankr. N.D. CA May 4, 2023) [ECF No. 178] ............................................. 21

*In re W. Pipeline, Inc.*
    Case No. 09-21792 (Bankr. E.D. Cal. Apr. 6, 2009) ....................................................... 21

*In re ZF in Liquidation LLC fka Zacky Farms, LLC,*
    Case No. 12-37961-B-11 (Bankr. E.D. Cal. Nov. 5, 2012) ................................................. 21

Statutes

11 U.S.C. §§ 101, *et seq.* .............................................................................................. 1

11 U.S.C. § 105(a) .......................................................................................... 1, 17, 19

11 U.S.C. § 363(b) ............................................................................................... 1, 17

11 U.S.C. § 507(a) .......................................................................................... 1, 17, 19

11 U.S.C. § 507(a) ............................................................................................... 19

11 U.S.C. § 541(b)(7) ............................................................................................ 17

11 U.S.C. § 541(d) ................................................................................................ 17

11 U.S.C. § 1107 ................................................................................................. 17

11 U.S.C. § 1108 ................................................................................................. 17

11 U.S.C. § 1129(a) .............................................................................................. 19

28 U.S.C. § 157 .................................................................................................. 1

28 U.S.C. § 157(b) ............................................................................................... 1

28 U.S.C. § 1334 ................................................................................................. 1

Case: 23-30564   Doc# 7   Filed: 08/21/23   Entered: 08/21/23 14:14:57   Page 4 of 34

28 U.S.C. § 1408 ................................................................................................................ 1

28 U.S.C. § 1409 ................................................................................................................ 1

42 U.S.C. §§ 2000bb-2000bb-4 ...................................................................................... 23

Bankruptcy Code Chapter 11 ................................................................................... passim

Bankruptcy Code § 105(a) ......................................................................................... 19, 20

Bankruptcy Code § 363(b) ......................................................................................... 17, 19

Bankruptcy Code § 363(b)(1) .................................................................................... 17, 18

Bankruptcy Code § 364(d) .............................................................................................. 21

Bankruptcy Code § 365 .............................................................................................. 22, 23

Bankruptcy Code § 507(a) ......................................................................................... 18, 24

Bankruptcy Code § 507(a)(4) ....................................................................................... 2, 8

Bankruptcy Code § 507(a)(5) .................................................................................. 2, 8, 10

Bankruptcy Code § 1107 ............................................................................................. 4, 17

Bankruptcy Code § 1108 ............................................................................................. 4, 17

Bankruptcy Code § 1129(a)(9) ....................................................................................... 19

California Corporations Code §§ 10000-10015 ........................................................... 1, 23

Code of Canon Law ..................................................................................................... 1, 23

Religious Freedom Restoration Act of 1993 ............................................................... 1, 23

Other Authorities

Bankruptcy Rule 6003 .................................................................................................... 23

Constitution of the State of California ............................................................................ 23

Fed. R. Bankr. P. § 2002 ................................................................................................ 24

Fed. R. Bankr. P. § 6003 ................................................................................................ 22

Fed. R. Bankr. P. § 6003(b) ........................................................................................... 22

Fed. R. Bankr. P. § 6004(h) ........................................................................................... 23

Rule 9014-1(f)(4) ............................................................................................................. 1

United States Constitution First Amendment .............................................................. 1, 23

The Roman Catholic Archbishop of San Francisco ("RCASF" or "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), hereby moves the Court (the "Motion") for entry of an order, in substantially the form attached to the Motion as Exhibit 1, authorizing the Debtor to pay (1) prepetition wages, salaries and employee expenses, (2) accrued employee benefits and taxes, and (3) directing banks to honor payroll and expense reimbursement checks.  In support of this Motion, the Debtor relies upon the *Declaration of Joseph J. Passarello in Support of Petition and First Day Motions* ("Passarello Background Decl."), the *Declaration of Joseph J. Passarello* in support of this Motion ("Passarello Decl."), the *Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and First Day Motions* ("Gaspari Decl.") and all exhibits filed in support thereof.  In further support of this Motion, Debtor relies upon the following points and authorities:

I.

**JURISDICTION**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Rule 9014-1(f)(4) of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Local Rules").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are Bankruptcy Code[1] sections 363(b), 507(a) and 105(a).

2.      The RCASF does not, by filing its petition for relief and other documents in this Bankruptcy Case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon Law, the First Amendment of the United States Constitution, the Constitution for the State of California, California's law on corporations sole (California Corporations Code §§ 10000-10015), the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, California trust law, and the rights to object to disclosure of information and to contend that certain assets discussed in this Motion are not property of the estate.

---

[1] Unless otherwise indicated all section references in this Motion are to 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

**II.**

**RELIEF REQUESTED**

3.  By this Motion, the Debtor requests entry of an order that (i) authorizes, but does not direct, the Debtor to pay Employee Obligations, Employee Deductions and Employee Expenses (each as defined below), (ii) authorizes, but does not direct, the Debtor to continue its practices, programs and policies in effect as of the Petition Date with respect to all Employee Obligations (including allowing employees to use paid time off accrued, but unused, as of the Petition Date), Employee Deductions and Employee Expenses and (iii) authorizes and directs the bank at which the Debtor maintains an account from which the Debtor's payroll obligations are disbursed and all other banks or lending institutions maintaining payroll and employee benefits accounts to honor and pay all pre-petition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Employee Obligations, Employee Deductions and Employee Expenses. The Debtor also seeks authority to issue new post-petition checks or fund transfer requests with respect to pre-petition obligations that may have been dishonored by the banks relating to the Employee Obligations, Employee Deductions and Employee Expenses, if necessary.

4.  This Motion seeks authorization to pay only such amounts that are entitled to priority claim status up to $15,150 under the provisions of Bankruptcy Code sections 507(a)(4) and (a)(5). The RCASF believes that approval of this Motion is critical to the Debtor's operations, and that the amounts at issue are fairly de minimis in the context of the Bankruptcy Case.

5.  The RCASF has approximately 54 salaried employees, 37 hourly employees, and 32 Clergy and Religious Order payees and 14 stipend seminarians. The Debtor projects it will have approximately $100,000 in accrued and unpaid pre-petition payroll. The Debtor projects it will have approximately $750,000 in accrued and unpaid vacation pay entitled to priority that the Debtor intends to pay its employees in the future based upon their respective accruals as such time is taken. The Debtor further seeks authority to continue other employee benefits, which RCASF believes are current.

## III.

## __BACKGROUND__

6.     On August 21, 2023, the RCASF commenced its chapter 11 reorganization case.  The RCASF filed the Bankruptcy Case to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCASF and bring healing to survivors, parishioners and others affected by past acts of sexual abuse.  The RCASF requires the bankruptcy court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of the claims against it, including the claims by survivors of abuse, trade creditors and others, while continuing its ministries and the support it offers to Catholic parishes and communities. Additional detailed background information on the RCASF can be found in the Passarello Background Decl. and the Gaspari Decl.[2]

7.     In each diocesan bankruptcy where a plan of reorganization has been confirmed, the plan confirmed by the bankruptcy court was a pot plan negotiated through extensive mediation by and among the interested parties in the Bankruptcy Case, after exchanging information with statutory and/or other committees appointed by the Office of the United States Trustee (the "U.S. Trustee") in those cases, which mediations settled disputes over what constituted property of the bankruptcy estate and provided for a settlement of the claims of abuse survivors.  The RCASF intends to negotiate a pot plan of reorganization as early as possible which will:  (a) allocate the RCASF's remaining assets fairly among the legitimate competing interests for such property; (b) provide a process to fully, fairly and expeditiously liquidate claims of abuse survivors; and (c) permit the RCASF to carry on the RCASF's essential ministries and services so the RCASF can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCASF's ministry, education, and charitable outreach.

---

[2] Capitalized terms not otherwise defined in this Motion shall have the same meanings ascribed to them in the Passarello Background Decl., the Passarello Decl., and the Gaspari Decl.

# IV.

## PROCEDURAL POSITION OF THIS MOTION

8.    Pursuant to sections 1107 and 1108, the RCASF continues to operate its business and manage its property as a debtor in possession.  No trustee or examiner has been requested or appointed in the Bankruptcy Case.

# V.

## FACTUAL BACKGROUND FOR RELIEF REQUESTED

9.    As further discussed in the Passarello Background Decl., the RCASF provides certain administrative services and pooling arrangements for the various components of the RCASF, as well as for certain Non-Debtor Catholic Entities.  For example, the RCASF administers a coordinated payroll for the Parishes and the Parish Schools (the "Payroll Participating Entities"). The payroll for the employees of the Payroll Participating Entities is paid from funds provided by the Payroll Participating Entities and the cost of administering the coordinated payroll is paid for by the Payroll Participating Entities via a per check charge. Passarello Decl., at ¶4.  Additionally, the RCASF administers health insurance programs for itself, the Parishes, the Parish Schools, the High Schools, Seminary, the Cemeteries, and Vallombrosa Retreat (the "Health Insurance Participating Entities").  Certain "Services Agreements" made with the High Schools, the RPSC, the CASC, and the Seminary include provision for the RCASF to administer these benefits.  Passarello Decl., at ¶4.

### A.    Overview of Payroll and Employee Benefits

10.    In general, as described below, RCASF manages employee benefits such as payroll, health insurance and retirement, for the benefit of its employees and for the benefit of the Payroll Participating Entities and Heath Insurance Participating Entities, as applicable.  Unless otherwise specified, "Employees" as used herein refers only to the RCASF's employees.  Passarello Decl., at ¶5.

11.    The Employees of the RCASF include both lay employees (the "Lay Employees") as well as Clergy and Religious Orders (which includes the Archbishop).  As noted above, the RCASF has approximately 54 salaried employees, 37 hourly employees, 32 Clergy and Religious Order payees and 14 stipend seminarians.  In addition to the Lay Employees and Clergy and

Religious Orders, the RCASF also processes payroll for Payroll Participating Entities. The coordinated payroll for the RCASF includes approximately 3,500 employees for the Payroll Participating Entities. The Catholic Charities, Cemeteries, Benedict XVI, RPSC, and CASC administer their own payrolls funded by those entities under separate EINs. Passarello Decl., at ¶6.

12.    The RCASF administers the payroll for the Payroll Participating Entities through a coordinated payroll bank account (the "<u>Coordinated Account</u>") on a pass-through basis. The Payroll Participating Entities pre-fund this account in advance of each pay date in an amount sufficient to cover the payroll. RCASF maintains a separate account to fund payroll for its Employees and the payroll for the RCASF Employees is paid from the RCASF funds in its own account. Passarello Decl., at ¶7.

13.    The RCASF receives a fee from the Payroll Participating Entities in the amount of $10 per check to pay for the RCASF's costs of processing the coordinated payroll through the Coordinated Account. Passarello Decl., at ¶8.

14.    The Employees are essential to the Debtor's ability to preserve its existing ministries, provide administrative and other services to the Non-Debtor Catholic Entities, and reorganize successfully. The experience and knowledge of the Employees are critical to the Debtor's ongoing service. Passarello Decl., at ¶8.

15.    As a result of the commencement of the Bankruptcy Case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its pre-petition obligations to the Employees, including its obligations under various wage, salary, retirement, healthcare, and other benefit programs (collectively, the "<u>Employee Obligations</u>"). In addition, checks, wire transfers and direct deposit transfers issued in respect of the Employee Obligations will be dishonored.

16.    The RCASF adjusted its regular pay schedule in light of the bankruptcy filing so that payroll for all RCASF and Payroll Participating Entities Employees prior to the Petition Date was processed and paid on August 15, 2023, including the pay period from August 16, 2023 through August 31, 2023 for salaried Employees and August 9, 2023 through August 23, 2023 for the hourly Employees. Amounts for hourly Employees were estimated and recorded on timesheets received

on August 9, 2023. The RCASF and Payroll Participating Entities will resume their normal payroll calendar beginning with the September 15, 2023 payroll. The September 15, 2023 payroll may also include unreported pay for the period prior to August 23, 2023, due to the necessity of estimating hours. Passarello Decl., at ¶10.

17. While, as noted above, the Debtor adjusted its regular pay schedule in light of the bankruptcy filing for its Employees, it still processes payroll for some of the employees of the Payroll Participating Entities on the regular schedule. With the new school year starting in August 2023, the Schools will have approximately 100 new employees who are starting on or after August 8, 2023, which is the cutoff for the salaried payroll prepayment that was made on August 15, 2023. It was not practicable for the Debtor to process the pre-payment of these wages for the Payroll Participating Entities. Accordingly, there are two to three weeks of accrued wages and associated liabilities for the new Schools employees, covering the period from August 8, 2023 through August 31, 2023 that the Debtor intends to process in the ordinary course of business on August 31, 2023 from the Coordinated Payroll Account, which is funded by the Payroll Participating Entities. RCASF estimates that these payments will total approximately $200,000 for the 100 employees. As noted above these are not employees of the Debtor. Passarello Decl., at ¶11.

18. The Debtor's petition for relief under chapter 11 of the Bankruptcy Code could very likely cause the Employees to question their future with the Debtor. Commensurate with the mission of the RCASF to maximize the needs of those who rely on the RCASF's ministry, education, and charitable outreach, the Employees, especially the Clergy and Religious Orders, are paid modest salaries. The Debtor submits that if it fails to pay the pre-petition obligations and continue the employee benefits, its Employees will suffer significant hardship and may be unable to meet their personal living expenses. Such a result would obviously have a negative impact on employee morale and would likely result in unmanageable turnover and loss. The Debtor must demonstrate its ability to continue paying its Employees and providing those benefits that have been promised to them as a condition of their employment with the Debtor. Passarello Decl., at ¶12.

19. To maintain Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Employees would suffer if pre-petition Employee Obligations, Employee

Deductions (defined below) and Employee Expenses (defined below) are not paid or honored when due, the Debtor seeks to continue the regular payment of wages, salaries, and employment-related benefits and expenses as they come due in the ordinary course, including Employee Obligations, Employee Deductions and Employee Expenses that were incurred pre-petition but which come due for payment post-petition. The amounts requested are within the priority claim amounts set forth in the Bankruptcy Code. The Debtor believes the timely payment of Employee Obligations, Employee Deductions and Employee Expenses is necessary and desirable to the Debtor's successful reorganization and that such payments are in the best interests of creditors and the estate. Passarello Decl., at ¶13.

**B.      Pre-petition Payroll**

20.      The Debtor contracts with ADP to prepare the payroll for its Lay Employees and Priests as well as the Payroll Participating Entities. In the ordinary course of its business, the Debtor issues payroll checks on three different schedules. Non-exempt Employees are paid twice a month on the 15th and last day of each month, one week in arrears. Exempt Employees, other than the Clergy and Religious Orders, are paid twice a month on the 15th and last day of each month with wages paid current as of the payroll date. Clergy and Religious Orders are paid once a month on the last day of each month with wages paid current as of the payroll date. Some Employees, including the Clergy and Religious Orders may have pre-petition wages accrued as of the Petition Date. Passarello Decl., at ¶14.

21.      The RCASF does not generally issue payroll checks itself, as these are issued by ADP. Infrequently, the RCASF will issue manual or "live" payroll checks. For example, a manual check may be prepared and provided to individuals who are terminated, or to individuals whose information was not received in time for a processing cutoff for payroll processing. In addition, some Employees insist on a physical check, so those employees receive a "live" check each payday. The general practice of the RCASF is that ADP withdraws the amounts due 72 hours before each pay date, which is typically on the 15th and the last day of the month from the Coordinated Account. Hourly employees verify their time in ADP on the 8th and the 23rd of each month and are hence paid with a delay of seven days. Passarello Decl., at ¶15.

22.     It is vital to obtain authorization for the Debtor to pay any unpaid pre-petition payroll amounts to Employees and the employees of the Payroll Participating Entities with the post-petition amounts due on time and without delay.  None of the payments to any particular Employee exceed the amount entitled to priority of $15,150 per claim in Bankruptcy Code section 507(a)(4).  The payroll amounts for the Payroll Participating Entities should not be subject to the priority caps in the Bankruptcy Code, since the non-debtor entities are funding those amounts through the Coordinated Account and not the Debtor.  Passarello Decl., at ¶22.

23.     Because of the pre-paid payroll for the Debtor's Employees, the Debtor is not aware of any specific amounts that would be due for its Employees' prepetition payroll.   Therefore, the estimated unpaid pre-petition payroll expenses together with any applicable payroll withholding taxes to be disbursed post-petition for the Debtor's Employees is expected to be under $20,000.  The total projected accrued and unpaid pre-petition payroll expenses together with any applicable payroll withholding taxes to be disbursed post-petition for the employees of the Payroll Participating Entities is expected to be under $100,000.  Passarello Decl., at ¶17.

**C.     Other Non-Wage Employee Benefits**

24.     As described in detail below, the RCASF also provides other benefits to Lay Employees and the Clergy and Religious Orders, including health insurance, sick and vacation pay, personal-time-off, retirement benefits and other related benefits.  The RCASF requests authority to continue to pay all such benefits in the ordinary course of business, provided however, the RCASF is only seeking authority to pay combined wages or benefits payments to any particular Employee up to the amount entitled to priority of $15,150 per claim in Bankruptcy Code section 507(a)(5).  The projected accrued and unpaid pre-petition employee benefits other than payroll to be disbursed post-petition is further discussed below.  Passarello Decl., at ¶18.

**D.     Medical Insurance Plan**

25.     The RCASF administers a health plan ("Health Plan") for its Employees and the Employees of most of the Heath Insurance Participating Entities, as discussed below.  The Catholic Charities and Benedict XVI each administers its own health plans.  Passarello Decl., ¶19.

26. For health insurance, the RCASF is insured through The Reta Trust ("Reta"). Reta administers healthcare-related benefits to U.S. dioceses and Catholic organizations that are aligned with the teachings of the Roman Catholic Church. Reta manages contracts and provider networks with national health plans including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and EyeMed Vision Care. Passarello Decl., at ¶20.

27. Reta establishes the premium amounts to be billed to the RCASF in February or March each year for the next insurance year which runs July 1 through June 30. The RCASF typically has one month of premiums paid in advance to Reta. The RCASF establishes the amount of premiums billed monthly to each of the Heath Insurance Participating Entities based on the type of medical coverage selected, the premium billed by Reta, planned RCASF administrative costs and premium credits. Benefit Allocation Systems serves as an administrator for the Health Insurance by billing monthly the Health Insurance Participating Entities for the health benefits provided to their employees. *See, infra*, ¶28-29 (further discussion of costs allocated to the Health Insurance Participating Entities). Passarello Decl., at ¶21.

28. On or about the 21st day of the month for the upcoming month, Reta sends an invoice to the RCASF which includes the health insurance premiums for the RCASF and the Health Insurance Participating Entities. Approximately five to ten business days after the invoice is sent, the RCASF pays Reta the entire amount of the invoice in the approximate amount of $2.3 million (100%, including the other entities' portions) from the Accounts Payable Checking Account. On the first day of that upcoming month, the RCASF invoices the Health Insurance Participating Entities for its share of the premiums. On or about the 15th day of the month, the RCASF collects the amounts invoiced via ACH and the money is deposited into the Main Depository account. Passarello Decl., at ¶22.

29. Until recently, Reta issued quarterly premium credits to member organizations. Such credits, which are approved by its Board of Trustees, are a function of stronger than planned financial performance. The last such refund received by the RCASF was credited to RCASF's invoices by Reta over a six-month period from April 2022 – September 2022 in the amount of $571,800. When such credits are received by the RCASF, they are generally allocated among the

Heath Insurance Participating Entities over three years reducing premiums billed by BAS. Passarello Decl., at ¶23.

30. Approximately 1500 employees of the RCASF and the Heath Insurance Participating Entities participate in the Health Plan. There are 99 Priests, 35 seminarians and 1,367 other employees participating in the plan including employees from the Chancery, Cemetery, CASC, RPSC, Parishes and schools. Passarello Decl., at ¶24.

31. If the monthly health insurance premiums are not remitted to Reta for the services of Blue Shield, Kaiser, Delta and EyeMed Vision (collectively, "<u>Health Plan Administrators</u>"), the Health Plan Administrators and Reta may discontinue coverage and the RCASF, the Employees, the Heath Insurance Participating Entities, and their employees risk losing health insurance coverage. Passarello Decl., at ¶25.

32. Because the payments to the Health Plan Administrators on behalf of the RCASF Employees will be section 507(a)(5) priority claims, a failure to pay premiums may harm the creditors of the bankruptcy estate. In addition, the agreements with the Health Plan Administrators constitute executory contracts and any post-petition obligations under such contracts will have administrative priority until the contracts are ultimately rejected or will have to be paid in full if the RCASF seeks to assume those contracts

33. Additionally, all the reasons for avoiding Employee turmoil apply with equal or even greater force to continuing the Health Plan. Passarello Decl., at ¶26.

34. In addition to continuing the Health Plan with respect to the Employees, the RCASF also needs to continue to administer the health benefits and insurance programs for the Health Insurance Participating Entities pursuant to its duties under various the services agreements. Requiring the RCASF to change its current practices for its Employees, while continuing to administer the Heath Insurance Participating Entities health benefits and insurance programs under the current structure, would be unduly burdensome and disruptive to the RCASF's operations. Passarello Decl., at ¶27.

**E. Vacation Pay Obligations**

35.     The Debtor also seeks authority, but not direction, to permit Employees to use vacation time and other paid time off subject to the Bankruptcy Code priority limitations, whether accrued before or after the Petition Date, in accordance with the Debtor's pre-petition policies.

36.     **Vacation Time**.  Regular Employees accrue paid vacation time ("Vacation Time") based upon their position and the length of their employment.  While not subject to forfeiture, vacation benefits are subject to a maximum accumulation of two times the yearly accrual amount. Passarello Decl., at ¶28.

37.     **Personal-Time-Off**. Regular Employees are granted three days of personal time-off ("PTO") each July 1. This time-off is subject to forfeiture if not used by the following June 30, However, if the Employee terminates before, June 30, the unused balance is payable to the employee.  Passarello Decl., at ¶29.

38.     The Debtor seeks authority, but not direction, to allow Employees to utilize accrued unused Vacation Time and Personal-Time-Off in the ordinary course of business as well as to pay an Employee for accrued unused vacation and PTO upon termination at his/her final rate of pay, subject to the statutory cap of $15,150 (including any other pre-petition wages) per Employee for any such vacation accrued pre-petition.  As of the Petition Date, the Debtor estimates that it owes approximately $900,000 in total unused vacation pay and PTO, of which Debtor estimates approximately $750,000 is potentially entitled to priority.  Passarello Decl., at ¶30.

39.     **Holidays**.  Regular full-time or part-time (working at least 20 hours a week) Employees receive nineteen paid holidays a year including the week between Christmas and New Year's day. Passarello Decl., at ¶31.

**F. Other Employee Benefits**

40.     As part of the Debtor's Employee Obligations, the Debtor also has established a variety of benefit plans and programs (the "Employee Benefits") designed to assist its Employees and its Employees' eligible dependents in meeting certain financial burdens, including those that arise from illness, disability and death.  The Debtor believes that all amounts and obligations related to Employee Benefits that were owed prior to the Petition Date have been paid in full except as

noted herein. However, out of an abundance of caution, the Debtor seeks authorization, but not direction, to pay or otherwise honor these Employee Benefits. Passarello Decl., at ¶32.

41. As described above, the RCASF maintains a Health Plan for full-time Employees who meet the applicable pre-enrollment eligibility requirements. Employee contributions are made on a pre-tax basis for Health Plan coverage. The Debtor requests authority to pay any pre-petition costs related to the Health Plan in the ordinary course of business. Passarello Decl., at ¶33.

42. **Continuation of Benefits**. The Debtor seeks to provide continuation of benefits ("COB") to former Employees and former employees of the Heath Insurance Participating Entities. The Debtor contracts with Reta to administer the COB. Former Employees and former Health Insurance Participating Entities' Employees enrolling in COB pay a premium directly to COBRA. COBRA pays these premiums to the Health Plan for the continued health coverage of these former Employees and former Non-RCASF Entity Employees after deducting an administrative fee. The Health Plan claims of the former Employees and former employees of the Heath Insurance Participating Entities are paid in the ordinary course of business including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and EyeMed Vision Care. The Debtor requests authority to pay any pre-petition costs related to COB benefits in the ordinary course of business. Passarello Decl., at ¶34.

43. **Life Insurance**. The RCASF provides life insurance and the provider is Reliance Standard Life Insurance Company ("Reliance") for the benefit of the RCASF and its components, the Parishes, the Parish Schools, CASC, RPSC and the Seminary. Reliance sends the RCASF an invoice on or about the 21st of each month for the following month's premium due. RCASF pays the invoice approximately 5 business days later from the Accounts Payable Checking account and is reimbursed by participating entities. Passarello Decl., at ¶35.

**G.      Retirement Benefit Plans**

44. All Employees who work more than 20 hours per week are eligible to contribute to a 403(b) plan ("403(b) Plan"). Contributions to the 403(b) Plan are made by Employees only, with no employer match by the RCASF. The 403(b) Plan is administered by Fidelity NetBenefits. Passarello Decl., at ¶36.

12

Case: 23-30564    Doc# 7    Filed: 08/21/23    Entered: 08/21/23 14:14:57    Page 17 of 34

Case No. 23-30564
DEBTOR'S EMERGENCY MOTION TO PAY PREPETITION WAGES

45.     Employers withhold 403(b) plan contributions from employees' paychecks based on each employee's election. Within three days following a pay date, funds are transferred to Fidelity NetBenefits on behalf of each employee.  Funds for RCASF employees are paid from the Chancery Payroll Account and funds for non-chancery employees are paid from the Coordinated Payroll Account or their respective employers.  Passarello Decl., at ¶37.

46.     The Debtor does not believe that unremitted 403(b) Plan contributions are property of the Debtor's bankruptcy estate.  The RCASF estimates that there will be approximately one pay period worth of deducted but unremitted 403(b) Plan contributions as of the Petition Date and requests the authority to pay such amounts to the 403(b) Plan administrator.  Passarello Decl., at ¶38.

47.     The Debtor also maintains a Lay Supplemental Employee Retirement Plan covering seven participants:  three active employees, three retired employees, and one beneficiary.  The plan assets are held at US Bank totaling approximately $230,000. Passarello Decl., at ¶39.

48.     The RCASF maintains two retirement accounts for Priests: the Priests Qualified Retirement Plan and the Priests Supplemental Retirement Plan. Passarello Decl., at ¶40.

49.     The Priests Qualified Retirement Plan is a defined benefit plan available only to incardinated priests.  The Priest participants receive a fixed monthly pension payment based on years of service and a vesting schedule. The Priests are fully vested after 25 years.  Funds are in an independent trust with U.S. Bank as trustee.  As of June 30, 2022 this plan had a benefit security value to market value ratio of 114%.  Passarello Decl., at ¶41.

50.     The Priest's Supplemental Retirement Plan pays certain benefits including housing and medical costs to retired incardinated priests based on need.  The Priest Retirement Board in consultation with the Vicar of Clergy Office makes a recommendation to the Archbishop for coverable categories of priest expenses. The Plan is funded by a combination of AAA proceeds, donor-restricted contributions, special collections, contribution by parishes of nine percent of priests' salaries, and restricted proceeds from a priest retirement lunch fundraising event.  Restricted funds are held in BofA #7083 (Restricted Checking Account).  Unrestricted accounts are held in the BofA Securities Account #9371 and in the Investment Pool.  Passarello Decl., at ¶42.

51.     Employees who have worked for RCASF for a year or more are eligible to participate in the RCASF Parochial Pension Plan, a defined benefit cash balance pension plan.  RCASF and certain non-diocesan entities (parishes, schools, seminary, cemeteries, CASC and RPSC) contribute nine percent of qualified annual earnings for each employee.  Contributions are held by an independent corporate trustee and, according to the plan documents, are "inaccessible to creditors of the Archdiocese."  Balances vest over a seven-year period and paid to employees upon retirement. U.S. Bank serves as the trustee.  Passarello Decl., at ¶43.

52.     The Debtor believes that maintaining the above-described retirement plans (collectively, the "Retirement Plans") described above is critical to maintaining Employee morale. Accordingly, the Debtor seeks authority to continue in its discretion the Retirement Plans, and to pay administrative and other related expenses to maintain the Retirement Plans.  Passarello Decl., at ¶44.

## H.     Pre-petition Amounts Withheld from Employee Paychecks and Related Deductions and Payments

53.     The RCASF withholds from Employees' paychecks through its payroll provider, ADP, Inc. (who also remits funds to the appropriate taxing authority):  (i) payroll taxes, (ii) the Employee's portion of FICA and disability taxes; (iii) Employee deductions for (a) disability-related benefits, (b) flexible spending accounts; (iii) Employee contributions to the 403(b) Plan; (iv) legally ordered deductions such as wage garnishments, child support and tax levies; and (v) miscellaneous other items (collectively, the "Employee Deductions").  The RCASF forwards withheld amounts to the appropriate third-party recipients.  Employee deductions for their portion of the monthly health benefits are retained by the RCASF and the non-debtors.  The Debtor does not believe that any funds deducted from Employee paychecks for Employee Deductions are property of the RCASF's bankruptcy estate.  The Debtor seeks authority to forward to the appropriate parties any Employee Deductions not forwarded due to the commencement of this Bankruptcy Case.  Passarello Decl., at ¶45.

## I.  Reimbursable Expenses

54.  In the ordinary course of its business, eligible Employees may submit certain business-related expenses to the RCASF for reimbursement.  By this Motion, the Debtor seeks authority to pay all prepetition Employee Expenses accrued and unpaid as of the Petition Date and to continue such practices on a postpetition basis in the ordinary course of business.  Passarello Decl., at ¶46.

55.  The Debtor routinely reimburses its Employees for certain eligible expenses, including, but not limited to, travel, lodging, ground transportation and rental cars, meals, hotel accommodations, parking and other travel expenses and business-related costs (collectively, "Employee Expenses").  The Debtor has issued corporate credit cards (the "Corporate Credit Cards"), through Wells Fargo Bank, N.A., to certain Employees to pay for these Employee Expenses.[3]  Employees may also incur out-of-pocket Employee Expenses and seek reimbursement from the Debtor for their Employee Expenses.  Generally, an Employee requesting reimbursement must submit a reimbursement request via email to the Accounts Payable department.  All claimed Employee Expenses (whether charged to the Corporate Credit Cards or out-of-pocket), are subject to a review and approval process.  Passarello Decl., at ¶47.

56.  As of the Petition Date, the Debtor does not anticipate owing any Employee Expenses incurred prior to the Petition Date but estimates that some limited reimbursable Employee Expenses may be accrued and outstanding as of the Petition Date all of which will likely become due and owing before the Court rules on this Motion on a final basis.  Thus, the Debtor seeks authority, but not direction, to pay Employee Expenses as they are identified, and to continue to pay them post-petition in the ordinary course of business.  Passarello Decl., at ¶48.  The Debtor will report any pre-petition amounts paid to the U.S. Trustee's office, upon request.

---

[3] The Debtor is separately seeking to continue to maintain the Corporate Credit Card program and to pay prepetition amounts owing related to the Corporate Credit Cards pursuant to the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance with Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and (5) Scheduling a Final Hearing*, filed contemporaneously herewith.

**J.     Summary**

57.     The Debtor submits that the amounts to be paid pursuant to this Motion are de minimis in light of the importance and necessity of preserving the Employees' services and morale and the difficulties and losses the Debtor and its estate will suffer if Employees leave in significant numbers.  Further, many of these obligations are not immediate, such as accrued paid leave benefits, but rather will be satisfied over an extended period of time.  The Debtor also submits that there is ample justification for its belief that even the slightest delay in providing this relief to its Employees will hamper its operations and damage its estate and, as a consequence, the Debtor is anxious to reassure the Employees.

58.     The Debtor has filed a motion contemporaneously herewith asking the Court to authorize it to continue using its pre-petition bank accounts post-petition.  The banks where those accounts are located should be ordered to honor the payroll and expense checks drawn on those accounts as such checks are presented for payment.

59.     The Debtor further seeks authority to pay any local, state, and federal withholding and payroll-related taxes relating to pre-petition periods and post-petition periods relating to the Debtor's Employees.  The Debtor is current on all such taxes due through the Petition Date.

## VI.

## LEGAL ANALYSIS

60.     As a result of the commencement of the Bankruptcy Case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its pre-petition obligations regarding Employee Obligations, Employee Deductions and Employee Expenses, and the checks and direct deposit transfers issued in respect of the Employee Obligations, Employee Deductions and Employee Expenses will be dishonored.  Any delay in payment of the Employees' wages and salaries will be detrimental to the Debtor's relationship with its Employees and its ability to maintain a stable workforce.  The Debtor faces the possibility that its ability to continue providing the services it provides, servicing the Services Agreements and carrying on its ministry and mission would be significantly impaired if its Employees do not report for work or choose to look for alternative employment.  At this early stage in the Bankruptcy Case,

the Debtor cannot risk any disruption in its ministry to the faithful and providing support services, including those ministering to the poor, hungry, and homeless caused by its inability to maintain a stable work force. The amounts requested in this Motion are reasonable and necessary when viewed in the context of the number of Employees, the importance of preserving Employee services and morale, and the harm to the Debtor, the creditors, and the estate if these amounts are not paid. To maintain Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Employees would suffer if pre-petition Employee-related obligations are not paid or honored when due, the Debtor seeks authority to honor in its discretion such obligations.

**A.    Immediate Payment of Withheld Amounts and Deductions that Are Not Property of the Estate Should Be Allowed.**

61.    Section 541(b)(7) of the Bankruptcy Code excludes from property of the estate money withheld from an employee's wages for contributions employee benefit plans, such as a 403(b) plan or health insurance plan. 11 U.S.C. § 541(b)(7). Section 541(d) of the Bankruptcy Code excludes "[p]roperty in which the debtor holds, as of the commencement of the Bankruptcy Case, only legal title and not an equitable interest." 11 U.S.C. § 541(d). Deductions such as legally ordered wage garnishments, child support payments and Employee pension plan contributions as well as money withheld by the Debtor from Employees' paychecks on account of various federal, state and local income, FICA, Medicare and other taxes (collectively, "Withholdings") fall within sections 541(b)(7) or 541(d) and do not constitute property of the estate. To avoid disruption to the Debtor's business operations, and the interest charges that could result from the nonpayment of the Withholdings, the Court should permit the Withholdings to be paid to the appropriate third parties.

**B.    Immediate Payment of Pre-Petition Employee Wages, Compensation and Benefits is Necessary and Is Authorized by 11 U.S.C. §§ 363(b), 507(a) and 105(a).**

62.    Courts routinely recognize the justifications set forth above for allowing a debtor to pay pre-petition wages, compensation, and benefits. The Debtor has the right to adopt reasonable employment policies pursuant to sections 1107 and 1108 of the Bankruptcy Code and may use property of the estate to continue its operations under section 363(b). *See* 11 U.S.C. §§ 1107, 1108, and 363(b). Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and

Case: 23-30564   Doc# 7   Filed: 08/21/23   Entered: 08/21/23 14:14:57   Page 22 of 34

a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(1). Section 363(c)(1) allows the Debtor to use property of the estate in the ordinary course of business without court approval. Furthermore, courts recognize that a debtor-in-possession has a fiduciary duty to, among other things, protect and preserve the bankruptcy estate. *See In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

63. In addition, section 507(a) of the Bankruptcy Code provides a list of priorities in distribution of the estate of the Debtor. The fourth and fifth priorities are for the wages and benefits of employees of the debtor, respectively, up to $15,150, for unpaid wages and benefits earned within 180 days before the Petition Date; the eighth priority relates to employment taxes. These priority claims are paid in full before the general unsecured creditors of the estate receive a dividend.

(a) The following expenses and claims have priority in the following order:

(4) Fourth, allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –

(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

. . .

(5) Fifth, allowed unsecured claims for contributions to an employee benefit plan –

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of –

(i) the number of employees covered by each such plan multiplied by $15,150; less

(ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan. . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for –

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

Case: 23-30564   Doc# 7   Filed: 08/21/23   Entered: 08/21/23 14:14:57   Page 23 of 34

(D)    an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the debtor before the date of filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

64.    Furthermore, section 105(a) of the Bankruptcy Code grants courts broad authority to carry out and enforce the provisions of the Bankruptcy Code using equitable doctrines.

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

65.    The Debtor believes it is advisable, prudent, and necessary under the circumstances described above to pay the pre-petition wages, compensation and benefits due to its Employees as proposed. Priority payment to employees is authorized under section 507(a) and the requested relief merely affects the timing of such payment. *See* 11 U.S.C. § 507(a). The wages, salaries, commissions, sick leave, and other Employee benefits that the Debtor seeks to pay or otherwise honor generally constitute priority claims under the Bankruptcy Code to the extent of $15,150 per Employee. Because a significant portion of the wages, salaries, commissions, sick leave and other Employee benefits that the Debtor seeks to pay or otherwise honor likely constitute priority claims pursuant to section 507(a), which must be paid in full pursuant to section 1129(a)(9) of the Bankruptcy Code in order to confirm a plan of reorganization, such priority claims will be paid either now or in the near future. *See* 11 U.S.C. §§ 507(a) and 1129(a). Making such payments now will not only prevent disruption of the Debtor's ministry and services to the community a s well as personal harm to Employees, but also will reduce the administrative burden that otherwise would be imposed in the Bankruptcy Case.[4]

66.    Furthermore, authorizing payment of such pre-petition employment expenses is an appropriate exercise of the court's discretion under sections 363(b) and 105(a). *See In re Ionosphere*

---

[4] The Debtor will not pay any pre-petition wage or other claims in excess of the statutory cap.

*Clubs, Inc.,* 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989); *see also Nw. Engineering Co. v. U.S. Steel Workers*, 863 F.2d 1313, 1315 (7th Cir. 1988) ("If employees were treated in all respects as unsecured creditors, they would be inclined to desert a leaky ship, speeding up the firm's collapse. . ."). Pursuant to Bankruptcy Code section 105(a), courts have invoked the "necessity of payment" doctrine[5] to authorize the immediate payment of a debtor's pre-petition obligations to unsecured creditors before plan confirmation when such payment is essential to the continued operation of the debtor in a chapter 11 reorganization. *See In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (to justify payment of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 and n.1 (3d Cir. 1972) (pre-Code case recognizing "necessity of payment" cases permitting immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid).

67. The Ninth Circuit has recognized the "necessity of payment" doctrine. In *Burchinol v. Cent. Wash. Bank (In re Adam's Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir, 1987), the Ninth Circuit discussed the existence of two competing "fundamental tenets" of bankruptcy: (1) equality in the treatment of all creditors; and (2) the rehabilitation of debtor. The court stated that the rehabilitation of a debtor "may supersede the policy of equal treatment" of creditors, and went on to describe such situations, specifically mentioning the payment of pre-petition wages and benefits to employees. *Id.* ("Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.").[6] Furthermore, the court went on to

---

[5] Alternatively called the "necessity of payment" rule.

[6] *See also In re Ionosphere Clubs, Inc.*, *supra*, at 176 ("The policy of equality among creditors… may be of significance in liquidation cases under Chapter 7, however, the paramount policy and goal of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor.").

state that section 364(d), for example, "illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation." *Id.*

68. In its discussion, the *Adam's Apple* court did not mention an earlier Ninth Circuit case, *In re B & W Enters., Inc.*, 713 F.2d 534 (9th Cir. 1983), which questioned whether the "necessity of payment" doctrine survived the 1978 changes to the Bankruptcy Code, and stated that, if it did, the court would apply the doctrine only to railroad cases "absent compelling reasons." *Id.* at 537. Ultimately, the court in that case declined to apply the doctrine because the appellants had not presented "sufficient justification" for extending the doctrine to the (non-railroad) debtor. *Id.* Numerous courts throughout the country have held that the doctrine did survive the 1978 Bankruptcy Code changes and can apply to non-railroad debtors. *See In re Ionosphere Clubs, Inc., supra*, at 175-176; *In re Just for Feet, Inc.*, 242 B.R. 821 (Bankr. D. Del. 1999); *In re Gulf Air*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (finding that payment of pre-petition wage and benefit obligations was in the best interest of creditors and necessary for the successful reorganization of the debtor, the court granted the debtor's motion to pay pre-petition employee related expenses). Moreover, the *Adam's Apple* court in its discussion did not limit the doctrine to railroad cases only.

69. In numerous other recent chapter 11 cases, bankruptcy courts have approved payment of pre-petition claims for wages, compensation, benefits and expenses pursuant to section 105(a) in this and in other districts. *See In re The Roman Catholic Bishop of Santa Rosa*, No. 23-10113 (Bankr. N.D. CA May 4, 2023) [ECF No. 178]; *In re The Roman Catholic Bishop of Oakland*, No. 23-40523 (Bankr. N.D. CA June 22, 2023) [ECF No. 164]; *In re Roman Catholic Bishop of Stockton*, Case No. 14-20371-C-11 (Bankr. E.D. Cal. Jan. 24, 2014 [ECF No. 66]); *In re Hansaben Investments, LLC*, Case No. 22-30258 (Bankr. N.D. Cal. May 27, 2022 [ECF No. 26]); *In re Norwich Roman Catholic Diocesan Corp.,* Case No. 21-20687 (Bankr. D. Conn. July 22, 2021[ECF No. 61]); *In re ZF in Liquidation LLC fka Zacky Farms, LLC*, Case No. 12-37961-B-11 (Bankr. E.D. Cal. Nov. 5, 2012); *In re W. Pipeline, Inc.*, Case No. 09-21792 (Bankr. E.D. Cal. Apr. 6, 2009); *In re Barbeques Galore, Inc.*, Case No. 08-16036 (Bankr. C.D. Cal. Aug. 20, 2008); *In re Gottschalks Inc.*, 09-10157 (Bankr. D. Del. Feb. 10, 2009); *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (Bankr. S.D.N.Y. Apr. 14, 2008).

70. With respect to the accrued and unpaid Employee Obligations, Employee Deductions and Employee Expenses, the Debtor requests that, to the extent practicable, the applicable banks be directed to honor checks or fund transfer requests regardless of whether they were issued prior to or after the Petition Date. The Debtor has or will have on deposit sufficient funds to satisfy all the Employee Obligations, Employee Deductions and Employee Expenses so that the bank will not be prejudiced by an order directing it to honor the Debtor's checks or fund transfer requests with respect to such amounts.

71. Finally, authorization of the payment of the pre-petition Employee Obligations shall not be deemed to constitute post-petition assumption or adoption of any policy, plan, program, or employee agreement pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserving all of its rights under the Bankruptcy Code with respect thereto.

72. The Debtor seeks to avail itself of the protection and flexibility provided by the bankruptcy laws to reorganize and address the financial crisis that has befallen the Debtor. Wherefore, the Debtor seeks this Court's permission to honor its pre-petition obligations to its Employees in order to prevent employee defection and harm to the Debtor's business, and to implement a seamless transition into chapter 11.

**C.     The Payment of Pre-Petition Employee Wages, Compensation and Benefits Is Necessary Under Bankruptcy Rule 6003.**

73. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, the Court may issue an order within the first 21 days of a chapter 11 case granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003(b). As described above, the Debtor's Employees are integral to the Debtor's operations. Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first 21 days of this Bankruptcy Case will jeopardize their loyalty and trust, causing Employees to leave the Debtor's employ and severely disrupting the Debtor's operations at this critical juncture, as well as harming the Debtor's going concern value. Moreover, the

Employees rely on their compensation, benefits and reimbursement of expenses to pay their living expenses and the effect could be financially ruinous if the Debtor cannot pay them in the ordinary course of business. Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of its Employee Obligations.

74. To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Motion, the Debtor requests that such stay be waived.

## VII.

## **RESERVATION OF RIGHTS**

75. Nothing contained in this Motion is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought in this Motion, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

76. Nothing contained in this Motion is intended to be or shall be construed as a waiver of any of the Debtor's rights under any applicable law, including, without limitation, the Code of Canon Law, the First Amendment of the United States Constitution, the Constitution of the State of California, California Corporations Code §§ 10000-10015, the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb-2000bb-4), the church autonomy doctrine, charitable trust law, California trust law, and the Debtor's rights under any insurance policies and to proceeds thereof, and to object to disclosure of information and contend that certain assets discussed in this Motion are not property of the estate.

## VIII.

## **NOTICE**

77. Notice of this Motion will be provided to (i) the Office of the U.S. Trustee for Region 17; (ii) the Debtor's 20 largest unsecured creditors; (iii) the Office of the California Attorney General; (iv) special litigation and ordinary course counsel for the RCASF; and (v) those persons

who have formally appeared in this Bankruptcy Case and requested service pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is required.

**IX.**

**CONCLUSION**

78. The RCASF does not seek to liquidate its operations. The Debtor seeks to avail itself of the protection and flexibility provided by the bankruptcy laws to reorganize and address the financial and abuse crises that have befallen the RCASF. In order to keep ministering to the faithful and providing support services to those ministering to the poor, hungry, and homeless, the RCASF must retain its current workforce. The RCASF seeks this Court's permission to honor its pre-petition obligations to its Employees in order to prevent employee defection and to implement a seamless transition into chapter 11.

WHEREFORE, the Debtor respectfully requests entry of an order:

1. Authorizing, but not directing, the Debtor to pay or otherwise honor all Employee Obligations, Employee Deductions and Employee Expenses that have accrued by virtue of the services rendered by its Employees prior to the Petition Date up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code, including pre-petition payroll obligations; the Employee Obligations, Employee Deductions and Employee Expenses that the Debtor requests authorization to pay are described in the Motion and include, without limitation, the following: wages, salary, retirement, healthcare and other benefit programs up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code;

2. Authorizing, but not directing, the Debtor to continue post-petition the employee benefit plans and programs in effect prior to the Petition Date, and to pay all sums due (including accrued pre-petition payment obligations) in the ordinary course;

3. Permitting the Debtor to continue payment of all local, state, and federal withholding and payroll taxes (including those accrued for pre-petition periods) or have such taxes paid by third party payroll administrators;

4. Directing its banks to honor all pre-petition payroll and employee expense checks;

5.    Authorizing the Debtor to continue to administer the insurance programs and Health Plan pursuant to the Services Agreements, policies, and practices; and

6.    For such other and further relief as the Court deems just and proper.

Dated:  August 21, 2023

FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP

By    _____
      */s/ Paul J. Pascuzzi*
      PAUL J. PASCUZZI
      JASON E. RIOS
      THOMAS R. PHINNEY
      Proposed Attorneys for The Roman Catholic
      Archbishop of San Francisco

Dated:  August 21, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
      */s/ Ori Katz*
      ORI KATZ
      ALAN H. MARTIN
      Proposed Attorneys for The Roman Catholic
      Archbishop of San Francisco

**Exhibit 1**

**(Proposed Interim Order)**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>        Debtor and<br>        Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**[PROPOSED] INTERIM ORDER GRANTING DEBTOR'S EMERGENCY/FIRST DAY MOTION FOR ORDER (1) AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES, AND EMPLOYEE EXPENSES; (2) TO PAY ACCRUED EMPLOYEE BENEFITS AND TAXES; AND (3) DIRECTING BANKS TO HONOR PAYROLL AND EXPENSE CHECKS**<br><br>Date:     August 24, 2023<br>Time:    1:30 p.m.<br>          Via ZoomGov<br><br>Judge:   Hon. Dennis Montali<br><br>*Hearing Requested on Shortened Time* |

The Emergency/First Day motion of The Roman Catholic Archbishop of San Francisco ("Debtor"), *for Order (1) Authorizing Payment of Prepetition Wages, Salaries and Employee Expenses; (2) to Pay Accrued Employee Benefits and Taxes; and (3) Directing Banks to Honor Payroll and Expense Checks* filed on August 21, 2023, as ECF No. ___ (the "Motion") came on for hearing on an interim basis on August 24, 2023, at 1:30 p.m., of the United States Bankruptcy Court for the Northern District of California. The Debtor appeared through its counsel, Paul J. Pascuzzi of Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP and Ori Katz of Sheppard Mullin Richter & Hampton LLP. Other appearances were noted on the record. All capitalized terms used but not defined in this Order shall have the meanings given to them in the Motion.

The Court having considered the Motion, the *Declaration of Joseph J. Passarello in Support of Petition and First Day Motions* ("Passarello Background Decl."), the *Declaration of Joseph J.*

1

*Passarello* in support of this Motion ("Passarello Decl."), the *Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and First Day Motions* ("Gaspari Decl.") filed in support of the Motion, and the matters reflected in the record of the hearing, and the Court having found that it has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the United States Trustee, the twenty largest unsecured creditors, all secured creditors, and any applicable governmental entities; that no further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtor, its estate, and its creditors; and that good and sufficient cause exists for such relief,

Accordingly, it is hereby ORDERED as follows:

1.      The Motion is GRANTED on an interim basis as provided herein.

2.      The Debtor is authorized, but not directed, to pay to its Employees[1] all Employee Obligations, Employee Deductions and Employee Expenses that have accrued by virtue of the services rendered by its Employees prior to the Petition Date up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code. The Employee Obligations, Employee Deductions and Employee Expenses that the Debtor is authorized to pay are described in the Motion and include, without limitation, the following: wages, salary, retirement, healthcare and other benefit programs up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code.

3.      The Debtor is authorized, but not directed, to pay all local, state, and federal withholding and payroll taxes (including those accrued for pre-petition periods) or have such taxes paid by third-party payroll administrators.

4.      The Debtor is authorized, but not directed, to continue its practices, programs and policies in effect as of the Petition Date as described in the Motion, including with respect to all Employee Obligations (including allowing employees to use time off accrued, but unused, as of the Petition Date) up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code and administering payroll for the Payroll Participating Entities and

---

[1] Capitalized terms have the definitions referenced in the Motion unless otherwise defined herein.

Case: 23-30564   Doc# 7   Filed: 08/21/23   Entered: 08/21/23 14:14:57   Page 32 of 34

insurance for the Health Insurance Participating Entities.

5.     The bank at which the Debtor maintains an account from which the Debtor's payroll obligations are disbursed and all other banks or lending institutions maintaining payroll and employee benefits accounts are authorized, but not directed, to honor and pay all pre-petition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Employee Obligations, Employee Deductions and Employee Expenses.

6.     The Debtor is authorized to issue new post-petition checks or fund transfer requests with respect to pre-petition obligations that may have been dishonored by the banks relating to the Employee Obligations, Employee Deductions and Employee Expenses, if necessary.

7.     The Debtor is authorized, but not directed, to issue new post-petition checks or fund transfer requests with respect to pre-petition obligations that may have been dishonored by the banks relating to the Employee Obligations, Employee Deductions and Employee Expenses, if necessary, to the extent such are up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code.

8.     The Debtor is authorized to continue other Employee Benefits.

9.     Nothing in this Order authorizes the Debtor to make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise.

10.    The Debtor shall provide the U.S. Trustee a list of Employees to be paid pre-petition wages or expense reimbursements under this Order including accrual dates and amounts to be paid to each Employee and shall file with the Court a summary of the information.   If the U.S. Trustee notifies the Debtor within 3 business days that it objects to the payment of any pre-petition expense reimbursement, the Debtor shall not reimburse the business expense and may seek court authorization to reimburse the expenses at the final hearing on this motion or at another time.

11.    The final hearing on the Motion shall be heard on _____, 2023, at ___:00 a.m. Opposition, if any, to the granting of the Motion on a final basis shall be filed by _____, 2023 with the Clerk of the Bankruptcy Court and served upon counsel for the Debtor, counsel to the secured creditors, the Office of the United States Trustee for the Northern District of California, and counsel

Case: 23-30564   Doc# 7   Filed: 08/21/23   Entered: 08/21/23 14:14:57   Page 33 of 34

to any statutory committee(s) appointed in this case. The Debtor's reply to any opposition may be filed in advance of or raised at the hearing. If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

12. Counsel for the Debtor is directed to serve a copy of this Order on all parties on the Limited Service List as defined in the Debtor's Motion for Order Establishing Notice Procedures and to File Confidential Information Under Seal on file herein within three (3) court days of the entry of this Order and to file a certificate of service with the Clerk of the Court.

13. Notwithstanding the relief granted herein and any actions taken pursuant hereto, nothing herein shall be deemed: (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined hereunder; (v) a request or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of the Debtor's rights under the Bankruptcy Code or any other applicable law.

14. This Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

15. The Debtor and its employees and agents are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

APPROVED AS TO FORM.

OFFICE OF THE UNITED STATES TRUSTEE

By: _____
_____

**\*\*\*END OF [PROPOSED] ORDER\*\*\***