1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD WILLOUGHBY
3     PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA  95814
   Telephone:     (916) 329-7400
5  Facsimile:     (916) 329-7435
   Email:         ppascuzzi@ffwplaw.com
6                 jrios@ffwplaw.com
                  tphinney@ffwplaw.com
7
   ORI KATZ, State Bar No. 209561
8  ALAN H. MARTIN, State Bar No. 132301
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
9     A Limited Liability Partnership
      Including Professional Corporations
10 Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
11 Telephone:     (415) 434-9100
   Facsimile:     (415) 434-3947
12 Email:         okatz@sheppardmullin.com
                  amartin@sheppardmullin.com
13
   Proposed Attorneys for The Roman Catholic
14 Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and<br>Debtor in Possession. | Chapter 11<br><br>**DECLARATION OF JOSEPH J. PASSARELLO IN SUPPORT OF DEBTOR IN POSSESSION'S MOTION FOR ORDER (1) AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES, AND EMPLOYEE EXPENSES; (2) TO PAY ACCRUED EMPLOYEE BENEFITS AND TAXES; AND (3) DIRECTING BANKS TO HONOR PAYROLL AND EXPENSE CHECKS**<br><br>Date: August 24, 2023<br>Time: 1:30 p.m.<br>Via ZoomGov<br><br>Judge: Hon. Dennis Montali<br><br>*Hearing Requested on Shortened Time* |

I, Joseph J. Passarello, declare as follows:

1. I am the Chief Financial Officer ("CFO") of The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession herein ("RCASF" or the "Debtor"). I have been the CFO of the RCASF since January 2014. Before that, I have been the CFO for several other companies including Serena Software, Aptina Imaging, AMI Semiconductor, and Therma-Wave, Inc. I have a Master of Business Administration from Santa Clara University and a Bachelor of Science in Economics and Business Administration from St. Mary's College. In the course and scope of my duties as CFO, I am familiar with the record keeping practices and policies of the RCASF and how it regularly maintains its business records.

2. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by the RCASF's professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge regarding the RCASF's operations, financial condition, and related business issues. The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of the RCASF, prepared and maintained in the ordinary and regularly conducted business activity of the RCASF, and used by me for those purposes. If I were called upon as a witness, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the RCASF.

3. I make this declaration in support of the RCASF's *Motion for Order (1) Authorizing Payment of Prepetition Wages, Salaries, and Employee Expenses; (2) to Pay Accrued Employee Benefits and Taxes; and (3) Directing Banks to Honor Payroll and Expense Checks* (the "Motion"). All terms not otherwise defined herein have the same meaning as in the Motion.

4. As further discussed in my Background Declaration in support of RCASF's Petition and First Day Motions, the RCASF provides certain administrative services and pooling arrangements for the various components of the RCASF, as well as for certain Non-Debtor Catholic Entities. For example, the RCASF administers a coordinated payroll for the Parishes and the Parish Schools (the "Payroll Participating Entities"). The payroll for the employees of the Payroll Participating Entities is paid from funds provided by the Payroll Participating Entities and the cost

of administering the coordinated payroll is paid for by the Payroll Participating Entities via a per check charge. Additionally, the RCASF administers health insurance programs for itself, the Parishes, the Parish Schools, the High Schools, Seminary, the Cemeteries, and Vallombrosa Retreat (the "Health Insurance Participating Entities"). Certain "Services Agreements" made with the High Schools, the RPSC, the CASC, and the Seminary include provision for the RCASF to administer these benefits.

## A. Overview of Payroll and Employee Benefits

5. In general, as described below, RCASF manages employee benefits such as payroll, health insurance and retirement, for the benefit of its employees and for the benefit of the Payroll Participating Entities and Heath Insurance Participating Entities, as applicable. Unless otherwise specified, "Employees" as used herein refers only to the RCASF's employees.

6. The Employees of the RCASF include both lay employees (the "Lay Employees") as well as Clergy and Religious Orders (which includes the Archbishop). As noted above, the RCASF has approximately 54 salaried employees, 37 hourly employees, 32 Clergy and Religious Order payees and 14 stipend seminarians. In addition to the Lay Employees and Clergy and Religious Orders, the RCASF also processes payroll for Payroll Participating Entities. The coordinated payroll for the RCASF includes approximately 3,500 employees for the Payroll Participating Entities. The Catholic Charities, Cemeteries, Benedict XVI, RPSC, and CASC administer their own payrolls funded by those entities under separate EINs.

7. The RCASF administers the payroll for the Payroll Participating Entities through a coordinated payroll bank account (the "Coordinated Account") on a pass-through basis. The Payroll Participating Entities pre-fund this account in advance of each pay date in an amount sufficient to cover the payroll. RCASF maintains a separate account to fund payroll for its Employees and the payroll for the RCASF Employees is paid from the RCASF funds in its own account.

8. The RCASF receives a fee from the Payroll Participating Entities in the amount of $10 per check to pay for the RCASF's costs of processing the coordinated payroll through the Coordinated Account.

9.      The Employees are essential to the Debtor's ability to preserve its existing ministries, provide administrative and other services to the Non-Debtor Catholic Entities, and reorganize successfully. The experience and knowledge of the Employees are critical to the Debtor's ongoing service.

10.     The RCASF adjusted its regular pay schedule in light of the bankruptcy filing so that payroll for all RCASF and Payroll Participating Entities Employees prior to the Petition Date was processed and paid on August 15, 2023, including the pay period from August 16, 2023 through August 31, 2023 for salaried Employees and August 9, 2023 through August 23, 2023 for the hourly Employees. Amounts for hourly Employees were estimated and recorded on timesheets received on August 9, 2023. The RCASF and Payroll Participating Entities will resume their normal payroll calendar beginning with the September 15, 2023 payroll. The September 15, 2023 payroll may also include unreported pay for the period prior to August 23, 2023, due to the necessity of estimating hours.

11.     While, as noted above, the Debtor adjusted its regular pay schedule in light of the bankruptcy filing for its Employees, it still processes payroll for some of the employees of the Payroll Participating Entities on the regular schedule. With the new school year starting in August 2023, the Schools will have approximately 100 new employees who are starting on or after August 8, 2023, which is the cutoff for the salaried payroll prepayment that was made on August 15, 2023. It was not practicable for the Debtor to process the pre-payment of these wages for the Payroll Participating Entities. Accordingly, there are two to three weeks of accrued wages and associated liabilities for the new Schools employees, covering the period from August 8, 2023 through August 31, 2023 that the Debtor intends to process in the ordinary course of business on August 31, 2023 from the Coordinated Payroll Account, which is funded by the Payroll Participating Entities. RCASF estimates that these payments will total approximately $200,000 for the 100 employees. As noted above these are not employees of the Debtor.

12.     The Debtor's petition for relief under chapter 11 of the Bankruptcy Code could very likely cause the Employees to question their future with the Debtor. Commensurate with the mission of the RCASF to maximize the needs of those who rely on the RCASF's ministry, education, and

charitable outreach, the Employees, especially the Clergy and Religious Orders, are paid modest salaries. The Debtor submits that if it fails to pay the pre-petition obligations and continue the employee benefits, its Employees will suffer significant hardship and may be unable to meet their personal living expenses. Such a result would obviously have a negative impact on employee morale and would likely result in unmanageable turnover and loss. The Debtor must demonstrate its ability to continue paying its Employees and providing those benefits that have been promised to them as a condition of their employment with the Debtor.

13. To maintain Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Employees would suffer if pre-petition Employee Obligations, Employee Deductions (defined below) and Employee Expenses (defined below) are not paid or honored when due, the Debtor seeks to continue the regular payment of wages, salaries, and employment-related benefits and expenses as they come due in the ordinary course, including Employee Obligations, Employee Deductions and Employee Expenses that were incurred pre-petition but which come due for payment post-petition. The amounts requested are within the priority claim amounts set forth in the Bankruptcy Code. The Debtor believes the timely payment of Employee Obligations, Employee Deductions and Employee Expenses is necessary and desirable to the Debtor's successful reorganization and that such payments are in the best interests of creditors and the estate.

**B.    Pre-petition Payroll**

14. The Debtor contracts with ADP to prepare the payroll for its Lay Employees and Priests as well as the Payroll Participating Entities. In the ordinary course of its business, the Debtor issues payroll checks on three different schedules. Non-exempt Employees are paid twice a month on the 15th and last day of each month, one week in arrears. Exempt Employees, other than the Clergy and Religious Orders, are paid twice a month on the 15th and last day of each month with wages paid current as of the payroll date. Clergy and Religious Orders are paid once a month on the last day of each month with wages paid current as of the payroll date. Some Employees, including the Clergy and Religious Orders may have pre-petition wages accrued as of the Petition Date.

15. The RCASF does not generally issue payroll checks itself, as these are issued by ADP. Infrequently, the RCASF will issue manual or "live" payroll checks. For example, a manual check may be prepared and provided to individuals who are terminated, or to individuals whose information was not received in time for a processing cutoff for payroll processing. In addition, some Employees insist on a physical check, so those employees receive a "live" check each payday. The general practice of the RCASF is that ADP withdraws the amounts due 72 hours before each pay date, which is typically on the 15th and the last day of the month from the Coordinated Account. Hourly employees verify their time in ADP on the 8th and the 23rd of each month and are hence paid with a delay of seven days.

16. It is vital to obtain authorization for the Debtor to pay any unpaid pre-petition payroll amounts to Employees and the employees of the Payroll Participating Entities with the post-petition amounts due on time and without delay. None of the payments to any particular Employee exceed the amount entitled to priority of $15,150 per claim in Bankruptcy Code section 507(a)(4). The payroll amounts for the Payroll Participating Entities should not be subject to the priority caps in the Bankruptcy Code, since the non-debtor entities are funding those amounts through the Coordinated Account and not the Debtor.

17. Because of the pre-paid payroll for the Debtor's Employees, the Debtor is not aware of any specific amounts that would be due for its Employees' prepetition payroll. Therefore, the estimated unpaid pre-petition payroll expenses together with any applicable payroll withholding taxes to be disbursed post-petition for the Debtor's Employees is expected to be under $20,000. The total projected accrued and unpaid pre-petition payroll expenses together with any applicable payroll withholding taxes to be disbursed post-petition for the employees of the Payroll Participating Entities is expected to be under $100,000.

C.  **Other Non-Wage Employee Benefits**

18. As described in detail below, the RCASF also provides other benefits to Lay Employees and the Clergy and Religious Orders, including health insurance, sick and vacation pay, personal-time-off, retirement benefits and other related benefits. The RCASF requests authority to continue to pay all such benefits in the ordinary course of business, provided however, the RCASF

is only seeking authority to pay combined wages or benefits payments to any particular Employee up to the amount entitled to priority of $15,150 per claim in Bankruptcy Code section 507(a)(5). The projected accrued and unpaid pre-petition employee benefits other than payroll to be disbursed post-petition is further discussed below.

**D.     Medical Insurance Plan**

19.     The RCASF administers a health plan ("Health Plan") for its Employees and the Employees of most of the Heath Insurance Participating Entities, as discussed below. The Catholic Charities and Benedict XVI each administers its own health plans.

20.     For health insurance, the RCASF is insured through The Reta Trust ("Reta"). Reta administers healthcare-related benefits to U.S. dioceses and Catholic organizations that are aligned with the teachings of the Roman Catholic Church. Reta manages contracts and provider networks with national health plans including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and EyeMed Vision Care.

21.     Reta establishes the premium amounts to be billed to the RCASF in February or March each year for the next insurance year which runs July 1 through June 30. The RCASF typically has one month of premiums paid in advance to Reta. The RCASF establishes the amount of premiums billed monthly to each of the Heath Insurance Participating Entities based on the type of medical coverage selected, the premium billed by Reta, planned RCASF administrative costs and premium credits. Benefit Allocation Systems serves as an administrator for the Health Insurance by billing monthly the Health Insurance Participating Entities for the health benefits provided to their employees.

22.     On or about the 21st day of the month for the upcoming month, Reta sends an invoice to the RCASF which includes the health insurance premiums for the RCASF and the Health Insurance Participating Entities. Approximately five to ten business days after the invoice is sent, the RCASF pays Reta the entire amount of the invoice in the approximate amount of $2.3 million (100%, including the other entities' portions) from the Accounts Payable Checking Account. On the first day of that upcoming month, the RCASF invoices the Health Insurance Participating

Entities for its share of the premiums. On or about the 15th day of the month, the RCASF collects the amounts invoiced via ACH and the money is deposited into the Main Depository account.

23. Until recently, Reta issued quarterly premium credits to member organizations. Such credits, which are approved by its Board of Trustees, are a function of stronger than planned financial performance. The last such refund received by the RCASF was credited to RCASF's invoices by Reta over a six-month period from April 2022 – September 2022 in the amount of $571,800. When such credits are received by the RCASF, they are generally allocated among the Heath Insurance Participating Entities over three years reducing premiums billed by BAS.

24. Approximately 1500 employees of the RCASF and the Heath Insurance Participating Entities participate in the Health Plan. There are 99 Priests, 35 seminarians and 1,367 other employees participating in the plan including employees from the Chancery, Cemetery, CASC, RPSC, Parishes and schools.

25. If the monthly health insurance premiums are not remitted to Reta for the services of Blue Shield, Kaiser, Delta and EyeMed Vision (collectively, "Health Plan Administrators"), the Health Plan Administrators and Reta may discontinue coverage and the RCASF, the Employees, the Heath Insurance Participating Entities, and their employees risk losing health insurance coverage.

26. Additionally, all the reasons for avoiding Employee turmoil apply with equal or even greater force to continuing the Health Plan.

27. In addition to continuing the Health Plan with respect to the Employees, the RCASF also needs to continue to administer the health benefits and insurance programs for the Health Insurance Participating Entities pursuant to its duties under various services agreements. Requiring the RCASF to change its current practices for its Employees, while continuing to administer the Heath Insurance Participating Entities health benefits and insurance programs under the current structure, would be unduly burdensome and disruptive to the RCASF's operations.

Case: 23-30564    Doc# 7-1    Filed: 08/21/23    Entered: 08/21/23 14:14:57    Page 8 of 13

E.  **Vacation Pay Obligations**

28. **Vacation Time**. Regular Employees accrue paid vacation time ("Vacation Time") based upon their position and the length of their employment. While not subject to forfeiture, vacation benefits are subject to a maximum accumulation of two times the yearly accrual amount.

29. **Personal-Time-Off**. Regular Employees are granted three days of personal time-off ("PTO") each July 1. This time-off is subject to forfeiture if not used by the following June 30, However, if the Employee terminates before, June 30, the unused balance is payable to the employee.

30. As of the Petition Date, the Debtor estimates that it owes approximately $900,000 in total unused vacation pay and PTO, of which Debtor estimates approximately $750,000 is potentially entitled to priority.

31. **Holidays**. Regular full-time or part-time (working at least 20 hours a week) Employees receive nineteen paid holidays a year including the week between Christmas and New Year's day.

F.  **Other Employee Benefits**

32. As part of the Debtor's Employee Obligations, the Debtor also has established a variety of benefit plans and programs (the "Employee Benefits") designed to assist its Employees and its Employees' eligible dependents in meeting certain financial burdens, including those that arise from illness, disability and death. The Debtor believes that all amounts and obligations related to Employee Benefits that were owed prior to the Petition Date have been paid in full except as noted herein. However, out of an abundance of caution, the Debtor seeks authorization, but not direction, to pay or otherwise honor these Employee Benefits.

33. As described above, the RCASF maintains a Health Plan for full-time Employees who meet the applicable pre-enrollment eligibility requirements. Employee contributions are made on a pre-tax basis for Health Plan coverage. The Debtor requests authority to pay any pre-petition costs related to the Health Plan in the ordinary course of business.

34. **Continuation of Benefits**. The Debtor seeks to provide continuation of benefits ("COB") to former Employees and former employees of the Heath Insurance Participating Entities.

The Debtor contracts with Reta to administer the COB. Former Employees and former Health Insurance Participating Entities' Employees enrolling in COB pay a premium directly to COBRA. COBRA pays these premiums to the Health Plan for the continued health coverage of these former Employees and former Non-RCASF Entity Employees after deducting an administrative fee. The Health Plan claims of the former Employees and former employees of the Heath Insurance Participating Entities are paid in the ordinary course of business including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and EyeMed Vision Care. The Debtor requests authority to pay any pre-petition costs related to COB benefits in the ordinary course of business.

35. **Life Insurance**. The RCASF provides life insurance and the provider is Reliance Standard Life Insurance Company ("Reliance") for the benefit of the RCASF and its components, the Parishes, the Parish Schools, CASC, RPSC and the Seminary. Reliance sends the RCASF an invoice on or about the 21st of each month for the following month's premium due. RCASF pays the invoice approximately five business days later from the Accounts Payable Checking account and is reimbursed by participating entities.

**G.    Retirement Benefit Plans**

36. All Employees who work more than 20 hours per week are eligible to contribute to a 403(b) plan ("403(b) Plan"). Contributions to the 403(b) Plan are made by Employees only, with no employer match by the RCASF. The 403(b) Plan is administered by Fidelity NetBenefits.

37. Employers withhold 403(b) plan contributions from employees' paychecks based on each employee's election. Within three days following a pay date, funds are transferred to Fidelity NetBenefits on behalf of each employee. Funds for RCASF employees are paid from the Chancery Payroll Account and funds for non-chancery employees are paid from the Coordinated Payroll Account or their respective employers.

38. The Debtor does not believe that unremitted 403(b) Plan contributions are property of the Debtor's bankruptcy estate. The RCASF estimates that there will be approximately one pay period worth of deducted but unremitted 403(b) Plan contributions as of the Petition Date and requests the authority to pay such amounts to the 403(b) Plan administrator.

39.     The Debtor also maintains a Lay Supplemental Employee Retirement Plan covering seven participants:  three active employees, three retired employees, and one beneficiary.  The plan assets are held at US Bank totaling approximately $230,000.

40.     The RCASF maintains two retirement accounts for Priests: the Priests Qualified Retirement Plan and the Priests Supplemental Retirement Plan.

41.     The Priests Qualified Retirement Plan is a defined benefit plan available only to incardinated priests.  The Priest participants receive a fixed monthly pension payment based on years of service and a vesting schedule. The Priests are fully vested after 25 years.  Funds are in an independent trust with U.S. Bank as trustee.  As of June 30, 2022 this plan had a benefit security value to market value ratio of 114%.

42.     The Priest's Supplemental Retirement Plan pays certain benefits including housing and medical costs to retired incardinated priests based on need.  The Priest Retirement Board in consultation with the Vicar of Clergy Office makes a recommendation to the Archbishop for coverable categories of priest expenses. The Plan is funded by a combination of AAA proceeds, donor-restricted contributions, special collections, contribution by parishes of nine percent of priests' salaries, and restricted proceeds from a priest retirement lunch fundraising event.  Restricted funds are held in BofA #7083 (Restricted Checking Account).  Unrestricted accounts are held in the BofA Securities Account #9371 and in the Investment Pool.

43.     Employees who have worked for RCASF for a year or more are eligible to participate in the RCASF Parochial Pension Plan, a defined benefit cash balance pension plan.  The RCASF and certain non-diocesan entities (parishes, schools, seminary, cemeteries, CASC and RPSC) contribute nine percent of qualified annual earnings for each employee.  Contributions are held by an independent corporate trustee and, according to the plan documents, are "inaccessible to creditors of the Archdiocese."  Balances vest over a seven-year period and paid to employees upon retirement. U.S. Bank serves as the trustee.

44.     The Debtor believes that maintaining the above-described retirement plans (collectively, the "<u>Retirement Plans</u>") described above is critical to maintaining Employee morale.

Accordingly, the Debtor seeks authority to continue in its discretion the Retirement Plans, and to pay administrative and other related expenses to maintain the Retirement Plans.

### H. Pre-petition Amounts Withheld from Employee Paychecks and Related Deductions and Payments

45. The RCASF withholds from Employees' paychecks through its payroll provider, ADP, Inc. (who also remits funds to the appropriate taxing authority): (i) payroll taxes, (ii) the Employee's portion of FICA and disability taxes; (iii) Employee deductions for (a) disability-related benefits, (b) flexible spending accounts; (iii) Employee contributions to the 403(b) Plan; (iv) legally ordered deductions such as wage garnishments, child support and tax levies; and (v) miscellaneous other items (collectively, the "Employee Deductions"). The RCASF forwards withheld amounts to the appropriate third-party recipients. Employee deductions for their portion of the monthly health benefits are retained by the RCASF and the non-debtors. The Debtor does not believe that any funds deducted from Employee paychecks for Employee Deductions are property of the RCASF's bankruptcy estate. The Debtor seeks authority to forward to the appropriate parties any Employee Deductions not forwarded due to the commencement of this Bankruptcy Case.

### I. Reimbursable Expenses

46. In the ordinary course of its business, eligible Employees may submit certain business-related expenses to the RCASF for reimbursement. By this Motion, the Debtor seeks authority to pay all prepetition Employee Expenses accrued and unpaid as of the Petition Date and to continue such practices on a postpetition basis in the ordinary course of business.

47. The Debtor routinely reimburses its Employees for certain eligible expenses, including, but not limited to, travel, lodging, ground transportation and rental cars, meals, hotel accommodations, parking and other travel expenses and business-related costs (collectively, "Employee Expenses"). The Debtor has issued corporate credit cards (the "Corporate Credit Cards"), through Wells Fargo Bank, N.A., to certain Employees to pay for these Employee Expenses. Employees may also incur out-of-pocket Employee Expenses and seek reimbursement from the Debtor for their Employee Expenses. Generally, an Employee requesting reimbursement must submit a reimbursement request via email to the Accounts Payable department. All claimed

Employee Expenses (whether charged to the Corporate Credit Cards or out-of-pocket), are subject to a review and approval process.

48. As of the Petition Date, the Debtor does not anticipate owing any Employee Expenses incurred prior to the Petition Date but estimates that some limited reimbursable Employee Expenses may be accrued and outstanding as of the Petition Date all of which will likely become due and owing before the Court rules on this Motion on a final basis. Thus, the Debtor seeks authority, but not direction, to pay Employee Expenses as they are identified, and to continue to pay them post-petition in the ordinary course of business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing it true and correct. Executed on August 19, 2023 at San Francisco, California.

Joseph J. Passarello