1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD WILLOUGHBY
3     PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA  95814
   Telephone:     (916) 329-7400
5  Facsimile:     (916) 329-7435
   Email:         ppascuzzi@ffwplaw.com
6                 jrios@ffwplaw.com
                  tphinney@ffwplaw.com
7
   ORI KATZ, State Bar No. 209561
8  ALAN H. MARTIN, State Bar No. 132301
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
9     A Limited Liability Partnership
      Including Professional Corporations
10 Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
11 Telephone:     (415) 434-9100
   Facsimile:     (415) 434-3947
12 Email:         okatz@sheppardmullin.com
                  amartin@sheppardmullin.com
13
   Proposed Attorneys for The Roman Catholic
14 Archbishop of San Francisco

15                 UNITED STATES BANKRUPTCY COURT

16            NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

17 | In re | Case No. 23-30564 |
18 | THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
19 | | **DECLARATION OF JOSEPH J. PASSARELLO IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; (2) AUTHORIZING MAINTENANCE OF EXISTING BUSINESS FORMS, (3) EXCUSING COMPLIANCE WITH SECTION 345(b); (4) AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY; AND (5) SCHEDULING A FINAL HEARING** |
   | Debtor and Debtor in Possession. | |

| | |
|---|---|
| Date: | August 24, 2023 |
| Time: | 1:30 p.m. |
| Location: | Via ZoomGov |
| Judge: | Hon. Dennis Montali |

*Hearing Requested on Shortened Time*

I, Joseph J. Passarello, hereby declare under penalty of perjury as follows:

1. I am the Chief Financial Officer ("CFO") of The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession herein ("RCASF" or the "Debtor"). I have been the CFO of the RCASF since January 2014. Before that, I served as the CFO for several other companies including Serena Software, Aptina Imaging, AMI Semiconductor, and Therma-Wave, Inc. I have a Master of Business Administration from Santa Clara University and a Bachelor of Science in Economics and Business Administration from St. Mary's College. I am authorized to provide this declaration (the "Declaration") setting forth the general structure of the Debtor's cash management. In the course and scope of my duties as CFO, I am familiar with the record keeping practices and policies of the RCASF and how it regularly maintains its business records.

2. I submit this Declaration in support of the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing* (the "Motion"). I give capitalized terms not otherwise defined in this Declaration the same meanings ascribed to them in the Motion.

3. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by the RCASF's professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge regarding the RCASF's operations, financial condition, and related business issues. The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of the RCASF, prepared and maintained in the ordinary and regularly conducted business activity of the RCASF, and used by me

for those purposes. If I were called upon as a witness, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the RCASF.

A. **Cash Management System**

4. The Debtor operates an intricate cash management system (the "Cash Management System"), which is illustrated on Exhibit 2 of the Motion. The Debtor primarily uses its Cash Management System to, among other things, receive (i) unrestricted gifts, bequests, and collections; (ii) restricted donations including proceeds of the Archdiocesan Annual Appeal (the "AAA"); (iii) payments for various insurance coverages paid by RCASF on behalf of other non-diocesan entities; (iv) commercial rental income; (v) fees for administrative services to certain other Non-Debtor Catholic Entities; (vi) investment income; and (vii) non-Chancery payroll funding on a pass-through basis. Additionally, in the ordinary course of business, the RCASF is required to make the following disbursements: (i) mission-driven disbursements; (ii) ordinary trade payables and operating expenses; (iii) payroll; (iv) commercial insurance premiums; (v) employer portion of employee benefits; (vi) Parish refunds in excess of the targets set pursuant to the AAA. The Debtor maintains the following bank accounts (collectively, the "Bank Accounts" or individually, a "Bank Account"):

| Identifying Schematic Number on Exhibit 2[1] | Account Name | Balance as of July 31, 2023 (unless otherwise noted) |
|---|---|---|
| **Bank Accounts at BofA** | | |
| 1. | The Main Operating Account (#5250) | $3,107,959 |
| 2. | Accounts Payable Checking Account (#0220) | $388,344 |
| 3. | Investment Pool Checking Account (#4129) | $900 |
| 4. | Chancery Payroll Account (#2233) | $62,890 |
| 5. | Coordinated Payroll Account (#4287) | $2,697,976 |
| 6. | Restricted Donations Account (#7083) | $5,222,779 |

---

[1] There are two accounts listed on the bank account schematic attached to the Motion as Exhibit 2 that are not listed here – the Segal Bryant (#8815) and the First Republic (#9117) accounts – because the Debtor is closing those accounts post-petition.

Case: 23-30564    Doc# 9-1    Filed: 08/21/23    Entered: 08/21/23 14:27:49    Page 3 of 14
SMRH:4856-0912-1656.4

| Identifying Schematic Number on Exhibit 2[1] | Account Name | Balance as of July 31, 2023 (unless otherwise noted) |
|---|---|---|
| **Bank Accounts at Bank of SF** | | |
| 7. | Interest Bearing Bank Account (#1486) | $246,041 |
| **Bank Accounts at FRB** | | |
| 8. | Interest Bearing Bank Account (#1534) | $257,115 |
| 9. | Stock Transfer Account (#0589) | $15,602 |
| **Imprest Accounts** | | |
| 10. | Settlement Payment Imprest Account (#4577) | $14,946 |
| 11. | Priest Medical Imprest Account (#8561) | $48,397 |
| 12. | General Liability Imprest Account (#9479) | $96,606 |
| **City National Bank Account** | | |
| 13. | Workers' Comp Collateral (#9001) | $75,816 |
| **U.S. Bank Investment Pool Account** | | |
| 14. | Investment Pool Account (as of June 30, 2022) | $104,737,665 |
| **BofA Securities Account** | | |
| 15. | BofA Securities Account (#9371) | $57,789,941 |

1. **Sources of Receipts**

5. **Unrestricted Gifts, Bequests, and Collections.** Throughout the year, Parishes solicit donations in the form of Second Collections for a variety of mission-driven programs, including Priestly Vocations, Human Life & Dignity, Pastoral Ministry, Missions Office, Faith Formation, Marriage & Family Life, Chinese Ministry, and the African American Ministry. These funds are forwarded from the Parishes to RCASF, which categorizes them as "Custodial," indicating that they are set aside for a specific purpose and are held in a restricted bank account.

6. **Restricted Donations.** Periodically, donors make donations to the RCASF and Parishes in the form of marketable securities. Such securities are received into the FRB account **(#0589)**, which is a brokerage account established and maintained specifically to liquidate donated securities. Once the securities are liquidated, cash proceeds are transferred into BofA restricted

checking account **(#7083)**, and then transferred to the intended recipient, either the RCASF or a Parish.

7. **Insurance Premium Payments**. The RCASF administers a health plan for its employees and the employees of several non-Chancery entities (the "Participating Entities") through Reta Trust ("Reta"). The RCASF pays 100% of the premiums billed by Reta for its employees and for the employees of the Participating Entities and then invoices the Participating Entities for their respective premiums.

8. **Rental Income.** The RCASF receives approximately $190,000 under monthly rental or lease agreements. The following four rental properties account for approximately 80% of the monthly rental income: (1) an office building occupied by a non-profit advocacy group; (2) a commercial building occupied by a mattress retailer, a Toyota dealership and an electric vehicle company; (3) an apartment rented to the RCASF's communications director; and (4) a residential structure located on the grounds of St. Patrick's Seminary & University leased to Chesterton Academy of St. James.

9. **Fees for Services.** The RCASF provides administrative services to certain Non-Debtor Catholic Entities pursuant to service management agreements and similar arrangements. The RCASF receives fees for these services, for which it bills the respective parties. For example, the RCASF charges administrative fees for its administrative support provided by the Department of Catholic Schools accounting, legal, human resources, and support for certain Non-Debtor Catholic Entities. Additionally, the RCASF has an arrangement to charge a small administrative fee to administer payroll for certain Non-Debtor Catholic Entities. The RCASF also charges a land use fee to Holy Cross Cemetery and other Cemeteries.

10. **Non-Chancery Payroll.** The RCASF administers payroll for approximately 3,500 employees of Parishes and Schools. Employees are paid on up to two pay dates each month, the 15th and the last. All funds for payroll are pulled by ADP, the payroll processor, from the RCASF's Coordinated Payroll Account (#4287). In advance of each pay date, Parishes' and Schools' funds are deposited into this account to meet each payroll funding obligation.

### 2. Main Sources of Disbursements

11. **Mission Driven Disbursements.** The RCASF disburses proceeds to numerous missions and related causes. These funds are raised via the AAA and occasional direct donations.

12. **Ordinary Accounts Payable.** In the ordinary course of business, the RCASF makes disbursements to trade vendors, service providers, and employees for reimbursement of approved expenses, and Wells Fargo debits this account as its credit card issuer.

13. **Payroll.** The RCASF processes payroll for its own employees. ADP draws the funds from **(#2233)** Chancery Payroll Account via ACH to meet payroll and associated payroll and income tax obligations. Additionally, the RCASF processes payroll for approximately 3,500 employees of Parishes and Schools on a pass-through basis. This account is pre-funded by the respective employers in advance of each pay date. ADP draws the funds from **(#4287)** (the Coordinated Payroll Account via ACH to meet payroll and associated payroll and income tax obligations.

14. **Commercial Insurance Premiums.** As further discussed in the *Debtor's Emergency Motion to Continue Insurance Programs* (the "Insurance Motion") filed concurrently herewith, the RCASF maintains and administers certain commercial insurance coverages. It administers the commercial insurance programs for certain Non-Debtor Catholic Entities and then invoices premium amounts to such Non-Debtor Catholic Entities for the the Non-Debtor Catholic Entities' allocation of the cost of the insurance policies program.

15. **Employee Benefits.** As further detailed in the *Debtor's Emergency Motion for Order (1) Authorizing Payment of Prepetition Wages, Salaries, and Employee Expenses; (2) to Pay Accrued Employee Benefits and Taxes; and (3) Directing Banks to Honor Payroll and Expense Checks* filed concurrently herewith, the RCASF administers a health plan to provide its employees and the employees of several Participating Entities with general medical, dental, and vision insurance plans. Total premiums for the general healthcare benefits package are approximately $2.3 million per month. The RCASF invoices premium amounts to the Non-Debtor Catholic Entities for their employees' share of the premiums.

### B. Investment Accounts

16. The Chancery maintains several interest-bearing accounts to diversify its holdings and yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment. The Chancery office administers funds on behalf of itself and certain Catholic entities in an investment pool account invested with fund managers in separate custodial accounts at U.S. Bank. Investments held in the investment pool are categorized by the RCASF as Designated, Restricted, Endowments, and Investments Held for Others. As of July 15, 2023, the respective balances were approximately: Designated - $61.4 million; Restricted - $19.9 million; and Endowments - $18.7 million. Amounts held in trust for others, Contemplatives of St. Joseph and St. Thomas More School, St. Patrick's Seminary totaled approximately $2.6 million.

17. One of RCASF's investment accounts is BofA Securities account **(#9371)** (the "BofA Investment Account"). Excess funds from the Main Operating Account **(#5250)** are transferred to the BofA Investment Account where they are invested in BlackRock Liquidity Funds Fed Fund Portfolio Institutional Class, which is a money market mutual fund that currently yields approximately 5.2% of interest per year.

18. The Chancery also administers an Institutional Deposit & Loan fund solely on behalf of its High Schools and certain institutions which are not equipped with the administrative staff to oversee the accounts. Each depositor has its own account with Charles Schwab for its Deposit & Loan deposits, which are kept segregated from the RCASF's accounts. These accounts are not listed in the schematic because each account is owned by the respective depositor and not held under the RCASF's name. The Debtor discloses such accounts out of an abundance of caution, but is not seeking any additional relief with respect thereto other than authority to continue to operate its own pooled account and oversee the other pooled accounts.

19. The RCASF has a Finance Council comprised of the Archbishop, Rev. Summerhays, three priests, seven independent lay investment advisors (generally CPAs and attorneys), and me, as CFO. The Finance Council historically met approximately eight times per year, but has met monthly since October 2022. The Finance Council is responsible for advising on all matters of

Case: 23-30564   Doc# 9-1   Filed: 08/21/23   Entered: 08/21/23 14:27:49   Page 7 of 14

financial concern, and to provide consent to certain investment decisions, investment policy statements, and financial actions in accordance with Canon Law. They are also responsible for approving the annual budget.

20. The RCASF Investment Committee (the "Investment Committee"), a subset of the Finance Council, is responsible to ensure that the RCASF is acting as a prudent investor and investing in a diversified and balanced manner. The Investment Committee was established by the Finance Council and consists of Rev. Summerhays, five lay professionals with strong investment backgrounds, and me, as CFO. The Investment Committee meets at least quarterly (and more frequently as necessary) to establish investment and asset allocation policies and to review investment performance.

C. **Bank Accounts Related to the Debtor's Cash Management System**

21. As of the Petition Date, the Debtor's Cash Management System includes a total of 15 Bank Accounts, six of which are held with BofA, two with FRB, one with Bank of SF, one with City National Bank, and three (the Imprest Accounts) held and managed by third parties (collectively, the "Cash Management Banks").

22. While FRB, Bank of SF, and CB&T, are not on the U.S. Trustee's authorized list of banking institutions, BofA, which holds the vast majority of the Debtor's operating cash, is an FDIC-insured banking institution that has complied with the United States special depository procedures under Bankruptcy Code section 345 and is on the U.S. Trustee's list of authorized depositories for this district. Although FRB is not on the U.S. Trustee's authorized list of depositories, it is owned by JPMC, which is one of the most well-capitalized banks in the U.S., and on the U.S. Trustee's list of authorized depositories. Additionally, the Bank of SF is an FDIC-insured institution, and the RCASF generally holds in its accounts at the Bank of SF at or less than approximately $250,000, which amount is the limit of FDIC insurance. Finally, while CB&T is not on the U.S. Trustee's authorized depository list, it is a division of Zions Bancorporation, N.A., which is FDIC-insured.

Case: 23-30564    Doc# 9-1    Filed: 08/21/23    Entered: 08/21/23 14:27:49    Page 8 of 14

23. In the ordinary course of business, the RCASF maintains the Bank Accounts to facilitate the financial operations of its central administrative offices.

**D.     Debtor's General Operating Accounts**

24. The RCASF maintains one main general operating checking account at BofA **(#5250)** (the "Main Operating Account"). The Main Operating Account acts as the Debtor's central repository of funds. All unrestricted incoming deposits from the Parishes, donors and, lessees are first deposited into this account and then money is transferred to other accounts and to fund disbursements, as necessary.

25. In addition to the Main Operating Account, the RCASF maintains the following accounts at BofA:

- An accounts payable account **(#0220)** (the "Accounts Payable Checking Account"), from which all payments to trade vendors are paid. The RCASF transfers money from the Main Operating Account to fund the Accounts Payable Disbursements Account, as necessary.

- The investment pool checking account **(#4129)** (the "Investment Pool Checking Account"), which the RCASF uses as a clearing account to move money between the Main Operating Account and the Investment Pool Checking Account, for internal tracking purposes.

- An account to fund Chancery payroll **(#2233)** (the "Chancery Payroll Account"). The RCASF transfers funds from the Main Operating Account to the Chancery Payroll Account and then transfers money from Chancery Payroll Account to ADP to fund payroll.

- Account **(#4287)** is used to hold and fund payroll for the Non-Debtor Catholic Entities such as Parishes and Schools (the "Coordinated Payroll Account"). The Parishes and Schools prefund this account in advance of each payroll disbursement.

- The restricted donations account **(#7083)** (the "Restricted Donations Account") holds restricted funds such as AAA proceeds, donor restricted gifts, funds held

as a custodian for certain Non-Debtor Catholic Entities and funds that have been liquidated from the Stock Transfer Account (as defined below) and other funds held in trust. FRB liquidates the securities and the RCASF remits the proceeds to the intended beneficiary.

26. The RCASF maintains an interest earning account at the Bank of SF **(#1486)** (a "Interest Bearing Account") which earns modest interest. The Debtor keeps this account balance at or around $250,000 to ensure that it is within the FDIC insured amount range.

27. The RCASF maintains the following Bank Accounts at FRB:

- An interest-bearing account **(#1534)** where the RCASF transfers excess cash from the Main Operating Account to earn modest interest.

- The FRB brokerage account **(#0589)** ("Stock Transfer Account"), a restricted account, receives gifts of marketable securities. The RCASF then sends the money from the restricted account to the Parishes or the RCASF to which the respective donation was directed. As this account is effectively a clearing account that zeros out with each transaction, no balance is recorded on the books and records of the RCASF.

28. The RCASF maintains the following accounts that are also funded through the Main Operating Account, but held and managed by third parties (collectively, the "Imprest Accounts"):

- An account **(#4577)** ("Settlement Payments Imprest Account") managed by AJ Gallagher Insurance Brokers as signatories on the account, to make payments in accordance with prior settlement agreements.

- An account **(#8561)** managed by UAS Benefit, which reimburses medical costs incurred by retired priests not covered by general medical insurance ("Priest Medical Imprest Account").

- An account **(#9479)** managed by George Hills Company Inc. as third-party administrator and signatory on the account, which is used to process general liability claims (the "General Liability Imprest Account").

Case: 23-30564   Doc# 9-1   Filed: 08/21/23   Entered: 08/21/23 14:27:49   Page 10 of 14

29. The RCASF maintains account (**#9001**) at City National Bank ("Workers' Comp Collateral"), which serves as collateral and a funding source for workers' compensation claims paid out in connection with an old workman's compensation policy(s).

30. Finally, the RCASF maintains a restricted account at U.S. Bank to hold assets of the Lay SERP Plan, held by U.S. Bank as Trustee.

**E. Corporate Credit Card Program**

31. The RCASF uses corporate credit cards primarily to pay miscellaneous business expenses incurred by the employees and employees working at the Chancery. There are roughly 25-30 credit cards in use at the Chancery, with about $40,000 total monthly in credit card charges. Each month, a cardholder receives a statement online, which gets reviewed and approved by their supervisor. Once approved, Wells Fargo debits the RCASF account for the prior month's credit card charges around the 7th or 8th day of each month.

32. I am aware of the requirement under the Local Rule 2015-1(a) and UST Guideline 4.4.6 that, upon filing a petition for relief under chapter 11, the debtor must close its existing bank accounts and open new debtor-in-possession accounts marked to show that the debtor is operating as a debtor-in-possession. However, the Debtor believes it should be excused from this requirement in this unique situation for the compelling reasons that complying with Local Rule 2015-1(a) and UST Guideline 4.4.6 would be unduly costly, overly burdensome, not to the benefit of any party in interest, and detrimental to the overall administration of the estate and creditors.

33. The Debtor's Cash Management System is maintained in the ordinary course and is essential to the Debtor's ongoing operations. The Cash Management System provides significant benefits to the Debtor, including, among other things, the ability to: (i) account properly for restricted funds and funds held in trust; (ii) control funds; (iii) perform its duties under the Servicing Agreements and arrangements; (iv) ensure the maximum availability of funds when necessary; (v) maximize interest on deposit accounts by utilizing sweep accounts; (vi) reduce administrative expenses and operational disruption by facilitating the movement of funds and the development of more timely and accurate account balance information; (vii) continue accounting practices and

Case: 23-30564   Doc# 9-1   Filed: 08/21/23   Entered: 08/21/23 14:27:49   Page 11 of 14

operational procedures familiar to the Debtor's staff; and (viii) earn a modest amount of interest through its Investment Accounts. As a practical matter, because of the Debtor's financial structure, it would be extremely difficult and prohibitively expensive to establish and maintain a separate postpetition cash management system.

34. The delay and disruption caused by closing the existing Bank Accounts and opening new accounts would delay the Debtor's postpetition payment of its ordinary course expenses and put a strain on the Debtor's relations with its accounting staff, the non-Debtor Catholic Entities served by the Debtor under the Servicing Agreements and arrangements, donors, key suppliers, and employees. By preserving continuity and avoiding the disruption and delay to the Debtor's activities under the Servicing Agreements and arrangements, payroll obligations and ministries that would necessarily result from closing the existing Bank Accounts and opening new accounts, all parties in interest, including Non-Debtor Catholic Entities, employees, donors and vendors, will be best served. Furthermore, the administrative burden of overseeing such a transition would place a substantial burden on the Debtor's management and personnel at a critical time in this case. The inevitable delays and confusion would further impede the Debtor's ability to pay operating expenses in the ordinary course, potentially compromising relationships with Non-Debtor Catholic Entities, donors, vendors, suppliers and employees. This could seriously jeopardize the Debtor's reorganization efforts.

35. The Debtor requires the ability to continue to utilize its Cash Management System so that it may continue its operations uninterrupted. The Debtor's Cash Management System is maintained through well-established relationships at the various financial institutions and series of related accounts which allow the Debtor to manage and control receipts and disbursements and to account for all transactions.

36. Closing such accounts will delay the services provided by the Debtor under the Servicing Agreement, payment of payroll and other ordinary course expenses, will increase the cost of administration, impede the Debtor's efforts to continue to operate in the normal course of business, potentially undermine the confidence of donors that their donated funds are being held in

trust and used for the intended uses, and will be a significant distraction to the Debtor's management and accounting staff.

1     I declare under penalty of perjury under the laws of the United States of America that the
2 foregoing is true and correct. Executed on this 19th day of August, 2023, at San Francisco,
3 California.

_____
Joseph J. Passarello

Case: 23-30564 Doc# 9-1 Filed: 08/21/23 Entered: 08/21/23 14:27:49 Page 14 of 14