PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
  WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:     (916) 329-7400
Facsimile:     (916) 329-7435
Email:         ppascuzzi@ffwplaw.com
               jrios@ffwplaw.com
               tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     (415) 434-9100
Facsimile:     (415) 434-3947
Email:         okatz@sheppardmullin.com
               amartin@sheppardmullin.com

Proposed Attorneys for The Roman Catholic
Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **DEBTOR'S EMERGENCY APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT, AND (II) GRANTING RELATED RELIEF** |

Date:       August 24, 2023
Time:       1:30 p.m.
            Via ZoomGov
Judge:      Hon. Dennis Montali

*Hearing Requested on Shortened Time*

The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession (the "Debtor") in the above-captioned bankruptcy case (the "Bankruptcy Case"), hereby files this application (the "Application") for the entry of an order, pursuant to section 156(c) of title 28 of the United States Code (the "Judicial Code"), section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002(f) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rules 9013-1(a) and 5075-1(b) of the Bankruptcy Local Rules for the Northern District of California (the "Bankruptcy Local Rules"): (a) appointing Omni Agent Solutions, Inc. ("Omni") as claims and noticing agent (the "Claims and Noticing Agent") for the Debtor in this Bankruptcy Case effective as of the Petition Date (as defined herein) including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtor's Bankruptcy Case, and (b) granting related relief. In support of this Application, the Debtor submits the Declaration of Paul H. Deutch, Omni's Executive Vice President (the "Deutch Declaration"), filed herewith. The Debtor submits, based on all engagement proposals obtained and reviewed, that Omni's rates are competitive and reasonable given Omni's quality of services and expertise. The terms of Omni's retention are set forth in the Engagement Agreement attached as Exhibit 2 to the Application (the "Engagement Agreement"). By separate application, the Debtor will seek authorization to retain and employ Omni as administrative advisor in the Bankruptcy Case pursuant to section 327(a) of the Bankruptcy Code because the administration of this Bankruptcy Case will require Omni to perform duties outside the scope of Judicial Code section 156(c). A proposed form of order granting the relief requested herein (the "Order") is attached hereto as Exhibit 1. In further support of this Application, the Debtor submits the *Declaration of Joseph J.*

*Passarello in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[1]

## JURISDICTION

The United States Bankruptcy Court for the Northern District of California (this "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The legal bases for the relief requested herein are Judicial Code section 156(c) and Bankruptcy Rules 9013-1(a) and 5075-1(b).

## BACKGROUND

On the date hereof (the "Petition Date"), the Debtor filed in this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no official committee has been appointed in this case (this "Chapter 11 Case").

Additional information regarding the Debtor's business, capital structure, and the circumstances preceding the Petition Date may be found in the First Day Declaration.

## RELIEF REQUESTED

By this Application, the Debtor seeks entry of an Order engaging and appointing Omni as the Debtor's claims and noticing agent in this Chapter 11 Case effective as of the Petition Date. Among other things, Omni will be responsible for the distribution of notices, the maintenance of a case website, the administration, maintenance, processing, and docketing of proofs of claim in the Chapter 11 Case. The terms of Omni's retention are set forth in the Engagement Agreement. For

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

the avoidance of doubt, Omni is seeking approval of its engagement based solely on the terms and provisions as set forth in this Application and the proposed Order.

## QUALIFICATIONS

Omni is a bankruptcy administrator specializing in claims management and legal administration services.  Omni provides comprehensive chapter 11 services, including noticing, claims processing, balloting, and other related services critical to the effective administration of this Chapter 11 Case.  There are numerous entities to be noticed in this Chapter 11 Case.  In view of the number of notice entities, the anticipated number of claimants, and the complexity of the Debtor's business, the Debtor submits that the appointment of a claims and noticing agent is both necessary and in the best interests of the Debtor, its estate, its creditors, and all parties in interest.  Omni is equipped to handle the volume of mailings and claims involved in this Chapter 11 Case. Omni is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, and facilitating other administrative aspects of chapter 11 cases.  Omni has provided identical or substantially similar services in other chapter 11 cases filed in this District and elsewhere, including, among others: *See, e.g.*, *In re San Benito Health Care District*, No. 23-50544 (SLJ) (Bankr. N.D. Ca. May 23, 2023);[2] *In re Norwich Roman Catholic Diocesan Corporation*, No. 21-20687 (JJT) (Bankr. D. Conn. July 15, 2021); *In re Boy Scouts of Am. and Delaware BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 8, 2020); *In re DRSD, Inc. (f/k/a SVXR, Inc.),* No. 21-51050 (SLJ) (Bankr. N.D. Ca. Aug. 4, 2021); *In re Munchery, Inc.,* No. 19-30232 (HLB) (Bankr. N.D. Ca. Feb. 28, 2019); *In re Lincoln Power, LLC*, No. 23-10382 (LSS) (Bankr. D. Del. Apr. 3, 2023); *In re Indep. Pet Partners Holdings, LLC*, 23-10153 (LSS) (Bankr. D. Del. Feb. 5, 2023); *In re Performance Powersports Grp. Investor, LLC*, 23-10047 (LSS) (Bankr. D. Del. Jan. 18, 2023); *In re Vesta Holdings, LLC*, No. 22-11019 (LSS) (Bankr. D. Del. Nov. 1, 2022); *In re Kabbage, Inc. d/b/a KServicing*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 6, 2022); *In re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. June 23, 2022); *In re PWM Property Mgt. LLC*, No. 21-11445 (MFW) (Bankr. D. Del. Dec. 1, 2021); *In re Lucky's Market Parent Co., LLC*, No. 20-10166

---

[2] Chapter 9 case.

1  (JTD) (Bankr. D. Del. Jan. 28, 2020); *In re SFP Franchise Corp.*, No. 20-10134 (JTD) (Bankr. D.
2  Del. Jan. 24, 2020).

3  By appointing Omni as the Claims Agent in this case, the distribution of notices and the
4  processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court (the
5  "Clerk's Office") will be relieved of the administrative burden of processing what may be an
6  overwhelming number of claims.

7  ## SERVICES TO BE RENDERED

8  This Application pertains only to the work to be performed by Omni under the Clerk's
9  Office's delegation of duties permitted by Judicial Code section 156(c), and any work to be
10 performed by Omni outside of this scope is not covered by this Application or by any order granting
11 approval hereof. Specifically, Omni will perform the following tasks in its role as Claims and
12 Noticing Agent, as well as all quality control relating thereto:

13
14 • prepare and serve required notices and documents in this Chapter 11 Case in
   accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and
   manner directed by the Debtor and/or the Court, including (i) notice of the
   commencement of this Chapter 11 Case and the initial meeting of creditors under
15   section 341(a) of the Bankruptcy Code; (ii) notices of transfers of claims; (iii) notices
   of objections to claims and objections to transfers of claims; (iv) notices of any
16   hearings on a disclosure statement and confirmation of the Debtor's plan or plans of
   reorganization, including under Bankruptcy Rule 3017(d); (v) notice of the effective
17   date of any plan; and (vi) all other notices, orders, pleadings, publications, and other
   documents as the Debtor or Court may deem necessary or appropriate for an orderly
18   administration of this Chapter 11 Case;
19
20 • maintain an official copy of the Debtor's schedules of assets and liabilities, listing
   the Debtor's known creditors and the amounts owed thereto;

21 • maintain (i) a consolidated list of all potential creditors, equity holders, and other
   parties in interest; and (ii) a "core" mailing list consisting of all parties described in
22   Bankruptcy Rules 2002(i), (j) and (k) and those parties that have filed a notice of
   appearance pursuant to Bankruptcy Rule 9010 and update such lists and make them
23   available upon request by a party in interest or the Clerk;

24 • furnish a notice to all potential creditors of the last date for the filing of proofs of
   claim and a form for the filing of a proof of claim, after such notice and form are
25   approved by this Court, and notify such potential creditors of the existence, amount,
   and classification of their respective claims as set forth in the Debtor's schedules of
26   assets and liabilities;

27 • maintain a post office box or address for the purpose of receiving claims and returned
   mail and process all mail received;
28

- for all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service that includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom service was mailed (in alphabetic order) with their address; (iii) the manner of service; and (iv) the date served;

- process any proofs of claim received, check such processing for accuracy, and maintain the original proofs of claim in a secure area;

- provide an electronic interface for filing proofs of claim;

- record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

- record all court-filed proofs of claim with the offices of the Claims and Noticing Agent, not less than weekly;

- monitor the Court's docket for all notices of appearance, address changes, and claims related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

- assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

- if the case is converted to one under chapter 7, contact the Clerk's Office within three (3) days of the notice to the Claims and Noticing Agent of entry of the order converting the case;

- thirty (30) days prior to the close of this Chapter 11 Case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing the Claims and Noticing Agent and terminating its services upon completion of its duties and responsibilities upon the closing of this case; and

- at the close of this case, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064; or (ii) any other location requested by the Clerk's Office.

## COMPENSATION

The Debtor will compensate Omni for the Claims Services described above in accordance with the Engagement Agreement. The Debtor respectfully requests that the undisputed fees and expenses incurred by Omni in the performance of the Claims Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to Judicial Code section 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

With respect to the Claims Services, Omni agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, counsel for the Debtor, the office of the United States Trustee, counsel for any official committee of unsecured creditors, any person charged with monitoring the expenses of the Debtor, and any other party in interest who specifically requests service of the monthly invoices (the "Notice Parties"). In the case of a dispute regarding any invoice amount, the Notice Parties will give written notice to Omni and the Debtor within ten (10) days of receipt of the invoice at issue. In such an event, the Debtor will remit only the undisputed portion of the invoice and, if applicable, will pay the remainder to Omni upon resolution of the disputed portion, as agreed to by the parties or mandated by this Court. The Debtor believes that the compensation rates and procedures, as set forth in the Engagement Agreement, are both reasonable and appropriate for services of this nature and are competitive with those rates charged by other providers of similar services.

Under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Omni and its officers, directors, agents, employees, consultants, and subcontractors under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Omni's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims agent in this Chapter 11 Case. Omni shall comply with all requests of the Clerk's Office and shall follow the guidelines promulgated by the Judicial Conference of the United States for the implementation of Judicial Code section 156(c).

Prior to the Petition Date, the Debtor paid Omni a retainer in the amount of $50,000. Omni seeks to first apply the retainer to all prepetition invoices, and thereafter, to hold the retainer as security of payment of Omni's final invoice for services rendered and expenses incurred in performing the Claims Services.

### DISINTERESTEDNESS

In the Deutch Declaration filed herewith, Omni represents, among other things, that:

Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice, claims, and solicitation agent in this Chapter 11 Case;

By accepting employment in this Chapter 11 Case, Omni waives any right to receive compensation from the United States government in its capacity as the notice, claims, and solicitation agent in this Chapter 11 Case;

In its capacity as the notice, claims, and solicitation agent in this Chapter 11 Case, Omni will not be an agent of the United States and will not act on behalf of the United States; and

It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to matters upon which it is to be engaged.

The Deutch Declaration further represents that, to the best of Omni's knowledge, Omni is not materially connected with the Debtor, its creditors, other parties in interest, the United States Trustee, or any person employed by the Office of the United States Trustee, and that to the best of Omni's knowledge, after due inquiry, Omni does not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, hold or represent any interest materially adverse to the Debtor, its estate, or any class of creditors or equity interest holders with respect to the matter upon which it is to be engaged. As further set forth in the Deutch Declaration, Omni is not a creditor of the Debtor.

Should Omni discover any new, relevant facts or relationships bearing on the matters described in this Application during the period of its retention, Omni will promptly file a supplemental declaration disclosing such new or newly discovered facts and relationships.

The Debtor has been informed that, other than as required by the Bankruptcy Code and any orders of this Bankruptcy Court, Omni will not share with any person or firm the compensation to be paid for services rendered in this case, except as among employees of Omni.

Omni shall not employ any past or present employee of the Debtor for work that involves the Debtor's Chapter 11 Case.

For the reasons set forth herein, the Debtor believes that the employment of Omni to render the Claims Services requested herein is necessary, appropriate, and in the best interests of the Debtor's estate. By this Application, the Debtor therefore requests authority to employ and retain

Omni on the terms and conditions set forth herein and in the Engagement Agreement attached hereto.

## BASIS FOR RELIEF REQUESTED

Judicial Code section 156(c), which governs the staffing and expenses of the Court, authorizes the Court to use facilities other than those of the Clerk's Office for the administration of a bankruptcy case. Specifically, Judicial Code section 156(c) provides that:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.[3]

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[4]

Thus, the Court is authorized to utilize outside agents or facilities for notice and claims purposes, provided the Debtor's estates pay the cost of such services. The Debtor anticipates that it will have hundreds of creditors and parties-in-interest in this Chapter 11 Case. Given the number of anticipated claimants and the complexity of the Debtor's estate, the Debtor submits that the appointment of the Claims Agent is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

## RESERVATION OF RIGHTS

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or nonbankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or

---

[3] 28 U.S.C. § 156(c).
[4] 11 U.S.C. § 105(a).

8

DEBTOR'S EMERGENCY APP. TO EMPLOY OMNI CLAIMS & NOTICING AGENT

rejection of any agreement, contract, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code.  The Debtor reserves all of its rights under the Bankruptcy Code.

## IMMEDIATE ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 6003

Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "an application under [Bankruptcy] Rule 2014" before twenty-one (21) days after filing of the petition.  As described herein and in the First Day Declaration, the Debtor anticipates there will be more than 1,500 creditors or other parties in interest who must be noticed regarding the commencement of this Chapter 11 Case and all relief requested therein.  Given the size and complexity of its business, the Debtor anticipates that a delay in hiring the Claims Agent will result in a corresponding delay in the progress of this Chapter 11 Case, which will cause detriment and prejudice to all creditors and other parties in interest.  Accordingly, the Debtor has satisfied the requirements for immediate entry of an order granting the relief requested herein pursuant to Bankruptcy Rule 6003.

## NOTICE

Notice of this Application has been provided by email, facsimile, or overnight courier to:  (i) the Office of the U.S. Trustee Region 17; (ii) the Debtor's twenty (20) largest creditors, together with any of their known counsel; (iii) all parties who have requested special notice pursuant to Bankruptcy Rule 2002, together with any of their known counsel; and (iv) those persons who have formally appeared in this Bankruptcy Case and requested service pursuant to Bankruptcy Rule 2002 (collectively, the "First Day Notice Parties").

## NO PRIOR REQUEST

No prior request for the relief sought in this Application has been made by the Debtor to this or any other court.

/ / /

/ / /

/ / /

/ / /

WHEREFORE, the Debtor respectfully requests entry of the Order, substantially in the form attached hereto as Exhibit A granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  August 21, 2023

FELDERSTEIN FITZGERALD WILLOUGHBY
PASCUZZI & RIOS LLP

By      _____/s/ Paul J. Pascuzzi_____
PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY

Proposed Attorneys for The Roman Catholic
Archbishop of San Francisco

Dated:  August 21, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      _____/s/ Jeannie Kim_____
ORI KATZ
ALAN H. MARTIN
JEANNIE KIM

Proposed Attorneys for The Roman Catholic
Archbishop of San Francisco

**Exhibit 1**

**(Proposed Interim Order)**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23- |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **[PROPOSED] INTERIM ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT, AND (II) GRANTING RELATED RELIEF** |
| | Date: August 24, 2023<br>Time: 1:30 p.m.<br>Location: Via ZoomGov<br>Judge: Hon. Dennis Montali |
| | *Hearing Requested on Shortened Time* |

Upon the application (the "<u>Application</u>")[1] dated August 21, 2023, of the debtor and debtor in possession (collectively, the "<u>Debtor</u>") in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>"), pursuant to section 156(c) of title 28 of the United States Code, sections 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and Rule 2002(f) of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>") for entry of an order appointing Omni Agent Solutions, Inc. ("<u>Omni</u>") as claims and noticing agent (the "<u>Claims Agent</u>") effective as of the Petition Date, all as more fully set forth in the Application; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Application.

1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Local Rule 5011-1(a) of the Bankruptcy Rules for the Northern District of California; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this case and the Application being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Application as provided to the Notice Parties is reasonable and sufficient under the circumstances, and no other or further notice need be provided; and the relief requested in the Application being in the best interests of the Debtor's estate, its creditors and other parties in interest and necessary to prevent immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Application (ECF No. __) is GRANTED as provided herein.

2.      Notwithstanding the terms of the Engagement Agreement, attached hereto as <u>Exhibit 1</u>, the Application is approved solely as set forth in this Order.

3.      The Debtor is authorized to retain the Claims Agent effective as of the Petition Date under the terms of the Engagement Agreement, and the Claims Agent is authorized and directed to perform noticing services, receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtor's Bankruptcy Case, and provide such other administrative services—as required by the Debtor—that would fall within the purview of services to be provided by the Clerk's Office, and (b) granting related relief, all as more fully set forth in the Application; and upon the Deutch Declaration submitted in support of the Application; and upon the First Day Declaration. Notwithstanding anything contained in this Order or the Engagement Agreement to the contrary, the Debtor shall be required to employ Omni under a separate application under 11 U.S.C. §327, and seek approval of fees and reimbursement of expenses pursuant to 11 U.S.C. §§330 or 331, as applicable, if Omni provides services that fall outside the scope of 28 U.S.C. §156(c).

4. The Claims Agent shall serve as the custodian of the court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case and is authorized and directed to maintain official claims registers for the Debtor and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5. The Claims Agent is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6. The Claims Agent is authorized to take such other actions necessary to comply with all duties set forth in the Application.

7. The Debtor is authorized to compensate the Claims Agent for the Claims Services in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by the Claims Agent and the rates charged for each, and to reimburse the Claims Agent for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for the Claims Agent to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

8. With respect to the Claims Services, the Claims Agent shall maintain records of all services, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee, if any, monitoring the expenses of the Debtor, and any other party in interest who specifically requests service of the monthly invoices. The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices for Claims Services, and the parties may seek resolution from the Court if resolution is not achieved.

9. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of the Claims Agent under this Order that relate to the Claims Services shall be an administrative expense of the Debtor's estate.

10. The application of Omni's retainer to all prepetition invoices and for the excess, if any, to thereafter be held as security for Omni's final invoice is hereby approved.

Case No. 23-30564

11.     The Debtor shall indemnify the Claims Agent under the terms of the Engagement Agreement subject to the modifications set forth herein.

12.     Omni shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court.

13.     All requests by the Claims Agent for the payment of an indemnity claim as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided however, that in no event shall the Claims Agent be indemnified in the case of its own gross negligence or willful misconduct.

14.     In the event that the Claims Agent seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the Claims Agent's own applications, both interim and final, but determined by this Court after notice and a hearing.

15.     All parties in interest shall retain the right to object to any demand by Omni for indemnification, contribution, or reimbursement.

16.     In the event the Claims Agent is unable to provide the services set out in this Order, the Claims Agent will immediately notify the Clerk and the Debtor's counsel, and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's counsel.

17.     The Claims Agent shall not cease providing the Claims Services during this Chapter 11 Case for any reason, including nonpayment, without an order of the Court.

18.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

19.     Notwithstanding anything to the contrary contained in the Engagement Agreement or this Order, any payment made or other action taken by the Debtor pursuant to the authority

granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to any interim and/or final orders regarding the Debtor's use of cash collateral and/or postpetition debtor in possession financing facilities, approved by this Court in this Chapter 11 Case.

20. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application under the circumstances and such notice satisfies the notice requirements of Bankruptcy Rule 2002 and the Bankruptcy Local Rules.

21. Notwithstanding any term in the Engagement Agreement to the contrary, the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

APPROVED AS TO FORM.

OFFICE OF THE UNITED STATES TRUSTEE

By: _____

_____

**\* \* \* END OF [PROPOSED] ORDER \* \* \***

**Exhibit 2**

**(Engagement Agreement)**

## STANDARD SERVICES AGREEMENT

This Agreement is entered into as of August  9 , 2023, between Omni Agent Solutions, Inc ( "**Omni**") and the Roman Catholic Archbishop of San Francisco (collectively, the "**Company**").[1] The parties agree as follows:

### Terms and Conditions

I.  SERVICES

(a)  Upon request by the Company or as may be necessary for Omni to comply with applicable law, governmental regulation, court order or court rule, Omni shall provide the Company with consulting and administrative services ("**Services**") in connection with the Company's potential filing of a chapter 11 petition under the Bankruptcy Code ("**Code**") and during any chapter 11 case which the Company may initiate. Without limitation, the Services may include any or all of the following: Assisting in the preparation of the Company's bankruptcy schedules and statements of financial affairs ("**Schedules and SOFA**"), noticing, communication related services, claims management and reconciliation, plan solicitation, balloting and tabulation, contract review, securities, claims analysis, providing confidential online workspaces or data rooms (the publication of which shall not violate the confidentiality provisions of this Agreement), account management, disbursements, automation, and any other service which may be agreed upon by the parties.

(b)  The Company understands that to assist or enable Omni to provide the Services, Omni will engage in communications with various persons acting on the Company's behalf (each, a "**Company Party**").[2] The Company represents to Omni and agrees that any and all requests, advice, information or direction which a Company Party provides to or makes of Omni is expressly authorized by the Company, that Omni may rely upon the accuracy and completeness of the information provided without any obligation to further verify it, and that the Company shall be bound by any and all requests, advice, information or direction made.

(c)  The Company understands that Omni is not being retained to provide any legal or financial advice and that none of Omni's communications with a Company Party or any other party constitutes legal or financial advice.

II.  RATES

(a)  The Company agrees to pay Omni for all fees, charges and costs for Services provided on its behalf in the amounts set forth in the schedule attached hereto as Exhibit "A" (the "**Rate Schedule**"). *For purposes of this engagement, Omni has agreed to provide the Company*

---

[1] Upon the filing of a Chapter 11 petition, the term "**Company**" shall then also mean and include the Company, in its capacity as a debtor and debtor in possession together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for all of the Company's fees and costs.

[2] Unless otherwise agreed upon, a Company Party includes a Company's managers, general partners, officers, directors, employees, agents, representatives, counsel, consultants and/or any other party with whom the Company authorizes to engage in a Communication with Omni.

*with (i) a $10,000 credit towards prepetition fees (contingent upon the filing of the Debtor's chapter 11 case), and (ii) a ten (10%) percent discount on its standard hourly rates.* Omni reserves the right from time to time to amend the Rate Schedule by increasing its hourly rates, unit prices, and any other charges, fees and costs therein during the term of this Agreement and that upon so doing, the parties agree that the rates, prices, and other charges shall be effective immediately and constitute the operative Rate Schedule.

(b)     Omni may invoice the Company monthly for the Services it provided during the preceding calendar month consistent with the applicable Rate Schedule, subject however to the discount set forth above, until the effective date of a confirmed plan of reorganization. Thereafter, Omni will invoice the Company consistent with the terms of the Rate Schedule which is then in effect. All invoices are due and payable upon receipt. Notwithstanding anything herein to the contrary, in the event the Company files chapter 11 petition, any payment made to Omni will be in accordance with applicable bankruptcy law and orders of the bankruptcy court.

(c)     If any amount is unpaid to Omni thirty (30) days from the date of the Company's receipt of an invoice the Company agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute of any portion of an invoice, the Company shall give written notice to Omni within ten (10) days of receipt of the invoice as to the charges disputed and the basis thereof. The undisputed portion of the invoice will remain due and payable immediately upon receipt, but late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. At its sole discretion, Omni may first apply any payment received against the cumulative sum of the late charges then due before it applies any remaining balance to the outstanding principal balance

(d)     Omni may require an advance or direct payment from the Company of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e)     The Company shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Company, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(f)     The Company shall pay to Omni all actual charges (including fees, costs and expenses as set forth in the then effective Rate Structure) related to, arising out of, or resulting from, any error or omission made by the Company including, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses.

(g)     Upon execution of this Agreement, the Company shall pay Omni a retainer of $50,000 (the "**Retainer**"). Omni may use the Retainer against all reasonable and documented prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Company to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final**

**Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Company of the application of some or all of the Retainer, the Company shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(h)     Payments to Omni for services rendered under the terms of this Agreement may be remitted using either or both of the following methods:

(i)     **Wire Transmission**

(Omni's wire information will be included on each monthly invoice)

(ii)     **Check**
Omni Agent Solutions
c/o Accounts Receivable
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367

## III.   RETENTION

(a)     The Agreement is effective immediately upon its execution by the parties; provided, however, that it shall be subject to, if and when applicable, the terms of any order entered approving the engagement of Omni by the Company in the Company's chapter 11 proceeding.

(b)     If the Company commences one or more chapter 11 cases pursuant to the Code, then as soon as is practicable, the Company agrees to and shall take all necessary actions to obtain bankruptcy court approval to retain Omni as its claims and noticing agent pursuant to 28 U.S.C. § 156(c), and as its administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of any application concerning Omni's retention and any order setting forth its terms are subject to Omni's approval which shall not be unreasonably withheld. Notwithstanding any other provision of this Agreement, if the bankruptcy court does not enter an order approving Omni's retention pursuant to 28 U.S.C. § 156(c) or section 327 of the Code, then the Agreement will be terminated effective immediately.

## IV.   TERM

(a)     Except as provided herein, the Agreement will remain in effect until terminated: (a) on a mutually agreed upon date as set forth in a writing executed by both parties; (b) on a date of no less than sixty (60) days from the date written notice is provided by one party to the other; (c) by the Client for cause ("**Cause**") which, for purposes of this Agreement, shall mean that Omni has acted in bad faith, with gross negligence, or engaged in willful misconduct that results in material harm to the Company's effort and ability to restructure in its chapter 11 case; or (d) by Omni upon the Company's material breach of any term herein. If Omni's engagement has been already approved by the bankruptcy court, then Omni shall continue to perform the Services until the entry of an order by the bankruptcy court, in a form and substance satisfactory to Omni, whose

consent will not be unreasonably withheld, providing for the terms and conditions of its discharge, including date of termination.

(b)     Upon its termination, Omni shall provide the Company with all materials Omni is required to return to it under the terms of this Agreement as well as all in-process deliverables in their then-current state of completion for Services which Omni provided prior to the effective date of the termination promptly after it has received payment in full of all sums attributable to such Services, including for any Services which have then not yet been invoiced. Omni shall coordinate with the Company and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, shall provide the necessary staff and assistance required for an orderly transfer, and the Company agrees to pay all sums which may become due in connection therewith. Without limiting the foregoing, upon the Company's written request made at any time during the term of this Agreement, Omni shall deliver to the Company and/or the Company's retained professionals at the Company's sole expense any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Company.

## V.     CONFIDENTIALITY

Omni and the Company, on behalf of themselves and on behalf of each and all of their respective Company Parties, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement ("**Confidential Information**"), except if any of such information: (a) is then or thereafter becomes publicly available, other than by breach by the receiving party; (b) is already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; (c) was independently developed; (d) is lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; or (e) is subject to production or revelation pursuant to an order of any court, governmental agency or other regulatory body, arbitrator or subpoena, it may, upon not less than ten (10) calendar days written notice to the other party, release the required information.

## VI.     OMNI'S PROPERTY RIGHTS

(a)     The parties understand and agree that any and all software programs or other materials furnished by Omni pursuant to this Agreement or used by Omni to provide the Services during the term of this Agreement ("**Omni's Property**") are Omni's sole and exclusive property. Without limiting the foregoing, Omni's Property includes data processing programs, specifications, applications, routines, documentation, ideas, concepts, know-how or techniques relating to data processing or Omni's performance of Services. Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy cases.

(b)     The Company acknowledges and agrees that regardless of any sums it has been charged or has paid to Omni, it obtains no rights or ownership whatsoever in any of Omni's Property and that their use by the Company is limited to enabling Omni to provide the Services hereunder.

## VII.    BANK ACCOUNTS

At the request of a Company Party, Omni is authorized to establish account(s) with financial institutions in the name of and/or as agent for the Company and to manage such account(s), including to facilitate distributions pursuant to a chapter 11 plan or otherwise. Omni may receive compensation from the institution at which an account is held pursuant to agreements between Omni and such institutions.

## VIII.   COMPANY DATA

(a)     Without limiting any other provision of this Agreement, the Company represents and warrants to Omni that when a Company Party provides information to Omni (a) the Company has all necessary authority to disclose it to Omni and that Omni is fully authorized to use it in connection with its performance of the Services; (b) that the information is materially accurate and complete to the best of the Company's knowledge at the time of the Communication; and (c) that Omni has no responsibility whatsoever to verify or otherwise independently confirm the accuracy or completeness of any information, programs, data or instructions it is provided including, without limitation, data it receives in connection with the preparation of the Company's Schedules and SOFAs. The Company agrees that it shall be deemed to have reviewed and approved any and all Schedules and SOFAs which are filed on its behalf.

(b)     Without limiting any other provision of this Agreement, the Company understands and agrees that all data, storage media, programs or other materials which are furnished to Omni on its behalf (the "**Company's Data**") may be retained by Omni until full payment has been made to Omni for all of its Services and that it shall remain liable to Omni for all fees and expenses thereafter charged by Omni for maintaining, storing or disposing of any or all of it.  Omni agrees that it will dispose of the Company's Data in a manner requested by or acceptable to the Company; provided, however, that if Omni has not provided Services to the Company for a period of ninety (90) days and provides no less than thirty (30) days written notice, Omni may dispose of any or all of the Company's Data in any commercially reasonable at the Company's sole expense. The Company agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information which is provided on its behalf to Omni.

(c)     If Omni is retained pursuant to bankruptcy court order, disposal of any of the Company's Data shall comply with any applicable court orders and rules or clerk's office instructions.

## IX.    NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without

limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting its enforceability to the maximum extent compatible with applicable law.

X.  INDEMNIFICATION

(a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)  Omni and the Company shall provide notice to the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)  The Company's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

XI.  LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Company for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular specific task or expense of the Service that gave rise to the alleged Loss. In no event shall Omni's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII.  GENERAL

(a)  Each party acknowledges that authorized person(s) on its behalf have read Agreement, understands it, and agrees to be bound by its terms. Each party further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b)  If any provision of this Agreement shall be held to be invalid, illegal, or

unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)     This Agreement may be modified only by a writing duly executed by a Company Party on behalf of the Company and an officer of Omni.

(d)     This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)     This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)     Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g)     The Company will use its best efforts to cooperate with Omni at the Company's facilities if any portion of the Services require Omni's physical presence.

(h)     Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)     The Company and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)     The language used in this Agreement will be deemed to be the language chosen by the Company and Omni to express their mutual intent, and no rule of strict construction will be applied against either party.

(k)     In the event that any arbitration legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree that the prevailing party is entitled to be paid all of its reasonable attorneys' fees, court costs, and any other expense reasonably related thereto in the amount which may be set by the court or by an arbitrator, whether in the same action or in a separate action brought for the purpose of establishing such amount, in addition to any other relief to which the prevailing party may be entitled.

(l)     The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(m)     Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Company, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(n)     Omni reserves the right to make changes in operating procedures, operating systems, programming languages, general purpose library programs, application programs, time periods of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy case(s).

(o)     All headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

XIII.   NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:          Omni Agent Solutions, Inc.
                     5955 De Soto Avenue
                     Suite 100
                     Woodland Hills, CA 91367
                     Tel: (818) 906-8300
                     Attn: Brian K. Osborne, Pres. & CEO
                     Email: Bosborne@omniagnt.com

If to the Company:   Archdiocese of San Francisco
                     1 Peter Yorke Way

San Francisco, CA 94109
Attn: Paula Carney
Email: carneyp@sfarch.org

With a copy to:     Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Tel: (916) 329-7400 ext. 222
Email: ppascuzzi@ffwplaw.com

Or to such other address as the Party to receive the notice or request so designates by written notice to the other.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: _____
Name: Paul Deutch
Title:    Executive Vice President

Agreed and accepted this ___9___ day of August, 2023

**THE ROMAN CATHOLIC
ARCHBISHOP OF SAN FRANCISCO**

By: _____
Name: REV. PATRICK J. SUMMERHAYS
Title: ATTORNEY - IN - FACT

# EXHIBIT

## "A"



**Analyst** $45-$75

Analysts perform tasks such as incoming and outgoing mail processing (including returned mail), creditor correspondence, document and file organization, daily docket updates.

**Consultant** $75-$195

Consultants perform and manage various day-to-day activities to meet the specific needs of each client's case. These services include data collection, preparation of the creditor matrix, compilation of the noticing database, preparation of Schedules and SOFA's, processing and review of claims and ballots, maintenance of the official claims register and the processing of claim transfers, managing and maintaining the case website, and document management. In addition, Consultants perform quality assurance checks on all services, oversee noticing and fulfillment, assist with creditor communications, and produce multiple reports on claims, ballots, and other requested data. Omni's consultant's each average over five years industry-related experience.

**Senior Consultants** $200 - $240

Senior Consultants are the main points of contact for Omni's clients, their counsel, and other related professionals. Senior Consultants oversee all aspects of case administration, providing industry expertise and strategic administrative support on complex issues Their responsibilities also include the internal management of Omni's case professionals. Omni's senior consultant's each average over ten years industry-related experience and many are former restructuring or financial industry professionals. If necessary, Omni's executive team will provide additional support in the senior consultant role at the rate range set forth above.

**Solicitation and Securities Consultant** $200 - $225

Solicitation and Securities Consultants assist with the review, tabulation, and auditing of ballots, as well as executing plan solicitations and public securities-related services. In addition, Solicitation and Securities Consultants are available to prepare custom voting and tabulation reports, , as well as reports relating to other corporate securities events including exchange offers and rights subscriptions. The Solicitation and Securities Consultant will also interface with the banks, brokers, nominees, depositories, securities holders and their agents regarding solicitation and corporate events. Solicitation and Securities consultants average over five years of related experience.

**Director of Solicitation and Securities** $250

The Director of Solicitation and Securities is the lead consultant in the plan solicitation process and any corporate action-related events. The Director oversees and coordinates all aspects of plan voting and solicitation, including tabulation verification, and, if and when necessary, will attest to the solicitation process and results. The Director also oversees and advises on public securities notices and related actions including voting, exchange offers, treatment elections, rights subscriptions, distributions, and notices, and will coordinate with the banks, brokers, nominees, depositories, securities holders and their agents to ensure smooth and successful execution of the related processes. Omni's Director of Solicitation and Securities is a former Wall Street executive with over 15 years of relevant securities and finance experience.

**Technology Consultant** $85 - $155

Omni's Technology Consultants provide technical and database support with respect to the onboarding and processing of complex data. Our Consultants also deliver ongoing and customized reporting requirements, assist with variable data mailings and exhibit preparation, and provide custom solutions to meet individual case requirements. Omni's Technology Consultants each average at least 15 years-experience in the information technology and development industry.

18

# 2023 Rate Sheet



| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Analyst | $40.00 - $75.00 per hour |
| Consultants | $75.00 - $195.00 per hour |
| Senior Consultants | $200.00 - $240.00 per hour |
| Solicitation and Securities Services | $250.00 per hour |
| Technology/Programming | $85.00 - $155.00 per hour |

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| E-mail noticing | No charge |
| Certified email | Quote upon request |
| Facsimile noticing | $.10 per image |
| Postage | At cost (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Claims Management | RATE / COST |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Creditor Database | RATE / COST |
|---|---|
| Data storage | Under 10,000 records - No charge. Over 10,000 records - .08 per Record |
| Per image storage | No charge |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $20.00 per Month |
| Usage | $.0825 per Minute |
| Call center personnel | Standard Hourly Rates |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

19

# 2023 Rate Sheet



| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | $65.00 per hour |
| Programming and Customization | $85 - $135 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Case Docket / Claims Register | |
|---|---|
| | No charge |

| Virtual Data Rooms | |
|---|---|
| | Quote upon request |

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $65.00 - $250.00 per hour |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, | Standard hourly rates apply |

| Real-Time Reports | RATE / COST |
|---|---|
| Claims dashboard | No charge |
| Claim reports | No charge |
| Solicitation dashboard | No charge |
| Tabulation dashboard | No charge |
| Solicitation reports | No charge |

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |

20