PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
  WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:    (916) 329-7400
Facsimile:    (916) 329-7435
Email:        ppascuzzi@ffwplaw.com
              jrios@ffwplaw.com
              tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    (415) 434-9100
Facsimile:    (415) 434-3947
Email:        okatz@sheppardmullin.com
              amartin@sheppardmullin.com

Proposed Attorneys for The Roman Catholic
Archbishop of San Francisco

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>        Debtor and<br>        Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**DEBTOR'S EMERGENCY MOTION TO CONTINUE INSURANCE PROGRAMS**<br><br>Date:      August 24, 2023<br>Time:      1:30 p.m.<br>Location:  Via ZoomGov<br><br>Judge:    Hon. Dennis Montali<br><br>*Hearing Requested on Shortened Time* |

# TABLE OF CONTENTS

Page

I.     JURISDICTION ........................................................................................1

II.    RELIEF REQUESTED ..........................................................................1

III.   BACKGROUND ......................................................................................2

IV.   FACTUAL BACKGROUND FOR RELIEF REQUESTED ................3

V.    BASIS FOR RELIEF REQUESTED ....................................................8

      A.      Insurance Coverage Is Required by the Bankruptcy Code and the U.S. Trustee Guidelines. ..............................................................................8

      B.      Section 363(c)(1) Permits the Debtor to Maintain Its Insurance Coverage and Make Expenditures Related Thereto in the Ordinary Course of Business. ...............8

      C.      The Court May Authorize the Debtor to Maintain Its Insurance Coverage and Make Expenditures Related Thereto Pursuant to Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity. ........................................9

      D.      The Applicable Standards Permit the Court to Authorize Continuation of the Insurance Coverage and Insurance Programs. ....................................10

VI.   RESERVATION OF RIGHTS ............................................................12

VII.   CONCLUSION ....................................................................................12

Case: 23-30564    Doc# 12    Filed: 08/21/23    Entered: 08/21/23 14:53:30    Page 2 of 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re B & W Enters., Inc.*
   713 F.2d 534 (9th Cir. 1983) ................................................................. 10

*Burchinol v. Cent. Wash. Bank (In re Adam's Apple, Inc.)*
   829 F.2d 1484 (9th Cir. 1987) ............................................................ 9, 10

*In re Columbia Gas Sys., Inc.*
   171 B.R. 189 (Bankr. D. Del. 1994) ........................................................ 9

*In re Gulf Air*
   112 B.R. 152 (Bankr. W.D. La. 1989) ................................................... 10

*In re Ionosphere Clubs, Inc., supra*, at 175-176 ........................................ 10

*In re Ionosphere Clubs, Inc.*, *supra*, at 176 ............................................. 10

*In re Johns-Manville Corp.*
   60 B.R. 612 (Bankr. S.D.N.Y. 1986) ...................................................... 9

*In re Just for Feet, Inc.*
   242 B.R. 821 (Bankr. D. Del. 1999) ...................................................... 10

*In re Montgomery Ward Holding Corp.*
   242 B.R. 147 (D. Del. 1999) .................................................................. 8

*In re Penn Cent. Transp. Co.*
   467 F.2d 100 (3d Cir. 1972) .................................................................. 9

*In re Phoenix Steel Corp.*
   82 B.R. 334 (Bankr. D. Del. 1987) ......................................................... 8

*In re Roman Catholic Diocese of Harrisburg*
   No. 20-00599 (Bankr. M.D. Pa. March 16, 2020) ................................. 11

*In re The Norwich Roman Catholic Diocesan Corporation*
   No. 21-20687 (Bankr. D. Conn. Sept. 13, 2021) .................................. 12

*In re The Roman Catholic Bishop of Oakland*
   No. 23-40523 (Bankr. N.D. CA June 9, 2023) ...................................... 11

*In re The Roman Catholic Bishop of Santa Rosa*
   No. 23-10113 (Bankr. N.D. CA June 8, 2023) ...................................... 11

Case: 23-30564   Doc# 12   Filed: 08/21/23   Entered: 08/21/23 14:53:30   Page 3 of 22

*In re The Roman Catholic Church of the Archdiocese of New Orleans*
    No. 20-10846 (Bankr. E.D. La. June 22, 2020) ....................................................... 11

*In re The Roman Catholic Diocese of Rockville Centre, New York*
    No. 20-12345 (Bankr. S.D.N.Y. Nov. 17, 2020) ..................................................... 11

*In re Tower Air, Inc.*
    416 F.3d 229 (3rd Cir. 2005).......................................................................................... 9

Statutes

11 U.S.C. § 101, *et seq.* ........................................................................................................ 1

11 U.S.C. § 363(b)(1) ........................................................................................................... 8

28 U.S.C. § 157 ...................................................................................................................... 1

28 U.S.C. § 157(b) ................................................................................................................. 1

28 U.S.C. § 1334 .................................................................................................................... 1

28 U.S.C. § 1408 .................................................................................................................... 1

28 U.S.C. § 1409 .................................................................................................................... 1

Bankruptcy Code
    § 105 .............................................................................................. 1, 7, 12, 2
    § 105(a) ............................................................................................................ 9
    § 363 .............................................................................................. 1, 7, 12, 2
    § 363(b) ................................................................................................... 8, 9, 10
    § 363(c) ............................................................................................................ 11
    § 363(c)(1) ......................................................................................................... 8
    § 365 ........................................................................................................... 12, 3
    § 1112(b) ....................................................................................... 1, 7, 12, 2
    § 1112(b)(4)(C) ................................................................................................ 8

California Corporations Code §§ 10000-10015 ............................................................... 1, 12

Code of Canon Law ........................................................................................................... 1, 12

Religious Freedom Restoration Act ........................................................................................ 1

Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb-2000bb-4)........................ 12

Other Authorities

Cal. Const. ............................................................................................................................ 12

Local Rule 9014-1(f)(4) ......................................................................................................... 1

Case: 23-30564 Doc# 12 Filed: 08/21/23 Entered: 08/21/23 14:53:30 Page 4 of 22

U.S. Const. amend. I .......................................................................................................... 1, 12

Case: 23-30564    Doc# 12    Filed: 08/21/23    Entered: 08/21/23 14:53:30    Page 5 of 22

The Roman Catholic Archbishop of San Francisco ("RCASF" or "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), hereby moves the Court (the "Motion") for authority to continue its insurance programs. In support of this Motion, the Debtor relies upon the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and First Day Motions* filed on the Petition Date ("Passarello Background Decl."), the *Declaration of Joseph J. Passarello* filed in support of this Motion ("Passarello Decl."), the *Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and First Day Motions* ("Gaspari Decl.") and all exhibits filed in support thereof.[1] In further support of this Motion, Debtor relies upon the following points and authorities:

## I.

## JURISDICTION

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 9014-1(f)(4). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are Bankruptcy Code[2] sections 363(b), 1112(b) and 105(a).[3]

## II.

## RELIEF REQUESTED

2. By this Motion, the Debtor requests entry of an order, substantially in the form attached to this Motion as Exhibit 1 (the "Proposed Order"), pursuant to sections 363, 1112(b), and 105 of the Bankruptcy Code, authorizing the Debtor to (i) continue administering the Insurance Programs (defined below) for the Debtor and Insurance Participating Entities (defined below), in

---

[1] Capitalized terms not otherwise defined in this Motion shall have the same meanings ascribed to them in the Passarello Background Decl., the Passarello Decl., and the Gaspari Decl.
[2] Unless otherwise indicated, all section references in this Motion are to 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").
[3] The RCASF does not, by filing its petition for relief and other documents in this Bankruptcy Case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon Law, the First Amendment of the United States Constitution, the Constitution for the State of California, California's law on corporations sole (California Corporations Code §§ 10000-10015), the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, California trust law, and the rights to object to disclosure of information and to contend that certain assets discussed in the Motion are not property of the estate.

the ordinary course of business and consistent with past practices; (ii) continue funding all premiums, contributions, deductibles, reserves, and service fees related to Insurance Coverage (defined below) and receiving reimbursement for same; (iii) renew, amend, supplement, extend, purchase, or terminate Insurance Coverage in the ordinary course of business; and (iv) pay any and all amounts related to the Insurance Programs that remained unpaid on the Petition Date (defined below). The relief requested includes payment of approximately $330,000 of insurance contributions, deductibles, reserves and service fees related to pre-petition events or claims on an interim basis and a total of approximately $1.2 million on a final basis.

**III.**

**BACKGROUND**

3. On August 21, 2023 (the "Petition Date"), the RCASF commenced its chapter 11 reorganization case by filing a voluntary petition for relief. The RCASF filed the Bankruptcy Case in order to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCASF and bring healing to survivors, parishioners and others affected by past acts of sexual abuse. The RCASF requires the bankruptcy court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of the claims against it, including the claims by survivors of abuse, trade creditors and others, while continuing its ministries and the support it offers to Catholic parishes and communities. Additional detailed background information on the RCASF can be found in the Passarello Background Decl. and the Gaspari Decl.

4. In each diocesan bankruptcy where a plan of reorganization has been confirmed, the plan confirmed by the bankruptcy court was a pot plan negotiated through extensive mediation by and among the interested parties in the Bankruptcy Case, after exchanging information with statutory and/or other committees appointed by the Office of the United States Trustee (the "U.S. Trustee") in those cases, which mediations settled disputes over what constituted property of the bankruptcy estate and provided for a settlement of the claims of abuse survivors. The RCASF intends to negotiate a pot plan of reorganization as early as possible which will: (a) allocate the

RCASF's remaining assets fairly among the legitimate competing interests for such property; (b) provide a process to fully, fairly and expeditiously liquidate claims of abuse survivors; and (c) permit the RCASF to carry on the RCASF's essential ministries and services so the RCASF can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCASF's ministry, education, and charitable outreach.

5.      Pursuant to sections 1107 and 1108, the Debtor continues to operate its business and manage its property as a debtor and debtor in possession. No trustee or examiner has been requested or appointed in the Bankruptcy Case.

## IV.

## FACTUAL BACKGROUND FOR RELIEF REQUESTED

6.      As further discussed in the Passarello Background Decl., the RCASF provides certain administrative services and pooling arrangements for the various components of the RCASF, as well as for certain "Insurance Participating Entities" pursuant to certain service management agreements (collectively, the "Services Agreements") with certain of the Insurance Participating Entities, and otherwise pursuant to policy as to other Insurance Participating Entities. The RCASF receives fees for the services the RCASF provides under the Services Agreements. The Insurance Participating Entities included in the insurance programs are the Parishes, Schools, CASC, RPSC, Seminary, Cemeteries and the Catholic Charities. Passarello Decl., at ¶4.

7.      In the ordinary course of business, the Debtor maintains various forms of insurance coverage ("Insurance Coverage") for itself and the Insurance Participating Entities. In order to maintain appropriate and cost-effective Insurance Coverage, the Debtor maintains certain insurance policies and participates in a risk-sharing pool (the "Insurance Programs"). Passarello Decl., at ¶5.

8.      The Debtor and the Insurance Participating Entities are insured for property, general liability/casualty, equipment breakdown, terrorism, special crime, students' and volunteers' accident, cybercrime, fiduciary and excess liability coverage through multiple third-party insurers. Passarello Decl., at ¶6.

9. The Debtor's property insurance, subject to certain terms, coverage limits and exclusions, is provided by Allied World Assurance Company, Golden Bear Insurance Company, Westchester Surplus Lines Insurance, Lexington Insurance Company (AIG), Landmark Insurance Company (RSUI), Evanston Insurance Company (Markel), Arch Re, Aspen Re, AXIS Capital Insurance, Kinsale Insurance Company, Teas, Palms Insurance, General Star National Insurance Company, Lloyd's of London, Mitsui Sumitomo Insurance Company, Great American Insurance Group, and Homeland Insurance Company (collectively, the "Property Insurers"). The collective annual premiums to provide property coverage for RCASF and the Insurance Participating Entities through the Property Insurers for the coverage year beginning July 1, 2023, is $2,167,444. Passarello Decl., at ¶7.

10. The Debtor's casualty insurance, subject to certain terms, coverage limits and exclusions, is provided by (i) The National Catholic Risk Retention Group (SML, E&O, D&O, EBL & SBLL), (ii) Berkley Insurance company (E&O, D&O, EBL, SBLL), (iii) Allied World Assurance Company (GL & AU only), (iv) Great American Insurance Group (GL & AU only), and (v) Liberty Mutual Insurance (GL & AU only) (collectively, the "Casualty Insurers"). The collective annual premiums to provide casualty coverage for itself and the Insurance Participating Entities through the Casualty Insurers for the coverage year beginning July 1, 2023, is $2,162,892. Passarello Decl., at ¶8.

11. Subject to certain terms, coverage limits and exclusions, The Hartford Insurance Company provides equipment breakdown coverage for the Debtor and the Insurance Participating Entities. The annual premium for equipment breakdown coverage for the coverage year beginning July 1, 2023, is $39,614. Passarello Decl., at ¶9.

12. Subject to certain terms, coverage limits and exclusions, Beazley Insurance provides terrorism coverage for the Debtor and the Insurance Participating Entities. The annual premium for this terrorism coverage for the coverage year beginning July 1, 2023, is $94,916. Passarello Decl., at ¶10.

13. Subject to certain terms, coverage limits, and exclusions, Travelers Insurance provides special crime coverage for the Debtor and the Insurance Participating Entities. The annual premium for special crime coverage for the coverage year beginning July 1, 2023, is $5,864. Passarello Decl., at ¶11.

14. Subject to certain terms, coverage limits, and exclusions, QBE Insurance Group provides students and volunteer accident coverage for the Debtor and the Insurance Participating Entities. The annual premium for students and volunteers accident coverage for the coverage year beginning August 1, 2023, is approximately $72,000. Passarello Decl., at ¶12.

15. Subject to certain terms, coverage limits, and exclusions, Beazley Insurance provides cyber coverage for the Debtor and the Insurance Participating Entities. The annual premium for cyber coverage for the coverage year beginning July 1, 2023, is $41,885. Passarello Decl., at ¶13.

16. Subject to certain terms, coverage limits, and exclusions, Chubb Corp. provides crime coverage for the Debtor and the Insurance Participating Entities. The annual premium for crime coverage for the coverage year beginning July 1, 2023, is $29,350. Passarello Decl., at ¶14.

17. Subject to certain terms, coverage limits, and exclusions, Travelers Insurance provides fiduciary coverage for the Debtor and the Insurance Participating Entities. The annual premium for fiduciary coverage for the coverage year beginning July 1, 2023, is $22,234. Passarello Decl., at ¶15.

18. Subject to certain terms, coverage limits and exclusions, GuideOne Insurance provides workers' compensation coverage for the Debtor and the Insurance Participating Entities. The premiums for workers' compensation coverage are paid quarterly for the coverage year beginning January 1, 2023, is approximately $1,050,000. Passarello Decl., at ¶16.

19. AJ Gallagher provides risk management and other insurance brokerage and support services, including a team of account executives and advocates, for the Debtor and Insurance Participating Entities. The annual service fee (the "Risk Management Fee") for these risk management services is approximately $425,000 for the coverage year beginning July 1, 2023, paid annually. The Risk Management Fee is necessary as the risk management services provided by AJ

Case: 23-30564    Doc# 12    Filed: 08/21/23    Entered: 08/21/23 14:53:30    Page 10 of 22

Gallagher are necessary for the Debtor and the Insurance Participating Entities to properly evaluate, select and continue to receive coverage, as well as to address insurance issues that may arise during a policy period. Passarello Decl., at ¶17.

20.     The Debtor and the Insurance Participating Entities also receive services from Gallagher Bassett Services as a third-party administrator to address and evaluate property insurance claims. Among other things, Gallagher Bassett provides estimates for claims and related expenses. The fees for these services are included in the Gallagher Risk Management Fee. Passarello Decl., ¶18.

21.     The Debtor and the Insurance Participating Entities also receive services from George Hills Company as a third-party administrator to address and evaluate liability claims including auto liability and sexual misconduct. Among other things, George Hills Company provides estimates for claims and related expenses. The fees for these services are provided for an annual fee of approximately $46,000. Passarello Decl., ¶19.

22.     The Debtor is required to pay deductibles and other out-of-pocket costs up to certain amounts on a per-occurrence basis ("Insurance Deductibles"). The property and general liability/casualty policies for the Debtor provide for a self-insurance or retention levels of $250,000 to cover any such costs and generally pays the first $250,000 of out-of-pocket expenses for any claims made by the Debtor. The Insurance Participating Entities other than Catholic Charities and the Seminary pay a $2,500 deductible for each of their respective claims and the RCASF pays the balance of the Insurance Deductibles. Catholic Charities and the Seminary pay for their own Insurance Deductibles separately. For the coverage year ending June 30, 2023, the Debtor paid approximately $1.6 million in Insurance Deductibles and out-of-pocket costs related to various claims covered by the Insurance Programs. Passarello Decl., at ¶20.

23.     The Debtor pays the premiums for the Insurance Coverage, any Insurance Deductibles, and any service fees and other fees related to the Insurance Programs and recovers a portion of such payments by billing each Insurance Participating Entity an allocated portion of the total cost for such Insurance Coverage. The amount billed to each Insurance Participating Entity

takes various factors into account to fairly allocate costs and risk and ensure sufficient funding. For example, AJ Gallagher prepares invoices allocating the premiums for property insurance based upon square footage of the buildings insured. In addition to its allocated premiums, the RCASF includes in each Participating Entity's an administrative fee to recover certain costs, including broker's fees, property related services, legal, finance, human resources, security, child safety protection, and to account for retention and self-insurance coverages. Passarello Decl., at ¶21. The allocations and billing to the Insurance Participating Entities generally occurs in October or November of each year[4] and is remitted to RCASF by each Participating Entity over the course of the year. Although the timing of the payments received from the Participating Entities varies, the full amount billed is due by the end of June each year.

24. Currently, there are outstanding deductible payments due for pre-petition events, which, pursuant to the Debtor's current insurance policies, that the Debtor expects its insurers to demand payment of as a condition of continued coverage in the amount of approximately $1.2 million. Of this amount, approximately $330,000 of insurance contributions, deductibles, reserves and service fees related to pre-petition events or claims may need to be paid within the first 30 days after the Petition Date. It is likely that other deductible payments will come due for pre-petition events as well. In the ordinary course of the Debtor's business and pursuant to the Insurance Programs, these deductible payments are paid from the Debtor's self-insurance reserves. Passarello Decl., at ¶22.

25. By this Motion, the Debtor requests entry of the Proposed Order, pursuant to sections 363, 1112(b), and 105 of the Bankruptcy Code, authorizing the Debtor in the ordinary course of business to (i) continue administering the Insurance Programs for the Debtor and Insurance Participating Entities in the ordinary course of business consistent with past practices; (ii) continue funding all premiums, contributions, deductibles, reserves, and service fees related to Insurance Coverage and receiving reimbursement for same; (iii) renew, amend, supplement, extend, purchase, or terminate Insurance Coverage in the ordinary course of business; and (iv) pay any and all amounts

---

[4] Except that in 2023, the RCASF billed the Insurance Participating Entities in August 2023.

related to the Insurance Programs that remained unpaid on the Petition Date; *provided, however*, that no claims arising from, or in connection with, alleged pre-petition sexual misconduct may be paid other than pursuant to the terms of a confirmed reorganization plan or pursuant to further order of this Court.

**V.**

**BASIS FOR RELIEF REQUESTED**

**A.**  **Insurance Coverage Is Required by the Bankruptcy Code and the U.S. Trustee Guidelines.**

26.    Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  In addition, in many instances, the Insurance Coverage is required by the regulations, laws, and contracts that govern the Debtor's activities, including the operating guidelines issued by the Office of the United States Trustee (the "U.S. Trustee Guidelines").  Accordingly, permitting the Debtor to continue to maintain its Insurance Coverage and amend, extend, renew, or replace its Insurance Coverage as needed, in its judgment, without further order of the Court, is essential to the Debtor's estate and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines have the authority to supplement.

**B.**  **Section 363(c)(1) Permits the Debtor to Maintain Its Insurance Coverage and Make Expenditures Related Thereto in the Ordinary Course of Business.**

27.    Section 363(c)(1) of the Bankruptcy Code provides, in relevant part, that a Debtor may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that a debtor "show that a sound business purpose justifies such actions." *See In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b)

Case: 23-30564    Doc# 12    Filed: 08/21/23    Entered: 08/21/23 14:53:30    Page 13 of 22

of the Bankruptcy Code).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as opposed to a decision made arbitrarily or capriciously), courts generally will not entertain objections to the debtor's conduct."  See *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3rd Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

**C.**  **The Court May Authorize the Debtor to Maintain Its Insurance Coverage and Make Expenditures Related Thereto Pursuant to Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity.**

28.  Pursuant to Bankruptcy Code section 105(a), courts have invoked the "necessity of payment" doctrine[5] to authorize the immediate payment of a debtor's pre-petition obligations to unsecured creditors before plan confirmation when such payment is essential to the continued operation of the debtor in a chapter 11 reorganization.  *See In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (to justify payment of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 and n.1 (3d Cir. 1972) (pre-Bankruptcy Code case recognizing "necessity of payment" cases permitting immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid).

29.  The Ninth Circuit has recognized the "necessity of payment" doctrine.  In *Burchinol v. Cent. Wash. Bank (In re Adam's Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987), the Ninth Circuit discussed the existence of two competing "fundamental tenets" of bankruptcy: (1) equality in the treatment of all creditors; and (2) the rehabilitation of debtor.  The court stated that the rehabilitation of a debtor "may supersede the policy of equal treatment" of creditors, and went on to describe such situations, specifically mentioning the payment of pre-petition wages and benefits to employees.  *Id.* ("Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital

---

[5]  Alternatively called the "necessity of payment" rule.

malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.").[6] Furthermore, the court went on to state that section 364(d), for example, "illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation." *Id.*

30.     In its discussion, the *Adam's Apple* court did not mention an earlier Ninth Circuit case, *In re B & W Enters., Inc.*, 713 F.2d 534 (9th Cir. 1983), which questioned whether the "necessity of payment" doctrine survived the 1978 changes to the Bankruptcy Code, and stated that, if it did, the court would apply the doctrine only to railroad cases "absent compelling reasons." *Id.* at 537. Ultimately, the court in that case declined to apply the doctrine because the appellants had not presented "sufficient justification" for extending the doctrine to the (non-railroad) debtor. *Id.* Numerous courts throughout the country have held that the doctrine did survive the 1978 Bankruptcy Code changes and can apply to non-railroad Debtor. *See In re Ionosphere Clubs, Inc., supra*, at 175-176; *In re Just for Feet, Inc.*, 242 B.R. 821 (Bankr. D. Del. 1999); *In re Gulf Air*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (finding that payment of pre-petition wage and benefit obligations was in the best interests of creditors and necessary for the successful reorganization of the debtor, the court granted the debtor's motion to pay pre-petition employee related expenses). Moreover, the *Adam's Apple* court in its discussion did not limit the doctrine to railroad cases only.

**D.     The Applicable Standards Permit the Court to Authorize Continuation of the Insurance Coverage and Insurance Programs.**

31.     Here, the Insurance Programs provide an efficient, cost-effective way to procure necessary insurance for the Debtor and the Insurance Participating Entities. Satisfying possible outstanding or future obligations related to the Insurance Programs is warranted under section 363(b) of the Bankruptcy Code and the above described applicable standards.

---

[6] *See also In re Ionosphere Clubs, Inc., supra*, at 176 ("The policy of equality among creditors… may be of significance in liquidation cases under Chapter 7, however, the paramount policy and goal of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor.").

Case: 23-30564    Doc# 12    Filed: 08/21/23    Entered: 08/21/23 14:53:30    Page 15 of 22

32.     The Debtor has routinely maintained Insurance Coverage and administered the Insurance Programs in the ordinary course of its operations and must continue to do so on a going forward basis in order to operate.  Further, the Insurance Programs administered by the Debtor are typical for a Roman Catholic Archdiocese of its size and include standard coverages for nonprofits such as the Debtor and the Insurance Participating Entities.

33.     Continuation of Insurance Coverage is essential to preserve uninterrupted operations and the value of the Debtor's estate and is in the best interests of the estate and its creditors.  Failing to maintain Insurance Coverage would impair the Debtor's ability to operate and potentially violate U.S. Trustee Guidelines and other applicable regulations and requirements, resulting in a material adverse effect on the Debtor and the value of the estate.

34.     In addition, because the Debtor carries Insurance Coverage and administers the Insurance Programs in the ordinary course of business, the Debtor submits that Court approval to continue existing policies, programs, and related payments postpetition is not necessary because of the authority granted by section 363(c) of the Bankruptcy Code.  Nonetheless, out of an abundance of caution, the Debtor requests that the Court grant the relief requested in this Motion and enter the Proposed Order authorizing the continuation of the Insurance Coverage and Insurance Programs as consistent with the Debtor's operating needs, and to permit, but not require, the Debtor, in its discretion, to continue the Debtor's practices, programs, policies, and plans for Insurance Participating Entities as those practices, programs, policies, and plans were in effect as of the Petition Date, as may be modified, terminated, amended, or supplemented from time to time hereafter.

35.     Courts have routinely approved the maintenance of existing insurance programs in a variety of similar chapter 11 cases.  *In re The Roman Catholic Bishop of Santa Rosa*, No. 23-10113 (Bankr. N.D. CA June 8, 2023) [ECF 224]; *In re The Roman Catholic Bishop of Oakland*, No. 23-40523 (Bankr. N.D. CA June 9, 2023) [ECF 119]; *In re Roman Catholic Diocese of Harrisburg*, No. 20-00599 (Bankr. M.D. Pa. March 16, 2020) [ECF 118]; *In re The Roman Catholic Diocese of Rockville Centre, New York*, No. 20-12345 (Bankr. S.D.N.Y. Nov. 17, 2020) [ECF 165]; *In re The*

*Roman Catholic Church of the Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La. June 22, 2020) [ECF 176]; *In re The Norwich Roman Catholic Diocesan Corporation*, No. 21-20687 (Bankr. D. Conn. Sept. 13, 2021) [ECF No. 236].

## VI.

## **RESERVATION OF RIGHTS**

36.     Nothing contained in this Motion is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought in this Motion, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

37.     Nothing contained in this Motion is intended to be or shall be construed as a waiver of any of the Debtor's rights under any applicable law, including, without limitation, the Code of Canon Law, the First Amendment of the United States Constitution, the Constitution of the State of California, California Corporations Code §§ 10000-10015, the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb-2000bb-4), the church autonomy doctrine, charitable trust law, California trust law, and the Debtor's rights under any insurance policies and to proceeds thereof, and to object to disclosure of information and contend that certain assets discussed in this Motion are not property of the estate

## VII.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order, pursuant to sections 363, 1112(b), and 105 of the Bankruptcy Code, as follows:

1.     Authorizing the Debtor to continue administering the Insurance Programs for the Debtor and Insurance Participating Entities, in the ordinary course of business consistent with past practices, including the use of Gallagher Basset and George Hills

in their capacity as third-party administrators ("Administrators") of the Insurance Programs.

2. Authorizing the Debtor in the ordinary course of business to continue funding all premiums, contributions, deductibles, reserves, and service fees related to Insurance Coverage and receiving reimbursement for same from participants in the Insurance Programs;

3. Authorizing the Debtor in the ordinary course of business to renew, amend, supplement, extend, purchase, or terminate Insurance Coverage in the ordinary course of business;

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

4. Authorizing the Debtor and the Administrators to pay any and all amounts related to the Insurance Programs that remained unpaid on the Petition Date and to continue to pay any pre-petition and post-petition claims, premiums, deductibles, defense costs, obligations, reimbursements and administrative costs related to the Insurance coverage, in the ordinary course of business and in their sole discretion; *provided, however*, that no claims arising from, or in connection with, alleged pre-petition sexual misconduct may be paid other than pursuant to the terms of a confirmed reorganization plan or pursuant to further order of this Court; and

5. For such other and further relief as the Court deems just and proper.

Dated: August 21, 2023

FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP


By             */s/ Paul J. Pascuzzi*
       PAUL J. PASCUZZI
       JASON E. RIOS
       THOMAS R. PHINNEY
       Proposed Attorneys for The Roman Catholic
       Archbishop of San Francisco

Dated: August 21, 2023


SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By             */s/ Ori Katz*
       ORI KATZ
       ALAN H. MARTIN
       Proposed Attorneys for The Roman Catholic
       Archbishop of San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **INTERIM [PROPOSED] ORDER GRANTING DEBTOR'S EMERGENCY MOTION TO CONTINUE INSURANCE PROGRAMS** |
| | Date: August 24, 2023<br>Time: 1:30 p.m.<br>Location: Via ZoomGov |
| | Judge: Hon. Dennis Montali |
| | *Hearing Requested on Shortened Time* |

The emergency motion of The Roman Catholic Archbishop of San Francisco ("<u>Debtor</u>"), for an order authorizing the debtor to continue its insurance programs (the "<u>Motion</u>") came on for hearing on August 24, 2023, at 1:30 p.m., in Courtroom ___ of the United States Bankruptcy Court for the Northern District of California. The Debtor appeared through its counsel, Paul J. Pascuzzi of Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP and Ori Katz of Sheppard Mullin Richter & Hampton LLP. Other appearances were noted on the record. All capitalized terms used but not defined in this Order shall have the meanings given to them in the Motion.

The Court having considered the Motion, the *Declaration of Joseph P. Passarello in Support of Petition and First Day Motions* ("<u>Passarello Background Decl.</u>"), the *Declaration of Joseph P. Passarello* in support of this Motion ("<u>Passarello Decl.</u>"), the *Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and First Day Motions* ("<u>Gaspari Decl.</u>") filed in support of the Motion, and the matters reflected in the record of the hearing, and the Court having found that it has

jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the United States Trustee, the twenty largest unsecured creditors, all secured creditors, and any applicable governmental entities; that no further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtor, its estate, and its creditors; and that good and sufficient cause exists for such relief,

Accordingly, it is hereby ORDERED pursuant to sections 363, 1112(b), and 105 of the Bankruptcy Code, as follows:

1. The Motion is GRANTED, on an interim basis, as set forth herein;

2. The Debtor is authorized in the ordinary course of business to continue administering the Insurance Programs for the Debtor and Participating Entities in the ordinary course of business consistent with past practices, including the use of the Gallagher Bassett Services and George Hills Company in their capacities as third party administrators ("Administrators") of the Insurance Programs.

3. The Debtor is authorized in the ordinary course of business to continue funding all premiums, contributions, deductibles, reimbursements, reserves, and service fees related to Insurance Coverage and receiving reimbursement for same from participants in the Insurance Programs.

4. The Debtor is authorized in the ordinary course of business to renew, amend, supplement, extend, purchase, or terminate Insurance Coverage in the ordinary course of business.

5. The Debtor and Administrator are authorized in the ordinary course of business and in their sole discretion to pay any and all amounts related to the Insurance Programs that remained unpaid on the Petition Date, including payment of approximately $330,000 of insurance contributions, deductibles, reserves and service fees related to pre-petition events or claims on an interim basis with a total of approximately $1.2 million pending the final hearing on the Motion, and to continue to pay any prepetition and postpetition claims, premiums, deductibles, defense costs, obligations, reimbursements and administrative costs related to the Insurance coverage; provided, however, that no claims arising from or in connection with alleged prepetition sexual misconduct may be paid other than pursuant to the terms of a confirmed reorganization plan or pursuant to

1    further order of this Court.

2          6.      The Debtor is authorized to take such actions and to execute such documents as may

3    be necessary to implement the relief granted by this Order.

4          7.      Notwithstanding the relief granted herein and any actions taken pursuant hereto,

5    nothing herein shall be deemed:  (i) an admission as to the validity of any claim against the Debtor;

6    (ii) a waiver of the Debtor's rights to dispute any claim on any grounds; (iii) a promise or

7    requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type

8    specified or defined hereunder; (v) a request or authorization to assume any agreement, contract or

9    lease pursuant to section 365 of title 11 of the Bankruptcy Code; or (vi) a waiver of the Debtor's

10   rights under the Bankruptcy Code or any other applicable law.

11         8.      The Court shall retain jurisdiction to hear and determine all matters arising from the

12   implementation of this Order.

13                                    **END OF [PROPOSED] ORDER**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-
Case No. 23-30564
DEBTOR'S EMERGENCY MOT. TO CONT. INSURANCE PROGRAMS – EX. 1

Case: 23-30564    Doc# 12    Filed: 08/21/23    Entered: 08/21/23 14:53:30    Page 22 of
22