1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD
3     WILLOUGHBY PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA  95814
   Telephone:     (916) 329-7400
5  Facsimile:     (916) 329-7435
   Email:         ppascuzzi@ffwplaw.com
6                 jrios@ffwplaw.com
                  tphinney@ffwplaw.com
7
   ORI KATZ, State Bar No. 209561
8  ALAN H. MARTIN, State Bar No. 132301
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
9     A Limited Liability Partnership
      Including Professional Corporations
10 Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
11 Telephone:     (415) 434-9100
   Facsimile:     (415) 434-3947
12 Email:         okatz@sheppardmullin.com
                  amartin@sheppardmullin.com
13
14 Proposed Attorneys for The Roman Catholic
   Archbishop of San Francisco
15
                UNITED STATES BANKRUPTCY COURT
16
        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
17
   In re                                    Case No. 23-30564
18
   THE ROMAN CATHOLIC ARCHBISHOP            Chapter 11
19 OF SAN FRANCISCO,
                                            **DEBTOR'S EMERGENCY MOTION FOR**
20          Debtor and                      **INTERIM AND FINAL ORDERS**
            Debtor in Possession.           **AUTHORIZING THE DEBTOR TO (1) PAY**
21                                          **CERTAIN PREPETITION INVOICES FOR**
                                            **ABUSE SURVIVORS' ASSISTANCE AND**
22                                          **SAFE ENVIRONMENT PROGRAMS, AND**
                                            **(2) CONTINUE ITS PREPETITION**
23                                          **PRACTICE OF PAYING FOR ABUSE**
                                            **SURVIVORS' ASSISTANCE AND SAFE**
24                                          **ENVIRONMENT PROGRAMS**

25                                          Date:      August 24, 2023
                                            Time:      1:30 p.m.
26                                                      Via ZoomGov

27                                          Judge:     Hon. Dennis Montali

28

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1

II. JURISDICTION ...........................................................................................................2

III. BACKGROUND..........................................................................................................2

    A.    General Background.............................................................................2

    B.    Diocesan Mission Programs................................................................5

        1.    Abuse Survivors' Assistance..................................................5

        2.    Safe Environment Programs...................................................6

IV. RELIEF REQUESTED ................................................................................................8

V. BASIS FOR RELIEF ...................................................................................................8

    A.    Prepetition Abuse Survivors' Assistance and Safe Environment Programs ............9

    B.    The Postpetition Abuse Survivors' Assistance and Safe Environment Programs.........................................................................................11

    C.    Basis for Relief Under Bankruptcy Rule 6003(b) .................................................12

    D.    Basis for Waiver of Bankruptcy Rule 6004(h)......................................................12

VI. RESERVATION OF RIGHTS ..................................................................................12

VII. NOTICE ....................................................................................................................13

VIII. CONCLUSION ........................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*In re Archdiocese of Milwaukee*
No. 11-20059 (SVK) (Bankr. E.D. Wis. Apr. 18, 2011)..........................................................8

*In re B & W Enters., Inc.*
713 F.2d 534 (9th Cir. 1983)................................................................................................10

*Burchinol v. Cent. Wash. Bank (In re Adam's Apple, Inc.)*
829 F.2d 1484 (9th Cir. 1987)..........................................................................................9, 10

*In re Columbia Gas Sys., Inc.*
171 B.R. 189 (Bankr. D. Del. 1994) ......................................................................................9

*In re Gulf Air*
112 B.R. 152 (Bankr. W.D. La. 1989) ................................................................................10

*In re Just for Feet, Inc.*
242 B.R. 821 (Bankr. D. Del. 1999) ...................................................................................10

*In re Lionel Corp.*
722 F. 2d 1063 (2d Cir. 1983) .............................................................................................11

*In re Penn. Cent. Transp. Co.*
467 F.2d 100 (3d Cir. 1972)..................................................................................................9

*In re The Roman Catholic Bishop of Oakland*
No. 23-40523 (Bankr. N.D. CA June 22, 2023)....................................................................8

*In re The Roman Catholic Church of the Archdiocese of New Orleans*
No. 20-10846 (MSG) (Bankr. E.D. La. June 15, 2020) ........................................................8

*In re The Roman Catholic Diocese of Rockville Centre, New York*
No. 20-12345 (SCC) (Bankr. S.D.N.Y. Oct. 16, 2020) ........................................................8

<u>Statutes</u>

U.S.C. 11 § 105 ...............................................................................................................1, 8

U.S.C. 11 § 363 ...................................................................................................................8

U.S.C. 11 § 363(b) .....................................................................................................1, 2, 11

11 U.S.C. § 105(a)...........................................................................................................2, 9

11 U.S.C. § 363(b)(1) ........................................................................................................11

| | | |
|---|---|---|
| 1 | 11 U.S.C. § 363(c) | 11 |
| 2 | 11 U.S.C. § 363(c)(1) | 11 |
| 3 | 11 U.S.C. § 365 | 12 |
| 4 | 28 U.S.C. § 157(b) | 2 |
| 5 | 28 U.S.C. § 1408 | 2 |
| 6 | 28 U.S.C. § 1409 | 2 |
| 7 | 42 U.S.C. §§ 2000bb-2000bb-4 | 13 |
| 8 | CA Corp. Code §§ 10000-10015 | 13 |
| 9 | CCL | 12 |

## Other Authorities

| | |
|---|---|
| California Assembly Bill No. 218 | 3 |
| Constitution of the State of California | 12 |
| Fed. R. Bankr. P. 2002 | 13 |
| Fed. R. Bankr. P. 6003 | 2, 12 |
| Fed. R. Bankr. P. 6003(b) | 12 |
| Fed. R. Bankr. P. 6004 | 2 |
| Fed. R. Bankr. P. 6004(h) | 12 |
| Fed. R. Bankr. P. 9013 | 1, 8 |
| Fed. R. Bankr. P. 9014 | 1, 8 |
| United States Constitution First Amendment | 12 |

The Roman Catholic Archbishop of San Francisco ("RCASF" or "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), hereby moves this Court (the "Motion"), pursuant to sections 105 and 363(b) of title 11 of the United States Code (the Bankruptcy Code")[1] and Rules 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of interim and final orders, authorizing the Debtor (i) to pay certain prepetition invoices for abuse survivors' assistance and safe environment programs, and (ii) to continue to pay certain invoices for such programs in the ordinary course of its business.

This Motion is based on the within memorandum of points and authorities, the notice of hearing on first day motions filed by the Debtor, the *Declaration of Joseph J. Passarello in Support of Petition and First Day Motions* ("Passarello Background Decl."), the *Declaration of Deacon Fuad "Fred" Totah* in support of this Motion ("Totah Decl."), the *Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and First Day Motions* ("Gaspari Decl.") filed concurrently herewith and incorporated in this Motion by reference and upon such oral and documentary evidence as may be presented at the hearing on the Abuse Survivor Assistance Motion. The Debtor's proposed form order granting the relief requested in this Motion on an interim basis (the "Interim Order") is attached hereto as Exhibit 1.

## I.

## INTRODUCTION

1.      The Debtor has an established process for survivors of clergy abuse to have access to trained professionals who can help them address their trauma. To support these survivors, among other things, the Debtor pays for the survivors' counseling with licensed therapists.

2.      In addition, the Debtor has implemented safe environment programs to prevent the future occurrence of sexual abuse by clergy or others affiliated with the Debtor. These safe environment programs involve, among other things, strict education and training protocols for all

---

[1] Unless otherwise indicated, all section references in this Motion shall be to the Bankruptcy Code.

who minister or volunteer within the Archdiocese and mandatory fingerprinting and background checks for employees, clergy, and volunteers who have direct contact with children.

3.     These programs are meant to serve those affected by historical clergy sexual abuse and to prevent future abuse.  They <u>must</u> continue uninterrupted during this Bankruptcy Case.  It is therefore necessary and appropriate to authorize the Debtor to pay any outstanding prepetition balances due and owing for these programs and to continue to fund these programs on a postpetition basis in the ordinary course of business.

## II.

## <u>JURISDICTION</u>

4.     This is a core proceeding pursuant to 28 U.S.C. § 157(b), the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order No. 24 (N.D. Cal.), and Local Rule of Bankruptcy Procedure for the Northern District of California 5011-1(a) (the "<u>Bankruptcy Local Rules</u>").  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The legal bases for the relief requested in this Motion are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## III.

## <u>BACKGROUND</u>

### A.     <u>General Background</u>

6.     On August 21, 2023 (the "<u>Petition Date</u>"), the RCASF commenced this Bankruptcy Case.  The RCASF filed the Bankruptcy Case to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCASF and bring healing to survivors, parishioners and others affected by past acts of sexual abuse.  The RCASF requires the bankruptcy court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of the claims against it, including the claims by survivors of abuse, trade creditors, and others, while continuing its ministries and the support it offers to Catholic parishes and communities. Additional detailed background information on the RCASF can be found in the Passarello

Case No. 23-30564
DEBTOR'S EMERGENCY ABUSE SURVIVOR ASSISTANCE MOTION

1    Background Decl. and the Gaspari Decl.[2]

2         7.    In each diocesan bankruptcy where a plan of reorganization has been confirmed, the
3    plan confirmed by the bankruptcy court was a pot plan negotiated through extensive mediation by
4    and among the interested parties in the Bankruptcy Case, after exchanging information with
5    statutory and/or other committees appointed by the Office of the United States Trustee (the "U.S.
6    Trustee") in those cases, which mediations settled disputes over what constituted property of the
7    bankruptcy estate and provided for a settlement of the claims of abuse survivors.  The RCASF
8    intends to negotiate a pot plan of reorganization as early as possible which will:  (a) allocate the
9    RCASF's remaining assets fairly among the legitimate competing interests for such property; (b)
10   provide a process to fully, fairly and expeditiously liquidate claims of abuse survivors; and (c)
11   permit the RCASF to carry on the RCASF's essential ministries and services so the RCASF can
12   continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely
13   on the RCASF's ministry, education, and charitable outreach.

14        8.    In the State of California, there have been two "open window" periods allowing
15   individuals to bring claims under civil law for childhood sexual abuse which otherwise were barred
16   because the statute of limitations (prescription) had expired.  In 2002, the California Legislature
17   enacted a new statute to permit certain expired civil claims of childhood sexual abuse against not
18   only the perpetrators but also against third-party defendants (like the Debtor) for a one-year period
19   starting January 1, 2003 (the "First Legislation").  While no amount of money can adequately
20   compensate a survivor for the harms she or he has suffered, the RCASF and its insurers, collectively,
21   have paid more than $70 million over the past 20 years to survivors, either directly or by funding
22   group settlement funds, to fulfill the RCASF's responsibility for the abuse of minors by a diocesan
23   clergy.[3]

24        9.    On October 13, 2019, Governor Gavin Newsom signed into law California Assembly
25   Bill No. 218 ("AB 218").  AB 218 again expanded the statute of limitations for individuals to file

26

27   _____

28   [2] Capitalized terms not otherwise defined in this Motion shall have the same meanings ascribed to
     them in the Passarello Background Decl., the Passarello Decl., and the Gaspari Decl.

civil lawsuits for childhood sexual abuse. This allowed certain individuals to bring what had been time-barred claims against individuals and entities for such claims through and including December 31, 2022. As of the Petition Date, there were approximately 537 separate, active lawsuits or mediation demands pending against the Debtor filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor.[4]

10. Addressing the needs of survivors of clergy sexual abuse, and the protection of children, have long been priorities of the Debtor. The RCASF maintains an Independent Review Board to assist the Archbishop in reviewing and handling allegations of sexual abuse by persons acting in the name of the Catholic Church. Its five lay members (including a survivor of clergy sexual abuse, two doctors, a psychologist, and a retired law enforcement officer), the Archbishop and three clergy members, and other RCASF representatives meet quarterly, or more frequently as needed, to assess allegations and make recommendations on the handling of those allegations of sexual abuse of children by clergy. This consultative body is critical to the Debtor's work to address crimes against children and minors. The Independent Review Board works with the Archbishop to analyze and properly respond to claims so credibility can be determined and acted upon in the best interest of the survivor. Totah Decl., at ¶ 4.

11. Since October 2017, the Debtor has required safe environment trainings using an online synchronous platform provided by The National Catholic Risk Retention Group known as Virtus, an international leader in abuse awareness training, for all adults – whether volunteer or employed – who serve in the Archdiocese. Prior to October 2017 the Debtor provided safe environment programs through a different third-party provider. Processes have been put in place to refer anyone with claims regarding clergy sexual abuse to law enforcement, Child Protective Services as appropriate, and the Survivor Assistance Coordinator for assistance. Totah Decl., at ¶ 5.

12. In addition, the Debtor has local administrators at every Parish and School who monitor safe environment compliance and conditions. Totah Decl., at ¶ 6.

---

[4] It is the Debtor's understanding that there is a backlog associated with the processing of these cases in the Clerk's Office for Alameda County, and it is possible that other timely filed claims will be processed after the filing of this Bankruptcy Case of which the Debtor is not currently aware.

**B.**     **Diocesan Mission Programs**

13.     Supporting the needs of survivors of sexual abuse and protecting children have long been priorities of the Debtor.  In that spirit, the Debtor offers (i) counseling, treatment, and programming for those who both claim to have been and have been credibly found to be survivors of abuse by members of the clergy (collectively, the "Abuse Survivors' Assistance"), and (ii) safe environment scanning, training and classes for prevention.  These programs (collectively, the "Safe Environment Programs") are important and necessary to the Debtor's ongoing obligations, including its moral and ethical responsibility to support abuse survivors in the San Francisco Bay Area.  Totah Decl., at ¶ 7.

**1.**     ***Abuse Survivors' Assistance***

14.     Since at least 2002, the Debtor has provided care and compensation to survivors of abuse by clergy.  Broadly, the Debtor pays for survivors to receive psychological counseling and related medical treatment, including medications where appropriate as part of the Abuse Survivors' Assistance.  Totah Decl., at ¶ 8.

15.     The Debtor also employs a representative (the "Survivor Assistance Coordinator") to oversee the administration of the Abuse Survivors' Assistance and to ensure that the aims of the Abuse Survivors' Assistance programs are met and that the programs' needs are satisfied.[5]  Abuse Survivors' Assistance is available for up to three months to any requesting individual who makes an allegation of abuse by clergy or non-clergy affiliated with the Debtor.  In some cases, the Debtor makes these Abuse Survivors' Assistance programs available to family members who have been affected by the abuse of a loved one.  Individuals who make substantiated claims of abuse are eligible for up to one year of Abuse Survivors' Assistance.  After one year, such individuals in San Francisco, San Mateo, and Marin Counties may be eligible for continued wellness programs and Abuse Survivors' Assistance.  Totah Decl., at ¶ 9.

---

[5]  Any compensation that may be paid to the Survivor Assistance Coordinator is included in the relief set forth in the *Motion for Authority to Pay Prepetition Wages, Salaries and Employee Expenses, to Pay Accrued Employee Benefits and Taxes, and Directing Banks to Honor Payroll and Expense Checks* (the "Payroll Motion"), filed contemporaneously herewith.

16.     Abuse Survivors' Assistance is administered by psychologists, psychiatrists, licensed clinical social workers, and licensed marriage and family therapists selected by the recipient (each a "Counselor").  Before engaging a Counselor, the Debtor requires the Counselor to provide evidence that he or she is a state-licensed mental health professional with at least a master's degree in a relevant field.  The Debtor recommends Counselors who have a background in trauma therapy. The Counselors are not employed by, or otherwise affiliated with, the Debtor.  Totah Decl., at ¶ 10.

17.     Counselors generally invoice the Debtor on a monthly basis.  The Debtor pays the Counselors directly and in arrears.  Some Counselors do not invoice the Debtor until well after they have performed services.  Depending on a Counselor's billing practices, there can be a delay of up to three months between the date of service and payment to the Counselor.  Totah Decl., at ¶ 11.

18.     The Debtor requests updates from the Counselors on the goals of the therapy and the progress toward those goals when survivors are comfortable with the Counselors providing such reporting.  Totah Decl., at ¶ 12.

19.     As part of Abuse Survivors' Assistance, the Debtor reimburses the cost of medications and medication management services for recipients of Abuse Survivors' Assistance who require medication as a result of abuse.  Other costs of Abuse Survivors' Assistance include, for example, renting space at neutral locations for individual and group therapy sessions for survivors and their families, and advertising the existence and accessibility of Abuse Survivors' Assistance therapy opportunities.  Totah Decl., at ¶ 13.

20.     No written settlement agreement or court order legally obligates the Debtor to pay for any Abuse Survivors' Assistance.  Totah Decl. at ¶ 14.

### 2.     *Safe Environment Programs*

21.     The Debtor also incurs expenses in the ordinary course of its business in connection with "safe environment" training and background check programs that provide a safe environment for parishioners and visitors to diocesan facilities as part of the Safe Environment Programs.  *See, supra*, at ¶¶ 11-13.  Totah Decl. at ¶ 15.

22.     As part of the Safe Environment Program, the Debtor requires that all employees, clergy, and volunteers who have direct, ongoing and certain non-ongoing contact (e.g. field trip

chaperone) with children be "Live Scan" fingerprinted and cleared by law enforcement through the California Department of Justice and the Federal Bureau of Investigation before performing ministry in the Archdiocese. Totah Decl., at ¶ 16.

23. The Debtor continues to require training programs for all adult volunteers and employees whose ministry within the Archdiocese involves direct, ongoing and certain non-ongoing contact with children. The training focuses on, among other things, the nature of child sexual abuse, how it is perpetrated, how to report it, and strategies for prevention. As stated above, in October 2017, the Debtor adopted the online synchronous platform called "Virtus," which is sponsored by The National Catholic Risk Retention Group and is used nationwide by Catholic entities like the Debtor. Before adopting Virtus, the Debtor utilized a different third-party provider. Totah Decl., at ¶ 17.

24. Training through Virtus and other platforms is mandatory, even for a parent volunteering in his or her child's school. In addition to this initial training, the Debtor also requires its volunteers and employees to renew the training every three years thereafter. The Debtor also employs a representative to oversee the administration and compliance with the Safe Environment Program (the "<u>Safe Environment Coordinator</u>") to ensure that the aims of the Safe Environment Programs are met and that the program's needs are satisfied.[6] Totah Decl., at ¶ 18.

25. The Safe Environment Program costs include fees for Live Scan fingerprinting, background checks performed through the assistance of the U.S. Department of Justice, and the cost of the training programs such as licensing fees for the Virtus software and amounts paid to trainers. The Debtor also pays for annual audits with on-site audits every three years, which allow the Debtor to assess compliance with Safe Environment Program policies and address any shortcomings. The on-site audits include additional visit-related expenses such as lodging, meals and transportation. The Debtor pays approximately $300,000 per year in costs for the Abuse Survivors' Assistance and Safe Environment Programs. In addition, the Debtor estimates that approximately $4,000 in

---

[6] Any compensation that may be paid to the Safe Environment Coordinator is included in the relief set forth in the Payroll Motion.

prepetition expenses due under these programs are accrued but unpaid as of the Petition Date. Totah Decl., at ¶ 19.

## IV.

## RELIEF REQUESTED

26.     Pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 9013 and 9014, the Debtor hereby seeks entry of interim and final orders, in substantially the form attached to this Motion as Exhibit 1, authorizing but not directing it to: (i) pay accrued but unpaid prepetition amounts owed to Counselors and other counter parties involved in the Abuse Survivors' Assistance and Safe Environment Programs on an interim basis in the amount of approximately $4,000 and affirmed on a final basis and providing that applicable banks be directed to honor checks or fund transfer requests regardless of whether they were issued prior to, or after, the Petition Date; and (ii) continue to pay those parties on a postpetition basis in the ordinary course of the Debtor's business.

## V.

## BASIS FOR RELIEF

27.     The Debtor performs the Abuse Survivors' Assistance and Safe Environment Programs in furtherance of the Debtor's principal mission of serving the San Francisco Bay Area, performing works of mercy, and fostering the Catholic faith and community. As described above, each of the Abuse Survivors' Assistance and Safe Environment Programs is essential to the Debtor's charitable and religious mission and to its eventual reorganization. They are also required by the United States Conference of Catholic Bishops ("USCCB") Charter "Promise to Protect, Pledge to Heal."

28.     Relief similar to that requested in this Motion has been granted in other chapter 11 cases. *See, e.g., In re The Roman Catholic Bishop of Oakland*, No. 23-40523 (Bankr. N.D. CA June 22, 2023) [ECF 113]; *In re The Roman Catholic Diocese of Rockville Centre, New York*, No. 20-12345 (SCC) [ECF 96] (Bankr. S.D.N.Y. Oct. 16, 2020); *In re The Roman Catholic Church of the Archdiocese of New Orleans*, No. 20-10846 (MSG) [ECF 161] (Bankr. E.D. La. June 15, 2020); *In re Archdiocese of Milwaukee*, No. 11-20059 (SVK) [ECF 192] (Bankr. E.D. Wis. Apr. 18, 2011).

**A.** <u>**Prepetition Abuse Survivors' Assistance and Safe Environment Programs**</u>

29.     As of the Petition Date, some of the costs of providing the Abuse Survivors' Assistance and Safe Environment Programs incurred before the Petition Date (the "<u>Prepetition Costs</u>") remained unpaid.  Paying the Prepetition Costs is critical to ensuring that the Archdiocese's parishioners continue to have access to the Abuse Survivors' Assistance and Safe Environment Programs.  The Abuse Survivors' Assistance and Safe Environment Programs are provided in furtherance of the Archdiocese's charitable and religious mission and required by the USCCB Charter.  Maintaining the uninterrupted continuity of these programs is in the best interests of the Debtor's estate.

30.     Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts, authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Pursuant to Bankruptcy Code section 105(a), courts have invoked the "necessity of payment" doctrine[7] to authorize the immediate payment of a debtor's pre-petition obligations to unsecured creditors before plan confirmation when such payment is essential to the continued operation of the debtor in a chapter 11 reorganization.  *See In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (to justify payment of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 and n.1 (3d Cir. 1972) (pre-Bankruptcy Code case recognizing "necessity of payment" cases permitting immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid).

31.     The Ninth Circuit has recognized the "necessity of payment" doctrine.  In *Burchinol v. Cent. Wash. Bank (In re Adam's Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987), the Ninth Circuit discussed the existence of two competing "fundamental tenets" of bankruptcy: (1) equality in the treatment of all creditors; and (2) the rehabilitation of debtor.  The court stated that the

---

[7] Alternatively called the "necessity of payment" rule.

Case: 23-30564   Doc# 13   Filed: 08/21/23   Entered: 08/21/23 14:58:49   Page 13 of 20

rehabilitation of a debtor "may supersede the policy of equal treatment" of creditors, and went on to describe such situations, specifically mentioning the payment of pre-petition wages and benefits to employees. *Id.* ("Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.").[8] Furthermore, the court went on to state that section 364(d), for example, "illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation." *Id*.

32.    In its discussion, the *Adam's Apple* court did not mention an earlier Ninth Circuit case, *In re B & W Enters., Inc.*, 713 F.2d 534 (9th Cir. 1983), which questioned whether the "necessity of payment" doctrine survived the 1978 changes to the Bankruptcy Code, and stated that, if it did, the court would apply the doctrine only to railroad cases "absent compelling reasons." *Id.* at 537. Ultimately, the court in that case declined to apply the doctrine because the appellants had not presented "sufficient justification" for extending the doctrine to the (non-railroad) debtor. *Id.* Numerous courts throughout the country have held that the doctrine did survive the 1978 Bankruptcy Code changes and can apply to non-railroad Debtor. *See In re Ionosphere Clubs, Inc.*, *supra*, at 175-176; *In re Just for Feet, Inc.*, 242 B.R. 821 (Bankr. D. Del. 1999); *In re Gulf Air*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (finding that payment of pre-petition wage and benefit obligations was in the best interests of creditors and necessary for the successful reorganization of the debtor, the court granted the debtor's motion to pay pre-petition employee related expenses). Moreover, the *Adam's Apple* court in its discussion did not limit the doctrine to railroad cases only.

33.    The Debtor estimates that the aggregate amount of the unpaid invoices for the Prepetition Costs is approximately $4,000.

---

[8] *See also In re Ionosphere Clubs, Inc.*, *supra*, at 176 ("The policy of equality among creditors… may be of significance in liquidation cases under Chapter 7, however, the paramount policy and goal of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor.").

34.    By this Motion, the Debtor seeks authorization to pay all invoices for Prepetition Costs in accordance with its prepetition practices, with approximately $4,000 to be paid on an interim basis and affirmed on a final basis.

**B.    The Postpetition Abuse Survivors' Assistance and Safe Environment Programs**

34.    The Debtor believes that continuing to pay the costs of maintaining the Abuse Survivors' Assistance and Safe Environment Programs after the Petition Date ("Postpetition Costs") is consistent with prepetition practice and in furtherance of the Debtor's charitable and religious mission, and is therefore in the ordinary course of its operations. The Debtor should therefore be authorized to pay the Postpetition Costs as they come due in accordance with the Debtor's prepetition practice pursuant to section 363(c) of the Bankruptcy Code, which provides that "the trustee . . . may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

35.    However, in an abundance of caution, the Debtor seeks authorization to pay all Postpetition Costs as they come due in accordance with its prepetition practices. Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In order to use property of the estate under this provision, "there must be some articulated business justification, other than appeasement of major creditors." *In re Lionel Corp.*, 722 F. 2d 1063, 1070 (2d Cir. 1983).

36.    The Abuse Survivors' Assistance and Safe Environment Programs are crucial to the Debtor's ability to continue its mission to support its community and to maintain the trust of the communities it serves. Accordingly, the Debtor submits that sound reasons exist to continue to provide and pay for Ministerial and Mission Programs on a postpetition basis.

37.    The Debtor estimates that Postpetition Costs will total approximately $25,000 per month. By this Motion, the Debtor seeks authorization to pay all Postpetition Costs in the ordinary course of business and in accordance with its prepetition practices.

**C.** **Basis for Relief Under Bankruptcy Rule 6003(b)**

38.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, the Court may issue an order within the first 21 days of a chapter 11 case granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003(b).  As described above and in the Passarello Decl., the relief requested is necessary for the Debtor to continue the Abuse Survivors' Assistance and Safe Environment Programs without interruption.  Accordingly, the Debtor respectfully submits that the interim relief requested in this Motion is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied as to entry of an interim order.

**D.** **Basis for Waiver of Bankruptcy Rule 6004(h)**

39.     For all the reasons set forth above and in the Passarello Decl., immediate interim relief is necessary to avoid immediate and irreparable harm that would result from interruption in the Abuse Survivors' Assistance and Safe Environment Programs.  Accordingly, ample cause exists to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), and enter interim and final orders that are immediately effective.

**VI.**

**RESERVATION OF RIGHTS**

40.     Nothing contained in this Motion is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought in this Motion, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

41.     Nothing contained in this Motion is intended to be or shall be construed as a waiver of any of the Debtor's rights under any applicable law, including, without limitation, the Code of Canon Law, the First Amendment of the United States Constitution, the Constitution of the State of

California, California Corporations Code §§ 10000-10015, the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb-2000bb-4), the church autonomy doctrine, charitable trust law, California trust law, and the Debtor's rights under any insurance policies and to proceeds thereof, and to object to disclosure of information and contend that certain assets discussed in this Motion are not property of the estate.

## VII.

## <u>NOTICE</u>

42.     Notice of this Motion will be provided to (i) the Office of the U.S. Trustee for Region 17; (ii) the Debtor's 20 largest unsecured creditors; (iii) the Office of the California Attorney General; (iv) special litigation and ordinary course counsel for the RCASF; and (v) those persons who have formally appeared in this Bankruptcy Case and requested service pursuant to Bankruptcy Rule 2002.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is required.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## VIII.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders, in the substantially the forms appended to this Motion as Exhibit 1, as requested in this Motion and grant such other and further relief as may be appropriate.

Dated: August 21, 2023

FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP


By _____/s/ Paul J. Pascuzzi_____
    PAUL J. PASCUZZI
    JASON E. RIOS
    THOMAS R. PHINNEY
    Proposed Attorneys for The Roman Catholic
    Archbishop of San Francisco

Dated: August 21, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____/s/ Ori Katz_____
    ORI KATZ
    ALAN H. MARTIN
    Proposed Attorneys for The Roman Catholic
    Archbishop of San Francisco

14

**EXHIBIT 1**

**[Proposed Interim Order]**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **[PROPOSED] INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO (1) PAY CERTAIN PREPETITION INVOICES FOR ABUSE SURVIVORS' ASSISTANCE AND SAFE ENVIRONMENT PROGRAMS, AND (2) CONTINUE ITS PREPETITION PRACTICE OF PAYING FOR ABUSE SURVIVORS' ASSISTANCE AND SAFE ENVIRONMENT PROGRAMS** |
| | Date:       August 24, 2023 <br> Time:       1:30 0 p.m. <br> Place:      Via ZoomGov |
| | Judge:     Hon. Dennis Montali |
| | *Hearing Requested on Shortened Time* |

The Roman Catholic Archbishop of San Francisco's ("RCASF" or the "Debtor")[1] motion, filed on August [•], 2023, as ECF No. [•] (the "Motion"), for an order authorizing the Debtor (i) to pay certain prepetition invoices for abuse survivors' assistance and safe environment programs, and (ii) to continue to pay certain invoices for such programs in the ordinary course of its business came on for hearing before this Court, on August __, 2023, at _:_0 _.m., on shortened time. Paul J. Pascuzz, Esq., of Felderstein, Fitzgerald, Willoughby, Pascuzzi & Rios LLP, appeared on behalf of the Debtor. All other appearances were as noted on the record.

---

[1] All capitalized terms used but not defined in this Order shall have the same meanings given to them in the Motion.

The Court having considered the Motion, the Passarello Background Decl., the Gaspari Decl., and the Passarello Declaration filed in support of the Motion, and the matters reflected in the record of the hearing, and the Court having found that it has jurisdiction over this proceeding; that this is a core proceeding; that notice given of the Motion is appropriate under the circumstances of this Bankruptcy Case and that no further notice is necessary; that the relief sought by the Motion is in the best interests of the Debtor, its estate, and its creditors; and that good and sufficient cause exists for such relief,

IT IS HEREBY ORDERED that:

1.      The Motion is GRANTED, on an interim basis, as set forth herein.

2.      The Debtor is authorized, but not directed, to pay accrued but unpaid prepetition amounts due and owing to Counselors and other counter parties involved in the Abuse Survivors' Assistance and Safe Environment Programs as of the Petition Date, on an interim basis, *provided, however,* that such interim payment shall not exceed approximately $4,000, in the aggregate.

3.      The Debtor and its employees and agents are authorized to take such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

4.      The Debtor's banks are authorized and directed to honor and pay all pre-petition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Abuse Survivors' Assistance and Safe Environment Programs.

5.      Notwithstanding the relief granted by this Order and any actions taken in accordance with this Order, nothing in the Motion or this Order shall be deemed:  (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined hereunder; (e) a request or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtor's rights under the Bankruptcy Code or any other applicable law.

6.      A final hearing on the Motion shall be held on [MONTH] [DATE], 2023, at [TIME].

**\* \* \* END OF [PROPOSED] ORDER \* \* \***