CHRISTINA L. GOEBELSMANN (SBN 273379)
Assistant United States Trustee
JASON BLUMBERG (SBN 330150)
Trial Attorney
TREVOR R. FEHR (CA SBN 316699)
Trial Attorney
PHILLIP J. SHINE (CA SBN 318840)
Trial Attorney
DEANNA K. HAZELTON (CA SBN 202821)
Trial Attorney
Office of the United States Trustee
450 Golden Gate Avenue, Room 05-0153
San Francisco, California 94102
Phone: (415) 705-3333
Facsimile: (415) 705-3379
Email:  jason.blumberg@usdoj.gov

Attorneys for Tracy Hope Davis,
United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and Debtor in Possession. | Bankruptcy Case No. 23-30564<br><br>Chapter 11<br><br>Date: September 14, 2023<br>Time: 1:30 p.m.<br>Place: Via ZoomGov<br><br>Judge: Hon. Dennis Montali |

**OBJECTION OF THE UNITED STATES TRUSTEE TO FINAL APPROVAL OF DEBTOR'S MOTION FOR CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM [ECF No. 9]**

Tracy Hope Davis, United States Trustee for Region 17 (the "UST"), hereby files this objection to final approval of the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance with Section 345(b); (4) Authorizing Continued Use of Current*

1

*Investment Policy; and (5) Scheduling a Final Hearing* (ECF No. 9) (the "Cash Management Motion"). In support of her Objection, the UST respectfully represents as follows:

## I.    INTRODUCTION

1. The Debtor has not met its burden of demonstrating cause to waive the collateralization requirements of 11 U.S.C. § 345(b). Because the Debtor has more than $160 million invested at BofA Securities and U.S. Bank, a waiver of Section 345(b)'s requirements would pose a risk to the estate. Thus, the Cash Management Motion should be denied.

## II.    STATEMENT OF FACTS

**General Case Background**

2. On August 21, 2023, the Debtor commenced the above-captioned case under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. The Debtor is currently a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtor has not yet filed the required Schedules and Statements, including Schedule A/B, Schedule D, Schedule E/F, and the Statement of Financial Affairs. The Debtor's deadline to file these documents is September 21, 2023. *See* ECF No. 56.

4. The meeting of creditors under 11 U.S.C. § 341 is scheduled for September 28, 2023. *See* ECF No. 55.

5. On September 1, 2023, the UST appointed the official committee of unsecured creditors. *See* ECF No. 58.

6. According to the first day declaration of Joseph J. Passarello (ECF No. 14) (the "First Day Declaration"), the Debtor was incorporated as a California corporation sole in 1854 and "consists of approximately 442,000 Catholics in the counties of San Francisco, San Mateo, and Marin covering approximately 2,325 square miles." *See* First Day Declaration, at ¶ 14.

There are 88 parishes within the archdiocese. *Id*. The parishes are "unincorporated associations" under California law. *Id.*, at ¶ 18.

7. In 2007, the Debtor created two support corporations - known as "CASC" and "RPSC" - to "own and maintain certain capital assets and real properties so that the civil structure of asset ownership conforms closely with Canon Law and historical practice, and to support the mission of Parishes, Schools and Cemeteries." *See* First Day Declaration, at ¶¶ 21-28.

8. According to the First Day Declaration, there are "approximately 537 separate, active lawsuits pending against the Debtor filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor." *See* First Day Declaration, at ¶ 53.

**The Cash Management Motion**

9. As part of the Cash Management Motion, the Debtor seeks authorization to (i) continue to use its existing cash management system, (ii) continue to use its pre-petition accounts and business forms, (iii) continue its investment policies without posting bonds pursuant to 11 U.S.C. § 345(b), and (iv) continue using its credit cards. *See* Cash Management Motion, at ¶ 9.

10. According to the Cash Management Motion and Exhibit 2 thereto, it appears that the Debtor maintains thirteen (13) bank accounts and four (4) investment accounts. *See* ECF No. 9, at p. 35 of 35 ("Exhibit 2"); Cash Management Motion, at ¶ 13 & n.5. Specifically, the Debtor holds:

    a. six (6) bank accounts at Bank of America. The combined balance in these accounts is approximately $11,000,000;

    b. one (1) "Imprest" bank account at Bank of America (#4577) with a balance of $14,946;

   c. one (1) bank account at the Bank of San Francisco (#1486) with a balance of $246,041 (the "Bank of San Francisco Account");

   d. two (2) bank accounts at First Republic Bank ("FRB"). The FRB account ending with digits 1534 has a balance of $257,115. The Debtor intends to close the FRB account ending with the digits 9117 (the "FRB 9117 Account");

   e. one (1) brokerage account at FRB (#0589) with a balance of $15,602 (the "FRB Brokerage Account"). The FRB Brokerage Account is used to liquidate donated securities;

   f. one (1) "Imprest" bank account at Bridge Bank (#8561) with a balance of $48,397;

   g. one (1) "Imprest" bank account at California Bank & Trust ("CB&T") (#9479) with a balance of $96,606;

   h. one (1) bank account at City National Bank (#9001) with a balance of $75,816;

   i. one (1) investment account at Segal Bryant (#8815). The Debtor intends to close this account;

   j. one (1) investment pool account(s) at U.S. Bank with a balance of $104,737,665 (the "U.S. Bank Investment Account"). The Cash Management Motion does not disclose the holdings in this account;[1] and

   k. one (1) investment account at BofA Securities (#9371) with a balance of $57,789,941 (the "BofA Investment Account"). The funds in this account "are invested in BlackRock Liquidity Funds Fed Fund Portfolio Institutional Class, which is a money market mutual fund that currently yields approximately 5.2% of interest per year."

See Cash Management Motion, at ¶¶ 11, 13, 15, 26 & n. 5; Exhibit 2.

  11. Bank of America, Bridge Bank, City National Bank, and U.S. Bank are authorized depositories in the Northern District of California. Moreover, CB&T is a division of Zions Bancorporation, N.A., which is also an authorized depository in the Northern District

---

[1] The UST has requested additional information about the U.S. Bank Investment Account, specifically (i) copies of the most recent statement, and (ii) documentation regarding account holdings. The UST has not yet received this information from the Debtor. See Declaration of Kristin A. McAbee filed herewith, at ¶¶ 4-5.

of California.  Similarly, after it failed, FRB was acquired by JPMorgan Chase, which is also an authorized depository in the Northern District of California.  *See* https://www.justice.gov/ust-regions-r17/region-17-general-information#ch11; *see also* Cash Management Motion, at ¶¶ 10, 31.

12. Bank of San Francisco, BofA Securities, Inc., and Segal Bryant are not authorized depositories in the Northern District of California.  *See* https://www.justice.gov/ust-regions-r17/region-17-general-information#ch11; *see also* Cash Management Motion, at ¶¶ 10, 31.

13. According to the Cash Management Motion, the Debtor "primarily uses its Cash Management System to, among other things, receive (i) unrestricted gifts, bequests, and collections; (ii) restricted donations including proceeds of the Archdiocesan Annual Appeal … ; (iii) payments for various insurance coverages paid by RCASF on behalf of other non-diocesan entities; (iv) commercial rental income; (v) fees for administrative services to certain other Non-Debtor Catholic Entities; (vi) investment income; and (vii) non-Chancery payroll funding on a pass-through basis."  *See* Cash Management Motion, at ¶ 13.

14. On August 23, 2023, the UST filed her Omnibus Objection to Debtor's First Day Motions and Reservation of Rights.  *See* ECF No. 26.  In the Omnibus Objection, the UST sought compliance with Section 345 to protect creditors against the loss of estate funds deposited or invested by the Debtor.

15. On August 25, 2023, the Court approved the Cash Management Motion on an interim basis.  *See* ECF No. 41 (the "Interim Order").  Among other things, the Interim Order provides that the Debtor "shall use reasonable efforts" to accomplish the following acts within 15 days of entry of the Interim Order: (i) close its Segal Bryant investment account; (ii) close

5

Case: 23-30564    Doc# 71    Filed: 09/07/23    Entered: 09/07/23 09:27:21    Page 5 of 11

the FRB 9117 Account; and (iii) have "each of Bank of America, City National Bank, Bridge Bank, FRB, and CB&T designate the Debtor's respective bank accounts at these institutions as 'Debtor in Possession' accounts." *Id.*, at ¶ 10.

16. The Interim Order further requires the Debtor to (i) regularly sweep funds from the FRB Brokerage Account into a debtor in possession account at an authorized depository for the Northern District of California, and (ii) sweep any funds in excess of $250,000 on a daily basis from the Bank of San Francisco Account into a debtor in possession account at an authorized depository for the Northern District of California. *Id.*, at ¶ 11.

### III. OBJECTION

**A.** **Bankruptcy Code Section 345**

17. Bankruptcy Code Section 345(b) protects creditors against the loss of estate funds deposited or invested by debtors. *See In re Columbia Gas Systems Inc.*, 33 F.3d 294, 301 (3d Cir. 1994) ("Ensuring the safety of the bankruptcy funds has been the foremost goal."); *In re CWNevada LLC,* 602 B.R. 717, 744 (Bankr. D. Nev. 2019) ("[t]hose requirements are designed to ensure the safety of the funds held by a trustee or debtor in possession as a fiduciary of a bankruptcy estate").

18. Specifically, Section 345(b) provides that money of the estate shall be insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States. Money of the estate may also be deposited in an entity that has posted a bond in favor of the United States or has deposited securities with the Federal Reserve Bank.

19. A court may waive the requirements of Section 345 upon a showing of "cause." *See* 11 U.S.C. § 345(b). Thus, the Court may modify the requirements of Section 345(b) for

6

Case: 23-30564   Doc# 71   Filed: 09/07/23   Entered: 09/07/23 09:27:21   Page 6 of 11

"'just cause' where strict compliance might 'work to *needlessly handcuff* larger, more sophisticated debtors.'" *See In re Ditech Holding Corp.*, 605 B.R. 10, 22 (Bankr. S.D.N.Y. 2019) (emphasis added).

20. To ensure compliance with Section 345(b), the UST has implemented guidelines for debtors in possession regarding bank accounts (the "UST Guidelines"). Among other things, the UST Guidelines require debtors in possession to close their pre-petition bank accounts and provide proof of the establishment of debtor in possession account(s) at an authorized depositary. *See United States Trustee Chapter 11 Operating and Reporting Guidelines for Debtors in Possession* (Region 17), at § 3, available at https://www.justice.gov/ust-regions-r17/region-17-general-information#ch11.[2]

21. Authorized depositories have agreed to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," (the "UST Manual"), §§ 7-1.1 and 7-1.2.1, at pp. 1-2, available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual. Authorized depositories have also agreed to make periodic reports so that the UST can monitor compliance. *See* UST Manual, § 7-1.3.2, at p. 5.

---

[2] The UST is mindful that some courts have concluded that guidelines established by the UST do not have the force and effect of law. *See, e.g., In re Young*, 205 B.R. 894, 897 (Bankr. W.D. Tenn. 1997); *In re Lani Bird, Inc.*, 113 B.R. 672, 673 (Bankr. D. Hawaii 1990); *In re Gold Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995); *In re Johnson*, 106 B.R. 623, 624-25 (Bankr. D. Neb. 1989). As a result, "if the court is to require debtors to comply with particular provisions of the U.S.T.'s Guidelines, it must be for a reason independent of the Guidelines themselves." *Johnson*, 106 B.R. at 624.

7

B. **The Debtor Has Not Demonstrated Cause for a Waiver of Section 345(b).**

22. As noted above, a Court may waive the requirements of Section 345(b) for "cause." In determining whether cause exists under 11 U.S.C. § 345(b), courts have examined the totality of the circumstances. *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); *In re Ditech Holding Corp.*, 605 B.R. at 17. As part of this analysis, courts have considered the following factors:

> 1. The sophistication of the debtor's business;
>
> 2. The size of the debtor's business operations;
>
> 3. The amount of investments involved;
>
> 4. The bank ratings (Moody's and Standard and Poor) of the financial institutions where debtor-in-possession funds are held;
>
> 5. The complexity of the case;
>
> 6. The safeguards in place within the debtor's own business of insuring the safety of the funds;
>
> 7. The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
>
> 8. The benefit to the debtor;
>
> 9. The harm, if any, to the estate; and
>
> 10. The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*See In re Serv. Merch. Co., Inc.*, 240 B.R. at 896.[3]

23. The Debtor has not addressed some of the factors identified by the *Serv. Merch.* court, including most importantly, the Debtor's ability to reorganize if a financial institution

---

[3] The Debtor cited the *Serv. Merch.* case on page 25 of 35 of the Cash Management Motion.

holding the Debtor's funds fails. Given the size of the investments at U.S. Bank and BofA Securities, which total approximately $160 million or approximately 90 percent of the Debtor's funds, there appears to be a significant risk to the estate.[4]

24. Further, while the Debtor asserts that closing the accounts would be burdensome and may cause the Debtor to "miss[out] on earning approximately $250,000 a month in interest" (Cash Management Motion, a ¶ 58), the Debtor has not indicated that liquidating the accounts would generate any tax consequences.

25. Accordingly, the UST objects to the Cash Management Motion and the entry of a final Order waiving the requirements of Section 345 because the Debtor has failed to provide sufficient evidence that supports a finding that cause exists for this waiver.

26. While the Debtor suggests that funds in one or more of the accounts may or may not be property of the estate, the overriding concern of the UST is that, should a failure contemplated by Section 345 occur resulting in the loss of funds in the accounts, the Debtor would remain liable. In contrast, by virtue of the collateralization and reporting requirements imposed on authorized depositories, compliance with the UST Guidelines will ensure compliance with the requirements of 11 U.S.C. § 345(b). These requirements would not "needlessly handcuff" the Debtor, but rather protect estate funds as Congress envisioned. *Cf.*

---

[4] The Debtor's reliance on 28 U.S.C. § 959(b), *In re Diocese of Buffalo, N.Y.*, 621 B.R. 91 (Bankr. W.D.N.Y. 2020) and California's Uniform Prudent Management of Institutional Funds Act ("UPMIFA") may be misplaced. *See* Cash Management Motion, at ¶¶ 56-67. The UPMIFA provides that the manager of an institutional fund must consider, *inter alia*, the "needs of the institution and the fund to make distributions and to *preserve capital*." *See* Cal. Prob. Code § 18503 (emphasis added). Here, the Debtor has more than $160 million invested in two investment accounts. The invested amount in the *Diocese of Buffalo* case was much less, approximately $21.8 million. 621 B.R. at 92. The increased risk posed by the Debtor's waiver request suggests that the holding in *In re Ditech Holding Corp.* may be more on point. 605 B.R. at 21 (requiring debtors to bring accounts into compliance with Section 345(b), where accounts had daily aggregate deposits of $95 million and "even a minor disruption to their access to the funds … likely would have dire consequences to their business operations and their ability to reorganize under chapter 11").

*In re Ditech Holding Corp.*, 605 B.R. at 22 (requiring debtors to bring accounts into compliance with Section 345(b)).

27. To the extent the Court is inclined to approve the Cash Management Motion, such relief should be limited to the accounts specially identified in Paragraph 13 of the Cash Management Motion. Moreover, the final Order should:

   a. require the Debtor to close the BofA Investment Account and the U.S. Bank Investment Account, or bring the accounts into compliance with Section 345, and provide proof of same to the UST;

   b. require the Debtor to close the Segal Bryant investment account and the FRB 9117 Account and provide proof of same to the UST;

   c. require the Debtor to have its bank accounts at Bank of America, Bridge Bank, City National Bank, CB&T, and FRB designated as "Debtor in Possession" accounts by the institutions and provide proof of same to the UST;

   d. require the Debtor to institute a system to regularly "sweep" the funds from the FRB Brokerage Account into a debtor in possession account at an authorized depository for the Northern District of California;

   e. require the Debtor to institute a system to "sweep" any funds in excess of $250,000 from the Bank of San Francisco Account on a daily basis into a debtor in possession account at an authorized depository for the Northern District of California; and

   f. prohibit the Debtor from opening new accounts unless such accounts are debtor in possession accounts at authorized depositories for the Northern District of California.

28. With respect to the eight (8) "Additional Bank Accounts" at Bank of America identified in the Debtor's supplement to the Cash Management Motion (ECF No. 22) (the "Supplement"), the Debtor has represented that such accounts "are being used by four High Schools [and] do not contain funds of the Debtor, and the Debtor does not use or control the operation of the Additional Bank Accounts." *See* Supplement, at ¶¶ 1-2.

29. Based on this representation, the UST does not oppose the Debtor's request for continued use of the Additional Bank Accounts "without need to designate such accounts as debtor in possession accounts or otherwise complying with the requirements of Bankruptcy Code section 345(b)." *See* Supplement, at ¶ 2. The UST reserves all rights with respect to the Additional Bank Accounts, including to seek compliance with Section 345, if the Debtor's representations about the accounts prove inaccurate.

### IV. CONCLUSION

30. Based on the foregoing, the UST respectfully requests that the Court (i) sustain the Objection, and (ii) deny the Cash Management Motion.

Dated: September 7, 2023

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:/s/ Jason Blumberg
Jason Blumberg
Trial Attorney for the United States Trustee

11

Case: 23-30564    Doc# 71    Filed: 09/07/23    Entered: 09/07/23 09:27:21    Page 11 of 11