1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD WILLOUGHBY
3    PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA  95814
   Telephone:    (916) 329-7400
5  Facsimile:    (916) 329-7435
   Email:        ppascuzzi@ffwplaw.com
6                jrios@ffwplaw.com
                 tphinney@ffwplaw.com
7
   ORI KATZ, State Bar No. 209561
8  ALAN H. MARTIN, State Bar No. 132301
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
9    A Limited Liability Partnership
     Including Professional Corporations
10 Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
11 Telephone:    (415) 434-9100
   Facsimile:    (415) 434-3947
12 Email:        okatz@sheppardmullin.com
                 amartin@sheppardmullin.com
13
   Proposed Attorneys for The Roman Catholic
14 Archbishop of San Francisco

15                  UNITED STATES BANKRUPTCY COURT

16        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| 17  In re | Case No. 23-30564 |
| 18  THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| 19                    Debtor and | **DEBTOR'S (1) REPLY TO OBJECTION OF THE UNITED STATES TRUSTEE TO** |
| 20                    Debtor in Possession. | **FINAL APPROVAL OF DEBTOR'S MOTION FOR CONTINUED USE OF** |
| 21 | **EXISTING CASH MANAGEMENT SYSTEM; AND (2) STATUS REPORT** |
| 22 | **REGARDING COMPLIANCE WITH INTERIM ORDER REGARDING** |
| 23 | **DEBTOR'S EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL** |
| 24 | **BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS** |
| 25 | |
| 26 | *Filed Concurrently with Second Supplemental Declaration of Joseph J. Passarello* |
| 27 | Date:      September 14, 2023 |
|    | Time:      1:30 p.m. |
| 28 | Place:     Via ZoomGov |
|    | Judge:     Hon. Dennis Montali |

The Roman Catholic Archbishop of San Francisco ("<u>RCASF</u>" or the "<u>Debtor</u>"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "<u>Bankruptcy Case</u>"), submits this reply (the "<u>Reply</u>") to the *Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System [ECF No. 9]* (the "<u>UST Objection</u>") and status report on the Debtor's compliance with that certain *Interim Order (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, entered on August 25, 2023, as ECF No. 41 (the "<u>Interim Order</u>").[1]  In support of this Reply, the Debtor relies upon the *Second Supplemental Declaration of Joseph J. Passarello in Support of the Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy* (the "<u>Second Supplemental Passarello Decl.</u>") filed concurrently herewith.  In further support of the Motion, the Debtor respectfully represents as follows:

**I.**

**REPLY TO US TRUSTEE'S OBJECTION**

**A.     <u>Cause Exists to Waive the Requirements of Section 345(b)</u>**[2]

Contrary to the U.S. Trustee's argument that the Debtor has not demonstrated cause for a waiver of section 345(b), RCASF respectfully submits that cause does exist to waive strict adherence to the requirements of section 345(b).  Not only does cause exist to permit the Debtor to retain its BofA Investment Account and U.S. Bank Investment Pool Account (also defined below, and

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion, the Passarello Declaration previously filed contemporaneously with the Motion, or the Background Passarello Decl, the supplement to the Motion filed on August 23, 2023, as ECF No. 22 (the "<u>Supplement</u>"), or the supplemental declaration of Joseph J. Passarello filed in support of the Supplement and the Motion, as applicable.

[2] Unless otherwise indicated, all section references in this Reply shall be to 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>").

together with the BofA Investment Account, the "Investment Accounts"), it is in the best interests of both the Debtor and its creditors to permit the Debtor to maintain its prepetition investment practices and the Investment Accounts. Should the Court sustain the UST Objection and require the Debtor to liquidate and close the Investment Accounts, the Debtor will be unable to earn any rate of return on its investments, including approximately $250,000 per month in interest alone. Thus, the totality of the circumstances favors allowing the Debtor to maintain the Investment Accounts undisrupted.

Section 345(a) authorizes a trustee or debtor in possession to "make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Yet strict compliance with section 345(b) for all debtors, without consideration for the size and sophistication of the debtor seeking relief, will cause an inconsistent application of section 345(a). Large, sophisticated debtors advised by appropriate, experienced advisors often can achieve higher rates of return on their investments than they could net in traditional bank accounts insured by the Federal Deposit Insurance Corporation, while simultaneously diversifying assets sufficiently to protect against losses in value of any single investment.

As discussed in the Motion, courts often, if not routinely, grant requests to approve the continued use of deposit guidelines that do not comply strictly with section 345(b), particularly where the "totality of the circumstances presented" establish cause to waive strict adherence to section 345(b). *See, e.g.*, *In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); *In re King Mountain Tobacco Co., Inc.*, 623 B.R. 323, 334 (Bank. E.D. Wash. 2020); *In re Ditech Holding Corp.*, 605 B.R. 10, 17 (Bankr. S.D.N.Y. 2019).[3]

The UST Objection alleges that because the Debtor did not address each factor that the *Service Merchandise* court considered in deciding that the "totality of the circumstances" supported

_____

[3] Additionally, the Debtor notes that the "totality of the circumstances" includes the Debtor's duty to maintain investment strategies that follow the directives of the California Uniform Prudent Management of Institutional Funds Act, *see generally*, Cal. Prob. Code §§ 18501, *et seq.*, pursuant to the requirements of section 959(b) of title 28 of the United States Code. *Cf. In re The Diocese of Buffalo, N.Y.*, 621 B.R. 91 (Bankr. W.D.N.Y. 2020).

granting a limited waiver of section 345(b) to allow the debtor to maintain its prepetition investment accounts, the Court should not permit the Debtor to maintain the Investment Accounts but instead require the Debtor to liquidate them. Specifically, the UST Objection notes that the Debtor has not addressed its ability to reorganize if the financial institutions holding the Debtor's funds were to fail. The UST Objection also notes that because the Debtor did "not indicate[] that liquidating the [Investment Accounts] would generate any tax consequences[4].... the Debtor has failed to provide sufficient evidence that supports a finding that cause exists for ... waiver [of section 345(b)]." UST Objection at ¶¶ 23-25.

The Motion, together with the Passarello Background Decl., the Passarello Decl., and the Second Supplemental Declaration, set forth sufficient evidence to support the Debtor's position that the Investment Accounts are conservatively invested, and that divestment would harm the Debtor's estate more than it would increase the overall safety of the Debtor's assets. Indeed, the Passarello Decl. describes in detail the Investment Accounts, and the Debtor's prepetition investment practices. Specifically, as set forth in the Passarello Decl., the BofA Investment Account currently yields 5.2% of interest per year. The Passarello Decl. also describes the Debtor's Investment Committee and the responsibility it takes for the Debtor's investment decisions, policies, and financial actions. Mr. Passarello's testimony by declaration establishes that postpetition maintenance of these practices and the Investment Accounts without disturbance is not only consistent with the Debtor's reasonable business judgment, but necessary to maximize the value of the Debtor's estate. As the evidence and support submitted by the Debtor follows the *King Mountain* court's holding that the totality of the circumstances warranted the debtor's continued use of its prepetition investment practices and maintenance of its investment accounts, *see King Mountain*, 623 B.R. at 333, the Debtor respectfully requests that the Court overrule the UST Objection and waive the requirements of section 345(b) as to the Investment Accounts.

---

[4] Notably, the enumerated factors set forth in the *Service Merchandise* case do not require an analysis of the tax consequences that would result from strict adherence to section 345(b). *See Serv. Merch. Co., Inc.*, 240 B.R. at 896. Notwithstanding the foregoing, an analysis of the tax consequences to the Debtor upon divestment is unnecessary as the Debtor is a tax exempt organization.

## II.

## DISCUSSIONS WITH CASH MANAGEMENT BANKS

Since filing the Motion and multiple other first day motions requesting certain customary first day relief on August 21, 2023 ("Petition Date"), and the emergency hearing on the Motion and various other first day motions this Court held on August 25, 2023, the Debtor has engaged in constructive discussions with multiple Cash Management Banks regarding the relief requested by the Motion on any further interim and final basis, including, but not limited to, the proposed form of order that the Debtor intends to submit to the Court for entry, which is appended to this Reply as Exhibit 1 (the "Proposed Second Interim Order").

Specifically, the Debtor has actively engaged with BofA, Wells Fargo, and US Bank, each in its respective capacity as a Cash Management Bank, regarding the following issues.

### A. Bank of America

Bank of America, N.A. ("BofA") has requested that the Debtor clarify the interim order related to the authorization to pay prepetition bank fees related to the maintenance and service of the Bank Accounts (including, but not limited to the Additional Bank Accounts addressed in the Supplement) that may have been due and owing as of the Petition Date. BofA also has requested modification of the language in the interim order regarding protections for the Cash Management Banks against liability for the Cash Management Banks' reliance on representations by the Debtor as to whether any check or other payment order drawn or issued by the Debtor before the Petition Date should be honored.

During discussions between counsel for the Debtor and counsel for BofA regarding any proposed final order on the Motion, BofA made the Debtor aware of three additional accounts held at BofA. St. Anthony Immaculate Conception School uses two of these additional accounts and has been doing so since 2003, or before Mr. Passarello was appointed as the Debtor's CFO;[5] and Holy

---

[5] Both St. Anthony Immaculate Conception School accounts are listed under the Debtor's tax identification number, but the Debtor does not have control over the use of the funds held in them. The account numbers for the two accounts end in #9543 and #8880.

Cross Cemeteries uses the third account, which has been open since 2011[6] (collectively, the "Supplemental Additional Bank Accounts").

BofA also made the Debtor and its advisors aware of the fact that the BofA Investment Account described in the Motion is an account associated with a money market fund to hold uninvested cash associated with the money market fund and currently has a zero balance. Thus, BofA account ending in #9371 should be considered one of the Debtor's bank accounts that it in good faith will use its best efforts to convert to a DIP account. The BofA Investment Account is identified as ending in #2C19 and should be considered the BofA Investment Account, for which the Debtor is asking for relief for cause from the requirements of section 345(b). The Debtor is not aware of any funds in the Supplemental Additional Bank Accounts that have originated from the Debtor or its operations; in fact, the Debtor has been largely unaware that the Supplemental Additional Bank Accounts are listed under either the Debtor's EIN or its TIN.

The Supplemental Additional Bank Accounts have not been listed in the Debtor's general ledger, do not contain funds of the Debtor, and the Debtor does not use or control the operation of the Supplemental Additional Bank Accounts; however, because they are listed under the Debtor's name, EIN, or TIN at BofA, the Debtor requests that the Court authorize the continued use of the Supplemental Additional Bank Accounts in the ordinary course of business without the need to designate such accounts as debtor in possession accounts or otherwise complying with the requirements of Bankruptcy Code section 345(b).

Without this relief, St. Anthony Immaculate Conception School will suffer irreparable harm if unable to access its funds or suffer a delay in use of those funds, as it needs to cover day-to-day operating costs and make payroll for the teachers and staff in the upcoming days. Similarly, Holy Cross Cemeteries, another Non-Debtor Catholic Entity, will suffer irreparable harm if it cannot access its funds or retain control of its Supplemental Additional Bank Account to fund and pay payroll.

---

[6] The Holy Cross Cemeteries account is listed under the Debtor's tax identification number, but the Debtor does not have control over the use of the funds held in them. The account number for the account ends in #2912.

**B.     U.S. Bank**

U.S. Bank National Association, in its capacity as trustee of the Lay SERP Plan and custodian of the Investment Pool Account ("U.S. Bank"), has requested that the Debtor clarify the interim order by incorporating certain additional language to include U.S. Bank, in its capacity as trustee of the Lay SERP Plan and custodian of the Investment Pool Account, as a Cash Management Bank and to ensure that the Cash Management Banks may continue to provide services to the Debtor under certain applicable deposit, trust, and custody agreements without violating the automatic stay under section 362.  The Debtor has incorporated language requested by U.S. Bank into paragraphs 3, 4, 5, and 8 of the Proposed Second Interim Order, and the blackline comparison appended to this Reply as Exhibit 2 (which compares the Second Interim Order against the entered Interim Order) highlights this requested language.

**C.     Wells Fargo**

Wells Fargo Bank, N.A. ("Wells Fargo"), in its capacity as the issuer of the corporate credit cards described in the Motion and the *Debtor's Emergency Motion for Order (1) Authorizing Payment of Prepetition Wages, Salaries and Employee Expenses; (2) to Pay Accrued Employee Benefits and Taxes; and (3) Directing Banks to Honor Payroll and Expense Checks* [ECF No. 7], has requested that the Debtor clarify that Wells Fargo is authorized to continue to perform under the terms of any pre-petition agreements that may exist between Wells Fargo and the Debtor to govern the Debtor's use of the corporate credit cards, except as set forth in any interim or final order that the Court may enter in connection with the Motion.  The Debtor has incorporated additional language to address Wells Fargo's concerns into the Proposed Second Interim Order, specifically at paragraph 8 of the Proposed Second Interim Order.

**III.**

**STATUS OF COMPLIANCE WITH U.S. TRUSTEE REQUIREMENTS AS REQUIRED**

**UNDER THE INTERIM ORDER**

The Debtor also provides by this Reply a status report regarding compliance with paragraph 10 of the Interim Order:

1.  Each of the Debtor's Bank Accounts at BofA and FRB have been designated at these institutions as "Debtor in Possession" accounts and the Debtor has provided proof of such designations to the U.S. Trustee. As to City National Bank, Bridge Bank, and CB&T, the Debtor continues to work with these Cash Management Banks to convert them to "Debtor in Possession" accounts.

2.  The Debtor has closed its Segal Bryant (#8815) investment account and provided proof of such closure to the U.S. Trustee.

3.  The Debtor has closed its FRB (#9117) investment account and provided proof of such closure to the U.S. Trustee.

**IV.**

**<u>RELIEF REQUESTED</u>**

By this Reply, the Debtor requests that the Court (1) authorize the continued use of the Supplemental Additional Bank Accounts as used in the ordinary course of business, without the need to designate such accounts to debtor in possession accounts as outlined in the U.S. Trustee's Guidelines; and (2) enter a further interim order in substantially the form appended to this Reply as Exhibit 2 or the Proposed Second Interim Order.

Dated: September 12, 2023

FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By       /s/ Paul J. Pascuzzi
PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY

Proposed Attorneys for The Roman Catholic Archbishop of San Francisco

Dated: September 12, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By       /s/ Ori Katz
ORI KATZ
ALAN H. MARTIN

Proposed Attorneys for The Roman Catholic Archbishop of San Francisco

Case: 23-30564   Doc# 87   Filed: 09/12/23   Entered: 09/12/23 11:58:58   Page 8 of 27

**Exhibit 1**

**(Proposed Second Interim Order)**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **[PROPOSED] SECOND INTERIM ORDER (1) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; (2) AUTHORIZING MAINTENANCE OF EXISTING BUSINESS FORMS, (3) EXCUSING COMPLIANCE WITH SECTION 345(b); (4) AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY; AND (5) SCHEDULING A FINAL HEARING** |
| | Date:　　　September 14, 2023<br>Time:　　　1:30 p.m.<br>　　　　　　Via ZoomGov |
| | Judge:　　　Hon. Dennis Montali |

The motion of The Roman Catholic Archbishop of San Francisco ("Debtor"), debtor in possession, the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, filed on August 21, 2023, as ECF No. 9 (the "Motion")[1] and the *Debtor's Supplement to the Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms,*

---

[1] Unless otherwise indicated, capitalized terms not otherwise defined in this Order shall have the same meanings ascribed to them in the Motion, Supplement, or the Reply as applicable.

*(3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, filed on August 22, 2023, as ECF No. 22 (the "Supplement"), came on for emergency hearing on August 24, 2023 at 1:30 p.m., and for a second interim hearing on September 14, 2023, before the Honorable Dennis Montali of the United States Bankruptcy Court for the Northern District of California, and the Court having entered the *Interim (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing* on August 25, 2023, at ECF No. 41 ("Interim Order"). Paul J. Pascuzzi, Esq., of Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP and Ori Katz of Sheppard, Mullin, Richter & Hampton LLP appeared on behalf of the Debtor. All other appearances were as noted on the record.

The Court having considered the Motion, the Supplement, the Passarello Background Decl., the Gaspari Decl., the Passarello Decl., the Supplemental Passarello Decl., and the *Debtor's (1) Reply to Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System; and (2) Status Report Regarding Compliance with Interim Order Regarding Debtor's Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts* (the "Reply"), and the *Second Supplemental Declaration of Joseph J. Passarello in Support of Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance with Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing* (the "Second Supplemental Declaration"), all exhibits filed in support of the Motion and declarations, the *United States Trustee's Omnibus Objection to Debtor's First Day Motions and Reservation of Rights [ECF Nos. 7 & 9]* filed on August 23, 2023, as ECF No. 25, and the *Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System* filed on September 7, 2023, as ECF No. 71 (collectively, the "UST Objections"), and the representations made by counsel at the hearing as

reflected in the record of the hearing; and the Court having found that it has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the U.S. Trustee, the Cash Management Banks, the twenty largest unsecured creditors, all secured creditors, if any, and any applicable governmental entities; that no further notice is necessary; that the concerns and objections stated in the U.S. Trustee Objection as to this Motion have been consensually resolved with respect to the Interim Order and this Second Interim Order; that the relief sought in the Motion is in the best interests of the Debtor, its estate, and its creditors; and that good and sufficient cause exists for such relief.

It is hereby ORDERED as follows:

1. The Motion is GRANTED, on an interim basis, as set forth herein;

2. The Debtor is authorized to: (a) designate, maintain, and continue to use any and all existing bank accounts with the same account numbers, including, without limitation, the accounts identified in the Motion; provided however, that the accounts shall be designated as debtor in possession accounts to the extent possible by the relevant banks; and (b) continue to use its existing Cash Management System, which includes use of the Investment Accounts and credit cards. In connection with the ongoing use of the Cash Management System, the Debtor shall continue to maintain strict records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between pre-petition and post-petition transactions, and between the Debtor and any non-Debtor.

3. Each of the Debtor's existing depository and disbursement banks, as well as U.S. Bank National Association in its capacity as trustee of the Lay SERP and custodian of the Investment Pool Account (collectively, the "Cash Management Banks"), is authorized to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the

Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank for the maintenance of and services related to the Bank Accounts, together with all other fees and obligations relating to the Cash Management System.

4. Any of the Debtor's Cash Management Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued, or any direction provided pursuant to the applicable deposit, trust or custody agreement, as applicable, by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court without any duty of further inquiry and without liability for following the Debtor's instructions. The Cash Management Banks shall not be deemed in violation of this Order and shall have no liability for relying on such representations by the Debtor or honoring any check or other payment order that is subject to this Order either (a) at the direction of the Debtor to honor such prepetition check or other payment order, (b) in the good faith belief that this Court has authorized such prepetition check or other payment order to be honored, or (c) as a result of an innocent mistake. To the extent that the Debtor directs that any check or other payment order be dishonored or the Cash Management Banks inadvertently dishonor any check or other payment order, the Debtor may issue replacement checks or other payment orders consistent with the orders of this Court.

5. That (i) those certain existing deposit, trust, and custody agreements, as applicable, between the Debtor and its Cash Management Banks shall continue to govern the post-petition cash management relationship between the Debtor and the Cash Management Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, and (ii) the Debtor and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.

6. Nothing contained herein shall prevent the Debtor from opening any additional bank accounts or closing any existing Bank Account(s) as it may deem necessary and appropriate, and the Cash Management Banks are authorized to honor the Debtor's request to open or close, as the case may be, such bank accounts or additional bank accounts, provided however, that any new

account shall be with a bank that is insured with the Federal Deposit Insurance Corporation that is organized under the laws of the United States or any State thereof and that such account is either bonded or securitized as described in 11 U.S.C. § 345(b) should the account exceed the FDIC insurance limit, and listed on the U.S. Trustee's list of authorized depositories for the Northern District of California.

7. Any and all accounts opened by the Debtor on or after the Petition Date at any Bank shall, for all purposes under the Interim Order or this Second Interim Order, similarly be subject to the rights and obligations of the Interim Order or this Second Interim Order.

8. The Debtor and the Cash Management Banks and Wells Fargo Bank (in connection with the continued use of credit cards) are hereby authorized to continue to perform pursuant to the terms of any pre-petition agreements that may exist between them, except to the extent otherwise directed by the terms of the Interim Order or this Second Interim Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to authorize such performance. The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, except to the extent modified by the terms of the Interim Order, this Second Interim Order or by operation of the provisions of the Bankruptcy Code other than section 362.

9. Except as provided in the Interim Order and this Second Interim Order, the Debtor is authorized to continue to use its existing business forms and stationery without alteration or change.

10. The Debtor shall use reasonable efforts to comply with the following acts, as requested by the U.S. Trustee in resolution, in part, of the U.S. Trustee Objection:

    a. Close its Segal Bryant investment account within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such closure;

    b. Close the FRB account (#9117) within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such closure; and

c.     Have each of Bank of America, City National Bank, Bridge Bank, FRB, and CB&T designate the Debtor's respective bank accounts at these institutions as "Debtor in Possession" accounts within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such designation.

11.     The Debtor shall institute systems to regularly "sweep" funds as follows:

a.     Funds from the FRB brokerage account (#0589) into a debtor in possession account at an authorized depository for the Northern District of California, on a regular basis; and

b.     Any funds in excess of $250,000 from the Debtor's bank account at Bank of San Francisco into a debtor in possession account at an authorized depository for the Northern District of California, on a daily basis.

12.     Except as otherwise set forth in this Interim Order, the Debtor is authorized to continue its current investment practices as described in the Motion and related pleadings, including but not limited to the use of the BofA Securities Investment Account, the Investment Pool Checking Account, the Restricted Donations Account, and the Stock Transfer Account.

13.     Neither this Interim Order, nor the Debtor's payment of any amounts authorized by this Interim Order, shall: (i) result in any assumption of any executory contract by the Debtor; (ii) result in a commitment to continue any plan, program, or policy of the Debtor; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtor.

14.     In granting the Motion, the Court is not making any findings or determinations as to what is or is not property of the estate.  Nothing herein constitutes judicial approval or disapproval, or judicial determination, of what assets are or are not restricted or held in trust or property of the estate or what expenditures are reasonable or appropriate.

15.     The Debtor is excused from redesignating the Additional Bank Accounts and Supplemental Additional Bank Accounts as debtor in possession accounts and complying with the requirements of section 345(b) as to the Additional Bank Accounts and Supplemental Additional Bank Accounts.

Case: 23-30564   Doc# 87   Filed: 09/12/23   Entered: 09/12/23 11:58:58   Page 14 of
27

16.     Notwithstanding the relief granted in this Interim Order, all rights of the U.S. Trustee, any statutory committee(s) appointed in this Bankruptcy Case, or any other party in interest, including any right under section 345(b) of the Bankruptcy Code, to object or otherwise challenge the proposed treatment of the BofA Investment Account and the Investment Pool Account invested with fund managers in separate custodial accounts with U.S. Bank, are reserved.

17.     To the extent the fourteen-day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Interim Order, such stay is hereby waived.

18.     Nothing in this Interim Order authorizes the Debtor to make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise.

19.     The Debtors are authorized to take the actions necessary to effectuate the relief granted in this Interim Order.

20.     The Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Interim Order.

21.     The final hearing on the Motion shall be heard on October ___, 2023, at 1:30 p.m. Opposition, if any, to the granting of the Motion on a final basis shall be filed by September ___, 2023. The Debtor's reply to any opposition shall be filed by September ___, 2023, at 12:00 p.m.

22.     Counsel to the Debtor is directed to serve a copy of this Second Interim Order on all parties on the Limited Service List, as defined in the Debtor's Motion For Order Establishing Notice Procedures on file herein, within five (5) days of the entry of this Second Interim Order and to file a certificate of service with the Clerk of the Court.

APPROVED AS TO FORM.

OFFICE OF THE UNITED STATES TRUSTEE


By: _____
        Jason Blumberg
        Trial Attorney for Tracy Hope Davis,
        United States Trustee for Region 17


### ***END OF [PROPOSED] ORDER***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 2**

**(Blackline Comparison of
Proposed Second Interim Order Against Entered Interim Order)**

PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD WILLOUGHBY
    PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:     (916) 329-7400
Email:          ppascuzzi@ffwplaw.com
                jrios@ffwplaw.com
                tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     (415) 434-9100
Email:          okatz@sheppardmullin.com
                amartin@sheppardmullin.com

Proposed Attorneys for The Roman Catholic
Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **[PROPOSED] SECOND INTERIM ORDER (1) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; (2) AUTHORIZING MAINTENANCE OF EXISTING BUSINESS FORMS, (3) EXCUSING COMPLIANCE WITH SECTION 345(b); (4) AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY; AND (5) SCHEDULING A FINAL HEARING** |
| | *Filed concurrently with Declaration of Joseph J. Passarello* |
| | Date:          ~~August 24~~September 14, 2023 |
| | Time:          1:30 p.m.<br>                Via ZoomGov |
| | Judge:        Hon. Dennis Montali |

The motion of The Roman Catholic Archbishop of San Francisco ("<u>Debtor</u>"), debtor in possession, the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, filed on August 21, 2023, as ECF No. 9 (the "<u>Motion</u>")[1] and the *Debtor's Supplement to the Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, filed on August 22, 2023, as ECF No. 22 (the "<u>Supplement</u>"),[1] came on for emergency hearing on August 24, 2023 at 1:30 p.m., and for a second interim hearing on September 14, 2023, before the Honorable Dennis Montali of the United States Bankruptcy Court for the Northern District of California, and the Court having entered the *Interim (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing* on August 25, 2023, at ECF No. 41 ("Interim Order"). Paul J. Pascuzzi, Esq., of Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP and Ori Katz of Sheppard, Mullin, Richter & Hampton LLP appeared on behalf of the Debtor. All other appearances were as noted on the record.

The Court having considered the Motion, the Supplement, the Passarello Background Decl., the Gaspari Decl., the Passarello Decl., the Supplemental Passarello Decl., and the *Debtor's (1) Reply to Objection of the United States Trustee to Final Approval of Debtor's Motion for*

---

[1] Unless otherwise indicated, capitalized terms not otherwise defined in this Order shall have the same meanings ascribed to them in the Motion, Supplement, or the Reply as applicable.

[1] Unless otherwise indicated, capitalized terms not otherwise defined in this Order shall have the same meanings ascribed to them in the Motion or Supplement as applicable.

*Continued Use of Existing Cash Management System; and (2) Status Report Regarding Compliance with Interim Order Regarding Debtor's Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts* (the "Reply"), and the *Second Supplemental Declaration of Joseph J. Passarello in Support of Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance with Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing* (the "Second Supplemental Declaration"), all exhibits filed in support of the Motion and declarations, the *United States Trustee's Omnibus Objection to Debtor's First Day Motions and Reservation of Rights [ECF Nos. 7 & 9]* filed on August 23, 2023, as ECF No. 25 ~~(the "U.S. Trustee Objection,~~ and the *Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System* filed on September 7, 2023, as ECF No. 71 (collectively, the "UST Objections"), and the representations made by counsel at the hearing as reflected in the record of the hearing; and the Court having found that it has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the U.S. Trustee, the Cash Management Banks, the twenty largest unsecured creditors, all secured creditors, if any, and any applicable governmental entities; that no further notice is necessary; that the concerns and objections stated in the U.S. Trustee Objection as to this Motion have been consensually resolved with respect to the Interim Order and this Second Interim Order; that the relief sought in the Motion is in the best interests of the Debtor, its estate, and its creditors; and that good and sufficient cause exists for such relief.

It is hereby ORDERED as follows:

1.     The Motion is GRANTED, on an interim basis, as set forth herein;

2.     The Debtor is authorized to: (a) designate, maintain, and continue to use any and all existing bank accounts with the same account numbers, including, without limitation, the accounts identified in the Motion; provided however, that the accounts shall be designated as debtor in

possession accounts to the extent possible by the relevant banks; and (b) continue to use its existing Cash Management System, which includes use of the Investment Accounts and credit cards.  In connection with the ongoing use of the Cash Management System, the Debtor shall continue to maintain strict records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between pre-petition and post-petition transactions, and between the Debtor and any non-Debtor.

3.      Each of the Debtor's existing depository and disbursement banks, as well as U.S. Bank National Association in its capacity as trustee of the Lay SERP and custodian of the Investment Pool Account (collectively, the "Cash Management Banks"), is authorized to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of and services related to the Bank Accounts, together with all other fees and obligations relating to the Cash Management System.

4.      Any of the Debtor's Cash Management Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued, or any direction provided pursuant to the applicable deposit, trust or custody agreement, as applicable, by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court without any duty of further inquiry and without liability for following the Debtor's instructions.  The Cash Management Banks shall not be deemed in violation of this Order and shall have no liability for relying on such representations by the Debtor or honoring any check or other payment order that is subject to this Order either (a) at the direction of the Debtor to honor such prepetition check or other payment order, (b) in the good faith belief that this Court has

authorized such prepetition check or other payment order to be honored, or (c) as a result of an innocent mistake. To the extent that the Debtor directs that any check or other payment order be dishonored or the Cash Management Banks inadvertently dishonor any check or other payment order, the Debtor may issue replacement checks or other payment orders consistent with the orders of this Court.

5. That (i) those certain existing deposit, trust, and custody agreements, as applicable, between the Debtor and its Cash Management Banks shall continue to govern the post-petition cash management relationship between the Debtor and the Cash Management Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, and (ii) the Debtor and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.

6. Nothing contained herein shall prevent the Debtor from opening any additional bank accounts or closing any existing Bank Account(s) as it may deem necessary and appropriate, and the Cash Management Banks are authorized to honor the Debtor's request to open or close, as the case may be, such bank accounts or additional bank accounts, provided however, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation that is organized under the laws of the United States or any State thereof and that such account is either bonded or securitized as described in 11 U.S.C. § 345(b) should the account exceed the FDIC insurance limit, and listed on the U.S. Trustee's list of authorized depositories for the Northern District of California.

7. Any and all accounts opened by the Debtor on or after the Petition Date at any Bank shall, for all purposes under the Interim Order or this Second Interim Order, similarly be subject to the rights and obligations of the Interim Order or this Second Interim Order.

8. The Debtor and the Cash Management Banks and Wells Fargo Bank (in connection with the continued use of credit cards) are hereby authorized to continue to perform pursuant to

the terms of any pre-petition agreements that may exist between them, except to the extent otherwise directed by the terms of ~~this~~the Interim Order or this Second Interim Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to authorize such performance. The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, except to the extent modified by the terms of the Interim Order, this Second Interim Order or by operation of the provisions of the Bankruptcy Code other than section 362.

9. Except as provided in the Interim Order and this Second Interim Order, the Debtor is authorized to continue to use its existing business forms and stationery without alteration or change.

10. The Debtor shall use reasonable efforts to comply with the following acts, as requested by the U.S. Trustee in resolution, in part, of the U.S. Trustee Objection:

a. Close its Segal Bryant investment account within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such closure;

b. Close the FRB account (#9117) within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such closure; and

c. Have each of Bank of America, City National Bank, Bridge Bank, FRB, and CB&T designate the Debtor's respective bank accounts at these institutions as "Debtor in Possession" accounts within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such designation.

11. The Debtor shall institute systems to regularly "sweep" funds as follows:

a. Funds from the FRB brokerage account (#0589) into a debtor in possession account at an authorized depository for the Northern District of California, on a regular basis; and

b. Any funds in excess of $250,000 from the Debtor's bank account at Bank of San Francisco into a debtor in possession account at an authorized depository for the Northern District of California, on a daily basis.

12. Except as otherwise set forth in this Interim Order, the Debtor is authorized to continue its current investment practices as described in the Motion and related pleadings, including but not limited to the use of the BofA Securities Investment Account, the Investment Pool Checking Account, the Restricted Donations Account, and the Stock Transfer Account.

13. Neither this Interim Order, nor the Debtor's payment of any amounts authorized by this Interim Order, shall: (i) result in any assumption of any executory contract by the Debtor; (ii) result in a commitment to continue any plan, program, or policy of the Debtor; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtor.

14. In granting the Motion, the Court is not making any findings or determinations as to what is or is not property of the estate. Nothing herein constitutes ~~a~~ judicial approval or disapproval, or judicial determination, of what assets are or are not restricted or held in trust or property of the estate or what expenditures are reasonable or appropriate.

15. The Debtor is excused from redesignating the Additional Bank Accounts and Supplemental Additional Bank Accounts as debtor in possession accounts and complying with the requirements of section 345(b) as to the Additional Bank Accounts and Supplemental Additional Bank Accounts.

16. Notwithstanding the relief granted in this Interim Order, all rights of the U.S. Trustee, any statutory committee(s) appointed in this Bankruptcy Case, or any other party in interest, including any right under section 345(b) of the Bankruptcy Code, to object or otherwise challenge the proposed treatment of the BofA Investment Account and the Investment Pool Account invested with fund managers in separate custodial accounts with U.S. Bank, are reserved.

17. To the extent the ~~fourteen day~~ fourteen-day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Interim Order, such stay is hereby waived.

18.     Nothing in this Interim Order authorizes the Debtor to make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise.

19.     The Debtors are authorized to take the actions necessary to effectuate the relief granted in this Interim Order.

20.     The Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Interim Order.

21.     The final hearing on the Motion shall be heard on ~~September 14~~October____, 2023, at 1:30 p.m. Opposition, if any, to the granting of the Motion on a final basis shall be filed by September ~~7~~____, 2023. The Debtor's reply to any opposition shall be filed by September ~~12~~____, 2023, at 12:00 p.m.

~~///~~

~~///~~

~~///~~

~~///~~

~~///~~

~~///~~

22.     Counsel to the Debtor is directed to serve a copy of this Second Interim Order on all parties on the Limited Service List, as defined in the Debtor's Motion For Order Establishing Notice Procedures on file herein, within five (5) days of the entry of this Second Interim Order and to file a certificate of service with the Clerk of the Court.

APPROVED AS TO FORM.

OFFICE OF THE UNITED STATES TRUSTEE

By: _/s/ Jason Blumberg_____
      Jason Blumberg
      Trial Attorney for Tracy Hope Davis,
      United States Trustee for Region 17

1  ***END OF [PROPOSED] ORDER***

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **<u>Court Service List</u>**

2    Registered ECF Participants only.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4853-3708-8639.14853-3708-8639.3

| Summary report: Litera Compare for Word 11.2.0.54 Document comparison done on 9/12/2023 11:48:16 AM | |
|---|---|
| **Style name:** SMRH Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4853-3708-8639/1/RCASF - 2d Interim Order Granting Cash Management Motion.docx | |
| **Modified DMS:** nd://4853-3708-8639/3/RCASF - 2d Interim Order Granting Cash Management Motion.docx | |
| **Changes:** | |
| Add | 45 |
| Delete | 22 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 69 |