PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
  WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
Email:      ppascuzzi@ffwplaw.com
            jrios@ffwplaw.com
            tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN,
  RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email:      okatz@sheppardmullin.com
            amartin@sheppardmullin.com

Proposed Attorneys for
The Roman Catholic Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>    Debtor and<br>    Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**APPLICATION TO EMPLOY GLASSRATNER ADVISORY & CAPITAL GROUP, LLC d/b/a B. RILEY ADVISORY SERVICES AS FINANCIAL ADVISOR**<br><br>[No Hearing Required] |

The Roman Catholic Archbishop of San Francisco ("RCASF" or the "Debtor"), the debtor in the above-captioned bankruptcy case ("Bankruptcy Case"), hereby applies (the "Application")

for entry of an order authorizing the employment and retention of GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services, together with its agents and independent contractors (collectively "B. Riley") as financial advisor to the Debtor. Before retaining B. Riley, the Debtor canvassed and/or interviewed several potential financial advisor firms and determined that B. Riley was the best candidate to serve as its financial advisor in this Bankruptcy Case.

1. This Application is based on the concurrently filed *Declaration of Wayne P. Weitz* (the "Weitz Declaration"), other relevant papers of record, and upon such further oral and documentary evidence as may be presented in connection with this Application.

## BACKGROUND

2. On August 21, 2023 (the "Petition Date"), Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code in this Court. The Debtor is authorized to operate its business and manage its properties as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No trustee, examiner or statutory committee has been appointed in this Bankruptcy Case.

4. Additional factual background relating to the Debtor's business and commencement of this Bankruptcy Case is set forth in detail in the *Declaration of Joseph Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions* [ECF 14] filed on the Petition Date.

## RETENTION OF B. RILEY

5. The Debtor retained B. Riley as of May 23, 2023 under terms and conditions included in its engagement letter (the "Engagement Letter"), attached hereto as Exhibit 1.

6. The terms and conditions of the Engagement Letter were heavily negotiated, approved by the Debtor's management, and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in connection with B. Riley's engagement.

7. The Debtor selected B. Riley because the professionals of B. Riley have considerable expertise in the fields of accounting, bankruptcy, insolvency, reorganizations, liquidations, valuation, debt restructuring and forensic accounting, among others. Accordingly,

the Debtor believes that B. Riley is well-qualified to advise it in this Bankruptcy Case.

## RELIEF REQUESTED AND SCOPE OF SERVICES

8. As permitted by Bankruptcy Code section 327(a) and Federal Rule of Bankruptcy Procedure 2014(a), the Debtor wishes to employ B. Riley as its financial advisor in connection with the Bankruptcy Case, effective as of August 21, 2023. Accordingly, the Debtor respectfully requests the entry of an order pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) authorizing its employment and retention of B. Riley as its financial advisor to perform the services set forth in this Application, effective as of August 21, 2023.

9. Specifically, it is anticipated that, if its employment is approved, B. Riley will provide the following services as the Debtor's financial advisor (the "Services"):

    a. Assist the Debtor in a review of its strategic options.

    b. Assist the Debtor in developing financial projections and liquidity projections.

    c. Assist the Debtor with negotiations with various stakeholders.

    d. Assist the Debtor in implementing potential operational and/or strategic enhancements.

    e. Assist the Debtor in preparation of the statutory reporting requirements during the chapter 11 proceedings, including the statements of financial affairs and associated schedules and, during the pendency of the Bankruptcy Case, the Monthly Operating Reports (MORs).

    f. Assist with the preparation of reports for, and communications with, the Bankruptcy Court, creditors, and any other constituents.

    g. Review, evaluate and analyze the financial ramifications of proposed transactions for which the Debtor may seek Bankruptcy Court approval.

    h. Provide appraisal and valuation services.

    i. Provide financial advice and assistance to the Debtor in connection with asset sale transactions.

    j.  Assist the Debtor in developing and supporting a proposed Plan of Reorganization.

    k.  Render Bankruptcy Court testimony in connection with the foregoing, as required, on behalf of the Debtor.

    l.  Any other duty or task which falls within the normal responsibilities of a Financial Advisor at the direction of Management and/or Board.

## NO DUPLICATION OF SERVICES

10. The Services provided by B. Riley will complement and not duplicate the services rendered by any other professional retained in the Bankruptcy Case.

11. As set forth in the Weitz Declaration, B. Riley understands that the Debtor may retain additional professionals during the term of B. Riley's engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtor. B. Riley provides distinct and specific services as set forth in this Application, and such Services are not expected to duplicate those to be provided by any other consultants, legal advisors, or investment bankers.

## QUALIFICATIONS OF B. RILEY

12. In light of the size and complexity of the Bankruptcy Case, the Debtor requires a qualified and experienced financial advisor, with the resources, capabilities and experience of B. Riley. The Debtor is familiar with the professional standing and reputation of B. Riley and understands that, as described in the Weitz Declaration, B. Riley has a wealth of experience in providing financial advisory services in complex restructurings and reorganizations, including those involving religious organizations facing significant litigation. *See, e.g.*, *In re The Norwich Roman Catholic Diocesan Corporation,* No. 21-20687 (JJT) (Bankr. D. Conn., July 15, 2021) [ECF 226]; *In re The Roman Catholic Bishop of Santa Rosa,* No. 23-10113 (CN) (Bankr. N.D. Calif., March 13, 2023) [ECF 179]; In *re Kalera, Inc.*, No. 23-90290 (DRJ) (Bankr. N.D. Tex., June 7, 2023) [ECF 186]; *In re Christian Care Centers, Inc.*, No. 22-80000 (SGJ) (Bankr. N.D. Tex., Aug. 1, 202]) [ECF 284]; *In re Limetree Bay Services, LLC*, No. 21-32351 (DRJ) (Bankr. S.D.Tex., July 12, 2021) [ECF 398]; *In re Fresh Acquisitions LLC* et al. No. 21-30721 (SGJ)

(Bankr. N.D. Tex., Apr. 21, 2021) [ECF 171]; *In re PBS Band, Co.*, No. 20-13157 (JTD) (Bankr. D. Del., Mar. 16, 2021) [ECF 408]; *In re Loves Furniture Inc.*, No. 21-40083 (Bankr. E.D. Mich., Mar. 5, 2021) [ECF 275); *In re GGI Holdings, LLC*, No. 20-31818 (HDH) (Bankr. N.D. Tex., June 9, 2020) [ECF 266]; *In re Epic Companies, LLC*, No. 19-34752 (DRJ) (Bankr. S.D. Tex., Nov. 7, 2019) [ECF 377] (financial advisor to the Official Committee of Unsecured Creditors); *In re Lockwood Holdings, Inc.*, No. 18-30197 (DRJ) (Bankr. S.D. Tex., Feb. 16, 2018) [ECF 117]. The Debtor further understands that B. Riley enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

13.     Moreover, B. Riley has provided services to the Debtor in connection with its restructuring efforts since May of 2023. In providing such prepetition professional services to the Debtor, B. Riley has become familiar with the Debtor and its business, including the Debtor's financial affairs, debt structure, operations, and related matters. Having worked closely with the Debtor's management and other advisors, B. Riley has developed relevant experience and expertise regarding the Debtor that will assist it in providing effective and efficient services while the Debtor is in bankruptcy. Accordingly, B. Riley is both well-qualified and uniquely able to represent the Debtor in this Bankruptcy Case in an efficient and timely manner. The Debtor submits that the retention of B. Riley will maximize the value of the Debtor's estate because of B. Riley's recognized expertise in in-court restructurings and knowledge of the Debtor and its operations and financial condition.

## **B. RILEY'S DISINTERESTEDNESS**

14.     B. Riley has informed the Debtor that, to the best of B. Riley's knowledge, information, and belief, other than as set forth in the Weitz Declaration, B. Riley: (a) has no connection with the Debtor, its creditors, or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any judge in the Bankruptcy Court or any person employed in the offices of the same in any matter related to the Debtor and its estate and (b) does not hold or represent any interest adverse to the estate, and therefore believes it is eligible to represent the Debtor.

15. Moreover, to the best of Debtor's knowledge, B. Riley and its employees do not hold or represent any interest that is adverse to the Debtor or Debtor's estate and do not hold or represent any interest adverse to and have no connection with the Debtor's creditors or any party in interest herein in the matters upon which B. Riley is to be retained, except as set forth in the Weitz Declaration. Therefore, to the best of the Debtor's knowledge, B. Riley is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. Throughout the Bankruptcy Case, B. Riley will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties-in-interest in the Bankruptcy Case and it will promptly disclose, by way of a supplemental declaration, any material developments regarding the Debtor or any other pertinent relationships that come to B. Riley's attention.

16. The Weitz Declaration verifies that neither B. Riley nor any of its professionals has any connection with, or represent any interest adverse to the Debtor, its estate, any party in interest, or their attorneys or accountants, other than as set forth in the Weitz Declaration.

17. B. Riley may advise, or may have advised, the Debtor, creditors' committees, or trustees in cases or proceedings against creditors of the Debtor that are unrelated to this Bankruptcy Case. However, those matters do not present a conflict in this Bankruptcy Case.

18. B. Riley has advised, advises, and in the future will likely advise creditors, creditors' committees, and settlement trustees in cases unrelated to the Debtor and this Bankruptcy Case wherein one or more of the firms representing the Debtor or other parties in interest serve as or will serve as counsel.

19. The Debtor believes that the terms and conditions of the Engagement Letter, as modified herein, are fair, reasonable, and market-based terms that should be approved under section 327 of the Bankruptcy Code.

### **B. RILEY'S COMPENSATION**

20. In consideration of the Services to be provided by B. Riley, subject to this Court's approval, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any applicable orders of the Court, the Debtor has agreed to the following fee structure

(the "Fee Structure") to: (i) compensate B. Riley for the Services set forth in this Application on an hourly basis in accordance with B. Riley's ordinary and customary rates in effect on the date such Services are rendered and (ii) reimburse actual and necessary costs and expenses incurred by B. Riley in connection with all Services performed on behalf of the Debtor. The customary hourly rates, subject to periodic adjustments, charged by B. Riley professionals anticipated to be assigned to this Bankruptcy Case are as follows:

| Billing Category | Hourly Billing Rate |
| --- | --- |
| Sr. Managing Directors | $495 - $795 |
| Directors, Managing Directors | $325 - $595 |
| Associates, Other Professionals | $200 - $425 |

21. The hourly rates set forth above are B. Riley's applicable hourly rates for the work of its professionals and staff members for the engagement set forth in this Application. These hourly rates reflect B. Riley's normal and customary billing practices for engagements of this complexity and magnitude. B. Riley revises its hourly rates periodically, generally on January 1 of each year. B. Riley will notify the Court and U.S. Trustee of any hourly rate increases. B. Riley will maintain records, in increments of one tenth of an hour, in support of time incurred providing Services under the Engagement Letter as well as costs and expenses incurred in connection with Services rendered in this Bankruptcy Case. Records will be arranged by category and nature of the Services rendered and will include reasonably sufficient descriptions of those Services provided on behalf of the Debtor. B. Riley's applications for fees and expenses will be paid by the Debtor in the ordinary course of business, as set forth in more detail below.

22. In addition, B. Riley will invoice the Debtor for its reasonable out-of-pocket expenses charged during this Bankruptcy Case, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, and expenses for meals. Further, if B. Riley and/or any of its employees are required to testify or provide evidence at or in connection

with any judicial or administrative proceeding relating to the engagement, the Debtor will compensate B. Riley at its regular hourly rates and reimburse B. Riley for reasonable out-of-pocket expenses (including counsel fees) with respect thereto.

23. The Debtor understands that B. Riley intends to apply to the Court for allowances of compensation and reimbursement of expenses for financial advisory support services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court and guidelines established by the United States Trustee.

24. The Debtor believes that the Fee Structure is reasonable and comparable to those generally charged by financial advisors and consultants of similar stature to B. Riley for comparable engagements, both in and out of chapter 11. The Fee Structure summarized above is consistent with B. Riley's normal and customary billing practices for comparably sized and complex chapter 11 cases and transactions, both in and out of court, involving the services to be provided in connection with chapter 11 cases. Moreover, the Fee Structure is consistent with and typical of arrangements entered into by B. Riley and other financial advisory and consulting firms in connection with the rendering of comparable services to clients such as the Debtor. B. Riley and the Debtor believe that the Fee Structure is both reasonable and on market terms.

25. As set forth in the Weitz Declaration, the Debtor is informed that B. Riley has not and will not share or agree to share any compensation paid or to be paid by the Debtor, other than as permitted by section 504 of the Bankruptcy Code and Bankruptcy Rule 2016. No promises have been made by B. Riley as to compensation in connection with the Bankruptcy Case.

26. Prior to the filing date B. Riley received retainer payments totaling $100,000.00 and payments with respect to invoices totaling $377,644.11. As of the Petition Date, B. Riley continues to hold $64,334.42 of the retainer.

**INDEMNIFICATION**

27. In addition to the preceding, as a material part of the consideration for the agreement of B. Riley to furnish services to the Debtor pursuant to the terms of this Application, and as set forth in the Engagement Letter, B. Riley seeks a limited indemnity from the Debtor for

any claims against B. Riley relating to services it provides to the Debtor in this Bankruptcy Case; provided the Debtor shall not be obligated to indemnify B. Riley for any gross negligence, willful misconduct, bad-faith, self-dealing or breach of fiduciary duty (if any) by B. Riley. The Debtor believes such limited indemnities are common and customary for financial advisory firms and requests that the Court approve such terms as part of B. Riley's engagement:

    a.    Subject to the provisions of subparagraphs (c) and (e) below and approval of the Court, the Debtor is authorized to indemnify, and shall indemnify, B. Riley in accordance with the Engagement Letter and to the extent permitted by applicable law for any claims arising from, related to, or in connection with B. Riley's engagement under this Application in accordance with the Engagement Letter;

    b.    B. Riley shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided pursuant to this Application and the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

    c.    Notwithstanding anything to the contrary in the Engagement Letter, the Debtor shall have no obligation to indemnify B. Riley for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from B. Riley's gross negligence, willful misconduct, bad-faith, self-dealing or breach of fiduciary duty (if any) unless the Court determines that indemnification would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003), or (ii) settled prior to a judicial determination as to B. Riley's gross negligence, willful misconduct, bad-faith, self-dealing, or breach of fiduciary duty (if any), but determined by this Court, after notice and a hearing, to be a claim or expense for which B. Riley is not entitled to receive indemnity under the terms of this Application; and

    d.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this Bankruptcy Case, B. Riley believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification obligations under this

Application, including, without limitation, the advancement of defense costs, B. Riley must file an application in this Court, and the Debtor may not pay any such amounts to B. Riley before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by B. Riley for indemnification, and not as a provision limiting the duration of the Debtor's obligation to indemnify B. Riley.

  e. Any limitation on liability or any amounts to be contributed by the parties to the Engagement Letter pursuant to the terms of the Engagement Letter shall be eliminated during the pendency of this Bankruptcy Case.

## **CONCLUSION**

28. The Debtor believes it is essential that B. Riley be employed to provide the services described above and that B. Riley be permitted to bill on an hourly basis, subject to the requirements of the Bankruptcy Code for Court approval of professional fees.

  WHEREFORE, based upon the foregoing, the Debtor in Possession requests that the Court enter an order authorizing:

1. The employment of GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services as its financial advisor herein on the terms and conditions set forth above pursuant to section 327(a);

2. The employment to be effective as of the Petition Date; and

///
///
///
///
///
///
///
///
///

3. For such other and further relief as the Court may deem proper in the circumstances.

Dated: September 12, 2023

THE ROMAN CATHOLIC
ARCHBISHOP OF SAN FRANCISCO

By: */s/ Father Patrick Summerhays*
Fr. Patrick Summerhays
Vicar Genera and Moderator of the Curia

Dated: September 13, 2023

GLASSRATNER ADVISORY & CAPITAL GROUP, LLC

By: */s/ Wayne P. Weitz*
Wayne P. Weitz
Senior Managing Director

Submitted by:

Dated: September 13, 2023

FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By: */s/ Paul J. Pascuzzi*
PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY

Proposed Attorneys for The Roman Catholic Archbishop of San Francisco

Dated: September 13, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Ori Katz*
ORI KATZ
ALAN H. MARTIN

Proposed Attorneys for The Roman Catholic Archbishop of San Francisco

# EXHIBIT 1

B. RILEY ENGAGEMENT LETTER



| | |
|---|---|
| Date: | May 23, 2023 |
| To: | Roman Catholic Archbishop of San Francisco<br>1 Peter Yorke Way<br>San Francisco, CA 94109<br>    Attn: Rev. Patrick Summerhays, JCL |
| From: | Seth R. Freeman and Wayne P. Weitz |
| RE: | Engagement Letter to serve as Financial Advisor |

### Introduction

This letter agreement (this "Agreement") confirms our understanding that the Roman Catholic Archbishop of San Francisco (the "Archdiocese") is engaging GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley") as its financial advisor. This Agreement shall be effective as of May 23, 2023.

### Scope of Services

Engagements such as this are dynamic, requiring a broad scope of services that may or may not be required as the matter progresses, and which may change as the Archdiocese provides additional information. Based on our current understanding, the Scope of Services may include the following:

- assist the Archdiocese in a review of its strategic options;
- assist the Archdiocese in developing financial projections and liquidity projections;
- assist the Archdiocese with negotiations with various stakeholders;
- assist the Archdiocese in implementing potential operational and/or strategic enhancements;
- if a chapter 11 bankruptcy filing or similar insolvency proceeding is necessary:
  - assist the Archdiocese with First Day Order data collection;
  - assist the Archdiocese with financial reporting;
  - assist the Archdiocese in preparation of the statutory reporting requirements during the chapter 11 proceedings, including the statements of financial affairs and associated schedules and, during the pendency of the case, the Monthly Operating Reports (MORs);
  - assist with the preparation of reports for, and communications with, the Bankruptcy Court, creditors, and any other constituents;
  - review, evaluate and analyze the financial ramifications of proposed transactions for which the Archdiocese may seek Bankruptcy Court approval;
  - provide financial advice and assistance to the Archdiocese in connection with asset sale transactions;
  - assist the Archdiocese in developing and supporting a proposed Plan of Reorganization; and/or
  - render Bankruptcy Court testimony in connection with the foregoing, as required, on behalf of the Archdiocese;
- any other duty or task which falls within the normal responsibilities of a Financial Advisor at the direction of Management and/or Board.



**Compensation**

Our professional fees are based on the number of hours worked at our standard hourly billing rates. B. Riley's current standard hourly rates for the professionals who may work on this engagement range from $225 to $795 per hour. Standard rates for the professionals and/or categories of B. Riley professionals that may be involved in this matter are as follows:

| Wayne Weitz | Sr. Managing Director | $750 |
| Seth Freeman | Managing Director | 650 |
| Coral Hansen | Managing Director | 450 |
| David Greenblatt | Director | 525 |
| Other Staff | Associate-Sr Managing Director | 225-750 |

Please note that for this engagement the hourly rates for Wayne Weitz and Seth Freeman will be discounted by 10%, to $675 and $585 respectively.

B. Riley reviews its hourly rates each January 1, and the Archdiocese should anticipate an annual rate increase each January 1. We bill for our travel time at one-half of our standard hourly billing rates. Unless and until the Archdiocese initiates a Bankruptcy Case, we may submit invoices for our services monthly, bi-weekly, weekly, or at certain logical points during this engagement, as we will determine is appropriate. Invoices are due and payable upon receipt. We reserve the right to suspend service for non-payment, in which event we will not be liable for any costs that arise from such suspension. If the Archdiocese decides to commence a Bankruptcy Case, the Archdiocese agrees that it will pay all outstanding amounts due under this Agreement before it files its bankruptcy petition(s). If B. Riley is retained in the Bankruptcy Case, its fees will be paid in accordance with any applicable federal and local statutes, rules and procedures and the Bankruptcy Court's orders.

If the Archdiocese requests that B. Riley provide services in addition to those specified in the Scope of Services, *e.g.*, litigation support consulting, expert witness testimony, forensic accounting, investment banking, appraisal, etc., those services may be provided pursuant to a separate engagement agreement, subject to different fee arrangements, on mutually agreeable terms.

Should the Archdiocese become a debtor or debtor-in-possession in a Bankruptcy Case, B. Riley's retention as a professional in the case(s), on the terms set forth in this Agreement, will be subject to Bankruptcy Court approval.

Our fees are not contingent on the outcome of this engagement. The provisions of this Section (Compensation) shall not in any way limit the Archdiocese's obligations pursuant to the paragraph below entitled "Indemnification; Limitation of Liability."

**Retainer**

In accordance with B. Riley's standard policy, we will require an initial retainer of $100,000 (one hundred thousand dollars) (the "Retainer"), which shall be due upon the execution of this Agreement. Should the time demand increase, we may require an addition to our Retainer, the amount of which will be agreed upon between the Archdiocese and B. Riley.

The Retainer is meant to be evergreen; invoices shall be applied against the Retainer as they are rendered, and payments shall replenish the Retainer. To the extent the Archdiocese has not filed a Bankruptcy Case, the Archdiocese agrees to replenish the Retainer as may be requested by B. Riley. At the end of the engagement, any Retainer balance shall be applied to our final billing for this engagement or refunded to the extent it exceeds unpaid billings. This Retainer is not intended to be an estimate for



the total cost of work that may be performed, nor have we provided a binding estimate or other form of cap. The Archdiocese recognizes that it is difficult to estimate the amount of time that this engagement may require. The time involved depends upon the extent and nature of available information. It also depends upon the developments that occur as our work progresses. It is our intention to work closely with the Archdiocese to structure our work so that the Archdiocese is aware of the scope and direction of our work as it progresses.

**Limitations; No Third-Party Beneficiary**
B. Riley is not a public accounting firm. While our work may involve analysis of accounting records, the engagement does not include an audit or review of existing records in accordance with generally accepted auditing standards or standards for review engagements. Accordingly, we will not be expressing an audit opinion on any of the financial or other data received in this engagement. B. Riley is not a law firm and will not provide legal or tax advice on any transaction or financing in conjunction with this assignment. In the course of our provision of the services specified in the Scope of Services section above, B. Riley will be entitled to rely on the accuracy and validity of the data disclosed to it or supplied to it by employees and representatives of the Archdiocese.

The Archdiocese acknowledges that all advice (written or oral) given by B. Riley to the Archdiocese is intended solely for the benefit and use of the Archdiocese (limited to the Board (or its equivalent) and management) in considering the matters to which this engagement relates. No advice (written or oral) of B. Riley hereunder shall be used, reproduced, disseminated, quoted, or referred to at any time, in any manner, or for any other purpose, nor shall any public references to B. Riley be made by the Archdiocese, without the prior written consent of B. Riley.

The working papers and other materials created by us during this engagement are our property. At the completion of our engagement, all the Archdiocese's documents will be returned to the Archdiocese at the Archdiocese's request. Unless we are notified otherwise, or unless the Archdiocese requests the files to be returned to the Archdiocese, we will work on the assumption that all documents in our possession may be destroyed one year from the completion of the matter, or the passage of one year without our actively participating in the matter. Please note that it is not our practice to retain working papers, notes, or data files that have been updated or superseded. If you wish us to follow a different retention practice, please indicate your specific request(s) in writing when returning a copy of this Agreement.

**Independent Contractor; No Fiduciary Duty**
The Archdiocese acknowledges and agrees that it is a sophisticated business enterprise and that B. Riley has been retained pursuant to this Agreement as an independent contractor and not as an agent or fiduciary to the Archdiocese or its shareholders, and any duties of B. Riley arising out of its engagement pursuant to this Agreement shall be contractual in nature and shall be owed solely to the Archdiocese. Each party disclaims any intention to impose any fiduciary duty on the other.

**Indemnification; Limitation of Liability**
The Archdiocese agrees to indemnify and hold harmless B. Riley, its affiliates and its and their respective directors, officers, members, managers, employees, and agents ("Indemnified Parties") from and against all claims, liabilities, losses and damages (collectively, "Losses") arising out of or related to this engagement and/or the services performed hereunder, except to the extent such Loss is finally judicially determined or determined pursuant to a final, binding decision of an arbitrator in accordance with the dispute resolution provisions of this Agreement to have resulted primarily from the gross negligence or willful misconduct of B. Riley. Further, the Archdiocese agrees to promptly reimburse B. Riley for any legal fees or other expenses reasonably incurred by B. Riley in connection with such claims as they are incurred. THE ARCHDIOCESE ALSO AGREES THAT NO INDEMNIFIED PARTY SHALL HAVE ANY LIABILITY

**B|RILEY** *Advisory Services*

(WHETHER DIRECT OR INDIRECT, IN CONTRACT OR TORT OR OTHERWISE) TO THE ARCHDIOCESE FOR OR IN CONNECTION WITH THE ENGAGEMENT OF B. RILEY, IN EXCESS OF THE FEES PAID TO B. RILEY HEREUNDER, INCLUDING ANY REASONABLE ATTORNEYS' FEES AND COURT COSTS, EXCEPT TO THE EXTENT THAT ANY SUCH LIABILITY FOR LOSSES, CLAIMS, DAMAGES, LIABILITIES OR EXPENSES ARE FINALLY JUDICIALLY DETERMINED OR DETERMINED, PURSUANT TO A FINAL, BINDING DECISION OF AN ARBITRATOR IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS OF THIS AGREEMENT, TO HAVE RESULTED PRIMARILY FROM SUCH INDEMNIFIED PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. The Archdiocese further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding. The provisions of this paragraph shall survive the completion of the engagement and/or the expiration or termination of this engagement or this Agreement. In the event that a Bankruptcy Case is filed, the provisions of this paragraph shall be subject to approval of the Bankruptcy Court prior to the effective date of any plan of reorganization.

**Representations and Warranties**

The Archdiocese is duly organized, validly existing and in good standing under the laws of the State of California and has the requisite power and authority to enter into and carry out the terms and provisions of this Agreement. Nothing contained in the Archdiocese's charter documents, by-laws, shareholders' agreements, or any other document, agreement, contract or instrument to which the Archdiocese is a party, to which the Archdiocese is subject, or in any order, judgment or settlement of any court or governmental agency to which the Archdiocese is bound conflicts with or in any way restricts or otherwise limits or conditions the Archdiocese's ability to enter into, and perform under, this Agreement and consummate the transactions herein. Neither the entering into of this Agreement nor the consummation of the transactions contemplated herein will trigger any payment by the Archdiocese to a third party (including, but not limited to, any "tail" payments) or require the authorization, registration, qualification, or approval of any government agency to which the Archdiocese is subject.

**Termination**

This Agreement may be terminated immediately by B. Riley or the Archdiocese, in its sole discretion, for any reason whatsoever and without prior notice. Upon termination of this Agreement, B. Riley shall be entitled to all fees and expenses incurred pursuant to this Agreement prior to notice of termination and shall be entitled to the remaining unpaid balance of any fee, subject to any dispute concerning the fees due, and subject to the dispute provision included in this Agreement. The termination of this Agreement shall not relieve the Archdiocese or B. Riley from the provisions of this Agreement relating to indemnification, limitation of liability, settlement, the provisions relating to the payment of the fees, costs and expenses payable hereunder whether or not accrued prior thereto, confidentiality, the status of B. Riley as an independent contractor, the limitation on the use, reliance on and disclosure of B. Riley's advice, limitation to whom B. Riley shall owe any duties, governing law and dispute resolution.

**Confidentiality**

B. Riley agrees not to disclose or permit the disclosure of any of the terms of this Agreement or any information relating to the project to be performed hereunder, provided that such disclosure may be made (a) to any person who is an officer, director, member, manager, or employee of B. Riley or its affiliates or advisors ("Representatives") solely for their use in the performance of the services hereunder and on a need-to-know basis, (b) with the prior written consent of the Archdiocese, or (c) pursuant to a subpoena or order issued by a court, arbitrator or governmental body, agency or



official. In the event that B. Riley shall receive a request to disclose any of the terms of this Agreement under a subpoena or order, B. Riley shall, to the extent legally permissible, (i) promptly notify the Archdiocese, (ii) consult with the Archdiocese on the advisability of taking steps to resist or narrow such request and (iii) if disclosure is required or deemed advisable, cooperate with the Archdiocese, at the Archdiocese's sole cost and expense, in any attempt it may make to obtain an order or other assurance that confidential treatment will be accorded those terms of this Agreement that are disclosed. The confidentiality restrictions contained herein shall continue for a period of two (2) years from the date hereof and shall not apply to information that: (i) at the time of disclosure by the Archdiocese to B. Riley or its Representatives is, or thereafter becomes, generally available to the public, other than as a direct result of a breach by B. Riley of its obligations under this Agreement; (ii) prior to or at the time of disclosure by the Archdiocese to B. Riley or its Representatives, was already in the possession of B. Riley or any of its Representatives; (iii) at the time of disclosure is, or thereafter becomes, available to B. Riley or its Representatives from a third-party source, provided that, to B. Riley's knowledge, such third party is not and was not prohibited from disclosing such Confidential Information to B. Riley; or (iv) is or was independently developed by B. Riley or its Representatives, but not using or referencing the confidential information provided to B. Riley by the Archdiocese.

**Integration; Severability**
This Agreement contains the entire agreement and understanding between B. Riley and/or the Archdiocese concerning the matter. This Agreement supersedes and replaces all prior negotiations, estimates, proposed agreements, and/or agreements (oral and written) concerning B. Riley's services for the Archdiocese in conjunction with the matter. If any portion of this Agreement shall be held or made unenforceable or invalid by a statute, rule, regulation, decision of a tribunal or otherwise, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect, and, to the fullest extent, the provisions of this Agreement shall be severable.

**Governing Law; Dispute Resolution**
The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to choice of law or principles thereof. To the extent allowed by applicable law, any claims or causes of action arising out of, relating to, or in connection with this Agreement may only be brought in the state or federal courts located in the State of California, and the parties agree to submit to the exclusive personal jurisdiction of such courts. The parties hereby further agree that any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by binding arbitration under the Federal Arbitration Act in the venue stated above, before one arbitrator who is a retired judge. The arbitration shall be administered by JAMS under its Comprehensive Arbitration Rules and Procedures and JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction. The costs of arbitration, including the arbitrator's fees and administrative expenses, shall be paid as follows: fifty percent (50%) by the claimant(s) and fifty percent (50%) by the respondent(s), such that no side shall bear more than half the costs of the arbitration. The parties agree that discovery shall be limited to only one deposition on topics that are directly relevant to the services provided in connection with this Agreement. This clause, however, shall not preclude the parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.



**Contact Information**

All correspondence to B. Riley should be directed to:

Seth R. Freeman
B. Riley Advisory Services
19800 MacArthur Boulevard, Suite 820
Irvine, CA 92612

Tel: (415) 229-4860
Email: sfreeman@brieyfin.com

**Conclusion**

If the arrangements described herein are acceptable to the Archdiocese and the services outlined are in accordance with your requirements, please sign and return a copy of this letter. We look forward to working with you on this matter.

Yours very truly,

GLASSRATNER ADVISORY & CAPITAL GROUP LLC d/b/a B. Riley Advisory Services

_____     May 24, 2023
Seth R. Freeman                     _____
Managing Director                   Date

_____     5/24/23
Wayne P. Weitz                      _____
Senior Managing Director            Date


Agreed and accepted:

ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO

_____     5/24/23
Rev. Patrick Summerhays, JCL        _____
Vicar General                       Date


B. Riley Wire Instructions:
Wells Fargo Bank
San Francisco, California USA
Phone: 626-572-1530
Beneficiary: B. Riley Advisory Services
ABA# ▮▮▮▮0 248
Account Number: ▮▮▮▮0418
Reference: Archdiocese of San Francisco