PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:     (916) 329-7400
Facsimile:     (916) 329-7435
    ppascuzzi@ffwplaw.com
    jrios@ffwplaw.com
    tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:     (415) 434-9100
Facsimile:     (415) 434-3947
    okatz@sheppardmullin.com
    amartin@sheppardmullin.com

Proposed Attorneys for
The Roman Catholic Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| In re: | CASE NO. 23-30564 |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor In Possession. | **DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS ADMINISTRATIVE AGENT, AND (II) GRANTING RELATED RELIEF** |
| | [No Hearing Required] |
| | Hon. Dennis Montali |

  The Roman Catholic Archbishop of San Francisco ("Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case (the "Bankruptcy Case"), hereby files this application (the "Application") for the entry of an order, pursuant to sections 327(a), 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California: (a) appointing Omni Agent Solutions, Inc. ("Omni") as administrative agent (the "Administrative Agent") for the Debtor in this Bankruptcy Case effective as of the Petition Date (as defined herein). In support of this Application, the Debtor relies on and incorporates by reference the *Declaration of Paul H. Deutch in Support of Debtor's Application for Entry of an Order (I) Authorizing and Approving the Appointment of Omni Agent Solutions, Inc. as Administrative Agent, and (II) Granting Related Relief* (the "Deutch Declaration"), filed herewith. In further support of this Application, the Debtor respectfully states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION

The United States Bankruptcy Court for the Northern District of California (this "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are sections 327(a), 328, and 330 and Bankruptcy Rules 2014 and 2016.

### II.

### BACKGROUND

On August 21, 2023 (the "Petition Date"), the Debtor filed in this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Bankruptcy Case. On September 1, 2023, the Office of the United States Trustee for the Northern District of California appointed a statutory committee of unsecured creditors in this case pursuant to section 1102 of the Bankruptcy Code (Dkt. No. 58).

Case: 23-30564   Doc# 104   Filed: 09/13/23   Entered: 09/13/23 15:53:05   Page 2 of 27

Additional factual background relating to the Debtor's business, capital structure, and the commencement of the Bankruptcy Case is set forth in detail in the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and First Day Motions*") [Dkt. No. 14] (the "<u>First Day Declaration</u>").[1]

**III.**

**RELIEF REQUESTED**

The Debtor is seeking entry of the Proposed Order authorizing it to employ and retain Omni as Administrative Agent for the Debtor, effective as of the Petition Date, pursuant to the terms and conditions of the Standard Services Agreement (the "<u>Services Agreement</u>"), which is annexed to the Proposed Order as Exhibit 1 and is incorporated herein by reference.

**IV.**

**<u>BASIS FOR RELIEF REQUESTED</u>**

In addition to this Application, the Debtor previously filed an application under 28 U.S.C. § 156(c) for authorization to retain Omni to serve as the claims and noticing agent in the Bankruptcy Case [Dkt. No. 11] (the "<u>Section 156(c) Application</u>"), which was approved on March 17, 2023. *See* Dkt. No.37. Given that the administration of the Bankruptcy Case will require Omni to perform duties outside the scope of 28 U.S.C. § 156(c), the Debtor supplements the Section 156(c) Application with this Application.

Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a). Moreover, section 328 of the Bankruptcy Code provides that a debtor, subject to Court approval, "may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration, as defined herein.

Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

## V.

## SERVICES TO BE PROVIDED

The Debtor seeks to retain Omni to provide, among other things, the following bankruptcy administrative services (the "Administrative Services"), if and to the extent requested:

a. Assist with, among other things, any required solicitation, balloting, and tabulation and calculation of votes, as well as preparing any appropriate reports, as required in furtherance of confirmation of chapter 11 plan(s) (the "Balloting Services");

b. Generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results;

c. In connection with the Balloting Services, handling requests for documents from parties in interest, including, if applicable, brokerage firms and bank back-offices and institutional holders;

d. Gathering data in conjunction with the preparation, and assisting with the preparation, of the Debtor's schedules of assets and liabilities and statements of financial affairs;

e. Providing a confidential data room, if requested;

f. Managing and coordinating any distributions pursuant to a confirmed chapter 11 plan; and

g. Providing such other claims processing, noticing, solicitation, balloting, and administrative services described in the Services Agreement, but not included in the Section 156(c) Application, as may be requested by the Debtor from time to time.

## VI.

## QUALIFICATIONS

Omni comprises leading industry professionals with significant experience in all administrative aspects of large, complex chapter 11 cases. Omni's professionals have experience in claims administration, file preparation, noticing, balloting, tabulation, disbursement services, and facilitating other administrative aspects of chapter 11 cases of this size and complexity.

Omni is well-qualified to serve in the capacity as Administrative Agent, and Omni's retention is in the best interests of the Debtor's estate, creditors, and other parties-in-interest. The Debtor chose Omni based on both its experience and the competitiveness of its fees. Omni has provided identical or substantially similar services in other chapter 11 cases filed in this District and elsewhere.

## VII.

## COMPENSATION

The Debtor proposes to compensate Omni in accordance with the Services Agreement. The Services Agreement sets forth the proposed hourly consulting fee rates, which are subject to adjustment based on Omni's ordinary billing practices. Consistent with company policy with respect to its other clients, Omni will charge the Debtor for all Administrative Services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include (without limitation) costs for photocopying, electronic data management services, including scanning and document imaging, couriers, postage, and other fees related to the services.

Omni intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in connection with the Administrative Services rendered under the Services Agreement. Omni will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in the Bankruptcy Case regarding professional compensation and reimbursement of expenses.

The Debtor respectfully submits that Omni's rates are competitive and comparable to the rates its competitors charge for similar services. Prior to the Petition Date, in connection with

Omni's retention as claims and noticing agent, the Debtor provided Omni a retainer in the amount of $50,000.

Additionally, under the terms of the Services Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Omni and its officers, directors, agents, employees, consultants, and subcontractors under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Omni's gross negligence or willful misconduct or as otherwise provided in the Services Agreement. Such an indemnification obligation is customary, reasonable, and necessary to retain the services of an Administrative Agent in the Bankruptcy Case. Moreover, consistent with the practice in this jurisdiction, the Debtor requested, and Omni has agreed, that the Court approve the indemnification provisions reflected in the Services Agreement subject to the modifications set forth in the Proposed Order. The proposed modifications to the indemnification provisions of the Services Agreement are appropriate under the circumstances, are consistent with recent orders entered in this jurisdiction, and should be approved.

## VIII.

### DISINTERESTEDNESS

The Debtor understands that, except as otherwise set forth in the accompanying Deutch Declaration, and other than in connection with the Bankruptcy Case, Omni and its employees (i) do not have any connection with any of the Debtor, its affiliates, its creditors, or any other party in interest, or its respective attorneys and accountants, the U.S. Trustee or any person employed in the office of the same, or any judge in the Bankruptcy Court for the Northern District of California or any person employed in the offices of the same; (ii) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code; and (iii) do not hold or represent any interest adverse to the Debtor's estate.

Omni will conduct an ongoing review of its files to ensure that no conflict or other disqualifying circumstances exist or arise. If any new facts are discovered, Omni will supplement its disclosure to the Court. Omni will not share any compensation to be paid by the Debtor in connection with Omni's services as Administrative Agent to the Debtor with any other person, other than the principals and employees of Omni, to the extent required by section 504 of the

1   Bankruptcy Code.

2       For the foregoing reasons, the retention of Omni is in the Debtor's best interests and in the

3   best interests of its estate, creditors, and other parties-in-interest, and therefore, the Debtor desires

4   to retain and to employ Omni as its Administrative Agent upon the terms set forth herein and in the

5   Services Agreement.

6       **WHEREFORE**, the Debtor respectfully requests entry of the Order, substantially in the

7   form attached hereto as Exhibit A granting the relief requested herein and such other and further

8   relief as the Court may deem just and appropriate.

9   Dated: September 12, 2023

10
                                                THE ROMAN CATHOLIC ARCHBISHOP OF SAN
                                                FRANCISCO

11                                              By: */s/ Father Patrick Summerhays*
                                                    Fr. Patrick Summerhays,
12                                                  Vicar General and Moderator of the Curia

13  Submitted by:                               FELDERSTEIN FITZGERALD WILLOUGHBY
                                                PASCUZZI & RIOS LLP
14
    Dated: September 13, 2023
15                                              By: */s/ Paul J. Pascuzzi*
                                                    PAUL J. PASCUZZI
16                                                  JASON E. RIOS
                                                    THOMAS R. PHINNEY
17                                                  Proposed Attorneys for The Roman Catholic
                                                    Archbishop of San Francisco
18  Dated: September 13, 2023
                                                SHEPPARD, MULLIN, RICHTER
19                                              & HAMPTON LLP

20                                              By: */s/ Ori Katz*
                                                    ORI KATZ
21                                                  ALAN H. MARTIN
                                                    Proposed Attorneys for The Roman Catholic
22                                                  Archbishop of San Francisco

23

24

25

26

27

28

1                         <u>Exhibit A</u>

2                        Proposed Order

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  23-30564
APPLICATION TO APPOINT
ADMINISTRATIVE ADVISOR

PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
     ppascuzzi@ffwplaw.com
     jrios@ffwplaw.com
     tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
     okatz@sheppardmullin.com
     amartin@sheppardmullin.com

Proposed Attorneys for
The Roman Catholic Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| In re: | Case No.: 23-30564 |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession | **ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS ADMINISTRATIVE AGENT, AND (II) GRANTING RELATED RELIEF** |
| | [No Hearing Required] |
| | Hon. Dennis Montali |

Upon consideration of the application (the "Application")[1] of the above-captioned Debtor

and Debtor in Possession (the "Debtor") for entry of an order (this "Order"), pursuant to sections

327(a), 328, and 330 of the Bankruptcy Code, and Bankruptcy Rules 2014 and 2016, for entry of

---
[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

an order appointing Omni Agent Solutions, Inc. ("Omni") as administrative Agent (the "Administrative Agent") effective as of the Petition Date, all as more fully set forth in the Application; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Local Rule 5011-1(a) of the Bankruptcy Rules for the Northern District of California; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this case and the Application being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Application as provided to the Notice Parties is reasonable and sufficient under the circumstances, and no other or further notice need be provided; and the relief requested in the Application being in the best interests of the Debtor's estate, its creditors and other parties in interest and necessary to prevent immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Application is granted as provided herein.

2.      Notwithstanding the terms of the Service Agreement, attached hereto as Exhibit 1, the Application is approved solely as set forth in this Order.

3.      The Debtor is authorized to retain the Administrative Agent effective as of the Petition Date under the terms of the Service Agreement, and the Administrative Agent is authorized and directed to provide the Administrative Services described in the Application.

4.      With respect to the Administrative Services to be provided as Administrative Agent for the Debtor, Omni shall apply to this Court for allowances of compensation and reimbursement of out-of-pocket expenses incurred in the Bankruptcy Case after the Petition Date in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in the Bankruptcy Case governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.

5.      The Debtor and Omni are authorized to take all actions necessary to effectuate the

relief granted pursuant to this Order in accordance with the Application.

6.     The indemnification provisions of the Services Agreement are approved, subject to the following modifications:

     a.     Subject to the provisions of subparagraphs (c) and (d) below, the Debtor is authorized to indemnify, and shall indemnify, Omni in accordance with the Services Agreement and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Omni's performance of the services described in the Services Agreement;

     b.     Omni shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

     c.     Notwithstanding anything to the contrary in the Services Agreement, the Debtor shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence, willful misconduct, bad-faith, self-dealing, or breach of fiduciary duty, if any; (ii) for a contractual dispute in which the Debtor alleges the breach of Omni's contractual obligations unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution or reimbursement under the terms of the Services Agreement as modified by this Order; and

     d.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Bankruptcy Case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Bankruptcy Case, Omni believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, or reimbursement obligations under the Services Agreement, including without limitation the advancement of defense costs, Omni must file an application before this Court, and the Debtor may not pay any such amounts to Omni before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for payment by Omni for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Omni. All parties in interest shall retain the right to object to any demand by Omni for indemnification, contribution, or reimbursement.

7.     In the event of any inconsistency between the Services Agreement, the Application, and this Order, this Order shall govern.

8.     Notwithstanding anything to the contrary in this Order, the Application, or the

Services Agreement, the Court is not approving Omni's terms and conditions under 11 U.S.C. § 328(a). Omni shall file with this Court applications for the payment of fees in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court or any applicable guidelines regarding submission and approval of fee applications, except for the fees and costs incurred pursuant to Section 156 which shall be governed by this Court's order at Docket No. 37. No funds from any retainer shall be disbursed until fees and expenses are awarded by the Court.

9.     Notwithstanding the possible applicability of Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     This Court shall retain jurisdiction and power with respect to all matters relating to the interpretation or implementation of this Order.

APPROVED AS TO FORM.

OFFICE OF THE UNITED STATES TRUSTEE

By:_____
   Jason Blumberg

**\*\* END OF ORDER \*\***

Case: 23-30564   Doc# 104   Filed: 09/13/23   Entered: 09/13/23 15:53:05   Page 12 of 27

1

**<u>EXHIBIT 1</u>**

2

**SERVICES AGREEMENT**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STANDARD SERVICES AGREEMENT

This Agreement is entered into as of August  9 , 2023, between Omni Agent Solutions, Inc ( "**Omni**") and the Roman Catholic Archbishop of San Francisco (collectively, the "**Company**").[1] The parties agree as follows:

### Terms and Conditions

I.  SERVICES

(a)  Upon request by the Company or as may be necessary for Omni to comply with applicable law, governmental regulation, court order or court rule, Omni shall provide the Company with consulting and administrative services ("**Services**") in connection with the Company's potential filing of a chapter 11 petition under the Bankruptcy Code ("**Code**") and during any chapter 11 case which the Company may initiate. Without limitation, the Services may include any or all of the following: Assisting in the preparation of the Company's bankruptcy schedules and statements of financial affairs ("**Schedules and SOFA**"), noticing, communication related services, claims management and reconciliation, plan solicitation, balloting and tabulation, contract review, securities, claims analysis, providing confidential online workspaces or data rooms (the publication of which shall not violate the confidentiality provisions of this Agreement), account management, disbursements, automation, and any other service which may be agreed upon by the parties.

(b)  The Company understands that to assist or enable Omni to provide the Services, Omni will engage in communications with various persons acting on the Company's behalf (each, a "**Company Party**").[2] The Company represents to Omni and agrees that any and all requests, advice, information or direction which a Company Party provides to or makes of Omni is expressly authorized by the Company, that Omni may rely upon the accuracy and completeness of the information provided without any obligation to further verify it, and that the Company shall be bound by any and all requests, advice, information or direction made.

(c)  The Company understands that Omni is not being retained to provide any legal or financial advice and that none of Omni's communications with a Company Party or any other party constitutes legal or financial advice.

II.  RATES

(a)  The Company agrees to pay Omni for all fees, charges and costs for Services provided on its behalf in the amounts set forth in the schedule attached hereto as Exhibit "A" (the "**Rate Schedule**"). *For purposes of this engagement, Omni has agreed to provide the Company*

---

[1] Upon the filing of a Chapter 11 petition, the term "**Company**" shall then also mean and include the Company, in its capacity as a debtor and debtor in possession together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for all of the Company's fees and costs.

[2] Unless otherwise agreed upon, a Company Party includes a Company's managers, general partners, officers, directors, employees, agents, representatives, counsel, consultants and/or any other party with whom the Company authorizes to engage in a Communication with Omni.

*with (i) a $10,000 credit towards prepetition fees (contingent upon the filing of the Debtor's chapter 11 case), and (ii) a ten (10%) percent discount on its standard hourly rates.* Omni reserves the right from time to time to amend the Rate Schedule by increasing its hourly rates, unit prices, and any other charges, fees and costs therein during the term of this Agreement and that upon so doing, the parties agree that the rates, prices, and other charges shall be effective immediately and constitute the operative Rate Schedule.

(b)      Omni may invoice the Company monthly for the Services it provided during the preceding calendar month consistent with the applicable Rate Schedule, subject however to the discount set forth above, until the effective date of a confirmed plan of reorganization. Thereafter, Omni will invoice the Company consistent with the terms of the Rate Schedule which is then in effect. All invoices are due and payable upon receipt. Notwithstanding anything herein to the contrary, in the event the Company files chapter 11 petition, any payment made to Omni will be in accordance with applicable bankruptcy law and orders of the bankruptcy court.

(c)      If any amount is unpaid to Omni thirty (30) days from the date of the Company's receipt of an invoice the Company agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute of any portion of an invoice, the Company shall give written notice to Omni within ten (10) days of receipt of the invoice as to the charges disputed and the basis thereof. The undisputed portion of the invoice will remain due and payable immediately upon receipt, but late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. At its sole discretion, Omni may first apply any payment received against the cumulative sum of the late charges then due before it applies any remaining balance to the outstanding principal balance

(d)      Omni may require an advance or direct payment from the Company of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e)      The Company shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Company, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(f)      The Company shall pay to Omni all actual charges (including fees, costs and expenses as set forth in the then effective Rate Structure) related to, arising out of, or resulting from, any error or omission made by the Company including, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses.

(g)      Upon execution of this Agreement, the Company shall pay Omni a retainer of $50,000 (the "**Retainer**"). Omni may use the Retainer against all reasonable and documented prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Company to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final**

**Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Company of the application of some or all of the Retainer, the Company shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(h)     Payments to Omni for services rendered under the terms of this Agreement may be remitted using either or both of the following methods:

(i)     **Wire Transmission**

(Omni's wire information will be included on each monthly invoice)

(ii)     **Check**
Omni Agent Solutions
c/o Accounts Receivable
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367

III.     RETENTION

(a)     The Agreement is effective immediately upon its execution by the parties; provided, however, that it shall be subject to, if and when applicable, the terms of any order entered approving the engagement of Omni by the Company in the Company's chapter 11 proceeding.

(b)     If the Company commences one or more chapter 11 cases pursuant to the Code, then as soon as is practicable, the Company agrees to and shall take all necessary actions to obtain bankruptcy court approval to retain Omni as its claims and noticing agent pursuant to 28 U.S.C. § 156(c), and as its administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of any application concerning Omni's retention and any order setting forth its terms are subject to Omni's approval which shall not be unreasonably withheld. Notwithstanding any other provision of this Agreement, if the bankruptcy court does not enter an order approving Omni's retention pursuant to 28 U.S.C. § 156(c) or section 327 of the Code, then the Agreement will be terminated effective immediately.

IV.     TERM

(a)     Except as provided herein, the Agreement will remain in effect until terminated: (a) on a mutually agreed upon date as set forth in a writing executed by both parties; (b) on a date of no less than sixty (60) days from the date written notice is provided by one party to the other; (c) by the Client for cause ("**Cause**") which, for purposes of this Agreement, shall mean that Omni has acted in bad faith, with gross negligence, or engaged in willful misconduct that results in material harm to the Company's effort and ability to restructure in its chapter 11 case; or (d) by Omni upon the Company's material breach of any term herein. If Omni's engagement has been already approved by the bankruptcy court, then Omni shall continue to perform the Services until the entry of an order by the bankruptcy court, in a form and substance satisfactory to Omni, whose

consent will not be unreasonably withheld, providing for the terms and conditions of its discharge, including date of termination.

(b) Upon its termination, Omni shall provide the Company with all materials Omni is required to return to it under the terms of this Agreement as well as all in-process deliverables in their then-current state of completion for Services which Omni provided prior to the effective date of the termination promptly after it has received payment in full of all sums attributable to such Services, including for any Services which have then not yet been invoiced. Omni shall coordinate with the Company and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, shall provide the necessary staff and assistance required for an orderly transfer, and the Company agrees to pay all sums which may become due in connection therewith. Without limiting the foregoing, upon the Company's written request made at any time during the term of this Agreement, Omni shall deliver to the Company and/or the Company's retained professionals at the Company's sole expense any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Company.

V.    CONFIDENTIALITY

Omni and the Company, on behalf of themselves and on behalf of each and all of their respective Company Parties, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement ("**Confidential Information**"), except if any of such information: (a) is then or thereafter becomes publicly available, other than by breach by the receiving party; (b) is already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; (c) was independently developed; (d) is lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; or (e) is subject to production or revelation pursuant to an order of any court, governmental agency or other regulatory body, arbitrator or subpoena, it may, upon not less than ten (10) calendar days written notice to the other party, release the required information.

VI.    OMNI'S PROPERTY RIGHTS

(a) The parties understand and agree that any and all software programs or other materials furnished by Omni pursuant to this Agreement or used by Omni to provide the Services during the term of this Agreement ("**Omni's Property**") are Omni's sole and exclusive property. Without limiting the foregoing, Omni's Property includes data processing programs, specifications, applications, routines, documentation, ideas, concepts, know-how or techniques relating to data processing or Omni's performance of Services. Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy cases.

(b)    The Company acknowledges and agrees that regardless of any sums it has been charged or has paid to Omni, it obtains no rights or ownership whatsoever in any of Omni's Property and that their use by the Company is limited to enabling Omni to provide the Services hereunder.

## VII.    BANK ACCOUNTS

At the request of a Company Party, Omni is authorized to establish account(s) with financial institutions in the name of and/or as agent for the Company and to manage such account(s), including to facilitate distributions pursuant to a chapter 11 plan or otherwise. Omni may receive compensation from the institution at which an account is held pursuant to agreements between Omni and such institutions.

## VIII.    COMPANY DATA

(a)    Without limiting any other provision of this Agreement, the Company represents and warrants to Omni that when a Company Party provides information to Omni (a) the Company has all necessary authority to disclose it to Omni and that Omni is fully authorized to use it in connection with its performance of the Services; (b) that the information is materially accurate and complete to the best of the Company's knowledge at the time of the Communication; and (c) that Omni has no responsibility whatsoever to verify or otherwise independently confirm the accuracy or completeness of any information, programs, data or instructions it is provided including, without limitation, data it receives in connection with the preparation of the Company's Schedules and SOFAs. The Company agrees that it shall be deemed to have reviewed and approved any and all Schedules and SOFAs which are filed on its behalf.

(b)    Without limiting any other provision of this Agreement, the Company understands and agrees that all data, storage media, programs or other materials which are furnished to Omni on its behalf (the "**Company's Data**") may be retained by Omni until full payment has been made to Omni for all of its Services and that it shall remain liable to Omni for all fees and expenses thereafter charged by Omni for maintaining, storing or disposing of any or all of it.  Omni agrees that it will dispose of the Company's Data in a manner requested by or acceptable to the Company; provided, however, that if Omni has not provided Services to the Company for a period of ninety (90) days and provides no less than thirty (30) days written notice, Omni may dispose of any or all of the Company's Data in any commercially reasonable at the Company's sole expense. The Company agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information which is provided on its behalf to Omni.

(c)    If Omni is retained pursuant to bankruptcy court order, disposal of any of the Company's Data shall comply with any applicable court orders and rules or clerk's office instructions.

## IX.    NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without

limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting its enforceability to the maximum extent compatible with applicable law.

X.    INDEMNIFICATION

(a)    To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)    Omni and the Company shall provide notice to the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)    The Company's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)    The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

XI.    LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Company for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular specific task or expense of the Service that gave rise to the alleged Loss.  In no event shall Omni's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII.    GENERAL

(a)    Each party acknowledges that authorized person(s) on its behalf have read Agreement, understands it, and agrees to be bound by its terms. Each party further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b)    If any provision of this Agreement shall be held to be invalid, illegal, or

unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)     This Agreement may be modified only by a writing duly executed by a Company Party on behalf of the Company and an officer of Omni.

(d)     This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)     This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)     Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g)     The Company will use its best efforts to cooperate with Omni at the Company's facilities if any portion of the Services require Omni's physical presence.

(h)     Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)     The Company and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)     The language used in this Agreement will be deemed to be the language chosen by the Company and Omni to express their mutual intent, and no rule of strict construction will be applied against either party.

(k)     In the event that any arbitration legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree that the prevailing party is entitled to be paid all of its reasonable attorneys' fees, court costs, and any other expense reasonably related thereto in the amount which may be set by the court or by an arbitrator, whether in the same action or in a separate action brought for the purpose of establishing such amount, in addition to any other relief to which the prevailing party may be entitled.

(l)     The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(m)     Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Company, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(n)     Omni reserves the right to make changes in operating procedures, operating systems, programming languages, general purpose library programs, application programs, time periods of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy case(s).

(o)     All headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

XIII.   NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:     Omni Agent Solutions, Inc.
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367
Tel: (818) 906-8300
Attn: Brian K. Osborne, Pres. & CEO
Email: Bosborne@omniagnt.com

If to the Company:     Archdiocese of San Francisco
1 Peter Yorke Way

San Francisco, CA 94109
Attn: Paula Carney
Email: carneyp@sfarch.org

With a copy to:      Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Tel: (916) 329-7400 ext. 222
Email: ppascuzzi@ffwplaw.com

Or to such other address as the Party to receive the notice or request so designates by written notice to the other.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: _____
Name: Paul Deutch
Title:  Executive Vice President

Agreed and accepted this _9_ day of August, 2023

**THE ROMAN CATHOLIC
ARCHBISHOP OF SAN FRANCISCO**

By: _____
Name: REV. PATRICK J. SUMMERHAYS
Title: ATTORNEY - IN-FACT

# EXHIBIT

## "A"


**Analyst** ................................................................................................................................................................ $45-$75

Analysts perform tasks such as incoming and outgoing mail processing (including returned mail), creditor correspondence, document and file organization, daily docket updates.

**Consultant** ............................................................................................................................................................ $75-$195

Consultants perform and manage various day-to-day activities to meet the specific needs of each client's case. These services include data collection, preparation of the creditor matrix, compilation of the noticing database, preparation of Schedules and SOFA's, processing and review of claims and ballots, maintenance of the official claims register and the processing of claim transfers, managing and maintaining the case website, and document management. In addition, Consultants perform quality assurance checks on all services, oversee noticing and fulfillment, assist with creditor communications, and produce multiple reports on claims, ballots, and other requested data. Omni's consultant's each average over five years industry-related experience.

**Senior Consultants** ................................................................................................................................................ $200 - $240

Senior Consultants are the main points of contact for Omni's clients, their counsel, and other related professionals. Senior Consultants oversee all aspects of case administration, providing industry expertise and strategic administrative support on complex issues. Their responsibilities also include the internal management of Omni's case professionals. Omni's senior consultant's each average over ten years industry-related experience and many are former restructuring or financial industry professionals. If necessary, Omni's executive team will provide additional support in the senior consultant role at the rate range set forth above.

**Solicitation and Securities Consultant** .................................................................................................................. $200 - $225

Solicitation and Securities Consultants assist with the review, tabulation, and auditing of ballots, as well as executing plan solicitations and public securities-related services. In addition, Solicitation and Securities Consultants are available to prepare custom voting and tabulation reports, , as well as reports relating to other corporate securities events including exchange offers and rights subscriptions. The Solicitation and Securities Consultant will also interface with the banks, brokers, nominees, depositories, securities holders and their agents regarding solicitation and corporate events. Solicitation and Securities consultants average over five years of related experience.

**Director of Solicitation and Securities** ................................................................................................................... $250

The Director of Solicitation and Securities is the lead consultant in the plan solicitation process and any corporate action-related events. The Director oversees and coordinates all aspects of plan voting and solicitation, including tabulation verification, and, if and when necessary, will attest to the solicitation process and results. The Director also oversees and advises on public securities notices and related actions including voting, exchange offers, treatment elections, rights subscriptions, distributions, and notices, and will coordinate with the banks, brokers, nominees, depositories, securities holders and their agents to ensure smooth and successful execution of the related processes. Omni's Director of Solicitation and Securities is a former Wall Street executive with over 15 years of relevant securities and finance experience.

**Technology Consultant** ......................................................................................................................................... $85 - $155

Omni's Technology Consultants provide technical and database support with respect to the onboarding and processing of complex data. Our Consultants also deliver ongoing and customized reporting requirements, assist with variable data mailings and exhibit preparation, and provide custom solutions to meet individual case requirements. Omni's Technology Consultants each average at least 15 years-experience in the information technology and development industry.

18

# 2023 Rate Sheet



| Hourly Rates for Standard and Custom Services* | RATE/COST |
|---|---|
| Analyst | $40.00 - $75.00 per hour |
| Consultants | $75.00 - $195.00 per hour |
| Senior Consultants | $200.00 - $240.00 per hour |
| Solicitation and Securities Services | $250.00 per hour |
| Technology/Programming | $85.00 - $155.00 per hour |

| Printing and Noticing Services | RATE/COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| E-mail noticing | No charge |
| Certified email | Quote upon request |
| Facsimile noticing | $.10 per image |
| Postage | At cost (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE/COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Claims Management | RATE/COST |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Creditor Database | RATE/COST |
|---|---|
| Data storage | Under 10,000 records - No charge Over 10,000 records - .08 per Record |
| Per image storage | No charge |

| Call Centers / Dedicated Line | RATE/COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $20.00 per Month |
| Usage | $.0825 per Minute |
| Call center personnel | Standard Hourly Rates |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

19

# 2023 Rate Sheet



| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | $65.00 per hour |
| Programming and Customization | $85 - $135 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Case Docket / Claims Register | |
|---|---|
| | No charge |

| Virtual Data Rooms | |
|---|---|
| | Quote upon request |

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $65.00 - $250.00 per hour |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, | Standard hourly rates apply |

| Real-Time Reports | RATE / COST |
|---|---|
| Claims dashboard | No charge |
| Claim reports | No charge |
| Solicitation dashboard | No charge |
| Tabulation dashboard | No charge |
| Solicitation reports | No charge |

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |

20

1                        **<u>Court Service List</u>**

2                        **No service required**