1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD WILLOUGHBY
3     PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA 95814
   Telephone:    (916) 329-7400
5  Facsimile:    (916) 329-7435
   Email:        ppascuzzi@ffwplaw.com
6                jrios@ffwplaw.com
                 tphinney@ffwplaw.com
7
   ORI KATZ, State Bar No. 209561
8  ALAN H. MARTIN, State Bar No. 132301
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
9     A Limited Liability Partnership
      Including Professional Corporations
10 Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
11 Telephone:    (415) 434-9100
   Facsimile:    (415) 434-3947
12 Email:        okatz@sheppardmullin.com
                 amartin@sheppardmullin.com
13
   Attorneys for The Roman Catholic Archbishop of
14 San Francisco

15              UNITED STATES BANKRUPTCY COURT

16       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| 17 | In re | Case No. 23-30564 |
|---|---|---|
| 18 | THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| 19 | | **DEBTOR'S (1) SUPPLEMENTAL REPLY IN FURTHER RESPONSE TO THE** |
| 20 | Debtor and Debtor in Possession. | **OBJECTION OF THE UNITED STATES TRUSTEE TO FINAL APPROVAL OF** |
| 21 | | **DEBTOR'S MOTION FOR CONTINUED USE OF EXISTING CASH MANAGEMENT** |
| 22 | | **SYSTEM OPERATIONAL BANK ACCOUNTS AND RELATED** |
| 23 | | **INVESTMENT ACCOUNTS; AND (2) STATUS REPORT REGARDING** |
| 24 | | **COMPLIANCE WITH INTERIM ORDER REGARDING SAME** |
| 25 | | |
| 26 | | *Filed Concurrently with Third Supplemental Declaration of Joseph J. Passarello* |
| 27 | | Date:     October 26, 2023 |
|    | | Time:     1:30 p.m. |
| 28 | | Place:    Via ZoomGov |
|    | | Judge:    Hon. Dennis Montali |

The Roman Catholic Archbishop of San Francisco ("RCASF" or the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), submits this supplemental reply (the "Supplemental Reply") in support of the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and (5) Scheduling a Final Hearing* (the "Motion")[1] and in response to the *Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System [ECF No. 9]* [ECF No. 71] (the "UST Objection"). This Supplemental Reply also includes a status report regarding the Debtor's compliance with that certain *Interim Order (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, entered on August 25, 2023, as ECF No. 41 (the "Interim Order"). In support of this Supplemental Reply, the Debtor relies upon the *Third Supplemental Declaration of Joseph J. Passarello in Support of Debtor's (1) Supplemental Reply in Further Response to the Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System Operational Bank Accounts and Related Investment Accounts; and (2) Status Report Regarding Compliance with Interim Order Regarding Same* (the "Third Supplemental Passarello Decl.") filed concurrently herewith. In further support of the Motion and this Supplemental Reply, the Debtor respectfully represents as follows:

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion, the supplement to the Motion filed on August 23, 2023, as ECF No. 22 (the "Supplement"), the Debtor's reply to the UST Objection filed on September 12, 2023, as ECF No. 87 (the "Reply"), and the supporting declarations filed in support of the Motion, Supplement, and Reply, as well as the Background Passarello Decl., as applicable.

Case: 23-30564   Doc# 232   Filed: 10/20/23   Entered: 10/20/23 18:31:55   Page 2 of
34

SMRH:4893-6397-4280.7

# I.

## PRELIMINARY STATEMENT

Just cause exists to waive the requirements of section 345(b)[2] in this Bankruptcy Case with respect to the two primary investment types at issue.

The Debtor's investments in the BlackRock FedFund (defined and described below) are safe (so long as our federal government is not overthrown) and generate an extra $36,000 per month over what would otherwise be generated via strict compliance with section 345(b) and the UST Guidelines.

Separately, the Debtor's investments in various diversified funds (real estate, private equity and other investments) historically have generated meaningful returns beyond what would be available in standard investments. Admittedly, the higher returns associated with these investments come with reduced liquidity via terms and conditions to which the Debtor agreed prepetition, but liquidating the Debtor's positions now, especially in the Real Estate and Private Funds (each defined and described below), would result in the "distressed, fire sale" of the Debtor's interests, assuming the Debtor could even identify a buyer, resulting in potential losses of principal in excess of $10,000,000, as well as additional costs, fees, and potential claims for damages.

As the Debtor, after careful diligence, investigation, and consultation with its professional investment advisors and Investment Committee, is confident that its investments are either not susceptible to massive loss (including via bank failure) or locked up in investment positions that cannot be exited without millions of dollars in penalties and costs, or that the Debtor is contractually prohibited from exiting its investments in the short term, the Debtor submits that waiver of the requirements of section 345(b) is appropriate under the circumstances of this Bankruptcy Case.

---

[2] Unless otherwise indicated, all section references in this Supplemental Reply shall be to 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

## II.

## SUPPLEMENTAL REPLY TO US TRUSTEE'S OBJECTION

As stated in the Debtor's Reply, the Debtor firmly believes that cause exists to waive strict adherence to the requirements of section 345(b) to permit the Debtor to retain its interest in certain securities, which are invested in (1) that certain BlackRock money market mutual fund called BlackRock BLF FedFund (TFDXX) (the "BlackRock FedFund") via the Debtor's brokerage account with Bank of America (i.e., the BofA Securities Account #9371 or the BofA Investment Account); and (2) multiple other funds via the Debtor's brokerage account at U.S. Bank and which the Debtor refers to as the "U.S. Bank Investment Pool Account" (together with the BofA Securities/Investment Account, the "Investment Accounts"). The Debtor further submits that cause exists to authorize it to continue its prepetition investment practices in the ordinary course as described and detailed in the Motion, the Supplement, the Reply, this Supplemental Reply, and each of the declarations filed in support of the Debtor's pleadings. Since filing the Motion, the Debtor has met and conferred on multiple occasions with counsel for Tracy Hope Davis, United States Trustee for Region 17 (the "UST"), the Official Committee of Unsecured Creditors appointed in this Bankruptcy Case (the "Committee"), and certain of the Cash Management Banks regarding the Debtor's request for relief. The Debtor understands that the Committee takes no position with respect to the Motion and that the UST maintains her position as set forth in the UST Objection. As a result of the Debtor's discussions with the UST and certain of the Cash Management Banks, the Debtor believes that except for the UST's concerns regarding the Investment Accounts, all of the Debtor's other requests for relief under the Motion have been resolved as set forth and addressed in the prior interim orders entered in connection with the Motion.

The Debtor understands that chief among the UST's concerns regarding the Debtor's request for waiver of the strict adherence to section 345(b) and continuance of its prepetition investment practices in the ordinary course is the risk attendant with maintaining the Debtor's assets in securities rather than liquidated cash. While the Debtor appreciates the UST's intentions and belief that strict adherence to the UST Guidelines, which would require the Debtor to liquidate all of its various

positions and deposit the cash proceeds in authorized depository institutions, is the <u>only</u> way to protect estate funds. *See* UST Obj. at 9, ¶ 26. The Debtor respectfully disagrees. Strict compliance with section 345(b) will unnecessarily require the Debtor to expend time and resources better focused on developing and negotiating a chapter 11 plan of reorganization to emerge from bankruptcy. More importantly, strict compliance under the circumstances of this Bankruptcy Case will unnecessarily require the Debtor to liquidate valuable assets, likely at substantial loss and cost, a result that would run afoul of one of the very tenets of the Bankruptcy Code – to preserve and maximize assets for the benefit of a debtor's estate and its creditors. In fact, in certain instances, contractual terms actually prevent the liquidation of certain assets.

Further, the UST contends that while the Debtor has addressed some of the factors courts routinely consider when deciding whether cause exists to diverge from the requirements of section 345(b), the Debtor has not addressed the following two considerations, and therefore has failed the totality of the circumstances test set forth in *In re Service Merchandise Company, Inc.*:[3] (1) its ability to reorganize if one of the financial institutions at which the Investment Accounts are held were to fail, and (2) the tax consequences of closing and liquidating the Investment Accounts and moving the funds to authorized depositories. *See* UST Obj. at ¶¶ 23-24. The Debtor addresses in the remainder of this Supplemental Reply the UST Objection generally and its ability to reorganize in the unlikely event of the failure of one of the financial institutions at which the Investment Accounts are held, but quickly reiterates that, as set forth in the Reply, the Debtor is a tax-exempt organization and therefore would not suffer adverse tax consequences if required to close and liquidate the Investment Accounts and move funds to authorized depositories. That said, if the Court sustains the UST Objection, the Debtor will suffer consequences more dire than adverse tax consequences – as discussed below, the Debtor would lose at least $36,000 of income on a monthly basis, and also forfeit millions of dollars that are subject to certain agreements and conditions and prohibitions to liquidation.

---

[3] *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

**A.** **Contrary to the UST Objection, Cause to Waive the Requirements of Section 345(b) Requires an Evaluation of the *Totality* of the Circumstances, Not Strict Satisfaction of Each Factor of a Commonly Employed Multi-Factor Test**

While courts facing with a request to waive the requirement of section 345(b) routinely use the ten-factor test set forth in the *Service Merchandise* case, case law does not require a debtor to satisfy <u>each</u> enumerated factor to obtain the requested relief. Rather, courts are to employ a "totality of the circumstances" standard to determine whether just cause exists to permit an exception from the default requirement. *See, e.g., Serv. Merch.*, 240 B.R. at 896; *In re King Mountain Tobacco Co., Inc.*, 623 B.R. 323, 334 (Bank. E.D. Wash. 2020); and *In re Ditech Holding Corp.*, 605 B.R. 10, 17 (Bankr. S.D.N.Y. 2019).

Indeed, Congress recognized that the requirements of section 345(b) may not be appropriate for *every* debtor regardless of size or sophistication:

> Section 345 of the Code governs investments of the funds of bankruptcy estates. The purpose is to make sure that the funds of a bankrupt that are obligated to creditors **are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankrupt estate**. Under current law, all investments are required to be FDIC insured, collateralized or bonded. While this requirement is wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors. ***This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause,*** thereby overruling *In re Columbia Gas Systems, Inc.*, 1994 WL 463514 [33 F.3d 294] (3d Cir. Del. [1994]).

*In re King Mountain Tobacco Co., Inc.*, 623 B.R. at 330-31 (citing H.R. Rep. No. 103-835, at 46-47 (1994)) (boldfaced, italicized emphasis in original; boldfaced emphasis added).

In *Service Merchandise*, the court applied the discretion Congress granted to courts under the Bankruptcy Code and "adopted … a comprehensive approach … [and] fleshed out [ten] factors bearing on what might constitute sufficient cause under section 345(b)…" *Id.* at 332 (citing *Serv. Merch. Co., Inc.*, 240 B.R. at 896). After applying the ten-factor, "non-binding framework… [which] is not exhaustive and any individual factor or combination of factors will not control," *see King Mountain*, 623 B.R. at 332, to the facts at bar in the *Service Merchandise* case, the court found that cause existed to waive the investment, deposit, and reporting requirements of § 345(b). *Serv.*

*Merch. Co., Inc.*, 240 B.R. at 896. In both *Service Merchandise* and *King Mountain*, the courts were swayed by the size and sophistication of the debtor's business operations and complex cash management system, evidenced by the large amounts of money that flowed through the business on a regular basis, as well as the debtors' abilities to manage, maintain, and monitor its operations and cash management system in ways that revealed careful internal controls to mitigate risk. *Id.*; *see also King Mountain*, 623 B.R. at 332.

## B. The Court May Consider Factors Not Specifically Enumerated in the *Service Merchandise* Test to Decide If Waiver of Section 345(b) Is Appropriate

To evaluate the "totality of circumstances", the *King Mountain* court went on to consider additional "factors unique to the prosecution of [that] particular bankruptcy case." *Id.* at 333. These "unique" factors included that (1) the *King Mountain* debtor did not file its bankruptcy case to "address operational concerns or to access a broad array of bankruptcy tools, but to use bankruptcy as a vehicle to resolve a longstanding dispute"; (2) the case seemed "unlikely to result in a liquidation or the use of cash on hand as the primary form of plan consideration"; (3) the debtor "appear[ed] to intend to progress quickly through the bankruptcy process"; and (4) "the failure of one or both of the relevant banking institutions is unlikely to be fatal to the debtor's reorganization efforts." *Id.*, at 333-34. The court also considered the "complexity associated with [certain] accounts and the likely involvement of various actors …" *Id.*, at 334. The court recognized that requiring the *King Mountain* debtor to "dissemble and rebuil[d its accounts] at other banking institutions would undoubtedly necessitate the involvement of undue resources, necessarily inhibiting reorganization efforts[,]" requiring the debtor to reallocate resources to the detriment of the estate. *Id.* Finally, the court noted that "none of the estate's economic stakeholders … opposed the debtor's motion or joined the UST's objection." *Id.*

## C. Considering the Totality of the Circumstances, the Court Should Waive the Requirements of Section 345(b)

As quoted above, in 1994, Congress recognized that while it is wise to require smaller debtors with limited funds to hold only investments that are FDIC insured, collateralized or bonded,

that same requirement "can work to needlessly handcuff larger, more sophisticated debtors" and thus amended section 345(b) "to allow the courts to approve investments other than those permitted by section 345(b) for just cause..." *Serv. Merch.* 240 B.R. at 896 (citing H.R. Rep. 103-834, 103rd Cong., 2nd Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994). Accordingly, the Bankruptcy Code now gives this Court the authority and power to find that strict adherence to section 345(b) under the facts and circumstances of this Bankruptcy Case would unnecessarily handcuff the Debtor, a large, sophisticated institution advised by a third party professional advisor (Beacon Pointe LLP), its Finance Council and Investment Committee (a subset of the Finance Council). As will be discussed in greater detail below, the facts and circumstances surrounding the commencement of this Bankruptcy Case are analogous to the facts and circumstances in the *King Mountain* case. Thus, the Debtor strongly urges the Court to find that as in *King Mountain*, the totality of the circumstances amount to just cause, empowering this Court to waive the requirements of section 345(b) for the benefit of the Debtor's estate, its creditors, and more than 450,000 local Catholics that the Debtor serves.

1. **Liquidating the Investment Accounts and Halting the Debtor's Prepetition Investment Practices Will Be Detrimental to Creditors and the Debtor's Faithful**

The Debtor notes that the Investment Accounts are in fact brokerage accounts held at BofA and U.S. Bank. Through these Investment Accounts, the Debtor has invested monies in various funds for the purpose of growing assets that the Debtor has received from various third parties (through the charitable donations of its faithful) in furtherance of the Debtor's mission.

a. The BlackRock FedFund

The Debtor has invested $57.6 million (by way of the BofA Investment Account) in that certain BlackRock money market mutual fund called BlackRock BLF FedFund (TFDXX), which also is known as "Blackrock Fed Fund Portfolio Inst Cl" (the BlackRock FedFund). The BlackRock FedFund currently yields returns to the Debtor in the amount of approximately $251,000 per month, or at a rate of 5.23%. The Investment Committee (a subset of the Finance Council) monitors the BlackRock fund on a regular basis. As there are no liquidity constraints associated with the BofA

1 Investment Account, the Debtor not only has visibility into its interest in the BlackRock FedFund

2 but can liquidate its position in the BlackRock FedFund without restriction.

3     The Debtor, after carefully considering the advice of its professional investment advisors,

4 the Investment Committee, and the Finance Council, determined, prepetition, that it has confidence

5 in the BlackRock FedFund and accordingly invested in that fund.  The following is a description of

6 the BlackRock BLF FedFund, as listed on BlackRock's website:

7     FedFund invests **at least 99.5% of its total assets in cash, U.S. Treasury bills, notes and other obligations issued or guaranteed as to principal and interest by the U.S. Government, its agencies or instrumentalities**, and repurchase agreements secured by such obligations or cash.  The yield of the Fund is not directly tied to the federal funds rate.  The Fund invests in securities maturing in 397 days or less (with certain exceptions) and the portfolio will have a dollar-weighted average maturity of 60 days or less and a dollar-weighted average life of 120 days or less.  The Fund may invest in variable and floating rate instruments, and transact in securities on a when-issued, delayed delivery or forward commitment basis.[4]

13     The Debtor's monies are invested in the BlackRock BLF Fed Fund, which fund is in turn

14 invested in **cash, U.S.  Treasury bills, notes and other obligations issued or guaranteed as to**

15 **principal and interest by the U.S.  Government, its agencies or its instrumentalities**, as

16 highlighted above.  Therefore, the Debtor's interest in the BlackRock BLF FedFund only is at risk

17 if there is a complete meltdown of the entire federal government, including the Department of

18 Treasury, and the Federal Reserve and other federal agencies and instrumentalities, such that the

19 federal financial infrastructure fails.  A failure of BofA, a private financial institution, should not

20 result in losses for the Debtor as the BofA Investment Account is merely a brokerage account that

21 facilitates the Debtor's investment position in the BlackRock BLF FedFund.

22     In contrast to the stability of the Debtor's BlackRock FedFund investment, which affords

23 the Debtor a relatively high yield and freedom from liquidity constraints, the Debtor has been

24 advised that if it were to liquidate its position in the BlackRock FedFund and deposit that cash in an

25 authorized depository institution, such account would likely yield only 4.5% returns, <u>with liquidity</u>

26

27

---

[4] *See* https://www.blackrock.com/cash/en-us/products/282628/blf-fedfund (last visited October 19,
28 2023) (emphasis added).

constraints.  This translates to a loss of approximately $36,000 per month, and an agreement from the Debtor to forego access to portions of the total deposit for three, six, or 12 months, in tranches, to obtain such 4.5% return.  Again, while the Debtor appreciates the UST's concern for the stability and safekeeping of estate funds,[5] the Debtor believes that the additional .75% of yield, or $36,000 more in monthly interest income is substantial and presents virtually no risk as the Debtor's position in the BlackRock FedFund depends on the strength of the entire federal financial system.  If the BlackRock BLF FedFund is at risk, the stability of BofA would be secondary to the more precarious circumstance of our country's entire financial ecosystem on the brink of failure.  Moreover, the Debtor has a fiduciary duty to maintain or improve its financial condition for the benefit of not just its creditors, but for the 450,000 Catholics the Debtor serves within the Archdiocese's geographic territory.

The Pooled Investment Accounts are brokerage accounts held at U.S. Bank (custodial bank).  Like the BofA Investment Account, the Debtor's funds are not "held" at U.S. Bank but invested in various interests and positions in fourteen diversified funds that, in turn, are invested in marketable equities, marketable bonds, mutual funds, real estate, private credit, private equity, and cash.  Like the BofA Investment Account (and thus the BlackRock FedFund), the Debtor's Pooled Investment Accounts are subject to Investment Committee oversight and monitoring.  Of the fourteen investment accounts within the Pooled Investment Account, the Debtor has the ability to liquidate its positions in six of these funds, which invested in marketable equities, marketable bonds, mutual funds, and cash without restriction, on a daily basis (and in the case of one fund, on a monthly basis).  The Debtor holds positions in eight other funds that are subject to various rules and restrictions to which the Debtor agreed, prepetition, in exchange for a higher rate of return on these long-term investments.

Specifically, the Debtor holds positions in four funds that are invested in real estate and private equity on a long-term basis (collectively, the "Real Estate Funds").  With respect to these

---

[5] As noted in the Motion, the Debtor believes that certain amounts within the Investment Accounts are not the Debtor's property and therefore are not actually estate funds.

Real Estate Funds, the Debtor agreed to invest monies for a minimum period of time and also agreed that it would not liquidate or redeem its position unless certain parameters and requirements (set times, methods of redemption, and other criteria) are met. As a result, the Debtor would only be able to "liquidate" its positions in the Real Estate Funds if it identifies a buyer for its positions in the Real Estate Funds. Based on the advice of the Debtor's professional investment advisors and the Investment Committee, the Debtor understands that the market for the Debtor's interest in the Real Estate Funds is neither robust nor organized. Thus, the Debtor would be perceived as a distressed seller, seeking to liquidate its positions in a "fire sale." Under these circumstances, if the Court requires the Debtor to comply strictly with section 345(b), it would be an understatement to state that the value of the Debtor's positions in the Real Estate Funds would materially deteriorate as any value the Debtor currently has, or will have in the future, will be destroyed.

The Debtor also holds positions in four other funds that are invested real estate, private credit, and private equity (the "Private Funds"), which Private Funds also required the Debtor to agree to invest monies for a minimum period of time and not liquidate or redeem its position unless certain parameters and requirements (set times, methods of redemption, and other criteria) are met, which parameters and requirements are not as restrictive as those related to the Real Estate Funds. Unlike the Real Estate Funds, the Debtor is able to liquidate its positions in the Private Funds on a quarterly or other limited basis.

Through the Pooled Investment Accounts, the Debtor invested in the Real Estate and Private Funds, which are not investments in liquid assets but rather long-term investments with the potential for larger returns. To participate in these investments, the Debtor agreed to abide by certain rules and restrictions, and only to redeem its investments upon the satisfaction of certain conditions, as is customary with these types of investments. Based on the investment terms to which the Debtor agreed, prepetition, the Debtor firmly believes that the value of its investments will materially diminish if the Court requires it to adhere strictly to the requirements of section 345(b) and forces the Debtor to liquidate all of its positions in the Real Estate and Private Funds and deposit the proceeds, if any, of such liquidations in authorized depository institutions.

Furthermore, to liquidate the Investment Accounts and cease the Debtor's ordinary course prepetition investment practices, the Debtor may need to reject or breach certain agreements governing the Investment Accounts. As a result, not only will the Debtor likely forfeit future profits, but the Debtor may lose even its initial investment in these private equity funds in addition to incurring penalties, fees, potential rejection damages, and other yet unknown and unliquidated claims on account of such liquidation. The Debtor estimates that of the total $100,149,786 currently invested through the Pooled Investment Accounts, immediate liquidation could result in losses of more than $10,000,000 (as the total, aggregated amount invested in the Real Estate and Private Funds). While such loss comprises approximately 10% of the total amount invested through the Pooled Investment Accounts, a loss of more than $10 million dollars is substantial under any lens, and certainly in the eyes of the 450,000 local Catholics the Debtor serves, the Non-Debtor Catholic Entities (which may assert an interest in at least $2 million of the total amounts invested in the Pooled Investment Accounts) and, importantly, creditors of the Debtor's estate. Indeed, a loss of this magnitude will impede significantly, and certainly delay, the Debtor's efforts to reorganize. Therefore, the Court must overrule the UST Objection and waive the requirements of section 345(b). Any other outcome with respect to the Investment Accounts will generate the very result against which the Bankruptcy Code, and indeed Congress, is trying to protect – preservation and maximization of the Debtor's assets.

## 2. Unique Factors Constituting "Cause" to Waive the Requirements of Section 345(b) Exist Here

The Debtor firmly believes that that cause exists to permit the Court to waive strict adherence to the requirements of section 345(b). In particular, the Debtor notes that several of the factors that the *King Mountain* court considered are present in this Bankruptcy Case. As stated in the Motion, the Debtor is a religious organization with no significant ongoing for-profit business activities. The Debtor's main source of "income" is the Archdiocesan Annual Appeal, fees for services provided to certain Non-Debtor Catholic Entities, revenue from insurance billings, donations, grants, rental income from owned properties, and RCASF ministry revenue. Thus, as the Debtor relies so heavily

on the generosity of the faithful to execute its mission, including by providing critical assistance to those who need and depend on the Debtor, the Debtor is firmly committed to financial transparency and stewardship. To this end, the Debtor takes seriously its financial and fiscal responsibilities, including the responsibility of growing, prudently and conservatively, the funds entrusted to the Debtor and has cautiously developed over many years its investment practices.

Like the *King Mountain* debtor, the Debtor did not commence this Bankruptcy Case to address operational concerns or to overhaul and restructure its financial affairs. Rather, the Debtor commenced this Bankruptcy Case because it has neither the financial means nor the practical ability to litigate the multitude of abuse claims on multiple timelines, while still serving the faithful individuals, Parishes, Schools, Cemeteries, and various other Catholic-based social and community service organizations that operate in the Archdiocese. *See* Passarello Decl. at ¶ 8. The Debtor filed for chapter 11 relief to fulfill both its foundational and moral obligations to the survivors, the faithful, and others who have put their trust in the RCASF. *Id.* In this regard, the Debtor intends to engage actively with the Committee and other stakeholders to negotiate a plan of reorganization as early as possible. *Id.* at ¶ 63. These facts align squarely with the first and third unique factors that the *King Mountain* court considered.

Further, as stated in the Passarello Declaration, the Debtor cannot afford to remain in chapter 11 for long. *Id.* at ¶ 64. The Debtor relies on the charity of faithful Catholics to sustain its existence. Absent an expeditious as possible resolution of the more than 500 pending lawsuits and this Bankruptcy Case, the Debtor can neither focus on its purpose and mission of supporting its faithful and advancing the mission of the Parishes, Schools and Cemeteries. *Id.* Thus, the Debtor believes it satisfies the second factor considered by the *King Mountain* court in determining to waive the requirements of section 345(b).

The Debtor is confident that BlackRock and the various funds in which the Debtor has invested are not at risk of failure. The lay members of the Debtor's Investment Committee and the Finance Council are seasoned finance professionals, and together with the clergy members of the Investment Committee and the Finance Council, they take very seriously the task of investing

wisely, cautiously, and conservatively, the funds entrusted to the Debtor by its faithful. Accordingly, the Debtor believes in the wisdom of the Investment Committee and does not believe that the funds in the Investment Accounts are held at financial institutions at risk of failure. Rather, the funds are diversified, and have yielded substantial returns to the Debtor, both historically and currently.

The Debtor also notes that the three additional factors that the *King Mountain* court considered are applicable to this Bankruptcy Case. Disassembly of the Investment Accounts and "rebuilding" them at authorized depositories would involve undue resources, inhibit reorganization, and unnecessarily reallocate the Debtor's resources, in exchange for smaller returns and greater constraints.

Finally, just as in the *King Mountain* court, none of the estate's economic stakeholders has opposed the debtor's motion or joined the UST Objection. The Committee has not taken a position as to the Motion, but the Committee has not objected, even after reviewing confidential information requested by the Committee and which the Debtor shared with both the UST and Committee. Accordingly, the Debtor respectfully submits that ample cause exists, under persuasive authority, to waive the requirements of section 345(b) in this Bankruptcy Case.

### III.

### STATUS OF COMPLIANCE WITH U.S. TRUSTEE REQUIREMENTS AS REQUIRED UNDER THE INTERIM ORDER

The Debtor also provides by this Supplemental Reply a status report regarding compliance with paragraph 10 of the Interim Order: Each of the Debtor's Bank Accounts at City National Bank, Bridge Bank, and CB&T have been designated at these institutions as "Debtor in Possession" accounts and the Debtor has provided proof of such designations to the U.S. Trustee.[6]

---

[6] The sole exception is the BofA Securities Account #9371 that is tied to the BofA Investment Account, which, according to BofA, cannot be converted to a "Debtor in Possession" account. The account receives dividends from the associated BofA Investment account on a monthly basis. Such dividends are automatically swept back into the BofA Investment Account for reinvestment. Thus, there is little to no risk of loss of any funds in the BofA Securities Account #9371.

**IV.**

**CONCLUSION**

By this Supplemental Reply, the Debtor requests that the Court (1) overrule the UST Objection; (2) authorize the Debtor to maintain the Investment Accounts and continue its prepetition investment practices, including maintenance of the BofA Securities Investment Account #9371 without designating it as a "Debtor in Possession" account as it cannot be so designated; and (3) enter a final order in substantially the form appended to this Supplemental Reply as Exhibit 1, granting, on a final basis, the interim relief this Court previously granted.

Dated: October 20, 2023

FELDERSTEIN FITZGERALD WILLOUGHBY
PASCUZZI & RIOS LLP


By _____/s/ Paul J. Pascuzzi_____
PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY

Attorneys for The Roman Catholic
Archbishop of San Francisco

Dated: October 20, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____/s/ Ori Katz_____
ORI KATZ
ALAN H. MARTIN

Attorneys for The Roman Catholic
Archbishop of San Francisco

**Exhibit 1**

**(Proposed Final Order)**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
|     Debtor and<br>    Debtor in Possession. | **[PROPOSED] FINAL ORDER (1) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; (2) AUTHORIZING MAINTENANCE OF EXISTING BUSINESS FORMS, (3) EXCUSING COMPLIANCE WITH SECTION 345(b); (4) AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY; AND (5) SCHEDULING A FINAL HEARING** |
| | Date:    October 26, 2023<br>Time:   1:30 p.m.<br>           Via ZoomGov<br><br>Judge:   Hon. Dennis Montali |

The motion of The Roman Catholic Archbishop of San Francisco ("Debtor"), debtor in possession, the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, filed on August 21, 2023, as ECF No. 9 (the "Motion"),[1] as supplemented from time to time, came on for final hearing on October 26, 2023 at 1:30 p.m., before the Honorable Dennis Montali of the United States Bankruptcy Court for the Northern District of California. Paul J. Pascuzzi, Esq., of Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP and

---

[1] Unless otherwise indicated, capitalized terms not otherwise defined in this Order shall have the same meanings ascribed to them in the Motion, Supplement, or the Reply as applicable.

Ori Katz of Sheppard, Mullin, Richter & Hampton LLP appeared on behalf of the Debtor. All other appearances were as noted on the record.

The Court having considered the Motion, the Supplement, the Passarello Background Decl., the Gaspari Decl., the Passarello Decl., the Supplemental Passarello Decl., the Reply, the Second Supplemental Declaration, the Supplemental Reply, the Third Supplemental Declaration, all exhibits filed in support of the Motion, the Supplement, the Reply, the Supplemental Reply and their supporting declarations, the *United States Trustee's Omnibus Objection to Debtor's First Day Motions and Reservation of Rights [ECF Nos. 7 & 9]* filed on August 23, 2023, as ECF No. 25, and the *Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System* filed on September 7, 2023, as ECF No. 71 (collectively, the "UST Objections"), the lack of any other objection to the Motion, and the representations made by counsel at the hearing as reflected in the record of the hearing; and the Court having found that it has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the U.S. Trustee, the Cash Management Banks, the twenty largest unsecured creditors, all secured creditors, if any, and any applicable governmental entities; that no further notice is necessary; that the concerns and objections stated in the U.S. Trustee Objection as to this Motion either have been consensually resolved as set forth in the Interim Order and the Second Interim Order or overruled as set forth in this Final Order; that the relief sought in the Motion is in the best interests of the Debtor, its estate, and its creditors; and that good and sufficient cause exists for such relief.

It is hereby ORDERED as follows:

1.      The Motion is GRANTED, on a final basis, as set forth herein;

2.      The Debtor is authorized to: (a) designate, maintain, and continue to use any and all existing bank accounts with the same account numbers, including, without limitation, the accounts identified in the Motion; provided however, that the accounts shall be designated as debtor in possession accounts to the extent possible by the relevant banks; and (b) continue to use its existing Cash Management System, which includes use of the Investment Accounts and credit cards. In connection with the ongoing use of the Cash Management System, the Debtor shall continue to

maintain strict records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between pre-petition and post-petition transactions, and between the Debtor and any non-Debtor.

3.      Each of the Debtor's existing depository and disbursement banks, as well as U.S. Bank National Association in its capacity as trustee of the Lay SERP and custodian of the Investment Pool Account (collectively, the "Cash Management Banks"), is authorized to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank for the maintenance of and services related to the Bank Accounts, together with all other fees and obligations relating to the Cash Management System.

4.      Any of the Debtor's Cash Management Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued, or any direction provided pursuant to the applicable deposit, trust or custody agreement, as applicable, by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court without any duty of further inquiry and without liability for following the Debtor's instructions. The Cash Management Banks shall not be deemed in violation of this Order and shall have no liability for relying on such representations by the Debtor or honoring any check or other payment order that is subject to this Order either (a) at the direction of the Debtor to honor such prepetition check or other payment order, (b) in the good faith belief that this Court has authorized such prepetition check or other payment order to be honored, or (c) as a result of an innocent mistake. To the extent that the Debtor directs that any check or other payment order be dishonored or the Cash Management Banks inadvertently dishonor any check or other payment order, the Debtor may issue replacement checks or other payment orders consistent with the orders of this Court.

SMRH:4893-6397-4280.7

5. That (i) those certain existing deposit, trust, and custody agreements, as applicable, between the Debtor and its Cash Management Banks shall continue to govern the post-petition cash management relationship between the Debtor and the Cash Management Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, and (ii) the Debtor and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.

6. Nothing contained herein shall prevent the Debtor from opening any additional bank accounts or closing any existing Bank Account(s) as it may deem necessary and appropriate, and the Cash Management Banks are authorized to honor the Debtor's request to open or close, as the case may be, such bank accounts or additional bank accounts, provided however, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation that is organized under the laws of the United States or any State thereof and that such account is either bonded or securitized as described in Bankruptcy Code section 345(b) should the account exceed the FDIC insurance limit, and listed on the U.S. Trustee's list of authorized depositories for the Northern District of California.

7. Any and all accounts opened by the Debtor on or after the Petition Date at any Bank shall similarly be subject to the rights and obligations of this Final Order.

8. The Debtor and the Cash Management Banks and Wells Fargo Bank (in connection with the continued use of credit cards) are hereby authorized to continue to perform pursuant to the terms of any pre-petition agreements that may exist between them, except to the extent otherwise directed by the terms of this Final Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to authorize such performance. The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, except to the extent modified by the terms of this Final Order or by operation of the provisions of the Bankruptcy Code other than section 362.

9.     Except as provided in this Final Order, the Debtor is authorized to continue to use its existing business forms and stationery without alteration or change.

10.     The Debtor shall use reasonable efforts to comply with the following acts, as requested by the U.S. Trustee in resolution, in part, of the U.S. Trustee Objections:

a.     Close its Segal Bryant investment account within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such closure;

b.     Close the FRB account (#9117) within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such closure; and

c.     Have each of Bank of America, City National Bank, Bridge Bank, FRB, and CB&T designate the Debtor's respective bank accounts at these institutions as "Debtor in Possession" accounts within 15 days of entry of the Interim Order and provide proof of same to the U.S. Trustee within three business days following such designation.

11.     The Debtor shall institute systems to regularly "sweep" funds as follows:

a.     Funds from the FRB brokerage account (#0589) into a debtor in possession account at an authorized depository for the Northern District of California, on a regular basis;

b.     Any funds in excess of $250,000 from the Debtor's bank account at Bank of San Francisco into a debtor in possession account at an authorized depository for the Northern District of California, on a daily basis; and

c.     Funds from the BofA Securities Account (#9371) to the associated BofA Investment Account.

12.     Except as otherwise set forth in this Final Order, the Debtor is authorized to continue its current investment practices as described in the Motion and related pleadings, including but not limited to the use of the BofA Securities Investment Account, the Investment Pool Checking Account, the Restricted Donations Account, and the Stock Transfer Account. In connection with the foregoing, the Debtor is authorized to maintain the BofA Securities Investment Account #9371

that is tied to the BofA Securities Investment Account without converting or designating such account as a "Debtor in Possession" account.

13. Neither this Final Order, nor the Debtor's payment of any amounts authorized by this Final Order, shall: (i) result in any assumption of any executory contract by the Debtor; (ii) result in a commitment to continue any plan, program, or policy of the Debtor; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtor.

14. In granting the Motion, the Court is not making any findings or determinations as to what is or is not property of the estate. Nothing herein constitutes judicial approval or disapproval, or judicial determination, of what assets are or are not restricted or held in trust or property of the estate or what expenditures are reasonable or appropriate.

15. The Debtor is excused from redesignating the Additional Bank Accounts and Supplemental Additional Bank Accounts as debtor in possession accounts and complying with the requirements of section 345(b) as to the Additional Bank Accounts and Supplemental Additional Bank Accounts.

16. Notwithstanding the relief granted in this Final Order, all rights of the U.S. Trustee, any statutory committee(s) appointed in this Bankruptcy Case, or any other party in interest, including any right under section 345(b) of the Bankruptcy Code, to object or otherwise challenge the proposed treatment of the BofA Investment Account and the Investment Pool Account invested with fund managers in separate custodial accounts with U.S. Bank, are reserved.

17. To the extent the fourteen-day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Final Order, such stay is hereby waived.

18. Nothing in this Final Order authorizes the Debtor to make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise.

19. The Debtors are authorized to take the actions necessary to effectuate the relief granted in this Final Order.

20.     The Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Interim Order.

APPROVED AS TO FORM:

Dated:  October ___, 2023         TRACY HOPE DAVIS, UNITED STATES TRUSTEE FOR REGION 17

By  _____
    JASON BLUMBERG
    Trial Attorney for the United States Trustee

Dated:  October ___, 2023         PACHULSKI STANG ZIEHL & JONES LLP

By  _____
    JAMES I. STANG
    DEBRA I. GRASSGREEN
    JOHN W. LUCAS
    Proposed Attorneys for the Official Committee of Unsecured Creditors

**\*\*\*END OF [PROPOSED] ORDER\*\*\***

1

**Exhibit 2**

2

**(Blackline Comparison of
Proposed Second Interim Order Against Entered Interim Order)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD WILLOUGHBY
    PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:    (916) 329-7400
Facsimile:    (916) 329-7435
Email:        ppascuzzi@ffwplaw.com
              jrios@ffwplaw.com
              tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    (415) 434-9100
Facsimile:    (415) 434-3947
Email:        okatz@sheppardmullin.com
              amartin@sheppardmullin.com

Proposed Attorneys for The Roman Catholic
Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | SECOND INTERIM[PROPOSED] FINAL ORDER (1) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; (2) AUTHORIZING MAINTENANCE OF EXISTING BUSINESS FORMS, (3) EXCUSING COMPLIANCE WITH SECTION 345(b); (4) AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY; AND (5) SCHEDULING A FINAL HEARING |
| | Date:    September 14October 26, 2023 |
| | Time:    1:30 p.m. |
| | Via ZoomGov |
| | Judge:   Hon. Dennis Montali |

The motion of The Roman Catholic Archbishop of San Francisco ("Debtor"), debtor in possession, the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, filed on August 21, 2023, as ECF No. 9 (the "Motion"),[1] ~~and the~~ ~~*Debtor's Supplement to the Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*~~, ~~filed on August 22, 2023, as ECF No. 22 (the "Supplement")~~as supplemented from time to time, came on for ~~emergency~~final hearing on ~~August 24~~October 26, 2023 at 1:30 p.m., ~~and for a second interim hearing on September 14, 2023,~~ before the Honorable Dennis Montali of the United States Bankruptcy Court for the Northern District of California~~, and the Court having entered the *Interim (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing* on August 25, 2023, at ECF No. 41 ("Interim Order")~~. Paul J. Pascuzzi, Esq., of Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP and Ori Katz of Sheppard, Mullin, Richter & Hampton LLP appeared on behalf of the Debtor. All other appearances were as noted on the record.

The Court having considered the Motion, the Supplement, the Passarello Background Decl., the Gaspari Decl., the Passarello Decl., the Supplemental Passarello Decl., ~~and~~ the ~~*Debtor's (1) Reply to Objection of the United States Trustee to Final Approval of Debtor's Motion for*~~

---

[1] Unless otherwise indicated, capitalized terms not otherwise defined in this Order shall have the same meanings ascribed to them in the Motion, Supplement, or the Reply as applicable.

*Continued Use of Existing Cash Management System; and (2) Status Report Regarding Compliance with Interim Order Regarding Debtor's Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts* (the "Reply"), and Reply, the Second Supplemental Declaration *of Joseph J. Passarello in Support of Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance with Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing* (the "Second, the Supplemental Reply, the Third Supplemental Declaration"), all exhibits filed in support of the Motion and, the Supplement, the Reply, the Supplemental Reply and their supporting declarations, the *United States Trustee's Omnibus Objection to Debtor's First Day Motions and Reservation of Rights [ECF Nos. 7 & 9]* filed on August 23, 2023, as ECF No. 25, and the *Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System* filed on September 7, 2023, as ECF No. 71 (collectively, the "UST Objections"), the lack of any other objection to the Motion, and the representations made by counsel at the hearing as reflected in the record of the hearing; and the Court having found that it has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the U.S. Trustee, the Cash Management Banks, the twenty largest unsecured creditors, all secured creditors, if any, and any applicable governmental entities; that no further notice is necessary; that the concerns and objections stated in the U.S. Trustee Objection as to this Motion either have been consensually resolved with respect to as set forth in the Interim Order and this the Second Interim Order or overruled as set forth in this Final Order; that the relief sought in the Motion is in the best interests of the Debtor, its estate, and its creditors; and that good and sufficient cause exists for such relief.

It is hereby ORDERED as follows:

1.      The Motion is GRANTED, on an interim a final basis, as set forth herein;

2.     The Debtor is authorized to: (a) designate, maintain, and continue to use any and all existing bank accounts with the same account numbers, including, without limitation, the accounts identified in the Motion; provided however, that the accounts shall be designated as debtor in possession accounts to the extent possible by the relevant banks; and (b) continue to use its existing Cash Management System, which includes use of the Investment Accounts and credit cards.  In connection with the ongoing use of the Cash Management System, the Debtor shall continue to maintain strict records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between pre-petition and post-petition transactions, and between the Debtor and any non-Debtor.

3.     Each of the Debtor's existing depository and disbursement banks, as well as U.S. Bank National Association in its capacity as trustee of the Lay SERP and custodian of the Investment Pool Account (collectively, the "Cash Management Banks"), is authorized to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank for the maintenance of and services related to the Bank Accounts, together with all other fees and obligations relating to the Cash Management System.

4.     Any of the Debtor's Cash Management Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued, or any direction provided pursuant to the applicable deposit, trust or custody agreement, as applicable, by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court without any duty of further inquiry and without liability for following the Debtor's instructions.  The Cash Management Banks shall not be deemed in violation of this Order and

shall have no liability for relying on such representations by the Debtor or honoring any check or other payment order that is subject to this Order either (a) at the direction of the Debtor to honor such prepetition check or other payment order, (b) in the good faith belief that this Court has authorized such prepetition check or other payment order to be honored, or (c) as a result of an innocent mistake.  To the extent that the Debtor directs that any check or other payment order be dishonored or the Cash Management Banks inadvertently dishonor any check or other payment order, the Debtor may issue replacement checks or other payment orders consistent with the orders of this Court.

5. That (i) those certain existing deposit, trust, and custody agreements, as applicable, between the Debtor and its Cash Management Banks shall continue to govern the post-petition cash management relationship between the Debtor and the Cash Management Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, and (ii) the Debtor and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.

6. Nothing contained herein shall prevent the Debtor from opening any additional bank accounts or closing any existing Bank Account(s) as it may deem necessary and appropriate, and the Cash Management Banks are authorized to honor the Debtor's request to open or close, as the case may be, such bank accounts or additional bank accounts, provided however, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation that is organized under the laws of the United States or any State thereof and that such account is either bonded or securitized as described in ~~11 U.S.C. §~~Bankruptcy Code section 345(b) should the account exceed the FDIC insurance limit, and listed on the U.S.  Trustee's list of authorized depositories for the Northern District of California.

7.     Any and all accounts opened by the Debtor on or after the Petition Date at any Bank shall, for all purposes under the Interim Order or this Second Interim Order, similarly be subject to the rights and obligations of the Interim Order or this Second InterimFinal Order.

8.     The Debtor and the Cash Management Banks and Wells Fargo Bank (in connection with the continued use of credit cards) are hereby authorized to continue to perform pursuant to the terms of any pre-petition agreements that may exist between them, except to the extent otherwise directed by the terms of the Interim Order or this Second InterimFinal Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to authorize such performance.  The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, except to the extent modified by the terms of the Interim Order, this Second InterimFinal Order or by operation of the provisions of the Bankruptcy Code other than section 362.

9.     Except as provided in the Interim Order and this Second InterimFinal Order, the Debtor is authorized to continue to use its existing business forms and stationery without alteration or change.

10.    The Debtor shall use reasonable efforts to comply with the following acts, as requested by the U.S. Trustee in resolution, in part, of the U.S. Trustee ObjectionObjections:

    a.     Close its Segal Bryant investment account within 15 days of entry of the Interim Order and provide proof of same to the U.S.  Trustee within three business days following such closure;

    b.     Close the FRB account (#9117) within 15 days of entry of the Interim Order and provide proof of same to the U.S.  Trustee within three business days following such closure; and

    c.     Have each of Bank of America, City National Bank, Bridge Bank, FRB, and CB&T designate the Debtor's respective bank accounts at these institutions as "Debtor in Possession" accounts within 15 days of entry of the Interim Order and provide proof of same to the U.S.  Trustee within three business days following such designation.

11. The Debtor shall institute systems to regularly "sweep" funds as follows:

a. Funds from the FRB brokerage account (#0589) into a debtor in possession account at an authorized depository for the Northern District of California, on a regular basis; and

b. Any funds in excess of $250,000 from the Debtor's bank account at Bank of San Francisco into a debtor in possession account at an authorized depository for the Northern District of California, on a daily basis.; and

c. Funds from the BofA Securities Account (#9371) to the associated BofA Investment Account.

12. Except as otherwise set forth in this InterimFinal Order, the Debtor is authorized to continue its current investment practices as described in the Motion and related pleadings, including but not limited to the use of the BofA Securities Investment Account, the Investment Pool Checking Account, the Restricted Donations Account, and the Stock Transfer Account. In connection with the foregoing, the Debtor is authorized to maintain the BofA Securities Investment Account #9371 that is tied to the BofA Securities Investment Account without converting or designating such account as a "Debtor in Possession" account.

13. Neither this InterimFinal Order, nor the Debtor's payment of any amounts authorized by this InterimFinal Order, shall: (i) result in any assumption of any executory contract by the Debtor; (ii) result in a commitment to continue any plan, program, or policy of the Debtor; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtor.

14. In granting the Motion, the Court is not making any findings or determinations as to what is or is not property of the estate. Nothing herein constitutes judicial approval or disapproval, or judicial determination, of what assets are or are not restricted or held in trust or property of the estate or what expenditures are reasonable or appropriate.

15. The Debtor is excused from redesignating the Additional Bank Accounts and Supplemental Additional Bank Accounts as debtor in possession accounts and complying with the

requirements of section 345(b) as to the Additional Bank Accounts and Supplemental Additional Bank Accounts.

16.    Notwithstanding the relief granted in ~~the Interim Order and~~ this ~~Second Interim~~Final Order, all rights of the U.S. Trustee, any statutory committee(s) appointed in this Bankruptcy Case, or any other party in interest, including any right under section 345(b) of the Bankruptcy Code, to object or otherwise challenge the proposed treatment of the BofA Investment Account and the Investment Pool Account invested with fund managers in separate custodial accounts with U.S. Bank, are reserved.

17.    To the extent the fourteen-day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this ~~Interim~~Final Order, such stay is hereby waived.

18.    Nothing in this ~~Interim~~Final Order authorizes the Debtor to make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise.

19.    The Debtors are authorized to take the actions necessary to effectuate the relief granted in this ~~Interim~~Final Order.

20.    The Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Interim Order.

~~21.   The final hearing on the Motion shall be heard on October 5, 2023, at 1:30 p.m. Opposition, if any, to the granting of the Motion on a final basis shall be filed by September 27, 2023. The Debtor's reply to any opposition shall be filed by October 3, 2023, at 12:00 p.m.~~

~~22. Counsel to the Debtor is directed to serve a copy of this Second Interim Order on all parties on the Limited Service List, as defined in the Debtor's Motion For Order Establishing Notice Procedures on file herein, within five (5) days of the entry of this Second Interim Order and to file a certificate of service with the Clerk of the Court.~~

APPROVED AS TO FORM~~.~~:

Dated:  October___, 2023          TRACY HOPE DAVIS, UNITED STATES TRUSTEE FOR REGION 17

By _____
JASON BLUMBERG
Trial Attorney for the United States Trustee

OFFICE OF THE UNITED STATES TRUSTEE

Dated: October ___, 2023          PACHULSKI STANG ZIEHL & JONES LLP

By _____
JAMES I. STANG
DEBRA I. GRASSGREEN
JOHN W. LUCAS
Proposed Attorneys for the Official Committee of
Unsecured Creditors

By: _____ /s/ Jason Blumberg _____
    Jason Blumberg
    Trial Attorney for Tracy Hope Davis,
    United States Trustee for Region 17

**\*\*\* END OF [PROPOSED] ORDER \*\*\***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Court Service List**

Registered ECF Participants only.

| Summary report: | |
|---|---|
| **Litera Compare for Word 11.4.0.111 Document comparison done on 10/20/2023 4:37:20 PM** | |
| **Style name:** SMRH Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4853-3708-8639/5/RCASF - 2d Interim Order Granting Cash Management Motion.docx | |
| **Modified DMS:** nd://4877-8302-2985/1/RCASF - Draft Final Order re Cash Management.docx | |
| **Changes:** | |
| Add | 41 |
| Delete | 58 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 2 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 101 |