PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD WILLOUGHBY
  PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
Email: ppascuzzi@ffwplaw.com
       jrios@ffwplaw.com
       tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email: okatz@sheppardmullin.com
       amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop of
San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>      Debtor and<br>      Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**THIRD SUPPLEMENTAL DECLARATION OF JOSEPH J. PASSARELLO IN SUPPORT OF DEBTOR'S (1) SUPPLEMENTAL REPLY IN FURTHER RESPONSE TO THE OBJECTION OF THE UNITED STATES TRUSTEE TO FINAL APPROVAL OF DEBTOR'S MOTION FOR CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; AND (2) STATUS REPORT REGARDING COMPLIANCE WITH INTERIM ORDER REGARDING SAME**<br><br>Date: October 26, 2023<br>Time: 1:30 p.m.<br>Place: Via ZoomGov<br>Judge: Hon. Dennis Montali |

I, Joseph J. Passarello, declare as follows:

1. I am the Senior Financial Director and former Chief Financial Officer ("CFO") of The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession herein ("RCASF" or the "Debtor"). I have been the CFO of the RCASF since January 2014. Prior to that, I have been the CFO for several other companies including Serena Software, Aptina Imaging, AMI Semiconductor, and Therma-Wave, Inc. I have a Master of Business Administration from Santa Clara University and a Bachelor of Science in Economics and Business Administration from St. Mary's College. I am authorized to provide this declaration setting forth the general structure and history of RCASF. In the course and scope of my duties as CFO, I am familiar with the record keeping practices and policies of the RCASF and how it regularly maintains its business records.

2. I make this third supplemental declaration (the "Third Supplemental Declaration") in support of the *Debtor's (1) Supplemental Reply in Further Response to the Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System Operational Bank Accounts and Related Investment Accounts; and (2) Status Report Regarding Compliance with Interim Order Regarding Same* (the "Supplemental Reply"). I give capitalized terms not otherwise defined in this Third Supplemental Declaration the same meanings ascribed to them in the Motion, the Supplement, the Reply, and the Supplemental Reply (each as defined in the Supplemental Reply).

3. All facts set forth in this declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by the RCASF's professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to the RCASF's operations, financial condition, and related business issues. The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of the RCASF, prepared and maintained in the ordinary and regularly conducted business activity of the RCASF, and used by me for those purposes. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the RCASF.

4. As previously stated, I believe that it is in the best interests of both the Debtor and its creditors for the Debtor to maintain its prepetition investment practices and to maintain the Investment Accounts as requested in the Motion.

5. Based on information and advice provided to me by the Debtor's professionals (including, but not limited to its financial advisor GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services and its investment advisor Beacon Pointe, LLP), my nine years of experience as the Debtor's former chief financial officer, all of my professional experience in the finance sector, and my participation and membership on the Finance Council and Investment Committee, I believe that the Debtor's investments in the BlackRock FedFund is safe as long as the federal government is not overthrown.

6. On information and belief, I believe that the BlackRock FedFund generates $36,000 per month over that which would otherwise be generated if the Court requires the Debtor to liquidate its positions in the BlackRock FedFund and deposit the cash proceeds in an "authorized depository" institution designated by the UST.

7. Prepetition, the Debtor invested in various diversified funds (real estate, private equity and other investments) that historically have generated meaningful returns beyond what would be available in standard investments. The higher returns associated with these investments comes at the "price" of reduced liquidity via terms and conditions to which the Debtor agreed prepetition. The Debtor made these investments after careful diligence, investigation, and consultation with its professional investment advisor (Beacon Pointe LLP), the Investment Committee, and the larger Finance Council. Accordingly, the Debtor is confident that its investments are not subject to failure.

8. I believe that if the Debtor were to liquidate now its investments in these various funds, especially in the Real Estate and Private Funds, the Debtor would be perceived as a distressed seller in a virtually non-existent market for the sale of the Debtor's interest in the various funds in which it is invested.

9. The Investment Accounts are brokerage accounts held at BofA and U.S. Bank (custodial bank). Through these Investment Accounts, the Debtor has invested monies in various

funds for the purpose of growing assets that the Debtor has received from various third parties (through the charitable donations of its faithful) in furtherance of the Debtor's mission.

10. The Debtor has invested $57.6 million (by way of the BofA Investment Account) in the BlackRock FedFund. The BlackRock FedFund currently yields returns to the Debtor in the amount of approximately $251,000 per month, or at a rate of 5.23%. The Investment Committee (a subset of the Finance Council) monitors the BlackRock fund and BofA Investment Account on a regular basis. There are no liquidity constraints associated with the BofA Investment Account. The Debtor has visibility into its interest in the BlackRock FedFund and can liquidate its position in the BlackRock FedFund without restriction.

11. Prepetition, and on the advice of its professional investment advisors, the Investment Committee, and the Finance Council, the Debtor determined that it has confidence in the BlackRock FedFund and accordingly invested in that fund.

12. I understand that the BlackRock BLF Fed Fund is invested in cash, U.S. Treasury bills, notes and other obligations issued or guaranteed as to principal and interest by the U.S. Government, its agencies or its instrumentalities. Based on the foregoing, I believe the Debtor's interest in the BlackRock BLF FedFund only is at risk if there is a complete meltdown of the entire federal government, including the Department of Treasury, and the Federal Reserve and other federal agencies and instrumentalities, such that the federal financial infrastructure fails.

13. I do not believe that a failure of BofA would result in losses for the Debtor as the BofA Investment Account is a brokerage account that facilitates the Debtor's investment position in the BlackRock BLF FedFund.

14. On information and belief, I understand that if the Debtor were to liquidate its position in the BlackRock FedFund and deposit that cash in an authorized depository institution, such account would likely yield only 4.5% returns, and that such deposits would be limited by liquidity constraints. The difference between the current monthly yield from the BlackRock FedFund investment and liquidation and deposit is equivalent to a loss of approximately $36,000 per month, plus an inability to access portions of such deposits for three, six, or 12 months, in

tranches, to obtain that such 4.5% return. The additional .75% of yield, or $36,000 more in monthly interest income, at virtually no risk is substantial to the Debtor.

15. The Pooled Investment Accounts are brokerage accounts held at U.S. Bank (custodial bank). The Debtor has invested, through the Pooled Investment Accounts, in various interests and positions in fourteen diversified funds that, in turn, are invested in marketable equities, marketable bonds, mutual funds, real estate, private credit, private equity, and cash. The Pooled Investment Accounts are subject to Investment Committee oversight and monitoring.

    a. Of the fourteen investment accounts within the Pooled Investment Account, the Debtor has the ability to liquidate freely its positions in six of these funds, which are invested in marketable equities, marketable bonds, mutual funds, and cash without restriction, on a daily basis (and in the case of one fund, on a monthly basis).

    b. The Debtor holds positions in eight other funds that are subject to various rules and restrictions to which the Debtor agreed, prepetition, in exchange for a higher rate of return on these long-term investments.

        i. The Debtor holds positions in four funds that are invested in real estate and private equity on a long-term basis (collectively, the "<u>Real Estate Funds</u>"). With respect to these Real Estate Funds, the Debtor agreed to invest monies for a minimum period of time and also agreed that it would not liquidate or redeem its position unless certain parameters and requirements (set times, methods of redemption, and other criteria) are met. As a result, the Debtor would only be able to "liquidate" its positions in the Real Estate Funds if it identifies a buyer for its positions in the Real Estate Funds. Based on the advice of the Debtor's professional investment advisor and the Investment Committee, the Debtor understands that the market for the Debtor's interest in the Real Estate Funds is neither robust nor organized. Thus, the Debtor would be perceived as a distressed seller, seeking to liquidate its positions in a "fire sale." Practically speaking, I believe that if the Court requires the Debtor to liquidate its interests in the Real Estate Funds, the Debtor would not be able to realize the current value of these interests. In fact, I believe that liquidating the Debtor's interests in the Real Estate Funds, if even possible, would materially deteriorate the value of these interests.

ii. The Debtor also holds positions in four other funds that are invested real estate, private credit, and private equity (the "Private Funds"). The Debtor agreed to invest monies in these Private Funds for a minimum period of time without liquidating or redeeming its positions unless certain parameters and requirements (set times, methods of redemption, and other criteria) are met. While the parameters and requirements for liquidation are not as restrictive as those related to the Real Estate Funds, liquidation of the Debtor's interests in the Private Funds could take up to six months or be limited to certain amounts and timeframes (i.e., the Debtor may only withdraw a certain percentage of amounts invested, at limited intervals of time).

c. Through the Pooled Investment Accounts, the Debtor invested in the Real Estate and Private Funds, which are not investments in liquid assets but rather long-term investments with the potential for larger returns. To participate in these investments, the Debtor agreed to abide by certain rules and restrictions, and only to redeem its investments upon the satisfaction of certain conditions, as is customary with these types of investments. Based on my understanding of the investment terms to which the Debtor agreed, prepetition, I believe that the value of the Debtor's investments will materially diminish if the Court requires the Debtor to liquidate all of its positions in the Real Estate and Private Funds and deposit the proceeds, if any, of such liquidations in authorized depository institutions.

d. Currently, the Debtor has invested approximately $100,149,786 through the Pooled Investment Accounts. If the Debtor is required to liquidate immediately the entirety of the Pooled Investment Accounts, the Debtor could realize losses of more than $10,000,000 (as the total, aggregated amount invested in Real Estate or Private Funds that cannot readily be liquidated, if at all).

16. The Debtor is a religious organization with no significant ongoing for-profit business activities. The Debtor's main source of "income" is the Archdiocesan Annual Appeal, fees for services provided to certain Non-Debtor Catholic Entities, revenue from insurance billings, donations, grants, rental income from owned properties, and RCASF ministry revenue. Because the Debtor relies so heavily on the generosity of the faithful to execute its mission, including by providing critical assistance to those who need and depend on the Debtor, the Debtor is firmly

committed to financial transparency and stewardship. The Debtor takes seriously its financial and fiscal responsibilities, including the responsibility of growing, prudently and conservatively, the funds entrusted to the Debtor and has cautiously developed over many years its investment practices.

17. Based on my years of experience as a finance professional and my participation and membership on the Finance Council and Investment Committee, I am confident that BlackRock and the various funds in which the Debtor has invested are not at risk of failure.

18. The lay members of the Debtor's Investment Committee and the Finance Council are seasoned finance professionals, and together with the clergy members of the Investment Committee and the Finance Council, take very seriously the task of investing wisely, cautiously, and conservatively, the funds entrusted to the Debtor by its faithful. I do not believe that the funds in the Investment Accounts are held at financial institutions at risk of failure. I believe that the funds are diversified and have yielded substantial returns to the Debtor, both historically and currently.

19. Upon information and belief, I understand that each of the Debtor's Bank Accounts at City National Bank, Bridge Bank, and CB&T have been designated at these institutions as "Debtor in Possession" accounts and the Debtor has provided proof of such designations to the U.S. Trustee. The sole exception is the BofA Securities Account #9371 that is tied to the BofA Investment Account, which, according to BofA, cannot be converted to a "Debtor in Possession" account. The account receives dividends from the associated securities account on a monthly basis. Such dividends are automatically swept back into the securities account for reinvestment. Thus, there is little to no risk of loss of any funds in the BofA Securities Account #9371.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 20th day of October, 2023, at San Francisco, California.

_____
Joseph J. Passarello