PIERCE A. MACCONAGHY (SBN 341371)
pierce.macconaghy@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Telephone:     (650) 251-5000
Facsimile:     (650) 251-5002

ANDREW T. FRANKEL (*pro hac vice*)
afrankel@stblaw.com
MICHAEL H. TORKIN (*pro hac vice*)
michael.torkin@stblaw.com
DAVID ELBAUM (*pro hac vice*)
david.elbaum@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Century Indemnity Company,*
*Pacific Indemnity Company, and*
*Westchester Fire Insurance Company*

(*additional counsel for insurers listed on signature page*)

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>The Roman Catholic Archbishop of San Francisco,<br><br>         Debtor and<br>         Debtor in Possession. | Case No. 23-30564 (DM)<br><br>Chapter 11<br><br>**CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF CERTAIN INSURERS FOR RELIEF FROM AUTOMATIC STAY TO PERMIT CALIFORNIA COVERAGE ACTION TO CONTINUE**<br><br>Date: November 30, 2023<br>Time: 1:30 p.m. Pacific Time<br>Place: Via ZoomGov<br><br>Objection Deadline: November 16, 2023 at 4:00 p.m |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

JURISDICTIONAL STATEMENT ......................................................................... 2

FACTUAL BACKGROUND ................................................................................... 2

    I.   Abuse Claims Against the Archdiocese ........................................................ 2

    II.  The Insurance Policies and the California Coverage Action. ......................... 3

ARGUMENT ......................................................................................................... 4

    I.   The Court Should Lift the Automatic Stay for Cause as the Applicable Factors Weigh in Favor of Stay Relief ................................................................. 4

        A.  The California Coverage Action Will Fully Resolve the Insurers' Dispute With The Archdiocese ......................................................................... 7

        B.  Resolution of the California Coverage Action Will Benefit the Debtor and All Stakeholders and Will Not Interfere with the Chapter 11 Cases ................. 7

        C.  California State Court is the Optimal Court to Decide the Non-Core State Law Issues in the California Coverage Action. ......................................... 10

        D.  The Insurers are Harmed by Halting the California Coverage Action ....... 12

    II.  Principles of Abstention Also Weigh in Favor of Stay Relief ........................ 13

CONCLUSION .................................................................................................... 15

CASE NO. 23-30564

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

*Cachet Fin. Servs. v. Everest Nat'l Ins. Co.* (*In re Cachet Fin. Servs.*),
    652 B.R. 341 (C.D. Cal. 2023) ................................................................................. 10

*Century Sur. Co. v. Saidian,*
    No. CV 12-7428 SS, 2016 WL 6440140 (C.D. Cal. Mar. 16, 2016) ........................ 14

*Certain Underwriters at Lloyd's London – Syndicate 1861 v. Daileader*,
    No. 22 Civ. 2038, 2023 WL 185518 (S.D.N.Y. Jan. 13, 2023) ............................... 10

*Christensen v. Tucson Estates, Inc.* (*In re Tucson Estates, Inc.*),
    912 F.2d 1162 (9th Cir. 1990) .......................................................................... 5, 13

*Cont'l Casualty Co. v. Pfizer, Inc.* (*In re Quigley, Inc.*),
    361 B.R. 723 (Bankr. S.D.N.Y. 2007) ..................................................................... 7

*Entin v. Superior Ct.*,
    208 Cal. App. 4th 770 (2012) ................................................................................ 14

*Green v. Mitsui Sumitomo Ins. Co.* (*In re TK Holdings, Inc.*),
    653 B.R. 33 (D. Del. 2023) .................................................................................... 10

*In re Am. Spectrum Realty, Inc.*,
    540 B.R. 730 (Bankr. C.D. Cal. 2015) ..................................................................... 7

*In re AP Orangevale, LLC*,
    No. 23-10687 (CTG), 2023 WL 5093819 (Bankr. D. Del. Aug. 8, 2023) ................. 9

*In re Cath. Bishop of N. Alaska*,
    No. F08-00110-DMD, 2008 WL 8652363 (Bankr. D. Alaska June 27, 2008) ...................... 11

*In re Cicale*, No. 05-14462 (AJG),
    2007 WL 1893301 (Bankr. S.D.N.Y. June 29, 2007) ............................................... 8

*In re Congoleum Corp.*,
    No. 03-51524, Docket No. 294, at 43:13 (Bankr. D.N.J. Feb. 2, 2004) ................. 10

*In re Curtis*,
    40 B.R. 795 (Bankr. D. Utah 1984) ..................................................................... 5, 6

*In re Duro Dyne Nat'l Corp.*,
    No. 18-27963, Docket No. 350 (Bankr. D.N.J. Dec. 19, 2018) ............................. 10

*In re Duvar Apt., Inc.*,
    205 B.R. 196 (B.A.P. 9th Cir. 1996) ........................................................................ 5

*In re GACN, Inc.*,
    555 B.R. 684 (B.A.P. 9th Cir. 2016) ............................................................... 10, 14

*In re Imerys Talc Am., Inc.*,
    No. 19 10289, Docket No. 3174 (Bankr. D. Del. Mar. 19, 2021) ......................... 10

Case: 23-30564    Doc# 255    Filed: 10/30/23    Entered: 10/30/23 14:42:06    Page 3 of
21

*In re John A. Rocco Co., Inc.*,
    No. 10-18799, 2015 WL 1727474 (Bankr. D.N.J. Apr. 13, 2015) ........................................ 11

*In re Kaiser Gypsum Co., Inc.*,
    No. 16 31602, Docket Nos. 430, 477 (Bankr. W.D.N.C., Oct. 12, 2017) ............................ 10

*In re Kossoff PLLC*,
    No. 21-10699 (DSJ), 2023 WL 3361053 (Bankr. S.D.N.Y. May 10, 2023) ........................ 12

*In re Marvin Johnson's Auto Serv.*,
    192 B.R. 1008 (Bankr. N.D. Ala. 1996) ................................................................................. 7

*In re Mid-Valley Inc.*,
    No. 03-35592 (JKF), Docket No. 541 (Bankr. W.D. Pa. Feb. 10, 2004) ............................ 10

*In re Pac. Gas & Elec. Co.*,
    279 B.R. 561 (Bankr. N.D. Cal. 2002) (Montali, J.) ............................................................ 13

*In re PG&E Corp.*,
    No. BR 19-30088-DM, 2019 WL 3889247 (Bankr. N.D. Cal. Aug. 16, 2019)
    (Montali, J.) ................................................................................................................ 5, 9, 13

*In re Plant Insulation Co.*,
    No. 09-31347, Docket No. 108 (Bankr. N.D. Cal. June 2, 2009) .......................................... 7

*In re Quintrall*,
    No. ADV. 06-90399, 2007 WL 7540996 (B.A.P. 9th Cir. July 5, 2007) (Montali,
    J., Hollowell, J., and Brandt, J.) ..................................................................................... 8, 12

*In re Santa Clara County Fair Ass'n, Inc.*,
    180 B.R. 564 (B.A.P. 9th Cir. 1995) ................................................................................ 8, 12

*Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer)*,
    405 B.R. 915 (B.A.P. 9th Cir. 2009) ...................................................................................... 6

*Lapierre v. Advanced Medical Spa Inc. (In re Advanced Medical Spa Inc.)*,
    BAP No. EC-16-1087, 2016 WL 6958130 (B.A.P. 9th Cir. Nov. 28, 2016) ..................... 5, 6

*Matter of United States Brass Corp.*,
    110 F.3d 1261 (7th Cir. 1997) .............................................................................................. 11

*Merriman v. Fattorini (In re Merriman)*,
    616 B.R. 381 (B.A.P. 9th Cir. 2020) ...................................................................................... 6

*Mt. McKinley Ins. Co. v. Corning Inc.*,
    399 F.3d 436 (2d Cir. 2005) ................................................................................................. 11

*Roman Catholic Diocese of Rockville Ctr. v. Arrowood Indemn. Co.*,
    No. 20-CV-11011, 2021 WL 1978560 (S.D.N.Y. May 17, 2021) ................................. 10, 11

*Security Farms v. International Brotherhood of Teamsters*,
    124 F.3d 999 (9th Cir. 1997) ................................................................................................ 10

*SoftView LLC v. Apple Inc.*,
    Civ. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ...................................... 13

*Weinstein v. Kuhl,*
   No. 18-cv-01351, 2018 WL 4904901 (N.D. Cal. Oct. 9, 2018) ............................................. 10

## **STATUTES**

11 U.S.C. § 362(d)(1) ............................................................................................................... 4

28 U.S.C. § 1334 ............................................................................................................... 2, 13

28 U.S.C. § 1408 .................................................................................................................... 2

28 U.S.C. § 1409 .................................................................................................................... 2

28 U.S.C. § 157 ...................................................................................................................... 2

California Code of Civil Procedure § 340.1 ........................................................................... 2

Century Indemnity Company, as successor to CCI Insurance Company and Insurance Company of North America, Pacific Indemnity Company, and Westchester Fire Insurance Company as successor in interest to Industrial Underwriters Insurance Company for policies JU835-8355 and JU895-0964 (collectively, the "**Insurers**") respectfully state as follows in support of the Motion of Certain Insurers for Relief from Automatic Stay to Permit California Coverage Action to Continue (the "**Motion**"), filed contemporaneously herewith:

## PRELIMINARY STATEMENT

The Court should lift the automatic stay to allow a pending state-court coverage action (the "**California Coverage Action**") to proceed in order to provide guidance and certainty on  the extent of the Insurers' and Debtor's respective contractual rights and obligations for claims brought by survivors of childhood sexual abuse under the California Child Victims Act against the Archdiocese (the "**CCVA Claims**").  The resolution of these state-law contract issues should occur in state court—a court that routinely adjudicates complex insurance coverage disputes and is well-equipped to do so here.

Stay relief is plainly warranted.  The extent of the Insurers' obligations for the CCVA Claims, if any, is hotly disputed.  Allowing the state court to provide judicial guidance and resolve the disputes surrounding the alleged contractual obligations of Insurers' that have been asked to defend and indemnify the Roman Catholic Archbishop of San Francisco (the "**Debtor**" or the "**Archdiocese**") could help facilitate a global resolution to this chapter 11 case.  And even if a global resolution cannot be achieved, the ongoing coverage disputes would still need to be resolved.  Thus, whether or not a comprehensive consensual resolution can be achieved through the plan process, the parties should be permitted to seek resolution of the state-law coverage issues through the state-court action.

The California Court is perfectly capable of efficiently resolving the California Coverage Action—which involves non-core, state and insurance law issues—in parallel with the chapter 11 case.  Bankruptcy courts have routinely granted stay relief in similar situations where they possess no particular expertise in the legal issues at play, like insurance coverage disputes, and where the state court is the more appropriate forum for the litigation.  Indeed, principles of abstention

Case: 23-30564   Doc# 255   Filed: 10/30/23   Entered: 10/30/23 14:42:06   Page 6 of 21

strongly weigh against this Court deciding state-law contract issues that are central to the California Coverage Action.

The Archdiocese and its stakeholders will not be prejudiced if the Court grants stay relief. In the California Coverage Action, the Insurers simply seek resolution of the parties' respective rights and obligations for CCVA Claims. The California Coverage Action will not increase underlying claims against the Archdiocese, nor prejudice abuse survivors because the Insurers' liability must be determined one way or another under any circumstance.

Accordingly, for the reasons discussed further below, the Court should lift the automatic stay to allow the California Coverage Action to proceed.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### I. Abuse Claims Against the Archdiocese

In October 2019, Governor Gavin Newsom signed the California Child Victims Act (the "**CCVA**"), AB 218, codified as California Code of Civil Procedure § 340.1, et seq (the "**CCP**"). The CCVA allows survivors of child sexual assault to bring civil lawsuits arising out of their sexual assault under limited circumstances. Survivors have until their 40th birthday or within five years of the date the plaintiff discovers, or reasonably should have discovered, that psychological injury or illness occurring after the age of majority was caused by the sexual assault, whichever is later. *See* CCP § 340.1(c).

The CCVA also opened a "revival window" during which all survivors (regardless of age) were permitted to file civil lawsuits. *Id.* § 340.1(q). This window opened on January 1, 2020, and closed on December 31, 2022. *Id.* The Archdiocese has been named as a defendant in hundreds of lawsuits under the CCVA alleging childhood sexual abuse. *See Declaration of Paul E. Gaspari*

2
CASE NO. 23-30564

*in Support of Chapter 11 Petition and Debtor's Emergency Motions*, Docket No. 15 (the "**Gaspari Declaration**"), ¶ 9. These lawsuits include claims of abuse by priests and clergy who served the Archdiocese in senior leadership roles. According to its filings, approximately 537 CCVA complaints have been filed against the Archdiocese. *Id.* ¶ 9.

The CCVA Claims allege sexual abuse by the Archdiocese, its clergy, agents, and employees from the 1950s through 2008. *Gaspari Declaration*, ¶ 14. Plaintiffs allege that the Archdiocese or its affiliates knew about the sexual abuse of minors. RJN ¶ 1, Ex. A (Master Complaint) at ¶ 67. In the Master Complaint for the CCVA Claims, for example, plaintiffs allege that "the RELIGIOUS ENTITY DEFENDANTS, and each of them, knew or should have known that the DOE PERPETRATOR was unfit, posed a risk of harm to minor children, and/or posed a risk of childhood sexual assault to minor children in its care, custody and control." RJN ¶ 1, Ex. A (Master Complaint) at ¶ 33. The CCVA Claims further assert that the Archdiocese or its affiliates committed intentional conduct by hiring, not supervising, or transferring to other posts clergy about whom they had notice regarding abuse of the plaintiff or other victims.

The Archdiocese established the Office of Child and Youth Protection ("**OCYP**") "to address allegations of past or current sexual abuse by clergy, religious or other people who work or volunteer for the Archdiocese." *See Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions*, Docket No. 14 (the "**Passarello Declaration**"), ¶ 44. Since 2003, the Archdiocese has incurred more than $70 million to settle sex abuse cases against priests and others associated with the church (together with any pending OCYP claims, "**OCYP Settlement Claims**"). *Id.* ¶¶ 7, 51; Request for Judicial Notice ("**RJN**") ¶ 5, Ex. E (Archdiocese Press Release dated August 21, 2023). Insurers paid most of that amount. *Id.*

## II.     The Insurance Policies and the California Coverage Action.

The Archdiocese claimed insurance coverage under insurance policies allegedly issued by the Insurers and covering periods of time between 1951 to 1972 and 1981 to 1986 (collectively, the "**Insurer Policies**"). Copies of the policies allegedly issued by the Insurers or evidence of the alleged policy language for certain of these periods (including alleged primary polices for 1951 to 1960 and 1963 to 1966, and alleged excess policies for 1969 to 1972), however, have not been

produced by the Archdiocese. See RJN ¶ 2, Ex. B (Coverage Complaint), ¶¶ 11, 14. Nonetheless, the Insurers accepted defense of the sexual abuse claims subject to a complete reservation of rights. *See id*. ¶¶ 51, 62–63.

In July 2023, the Insurers commenced the California Coverage Action in the Superior Court for San Francisco. The California Coverage Actions has been designated as a complex action. RJN ¶ 3, Ex. C (Coverage Action Civil Case Cover Sheet); RJN ¶ 4, Ex. D (Coverage Action Docket). The action seeks declarations concerning the parties' respective rights and obligations under the Insurer Policies, including a declaration that the Insurers have no duty to defend or indemnify the Archdiocese for any liability stemming from the sexual abuse claim to the extent the bodily injuries alleged in the CCVA Claims were expected or intended from the standpoint of the Archdiocese, that the claims do not involve an "accident" or "occurrence" within the meaning of the Insurer Policies, and for additional grounds. RJN ¶ 2, Ex. B (Coverage Complaint). The Coverage Complaint raises a host of additional state-law insurance coverage issues, including issues concerning notice, bodily injury, attachment points of excess policies at issue, named insured issues, and other issues involving the duty to defend and indemnify under the relevant terms, conditions and exclusions contained in the Insurer Policies. *Id.* ¶¶ 64–88. As an action designated as "complex" case, the California Court has a range of tools and case management options at its and the parties' disposal to adjudicate the claims efficiently, including through phased motion practice and trials on key issues.

## ARGUMENT

Ample cause exists for the Court to lift the automatic stay to allow the California Coverage Action to proceed in the California Court. Indeed, the automatic stay may hinder the successful negotiation of a consensual plan of reorganization and the California Court is perfectly capable of adjudicating the pure state-law legal issues present in the California Coverage Action.

## I. The Court Should Lift the Automatic Stay for Cause as the Applicable Factors Weigh in Favor of Stay Relief

Pursuant to section 362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall be granted for "cause." 11 U.S.C. § 362(d)(1). If a movant establishes a *prima facie* case for stay

relief and the debtor is unable to establish the absence of cause, the court "shall" lift the automatic stay. *Christensen v. Tucson Estates, Inc.* (*In re Tucson Estates, Inc.*), 912 F.2d 1162, 1166 (9th Cir. 1990); *In re Duvar Apt., Inc.*, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996). The ultimate burden thus is on the debtor to establish an absence of cause for relief. *See* 11 U.S.C. § 362(g) (in hearings concerning stay relief, the "party opposing such relief has the burden of proof on" all issues other than the debtor's equity in property); *Lapierre v. Advanced Medical Spa Inc.* (*In re Advanced Medical Spa Inc.*), BAP No. EC-16-1087, 2016 WL 6958130, at *4 (B.A.P. 9th Cir. Nov. 28, 2016).

Courts within the Ninth Circuit consider twelve nonexclusive factors—sometimes referred to as the "*Curtis*" factors—when determining whether the stay should be lifted to allow pending litigation in a non-bankruptcy forum. *See In re Advanced Medical Spa Inc.*, 2016 WL 6958130, at *4, *In re PG&E Corp.,* No. BR 19-30088-DM, 2019 WL 3889247, at *1 (Bankr. N.D. Cal. Aug. 16, 2019) (Montali, J.) (*citing In re Curtis*, 40 B.R. 795, 800 (Bankr. D. Utah 1984)). These factors are:

(1) whether relief will result in a partial or complete resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal has been established to hear the particular cause of action and has the expertise to hear such cases;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7) whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;

(8) whether the judgment claim arising from the foreign action is subject to equitable subordination;

| | |
|---|---|
| 1 | (9) whether movant's success in the foreign proceeding would result in a judicial lien |
| 2 | avoidable by the debtor under Section 522(f); |
| 3 | (10) the interest of judicial economy and the expeditious and economical determination of |
| 4 | litigation for the parties; |
| 5 | (11) whether the foreign proceedings have progressed to the point where the parties are |
| 6 | prepared for trial; and |
| 7 | (12) the impact of the stay and the balance of hurt. |

*In re Curtis*, 40 B.R. at 799–800 (internal citations omitted); *see also Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum."). Not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. *In re Advanced Medical Spa Inc.*, 2016 WL 6958130, at *4.[1]

The relevant factors weigh heavily in favor of lifting the automatic stay to allow the California Coverage Action to proceed in the California Court.[2]

---

[1]  Several factors do not apply. First, factor three does not apply because the California Coverage Action does not involve the Debtor as a fiduciary. Factor five does not apply to a dispute between the Debtor and an insurer, factor six is inapplicable here, and factors eight and nine do not apply to a declaratory judgment action.

[2]  Some courts in the Ninth Circuit apply four factors—(i) judicial economy, (ii) the expertise of the state court, (iii) prejudice to the parties, and (iv) whether exclusively bankruptcy issues are involved—in determining whether to grant relief from the automatic stay. *Merriman v. Fattorini (In re Merriman)*, 616 B.R. 381, 389 (B.A.P. 9th Cir. 2020). Application of these factors favors allowing the California Coverage Action to proceed for the same reasons discussed herein: (i) judicial economy is served by continuation of the California Coverage Action (*see infra* § 1.C), (ii) the state court has expertise and adjudicatory authority to determine the non-core state law issues in the California Coverage Action (*see infra* § 1.C), (iii) the Archdiocese is not prejudiced by continuation of the California Coverage Action, whereas the Insurers are harmed by halting the California Coverage Action (*see infra* §§ 1.B, 1.D), and (iv) the disputes in the California Coverage Action turn on exclusively *non*-bankruptcy state law issues.

**A.** **The California Coverage Action Will Fully Resolve the Insurers' Dispute With The Archdiocese**

The California Coverage Action will completely resolve the issues relating to the scope of the Insurers' and Archdiocese's respective rights and obligations under the Insurer Policies. The purely state-law claims at issue in the California Coverage Action are best suited for the state court. *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 739 (Bankr. C.D. Cal. 2015). This plainly weighs in favor of stay relief. *See Order Granting Limited Relief from the Automatic Stay, In re Plant Insulation Co.*, No. 09-31347, Docket No. 108 (Bankr. N.D. Cal. June 2, 2009) (granting relief from stay to permit declaratory relief action regarding availability of insurance to proceed in San Francisco County Superior Court).

**B.** **Resolution of the California Coverage Action Will Benefit the Debtor and All Stakeholders and Will Not Interfere with the Chapter 11 Cases**

Stay relief is warranted here because the pending state court action will not interfere with the pending chapter 11 case and assist the parties in efforts to achieve a more global resolution of pending issues for the benefit of all stakeholders. *See, e.g., Cont'l Casualty Co. v. Pfizer, Inc.* (*In re Quigley, Inc.*), 361 B.R. 723, 744 (Bankr. S.D.N.Y. 2007) ("stay relief will have a greater chance of encouraging a complete resolution of the issues … and will promote 'the interests of judicial economy and the expeditious and economical resolution of litigation.'").[3] Here, the pendency of the California Coverage Action will not interfere with the chapter 11 case as the litigation can simply proceed on a parallel track in the California Court. *See In re Am. Spectrum Realty, Inc.*, 540 B.R. at 739–40 (granting stay relief when debtor merely wanted to delay inevitable state court litigation until after plan was filed).

If recent mass tort chapter 11 cases are any indication, the optimal outcome for the parties is a global settlement among the Debtor, the abuse survivors and other creditors, and the Insurers,

---

[3] *See also In re Marvin Johnson's Auto Serv.*, 192 B.R. 1008, 1018–19 (Bankr. N.D. Ala. 1996) (lifting stay to allow a claim against the estate to be reduced to sum certain because otherwise "the case may be in limbo" and resolution of the state court action would not cause an "undue" delay in the administration of the case).

which would contemplate the establishment of a trust for the benefit of abuse survivors. Indeed, the Archdiocese already has indicated that its goal is to negotiate a consensual resolution to the issues in this chapter 11 case. *See* Passarello Declaration, ¶ 63. Potential insurance recoveries will no doubt be alleged to provide one of the sources of payment for abuse claimants and the insurance providers are thus an integral participant in the settlement and plan process. Consequently, determining the Insurers' and Debtor's respective rights and obligations under the Insurance Policies would, at a minimum, provide an important data point to the parties with respect to settlement discussions and negotiations. Moreover, absent a global settlement or resolution of the insurance coverage issues, the Debtor and Insurers are likely to incur potentially unnecessary costs in connection with plan confirmation on a contested basis.

Moreover, absent a global settlement, to the extent a plan was to be confirmed that allowed the Debtor or a trust to pursue non-settling insurers for abuse claims resolved within or outside of this Chapter 11 case, the same state-law coverage issues would remain to be resolved. Thus, it would be far more efficient to allow the California Coverage Action to provide much-needed guidance to the parties on their respective rights and obligations irrespective of a global settlement can be achieved. *See In re Cicale*, No. 05-14462 (AJG), 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. June 29, 2007) (stay should be lifted because critical issue would need to be addressed regardless of whether stay was lifted).

Courts have lifted the stay where the debtor is not prejudiced by the stay relief. *See, e.g.*, *In re Quintrall*, No. ADV. 06-90399, 2007 WL 7540996, at *4 (B.A.P. 9th Cir. July 5, 2007) (Montali, J., Hollowell, J., and Brandt, J.) (affirming bankruptcy court's order granting relief from stay as "the bankruptcy estate suffered 'no great prejudice' from having the action proceed in state court, as the enforcement of any state court judgment would be limited to insurance coverage and non-estate assets."); *see also In re Santa Clara County Fair Ass'n, Inc*., 180 B.R. 564, 565 (B.A.P. 9th Cir. 1995) ("Congress has stated: It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many

duties that may be handled elsewhere.") (citing S.Rep. No. 989, reprinted in 1978 U.S.C.C.A.N. 5836.)

Here, allowing the California Coverage Action to proceed in parallel with the chapter 11 case will not prejudice the Archdiocese. It does not create any additional abuse claims against the Debtor or prejudice the Debtor's rights with respect to pending or future claims by survivors, and the Debtor already has separate insurance coverage counsel with extensive knowledge of the Debtor's insurance programs and handling complex insurance disputes in state and federal courts. *See* Docket No. 98 (Application to Employ Weinstein & Numbers, LLP as Insurance Counsel). Thus, the Debtor and its counsel are fully capable of handling the California Coverage Action during the pendency of this case.

That the California Coverage Action is a declaratory judgment action also favors stay relief. When the debtor could just as easily be the plaintiff in a dispute (in which case the automatic stay would not apply), the application of the automatic stay to that identical dispute when the debtor happens to be the defendant is "largely a function of happenstance." *In re AP Orangevale, LLC*, No. 23-10687 (CTG), 2023 WL 5093819, at *9 (Bankr. D. Del. Aug. 8, 2023). Given that the California Coverage Action is an action that the Archdiocese could have just as easily commenced, stay relief is particularly appropriate. *See id.*, at *9 (lifting the stay to allow declaratory judgment action to continue).

This Court's recent decision in the PG&E chapter 11 case is instructive. There, the Court lifted the automatic stay to allow an official committee of torts claimants to pursue a state court litigation to determine the debtor's liability with respect to a particular wildfire. The Court reasoned that "relief from stay will definitively bring a resolution as to Debtors' liability in the [wildfire], and provide an important data point that most likely will facilitate resolution of the wildfire tort claims in this case." *In re PG&E Corp.*, 2019 WL 3889247, at *2. The Court further noted that the state court proceeding would proceed on a "parallel track" with the chapter 11 case and that other parties would not be prejudiced by stay relief because, in part, the state court action was filed prior to the chapter 11 case. *Id.* Like the state court proceeding in *PG&E*, (i) the California Coverage Action was filed prior to the Petition Date and can proceed on a parallel track

with this chapter 11 case and (ii) the Insurers' and Debtor's respective rights and obligations with respect to the CCVA Claims is an important "data point" in the resolution of this case.

These factors weigh heavily in favor of stay relief. Indeed, numerous other courts have also allowed insurance coverage actions to proceed in state court during the pendency of a debtor's chapter 11 case. *See, e.g., In re Imerys Talc Am., Inc.*, No. 19 10289, Docket No. 3174 (Bankr. D. Del. Mar. 19, 2021); *In re Duro Dyne Nat'l Corp.*, No. 18-27963, Docket No. 350 (Bankr. D.N.J. Dec. 19, 2018); *In re Kaiser Gypsum Co., Inc.*, No. 16 31602, Docket Nos. 430, 477 (Bankr. W.D.N.C., Oct. 12, 2017); *In re Mid-Valley Inc.*, No. 03-35592 (JKF), Docket No. 541 (Bankr. W.D. Pa. Feb. 10, 2004).[4]

**C.      California State Court is the Optimal Court to Decide the Non-Core State Law Issues in the California Coverage Action.**

Stay relief is also appropriate here because the California Coverage Action involves non-core issues of state law, which the California Court is the optimal court to adjudicate. *See In re Am. Spectrum Realty, Inc.*, 540 B.R. at 740–41 (stay relief appropriate for adjudication of state law claims in state court over which the bankruptcy court would not have adjudicatory authority). In the Ninth Circuit, "actions that do not depend on bankruptcy laws for their existence and could proceed in another court are considered non-core." *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997); *see also In re GACN, Inc.*, 555 B.R. 684, 693 (B.A.P. 9th Cir. 2016). In *GACN*, for example, the BAP explained that the declaratory relief action was not a core proceeding because "the underlying dispute solely concerns the parties' rights and liabilities under a prepetition insurance contract, which was entered into pursuant to state law rather than as a part of a bankruptcy case." *Id*. at 698; *see also Weinstein v. Kuhl*, No. 18-cv-

---

[4]   *See also* Feb. 2, 2004 Hr'g Tr., *In re Congoleum Corp.*, No. 03-51524, Docket No. 294, at 43:13–15 (Bankr. D.N.J. Feb. 2, 2004) (nothing that "all parties will benefit from a determination of the coverage issues, and the state court is the most expeditious place to get that determination.").

01351, 2018 WL 4904901, at *4 (N.D. Cal. Oct. 9, 2018) (declaratory judgment claim seeking interpretation of insurance policy is non-core).[5]

Here, the California Coverage Action relates exclusively to state-law contract rights and obligations under contracts issued by the non-debtor Insurers. Consequently, stay relief is appropriate. *See In re Cath. Bishop of N. Alaska*, No. F08-00110-DMD, 2008 WL 8652363, at *3 (Bankr. D. Alaska June 27, 2008) (granting motion for relief from stay in the chapter 11 cases of the Catholic Bishop of Northern Alaska so that the non-core "issue of insurance coverage can be determined").[6] Further, unlike core matters, the state court is especially qualified to adjudicate state-law insurance issues. *See Roman Catholic Diocese of Rockville Ctr. v. Arrowood Indemn. Co.*, No. 20-CV-11011, 2021 WL 1978560 (S.D.N.Y. May 17, 2021) (under *Stern v. Marshall*, bankruptcy court does not have authority to finally adjudicate insurance coverage dispute).

By contrast, the California Court is well-suited to handle complex insurance cases. The Complex Division has experienced judges, has overseen complex insurance coverage cases (including cases similar to the California Coverage Action), and is subject to procedures to facilitate the expeditious resolution of civil litigations like the California Coverage Action. The California Coverage Action was designated as "complex" and by the Rules of Court, is "an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court

---

[5]   *See also Green v. Mitsui Sumitomo Ins. Co.* (*In re TK Holdings, Inc.*), 653 B.R. 33, 42–46 (D. Del. 2023) (insurance coverage dispute is non-core); *Cachet Fin. Servs. v. Everest Nat'l Ins. Co.* (*In re Cachet Fin. Servs.*), 652 B.R. 341, 346 (C.D. Cal. 2023) (insurance coverage dispute is exclusively non-core); *Certain Underwriters at Lloyd's London – Syndicate 1861 v. Daileader*, No. 22 Civ. 2038, 2023 WL 185518, at **10–12 (S.D.N.Y. Jan. 13, 2023) (same); *Roman Catholic Diocese of Rockville Centre v. Arrowood Indemnity Co.*, No. 20-CV-11011, 2021 WL 1978560, at **5–8 (same); *In re John A. Rocco Co., Inc.*, No. 10-18799, 2015 WL 1727474, at *4 (Bankr. D.N.J. Apr. 13, 2015) ("Because the issue of coverage under an insurance policy is a question of state law that routinely arises outside the context of a bankruptcy case, claims for insurance coverage are typically considered non-core."); *In re Cath. Bishop of N. Alaska*, No. ADV F08-90019-DMD, 2008 WL 8657847, at *3 (Bankr. D. Alaska Sept. 16, 2008) ("insurance coverage claims" arising out of allegations of "sexual abuse by priests and other affiliated with the Diocese . . . are non-core claims"); *Matter of United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997) (declaratory judgment action to determine scope of insurance coverage is not core proceeding).

[6]   *See also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 450 (2d Cir. 2005) (vacating stay of asbestos-related coverage litigation, finding that claims raised in declaratory judgment action were not core to the bankruptcy proceeding).

or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." *See* Cal. Rules of Court, Civil Rules, Rule 3.400(a). Given the California Court procedures, the California Coverage Action can be litigated in a timely manner, including by phasing the issues if necessary, and utilizing a range of procedures to efficiently manage and resolve the litigation. Thus, this factor weighs strongly in favor of stay relief.

Additionally, interests of judicial economy and the potential impact of the automatic stay on the parties likewise favor stay relief. "The legislative history of section 362(a) indicates that judicial economy provides sufficient cause to lift the stay to permit the prosecution of actions pending elsewhere against a debtor." *In re Quintrall*, No. ADV. 06-90399, 2007 WL 7540996, at *4 (B.A.P. 9th Cir. July 5, 2007) (Montali, J., Hollowell, J., and Brandt, J.) (citing *In re Santa Clara County Fair Ass'n, Inc*., 180 B.R. 564, 565 (B.A.P. 9th Cir. 1995)).

As discussed above, resolution and guidance on the coverage issues at stake in the California Coverage Action would provide a meaningful data point the parties can factor into anticipated settlement and plan-related negotiations. California Civil Procedure § 1062.3(a) mandates that actions for declaratory relief "shall be set for trial at the earliest possible date and shall take precedence over all other cases." The California Court, therefore, can efficiently and quickly adjudicate the issues in the California Coverage Action, employing state-law procedures designed to manage and timely resolve the proceedings, while this Court addresses the issues more directly connected to the chapter 11 case. Accordingly, the fact that the California Coverage Action involves non-core issues of state law that the California Court is well-equipped to decide while also providing judicial economy strongly weighs in favor of lifting the stay.

### D. The Insurers are Harmed by Halting the California Coverage Action.

The Insurers have incurred millions of dollars of defense and indemnity costs, and will undoubtedly incur more costs in connection with the resolution and payment of the underlying CCVA Claims. The Insurers require clarity and certainty regarding their alleged obligations with respect to these significant sums, and (as described above), presumably as the Debtor does as well.

Staying the California Coverage Action will prejudice the Insurers by allowing this uncertainty to persist and by denying them the ability to resolve the coverage issues in the proper forum. *See In re Kossoff PLLC*, No. 21-10699 (DSJ), 2023 WL 3361053, at *6 (Bankr. S.D.N.Y. May 10, 2023) (insurer prejudiced because it has to reserve funds and incur ongoing legal and administrative expenses in connection with stayed coverage dispute).

The disputed coverage issues must be resolved eventually by the appropriate court. At some point, the parties must address coverage rights and defenses surrounding the CCVA Claims the Debtor seeks to impose on the Insurers, and thus the Insurers would be prejudiced by further delaying resolution of those issues in their proper forum. *See, e.g., SoftView LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ("[R]esuming litigation after a protracted stay could raise issues with stale evidence, faded memories, and lost documents.").

Because the Debtor will not be harmed by stay relief, and the Insurers will be harmed by the continuation of the stay, this factor further weighs in favor of stay relief.

## II.     Principles of Abstention Also Weigh in Favor of Stay Relief

Cause exists to lift the automatic stay because abstention is appropriate. *See In re PG&E Corp.*, No. BR 19-30088-DM, 2019 WL 3889247, at *1 ("If a bankruptcy court may abstain from deciding issues that could be decided by an imminent state court trial involving the same issues, cause may exist to allow the state court trial to go forward."); *see also In re Tucson Estates, Inc.*, 912 F.2d at 1166. 28 U.S.C. § 1334(c)(1) provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Courts in the Ninth Circuit have considered the following factors in determining whether to abstain from hearing a proceeding pursuant to § 1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of

Case: 23-30564     Doc# 255     Filed: 10/30/23     Entered: 10/30/23 14:42:06     Page 18 of
21
13
CASE NO. 23-30564

severing state law claims from core bankruptcy matters, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*In re Tucson Estates, Inc.*, 912 F.2d at 1167 (9th Cir. 1990); *see also In re Pac. Gas & Elec. Co.,* 279 B.R. 561, 570 (Bankr. N.D. Cal. 2002) (Montali, J.) (holding that the when the factors enumerated in *Tucson Estates* weighed in favor of abstaining, the bankruptcy court should also lift the stay to allow the state court action to proceed).

Although detailed discussion of these factors is not necessary at this juncture given that the Debtor has not asked this Court to decide any of the coverage issues at issue in the California Action, abstention would be appropriate were the Debtor to do so.[7]  As discussed above, the California Coverage Action is solely based on state-law insurance and contract law and does not assert any federal cause of action.  The Insurers have a right to a jury trial in the California Coverage Action.  California courts have repeatedly held "there is a right to a jury in declaratory relief actions involving insurance coverage disputes." *Entin v. Superior Ct.*, 208 Cal. App. 4th 770, 778 (2012) (citing cases); *see also Century Sur. Co. v. Saidian,* No. CV 12-7428 SS, 2016 WL 6440140, at *12 (C.D. Cal. Mar. 16, 2016) (applying California law).  Further, "[w]hether an action is a core or a noncore proceeding is a factor to be considered in making both mandatory and permissive abstention rulings."  *In re GACN, Inc.*, 555 B.R. at 693.  As discussed above, a declaratory judgment action regarding coverage under a prepetition insurance policy is a non-core proceeding.  *Id*.; *see supra* n.5.

Permitting the California Action to proceed will not interfere with the efficient administration of the Debtor's estate.  To the contrary, considerations of efficiency weigh in favor of the Court abstaining in favor of the California Court, because the California Court has experience and familiarity with insurance coverage actions generally and all the relevant entities

---

[7]   The Insurers reserve the right to address any abstention issues in greater detail in the event Debtor does attempt to seek rulings from this Court on any state-law coverage issues under the terms, conditions, or exclusions in the Insurer Policies.  The Insurers briefly address some of the key factors here to explain further why stay relief is warranted.

1     are parties to that action. As discussed above, the California Court has designed procedures to

2     facilitate the expeditious resolution of the California Coverage Action, which the Insurers have

3     invoked so that the California Coverage Action is litigated in a timely manner. The state-law

4     issues include complex insurance coverage issues that the California Court is best situated to

5     resolve. Given that the California Action was filed prepetition in California where Debtor is

6     located, any effort to have those state-law issues decided by this Court would raise forum-shopping

7     concerns, and, in any event, would unnecessarily burden this Court's docket.

8          Accordingly, stay relief is appropriate here because the principles of abstention further

9     illustrate that the California Court is the more appropriate forum for the California Coverage

10    Action.

11                                 **CONCLUSION**

12          For the reasons set forth herein, the Insurers respectfully requests that the Court lift the

13    automatic stay to allow the California Coverage Action to proceed in the California Court.

14                            Respectfully submitted,

15    Dated: October 27, 2023

16

17                              */s/ Pierce A. MacConaghy*
                            PIERCE A. MACCONAGHY (SBN 341371)

18                             2475 Hanover Street
                            Palo Alto, CA 94304

19                             Telephone: (650) 251-5000
                            Facsimile: (650) 251-5002

20                             Email: pierce.macconaghy@stblaw.com

21                             ANDREW T. FRANKEL (*pro hac vice*)
                            afrankel@stblaw.com

22                             MICHAEL H. TORKIN (*pro hac vice*)
                            michael.torkin@stblaw.com

23                             DAVID ELBAUM (*pro hac vice*)
                            david.elbaum@stblaw.com

24                             SIMPSON THACHER & BARTLETT LLP
                            425 Lexington Avenue

25                             New York, NY 10017
                            Telephone: (212) 455-2000

26                             Facsimile: (212) 455-2502

27                             ALEXANDER POTENTE (BAR NO. 208240)
                            alex.potente@clydeco.us

28                             JASON J. CHORLEY (BAR NO. 263225)
                            jason.chorley@clydeco.us

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, CA 94111 USA
Telephone:     415-365-9800
Facsimile:     415-365-9801

*Counsel for Century Indemnity Company,*
*Pacific Indemnity Company, and*
*Westchester Fire Insurance Company*