PIERCE A. MACCONAGHY (SBN 341371)
pierce.macconaghy@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

ANDREW T. FRANKEL (*pro hac vice*)
afrankel@stblaw.com
MICHAEL H. TORKIN (*pro hac vice*)
michael.torkin@stblaw.com
DAVID ELBAUM (*pro hac vice*)
david.elbaum@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, Pacific Indemnity Company, and Westchester Fire Insurance Company as successor in interest to Industrial Underwriters Insurance Company for policies JU835-8355 and JU895-0964*

*(additional counsel for insurers listed on signature page)*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Archbishop of San Francisco,<br><br>      Debtor and<br>      Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>Hon. Dennis Montali<br><br>**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CERTAIN INSURERS REGARDING DEBTOR'S BAR DATE MOTION**<br><br>Date: November 9, 2023<br>Time: 1:30 p.m.<br>Place: via ZoomGov |

The insurers listed in the signature block below (collectively, the "**Insurers**") hereby submit this limited objection and reservation of rights regarding the *Debtor's Motion for Order (1) Fixing Time for Filing Proofs of Claim; (2) Approving Proof of Claim Forms; (3) Providing Confidential Protocols; and (4) Approving Form and Manner of Notice* [Docket No. 220] (the "**Bar Date Motion**").[1]

The Insurers generally support the relief sought in the Bar Date Motion (as modified herein) and agree that establishing a final date by which abuse claims against the Debtor must be duly filed is essential to providing meaningful information and data points to ensure an efficient and effective plan process (Bar Date Motion at 6:9–10). However, the Insurers file this limited objection and reservation of rights to request that the Court require (or at a minimum, encourage) claimants to complete the Confidential Survivor Supplement, establish a deadline for doing so, approve modest revisions to the Supplement, and modify the proposed Confidentiality Protocol to ensure that it is administratively feasible for Insurers and other parties-in-interest, as detailed below. In addition, the Insurers reserve all rights, including the right to dispute, in the appropriate forum, the validity and amount of any claims (individually or in the aggregate) that are filed or allowed in this case and the reasonableness of any claimed loss and coverage for any such claimed loss.

## I. The Proof of Claim Form is Insufficient Without the Information Required by the Confidential Survivor Supplement

Bankruptcy courts have recognized that, in appropriate cases, claimants may be required to supplement information required by Official Form 410 including by completing questionnaires in order to substantiate their claims, to ensure that all claims are treated equitably, and to avoid the risk of inflated or double recovery. *See, e.g., In re A.H. Robins Co.*, 862 F.2d 1092, 1095 (4th Cir.

---

[1] The Insurers submitting this limited objection and reservation of rights are: Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, Pacific Indemnity Company, Westchester Fire Insurance Company as successor in interest to Industrial Underwriters Insurance Company for policies JU835-8355 and JU895-0964, Certain Underwriters at Lloyd's, London and Certain London Market Companies, Continental Casualty Company, Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation, Chicago Insurance Company, Fireman's Fund Insurance Company, First State Insurance Company, and Appalachian Insurance Company.

1988) (authorizing use of a detailed questionnaire as part of the mandatory proof of claim form); *In re I.G. Servs., Ltd.*, 244 B.R. 377, 384 (Bankr. W.D. Tex. 2000) (citing *A.H. Robins* and noting that proof of claim forms which deviate from the Official Proof of Claim Form 10 may be used when appropriate); *see also In re Donnadio*, 608 B.R. 507, 513 (B.A.P. 6th Cir. 2019); *In re Gianulias*, WL 1397430, at *2 n.4 (B.A.P. 9th Cir. Apr. 5, 2013); *In re Twisselman*, 2012 WL 8249605, at *4 (Bankr. E.D. Cal. Aug. 23, 2012). This is especially important where, as here, the claims at issue are contingent tort claims (for which the form was patently not designed) that are unliquidated and likely disputed. *A.H. Robins Co.*, 862 F.2d at 1095.[2]

Other bankruptcy courts administering diocesan or other abuse cases have approved language in their respective abuse proof of claim forms that require claimants to provide information included here in the Confidential Survivor Supplement. *See, e.g., In re Madison Square Boys & Girls Club, Inc.*, No. 22-10910, Docket No. 126 at 40 (Bankr. S.D.N.Y. Aug. 12, 2022) (requiring response as to whether debtor-employer knew or should have known about the abuse); *In re Roman Catholic Diocese of Harrisburg*, No. 20-00599, Docket Nos. 223-2, 291 (Bankr. M.D. Pa. Apr. 3, 2020) (approving proof of claim form asking, *inter alia*, about diocese's knowledge of abuse); *In re Diocese of New Ulm*, Case No. 17-30601, Docket No. 33 (Bankr. D. Minn. Mar. 8, 2017) (same); *In re Diocese of Duluth*, Case No. 15-50792, Docket No. 35 (Bankr. D. Minn. Jan. 7, 2016) (same); *In re Archdiocese of St. Paul & Minneapolis*, No. 15-30125, Docket No. 188, Ex. A (Bankr. D. Minn. Apr. 17, 2015) (same).

The practical realities of this and similar abuse-related chapter 11 cases counsel in favor of the Court requiring (or at a minimum, encouraging) claimants to complete the Confidential Survivor Supplement in order to avoid an influx of facially meritless claims that would risk warping the plan negotiation process and dilute the recovery of legitimate claimants. An industry

---

[2] *In re Heath* does not require a different result. 331 B.R. 424 (B.A.P. 9th Cir. 2005). *Heath* held that a debtor could not disallow a claim on purely technical grounds for failure to file supporting documentation. *Id.* at 434–35. The *Heath* court agreed that to the extent substantive information necessary to support the claim is missing and not provided upon subsequent request or demand, that is a valid basis for disallowance. *Id.* at 436. And given the anticipated volume of proofs of claim in this case, judicial economy and efficiency for all parties counsel in favor of mandating the inclusion of such information now.

of non-lawyer businesses (claims aggregators) has arisen that solicit and generate proofs of claim, often of dubious validity, in mass tort bankruptcy cases. Claim aggregators advertise heavily on traditional and social media, and non-lawyers take calls from putative claimants and prepare proofs of claims on their behalf. It is a business focused on quantity, not quality, and the role of a signing attorney in preparing and verifying the proof of claim can be murky, at best, in practice. *See* Sara Randazzo and Jacob Bunge, *Inside the Mass-Tort Machine That Powers Thousands of Roundup Lawsuits*, Wall St. J., Nov. 25, 2019 (available at https://www.wsj.com/articles/inside-the-mass-tort-machine-that-powers-thousands-of-roundup-lawsuits-11574700480) (describing how "lead-generation" companies screen respondents to TV and social media ads, after which they either send potential plaintiffs contracts for whatever law firm has hired them, or "sell the leads to law firms", sometimes using brokers). "The problem of over claiming inheres in any move from a tort system predicated on individualized proof toward a streamlined administrative regime." Richard A. Nagreda, *Mass Torts in a World of Settlement* 150 (2007); *see In re Silica Products Liability Litig.*, 398 F. Supp. 2d 563, 571–72 (S.D. Tex. 2005); *In re Joint E. & S. Dists. Asbestos Litig.*, 237 F. Supp. 2d 297, 314–16 (E.D.N.Y. 2002) (influx of questionable claims required court to redesign claims process).

The Debtor's proposed Confidential Survivor Supplement asks for information that is essential to determining whether the claimant has a potential claim with even *prima facie* validity. First, under the California Child Victims Act (CVA), a complaint must have been filed during the 3-year window between January 1, 2020 and December 31, 2022 unless the plaintiff is under 40 years of age. Cal. Code of Civ. Proc. § 340.1(q). And all claims by plaintiffs over the age of 40 must include certificates of merit signed by the plaintiff's attorney and a licensed mental health practitioner meeting certain requirements. *Id.* § 340.1(f)–(k). Failure to file such certificates is grounds for dismissal. *Id.* § 340.1(k). Though there may be additional grounds to dispute the validity and amount of claims, the Confidential Survivor Supplement asks about these essential elements to the claim since claims that have not been filed within the statutory period or without the requisite certification of merit are clearly non-compensable. The Confidential Survivor Proof of Claim Form does not require such disclosures.

Second, in order to successfully pursue a claim against Debtor—vicariously as an employer—a plaintiff must prove that the Debtor had prior notice of the abuser's propensity to commit abuse, in order to render the Debtor potentially liable for negligent supervision and/or retention. *See Ferguson v. Horizon Lines, Inc.*, 602 F. App'x 664, 666 (9th Cir. 2015) (affirming summary judgment where plaintiff adduced no evidence from which a jury could find that defendant knew or should have known that employee posed a danger to others). Although this information can be obtained through the Confidential Survivor Supplement (with a modest addition as described below), the Confidential Survivor Proof of Claim Form does not require disclosure of any information to evaluate whether the claimant can assert a claim against the Debtor (as opposed to an individual perpetrator) based on its status as employer.

Because the Confidential Survivor Proof of Claim Form does not ask for this basic information that is necessary for the claimant to state a *prima facie* claim, it does not serve the purposes of this case. Requiring (or at a minimum, encouraging) the completion of the Confidential Survivor Supplement will ensure that all information that is submitted is based upon personal knowledge of the claimant, without which the proof of claim carries no evidentiary weight. Unless creditors are required to provide basic disclosure of information covering the essential elements of a claim, the process will invite assertion of meritless claims, fatally distorting the claims allowance and plan negotiation/solicitation process or, at a minimum, leading to the need for additional information and discovery from numerous purported claimants. *See In re Diocese of Camden*, 653 B.R. 309, 362 (Bankr. D.N.J. 2023) ("The Court cannot approve a Plan which allows attorneys to file invalid and fraudulent claims without consequence."); *see also In re Roman Catholic Diocese of Rockville Centre*, 651 B.R. 146, 152–53 (Bankr. S.D.N.Y. 2023) (disallowing certain sexual abuse claims because the claimants had "not pled sufficient allegations that the Debtor had notice of the alleged abuse").

Debtor has foreshadowed that this case would proceed with "a global mediation with all parties-in-interest, including the debtor, the committee, and insurance companies." Hr'g Tr., Aug. 24, 2023 at 10:12–13. The Debtor has stated that its goal is to "do our part to be ready for that mediation as early as possible. Then we go to the mediation and hopefully come out with a Chapter

11 plan." *Id.* at 11:4–7. However, the Insurers cannot participate meaningfully in mediation without the information necessary to assess the Debtor's liability for each claim. The Insurers have participated in numerous mediations that settled similar bankruptcy cases involving assertions of sexual abuse tort claims against a diocese or other debtor facing similar claims. The factual information sought in the Confidential Survivor Supplement is required to plead the required elements under California law for negligent sexual abuse tort claims against an employer. Without this information, the Debtor and/or Insurers must obtain answers individually, through costly appropriate discovery, which would delay and hinder any meaningful settlement discussions.

As the Debtor recognizes (Bar Date Motion at 8:1–10), completion of the Confidential Survivor Supplement benefits the Debtor, the Insurers, and claimants by: (i) allowing the Debtor, Committee and Insurers to evaluate claims and (ii) lessening the administrative burden on claimants and potentially preventing claimants from having "to address later intrusive, expensive, and time-consuming discovery concerning the scope and nature" of their claims.[3]

Specifically, Part 3 of the Confidential Survivor Supplement, with modest additions, requests basic details about the allegations that are necessary to meet the claimant's obligation "to allege facts sufficient to support a legal liability to the claimant in the proof of claim." *In re MacGibbon*, Nos. WW–05–1411–DMcK, 05–15099, 2006 WL 6810964 (B.A.P. 9th Cir. Oct. 4, 2006) (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). Although the Confidential Survivor Supplement as originally proposed by the Debtor included certain questions relevant to whether the claimants have alleged a basis to hold the Archdiocese (as opposed to an individual perpetrator) liable as an employer, it no longer clearly does so, based on modifications the Debtor has advised the Insurers that it may be amenable to making at the request of the U.S. Trustee.

---

[3] Indeed, the Debtor "strongly encourages" claimants to complete the Confidential Survivor Supplement. *Id.*

To ensure claimants provide this information, the following question should be added to Part 3:

> "Do you have personal knowledge or reason to believe that the Archdiocese knew or should have known of the abuse? If so, describe how and when the Archdiocese learned of the abuse and details concerning what the Archdiocese was told or observed."

Part 4 of the Confidential Survivor Supplement seeks information about the impact of abuse, which would be relevant to the monetary value for each claim. Part 5 of the Confidential Survivor Supplement requests information about prior claims, settlements, releases, and/or adjudications that are essential to evaluate liability and claimed damages, and to prevent payment of a double recovery or payment for claims that were already released (which would serve to reduce the money available for other claimants).[4]

Keeping the Confidential Survivor Supplement voluntary risks hamstringing the plan negotiation process, as the parties will not have a fulsome understanding of the claims facing the Debtor, and will likely lead to expensive and time-consuming discovery from claimants that could be easily avoided by eliciting all information related to the claim at once. Although the requested notice (as apparently may be revised to incorporate the U.S. Trustee's comments) now includes additional language intended to encourage claimants to complete the Confidential Survivor Supplement, it remains entirely and explicitly optional. In addition, although the Debtor originally included language to the effect that failure to submit a completed Supplement with a Proof of Claim may be a basis for an objection to the claimants' proof of claim, this language appears to have been removed. Additionally, even as an entirely optional questionnaire, there is no requested court-imposed deadline for its completion.

To remedy these concerns and to ensure that claimants provide sufficient information to evaluate their claims, in addition to including the additional language above in Part 3, the Insurers request that the Court require (or at a minimum, encourage) claimants to submit the Confidential

---

[4] Additionally (as described above), this information is needed to establish whether the claimant filed a complaint during the January 1, 2020–December 31, 2022 revivor window—which is required for many claimants to assert valid claims.

Survivor Supplement, and impose a deadline for completing the questionnaire along with notice that failure to complete it may result in rejection of the claim.[5]

## II. The Confidentiality Protocol Should Be Modified to Expand and Clarify the Categories of Entities That May Sign a Single Confidentiality Agreement on Behalf of All Employees

The Insurers also request that the Court modify the Order granting the Bar Date Motion (the "**Bar Date Order**", current proposed version at Docket No. 220-1) to modify the proposed confidentiality protocols contained in paragraph 16 therein (the "**Confidentiality Protocols**") to clarify that a single Confidentiality Agreement may be signed by each entity that will cover the entity, its employees, counsel, and experts, as well as administrative vendors providing support services, to avoid placing an unnecessary administrative burden on Insurers and other parties-in-interest.

As currently drafted, the Bar Date Order provides that "Counsel to the Debtor, each insurer, Permitted Party (as defined below), and any successor third-party administrator of the Debtor's insurance programs, and counsel to the Committee shall only be required to execute a single Confidentiality Agreement per firm." (Bar Date Order, ¶ 16(c).) However, in prior diocesan bankruptcy cases, claimants' attorneys have taken the position that, notwithstanding similar language in the applicable court order, *every single employee* at an insurer's vendor who might see a claimant's name must individually sign a confidentiality agreement (including anyone who processes a payment for a claimant and anyone in IT who may have to fix a computer system). This burdensome requirement (on Insurers and potentially other parties-in-interest) goes well beyond the intended scope of the proposed Confidentiality Protocols, and the Insurers do not agree

---

[5] Alternatively, the Court could add Questions 3(a), 3(e), 3(g), 3(h), 4(a), and 5(b)–(d) from the Confidential Survivor Supplement to the Survivor Claim Form. Bankruptcy courts in jurisdictions across the country overseeing mass tort cases have almost unanimously approved proof of claim forms with modifications tailored to the needs of the cases, because requiring claimants (typically in the hundreds or thousands) to provide detailed information relevant to the viability of their contingent tort claims and determination of potential damages could assist in the efficient resolution of the plan process. *See, e.g., In re Madison Square Boys & Girls Club, Inc.*, No. 22-10910, Docket No. 126 at 40 (Bankr. S.D.N.Y. Aug. 12, 2022); *In re Roman Catholic Diocese of Harrisburg*, No. 20-00599, Docket Nos. 223-2, 291 (Bankr. M.D. Pa. Apr. 3, 2020); *In re Archdiocese of St. Paul & Minneapolis*, No. 15-30125, Docket No. 188, Ex. A (Bankr. D. Minn. Apr. 17, 2015).

that it is required by the language of the Bar Date Order as currently drafted. To confirm that the Confidentiality Protocol does not require that unnecessary and burdensome step, the Insurers propose the following change:

Paragraph 16(c) should be modified to read as follows (with removed language in red and added language in blue):

> (c) Survivor Proof of Claim Forms submitted by a Survivor Claimant shall be held and treated as confidential by the Debtor and Debtor's counsel and copies thereof shall be provided by the Debtor or Debtor's counsel to the parties listed below (the "<u>Permitted Parties</u>") and to such other persons that may be granted access to the Survivor Proofs of Claim by order of the Court. No party (including a Permitted Party) may obtain copies of Survivor Proofs of Claim unless such party first executes a confidentiality agreement substantially in the form attached hereto as Exhibit C (the "<u>Confidentiality Agreement</u>"). Executed Confidentiality Agreements shall be provided to counsel to the Debtor, insurers, reinsurers of the Debtor, and any other third-party administrator of the Debtor's insurance program, and counsel to the Committee. Permitted Parties shall keep confidential and not disclose the contents of any Survivor Claim Form except as otherwise provided by the confidentiality provision herein or order of the court. ~~Counsel to the Debtor, each insurer,~~ <u>Each</u> Permitted Party (as defined below) <u>identified in subparagraphs (d)(1)-(9) of this Paragraph 9 who is not a natural person</u>~~, and any successor third-party administrator of the Debtor's insurance programs, and counsel to the Committee~~ shall only be required to execute a single Confidentiality Agreement per firm or company.

Additionally, subparagraph 16(d)(4) should be modified to read as follows (with added language in blue):

> (d) The permitted Parties (the "<u>Permitted Party List</u>") include:
> . . .
> (4) Any insurer for the Debtor, together with its successors, administrators, retrocessionaires, reinsurers, reinsurance intermediaries, and their counsel and other professionals, including partners, counsel, associates, consultants, experts, and employees of such professionals, <u>and administrative vendors for, among other things, processing payments of claims, providing IT support services, and providing litigation support services</u>.

Case: 23-30564 Doc# 274 Filed: 11/02/23 Entered: 11/02/23 18:46:35 Page 9 of 16

The Insurers believe that the proposed language strikes a delicate balance between protecting the privacy of abuse claimants while also avoiding an unnecessary administrative burden upon the Insurers and other parties-in-interest.

**III.  Reservation of Rights**

In all events, the Insurers reserve the rights to challenge the validity and amount of any claims (individually or in the aggregate) that are filed or allowed in this case (whether by deemed allowance, judicial determination, or agreement of the parties).  This includes the right to object to proofs of claim in this Court using the claims allowance process, *see* 11 U.S.C § 502(a) (any party in interest may object to proofs of claim), and to dispute in coverage litigation the Insurers' liability for claims paid and the reasonableness of any settlement reached using claims that are filed or allowed in this case.

In a typical diocese chapter 11 case, the bar date is used to facilitate negotiation of a consensual chapter 11 plan, establishing a trust to pay all claimants pursuant to a Trust Distribution Plan or Allocation Protocol.  The proofs of claim should have no collateral estoppel, waiver, estoppel, *res judicata*, or other effect on the Insurers regarding any insurance coverage obligations under the terms and conditions of the relevant insurance contracts.  Nor should any findings of fact or conclusions of law in the context of this chapter 11 case—based in whole or in part on such allowance—constitute or be deemed to constitute a trial or hearing on the merits or an adjudication, settlement or judgment of any individual or group of claims, nor shall it bind, nor accelerate the obligations, if any, of, any insurer under its insurance policies or otherwise.

Pre-petition, the primary Insurers with duties to defend had been defending and indemnifying the Debtor under a reservation of rights.  The Insurers have no indemnity obligations under the policies unless there is an actual trial or settlement entered into in accordance with policy conditions requiring, among other things, that the insured cooperate, allow the insurers to associate in the defense, and provide notice and claim information.  To ensure that the policyholder bankruptcy does not alter the insurers' state-law contract rights or obligations (which it could not do, as bankruptcy cannot modify the terms of existing contracts), chapter 11 plans in other cases have included "insurance neutrality" language making clear that allowance of claims is not binding

- 9 -
CASE NO. 23-30564

Case: 23-30564    Doc# 274    Filed: 11/02/23    Entered: 11/02/23 18:46:35    Page 10 of 16

on third-party insurers and that neither such claims nor other bankruptcy court orders alter or abridge any contractual rights or obligations.

The Insurers recognize that inclusion of similar insurance neutrality language could await the plan confirmation process, but reserve all rights and defenses and nothing contained herein should be construed as a waiver or admission as respects such rights and defenses.

*[Remainder of page intentionally left blank]*

Respectfully submitted,

Dated: November 2, 2023

/s/ Pierce A. MacConaghy
Pierce A. MacConaghy (BAR NO. 341371)
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
pierce.macconaghy@stblaw.com

Andrew T. Frankel (*pro hac vice*)
Michael H. Torkin (*pro hac vice*)
David Elbaum (*pro hac vice*)

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
afrankel@stblaw.com
michael.torkin@stblaw.com
david.elbaum@stblaw.com

Alexander Potente (BAR NO. 208240)
alex.potente@clydeco.us
Jason J. Chorley (BAR NO. 263225)
jason.chorley@clydeco.us
CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, CA 94111 USA
Telephone: 415-365-9800
Facsimile: 415-365-9801

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, Pacific Indemnity Company, and Westchester Fire Insurance Company as successor in interest to Industrial Underwriters Insurance Company for policies JU835-8355 and JU895-0964*

Jeff Kahane
Nathan Reinhardt
Andrew Mina
Betty Luu
DUANE MORRIS LLP
865 South Figueroa St., St. 3100
Los Angeles, CA 90017
jkahane@duanemorris.com
nreinhardt@duanemorris.com
amina@duanemorris.com
bluu@duanemorris.com

Catalina J. Sugayan
Michael Norton
Yongli Yang
CLYDE & CO US LLP
55 W Monroe St., St. 3000
Chicago, IL 60603
catalina.sugayan@clydeco.us
michael.norton@clydeco.us
yongli.yang@clydeco.us
(312) 635-6917

*Counsel for Certain Underwriters at Lloyd's, London and Certain London Market Companies*

Mark D. Plevin
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
(415) 986-2800 (telephone)
mplevin@crowell.com

Miranda H. Turner (*pro hac vice*)
Jordan A. Hess (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue
Washington, D.C. 20004
(202) 624-2500 (telephone)
mturner@crowell.com
jhess@crowell.com

*Counsel for Continental Casualty Company*

Harris B. Winsberg (*pro hac vice*)
Matthew M. Weiss (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
R. David Gallo (*pro hac vice*)
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street NE, Suite 3600
Atlanta, Georgia 30308
(404) 523-5300 (telephone)
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

dgallo@phrd.com

Todd C. Jacobs (*pro hac vice*)
John E. Bucheit (*pro hac vice*)
PARKER, HUDSON, RAINER & DOBBS LLP
Two N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
(312) 477-3306 (telephone)
tjacobs@phrd.com
jbucheit@phrd.com

Blaise S. Curet
SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
2000 Powell Street, Suite 830
Emeryville, California 94608
(415) 352-6200 (telephone)
bcuret@spcclaw.com

Robin D. Craig
CRAIG & WINKELMAN LLP
2001 Addison Street, Suite 300
Berkeley, California 94704
(510) 549-3330 (telephone)

*Counsel for Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation*

Harris B. Winsberg (*pro hac vice*)
Matthew M. Weiss (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
R. David Gallo (*pro hac vice*)
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street NE, Suite 3600
Atlanta, Georgia 30308
(404) 523-5300 (telephone)
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com
dgallo@phrd.com

Todd C. Jacobs (*pro hac vice*)
John E. Bucheit (*pro hac vice*)
PARKER, HUDSON, RAINER & DOBBS LLP
Two N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
(312) 477-3306 (telephone)
tjacobs@phrd.com
jbucheit@phrd.com

Matthew C. Lovell
NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP
101 Montgomery Street, Suite 2300
San Francisco, California 94104
(415) 745-3770 (telephone)
mlovell@nicolaidesllp.com

*Counsel for Chicago Insurance Company and Fireman's Fund Insurance Company*

Michael W. Ellison (SBN 145832)
SMITH ♦ ELLISON
A Professional Corporation
2151 Michelson Drive, Suite 185
Irvine, California 92612
Tel: (949) 442-1500
Fax: (949) 442-1515
tjacobs@phrd.com

Joshua D. Weinberg (*pro hac vice* pending)
Annette P. Rolain (*pro hac vice* pending)
Ruggeri Parks Weinberg LLP
1875 K Street NW, Suite 600
Washington, DC 20006
Tel: (202) 984-1400
Fax: (202) 984-1401
jruggeri@ruggerilaw.com
arolain@ruggerilaw.com

*Counsel for First State Insurance Company*

Harris B. Winsberg (*pro hac vice* motion pending)
Matthew M. Weiss (*pro hac vice* motion pending)
Matthew G. Roberts (*pro hac vice* motion pending)
R. David Gallo (*pro hac vice* motion pending)
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street NE, Suite 3600
Atlanta, Georgia 30308
(404) 523-5300 (telephone)
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com
dgallo@phrd.com

Todd C. Jacobs (*pro hac vice* motion pending)
John E. Bucheit (*pro hac vice* motion pending)
PARKER, HUDSON, RAINER & DOBBS LLP
Two N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
(312) 477-3306 (telephone)
tjacobs@phrd.com
jbucheit@phrd.com

Christina M. Lincoln
ROBINS KAPLAN LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
(310) 552-0130 (telephone)
clincoln@robinskaplan.com

Melissa M. D'Alelio (*pro hac vice* motion forthcoming)

Taylore E. Karpa Schollard (*pro hac vice* motion forthcoming)
Michele N. Detherage (*pro hac vice* motion forthcoming)
ROBINS KAPLAN LLP
800 Boylston Street, Suite 2500
Boston, Massachusetts 02199
(617) 267-2300 (telephone)
mdalelio@robinskaplan.com
tkarpa@robinskaplan.com
mdetherage@robinskaplan.com

*Counsel for Appalachian Insurance Company*