1  James I. Stang (CA Bar No. 94435)
   Debra I. Grassgreen (CA Bar No. 169978)
2  John W. Lucas (CA Bar No. 271038)
   Brittany M. Michael (NY Bar No. 5678552) *admitted pro hac vice*
3  Pachulski Stang Ziehl & Jones LLP
   One Sansome Street, Suite 3430
4  San Francisco, California 94104
   Telephone: 415.263.7000
5  Facsimile: 415.263.7010
   Email: jstang@pszjlaw.com
6          dgrassgreen@pszjlaw.com
           jlucas@pszjlaw.com
7          bmichael@pszjlaw.com

8  Counsel to the Official Committee of Unsecured Creditors

9              **UNITED STATES BANKRUPTCY COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11             **SAN FRANCISCO DIVISION**

12 In re:                                    Case No.: 23-30564

13 THE ROMAN CATHOLIC ARCHBISHOP OF          Chapter 11
   SAN FRANCISCO,
14                                           ***EX PARTE* APPLICATION OF THE**
              Debtor and Debtor in Possession.  **OFFICIAL COMMITTEE OF UNSECURED**
15                                           **CREDITORS FOR ENTRY OF AN ORDER**
                                             **PURSUANT TO BANKRUPTCY RULE 2004**
16                                           **AUTHORIZING ORAL EXAMINATION OF**
                                             **THE DEBTOR; AND PRODUCTION OF**
17                                           **DOCUMENTS OF DEBTOR, PARISHES,**
                                             **AND AFFILIATES; AND ORDERING**
18                                           **DEBTOR TO SUBMIT DECLARATION**

19

20         The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-

21 captioned chapter 11 bankruptcy case (the "Case") of The Roman Catholic Archbishop of San

22 Francisco, a California corporation, debtor and debtor in possession (the "Debtor"), hereby files this

23 *ex parte* application (the "Application") under Federal Rule of Bankruptcy Procedure 2004 ("Rule

24 2004") and Local Bankruptcy Rule 2004-1 ("Local Rule 2004-1") for entry of an order providing as

25 follows:

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(1) authorizing the Committee to issue a subpoena requiring the Debtor:

    (a) to complete its production, by **January 12, 2024**, of documents responsive to the Requests for Production (the "<u>Requests</u>") set forth substantially in the form attached hereto as **Exhibit 1**; and

    (b) to provide oral testimony (the "<u>Oral Testimony</u>"),on a mutually agreed date no later than **January 24, 2024**, relating to the Debtor's search for and possession, custody, or control of documents responsive to the Requests;

(2) requiring the Debtor to submit to the Committee by **January 12, 2024**, a declaration, under penalty of perjury (the "<u>Sworn Statement</u>"), concerning the specific Requests for which the Debtor does not have documents in its possession, custody, or control. The submission of the Sworn Statement does not affect the Committee's right to take Oral Testimony; and

(3) authorizing the Committee to issue subpoenas directed to any Parish or Affiliate (defined below) after receiving the Sworn Statement or reviewing the Debtor's document production. Subpoenas to the Parishes or Affiliates will require them to complete, by **February 23, 2024** or no fewer than 14 calendar says after service of a subpoena (whichever is earlier), their production of documents responsive to the Requests that the Debtor had not produced.

After issuing the proposed subpoena to the Debtor, the Committee intends to attempt to work cooperatively with the Debtor to obtain the requested information as quickly, efficiently, and reasonably as possible. Consistent with this intention, the Committee shared a draft of the Application with Debtor's counsel, and the parties met and conferred regarding the Application prior to its filing. By this Application, the Committee seeks authority to issue the requested subpoenas. The Committee understands that the Debtor reserves the right to interpose objections to the underlying document requests after the issuance of the subpoenas. The Committee commits to meet with the Debtor to attempt to resolve any disputes that may arise. However, objections to the underlying document requests, if any, would not be grounds to oppose or delay the granting of this Application.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# I. <u>PRELIMINARY STATEMENT</u>

As authorized by Rule 2004, the Committee seeks information from the Debtor, its Parishes, and its Affiliates about the acts, conduct, property, liabilities, and financial condition of the Debtor. The Committee seeks this information in order to assess, among other things, (a) the formation and organization of the Debtor, Parishes, and Affiliates, (b) the value of the Debtor's assets, (c) any material assets that the Debtor may have transferred to a third party, (d) whether the Debtor made any voidable transfers, (e) whether any entities hold property for the benefit of the Debtor, (f) the property of the Debtor's estate, (g) the Debtor's, the Parishes, and the Affiliates' financial information, (h) insurance policies that may benefit the Debtor and its estate, the Parishes, and Affiliates, (i) any other sources of recovery that may be available to satisfy creditors' claims, and (j) the scope of the Debtor's potential liabilities (collectively, the "<u>Investigation Matters</u>").  The Committee brings this motion  to carry out its duties under section 1103 of the Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "<u>Bankruptcy Code</u>"), and to work to maximize unsecured creditors' recoveries in this Case.

In addition to an order requiring the production of documents from and oral testimony of the Debtor, the Committee seeks entry of an order, pursuant to Rule 2004, authorizing the Committee to issue subpoenas to the following entities, if the Debtor certifies under oath that any of the requested information or documents are not in its possession, custody, or control: (a) Parishes (defined below), High Schools (defined below), Schools (defined below), and Cemeteries (defined below) in the Debtor's geographic territory; (b) the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation; (c) the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation; (d) the Benedict XVI Institute for Sacred Music and Divine Worship; (e) the Roman Catholic Seminary of San Francisco; (f) Catholic Charities CYO of the Archdiocese of San Francisco; (g) the Department of Catholic Schools; (h) Catholic Cemeteries; (i) Vallombrosa Retreat Center; (j) Serra Clergy House; and (k) the Archdiocesan Annual Appeal (together with the High Schools, Schools, and Cemeteries, the "<u>Affiliates</u>").  The Affiliates are each affiliated with, associated with, or related to the Debtor and are likely to have information related to the Investigation Matters.

## II. <u>RELEVANT FACTS</u>

**A.      Background**

On August 21, 2023 (the "<u>Petition Date</u>"), the Debtor commenced the Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as a debtor in possession.

In his first-day declaration, Joseph J. Passarello, the Debtor's Chief Financial Officer, described a number of entities that make up the Debtor's enterprise.[1]  Specifically, Specifically, Mr. Passarello identified "88 parishes [the "<u>Parishes</u>"], four Archdiocesan Catholic high schools (Archbishop Riordan High School, Sacred Heart Cathedral Preparatory, Marin Catholic High School and Junipero Serra High School (collectively, the "<u>High Schools</u>")), numerous elementary schools and private independent schools (collectively, the "<u>Schools</u>"), cemeteries ("<u>Cemeteries</u>") and various other Catholic-based social and community service organizations that operate within the Archdiocese."[2] Mr. Passarello further to identified those "various other Catholic-based . . . organizations" to be the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation;[3] the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation;[4] the Benedict XVI Institute for Sacred Music and Divine Worship;[5] the Roman Catholic Seminary of San Francisco;[6] Catholic Charities CYO of the Archdiocese of San Francisco;[7] Department of Catholic Schools;[8] Catholic Cemeteries;[9] Vallombrosa Retreat Center;[10] Serra Clergy House;[11] and the Archdiocesan Annual Appeal[12] (together with the High Schools, Schools, and Cemeteries, the "<u>Affiliates</u>").

---

[1] *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions* [Doc. No. 14].
[2] *Id.*, at ¶ 15.
[3] *Id.* at ¶ 22.
[4] *Id.* at ¶ 26.
[5] *Id.* at ¶ 29.
[6] *Id.* at ¶ 30.
[7] *Id.* at ¶ 31.
[8] *Id.* at ¶ 32.
[9] *Id.* at ¶ 34.
[10] *Id.* at ¶ 35.
[11] *Id.* at ¶ 36.
[12] *Id.* at ¶ 37.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On September 1, 2023, the United States Trustee (the "UST") appointed the Committee. The Committee consists of nine individuals who have been sexually abused as minors by perpetrators for whom the Debtor was responsible. *See Appointment of Committee of Unsecured Creditors* [Doc. No. 58]. On October 24, 2023, the Court granted the Committee's application to employ Pachulski Stang Ziehl & Jones LLP as its counsel. *See* Doc. No. 237.

### III. JURISDICTION

This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Code sections 1103 and 1109(b), and Rule 2004.

### IV. RELIEF REQUESTED

The Committee respectfully requests that the Court enter an *ex parte* order (1) authorizing the Committee to issue a subpoena requiring the Debtor (a) to complete its production, by January 12, 2024, of documents responsive to the Requests; (b) to provide oral testimony (the "Oral Testimony"), on a mutually agreed date no later than January 24, 2024, relating to the Debtor's search for and possession, custody, or control of documents responsive to the Requests; (2) requiring the Debtor to submit to the Committee by January 12, 2024, the Sworn Statement concerning the specific Requests for which the Debtor does not have documents in its possession, custody, or control, the contents of which shall not affect the Committee's right to Oral Testimony; and (3) authorizing the Committee to issue subpoenas directed to any Parish and any of the Affiliates after receiving the Sworn Statement and/or reviewing the Debtor's document production. Document productions requests under subpoenas to any Parish or Affiliate shall require document production to be completed by February 23, 2024 or no fewer than 14 calendar says after service of a subpoena (whichever is earlier). The scope of the subpoenas to the Parishes and Affiliates will seek documents responsive to the Requests that the Debtor did not produce.

### V. BASIS FOR RELIEF

Local Rule 2004-1 provides as follows: "The Clerk may issue on behalf of the Court, ex parte and without notice, orders granting applications for examination of an entity pursuant to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Bankruptcy Rule 2004(a)." *See* L.B.R. 2014-1(a). The Committee brings this Application ex parte pursuant to Local Rule 2004-1 seeking an order without need for a hearing. The Committee understands that the Debtor reserves the right to interpose objections to the underlying document requests after the issuance of the subpoenas. The Committee commits to meet with the Debtor to attempt to resolve any disputes. But, objections to the underlying document requests do not constitute grounds to oppose or delay the granting of this Application.

Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Rule 2004 is primarily used for "revealing the nature and extent of the bankruptcy estate, and for discovering assets, examining transactions, and determining what wrongdoing occurred."[13]

Pursuant to Rule 2004(b), a party in interest may seek both document and oral discovery related to "acts, conduct, or property of the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Under Rule 2004(c), the "attendance of an entity for examination and the production of documents . . . may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial." Bankruptcy Rule 9016 makes Rule 45 of the Federal Rules of Civil Procedure (governing subpoenas) applicable in cases under the Bankruptcy Code. Unlike discovery under the Federal Rules of Civil Procedure (the "Civil Rules"), discovery under Rule 2004 can be used as a "pre-litigation discovery device."[14] As such, a Rule 2004 motion need not be tied to specific factual allegations at issue between parties.[15]

Moreover, the scope of a Rule 2004 examination is broader than that of discovery under the Civil Rules or the Bankruptcy Rules governing adversary proceedings.[16] In fact, courts have

---

[13] *In re Kelton*, 389 B.R. 812, 820 (Bankr. S.D. Ga. 2008); *see also In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (purpose of Rule 2004 is to "determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors"); *In re The Bennet Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (purpose of Rule 2004 is to assist in "revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed").

[14] *In re Wilson*, 2009 WL 304672, at *5 (Bankr. E.D. La. 2009).

[15] *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Bankruptcy Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").

[16] *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("[T]he scope of a Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure.").

recognized that Rule 2004 examinations may be "broad" and "unfettered," and can legitimately be in the nature of a "fishing expedition."[17]

The decision whether to authorize the requested discovery rests within the sound discretion of the bankruptcy court.[18] Bankruptcy courts may allow a Rule 2004 examination of "third parties who have had dealings with the debtor,"[19] "to allow inquiry in the debtor's acts, conduct or financial affairs so as to discover the existence or location of assets of the estate,"[20] "unearthing frauds,"[21] or to assist in recovering assets for the benefit of a debtor's creditors.[22]

In addition, section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order . . . that is necessary or appropriate to carry out provisions of this title."[23] The proposed investigation will, among other things, assist the Committee to fulfill its statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor."[24] The relief requested in this Motion will enable a more efficient investigation by reducing the time, burden and cost that would be incurred through separate motions for individual entities. Moreover, the substantive rights of any party to object to or modify the information requested by the Committee will not be reduced or expanded by the relief requested.

Here, the requested relief is well within the scope of Rule 2004. The Committee seeks to maximize the amount of creditors' recoveries in this Case. As such, the Committee needs the information sought herein, including information about the Investigation Matters. After issuing the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[17] *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011) (citation omitted); *see also In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008); *In re The Bennet Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (purpose of Rule 2004 is to assist in "revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed"); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (E.D. Pa. 1990).

[18] *See, e.g., In re Hammond*, 140 B.R. 197, 200 (Bankr. S.D. Ohio 1992).

[19] *See Associates v. W&S Investments, Inc. (In re W&S Investments, Inc.)*, 985 F.2d 577, at *2 (9th Cir. Jan. 28, 1993) (unpublished disposition) (Rule 2004 is a "broadly construed discovery device which permits any party in interest in a bankruptcy proceeding to move for a court order to examine any entity…,' the "scope is generally very broad and can 'legitimately be in the nature of a 'fishing expedition.'"") (citation omitted).

[20] *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993).

[21] *In re N. Plaza LLC*, 395 B.R. 113, 122 n.9 (S.D. Cal. 2008) (citations omitted).

[22] *See In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983) (allowing discovery under Rule 2004 to help the debtor "discover and recover assets for benefit of creditors of the debtor").

[23] 11 U.S.C. § 105(a).

[24] *Id.*, § 1103(c)(2).

proposed subpoena to the Debtor, the Committee intends to work cooperatively with the Debtor—and the Parishes and Affiliates, if and when necessary—with regard to these document requests.

## VI. <u>NO PRIOR REQUEST</u>

No prior request for the relief sought in this Motion has been made to this or any other Court.

## VII. <u>NOTICE</u>

Local Rule 2004-1 provides that this Application can be brought "ex parte and without notice." L.B.R. 2014-1(a). Nevertheless, notice of this Motion will be provided to (a) the UST; (b) counsel to the Debtor; and (c) all parties listed on the Limited Service List (as of October 26, 2023) [Doc. No. 250].

## VIII. <u>CONCLUSION</u>

For the reasons set forth above, the Committee respectfully requests that the Court grant this Motion. A proposed order granting this Motion is attached hereto as **Exhibit 2**.

Dated: November 8, 2023

PACHULSKI STANG ZIEHL & JONES LLP


*/s/ Brittany M. Michael*
James I. Stang (CA Bar No. 94435)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Brittany M. Michael (NY Bar No. 5678552) *admitted pro hac vice*

Counsel to the Official Committee of Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT 1**
**Requests for Production of Documents**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT 1**

2

**INSTRUCTIONS**

3  A.    Unless otherwise specified, each request seeks DOCUMENTS dated or created during

4         the ten (10) years prior to the PETITION DATE.

5  B.    Please bates number each page of each DOCUMENT that YOU produce.

6  C.    YOU are required to conduct a thorough investigation and produce all DOCUMENTS

7         (as defined below) in YOUR possession, custody, and control.

8  D.    All/Any/Each. The terms "all," "any," and "each" shall each be construed as

9         encompassing any and all.

10  E.   And/Or. The connectives "and" and "or" shall be construed either disjunctively or

11        conjunctively as necessary to bring within the scope of the discovery request all

12        responses that might otherwise be construed to be outside of its scope.

13  F.    The use of the singular form of any word includes the plural and vice versa.

14  G.    If YOU are unable to comply with a particular category(ies) of the requests below and

15        DOCUMENTS responsive to the category are in existence, state the following

16        information:

17        1.    The date of the DOCUMENT;

18        2.    The type of DOCUMENT (e.g., letter, memorandum, report, etc.);

19        3.    The name, address, telephone number and title of the author(s) of the DOCUMENT;

20        4.    The name, address, telephone number and title of EACH recipient of the

21              DOCUMENT;

22        5.    The number of pages in the DOCUMENT;

23        6.    The document control number, if any;

24        7.    The present location(s) of the DOCUMENT and the name, address and telephone

25              number of the person(s) who has (have) possession of the DOCUMENT;

26        8.    A specific description of the subject matter of the DOCUMENT;

27        9.    The reason why the DOCUMENT cannot be produced or why you are unable to

28              comply with the particular category of request.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**H.** YOU are under a continuing duty to amend YOUR written response and to produce additional DOCUMENTS if you learn that the response or production is incomplete or incorrect in any material respect, and if the additional or corrective information has not otherwise been made known to the COMMITTEE during the discovery process or in writing.

**I.** YOU are required to produce the full and complete originals, or copies if the originals are unavailable, of each DOCUMENT responsive to the categories below along with all non-identical copies and drafts in its or their entirety, without abbreviations, excerpts, or redactions. A copy may be produced in lieu of originals if the entirety (front and back where appropriate) of the DOCUMENT is reproduced and YOU state by declaration under penalty of perjury that the copy provided is a true, correct, complete, and accurate duplication of the original.

**J.** YOU are required to produce the DOCUMENTS as they are kept in the usual course of business, or to organize and label them to correspond with each category in these requests.

**K.** For ELECTRONICALLY STORED INFORMATION ("ESI"):

1. The Committee seeks to discuss with the Debtor and/or Producing Party to whom these Requests are directed (a) potential search terms for ESI responsive to each Request; (b) the potential custodians of ESI responsive to each Request and (c) the devices to be searched for ESI responsive to each Request.

2. Produce DOCUMENTS in accordance with the instructions at https://support.everlaw.com/hc/en-us/articles/360004962052-Standard-Format-for-Processed-Data

3. Maintain family integrity.

4. Perform custodian-level de-duplication.

5. Produce a DAT load file with the following metadata fields: Beginning Production Number, Ending Production Number, Beginning Attachment Number, End Attachment Number, Family ID, Page Count, Custodian, Original Location Path,

LA:4869-9305-7814.6 05968.002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Email Folder Path, Document Type, Doc Author, Doc Last Author, Comments, Categories, Revisions, File Name, File Size, MD5 Hash, Date Last Modified, Time Last Modified, Date Created, Time Created, Date Last Accessed, Time Last Accessed, Date Sent, Time Sent, Date Received, Time Received, To, From, CC, BCC, Email Subject, Path to Native, Path to Full Text, Original Time Zone.

6. Process all data in UTC and provide a metadata field indicating original time zone.

**L. If YOU withhold or redact a portion of any DOCUMENT under a claim of privilege or other protection, then the DOCUMENT must be identified on a privilege log, which shall be produced contemporaneously with the non-privileged DOCUMENTS responsive to this Request for Production, and which privilege log shall state the following information:**

1. The date of the DOCUMENT;

2. The type of DOCUMENT (e.g., letter, memorandum, report, etc.);

3. The name, address, telephone number and title of the author(s) of the DOCUMENT;

4. The name, address, telephone number and title of each recipient of the DOCUMENT;

5. The number of pages in the DOCUMENT;

6. The document control number, if any;

7. The present location(s) of the DOCUMENT and the name, address and telephone number of the person(s) who has (have) possession of the DOCUMENT;

8. A general description of the subject matter of the DOCUMENT or the portion redacted without disclosing the asserted privileged or protected communication;

9. The specific privilege(s) or protection(s) that YOU contend applies.

<u>**DEFINITIONS**</u>

1. "AAA" refers to the Archdiocesan Annual Appeal discussed at PASSARELLO DECL. at ¶ 37.

2. "ABUSE CLAIM" means any CLAIM against the DEBTOR resulting or arising or related to in whole or in part, directly or indirectly from any actual or alleged sexual conduct or misconduct, grooming, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, intimidation, any other conduct constituting a sexual offense, or any other sexual misconduct, and seeking monetary damages or any other relief based upon the conduct described above, under any theory of liability, including, but not limited to, vicarious liability, any negligence-based theory, conspiracy, fraudulent concealment, intentional tort, continuing tort, public nuisance, invasion of privacy, breach of alleged duties imposed by The Charter for the Protection of Children and Young People, Canon Law or other Catholic Church documents or principles, contribution, indemnity, or any other theory based on any acts or failures to act by the DEBTOR or any other PERSON for whose acts or failures to act the DEBTOR is or may be responsible, including but not limited to, claims against clergy, deacons, seminarians, employees, teachers, or volunteers. "ABUSE CLAIM" includes all CLAIMS for Childhood Sexual Assaults, as that term is defined by California Code of Civil Procedure section 340.1(d).

3.     "AFFILIATE" refers to the following: any of the HIGH SCHOOLS, any of the SCHOOLS, any of the CEMETERIES, CASC, RPSC, BENEDICT XVI, the SEMINARY, CATHOLIC CHARITIES, DOS, VALLOMBROSA, SERRA, and/or the AAA.

4.     "ALLEGED PERPETRATOR" refers to any natural PERSON who has been accused of SEXUAL ABUSE of a minor and for whom it has been alleged the DEBTOR was responsible at any time. This term includes, but is not limited to, PERSONS who may not be "credibly accused" under the DEBTOR's or anyone else's definition.

5.     "ARCHBISHOP" refers to the PERSON and the office of the Archbishop of San Francisco, as that term is used at https://www.usccb.org/about/archbishop-faqs.

6.     "ARCHDIOCESAN ANNUAL APPEAL" shall have the meaning ascribed to it in the PASSARELLO DECL. at ¶ 37.

7.     "ARCHDIOCESE" refers to the geographic territory under the jurisdiction of the DEBTOR, as set forth in footnote 2 to the PASSARELLO DECL.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8.      "BANKRUPTCY CASE" refers to the bankruptcy case styled as *In re The Roman Catholic Archbishop of San Francisco*, filed in the United States Bankruptcy Court for the Northern District of California (Case No. 23-30564).

9.      "BENEDICT XVI" refers to the Benedict XVI Institute for Sacred Music and Divine Worship (as discussed in the PASSARELLO DECL. at ¶ 29) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

10.     "CASC" refers to the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation (as discussed in the PASSARELLO DECL. at ¶ 22) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

11.     "CATHOLIC CHARITIES" refers to the Catholic Charities CYO of the Archdiocese of San Francisco (as discussed in the PASSARELLO DECL. at ¶31) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

12.      "CEMETERIES" refers to the six operating cemeteries within the ARCHDIOCESE as referenced in the PASSARELLO DECL. at ¶ 34, where they are identified as Holy Cross Catholic-Colma, Holy Cross-Menlo Park, Holy Cross-Saint Mary Magdalene, Mt. Olivet, Our Lady of the Pillar (includes St. Anthony's Pescadero), and Tomales Catholic Cemetery, and shall include all their agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors. CEMETERIES also includes the Director of Cemeteries and the Catholic Cemetery Advisory Board (discussed in the PASSARELLO DECL. at ¶ 34) and all of their agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors,

direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

13. "CHUBB" refers to Westchester Fire Insurance Company, Pacific Indemnity Company, and/or Century Indemnity Company, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator,

14. "CLAIM" means any "claim," as defined in 11 U.S.C. § 101(5).

15. "CLERGY" refers to any lay PERSONS or RELIGIOUS, including, but not limited to, PRIESTS.

16. "COMMITTEE" refers to the Official Committee of Unsecured Creditors in the BANKRUPTCY CASE.

17. "COMMUNICATION" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

18. "CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

19. "CONTINENTAL" means the Continental Casualty Company, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator,

20. "DOS" refers to the Department of Catholic Schools (discussed at PASSARELLO DECL. at ¶ 32) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

21. "DEBTOR" refers to The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession in the BANKRUPTCY CASE, and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, BANKRUPTCY CASE professionals, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

22. "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure

LA:4869-9305-7814.6 05068.002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. A DOCUMENT includes written COMMUNICATIONS.

23.     "EVIDENCING" has the same meaning as CONCERNING.

24.     "FHO" means "funds allegedly held for others."

25.     "FINANCIAL DISCLOSURES" means all financial disclosures, financial records, account statements, and / or accountings of any kind, either formal or informal.

26.     "FIREMAN'S FUND" refers to Fireman's Fund, Chicago Insurance Company including any affiliate, parent, subsidiary, successor or predecessor of Fireman's Fund, or any third-party administrator.

27.     "IRP" refers to any independent review panel or independent review board of the DEBTOR, whether called "Independent Review Board," "Archdiocesan Review Board," or any other name.

28.     "IDENTIFY" and "IDENTIFYING" shall have the following meanings:

a.     *With respect to PERSONS*: When referring to a PERSON, "to identify" means to give, to the extent known, the PERSON's full name, present or last known address; and when referring to a natural person, additionally, the present or last known place of employment. Once a PERSON has been identified in accordance with this definition, only the name of that PERSON need be listed in response to subsequent discovery requesting the IDENTIFICATION of that person.

b.     *With respect to DOCUMENTS*: When referring to DOCUMENTS, "to identify" means to give, to the extent known, the (i) type of DOCUMENT; (ii) general subject matter; (iii) date of the DOCUMENT; and (iv) author(s), addressee(s) and recipient(s). In the alternative, YOU may produce the DOCUMENTS, together with identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

29.     "INSURANCE POLICIES" means any and all insurance policies in which the DEBTOR or any other entity CONCERNING THE DEBTOR has or could legally make a CLAIM in the proceeds thereof, including as an insured, a named insured, additional insured or otherwise.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

30. "LMI" refers to Certain Underwriters at Lloyd's, London and/or Certain London Market Insurance Companies, including any affiliate, parent, subsidiary, predecessor or successor of LMI, or any third-party administrator.

31. "NON-DEBTOR" means any PERSON other than the DEBTOR IDENTIFIED as responsible for the same ABUSE CLAIM as the DEBTOR. A NON-DEBTOR may be a PARISH or AFFILIATE.

32. "PARISH" shall have the meaning ascribed to it in the PASSARELLO DECL. at ¶14, and shall include all of agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors of the PARISH.

33. "PASSARELLO DECL." refers to the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions*, filed at Docket No. 14 in the BANKRUPTCY CASE.

34. "PERSONAL PROPERTY" means tangible and intangible assets other than REAL PROPERTY.

35. "PERSON" is any natural person, juridical person, or any legal entity, including, without limitation, any business, religious, or governmental entity or association.

36. "PETITION DATE" means August 21, 2023.

37. "RPSC" means and refers to the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation (as discussed at PASSARELLO DECL. at ¶ 26) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

38. "REAL PROPERTY" means land and immovable property on land, such as buildings.

39. "REGARDING" has the same meaning as CONCERNING.

40. "RELATING TO" has the same meaning as CONCERNING.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

41.    "RELIGIOUS" shall refer to any natural PERSON who is a member of an institute of consecrated life or a society of apostolic life.

42.    "RELIGIOUS INSTITUTE" means a society in which Roman Catholic members or RELIGIOUS pronounce public vows, either perpetual or temporary, and lead a life of brothers or sisters in common.

43.    "RELIGIOUS ORDER" means a type of RELIGIOUS INSTITUTE acknowledged by the Roman Catholic Church as such.

44.    "SERRA" refers to the Serra Clergy House (discussed at the PASSARELLO DECL. at ¶ 36) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

45.    "SEXUAL ABUSE" means conduct giving rise to an ABUSE CLAIM.

46.    "SEMINARY" refers to the Roman Catholic Seminary of San Francisco (as discussed at the PASSARELLO DECL. at ¶ 30) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors

47.    "SURVIVOR" refers to a natural PERSON who has or had an ABUSE CLAIM.

48.    "TRUST" means a legal entity under a TRUST AGREEMENT naming as a party the DEBTOR, any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE.

49.    "TRUST AGREEMENT" means to a written or oral arrangement that evidences, or purports to evidence, a TRUST; and includes declarations of trust and all amendments to such arrangements.

50.    "WESTPORT" means the Westport Insurance Company, formerly known as Employers Reinsurance Corporation, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator

51.    "YOU" means the DEBTOR.

52.    "VALLOMBROSA" refers to the Vallombrosa Retreat Center (discussed at the PASSARELLO DECL. at ¶ 35) and includes all of its agents, accountants, advisors, employees,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

**DOCUMENT REQUESTS**

**Corporate Governance**

1.     All versions of articles of incorporation in effect during the 20 years prior to the PETITION DATE for the following:

       a.      The DEBTOR

       b.      Each PARISH

       c.      Each AFFILIATE

2.     All versions of bylaws in effect during the 20 years prior to the PETITION DATE for the following:

       a.      The DEBTOR

       b.      Each PARISH

       c.      Each AFFILIATE

3.     Any formation or governance documents (including amendments) other than articles of incorporation or bylaws, for the following:

       a.      The DEBTOR

       b.      Each PARISH

       c.      Each AFFILIATE

4.     All versions of the norms, statutes, operating guidelines / policies / instructions and policy manuals issued by / created by DEBTOR during 20 years prior to the PETITION DATE.

5.     Schedules of all entities in which the PERSON in the office of the ARCHBISHOP, Chancellor, or Vicar General of the DEBTOR are or have been an officer or director in the 20 years prior to the PETITION DATE, including positions held ex officio. If no such schedule exists, please prepare one in response to this Request.

6.     Schedule(s) of all committees, boards, subcommittees, commissions, councils or similar groups that existed over the 20 years prior to the PETITION DATE for the PERSONS listed below. If no such schedules exist, please prepare them in response to this Request.

       a.      The DEBTOR

       b.      Each PARISH

       c.      Each AFFILIATE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7. Minutes of meetings (including any agendas and materials distributed prior to or at meetings) for all bodies identified in response to request 6.a for the 20 years prior to the PETITION DATE.

8. Schedules of board members for all AFFILIATES.

9. Organization charts (current and historical) of the DEBTOR, PARISHES (including all PARISH schools and cemeteries), all AFFILIATES, and/or all RELIGIOUS ORDERS in the ARCHDIOCESE for 20 years prior to the PETITION DATE.

10. All quinquennial reports for the DEBTOR for the 30 years prior to the PETITION DATE.

11. An index of the current DEBTOR's archives.

12. Minutes of any meetings in the 20 years prior to the PETITION DATE (including any agendas and materials distributed prior to or at meetings) that included a presentation relating to the DEBTOR's solvency.

13. Minutes of any meetings in the 20 years prior to the PETITION DATE (including any agendas and materials distributed prior to or at meetings) that discussed any transactions by and between the DEBTORS and any PARISH (including PARISH schools and cemeteries) and / or AFFILIATES.

14. All DOCUMENTS between the DEBTOR and the Vatican or Holy See (Congress for Bishops) since January 1, 1993 CONCERNING proposed or actual transfers of assets, protection of assets, realignment or restructuring of the DEBTOR, the PARISHES (including PARISH schools and cemeteries), the AFFILIATES, or similar actions.

15. All Official Catholic Directories RELATING TO the DEBTOR, the PARISHES (including PARISH schools and cemeteries) and the AFFILIATES issued in the 20 years prior to the PETITION DATE.

16. Agreements between any RELIGIOUS INSTITUTE (including entities or institutions operated by RELIGIOUS INSTITUTES, such as schools, monasteries, or convents) and the DEBTOR from January 1, 1945 to the PETITION DATE.

17. Schedules of all RELIGIOUS INSTITUTES that operated in the ARCHDIOCESE between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.

18. Schedules of all faculties given by the ARCHBISHOP to members of RELIGIOUS INSTITUTES between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.

19. Copies of any archived versions of the DEBTOR's website from the 20 years prior to the PETITION DATE.

20. DOCUMENTS REGARDING the creation of the Diocese of Oakland and the Diocese of Santa Rosa.

21. Any agreements between the Archdiocese of San Francisco and the Diocese of Oakland or the Diocese of Santa Rosa from 1961 to 1968.

**Parishes and Affiliates**

22.  All written agreements between or among the DEBTOR and its PARISHES and/or AFFILIATES in effect at any time during the 20 years prior to the PETITION DATE. If identical agreements were used between the DEBTOR and multiple other contracting parties, then a sample form agreement and a schedule of all parties to identical agreements is sufficient.

23.  All guidelines or policies for the PARISHES from 1970 to the date YOU respond to this Request RELATING TO any subject, including, but not limited to, child protection, accounting manuals, handbooks, policies (current and historical), investment policies.

24.  All DOCUMENTS which describe or discuss governance of the PARISHES.

25.  A list of all existing PARISHES (including PARISH schools and cemeteries), including any internal identification numbers / codes and addresses.

26.  A list of all former PARISHES (including schools and cemeteries), including those that have been closed, merged, clustered, suppressed, or alienated (including the identification of the surviving PARISH), including any internal identification numbers / codes and addresses.

27.  All DOCUMENTS CONCERNING any strategic plans, PARISH suppressions or mergers, or PARISH governance restructuring for the 30 years prior to the PETITION DATE.

28.  All DOCUMENTS CONCERNING any changes made to the corporate structure of the DEBTOR, the PARISHES (including PARISH schools and cemeteries), and / or the AFFILIATES in the 20 years prior to the PETITION DATE.

29.  Information and data regarding PARISH "statistics" (current and historical) including, but not limited to, Catholic population within each PARISH, Mass attendance at each PARISH, sacraments administered by each PARISH, church building capacity for each PARISH, and the number of priests for the ARCHDIOCESE.

**Parish and Affiliate Financial Relationship**

30.  DOCUMENTS sufficient to IDENTIFY and evidence the calculations or formula for determining PARISH and AFFILIATE assessments for the 20 years prior to the PETITION DATE.

31.  All schedules, accountings, invoices, support, and other DOCUMENTS RELATED TO services provided under any agreement between the DEBTOR and a PARISH, including calculations of amounts owed by, billed to, or allocated to PARISHES in relation to service fees and other costs.

32.  All DOCUMENTS memorializing or in any way relating to any loans between the DEBTOR and AFFILIATES (including, but not limited to, CATHOLIC CHARTIES and Junipero Serra High School located within the ARCHDIOCESE).

33.  DOCUMENTS REGARDING any write-off, forgiveness, cancelation, or similar reduction in any amounts owed to the DEBTOR by the PARISHES (including PARISH schools and cemeteries) or AFFILIATES.

**Financial Information**

34. Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following:

    a.     The DEBTOR

    b.     The PARISHES

    c.     The AFFILIATES

35. Consulting reports, strategic plans, assessments, or studies issued by outside consultants or advisors engaged by the DEBTOR within the 20 years prior to the PETITION DATE.

36. Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following:

    a.     The DEBTOR

    b.     The PARISHES

    c.     The AFFILIATES

37. Copies of annual trial balances for the following:

    a.     The DEBTOR

    b.     The PARISHES

    c.     The AFFILIATES

38. Copies of all auditor workpapers in the possession of the following:

    a.     The DEBTOR

    b.     The AFFILIATES

39. Copies of all "Prepared By Client" or "PBC" documentation in the possession of the following:

    a.     The DEBTOR

    b.     The AFFILIATES

40. Management letters (i.e., from auditor / accounting firm to management / client prepared as part of the audit process) for the following:

    a.     The DEBTOR

    b.     The AFFILIATES

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

41. Letters of representation / management representation letters / client representation letters (i.e., from management / client to auditor / accounting firm prepared as part of the audit process) for the following:

   a. The DEBTOR

   b. The AFFILIATES

42. All monthly budgets for all departments or agencies of the DEBTOR for the 20 years prior to the PETITION DATE, along with budget versus actual variance reports.

43. Copies of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition for the following:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

44. All DOCUMENTS RELATING TO any secured debt, line of credit, bond issuance, and / or guarantee by or relating to the DEBTOR, including, but not limited to, applications, due diligence materials, credit evaluations / reviews, compliance certifications, agreements, or notes.

45. DOCUMENTS RELATING TO the AAA (including campaign brochures, reports / submissions from PARISHES detailing uses of funds, reports detailing goal amounts and actual amounts, reports detailing amounts retained by the DEBTOR, and amounts transferred to the PARISHES.).

46. Annual financial statements in Excel (e.g., balance sheets, income statements, cash flows) for each PARISH (including PARISH schools and cemeteries) for the 20 years prior to the PETITION DATE.

47. Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the below and any entity over the past 2 years.

   a. The DEBTOR

   b. The PARISHES

48. Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the DEBTOR and PARISHES and/or the AFFILIATES over the 20 years prior to the PETITION DATE.

49. Chart of Accounts, including open / active accounts, closed / inactive accounts, departments, divisions, segments, projects, programs, etc., for the following:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

50. All business plans and associated financial projections prepared by or for the DEBTOR.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

51. All solvency analyses, appraisals, and / or valuation reports that were prepared by or for the DEBTOR.

52. All historical activity schedules for all credit facilities and bond issuances for the DEBTOR detailing any draws, paydowns, interest accruals, or similar transactions.

53. Current DEBTOR accounts receivable aging by payee.

54. Copies of all lease agreements, including any amendments, to which at least one of the below is a party:

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

55. DOCUMENTS sufficient to show all payments made pursuant to lease agreements produced in response to Request No. 54.

**Cash and Investments**

56. A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following:

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

57. All DOCUMENTS (including, but not limited to, account creation documents, signature cards, account statements, deposit slips, deposited check copies, wire advices, check copies, debit memos, and credit memos) RELATING TO bank, money market, investment, brokerage or other accounts (both open / current accounts and closed accounts) of the following:

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

58. All DOCUMENTS regarding credit card accounts of the following:

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Real Property**

59. A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

60. A summary listing of any REAL PROPERTY, including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, transferred by the below at any time in the 20 years prior to the PETITION DATE:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

61. All DOCUMENTS concerning any REAL PROPERTY transfers identified in Request No. 60.

62. DOCUMENTS sufficient to show the ownership of all REAL PROPERTY owned in title by or on behalf of the following:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

63. A list of all REAL PROPERTY for which the below have a reversionary interest, including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, and current use (e.g., in use by the entity, leased, vacant).

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

64. Any valuation reports, appraisal reports, studies, or evaluations RELATING TO any REAL PROPERTY identified in Request Nos. 59, 60, and 63.

65. REAL PROPERTY inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")) for the following:

   a. The DEBTOR

   b. The PARISHES

Case: 23-30564    Doc# 292    Filed: 11/08/23    Entered: 11/08/23 10:55:36    Page 25 of 35

66. Copies of all current mortgages, deeds of trust, assignments of leases or rents, collateral assignments, other assignments, and any other agreements (including any schedules, annexes or exhibits thereto) CONCERNING REAL PROPERTY that are intended to provide, or evidence an agreement to provide, security or collateral for any obligation for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

## Personal Property

67. Schedules of all PERSONAL PROPERTY owned by the PERSON below. If no such schedules exist, please prepare them in response to this Request.

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

68. All PERSONAL PROPERTY inventories from the 20 years prior to the PETITION DATE, including inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")), for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

69. All appraisals, valuations, studies, and evaluations of PERSONAL PROPERTY owned or transferred during the 20 years prior to the PETITION DATE by the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

## Allegedly Restricted Assets

70. Schedules detailing specific assets / funds owned or controlled by the PERSONS below alleged to be restricted, held in trust, held for others, or otherwise unavailable for creditors / settlement.

    a. The DEBTOR

    b. The PARISHES (including PARISH schools and cemeteries)

    c. The AFFILIATES

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case: 23-30564   Doc# 292   Filed: 11/08/23   Entered: 11/08/23 10:55:36   Page 26 of 35

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

71.　Support for all allegedly restricted assets from Request No. 70, including wills, bequests, agreements, donation records, and correspondence that the DEBTOR intends to rely upon to establish / support restrictions.

72.　DOCUMENTS REGARDING the original sources of any FHO in the possession, custody, or control of the DEBTOR; how and where alleged FHO funds were maintained (including identification of specific bank, investment or brokerage accounts – both current and historical); and the flow of FHO funds (both current and historical).

73.　DOCUMENTS regarding the original sources of any alleged TRUST funds in the possession, custody, or control of the DEBTOR, how and where the alleged TRUST funds have been maintained (including identification of specific bank, investment or brokerage accounts – both current and historical), and the flow of funds (both current and historical).

74.　Copies of all FINANCIAL DISCLOSURES made by the DEBTOR (or any other trustee or party) to each PARISH (including PARISH schools and cemeteries) and AFFILIATES, and the date of each FINANCIAL DISCLOSURE.

75.　All DOCUMENTS CONCERNING the use of funds generated from any allegedly restricted assets, contributions, or bequests held by the DEBTOR or AFFILIATES.

76.　Fully executed copies of all TRUST AGREEMENTS naming as a party the DEBTOR and / or any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE (each a "Trust").

77.　All drafts of TRUST AGREEMENTS and non-privileged CORRESPONSENCE REGARDING the drafts.

78.　For each TRUST, complete financial records from inception through the PETITION DATE showing (i) the initial funding, (ii) the source of the initial funding, (iii) all additions to the TRUST fund, (iv) all distributions and disbursements, and (v) all fees, taxes, and administration expenses. For each distribution and / or disbursement of TRUST funds, whether principal or income, identify (i) the date of each distribution and / or disbursement, (ii) the recipient, (iii) the amount, and (iv) the PERSON who authorized the distribution and / or disbursement.

79.　DOCUMENTS sufficient to separately IDENTIFY all sums paid to or for the benefit of the DEBTOR from each TRUST for any reason and IDENTIFY (i) the date of each payment, (ii) the amount, (iii) the PERSON who authorized the payment, (iv) the recipient, and (v) a brief narrative description of why the payment was made.

80.　For each TRUST, DOCUMENTS sufficient to IDENTIFY each and every instance where the PARISHES (including PARISH schools and cemeteries) or AFFILIATES compelled a distribution from such TRUST. Provide all DOCUMENTS REGARDING the exercise of such right to compel a distribution.

81.　If the assets held, or alleged to be held, in any TRUST were commingled at any time with any other TRUST assets or the DEBTOR's assets,

　　a.　DOCUMENTS sufficient to IDENTIFY all accounts that held funds belonging to the TRUST, and

　　b.　all DOCUMENTS associated with those accounts.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

82. DOCUMENTS sufficient to describe how TRUST assets for each TRUST were invested and how investment decisions were made.

83. For each TRUST, DOCUMENTS sufficient to show the legal counsel involved in the preparation of the TRUST AGREEMENT, if any, and whether each party to such TRUST was represented by separate counsel.

84. DOCUMENTS sufficient to IDENTIFY all PERSONS who assisted the DEBTOR with fulfilling its legal obligations stemming from each TRUST.

85. All donor gift policies, rules, and regulations for the 20 years prior to the PETITION DATE.

**Pooled Investments**

86. DOCUMENTS IDENTIFYING current deposit balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or any other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership.

87. DOCUMENTS IDENTIFYING current loan balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of borrowers.

88. DOCUMENTS IDENTIFYING current fund / subfund balances related to any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership.

89. DOCUMENTS RELATED TO the operation of any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Deposit & Loan Fund" operated and / or currently operates, institution account statements, participant account statements, and transaction DOCUMENTS such as check copies and wire advices).

90. DOCUMENTS RELATED TO to the operation of any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Pooled Investment" program operated and / or currently operates, institution account statements, participant account statements, and transaction documents such as check copies and wire advices).

**Pension**

91. All DOCUMENTS REGARDING any pension plans covering DEBTOR or PARISH employees (including priests or other CLERGY) including, without limitation, the following for the period from January 1, 2003 to the PETITION DATE: (a) Master Trust Agreements; (b) calculations of reserves; (c) calculations of shortfalls; and (d) financial statements (including balance sheets, profit and loss statements, and statements of cash flows).

LA:4869-9305-7817.6 05068.002

### Cemeteries

92. Studies, analyses, reports, or similar DOCUMENTS (whether performed internally or by external consultants) that include information RELATED TO CEMETERY permanent maintenance / perpetual care, including all narrative and associated attachments, schedules, exhibits, and tables.

93. Samples of each form of CEMETERY contract, agreement (including, but not limited to, purchases, sales, and perpetual care) used during the 20 years prior to the PETITION DATE.

### Insurance

94. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with LMI that reflect the existence of INSURANCE POLICIES (including missing policies).

95. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with FIREMAN's FUND that reflect the existence of INSURANCE POLICIES (including missing policies).

96. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with CHUBB that reflect the existence of INSURANCE POLICIES (including missing policies).

97. All DOCUMENTS EVIDENCING historical insurance coverage for the DIOCESE with CONTINENTAL that reflect the existence of INSURANCE POLICIES (including missing policies).

98. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with WESTPORT that reflect the existence of INSURANCE POLICIES (including missing policies).

99. All DOCUMENTS EVIDENCING historical insurance for the DEBTOR with any PERSON not identified in Request Nos. 94-98 under which coverage for the ABUSE CLAIMS could possibly be available.

100. Copies of all general liability INSURANCE POLICIES under which the PARISHES and AFFILIATES assert an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

101. For all policies identified in response to Request No. 100, where the PARISHES and/or AFFILIATES have not provided a complete copy of the applicable policy, all DOCUMENTS EVIDENCING historical insurance coverage for the PARISHES and/or AFFILIATES with respect to that policy.

102. Copies of all general liability INSURANCE POLICIES under which any NON-DEBTOR asserts a CLAIM an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

103. For all INSURANCE POLICIES IDENTIFIED in response to Request No. 102 where the NON-DEBTOR has not provided a complete copy of the applicable INSURANCE POLICY, all DOCUMENTS EVIDENCING historical insurance coverage for the NON-DEBTOR with respect to that INSURANCE POLICY.

104. Copies of all insurance coverage letters, including, without limitation, reservation of rights letters or coverage denial letters, received by the DEBTOR, PARISHES, AFFILIATES, and/or the NON-DEBTORS with respect to ABUSE CLAIMS.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

105. A schedule of the amount paid or due to be paid by insurance carriers to the DEBTOR, PARISHES, AFFILIATES, and NON-DEBTORS with respect to defense costs for the ABUSE CLAIMS.

106. All DOCUMENTS REGARDING all efforts undertaken by the ARCHDIOCESE or anyone on its behalf to locate INSURANCE POLICIES, or secondary evidence of INSURANCE POLICIES.

107. To the extent not included in Request No. 106, a schedule of (1) the PERSONS who participated in the searches for INSURANCE POLICIES, (2) the dates of the searches; (3) the location(s) of the searches; (4) how long each search lasted; (5) what key words or search terms were used to conduct the searches; and (6) whether the searches involved the review of electronic files, paper records, or both. If no such schedule exists, please prepare it in response to this Request.

## Abuse Claims

108. All DOCUMENTS CONCERNING ABUSE CLAIMS for any occurrence alleged to have taken place since January 1, 1941, regardless of whether allegations of SEXUAL ABUSE were deemed "credible" or were substantiated by the DEBTOR. This Request includes allegations against living and deceased PERSONS.

109. All lists, or partial or draft lists, of all PERSONS accused of SEXUAL ABUSE who have operated within the ARCHDIOCESE since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations."

110. All DOCUMENTS during the 20 years prior to the PETITION DATE sufficient to explain the DEBTOR's interpretation at any time of the term "credibly accused" or any synonym that the DEBTOR has used or uses to indicate when it believes a PERSON committed the SEXUAL ABUSE of which he or she was accused.

111. If YOU have no documents in your possession, custody, or control that are responsive to Request No. 109, please prepare such a list and produce all DOCUMENTS RELATING TO the decision not to prepare such a list previously.

112. If YOU have no documents in your possession, custody, or control that are responsive to Request No. 109, produce all DOCUMENTS sufficient to identify every PERSON accused of SEXUAL ABUSE who has operated within the ARCHDIOCES since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations."

113. The personnel files or all personnel records for each ALLEGED PERPETRATOR. This Request is not limited to DOCUMENTS CONCERNING SEXUAL ABUSE and includes, but is not limited to: educational background; work assignment histories; work performance evaluations; CORRESPONDENCE; reports; complaints (regarding SEXUAL ABUSE and otherwise); disciplinary records (regarding SEXUAL ABUSE and otherwise); medical, psychological and psychiatric records; and laicization DOCUMENTS.

114. All DOCUMENTS CONCERING any ALLEGED PERPETRATOR, including, but not limited to: DOCUMENTS kept separate and apart from the main personnel files for such priests, deacons, or RELIGIOUS. This Request includes, but is not limited to, the following: secret files; secret archives; *sub secreto* files; "Z" files; Canon 489 of The Code of Canon Law (1983) files; Canon 379 of The Pio Benedictine Code of Canon Law (1917) files; Red Files; "Active Clergy Files;" "The Well;" "The Confidential Archive (archivum secretum);" "Archive;" "Inappropriate Behavior Policies/Referrals;" and/or "Clergy File Room."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

115. All confidential DOCUMENTS (including, but not limited to, the strictly confidential DOCUMENTS maintained by the ARCHBISHOP or the DEBTOR pursuant to *Crimen Sollicitationis* (Crime of Solicitation) (1962) (Instruction of the Supreme Sacred Congregation of the Holy Office)), CONCERNING PRIESTS and RELIGIOUS against whom ABUSE CLAIMS have or could have been made, regardless of whether such allegations were deemed credible accusations or were substantiated by the DEBTOR or by any agent, officer, or congregation of the Roman Catholic Church.

116. All DOCUMENTS CONCERNING the application for laicization, granting of laicization, deferral of laicization, and denial of laicization of PRIESTS, other CLERGY or RELIGIOUS who have been accused of or admitted to SEXUAL ABUSE and for whom the DEBTOR may be responsible or liable.

117. All DOCUMENTS CONCERNING any ALLEGED PERPETRATOR that were sent to or received from the PERSONS that have been variously known as the Dicastery for the Doctrine of the Faith, the Pontifical Commission for the Protection of Minors, the Congregation for the Doctrine of the Faith, the Sacred Congregation for the Doctrine of the Faith, the Priest Senate Council, Priests' Senate, Diocesan Presbyterium, Priest Senator Council, Presbyteral Council, Priests' Counsel, and/or the Council of Priests.

118. All DOCUMENTS REGARDING any ALLEGED PERPETRATOR that refer to the Papal Nuncio, Apostolic Nuncio, and/or Apostolic Delegate to the United States of America.

119. All DOCUMENTS CONCERNING ABUSE CLAIMS provided to or prepared by any IRP including, but not limited to, complaints, allegations or reports of SEXUAL ABUSE, interview notes, minutes and transcripts of meetings, findings, recommendations, decisions, reports or memoranda, and CORRESPONDENCE.

120. All minutes or notes of any meeting of any IRP.

121. All DOCUMENTS REGARDING the operation of all of the DEBTOR's victim's assistance programs , including, but not limited to, manuals and policies written during the 10 years prior to the PETITION DATE.

122. DOCUMENTS sufficient to IDENTIFY the victim's assistance coordinator(s), any victim's assistance personnel, and PERSONS who interacted with SURVIVORS on behalf of the DEBTOR with regard to such ABUSE CLAIMS.

123. All DOCUMENTS sufficient to IDENTIFY members of the IRP considering ABUSE CLAIMS.

124. All manuals, memoranda, or other DOCUMENTS CONCERNING procedures for any IRP considering ABUSE CLAIMS.

125. All DOCUMENTS CONCERNING assertions or concerns during the 20 years prior to the PETITION DATE that the DEBTOR or the ARCHBISHOP violated or failed to comply with the United States Conference of Catholic Bishops' *Charter for the Protection of Children and Young People* or the *Essential Norms for Diocesan/ Eparchial Policies Dealing with Allegations of Sexual Abuse of Minors by Priests or Deacons*, including, but not limited to, CORRESPONDENCE, reports, complaints, and disciplinary records.

126. All DOCUMENTS CONCERNING complaints, allegations, or reports that the DEBTOR or the ARCHBISHOP violated or failed to comply with any local or state child sexual abuse reporting requirements. This Request includes, but is not limited to, notes, CORRESPONDENCE, reports, complaints, and disciplinary records.

127. All DOCUMENTS REGARDING the discipline (or lack of discipline) and restriction (or lack of restriction) of any services, duties, or responsibilities of a ALLEGED PERPETRATOR, including, but not limited to, the restriction of priestly ministries or access to children.

128. All DOCUMENTS sufficient to substantiate all amounts of money paid by the DEBTOR any PARISH, and any AFFILIATE for therapy for SURVIVORS.

129. All COMMUNICATIONS with the following PERSONS CONCERNING ABUSE CLAIMS AND ALLEGED PERPETRATORS dated during the 20 years prior to the PETITION DATE: any state or federal governmental agency, authority, or entity, including, without limitation, district attorneys' offices, the California Attorney General's office, police departments, and the United States Department of Justice; or any other law enforcement agency.

130. All COMMUNICATIONS with any PERSON, including, but not limited to, RELIGIOUS ORDERS and other archdioceses and dioceses CONCERNING all ALLEGED PERPETRATORS who also served outside of the ARCHDIOCESE at any time.

131. All subpoenas from any governmental agency or entity (local, state, or federal) directed to or served on YOU regarding the issue of SEXUAL ABUSE.

132. All DOCUMENTS CONCERNING the subpoenas referenced in Request No. 129, including, but not limited to, written responses, DOCUMENT productions, and CORRESPONDENCE.

133. All DOCUMENTS CONCERNING the DEBTOR's settlements of then-existing ABUSE CLAIMS in the 20 years prior to the PETITION DATE, including, but not limited to, settlement agreements (whether or not "confidential") with SURVIVORS.

134. DOCUMENTS sufficient to IDENTIFY the sources of funds the DEBTOR used to pay settlements of ABUSE CLAIMS.

135. DOCUMENTS sufficient to IDENTIFY all INSURANCE POLICIES that have provided policy proceeds for payment of ABUSE CLAIMS or defense costs on behalf of the DEBTOR or any other named insured.

136. All COMMUNICATIONS among the DEBTOR and financial donors or other financial benefactors to the DEBTOR, any PARISH, and any AFFILIATE REGARDING payment for ABUSE CLAIMS.

137. All DOCUMENTS generated by private investigators relative to ABUSE CLAIMS, and COMMUNCATIONS between the DEBTOR and private investigators concerning same.

138. Any DOCUMENTS YOU exchanged with the John Jay College of Justice CONCERNING its study on SEXUAL ABUSE or ABUSE CLAIMS in the Roman Catholic Church.

-end-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT 2**

**Proposed Form of Order Ex Parte Application**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

James I. Stang (CA Bar No. 94435)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Brittany M. Michael (NY Bar No. 5678552) *admitted pro hac vice*
Pachulski Stang Ziehl & Jones LLP
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email: jstang@pszjlaw.com
         dgrassgreen@pszjlaw.com
         jlucas@pszjlaw.com
         bmichael@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No.: 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **ORDER GRANTING EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES; AND ORDERING DEBTOR TO SUBMIT DECLARATION** |

Upon consideration of the *Ex Parte Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Oral Examination of the Debtor; and Production of Documents of Debtor, Parishes, and Affiliates; and Ordering Debtor to Submit Declaration* (the "Application"), the record in this case, and for good and sufficient cause appearing,

IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Application is GRANTED.

2.     The Committee is authorized to issue a subpoena directed to the Debtor requiring the Debtor (a) to complete its production, by January 12, 2024, of documents responsive to the Requests;[1] and (b) to provide oral testimony, no later than January 24, 2024, relating to the Debtor's search for and possession, custody, or control of documents responsive to the Requests (the "Oral Testimony").

3.     The Debtor is required to submit to the Committee by January 12, 2024, a written declaration, signed under penalty of perjury, concerning the specific Requests for which the Debtor does not have documents in its possession, custody, or control (the "Sworn Statement").

4.     The Debtor's submission to the Committee of the Sworn Statement shall not in any way affect the Committee's right to take Oral Testimony.

5.     After receipt of the Sworn Statement and/or the substantial completion of the Debtor's document review, the Committee is authorized to issue subpoenas to any of the Parishes or Affiliates to seek production of documents responsive to any Requests identified in the Sworn Statement or identified during Oral Testimony or during the Committee's review of the Debtor's document production for which the Debtor did not produce documents in response to the Requests.

6.     The Committee's subpoena(s) directed to any of the Parishes or Affiliates shall require those subpoenaed parties to complete, by February 23, 2024 or no fewer than 14 calendar says after service of a subpoena, whichever is earlier, their production of documents responsive to the Requests.

**\*\*END OF ORDER\*\***

---

[1] All terms not otherwise defined in this Order shall have the meanings ascribed to them in the Application.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA