1  PAUL J. PASCUZZI, State Bar No. 148810
   FELDERSTEIN FITZGERALD
2    WILLOUGHBY PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
3  Sacramento, CA 95814
   Telephone:    (916) 329-7400
4  Facsimile:    (916) 329-7435
   Email:        ppascuzzi@ffwplaw.com
5
   ORI KATZ, State Bar No. 209561
6  ALAN H. MARTIN, State Bar No. 132301
     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
7    A Limited Liability Partnership
   Including Professional Corporations
8  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
9  Telephone:    (415) 434-9100
   Facsimile:    (415) 434-3947
10 Email:        okatz@sheppardmullin.com
                 amartin@sheppardmullin.com
11
   Attorneys for The Roman Catholic
12 Archbishop of San Francisco

13              **UNITED STATES BANKRUPTCY COURT**

14       **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

15 | In re | Case No. 23-30564 |

16 | THE ROMAN CATHOLIC ARCHBISHOP | Chapter 11 |
   | OF SAN FRANCISCO, | |

17 | | **DEBTOR'S REQUEST FOR HEARING** |
   | | **AND OBJECTION TO *EX PARTE*** |
18 | Debtor and | **APPLICATION OF THE OFFICIAL** |
   | Debtor in Possession. | **COMMITTEE OF UNSECURED** |
19 | | **CREDITORS FOR ENTRY OF AN** |
   | | **ORDER PURSUANT TO BANKRUPTCY** |
20 | | **RULE 2004 AUTHORIZING ORAL** |
   | | **EXAMINATION OF THE DEBTOR; AND** |
21 | | **PRODUCTION OF DOCUMENTS OF** |
   | | **DEBTOR, PARISHES, AND** |
22 | | **AFFILIATES; AND ORDERING DEBTOR** |
   | | **TO SUBMIT DECLARATION** |
23
24 | | Date:    [TBD] |
   | | Time:    [TBD] |
25 | | Judge:   Hon. Dennis Montali |
   | | Place:   Zoom.Gov |

26

27

28

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

CASE NO. 23-30564

Case: 23-30564   Doc# 296   Filed: 11/08/23   Entered: 11/08/23 16:15:31   Page 1 of
23

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 3

        A.      The Bankruptcy Case ............................................................................... 3

        B.      The Committee .......................................................................................... 4

        C.      The Committee's Application ................................................................... 4

        D.      The Committee's Proposed RFPs ............................................................ 5

        E.      The Parties Have Yet To Meaningfully Confer ...................................... 6

III.    RCASF'S OBJECTIONS .................................................................................... 6

        A.      The Application is Premature and Unreasonable. .................................. 6

        B.      In any event, the Application Should Not be Granted Without Notice and Hearing. ..... 7

        C.      The RFPs Exceed the Limits of Permissible Discovery under Rule 2004. ................... 8

                1.      The Committee Cannot Compel Debtor's Sworn Declaration Under Rule 2004. ....... 9

                2.      The RFPs' Lookback Period Is Temporally Overbroad. .................... 10

                3.      The "Abuse Claims" RFPs Are Improper Litigation Discovery Not Suited for Rule 2004 Discovery. ............. 11

                4.      Discovery Against Non-Debtor Catholic Entities Is Premature and Not Proper under Rule 2004. ......... 13

                5.      The RFPs Are Impermissibly Vague and Overbroad. ....................... 14

                6.      The RFPs Improperly Instruct the Debtors to Create Documents. ..................... 17

                7.      Certain of the RFPs Improperly Seek Wholesale Production of Electronic Databases. ........... 17

                8.      The Committee Requests an Order Compelling an Impermissible Privilege Log. ............. 17

IV.     RESERVATION OF RIGHTS ........................................................................... 18

V.      CONCLUSION................................................................................................... 18

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

CASE NO. 23-30564

# **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

<u>Cases</u>

*In re AOG Entertainment, Inc.*
   558 B.R. 98 (Bankr. S.D.N.Y. 2016) ......................................................................... 8

*In re Art & Architecture Books of the 21st Century*
   No. 2:13-bk-14135-RK, 2019 WL 9243053 (Bankr. C.D. Cal. Dec. 6, 2019) ....................... 8

*In re Bennett Funding Group, Inc.*
   203 B.R. 24 (Bankr. N.D.N.Y. 1996) ....................................................................... 12

*In re Boulder Operations Holdings LLC*
   No. 22-10664, 2023 Bankr. LEXIS 1401 (Bankr. D. Del. May 30, 2023) ........................... 14

*Cameron v. United States*
   231 U.S. 710 (1914) ............................................................................................. 8

*In re Countrywide Home Loans*
   384 B.R. 373 (Bankr. W.D. Pa. 2008) ...................................................................... 13

*In re Dinubilo*
   177 B.R. 932 (E.D. Cal. 1993) ............................................................................... 12

*In re Downs*
   No. 8:16-BK-12589-SC, 2021 WL 4823508 (Bankr. C.D. Cal. Oct. 13, 2021) .................... 8

*Dunn v. Trans World Airlines, Inc.*
   589 F.2d 408 (9th Cir. 1978) ................................................................................... 9

*In re Farris-Ellison*
   No. 2:11-bk-33861-RK, 2015 WL 5306600 (Bankr. C.D. Cal. Sep. 10, 2015) .................... 8

*In re Haney*
   238 B.R. 430 (Bankr. E.D. Ark. 1999) ................................................................. 9, 17

*In re Int'l Fibercom, Inc.*
   283 B.R. 290 (Bankr. D. Ariz. 2002) ......................................................................... 9

*In re Jinzheng Grp. (USA) LLC*
   No. 2:21-BK-16674-ER, 2022 WL 682212 (Bankr. C.D. Cal. Mar. 7, 2022) .............. 12, 13

*In re Kearney*
   590 B.R. 913 (Bankr. D.N.M. 2018) ....................................................................... 14

*In re Mastro*
   585 B.R. 587 (B.A.P. 9th Cir. 2018) .................................................................... 8, 13

*In re Millennium Lab Holdings II, LLC*
   562 B.R. 614 (Bankr. D. Del. 2016) ....................................................................... 14

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *Ex Parte* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

CASE NO. 23-30564

*In re Mittco, Inc.*
    44 B.R. 35 (Bankr. E.D. Wisc.1984)................................................................14, 15

*People v. Wilshire Ins. Co.*
    46 Cal. App. 3d 216 (Cal. Ct. App. 1975)................................................................7

*In re Roman Cath. Church of Diocese of Gallup*
    513 B.R. 761 (Bankr. D.N.M. 2014)................................................................13, 14

*Secs. & Exchange Comm'n v. Canadian Javelin Ltd.*
    64 F.R.D. 648 (S.D.N.Y. 1974)................................................................9

*Sierrapine v. Refiner Prod. Mfg., Inc.*
    275 F.R.D. 604 (E.D. Cal. 2011)................................................................13

*Snyder v. Soc'y Bank*
    181 B.R. 40 (S.D. Tex. 1994), *aff'd sub nom.*, *In re Snyder*, 52 F.3d 1067 (5th Cir. 1995) (mem. op.)................................................................12

*In re SunEdison, Inc.*
    562 B.R. 243 (Bankr. S.D.N.Y. 2017).................................................................14

*In re SunEdison, Inc.*
    572 B.R. 482 (Bankr. S.D.N.Y. 2017)................................................................12, 13

*In re Sutera*
    141 B.R. 539 (Bankr. D. Conn. 1992)................................................................9

*In re Valley Forge Assocs.*
    109 B.R. 669 (Bankr. E.D. Pa. 1990)................................................................12

*In re Washington Mut., Inc.*
    408 B.R. 45 (Bankr. D. Del. 2009)................................................................12

*Matter of Wilcher*
    56 B.R. 428 (Bankr. N.D. Ill. 1985)................................................................14

*Wright v. Beck*
    981 F.3d 719 (9th Cir. 2020)................................................................7

**Statutes**

11 U.S.C. § 544................................................................10

Cal. Civ. Code § 3439.09(c)................................................................10

**Other Authorities**

Fed. R. Bankr. P. 7004, *et seq.*................................................................1

Fed. R. Civ. P. 26................................................................11

Local Civil Rule 37-1................................................................7

Local Rule 2004-1................................................................7

The Roman Catholic Archbishop of San Francisco ("RCASF" or "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), respectfully requests a hearing on its following objections to the *Ex Parte Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Oral Examination of the Debtor; and Production of Documents of Debtor, Parishes, and Affiliates; and Ordering Debtor to Submit Declaration* [ECF No. 292] (the "Application"), filed on November 7, 2023, by the Official Committee of Unsecured Creditors in this Bankruptcy Case (the "Committee"). In support of this Objection, the Debtor hereby states as follows:

## I. INTRODUCTION

At the outset of this Bankruptcy Case, the RCASF expressed that active engagement and dialogue with the Committee was imperative to a good outcome as well as its readiness and willingness to engage with the Committee to work toward achieving the best result in the shortest, reasonable amount of time. Decl. of Joseph J. Passarello ISO Ch. 11 Pet.; Debtor's Emergency Mots. ("Passarello Decl.") [ECF No. 14] ¶ 11. The RCASF and its professionals reiterate today this commitment to achieving the most reasonably expedient optimal outcome. The RCASF must object to the Committee's Application, however, because while it manifests the Committee's desire for expediency in Rule 2004, it lacks a legal basis and forsakes reasonableness in both timing and scope.

*First*, the Committee did not serve any preliminary letter for information from the Debtor or attempt informal discovery. Instead, the Committee lodged 138 proposed, formal document requests that sweep far beyond even the wide bounds of permissible discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Almost, if not all, of the requests seek information for an overbroad time period (often 20 years or more). Many of the requests are vague and ambiguous, seeking untold volumes of tangential information rather than the information the Committee and other interested parties need to prepare for mediation. Still others are improper litigation discovery subject to the stricter confines of discovery authorized by the Federal Rules of Civil Procedure (the "Civil Rules") as made applicable by Bankruptcy Rule 7004, *et seq.* And numerous specific requests are on their face overbroad and lack good cause.

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

CASE NO. 23-30564

Case: 23-30564   Doc# 296   Filed: 11/08/23   Entered: 11/08/23 16:15:31   Page 5 of
23

While the RCASF will specifically address, object, and respond to each individual request consistent with applicable rules if such a subpoena be served in the future, the Court should not authorize the Committee to serve such a sweeping subpoena in the first place on an *ex parte* basis. The Court should all the more so not require the Debtor to do the unreasonable–and likely impossible–and respond to such a subpoena in less than 65 days.[1]

*Second*, the Committee's request for an order requiring the Debtor to provide a written, sworn declaration concerning its document collection and production is unprecedented and without authority in Rule 2004. Rule 2004 does not authorize courts to order a debtor to produce sworn declarations absent examination–especially where, as here, the requested Rule 2004 examination will also involve live, sworn testimony on the same topics.

*Third*, the Committee's request for authorization to subpoena non-debtor Parishes and Affiliates for unspecified information is, at the very least, premature if not overbroad and exceeding Rule 2004's scope. By the Committee's own admission, the Committee will first need to receive and review a voluminous production from the Debtor before determining what, if any, information the Committee might still need. Moreover, if the proposed requests to the Debtor are any indication, the contemplated subpoenas to the Parishes and Affiliates will be intrusive, seek information likely exempted from routine public disclosure under federal and state law, not legally relevant to the Bankruptcy case, and thus beyond the proper scope of Rule 2004.

*Finally*, and more globally, the Committee's Application is premature. The parties have not substantively engaged in the necessary cooperative and collaborative conferrals regarding the Committee's expansive and wide-ranging requests–a necessary and beneficial process through which the parties can work together to identify the documents and information the Committee truly wants and needs and develop a phased, scheduled approach to the Debtor's collection and production of that information on an expedient but still reasonable timeline. Prior to filing the Application, counsel for the RCASF urged the Committee and its professionals to engage in a collaborative and cooperative discovery process.

---

[1] There is also no controlling protective order entered in the Bankruptcy Case to protect the production of confidential and/or highly sensitive, non-public information.

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

CASE NO. 23-30564

2

1     The RCASF respectfully requests that, after notice and hearing, the Court deny the
2  Committee's Application insofar as it seeks the Debtor's sworn declaration and pre-authorization
3  for essentially unlimited third-party subpoenas on an *ex parte* basis without any sufficient factual or
4  legal justification. As to the remainder of the relief requested, RCASF asks that the Court continue
5  the hearing leaving the record open for future briefing and argument, as needed. The Committee's
6  proposed 138 RFPs are excessively overbroad, vague and harassing. There is no legitimate purpose
7  to proceed with Rule 2004 discovery in the manner proposed by the Committee that will only result
8  in extensive objection and motion practice.  As the Court will surely appreciate when it reviews the
9  Committee's requests, this is far from the typical Rule 2004 exam request.  The time to pare the
10  request back is now.  The RCASF therefore requests the Court exercise its broad discretion to avoid
11  abuse and waste of the estate resources and compel the Committee to confer and develop a
12  substantially more targeted set of proposed requests and deadlines, which protocol shall include the
13  right for Debtor to make a rolling production.

## II.    BACKGROUND

### A.    The Bankruptcy Case

16     The RCASF commenced this case less than three months ago by filing a voluntary petition
17  for relief under chapter 11 of the Bankruptcy Code on August 21, 2023 (the "<u>Petition Date</u>").  As of
18  the Petition Date, there were approximately 537 separate, active lawsuits pending against the Debtor
19  filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor.  These
20  lawsuits followed the enactment of California Assembly Bill No. 218 ("<u>AB 218</u>"), which permitted
21  certain individuals to file what had been time-barred claims against individuals and entities for abuse
22  claims by no later than December 31, 2022.  Prior to the passage of AB 218, the RCASF and its
23  insurers had paid approximately $70 million in legal settlements in the aggregate over the past
24  20 years in an effort to fulfill the RCASF's responsibility for abuse of minors by diocesan clergy.

25     Consistent with its commitment to using available resources of the RCASF to provide for
26  all survivors of abuse in a fair, just and equitable manner, the RCASF sought chapter 11 relief not
27  to avoid responsibility for past misconduct by clergy but, rather, as a further step toward fulfilling
28  its moral obligation to compensate all abuse survivors fairly and within a reasonable period of time.

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

2

CASE NO.  23-30564

The RCASF intends to ensure that fair, equitable, and reasonable recoveries are available to individuals with bona fide abuse claims through an expedited resolution mechanism established as part of this Bankruptcy Case.

At the same time, the RCASF's other primary goal in the Bankruptcy Case is to continue the work of the Church within the Archdiocese to the fullest extent possible using the resources dedicated to those purposes, including carrying on its essential ministries and services serving the needs of its parishioners and others who rely on the RCASF's ministry, education, and charitable outreach.

**B.      The Committee**

On September 1, 2023, the United States Trustee ("UST") appointed the Official Committee of Unsecured Creditors, comprised of nine individuals who, pre-petition, had asserted abuse related claims against the Debtor.  ECF No. 58.  Two weeks ago, on October 24, 2023, the Court granted the Committee's application to employ Pachulski Stang Ziehl & Jones LLP as its counsel. ECF No. 237.

**C.      The Committee's Application**

On November 7, 2023, after only minimal, high-level conferrals with the RCASF's counsel, the Committee filed its *ex parte* Application under Bankruptcy Rule 2004 and Local Bankruptcy Rule ("Local Rule") 2004-1.

The Application seeks four *ex parte* orders from the Court.  *First*, the Application seeks an order requiring Debtor serve responses and produce documents responsive to ***138 requests for production***, on behalf of the Debtor, its 88 Parishes, and tens of additional "Affiliate" entities, including 4 High Schools, 22 pre-schools, 55 elementary schools, 6 cemeteries, and tens of other organizations and entities within less than 65 days.  *Id.* at 2.  *Second*, it seeks an order requiring the RCASF to submit a sworn declaration under penalty of perjury setting forth the requests for which the RCASF does not have responsive documents in its possession, custody, or control.  *Id. Third*, it requests the RCASF be compelled to provide oral testimony by January 24, 2024, relating to its search for and possession, custody and control of responsive documents.  *Id.  Fourth*, it seeks "pre-authorization" to serve still additional document subpoenas on the Non-Debtor Catholic

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

4

CASE NO.  23-30564

Case: 23-30564   Doc# 296   Filed: 11/08/23   Entered: 11/08/23 16:15:31   Page 8 of 23

1  Entities and an order that these entities respond to the unspecified, potentially wide-ranging

2  subpoenas within as little as 14 days. *Id.*

3        The Committee asserts the purpose of the Application is to obtain information from the

4  Debtor and Non-Debtor Catholic Entities "about the acts, conduct, property, liabilities, and

5  financial condition of the Debtor." *Id.* at 2. The Committee further asserts it seeks to propound

6  the proposed RFPs to, among other things, assess the formation and organization of the RCASF

7  and Non-Debtor Catholic Entities, the value of the RCASF's assets, whether the RCASF

8  transferred material assets to third parties, whether those transfers were voidable, whether the

9  Non-Debtor Catholic Entities hold property for the Debtor, the RCASF's and Non-Debtor

10  Catholic Entities' financial information, their insurance policies, any other sources of recovery

11  potentially available to creditors, and the scope of the Debtor's potential liabilities. *Id.* at 2-3.

12  As set forth below, however, the Committee's proposed RFPs are expansive and intrusive, seeking

13  information in excess of that needed to investigate these issues and prepare for mediation. Each

14  component of the Committee's requested relief exceeds the bounds of Rule 2004, and if granted, is

15  likely to delay and complicate, rather than expedite, a resolution to this case.

16  **D.    The Committee's Proposed RFPs**

17        The Committee's draft RFPs divide the 138 proposed requests by purported topics: corporate

18  governance (RFPs 1-21); "Parishes and Affiliates" (RFPs 22-29); Parish and affiliate financial

19  relationship (RFPs 30-33); financial information (RFPs 34-55); cash and investments (RFPs 56-58);

20  real property (RFPs 59-66); personal property (RFPs 67-69); "allegedly restricted assets"

21  (RFPs 70-85); pooled investments (RFPs 86-90); pension (RFP 91); cemeteries (RFPs 92-93);

22  insurance (94-107); and "Abuse Claims" (RFPs 108-138). A majority of these RFPs seek

23  documents and information not only from the Debtor but also from the Non-Debtor Catholic Entities

24  and other affiliated organizations and funds, effectively seeking documents for or from more than

25  200 distinct non-debtor entities. And at least one category of requests (RFPs 108-138)–those

26  pertaining to "Abuse Claims"–appear on their face to be seeking litigation discovery not properly

27  propounded under Rule 2004.

28

**E.   The Parties Have Yet To Meaningfully Confer**

The Committee's counsel first provided a draft of its Application and proposed RFPs to the RCASF's counsel on Wednesday, November 1, 2023.  While the Committee's counsel conferred with the RCASF's counsel via two phone calls on November 6, 2023, these conferrals did not involve a substantive, detailed discussion of the individual requests.  The requests suffer from the defects identified above as a result.  The parties would be better served by a collaborative process through which they work together to identify the information the Committee truly needs (and in what order of priority) and develop a reasonable timeline for the RCASF to provide that information so that a resolution can be achieved as expediently as possible.[2]

**III.   RCASF'S OBJECTIONS**

**A.   The Application is Premature and Unreasonable.**

The RCASF is concerned with the Committee's decision to take such an important Rule 2004 examination so early in the case without any basis to contend the Debtor will avoid informal information sharing or a more orderly and measured process.  Under the Committee's proposed "*ex parte*" order, the RCASF will have less than 65 days to marshal a vast of amount of information and documents from divergent sources with limited employees and internal resources with institutional knowledge.  As it stands, the proposed timetable will be unfair, expensive, and burdensome.  The Debtor's time and resources are better spent negotiating with the Committee a consensual path forward where they identify priority custodians and categories of documents.

The Application is premature and will be harmful to the orderly administration of the bankruptcy estate.  Forcing the rushed, early disclosure of information covering hundreds of persons and entities, spanning decades, without any clear or reasonable nexus to the Debtor's assets and financial condition is not only burdensome but will disrupt a value maximizing process.

The RCASF has demonstrated its commitment to the success of the case and welfare of all creditors by providing as transparent and expedient a process as possible.  The Committee's lawyers'

---

[2]  Given the lack of substantive conferrals and broad scope of the Committee's proposed RFPs, the RCASF is compelled to file these objections and request a hearing in lieu of the informal discovery dispute process that generally applies in this Court.

experiences in other cases in other jurisdictions offers no justification to treat this Debtor in *this* Bankruptcy Case as if it has or will violate the rules of professionalism and reasonableness.

Once the parties adequately meet and confer, the RCASF is confident that on most (if not all) issues the parties will be able to determine a legitimate process and achievable timetable for the exchange of the Debtor's information–including confidential and sensitive information.

## B. In any event, the Application Should Not be Granted Without Notice and Hearing.

Bankruptcy Rule 2004 authorizes the "examination of any entity." Fed. R. Bankr. P. 2004(a). It does not, however, provide for the suspension of the normal due process requirements. Nor does it supplant a normal discovery process. Specifically, Rule 2004 requires that a party file a motion requesting the bankruptcy court to order an examination. In this Court, Local Rule 2004-1 allows "*ex parte*" motions–but the Committee's Application gives no reason why the motion should be granted without notice. There are obvious disputes arising from the Committee's overbroad Application and RFPs–which are to be treated as a discovery disputes. Local Rule 2004-1(b). Under Local Civil Rule 37-1 and the Court's dispute procedures, discovery disputes should be resolved by conferences among counsel.

Though the Local Rules may permit for a Rule 2004 application to be brought on an *ex parte* basis, *ex parte* relief remains an extraordinary remedy "both as a due process principle and as a procedural rule." *Wright v. Beck*, 981 F.3d 719, 729 (9th Cir. 2020) (citing *Conservatorship of Moore*, 185 Cal. App. 3d 718, 725 (Cal. Ct. App. 1986) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action . . . .") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *People v. Wilshire Ins. Co.*, 46 Cal. App. 3d 216, 222 (Cal. Ct. App. 1975) ("[I]n an adversary proceeding where an order may affect the rights of an adverse party, notice must be given to protect the adverse party's right to be heard on the issue as a matter of due process of law.")).

Ultimately the Committee, "[*i.e.*, t]he party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks." *In re AOG Entertainment, Inc.*, 558 B.R. 98, 108-09 (Bankr. S.D.N.Y. 2016) (collecting cases). A movant "typically shows good cause by establishing

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

7

that the proposed examination is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice." *Id.* (internal quotation marks and citations omitted).

The Committee has not established that good cause exists for this Court to order the requested relief on an *ex parte* basis, or that the Committee will suffer any hardship if the Application is (1) set for hearing and (2) denied without prejudice or continued in favor of preliminary, informal discovery and a consensual process.

## C. The RFPs Exceed the Limits of Permissible Discovery under Rule 2004.

"The object of the [Rule 2004] examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." *Cameron v. United States*, 231 U.S. 710, 717 (1914); *see also In re Downs*, No. 8:16-BK-12589-SC, 2021 WL 4823508, at *3 (Bankr. C.D. Cal. Oct. 13, 2021) (explaining the purpose of Rule 2004 is "to discover assets, liabilities, improper transfers, and other important information related to the administration of a bankruptcy estate"). While discovery under Rule 2004 is unquestionably broad, it is not unlimited. Indeed, the Ninth Circuit Bankruptcy Appellate Panel has cautioned that Rule 2004 "is not without limits" and cannot "stray into matters which are not relevant to the basic inquiry." *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018); *see also In re Farris-Ellison*, No. 2:11-bk-33861-RK, 2015 WL 5306600, at *3 (Bankr. C.D. Cal. Sep. 10, 2015) ("[A] Rule 2004 examination must be both 'relevant and reasonable.'"). Rule 2004 requires a court to "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-14135-RK, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (quoting *In re SunEdison, Inc.*, 562 B.R. at 250). "That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production." *Id.* Rather, Rule 2004 examinations must be both "relevant and reasonable." *Id.* (citations omitted). Here, although a limited portion of the discovery sought in the Committee's Application is permissible, the large majority of its requests vastly exceed even the broad limits permitted under Rule 2004.

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

8

CASE NO. 23-30564

**1. The Committee Cannot Compel Debtor's Sworn Declaration Under Rule 2004.**

In demanding the Debtor submit a sworn declaration "concerning the" specific requests for which the Debtor does not have any documents in its possession, custody, or control, the Committee seeks relief that is beyond the scope of what is provided for under Rule 2004. Pursuant to an examination ordered under Rule 2004, only "the production of documents" may be compelled. Fed. R. Bankr. P. 2004(c). "[I]t is settled law that a person cannot be compelled to prepare a document not now in existence, in order to produce it." *In re Sutera*, 141 B.R. 539, 542 (Bankr. D. Conn. 1992) (citing Wright & Miller, Fed. Practice & Procedure: Civil, ¶ 2210 at 625–26 (1978)) ("Production cannot be required of a document . . . yet to be prepared. . . . Under [present] practice the party merely requests production and if the document or thing does not exist the party served with the request may say this by way of response to the request."); *see also Dunn v. Trans World Airlines, Inc.*, 589 F.2d 408 (9th Cir. 1978); *Secs. & Exchange Comm'n v. Canadian Javelin Ltd.*, 64 F.R.D. 648 (S.D.N.Y. 1974). The scope of Rule 2004 accordingly applies only to documents that are both currently in existence and within the possession, custody, or control of the examinee. The Committee's request for an order requiring the Debtor to prepare a sworn declaration regarding documents that are either not in existence at all or not within the Debtor's possession, custody, or control, therefore has no legal basis under Rule 2004.

In addition, by providing that the contents of any sworn declaration submitted by the Debtor shall not affect the Committee's right to take oral testimony on the same subject, the Committee's Application seeks to compel the Debtor to submit to an examination that is duplicative, in contravention of Rule 2004. "[T]he subject of a discovery request may not be compelled to repeat its answers to discovery requests." *In re Haney*, 238 B.R. 430, 431-32 (Bankr. E.D. Ark. 1999). Moreover, "since a party may not be compelled to produce something that is not in existence . . . repeated requests for nonexistent documents are properly the subject of a protective order." *Id.* at 432 (citing *In re Sutera*, 141 B.R. at 542); *see also In re Int'l Fibercom, Inc.*, 283 B.R. 290, 293 (Bankr. D. Ariz. 2002) (stating that objecting to a Rule 2004 examination is appropriate where the examinee would be "subjected to duplicative discovery"). Here, the Committee has not articulated any good cause for requiring the Debtor to submit a sworn declaration concerning the specific

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

9

CASE NO. 23-30564

requests for which the Debtor does not have any documents in its possession, custody, or control when the Committee could elicit that very same information pursuant to an oral examination. The Committee's request is unnecessary, overbroad, and outside the scope of permitted examination under Rule 2004.

### 2. The RFPs' Lookback Period Is Temporally Overbroad.

As an initial matter, and without addressing each RFP, the Court should deny the Application because the RFPs as a whole are temporally overbroad under any possible applicable law. At a minimum, the RFPs seek documents and information dating back at least ten years. Many of the RFPs propound an even longer Lookback Period of 20 or 30 years, and in some cases, dating back to the 1940s (herein referred to as the "Lookback Period"). Such dated information is not relevant to the Committee's duties to "maximize unsecured creditors' recoveries in this Case." *Cf.* Application at 3.

As a threshold matter, the Committee's desire to investigate potential voidable transfers necessitates a Lookback Period of no greater than seven years. California laws governing voidable transfers, which are applicable to this case pursuant to Section 544 of the Bankruptcy Code, establish a seven-year statute of repose. Cal. Civ. Code § 3439.09(c). Accordingly, the Lookback Period should be no greater than seven years, as any transfers older than that are outside the estate and not a viable source of recovery for unsecured creditors. The overwhelming majority, if not all, of the proposed RFPs are therefore improperly and often excessively overbroad, as they seek information dating back far beyond this seven year repose period.

The primary purpose of a Bankruptcy Rule 2004 examination is to permit the trustee or creditors an opportunity to quickly ascertain the extent and location of the estate's assets. Bankruptcy Rule 2004 may not be used for the purpose of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry. The Application should be denied because the Committee fails to set forth any reason for the investigation into a *20-to-50-plus-year* Lookback Period under the auspices of a Debtor's exam.

Case: 23-30564   Doc# 296   Filed: 11/08/23   Entered: 11/08/23 16:15:31   Page 14 of 23

**3.** **The "Abuse Claims" RFPs Are Improper Litigation Discovery Not Suited for Rule 2004 Discovery.**

Rule 2004 cannot, and should not, be interpreted so broadly as to permit potential "plaintiff" creditors, such as the Committee, to conduct overbroad and harassing litigation discovery, particularly without the procedural safeguards of Rule 26 of the Civil Rules. The Committee seeks a rushed, *ex parte* order not to compel a Debtor's exam to identify the Debtor's assets and liabilities but, rather, in furtherance of a thinly veiled agenda to punish the Debtor for not publishing a list of the "credibly accused." Requests 108-138, titled "Abuse Claims," seek to identify accused priests *dating back to 1941*—together with draft lists, documents, personnel files, "secret" files, investigations, and studies—some of which have been the subject of discovery fights in individual pre-petition cases, more of which may be subject of discovery in any potential adversary proceedings or contested matters in this Bankruptcy case, and *none* of which is pertinent to the Committee's task of evaluating the Debtor's potential assets and liabilities. Discovery in the pre-petition cases has already resulted in the production and disclosure of files identifying any serial perpetrators and corresponding issues that are relevant to the Committee's assessment of the pending abuse claims' potential value. The discovery now sought through Rule 2004 only serves to harass the Debtor into publicizing information that would not further any legitimate purposes of the Committee or the administration of the Debtor's estate.

Additionally, the requested Abuse Claims records will also not further the Committee's legitimate purpose of ascertaining the total number of potential abuse claimant-creditors of the Debtor's estate. In light of AB 218's statute of limitations period, the pending 537 lawsuits substantially comprise the universe of claims arising from alleged abuse that occurred decades ago. Any argument that these requests are intended to investigate the scope of the Debtor's potential liabilities is therefore pretextual. These files will add nothing to the bankruptcy process as they do not go to the value of the Debtor's assets or potential liabilities.

Rather, the Abuse Claims requests seek to obtain information pertinent to the merits of the abuse claims and are not properly propounded under Rule 2004. "It is a 'well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004
11
CASE NO. 23-30564

Case: 23-30564    Doc# 296    Filed: 11/08/23    Entered: 11/08/23 16:15:31    Page 15 of 23

the Federal Rules of Civil Procedure and not by Rule 2004.'" *In re Jinzheng Grp. (USA) LLC*, No. 2:21-BK-16674-ER, 2022 WL 682212, at *2 (Bankr. C.D. Cal. Mar. 7, 2022) (quoting *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)); *see also In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993) ("The broad reach of a Rule 2004 examination and its curtailment of the rights of the witness when compared with the witness's rights in a deposition conducted under the Federal Rules of Civil Procedure, requires that a court not treat them interchangeably. Without any limiting principles on the use of Rule 2004 as a discovery tool, Rule 9014, adopting the Federal Rules of Civil Procedure for conducting discovery in contested bankruptcy matters, would be rendered superfluous."); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("Courts are wary of attempts to utilize Fed. R. Bankr. P. 2004 to avoid the restrictions of the Fed. R. Civ. P. in the context of adversary proceedings."); *In re Valley Forge Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 examinations to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters.").

This "pending proceeding" rule applies not only "once an adversary proceeding or contested matter is commenced," but also if there is "pending state court litigation." *In re SunEdison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017); *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (quoting *Enron,* 281 B.R. at 842) ("[C]ourts have also recognized that Rule 2004 examinations may be inappropriate 'where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee.'"); *see also Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994), *aff'd sub nom.*, *In re Snyder*, 52 F.3d 1067 (5th Cir. 1995) (mem. op.) (characterizing the use of Rule 2004 to further a state court action as an abuse of Rule 2004). The rule "is based on the different safeguards that attend Rule 2004 and civil litigation discovery, and reflects a concern that a party to litigation could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit." *In re SunEdison, Inc.*, 572 B.R. at 490.

Courts have further found Rule 2004 discovery to be curtailed by, and properly conducted under, the Civil Rules even where the requested Rule 2004 discovery does not relate to the contested

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

12

CASE NO. 23-30564

Case: 23-30564   Doc# 296   Filed: 11/08/23   Entered: 11/08/23 16:15:31   Page 16 of 23

matter or pending litigation but cannot be easily separated from the issues in the contested matter." *In re Jinzheng Grp. (USA) LLC*, 2022 WL 682212, at *2. To the extent the Committee argues the "Abuse Claims" requests do not completely overlap with related litigation discovery, Rule 2004 is still an improper vehicle through which to seek this information.

**4. Discovery Against Non-Debtor Catholic Entities Is Premature and Not Proper under Rule 2004.**

The Committee asks the Court to preauthorize subpoenas to non-debtor entities prior to the Debtor completing its production. That request is premature and lacks any reasonable basis.

The Committee's request for pre-authorization to serve unspecified document and information requests on the Non-Debtor Catholic Entities implicates these entities' legitimate confidentiality rights, particularly to the extent these requests will relate to these entities' financial condition. "[D]istrict courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment" under the Civil Rules. *Sierrapine v. Refiner Prod. Mfg., Inc.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011) (collecting cases). While Rule 2004 affords broader discovery rights than the Civil Rules, bankruptcy courts have denied broad requests for production of even the *debtor's* financial information. *See, e.g.*, *In re Roman Cath. Church of Diocese of Gallup*, 513 B.R. 761, 766 (Bankr. D.N.M. 2014). It is all the more improper to use Rule 2004 in attempt to obtain swaths of private and confidential financial information of non-debtors. *See, e.g.*, *In re Mastro*, 585 B.R. at 597, n.12 (quoting *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."); *see also In re Countrywide Home Loans*, 384 B.R. 373, 393-94 (Bankr. W.D. Pa. 2008) ("The Court is further mindful that, while Rule 2004 allows a fishing expedition to some extent, it may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."); *In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018) ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." (internal citations omitted)).

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

12

CASE NO. 23-30564

Case: 23-30564   Doc# 296   Filed: 11/08/23   Entered: 11/08/23 16:15:31   Page 17 of 23

Additionally, to the extent the Committee's contemplated but uncomposed document requests to these non-debtor entities seek to investigate potential claims against them, courts have held discovery into direct private claims against non-debtor third parties falls outside the purview of Rule 2004. *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016) ("Any request for information regarding potential causes of action belonging to the Lenders' Trust, however, is denied, as Rule 2004 was not intended to provide private litigants with a strategic advantage in fishing for potential private litigation.") (internal quotation omitted); *In re Boulder Operations Holdings LLC*, No. 22-10664, 2023 Bankr. LEXIS 1401, at *6 (Bankr. D. Del. May 30, 2023) (denying a Rule 2004 examination where discovery was primarily addressed to a claim by a creditor against a third party).

### 5. The RFPs Are Impermissibly Vague and Overbroad.

The breadth of the RFPs is extraordinary, and the majority of the documents requested are not informative of or material to the "acts, conduct, or property or liabilities and financial condition *of the debtor*, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b) (emphasis added).

The "permissive, conditional language" of Rule 2004 (*i.e.*, "may" order) works to "restrict discovery that appears unduly intrusive or burdensome," *In re Roman Cath. Church of Diocese of Gallup*, 513 B.R. at 766, and to "limit, condition or even forbid the use of Rule 2004" to prevent abuse or harassment, *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wisc.1984). Moreover, courts do not permit unfettered "fishing expedition[s]." *In re SunEdison, Inc.*, 562 B.R. 243, 250-51 (Bankr. S.D.N.Y. 2017) (recognizing that Rule 2004 requests should be proportional to the claim at issue). When weighing the proper scope of an examination under Rule 2004, the Court should balance the Committee's interest in collecting further information against the burden imposed on the Debtor. *See Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (stating that Rule 2004 requires the court to exercise its discretion and balance competing interests). If discovery is unduly intrusive, burdensome, or sought to abuse or harass, courts favor denial of a Rule 2004 request. *In re Mittco, Inc.*, 44 B.R. at 36.

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

14

CASE NO. 23-30564

Numerous of the RFPs are both vague and overbroad, on their face seeking a voluminous amount of extraneous documents and information instead of being tailored to obtain just those documents and information the Committee actually needs to ascertain the RCASF's assets and potential liabilities. The following is a <u>non-exhaustive</u> list of examples:

- In RFP 4, the Committee fails to identify what particular policies it seeks to discover. The lack of specificity purports to encompass any number of policies, at "Debtor, Parishes, and Affiliates" for "20 years"– including ostensibly a trash policy, parking lot maintenance policy, and similar highly irrelevant issues. Even if the Court were to look further down to RFP 23, seeking policies for 88 Parishes since "1970," and RFP 24, seeking "all guidelines and policies" for the 88 Parishes from "1970" relating to "any subject," the RFPs on "policies" are massively overbroad and burdensome.

- RFP 5, 6, and 8 seek a variety of "schedules" at "Debtor, Parishes, and Affiliates" for "20 years" without any identification of type or subject matter. There is no way to measure the demand against the movant's good-faith basis requirement. As written, the Committee wants all schedules for all entities–most of which will not fit into the Committee's legitimate workstream. Under RFP 8, for instance, the Committee would require the Debtor to produce "schedules of board members of all Affiliates" for 10 years.

- RFP 7 seeks "minutes of meetings" for the Debtor over "20 years" from "all bodies." What meetings does the Committee mean? The phrase "all bodies" is completely vague and unreasonable in the Rule 2004 context even if it was a 1-year lookback period–let alone a 20 year survey. Does a "body" include a bible study class? The Committee is required to more precisely identify what it wants and how it is tethered to the legitimate ends of Rule 2004(b).

- RFPs 16, 17, and 18 seek agreements between any "Religious Institute" (and entities operated thereby, including schools, monasteries, and convents, and the Debtor, schedules of all Religious Institutes that have operated within the Archdiocese and of faculties given by the Archbishop to member of Religious Institutes since 1945–*more than 75 years' worth* of documents and information with no evident relevance to the Committee's tasks.

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

15

CASE NO. 23-30564

Case: 23-30564   Doc# 296   Filed: 11/08/23   Entered: 11/08/23 16:15:31   Page 19 of 23

- RFP 19 seeks copies of the Debtor's website for 20 years, but it is hard to imagine how the website information from 2003 has any bearing on the Committee's work in this case.

- RFP 20 seeks documents regarding "the creation" of the non-debtor Diocese of Oakland and Diocese of Santa Rosa. Those dioceses are separate entities with separate counsel and, perhaps more importantly, a host of publicly available information such as websites or Wikipedia pages. At best, this is litigation discovery, not Rule 2004 discovery. There is no obvious purpose to compel a Debtor's exam on the "creation' of another diocese.

- RFP 22 seeks "all written agreements" between the Debtor and all 88 Parishes over 20 years without any limitation on subject matter. This covers any number of documents that would be costly to collect and that would ultimately have no connection to the assets and liabilities of the estate. The informal conferral process requested by the RCASF would force the Committee to sharpen its pencil and more precisely articulate what it wants to not only reduce the burden on the Debtor but to facilitate the transfer of meaningful information–not irrelevant information.

- RFP 27 seeks "any strategic plans" for 30 years without any limitation or explanation of the Committee's use for such information.

- RFP 28 seeks "all documents" related to "changes made to corporate structure" for Debtor, Parishes, and Affiliates for 20 years, which likewise seems unrelated to the Committee's purpose.

- RFP 29 seeks Parish "statistics" such as the number of people who attended mass, building capacities, and number of priests–begging the serious question of relevance and harassment.

- RFPs 30-90 more closely seek Rule 2004-type asset and financial information but, taken in aggregate, still are tantamount to a 20 year audit of the Debtor, Parishes and Affiliates. There is surely a much smaller universe of documents related to the Debtor that will serve as the best evidence of these subject matters without the additional, time-consuming requirement to aggregate all related and underlying financial documents and records.[3]

---

[3] RFPs 108-138 are already addressed above. Even if they were permissible (they are not), the requests are still overbroad, vague, and rambling. The RCASF will specifically object and respond to each individual request

**6. The RFPs Improperly Instruct the Debtors to Create Documents.**

Numerous of the requests also instruct the Debtor to prepare documents, including a variety of schedules, if documents responsive to those requests, which span as far back as 75+ years, do not already exist. *See* RFPs 5, 17-18, 67. Rule 2004 does not authorize the Committee to compel the Debtors to create documents or produce something that is not in existence. *See, e.g.*, *In re Haney*, 238 B.R. at 432 (citing *In re Sutera*, 141 B.R. at 542).

**7. Certain of the RFPs Improperly Seek Wholesale Production of Electronic Databases.**

The Committee's RFPs also seek the production of wholesale "copies of electronic accounting or management system(s)," not only for the Debtor but also for the hundreds of other non-debtor entities, including 88 Parishes and more than 100 other affiliates. *See* RFP 43. There is no precedent for the Committee to seek a copy of the Debtor's accounting software, much less copies of the Parishes and other affiliates. These accounting systems likely include all the financial information that exists about each Parish, including names of parishioners and their individual donations. This request is thus highly intrusive of the private affairs of hundreds of non-debtor entities, overbroad, and harassing. And the Committee has offered no explanation of how this vast amount of private and confidential information would further its work or otherwise suggested good cause for its production. It is thus not a proper use of Rule 2004.[4]

**8. The Committee Requests an Order Compelling an Impermissible Privilege Log.**

The RCASF further objects that the Application seeks to impose instructions that would impose obligations beyond those provided in the Bankruptcy Rules, Civil Rules, and applicable law for logging privileged documents or documents withheld on any other basis. *See* Instruction H (seeking, among other things, the name, address, and phone number of person(s) who possess the withheld document).

_____

consistent with applicable rules should any subpoena be served.

[4] As explained above, courts routinely reject attempts to use Rule 2004 to examine non-debtor third parties about matters unrelated to a debtor's affairs and not affecting the administration of the estate. *See supra* § III.C.4.

# IV.    RESERVATION OF RIGHTS

The Debtor reserves all rights with respect to any subpoena or other discovery request served in this Bankruptcy Case, including without limitation, the right to object on grounds of overbreadth, burden, and relevance, or to assert any applicable claim of privilege.  Moreover, to the extent that the Committee attempts to remedy its failure in the Application to articulate proper bases for the relief requested, the Debtor reserves all rights to supplement this objection or to reply to any such additional arguments.

# V.    CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests that the Court deny the Rule 2004 Application and grant such other relief as the Court may deem just and appropriate.

Dated:  November 8, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
            /s/ Ori Katz
            ORI KATZ
            ALAN MARTIN

*Attorneys for the Roman Catholic Archbishop of San Francisco*

SMRH:4859-3572-2381.7

DEBTOR'S REQUEST FOR HEARING &
OBJECTION TO *EX PARTE* APPLICATION OF THE UCC
FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

-18-

CASE NO. 23-30564

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2023, I served by electronic mail a true and accurate copy of the foregoing to all counsel of record.

/s/ Ori Katz
ORI KATZ
