PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:     (916) 329-7400
Facsimile:     (916) 329-7435
               ppascuzzi@ffwplaw.com
               jrios@ffwplaw.com
               tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:     (415) 434-9100
Facsimile:     (415) 434-3947
               okatz@sheppardmullin.com
               amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop of
San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>          Debtor and<br>          Debtor In Possession. | CASE NO. 23-30564<br><br>Chapter 11<br><br>**SECOND NOTICE OF ORDINARY COURSE PROFESSIONAL LIST SUPPLEMENT AND DECLARATIONS AND QUESTIONNAIRES OF SUPPLEMENTAL ORDINARY COURSE PROFESSIONALS IN SUPPORT OF THE RETENTION OF (1) GALLAGHER BENEFIT SERVICES, INC.; (2) PERR & KNIGHT**<br><br>Judge:        Hon. Dennis Montali |

On October 16, 2023, the Court entered an *Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, and 330 Authorizing the Debtor to Employ Professionals Used in the Ordinary Course of Business* [Docket No. 211] (the "OCP Order")[1]

---
[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in

Pursuant to the procedures set forth in the OCP Order, the debtor and debtor in possession, The Roman Catholic Archbishop of San Francisco (the "Debtor") hereby provides to the Court and the Reviewing Parties the following OCP List Supplement together with the executed "OCP Declarations" and the "Retention Questionnaires," copies of which are attached hereto, for the following ordinary course professionals:

| Exhibit | Name of Supplemental Ordinary Course Professional |
|---------|---------------------------------------------------|
| Exhibit 1 | Gallagher Benefit Services, Inc. |
| Exhibit 2 | Perr & Knight |

Dated: November 15, 2023

FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By:  /s/ Jason E. Rios
PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY

Attorneys for The Roman Catholic Archbishop of San Francisco

Dated: November 15, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:  /s/ Ori Katz
ORI KATZ
ALAN H. MARTIN

Attorneys for The Roman Catholic Archbishop of San Francisco

_____

the Ordinary Course Professionals Order.

Case No. 23-30564_
2ND NOTICE OF OCP LIST SUPPLEMENT AND DECLARATIONS AND QUESTIONNAIRES OF SUPPLEMENTAL OCPS.

Case: 23-30564    Doc# 309    Filed: 11/15/23    Entered: 11/15/23 11:42:37    Page 2 of 25
-2-

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:

THE ROMAN CATHOLIC
ARCHBISHOP OF SAN FRANCISCO,

Debtor and
Debtor In Possession.

Case No. 23-30564

Chapter 11

**DECLARATION AND DISCLOSURE STATEMENT OF BRIAN HUTCHENS, ON BEHALF OF GALLAGHER BENEFIT SERVICES, INC.**

To be completed by Professionals engaged by The Roman Catholic Archbishop of San Francisco, as debtor and debtor in possession ("Debtor"), in the above-captioned chapter 11 case.

I, Brian Hutchens, hereby declare as follows:

1.      I am Area President of Gallagher Benefit Services, Inc., located at 2121 N. California Blvd., Suite 350, Walnut Creek, CA 94596 (the "Firm").

2.      The Debtor in the above-captioned chapter 11 case has requested that the Firm provide professional consulting and insurance brokerage services for employee benefit plans sponsored by the Debtor to the Debtor, and the Firm has consented to provide such services (the "Services"). Attached hereto is a true and correct copy of the engagement agreement between the Debtor and the Firm (the "Engagement Agreement"). The Engagement Agreement contains indemnification and/or limitation of liability provisions as set forth in Sections 6(a)&(b) of the Engagement Agreement.

3.      The Services include, but are not limited to, the following: Renewal analysis, annual financial reports, carrier marketing and negotiation, legislative and regulatory compliance support, administrative assistance, communication materials, benefit administration assessment, and benefit plan design.

4.      The Firm may have performed services in the past and may perform services in the future, in matters unrelated to this chapter 11 case, for persons that are parties in interest in the Debtor's chapter 11 case. As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or

be claimants or employees of the Debtor, or other parties in interest in this chapter 11 case. The Firm does not perform services for any such person in connection with this chapter 11 case. In addition, the Firm does not have any relationship with any such person, such person's attorneys, or such person's accountants that would be adverse to the Debtor or its estate with respect to the matters on which the Firm is to be retained.

5.     Neither I, nor any principal of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtor with any other person other than principals and regular employees of the Firm.

6.     Neither I nor any principal of, or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest materially adverse to the Debtor or its estate with respect to the matters on which the Firm is to be retained.

7.     As of the commencement of this chapter 11 case, the Debtor owed the Firm $1,612.90 in respect of prepetition services rendered to the Debtor.

8.     If at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this declaration.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration and Disclosure Statement was executed on November 10, 2023, at 2:00pm.

_Brian Hutchens_

EXHIBIT 2 TO ORDER ON MOTION TO EMPLOY PROFESSIONALS

-2-

# CONSULTING AGREEMENT

This Consulting Agreement (this "**Agreement**") is made by and between Gallagher Benefit Services, Inc., ("**Gallagher**") and Archdiocese of San Francisco ("**Client**").

Client wishes to enter into a consulting relationship with Gallagher on the terms and conditions set forth in this Agreement, and Gallagher is willing to accept such a consulting relationship. In consideration of and in reliance upon the terms and conditions contained in this Agreement, Client and Gallagher agree as follows:

**1.**    ***Engagement of Services***

Client hereby engages Gallagher as a professional consultant to provide the consulting and/or brokerage services as more fully described in Exhibit A attached to this Agreement and incorporated herein. During the time that Gallagher is performing services for Client under this Agreement, and for all purposes outlined in this document, Gallagher's status will be that of an independent contractor for Client.

**2.**    ***Term and Termination***

The Effective Date of this Agreement is July 1 2022. The term of Gallagher's engagement under this Agreement (the "Consulting Period") will begin as of the Effective Date and will remain in effect for one (1) year from the Effective Date. Either party may terminate this Agreement by giving the other party at least ninety (90) days written notice of its intent to terminate. In the event such termination is effective during the Consulting Period (including any renewed Consulting Period), Client shall be responsible for compensating Gallagher for any services performed prior to the date of termination and Gallagher shall be responsible to Client to continue to provide services until the date of termination of this Agreement.

**3.**    ***Compensation***

As compensation for its services under this Agreement, Gallagher will receive carrier commissions and/or direct fees paid by the Client, as set forth in the Compensation Disclosure Statement attached hereto as Exhibit B. Additional information regarding Gallagher compensation can also be found in Exhibit B. Gallagher shall disclose the amount of commissions payable, if any, to it by each insurance company at the time it presents rates to Client. The parties hereby agree that any Direct Client Fees for Consulting Services specified under Exhibit B shall be increased by an amount not to exceed three percent (3%) annually after the initial Consulting Period under this Agreement, unless otherwise agreed to by Gallagher. Client is responsible for payment of Gallagher's fees (if applicable) within thirty (30) days of invoice receipt. Any amounts not paid when due will accrue interest at the rate of one percent (1%) per month or the highest rate permitted by applicable law, whichever is less. If any amount is not paid in full when due without a good faith basis to withhold, that nonpayment will constitute a material breach of this Agreement.

**4.**    ***Performance and Scope***

(a)    Representations and Warranties. Each party represents, warrants and covenants to the other that: (i) it has full power and authority to make, execute, deliver and perform its obligations under this Agreement; (ii) the performance of its obligations pursuant to this Agreement shall be in accordance with all applicable laws; (iii) this Agreement has been duly executed and delivered by an authorized representative of such party and constitutes the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms; and (iv) there are no other agreements presently in force which would encumber or prevent either party's compliance with any terms of this Agreement.

(b)    Standard of Care. Gallagher will perform its duties, responsibilities and obligations with the care, skill, prudence and diligence that a prudent employee benefits consultant or

Case: 23-30564   Doc# 309   Filed: 11/15/23   Entered: 11/15/23 11:42:37   Page 6 of 25

insurance broker acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims under the circumstances then prevailing. As appropriate, Gallagher will coordinate fiduciary review services and other related duties with the plan's claims administrator and/or insurance carrier(s). However, Gallagher generally does not accept any fiduciary duties or obligations with respect to a plan given that these are typically performed by the plan's claims administrator or insurance carriers.

(c) <u>Reliance</u>. In the performance of its duties, Gallagher may rely upon, and will have no obligation to independently verify the accuracy, completeness, or authenticity of, any written instructions or information provided to Gallagher by Client or its designated representatives and reasonably believed by Gallagher to be genuine and authorized by Client.

(d) <u>No Practice of Law</u>. Gallagher will not be obligated to perform, and Client will not request performance of, any services which may constitute the unauthorized practice of law. Client will be solely responsible for obtaining any legal advice, review or opinion as may be necessary to ensure that its own conduct and operations, including the engagement of Gallagher under the scope and terms herein, conform in all respects with applicable State and Federal laws and regulations (including ERISA, the Internal Revenue Code, State and Federal securities laws and implementing regulations) and, to the extent that Client has foreign operations, any applicable foreign laws and regulations.

(e) <u>Subcontractors</u>. Gallagher may cause another person or entity, as a subcontractor to Gallagher, to provide some of the services required to be performed by Gallagher hereunder; provided that Gallagher shall remain responsible for all acts and omissions of any such subcontractors (each of which shall be bound by Gallagher's obligations under this Agreement). Gallagher shall seek prior written approval from Client for any subcontractors providing substantive consulting, professional or managerial services. Prior written approval shall not be required for clerical, office, secretarial, IT back-up, administrative or similar support services.

(f) <u>Conflict of Interest</u>. Gallagher's engagement under this Agreement will not prevent it from taking similar engagements with other clients who may be competitors of Client. Gallagher will, nevertheless, exercise care and diligence to prevent any actions or conditions which could result in a conflict with Client's best interest.

(g) <u>Acknowledgements</u>. In connection with Gallagher's services under this Agreement, Client agrees that:

(i) Although Gallagher will apply its professional judgment to access those insurance companies it believes are best suited to insure Client's risks, there can be no assurance that the insurance companies Gallagher has accessed are the only or are the best suited to insure Client's risks. The final decision to choose any insurance company has been made by Client in its sole and absolute discretion. Client understands and agrees that Gallagher does not take risk, and that Gallagher does not guarantee the financial solvency or security of any insurance company.

(ii) Any compensation of the types described above and disclosed to it does not constitute a conflict of interest and Client expressly waives any claims alleging any such conflict of interest.

(iii) The compensation payable to Gallagher is solely for the services set forth under this Agreement, as detailed in <u>Exhibit A</u>. To the extent any additional administrative, claims representative or other services are required, the parties may enter into a separate agreement covering such additional services.

**5. *Confidentiality***

(a) <u>Confidential Information</u>.

(i) As used in this Agreement, "**Confidential Information**" means any nonpublic, proprietary or personal data and information furnished by either party or its

Case: 23-30564   Doc# 309   Filed: 11/15/23   Entered: 11/15/23 11:42:37   Page 7 of 25

agents or representatives to the other party or its agents and representatives, whenever furnished and regardless of the manner or media in which such information is furnished, which the receiving party knows or reasonably should know to be confidential. Each party shall treat Confidential Information as confidential and only use it in the performance of its obligations under this Agreement.

(ii)     The parties acknowledge that Confidential Information includes personal data provided to Gallagher by Client for the benefit of Client and/or its employees to facilitate the performance of services set forth in <u>Exhibit A</u>. Both Parties also agree that the Confidential Information may include information that alone, or in combination with other information, uniquely identifies an individual. Client agrees that Gallagher is permitted to disclose and transfer Client's Confidential Information to Gallagher's affiliates, agents or vendors that have a need to know the Confidential Information in connection with the services provided under this Agreement (including insurance carriers, as necessary, for quoting and/or placing insurance coverages). Gallagher has established security controls to protect Client Confidential Information from unauthorized use or disclosure. For additional information, please review Gallagher's Privacy Policy located at https://www.ajg.com/privacy-policy/.

(iii) Both Gallagher and Client agree to comply with all state and federal laws, rules, and orders that relate to privacy and data protection which are, or which in the future may be, applicable to Confidential Information, the services or the performance of obligations under this Agreement. Upon request, Gallagher will cooperate with Client pursuant to applicable law(s) to comply with requests from individuals regarding their personal information.

(b)     <u>HIPAA Privacy</u>. Gallagher and Client will each comply with any prohibitions, restrictions, limitations, conditions, or other requirements to the extent they apply to them directly or indirectly pursuant to the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**") and its implementing regulation concerning privacy of individually identifiable health information as set forth in 45 CFR Parts 160-164, as amended from time to time. When required, Client, as a representative of the health plans, and Gallagher will enter into a separate Business Associate Agreement.

(c)     <u>Use of Names; Public Announcements</u>. No party will use, in any commercial manner, the names, logos, trademarks or other intellectual property of the other party without its prior written consent. Except as may be required by law, no party will issue any press releases or make any public announcements of any kind regarding the relationship between the parties without the other party's prior consent.

(d)     <u>Aggregated Data</u>. Gallagher shall own any non-identifying, aggregated and statistical data that might be derived from providing services to Client (the "**Aggregated Data**"). Nothing herein shall be construed as prohibiting Gallagher from utilizing the Aggregated Data for purposes of operating Gallagher's business. Gallagher shall not: (i) disclose to any third party any Aggregated Data that reveals Client's identity or its Confidential Information; or (ii) reveal the identity, whether directly or indirectly, of any individual whose specific data might be used by Gallagher on behalf of Client.

6.     *Indemnification Rights and Limitation of Liability*

(a)     <u>Indemnification</u>. Each party agrees to defend, indemnify and hold the other party and its affiliates and their respective directors, officers, employees and agents harmless from any and all losses, liabilities, exposures, damages and all related costs and expenses, including reasonable legal fees, to the extent arising from or relating to any third party claims, demands, suits, allegations, or causes or threats of action based on the indemnifying party's: (i) breach of any representation, warranty or covenant made by such party hereunder, or (ii) grossly negligent acts or omissions or intentional misconduct; provided, however, that the indemnifying party's

Case: 23-30564     Doc# 309     Filed: 11/15/23     Entered: 11/15/23 11:42:37     Page 8 of 25

indemnification obligations hereunder shall be reduced to the extent that such losses and damages arise from the acts or omissions of the other party or its employees or agents.

(b)     Limitation of Liability.   Notwithstanding any other term or provision of this Agreement, each party shall only be liable for actual damages incurred by the other party, and shall not be liable for any indirect, special, exemplary, reliance, consequential or punitive damages, or for any attorneys' fees other than as described in Section 6(a) above (whether incurred in a dispute or an action against the other, or as alleged damages that any party incurred in any insurance coverage dispute, or otherwise). Furthermore, unless otherwise noted in Exhibit A, the aggregate liability under this Agreement, if any, of either party to the other for claimed losses or damages shall not exceed $1,000,000. This provision applies to the fullest extent permitted by applicable law.  No claim or cause of action, regardless of form (tort, contract, statutory, or otherwise), arising out of, relating to or in any way connected with this Agreement or any services provided hereunder may be brought by either party any later than two (2) years after the accrual of such claim or cause of action.

## 7.     *Notices*

Any notices, requests or other communications pursuant to this Agreement will be addressed to the party at its address listed below.  Such notices will be deemed to have been duly given, (i) if delivered in person or by courier, upon delivery; (ii) if sent by an overnight service with tracking capabilities, upon receipt; (iii) if sent by registered or certified mail, postage prepaid, within five (5) days of deposit in the mail; or (iv) if sent by fax or electronic mail, at such time as the party which sent the notice receives confirmation of receipt by the applicable method of transmittal.

|  |  |
|---|---|
| If to the Client: | Archdiocese of San Francisco<br>Attention: Joe Passarello<br>One Peter Yorke Way<br>San Francisco, CA 94106 |
| If to Gallagher: | Gallagher Benefit Services, Inc.<br>Attention: Jeannette Mone<br>2121 North California Blvd, Ste. 350<br>Walnut Creek, CA 94596 |

Either party may, by written notice to the other, change the address to which notices to such party are to be delivered or mailed.

## 8.     *Miscellaneous*

(a)     Severability.   The various provisions and subprovisions of this Agreement are severable and if any provision or subprovision or part thereof is held to be unenforceable by any court of competent jurisdiction, then such enforceability will not affect the validity or enforceability of the remaining provisions or subprovisions or parts thereof in this Agreement.

(b)     Entire Agreement; Amendment.   This Agreement, including all exhibits hereto, constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether oral or written, between the parties regarding the subject matter hereof. Except for changes in carriers and/or lines of coverage noted in Exhibit B, which may occur upon unilateral approval of Client, this Agreement may be modified or amended only by a written instrument executed by both parties.  This Agreement may be executed by the parties in several counterparts, each of which shall be deemed to be an original copy.

(c)     Waiver.   No covenant, term or condition or the breach thereof will be deemed waived, except by written consent of the party against whom the waiver is claimed.  Any waiver by either party hereto of any provision of this Agreement shall not be construed as a waiver of any other provision of this Agreement, nor shall such waiver be construed as a waiver of such provision with respect to any other event or circumstance, whether past, present or future.

*Gallagher Consulting Agreement 04202022*

(d) <u>Governing Law; Rule of Construction</u>. This Agreement will be construed, interpreted and enforced in accordance with the laws of the State of Illinois without giving effect to the choice of law principles thereof or any canon, custom or rule of law requiring construction against the drafter.

(e) <u>Successors</u>. This Agreement shall be binding upon and shall inure to the benefit of all assigns, transferees and successors in the interest of the parties hereto.

(f) <u>Warranties</u>. Except as expressly set forth in this Agreement, Gallagher makes no other warranties of any kind with respect to the Services, including, without limitation, warranties that may be implied from a course of performance, dealing or trade usage.

(g) <u>Force Majeure</u>. Neither party shall be liable to the other for any delay or failure to perform any of its obligations under this Agreement (other than payment obligations) as a result of flood, earthquake, storm, other act of God, fire, derailment, accident, labor dispute, explosion, war, act of terrorism, sabotage, insurrection, riot, embargo, court injunction or order, act of government or governmental agency or other similar cause beyond its reasonable control.

(h) <u>Assignment</u>. This Agreement shall apply to and bind the successors and assigns of the parties hereto, including, in the event of a party's insolvency, debtors-in-possession and any appointed trustee or administrator. This Agreement shall be not be assignable by either party, except with the prior written consent of the other party; provided, however, that either party may assign this Agreement to an affiliate or in the event of a merger or sale, provided the assignee is willing and able to assume such party's obligations hereunder.

(i) <u>Counterparts</u>. This Agreement may be executed in multiple counterparts (including by scanned image or electronic signature), each of which shall be considered one and the same agreement, and shall become effective when signed by each of the parties hereto and delivered to the other party.

(j) <u>Survival of Provisions</u>. Sections 3, 5, 6, and 8 will survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the date first written above.

**Archdiocese of San Francisco**

By: _____

Name:     Father Patrick Summerhays

Title:      Attorney-in-Fact

Date:     07/20/2022

**GALLAGHER BENEFIT SERVICES, INC.**

By: _____

Name:     Brian Hutchens

Title:      Area President

Date:     06/06/2022

Case: 23-30564     Doc# 309     Filed: 11/15/23     Entered: 11/15/23 11:42:37     Page 10 of 25

**EXHIBIT A**
**SCOPE OF SERVICES**

Subject to any changes and additions as may be mutually agreed by the parties in writing, availability and delivery of data from the insurance carrier and other third party vendors, Gallagher will provide the following Services to Client on an "as needed" basis:

**RENEWAL ANALYSIS:**
- Review and evaluate carrier projections
- Coordinate carrier negotiations

**ANNUAL FINANCIAL REPORTS:**
- Comparison of current costs to renewal costs

**CARRIER MARKETING AND NEGOTIATIONS, AS DIRECTED BY CLIENT:**
- Work with Client to develop a strategy to identify goals, analyze program costs and review both current and alternative funding arrangements
- Manage the renewal process with the current carrier to control costs
- Manage RFP development that tailors the RFP to the desires, needs and financial directions provided by Client
- Draft renewal analysis report, based on renewal negotiation, covers program and claims cost projections as well as complete information on benefit designs

**LEGISLATIVE AND REGULATORY COMPLIANCE SUPPORT:**
- Provide legislative updates, including Compliance Alerts, Webinars, Technical Bulletins and Directions newsletter

**ADMINISTRATIVE ASSISTANCE**
- Provide assistance to Client's HR/benefits contacts to help with resolving carrier service issues
- Coordinate and participate in annual service meetings with Client and select carriers

**COMMUNICATION MATERIALS:**
- Provide annual open enrollment guidance and employee meeting materials

**BENEFIT ADMINISTRATION ASSESSMENT:**
- Periodic evaluation of internal plan enrollment and benefit termination processes
- Help identify opportunities for streamlining and improving administration procedures

**BENEFIT PLAN DESIGN (OR REDESIGN):**
- Review with Client possible benefit strategies to meet their objectives

**EXHIBIT B**
**COMPENSATION DISCLOSURE STATEMENT**

| Line of Coverage / Service | Company | Commission[1&2] | Third Party Compensation | Direct Client Fees[3] | Effective Date |
|---|---|---|---|---|---|
| Consulting Services | Gallagher | NA | NA | $30,000/yr | 07/01/2022 |
| Life/ AD&D/ Vol Life | Reliance | NA | NA | NA | 07/01/2022 |
| LTD/ STD | Hartford | NA | NA | NA | 07/01/2022 |
| Vision | MesVision | NA | NA | NA | 07/01/2022 |
| EAP | Optum | NA | NA | NA | 07/01/2022 |

It should also be noted that:

- Gallagher is not an affiliate of the insurer or vendor whose contract is recommended. This means the insurer or vendor whose contract is recommended does not directly or indirectly have the power to exercise a controlling influence over the management or policies of Gallagher.
- Gallagher's ability to recommend other insurance contracts or vendors is not limited by an agreement with any insurance carrier or vendor and Gallagher is effecting the transaction for applicable plan(s) in the ordinary course of Gallagher business. Thus, pertinent transaction(s) are at least as favorable to the applicable plan(s) as an arm's length transaction with an unrelated party.
- Gallagher is not a trustee of the plan(s) and is neither the Plan Administrator of the plan(s), a Named Fiduciary of the plan(s), nor an employer which has employees in the plan(s).

> **For Employers and Plan Sponsors Subject to ERISA:** This Disclosure Statement is being given to the Client (1) to make sure Client knows about Gallagher's and Gallagher affiliates' income before purchasing the insurance product and/or vendor services and (2) for plans subject to ERISA, to comply with the disclosure, acknowledgment and approval requirement of Prohibited Transaction Class Exemption No. 84-24[4], which protects both Client and Gallagher[5], and the disclosure requirements under ERISA §408(b)(2), as amended by Div. BB, Title II, §202 of the Consolidated Appropriations Act, 2021. Disclosure must be made to responsible plan fiduciary for the ERISA Plan(s), and Client acknowledges and confirms that this is a reasonable transaction in the best interest of participants in its ERISA Plan(s).

For more information on Gallagher's compensation arrangements, please visit
www.ajg.com/compensation. In the event a client wishes to register a formal complaint
regarding compensation Gallagher receives, please send an email to
Compensation_Complaints@ajg.com.

---

[1] Commissions include all commissions/fees paid to Gallagher that are attributable to a contract or policy between a plan and an insurance company, or insurance service. This includes indirect fees that are paid to Gallagher paid by a third party, and includes, among other things, the payment of "finders' fees" or other fees to Gallagher for a transaction or service involving the plan.

[2] Gallagher may receive supplemental compensation from insurance carriers and vendors, normally calculated at the end of each calendar year, that are contingent on a number of factors including the overall number of employer plans represented, plan retention rates, and overall premium growth. Historically, supplemental compensation has ranged, on average, between 0-3% based on specific carrier programs. These plans have no effect on premiums. Further, Gallagher may receive non-cash compensation from plan vendors or service providers that are not in connection with any particular client. If you have any questions regarding direct or indirect compensation received by Gallagher, please contact your dedicated Gallagher advisor or refer to the Gallagher Global Standards of Business Conduct.

[3] Direct Fees include compensation to Gallagher paid for directly by the plan sponsor/Client.

[4] Which allows an exemption from a prohibited transaction under Section 408(a) of the **Employee Retirement Income Security Act of 1974 (ERISA)**.

[5] In making these disclosures, no position is taken, nor is one to be inferred, regarding the use of assets of a plan subject to ERISA to purchase such insurance.

*Gallagher Consulting Agreement 04202022*

Case: 23-30564    Doc# 309    Filed: 11/15/23    Entered: 11/15/23 11:42:37    Page 12 of 25

**AMENDMENT TO**
**Gallagher Benefit Services, Inc.**
**Consulting Agreement**

The Consulting Agreement ("Agreement") by and between Gallagher Benefit Services, Inc. ("Gallagher") Archdiocese of San Francisco ("Client"), effective July 1, 2022, is hereby amended as set forth below.

Effective July 1, 2023:

1. ***Section 2 – Term and Termination*** is hereby modified to extending the Consulting Period for an additional year to June 30, 2024

2. ***Exhibit B - Compensation Disclosure Statement*** is hereby modified and restated as set forth in the attached.

All other terms and conditions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the date first written above.

**Accepted by: Archdiocese of San Francisco**      **Gallagher Benefit Services, Inc.**

By: _____        By: _____

Name   Joe Passarello                Name   Brian Hutchens

Title   Chief Financial Officer          Title   Area President

Date: _____      Date:   Aug 11, 2023

*Gallagher Consulting Agreement Amendment 01052022*

Case: 23-30564    Doc# 309    Filed: 11/15/23    Entered: 11/15/23 11:42:37    Page 13 of 25

**EXHIBIT B**
**COMPENSATION DISCLOSURE STATEMENT**

| Line of Coverage / Service | Company | Commission[1&2] | Third Party Compensation | Direct Client Fees[3] | Effective Date |
|---|---|---|---|---|---|
| Consulting Services | n/a | n/a | n/a | $30,000 | 7/1/23 |
| Life/AD&D/Vol Life | Reliance | N/A | N/A | N/A | 7/1/23 |
| LTD | Hartford | N/A | N/A | N/A | 7/1/23 |
| Vision | MES Visioin | N/A | N/A | N/A | 1/1/23 |
| EAP | Optum | N/A | N/A | N/A | 7/1/23 |

It should also be noted that:

- Gallagher is not an affiliate of the insurer or vendor whose contract is recommended. This means the insurer or vendor whose contract is recommended does not directly or indirectly have the power to exercise a controlling influence over the management or policies of Gallagher.

- Gallagher's ability to recommend other insurance contracts or vendors is not limited by an agreement with any insurance carrier or vendor and Gallagher is effecting the transaction for applicable plan(s) in the ordinary course of Gallagher business. Thus, pertinent transaction(s) are at least as favorable to the applicable plan(s) as an arm's length transaction with an unrelated party.

- Gallagher is not a trustee of the plan(s) and is neither the Plan Administrator of the plan(s), a Named Fiduciary of the plan(s), nor an employer which has employees in the plan(s).

**For Employers and Plan Sponsors Subject to ERISA:** This Disclosure Statement is being given to the Client (1) to make sure Client knows about Gallagher's and Gallagher affiliates' income before purchasing the insurance product and/or vendor services and (2) for plans subject to ERISA, to comply with the disclosure, acknowledgment and approval requirement of Prohibited Transaction Class Exemption No. 84-24[4], which protects both Client and Gallagher[5], and the disclosure requirements under ERISA §408(b)(2), as amended by Div. BB, Title II, §202 of the Consolidated Appropriations Act, 2021. Disclosure must be made to responsible plan fiduciary for the ERISA Plan(s), and Client acknowledges and confirms that this is a reasonable transaction in the best interest of participants in its ERISA Plan(s).

For more information on Gallagher's compensation arrangements, please visit www.ajg.com/us/about-us/disclosures. In the event a client wishes to register a formal complaint regarding compensation Gallagher receives, please send an email to Compensation_Complaints@ajg.com.

---

[1] Commissions include all commissions/fees paid to Gallagher that are attributable to a contract or policy between a plan and an insurance company, or insurance service. This includes indirect fees that are paid to Gallagher paid by a third party, and includes, among other things, the payment of "finders' fees" or other fees to Gallagher for a transaction or service involving the plan.

[2] Gallagher may receive supplemental compensation from insurance carriers and vendors, normally calculated at the end of each calendar year, that are contingent on a number of factors including the overall number of employer plans represented, plan retention rates, and overall premium growth. Historically, supplemental compensation has ranged, on average, between 0-3% based on specific carrier programs. These plans have no effect on premiums. Further, Gallagher may receive non-cash compensation from plan vendors or service providers that are not in connection with any particular client. If you have any questions regarding direct or indirect compensation received by Gallagher, please contact your dedicated Gallagher advisor or refer to the Gallagher Global Standards of Business Conduct.

[3] Direct Fees include compensation to Gallagher paid for directly by the plan sponsor/Client.

[4] Which allows an exemption from a prohibited transaction under Section 408(a) of the **Employee Retirement Income Security Act of 1974 (ERISA)**.

[5] In making these disclosures, no position is taken, nor is one to be inferred, regarding the use of assets of a plan subject to ERISA to purchase such insurance.

*Gallagher Consulting Agreement Amendment 01052022*

Case: 23-30564   Doc# 309   Filed: 11/15/23   Entered: 11/15/23 11:42:37   Page 14 of 25

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor In Possession. | **RETENTION QUESTIONNAIRE** |

To be completed by Professionals engaged by Roman Catholic Archbishop of San Francisco, as debtor and debtor in possession ("Debtor"), which filed the above-captioned chapter 11 case on **August 21, 2023**.

All questions **must** be answered.   Please use "none," "not applicable," or "N/A," as appropriate.  If more space is needed, please complete on a separate page and attach.

1.     Name and address of professional:

Gallagher Benefit Services, Inc.
2121 N. California Blvd., Suite 350
Walnut Creek, CA 94596

2.     Date of retention: July 1, 2022

3.     Type of Services to be provided:

Professional consulting and insurance brokerage services for employee benefit plans sponsored by the Debtor

4.     Brief description of services to be provided:

Renewal analysis, annual financial reports, carrier marketing and negotiation, legislative and regulatory compliance support, administrative assistance, communication materials, benefit administration assessment, and benefit plan design.

5.     Arrangements for compensation (hourly, contingent, etc.): Annual fee of $30,000.00, payable in monthly installments of $2,500.00.

(a)     Average hourly rate (if applicable):  N/A
(b)     Estimated average monthly compensation based on prepetition retention (if company was employed prepetition):  $2,500.00

6.     Prepetition claims against the Debtor held by the company (if any):

Amount of claim:  $ 1,612.90

Date claim arose: August 1, 2023

-1-

EXHIBIT 3 TO ORDER ON MOTION TO EMPLOY PROFESSIONALS

1    Nature of claim: Monthly fee for services

2    7.    Prepetition claims against the Debtor (if any) held individually by any member, associate, or

3    employee of the company: None

4    8.    Disclose the nature and provide a brief description of any interest adverse to the Debtor or

5    its estate for the matters on which the professional is to be employed: None

6    9.    Name and title of individual completing this form:  Brian Hutchens, Area President

7

8    Dated: November 10, 2023

9

10   _____
     Brian Hutchens

EXHIBIT 3 TO ORDER ON MOTION TO EMPLOY PROFESSIONALS

# EXHIBIT 2

1

## UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor In Possession. | **DECLARATION AND DISCLOSURE STATEMENT OF** __Vincent Ha and Michael J. Covert__ , **ON BEHALF OF** __Perr&Knight__ |

To be completed by Professionals engaged by The Roman Catholic Archbishop of San Francisco, as debtor and debtor in possession ("Debtor"), in the above-captioned chapter 11 case.

I, _____ Vincent Ha and Michael J. Covert_____ , hereby declare as follows:

1. I am a ___ Consulting Actuary and Consulting Actuary & Principal ___ of ___ Perr&Knight ___ , located at 3 Second Street, Suite 1202, Jersey City, NJ 07311 (the "Firm").

2. The Debtor in the above-captioned chapter 11 case has requested that the Firm provide _____ actuarial consulting _____ services to the Debtor, and the Firm has consented to provide such services (the "Services"). Attached hereto is a true and correct copy of the engagement agreement between the Debtor and the Firm (the "Engagement Agreement"). The Engagement Agreement does not contain indemnification and/or limitation of liability provisions.

3. The Services include, but are not limited to, the following: Estimation of the outstanding loss and defense and cost containment expense (DCCE) for non-sensitive coverage in the deductible layer from July 1, 2015 through June 30, 2023 using data evaluated as of June 30, 2023. Projection of the loss and DCCE for non-sensitive coverage in the deductible layer from July 1, 2023 through June 30, 2024. _____

_____

4. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to this chapter 11 case, for persons that are parties in interest in the

EXHIBIT 2 TO ORDER ON MOTION TO EMPLOY PROFESSIONALS

Case: 23-30564   Doc# 309   Filed: 11/15/23   Entered: 11/15/23 11:42:37   Page 18 of

Debtor's chapter 11 case. As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtor, or other parties in interest in this chapter 11 case. The Firm does not perform services for any such person in connection with this chapter 11 case. In addition, the Firm does not have any relationship with any such person, such person's attorneys, or such person's accountants that would be adverse to the Debtor or its estate with respect to the matters on which the Firm is to be retained.

5.     Neither I, nor any principal of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtor with any other person other than principals and regular employees of the Firm.

6.     Neither I nor any principal of, or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest materially adverse to the Debtor or its estate with respect to the matters on which the Firm is to be retained.

7.     As of the commencement of this chapter 11 case, the Debtor owed the Firm $_____0_____ in respect of prepetition services rendered to the Debtor.

8.     If at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this declaration.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration and Disclosure Statement was executed on ___November 15___, 2023, at_Brooklyn, NY__.

____Vincent Ha_and Michael J. Covert_
Declarant Name

-2-

EXHIBIT 2 TO ORDER ON MOTION TO EMPLOY
PROFESSIONALS

Case: 23-30564     Doc# 309     Filed: 11/15/23     Entered: 11/15/23 11:42:37     Page 19 of 25



July 6, 2023

Kenneth Johnson
Area Senior Vice President
Gallagher Global Brokerage – Northwest
595 Market Street, Suite 2100
San Francisco, CA 94105

RE:      Perr&Knight Proposal for Services – Archdiocese of San Francisco

Ken:

Perr&Knight is pleased to present this proposal to provide actuarial consulting services to the Archdiocese of San Francisco ("ADSF" or "the Company") related to its loss and defense and cost containment expense ("DCCE") reserves as of June 30, 2023 and its projected loss and DCCE for exposure from the year ending June 30, 2024.  Our analysis would evaluate the liabilities and projected losses in the deductible layer associated with the Commercial General Liability (occurrence and claims made) and Commercial Auto Liability exposure but exclude the portion related to sensitive coverage, i.e. sexual misconduct claims.

**Scope**
We will provide the following services:

(1)   Issue a data request for the loss and exposure information we will require to perform the actuarial analysis.
(2)   Estimate the outstanding loss and DCCE for non-sensitive coverage in the deductible layer from July 1, 2015 through June 30, 2023 using data evaluated as of June 30, 2023.
(3)   Project the loss and DCCE for non-sensitive coverage in the deductible layer from July 1, 2023 through June 30, 2024.
(4)   Provide the reserve estimates and loss projections to the Company in the form of a draft report documenting our data, assumptions, methodologies and conclusions.
(5)   Discuss our findings with the Company and issue a final report.

**Perr&Knight's Experience**
Perr&Knight is a leading provider of insurance support services, including Actuarial Consulting, Regulatory Compliance, Product Design, Competitive Intelligence and Insurance Operations & Technology.  Perr&Knight is an independent consulting firm, completely unbiased in its analyses and recommendations.   We were founded in 1994 and employ over 120 professionals. Perr&Knight maintains offices in Los Angeles, California, Boca Raton, Florida, the New York Metro Area, and Cincinnati, Ohio.

With significant actuarial resources including 30 Fellows and Associates of the Casualty Actuarial Society ("CAS") and the Society of Actuaries ("SOA"), Perr&Knight is among the top 10 largest property & casualty actuarial consulting firms in the United States. Our actuaries have over 500

years of combined experience in the industry and come from diverse backgrounds including rating bureaus, primary insurance companies, reinsurance companies, insurance departments and other consulting firms. Our consultants' experience spans all lines of property casualty and supplemental health insurance in all U.S. jurisdictions. Perr&Knight's accredited consulting actuaries meet the requirements of the American Academy of Actuaries Code of Professional Conduct in that we annually fulfill the prescribed continuing education requirements and satisfy applicable qualification standards associated with the services we provide. Among our consulting actuaries are industry speakers and CAS/AAA committee participants. Perr&Knight is committed to the professional education and development of our actuaries, and as a result, boasts a team of knowledgeable, well-rounded actuaries familiar with cutting edge methods and technologies, who are guided by core actuarial standards and principles.

Perr&Knight's data scientist works together with our experienced actuarial staff to use the latest approaches of statistical modeling and machine learning to transform raw data into information that drives business decisions. This team brings together insurance expertise with strong statistical knowledge to optimally use data analytics in the complex insurance market. Our staff is well-informed regarding state insurance department requirements for statistical modeling. Our services include rate plan monitoring, implementation of new rating variables, underwriting scoring models, fraud detection tools and claim handling assistance.

Our Regulatory Compliance staff includes individuals who have obtained the following designations: Associate Compliance Professional ("ACP"); Certified Compliance Professional ("CCP"); Chartered Property Casualty Underwriter ("CPCU"); Associate in General Insurance ("AINS"); and Associate, Insurance Regulatory Compliance ("AIRC"). We are a Gold Level Sponsor each year at the Association of Insurance Compliance Professionals' ("AICP's") annual conference and our professionals regularly attend conferences to stay abreast of the latest regulatory compliance issues. Our staff also actively participates in professional organizations and has held the positions of President, Past President, Vice-President, Secretary and Treasurer of the Western Chapter of the AICP and Southwest Region Editor of the AICP's Journal. We also participate as an interested party in several of the NAIC's working groups and our staff includes a member of the Product Steering Committee for SERFF. In addition to our expertise, Perr&Knight has developed web-based tracking applications: StateFilings.com and LicenseReporter.com. These secured websites allow our clients real time access to their filings, bureau monitoring and licensing applications and have improved the productivity of our Regulatory Compliance Staff and communication with our clients.

Perr&Knight's Product Design team has over 200 years of experience in the insurance industry; in claims, compliance, operations, product development, product management and underwriting. Our Product Design consultants use innovative thinking and deep insurance expertise to assist clients in increasing efficiency, improving their competitive position, developing and filing products and forms and navigating the complex insurance regulatory environment. This team understands the importance of continued education and professionalism and has obtained more than 15 different insurance designations, including Associate, Compliance Professional ("ACP"); Associate in General Insurance ("AINS"); Associate in Regulation and Compliance ("AIRC"); Certified Compliance Professional ("CCP"); Certified Fraud Examiner ("CFE"); Chartered Property



Case: 23-30564    Doc# 309    Filed: 11/15/23    Entered: 11/15/23 11:42:37    Page 21 of 25

Casualty Underwriter ("CPCU"); Fellow, Life and Health Claims ("FLHC") and Market Conduct Management ("MCM"). The team is also active in the industry with members regularly speaking at industry conferences and serving on the Board of Directors for both the Association of Insurance Compliance Professionals ("AICP") and The Insurance Regulatory Examiners Society Foundation ("IRES-F").

Over 90% of U.S. property & casualty insurance companies have used Perr&Knight's competitive intelligence services. We have extensive experience providing competitive intelligence services to the insurance industry and have access to a nationwide library of insurance company filings on RateFilings.com through a business relationship with S&P Global, who acquired RateFilings.com from Perr&Knight in 2015.

Our Operations & Technology Consulting practice comprises three principal areas of service that provide technical solution planning and development, systems implementation and deployment expertise, as well as statistical reporting services. Our team of credentialed project managers, business analysts, solution architects and database developers assist insurance and related organizations with vendor selection, requirements documentation, process improvement, database design, change management, and a variety of statistical reporting services for all lines of business in every state to every bureau, statistical agent or regulatory body in the United States. Our professionals hold credentials from the Project Management Institute ("PMP" and "PMI-ACP"), Stanford University ("SCPM") and the American Society for Quality (Six Sigma Black Belt), have been quoted or published in multiple industry trade publications, participate in industry trade organizations and speak regularly at national trade conferences.

## Fees and Timing

We will send the Company a data request within one week of receiving acceptance of this proposal. We estimate that it will take approximately two to three weeks from receiving the necessary data to provide a draft actuarial report to the Company, i.e. scope items (2) through (4).

We will bill the Company for our actual time spent completing the scope of services outlined above at a billing rate of $485 per hour. We estimate the fees to be in the range of $7,500 to $8,250.

The actual hours could vary from the estimates provided above. We will bill you only for our actual time worked. We will try to keep the fees within the range shown above. If we approach the high end of the fees, we will alert the Company before exceeding the high end of our estimate.

* * * * * *

Thank you for the opportunity to provide this proposal. To the extent that this proposal does not reflect the services that you desire, please let me know and we can revise it accordingly. Also, please feel free to contact me with any questions you may have regarding the proposal.

PERR
KNIGHT

Regards,

Vincent Ha, FCAS, MAAA
Consulting Actuary
201.793.1482
vha@perrknight.com

cc: Michael J. Covert, FCAS, MAAA, Principal & Consulting Actuary

THE COMPANY ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT, UNDERSTANDS IT AND
AGREES TO BE BOUND BY ITS TERMS, AND THE PERSON SIGNING ON BEHALF OF THE COMPANY
BELOW HAS BEEN AUTHORIZED TO DO SO.

ACCEPTED BY: _____

NAME: REV. PATRICK J. SUMMERHAYS

TITLE: VICAR GENERAL & MODERATOR OF CURIA

DATE: 9/14/23

*Perr&Knight is not a law firm and does not provide legal advice, services and/or opinions.
Perr&Knight, and its employees, cannot act as legal counsel with respect to any matter and no
attorney-client relationship is implied or created by anything contained herein. To the extent that,
during the course of providing consulting and other services, any information regarding legal
matters is provided, Perr&Knight has made commercially reasonable efforts to ensure that such
information is accurate. However, as laws vary from jurisdiction to jurisdiction and change rapidly,
such information may not be up to date and all legal matters should be reviewed by your own in-
house counsel, outside counsel and/or other legal advisors, as appropriate, who are licensed or
otherwise permitted to practice law in the jurisdiction(s) involved.*

PERR
KNIGHT

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:

THE ROMAN CATHOLIC
ARCHBISHOP OF SAN FRANCISCO,

Debtor and
Debtor In Possession.

Case No. 23-30564

Chapter 11

**RETENTION QUESTIONNAIRE**

To be completed by Professionals engaged by Roman Catholic Archbishop of San Francisco, as debtor and debtor in possession ("Debtor"), which filed the above-captioned chapter 11 case on **August 21, 2023**.

All questions **must** be answered. Please use "none," "not applicable," or "N/A" as appropriate. If more space is needed, please complete on a separate page and attach.

1. Name and address of professional:

Vincent Ha and Michael J. Covert

Perr&Knight, 3 Second Street, Suite 1202, Harborside Financial Center, Plaza 10, Jersey City, NJ 07311

2. Date of retention: _____ May 3, 2016 _____

3. Type of Services to be provided:

Actuarial consulting services

4. Brief description of services to be provided:

Estimation of the outstanding loss and defense and cost containment expense (DCCE) for non-sensitive coverage in the deductible layer from July 1, 2015 through June 30, 2023 using data evaluated as of June 30, 2023. Projection of the loss and DCCE for non-sensitive coverage in the deductible layer from July 1, 2023 through June 30, 2024.

5.      Arrangements for compensation (hourly, contingent, etc.):

Hourly _____

     (a)      Average hourly rate (if applicable): _____ $485 _____

     (b)      Estimated average monthly compensation based on prepetition retention (if company was employed prepetition): _____

6.      Prepetition claims against the Debtor held by the company (if any):

     Amount of claim: $   N/A _____

     Date claim arose: _____

     Nature of claim: _____

7.      Prepetition claims against the Debtor (if any) held individually by any member, associate, or employee of the company:

     Name:   N/A _____

     Status: _____

     Amount of claim: $_____

     Date claim arose: _____

     Nature of claim: _____

     _____

8.      Disclose the nature and provide a brief description of any interest adverse to the Debtor or its estate for the matters on which the professional is to be employed:

N/A _____

_____

_____

9.      Name and title of individual completing this form:

Vincent Ha and Michael J. Covert _____

Dated: _____ November 15 ____, 2023

                             _____

                           Vincent Ha and Michael J. Covert

                           Declarant Name

EXHIBIT 3 TO ORDER ON MOTION TO EMPLOY PROFESSIONALS