1                    UNITED STATES BANKRUPTCY COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                              -oOo-

4    In Re:                        ) Case No. 23-30564
                                   ) Chapter 11
5    THE ROMAN CATHOLIC ARCHBISHOP )
     OF SAN FRANCISCO              ) San Francisco, California
6                                  ) Thursday, October 26, 2023
                        Debtor.    ) 1:30 PM
7    _____  )
                                     FINAL HEARING ON DEBTOR'S
8                                    EMERGENCY MOTION FOR ORDER
                                     (1) AUTHORIZING PAYMENT OF
9                                    PREPETITION WAGES, SALARIES,
                                     AND EMPLOYEE EXPENSES; (2) TO
10                                   PAY ACCRUED EMPLOYEE BENEFITS
                                     AND TAXES; AND (3) DIRECTING
11                                   BANKS TO HONOR PAYROLL AND
                                     EXPENSE CHECKS FILED BY THE
12                                   ROMAN CATHOLIC ARCHBISHOP OF
                                     SAN FRANCISCO [7]
13
                                     FINAL HEARING ON DEBTOR'S
14                                   EMERGENCY MOTION FOR INTERIM
                                     AND FINAL ORDERS (1)
15                                   AUTHORIZING CONTINUED USE OF
                                     EXISTING CASH MANAGEMENT
16                                   SYSTEM, OPERATIONAL BANK
                                     ACCOUNTS AND RELATED
17                                   INVESTMENT ACCOUNTS; (2)
                                     AUTHORIZING MAINTENANCE OF
18                                   EXISTING BUSINESS FORMS, (3)
                                     EXCUSING COMPLIANCE WITH
19                                   SECTION 345(B); (4)
                                     AUTHORIZING CONTINUED USE OF
20                                   CURRENT INVESTMENT POLICY;
                                     AND (5) SCHEDULING A FINAL
21                                   HEARING FILED BY THE ROMAN
                                     CATHOLIC ARCHBISHOP OF SAN
22                                   FRANCISCO [9]

23                                   DEBTOR'S MOTION FOR EXTENSION
                                     OF THE DEADLINE FOR REMOVAL
24                                   OF CIVIL ACTIONS FILED BY THE
                                     ROMAN CATHOLIC ARCHBISHOP OF
25                                   SAN FRANCISCO [181]

eScribers
www.escribers.net | 800-257-0885

```
1                     TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE DENNIS MONTALI
2                    UNITED STATES BANKRUPTCY JUDGE

3   APPEARANCES (All present by video or telephone):
    For the Debtor:          PAUL J. PASCUZZI, ESQ.
4                            Felderstein Fitzgerald Willoughby
                             Pascuzzi & Rios LLP
5                            500 Capitol Mall
                             Suite 2250
6                            Sacramento, CA 95814
                             (916)329-7400
7
                             ORI KATZ, ESQ.
8                            Sheppard, Mullin, Richter &
                             Hampton LLP
9                            4 Embarcadero Center
                             17th Floor
10                           San Francisco, CA 94111
                             (415)774-3238
11
    For Office of the U.S.    JASON BLUMBERG, ESQ.
12   Trustee:                U.S. Department of Justice
                             501 I Street
13                           Suite 7-500
                             Sacramento, CA 95814
14                           (916)930-2076

15   Proposed Counsel for the JOHN W. LUCAS, ESQ.
    Official Committee:      Pachulski Stang Ziehl & Jones
16                           One Sansome Street
                             Suite 3430
17                           San Francisco, CA 94104
                             (415)263-7000
18
    Also Present:            Most Rev. Salvatore J. Cordileone
19                           Archbishop

20                           Joseph J. Passarello
                             Chief Financial Officer
21
                             Fr. Patrick Summerhays
22                           Responsible Individual

23                           Paul E. Gaspari, Esq.
                             Special Litigation Counsel
24
                             Wayne P. Weitz
25                           B. Riley Advisory Services
```

www.escribers.net | 800-257-0885

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18   Court Recorder:              LORENA PARADA/ANKEY THOMAS
                                 United States Bankruptcy Court
19                               450 Golden Gate Avenue
                                 San Francisco, CA 94102
20

21   Transcriber:                RIVER WOLFE
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (800) 257-0885
24

     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

-oOo-

1

2

3          (Call to order of the Court.)

4          THE CLERK:  Calling the matter of the Roman Catholic

5     Archbishop of San Francisco.

6          And counsel's in the courtroom, Your Honor.

7          THE COURT:  Appearances, please.  Good afternoon.

8          MR. PASCUZZI:  Good afternoon, Your Honor.  Paul

9     Pascuzzi, Felderstein Fitzgerald Willoughby Pascuzzi & Rios,

10    for the debtor, the Roman Catholic Archbishop of San Francisco,

11    a corporation sole.

12         And if I might, Your Honor, for the record, we have a

13    couple of client representatives also on the Zoom, not that

14    they need to be on the screen, but Abp. Cordileone, Fr.

15    Summerhays, Mr. Passarello, Mr. Gaspari, who is our special

16    litigation counsel, and Wayne Weitz from B. Riley, who/s the

17    financial adviser.

18         THE COURT:  All right.  Well, I'm sorry.  I can't see

19    you all or you can't see me, but I can blame Xfinity on that

20    for my neighborhood internet.  But good afternoon, everyone.

21         And also appearing for the committee, Mr. Lucas, are

22    you there, or someone for the committee?

23         MR. LUCAS:  Yes, Your Honor.  John Lucas, Pachulski

24    Stang Ziehl & Jones, counsel to the committee.

25         THE COURT:  Mr. Pascuzzi, I'm not sure I know what's

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1  left active on the docket for this afternoon, so I'll sort of

2  let you tell me what's left.

3        MR. PASCUZZI:  Yeah.  And Your Honor, Mr. Katz from

4  Sheppard, Mullin is also on the screen, and I think Mr.

5  Blumberg from the U.S. Trustee, if they needed to make their

6  appearances.

7        THE COURT:  Okay.  I'm sorry.  I guess I thought I

8  noted Mr. Katz.

9        Mr. Katz, are you there?

10       MR. KATZ:  I am, Your Honor.  Ori Katz, Sheppard,

11  Mullin, Richter & Hampton, for the debtor.

12       THE COURT:  And Mr. Blumberg.

13       MR. BLUMBERG:  Good afternoon, Your Honor.  Jason

14  Blumberg for the United States Trustee.

15       THE COURT:  Okay.  Back to you, Mr. Pascuzzi.

16       MR. PASCUZZI:  Okay.  Thank you, Your Honor.  We have

17  two continued first day motions on calendar.  One is the wage

18  motion.  The other is the cash management motion.  And then a

19  motion that was subsequently filed is a motion to extend the

20  time to remove actions.

21       And I believe as to the wage motion, Mr. Lucas for the

22  committee filed a response.  I don't think it's an opposition

23  or an objection.  In fact, it said it's not an objection.

24       As to the cash management motion, the U.S. Trustee has

25  an objection as to the investment accounts that we have not

e cribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1   been able to resolve.

2          And as to the removal extension deadline motion,

3   there's been no responses or opposition.

4          THE COURT:  Okay.  Well, everything you said is

5   consistent with what I had gleaned from the docket.

6          So taking it in reverse order, I've reviewed the

7   extension motion, and it seems in order to me.  So without

8   opposition, I will grant it and as requested.

9          And as to the wage motion, I sort of also had the same

10  observation that the committee stated its position, but not as

11  a formal objection.  And I'd like to just leave it unacted upon

12  because there's nothing for me to act upon.  But I'm aware of

13  the committee's point of view.  And I'm prepared to approve on

14  a final basis the wage motion, if that's acceptable to counsel.

15         MR. LUCAS:  Your Honor, that's --

16         THE COURT:  Mr. Lucas, do you have a statement on

17  that?  Anything?  I mean, is there any reason why I shouldn't

18  just put that last vestige of that first day motion to bed and

19  say, fine, it's final?

20         MR. LUCAS:  Your Honor, this is John Lucas.  No, there

21  is not.  As we said in our response, there's information that

22  the committee would like, and we will go through the proper

23  mechanism, if you will, to get that information.  Thank you.

24  Yeah.

25         THE COURT:  Okay.  Okay.  I mean, I'd rather just

eScribers
www.escribers.net  |  800-257-0885

The Roman Catholic Archbishop Of San Francisco

1   leave it at that.  I'm not going to express any personal views

2   on it because it's not an action item.

3        So Mr. Pascuzzi, given Mr. Lucas's statement, I guess

4   before I conclude that subject, I should say, is there anyone

5   on the call that wishes to be heard on the debtor's what we

6   call the wage motion and any of the aspects of it?

7        Okay.  Hearing none, Mr. Pascuzzi, I'll put it to bed

8   by saying it's allowed or granted as explained on the record

9   and ask you to go ahead and upload the order; does that work

10  for you?

11       MR. PASCUZZI:  Yes, Your Honor.  I will do that.

12       THE COURT:  Okay.

13       MR. PASCUZZI:  And Mr. Katz is going to handle the

14  cash management motion, Your Honor.

15       THE COURT:  Okay.  All right.  And on that subject,

16  Mr. Katz, before you elaborate, I thought I got the impression

17  that the U.S. Trustee had expressed a view, but I didn't

18  understand it was still up for a decision.  So go ahead and

19  take it from there.

20       MR. KATZ:  Thank you, Your Honor.  Ori Katz for the

21  debtor.  And I'll start with a little bit of background.  Help

22  get everyone up to speed.

23       But there's only a narrow issue under this motion that

24  remains unresolved, Your Honor.  It just has to do with the

25  application of Section 345(b) to the investment accounts.  And

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    what happened, Your Honor, is we had been meeting and

2    conferring with the U.S. Trustee.  We did have a series of

3    agreed continuances, and part of that was to allow the parties

4    to discuss and exchange information.  Part of it was to allow

5    the committee to be appointed and either take a position or

6    not.

7            Ultimately, Your Honor, as to the United States

8    Trustee, following a really good-faith effort and a series of

9    meeting and conferral over an extended period of time, we

10   weren't able to reach a resolution on that specific part of the

11   motion.  We do have agreement on a proposed form of order that

12   covers everything else that's not at issue.

13           And as to the committee, I believe they may chime in,

14   but I don't want to speak for them other than to say that we

15   met and conferred with the committee, which was one of the

16   reasons for the continuance.  We provided them quite a bit of

17   info.  We made available to them our financial advisor and

18   connected B. Riley with their financial advisor.

19           But the bottom line is, Your Honor, I think we could

20   use some guidance from the Court to resolve this narrow, open

21   issue, and I'm happy to proceed any way the Court would like.

22   I could jump in with my views, answer questions, or really take

23   my cues from Your Honor.

24           THE COURT:  Well, just narrow-in and pinpoint the

25   issue, and then I'll ask Mr. Blumberg to tell me the

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    alternative.  I mean, again, I think I probably knew it and

2    read it and know it, but I'd like to hear it as it presently

3    has been resolved and narrowed-down to.

4         MR. KATZ:  Yeah.  I think the issue, Your Honor, is

5    whether cause exists under 345(b) to provide for a waiver of

6    strict compliance with that provision of the Code, which would

7    otherwise require liquidation of about 160 million dollars of

8    various investments, some of which are completely illiquid and

9    are locked up, and placing the net proceeds of that liquidation

10   in a depository in strict compliance with the U.S. Trustee

11   guidelines.  And so it comes down to whether we've shown cause

12   for a waiver.  I think that's the issue.  And the debtor

13   believes we have and --

14        THE COURT:  Okay.  Can you --

15        MR. KATZ:  Yeah.  Sorry, Your Honor.

16        THE COURT:  Can you break it down into -- again,

17   pardon me for not being able -- I mean, I can look at the prior

18   motion, but where are those?  Those are in two different

19   existing accounts that are not authorized depositories; isn't

20   that the case?

21        MR. KATZ:  That's correct, Your Honor.  Well, these

22   are custodial/brokerage accounts, and one of them is with U.S.

23   Bank.  That's what we refer to in the papers as the pooled

24   account.  And the other is with Bank of America Securities,

25   which is our -- which is invested with a BlackRock Federal Fund

eXcribers
www.excribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    ETF, essentially.  And so those aren't authorized depositories.

2        They're affiliated with authorized depositories.  Both

3    U.S. Bank and Bank of America are authorized depositories.  But

4    they're not held in strict compliance with the U.S. Trustee

5    guidelines, which would require some sort of collateral or

6    backstop against the amounts held.

7        THE COURT:  Right.  Right.  So if either of those two

8    institutions failed, there's only a limitation on the insured

9    amount, which is minimal by comparison, right?

10       MR. KATZ:  Relative the amounts held, yes, Your Honor,

11   but I'm not sure that even -- well, I'm not sure how likely a

12   failure is at that level of entities that are rated this

13   highly.  But setting that aside, even if either failed, because

14   of the nature of the investments, I'm not certain that that's a

15   complete loss automatically, whether those would automatically

16   be swept into a bankruptcy, for example, and lost.  I think

17   it's a complex analysis, so I'm not sure the risk is quite that

18   high.

19       THE COURT:  No, I understand.  Listen, it's not like

20   I -- no, I understand.

21       But let me ask Mr. Blumberg, as a practical solution,

22   what would you want me to order?  I mean, Mr. Katz has now

23   stated the issue.

24       MR. LUCAS:  Your Honor, this is John Lucas.

25       THE COURT:  Yes.

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1         MR. LUCAS:  And I apologize for butting in, but would

2    it be more appropriate if I said a few words on behalf of the

3    committee first before Mr. Blumberg went?  Because I think that

4    we're more on the same page with debtor's counsel here as

5    opposed to the United States Trustee.

6         THE COURT:  All right.

7         MR. LUCAS:  I'm happy to proceed however you want,

8    though.

9         THE COURT:  Okay.

10         MR. LUCAS:  I just didn't want to mess up the flow.  I

11    apologize.

12         THE COURT:  Go ahead, Mr. Lucas.  Go ahead and make

13    your statement.

14         MR. LUCAS:  Thank you.  Thank you, Your Honor.  John

15    Lucas, Pachulski Stang, for the committee.

16         Your Honor, the committee didn't file anything formal

17    in response to the motion, the objection, or the reply that was

18    filed recently.  But the committee sort of sighs here because

19    our view here is that the debtor isn't trying to cut corners or

20    to, I think, kind of compromise anything, but the debtor is

21    actually trying to preserve things.  And if you look at the

22    reply, Your Honor, there are two buckets of investments.

23         There's the Bank of America stuff, which is invested

24    through BlackRock, but it's approximately fifty-four million

25    dollars in United States Treasuries.  And we think that that is

The Roman Catholic Archbishop Of San Francisco

1   an important point.  If they had to divest that and put it into

2   an approved depository, the estate is already losing about 34,

3   35,000 dollars a month in interest that it would otherwise

4   receive.  So that's one point, Your Honor.

5           And then the other point, Your Honor, which the

6   committee has discussed with the debtor's counsel and the

7   financial advisers, is that there is a huge, huge chunk of

8   money, investments in the U.S. Bank account through those

9   various investment vehicles that are subject to restrictions,

10  and that it's as if the debtor is going to be asked to just

11  walk away from the money or experience severe penalties for a

12  requirement that's under the Bankruptcy Code, but it's not a

13  requirement that is always enforced.  And we think that the

14  facts here support looking past that, Your Honor.

15          THE COURT:  Well, I'm looking at the reply here, or

16  excuse me -- yeah, the reply, which is doc 87.  Is there a

17  later -- is it this -- there's a later supplemental from Mr.

18  Passarello.  Does that give me more specifics on that, help me

19  on that?  I did look at these things quite some time ago, and

20  that gets back to my point about I'm not sure what's still

21  liable.  So --

22          MR. LUCAS:  Your Honor, there --

23          THE COURT:  -- Mr. Lucas, what were you -- what were

24  you were you referring to when you referred to the fifty-four

25  million, for example, and the penalties?

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    MR. LUCAS:  So Your Honor, I am using Mr. Katz'

2    pleading that he filed the other day as my sort of step stool

3    to provide some of the factual information that the debtors put

4    in.  And so perhaps I could turn it over to Mr. Katz, and I

5    could let him sort of set the table a little bit better.  But

6    as Your Honor can probably tell, I've discussed this with Mr.

7    Katz and that we don't want the estate to be harmed here by a

8    formalistic requirement of Bankruptcy Code.  But I'll let Mr.

9    Katz sort of set the table a little bit better.  I'm sorry I

10   got out a little bit ahead.

11   MR. KATZ:  Your Honor, this --

12   THE COURT:  Well, but before we do that, I'm going to

13   take your comment, Mr. Lucas, and let Mr. Blumberg be heard.

14   This is not -- I can't turn this into a roundtable discussion.

15   Mr. Blumberg, would you help me understand what you

16   propose as a practical alternative to what the debtor and the

17   committee wants?

18   MR. BLUMBERG:  Yes, Your Honor.  Thank you.  Jason

19   Blumberg for the United States Trustee.  I'll get right down to

20   the kind of the brass tacks.

21   There are essentially two accounts here.  There's the

22   Bank of America Securities account, and then there's the pooled

23   investment accounts at U.S. Bank.  The Bank of America account

24   has about 57.6 million, and the U.S. Bank account has

25   approximately 100 million in various pooled investment funds.

The Roman Catholic Archbishop Of San Francisco

1    The Bank of America account is the one that gives

2    us -- well, let me take a step back.  The Bank of America

3    account is a liquid account.  There would be no tax

4    consequences to liquidating it.  And we think that that account

5    should be liquidated and moved over to a debtor-in-possession

6    account that's collateralized as required by Section 345(b) of

7    the Bankruptcy Code.  That would protect estate state funds as

8    Congress envisioned.

9    I understand the argument that Mr. Lucas alluded to,

10   that the fund that the debtor invests in has interests in cash

11   and treasury bills.  But with respect, the debtor doesn't have

12   a direct interest in those funds.  It has an interest in the

13   black market money market mutual fund, and it holds that

14   interest through Bank of America Securities.  So there is a

15   level of institutional risk that exists here.  There's perhaps

16   two levels of institutional risk.

17   Coming back to the supplemental reply, in connection

18   with the costs of liquidating these accounts, the debtor

19   indicated on -- well, anyway, the debtor indicated that a cost

20   of ten million dollars to liquidate these accounts would impede

21   the debtor's reorganization.  So a ten-million-dollar cost

22   would impede the debtor's reorganization.  A loss of 60 or 160

23   million would surely do so the same.  So we do think the Bank

24   of America Securities account should be liquidated and moved

25   over to a debtor-in-possession account.

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    Now, with respect to the U.S. Bank pooled investment

2    accounts, it's a trickier issue because as the supplemental

3    reply lays out, there are costs and liquidity issues associated

4    with those accounts.  That said, as I understood the

5    supplemental reply, I think I believe six of the accounts were

6    liquid.  Four private funds were of such that they could be

7    liquidated on a quarterly basis.  And then four real estate

8    funds really could not be liquidated without incurring

9    substantial costs.

10    So going back through those, it's our position that

11    the six funds that are liquid, those should be liquidated and

12    move over into a debtor-in-possession account so that the funds

13    are protected and collateralized, as Congress envisioned.

14    With respect to the private funds that can be

15    liquidated on a quarterly basis, the United States Trustee's

16    position is that when that quarterly opportunity or window

17    arises, then the debtor should avail itself of that opportunity

18    and move the proceeds over into a debtor-in-possession account.

19    And then finally, with respect to the real estate

20    funds, we understand the debtor's point.  There would be

21    significant costs.  There are liquidity issues.  We would

22    request that the debtor be required to liquidate those real

23    estate funds only in accordance with the contractual parameters

24    so that it doesn't incur the cost that it's worried about.

25    That's what we would propose.  We think that is a

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1   reasonable solution that enables the debtor to avoid the costs

2   that it's worried about but at the same time respect Congress's

3   decision in Section 345(b) that estate funds should be

4   protected from the risk of loss by the financial institution.

5           THE COURT:  But just to clarify, Congress didn't

6   manditate it, right, or mandated it in the sense that courts

7   have no discretion and debtors have some discretion and the

8   courts have some discretion.  Right.  It's not as -- and I

9   don't violate the law if I allow a waiver of the 345(b)

10  requirement, right?

11          MR. BLUMBERG:  That's correct, Your Honor.  You can

12  waive the requirement --

13          THE COURT:  Okay.

14          MR. BLUMBERG:  -- for cause.  We think that's a -- we

15  think it's not a strong argument on the debtor's side with

16  respect to the Bank of America Securities account.  We think

17  they have a stronger argument we can see with respect to the

18  pooled investment accounts.  But we think what we're proposing

19  respects what the debtor is trying to do.

20          THE COURT:  Well, what I'm trying to do is keep up

21  with everybody on the information.  So I'm looking, and I want

22  to make sure I haven't missed something.  So I have in-hand Mr.

23  Passarello's original declaration, which is document 14, filed

24  way back on August 21st.  And then I have the debtor's reply,

25  which is document 87.  And I have a second supplemental

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    declaration of Mr. Passarello, document 87-1.

2           Now, I wonder if I'm at least misplacing a declaration

3    of Mr. Passarello that isn't numbered.  Oh, no, here it is.  I

4    just found it, the supplemental declaration, which is document

5    184.

6           All right.  And so the three Passarello documents and

7    declarations, rather, are the three operative documents, right,

8    Mr. Blumberg, or --

9           MR. BLUMBERG:  Your Honor, I believe --

10          THE COURT:  -- (indiscernible) something.

11          MR. BLUMBERG:  Your Honor, this is Jason Blumberg for

12   the United States Trustee.  There was a supplemental reply

13   filed by the debtor on Friday at docket number 232.  And I

14   believe there is a declaration of Mr. Passarello attached to

15   that filing and --

16          THE COURT:  That was just filed just -- that was just

17   last Friday?

18          MR. BLUMBERG:  Yes, Your Honor.  And Mr. Passarello's

19   declaration, I believe, is 232-1.

20          THE COURT:  Yes.  Okay.  I do see that.  I think I

21   have a feeling that that's something that I didn't catch up

22   with.  If it was filed on Friday, I was pretty much out of

23   pocket for a couple of days.  And when I looked at the

24   document, or the docket, excuse me, I may have missed it or

25   something.  I don't know.

The Roman Catholic Archbishop Of San Francisco

1    So I take it that the document that was filed on

2   Friday has some of the more specifics that you're focusing on;

3   is that a correct statement?

4    MR. BLUMBERG:  That's correct, Your Honor.

5    THE COURT:  Okay.  So I owe it to both sides here to

6   be a little more informed.  And I will confess that having

7   thought I've reviewed everything, I missed that document.  But

8   what I -- so therefore, Mr. Blumberg, I'm going to ask that you

9   again tell me a little bit more.

10    If I were to order the debtor to do what you're

11   suggesting, particularly with the B of A amount, and you say,

12   well, you want it in a collateralized DIP account, what does

13   that translate to in terms of where that money ends up in terms

14   of the impact?  In other words, let me say that more precisely.

15   If I magically could move all that money to where you think it

16   should be moved today, what would be the impact in terms of the

17   earning capacity that those funds would make, compared to what

18   they make now?

19    Leave aside risk.  So that to state it more

20   specifically, that fifty-seven million is sitting where it's

21   sitting now, and it's producing a certain return on that

22   investment.  And if we to go with your suggestion, it would be

23   somewhere else.  And what would be the return or the comparison

24   of that return with what happens if I don't make it move?

25   Understand my question?

The Roman Catholic Archbishop Of San Francisco

1    MR. BLUMBERG:  I do, Your Honor.  So I'm going off the

2    supplemental reply at pages 8 through 10.  That's docket number

3    232.

4    And according to that document, the debtor states that

5    it's earning 5.23 percent where the funds are invested now.  It

6    states that it would earn 4.5 percent if it had to move the

7    funds to a debtor-in-possession account.  And then the debtor

8    estimates that the cost or the spread would result in a cost of

9    36,000 dollars a month.  That's not insignificant, but I would

10   argue that it's fairly modest when compared to an investment of

11   fifty-seven million dollars, especially when the debtor intends

12   to move out of this bankruptcy case quickly and expeditiously.

13   I would also note that one of the cases that we cited

14   in our original objection, or rather actual objection, is the

15   Ditech case, 605 B.R. 10, out of the Southern District of New

16   York.  And that case, the bankruptcy court ordered the debtor

17   to comply with Section 345(b), even though the cost of doing so

18   would have been 80,000 dollars a month.  So there is precedent,

19   not binding precedent for sure, but precedent for the Court

20   requiring compliance with Section 345(b), even if it would --

21   even if it would result in additional costs or reduced earning

22   capacity.

23   THE COURT:  Okay.  And again, I repeat one more time,

24   I need to study more carefully the document that I've admitted

25   that I haven't studied.  So I'm trying to do a quick study on

The Roman Catholic Archbishop Of San Francisco

1 and listen to what you're saying.

2 So Mr. Blumberg, what you're telling me in sort of

3 simple, simple terms is if the debtor moves this fifty-seven

4 million dollars, it'll go negative by 36,000 dollars a month,

5 but it will have protected much more safely, you believe, the

6 fifty-seven million. So the cost of -- the cost of that move,

7 you have 36,000 a month. Obviously, it's not to be ignored.

8 But if we factor in the expectation that the debtor

9 might be able to exit the bankruptcy sooner rather than later.

10 And I am not going to get into a speculation about the details

11 there. That's what's happening, and I guess, and I'm asking

12 the question as I'm looking on the screen here and my poor

13 internet today, that's what Mr. Passarello said.

14 So that's what it comes down to, right, Mr. Blumberg?

15 MR. BLUMBERG: That's correct, Your Honor. In our

16 view --

17 THE COURT: Okay.

18 MR. BLUMBERG: -- the 36,000 is not insignificant, but

19 it's modest compared with the ability to protect the estate

20 from financial institution failure, the risk, albeit small.

21 THE COURT: Okay. Does the same document that I've

22 admitted that I haven't studied give us the same kind of

23 analysis, or can you give me the same kind of analysis for the

24 U.S. Bank amount, the hundred million? Or is

25 that (indiscernible). I think Mr. Katz said it's a little more

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1   complicated.

2   MR. BLUMBERG:  Your Honor, this is Jason Blumberg for

3   the United States Trustee.  I don't know if with respect to the

4   U.S. Bank account, the debtor broke out the opportunity costs

5   if it were to move to a debtor-in-possession account.  What it

6   did do was kind of go through the liquidity issues that would

7   present itself if it were required to liquidate those accounts

8   and the costs associated with that, which I believe the number

9   the debtor indicated was ten million dollars.

10  But as I understood the supplemental reply, there were

11  actually six out of the fourteen diversified or pooled funds

12  that actually didn't have liquidity constraints.  So I don't

13  know if the ten million would be attributable at all to the

14  liquidation of those six accounts.

15  And then there were four private funds, "private

16  funds", that could be liquidated, as I understood it, on a

17  quarterly basis without penalty.

18  And then there were four real estate funds that it

19  kind of sounds like it would be exceedingly difficult

20  contractually to liquidate.  And I understood the ten million

21  dollars to be associated with that.  Sorry, Your Honor.

22  THE COURT:  Okay.  But the point is, again, if I

23  pretend that I can solve this thing in a flip of a switch, it

24  means a very much more complicated transaction or series of

25  transactions.

eXcribers
www.excribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1        But from your comment, Mr. Blumberg, it sounds to me

2   like your concerns are more focused on the B of A amount and

3   the costs there.  And again, I'm not asking to -- this isn't a

4   negotiation position.  But you seem like that's a much higher

5   priority in terms of what you and the U.S. Trustee contemplate

6   as the risk to the estate and what you would like to be dealt

7   with more immediately; is that a fair statement?

8        MR. BLUMBERG:  I think that's fair, Your Honor.  And

9   also I think the debtor has had a more difficult time meeting

10  its burden to demonstrate cause with respect to that Bank of

11  America account.

12       THE COURT:  Okay.  Well, sometimes when I have to pick

13  off these terms like cause, we all know from all of our

14  experience.  Maybe the people who are in this bankruptcy for

15  the first time in their entire lives don't know what I'm

16  referring to, but all of you bankruptcy pros know what I'm

17  talking about, is that cause is one of those terms that --

18  cause is in the mind of the beholder sometimes, and the

19  beholder might be the judge that's making the decision.

20       Look, what I'm going to do is not something I like to

21  do, but I'm going to, having confessed to you that I simply

22  was -- didn't catch up with the latest filing, I'm going to

23  take time -- my time, not on this hearing.  I'm going to review

24  carefully everything that Mr. Passarello said in that

25  supplemental document and the debtor.  And I will focus on the

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    B of A issue much more specifically and take the matter under

2    advisement and try to make a decision very quickly.

3         And I'm not going to turn this into a learned

4    dissertation.  I'll probably issue a three-sentence order.  But

5    I'm going to make a decision, and it comes down to motion, the

6    U.S. Trustee objection or U.S. Trustee objection sustained in

7    whole or in part.  And I know what the choices are.  So I'll

8    let any of the counsel who wish to to make any further comment,

9    but that's my present intention.

10        So I don't feel it would be carrying out my

11   responsibility or doing justice to either side if I just

12   stopped right now and said, here's my ruling because I don't

13   ignore the submissions by the parties.

14        So anyone else wish to be -- make a quick closing

15   comment on this subject?

16        MR. KATZ:  Your Honor, this is Ori Katz from Sheppard,

17   Mullin for the debtor.  You had ask me to tee up the issue,

18   which I did, but I would like an opportunity to just very

19   briefly respond to Mr. Blumberg's comments and raise a few

20   points.

21        THE COURT:  Okay.  Mr. Katz, you don't have to -- you

22   don't have to name your firm or your client and your full title

23   every time you speak up.  I know you, and I recognize your

24   voice.  But go ahead and --

25        MR. KATZ:  All right.

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1          THE COURT:  -- please, please make your comments.

2          MR. KATZ:  Thank you, Your Honor.  So I want to start

3     by building on something you mentioned, Your Honor, which is

4     that it can't be that it's strict mandatory compliance every

5     time with 345(b) because otherwise why amend it to include for

6     cause.  And so it's really a question of what is for cause

7     mean, and is it met here.

8          And there's actually not a lot of controversy over the

9     body of case law.  Two or three primary cases are cited in both

10    the briefs.  And I want to address Ditech in a moment.  But the

11    factors are not controversial, and most of the factors that the

12    cases cite are favorable for the debtor here.

13         There's no dispute this is a big, complicated case.

14    Nobody disputes a lot of dollars are at issue and that the

15    debtor has a large annual operating budget.  It's not disputed

16    that the financial institutions that are involved are highly

17    rated by Standard & Poor's.

18         And I don't think anyone disputes that there are

19    safeguards in place.  There's a professional money manager

20    that's mentioned in the supplemental pastoral declaration.

21    There's an investment committee in place.

22         A few other factors that I think are relevant.  The

23    funds that issue that we're talking about are not critical for

24    operations, and I'm going to come back to that when I discuss

25    Ditech.

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    And then in terms of harm, there could be real harm

2   obviously to the debtor from early liquidation of locked funds.

3   And even if you take what is now a balanced pool and you start

4   to liquidate those things that are liquid, leaving behind only

5   those things that are restricted, you've taken a balanced pool

6   that was part of pretty prudent and careful investment planning

7   and you've unbalanced it.

8    A few other factors, Your Honor.  We know

9   reorganization is highly likely.  And I'm not going to speak to

10  time table, but we have a track record of religious

11  organization cases that come before this one, and

12  reorganization is the likely outcome.  I think one of the most

13  significant factors that isn't mentioned in Service Merchandise

14  but is mentioned in Judge Holt's decision in King Mountain is

15  that no economic stakeholder has opposed the motion, and Judge

16  Holt focused on that quite a bit.  He said silence by

17  sophisticated financial stakeholders should be viewed as either

18  support or acquiescence.

19    And in this case, we have a lot of sophisticated

20  parties.  They aren't appearing on this hearing, Your Honor,

21  but the notices of appearance over the last forty-five days

22  tell us we have sophisticated bankruptcy counsel with

23  sophisticated clients that have eyes and ears on the case, but

24  no one filed anything.  And other than the committee who did

25  reach out, no other economic stakeholder even picked up the

The Roman Catholic Archbishop Of San Francisco

1   phone to call me.

2        And so that the committee is not actively opposing and

3   has offered support is meaningful.  And then when you couple

4   that with the nature of the investments, the track record of

5   performance, the fact that a loss isn't going to impact

6   operations, the professional management that's supervised by an

7   investment committee, you start to get a picture of a debtor

8   that's prudently exercising their business judgment, and that's

9   what Judge Holt was talking about in his decision is in larger

10  cases, not wanting to second guess or interfere with that.

11       And the point of amending 345(b) was to make it clear

12  it's not mandatory.  You can't protect against any and every

13  risk.  And the legislative history speaks specifically to large

14  cases as being likely for exceptions or more likely for

15  exceptions.

16       So then I want to turn to Ditech.  That's the case out

17  of the Southern District of New York.  But that's a really very

18  different case.  Yes, it was large and complex, but after that

19  it gets very different.  And really, there's two important

20  things I want to point out to Your Honor in looking at Ditech.

21       Number one, it was clear that the loss of the invested

22  funds there in the Ditech case would have absolutely killed the

23  debtor's operations.  They had ninety-five million dollars in a

24  Citibank account that gave them daily liquidity, and it was

25  vital to their operations.

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1     That's not the case here, Your Honor.  Well, we're not

2   a typical business operating in a typical way.  But the funds

3   that we're talking about, the investment funds, are not the

4   lifeblood of what this debtor does.  We're not generally

5   relying on the liquidity of these funds in our daily

6   operations.  The threat to the debtor here is nowhere near what

7   it was to Ditech.

8     Number two, in Ditech, Citibank, which is the --

9     THE COURT:  I'm going to stop you there.  Let me stop

10  you --

11    MR. KATZ:  Yeah.

12    THE COURT:  -- there for a minute, Mr. Katz.  Would a

13  financial failure of some sort that caused a significant

14  diminution of these funds impact the debtor's ability to

15  compensate the creditors who have driven this debtor into

16  bankruptcy?

17    MR. KATZ:  It could, Your Honor.

18    THE COURT:  Yeah.  None of whom as I -- none of whom

19  who I believe chose to be creditors the way lenders do, and

20  none of whom are financial institutions, but all of whom are

21  victims of what you know and I know drove this debtor into

22  bankruptcy, along with all the other religious ones that have

23  done it in the last few years.

24    So can you persuade me that a substantial loss of

25  money wouldn't (audio interference) ability of the debtor to

eScribers
www.escribers.net | 800-257-0885

                  The Roman Catholic Archbishop Of San Francisco

1    compensate those claimants?

2              MR. KATZ:  Your Honor, in the event of a substantial

3    loss of money, I mean, that's why I come back to the absence of

4    opposition from financial stakeholders.  You have a committee

5    that is the --

6              THE COURT:  Well, I mean, I know.  I know.  Come on,

7    Mr. Katz.  And if we had a bunch of credit card companies or a

8    bunch of trade creditors who had invested and extended credit

9    at risk, maybe some of them would be speaking out.  And I'm not

10   denying the position asserted by the creditors committee, and I

11   appreciate it.

12             But I think to start comparing this case with

13   something that has a lot of across-the-board activity of

14   financial institutions, this is really a nonstarter from my

15   point of view.

16             MR. KATZ:  Your Honor, the other --

17             THE COURT:  I mean, this is split.  To some extent--

18   look, to some extent, this case resembles the PG&E fire cases

19   because as you well know and I know PG&E wouldn't have filed

20   bankruptcy the second time but for the fires.  And so there

21   were hundreds of millions of dollars of financial creditors who

22   took an active role in the case but never, never really cared

23   about some of these other issues that drove what ultimately was

24   necessary to deal with the tort claimants.

25             So you don't have to (indiscernible) my views.  I just

eXcribers
www.excribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1   telling you that that talking about what happens in a mass tort

2   case like fires or drug cases or a mass tragedy case involving

3   not thousands, but at least hundreds and hundreds of victims

4   who didn't choose to take the risk here is not persuasive.

5        So I have to think of it in terms of what do I tell

6   them if I make a decision that, for whatever reason, ends up

7   with a substantial hit that the debtor takes because one of its

8   financial decisions turned sour and it impacts the ability of

9   the debtor to compensate the claimants.  Okay.  So go ahead.

10  With that, I'll shut up and listen to you.

11       MR. KATZ:  Thank you, Your Honor.  The other thing I

12  wanted to just point out about Ditech was in that case,

13  Citibank offered to collateralize the account in question, the

14  ninety-five-million-dollar account, in order to bring it into

15  full compliance with U.S. Trustee guidelines.  The cost to do

16  that would have been 80,000 dollars a month, which Mr. Blumberg

17  pointed out.

18       But what is also mentioned in the decision, which I

19  think was impactful for the Court, was that the debtors were

20  earning 2.6 percent per month interest on their Citibank funds,

21  which were fully liquid.  That's about 2.5 million dollars.  If

22  the debtors had just paid the 80,000-dollar monthly fee, they

23  would have been fully compliant.  They wouldn't have had to

24  change their system at all in order to comply, meaning they

25  would have kept their existing cash management system.  They

escribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    would have just had a slight expense that wasn't even a

2    fraction of the interest they were earning on a monthly basis.

3          And because that case was a prearranged case, so

4    meaning on day one, the plan was in place and the timeline was

5    going to be very short, the total cost of the estate to bring

6    their existing system into full compliance was going to be

7    about 200 grand against millions of interest.  And I think the

8    judge there was probably offended that more than 80,000 dollars

9    had been spent trying to waive compliance when it was right

10   there, readily available.

11         In contrast, we don't have that here.  We don't have

12   the ability to bring existing accounts into compliance for a

13   nominal fee without disturbing the system we've carefully set

14   up.  And so I just think Ditech is a very different situation

15   and not necessarily good guidance.  That's really it, Your

16   Honor.

17         THE COURT:  Okay.

18         MR. PASCUZZI:  I think it's a trade-off of a very

19   minor risk that other courts have accepted as reasonable, given

20   the strength of the financial institutions involved, for near

21   certain interest gain as opposed to taking apart something that

22   was put together over an extended period of time, has a track

23   record of providing benefits that are not going to be

24   insignificant to the estate and that one way or the other

25   aren't going to impact operations, and then running the risk of

The Roman Catholic Archbishop Of San Francisco

1   significant penalties as well.

2        THE COURT:  Okay.  I appreciate your comments, Mr.

3   Katz.

4        All right.  Unless any of you want to add any further,

5   I'm going to take the matter under advisement as I explained

6   and for the reason that I explained.

7        Anything further?

8        MR. BLUMBERG:  Your Honor, this is Jason --

9        THE COURT:  Okay.  Yes.  Mr. Blumberg.

10       MR. BLUMBERG:  I'm sorry to prolong the hearing, but

11   I --

12       THE COURT:  No.  Go ahead.  I asked you for a comment.

13   I asked you.  Go ahead.

14       MR. BLUMBERG:  Just two quick points.  First, on the

15   risk of loss to the estate, I think you directed that question

16   to Mr. Katz, I would like to draw the Court's attention to page

17   12 of the debtor's supplemental reply, where the debtor talks

18   about the ten-million-dollar cost it estimates associated with

19   liquidating the U.S. Bank accounts.

20       The debtor states, this is a quote, "A loss of this

21   magnitude will impede significantly and certainly delay the

22   debtor's efforts to reorganize."  That's 10 million, not 160

23   million.  So I think the debtors have acknowledged that even a

24   loss of ten million will imperil the debtor's reorganization.

25   And that makes this case more like the situation in Ditech

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    where the Court found that the loss of the funds would imperil

2    the organization.  And it makes the case different from the

3    King Mountain Tobacco case that the debtors cited because the

4    Court very explicitly found that a failure of the financial

5    institutions would likely not be fatal.

6         The last point is, and I think Mr. Katz was kind of

7    alluding to this, is that these are not accounts that the

8    debtors use in its everyday operations.  So moving the accounts

9    to safer harbors, particularly with respect to the Bank of

10   America account, is not going to interrupt the operations.

11   What we're talking about with respect to the Bank of America

12   account is the loss potentially of 36,000 dollars of interest a

13   month, and that has to be balanced against the protection

14   offered to the estate if the institution fails.  Thank you,

15   Your Honor.

16        THE COURT:  Okay.

17        MR. LUCAS:  Your Honor --

18        THE COURT:  And I will thank all of you then.

19        Well, I mean, I really don't want to go back over this

20   again.  So the last person who wanted to speak, did you have

21   something brand new to add or just to repeat what you were

22   saying?

23        MR. LUCAS:  Your Honor, this is John Lucas.  I was the

24   one that was speaking up and wanting to say something in

25   response to what Mr. Blumberg just said.  I understand --

The Roman Catholic Archbishop Of San Francisco

1          THE COURT:  Okay.

2          MR. LUCAS:  -- Mr. Blumberg's point about even the

3   loss of ten million dollars is something that could impede the

4   debtor's reorganization.  But the debtor shouldn't be forced to

5   do something over a requirement in the Bankruptcy Code that is

6   remedied by cause could necessarily cause the debtor to lose

7   ten million dollars if it's required to liquidate these funds

8   because I think that's what the debtor's saying here is that

9   with respect to the U.S. Bank investments, there will be a loss

10  of ten million dollars, which can be avoided here, and

11  everything else is speculation.

12          And so to the extent that the debtor is required to do

13  this, it should be done in some way that ameliorates that.  And

14  shouldn't be something that has to be done overnight so that

15  the debtor can address these potential losses in some way that

16  isn't going to cause these losses because I think what the

17  debtor's view here is that there will be a loss of ten million.

18  And as the United States Trustee is trying to, I think, sort of

19  seize on here is that even that would be harmful.  So I don't

20  know why the UST would want something that would cause

21  immediate harm.

22          MR. BLUMBERG:  Your Honor --

23          THE COURT:  Okay.

24          MR. BLUMBERG:  Jason Blumberg.  Can I just respond

25  briefly?  As I understood it --

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1    THE COURT:  Well, no.

2    MR. BLUMBERG:  I'm sorry, Your Honor.

3    THE COURT:  Look, I think I got it.  This isn't the

4    first time I've dealt with this kind of issue.  I just have to

5    get up with the facts.

6    So no, Mr. Blumberg.  I don't want to be rude.  I

7    just, I can't keep up with this back-and-forth if I don't go

8    back and read the documents carefully.  And it might take

9    another little longer than I might have, but I'm going to do

10    it -- I'm going to do it my way.

11    So what I promise you is in relatively quick time,

12    within days, I promise, I will issue a decision.  And I won't

13    be able to take the time, and I don't intend to take the time,

14    to get into some lengthy explanation.  So I will take Mr.

15    Katz's advice and Mr. Blumberg's and I'll take a look at the

16    Ditech case and the other cases that he was referring to.  And

17    I'll reread and -- not reread, read for the first time the

18    declaration that I admitted that I hadn't caught up with.  And

19    I'll issue a decision on it.

20    And so I thank you for your time and more importantly,

21    your careful presentation, and the matter stands submitted.

22    So Mr. Pascuzzi, back to you for the debtor generally.

23    There's no other business to conduct today; am I correct?

24    MR. PASCUZZI:  I don't think so, Your Honor.  We've

25    got November 9th, I think, is our next hearing date with the

eScribers
www.escribers.net | 800-257-0885

The Roman Catholic Archbishop Of San Francisco

1  claims procedures motion.  So we'll see you then again.

2       THE COURT:  Okay.  Okay.  Thank you all for your time.

3  I will conclude the hearing.

4      (Whereupon these proceedings were concluded at 2:15 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers
www.escribers.net | 800-257-0885

I N D E X

RULINGS:                                          PAGE LINE

Debtors' extension motion is granted              6      6

Debtors' final wage motion is granted             7      7

C E R T I F I C A T I O N

I, River Wolfe, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

/s/ RIVER WOLFE, CDLT-265

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date: November 24, 2023

## A

**ability (5)**
20:19;27:14,25;29:8;
30:12
**able (5)**
6:1;8:10;9:17;20:9;
34:13
**Abp (1)**
4:14
**absence (1)**
28:3
**absolutely (1)**
26:22
**acceptable (1)**
6:14
**accepted (1)**
30:19
**accordance (1)**
15:23
**according (1)**
19:4
**account (25)**
9:24;12:8;13:22,23,
24;14:1,3,3,4,6,24,25;
15:12,18;16:16;18:12;
19:7;21:4,5;22:11;
26:24;29:13,14;32:10,
12
**accounts (18)**
5:25;7:25;9:19,22;
13:21,23;14:18,20;
15:2,4,5;16:18;21:7,
14;30:12;31:19;32:7,8
**acknowledged (1)**
31:23
**acquiescence (1)**
25:18
**across-the-board (1)**
28:13
**act (1)**
6:12
**action (1)**
7:2
**actions (1)**
5:20
**active (2)**
5:1;28:22
**actively (1)**
26:2
**activity (1)**
28:13
**actual (1)**
19:14
**actually (4)**
11:21;21:11,12;24:8
**add (2)**
31:4;32:21
**additional (1)**
19:21
**address (2)**
24:10;33:15

**admitted (3)**
19:24;20:22;34:18
**advice (1)**
34:15
**advisement (2)**
23:2;31:5
**adviser (1)**
4:17
**advisers (1)**
12:7
**advisor (2)**
8:17,18
**affiliated (1)**
10:2
**afternoon (5)**
4:7,8,20;5:1,13
**again (8)**
9:1,16;18:9;19:23;
21:22;22:3;32:20;35:1
**against (4)**
10:6;26:12;30:7;
32:13
**ago (1)**
12:19
**agreed (1)**
8:3
**agreement (1)**
8:11
**ahead (9)**
7:9,18;11:12,12;
13:10;23:24;29:9;
31:12,13
**albeit (1)**
20:20
**allow (3)**
8:3,4;16:9
**allowed (1)**
7:8
**alluded (1)**
14:9
**alluding (1)**
32:7
**along (1)**
27:22
**alternative (2)**
9:1;13:16
**always (1)**
12:13
**ameliorates (1)**
33:13
**amend (1)**
24:5
**amending (1)**
26:11
**America (13)**
9:24;10:3;11:23;
13:22,23;14:1,2,14,24;
16:16;22:11;32:10,11
**amount (4)**
10:9;18:11;20:24;
22:2
**amounts (2)**
10:6,10

**analysis (3)**
10:17;20:23,23
**annual (1)**
24:15
**apart (1)**
30:21
**apologize (2)**
11:1,11
**appearance (1)**
25:21
**Appearances (2)**
4:7;5:6
**appearing (2)**
4:21;25:20
**application (1)**
7:25
**appointed (1)**
8:5
**appreciate (2)**
28:11;31:2
**appropriate (1)**
11:2
**approve (1)**
6:13
**approved (1)**
12:2
**approximately (2)**
11:24;13:25
**Archbishop (2)**
4:5,10
**argue (1)**
19:10
**argument (3)**
14:9;16:15,17
**arises (1)**
15:17
**aside (2)**
10:13;18:19
**aspects (1)**
7:6
**asserted (1)**
28:10
**associated (4)**
15:3;21:8,21;31:18
**attached (1)**
17:14
**attention (1)**
31:16
**attributable (1)**
21:13
**audio (1)**
27:25
**August (1)**
16:24
**authorized (4)**
9:19;10:1,2,3
**automatically (2)**
10:15,15
**avail (1)**
15:17
**available (2)**
8:17;30:10
**avoid (1)**

16:1
**avoided (1)**
33:10
**aware (1)**
6:12
**away (1)**
12:11

## B

**Back (11)**
5:15;12:20;14:2,17;
15:10;16:24;24:24;
28:3;32:19;34:8,22
**back-and-forth (1)**
34:7
**background (1)**
7:21
**backstop (1)**
10:6
**balanced (3)**
25:3,5;32:13
**Bank (23)**
9:23,24;10:3,3;
11:23;12:8;13:22,23,
23,24;14:1,2,14,23;
15:1;16:16;20:24;21:4;
22:10;31:19;32:9,11;
33:9
**bankruptcy (14)**
10:16;12:12;13:8;
14:7;19:12,16;20:9;
22:14,16;25:22;27:16,
22;28:20;33:5
**basis (5)**
6:14;15:7,15;21:17;
30:2
**bed (2)**
6:18;7:7
**behalf (1)**
11:2
**behind (1)**
25:4
**beholder (2)**
22:18,19
**believes (1)**
9:13
**benefits (1)**
30:23
**better (2)**
13:5,9
**big (1)**
24:13
**bills (1)**
14:11
**binding (1)**
19:19
**bit (7)**
7:21;8:16;13:5,9,10;
18:9;25:16
**black (1)**
14:13
**BlackRock (2)**

9:25;11:24
**blame (1)**
4:19
**Blumberg (40)**
5:5,12,13,14;8:25;
10:21;11:3;13:13,15,
18,19;16:11,14;17:8,9,
11,11,18;18:4,8;19:1;
20:2,14,15,18;21:2,2;
22:1,8;29:16;31:8,9,10,
14;32:25;33:22,24,24;
34:2,6
**Blumberg's (3)**
23:19;33:2;34:15
**body (1)**
24:9
**Both (3)**
10:2;18:5;24:9
**bottom (1)**
8:19
**BR (1)**
19:15
**brand (1)**
32:21
**brass (1)**
13:20
**break (1)**
9:16
**briefly (2)**
23:19;33:25
**briefs (1)**
24:10
**bring (3)**
29:14;30:5,12
**broke (1)**
21:4
**buckets (1)**
11:22
**budget (1)**
24:15
**building (1)**
24:3
**bunch (2)**
28:7,8
**burden (1)**
22:10
**business (3)**
26:8;27:2;34:23
**butting (1)**
11:1

## C

**calendar (1)**
5:17
**CALIFORNIA (1)**
4:1
**Call (4)**
4:3;7:5,6;26:1
**Calling (1)**
4:4
**can (14)**
4:19;9:14,16,17;

Case: 23-30564    Doc# 341    Filed: 11/24/23    Entered: 11/24/23 08:12:35    Page 38 of
45

13:6;15:14;16:11,17;
20:23;21:23;27:24;
33:10,15,24
**capacity (2)**
18:17;19:22
**card (1)**
28:7
**cared (1)**
28:22
**careful (2)**
25:6;34:21
**carefully (4)**
19:24;22:24;30:13;
34:8
**carrying (1)**
23:10
**case (24)**
9:20;19:12,15,16;
24:9,13;25:19,23;
26:16,18,22;27:1;
28:12,18,22;29:2,2,12;
30:3,3;31:25;32:2,3;
34:16
**cases (9)**
19:13;24:9,12;25:11;
26:10,14;28:18;29:2;
34:16
**cash (5)**
5:18,24;7:14;14:10;
29:25
**catch (2)**
17:21;22:22
**Catholic (2)**
4:4,10
**caught (1)**
34:18
**cause (13)**
9:5,11;16:14;22:10,
13,17,18;24:6,6;33:6,6,
16,20
**caused (1)**
27:13
**certain (3)**
10:14;18:21;30:21
**certainly (1)**
31:21
**change (1)**
29:24
**chime (1)**
8:13
**choices (1)**
23:7
**choose (1)**
29:4
**chose (1)**
27:19
**chunk (1)**
12:7
**cite (1)**
24:12
**cited (3)**
19:13;24:9;32:3
**Citibank (4)**

26:24;27:8;29:13,20
**claimants (3)**
28:1,24;29:9
**claims (1)**
35:1
**clarify (1)**
16:5
**clear (2)**
26:11,21
**CLERK (1)**
4:4
**client (2)**
4:13;23:22
**clients (1)**
25:23
**closing (1)**
23:14
**Code (5)**
9:6;12:12;13:8;14:7;
33:5
**collateral (1)**
10:5
**collateralize (1)**
29:13
**collateralized (3)**
14:6;15:13;18:12
**Coming (1)**
14:17
**comment (5)**
13:13;22:1;23:8,15;
31:12
**comments (3)**
23:19;24:1;31:2
**committee (21)**
4:21,22,24;5:22;
6:10,22;8:5,13,15;11:3,
15,16,18;12:6;13:17;
24:21;25:24;26:2,7;
28:4,10
**committee's (1)**
6:13
**companies (1)**
28:7
**compared (3)**
18:17;19:10;20:19
**comparing (1)**
28:12
**comparison (2)**
10:9;18:23
**compensate (3)**
27:15;28:1;29:9
**complete (1)**
10:15
**completely (1)**
9:8
**complex (2)**
10:17;26:18
**compliance (9)**
9:6,10;10:4;19:20;
24:4;29:15;30:6,9,12
**compliant (1)**
29:23
**complicated (3)**

21:1,24;24:13
**comply (2)**
19:17;29:24
**compromise (1)**
11:20
**concerns (1)**
22:2
**conclude (2)**
7:4;35:3
**concluded (1)**
35:4
**conduct (1)**
34:23
**conferral (1)**
8:9
**conferred (1)**
8:15
**conferring (1)**
8:2
**confess (1)**
18:6
**confessed (1)**
22:21
**Congress (3)**
14:8;15:13;16:5
**Congress's (1)**
16:2
**connected (1)**
8:18
**connection (1)**
14:17
**consequences (1)**
14:4
**consistent (1)**
6:5
**constraints (1)**
21:12
**contemplate (1)**
22:5
**continuance (1)**
8:16
**continuances (1)**
8:3
**continued (1)**
5:17
**contractual (1)**
15:23
**contractually (1)**
21:20
**contrast (1)**
30:11
**controversial (1)**
24:11
**controversy (1)**
24:8
**Cordileone (1)**
4:14
**corners (1)**
11:19
**corporation (1)**
4:11
**cost (11)**
14:19,21;15:24;19:8,

8,17;20:6,6;29:15;
30:5;31:18
**costs (9)**
14:18;15:3,9,21;
16:1;19:21;21:4,8;22:3
**counsel (7)**
4:16,24;6:14;11:4;
12:6;23:8;25:22
**counsel's (1)**
4:6
**couple (3)**
4:13;17:23;26:3
**Court (61)**
4:3,7,18,25;5:7,12,
15;6:4,16,25;7:12,15;
8:20,21,24;9:14,16;
10:7,19,25;11:6,9,12;
12:15,23;13:12;16:5,
13,20;17:10,16,20;
18:5;19:16,19,23;
20:17,21;21:22;22:12;
23:21;24:1;27:9,12,18;
28:6,17;29:19;30:17;
31:2,9,12;32:1,4,16,18;
33:1,23;34:1,3;35:2
**courtroom (1)**
4:6
**courts (3)**
16:6,8;30:19
**Court's (1)**
31:16
**covers (1)**
8:12
**credit (2)**
28:7,8
**creditors (5)**
27:15,19;28:8,10,21
**critical (1)**
24:23
**cues (1)**
8:23
**custodial/brokerage (1)**
9:22
**cut (1)**
11:19

**D**

**daily (2)**
26:24;27:5
**date (1)**
34:25
**day (4)**
5:17;6:18;13:2;30:4
**days (3)**
17:23;25:21;34:12
**deadline (1)**
6:2
**deal (1)**
28:24
**dealt (2)**
22:6;34:4
**debtor (47)**

8,17;20:6,6;29:15;
30:5;31:18
**costs (9)**
14:18;15:3,9,21;
16:1;19:21;21:4,8;22:3
**counsel (7)**
4:16,24;6:14;11:4;
12:6;23:8;25:22
**counsel's (1)**
4:6
**couple (3)**
4:13;17:23;26:3
**Court (61)**
4:3,7,18,25;5:7,12,
15;6:4,16,25;7:12,15;
8:20,21,24;9:14,16;
10:7,19,25;11:6,9,12;
12:15,23;13:12;16:5,
13,20;17:10,16,20;
18:5;19:16,19,23;
20:17,21;21:22;22:12;
23:21;24:1;27:9,12,18;
28:6,17;29:19;30:17;
31:2,9,12;32:1,4,16,18;
33:1,23;34:1,3;35:2
**courtroom (1)**
4:6
**courts (3)**
16:6,8;30:19
**Court's (1)**
31:16
**covers (1)**
8:12
**credit (2)**
28:7,8
**creditors (5)**
27:15,19;28:8,10,21
**critical (1)**
24:23
**cues (1)**
8:23
**custodial/brokerage (1)**
9:22
**cut (1)**
11:19

4:10;5:11;7:21;9:12;
11:19,20;12:10;13:16;
14:10,11,18,19;15:17,
22;16:1,19;17:13;
18:10;19:4,7,11,16;
20:3,8;21:4,9;22:9,25;
23:17;24:12,15;25:2;
26:7;27:4,6,15,21,25;
29:7,9;31:17,20;33:4,6,
12,15;34:22
**debtor-in-possession (6)**
14:5;25:15;12,18;
19:7;21:5
**debtors (7)**
13:3;16:7;29:19,22;
31:23;32:3,8
**debtor's (16)**
7:5;11:4;12:6;14:21,
22;15:20;16:15,24;
26:23;27:14;31:17,22,
24;33:4,8,17
**decision (11)**
7:18;16:3;22:19;
23:2,5;25:14;26:9;
29:6,18;34:12,19
**decisions (1)**
29:8
**declaration (8)**
16:23;17:1,2,4,14,
19;24:20;34:18
**declarations (1)**
17:7
**delay (1)**
31:21
**demonstrate (1)**
22:10
**denying (1)**
28:10
**depositories (4)**
9:19;10:1,2,3
**depository (2)**
9:10;12:2
**details (1)**
20:10
**different (5)**
9:18;26:18,19;30:14;
32:2
**difficult (2)**
21:19;22:9
**diminution (1)**
27:14
**DIP (1)**
18:12
**direct (1)**
14:12
**directed (1)**
31:15
**discretion (3)**
16:7,7,8
**discuss (2)**
8:4;24:24
**discussed (2)**
12:6;13:6

Case: 23-30564    Doc# 341    Filed: 11/24/23    Entered: 11/24/23 08:12:35    Page 39 of
45

**discussion (1)**
13:14
**dispute (1)**
24:13
**disputed (1)**
24:15
**disputes (2)**
24:14,18
**dissertation (1)**
23:4
**District (2)**
19:15;26:17
**disturbing (1)**
30:13
**Ditech (12)**
19:15;24:10,25;
26:16,20,22;27:7,8;
29:12;30:14;31:25;
34:16
**diversified (1)**
21:11
**divest (1)**
12:1
**doc (1)**
12:16
**docket (5)**
5:1;6:5;17:13,24;
19:2
**document (11)**
16:23,25;17:1,4,24;
18:1,7;19:4,24;20:21;
22:25
**documents (3)**
17:6,7;34:8
**dollars (21)**
9:7;11:25;12:3;
14:20;19:9,11,18;20:4,
4;21:9,21;24:14;26:23;
28:21;29:16,21;30:8;
32:12;33:3,7,10
**done (3)**
27:23;33:13,14
**down (5)**
9:11,16;13:19;20:14;
23:5
**draw (1)**
31:16
**driven (1)**
27:15
**drove (2)**
27:21;28:23
**drug (1)**
29:2

**E**

**early (1)**
25:2
**earn (1)**
19:6
**earning (5)**
18:17;19:5,21;29:20;
30:2

**ears (1)**
25:23
**economic (2)**
25:15,25
**effort (1)**
8:8
**efforts (1)**
31:22
**either (5)**
8:5;10:7,13;23:11;
25:17
**elaborate (1)**
7:16
**else (4)**
8:12;18:23;23:14;
33:11
**enables (1)**
16:1
**ends (2)**
18:13;29:6
**enforced (1)**
12:13
**entire (1)**
22:15
**entities (1)**
10:12
**envisioned (2)**
14:8;15:13
**especially (1)**
19:11
**essentially (2)**
10:1;13:21
**estate (14)**
12:2;13:7;14:7;15:7,
19,23;16:3;20:19;
21:18;22:6;30:5,24;
31:15;32:14
**estimates (2)**
19:8;31:18
**ETF (1)**
10:1
**even (11)**
10:11,13;19:17,20,
21;25:3,25;30:1;31:23;
33:2,19
**event (1)**
28:2
**everybody (1)**
16:21
**everyday (1)**
32:8
**everyone (2)**
4:20;7:22
**example (2)**
10:16;12:25
**exceedingly (1)**
21:19
**exceptions (2)**
26:14,15
**exchange (1)**
8:4
**excuse (2)**
12:16;17:24

**exercising (1)**
26:8
**existing (4)**
9:19;29:25;30:6,12
**exists (2)**
9:5;14:15
**exit (1)**
20:9
**expectation (1)**
20:8
**expeditiously (1)**
19:12
**expense (1)**
30:1
**experience (2)**
12:11;22:14
**explained (3)**
7:8;31:5,6
**explanation (1)**
34:14
**explicitly (1)**
32:4
**express (1)**
7:1
**expressed (1)**
7:17
**extend (1)**
5:19
**extended (3)**
8:9;28:8;30:22
**extension (2)**
6:2,7
**extent (2)**
28:18;33:12
**extent- (1)**
28:17
**eyes (1)**
25:23

**F**

**fact (2)**
5:23;26:5
**factor (1)**
20:8
**factors (5)**
24:11,11,22;25:8,13
**facts (2)**
12:14;34:5
**factual (1)**
13:3
**failed (2)**
10:8,13
**fails (1)**
32:14
**failure (4)**
10:12;20:20;27:13;
32:4
**fair (2)**
22:7,8
**fairly (1)**
19:10
**fatal (1)**

32:5
**favorable (1)**
24:12
**Federal (1)**
9:25
**fee (2)**
29:22;30:13
**feel (1)**
23:10
**feeling (1)**
17:21
**Felderstein (1)**
4:9
**few (5)**
11:2;23:19;24:22;
25:8;27:23
**fifty-four (2)**
11:24;12:24
**fifty-seven (4)**
18:20;19:11;20:3,6
**file (1)**
11:16
**filed (11)**
5:19,22;11:18;13:2;
16:23;17:13,16,22;
18:1;25:24;28:19
**filing (2)**
17:15;22:22
**final (2)**
6:14,19
**finally (1)**
15:19
**financial (16)**
4:17;8:17,18;12:7;
16:4;20:20;24:16;
25:17;27:13,20;28:4,
14,21;29:8;30:20;32:4
**fine (1)**
6:19
**fire (1)**
28:18
**fires (2)**
28:20;29:2
**firm (1)**
23:22
**first (7)**
5:17;6:18;11:3;
22:15;31:14;34:4,17
**Fitzgerald (1)**
4:9
**flip (1)**
21:23
**flow (1)**
11:10
**focus (1)**
22:25
**focused (2)**
22:2;25:16
**focusing (1)**
18:2
**following (1)**
8:8
**forced (1)**

33:4
**form (1)**
8:11
**formal (2)**
6:11;11:16
**formalistic (1)**
13:8
**forty-five (1)**
25:21
**found (3)**
17:4;32:1,4
**Four (4)**
15:6,7;21:15,18
**fourteen (1)**
21:11
**Fr (1)**
4:14
**fraction (1)**
30:2
**FRANCISCO (3)**
4:1,5,10
**Friday (4)**
17:13,17,22;18:2
**full (3)**
23:22;29:15;30:6
**fully (2)**
29:21,23
**Fund (2)**
9:25;14:10,13
**funds (28)**
13:25;14:7,12;15:6,
8,11,12,14,20,23;16:3;
18:17;19:5,7;21:11,15,
16,18;24:23;25:2;
26:22;27:2,3,5,14;
29:20;32:1;33:7
**further (3)**
23:8;31:4,7

**G**

**gain (1)**
30:21
**Gaspari (1)**
4:15
**gave (1)**
26:24
**generally (2)**
27:4;34:22
**gets (2)**
12:20;26:19
**given (2)**
7:3;30:19
**gives (1)**
14:1
**gleaned (1)**
6:5
**Good (5)**
4:7,8,20;5:13;30:15
**good-faith (1)**
8:8
**grand (1)**
30:7

Case: 23-30564    Doc# 341    Filed: 11/24/23    Entered: 11/24/23 08:12:35    Page 40 of
45

**grant (1)**
6:8
**granted (1)**
7:8
**guess (4)**
5:7;7:3;20:11;26:10
**guidance (2)**
8:20;30:15
**guidelines (3)**
9:11;10:5;29:15

**H**

**Hampton (1)**
5:11
**handle (1)**
7:13
**happened (1)**
8:1
**happening (1)**
20:11
**happens (2)**
18:24;29:1
**happy (2)**
8:21;11:7
**harbors (1)**
32:9
**harm (3)**
25:1,1;33:21
**harmed (1)**
13:7
**harmful (1)**
33:19
**hear (1)**
9:2
**heard (2)**
7:5;13:13
**Hearing (6)**
7:7;22:23;25:20;
31:10;34:25;35:3
**held (3)**
10:4,6,10
**Help (3)**
7:21;12:18;13:15
**here's (1)**
23:12
**high (1)**
10:18
**higher (1)**
22:4
**highly (3)**
10:13;24:16;25:9
**history (1)**
26:13
**hit (1)**
29:7
**holds (1)**
14:13
**Holt (2)**
25:16;26:9
**Holt's (1)**
25:14
**Honor (63)**

4:6,8,12,23;5:3,10,
13,16;6:15,20;7:11,14,
20,24;8:1,7,19,23;9:4,
15,21;10:10,24;11:14,
16,22;12:4,5,14,22;
13:1,6,11,18;16:11;
17:9,11,18;18:4;19:1;
20:15;21:2,21;22:8;
23:16;24:2,3;25:8,20;
26:20;27:1,17;28:2,16;
29:11;30:16;31:8;
32:15,17,23;33:22;
34:2,24
**huge (2)**
12:7,7
**hundred (1)**
20:24
**hundreds (3)**
28:21;29:3,3

**I**

**ignore (1)**
23:13
**ignored (1)**
20:7
**illiquid (1)**
9:8
**immediate (1)**
33:21
**immediately (1)**
22:7
**impact (5)**
18:14,16;26:5;27:14;
30:25
**impactful (1)**
29:19
**impacts (1)**
29:8
**impede (4)**
14:20,22;31:21;33:3
**imperil (1)**
31:24;32:1
**important (2)**
12:1;26:19
**importantly (1)**
34:20
**impression (1)**
7:16
**include (1)**
24:5
**incur (1)**
15:24
**incurring (1)**
15:8
**indicated (3)**
14:19,19;21:9
**indiscernible (3)**
17:10;20:25;28:25
**info (1)**
8:17
**information (5)**
6:21,23;8:4;13:3;

16:21
**informed (1)**
18:6
**in-hand (1)**
16:22
**insignificant (3)**
19:9;20:18;30:24
**institution (3)**
16:4;20:20;32:14
**institutional (2)**
14:15,16
**institutions (6)**
10:8;24:16;27:20;
28:14;30:20;32:5
**insured (1)**
10:8
**intend (1)**
34:13
**intends (1)**
19:11
**intention (1)**
23:9
**interest (9)**
12:3;14:12,12,14;
29:20;30:2,7,21;32:12
**interests (1)**
14:10
**interfere (1)**
26:10
**interference (1)**
27:25
**internet (2)**
4:20;20:13
**interrupt (1)**
32:10
**into (14)**
9:16;10:16;12:1;
13:14;15:12,18;20:10;
23:3;27:15,21;29:14;
30:6,12;34:14
**invested (5)**
9:25;11:23;19:5;
26:21;28:8
**investment (13)**
5:25;7:25;12:9;
13:23,25;15:1;16:18;
18:22;19:10;24:21;
25:6;26:7;27:3
**investments (6)**
9:8;10:14;11:22;
12:8;26:4;33:9
**invests (1)**
14:10
**involved (2)**
24:16;30:20
**involving (1)**
29:2
**issue (16)**
7:23;8:12,21,25;9:4,
12;10:23;15:2;23:1,4,
17;24:14,23;34:4,12,19
**issues (4)**
15:3,21;21:6;28:23

**item (1)**
7:2

**J**

**Jason (6)**
5:13;13:18;17:11;
21:2;31:8;33:24
**John (5)**
4:23;6:20;10:24;
11:14;32:23
**Jones (1)**
4:24
**judge (5)**
22:19;25:14,15;26:9;
30:8
**judgment (1)**
26:8
**jump (1)**
8:22
**justice (1)**
23:11

**K**

**Katz (34)**
5:3,8,9,10,10;7:13,
16,20,20;9:4,15,21;
10:10,22;13:4,7,9,11;
20:25;23:16,16,21,25;
24:2;27:11,12,17;28:2,
7,16;29:11;31:3,16;
32:6
**Katz' (1)**
13:1
**Katz's (1)**
34:15
**keep (2)**
16:20;34:7
**kept (1)**
29:25
**killed (1)**
26:22
**kind (8)**
11:20;13:20;20:22,
23;21:6,19;32:6;34:4
**King (2)**
25:14;32:3
**knew (1)**
9:1

**L**

**large (3)**
24:15;26:13,18
**larger (1)**
26:9
**last (6)**
6:18;17:17;25:21;
27:23;32:6,20
**later (3)**
12:17,17;20:9
**latest (1)**

22:22
**law (2)**
16:9;24:9
**lays (1)**
15:3
**learned (1)**
23:3
**least (2)**
17:2;29:3
**leave (3)**
6:11;7:1;18:19
**leaving (1)**
25:4
**left (2)**
5:1,2
**legislative (1)**
26:13
**lenders (1)**
27:19
**lengthy (1)**
34:14
**level (2)**
10:12;14:15
**levels (1)**
14:16
**liable (1)**
12:21
**lifeblood (1)**
27:4
**likely (6)**
10:11;25:9,12;26:14,
14;32:5
**limitation (1)**
10:8
**line (1)**
8:19
**liquid (5)**
14:3;15:6,11;25:4;
29:21
**liquidate (6)**
14:20;15:22;21:7,20;
25:4;33:7
**liquidated (7)**
14:5,24;15:7,8,11,
15;21:16
**liquidating (3)**
14:4,18;31:19
**liquidation (4)**
9:7;9:21:14;25:2
**liquidity (6)**
15:3,21;21:6,12;
26:24;27:5
**Listen (3)**
10:19;20:1;29:10
**litigation (1)**
4:16
**little (8)**
7:21;13:5,9,10;18:6,
9;20:25;34:9
**lives (1)**
22:15
**locked (2)**
9:9;25:2

Case: 23-30564    Doc# 341    Filed: 11/24/23    Entered: 11/24/23 08:12:35    Page 41 of
45

longer (1)
34:9
look (7)
9:17;11:21;12:19;
22:20;28:18;34:3,15
looked (1)
17:23
looking (5)
12:14,15;16:21;
20:12;26:20
lose (1)
33:6
losing (1)
12:2
loss (15)
10:15;14:22;16:4;
26:5,21;27:24;28:3;
31:15,20,24;32:1,12;
33:3,9,17
losses (2)
33:15,16
lost (1)
10:16
lot (4)
24:8,14;25:19;28:13
Lucas (25)
4:21,23,23;5:21;
6:15,16,20,20;10:24,
24;11:1,7,10,12,14,15;
12:22,23;13:1,13;14:9;
32:17,23,23;33:2
Lucas's (1)
7:3

**M**

magically (1)
18:15
magnitude (1)
31:21
makes (2)
31:25;32:2
making (1)
22:19
management (5)
5:18,24;7:14;26:6;
29:25
manager (1)
24:19
mandated (1)
16:6
mandatory (2)
24:4;26:12
manditate (1)
16:6
market (2)
14:13,13
mass (2)
29:1,2
matter (4)
4:4;23:1;31:5;34:21
may (2)
8:13;17:24

Maybe (2)
22:14;28:9
mean (10)
6:17,25;9:1,17;
10:22;24:7;28:3,6,17;
32:19
meaning (2)
29:24;30:4
meaningful (1)
26:3
means (1)
21:24
mechanism (1)
6:23
meeting (3)
8:1,9;22:9
mentioned (5)
24:3,20;25:13,14;
29:18
Merchandise (1)
25:13
mess (1)
11:10
met (2)
8:15;24:7
might (5)
4:12;20:9;22:19;
34:8,9
million (24)
9:7;11:24;12:25;
13:24,25;14:20,23;
18:20;19:11;20:4,6,24;
21:9,13,20;26:23;
29:21;31:22,23,24;
33:3,7,10,17
millions (2)
28:21;30:7
mind (1)
22:18
minimal (1)
10:9
minor (1)
30:19
minute (1)
27:12
misplacing (1)
17:2
missed (3)
16:22;17:24;18:7
modest (2)
19:10;20:19
moment (1)
24:10
money (8)
12:8,11;14:13;18:13,
15;24:19;27:25;28:3
month (8)
12:3;19:9,18;20:4,7;
29:16,20;32:13
monthly (2)
29:22;30:2
more (21)
11:2,4;12:18;18:2,6,

9,14,19;19:23,24;20:5,
25;21:24;22:2,7,9;
23:1;26:14;30:8;31:25;
34:20
most (2)
24:11;25:12
motion (20)
5:18,18,19,19,21,24;
6:2,7,9,14,18;7:6,14,
23;8:11;9:18;11:17;
23:5;25:15;35:1
motions (1)
5:17
Mountain (2)
25:14;32:3
move (8)
15:12,18;18:15,24;
19:6,12;20:6;21:5
moved (3)
14:5,24;18:16
moves (1)
20:3
moving (1)
32:8
much (5)
17:22;20:5;21:24;
22:4;23:1
Mullin (3)
5:4,11;23:17
mutual (1)
14:13

**N**

name (1)
23:22
narrow (2)
7:23;8:20
narrowed-down (1)
9:3
narrow-in (1)
8:24
nature (2)
10:14;26:4
near (2)
27:6;30:20
necessarily (2)
30:15;33:6
necessary (1)
28:24
need (2)
4:14;19:24
needed (1)
5:5
negative (1)
20:4
negotiation (1)
22:4
neighborhood (1)
4:20
net (1)
9:9
New (3)

9,14,19;19:23,24;20:5,
25;21:24;22:2,7,9;
23:1;26:14;30:8;31:25;
34:20
next (1)
34:25
ninety-five (1)
26:23
ninety-five-million-dollar (1)
29:14
Nobody (1)
24:14
nominal (1)
30:13
none (4)
7:7;27:18,18,20
nonstarter (1)
28:14
note (1)
19:13
noted (1)
5:8
notices (1)
25:21
November (1)
34:25
nowhere (1)
27:6
number (5)
17:13;19:2;21:8;
26:21;27:8
numbered (1)
17:3

**O**

objection (9)
5:23,23,25;6:11;
11:17;19:14,14;23:6,6
observation (1)
6:10
Obviously (2)
20:7;25:2
OCTOBER (1)
4:1
off (2)
19:1;22:13
offended (1)
30:8
offered (3)
26:3;29:13;32:14
One (16)
5:17;8:15;9:22;12:4;
14:1;19:13,23;22:17;
25:11,12,24;26:21;
29:7;30:4,24;32:24
ones (1)
27:22
only (4)
7:23;10:8;15:23;
25:4
oOo- (1)
4:2
open (1)
8:20
operating (2)

19:15;26:17;32:21
next (1)
34:25
ninety-five (1)
26:23
ninety-five-million-dollar (1)
29:14
Nobody (1)
24:14
nominal (1)
30:13
none (4)
7:7;27:18,18,20
nonstarter (1)
28:14
note (1)
19:13
noted (1)
5:8
notices (1)
25:21
November (1)
34:25
nowhere (1)
27:6
number (5)
17:13;19:2;21:8;
26:21;27:8
numbered (1)
17:3

24:15;27:2
operations (8)
24:24;26:6,23,25;
27:6;30:25;32:8,10
operative (1)
17:7
opportunity (4)
15:16,17;21:4;23:18
opposed (1)
11:5;25:15;30:21
opposing (1)
26:2
opposition (4)
5:22;6:3,8;28:4
order (10)
4:3;6:6,7;7:9;8:11;
10:22;18:10;23:4;
29:14,24
ordered (1)
19:16
organization (1)
25:11;32:2
Ori (3)
5:10;7:20;23:16
original (2)
16:23;19:14
otherwise (3)
9:7;12:3;24:5
out (14)
13:10;15:3;17:22;
19:12,15;21:4,11;
23:10;25:25;26:16,20;
28:9;29:12,17
outcome (1)
25:12
over (11)
8:9;13:4;14:5,25;
15:12,18;24:8;25:21;
30:22;32:19;33:5
overnight (1)
33:14
owe (1)
18:5

**P**

Pachulski (2)
4:23;11:15
page (2)
11:4;31:16
pages (1)
19:2
paid (1)
29:22
papers (1)
9:23
parameters (1)
15:23
pardon (1)
9:17
part (5)
8:3,4,10;23:7;25:6
particularly (2)

18:11;32:9
**parties (3)**
    8:3;23:13;25:20
**PASCUZZI (14)**
    4:8,9,9,25;5:3,15,16;
    7:3,7,11,13;30:18;
    34:22,24
**Passarello (8)**
    4:15;12:18;17:1,3,6,
    14;20:13;22:24
**Passarello's (2)**
    16:23;17:18
**past (1)**
    12:14
**pastoral (1)**
    24:20
**Paul (1)**
    4:8
**penalties (3)**
    12:11,25;31:1
**penalty (1)**
    21:17
**people (1)**
    22:14
**per (1)**
    29:20
**percent (3)**
    19:5,6;29:20
**performance (1)**
    26:5
**perhaps (2)**
    13:4;14:15
**period (2)**
    8:9;30:22
**person (1)**
    32:20
**personal (1)**
    7:1
**persuade (1)**
    27:24
**persuasive (1)**
    29:4
**PG&E (2)**
    28:18,19
**phone (1)**
    26:1
**pick (1)**
    22:12
**picked (1)**
    25:25
**picture (1)**
    26:7
**pinpoint (1)**
    8:24
**place (3)**
    24:19,21;30:4
**placing (1)**
    9:9
**plan (1)**
    30:4
**planning (1)**
    25:6
**pleading (1)**

13:2
**please (3)**
    4:7;24:1,1
**PM (2)**
    4:1;35:4
**pocket (1)**
    17:23
**point (13)**
    6:13;12:1,4,5,20;
    15:20;21:22;26:11,20;
    28:15;29:12;32:6;33:2
**pointed (1)**
    29:17
**points (2)**
    23:20;31:14
**pool (2)**
    25:3,5
**pooled (6)**
    9:23;13:22,25;15:1;
    16:18;21:11
**poor (1)**
    20:12
**Poor's (1)**
    24:17
**position (6)**
    6:10;8:5;15:10,16;
    22:4;28:10
**potential (1)**
    33:15
**potentially (1)**
    32:12
**practical (2)**
    10:21;13:16
**prearranged (1)**
    30:3
**precedent (3)**
    19:18,19,19
**precisely (1)**
    18:14
**prepared (1)**
    6:13
**present (2)**
    21:7;23:9
**presentation (1)**
    34:21
**presently (1)**
    9:2
**preserve (1)**
    11:21
**pretend (1)**
    21:23
**pretty (2)**
    17:22;25:6
**primary (1)**
    24:9
**prior (1)**
    9:17
**priority (1)**
    22:5
**private (4)**
    15:6,14;21:15,15
**probably (4)**
    9:1;13:6;23:4;30:8

**procedures (1)**
    35:1
**proceed (2)**
    8:21;11:7
**proceedings (1)**
    35:4
**proceeds (2)**
    9:9;15:18
**producing (1)**
    18:21
**professional (2)**
    24:19;26:6
**prolong (1)**
    31:10
**promise (2)**
    34:11,12
**proper (1)**
    6:22
**propose (2)**
    13:16;15:25
**proposed (1)**
    8:11
**proposing (1)**
    16:18
**pros (1)**
    22:16
**protect (3)**
    14:7;20:19;26:12
**protected (3)**
    15:13;16:4;20:5
**protection (1)**
    32:13
**provide (2)**
    9:5;13:3
**provided (1)**
    8:16
**providing (1)**
    30:23
**provision (1)**
    9:6
**prudent (1)**
    25:6
**prudently (1)**
    26:8
**put (5)**
    6:18;7:7;12:1;13:3;
    30:22

**Q**

**quarterly (4)**
    15:7,15,16;21:17
**quick (4)**
    19:25;23:14;31:14;
    34:11
**quickly (2)**
    19:12;23:2
**quite (4)**
    8:16;10:17;12:19;
    25:16
**quote (1)**
    31:20

**R**

**raise (1)**
    23:19
**rated (2)**
    10:12;24:17
**rather (4)**
    6:25;17:7;19:14;
    20:9
**reach (2)**
    8:10;25:25
**read (3)**
    9:2;34:8,17
**readily (1)**
    30:10
**real (5)**
    15:7,19,22;21:18;
    25:1
**really (10)**
    8:8,22;15:8;24:6;
    26:17,19;28:14,22;
    30:15;32:19
**reason (3)**
    6:17;29:6;31:6
**reasonable (2)**
    16:1;30:19
**reasons (1)**
    8:16
**receive (1)**
    12:4
**recently (1)**
    11:18
**recognize (1)**
    23:23
**record (5)**
    4:12;7:8;25:10;26:4;
    30:23
**reduced (1)**
    19:21
**refer (1)**
    9:23
**referred (1)**
    12:24
**referring (3)**
    12:24;22:16;34:16
**Relative (1)**
    10:10
**relatively (1)**
    34:11
**relevant (1)**
    24:22
**religious (2)**
    25:10;27:22
**relying (1)**
    27:5
**remains (1)**
    7:24
**remedied (1)**
    33:6
**removal (1)**
    6:2
**remove (1)**

5:20
**reorganization (6)**
    14:21,22;25:9,12;
    31:24;33:4
**reorganize (1)**
    31:22
**repeat (2)**
    19:23;32:21
**reply (12)**
    11:17,22;12:15,16;
    14:17;15:3,5;16:24;
    17:12;19:2;21:10;
    31:17
**representatives (1)**
    4:13
**request (1)**
    15:22
**requested (1)**
    6:8
**require (2)**
    9:7;10:5
**required (5)**
    14:6;15:22;21:7;
    33:7,12
**requirement (6)**
    12:12,13;13:8;16:10,
    12;33:5
**requiring (1)**
    19:20
**reread (2)**
    34:17,17
**resembles (1)**
    28:18
**resolution (1)**
    8:10
**resolve (2)**
    6:1;8:20
**resolved (1)**
    9:3
**respect (12)**
    14:11;15:1,14,19;
    16:2,16,17;21:3;22:10;
    32:9,11;33:9
**respects (1)**
    16:19
**respond (2)**
    23:19;33:24
**response (4)**
    5:22;6:21;11:17;
    32:25
**responses (1)**
    6:3
**responsibility (1)**
    23:11
**restricted (1)**
    25:5
**restrictions (1)**
    12:9
**result (2)**
    19:8,21
**return (3)**
    18:21,23,24
**reverse (1)**

6:6
**review (1)**
22:23
**reviewed (2)**
6:6;18:7
**Richter (1)**
5:11
**right (17)**
4:18;7:15;10:7,7,9;
11:6;13:19;16:6,8,10;
17:6,7;20:14;23:12,25;
30:9;31:4
**Riley (2)**
4:16;8:18
**Rios (1)**
4:9
**risk (13)**
10:17;14:15,16;16:4;
18:19;20:20;22:6;
26:13;28:9;29:4;30:19,
25;31:15
**role (1)**
28:22
**Roman (2)**
4:4,10
**roundtable (1)**
13:14
**rude (1)**
34:6
**ruling (1)**
23:12
**running (1)**
30:25

## S

**safeguards (1)**
24:19
**safely (1)**
20:5
**safer (1)**
32:9
**same (7)**
6:9;11:4;14:23;16:2;
20:21,22,23
**SAN (3)**
4:1,5,10
**saying (4)**
7:8;20:1;32:22;33:8
**screen (3)**
4:14;5:4;20:12
**second (3)**
16:25;26:10;28:20
**Section (5)**
7:25;14:6;16:3;
19:17,20
**Securities (5)**
9:24;13:22;14:14,24;
16:16
**seem (1)**
22:4
**seems (1)**
6:7

**seize (1)**
33:19
**sense (1)**
16:6
**series (3)**
8:2,8;21:24
**Service (1)**
25:13
**set (3)**
13:5,9;30:13
**setting (1)**
10:13
**severe (1)**
12:11
**Sheppard (3)**
5:4,10;23:16
**short (1)**
30:5
**shown (1)**
9:11
**shut (1)**
29:10
**side (2)**
16:15;23:11
**sides (1)**
18:5
**sighs (1)**
11:18
**significant (4)**
15:21;25:13;27:13;
31:1
**significantly (1)**
31:21
**silence (1)**
25:16
**simple (2)**
20:3,3
**simply (1)**
22:21
**sitting (2)**
18:20,21
**situation (2)**
30:14;31:25
**six (4)**
15:5,11;21:11,14
**slight (1)**
30:1
**small (1)**
20:20
**sole (1)**
4:11
**solution (2)**
10:21;16:1
**solve (1)**
21:23
**someone (1)**
4:22
**sometimes (2)**
22:12,18
**somewhere (1)**
18:23
**sooner (1)**
20:9

**sophisticated (4)**
25:17,19,22,23
**sorry (7)**
4:18;5:7;9:15;13:9;
21:21;31:10;34:2
**sort (10)**
5:1;6:9;10:5;11:18;
13:2,5,9;20:2;27:13;
33:18
**sounds (2)**
21:19;22:1
**sour (1)**
29:8
**Southern (2)**
19:15;26:17
**speak (4)**
8:14;23:23;25:9;
32:20
**speaking (2)**
28:9;32:24
**speaks (1)**
26:13
**special (1)**
4:15
**specific (1)**
8:10
**specifically (3)**
18:20;23:1;26:13
**specifics (2)**
12:18;18:2
**speculation (2)**
20:10;33:11
**speed (1)**
7:22
**spent (1)**
30:9
**split (1)**
28:17
**spread (1)**
19:8
**stakeholder (2)**
25:15,25
**stakeholders (2)**
25:17;28:4
**Standard (1)**
24:17
**stands (1)**
34:21
**Stang (2)**
4:24;11:15
**start (5)**
7:21;24:2;25:3;26:7;
28:12
**state (2)**
14:7;18:19
**stated (2)**
6:10;10:23
**statement (5)**
6:16;7:3;11:13;18:3;
22:7
**States (12)**
5:14;8:7;11:5,25;
13:19;15:15;17:12;

19:4,6;21:3;31:20;
33:18
**step (2)**
13:2;14:2
**still (2)**
7:18;12:20
**stool (1)**
13:2
**stop (1)**
27:9,9
**stopped (1)**
23:12
**strength (1)**
30:20
**strict (4)**
9:6,10;10:4;24:4
**strong (1)**
16:15
**stronger (1)**
16:17
**studied (2)**
19:25;20:22
**study (2)**
19:24,25
**stuff (1)**
11:23
**subject (4)**
7:4,15;12:9;23:15
**submissions (1)**
23:13
**submitted (1)**
34:21
**subsequently (1)**
5:19
**substantial (4)**
15:9;27:24;28:2;
29:7
**suggesting (1)**
18:11
**suggestion (1)**
18:22
**Summerhays (1)**
4:15
**supervised (1)**
26:6
**supplemental (12)**
12:17;14:17;15:2,5;
16:25;17:4,12;19:2;
21:10;22:25;24:20;
31:17
**support (3)**
12:14;25:18;26:3
**sure (7)**
4:25;10:11,11,17;
12:20;16:22;19:19
**surely (1)**
14:23
**sustained (1)**
23:6
**swept (1)**
10:16
**switch (1)**
21:23

**system (4)**
29:24,25;30:6,13

## T

**table (3)**
13:5,9;25:10
**tacks (1)**
13:20
**talking (6)**
22:17;24:23;26:9;
27:3;29:1;32:11
**talks (1)**
31:17
**tax (1)**
14:3
**tee (1)**
23:17
**telling (2)**
20:2;29:1
**ten (9)**
14:20;21:9,13,20;
31:24;33:3,7,10,17
**ten-million-dollar (2)**
14:21;31:18
**terms (9)**
18:13,13,16;20:3;
22:5,13,17;25:1;29:5
**therefore (1)**
18:8
**though (2)**
11:8;19:17
**thought (3)**
5:7;7:16;18:7
**thousands (1)**
29:3
**threat (1)**
27:6
**three (3)**
17:6,7;24:9
**three-sentence (1)**
23:4
**THURSDAY (1)**
4:1
**timeline (1)**
30:4
**title (1)**
23:22
**Tobacco (1)**
32:3
**today (3)**
18:16;20:13;34:23
**together (1)**
30:22
**took (1)**
28:22
**tort (2)**
28:24;29:1
**total (1)**
30:5
**track (3)**
25:10;26:4;30:22
**trade (1)**

eScribers, LLC

Case: 23-30564     Doc# 341     Filed: 11/24/23     Entered: 11/24/23 08:12:35     Page 44 of
45

28:8
**trade-off (1)**
30:18
**tragedy (1)**
29:2
**transaction (1)**
21:24
**transactions (1)**
21:25
**translate (1)**
18:13
**Treasuries (1)**
11:25
**treasury (1)**
14:11
**trickier (1)**
15:2
**Trustee (17)**
5:5,14,24;7:17;8:2,8;
9:10;10:4;11:5;13:19;
17:12;21:3;22:5;23:6,
6;29:15;33:18
**Trustee's (1)**
15:15
**try (1)**
23:2
**trying (7)**
11:19,21;16:19,20;
19:25;30:9;33:18
**turn (4)**
13:4,14;23:3;26:16
**turned (1)**
29:8
**two (10)**
5:17;9:18;10:7;
11:22;13:21;14:16;
24:9;26:19;27:8;31:14
**typical (2)**
27:2,2

**U**

**Ultimately (2)**
8:7;28:23
**unacted (1)**
6:11
**unbalanced (1)**
25:7
**under (5)**
7:23;9:5;12:12;23:1;
31:5
**understood (5)**
15:4;21:10,16,20;
33:25
**United (9)**
5:14;8:7;11:5,25;
13:19;15:15;17:12;
21:3;33:18
**Unless (1)**
31:4
**unresolved (1)**
7:24
**up (18)**

7:18,22;9:9;11:10;
16:20;17:21;18:13;
22:22;23:17,23;25:25;
29:6,10;30:14;32:24;
34:5,7,18
**upload (1)**
7:9
**upon (2)**
6:11,12
**use (2)**
8:20;32:8
**using (1)**
13:1
**UST (1)**
33:20

**V**

**various (3)**
9:8;12:9;13:25
**vehicles (1)**
12:9
**vestige (1)**
6:18
**victims (2)**
27:21;29:3
**view (6)**
6:13;7:17;11:19;
20:16;28:15;33:17
**viewed (1)**
25:17
**views (3)**
7:1;8:22;28:25
**violate (1)**
16:9
**vital (1)**
26:25
**voice (1)**
23:24

**W**

**wage (5)**
5:17,21;6:9,14;7:6
**waive (2)**
16:12;30:9
**waiver (3)**
9:5,12;16:9
**walk (1)**
12:11
**wants (1)**
13:17
**way (8)**
8:21;16:24;27:2,19;
30:24;33:13,15;34:10
**Wayne (1)**
4:16
**Weitz (1)**
4:16
**weren't (1)**
8:10
**what's (4)**
4:25;5:2;12:20;

20:11
**Whereupon (1)**
35:4
**who's (1)**
4:16
**whole (1)**
23:7
**Willoughby (1)**
4:9
**window (1)**
15:16
**wish (2)**
23:8,14
**wishes (1)**
7:5
**within (1)**
34:12
**without (4)**
6:7;15:8;21:17;
30:13
**wonder (1)**
17:2
**words (2)**
11:2;18:14
**work (1)**
7:9
**worried (2)**
15:24;16:2

**X**

**Xfinity (1)**
4:19

**Y**

**years (1)**
27:23
**York (2)**
19:16;26:17

**Z**

**Ziehl (1)**
4:24
**Zoom (1)**
4:13

**1**

**1:30 (1)**
4:1
**10 (3)**
19:2,15;31:22
**100 (1)**
13:25
**12 (1)**
31:17
**14 (1)**
16:23
**160 (3)**
9:7;14:22;31:22
**184 (1)**

17:5

**2**

**2.5 (1)**
29:21
**2.6 (1)**
29:20
**2:15 (1)**
35:4
**200 (1)**
30:7
**2023 (1)**
4:1
**21st (1)**
16:24
**232 (2)**
17:13;19:3
**232-1 (1)**
17:19
**26 (1)**
4:1

**3**

**34 (1)**
12:2
**345b (9)**
7:25;9:5;14:6;16:3,
9;19:17,20;24:5;26:11
**35,000 (1)**
12:3
**36,000 (5)**
19:9;20:4,7,18;32:12

**4**

**4.5 (1)**
19:6

**5**

**5.23 (1)**
19:5
**57.6 (1)**
13:24

**6**

**60 (1)**
14:22
**605 (1)**
19:15

**8**

**8 (1)**
19:2
**80,000 (3)**
19:18;29:16;30:8
**80,000-dollar (1)**
29:22
**87 (2)**

12:16;16:25
**87-1 (1)**
17:1

**9**

**9th (1)**
34:25

Case: 23-30564    Doc# 341    Filed: 11/24/23    Entered: 11/24/23 08:12:35    Page 45 of
45