James I. Stang (CA Bar No. 94435)
Debra I. Grassgreen (CA Bar No. 169978)
Andrew W. Caine (CA Bar No. 110345)
Brittany M. Michael (*admitted pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, California 94104
Tel: 415.263.7000; Fax: 415.263.7010
Email: jstang@pszjlaw.com
      dgrassgreen@pszjlaw.com
      acaine@pszjlaw.com
      bmichael@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>    Debtor and Debtor in Possession. | Case No.: 23-30564<br><br>Chapter 11<br><br>**STATUS REPORT IN SUPPORT OF THE EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES; AND ORDERING DEBTOR TO SUBMIT DECLARATION [DKT. NO. 292]** |

The Committee of Unsecured Creditors (the "Committee") of the Roman Catholic

Archbishop of San Francisco (the "Debtor") submits this report in support of the *Ex Parte*

*Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to*

*Bankruptcy Rule 2004 Authorizing Oral Examination of the Debtor; and Production of Documents*

*of Debtor, Parishes, and Affiliates; and Ordering Debtor to Submit Declaration*, filed on November

8, 2023, as ECF No. 292 (the "Application") and in response to the *Debtor's Request for Hearing*

*and Objection to Ex Parte Application of the Official Committee of Unsecured Creditors for Entry of*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*an Order Pursuant to Bankruptcy Rule 2004 Authorizing Oral Examination of the Debtor; and*

*Production of Documents of Debtor, Parishes, and Affiliates*; and Ordering Debtor to Submit

Declaration [ECF No. 296] (the "Debtor's Objection"), and the Court's instructions at the November

9, 2023 status conference hearing.

## I.    INTRODUCTION

The telephonic conversations recited in the Debtor's status update have not led to any

discernable progress toward consensus regarding the Application, a draft of which was provided to

Debtor's counsel on November 1.[1]  The Committee understands that its requests seek a significant

number of documents in three primary areas – finances, insurance, abuse claims – and that it

reasonable for the Debtor to seek to produce documents in stages over time.   The parties continue,

however, to have conflicting views as to the disposition of the 2004 Application: (1) the Debtor

asserts that the Court should table the application while the parties address all of the Debtor's

potential objections - which could take many months, and (2) the Committee asserts that the Court

should grant the application because  only after service of the requested subpoenas will (a) any

objections thereto be ripe and (b) the Committee have a formal vehicle to enforce the documents

requests.  As described below, the Debtor's lack of material action following the November 9

hearing supports the Committee's position that the application should be granted without further

delay.

## II.    THE PARTIES' MEET AND CONFER DISCUSSIONS SINCE THE NOVEMBER 9 HEARING

In the two phone conversations and the various e-mail exchanges, the Debtor has raised only

general objections to the document requests (citing to its 2 pages of general "objections" discussed

in its Objection to the 2004 Application) and has not provided any of its promised (a) particularized

---

[1] *See* Ex. E, November 1 email communication from John Lucas to Paul Pascuzzi and Ori Katz conveying a draft of the Committee's 2004 motion and requests.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

feedback that would allow for a meaningful discussion of mutually acceptable paring of the Committee's requests or (b) documents that the Debtor is prepared to promptly produce to the Committee.[2]

On November 13, 2023, counsel for the Debtor and the Committee conferred regarding the discovery requests. At that meeting, the Committee agreed it would identify its top priority requests so that the parties can discuss the Debtor's specific concerns regarding those requests and determine whether agreement can be reached as to their scope and breadth. In exchange, the Debtor agreed to provide a list of the requests and documents that it can easily access and promptly produce.

On November 17, the Committee provided its agreed upon list to the Debtor. Specifically, the Committee identified 25 requests that it believes, from its professionals' extensive discovery experience with other Catholic debtors, should be easily gathered and produced. The Committee also included an additional 18 requests that it views as priorities and minimum threshold information to begin its due diligence investigations.[3]

## III.   THE DEBTOR'S INACTION ON THE REQUESTS OR PROTECTIVE ORDER

On November 20, the Debtor simply reiterated its general, overarching objections without providing any feedback or asking any questions regarding the specific requests that the Committee identified in the November 17 email. Instead, the Debtor asked the Committee for additional "annotations", suggesting that the Debtor is still unclear as to the nature of the requests.[4] The Committee promptly responded as to why the Debtor's position is not reasonable and asking for the Debtor's promised list of easily accessible documents.

---

[2] The one exception is the Debtor's offer to produce certain insurance policies, information that other Catholic diocese have filed on the petition date, rather than requiring requests through discovery. *See, e.g.*, *Declaration of Kenneth F. Porter in Support of the Debtor's Motion For a Preliminary Injunction Under Sections 362 and 105(A) of the Bankruptcy Code*, The Roman Catholic Diocese of Rockville Centre, New York v. Ark320 Doe, *et al.*, Case No. 20-01226, Doc. No. 6 (October 1, 2020).

[3] *See* Ex. A, November 17 email from Andrew Caine to Amanda Cottrell.

[4] *See* Ex. B, November 20 email from Amanda Cottrell to Andrew Caine and Ex. C, November 20 email from Andrew Caine to Amanda Cottrell.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

On November 27, the parties met again, at which point the Committee expressed its frustration that, after several weeks of discussions, the parties are no further along on a process toward production of documents in the near term. The Committee also asked when the Debtor intends to respond to the Committee's October 11 comments to the Debtor's proposed confidentiality agreement[5] (following which the Committee has sent at least two reminder emails).

## IV. **CONCLUSION**

While the Committee is committed to continuing to work with the Debtor on *specific* objections to the Committee's requests, the overall pace of the process over the past month is concerning. While the Debtor's rhetoric of cooperation is welcome, its actions fail to demonstrate a commitment to producing information in a timely manner. Without an order granting the Application, this process may continue to drag on for months without meaningful progress. For that reason, the Committee requests the Court enter an order granting the Application, while the parties to continue to meet and confer regarding the objections to the specific requests. Pending Court-ordered deadlines will help motivate the parties to move forward as expeditiously as possible.


Dated:   November 29, 2023                    PACHULSKI STANG ZIEHL & JONES LLP


                                              By:    */s/James I. Stang*
                                                     James I. Stang (CA Bar No. 94435)
                                                     Debra I. Grassgreen (CA Bar No. 169978)
                                                     Andrew W. Caine (CA Bar No. 110345)
                                                     Brittany M. Michael (*admitted pro hac vice*)
                                                     PACHULSKI STANG ZIEHL & JONES LLP
                                                     One Sansome Street, Suite 3430
                                                     San Francisco, California 94104
                                                     Tel: 415.263.7000; Fax: 415.263.7010
                                                     Emails:   jstang@pszjlaw.com
                                                               dgrassgreen@pszjlaw.com
                                                               acaine@pszjlaw.com
                                                               bmichael@pszjlaw.com
                                                     Counsel to the Committee of Unsecured Creditors

---

[5] *See* Ex. D, October 11 email communication from John Lucas to Ori Katz conveying Committee's edits to proposed confidentiality agreement.

# EXHIBIT A

| From: | Andrew Caine <acaine@pszjlaw.com> |
|---|---|
| Sent: | Friday, November 17, 2023 10:25 AM |
| To: | Amanda Cottrell |
| Cc: | Barrett Marum; Ori Katz; Paul Pascuzzi; James Stang; Gillian N. Brown; Brittany M. Michael |
| Subject: | ASF - 2004 discovery |

Hi Amanda –

Per our discussion on Monday, what follows is the Committee's initial attempt to identify those requests in the 2004 Application (1) for which it should be relatively easy for the Debtor to access and produce the documents or (2) that are high priority subject matter requests for the Committee's due diligence investigation. This is offered as part of our effort to meet and confer as to the Debtor's objections to the 2004 Application, particularly as to the Debtor's desire to stage the timing of searches and production, and does not constitute a waiver of any of the Committee's rights to continue to pursue the other requests and relief sought in the 2004 Application.

We look forward to receiving the Debtor's promised list of the requests as to which the Debtor believes that it can produce documents in the very near future.

Please let us know when you are available to continue our discussions.

Thanks.

Andy

**Top Priorities: Minimal Effort**

In our experience, the below requests are all documents that dioceses maintain in the regular course of business; that require minimal effort to put together, run a report or download; or that we expect the Archdiocese has already gathered for the CVA actions.

| Request # | Request Description |
|---|---|
| 1.a | All versions of articles of incorporation in effect during the 20 years prior to the PETITION DATE for the following: The DEBTOR |
| 2.a | All versions of bylaws in effect during the 20 years prior to the PETITION DATE for the following: The DEBTOR |
| 3.a | Any formation or governance documents (including amendments) other than articles of incorporation or bylaws, for the following: The DEBTOR |
| 5 | Schedules of all entities in which the PERSON in the office of the ARCHBISHOP, Chancellor, or Vicar General of the DEBTOR are or have been an officer or director in the 20 years prior to the PETITION DATE, including positions held ex officio. If no such schedule exists, please prepare one in response to this Request. |
| 6.a | Schedule(s) of all committees, boards, subcommittees, commissions, councils or similar groups that existed over the 20 years prior to the PETITION DATE for the DEBTOR. If no such schedules exist, please prepare them in response to this Request. |

Case: 23-30564   Doc# 352   Filed: 11/29/23   Entered: 11/29/23 15:42:58   Page 6 of 96

| 9 | Organization charts (current and historical) of the DEBTOR, PARISHES (including all PARISH schools and cemeteries), all AFFILIATES, and/or all RELIGIOUS ORDERS in the ARCHDIOCESE for 20 years prior to the PETITION DATE. |
|---|---|
| 11 | An index of the current DEBTOR's archives. |
| 25 | A list of all existing PARISHES (including PARISH schools and cemeteries), including any internal identification numbers / codes and addresses. |
| 26 | A list of all former PARISHES (including schools and cemeteries), including those that have been closed, merged, clustered, suppressed, or alienated (including the identification of the surviving PARISH), including any internal identification numbers / codes and addresses. |
| 34.a | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The DEBTOR |
| 36.a | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The DEBTOR |
| 36.b | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The PARISHES |
| 36.c | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The AFFILIATES |
| 43.a | Copies of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition for the following: The DEBTOR |
| 49.a | Chart of Accounts, including open / active accounts, closed / inactive accounts, departments, divisions, segments, projects, programs, etc., for the following: The DEBTOR |
| 56.a | A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following: The DEBTOR |
| 59.a | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The DEBTOR |
| 59.b | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The PARISHES |
| 59.c | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The AFFILIATES |

Case: 23-30564   Doc# 352   Filed: 11/29/23   Entered: 11/29/23 15:42:58   Page 7 of 96

| 94 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with LMI that reflect the existence of INSURANCE POLICIES (including missing policies). |
|---|---|
| 95 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with FIREMAN's FUND that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 96 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with CHUBB that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 97 | All DOCUMENTS EVIDENCING historical insurance coverage for the DIOCESE with CONTINENTAL that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 98 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with WESTPORT that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 99 | All DOCUMENTS EVIDENCING historical insurance for the DEBTOR with any PERSON not identified in Request Nos. 94-98 under which coverage for the ABUSE CLAIMS could possibly be available. |
| 102 | Copies of all general liability INSURANCE POLICIES under which any NON-DEBTOR asserts a CLAIM an interest in the proceeds thereof, including as an insured, additional insured, or otherwise. |
| 103 | For all INSURANCE POLICIES IDENTIFIED in response to Request No. 102 where the NON-DEBTOR has not provided a complete copy of the applicable INSURANCE POLICY, all DOCUMENTS EVIDENCING historical insurance coverage for the NON-DEBTOR with respect to that INSURANCE POLICY. |
| 104 | Copies of all insurance coverage letters, including, without limitation, reservation of rights letters or coverage denial letters, received by the DEBTOR, PARISHES, AFFILIATES, and/or the NON-DEBTORS with respect to ABUSE CLAIMS. |
| 109 | All lists, or partial or draft lists, of all PERSONS accused of SEXUAL ABUSE who have operated within the ARCHDIOCESE since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations." |

**Top Priorities: Threshold Requests**

The below requests are all top priority requests that the Committee needs in order to start its due diligence investigation.

| Request # | Request Description |
|---|---|
| 4 | All versions of the norms, statutes, operating guidelines / policies / instructions and policy manuals issued by / created by DEBTOR during 20 years prior to the PETITION DATE. |
| 7 | Minutes of meetings (including any agendas and materials distributed prior to or at meetings) for all bodies identified in response to request 6.a for the 20 years prior to the PETITION DATE. |
| 23 | All guidelines or policies for the PARISHES from 1970 to the date YOU respond to this Request RELATING TO any subject, including, but not limited to, child protection, accounting manuals, handbooks, policies (current and historical), investment policies. |

| 46 | Annual financial statements in Excel (e.g., balance sheets, income statements, cash flows) for each PARISH (including PARISH schools and cemeteries) for the 20 years prior to the PETITION DATE. |
|-----|-----|
| 86 | DOCUMENTS IDENTIFYING current deposit balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or any other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership. |
| 87 | DOCUMENTS IDENTIFYING current loan balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of borrowers. |
| 88 | DOCUMENTS IDENTIFYING current fund / subfund balances related to any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership. |
| 34.b | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The PARISHES |
| 34.c | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The AFFILIATES |
| 37.a | Copies of annual trial balances for the following: The DEBTOR |
| 56.c | A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following: The AFFILIATES |
| 70.a | Schedules detailing specific assets / funds owned or controlled by the DEBTOR alleged to be restricted, held in trust, held for others, or otherwise unavailable for creditors / settlement. |
| 108 | All DOCUMENTS CONCERNING ABUSE CLAIMS for any occurrence alleged to have taken place since January 1, 1941, regardless of whether allegations of SEXUAL ABUSE were deemed "credible" or were substantiated by the DEBTOR. This Request includes allegations against living and deceased PERSONS. |
| 112 | If YOU have no documents in your possession, custody, or control that are responsive to Request No. 109, produce all DOCUMENTS sufficient to identify every PERSON accused of SEXUAL ABUSE who has operated within the ARCHDIOCES since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations." |
| 113 | The personnel files or all personnel records for each ALLEGED PERPETRATOR. This Request is not limited to DOCUMENTS CONCERNING SEXUAL ABUSE and includes, but is not limited to: educational background; work assignment histories; work performance evaluations; CORRESPONDENCE; reports; complaints (regarding SEXUAL ABUSE and otherwise); disciplinary records (regarding SEXUAL ABUSE and otherwise); medical, psychological and psychiatric records; and laicization DOCUMENTS. |

| 115 | All confidential DOCUMENTS (including, but not limited to, the strictly confidential DOCUMENTS maintained by the ARCHBISHOP or the DEBTOR pursuant to Crimen Sollicitationis (Crime of Solicitation) (1962) (Instruction of the Supreme Sacred Congregation of the Holy Office)), CONCERNING PRIESTS and RELIGIOUS against whom ABUSE CLAIMS have or could have been made, regardless of whether such allegations were deemed credible accusations or were substantiated by the DEBTOR or by any agent, officer, or congregation of the Roman Catholic Church. |
|---|---|
| 119 | All DOCUMENTS CONCERNING ABUSE CLAIMS provided to or prepared by any IRP including, but not limited to, complaints, allegations or reports of SEXUAL ABUSE, interview notes, minutes and transcripts of meetings, findings, recommendations, decisions, reports or memoranda, and CORRESPONDENCE. |
| 127 | All DOCUMENTS REGARDING the discipline (or lack of discipline) and restriction (or lack of restriction) of any services, duties, or responsibilities of a ALLEGED PERPETRATOR, including, but not limited to, the restriction of priestly ministries or access to children. |
| 129 | All COMMUNICATIONS with the following PERSONS CONCERNING ABUSE CLAIMS AND ALLEGED PERPETRATORS dated during the 20 years prior to the PETITION DATE: any state or federal governmental agency, authority, or entity, including, without limitation, district attorneys' offices, the California Attorney General's office, police departments, and the United States Department of Justice; or any other law enforcement agency. |

**Andrew Caine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 310.772.2357
Tel: 310.277.6910 | Fax: 310.201.0760
acaine@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

# EXHIBIT B

| **From:** | Amanda Cottrell <ACottrell@sheppardmullin.com> |
|---|---|
| **Sent:** | Monday, November 20, 2023 3:17 PM |
| **To:** | Andrew Caine |
| **Cc:** | Barrett Marum; Ori Katz; Paul Pascuzzi; James Stang; Gillian N. Brown; Brittany M. Michael |
| **Subject:** | RE: ASF - 2004 discovery |

Andy,

We greatly appreciate the Committee's initial attempt to winnow its list of requests. That said, the highlighted 41 RFPs below are still vastly overbroad in time period covered and language used. We still cannot discern the specific documents and particularized categories of documents you need most and/or that would be readily accessible to produce in the near term per an agreed timetable. Can you please annotate your list and indicate the initial documents we can identify to produce and move this process forward?

In addition to narrowing the language, we would propose that we begin with a 10 year lookback where those documents are available.

For our part, we are working with the client team and debtor's counsel to identify readily available insurance and financial data. On the latter, we're still investigating what data fields can be exported from the debtor's accounting system with an eye toward setting a scoping call between B. Riley and BRG, with counsel, to make sure we all understand the Committee's requests and feasibility. Is there a time next Monday, November 27 that work for such a call?

Amanda

**Amanda L. Cottrell** | Partner
+1 469-391-7432 | direct
+1 214-538-3734 | cell
ACottrell@sheppardmullin.com | Bio

**Sheppard**Mullin
2200 Ross Ave, 20th Floor
Dallas,  TX 75201
+1 469-391-7400 | main
www.sheppardmullin.com | LinkedIn | Twitter

---

**From:** Andrew Caine <acaine@pszjlaw.com>
**Sent:** Friday, November 17, 2023 12:25 PM
**To:** Amanda Cottrell <ACottrell@sheppardmullin.com>
**Cc:** Barrett Marum <BMarum@sheppardmullin.com>; Ori Katz <OKatz@sheppardmullin.com>; Paul Pascuzzi <ppascuzzi@ffwplaw.com>; James Stang <jstang@pszjlaw.com>; Gillian N. Brown <gbrown@pszjlaw.com>; Brittany M. Michael <bmichael@pszjlaw.com>
**Subject:** ASF - 2004 discovery

Hi Amanda –

Per our discussion on Monday, what follows is the Committee's initial attempt to identify those requests in the 2004 Application (1) for which it should be relatively easy for the Debtor to access and produce the documents or (2) that are high priority subject matter requests for the Committee's due diligence investigation. This is offered as part of our effort to meet and confer as to the Debtor's objections to the 2004 Application, particularly as to the Debtor's desire to stage the timing of searches and production, and does not constitute a waiver of any of the Committee's rights to continue to pursue the other requests and relief sought in the 2004 Application.

We look forward to receiving the Debtor's promised list of the requests as to which the Debtor believes that it can produce documents in the very near future.

Please let us know when you are available to continue our discussions.

Thanks.

Andy

**Top Priorities: Minimal Effort**

In our experience, the below requests are all documents that dioceses maintain in the regular course of business; that require minimal effort to put together, run a report or download; or that we expect the Archdiocese has already gathered for the CVA actions.

| Request # | Request Description |
|---|---|
| 1.a | All versions of articles of incorporation in effect during the 20 years prior to the PETITION DATE for the following: The DEBTOR |
| 2.a | All versions of bylaws in effect during the 20 years prior to the PETITION DATE for the following: The DEBTOR |
| 3.a | Any formation or governance documents (including amendments) other than articles of incorporation or bylaws, for the following: The DEBTOR |
| 5 | Schedules of all entities in which the PERSON in the office of the ARCHBISHOP, Chancellor, or Vicar General of the DEBTOR are or have been an officer or director in the 20 years prior to the PETITION DATE, including positions held ex officio. If no such schedule exists, please prepare one in response to this Request. |
| 6.a | Schedule(s) of all committees, boards, subcommittees, commissions, councils or similar groups that existed over the 20 years prior to the PETITION DATE for the DEBTOR. If no such schedules exist, please prepare them in response to this Request. |
| 9 | Organization charts (current and historical) of the DEBTOR, PARISHES (including all PARISH schools and cemeteries), all AFFILIATES, and/or all RELIGIOUS ORDERS in the ARCHDIOCESE for 20 years prior to the PETITION DATE. |
| 11 | An index of the current DEBTOR's archives. |
| 25 | A list of all existing PARISHES (including PARISH schools and cemeteries), including any internal identification numbers / codes and addresses. |
| 26 | A list of all former PARISHES (including schools and cemeteries), including those that have been closed, merged, clustered, suppressed, or alienated (including the identification of the surviving PARISH), including any internal identification numbers / codes and addresses. |

| 34.a | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The DEBTOR |
|---|---|
| 36.a | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The DEBTOR |
| 36.b | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The PARISHES |
| 36.c | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The AFFILIATES |
| 43.a | Copies of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition for the following: The DEBTOR |
| 49.a | Chart of Accounts, including open / active accounts, closed / inactive accounts, departments, divisions, segments, projects, programs, etc., for the following: The DEBTOR |
| 56.a | A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following: The DEBTOR |
| 59.a | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The DEBTOR |
| 59.b | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The PARISHES |
| 59.c | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The AFFILIATES |
| 94 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with LMI that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 95 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with FIREMAN's FUND that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 96 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with CHUBB that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 97 | All DOCUMENTS EVIDENCING historical insurance coverage for the DIOCESE with CONTINENTAL that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 98 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with WESTPORT that reflect the existence of INSURANCE POLICIES (including missing policies). |

| 99 | All DOCUMENTS EVIDENCING historical insurance for the DEBTOR with any PERSON not identified in Request Nos. 94-98 under which coverage for the ABUSE CLAIMS could possibly be available. |
|---|---|
| 102 | Copies of all general liability INSURANCE POLICIES under which any NON-DEBTOR asserts a CLAIM an interest in the proceeds thereof, including as an insured, additional insured, or otherwise. |
| 103 | For all INSURANCE POLICIES IDENTIFIED in response to Request No. 102 where the NON-DEBTOR has not provided a complete copy of the applicable INSURANCE POLICY, all DOCUMENTS EVIDENCING historical insurance coverage for the NON-DEBTOR with respect to that INSURANCE POLICY. |
| 104 | Copies of all insurance coverage letters, including, without limitation, reservation of rights letters or coverage denial letters, received by the DEBTOR, PARISHES, AFFILIATES, and/or the NON-DEBTORS with respect to ABUSE CLAIMS. |
| 109 | All lists, or partial or draft lists, of all PERSONS accused of SEXUAL ABUSE who have operated within the ARCHDIOCESE since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations." |

**Top Priorities: Threshold Requests**

The below requests are all top priority requests that the Committee needs in order to start its due diligence investigation.

| Request # | Request Description |
|---|---|
| 4 | All versions of the norms, statutes, operating guidelines / policies / instructions and policy manuals issued by / created by DEBTOR during 20 years prior to the PETITION DATE. |
| 7 | Minutes of meetings (including any agendas and materials distributed prior to or at meetings) for all bodies identified in response to request 6.a for the 20 years prior to the PETITION DATE. |
| 23 | All guidelines or policies for the PARISHES from 1970 to the date YOU respond to this Request RELATING TO any subject, including, but not limited to, child protection, accounting manuals, handbooks, policies (current and historical), investment policies. |
| 46 | Annual financial statements in Excel (e.g., balance sheets, income statements, cash flows) for each PARISH (including PARISH schools and cemeteries) for the 20 years prior to the PETITION DATE. |
| 86 | DOCUMENTS IDENTIFYING current deposit balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or any other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership. |
| 87 | DOCUMENTS IDENTIFYING current loan balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of borrowers. |
| 88 | DOCUMENTS IDENTIFYING current fund / subfund balances related to any "Pooled Investment" program or similar programs previously or currently operated or participated |

| | |
|---|---|
| | in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership. |
| 34.b | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The PARISHES |
| 34.c | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The AFFILIATES |
| 37.a | Copies of annual trial balances for the following: The DEBTOR |
| 56.c | A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following: The AFFILIATES |
| 70.a | Schedules detailing specific assets / funds owned or controlled by the DEBTOR alleged to be restricted, held in trust, held for others, or otherwise unavailable for creditors / settlement. |
| 108 | All DOCUMENTS CONCERNING ABUSE CLAIMS for any occurrence alleged to have taken place since January 1, 1941, regardless of whether allegations of SEXUAL ABUSE were deemed "credible" or were substantiated by the DEBTOR. This Request includes allegations against living and deceased PERSONS. |
| 112 | If YOU have no documents in your possession, custody, or control that are responsive to Request No. 109, produce all DOCUMENTS sufficient to identify every PERSON accused of SEXUAL ABUSE who has operated within the ARCHDIOCES since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations." |
| 113 | The personnel files or all personnel records for each ALLEGED PERPETRATOR. This Request is not limited to DOCUMENTS CONCERNING SEXUAL ABUSE and includes, but is not limited to: educational background; work assignment histories; work performance evaluations; CORRESPONDENCE; reports; complaints (regarding SEXUAL ABUSE and otherwise); disciplinary records (regarding SEXUAL ABUSE and otherwise); medical, psychological and psychiatric records; and laicization DOCUMENTS. |
| 115 | All confidential DOCUMENTS (including, but not limited to, the strictly confidential DOCUMENTS maintained by the ARCHBISHOP or the DEBTOR pursuant to Crimen Sollicitationis (Crime of Solicitation) (1962) (Instruction of the Supreme Sacred Congregation of the Holy Office)), CONCERNING PRIESTS and RELIGIOUS against whom ABUSE CLAIMS have or could have been made, regardless of whether such allegations were deemed credible accusations or were substantiated by the DEBTOR or by any agent, officer, or congregation of the Roman Catholic Church. |
| 119 | All DOCUMENTS CONCERNING ABUSE CLAIMS provided to or prepared by any IRP including, but not limited to, complaints, allegations or reports of SEXUAL ABUSE, interview notes, minutes and transcripts of meetings, findings, recommendations, decisions, reports or memoranda, and CORRESPONDENCE. |

| 127 | All DOCUMENTS REGARDING the discipline (or lack of discipline) and restriction (or lack of restriction) of any services, duties, or responsibilities of a ALLEGED PERPETRATOR, including, but not limited to, the restriction of priestly ministries or access to children. |
|---|---|
| 129 | All COMMUNICATIONS with the following PERSONS CONCERNING ABUSE CLAIMS AND ALLEGED PERPETRATORS dated during the 20 years prior to the PETITION DATE: any state or federal governmental agency, authority, or entity, including, without limitation, district attorneys' offices, the California Attorney General's office, police departments, and the United States Department of Justice; or any other law enforcement agency. |

**Andrew Caine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 310.772.2357
Tel: 310.277.6910 | Fax: 310.201.0760
acaine@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# **EXHIBIT C**

| From: | Andrew Caine <acaine@pszjlaw.com> |
|---|---|
| Sent: | Monday, November 20, 2023 5:05 PM |
| To: | Amanda Cottrell |
| Cc: | Barrett Marum; Ori Katz; Paul Pascuzzi; James Stang; Gillian N. Brown; Brittany M. Michael |
| Subject: | RE: ASF - 2004 discovery |

Hi Amanda.

Thanks for your email.  We do not think it fair or reasonable to ask us to further pare our requests without hearing your specific concerns as to particular request(s), rather than the broad statements you have made below.  Moreover, a blanket limitation to 10 years of documents may be agreeable for staging of productions, but in several categories, documents older than 10 years are clearly pertinent, including but not limited to asset transfers.

The PSZJ folks are not all available on Monday, but let's talk then to get things moving.  Monday afternoon PT is best.  I am checking with BRG as to availability, but based on the above, perhaps we should plan on 2 calls – one to address your concerns as to the Committee's requests and another to address the financial production issues.

While we await word on a time for Monday, we ask the Debtor to send a tentative list of the most easily accessible documents prior to the call.

I look forward to hearing from you.

Andy


**Andrew Caine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 310.772.2357
Tel: 310.277.6910 | Fax: 310.201.0760
acaine@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Amanda Cottrell <ACottrell@sheppardmullin.com>
**Sent:** Monday, November 20, 2023 3:17 PM
**To:** Andrew Caine <acaine@pszjlaw.com>
**Cc:** Barrett Marum <BMarum@sheppardmullin.com>; Ori Katz <okatz@sheppardmullin.com>; Paul Pascuzzi

<ppascuzzi@ffwplaw.com>; James Stang <jstang@pszjlaw.com>; Gillian N. Brown <gbrown@pszjlaw.com>; Brittany M. Michael <bmichael@pszjlaw.com>
**Subject:** RE: ASF - 2004 discovery

Andy,

We greatly appreciate the Committee's initial attempt to winnow its list of requests. That said, the highlighted 41 RFPs below are still vastly overbroad in time period covered and language used. We still cannot discern the specific documents and particularized categories of documents you need most and/or that would be readily accessible to produce in the near term per an agreed timetable. Can you please annotate your list and indicate the initial documents we can identify to produce and move this process forward?

In addition to narrowing the language, we would propose that we begin with a 10 year lookback where those documents are available.

For our part, we are working with the client team and debtor's counsel to identify readily available insurance and financial data. On the latter, we're still investigating what data fields can be exported from the debtor's accounting system with an eye toward setting a scoping call between B. Riley and BRG, with counsel, to make sure we all understand the Committee's requests and feasibility. Is there a time next Monday, November 27 that work for such a call?

Amanda

**Amanda L. Cottrell** | Partner
+1 469-391-7432 | direct
+1 214-538-3734 | cell
ACottrell@sheppardmullin.com | Bio

**SheppardMullin**
2200 Ross Ave, 20th Floor
Dallas, TX 75201
+1 469-391-7400 | main
www.sheppardmullin.com | LinkedIn | Twitter

---

**From:** Andrew Caine <acaine@pszjlaw.com>
**Sent:** Friday, November 17, 2023 12:25 PM
**To:** Amanda Cottrell <ACottrell@sheppardmullin.com>
**Cc:** Barrett Marum <BMarum@sheppardmullin.com>; Ori Katz <OKatz@sheppardmullin.com>; Paul Pascuzzi <ppascuzzi@ffwplaw.com>; James Stang <jstang@pszjlaw.com>; Gillian N. Brown <gbrown@pszjlaw.com>; Brittany M. Michael <bmichael@pszjlaw.com>
**Subject:** ASF - 2004 discovery

Hi Amanda –

Per our discussion on Monday, what follows is the Committee's initial attempt to identify those requests in the 2004 Application (1) for which it should be relatively easy for the Debtor to access and produce the documents or (2) that are high priority subject matter requests for the Committee's due diligence investigation. This is offered as part of our effort to meet and confer as to the Debtor's objections to the 2004 Application, particularly as to the Debtor's desire to stage

the timing of searches and production, and does not constitute a waiver of any of the Committee's rights to continue to pursue the other requests and relief sought in the 2004 Application.

We look forward to receiving the Debtor's promised list of the requests as to which the Debtor believes that it can produce documents in the very near future.

Please let us know when you are available to continue our discussions.

Thanks.

Andy

**Top Priorities: Minimal Effort**

In our experience, the below requests are all documents that dioceses maintain in the regular course of business; that require minimal effort to put together, run a report or download; or that we expect the Archdiocese has already gathered for the CVA actions.

| Request # | Request Description |
|---|---|
| 1.a | All versions of articles of incorporation in effect during the 20 years prior to the PETITION DATE for the following: The DEBTOR |
| 2.a | All versions of bylaws in effect during the 20 years prior to the PETITION DATE for the following: The DEBTOR |
| 3.a | Any formation or governance documents (including amendments) other than articles of incorporation or bylaws, for the following: The DEBTOR |
| 5 | Schedules of all entities in which the PERSON in the office of the ARCHBISHOP, Chancellor, or Vicar General of the DEBTOR are or have been an officer or director in the 20 years prior to the PETITION DATE, including positions held ex officio. If no such schedule exists, please prepare one in response to this Request. |
| 6.a | Schedule(s) of all committees, boards, subcommittees, commissions, councils or similar groups that existed over the 20 years prior to the PETITION DATE for the DEBTOR. If no such schedules exist, please prepare them in response to this Request. |
| 9 | Organization charts (current and historical) of the DEBTOR, PARISHES (including all PARISH schools and cemeteries), all AFFILIATES, and/or all RELIGIOUS ORDERS in the ARCHDIOCESE for 20 years prior to the PETITION DATE. |
| 11 | An index of the current DEBTOR's archives. |
| 25 | A list of all existing PARISHES (including PARISH schools and cemeteries), including any internal identification numbers / codes and addresses. |
| 26 | A list of all former PARISHES (including schools and cemeteries), including those that have been closed, merged, clustered, suppressed, or alienated (including the identification of the surviving PARISH), including any internal identification numbers / codes and addresses. |
| 34.a | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The DEBTOR |

| 36.a | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The DEBTOR |
|---|---|
| 36.b | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The PARISHES |
| 36.c | Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following: The AFFILIATES |
| 43.a | Copies of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition for the following: The DEBTOR |
| 49.a | Chart of Accounts, including open / active accounts, closed / inactive accounts, departments, divisions, segments, projects, programs, etc., for the following: The DEBTOR |
| 56.a | A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following: The DEBTOR |
| 59.a | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The DEBTOR |
| 59.b | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The PARISHES |
| 59.c | A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following: The AFFILIATES |
| 94 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with LMI that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 95 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with FIREMAN's FUND that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 96 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with CHUBB that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 97 | All DOCUMENTS EVIDENCING historical insurance coverage for the DIOCESE with CONTINENTAL that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 98 | All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with WESTPORT that reflect the existence of INSURANCE POLICIES (including missing policies). |
| 99 | All DOCUMENTS EVIDENCING historical insurance for the DEBTOR with any PERSON not identified in Request Nos. 94-98 under which coverage for the ABUSE CLAIMS could possibly be available. |

| 102 | Copies of all general liability INSURANCE POLICIES under which any NON-DEBTOR asserts a CLAIM an interest in the proceeds thereof, including as an insured, additional insured, or otherwise. |
|---|---|
| 103 | For all INSURANCE POLICIES IDENTIFIED in response to Request No. 102 where the NON-DEBTOR has not provided a complete copy of the applicable INSURANCE POLICY, all DOCUMENTS EVIDENCING historical insurance coverage for the NON-DEBTOR with respect to that INSURANCE POLICY. |
| 104 | Copies of all insurance coverage letters, including, without limitation, reservation of rights letters or coverage denial letters, received by the DEBTOR, PARISHES, AFFILIATES, and/or the NON-DEBTORS with respect to ABUSE CLAIMS. |
| 109 | All lists, or partial or draft lists, of all PERSONS accused of SEXUAL ABUSE who have operated within the ARCHDIOCESE since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations." |

**Top Priorities: Threshold Requests**

The below requests are all top priority requests that the Committee needs in order to start its due diligence investigation.

| Request # | Request Description |
|---|---|
| 4 | All versions of the norms, statutes, operating guidelines / policies / instructions and policy manuals issued by / created by DEBTOR during 20 years prior to the PETITION DATE. |
| 7 | Minutes of meetings (including any agendas and materials distributed prior to or at meetings) for all bodies identified in response to request 6.a for the 20 years prior to the PETITION DATE. |
| 23 | All guidelines or policies for the PARISHES from 1970 to the date YOU respond to this Request RELATING TO any subject, including, but not limited to, child protection, accounting manuals, handbooks, policies (current and historical), investment policies. |
| 46 | Annual financial statements in Excel (e.g., balance sheets, income statements, cash flows) for each PARISH (including PARISH schools and cemeteries) for the 20 years prior to the PETITION DATE. |
| 86 | DOCUMENTS IDENTIFYING current deposit balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or any other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership. |
| 87 | DOCUMENTS IDENTIFYING current loan balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of borrowers. |
| 88 | DOCUMENTS IDENTIFYING current fund / subfund balances related to any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership. |
| 34.b | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), |

| | |
|---|---|
| | including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The PARISHES |
| 34.c | Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following: The AFFILIATES |
| 37.a | Copies of annual trial balances for the following: The DEBTOR |
| 56.c | A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following: The AFFILIATES |
| 70.a | Schedules detailing specific assets / funds owned or controlled by the DEBTOR alleged to be restricted, held in trust, held for others, or otherwise unavailable for creditors / settlement. |
| 108 | All DOCUMENTS CONCERNING ABUSE CLAIMS for any occurrence alleged to have taken place since January 1, 1941, regardless of whether allegations of SEXUAL ABUSE were deemed "credible" or were substantiated by the DEBTOR. This Request includes allegations against living and deceased PERSONS. |
| 112 | If YOU have no documents in your possession, custody, or control that are responsive to Request No. 109, produce all DOCUMENTS sufficient to identify every PERSON accused of SEXUAL ABUSE who has operated within the ARCHDIOCES since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations." |
| 113 | The personnel files or all personnel records for each ALLEGED PERPETRATOR. This Request is not limited to DOCUMENTS CONCERNING SEXUAL ABUSE and includes, but is not limited to: educational background; work assignment histories; work performance evaluations; CORRESPONDENCE; reports; complaints (regarding SEXUAL ABUSE and otherwise); disciplinary records (regarding SEXUAL ABUSE and otherwise); medical, psychological and psychiatric records; and laicization DOCUMENTS. |
| 115 | All confidential DOCUMENTS (including, but not limited to, the strictly confidential DOCUMENTS maintained by the ARCHBISHOP or the DEBTOR pursuant to Crimen Sollicitationis (Crime of Solicitation) (1962) (Instruction of the Supreme Sacred Congregation of the Holy Office)), CONCERNING PRIESTS and RELIGIOUS against whom ABUSE CLAIMS have or could have been made, regardless of whether such allegations were deemed credible accusations or were substantiated by the DEBTOR or by any agent, officer, or congregation of the Roman Catholic Church. |
| 119 | All DOCUMENTS CONCERNING ABUSE CLAIMS provided to or prepared by any IRP including, but not limited to, complaints, allegations or reports of SEXUAL ABUSE, interview notes, minutes and transcripts of meetings, findings, recommendations, decisions, reports or memoranda, and CORRESPONDENCE. |
| 127 | All DOCUMENTS REGARDING the discipline (or lack of discipline) and restriction (or lack of restriction) of any services, duties, or responsibilities of a ALLEGED PERPETRATOR, including, but not limited to, the restriction of priestly ministries or access to children. |

| 129 | All COMMUNICATIONS with the following PERSONS CONCERNING ABUSE CLAIMS AND ALLEGED PERPETRATORS dated during the 20 years prior to the PETITION DATE: any state or federal governmental agency, authority, or entity, including, without limitation, district attorneys' offices, the California Attorney General's office, police departments, and the United States Department of Justice; or any other law enforcement agency. |
|---|---|

**Andrew Caine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 310.772.2357
Tel: 310.277.6910 | Fax: 310.201.0760
acaine@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT D

| **From:** | John W. Lucas <jlucas@pszjlaw.com> |
| **Sent:** | Tuesday, October 10, 2023 9:14 PM |
| **To:** | Ori Katz |
| **Cc:** | Alan H. Martin; Paul Pascuzzi; Kenneth Brown; Brittany M. Michael |
| **Subject:** | RE: SETTLEMENT COMMUNICATION - RCASF - Draft Confidentiality Agreement |
| **Attachments:** | DOCS_SF-#109660-v4-PSZJ_Edits_to_Confidentiality_Agreement.docx; PSZJ Edits to Confidentiality Agreement Redline.pdf |

Ori:

Here are the Committee's changes to the confidentiality agreement.

Thank you,

John

**John W. Lucas**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 415.217.5108
Tel: 415.263.7000 | Cell: 415.306.3576 | Fax: 415.263.7010
jlucas@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

**From:** Ori Katz [mailto:OKatz@sheppardmullin.com]
**Sent:** Tuesday, October 3, 2023 4:38 PM
**To:** John W. Lucas <jlucas@pszjlaw.com>
**Cc:** Alan H. Martin <amartin@sheppardmullin.com>; Paul Pascuzzi <ppascuzzi@ffwplaw.com>
**Subject:** SETTLEMENT COMMUNICATION - RCASF - Draft Confidentiality Agreement

John,

A draft confidentiality agreement is attached for your review. This is still subject to review and comment from our client, so we may have further changes. This is different than what Paul (copied) used in Santa Rosa. We worked from a Sheppard form we like in connection with the attached. My partner Alan Martin (copied) is taking the lead on this for the debtor, and is generally available to talk through any questions or changes.

Ori

**Ori Katz** | Partner
+1 415-774-3238 | direct
+1 415-517-6907 | mobile
OKatz@sheppardmullin.com | Bio

**SheppardMullin**

Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
+1 415-434-9100 | main
www.sheppardmullin.com | LinkedIn | Twitter

<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is made this [    ] day of October 2023, by and among the Roman Catholic Archbishop of San Francisco (the "Debtor" or "Archdiocese") in the chapter 11 bankruptcy case being administered as case number 23-30564 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), the Official Committee of Unsecured Creditors (the "Committee") appointed in the Bankruptcy Case, and the Authorized Recipients (as defined below).

## RECITALS

WHEREAS, on August 21, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court, commencing the Bankruptcy Case.

WHEREAS, the Debtor continues to be in possession of its property and estate and manages its day-to-day business as a debtor in possession.

WHEREAS, on September 1, 2023, the Office of the United States Trustee for Region 17 appointed the Committee ("U.S. Trustee").

WHEREAS, the Debtor and the Committee desire to enter into this Confidentiality Agreement, in order to set forth their understandings and agreements with respect to the ability of the Committee, its designated representatives, and its counsel or other professional advisers to have access to confidential information as defined in this Agreement.

## DEFINITIONS

1.      A "Producing Party" is a person or entity that produces information and documents, including deposition testimony or transcripts, disclosed in connection with the Bankruptcy Case ("Disclosure Materials") in response to formal or informal discovery served in connection with the Bankruptcy Case, including any related contested matter, adversary action, or appeal (each, as applicable, a "Proceeding," and collectively, the "Proceedings").

2.      A "Receiving Party" is a person or entity to whom a Producing Party produces Disclosure Materials in response to formal or informal discovery served in connection with any of the Proceedings.

3.      A "Joinder Firm" as used herein means those attorneys who have been retained by one or more Committee Members to represent such person(s) in the prosecution of claims arising under AB 218 (California Code of Civil Procedure section 340.1) (the "CVA") and individually in the Case who have executed a Confidentiality Joinder in the form attached as Exhibit A.

4.      "Committee" as used herein means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case.

5.      "Definition of Confidential Information":

Case: 23-30564    Doc# 352    Filed: 11/29/23    Entered: 11/29/23 15:42:58    Page 29 of 96

(a)     For purposes of this Agreement, Confidential Information means  any nonpublic information (whether written, photographic, electronic or otherwise), documents, or things produced or provided (formally or informally) by the Producing Party explicitly designated and marked by the Producing Party as Confidential Information, that such party has a good faith reasonable belief contains confidential, proprietary, or personally sensitive information of the Producing Party, (b) information implicating an individual's legitimate expectation of privacy, including medical information and social security numbers; (c) any and all information required to be maintained confidentially by federal, state or local laws, rules, regulations or ordinances governing or relating to privacy rights, which are furnished, disclosed or made known to, a Receiving Party, whether intentionally or unintentionally and in any manner, including in written form or through any electronic, facsimile or computer-related means of communication; or (d) anything that, pursuant to an order of the Bankruptcy Court, may not be disclosed to parties to other proceedings or their respective employees, agents, attorneys, professionals, consultants or other agents. Confidential Information shall also include, without limitation: (i) any notes, summaries, compilations, presentations, memoranda or similar written materials disclosing, discussing or that is based on or reflects Confidential Information; (ii) any other Confidential Information conveyed to a Receiving Party in writing that the Producing Party or their advisors or other agents advise the Receiving Party should be treated as confidential.

(b)     Notwithstanding the foregoing, Confidential Information shall not include information which (i) was generally available to the public prior to its being disclosed under this Agreement, (ii) becomes generally available to the public after its receipt from the Producing Party through  no act or failure to act on the part  of any Receiving Party, (iii) was obtained by a Receiving Party from a third party under no obligation to maintain its confidentiality, or (iv) was developed by a Receiving Party independent of the Confidential Information provided under and not in violation of this Agreement.

6.     If the sole basis for designating a document as Confidential Information is that such document identifies a minor as a survivor of sexual abuse (any such document, an "**Identifying Document**"), then the sexual abuse survivor identified in the Identifying Document (the "**Disclosing Survivor**") may disclose the document to any third party if (a) the Disclosing Survivor serves written notice of his or her intent to disclose such document (which such notice shall include a complete copy of the document or documents sought to be disclosed) (a "**Disclosure Notice**"), and (b) the Archdiocese does not, within ten (10) days of its receipt of the Disclosure Notice, respond in writing to Committee Counsel stating that such document was designated as Confidential Information for any reason other than it identifies a minor as a survivor of sexual abuse.  If the Archdiocese serves a written response in accordance with clause (b) of the preceding sentence, then the applicable Identifying Document shall be deemed a dispute and the Disclosing Survivor may seek to remove the confidentiality designation in accordance with paragraph  17 hereof.

## AGREEMENT

7.     Upon a good faith determination by the Producing Party that any Disclosure Materials being produced or disclosed to a Receiving Party, whether formally or informally, contain Confidential Information, the Producing Party shall identify such Confidential Information

Case: 23-30564    Doc# 352    Filed: 11/29/23    Entered: 11/29/23 15:42:58    Page 30 of 96

by affixing to it, in a manner that shall not interfere with its legibility, the words "CONFIDENTIAL"" on each page so designated (if the information is produced in written form) or otherwise conspicuously labeling it on a part thereof (if in the form of tape, disc, or other form that makes it difficult to label each page); provided, however, that if the Disclosure Materials are too voluminous or otherwise too burdensome to mark each page with such designation, then the first page of the written Disclosure Materials shall be marked accordingly and the Producing Party shall communicate its intention to designate the entire written Disclosure Material as Confidential Information. The "CONFIDENTIAL" designation shall, wherever practicable, be made prior to, or contemporaneously with, production or disclosure, except in the case of depositions, which shall be designated as set forth in paragraph 13. Disclosure Materials, or information derived therefrom, shall be used solely in connection with the Proceedings, and shall not be used in any other proceeding or for any other purpose.

8.  Disclosure Materials designated as "CONFIDENTIAL" ("Confidential Materials") or the contents thereof shall not be given, shown, made available, communicated, used or otherwise disclosed to anyone other than (a) the Court; (b) outside counsel for the parties to the Proceedings, and paralegal, stenographic and clerical personnel of such counsel; (c) experts (including financial advisors, consultants, and other retained professionals) specifically retained by the parties for purposes relating to the Proceedings; (d) litigation vendors and other third-party litigation support personnel engaged for purposes of the Proceedings; and (e) the parties to the Proceeding, provided that in the case of the Committee, the term party shall be limited to the Committee and those members thereof who have accepted the terms of this Confidentiality Agreement; (f) each Joinder Firm, except: (i) with prior written approval of the Producing Party or its attorneys in the case of Disclosure Materials or the party requesting the designation in the case of deposition transcripts; or (ii) upon further order of the Court and after notice to all parties to the Proceeding; or (iii) as set forth in paragraphs 12 and 15 below with respect to the U.S. Trustee, and his counsel.

9.  Disclosure to the individuals authorized pursuant to paragraph 8 of this Confidentiality Agreement shall be made only as necessary for matters in the Proceedings and only after the person to whom the disclosure is to be made has been informed of the confidential or highly confidential nature of the Disclosure Materials and agrees to be bound by the terms of this Confidentiality Agreement. No person to whom Confidential Materials are disclosed shall disclose such materials or the contents of such materials to any person to whom disclosure is not authorized by the terms hereof.

10.  This Confidentiality Agreement does not restrict in any manner the use or disclosure by the Producing Party of any of its own Disclosure Materials. If a disclosure of its own Disclosure Materials designated Confidential is made by the Producing Party in a document filed with the Court not under seal, in a court hearing, or a deposition and not designated Confidential at such deposition, such Disclosure Materials shall no longer be considered Confidential Information.

11.  A Receiving Party shall have no obligation under this Confidentiality Agreement as to Confidential Information which: (a) is known to the Receiving Party at the time of disclosure, without obligation of confidentiality, unless the Receiving Party became aware of the Confidential

Case: 23-30564   Doc# 352   Filed: 11/29/23   Entered: 11/29/23 15:42:58   Page 31 of 96

Information as a result of a violation of this Confidentiality Agreement; (b) is independently developed by the Receiving Party without reference to or use of Confidential Information; (c) becomes known to the Receiving Party from another source, unless the Receiving Party knows or reasonably believes or subsequently becomes aware that such other source was subject to a confidentiality restriction at the time of disclosure; (d) is or becomes part of the public domain through no wrongful act of the Receiving Party; or (e) is disclosed publicly pursuant to any judicial or government request or order; provided that with regard to 11(e) of this paragraph, unless requested not to do so by the judicial or governmental entity, the Receiving Party shall take reasonable steps to give sufficient prior written notice so that the Producing Party may seek a protective order to contest or limit the scope of such request or order as much as possible.

12. Any document containing Confidential Information that is submitted to or filed with the Court shall be filed under seal as a restricted document in accordance with the Procedures for Filing Redacted or Sealed Confidential or High Sensitive Documents, Rule 1001-2 of the Bankruptcy Local Rules for the Northern District of California and the therein incorporated Civil Local Rules for the United States District Court for the Northern District of California (together the "Local Rules"), and any applicable Chambers Procedures. The filing party shall file a publicly viewable redacted form of the document within five (5) business days of the filing of the document under seal as a restricted document. Any party that files a motion to file under seal in the Bankruptcy Court for the Northern District of California shall provide counsel to the U.S. Trustee with an unredacted copy of all documents sought to be sealed, pursuant to Bankruptcy Code § 107(c)(3)(A), provided however, that the filing party may move the Bankruptcy Court (under the motion to seal or otherwise) to limit access to all or a part of the proposed sealed materials on grounds of the attorney-client privilege, joint defense privilege, common interest privilege, work product doctrine or any other applicable privilege, doctrine or other protection from disclosure, provided further that, for the avoidance of doubt, (1) the U.S. Trustee's right to object to the same is fully preserved and (2) the reference herein to "attorney-client privilege, joint defense privilege, common interest privilege, work product doctrine or any other applicable privilege, doctrine or other protection from disclosure" is not intended to, and does not, authorize the disclosure of any such information in contravention of applicable agreement or law or the terms of this Confidentiality Agreement. Pending a ruling on a motion to seal, any party (including the U.S. Trustee) that receives a filing or document subject to a motion to seal shall treat such material as non-public information subject to the continuing protections accorded such material under this Confidentiality Agreement and as subject to the limitation on use and disclosure as set forth in Local Rule 79-5. Moreover, if the motion to seal is denied, the material subject to the motion to seal shall be returned to the filer provided further that such material need not be returned to the filer if the subject material later is filed as a public document. The mere inclusion in a paper or pleading of factual information derived from documents or things designated "CONFIDENTIAL" will not require that paper or pleading to be filed under seal if the Parties agree in writing prior to filing the paper or pleading that the factual information actually contained in that paper or pleading would not itself be properly subject to such designation. If the Parties cannot resolve a dispute regarding the inclusion in a paper or pleading of facts from documents or things marked "CONFIDENTIAL" the procedures of this paragraph shall be followed prior to the filing of any such paper or pleading.

SMRH:4891-9359-0403.5

DOCS_SF:109660.4 05068/002

13.   This Agreement shall not preclude counsel for a Receiving Party from using during any deposition in a Proceeding, any documents or information which have been designated as CONFIDENTIAL under the terms hereof, provided however, that the Receiving Party who intends to use the CONFIDENTIAL shall provide notice of its intent to do so no later than one (1) day prior to any such deposition. Deposition testimony or deposition exhibits may be designated as CONFIDENTIAL either on the record during the deposition or by written notice to the counsel for the parties participating in the deposition served within fifteen (15) business days after receipt of the deposition transcript. No such deposition transcript or deposition exhibits shall be disclosed to any individual other than Receiving Party the deponent during this fifteen (15) business day period, and no individual attending such a deposition shall disclose the contents of the deposition or deposition exhibits to any individual other than the Receiving Party during said fifteen (15) business day period. Upon being informed that certain portions of a deposition are to be designated as CONFIDENTIAL, all parties shall promptly cause each copy of the transcript in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with this Agreement. A Receiving Party may contest the designation of deposition testimony as CONFIDENTIAL pursuant to paragraph 17 hereof.

14.   Nothing contained in this Confidentiality Agreement authorizes a Producing Party to disclose to the Committee or any other party or entity, or their respective professionals, another party's or entity's privileged information that is subject to a shared Privilege or Protection as between the Producing Party and such party or entity. In the event that the Producing Party intends to produce any such information that is subject to a claim by another party or entity of a shared Privilege or Protection, the Producing Party will provide advance notice by email or other writing to the counterparty under the shared Privilege or Protection prior to production by the Producing Party of such information under this Confidentiality Agreement. The notice shall attach the documents or information sought to be produced. Such counterparty will have five (5) business days after receipt of the Producing Party's notice to object by email or other writing to the Producing Party's proposed production and, if such objection is delivered to the Producing Party within the three (3) day period, then the Producing Party and the counterparty will confer in good faith regarding the objection and proposed production. In the event that an agreement cannot be reached between the Producing Party and the objecting counterparty, then the Producing Party will not produce the subject documents or information and the issue will be determined by the Bankruptcy Court.

15.   Except as set forth in paragraph 16 below as to the U.S. Trustee, no one may attend or review the portion(s) of transcripts of any depositions designated as containing Confidential Information, other than the Court and its personnel, the court reporter, outside counsel for the Receiving Party, counsel for a non-Party deponent (who shall first have executed the Agreement To Be Bound By The Confidentiality Agreement attached hereto if such counsel is not also counsel for one of the Parties), and those individuals otherwise permitted to view Confidential Information pursuant to the terms of this Agreement and whose attendance at or review of this data is reasonably necessary to assist in connection with the Proceeding.

16.   The Parties shall discuss the manner of use of Confidential Information at any hearing or trial in the Proceedings, including any procedures related to the non-public disclosure

Case: 23-30564    Doc# 352    Filed: 11/29/23    Entered: 11/29/23 15:42:58    Page 33 of 96

of Confidential Information, and shall consult with the U.S. Trustee with regard to any planned use of Confidential Information at any hearing or trial in the Chapter 11 Cases that involves the non-public disclosure thereof. In the event that an agreement cannot be reached on such procedures, the issue shall be determined by the Bankruptcy Court. Any Party subject to this Confidentiality Agreement must provide written notice of the Party's intent to use Confidential Information at least three (3) business days prior to the date that the Party desires to do so to provide an opportunity for (a) the Producing Party and the Party that desires to use the Confidential Information to negotiate an agreement that avoids the need to file Confidential Information under seal or, in the absence of an agreement, (b) a Party to file a motion seeking an order sealing, redacting, or otherwise protecting such Confidential Information from public disclosure. If a Party files a motion to seal within five (5) business days following receipt of such written notice, the Party desiring to use Confidential Information shall (a) maintain the confidential status of the Confidential Information pending the court's ruling on the motion to seal and (b) use the Confidential Information only in strict conformity with the court's ruling on the motion to seal. If a Party fails to file a Motion to Seal within five (5) business days of receipt of the written notice, any Party desiring to use Confidential Information may use the applicable Confidential Information in the court without any confidentiality protection. All trial exhibits or other materials to be offered into evidence at a hearing or proceeding in the Bankruptcy Court as to which a party seeks to prevent or limit public disclosure shall be provided to counsel to the U.S. Trustee in an unredacted form before the hearing, subject to the continuing restrictions on use and disclosure provided hereunder, to the extent not already provided.

17.     In the event that a dispute arises concerning whether information should be treated as Confidential Materials the party challenging the need for such treatment shall advise the designating party by written notification, specifying why such treatment is improper. The Parties shall attempt to resolve in good faith within five (5) business days any such disputes as to the need to treat the information as Confidential Materials; provided, however, if any such dispute cannot be resolved in five (5) business days, the party objecting to the confidential nature of the information may, on an expedited basis, move for an order relieving it from the obligations of this Confidentiality Agreement, with respect to such Confidential Materials. The Disclosure Materials at issue shall be treated as Confidential Materials, as designated by the Producing Party, until the issue is determined by the Court; provided, however, that the burden shall remain with the Producing Party to demonstrate that Disclosure Materials in dispute are properly designated as Confidential Materials. Nothing in this Confidentiality Agreement shall affect the right of any Party to appeal the Court's determination regarding confidentiality.

18.     In the event that a dispute arises concerning whether Disclosure Materials are subject to a claim of any Privilege or Protection (the "Disputed Protected Materials"), the party challenging the need for such treatment shall advise the party claiming the relevant Privilege or Protection by written notification, specifying why such treatment is improper. The Parties shall attempt to resolve in good faith within five (5) business days any such disputes as to the need to treat the Disputed Protected Materials as subject to a claim of Privilege or Protection; provided, however, if any such dispute cannot be resolved in five (5) business days, the party objecting to the treatment of such information as privileged or protected may, on an expedited basis, move for an order compelling production of the Disputed Protected Materials.. The Disputed Protected Materials will be treated as privileged or protected as claimed by the Producing Party until the

issue is determined by the Court. A party or entity may utilize the protections and procedures set out in paragraph 17 with regard to that party's or entity's claim of its own Privilege or Protection in Disclosure Materials even though it was not the Producing Party.

19.     In the event that any other dispute arises under this Confidentiality Agreement, the party or parties raising the dispute shall advise the non-objecting party or parties by written notification, specifying the dispute. The Parties shall attempt to resolve in good faith within five (5) business days any such disputes, provided, however, if any such dispute cannot be resolved in five (5) business days, the disputing party may, on an expedited basis, request a telephonic conference with the Bankruptcy Court to resolve such dispute in lieu of formal motion. Counsel to the disputing party or parties requesting the telephone conference will send a brief e-mail to chambers describing the dispute, with a copy to counsel to the opposing party or parties.  Counsel to the opposing party or parties may send a brief e-mail to chambers, with a copy to the disputing party or parties.  The Parties, absent Bankruptcy Court order to the contrary, shall treat the foregoing emails as sealed, and may request that any telephonic conference with respect to such dispute be treated as a confidential chambers conference.

20.     A Party's failure to designate information as "CONFIDENTIAL" shall not be deemed a waiver of that Party's later claim that such information should be entitled to another designation pursuant to this Confidentiality Agreement ("Misdesignated Material") at any time thereafter. Documents or information inadvertently disclosed by or on behalf a Producing Party without being designated "Confidential" may thereafter be so designated by promptly notifying the Receiving Party in writing that such materials are Confidential. The Receiving Party shall thereafter treat such materials as so designated.

21.     The provisions of Rule Rule 502(d) of the Federal Rules of Evidence, shall apply to any formal or informal production made by a Producing Party during the pendency of the Bankruptcy Case.

22.     In the event of a disclosure by a Receiving Party of Confidential Information to persons or entities not authorized by this Confidentiality Agreement to receive such Confidential Information, the Receiving Party making the unauthorized disclosure shall, upon learning of the disclosure: (i) promptly  notify the person or entity to whom the disclosure was made that the disclosure contains Confidential Information subject to this Confidentiality Agreement; (ii) promptly make reasonable efforts to recover the disclosed Confidential Information; and (iii) promptly notify the Producing Party of the identity of the person or entity to whom the disclosure was made, the circumstances surrounding the disclosure, and the steps taken to recover the disclosed Confidential Information and ensure against further dissemination or use thereof, and the Producing Party thereafter shall notify any party that such attorney knows (grammer?) to have asserted a claim of its own Privilege or Protection in such Confidential Information. Disclosure of Confidential Information other than in accordance with the terms of this Confidentiality Agreement may subject the disclosing person to such sanctions and remedies as the Court may deem appropriate.(Something is off here)

23.     Nothing herein shall be construed to prohibit, limit or restrict (a) any Receiving Party from obtaining any evidence, including without limitation Confidential Information, through any means of discovery that is provided under applicable rules of civil procedure (including the

Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and the California Code of Civil Procedure) or (b) or a Producing Party from objecting to the production, disclosure or admissibility of any evidence, including without limitation Confidential Information.

24.     The Parties to this Confidentiality Agreement (including parties executing the Agreement To Be Bound By The Confidentiality Agreement attached hereto) agree that prior to and after the completion of the Proceeding, the provisions of this Confidentiality Agreement shall continue to be binding and the Court shall retain jurisdiction over the Parties and any other person who has had access to Confidential Information pursuant to this Confidentiality Agreement, in order to enforce the provisions of this Confidentiality Agreement.

25.     Except as otherwise provided by the Bankruptcy Court, within thirty (30) days of a final decree closing the Bankruptcy Case, the Receiving Parties shall return all Confidential Information to the Producing Parties or, at the Receiving Party's option, destroy the Confidential Information and certify such destruction in writing.

26.     Any interested party with respect to this Bankruptcy Case, including but not limited to any person intending or planning to receive or produce documents, receive or disclose information, or provide testimony in connection therewith, may become a party to this Confidentiality Agreement by executing, prior to any disclosure, the Agreement To Be Bound By the Confidentiality Agreement attached hereto as Exhibit A, in which case the provisions of this Confidentiality Agreement shall fully apply to any discovery material that they may provide or receive, provided, however, that any Disclosure Materials may be produced to any such party only by or with the express written consent of the Producing Party, and subject to the terms this Confidentiality Agreement.

27.     In the event that any applicable law, regulation, or legal or judicial process requires disclosure of any Confidential Information by any Receiving Party, such Receiving Party will provide the Producing Party with prompt written notice of such requirement(s) so that the Producing Party may seek a protective order or other appropriate remedy.  In the event that such protective order or other remedy is not obtained, the Receiving Party (i) may furnish that portion of the Confidential Information which the Recipient is legally required to disclose.

28.     Nothing herein shall be deemed to prevent a Producing Party, or any party or entity claiming a Privilege or Protection in connection thereto, from objecting to discovery or asserting that information being sought in discovery is of such a nature that discovery should not be afforded because of the confidential, personal, or proprietary nature of the information being sought or to preclude a Party from seeking additional or further limitations on the use or disclosure of such information being sought in discovery.

## **REMEDIES**

29.     The Parties to this Confidentiality Agreement acknowledge that in the event of any breach by the Parties to this Confidentiality Agreement, immediate, substantial, and irrevocable damage may result and the Producing Party may not be made whole by monetary damages alone. Accordingly, the Producing Party, in addition to any other remedy to which the Producing Party may be entitled by law or in equity, shall be entitled to seek an injunction to prevent breaches of

Case: 23-30564     Doc# 352     Filed: 11/29/23     Entered: 11/29/23 15:42:58     Page 36 of 96

this Confidentiality Agreement, and to seek an order compelling specific performance of this Confidentiality Agreement. Such remedy and any and all other remedies provided for in this Confidentiality Agreement shall be cumulative and not exclusive and in addition to any other remedies which may exist under this Agreement or otherwise. No failure or delay by any party in exercising any right, power, defense or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise or the exercise of any right, power, or privilege under this Confidentiality Agreement. The Parties to this Confidentiality Agreement agree to meet and attempt to resolve in good faith any dispute that arises under this Confidentiality Agreement.

30.    No waiver of any breach or default shall be deemed or construed to constitute a waiver of any other violation or other breach of any of the terms, provisions and covenants contained in this Confidentiality Agreement, and forbearance to enforce one or more of the remedies provided herein in the event of a default will not be deemed or construed to constitute a waiver of that default or of any other remedy provided for in this Confidentiality Agreement. Furthermore, nothing contained herein shall reduce any protections otherwise provided by other confidentiality agreements to which the Parties, and other persons, who become a party hereto, are a party.

## **MISCELLANEOUS**

31.    This Confidentiality Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. This Confidentiality Agreement is a binding agreement upon the signatories hereto (and to the Agreement To Be Bound By The Confidentiality Agreement attached hereto).

32.    This Confidentiality Agreement contains the entire agreement and understanding of the Parties with respect to the subject matter of this Confidentiality Agreement, and supersedes all prior agreements, negotiations, representations, and proposals, written and oral, relating to the subject matter of this Confidentiality Agreement. This Confidentiality Agreement may be amended or modified only in a writing executed by the Parties.

33.    If for any reason any provision of this Confidentiality Agreement shall be deemed by a court of competent jurisdiction to be legally invalid or unenforceable, the validity, legality, and enforceability of the remainder of this Confidentiality Agreement shall not be affected and such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law and, in its modified form, such provision shall then be enforceable and enforced.

34.    This Confidentiality Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to the provisions, policies or principles of the laws of the State of California relating to choice or conflict of laws. Each of the undersigned expressly consents to the jurisdiction of the Bankruptcy Court, with respect to any dispute relating to or arising out of this Confidentiality Agreement.

35.    Except as expressly set forth in this Confidentiality Agreement, each party shall bear its own costs, expenses, taxes, and other charges whatsoever incurred in connection with the execution and performance of this Confidentiality Agreement. Notwithstanding the foregoing, in

the event of a willful breach of this Confidentiality Agreement, the non-breaching party shall be entitled to recover all reasonable costs, including reasonable attorneys' fees, incurred in enforcing the Confidentiality Agreement against such willfully breaching party.

36. This Confidentiality Agreement shall inure to the benefit of, and shall be binding upon, the Parties, their respective successors and permitted assigns.

37. The Parties to this Confidentiality Agreement expressly agree to the waiver of a trial by jury in any suit, action, or other proceeding whatsoever relating to the enforcement or interpretation of this Confidentiality Agreement and/or the series of transactions contemplated by this Confidentiality Agreement.

Stipulated and agreed to by:

| | |
|---|---|
| /s/ DRAFT | /s/ DRAFT |
| Paul J. Pascuzzi (SBN 148810) | James I. Stang (SBN 94435) |
| Jason E. Rios (SBN 190086) | Debra I. Grassgreen (SBN 169978) |
| Thomas R. Phinney (SBN 159435) | John W. Lucas (SBN 271038) |
| FELDERSTEIN FITZGERALD | PACHULSKI STANG ZIEHL & JONES LLP |
| WILLOUGHBY PASCUZZI & RIOS LLP | One Sansome Street, 34th Floor, Suite 3430 |
| 500 Capitol Mall, Suite 2250 | San Francisco, CA 94104-4436 |
| Sacramento, CA 95814 | Email: rpachulski@pszjlaw.com |
| Telephone: (916) 329-7400 | dgrassgreen@pszjlaw.com |
| Facsimile: (916) 329-7435 | jlucas@pszjlaw.com |
| Email: ppascuzzi@ffwplaw.com | |
| jrios@ffwplaw.com | |
| tphinney@ffwplaw.com | |

*Proposed Counsel for the Official Committee of Unsecured Creditors*

– and –

Ori Katz (SBN 209561)
Alan H. Martin (SBN132301)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email: okatz@sheppardmullin.com
      amartin@sheppardmullin.com

*Counsel for Debtor*

## Exhibit A

## AGREEMENT TO BE BOUND BY THE CONFIDENTIALITY AGREEMENT

This is to certify that:

(a) I am producing and/or being given access to Confidential Information under the Confidentiality Agreement entered by and among the Roman Catholic Archbishop of San Francisco in the chapter 11 bankruptcy case being administered as case number 23-30564 and the Official Committee of Unsecured Creditors appointed in the aforementioned chapter 11 bankruptcy case;

(b) I agree to be bound by the terms and conditions thereof as a "Receiving Party" and "Producing Party," as the case may be, including, without limitation, the obligations regarding the use, non-disclosure and return of such Confidential Information; and

(c) I further agree that in addition to being contractually bound by the Confidentiality Agreement, I am subject to the powers of the Bankruptcy Court for any violation of the Confidentiality Agreement. .

Date: _____

_____
Name (Printed)


Signature

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is made this [   ] day of October 2023, by and among the Roman Catholic Archbishop of San Francisco (the "Debtor" or "Archdiocese") in the chapter 11 bankruptcy case being administered as case number 23-30564 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), the Official Committee of Unsecured Creditors (the "Committee") appointed in the Bankruptcy Case, and the Authorized Recipients (as defined below).

## RECITALS

WHEREAS, on August 21, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court, commencing the Bankruptcy Case.

WHEREAS, the Debtor continues to be in possession of its property and estate and manages its day-to-day business as a debtor in possession.

WHEREAS, on September 1, 2023, the Office of the United States Trustee for Region 17 appointed the Committee ("U.S. Trustee").

WHEREAS, the Debtor and the Committee desire to enter into this Confidentiality Agreement, in order to set forth their understandings and agreements with respect to the ability of the Committee, its designated representatives, and its counsel or other professional advisers to have access to confidential information as defined in this Agreement.

## DEFINITIONS

1.      A "Producing Party" is a person or entity that produces information and documents, including deposition testimony or transcripts, disclosed in connection with the Bankruptcy Case ("Disclosure Materials") in response to formal or informal discovery served in connection with the Bankruptcy Case, including any related contested matter, adversary action, or appeal (each, as applicable, a "Proceeding," and collectively, the "Proceedings").

2.      A "Receiving Party" is a person or entity to whom a Producing Party produces Disclosure Materials in response to formal or informal discovery served in connection with any of the Proceedings.

3.      "CommitteeA "Joinder Firm" as used herein: means those attorneys who have been retained by one or more Committee Members to represent such person(s) in the prosecution of claims arising under AB 218 (California Code of Civil Procedure section 340.1) (the "CVA") and individually in the Case who have executed a Confidentiality Joinder in the form attached as Exhibit A.

3.4.     "Committee" as used herein means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case.

SMRH:4891-9359-0403.5

DOCS_SF:109660.4 05068/002

-1-

**Formatted:** Normal

5. ""Definition of Confidential Information" shall include":

(a) For purposes of this Agreement, Confidential Information means any nonpublic information (whether written, oral, photographic, electronic or otherwise), documents, or things produced or provided (formally or informally) by the Producing Party explicitly designated and marked by the Producing Party as Confidential Information, that such party has a good faith reasonable belief contains confidential, proprietary, or personally sensitive information of the Producing Party, including, without limitation, (a) nonpublic information concerning the Producing Party's assets, liabilities, business operations, business practices, business plans, agreements, contracts, intellectual property and trade secrets, financial projections, financial and business analyses, and compilations and studies relating to the foregoing, and other nonpublic documents prepared by the Producing Party or any of its affiliates or their respective employees, agents, attorneys, professionals, consultants or other agents that has been or is to be obtained from a third party that is subject to a separate confidentiality or nondisclosure agreement or order with respect to such information, or which the Receiving Party reasonably would have had cause to know was nonpublic;(b) information implicating an individual's legitimate expectation of privacy, including medical information and social security numbers; (c) any and all information required to be maintained confidentially by federal, state or local laws, rules, regulations or ordinances governing or relating to privacy rights, which are furnished, disclosed or made known to, a Receiving Party, or which the Receiving Party reasonably would have had cause to know was required to be so treated, whether intentionally or unintentionally and in any manner, including in written form, orally or through any electronic, facsimile or computer-related means of communication; or (d) anything marked as Confidential; or (e) anything that, pursuant to an order of the Bankruptcy Court, may not be disclosed to parties to other proceedings or their respective employees, agents, attorneys, professionals, consultants or other agents. Confidential Information shall also include, without limitation: (i) any notes, summaries, compilations, presentations, memoranda or similar written materials disclosing, discussing or that is based on or reflects Confidential Information; (ii) any written Confidential Information that is discussed or presented orally; and (iii) any other Confidential Information conveyed to a Receiving Party orally or in writing that the Producing Party or their advisors or other agents advise the Receiving Party should be treated as confidential.

5. "Highly Confidential Information" shall mean for "attorneys' and advisors' eyes only" and shall be limited to nonpublic information produced or provided (formally or informally) that is marked or designated as "Highly Confidential," whether written, oral, photographic, electronic or otherwise, whether in the form of slides, handouts, letters, memoranda, agreements, facsimile transmissions, meetings, conference and other telephone calls, diskettes, files, and/or any other mode, and that, if disclosed, could cause significant privacy, personal, or litigation harm to the Producing Party.

(b) Notwithstanding the foregoing, Confidential Information shall not include information which (i) was generally available to the public prior to its being disclosed under this Agreement, (ii) becomes generally available to the public after its receipt from the Producing Party through no act or failure to act on the part of any Receiving Party, (iii) was obtained by a Receiving Party from a third party under no obligation to maintain its confidentiality, or (iv) was

developed by a Receiving Party independent of the Confidential Information provided under and not in violation of this Agreement.

6.  If the sole basis for designating a document as Confidential Information is that such document identifies a minor as a survivor of sexual abuse (any such document, an "**Identifying Document**"), then the sexual abuse survivor identified in the Identifying Document (the "**Disclosing Survivor**") may disclose the document to any third party if (a) the Disclosing Survivor serves written notice of his or her intent to disclose such document (which such notice shall include a complete copy of the document or documents sought to be disclosed) (a "**Disclosure Notice**"), and (b) the Archdiocese does not, within ten (10) days of its receipt of the Disclosure Notice, respond in writing to Committee Counsel stating that such document was designated as Confidential Information for any reason other than it identifies a minor as a survivor of sexual abuse. If the Archdiocese serves a written response in accordance with clause (b) of the preceding sentence, then the applicable Identifying Document shall be deemed a dispute and the Disclosing Survivor may seek to remove the confidentiality designation in accordance with paragraph 17 hereof.

## AGREEMENT

~~6.~~7.  Upon a good faith determination by the Producing Party that any Disclosure Materials being produced or disclosed to a Receiving Party, whether formally or informally, contain Confidential Information ~~or Highly Confidential Information~~, the Producing Party shall identify such ~~Confidential Information or Highly~~ Confidential Information by affixing to it, in a manner that shall not interfere with its legibility, the words "CONFIDENTIAL~~" or "HIGHLY CONFIDENTIAL"~~" on each page so designated (if the information is produced in written form) or otherwise conspicuously labeling it on a part thereof (if in the form of tape, disc, or other form that makes it difficult to label each page); provided, however, that if the Disclosure Materials are too voluminous or otherwise too burdensome to mark each page with such designation, then the first page of the written Disclosure Materials shall be marked accordingly and the Producing Party shall communicate its intention to designate the entire written Disclosure Material as Confidential Information ~~or Highly Confidential Information. Any summary, compilation or copy of any document or thing so designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall also be treated as so designated pursuant to this Confidentiality Agreement. The "CONFIDENTIAL" or "HIGHLY~~. The "CONFIDENTIAL" designation shall, wherever practicable, be made prior to, or contemporaneously with, production or disclosure, except in the case of depositions, which shall be designated as set forth in paragraph ~~15~~13. Disclosure Materials, or information derived therefrom, shall be used solely in connection with the Proceedings, and shall not be used in any other proceeding or for any other purpose.

Formatted: Highlight

~~7.~~8.  Disclosure Materials designated as "CONFIDENTIAL" ("Confidential Materials") or the contents thereof shall not be given, shown, made available, communicated, used or otherwise disclosed to anyone other than (a) the Court; (b) outside counsel for the parties to the Proceedings, and paralegal, stenographic and clerical personnel of such counsel; (c) experts (including financial advisors, consultants, and other retained professionals) specifically retained by the parties for purposes relating to the Proceedings; (d) litigation vendors and other third-party litigation support personnel engaged for purposes of the Proceedings; and (e) the parties to the

Formatted: Normal

Proceeding, provided that in the case of the Committee, the term party shall be limited to the Committee and those members thereof who have accepted the terms of this Confidentiality Agreement; (f) each Joinder Firm, except: (i) with prior written approval of the Producing Party or its attorneys in the case of Disclosure Materials or the party requesting the designation in the case of deposition transcripts; or (ii) upon further order of the Court and after notice to all parties to the Proceeding; or (iii) as set forth in paragraphs 12 and 1615 below with respect to the U.S. Trustee, and his counsel.

8.     Disclosure Materials designated as "HIGHLY CONFIDENTIAL" ("Highly Confidential Materials") or the contents thereof shall not be given, shown, made available, communicated, used or otherwise disclosed to anyone, including without limitation the parties and their members, employees, officers, and agents, and in-house counsel, other than (a) the Court; (b) outside counsel for the counsel for the Debtor and Committee (collectively the "Parties"), and paralegal, stenographic and clerical personnel of such counsel, provided that in the case of the Committee, the term outside counsel shall not include any member of or its representative on the Committee, but shall include professionals formally engaged to represent the Committee in the Proceedings even if the retention application of such professional has not yet been filed with, or approved by, the Bankruptcy Court; (c) experts (including financial advisors, consultants, and other retained professionals) specifically retained by the Parties for purposes relating to the Proceedings; and (d) litigation vendors and other third-party litigation support personnel engaged by the Parties for purposes of the Proceedings; except: (i) with prior written approval of the party requesting the designation in the case of deposition transcripts or of the Producing Party or its attorneys in the case of other Highly Confidential Materials; or (ii) upon further order of the Court and after notice to all Parties to the Proceeding; or (iii) as set forth in paragraphs 11 and 15 below with respect to the U.S. Trustee and his counsel.

9.     Disclosure to the individuals authorized pursuant to paragraphs 7 andparagraph 8 of this Confidentiality Agreement shall be made only as necessary for matters in the Proceedings and only after the person to whom the disclosure is to be made has been informed of the confidential or highly confidential nature of the Disclosure Materials and agrees to be bound by the terms of this Confidentiality Agreement. No person to whom Confidential Materials or Highly Confidential Materials are disclosed shall disclose such materials or the contents of such materials to any person to whom disclosure is not authorized by the terms hereof.

10.     This Confidentiality Agreement does not restrict in any manner the use or disclosure by the Producing Party of any of its own Disclosure Materials. If a disclosure of its own Disclosure Materials designated Confidential or Highly Confidential is made by the Producing Party in a document filed with the Court not under seal, in a court hearing, or a deposition and not designated Confidential or Highly Confidential at such deposition, such Disclosure Materials shall no longer be considered Confidential Information or Highly Confidential Information.

11.     A Receiving Party shall have no obligation under this Confidentiality Agreement as to Confidential Information or Highly Confidential Information which: (a) is known to the Receiving Party at the time of disclosure, without obligation of confidentiality, unless the Receiving Party became aware of the Confidential Information or Highly Confidential Information as a result of a violation of this Confidentiality Agreement; (b) is independently developed by the

Receiving Party without reference to or use of Confidential Information ~~or Highly Confidential Information~~; (c) becomes known to the Receiving Party from another source, unless the Receiving Party knows or reasonably believes or subsequently becomes aware that such other source was subject to a confidentiality restriction at the time of disclosure; (d) is or becomes part of the public domain through no wrongful act of the Receiving Party; or (e) is disclosed publicly pursuant to any judicial or government request or order; provided that with regard to 11(e) of this paragraph, unless requested not to do so by the judicial or governmental entity, the Receiving Party shall take reasonable steps to give sufficient prior written notice so that the Producing Party may seek a protective order to contest or limit the scope of such request or order as much as possible.

12.     Any document containing ~~Confidential Information or Highly~~ Confidential Information that is submitted to or filed with the Court shall be filed under seal as a restricted document in accordance with the Procedures for Filing Redacted or Sealed Confidential or High Sensitive Documents, Rule 1001-2 of the Bankruptcy Local Rules for the Northern District of California and the therein incorporated Civil Local Rules for the United States District Court for the Northern District of California (together the "Local Rules"), and any applicable Chambers Procedures. The filing party shall file a publicly viewable redacted form of the document within five (5) business days of the filing of the document under seal as a restricted document. Any party that files a motion to file under seal in the Bankruptcy Court for the Northern District of California shall provide counsel to the U.S. Trustee with an unredacted copy of all documents sought to be sealed, pursuant to Bankruptcy Code § 107(c)(3)(A), provided however, that the filing party may move the Bankruptcy Court (under the motion to seal or otherwise) to limit access to all or a part of the proposed sealed materials on grounds of the attorney-client privilege, joint defense privilege, common interest privilege, work product doctrine or any other applicable privilege, doctrine or other protection from disclosure, provided further that, for the avoidance of doubt, (1) the U.S. Trustee's right to object to the same is fully preserved and (2) the reference herein to "attorney-client privilege, joint defense privilege, common interest privilege, work product doctrine or any other applicable privilege, doctrine or other protection from disclosure" is not intended to, and does not, authorize the disclosure of any such information in contravention of applicable agreement or law or the terms of this Confidentiality Agreement. Pending a ruling on a motion to seal, any party (including the U.S. Trustee) that receives a filing or document subject to a motion to seal shall treat such material as non-public information subject to the continuing protections accorded such material under this Confidentiality Agreement and as subject to the limitation on use and disclosure as set forth in Local Rule 79-5. Moreover, if the motion to seal is denied, the material subject to the motion to seal shall be returned to the filer provided further that such material need not be returned to the filer if the subject material later is filed as a public document. The mere inclusion in a paper or pleading of factual information derived from documents or things designated "~~CONFIDENTIAL" or "HIGHLY~~ CONFIDENTIAL" will not require that paper or pleading to be filed under seal if the Parties agree in writing prior to filing the paper or pleading that the factual information actually contained in that paper or pleading would not itself be properly subject to such designation. If the Parties cannot resolve a dispute regarding the inclusion in a paper or pleading of facts from documents or things marked "CONFIDENTIAL ~~or "HIGHLY CONFIDENTIAL,"~~ the procedures of this paragraph shall be followed prior to the filing of any such paper or pleading.

**Formatted:** Normal

13.    Except as otherwise approved by the Producing Party or by an order of the Court, the Receiving Party may use the Confidential Information or Highly Confidential Information, including any information contained in documents so designated, in preparing and deposing only: (a) an individual who has had or who is eligible to have access to the Confidential Information or Highly Confidential Information by virtue of his or her employment with the Producing Party, the Debtor, any Party, or an affiliate of the Debtor; (b) an individual identified in the Confidential Information or Highly Confidential Information as an author, addressee, or copy recipient of such information; (c) an individual who, although not identified as an author, addressee, or copy recipient of such Confidential Information or Highly Confidential Information, has seen such Confidential Information or Highly Confidential Information in the ordinary course of the Debtor's business; (d) any of the professionals retained by the Producing Party including the Producing Party's accountants; or (e) any other non-Party witness who has executed the Agreement To Be Bound By The Confidentiality Agreement attached hereto; provided, however, that such disclosure to any non-Party witness is only for the pertinent topic(s) for which such non-Party witness needs to be prepared or deposed and no more than is necessary and only to the extent that it relates to the Proceedings.

14.    The portions of any deposition transcript that the Producing Party has designated on the record as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and any Confidential Information or Highly Confidential Information that is marked as a deposition exhibit shall be treated as Confidential Information or Highly Confidential Information. Notwithstanding the foregoing, the entirety of all deposition transcripts shall be deemed Confidential Information for five (5) business days after the transcript is delivered to counsel for the Producing Party. During the five (5) business day period, the Producing Party may designate by page and line number any portion of a deposition transcript, to the extent not previously designated, as Confidential Information or Highly Confidential Information. Transcript pages and exhibits containing Confidential Information or Highly Confidential Information shall be distributed only in accordance with this Confidentiality Agreement and to the deponent, and the deponent's counsel (who shall first have executed the Agreement To Be Bound By The Confidentiality Agreement attached hereto if such counsel is not also counsel for one of the Parties).

13.  This Agreement shall not preclude counsel for a Receiving Party from using during any deposition in a Proceeding, any documents or information which have been designated as CONFIDENTIAL under the terms hereof, provided however, that the Receiving Party who intends to use the CONFIDENTIAL shall provide notice of its intent to do so no later than one (1) day prior to any such deposition. Deposition testimony or deposition exhibits may be designated as CONFIDENTIAL either on the record during the deposition or by written notice to the counsel for the parties participating in the deposition served within fifteen (15) business days after receipt of the deposition transcript. No such deposition transcript or deposition exhibits shall be disclosed to any individual other than Receiving Party the deponent during this fifteen (15) business day period, and no individual attending such a deposition shall disclose the contents of the deposition or deposition exhibits to any individual other than the Receiving Party during said fifteen (15) business day period. Upon being informed that certain portions of a deposition are to be designated as CONFIDENTIAL, all parties shall promptly cause each copy of the transcript

Formatted: Normal

in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with this Agreement. A Receiving Party may contest the designation of deposition testimony as CONFIDENTIAL pursuant to paragraph 17 hereof.

15.14.   Nothing contained in this Confidentiality Agreement authorizes a Producing Party to disclose to the Committee or any other party or entity, or their respective professionals, another party's or entity's privileged information that is subject to a shared Privilege or Protection as between the Producing Party and such party or entity. In the event that the Producing Party intends to produce any such information that is subject to a claim by another party or entity of a shared Privilege or Protection, the Producing Party will provide advance notice by email or other writing to the counterparty under the shared Privilege or Protection prior to production by the Producing Party of such information under this Confidentiality Agreement. The notice shall attach the documents or information sought to be produced. Such counterparty will have five (5) business days after receipt of the Producing Party's notice to object by email or other writing to the Producing Party's proposed production and, if such objection is delivered to the Producing Party within the three (3) day period, then the Producing Party and the counterparty will confer in good faith regarding the objection and proposed production. In the event that an agreement cannot be reached between the Producing Party and the objecting counterparty, then the Producing Party will not produce the subject documents or information and the issue will be determined by the Bankruptcy Court.

16.15.   Except as set forth in paragraph 1716 below as to the U.S. Trustee, no one may attend or review the portion(s) of transcripts of any depositions designated as containing Confidential Information or Highly Confidential Information, other than the Court and its personnel, the court reporter, outside counsel for the Receiving Party, counsel for a non-Party deponent (who shall first have executed the Agreement To Be Bound By The Confidentiality Agreement attached hereto if such counsel is not also counsel for one of the Parties), and those individuals otherwise permitted to view Confidential Information or Highly Confidential Information pursuant to the terms of this Agreement and whose attendance at or review of this data is reasonably necessary to assist in connection with the Proceeding.

17.16.   The Parties shall discuss the manner of use of Confidential Information or Highly Confidential Information at any hearing or trial in the Proceedings, including any procedures related to the non-public disclosure of Confidential Information or Highly Confidential Information, and shall consult with the U.S. Trustee with regard to any planned use of Confidential Information or Highly Confidential Information at any hearing or trial in the Chapter 11 Cases that involves the non-public disclosure thereof. In the event that an agreement cannot be reached on such procedures, the issue shall be determined by the Bankruptcy Court.  Any Party subject to this Confidentiality Agreement must provide written notice of the Party's intent to use Confidential Information or Highly Confidential Information at least five (5three (3) business days prior to the date that the Party desires to do so to provide an opportunity for (a) the Producing Party and the Party that desires to use the Confidential Information or Highly Confidential Information to negotiate an agreement that avoids the need to file Confidential Information or Highly Confidential Information under seal or, in the absence of an agreement, (b) a Party to file a motion seeking an order sealing, redacting, or otherwise protecting such Confidential Information or Highly Confidential Information from public disclosure.  If a Party files a motion to seal within five (5)

Case: 23-30564    Doc# 352    Filed: 11/29/23    Entered: 11/29/23 15:42:58    Page 46 of 96

Formatted: Highlight

Formatted: Normal

business days following receipt of such written notice, the Party desiring to use Confidential Information ~~or Highly Confidential Information~~ shall (a) maintain the confidential status of the Confidential Information ~~or Highly Confidential Information~~ pending the court's ruling on the motion to seal and (b) use the Confidential Information ~~or Highly Confidential Information~~ only in strict conformity with the court's ruling on the motion to seal.  If a Party fails to file a Motion to Seal within five (5) business days of receipt of the written notice, any Party desiring to use Confidential Information ~~or Highly Confidential Information~~ may use the applicable ~~Confidential Information or Highly~~ Confidential Information in the court without any confidentiality protection. All trial exhibits or other materials to be offered into evidence at a hearing or proceeding in the Bankruptcy Court as to which a party seeks to prevent or limit public disclosure shall be provided to counsel to the U.S. Trustee in an unredacted form before the hearing, subject to the continuing restrictions on use and disclosure provided hereunder, to the extent not already provided.

~~18.~~17.  In the event that a dispute arises concerning ~~the question of~~ whether information should be treated as Confidential Materials ~~or Highly Confidential Materials,~~ the party challenging the need for such treatment shall advise the designating party by written notification, specifying why such treatment is improper. The Parties shall attempt to resolve in good faith within five (5) business days any such disputes as to the need to treat the information as Confidential Materials ~~or Highly Confidential Materials~~; provided, however, if any such dispute cannot be resolved in five (5) business days, the party objecting to the confidential nature of the information may, on an expedited basis ~~and no more than twenty (20) business days after the objecting party's written notification~~, move for an order relieving it from the obligations of this Confidentiality Agreement, with respect to such Confidential Materials ~~or Highly Confidential Materials. The party challenging the designation shall demonstrate to the Court that good faith attempts to resolve the dispute without the need for the Court's intervention have been exhausted.~~  The Disclosure Materials at issue shall be treated as ~~Confidential Materials or Highly~~ Confidential Materials, as designated by the Producing Party, until the issue is determined by the Court; provided, however, that the burden shall remain with the Producing Party to demonstrate that Disclosure Materials in dispute are properly designated as Confidential Materials ~~or Highly Confidential Materials.~~. Nothing in this Confidentiality Agreement shall affect the right of any Party to appeal the Court's determination regarding confidentiality.

18.    In the event that a dispute arises concerning whether Disclosure Materials are subject to a claim of any Privilege or Protection (the "Disputed Protected Materials"), the party challenging the need for such treatment shall advise the party claiming the relevant Privilege or Protection by written notification, specifying why such treatment is improper. The Parties shall attempt to resolve in good faith within five (5) business days any such disputes as to the need to treat the Disputed Protected Materials as subject to a claim of Privilege or Protection; provided, however, if any such dispute cannot be resolved in five (5) business days, the party objecting to the treatment of such information as privileged or protected may, on an expedited basis, move for an order compelling production of the Disputed Protected Materials.  The Disputed Protected Materials will be treated as privileged or protected as claimed by the Producing Party until the issue is determined by the Court. ~~under this Confidentiality Agreement, including without limitation concerning the question of whether information should be treated as Confidential Information or Highly Confidential Information whether such consent has been reasonably withheld~~A party or entity may utilize the protections and procedures set out in paragraph 17 with

**Formatted:** Normal

regard to that party's or entity's claim of its own Privilege or Protection in Disclosure Materials even though it was not the Producing Party.

19. In the event that any other dispute arises under this Confidentiality Agreement, the party or parties raising the dispute shall advise the non-objecting party or parties by written notification, specifying the dispute. The Parties shall attempt to resolve in good faith within five (5) business days any such disputes, provided, however, if any such dispute cannot be resolved in five (5) business days, the disputing party may, on an expedited basis, request a telephonic conference with the Bankruptcy Court to resolve such dispute in lieu of formal motion. Counsel to the disputing party or parties requesting the telephone conference will send a brief e-mail to chambers describing the dispute, with a copy to counsel to the opposing party or parties. Counsel to the opposing party or parties may send a brief e-mail to chambers, with a copy to the disputing party or parties. The Parties, absent Bankruptcy Court order to the contrary, shall treat the foregoing emails as sealed, and may request that any telephonic conference with respect to such dispute be treated as a confidential chambers conference.

20. A Party's failure to designate information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall not be deemed a waiver of that Party's later claim that such information should be entitled to another designation pursuant to this Confidentiality Agreement ("Misdesignated Material") at any time thereafter. Documents or information inadvertently disclosed by or on behalf a Producing Party without being designated "Confidential" or "Highly Confidential" may thereafter be so designated by promptly notifying the Receiving Party in writing that such materials are Confidential or Highly Confidential, as the case may be. The Receiving Party shall thereafter treat such materials as so designated.

21. If Disclosure Material (designated Confidential, Highly Confidential or neither) that is subject to a claim of attorney-client privilege, joint defense privilege, common interest privilege, work product doctrine, or any other applicable privilege, doctrine or protection from disclosure (a "Privilege or Protection" or "Privileged or Protected"), is nevertheless inadvertently produced ("Inadvertently Produced Material"), such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of Privilege or Protection to which such inadvertently Producing Party or any person or entity claiming a shared Privilege or Protection would otherwise be entitled, in these Proceedings or any other federal or state proceeding. This Confidentiality Agreement shall be interpreted to provide the maximum protection allowed by Rule 502(d) of the Federal Rules of Evidence, and the Parties agree that their productions satisfy the provisions of Rule 502(b). If a claim of inadvertent production is made pursuant to this paragraph, the Receiving Party shall, upon notification and request, return or destroy the Inadvertently Produced Material (including all copies thereof) as to which the claim of inadvertent production has been made, within five (5) business days, and the information shall not be used for any purpose. Such request shall describe the Inadvertently Produced Material with a reasonable degree of specificity (such as a Bates number or range, or other manner by which the Receiving Party can identify the material) and state the applicable Privilege or Protection upon which a claim of inadvertent disclosure is predicated. If a Producing Party discovers that it has produced Disclosure Materials that appear to be subject to a Privilege or Protection, the Producing Party who provided the Disclosure Materials shall immediately notify the Receiving Party in writing or electronic mail regarding the production and shall provide the Receiving Party with the

Formatted: Normal

first bates number or bates range of the Inadvertently Produced Materials. If a Receiving Party discovers that it has received Disclosure Materials that it knows or is reasonably certain are Inadvertently Produced Materials, the Receiving Party shall immediately notify the Producing Party regarding the production and provide the Producing Party with the first bates number or bates range of the potentially Inadvertently Produced Materials. Nothing in this paragraph is intended to limit any obligations or rights a Party, or other parties or entities, may otherwise have under this Confidentiality Agreement or any other applicable law or regulation with regards to the treatment of inadvertently produced documents subject to any Privilege or Protection. The Producing Party shall immediately provide notice of a request for the return of Inadvertently Produced Materials to any party or entity known, or reasonably certain, to such Producing Party to assert a claim of its own Privilege or Protection in such Inadvertently Produced Materials, and the Producing Party shall provide such party or entity a copy of the documents or information identified as Inadvertently Produced Material and as to which such person or entity is known, or reasonably certain, to assert a claim of its own Privilege or Protection. For the avoidance of doubt, the procedures set forth in this paragraph shall apply to any formal or informal production made by a Producing Party during the pendency of the Bankruptcy Case.

21.    In the event that a dispute arises concerning the question of whether Disclosure Materials are subject to a claim of any Privilege or Protection (the "Disputed Protected Materials"), the party challenging the need for such treatment shall advise the party claiming the relevant Privilege or Protection by written notification, specifying why such treatment is improper. The Parties shall attempt to resolve in good faith within five (5) business days any such disputes as to the need to treat the Disputed Protected Materials as subject to a claim of Privilege or Protection; provided, however, if any such dispute cannot be resolved in five (5) business days, the party objecting to the treatment of such information as privileged or protected may, on an expedited basis and no more than twenty (20) business days after the objecting party's written notification, move for an order compelling production of the Disputed Protected Materials. The party challenging a claim of Privilege or Protection shall demonstrate to the Court that good faith attempts to resolve the dispute without the need for the Court's intervention have been exhausted.The provisions of Rule Rule 502(d) of the Federal Rules of Evidence, shall apply to any formal or informal production made by a Producing Party during the pendency of the Bankruptcy Case.

22.    In the event of a disclosure by a Receiving Party of The Disputed Protected Materials will be treated as privileged or protected as claimed by the Producing Party until the issue is determined by the Court. A party or entity may utilize the protections and procedures set out in paragraphs 20 and 21 with regard to that party's or entity's claim of its own Privilege or Protection in Disclosure Materials even though it was not the Producing Party.

23.22.    In the event of a disclosure by a Receiving Party of Confidential Information or Highly Confidential Information to persons or entities not authorized by this Confidentiality Agreement to receive such Confidential Information or Highly Confidential Information, the Receiving Party making the unauthorized disclosure shall, upon learning of the disclosure: (i) immediately promptly notify the person or entity to whom the disclosure was made that the disclosure contains Confidential Information or Highly Confidential Information subject to this Confidentiality Agreement; (ii) immediatelypromptly make reasonable efforts to recover the

Formatted: Normal

disclosed Confidential Information ~~or Highly Confidential Information as well as preclude further dissemination or use by the person or entity to whom the disclosure was made~~; and (iii) ~~immediately~~promptly notify the Producing Party of the identity of the person or entity to whom the disclosure was made, the circumstances surrounding the disclosure, and the steps taken to recover the disclosed Confidential Information ~~or Highly Confidential Information~~ and ensure against further dissemination or use thereof, and the Producing Party thereafter shall notify any party that such attorney knows ==(grammer?)== to have asserted a claim of its own Privilege or Protection in such Confidential Information ~~or Highly Confidential Information.~~ Disclosure of ~~Confidential Information or Highly~~ Confidential Information other than in accordance with the terms of this Confidentiality Agreement may subject the disclosing person to such sanctions and remedies as the Court may deem appropriate. ==(Something is off here)==

Formatted: Highlight

~~24.    When counsel for any party or an attorney who has executed this Confidentiality Agreement or the Agreement To Be Bound By The Confidentiality Agreement attached hereto becomes aware of any violation of this Confidentiality Agreement, or of facts constituting good cause to believe that a violation of this Confidentiality Agreement may have occurred, such attorney shall promptly report, with appropriate particulars to assist in aiding any investigation, to counsel for the Producing Party that there may have been a violation of this Confidentiality Agreement, and the Producing Party shall notify any party that such attorney knows to have asserted a claim of its own Privilege or Protection in Disclosure Materials if such Disclosure Materials are the subject of the violation or alleged violation of this Confidentiality Agreement.~~

23.    Nothing herein shall be construed to prohibit, limit or restrict (a) any Receiving Party from obtaining any evidence, including without limitation Confidential Information, through any means of discovery that is provided under applicable rules of civil procedure (including the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and the California Code of Civil Procedure) or (b) a Producing Party from objecting to the production, disclosure or admissibility of any evidence, including without limitation Confidential Information.

~~25.~~24.  The Parties to this Confidentiality Agreement (including parties executing the Agreement To Be Bound By The Confidentiality Agreement attached hereto) agree that prior to and after the completion of the Proceeding, the provisions of this Confidentiality Agreement shall continue to be binding and the Court shall retain jurisdiction over the Parties and any other person who has had access to Confidential Information ~~or Highly Confidential Information~~ pursuant to this Confidentiality Agreement, in order to enforce the provisions of this Confidentiality Agreement.

~~26.    Within thirty (30) days after the entry of a final decree closing the Bankruptcy Case, or upon the written request of the Producing Party within thirty (30) days after the closing of any Proceeding, as well as any associated appeals, all Confidential Information and Highly Confidential Information produced to a Receiving Party, including any copies of documents or reproductions of things, shall, at the option of the Producing Party, either: (a) be returned to the Producing Party without keeping a copy thereof, which includes erasing any electronically stored information; or (b) destroyed by the Receiving Party without keeping a copy thereof, which includes erasing any electronically stored information. Counsel for any Party or non-Party receiving Confidential Information or Highly Confidential Information shall provide written~~

Formatted: Normal

~~certification of compliance with this provision to counsel for the Producing Party within ten (10) days of any request by the Producing Party in accordance with this paragraph. Electronic mail of a Party or non Party or its counsel that evidences, refers to or contains Confidential Information or Highly Confidential Information is subject to the foregoing destruction or return requirement, but otherwise remains subject to the provisions of this Confidentiality Agreement. Notwithstanding anything to the contrary, counsel for the Parties may retain Confidential Information and Highly Confidential Information constituting, containing, or incorporated in pleadings, motion papers, and exhibits contained in the official court record, work product, discovery responses, deposition transcripts, and deposition and trial exhibits, but otherwise subject to the provisions of this Confidentiality Agreement. Moreover, counsel for the Parties do not need to return or destroy Confidential Information and Highly Confidential Information that are stored on archival or other backup systems and are not reasonably accessible to persons other than personnel who maintain such systems. All such archival copies shall be maintained in accordance with the terms of this Confidentiality Agreement.~~

25.    Except as otherwise provided by the Bankruptcy Court, within thirty (30) days of a final decree closing the Bankruptcy Case, the Receiving Parties shall return all Confidential Information to the Producing Parties or, at the Receiving Party's option, destroy the Confidential Information and certify such destruction in writing.

~~27.~~26.  Any interested party with respect to this Bankruptcy Case, including but not limited to any person intending or planning to receive or produce documents, receive or disclose information, or provide testimony in connection therewith, may become a party to this Confidentiality Agreement by executing, prior to any disclosure, the Agreement To Be Bound By the Confidentiality Agreement attached hereto as Exhibit A, in which case the provisions of this Confidentiality Agreement shall fully apply to any discovery material that they may provide or receive, provided, however, that any Disclosure Materials may be produced to any such party only by or with the express written consent of the Producing Party, and subject to the terms this Confidentiality Agreement.

~~28.    If a Receiving Party or any of its advisors is legally compelled (whether by regulatory request, deposition, interrogatory, request for documents, subpoena, civil investigation, demand or similar process) to disclose any of the Confidential Information or Highly Confidential Information, the Receiving Party shall immediately notify the Producing Party, and the Producing Party shall notify any party or entity known to the Producing Party to have asserted a claim of its own Privilege or Protection in such Confidential Information or Highly Confidential Information (in this paragraph only, collectively with the Producing Party, the "Interested Parties"), in writing of such requirement to disclose Confidential or Highly Confidential Information, so that the Interested Parties, collectively or alone, may seek a protective order or other appropriate remedy. The Receiving Party will use its best efforts to obtain or assist such Interested Parties in obtaining any such protective order. Failing the entry of a protective order or the receipt of a waiver hereunder, the Receiving Party may disclose, without liability hereunder, that portion (and only that portion) of the Confidential Information or Highly Confidential Information that the Receiving Party has been advised by written opinion of counsel reasonably acceptable to the Interested Parties that it is legally compelled to disclose; provided, however, that the Receiving Party agrees to use its best efforts to obtain assurance that confidential treatment will be accorded to such~~

SMRH:4891-9359-0403.5

DOCS_SF:109660.4 05068/002

**Formatted:** Normal

Confidential Information or Highly Confidential Information by the person or persons to whom it is disclosed. Notwithstanding the foregoing or any other provision in this Confidentiality Agreement, the Committee, including without limitation its members and professionals, shall not disclose any of the Confidential or Highly Confidential obtained as a result of the Debtor entry into this Confidentiality Agreement with any counsel to a creditor who has a pending, or may later assert, a claim against the Debtor or any of their non-debtor affiliated entities or persons.

27.     In the event that any applicable law, regulation, or legal or judicial process requires disclosure of any Confidential Information by any Receiving Party, such Receiving Party will provide the Producing Party with prompt written notice of such requirement(s) so that the Producing Party may seek a protective order or other appropriate remedy. In the event that such protective order or other remedy is not obtained, the Receiving Party (i) may furnish that portion of the Confidential Information which the Recipient is legally required to disclose.

29.28.  Nothing herein shall be deemed to prevent a Producing Party, or any party or entity claiming a Privilege or Protection in connection thereto, from objecting to discovery or asserting that information being sought in discovery is of such a nature that discovery should not be afforded because of the confidential, personal, or proprietary nature of the information being sought or to preclude a Party from seeking additional or further limitations on the use or disclosure of such information being sought in discovery.

30.     In the event that an Receiving Party receives a request to disclose all or any part of the Confidential Information under the terms of a subpoena or other order issued by a court of competent jurisdiction or by another governmental agency, the Receiving Party shall, unless prohibited by law, rule or regulation: (a) promptly notify the Debtor of the existence, terms and circumstances surrounding such a request; (b) consult with the Debtor on the advisability of taking steps to resist or narrow such request; (c) if disclosure of such Confidential Information is required, furnish only such portion of the Confidential Information as the Receiving Party is legally required to disclose; and (d) reasonably cooperate with the Debtor in its efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information that is required to be disclosed. Further, Confidential Information may be disclosed without notice to a regulator or self-regulatory authority in the course of such regulator's general examination or inspection.

**REMEDIES**

31.29.  The Parties to this Confidentiality Agreement acknowledge that in the event of any breach by the Parties to this Confidentiality Agreement, immediate, substantial, and irrevocable damage may result and the DebtorProducing Party may not be made whole by monetary damages alone. Accordingly, the DebtorProducing Party, in addition to any other remedy to which the DebtorProducing Party may be entitled by law or in equity, shall be entitled to seek an injunction to prevent breaches of this Confidentiality Agreement, and to seek an order compelling specific performance of this Confidentiality Agreement. Such remedy and any and all other remedies provided for in this Confidentiality Agreement shall be cumulative and not exclusive and in addition to any other remedies which may exist under this Agreement or otherwise. No failure or delay by any party in exercising any right, power, defense or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise or the exercise of any right, power, or privilege

**Formatted:** Normal

under this Confidentiality Agreement. The Parties to this Confidentiality Agreement agree to meet and attempt to resolve in good faith any dispute that arises under this Confidentiality Agreement.

32.30.  No waiver of any breach or default shall be deemed or construed to constitute a waiver of any other violation or other breach of any of the terms, provisions and covenants contained in this Confidentiality Agreement, and forbearance to enforce one or more of the remedies provided herein in the event of a default will not be deemed or construed to constitute a waiver of that default or of any other remedy provided for in this Confidentiality Agreement. Furthermore, nothing contained herein shall reduce any protections otherwise provided by other confidentiality agreements to which the Parties, and other persons, who become a party hereto, are a party.

## <u>MISCELLANEOUS</u>

33.31.  This Confidentiality Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. This Confidentiality Agreement is a binding agreement upon the signatories hereto (and to the Agreement To Be Bound By The Confidentiality Agreement attached hereto).

34.32.  This Confidentiality Agreement contains the entire agreement and understanding of the Parties with respect to the subject matter of this Confidentiality Agreement, and supersedes all prior agreements, negotiations, representations, and proposals, written and oral, relating to the subject matter of this Confidentiality Agreement. This Confidentiality Agreement may be amended or modified only in a writing executed by the Parties.

35.33.  If for any reason any provision of this Confidentiality Agreement shall be deemed by a court of competent jurisdiction to be legally invalid or unenforceable, the validity, legality, and enforceability of the remainder of this Confidentiality Agreement shall not be affected and such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law and, in its modified form, such provision shall then be enforceable and enforced.

36.     This Confidentiality Agreement shall survive the confirmation of any plan of reorganization or liquidation for the Debtor, and all Confidential Information and/or Highly Confidential Information provided by the Debtor shall remain subject to the terms and provisions of this Confidentiality Agreement until one (1) year after confirmation of such a plan or the entry of an order converting or dismissing the Bankruptcy Case. Within thirty (30) days after the confirmation of a plan of reorganization or liquidation for the Debtor, upon written request of the Debtor, the Receiving Party shall destroy all copies of all documents in the possession of the Receiving Party, to the extent containing Confidential Information, without expense to the Debtor. Notwithstanding the foregoing, Confidential information may be retained as required by law or regulation or bona fide document retention or electronic archiving policies or procedures.

37.34.  This Confidentiality Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to the provisions, policies or principles of the laws of the State of California relating to choice or conflict of laws.

**Formatted:** Normal

Each of the undersigned expressly consents to the jurisdiction of the Bankruptcy Court, with respect to any dispute relating to or arising out of this Confidentiality Agreement.

38.35. Except as expressly set forth in this Confidentiality Agreement, each party shall bear its own costs, expenses, taxes, and other charges whatsoever incurred in connection with the execution and performance of this Confidentiality Agreement. Notwithstanding the foregoing, in the event of a willful breach of this Confidentiality Agreement, the non-breaching party shall be entitled to recover all reasonable costs, including reasonable attorneys' fees, incurred in enforcing the Confidentiality Agreement against such willfully breaching party.

39.36. This Confidentiality Agreement shall inure to the benefit of, and shall be binding upon, the Parties, their respective successors and permitted assigns.

40.37. The Parties to this Confidentiality Agreement expressly agree to the waiver of a trial by jury in any suit, action, or other proceeding whatsoever relating to the enforcement or interpretation of this Confidentiality Agreement and/or the series of transactions contemplated by this Confidentiality Agreement.

Stipulated and agreed to by:

/s/ DRAFT
Paul J. Pascuzzi (SBN 148810)
Jason E. Rios (SBN 190086)
Thomas R. Phinney (SBN 159435)
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
Email: ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

– and –

Ori Katz (SBN 209561)
Alan H. Martin (SBN132301)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email: okatz@sheppardmullin.com

/s/ DRAFT
James I. Stang (SBN 94435)
Debra I. Grassgreen (SBN 169978)
John W. Lucas (SBN 271038)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104-4436
Email: rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**Formatted:** Normal

amartin@sheppardmullin.com

*Counsel for Debtor*

**Formatted:** Normal

**Exhibit A**

**AGREEMENT TO BE BOUND BY THE CONFIDENTIALITY AGREEMENT**

This is to certify that:

(a) I am producing and/or being given access to Confidential Information ~~or Highly Confidential Information~~ under the Confidentiality Agreement entered by and among the Roman Catholic Archbishop of San Francisco in the chapter 11 bankruptcy case being administered as case number 23-30564 and the Official Committee of Unsecured Creditors appointed in the aforementioned chapter 11 bankruptcy case;

(b) I agree to be bound by the terms and conditions thereof as a "Receiving Party" and "Producing Party," as the case may be, including, without limitation, the obligations regarding the use, non-disclosure and return of such Confidential Information ~~or Highly Confidential Information; and~~; and

(c) I further agree that in addition to being contractually bound by the Confidentiality Agreement, I am subject to the powers of the Bankruptcy Court for any violation of the Confidentiality Agreement. .

Date: _____

_____
Name (Printed)


Signature

SMRH:4891-9359-0403.5

DOCS_SF:109660.4 05068/002

-1-

Formatted: Normal

# **EXHIBIT E**

**Sophia Lee**

| | |
|---|---|
| **From:** | John W. Lucas <jlucas@pszjlaw.com> |
| **Sent:** | Wednesday, November 1, 2023 10:01 AM |
| **To:** | Paul Pascuzzi; Ori Katz |
| **Cc:** | James Stang; Andrew Caine; Gillian N. Brown; Brittany M. Michael; Matthew K. Babcock; Timothy Burns; Jesse Bair 2 |
| **Subject:** | ASF - Committee Rule 2004 Application |
| **Attachments:** | ASF Comm Rule 2004 ex parte appllicaiton.pdf |

Paul and Ori,

Attached is the Committee's Rule 2004 application that we plan to file either today or tomorrow to get the ball rolling.

As I mentioned to you last week, we fully intend to work with you so that the Debtor can begin rolling productions. We are available to meet and confer regarding any objections to the request in an effort to avoid protective order motion practice.

While various members of our team will be handling different aspects of this, please work with Andy Caine, Gillian Brown, and Brittany Michael on the non-insurance aspects (they will coordinate with BRG as well), and Tim Burns and Jesse Bair on the insurance.

If you have questions in the meantime, please let us know.

Thank you,

John

**John W. Lucas**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 415.217.5108
Tel: 415.263.7000 | Cell: 415.306.3576 | Fax: 415.263.7010
jlucas@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

James I. Stang (CA Bar No. 94435)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Brittany M. Michael (NY Bar No. 5678552) *admitted pro hac vice*
Pachulski Stang Ziehl & Jones LLP
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email:  jstang@pszjlaw.com
          dgrassgreen@pszjlaw.com
          jlucas@pszjlaw.com
          bmichael@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and Debtor in Possession. | Case No.: 23-30564<br><br>Chapter 11<br><br>***EX PARTE* APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES; AND ORDERING DEBTOR TO SUBMIT DECLARATION** |

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 bankruptcy case (the "Case") of The Roman Catholic Archbishop of San Francisco, a California corporation, debtor and debtor in possession (the "Debtor"), hereby files this *ex parte* application (the "Application") under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") and Local Bankruptcy Rule 2004-1 ("Local Rule 2004-1") for entry of an order providing as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(1) authorizing the Committee to issue a subpoena requiring the Debtor:

      (a) to complete its production, by **January 12, 2024**, of documents responsive to the Requests for Production (the "<u>Requests</u>") set forth substantially in the form attached hereto as **Exhibit 1**; and

      (b) to provide oral testimony (the "<u>Oral Testimony</u>"),on a mutually agreed date no later than **January 24, 2024**, relating to the Debtor's search for and possession, custody, or control of documents responsive to the Requests;

(2) requiring the Debtor to submit to the Committee by **January 12, 2024**, a declaration, under penalty of perjury (the "<u>Sworn Statement</u>"), concerning the specific Requests for which the Debtor does not have documents in its possession, custody, or control. The submission of the Sworn Statement does not affect the Committee's right to take Oral Testimony; and

(3) authorizing the Committee to issue subpoenas directed to any Parish or Affiliate (defined below) after receiving the Sworn Statement or reviewing the Debtor's document production. Subpoenas to the Parishes or Affiliates will require them to complete, by **February 23, 2024** or no fewer than 14 calendar says after service of a subpoena (whichever is earlier), their production of documents responsive to the Requests that the Debtor had not produced.

After issuing the proposed subpoena to the Debtor, the Committee intends to work cooperatively with the Debtor - and the Parishes and Affiliates, if and when necessary -  to stage production of documents responsive to the Requests, including a discussion of the scope of Requests, potential search terms for finding documents responsive to the Requests, the timing of rolling document productions, the submission of the Sworn Statement, the need for and timing of the Oral Testimony, and, to the extent necessary, the issuance of subpoenas to any Parishes and Affiliates.

## I. <u>PRELIMINARY STATEMENT</u>

As authorized by Rule 2004, the Committee seeks information from the Debtor, its Parishes, and its Affiliates about the acts, conduct, property, liabilities, and financial condition of the Debtor. The Committee seeks this information in order to assess, among other things, (a) the formation and organization of the Debtor, Parishes, and Affiliates, (b) the value of the Debtor's assets, (c) any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

material assets that the Debtor may have transferred to a third party, (d) whether the Debtor made any voidable transfers, (e) whether any entities hold property for the benefit of the Debtor, (f) the property of the Debtor's estate, (g) the Debtor's, the Parishes, and the Affiliates' financial information, (h) insurance policies that may benefit the Debtor and its estate, the Parishes, and Affiliates, (i) any other sources of recovery that may be available to satisfy creditors' claims, and (j) the scope of the Debtor's potential liabilities (collectively, the "Investigation Matters"). The Committee brings this motion in order to carry out its duties under section 1103 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and to work to maximize unsecured creditors' recoveries in this Case.

In addition to an order requiring the production of documents from and oral testimony of the Debtor, the Committee seeks entry of an order, pursuant to Rule 2004, authorizing the Committee to issue subpoenas to the following entities, if the Debtor certifies under oath that any of the requested information or documents are not in its possession, custody, or control: (a) Parishes (defined below), High Schools (defined below), Schools (defined below), and Cemeteries (defined below) in the Debtor's geographic territory; (b) the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation; (c) the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation; (d) the Benedict XVI Institute for Sacred Music and Divine Worship; (e) the Roman Catholic Seminary of San Francisco; (f) Catholic Charities CYO of the Archdiocese of San Francisco; (g) the Department of Catholic Schools; (h) Catholic Cemeteries; (i) Vallombrosa Retreat Center; (j) Serra Clergy House; and (k) the Archdiocesan Annual Appeal (together with the High Schools, Schools, and Cemeteries, the "Affiliates"). The Affiliates are each affiliated with, associated with, or related to the Debtor and are likely to have information related to the Investigation Matters.

## II. RELEVANT FACTS

### A. Background

On August 21, 2023 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as a debtor in possession.

3

material assets that the Debtor may have transferred to a third party, (d) whether the Debtor made any voidable transfers, (e) whether any entities hold property for the benefit of the Debtor, (f) the property of the Debtor's estate, (g) the Debtor's, the Parishes, and the Affiliates' financial information, (h) insurance policies that may benefit the Debtor and its estate, the Parishes, and Affiliates, (i) any other sources of recovery that may be available to satisfy creditors' claims, and (j) the scope of the Debtor's potential liabilities (collectively, the "Investigation Matters"). The Committee brings this motion in order to carry out its duties under section 1103 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and to work to maximize unsecured creditors' recoveries in this Case.

In addition to an order requiring the production of documents from and oral testimony of the Debtor, the Committee seeks entry of an order, pursuant to Rule 2004, authorizing the Committee to issue subpoenas to the following entities, if the Debtor certifies under oath that any of the requested information or documents are not in its possession, custody, or control: (a) Parishes (defined below), High Schools (defined below), Schools (defined below), and Cemeteries (defined below) in the Debtor's geographic territory; (b) the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation; (c) the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation; (d) the Benedict XVI Institute for Sacred Music and Divine Worship; (e) the Roman Catholic Seminary of San Francisco; (f) Catholic Charities CYO of the Archdiocese of San Francisco; (g) the Department of Catholic Schools; (h) Catholic Cemeteries; (i) Vallombrosa Retreat Center; (j) Serra Clergy House; and (k) the Archdiocesan Annual Appeal (together with the High Schools, Schools, and Cemeteries, the "Affiliates"). The Affiliates are each affiliated with, associated with, or related to the Debtor and are likely to have information related to the Investigation Matters.

## II. RELEVANT FACTS

### A. Background

On August 21, 2023 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as a debtor in possession.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

DOCS_LA:349624.4 05068/002

Case: 23-30564   Doc# 352   Filed: 11/29/23   Entered: 11/29/23 15:42:58   Page 61 of 96

In his first-day declaration, Joseph J. Passarello, the Debtor's Chief Financial Officer, described a number of entities that make up the Debtor's enterprise.[1]  Specifically, Specifically, Mr. Passarello identified "88 parishes [the "Parishes"], four Archdiocesan Catholic high schools (Archbishop Riordan High School, Sacred Heart Cathedral Preparatory, Marin Catholic High School and Junipero Serra High School (collectively, the "High Schools")), numerous elementary schools and private independent schools (collectively, the "Schools"), cemeteries ("Cemeteries") and various other Catholic-based social and community service organizations that operate within the Archdiocese."[2] Mr. Passarello further to identified those "various other Catholic-based . . . organizations" to be the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation;[3] the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation;[4] the Benedict XVI Institute for Sacred Music and Divine Worship;[5] the Roman Catholic Seminary of San Francisco;[6] Catholic Charities CYO of the Archdiocese of San Francisco;[7] Department of Catholic Schools;[8] Catholic Cemeteries;[9] Vallombrosa Retreat Center;[10] Serra Clergy House;[11] and the Archdiocesan Annual Appeal[12] (together with the High Schools, Schools, and Cemeteries, the "Affiliates").

On September 1, 2023, the United States Trustee (the "UST") appointed the Committee.  The Committee consists of nine individuals who have been sexually abused as minors by perpetrators for whom the Debtor was responsible. *See Appointment of Committee of Unsecured Creditors* [Doc. No. 58]. On October 24, 2023, the Court granted the Committee's application to employ Pachulski Stang Ziehl & Jones LLP as its counsel. *See* Doc. No. 237.

---

[1] *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions* [Doc. No. 14].
[2] *Id.*, at ¶ 15.
[3] *Id.* at ¶ 22.
[4] *Id.* at ¶ 26.
[5] *Id.* at ¶ 29.
[6] *Id.* at ¶ 30.
[7] *Id.* at ¶ 31.
[8] *Id.* at ¶ 32.
[9] *Id.* at ¶ 34.
[10] *Id.* at ¶ 35.
[11] *Id.* at ¶ 36.
[12] *Id.* at ¶ 37.

## III. JURISDICTION

This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Code sections 1103 and 1109(b), and Rule 2004.

## IV. RELIEF REQUESTED

The Committee respectfully requests that the Court enter an *ex parte* order (1) authorizing the Committee to issue a subpoena requiring the Debtor (a) to complete its production, by January 12, 2024, of documents responsive to the Requests; (b) to provide oral testimony (the "Oral Testimony"), on a mutually agreed date no later than January 24, 2024, relating to the Debtor's search for and possession, custody, or control of documents responsive to the Requests; (2) requiring the Debtor to submit to the Committee by January 12, 2024, the Sworn Statement concerning the specific Requests for which the Debtor does not have documents in its possession, custody, or control, the contents of which shall not affect the Committee's right to Oral Testimony; and (3) authorizing the Committee to issue subpoenas directed to any Parish and any of the Affiliates after receiving the Sworn Statement and/or reviewing the Debtor's document production. Document productions requests under subpoenas to any Parish or Affiliate shall require document production to be completed by February 23, 2024 or no fewer than 14 calendar says after service of a subpoena (whichever is earlier). The scope of the subpoenas to the Parishes and Affiliates will seek documents responsive to the Requests that the Debtor did not produce.

## V. BASIS FOR RELIEF

Local Rule 2004-1 provides as follows: "The Clerk may issue on behalf of the Court, ex parte and without notice, orders granting applications for examination of an entity pursuant to Bankruptcy Rule 2004(a)." See L.B.R. 2014-1(a). The Committee brings this Application ex parte pursuant to Local Rule 2004-1 seeking an order without need for a hearing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity."  Rule 2004 is primarily used for "revealing the nature and extent of the bankruptcy estate, and for discovering assets, examining transactions, and determining what wrongdoing occurred."[13]

Pursuant to Rule 2004(b), a party in interest may seek both document and oral discovery related to "acts, conduct, or property of the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Under Rule 2004(c), the "attendance of an entity for examination and the production of documents … may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial." Bankruptcy Rule 9016 makes Rule 45 of the Federal Rules of Civil Procedure (governing subpoenas) applicable in cases under the Bankruptcy Code.  Unlike discovery under the Federal Rules of Civil Procedure (the "Civil Rules"), discovery under Rule 2004 can be used as a "pre-litigation discovery device."[14]  As such, a Rule 2004 motion need not be tied to specific factual allegations at issue between parties.[15]

Moreover, the scope of a Rule 2004 examination is broader than that of discovery under the Civil Rules or the Bankruptcy Rules governing adversary proceedings.[16]  In fact, courts have recognized that Rule 2004 examinations may be "broad" and "unfettered," and can legitimately be in the nature of a "fishing expedition."[17]

---

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

[13] *In re Kelton*, 389 B.R. 812, 820 (Bankr. S.D. Ga. 2008); *see also In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (purpose of Rule 2004 is to "determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors"); *In re The Bennet Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (purpose of Rule 2004 is to assist in "revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed").

[14] *In re Wilson*, 2009 WL 304672, at *5 (Bankr. E.D. La. 2009).

[15] *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Bankruptcy Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").

[16] *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("[T]he scope of a Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure.").

[17] *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011) (citation omitted); *see also In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008); *In re The Bennet Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (purpose of Rule 2004 is to assist in "revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed"); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (E.D. Pa. 1990).

6

The decision whether to authorize the requested discovery rests within the sound discretion of the bankruptcy court.[18] Bankruptcy courts may allow a Rule 2004 examination of "third parties who have had dealings with the debtor,"[19] "to allow inquiry in the debtor's acts, conduct or financial affairs so as to discover the existence or location of assets of the estate,"[20] "unearthing frauds,"[21] or to assist in recovering assets for the benefit of a debtor's creditors.[22]

In addition, section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order… that is necessary or appropriate to carry out provisions of this title."[23] The proposed investigation will, among other things, assist the Committee to fulfill its statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor."[24] The relief requested in this Motion will enable a more efficient investigation by reducing the time, burden and cost that would be incurred through separate motions for individual entities. Moreover, the substantive rights of any party to object to or modify the information requested by the Committee will not be reduced or expanded by the relief requested.

Here, the requested relief is well within the scope of Rule 2004. The Committee seeks to maximize the amount of creditors' recoveries in this Case. As such, the Committee needs the information sought herein, including information about the Investigation Matters. After issuing the proposed subpoena to the Debtor, the Committee intends to work cooperatively with the Debtor - and the Parishes and Affiliates, if and when necessary – with regard to these document requests.

## VI. <u>NO PRIOR REQUEST</u>

No prior request for the relief sought in this Motion has been made to this or any other Court.

---

[18] *See, e.g., In re Hammond*, 140 B.R. 197, 200 (Bankr. S.D. Ohio 1992).
[19] *See Associates v. W&S Investments, Inc. (In re W&S Investments, Inc.)*, 985 F.2d 577, at *2 (9th Cir. Jan. 28, 1993) (unpublished opinion) (Rule 2004 is a "broadly construed discovery device which permits any party in interest in a bankruptcy proceeding to move for a court order to examine any entity…,' the "scope is generally very broad and can 'legitimately be in the nature of a 'fishing expedition.'") (citation omitted).
[20] *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993).
[21] *In re N. Plaza LLC*, 395 B.R. 113, 122 n.9 (S.D. Cal. 2008) (citations omitted).
[22] *See In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983) (allowing discovery under Rule 2004 to help the debtor "discover and recover assets for benefit of creditors of the debtor").
[23] 11 U.S.C. § 105(a).
[24] *Id.*, § 1103(c)(2).

7

# VII. **NOTICE**

Local Rule 2004-1 provides that this Application can be brought "ex parte and without notice." L.B.R. 2014-1(a). Nevertheless, notice of this Motion will be provided to (a) the UST; (b) counsel to the Debtor; and (c) all parties listed on the Limited Service List (as of October 26, 2023) [Doc. No. 250].

# VIII. **CONCLUSION**

For the reasons set forth above, the Committee respectfully requests that the Court grant this Motion. A proposed order granting this Motion is attached hereto as **Exhibit 2**.

Dated: October 31, 2023          PACHULSKI STANG ZIEHL & JONES LLP

         */s/ Brittany M. Michael*
         James I. Stang (CA Bar No. 94435)
         Debra I. Grassgreen (CA Bar No. 169978)
         John W. Lucas (CA Bar No. 271038)
         Brittany M. Michael (NY Bar No. 5678552) *admitted pro hac vice*

         Counsel to the Official Committee of Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**
**Requests for Production of Documents**

9

DOCS_LA:350624.05068/002

EXHIBIT 1

INSTRUCTIONS

B.     Unless otherwise specified, each request seeks DOCUMENTS dated or created during the ten (10) years prior to the PETITION DATE.

C.     Please bates number each page of each DOCUMENT that YOU produce.

D.     YOU are required to conduct a thorough investigation and produce all DOCUMENTS (as defined below) in YOUR possession, custody, and control.

E.     All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

F.     And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

G.     The use of the singular form of any word includes the plural and vice versa.

H.     If YOU are unable to comply with a particular category(ies) of the requests below and DOCUMENTS responsive to the category are in existence, state the following information:

1.     The date of the DOCUMENT;

2.     The type of DOCUMENT (e.g., letter, memorandum, report, etc.);

3.     The name, address, telephone number and title of the author(s) of the DOCUMENT;

4.     The name, address, telephone number and title of EACH recipient of the DOCUMENT;

5.     The number of pages in the DOCUMENT;

6.     The document control number, if any;

7.     The present location(s) of the DOCUMENT and the name, address and telephone number of the person(s) who has (have) possession of the DOCUMENT;

8.     A specific description of the subject matter of the DOCUMENT;

9.     The reason why the DOCUMENT cannot be produced or why you are unable to comply with the particular category of request.

DOCS_LA:350614.4 05068/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

I.      YOU are under a continuing duty to amend YOUR written response and to produce additional DOCUMENTS if you learn that the response or production is incomplete or incorrect in any material respect, and if the additional or corrective information has not otherwise been made known to the COMMITTEE during the discovery process or in writing.

J.      YOU are required to produce the full and complete originals, or copies if the originals are unavailable, of each DOCUMENT responsive to the categories below along with all non-identical copies and drafts in its or their entirety, without abbreviations, excerpts, or redactions. A copy may be produced in lieu of originals if the entirety (front and back where appropriate) of the DOCUMENT is reproduced and YOU state by declaration under penalty of perjury that the copy provided is a true, correct, complete, and accurate duplication of the original.

K.      YOU are required to produce the DOCUMENTS as they are kept in the usual course of business, or to organize and label them to correspond with each category in these requests.

L.      For ELECTRONICALLY STORED INFORMATION ("ESI"):

1.      The Committee seeks to discuss with the Debtor and/or Producing Party to whom these Requests are directed (a) potential search terms for ESI responsive to each Request; (b) the potential custodians of ESI responsive to each Request and (c) the devices to be searched for ESI responsive to each Request.

2.      Produce DOCUMENTS in accordance with the instructions at https://support.everlaw.com/hc/en-us/articles/360004962052-Standard-Format-for-Processed-Data

3.      Maintain family integrity.

4.      Perform custodian-level de-duplication.

5.      Produce a DAT load file with the following metadata fields: Beginning Production Number, Ending Production Number, Beginning Attachment Number, End Attachment Number, Family ID, Page Count, Custodian, Original Location Path, Email Folder Path, Document Type, Doc Author, Doc Last Author, Comments, Categories, Revisions, File Name, File Size, MD5 Hash, Date Last Modified, Time Last Modified, Date Created, Time Created, Date Last Accessed, Time Last Accessed, Date Sent, Time Sent, Date Received, Time Received, To, From, CC, BCC, Email Subject, Path to Native, Path to Full Text, Original Time Zone.

DOCS_LA:350624.4 05068/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6.      Process all data in UTC and provide a metadata field indicating original time zone.

M.      If YOU withhold or redact a portion of any DOCUMENT under a claim of privilege or other protection, then the DOCUMENT must be identified on a privilege log, which shall be produced contemporaneously with the non-privileged DOCUMENTS responsive to this Request for Production, and which privilege log shall state the following information:

7.      The date of the DOCUMENT;

8.      The type of DOCUMENT (e.g., letter, memorandum, report, etc.);

9.      The name, address, telephone number and title of the author(s) of the DOCUMENT;

10.      The name, address, telephone number and title of each recipient of the DOCUMENT;

11.      The number of pages in the DOCUMENT;

12.      The document control number, if any;

13.      The present location(s) of the DOCUMENT and the name, address and telephone number of the person(s) who has (have) possession of the DOCUMENT;

14.      A general description of the subject matter of the DOCUMENT or the portion redacted without disclosing the asserted privileged or protected communication;

15.      The specific privilege(s) or protection(s) that YOU contend applies.

<u>DEFINITIONS</u>

1.  "AAA" refers to the Archdiocesan Annual Appeal discussed at PASSARELLO DECL. at ¶ 37.

2.  "ABUSE CLAIM" means any CLAIM against the DEBTOR resulting or arising or related to in whole or in part, directly or indirectly from any actual or alleged sexual conduct or misconduct, grooming, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting

adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, intimidation, any other conduct constituting a sexual offense, or any other sexual misconduct, and seeking monetary damages or any other relief based upon the conduct described above, under any theory of liability, including, but not limited to, vicarious liability, any negligence-based theory, conspiracy, fraudulent concealment, intentional tort, continuing tort, public nuisance, invasion of privacy, breach of alleged duties imposed by The Charter for the Protection of Children and Young People, Canon Law or other Catholic Church documents or principles, contribution, indemnity, or any other theory based on any acts or failures to act by the DEBTOR or any other PERSON for whose acts or failures to act the DEBTOR is or may be responsible, including but not limited to, claims against clergy, deacons, seminarians, employees, teachers, or volunteers. "ABUSE CLAIM" includes all CLAIMS for Childhood Sexual Assaults, as that term is defined by California Code of Civil Procedure section 340.1(d).

3. "AFFILIATE" refers to the following: any of the HIGH SCHOOLS, any of the SCHOOLS, any of the CEMETERIES, CASC, RPSC, BENEDICT XVI, the SEMINARY, CATHOLIC CHARITIES, DOS, VALLOMBROSA, SERRA, and/or the AAA.

4. "ALLEGED PERPETRATOR" refers to any natural PERSON who has been accused of SEXUAL ABUSE of a minor and for whom it has been alleged the DEBTOR was responsible at any time. This term includes, but is not limited to, PERSONS who may not be "credibly accused" under the DEBTOR's or anyone else's definition.

5. "ARCHBISHOP" refers to the PERSON and the office of the Archbishop of San Francisco, as that term is used at https://www.usccb.org/about/archbishop-faqs.

6. "ARCHDIOCESAN ANNUAL APPEAL" shall have the meaning ascribed to it in the PASSARELLO DECL. at ¶ 37.

7. "ARCHDIOCESE" refers to the geographic territory under the jurisdiction of the DEBTOR, as set forth in footnote 2 to the PASSARELLO DECL.

8. "BANKRUPTCY CASE" refers to the bankruptcy case styled as *In re The Roman Catholic Archbishop of San Francisco*, filed in the United States Bankruptcy Court for the Northern District of California (Case No. 23-30564).

9. "BENEDICT XVI" refers to the Benedict XVI Institute for Sacred Music and Divine Worship (as discussed in the PASSARELLO DECL. at ¶ 29) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

10. "CASC" refers to the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation (as discussed in the PASSARELLO DECL. at ¶ 22) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

11. "CATHOLIC CHARITIES" refers to the Catholic Charities CYO of the Archdiocese of San Francisco (as discussed in the PASSARELLO DECL. at ¶31) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

12. "CEMETERIES" refers to the six operating cemeteries within the ARCHDIOCESE as referenced in the PASSARELLO DECL. at ¶ 34, where they are identified as Holy Cross Catholic-Colma, Holy Cross-Menlo Park, Holy Cross-Saint Mary Magdalene, Mt. Olivet, Our Lady of the Pillar (includes St. Anthony's Pescadero), and Tomales Catholic Cemetery,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:350104.4 05068/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and shall include all of their agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors. CEMETERIES also includes the Director of Cemeteries and the Catholic Cemetery Advisory Board (discussed in the PASSARELLO DECL. at ¶ 34) and all of their agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

13. "CHUBB" refers to Westchester Fire Insurance Company, Pacific Indemnity Company, and/or Century Indemnity Company, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator,

14. "CLAIM" means any "claim," as defined in 11 U.S.C. § 101(5).

15. "CLERGY" refers to any lay PERSONS or RELIGIOUS, including, but not limited to, PRIESTS.

16. "COMMITTEE" refers to the Official Committee of Unsecured Creditors in the BANKRUPTCY CASE.

17. "COMMUNICATION" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

18. "CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

19. "CONTINENTAL" means the Continental Casualty Company, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator,

20. "DOS" refers to the Department of Catholic Schools (discussed at PASSARELLO DECL. at ¶ 32) and includes all of its agents, accountants, advisors, employees, experts, attorneys,

15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

21. "DEBTOR" refers to The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession in the BANKRUPTCY CASE, and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, BANKRUPTCY CASE professionals, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

22. "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. A DOCUMENT includes written COMMUNICATIONS.

23. "EVIDENCING" has the same meaning as CONCERNING.

24. "FHO" means "funds allegedly held for others."

25. "FINANCIAL DISCLOSURES" means all financial disclosures, financial records, account statements, and / or accountings of any kind, either formal or informal.

26. "FIREMAN'S FUND" refers to Fireman's Fund, Chicago Insurance Company including any affiliate, parent, subsidiary, successor or predecessor of Fireman's Fund, or any third-party administrator.

27. "IRP" refers to any independent review panel or independent review board of the DEBTOR, whether called "Independent Review Board," "Archdiocesan Review Board," or any other name.

28. "IDENTIFY" and "IDENTIFYING" shall have the following meanings:

   a. *With respect to PERSONS*: When referring to a PERSON, "to identify" means to give, to the extent known, the PERSON's full name, present or last known address;

16

DOCS_LA:350024.4 05068/002

and when referring to a natural person, additionally, the present or last known place of employment. Once a PERSON has been identified in accordance with this definition, only the name of that PERSON need be listed in response to subsequent discovery requesting the IDENTIFICATION of that person.

    b. *With respect to DOCUMENTS*: When referring to DOCUMENTS, "to identify" means to give, to the extent known, the (i) type of DOCUMENT; (ii) general subject matter; (iii) date of the DOCUMENT; and (iv) author(s), addressee(s) and recipient(s). In the alternative, YOU may produce the DOCUMENTS, together with identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

29. "INSURANCE POLICIES" means any and all insurance policies in which the DEBTOR or any other entity CONCERNING THE DEBTOR has or could legally make a CLAIM in the proceeds thereof, including as an insured, a named insured, additional insured or otherwise.

30. "LMI" refers to Certain Underwriters at Lloyd's, London and/or Certain London Market Insurance Companies, including any affiliate, parent, subsidiary, predecessor or successor of LMI, or any third-party administrator.

31. "NON-DEBTOR" means any PERSON other than the DEBTOR IDENTIFIED as responsible for the same ABUSE CLAIM as the DEBTOR. A NON-DEBTOR may be a PARISH or AFFILIATE.

32. "PARISH" shall have the meaning ascribed to it in the PASSARELLO DECL. at ¶14, and shall include all of agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors of the PARISH.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

33. "PASSARELLO DECL." refers to the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions*, filed at Docket No. 14 in the BANKRUPTCY CASE.

34. "PERSONAL PROPERTY" means tangible and intangible assets other than REAL PROPERTY.

35. "PERSON" is any natural person, juridical person, or any legal entity, including, without limitation, any business, religious, or governmental entity or association.

36. "PETITION DATE" means August 21, 2023.

37. "RPSC" means and refers to the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation (as discussed at PASSARELLO DECL. at ¶ 26) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

38. "REAL PROPERTY" means land and immovable property on land, such as buildings.

39. "REGARDING" has the same meaning as CONCERNING.

40. "RELATING TO" has the same meaning as CONCERNING.

41. "RELIGIOUS" shall refer to any natural PERSON who is a member of an institute of consecrated life or a society of apostolic life.

42. "RELIGIOUS INSTITUTE" means a society in which Roman Catholic members or RELIGIOUS pronounce public vows, either perpetual or temporary, and lead a life of brothers or sisters in common.

43. "RELIGIOUS ORDER" means a type of RELIGIOUS INSTITUTE acknowledged by the Roman Catholic Church as such.

DOCS_LA:350924.4 05068/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

44. "SERRA" refers to the Serra Clergy House (discussed at the PASSARELLO DECL. at ¶ 36) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

45. "SEXUAL ABUSE" means conduct giving rise to an ABUSE CLAIM.

46. "SEMINARY" refers to the Roman Catholic Seminary of San Francisco (as discussed at the PASSARELLO DECL. at ¶ 30) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors

47. "SURVIVOR" refers to a natural PERSON who has or had an ABUSE CLAIM.

48. "TRUST" means a legal entity under a TRUST AGREEMENT naming as a party the DEBTOR, any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE.

49. "TRUST AGREEMENT" means to a written or oral arrangement that evidences, or purports to evidence, a TRUST; and includes declarations of trust and all amendments to such arrangements.

50. "WESTPORT" means the Westport Insurance Company, formerly known as Employers Reinsurance Corporation, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator

51. "YOU" means the DEBTOR.

52. "VALLOMBROSA" refers to the Vallombrosa Retreat Center (discussed at the PASSARELLO DECL. at ¶ 35) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect

19

shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

DOCUMENT REQUESTS

**Corporate Governance**

1. All versions of articles of incorporation in effect during the 20 years prior to the PETITION DATE for the following:

    a. The DEBTOR

    b. Each PARISH

    c. Each AFFILIATE

2. All versions of bylaws in effect during the 20 years prior to the PETITION DATE for the following:

    a. The DEBTOR

    b. Each PARISH

    c. Each AFFILIATE

3. Any formation or governance documents (including amendments) other than articles of incorporation or bylaws, for the following:

    a. The DEBTOR

    b. Each PARISH

    c. Each AFFILIATE

4. All versions of the norms, statutes, operating guidelines / policies / instructions and policy manuals issued by / created by DEBTOR during 20 years prior to the PETITION DATE.

5. Schedules of all entities in which the PERSON in the office of the ARCHBISHOP, Chancellor, or Vicar General of the DEBTOR are or have been an officer or director in the 20 years prior to the PETITION DATE, including positions held ex officio. If no such schedule exists, please prepare one in response to this Request.

6. Schedule(s) of all committees, boards, subcommittees, commissions, councils or similar groups that existed over the 20 years prior to the PETITION DATE for the PERSONS listed below. If no such schedules exist, please prepare them in response to this Request.

    a. The DEBTOR

    b. Each PARISH

20

PACHULSKI STANG ZIEHL & JONES LLP<br/>ATTORNEYS AT LAW<br/>LOS ANGELES, CALIFORNIA

c. Each AFFILIATE

7. Minutes of meetings (including any agendas and materials distributed prior to or at meetings) for all bodies identified in response to request 6.a for the 20 years prior to the PETITION DATE.

8. Schedules of board members for all AFFILIATES.

9. Organization charts (current and historical) of the DEBTOR, PARISHES (including all PARISH schools and cemeteries), all AFFILIATES, and/or all RELIGIOUS ORDERS in the ARCHDIOCESE for 20 years prior to the PETITION DATE.

10. All quinquennial reports for the DEBTOR for the 30 years prior to the PETITION DATE.

11. An index of the current DEBTOR's archives.

12. Minutes of any meetings in the 20 years prior to the PETITION DATE (including any agendas and materials distributed prior to or at meetings) that included a presentation relating to the DEBTOR's solvency.

13. Minutes of any meetings in the 20 years prior to the PETITION DATE (including any agendas and materials distributed prior to or at meetings) that discussed any transactions by and between the DEBTORS and any PARISH (including PARISH schools and cemeteries) and / or AFFILIATES.

14. All DOCUMENTS between the DEBTOR and the Vatican or Holy See (Congress for Bishops) since January 1, 1993 CONCERNING proposed or actual transfers of assets, protection of assets, realignment or restructuring of the DEBTOR, the PARISHES (including PARISH schools and cemeteries), the AFFILIATES, or similar actions.

15. All Official Catholic Directories RELATING TO the DEBTOR, the PARISHES (including PARISH schools and cemeteries) and the AFFILIATES issued in the 20 years prior to the PETITION DATE.

16. Agreements between any RELIGIOUS INSTITUTE (including entities or institutions operated by RELIGIOUS INSTITUTES, such as schools, monasteries, or convents) and the DEBTOR from January 1, 1945 to the PETITION DATE.

17. Schedules of all RELIGIOUS INSTITUTES that operated in the ARCHDIOCESE between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.

18. Schedules of all faculties given by the ARCHBISHOP to members of RELIGIOUS INSTITUTES between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.

19. Copies of any archived versions of the DEBTOR's website from the 20 years prior to the PETITION DATE.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

20. DOCUMENTS REGARDING the creation of the Diocese of Oakland and the Diocese of Santa Rosa.

21. Any agreements between the Archdiocese of San Francisco and the Diocese of Oakland or the Diocese of Santa Rosa from 1961 to 1968.

**Parishes and Affiliates**

22. All written agreements between or among the DEBTOR and its PARISHES and/or AFFILIATES in effect at any time during the 20 years prior to the PETITION DATE. If identical agreements were used between the DEBTOR and multiple other contracting parties, then a sample form agreement and a schedule of all parties to identical agreements is sufficient.

23. All guidelines or policies for the PARISHES from 1970 to the date YOU respond to this Request RELATING TO any subject, including, but not limited to, child protection, accounting manuals, handbooks, policies (current and historical), investment policies.

24. All DOCUMENTS which describe or discuss governance of the PARISHES.

25. A list of all existing PARISHES (including PARISH schools and cemeteries), including any internal identification numbers / codes and addresses.

26. A list of all former PARISHES (including schools and cemeteries), including those that have been closed, merged, clustered, suppressed, or alienated (including the identification of the surviving PARISH), including any internal identification numbers / codes and addresses.

27. All DOCUMENTS CONCERNING any strategic plans, PARISH suppressions or mergers, or PARISH governance restructuring for the 30 years prior to the PETITION DATE.

28. All DOCUMENTS CONCERNING any changes made to the corporate structure of the DEBTOR, the PARISHES (including PARISH schools and cemeteries), and / or the AFFILIATES in the 20 years prior to the PETITION DATE.

29. Information and data regarding PARISH "statistics" (current and historical) including, but not limited to, Catholic population within each PARISH, Mass attendance at each PARISH, sacraments administered by each PARISH, church building capacity for each PARISH, and the number of priests for the ARCHDIOCESE.

**Parish and Affiliate Financial Relationship**

30. DOCUMENTS sufficient to IDENTIFY and evidence the calculations or formula for determining PARISH and AFFILIATE assessments for the 20 years prior to the PETITION DATE.

31. All schedules, accountings, invoices, support, and other DOCUMENTS RELATED TO services provided under any agreement between the DEBTOR and a PARISH, including

Case: 23-30564    Doc# 352    Filed: 11/29/23    Entered: 11/29/23 15:42:58    Page 80 of 96

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

calculations of amounts owed by, billed to, or allocated to PARISHES in relation to service fees and other costs.

32. All DOCUMENTS memorializing or in any way relating to any loans between the DEBTOR and AFFILIATES (including, but not limited to, CATHOLIC CHARTIES and Junipero Serra High School located within the ARCHDIOCESE).

33. DOCUMENTS REGARDING any write-off, forgiveness, cancelation, or similar reduction in any amounts owed to the DEBTOR by the PARISHES (including PARISH schools and cemeteries) or AFFILIATES.

**Financial Information**

34. Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

35. Consulting reports, strategic plans, assessments, or studies issued by outside consultants or advisors engaged by the DEBTOR within the 20 years prior to the PETITION DATE.

36. Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

37. Copies of annual trial balances for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

38. Copies of all auditor workpapers in the possession of the following:

    a. The DEBTOR

b. The AFFILIATES

39.    Copies of all "Prepared By Client" or "PBC" documentation in the possession of the following:

a. The DEBTOR

b. The AFFILIATES

40.    Management letters (i.e., from auditor / accounting firm to management / client prepared as part of the audit process) for the following:

a. The DEBTOR

b. The AFFILIATES

41.    Letters of representation / management representation letters / client representation letters (i.e., from management / client to auditor / accounting firm prepared as part of the audit process) for the following:

a. The DEBTOR

b. The AFFILIATES

42.    All monthly budgets for all departments or agencies of the DEBTOR for the 20 years prior to the PETITION DATE, along with budget versus actual variance reports.

43.    Copies of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition for the following:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

44.    All DOCUMENTS RELATING TO any secured debt, line of credit, bond issuance, and / or guarantee by or relating to the DEBTOR, including, but not limited to, applications, due diligence materials, credit evaluations / reviews, compliance certifications, agreements, or notes.

45.    DOCUMENTS RELATING TO the AAA (including campaign brochures, reports / submissions from PARISHES detailing uses of funds, reports detailing goal amounts and actual amounts, reports detailing amounts retained by the DEBTOR, and amounts transferred to the PARISHES.).

46.    Annual financial statements in Excel (e.g., balance sheets, income statements, cash flows) for each PARISH (including PARISH schools and cemeteries) for the 20 years prior to the PETITION DATE.

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

47. Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the below and any entity over the past 2 years.

    a. The DEBTOR

    b. The PARISHES

48. Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the DEBTOR and PARISHES and/or the AFFILIATES over the 20 years prior to the PETITION DATE.

49. Chart of Accounts, including open / active accounts, closed / inactive accounts, departments, divisions, segments, projects, programs, etc., for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

50. All business plans and associated financial projections prepared by or for the DEBTOR.

51. All solvency analyses, appraisals, and / or valuation reports that were prepared by or for the DEBTOR.

52. All historical activity schedules for all credit facilities and bond issuances for the DEBTOR detailing any draws, paydowns, interest accruals, or similar transactions.

53. Current DEBTOR accounts receivable aging by payee.

54. Copies of all lease agreements, including any amendments, to which at least one of the below is a party:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

55. DOCUMENTS sufficient to show all payments made pursuant to lease agreements produced in response to Request No. 54.

**Cash and Investments**

56. A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following:

    a. The DEBTOR

DOCS_LA:352024.05068/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

b. The PARISHES

c. The AFFILIATES

57.     All DOCUMENTS (including, but not limited to, account creation documents, signature cards, account statements, deposit slips, deposited check copies, wire advices, check copies, debit memos, and credit memos) RELATING TO bank, money market, investment, brokerage or other accounts (both open / current accounts and closed accounts) of the following:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

58.     All DOCUMENTS regarding credit card accounts of the following:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

**Real Property**

59.     A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

60.     A summary listing of any REAL PROPERTY, including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, transferred by the below at any time in the 20 years prior to the PETITION DATE:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

61.     All DOCUMENTS concerning any REAL PROPERTY transfers identified in Request No. 60.

26

62. DOCUMENTS sufficient to show the ownership of all REAL PROPERTY owned in title by or on behalf of the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

63. A list of all REAL PROPERTY for which the below have a reversionary interest, including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, and current use (e.g., in use by the entity, leased, vacant).

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

64. Any valuation reports, appraisal reports, studies, or evaluations RELATING TO any REAL PROPERTY identified in Request Nos. 59, 60, and 63.

65. REAL PROPERTY inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")) for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

66. Copies of all current mortgages, deeds of trust, assignments of leases or rents, collateral assignments, other assignments, and any other agreements (including any schedules, annexes or exhibits thereto) CONCERNING REAL PROPERTY that are intended to provide, or evidence an agreement to provide, security or collateral for any obligation for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

**Personal Property**

67. Schedules of all PERSONAL PROPERTY owned by the PERSON below. If no such schedules exist, please prepare them in response to this Request.

    a. The DEBTOR

    b. The PARISHES

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

c. The AFFILIATES

68.     All PERSONAL PROPERTY inventories from the 20 years prior to the PETITION DATE, including inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")), for the following:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

69.     All appraisals, valuations, studies, and evaluations of PERSONAL PROPERTY owned or transferred during the 20 years prior to the PETITION DATE by the following:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

**Allegedly Restricted Assets**

70.     Schedules detailing specific assets / funds owned or controlled by the PERSONS below alleged to be restricted, held in trust, held for others, or otherwise unavailable for creditors / settlement.

a.   The DEBTOR

b.   The PARISHES (including PARISH schools and cemeteries)

c.   The AFFILIATES

71.     Support for all allegedly restricted assets from Request No. 70, including wills, bequests, agreements, donation records, and correspondence that the DEBTOR intends to rely upon to establish / support restrictions.

72.     DOCUMENTS REGARDING the original sources of any FHO in the possession, custody, or control of the DEBTOR; how and where alleged FHO funds were maintained (including identification of specific bank, investment or brokerage accounts – both current and historical); and the flow of FHO funds (both current and historical).

73.     DOCUMENTS regarding the original sources of any alleged TRUST funds in the possession, custody, or control of the DEBTOR, how and where the alleged TRUST funds have been maintained (including identification of specific bank, investment or brokerage accounts – both current and historical), and the flow of funds (both current and historical).

74.     Copies of all FINANCIAL DISCLOSURES made by the DEBTOR (or any other trustee or party) to each PARISH (including PARISH schools and cemeteries) and AFFILIATES, and the date of each FINANCIAL DISCLOSURE.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

28

75. All DOCUMENTS CONCERNING the use of funds generated from any allegedly restricted assets, contributions, or bequests held by the DEBTOR or AFFILIATES.

76. Fully executed copies of all TRUST AGREEMENTS naming as a party the DEBTOR and / or any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE (each a "Trust").

77. All drafts of TRUST AGREEMENTS and non-privileged CORRESPONSENCE REGARDING the drafts.

78. For each TRUST, complete financial records from inception through the PETITION DATE showing (i) the initial funding, (ii) the source of the initial funding, (iii) all additions to the TRUST fund, (iv) all distributions and disbursements, and (v) all fees, taxes, and administration expenses. For each distribution and / or disbursement of TRUST funds, whether principal or income, identify (i) the date of each distribution and / or disbursement, (ii) the recipient, (iii) the amount, and (iv) the PERSON who authorized the distribution and / or disbursement.

79. DOCUMENTS sufficient to separately IDENTIFY all sums paid to or for the benefit of the DEBTOR from each TRUST for any reason and IDENTIFY (i) the date of each payment, (ii) the amount, (iii) the PERSON who authorized the payment, (iv) the recipient, and (v) a brief narrative description of why the payment was made.

80. For each TRUST, DOCUMENTS sufficient to IDENTIFY each and every instance where the PARISHES (including PARISH schools and cemeteries) or AFFILIATES compelled a distribution from such TRUST. Provide all DOCUMENTS REGARDING the exercise of such right to compel a distribution.

81. If the assets held, or alleged to be held, in any TRUST were commingled at any time with any other TRUST assets or the DEBTOR's assets,

   a. DOCUMENTS sufficient to IDENTIFY all accounts that held funds belonging to the TRUST, and

   b. all DOCUMENTS associated with those accounts.

82. DOCUMENTS sufficient to describe how TRUST assets for each TRUST were invested and how investment decisions were made.

83. For each TRUST, DOCUMENTS sufficient to show the legal counsel involved in the preparation of the TRUST AGREEMENT, if any, and whether each party to such TRUST was represented by separate counsel.

84. DOCUMENTS sufficient to IDENTIFY all PERSONS who assisted the DEBTOR with fulfilling its legal obligations stemming from each TRUST.

85. All donor gift policies, rules, and regulations for the 20 years prior to the PETITION DATE.

**Pooled Investments**

29

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

86. DOCUMENTS IDENTIFYING current deposit balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or any other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership.

87. DOCUMENTS IDENTIFYING current loan balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of borrowers.

88. DOCUMENTS IDENTIFYING current fund / subfund balances related to any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership.

89. DOCUMENTS RELATED TO the operation of any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Deposit & Loan Fund" operated and / or currently operates, institution account statements, participant account statements, and transaction DOCUMENTS such as check copies and wire advices).

90. DOCUMENTS RELATED TO to the operation of any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Pooled Investment" program operated and / or currently operates, institution account statements, participant account statements, and transaction documents such as check copies and wire advices).

**Pension**

91. All DOCUMENTS REGARDING any pension plans covering DEBTOR or PARISH employees (including priests or other CLERGY) including, without limitation, the following for the period from January 1, 2003 to the PETITION DATE: (a) Master Trust Agreements; (b) calculations of reserves; (c) calculations of shortfalls; and (d) financial statements (including balance sheets, profit and loss statements, and statements of cash flows).

**Cemeteries**

92. Studies, analyses, reports, or similar DOCUMENTS (whether performed internally or by external consultants) that include information RELATED TO CEMETERY permanent maintenance / perpetual care, including all narrative and associated attachments, schedules, exhibits, and tables.

93. Samples of each form of CEMETERY contract, agreement (including, but not limited to, purchases, sales, and perpetual care) used during the 20 years prior to the PETITION DATE.

30

**Insurance**

94. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with LMI that reflect the existence of INSURANCE POLICIES (including missing policies).

95. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with FIREMAN's FUND that reflect the existence of INSURANCE POLICIES (including missing policies).

96. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with CHUBB that reflect the existence of INSURANCE POLICIES (including missing policies).

97. All DOCUMENTS EVIDENCING historical insurance coverage for the DIOCESE with CONTINENTAL that reflect the existence of INSURANCE POLICIES (including missing policies).

98. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with WESTPORT that reflect the existence of INSURANCE POLICIES (including missing policies).

99. All DOCUMENTS EVIDENCING historical insurance for the DEBTOR with any PERSON not identified in Request Nos. 94-98 under which coverage for the ABUSE CLAIMS could possibly be available.

100. Copies of all general liability INSURANCE POLICIES under which the PARISHES and AFFILIATES assert an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

101. For all policies identified in response to Request No. 100, where the PARISHES and/or AFFILIATES have not provided a complete copy of the applicable policy, all DOCUMENTS EVIDENCING historical insurance coverage for the PARISHES and/or AFFILIATES with respect to that policy.

102. Copies of all general liability INSURANCE POLICIES under which any NON-DEBTOR asserts a CLAIM an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

103. For all INSURANCE POLICIES IDENTIFIED in response to Request No. 102 where the NON-DEBTOR has not provided a complete copy of the applicable INSURANCE POLICY, all DOCUMENTS EVIDENCING historical insurance coverage for the NON-DEBTOR with respect to that INSURANCE POLICY.

104. Copies of all insurance coverage letters, including, without limitation, reservation of rights letters or coverage denial letters, received by the DEBTOR, PARISHES, AFFILIATES, and/or the NON-DEBTORS with respect to ABUSE CLAIMS.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

31

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

105. A schedule of the amount paid or due to be paid by insurance carriers to the DEBTOR, PARISHES, AFFILIATES, and NON-DEBTORS with respect to defense costs for the ABUSE CLAIMS.

**Abuse Claims**

106. All DOCUMENTS CONCERNING ABUSE CLAIMS for any occurrence alleged to have taken place since January 1, 1941, regardless of whether allegations of SEXUAL ABUSE were deemed "credible" or were substantiated by the DEBTOR. This Request includes allegations against living and deceased PERSONS.

107. All lists, or partial or draft lists, of all PERSONS accused of SEXUAL ABUSE who have operated within the ARCHDIOCESE since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations."

108. All DOCUMENTS during the 20 years prior to the PETITION DATE sufficient to explain the DEBTOR's interpretation at any time of the term "credibly accused" or any synonym that the DEBTOR has used or uses to indicate when it believes a PERSON committed the SEXUAL ABUSE of which he or she was accused.

109. If YOU have no documents in your possession, custody, or control that are responsive to Request No. 107, please prepare such a list and produce all DOCUMENTS RELATING TO the decision not to prepare such a list previously.

110. If YOU have no documents in your possession, custody, or control that are responsive to Request No. 1087, produce all DOCUMENTS sufficient to identify every PERSON accused of SEXUAL ABUSE who has operated within the ARCHDIOCES since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations."

111. The personnel files or all personnel records for each SUBJECT INDIVIDUAL. This Request is not limited to DOCUMENTS CONCERNING SEXUAL ABUSE and includes, but is not limited to: educational background; work assignment histories; work performance evaluations; CORRESPONDENCE; reports; complaints (regarding SEXUAL ABUSE and otherwise); disciplinary records (regarding SEXUAL ABUSE and otherwise); medical, psychological and psychiatric records; and laicization DOCUMENTS.

112. All DOCUMENTS CONCERING any SUBJECT INDIVIDUAL, including, but not limited to: DOCUMENTS kept separate and apart from the main personnel files for such priests, deacons, or RELIGIOUS. This Request includes, but is not limited to, the following: secret files; secret archives; *sub secreto* files; "Z" files; Canon 489 of The Code of Canon Law (1983) files; Canon 379 of The Pio Benedictine Code of Canon Law (1917) files; Red Files; "Active Clergy Files;" "The Well;" "The Confidential Archive (archivum secretum);" "Archive;" "Inappropriate Behavior Policies/Referrals;" and/or "Clergy File Room."

113. All confidential DOCUMENTS (including, but not limited to, the strictly confidential DOCUMENTS maintained by the ARCHBISHOP or the DEBTOR pursuant to *Crimen Sollicitationis* (Crime of Solicitation) (1962) (Instruction of the Supreme Sacred Congregation of the Holy Office)), CONCERNING PRIESTS and RELIGIOUS against whom ABUSE CLAIMS have or could have been made, regardless of whether such

32

allegations were deemed credible accusations or were substantiated by the DEBTOR or by any agent, officer, or congregation of the Roman Catholic Church.

114. All DOCUMENTS CONCERNING the application for laicization, granting of laicization, deferral of laicization, and denial of laicization of PRIESTS, other CLERGY or RELIGIOUS who have been accused of or admitted to SEXUAL ABUSE and for whom the DEBTOR may be responsible or liable.

115. All DOCUMENTS CONCERNING any SUBJECT INDIVIDUAL that were sent to or received from the PERSONS that have been variously known as the Dicastery for the Doctrine of the Faith, the Pontifical Commission for the Protection of Minors, the Congregation for the Doctrine of the Faith, the Sacred Congregation for the Doctrine of the Faith, the Priest Senate Council, Priests' Senate, Diocesan Presbyterium, Priest Senator Council, Presbyteral Council, Priests' Counsel, and/or the Council of Priests.

116. All DOCUMENTS REGARDING any SUBJECT INDIVIDUAL that refer to the Papal Nuncio, Apostolic Nuncio, and/or Apostolic Delegate to the United States of America.

117. All DOCUMENTS CONCERNING ABUSE CLAIMS provided to or prepared by any IRP including, but not limited to, complaints, allegations or reports of SEXUAL ABUSE, interview notes, minutes and transcripts of meetings, findings, recommendations, decisions, reports or memoranda, and CORRESPONDENCE.

118. All minutes or notes of any meeting of any IRP.

119. All DOCUMENTS REGARDING the operation of all of the DEBTOR's victim's assistance programs , including, but not limited to, manuals and policies written during the 10 years prior to the PETITION DATE.

120. DOCUMENTS sufficient to IDENTIFY the victim's assistance coordinator(s), any victim's assistance personnel, and PERSONS who interacted with SURVIVORS on behalf of the DEBTOR with regard to such ABUSE CLAIMS.

121. All DOCUMENTS sufficient to IDENTIFY members of the IRP considering ABUSE CLAIMS.

122. All manuals, memoranda, or other DOCUMENTS CONCERNING procedures for any IRB considering ABUSE CLAIMS.

123. All DOCUMENTS CONCERNING assertions or concerns during the 20 years prior to the PETITION DATE that the DEBTOR or the ARCHBISHOP violated or failed to comply with the United States Conference of Catholic Bishops' *Charter for the Protection of Children and Young People* or the *Essential Norms for Diocesan/ Eparchial Policies Dealing with Allegations of Sexual Abuse of Minors by Priests or Deacons*, including, but not limited to, CORRESPONDENCE, reports, complaints, and disciplinary records.

124. All DOCUMENTS CONCERNING complaints, allegations, or reports that the DEBTOR or the ARCHBISHOP violated or failed to comply with any local or state child sexual abuse reporting requirements. This Request includes, but is not limited to, notes, CORRESPONDENCE, reports, complaints, and disciplinary records.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

33

125. All DOCUMENTS REGARDING the discipline (or lack of discipline) and restriction (or lack of restriction) of any services, duties, or responsibilities of a SUBJECT INDIVIDUAL, including, but not limited to, the restriction of priestly ministries or access to children.

126. All DOCUMENTS sufficient to substantiate all amounts of money paid by the DEBTOR any PARISH, and any AFFILIATE for therapy for SURVIVORS.

127. All COMMUNICATIONS with the following PERSONS CONCERNING ABUSE CLAIMS AND SUBJECT INDIVIDUALS dated during the 20 years prior to the PETITION DATE: any state or federal governmental agency, authority, or entity, including, without limitation, district attorneys' offices, the California Attorney General's office, police departments, and the United States Department of Justice; or any other law enforcement agency.

128. All COMMUNICATIONS with any PERSON, including, but not limited to, RELIGIOUS ORDERS and other archdioceses and dioceses CONCERNING all SUBJECT INDIVIDUALS who also served outside of the ARCHDIOCESE at any time.

129. All subpoenas from any governmental agency or entity (local, state, or federal) directed to or served on YOU regarding the issue of SEXUAL ABUSE.

130. All DOCUMENTS CONCERNING the subpoenas referenced in Request No. 129, including, but not limited to, written responses, DOCUMENT productions, and CORRESPONDENCE.

131. All DOCUMENTS CONCERNING the DEBTOR's settlements of then-existing ABUSE CLAIMS in the 20 years prior to the PETITION DATE, including, but not limited to, settlement agreements (whether or not "confidential") with SURVIVORS.

132. DOCUMENTS sufficient to IDENTIFY the sources of funds the DEBTOR used to pay settlements of ABUSE CLAIMS.

133. DOCUMENTS sufficient to IDENTIFY all INSURANCE POLICIES that have provided policy proceeds for payment of ABUSE CLAIMS or defense costs on behalf of the DEBTOR or any other named insured.

134. All COMMUNICATIONS among the DEBTOR and financial donors or other financial benefactors to the DEBTOR, any PARISH, and any AFFILIATE REGARDING payment for ABUSE CLAIMS.

135. All DOCUMENTS generated by private investigators relative to ABUSE CLAIMS, and COMMUNCATIONS between the DEBTOR and private investigators concerning same.

136. Any DOCUMENTS YOU exchanged with the John Jay College of Justice CONCERNING its study on SEXUAL ABUSE or ABUSE CLAIMS in the Roman Catholic Church.

-end-

DOCS_LA:350514.05068/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT 2**

**Proposed Form of Order Ex Parte Application**

DOCS_LA:352624 05068/002

James I. Stang (CA Bar No. 94435)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Brittany M. Michael (NY Bar No. 5678552) *admitted pro hac vice*
Pachulski Stang Ziehl & Jones LLP
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email:  jstang@pszjlaw.com
          dgrassgreen@pszjlaw.com
          jlucas@pszjlaw.com
          bmichael@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.:  23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | Judge:      Hon. Dennis Montali |

**ORDER GRANTING *EX PARTE* APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES; AND ORDERING DEBTOR TO SUBMIT DECLARATION**

Upon consideration of the *EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES*; AND ORDERING DEBTOR TO SUBMIT DECLARATION (the "Application"), the record in this case, and for good and sufficient cause appearing,

1

IT IS HEREBY ORDERED AS FOLLOWS:

137.    The Application is GRANTED.

138.    The Committee is authorized to issue a subpoena directed to the Debtor requiring the Debtor (a) to complete its production, by January 12, 2024, of documents responsive to the Requests;[1] and (b) to provide oral testimony, no later than January 24, 2024, relating to the Debtor's search for and possession, custody, or control of documents responsive to the Requests (the "Oral Testimony").

139.    The Debtor is required to submit to the Committee by January 12, 2024, a written declaration, signed under penalty of perjury, concerning the specific Requests for which the Debtor does not have documents in its possession, custody, or control (the "Sworn Statement").

140.    The Debtor's submission to the Committee of the Sworn Statement shall not in any way affect the Committee's right to take Oral Testimony.

141.    After receipt of the Sworn Statement and/or the substantial completion of the Debtor's document review, the Committee is authorized to issue subpoenas to any of the Parishes or Affiliates to seek production of documents responsive to any Requests identified in the Sworn Statement or identified during Oral Testimony or during the Committee's review of the Debtor's document production for which the Debtor did not produce documents in response to the Requests.

142.    The Committee's subpoena(s) directed to any of the Parishes or Affiliates shall require those subpoenaed parties to complete, by February 23, 2024 or no fewer than 14 calendar says after service of a subpoena, whichever is earlier, their production of documents responsive to the Requests.

Dated:  November ____, 2023

_____
The Hon. Dennis Montali
United States Bankruptcy Judge

---

[1] All terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  STATE OF CALIFORNIA          )
                                )
2  CITY OF LOS ANGELES          )

3       I, Sophia L. Lee, am employed in the city and county of Los Angeles, State of California. I
4  am over the age of 18 and not a party to the within action; my business address is 10100 Santa
   Monica Blvd., Suite 1300, Los Angeles, California 90067.

5       On November 29, 2023, I caused to be served the **2004 STATUS REPORT IN SUPPORT**
6  **OF THE EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED**
   **CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004**
7  **AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF**
   **DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES; AND ORDERING DEBTOR**
8  **TO SUBMIT DECLARATION [DKT. NO. 292]** in the manner stated below:

| ☑ | TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders and LBR, the foregoing document was served by the court via NEF and hyperlink to the document. On October 6, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below |
|---|---|
| ☐ | (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |
| ☐ | (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address. |

       I declare under penalty of perjury, under the laws of the State of California and the United
States of America that the foregoing is true and correct.

       Executed on November 29, 2023 at Los Angeles, California.

                                        */s/ Sophia L. Lee*
                                        Sophia L. Lee