PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
 WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
Email: ppascuzzi@ffwplaw.com
 jrios@ffwplaw.com
 tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
 A Limited Liability Partnership
 Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email: okatz@sheppardmullin.com
 amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>　　　Debtor and<br>　　　Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**DEBTOR'S SECOND STATUS UPDATE REGARDING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'** *EX PARTE* **APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES' AND ORDERING DEBTOR TO SUBMIT DECLARATION**<br><br>Judge: Hon. Dennis Montali<br>Date: December 14, 2023<br>Time: 1:30 p.m.<br>Place: Via ZoomGov |

The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession (the "RCASF" or the "Debtor"), in the above-captioned chapter 11 case (the "Bankruptcy Case"), submits this second status report concerning its informal discovery efforts ("this Report" or "Second Status Report"), consistent with the Court's November 30, 2023 *Docket Text Order* (the "Docket Order").

## I. PRELIMINARY STATEMENT

In connection with the Committee's request for entry of an order under Rule 2004, the Docket Order held the Debtor to two milestones: December 1 (provision of preliminary, written objections and questions to the Committee) and December 12 (the filing of this Report). The Debtor has met both milestones.

The Docket Order also indicated it would likely issue a Rule 2004 order following the upcoming December 14 hearing. For the reasons discussed through this Report, the Debtor requests that entry of such an order be subject to the following seven conditions:

(1) The Court should authorize requests for production ("RFPs") of no more than sixty (60) initial requests (down from the filed request of 138, with many having sub-parts), without prejudice to the Committee's right to make additional requests in the future as RFPs are crossed off the list. Entering an order authorizing all 138 requests at once will result in the Debtor attempting to "boil the ocean," resulting in slow progress across the board.

(2) The Court should initially limit the RFPs to a time period of 10 years (*i.e.*, 2013-2023) without prejudice to the Committee's right to seek a longer time period in the future.

(3) The Court should authorize the Debtor to respond to RFPs on a rolling basis beginning within two weeks of each request. Doing so takes into account the Debtor's actual internal resources.

(4) The Court should sustain the Debtor's objection [ECF No. 296, at 13] and not compel the Debtor's sworn declaration under Rule 2004.

(5) The Court should order that the "Abuse Claims" RFPs will be abated until the Committee has reviewed the reproduction of the Debtor's files from the judicial counsel coordinated proceeding (the "JCCP") and Attorney General investigation.

(6) Discovery against the non-debtor Catholic entities should not proceed until those entities have retained counsel of their own. The Debtor understands this is in process.

(7) Any Rule 2004 order should make clear that there is no waiver of the Debtor's right to move for a protective order or otherwise object to the discovery sought via the Rule 2004 application, including on account of the objections raised in the Debtor's prior filing [ECF No. 296]. The Committee's rights to respond to such objections and seek to compel production would of course be preserved as well.

Finally, to summarize the comprehensive update on the Debtor's discovery status (Section II below), several key developments warrant attention. *Firstly*, the Debtor has proactively submitted a proposed stipulated protective order to the Committee, accommodating numerous edits but seeking a broader definition of "Confidential Information" in line with Ninth Circuit precedent. Notably, discussions between the parties, spanning from November 29 to December 11, culminated in the Debtor's revised version of the protective order, which emphasizes the critical need for clarity in defining confidential information, particularly concerning highly sensitive data tied to individuals' legally protected privacy rights.

*Secondly*, the Debtor's diligent efforts in document collection are underscored, with tens-of-thousands of documents already amassed and ongoing daily work to procure additional responsive materials. The Debtor has communicated proactively with the Committee, exemplified by the prompt production of redacted insurance policies, showcasing a commitment to transparency. Anticipated productions, covering various categories such as Abuse Claims and financial records, underscore the Debtor's dedication to fulfilling requests while acknowledging potential delays contingent on ongoing negotiations and unforeseen challenges during the year-end holidays.

*Lastly*, amidst ongoing discussions, if the parties are to minimize the need for future motion practice (seeking protective orders or to compel) it is imperative that the Committee provides more

detailed and narrowed requests for production, as the Debtor seeks clarity on specific Priority Requests. The collaborative approach emphasized in ongoing communications is vital to ensure an efficient and focused discovery process, avoiding unnecessary drain on estate resources. This update sets the stage for a more narrowly tailored and phrased discovery framework proposed by the Debtor below, premised on the Court's entry of what will presumably be a final stipulated protective order.

## II. DEBTOR'S DETAILED DISCOVERY STATUS UPDATE

**A. The Debtor Has Provided the Committee a Proposed, Stipulated Protective Order that Addresses the Needs of the Case and Accepts All of the Committee's Edits Except the Debtor Asks the Court to Define "Confidential Information" More Broadly, Consistent with Ninth Circuit Precedent.**

On November 29, 2023, counsel for the Debtor provided its proposed draft stipulated protective order to the Committee's counsel in continuation of the parties' conferrals on that topic.[1]

On December 4, 2023, the Committee's counsel provided its proposed edits to the draft protective order.

Counsel for the parties conferred the following afternoon, December 5, 2023, to discuss the Committee's edits, including the Committee's striking of a two-level protective order in favor of a single level order and edits to the definition of "confidential information," both of which were previously agreed to by the plaintiffs (and counsel for the plaintiffs) in the JCCP state court proceeding, many of whom are claimants in this case.

Between December 6, 2023 and December 11, 2023, the Debtor's restructuring counsel worked with the Debtor's litigation counsel, Debtor's General Counsel, as well as numerous other internal and legal stakeholders to ensure the definition of "confidential information" sufficiently covers the types of documents and information likely to be produced in response to the Committee's requests. In that process, the Debtor's professionals carefully compared the Committee's RFPs (including the clarification, if any, discussed in Section C below), with the definition of "confidential information." The professionals took into express consideration the Committee's verbal editorial comments shared during the December 5 meet-and-confer.

---

[1] Prior to this November 29, 2023 draft—and primarily before the Committee filed its Application and sought to conduct discovery entirely through formal processes, rules, and procedures—the parties were contemplating a confidentiality agreement.

On December 11, 2023, the Debtor's counsel provided a new, revised version of the stipulated protective order, asking the Committee counsel to focus on paragraph 12's definition of "confidential information." The Debtor otherwise accepted all of the Committee's proposed edits. Given the Committee's preference for a single level protective order in lieu of the two-level protective order being used in the JCCP proceeding, it is vital that the Debtor be able to designate the highly sensitive information it is being asked to produce as confidential in order to protect individuals' legally protected privacy rights.

As an example, the Committee seeks *all* discovery files produced to plaintiffs in the JCCP proceeding. Therefore, Debtor's counsel believes it's essential to ensure sufficient uniformity of "confidential information" definitions between the two proceedings.

The Debtor also believes it is imperative that the Court's controlling protective order robustly safeguard the privacy rights of clergy members, particularly in matters pertaining to their spirituality, including their formation process, encompassing the deeply personal aspects of an individual's faith and acknowledgment that clergy members are afforded protection under the First Amendment.

Similarly, the Committee's requests focus on certain Abuse Claims, whether or not substantiated. The Ninth Circuit has specifically considered the question of sealing bankruptcy court records concerning alleged abuse claims against clergy. *See Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Oregon)*, 661 F.3d 417 (9th Cir. 2011). In that case, the Ninth Circuit held that 11 U.S.C. § 107, "supplants" and "preempts" any common law right to privacy. *Id.* at 430-31. Under this test, therefore, were the Committee to challenge a designation—the court would first consider whether a particularized harm will result from the disclosure. *Id.* at 424. If so, the Court must then proceed to *balance* the public and private interests to decide whether to maintain a protective order over that document. *Id.*

The Debtor believes that the standards imposed by Federal Rule of Civil Procedure 26 (made applicable by Federal Rule of Bankruptcy Procedure 7026), together with 11 U.S.C. § 107 and applicable law should be reflected in the Court's protective order in this action.[2]

On December 11, 2023, counsel for the Debtor provided a revised draft of the protective order with a definition of confidential information that is consistent with the JCCP protective order, the protective order entered in the Archdiocese of Oakland's bankruptcy case, and Ninth Circuit case law. Accordingly, the Debtor believes its proposed definition of confidential information should be acceptable to the Committee, as well as the Court, and awaits any feedback from the Committee. The Debtor hopes a final stipulated protective order can be presented to the Court in the next couple of days.

**B.     The Debtor Has Collected Tens-of-Thousands of Documents, and Continues to Work Daily to Collect More.**

The Debtor, its counsel and financial professionals have worked together on a daily basis to investigate the existence of responsive documents, identify potential custodians and repositories of documents, collect documents for review, and prepare documents for production in response to not only the Priority Requests but also certain of the remaining Requests for which responsive documents were readily identified and available.

Debtor's counsel communicated with Committee Counsel by email, text message and in-person conference on Friday, December 1, 2023 regarding its ready production of the Debtor's redacted insurance policies. On December 4, 2023, the Committee's counsel agreed it would treat the insurance policy documents as if designated confidential under any protective order that may be

---

[2] As a point of reference for the Court—the order in the Oakland matter begins: "Confidential Material: A Producing Person or Designating Party may designate Discovery Material as "Confidential Material" if such Producing Person believes in good faith (or with respect to documents received from another person or entity, has been reasonably advised by such other person or entity) that: (i) such Discovery Material (A) constitutes or contains nonpublic proprietary or confidential technical, business, financial, personal or other information of a nature that can be protected under 11 U.S.C. § 107(b)(1), Bankruptcy Rules 7026 or 9014 9018, or and Federal Rule of Civil Procedure 26(c); (B) constitutes or contains information that the court in this Chapter 11 Case has determined must be protected under 11 U.S.C. § 107(b)(2) or Bankruptcy Rule 9018; (C) is subject by law or by contract to a legally protected right of privacy; or (D) is information that is believed to unreasonably invade the privacy of an individual; or (ii) the Producing Person (A) is under a preexisting obligation to a third-party to treat such Discovery Material as confidential; or (B) has in good faith been requested by a Designating Party to so designate such Discovery Material on the grounds that such other Party considers such Discovery Material to contain information that is confidential or proprietary to such Party."

entered in this case, and the redacted insurance policies were produced that day. The Debtor then produced unredacted copies of those policies on the following day, December 5, 2023.

Pursuant to its other ongoing efforts, the Debtor anticipates producing thousands of pages of documents and substantial amounts of financial data for not only itself but the parishes and certain affiliates, by the end of the month and the beginning of January 2024. Delays in this timetable should only be a result of (i) continued delay in negotiating a mutually acceptable protective order, (ii) potential redactions needed to remove personal identifying information, and/or (iii) unforeseen issues that might arise as we approach the year-end holidays.

Specifically, the following categories of documents are in the queue for review and production in the near term in response to the Committee's Priority Requests:

- Thousands of pages of documents produced in the state court JCCP proceedings to individual plaintiffs, as applicable, responsive to the Abuse Claims requests;
- Over 15,000 pages of documents produced to the California Attorney General responsive to the Abuse Claims requests;
- Articles of Incorporation for the Debtor and certain affiliates;
- Tens of policies and procedures responsive to multiple of the Requests;
- Meeting minutes for the Finance Council, Investment Committee and Audit Committee from 2016 through present, which are available in electronic format, subject to continuing efforts to identify meeting minutes from years prior to 2016;
- A Chancery organizational chart;
- A list of all of the parishes and an explanation of two parishes which previously merged;
- Audited annual financials for the Debtor, the Cemeteries, and St. Patrick's Seminary for the past 10 years;
- The Debtor's unaudited quarterly financial reports for 2014 through present;
- Unaudited annual financials for the parishes, mostly in Excel format as requested (except where unavailable) from 2014 through present. These Excels were prepared non-debtors but appear to include balance sheets, P&L, and other schedules;

- Large flat file extracts in Excel of the Debtor's transactional accounting data, *i.e.*, its general ledger, customer ledger, and vendor ledger from its accounting systems for the past 10 years. The Debtor will also produce a chart of accounts to assist the Committee in its review.

- In addition, certain of the schedules or lists of data requested by the Priority Requests simply do not exist. As an initial effort to create those lists of information in the spirit of cooperation endeavored by the current informal discovery process, the Debtor is endeavoring to create a list of the entities in which the Archbishop, Chancellor and Vicar General have served as officers or directors in the past year. Similarly, the Debtor is creating a list of all current committees, councils and similar groups pertaining to the Debtor's operations that presently exist.

On top of these foregoing efforts, the Debtor is also collecting and queuing up the following categories of documents and information in response to other of the *non-priority* Requests, such as:

- AAA assessment documents from 2018 through present, subject to supplementation of the AAA assessments for prior years;
- Rental and Investment Tax documents;
- Documents pertaining to charges to parishes and affiliates for payroll services from 2014 through present;
- Documents pertaining to institutional loans, if any, provided by the Debtor to affiliates;
- Documents relating to the Debtor's write off of AAA debt for one of the parishes; and
- Documents related to lay pension, insurance, priest pension, and workers comp.

As reflected above, the Debtor is rapidly collecting responsive documents as fast as it can triage responding to the Requests. The Debtor continues to make progress on this front on a daily basis and requests the Court allow it to continue to do so through the current informal discovery process and free of the need and hindrance of having to prepare formal discovery objections and responses and divert resources to that effort.

C.   **The Committee's Request for "SQL Database" Is Not Possible and Exceeds Rule 2004.**

In the parties' conferrals, the Committee has stated—without any analysis of the data extracts—that it simply believes based on its perception of other cases, regarding other unrelated entities, that it needs the Debtor's data in a different format other than the extracts and reports allowed by the Debtor's software. Namely, the Committee continued to demand the Debtor produce a "sql database."

The Debtor's representatives have investigated this request. It is not possible. In specific, the Debtor contacted Sage (regarding its current Intacct database) and was told this was an unusual request and Sage could not provide a copy of the database requested. The Sage representative told the Debtor representative to extract the data—which is what the Debtor has since done and stands ready to produce with the appropriate protective order. *See supra*. The Debtor believes the most practical, cost effective, and useful format in which to provide the data to the Committee is via Excel flat files.

D.   **The Committee Should Limit the Committee's Initial RFPs to a 10-year Lookback.**

On Friday, December 1, 2023, counsel for the Debtor provided the Committee specific requests for clarification for 11 of the Committee's Priority Requests, many of which were already set forth in the Debtor's Objection. Counsel for the Debtor further proposed that, in response to the Committee's 30 Requests relating to Abuse Claims, the Debtor first reproduce (with any additional necessary redactions) the tens-of-thousands of pages of documents produced as part of the preceding state court JCCP proceeding and, separately, to the California Attorney General and would confer as to any additional information sought following the Committee's review of those documents. And, as a general matter, counsel for the Debtor proposed the Requests generally be limited to a 10-year lookback period subject to the Committee's feedback as to which requests, if any, should not be so limited because it would impair the Committee's initial, threshold work.

On December 5, the Committee provided its responses to the Debtor's requests for clarification. As to the Debtor's more general requests to limit the Requests and stage its responses, the Committee rejected the proposed ten-year lookback period for its 30 Abuse Claim requests and

the Debtor's audited financial statements. It also proposed a 15-year initial lookback period for its requests for lists of all of the Debtor's and Affiliates' bank, money market, investment, brokerage, or other accounts; all guidelines or policies for the parishes related to any subject; and meeting minutes for the Debtor's finance council and presbyteral council, while accepting an initial 10-year lookback period for the remaining Priority Requests, though it propounded additional discovery requests in "exchange" for doing so in specific instances. The Committee's counsel also agreed to the Debtor's proposed approach for responding to the Abuse Claims requests except that it demanded the "prompt production" of all persons "credibly accused" of sexual abuse since 1941.

**E. The Committee Should be Mandated to Provide More Detailed RFPs to Facilitate the Debtor's Understanding and Prevent Unnecessary Waste of Estate Resources.**

In light of the Debtor's specific inquiries aimed at gaining clarity on 11 Priority Requests and striving to comprehend the actual information sought, the Committee has refrained from narrowing or constraining four of these requests. Notably, these include the Committee's continued demands for:

- "all . . . norms . . . operating guidelines . . . [and] instructions . . . created by the Debtor";
- "all guidelines or policies for the parishes . . . relating to any subject . . ."; and
- lists of all entities in which the Archbishop, Chancellor, or Vicar General have been an officer or director and of all committees, councils, or "similar groups" of the Debtor (which necessitate creation from scratch as these lists do not currently exist).

During a telephonic conference on Friday, December 8, counsel for both parties engaged in discussions, during which the Debtor's counsel provided a verbal update on the ongoing efforts to respond to the Committee's requests. This update included categories of documents being prepared for production and anticipated timelines. Subsequently, on December 11, 2023, counsel for the Debtor formalized this update through email and sought additional guidance from the Committee.

The Debtor has made substantial progress in collecting responsive documents, a summary of which is provided below. Counsel for the Debtor is committed to providing ongoing updates to

the Committee on the progress achieved and seeks to maintain open communication regarding the interpretation and intent of specific Priority Requests. It is imperative that the Committee, in the interest of efficiency and resource conservation, narrow down and provide more detailed RFPs (no more than 60 total) to guide the Debtor's responsive efforts effectively. This collaborative approach ensures a streamlined and focused exchange of information, preventing unnecessary expenditure of estate resources and expediting the discovery process.

Dated: December 12, 2023

FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By  /s/ Paul J. Pascuzzi
PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY
Attorneys for The Roman Catholic Archbishop of San Francisco

Dated: December 12, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ Ori Katz
ORI KATZ
ALAN H. MARTIN

Attorneys for The Roman Catholic Archbishop of San Francisco