James I. Stang (CA Bar No. 94435)
Debra I. Grassgreen (CA Bar No. 169978)
Andrew W. Caine (CA Bar No. 110345)
Brittany M. Michael (*admitted pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, California 94104
Tel: 415.263.7000; Fax: 415.263.7010
Email: jstang@pszjlaw.com
          dgrassgreen@pszjlaw.com
          acaine@pszjlaw.com
          bmichael@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and Debtor in Possession. | Case No.: 23-30564<br><br>Chapter 11<br><br>**COMMITTEE'S SECOND STATUS REPORT IN SUPPORT OF THE EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES; AND ORDERING DEBTOR TO SUBMIT DECLARATION [DKT. NO. 292]**<br><br>Judge: Hon. Dennis Montali<br>Date: December 14, 2023 Time: 1:30 p.m.<br>Place: Via ZoomGov |

The Committee of Unsecured Creditors (the "Committee") of the Roman Catholic

Archbishop of San Francisco (the "Debtor") submits this report in support of the *Ex Parte*

*Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to*

*Bankruptcy Rule 2004 Authorizing Oral Examination of the Debtor; and Production of Documents*

*of Debtor, Parishes, and Affiliates; and Ordering Debtor to Submit Declaration*, filed on November 8, 2023, as ECF No. 292 (the "Application") and in response to the *Debtor's Second Status Update Regarding the Application* [ECF No. 362] (the "Debtor's Report"), and the Court's instructions at the November 9, 2023 status conference hearing.

## PRELIMINARY STATEMENT

At the outset of this discovery process, the Committee urges the Court to disregard rhetoric regarding the number of pages the Debtor claims to have gathered; it has produced only easily accessible insurance policies.   Only when the Committee has *received* meaningful productions will it be able to understand whether this Debtor will fulfill its commitment to transparency.

The Committee finds the Debtor's litigious approach to its status report and meet and confer emails counterproductive to a process intended by the Committee to quickly and efficiently gather information necessary to prepare for a near term mediation. The majority of issues raised in the Debtor's Report were not raised in the parties' frequent emails and meetings. The Committee favors a process by which the parties endeavor to come to the Court with agreement as to more issues. The Debtor has produced little, but promised much.  Thus, in order to keep the pressure on the Debtor to continue to work towards actual productions, the Committee requests the Court enter the revised order granting its 2004 Motion in the form attached as Exhibit B.[1]  The Committee has modified its requests for production ("RFPs"), attached as Exhibit A,[2] and the proposed order to address certain of the concerns expressed in the Debtor's Report:

1) **Proposed Cap on the Number of Requests:** The Committee proposes an order that includes all of its narrowed requests—now down to one hundred and twenty-one (121)—but staggers the deadline for responses to the requests in four stages.  This proposal prevents the inefficiency of the parties from having to start back at the beginning of this process for the

---

[1] Attached as Exhibit D is a redline demonstrating the changes from Ex. 2 of the Application to Ex. B here.
[2] Attached as Exhibit C is a redline demonstrating the changes from Ex. 1 of the Application to Ex. A here.

sixty-one requests that do not meet the Debtor's cap. The Committee proposes the deadlines for each stage be two weeks apart, with only production to the stage one RFPs now due on January 12, 2024. The Committee further proposes that all production be complete by the end of February so the parties can work to begin mediation in April.

2) **Proposed Cap on Applicable Time Period:** The Committee has revised the RFPs to reflect a lookback period of 10 years, without prejudice to the Committee's right to seek a longer lookback period, except for certain requests. Specifically, the Committee needs a longer lookback period for all requests related to the sexual abuse claims, as those could date back to the 1940s. Therefore, with regards to abuse and insurance documents and documents related to the potential liability of joint tortfeasors (such as religious orders) and successors (such as dioceses that broke from the Debtor), the Committee needs older documents. Additionally, as to a limited number of requests (less than fifteen), the Committee needs information going back to the first revival window (2003) in order to evaluate how the Debtor adjusted its corporate structure and the impact of such adjustments on its ability to respond to its child sexual abuse liability.

3) **Rolling Deadlines:** The Committee has no objection to receiving responsive documents on a rolling basis but deadlines are necessary to keep the process moving expeditiously and to prevent the need for unnecessary, continual Court intervention.

4) **Sworn Statement:** The Committee asked for sworn statements to determine the documents as to which the Diocese is a custodian and other documents that must be sought from affiliates. The experience of the Committee professionals in dozens of Catholic diocese cases reflects that the diocese is typically the repository of the financial and governance documents of parishes, schools, and other affiliates. This is especially likely here because the parishes are not separately incorporated. To achieve maximum efficiency, the Committee

is first seeking that information from the Debtor. The Committee has proposed the sworn statement as a mechanism to ensure that all efforts were made by the Debtor to gather such information before the Committee is required to incur the potentially significant time and expense of seeking to obtain such information directly from the affiliates. The Committee has revised the requested statement to solely focus on RFPs requesting Parish and Affiliate information to narrow the scope of the statement without sacrificing the purpose the Committee seeks to accomplish.

5) **Abuse Documents:** The Committee has agreed, in the first instance, to accept the production of the judicial counsel coordinated proceeding (the "JCCP") documents and the Attorney General investigation, as these documents have previously been reviewed and produced by the Debtor in non-bankruptcy litigation, and should be produced without delay. The Committee is not asking the Debtor to produce documents more than once, so an order that the Committee review the JCCP documents *before* the Debtor must produce other abuse claim documents is inappropriate. The Debtor presumably has an index of the documents it has already produced and the Debtor, not the Committee, is the party that can determine what additional responsive documents exist.

6) **Delay for Affiliates to Retain Counsel:** This bankruptcy case was filed in August. The Committee gave the Debtor a copy of the RFPs on November 1. If affected parties have not hired counsel, the Committee should not suffer for their delay.

7) **Debtor's Reserved Rights:** The Committee has added the language requested by the Debtor to its attached revised proposed order.

## Detailed Discovery Status Update

### A. Protective Order

The Debtor begins its timeline on the protective order on November 29, 2023 and inexplicitly tries to blame the Committee for the delay. In fact, the Committee waited almost two months, until the evening prior to the last scheduled hearing on the Application, for the Debtor's response to the Committee's comments on the protective order. The Committee has very promptly returned its targeted edits to the Debtor within two to three business days. The Debtor's zealous objection surprised the Committee because the Committee believed the parties were close to agreement with only minor differences remaining. The Debtor's briefing urging enhanced privacy rights of clergy is wholly inappropriate at this stage or in this forum. While the Committee disagrees with the Debtor's position, it will save that discussion for when and if it becomes ripe. Instead, since the Debtor is negotiating the remaining issue of the definition of Confidential Information in public, the Committee proposes the adoption of the language used in the Diocese of Oakland bankruptcy:

> Confidential Information means any Discovery Material that (i) (A) constitutes or contains nonpublic proprietary or confidential technical, business, financial, personal or other information of a nature that can be protected under 11 U.S.C. § 107(b)(1), Bankruptcy Rules 7026 or 9018, or Federal Rule of Civil Procedure 26(c); (B) constitutes or contains information that the court in this Chapter 11 Case has determined must be protected under 11 U.S.C. § 107(b)(2) or Bankruptcy Rule 9018; (C) is subject by law or by contract to a legally protected right of privacy; or (D) is information that is believed to unreasonably invade the privacy of an individual; or (ii) the Producing Person (A) is under a preexisting obligation to a third-party to treat such Discovery Material as confidential; or (B) has in good faith been requested by a Designating Party to so designate such Discovery Material on the grounds that such other Party considers such Discovery Material to contain information that is confidential or proprietary to such Party.[3]

This proposed language would result in consistency between the two bankruptcy cases, lets the Debtor designate as confidential any documents it believes should be treated as such in accordance with relevant laws, and allows the Committee to bring to this Court of the question of the

---

[3] *See Revised Confidentiality Agreement and Stipulated Protective Order*, In re. The Roman Catholic Bishop of Oakland, Case No. 23-40523-WJL, Docket No. 288 (so ordered at Docket No. 331).

proper interpretations of those laws if so needed. The JCCP was a state court proceeding with very different client-attorney-party dynamics and so structures and definitions used in those proceedings may not be applicable or translatable to this bankruptcy case.

### B. The Committee Has Only Received Insurance Policies

Despite the Debtor's fulsome description of its plans for production, the only production the Committee has received included some of the Debtor's insurance policies. While there is not yet a protective order in place, the Debtor produced the insurance documents with the Committee's consent that they would be treated under the protective order once agreed upon and entered. Without explanation, the Debtor has refused to produce any other documents that may be ready under those same conditions.

### C. The Committee's Request for a Back-Up of the Accounting System

Again, the Committee's goal in this discovery process is efficiency. Having collectively worked on almost every Catholic diocese bankruptcy since the Diocese of Spokane, the Committee's professionals have learned that a download of a backup of the debtor's accounting system is the most efficient option for providing the Committee with the accounting data it needs to complete its investigation in the most expeditious and cost-effective manner. The parties briefly discussed this issue at a meeting several weeks ago with their financial advisors. The Committee has repeatedly asked to schedule another meeting with financial advisors to continue that discussion. Instead, the Debtor has unilaterally moved forward with generating excel reports that Committee has not requested. In fact, the Committee has implored the Debtor not to waste its time on generating those reports that the Debtor believes contain the information the Committee "needs to know."

The primary problem with the Debtor exporting data to Excel files is that the Committee would not receive all the available data required to complete its analysis and investigation. Tables and fields maintained in accounting systems generally contain data not available through the user

interface or through "the built-in reporting tools" that the Debtor proposes to use, nor does the Debtor's approach allow for an efficient process to connect the voluminous data sets and transactions. The Committee needs to know the full universe of the Debtor's accounting data. The excel files are the equivalent of the Debtor positioning a telescope and letting the Committee to see only the parts of the universe visible through that lens. The Committee repeats its request for a cooperative dialogue with the parties' financial advisors, through which the Committee is certain that the parties can develop a solution that is more efficient and productive than Excel. For example, the Committee was not on the call with Sage and does not know exactly what the Debtor asked. Being "unusual" alone does not mean it is impossible. The Committee's revised RFPs still have the Committee's request for a back-up of the accounting data and if the Debtor continues to point to the small size of its staff to justify delays in production, then the Committee would expect that the Debtor will want to work with the Committee to create efficiency whenever possible.

### D. The Debtor's Concerns Regarding Lookback Period and Detail in RFPs

The Committee addressed the issues regarding the lookback period above and in its revised RFPs. As to the Debtor's concerns regarding the lack of "detail" in the RFPs, to the extent possible, the Committee has eliminated or revised certain of the RFPs to address this concern. But for many RFPs, including those identified in the Debtor's Report, the Committee fails to understand the Debtor's objections. For example, the Committee seeks to identify the entities in which the senior leaders of the Archdiocese are officers or directors. The Committee does not understand what is unclear or vague about that request or how it can be revised. Similarly, an important part of the Committee's due diligence will involve reviewing minutes of the Debtor's governing bodies. As a first step, the Committee is asking for a list of all of those bodies. Different organizations call such bodies committees, counsels, boards, or other terms and so the Committee asked for a list of all such bodies present in this Diocese. Again, the Committee's request is clear and targeted.

As to the other request that the Debtor raises, the Committee has tried to clarify, although not limit, the language as follows:

> All versions of the norms, statutes, operating guidelines / policies / instructions and policy manuals issued by / created by DEBTOR including all guidelines or policies for the PARISHES RELATING TO any subject, including, but not limited to, child protection, accounting manuals, investment policies, employee handbooks or other employment-related policies (pay, leave, etc), risk management policies, whistleblower policies, conflict of interest policies, building and renovation guidelines, budget planning guidelines, finance counsel guidelines, travel expense policies, tuition rate policies, parking policies.

As the Committee has explained in the parties' meetings, it needs to understand *all* policies (or similar documents by another name) that the Debtor has issued that govern the operations of the Debtor as well as parishes and affiliates. The Committee's needs are not limited to a subset of policies. Anything that the Debtor decided was important enough to warrant a policy, the Committee believes is important enough to review. In the Committee's professionals' significant experience in these types of cases, these very basic requests have never been disputed.

The Committee hopes that the parties can work to resolve issues amongst themselves rather than through briefing. But at this stage, the Committee submits that a court order in substantively the form of Exhibit B is necessary to aid its efforts to obtain the documents necessary for mediation in a timely manner.

Dated: December 13, 2023

PACHULSKI STANG ZIEHL & JONES LLP

By: ___/s/ James I. Stang_____
    James I. Stang (CA Bar No. 94435)
    Debra I. Grassgreen (CA Bar No. 169978)
    Andrew W. Caine (CA Bar No. 110345)
    Brittany M. Michael (*admitted pro hac vice*)
    PACHULSKI STANG ZIEHL & JONES LLP
    One Sansome Street, Suite 3430
    San Francisco, California 94104
    Tel: 415.263.7000; Fax: 415.263.7010
    Emails: jstang@pszjlaw.com
            dgrassgreen@pszjlaw.com
            acaine@pszjlaw.com
            bmichael@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

**EXHIBIT A**
**Requests for Production of Documents**

1

EXHIBIT 1

**INSTRUCTIONS**

A.     Unless otherwise specified, each request seeks DOCUMENTS dated or created during the ten (10) years prior to the PETITION DATE but the Committee reserves the right to request older DOCUMENTS after receiving DOCUMENTS responsive to these requests.

B.     Please bates number each page of each DOCUMENT that YOU produce.

C.     YOU are required to conduct a thorough investigation and produce all DOCUMENTS (as defined below) in YOUR possession, custody, and control.

D.     All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

E.     And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

F.     The use of the singular form of any word includes the plural and vice versa.

G.     If YOU are unable to comply with a particular category(ies) of the requests below and DOCUMENTS responsive to the category are in existence, state the following information:

    1.     The date of the DOCUMENT;

    2.     The type of DOCUMENT (e.g., letter, memorandum, report, etc.);

    3.     The name, address, telephone number and title of the author(s) of the DOCUMENT;

    4.     The name, address, telephone number and title of EACH recipient of the DOCUMENT;

    5.     The number of pages in the DOCUMENT;

    6.     The document control number, if any;

    7.     The present location(s) of the DOCUMENT and the name, address and telephone number of the person(s) who has (have) possession of the DOCUMENT;

    8.     A specific description of the subject matter of the DOCUMENT;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9.    The reason why the DOCUMENT cannot be produced or why you are unable to comply with the particular category of request.

H.    **YOU are under a continuing duty to amend YOUR written response and to produce additional DOCUMENTS if you learn that the response or production is incomplete or incorrect in any material respect, and if the additional or corrective information has not otherwise been made known to the COMMITTEE during the discovery process or in writing.**

I.    **YOU are required to produce the full and complete originals, or copies if the originals are unavailable, of each DOCUMENT responsive to the categories below along with all non-identical copies and drafts in its or their entirety, without abbreviations, excerpts, or redactions. A copy may be produced in lieu of originals if the entirety (front and back where appropriate) of the DOCUMENT is reproduced and YOU state by declaration under penalty of perjury that the copy provided is a true, correct, complete, and accurate duplication of the original.**

J.    **YOU are required to produce the DOCUMENTS as they are kept in the usual course of business, or to organize and label them to correspond with each category in these requests.**

K.    **For ELECTRONICALLY STORED INFORMATION ("ESI"):**

1.    The Committee seeks to discuss with the Debtor and/or Producing Party to whom these Requests are directed (a) potential search terms for ESI responsive to each Request; (b) the potential custodians of ESI responsive to each Request and (c) the devices to be searched for ESI responsive to each Request.

2.    Produce DOCUMENTS in accordance with the instructions at https://support.everlaw.com/hc/en-us/articles/360004962052-Standard-Format-for-Processed-Data

3.    Maintain family integrity.

4.    Perform custodian-level de-duplication.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5. Produce a DAT load file with the following metadata fields: Beginning Production Number, Ending Production Number, Beginning Attachment Number, End Attachment Number, Family ID, Page Count, Custodian, Original Location Path, Email Folder Path, Document Type, Doc Author, Doc Last Author, Comments, Categories, Revisions, File Name, File Size, MD5 Hash, Date Last Modified, Time Last Modified, Date Created, Time Created, Date Last Accessed, Time Last Accessed, Date Sent, Time Sent, Date Received, Time Received, To, From, CC, BCC, Email Subject, Path to Native, Path to Full Text, Original Time Zone.

6. Process all data in UTC and provide a metadata field indicating original time zone.

**L. If YOU withhold or redact a portion of any DOCUMENT under a claim of privilege or other protection, then the DOCUMENT must be identified on a privilege log, which shall be produced contemporaneously with the non-privileged DOCUMENTS responsive to this Request for Production, and which privilege log shall state the following information:**

1. The date of the DOCUMENT;

2. The type of DOCUMENT (e.g., letter, memorandum, report, etc.);

3. The name, address, telephone number and title of the author(s) of the DOCUMENT;

4. The name, address, telephone number and title of each recipient of the DOCUMENT;

5. The number of pages in the DOCUMENT;

6. The document control number, if any;

7. The present location(s) of the DOCUMENT and the name, address and telephone number of the person(s) who has (have) possession of the DOCUMENT;

8. A general description of the subject matter of the DOCUMENT or the portion redacted without disclosing the asserted privileged or protected communication;

9. The specific privilege(s) or protection(s) that YOU contend applies.

## DEFINITIONS

1. "AAA" refers to the Archdiocesan Annual Appeal discussed at PASSARELLO DECL. at ¶ 37.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.      "ABUSE CLAIM" means any CLAIM against the DEBTOR resulting or arising or related to in whole or in part, directly or indirectly from any actual or alleged sexual conduct or misconduct, grooming, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, intimidation, any other conduct constituting a sexual offense, or any other sexual misconduct, and seeking monetary damages or any other relief based upon the conduct described above, under any theory of liability, including, but not limited to, vicarious liability, any negligence-based theory, conspiracy, fraudulent concealment, intentional tort, continuing tort, public nuisance, invasion of privacy, breach of alleged duties imposed by The Charter for the Protection of Children and Young People, Canon Law or other Catholic Church documents or principles, contribution, indemnity, or any other theory based on any acts or failures to act by the DEBTOR or any other PERSON for whose acts or failures to act the DEBTOR is or may be responsible, including but not limited to, claims against clergy, deacons, seminarians, employees, teachers, or volunteers. "ABUSE CLAIM" includes all CLAIMS for Childhood Sexual Assaults, as that term is defined by California Code of Civil Procedure section 340.1(d).

3.      "AFFILIATE" refers to the following: any of the HIGH SCHOOLS, any of the SCHOOLS, any of the CEMETERIES, CASC, RPSC, BENEDICT XVI, the SEMINARY, CATHOLIC CHARITIES, DOS, VALLOMBROSA, SERRA, and/or the AAA.

4.      "ALLEGED PERPETRATOR" refers to any natural PERSON who has been accused of SEXUAL ABUSE of a minor and for whom it has been alleged the DEBTOR was responsible at any time. This term includes, but is not limited to, PERSONS who may not be "credibly accused" under the DEBTOR's or anyone else's definition.

5.      "ARCHBISHOP" refers to the PERSON and the office of the Archbishop of San Francisco, as that term is used at https://www.usccb.org/about/archbishop-faqs.

6.      "ARCHDIOCESAN ANNUAL APPEAL" shall have the meaning ascribed to it in the PASSARELLO DECL. at ¶ 37.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7.     "ARCHDIOCESE" refers to the geographic territory under the jurisdiction of the DEBTOR, as set forth in footnote 2 to the PASSARELLO DECL.

8.     "BANKRUPTCY CASE" refers to the bankruptcy case styled as *In re The Roman Catholic Archbishop of San Francisco*, filed in the United States Bankruptcy Court for the Northern District of California (Case No. 23-30564).

9.     "BENEDICT XVI" refers to the Benedict XVI Institute for Sacred Music and Divine Worship (as discussed in the PASSARELLO DECL. at ¶ 29) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

10.     "CASC" refers to the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation (as discussed in the PASSARELLO DECL. at ¶ 22) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

11.     "CATHOLIC CHARITIES" refers to the Catholic Charities CYO of the Archdiocese of San Francisco (as discussed in the PASSARELLO DECL. at ¶31) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

12.     "CEMETERIES" refers to the six operating cemeteries within the ARCHDIOCESE as referenced in the PASSARELLO DECL. at ¶ 34, where they are identified as Holy Cross Catholic-Colma, Holy Cross-Menlo Park, Holy Cross-Saint Mary Magdalene, Mt. Olivet, Our Lady of the Pillar (includes St. Anthony's Pescadero), and Tomales Catholic Cemetery, and shall include all of their agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors. CEMETERIES also includes the Director of Cemeteries and the Catholic Cemetery Advisory Board (discussed in the PASSARELLO DECL. at ¶ 34) and all of their

agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

13.     "CHUBB" refers to Westchester Fire Insurance Company, Pacific Indemnity Company, and/or Century Indemnity Company, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator,

14.     "CLAIM" means any "claim," as defined in 11 U.S.C. § 101(5).

15.     "CLERGY" refers to any lay PERSONS or RELIGIOUS, including, but not limited to, PRIESTS.

16.     "COMMITTEE" refers to the Official Committee of Unsecured Creditors in the BANKRUPTCY CASE.

17.     "COMMUNICATION" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

18.     "CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

19.     "CONTINENTAL" means the Continental Casualty Company, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator,

20.     "DOS" refers to the Department of Catholic Schools (discussed at PASSARELLO DECL. at ¶ 32) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

21.     "DEBTOR" refers to The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession in the BANKRUPTCY CASE, and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, BANKRUPTCY CASE professionals, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

22.     "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. A DOCUMENT includes written COMMUNICATIONS.

23. "EVIDENCING" has the same meaning as CONCERNING.

24. "FHO" means "funds allegedly held for others."

25. "FINANCIAL DISCLOSURES" means all financial disclosures, financial records, account statements, and / or accountings of any kind, either formal or informal.

26. "FIREMAN'S FUND" refers to Fireman's Fund, Chicago Insurance Company including any affiliate, parent, subsidiary, successor or predecessor of Fireman's Fund, or any third-party administrator.

27. "IRP" refers to any independent review panel or independent review board of the DEBTOR, whether called "Independent Review Board," "Archdiocesan Review Board," or any other name.

28. "IDENTIFY" and "IDENTIFYING" shall have the following meanings:

a. *With respect to PERSONS*: When referring to a PERSON, "to identify" means to give, to the extent known, the PERSON's full name, present or last known address; and when referring to a natural person, additionally, the present or last known place of employment. Once a PERSON has been identified in accordance with this definition, only the name of that PERSON need be listed in response to subsequent discovery requesting the IDENTIFICATION of that person.

b. *With respect to DOCUMENTS*: When referring to DOCUMENTS, "to identify" means to give, to the extent known, the (i) type of DOCUMENT; (ii) general subject matter; (iii) date of the DOCUMENT; and (iv) author(s), addressee(s) and recipient(s). In the alternative, YOU may produce the DOCUMENTS, together with identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

29. "INSURANCE POLICIES" means any and all insurance policies in which the DEBTOR or any other entity CONCERNING THE DEBTOR has or could legally make a CLAIM in the proceeds thereof, including as an insured, a named insured, additional insured or otherwise.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

30.     "INSURERS" refers to LMI, FIREMAN'S FUND, CHUBB, CONTINENTAL, and WESTPORT.

31.     "LMI" refers to Certain Underwriters at Lloyd's, London and/or Certain London Market Insurance Companies, including any affiliate, parent, subsidiary, predecessor or successor of LMI, or any third-party administrator.

32.     "NON-DEBTOR" means any PERSON other than the DEBTOR IDENTIFIED as responsible for the same ABUSE CLAIM as the DEBTOR. A NON-DEBTOR may be a PARISH or AFFILIATE.

33.     "PARISH" shall have the meaning ascribed to it in the PASSARELLO DECL. at ¶14, and shall include all of agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors of the PARISH.

34.     "PASSARELLO DECL." refers to the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions*, filed at Docket No. 14 in the BANKRUPTCY CASE.

35.     "PERSONAL PROPERTY" means tangible and intangible assets other than REAL PROPERTY.

36.      "PERSON" is any natural person, juridical person, or any legal entity, including, without limitation, any business, religious, or governmental entity or association.

37.     "PETITION DATE" means August 21, 2023.

38.     "RPSC" means and refers to the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation (as discussed at PASSARELLO DECL. at ¶ 26) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

39.     "REAL PROPERTY" means land and immovable property on land, such as buildings.

40.     "REGARDING" has the same meaning as CONCERNING.

41.     "RELATING TO" has the same meaning as CONCERNING.

42.     "RELIGIOUS" shall refer to any natural PERSON who is a member of an institute of consecrated life or a society of apostolic life.

43.     "RELIGIOUS INSTITUTE" means a society in which Roman Catholic members or RELIGIOUS pronounce public vows, either perpetual or temporary, and lead a life of brothers or sisters in common.

44.     "RELIGIOUS ORDER" means a type of RELIGIOUS INSTITUTE acknowledged by the Roman Catholic Church as such.

45.     "SERRA" refers to the Serra Clergy House (discussed at the PASSARELLO DECL. at ¶ 36) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

46.     "SEXUAL ABUSE" means conduct giving rise to an ABUSE CLAIM.

47.     "SEMINARY" refers to the Roman Catholic Seminary of San Francisco (as discussed at the PASSARELLO DECL. at ¶ 30) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors

48.     "SURVIVOR" refers to a natural PERSON who has or had an ABUSE CLAIM.

49.     "TRUST" means a legal entity under a TRUST AGREEMENT naming as a party the DEBTOR, any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE.

50.     "TRUST AGREEMENT" means to a written or oral arrangement that evidences, or purports to evidence, a TRUST; and includes declarations of trust and all amendments to such arrangements.

51.     "WESTPORT" means the Westport Insurance Company, formerly known as Employers Reinsurance Corporation, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator

52.     "YOU" means the DEBTOR.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

53. "VALLOMBROSA" refers to the Vallombrosa Retreat Center (discussed at the PASSARELLO DECL. at ¶ 35) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

## DOCUMENT REQUESTS

**STAGE ONE**

**Corporate Governance**

1. All versions of articles of incorporation in effect during the 20 years prior to the PETITION DATE for the following:

   a. The DEBTOR

   b. Each PARISH

   c. Each AFFILIATE

2. All versions of bylaws in effect during the 20 years prior to the PETITION DATE for the following:

   a. The DEBTOR

   b. Each PARISH

   c. Each AFFILIATE

3. Any formation or governance documents (including amendments) other than articles of incorporation or bylaws, for the following:

   a. The DEBTOR

   b. Each PARISH

   c. Each AFFILIATE

4. All versions of the norms, statutes, operating guidelines / policies / instructions and policy manuals issued by / created by DEBTOR including all guidelines or policies for the PARISHES RELATING TO any subject, including, but not limited to, child protection, accounting manuals, investment policies, employee handbooks or other employment-related policies (pay, leave, etc), risk management policies, whistleblower policies, conflict of interest policies, building and renovation guidelines, budget planning guidelines, finance counsel guidelines, travel expense policies, tuition rate policies, parking policies.

5. Schedules of all entities in which the PERSON in the office of the ARCHBISHOP, Chancellor, or Vicar General of the DEBTOR are or have been an officer or director, including positions held ex officio. If no such schedule exists, please prepare one in response to this Request.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6. Schedule(s) of all committees, boards, subcommittees, commissions, councils or similar groups that existed for the PERSONS listed below. If no such schedules exist, please prepare them in response to this Request.

    a. The DEBTOR

    b. Each AFFILIATE

7. Minutes of meetings (including any agendas and materials distributed prior to or at meetings) for all bodies identified in response to request 6.a.

8. Organization charts (current and historical) of the DEBTOR, PARISHES (including all PARISH schools and cemeteries), all AFFILIATES, and/or all RELIGIOUS ORDERS in the ARCHDIOCESE.

9. An index of the current DEBTOR's archives.

**Parishes and Affiliates**

10. A list of all existing PARISHES (including PARISH schools and cemeteries), including any internal identification numbers / codes and addresses.

11. A list of all former PARISHES (including schools and cemeteries), including those that have been closed, merged, clustered, suppressed, or alienated (including the identification of the surviving PARISH), including any internal identification numbers / codes and addresses.

**Financial Information**

12. Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the the 20 years prior to the PETITION DATE for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

13. Chart of Accounts, including open / active accounts, closed / inactive accounts, departments, divisions, segments, projects, programs, etc., for the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

14. Annual financial statements in Excel (e.g., balance sheets, income statements, cash flows) for each PARISH (including PARISH schools and cemeteries).

**Cash and Investments**

15. A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account

number, general ledger account number, open date, close date and current balance) held by the following:

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

**Real Property**

16.    A list of all REAL PROPERTY—including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is critical in providing the mission of the entity—alleged to be currently owned by the following:

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

**Allegedly Restricted Assets**

17.    Schedules detailing specific assets / funds owned or controlled by the PERSONS below alleged to be restricted, held in trust, held for others, or otherwise unavailable for creditors / settlement.

    a.    The DEBTOR

    b.    The PARISHES (including PARISH schools and cemeteries)

    c.    The AFFILIATES

**Pooled Investments**

18.    DOCUMENTS IDENTIFYING current deposit balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or any other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership.

19.    DOCUMENTS IDENTIFYING current loan balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of borrowers.

20.    DOCUMENTS IDENTIFYING current fund / subfund balances related to any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership.

**Insurance**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with the INSURERS that reflect the existence of INSURANCE POLICIES (including missing policies).

22. All DOCUMENTS EVIDENCING historical insurance for the DEBTOR with any PERSON not identified as an INSURER under which coverage for the ABUSE CLAIMS could possibly be available.

23. Copies of all general liability INSURANCE POLICIES under which any NON-DEBTOR asserts a CLAIM an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

24. For all INSURANCE POLICIES IDENTIFIED in response to Request No. 23 where the NON-DEBTOR has not provided a complete copy of the applicable INSURANCE POLICY, all DOCUMENTS EVIDENCING historical insurance coverage for the NON-DEBTOR with respect to that INSURANCE POLICY.

25. Copies of all insurance coverage letters, including, without limitation, reservation of rights letters or coverage denial letters, received by the DEBTOR, PARISHES, AFFILIATES, and/or the NON-DEBTORS with respect to ABUSE CLAIMS.

**Abuse Claims**

26. All DOCUMENTS CONCERNING ABUSE CLAIMS for any occurrence alleged to have taken place since January 1, 1941, regardless of whether allegations of SEXUAL ABUSE were deemed "credible" or were substantiated by the DEBTOR. This Request includes allegations against living and deceased PERSONS.

27. All lists, or partial or draft lists, of all PERSONS accused of SEXUAL ABUSE who have operated within the ARCHDIOCESE since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations."

28. If YOU have no documents in your possession, custody, or control that are responsive to Request No. **Error! Reference source not found.**, produce all DOCUMENTS sufficient to identify every PERSON accused of SEXUAL ABUSE who has operated within the ARCHDIOCES since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations."

29. All DOCUMENTS CONCERING any SUBJECT INDIVIDUAL, including, but not limited to: the personnel files or all personnel records (including but not limited to educational background; work assignment histories; work performance evaluations; CORRESPONDENCE; reports; complaints (regarding SEXUAL ABUSE and otherwise); disciplinary records (regarding SEXUAL ABUSE and otherwise); medical, psychological and psychiatric records; and laicization DOCUMENTS); all DOCUMENTS sent to or received from the Papal Nuncio, Apostolic Nuncio, Apostolic Delegate, Presbyteral Council, Priest Personnel Board, Archbishop's Cabinet, College of Consultors, Independent Review Board or any similar body; DOCUMENTS related to the SUBJECT INDIVIDUAL's discipline (or lack of discipline) and restriction (or lack of restriction) of any services, duties, or responsibilities including, but not limited to, the restriction of priestly ministries or access to children; all COMMUNICATIONS with any PERSON, including, but not limited to, RELIGIOUS ORDERS and other archdioceses and dioceses CONCERNING all SUBJECT INDIVIDUALS who also served outside of the ARCHDIOCESE at any time; and DOCUMENTS kept separate and apart from the main personnel files for such priests, deacons, or RELIGIOUS. This Request includes, but is not limited to, the following: secret files; secret archives; *sub secreto* files; "Z" files; Canon 489 of The Code of Canon Law (1983) files; Canon 379 of The Pio Benedictine Code of Canon Law (1917) files; Red Files;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"Active Clergy Files;" "The Well;" "The Confidential Archive (archivum secretum);" "Archive;" "Inappropriate Behavior Policies/Referrals;" and/or "Clergy File Room."

30. All confidential DOCUMENTS (including, but not limited to, the strictly confidential DOCUMENTS maintained by the ARCHBISHOP or the DEBTOR pursuant to *Crimen Sollicitationis* (Crime of Solicitation) (1962) (Instruction of the Supreme Sacred Congregation of the Holy Office)), CONCERNING PRIESTS and RELIGIOUS against whom ABUSE CLAIMS have or could have been made, regardless of whether such allegations were deemed credible accusations or were substantiated by the DEBTOR or by any agent, officer, or congregation of the Roman Catholic Church.

31. All DOCUMENTS CONCERNING ABUSE CLAIMS provided to or prepared by any IRP including, but not limited to, complaints, allegations or reports of SEXUAL ABUSE, interview notes, minutes and transcripts of meetings, findings, recommendations, decisions, reports or memoranda, and CORRESPONDENCE.

32. All COMMUNICATIONS with the following PERSONS CONCERNING ABUSE CLAIMS AND SUBJECT INDIVIDUALS dated during the 20 years prior to the PETITION DATE: any state or federal governmental agency, authority, or entity, including, without limitation, district attorneys' offices, the California Attorney General's office, police departments, and the United States Department of Justice; or any other law enforcement agency.

**STAGE TWO**

**Parishes and Affiliates**

33. All written agreements between or among the DEBTOR and its PARISHES and/or AFFILIATES in effect at any time during the 10 years prior to the PETITION DATE. If identical agreements were used between the DEBTOR and multiple other contracting parties, then a sample form agreement and a schedule of all parties to identical agreements is sufficient.

34. All DOCUMENTS CONCERNING any strategic plans, PARISH suppressions or mergers, or PARISH governance restructuring for the 30 years prior to the PETITION DATE.

**Parish and Affiliate Financial Relationship**

35. DOCUMENTS sufficient to IDENTIFY and evidence the calculations or formula for determining PARISH and AFFILIATE assessments.

36. All schedules, accountings, invoices, support, and other DOCUMENTS RELATED TO services provided under any agreement between the DEBTOR and a PARISH, including calculations of amounts owed by, billed to, or allocated to PARISHES in relation to service fees and other costs.

37. All DOCUMENTS memorializing or in any way relating to any loans between the DEBTOR and AFFILIATES (including, but not limited to, CATHOLIC CHARTIES and Junipero Serra High School located within the ARCHDIOCESE).

38. DOCUMENTS REGARDING any write-off, forgiveness, cancelation, or similar reduction in any amounts owed to the DEBTOR by the PARISHES (including PARISH schools and cemeteries) or AFFILIATES.

## Financial Information

39. Copies of annual trial balances for the following:

    a.     The DEBTOR

    b.     The PARISHES

    c.     The AFFILIATES

40. Copies of all lease agreements, including any amendments, to which at least one of the below is a party:

    a.     The DEBTOR

    b.     The PARISHES

    c.     The AFFILIATES

41. DOCUMENTS sufficient to show all payments made pursuant to lease agreements produced in response to Request No. 40.

## Real Property

42. A summary listing of any REAL PROPERTY, including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, transferred by the below at any time in the 20 years prior to the PETITION DATE:

    a.     The DEBTOR

    b.     The PARISHES

    c.     The AFFILIATES

43. All DOCUMENTS concerning any REAL PROPERTY transfers identified in Request No. 42.

44. A list of all REAL PROPERTY for which the below have a reversionary interest, including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, and current use (e.g., in use by the entity, leased, vacant).

    a.     The DEBTOR

    b.     The PARISHES

    c.     The AFFILIATES

## Pooled Investments

45. DOCUMENTS RELATED TO the operation of any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Deposit & Loan Fund" operated and / or currently operates, institution

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

account statements, participant account statements, and transaction DOCUMENTS such as check copies and wire advices).

46. DOCUMENTS RELATED TO the operation of any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Pooled Investment" program operated and / or currently operates, institution account statements, participant account statements, and transaction documents such as check copies and wire advices).

## Pension

47. All DOCUMENTS REGARDING any pension plans covering DEBTOR or PARISH employees (including priests or other CLERGY) including, without limitation, the following for the period from January 1, 2003 to the PETITION DATE: (a) Master Trust Agreements; (b) calculations of reserves; (c) calculations of shortfalls; and (d) financial statements (including balance sheets, profit and loss statements, and statements of cash flows).

## Cemeteries

48. Studies, analyses, reports, or similar DOCUMENTS (whether performed internally or by external consultants) that include information RELATED TO CEMETERY permanent maintenance / perpetual care, including all narrative and associated attachments, schedules, exhibits, and tables.

49. Samples of each form of CEMETERY contract, agreement (including, but not limited to, purchases, sales, and perpetual care) used during the 10 years prior to the PETITION DATE.

## Abuse Claims

50. All DOCUMENTS during the 20 years prior to the PETITION DATE sufficient to explain the DEBTOR's interpretation at any time of the term "credibly accused" or any synonym that the DEBTOR has used or uses to indicate when it believes a PERSON committed the SEXUAL ABUSE of which he or she was accused.

51. All minutes or notes of any meeting of any IRP.

52. All DOCUMENTS CONCERNING assertions or concerns during the 20 years prior to the PETITION DATE that the DEBTOR or the ARCHBISHOP violated or failed to comply with the United States Conference of Catholic Bishops' *Charter for the Protection of Children and Young People* or the *Essential Norms for Diocesan/ Eparchial Policies Dealing with Allegations of Sexual Abuse of Minors by Priests or Deacons*, including, but not limited to, CORRESPONDENCE, reports, complaints, and disciplinary records.

53. All DOCUMENTS CONCERNING complaints, allegations, or reports that the DEBTOR or the ARCHBISHOP violated or failed to comply with any local or state child sexual abuse reporting requirements. This Request includes, but is not limited to, notes, CORRESPONDENCE, reports, complaints, and disciplinary records.

54. All DOCUMENTS CONCERNING the DEBTOR's settlements of then-existing ABUSE CLAIMS in the 20 years prior to the PETITION DATE, including, but not limited to, settlement agreements (whether or not "confidential") with SURVIVORS.

## STAGE THREE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case: 23-30564    Doc# 364    Filed: 12/13/23    Entered: 12/13/23 19:25:29    Page 25 of 72

**Corporate Governance**

55. All quinquennial reports for the DEBTOR for the 30 years prior to the PETITION DATE.

56. All DOCUMENTS between the DEBTOR and the Vatican or Holy See (Congress for Bishops) for the 20 years prior to the PETITION DATE CONCERNING proposed or actual transfers of assets, protection of assets, realignment or restructuring of the DEBTOR, the PARISHES (including PARISH schools and cemeteries), the AFFILIATES, or similar actions.

57. All Official Catholic Directories RELATING TO the DEBTOR, the PARISHES (including PARISH schools and cemeteries) and the AFFILIATES issued in the 20 years prior to the PETITION DATE.

58. Copies of any archived versions of the DEBTOR's website from the 20 years prior to the PETITION DATE.

59. Consulting reports, strategic plans, assessments, or studies issued by outside consultants or advisors engaged by the DEBTOR within the 20 years prior to the PETITION DATE.

**Financial Information**

60. Copies of all auditor workpapers in the possession of the following:

   a.   The DEBTOR

   b.   The AFFILIATES

61. Copies of all "Prepared By Client" or "PBC" documentation in the possession of the following:

   a.   The DEBTOR

   b.   The AFFILIATES

62. Management letters (i.e., from auditor / accounting firm to management / client prepared as part of the audit process) for the following:

   a.   The DEBTOR

   b.   The AFFILIATES

63. Letters of representation / management representation letters / client representation letters (i.e., from management / client to auditor / accounting firm prepared as part of the audit process) for the following:

   a.   The DEBTOR

   b.   The AFFILIATES

64. All monthly budgets for all departments or agencies of the DEBTOR, along with budget versus actual variance reports.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

65. Copies of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition for the following:

   a.   The DEBTOR

   b.   The PARISHES

   c.   The AFFILIATES

66. All DOCUMENTS RELATING TO any secured debt, line of credit, bond issuance, and / or guarantee by or relating to the DEBTOR, including, but not limited to, applications, due diligence materials, credit evaluations / reviews, compliance certifications, agreements, or notes.

67. DOCUMENTS RELATING TO the AAA (including campaign brochures, reports / submissions from PARISHES detailing uses of funds, reports detailing goal amounts and actual amounts, reports detailing amounts retained by the DEBTOR, and amounts transferred to the PARISHES.).

68. Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the below and any entity over the past 2 years.

   a.   The DEBTOR

   b.   The PARISHES

   c.   The AFFILIATES

69. Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the DEBTOR and PARISHES and/or the AFFILIATES.

**Real Property**

70. DOCUMENTS sufficient to show the ownership of all REAL PROPERTY owned in title by or on behalf of the following:

   a.   The DEBTOR

   b.   The PARISHES

   c.   The AFFILIATES

71. Any valuation reports, appraisal reports, studies, or evaluations RELATING TO any REAL PROPERTY identified in Request Nos. 16, 42, and 44.

72. REAL PROPERTY inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")) for the following:

   a.   The DEBTOR

   b.   The PARISHES

   c.   The AFFILIATES

73. Copies of all current mortgages, deeds of trust, assignments of leases or rents, collateral assignments, other assignments, and any other agreements (including any schedules, annexes or exhibits thereto) CONCERNING REAL PROPERTY that are intended to provide, or evidence an agreement to provide, security or collateral for any obligation for the following:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

## Personal Property

74. Schedules of all PERSONAL PROPERTY owned by the PERSON below. If no such schedules exist, please prepare them in response to this Request.

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

75. All PERSONAL PROPERTY inventories from the 20 years prior to the PETITION DATE, including inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")), for the following:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

76. All appraisals, valuations, studies, and evaluations of PERSONAL PROPERTY owned or transferred during the 20 years prior to the PETITION DATE by the following:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

## Insurance

77. Copies of all general liability INSURANCE POLICIES under which the PARISHES and AFFILIATES assert an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

78. For all policies identified in response to Request No. **Error! Reference source not found.**, where the PARISHES and/or AFFILIATES have not provided a complete copy of the applicable policy, all DOCUMENTS EVIDENCING historical insurance coverage for the PARISHES and/or AFFILIATES with respect to that policy.

79. A schedule of the amount paid or due to be paid by insurance carriers to the DEBTOR, PARISHES, AFFILIATES, and NON-DEBTORS with respect to defense costs for the ABUSE CLAIMS.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

80. ALL DOCUMENTS REGARDING all efforts undertaken by the ARCHDIOCESE or anyone on its behalf to locate INSURANCE POLICIES, or secondary evidence of INSURANCE POLICIES.

81. To the extent not included in Request No. 80, a schedule of (1) the PERSONS who participated in the searches for INSURANCE POLICIES, (2) the dates of the searches; (3) the location(s) of the searches; (4) how long each search lasted; (5) what key words or search terms were used to conduct the searches; and (6) whether the searches involved the review of electronic files, paper records, or both. If no such schedule exists, please prepare it in response to this Request.

**Abuse Claims**

82. All subpoenas from any governmental agency or entity (local, state, or federal) directed to or served on YOU regarding the issue of SEXUAL ABUSE.

83. All DOCUMENTS CONCERNING the subpoenas referenced in Request No.**Error! Reference source not found.**, including, but not limited to, written responses, DOCUMENT productions, and CORRESPONDENCE.

84. DOCUMENTS sufficient to IDENTIFY the sources of funds the DEBTOR used to pay settlements of ABUSE CLAIMS.

85. DOCUMENTS sufficient to IDENTIFY all INSURANCE POLICIES that have provided policy proceeds for payment of ABUSE CLAIMS or defense costs on behalf of the DEBTOR or any other named insured.

**STAGE FOUR**

**Potentially Liable Joint Tortfeasors or Successors**

86. Agreements between any RELIGIOUS INSTITUTE (including entities or institutions operated by RELIGIOUS INSTITUTES, such as schools, monasteries, or convents) and the DEBTOR from January 1, 1945 to the PETITION DATE.

87. Schedules of all RELIGIOUS INSTITUTES that operated in the ARCHDIOCESE between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.

88. Schedules of all faculties given by the ARCHBISHOP to members of RELIGIOUS INSTITUTES between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.

89. DOCUMENTS REGARDING the creation of the Diocese of Oakland and the Diocese of Santa Rosa.

90. Any agreements between the Archdiocese of San Francisco and the Diocese of Oakland or the Diocese of Santa Rosa from 1961 to 1968.

**Financial Information**

91. All business plans and associated financial projections prepared by or for the DEBTOR.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

92. All solvency analyses, appraisals, and / or valuation reports that were prepared by or for the DEBTOR.

93. All historical activity schedules for all credit facilities and bond issuances for the DEBTOR detailing any draws, paydowns, interest accruals, or similar transactions.

94. Current DEBTOR accounts receivable aging by payee.

## Cash and Investments

95. Account creation documents, signature cards, account statements, deposit slips, deposited check copies, wire advices, check copies, debit memos, and credit memos RELATING TO bank, money market, investment, brokerage, credit card or other accounts (both open / current accounts and closed accounts) of the following:

    a. The DEBTOR

    b. The PARISHES

    c. The AFFILIATES

## Allegedly Restricted Assets

96. Support for all allegedly restricted assets from Request No. 17, including wills, bequests, agreements, donation records, and correspondence that the DEBTOR intends to rely upon to establish / support restrictions.

97. DOCUMENTS REGARDING the original sources of any FHO in the possession, custody, or control of the DEBTOR; how and where alleged FHO funds were maintained (including identification of specific bank, investment or brokerage accounts – both current and historical); and the flow of FHO funds (both current and historical).

98. DOCUMENTS regarding the original sources of any alleged TRUST funds in the possession, custody, or control of the DEBTOR, how and where the alleged TRUST funds have been maintained (including identification of specific bank, investment or brokerage accounts – both current and historical), and the flow of funds (both current and historical), and

99. Copies of all FINANCIAL DISCLOSURES made by the DEBTOR (or any other trustee or party) to each PARISH (including PARISH schools and cemeteries) and AFFILIATES, and the date of each FINANCIAL DISCLOSURE.

100. All DOCUMENTS CONCERNING the use of funds generated from any allegedly restricted assets, contributions, or bequests held by the DEBTOR or AFFILIATES.

101. Fully executed copies of all TRUST AGREEMENTS naming as a party the DEBTOR and / or any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE (each a "Trust").

102. All drafts of TRUST AGREEMENTS and non-privileged CORRESPONSENCE REGARDING the drafts.

103. For each TRUST, complete financial records from inception through the PETITION DATE showing (i) the initial funding, (ii) the source of the initial funding, (iii) all additions to the TRUST fund, (iv) all distributions and disbursements, and (v) all fees, taxes, and administration expenses. For each distribution and / or disbursement of TRUST funds, whether principal or income, identify (i) the date of each distribution and / or disbursement,

(ii) the recipient, (iii) the amount, and (iv) the PERSON who authorized the distribution and / or disbursement.

104. DOCUMENTS sufficient to separately IDENTIFY all sums paid to or for the benefit of the DEBTOR from each TRUST for any reason and IDENTIFY (i) the date of each payment, (ii) the amount, (iii) the PERSON who authorized the payment, (iv) the recipient, and (v) a brief narrative description of why the payment was made.

105. For each TRUST, DOCUMENTS sufficient to IDENTIFY each and every instance where the PARISHES (including PARISH schools and cemeteries) or AFFILIATES compelled a distribution from such TRUST. Provide all DOCUMENTS REGARDING the exercise of such right to compel a distribution.

106. If the assets held, or alleged to be held, in any TRUST were commingled at any time with any other TRUST assets or the DEBTOR's assets,

   a.   DOCUMENTS sufficient to IDENTIFY all accounts that held funds belonging to the TRUST, and

   b.   all DOCUMENTS associated with those accounts.

107. DOCUMENTS sufficient to describe how TRUST assets for each TRUST were invested and how investment decisions were made.

108. For each TRUST, DOCUMENTS sufficient to show the legal counsel involved in the preparation of the TRUST AGREEMENT, if any, and whether each party to such TRUST was represented by separate counsel.

109. DOCUMENTS sufficient to IDENTIFY all PERSONS who assisted the DEBTOR with fulfilling its legal obligations stemming from each TRUST.

110. All donor gift policies, rules, and regulations.

**Abuse Claims**

111. If YOU have no documents in your possession, custody, or control that are responsive to Request No. **Error! Reference source not found.**, please prepare such a list and produce all DOCUMENTS RELATING TO the decision not to prepare such a list previously.

112. All DOCUMENTS CONCERNING the application for laicization, granting of laicization, deferral of laicization, and denial of laicization of PRIESTS, other CLERGY or RELIGIOUS who have been accused of or admitted to SEXUAL ABUSE and for whom the DEBTOR may be responsible or liable.

113. All DOCUMENTS REGARDING the operation of all of the DEBTOR's victim's assistance programs , including, but not limited to, manuals and policies written.

114. DOCUMENTS sufficient to IDENTIFY the victim's assistance coordinator(s), any victim's assistance personnel, and PERSONS who interacted with SURVIVORS on behalf of the DEBTOR with regard to such ABUSE CLAIMS.

115. All DOCUMENTS sufficient to IDENTIFY members of the IRP considering ABUSE CLAIMS.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

116. All manuals, memoranda, or other DOCUMENTS CONCERNING procedures for any IRB considering ABUSE CLAIMS.

117. All DOCUMENTS sufficient to substantiate all amounts of money paid by the DEBTOR any PARISH, and any AFFILIATE for therapy for SURVIVORS.

118. DOCUMENTS sufficient to IDENTIFY the sources of funds the DEBTOR used to pay settlements of ABUSE CLAIMS.

119. All COMMUNICATIONS among the DEBTOR and financial donors or other financial benefactors to the DEBTOR, any PARISH, and any AFFILIATE REGARDING payment for ABUSE CLAIMS.

120. All DOCUMENTS generated by private investigators relative to ABUSE CLAIMS, and COMMUNCATIONS between the DEBTOR and private investigators concerning same.

121. Any DOCUMENTS YOU exchanged with the John Jay College of Justice CONCERNING its study on SEXUAL ABUSE or ABUSE CLAIMS in the Roman Catholic Church.

-end-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT B**

**Proposed Form of Order Ex Parte Application**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LA:4869-9385-7817.5 05068.002

James I. Stang (CA Bar No. 94435)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Brittany M. Michael (NY Bar No. 5678552) *admitted pro hac vice*
Pachulski Stang Ziehl & Jones LLP
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email: jstang@pszjlaw.com
        dgrassgreen@pszjlaw.com
        jlucas@pszjlaw.com
        bmichael@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **ORDER GRANTING EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES; AND ORDERING DEBTOR TO SUBMIT DECLARATION** |

Upon consideration of the *Ex Parte Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Oral Examination of the Debtor; and Production of Documents of Debtor, Parishes, and Affiliates; and Ordering Debtor to Submit Declaration* (the "Application"), the record in this case, and for good and sufficient cause appearing,

IT IS HEREBY ORDERED AS FOLLOWS:

1.       The Application is GRANTED.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2. The Committee is authorized to issue a subpoena directed to the Debtor requiring the Debtor (a) to complete its production of documents responsive to the Requests[1] in Stage One by January 12, 2024;Stage Two by January 26, 2024; Stage Three by February 9, 2024; and Stage Four by February 23, 2024; and (b) to provide oral testimony, no later than February 29, 2024, relating to the Debtor's search for and possession, custody, or control of documents responsive to the Requests (the "Oral Testimony").

3. The Debtor is required to submit to the Committee by January 26, 2024, a written declaration, signed under penalty of perjury, identifying the specific Requests for Parish or Affiliate information for which the Debtor does not have documents in its possession, custody, or control (the "Sworn Statement").

4. The Debtor's submission to the Committee of the Sworn Statement shall not in any way affect the Committee's right to take Oral Testimony.

5. After receipt of the Sworn Statement and/or the substantial completion of the Debtor's document review, the Committee is authorized to issue subpoenas to any of the Parishes or Affiliates to seek production of documents responsive to any Requests identified in the Sworn Statement or identified during Oral Testimony or during the Committee's review of the Debtor's document production for which the Debtor did not produce documents in response to the Requests.

6. The Committee's subpoena(s) directed to any of the Parishes or Affiliates shall require those subpoenaed parties to complete, by February 29, 2024 or no fewer than 14 calendar days after service of a subpoena, whichever is earlier, their production of documents responsive to the Requests.

7. This Order is without prejudice to the Debtor's right to seek a protective order or otherwise object to the discovery sought, nor does it prejudice the Committee's right to respond to such objections or seek to compel production.

**\*\*END OF ORDER\*\***

---

[1] All terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

**EXHIBIT C**
**REDLINE - Requests for Production of Documents**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT 1**

**INSTRUCTIONS**

A.  Unless otherwise specified, each request seeks DOCUMENTS dated or created during the ten (10) years prior to the PETITION DATE but the Committee reserves the right to request older DOCUMENTS after receiving DOCUMENTS responsive to these requests

B.  Please bates number each page of each DOCUMENT that YOU produce.

C.  YOU are required to conduct a thorough investigation and produce all DOCUMENTS (as defined below) in YOUR possession, custody, and control.

D.  All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

E.  And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

F.  The use of the singular form of any word includes the plural and vice versa.

G.  If YOU are unable to comply with a particular category(ies) of the requests below and DOCUMENTS responsive to the category are in existence, state the following information:

   1.  The date of the DOCUMENT;

   2.  The type of DOCUMENT (e.g., letter, memorandum, report, etc.);

   3.  The name, address, telephone number and title of the author(s) of the DOCUMENT;

   4.  The name, address, telephone number and title of EACH recipient of the DOCUMENT;

   5.  The number of pages in the DOCUMENT;

   6.  The document control number, if any;

   7.  The present location(s) of the DOCUMENT and the name, address and telephone number of the person(s) who has (have) possession of the DOCUMENT;

   8.  A specific description of the subject matter of the DOCUMENT;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    9.    The reason why the DOCUMENT cannot be produced or why you are unable to

2    comply with the particular category of request.

3    **H.    YOU are under a continuing duty to amend YOUR written response and to produce**

4    **additional DOCUMENTS if you learn that the response or production is incomplete or**

5    **incorrect in any material respect, and if the additional or corrective information has not**

6    **otherwise been made known to the COMMITTEE during the discovery process or in**

7    **writing.**

8    **I.    YOU are required to produce the full and complete originals, or copies if the originals**

9    **are unavailable, of each DOCUMENT responsive to the categories below along with all**

10   **non-identical copies and drafts in its or their entirety, without abbreviations, excerpts,**

11   **or redactions.  A copy may be produced in lieu of originals if the entirety (front and**

12   **back where appropriate) of the DOCUMENT is reproduced and YOU state by**

13   **declaration under penalty of perjury that the copy provided is a true, correct, complete,**

14   **and accurate duplication of the original.**

15   **J.    YOU are required to produce the DOCUMENTS as they are kept in the usual course of**

16   **business, or to organize and label them to correspond with each category in these**

17   **requests.**

18   **K.    For ELECTRONICALLY STORED INFORMATION ("ESI"):**

19   1.    The Committee seeks to discuss with the Debtor and/or Producing Party to whom

20   these Requests are directed (a) potential search terms for ESI responsive to each

21   Request; (b) the potential custodians of ESI responsive to each Request and (c) the

22   devices to be searched for ESI responsive to each Request.

23   2.    Produce DOCUMENTS in accordance with the instructions at

24   https://support.everlaw.com/hc/en-us/articles/360004962052-Standard-Format-for-

25   Processed-Data

26   3.    Maintain family integrity.

27   4.    Perform custodian-level de-duplication.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5. Produce a DAT load file with the following metadata fields: Beginning Production Number, Ending Production Number, Beginning Attachment Number, End Attachment Number, Family ID, Page Count, Custodian, Original Location Path, Email Folder Path, Document Type, Doc Author, Doc Last Author, Comments, Categories, Revisions, File Name, File Size, MD5 Hash, Date Last Modified, Time Last Modified, Date Created, Time Created, Date Last Accessed, Time Last Accessed, Date Sent, Time Sent, Date Received, Time Received, To, From, CC, BCC, Email Subject, Path to Native, Path to Full Text, Original Time Zone.

6. Process all data in UTC and provide a metadata field indicating original time zone.

**L. If YOU withhold or redact a portion of any DOCUMENT under a claim of privilege or other protection, then the DOCUMENT must be identified on a privilege log, which shall be produced contemporaneously with the non-privileged DOCUMENTS responsive to this Request for Production, and which privilege log shall state the following information:**

1. The date of the DOCUMENT;

2. The type of DOCUMENT (e.g., letter, memorandum, report, etc.);

3. The name, address, telephone number and title of the author(s) of the DOCUMENT;

4. The name, address, telephone number and title of each recipient of the DOCUMENT;

5. The number of pages in the DOCUMENT;

6. The document control number, if any;

7. The present location(s) of the DOCUMENT and the name, address and telephone number of the person(s) who has (have) possession of the DOCUMENT;

8. A general description of the subject matter of the DOCUMENT or the portion redacted without disclosing the asserted privileged or protected communication;

9. The specific privilege(s) or protection(s) that YOU contend applies.

## DEFINITIONS

1. "AAA" refers to the Archdiocesan Annual Appeal discussed at PASSARELLO DECL. at ¶ 37.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.      "ABUSE CLAIM" means any CLAIM against the DEBTOR resulting or arising or related to in whole or in part, directly or indirectly from any actual or alleged sexual conduct or misconduct, grooming, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, intimidation, any other conduct constituting a sexual offense, or any other sexual misconduct, and seeking monetary damages or any other relief based upon the conduct described above, under any theory of liability, including, but not limited to, vicarious liability, any negligence-based theory, conspiracy, fraudulent concealment, intentional tort, continuing tort, public nuisance, invasion of privacy, breach of alleged duties imposed by The Charter for the Protection of Children and Young People, Canon Law or other Catholic Church documents or principles, contribution, indemnity, or any other theory based on any acts or failures to act by the DEBTOR or any other PERSON for whose acts or failures to act the DEBTOR is or may be responsible, including but not limited to, claims against clergy, deacons, seminarians, employees, teachers, or volunteers. "ABUSE CLAIM" includes all CLAIMS for Childhood Sexual Assaults, as that term is defined by California Code of Civil Procedure section 340.1(d).

3.      "AFFILIATE" refers to the following: any of the HIGH SCHOOLS, any of the SCHOOLS, any of the CEMETERIES, CASC, RPSC, BENEDICT XVI, the SEMINARY, CATHOLIC CHARITIES, DOS, VALLOMBROSA, SERRA, and/or the AAA.

4.      "ALLEGED PERPETRATOR" refers to any natural PERSON who has been accused of SEXUAL ABUSE of a minor and for whom it has been alleged the DEBTOR was responsible at any time. This term includes, but is not limited to, PERSONS who may not be "credibly accused" under the DEBTOR's or anyone else's definition.

5.      "ARCHBISHOP" refers to the PERSON and the office of the Archbishop of San Francisco, as that term is used at https://www.usccb.org/about/archbishop-faqs.

6.      "ARCHDIOCESAN ANNUAL APPEAL" shall have the meaning ascribed to it in the PASSARELLO DECL. at ¶ 37.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7.     "ARCHDIOCESE" refers to the geographic territory under the jurisdiction of the DEBTOR, as set forth in footnote 2 to the PASSARELLO DECL.

8.     "BANKRUPTCY CASE" refers to the bankruptcy case styled as *In re The Roman Catholic Archbishop of San Francisco*, filed in the United States Bankruptcy Court for the Northern District of California (Case No. 23-30564).

9.     "BENEDICT XVI" refers to the Benedict XVI Institute for Sacred Music and Divine Worship (as discussed in the PASSARELLO DECL. at ¶ 29) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

10.    "CASC" refers to the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation (as discussed in the PASSARELLO DECL. at ¶ 22) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

11.    "CATHOLIC CHARITIES" refers to the Catholic Charities CYO of the Archdiocese of San Francisco (as discussed in the PASSARELLO DECL. at ¶31) and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

12.    "CEMETERIES" refers to the six operating cemeteries within the ARCHDIOCESE as referenced in the PASSARELLO DECL. at ¶ 34, where they are identified as Holy Cross Catholic-Colma, Holy Cross-Menlo Park, Holy Cross-Saint Mary Magdalene, Mt. Olivet, Our Lady of the Pillar (includes St. Anthony's Pescadero), and Tomales Catholic Cemetery, and shall include all of their agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors. CEMETERIES also includes the Director of Cemeteries and the Catholic Cemetery Advisory Board (discussed in the PASSARELLO DECL. at ¶ 34) and all of their

agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

13. "CHUBB" refers to Westchester Fire Insurance Company, Pacific Indemnity Company, and/or Century Indemnity Company, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator,

14. "CLAIM" means any "claim," as defined in 11 U.S.C. § 101(5).

15. "CLERGY" refers to any lay PERSONS or RELIGIOUS, including, but not limited to, PRIESTS.

16. "COMMITTEE" refers to the Official Committee of Unsecured Creditors in the BANKRUPTCY CASE.

17. "COMMUNICATION" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

18. "CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

19. "CONTINENTAL" means the Continental Casualty Company, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator,

20. "DOS" refers to the Department of Catholic Schools (discussed at PASSARELLO DECL. at ¶ 32) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

21. "DEBTOR" refers to The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession in the BANKRUPTCY CASE, and all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, BANKRUPTCY CASE professionals, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

22. "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. A DOCUMENT includes written COMMUNICATIONS.

23.    "EVIDENCING" has the same meaning as CONCERNING.

24.    "FHO" means "funds allegedly held for others."

25.    "FINANCIAL DISCLOSURES" means all financial disclosures, financial records, account statements, and / or accountings of any kind, either formal or informal.

26.    "FIREMAN'S FUND" refers to Fireman's Fund, Chicago Insurance Company including any affiliate, parent, subsidiary, successor or predecessor of Fireman's Fund, or any third-party administrator.

27.    "IRP" refers to any independent review panel or independent review board of the DEBTOR, whether called "Independent Review Board," "Archdiocesan Review Board," or any other name.

28.    "IDENTIFY" and "IDENTIFYING" shall have the following meanings:

a.    *With respect to PERSONS*: When referring to a PERSON, "to identify" means to give, to the extent known, the PERSON's full name, present or last known address; and when referring to a natural person, additionally, the present or last known place of employment. Once a PERSON has been identified in accordance with this definition, only the name of that PERSON need be listed in response to subsequent discovery requesting the IDENTIFICATION of that person.

b.    *With respect to DOCUMENTS*: When referring to DOCUMENTS, "to identify" means to give, to the extent known, the (i) type of DOCUMENT; (ii) general subject matter; (iii) date of the DOCUMENT; and (iv) author(s), addressee(s) and recipient(s). In the alternative, YOU may produce the DOCUMENTS, together with identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

29.    "INSURANCE POLICIES" means any and all insurance policies in which the DEBTOR or any other entity CONCERNING THE DEBTOR has or could legally make a CLAIM in the proceeds thereof, including as an insured, a named insured, additional insured or otherwise.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

30. "INSURERS" refers to LMI, FIREMAN'S FUND, CHUBB, CONTINENTAL, and WESTPORT.

30.31. "LMI" refers to Certain Underwriters at Lloyd's, London and/or Certain London Market Insurance Companies, including any affiliate, parent, subsidiary, predecessor or successor of LMI, or any third-party administrator.

31.32. "NON-DEBTOR" means any PERSON other than the DEBTOR IDENTIFIED as responsible for the same ABUSE CLAIM as the DEBTOR. A NON-DEBTOR may be a PARISH or AFFILIATE.

32.33. "PARISH" shall have the meaning ascribed to it in the PASSARELLO DECL. at ¶14, and shall include all of agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors of the PARISH.

33.34. "PASSARELLO DECL." refers to the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions*, filed at Docket No. 14 in the BANKRUPTCY CASE.

34.35. "PERSONAL PROPERTY" means tangible and intangible assets other than REAL PROPERTY.

35.36. "PERSON" is any natural person, juridical person, or any legal entity, including, without limitation, any business, religious, or governmental entity or association.

36.37. "PETITION DATE" means August 21, 2023.

37.38. "RPSC" means and refers to the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation (as discussed at PASSARELLO DECL. at ¶ 26) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

38.39. "REAL PROPERTY" means land and immovable property on land, such as buildings.

39.40. "REGARDING" has the same meaning as CONCERNING.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

40.41.  "RELATING TO" has the same meaning as CONCERNING.

41.42.  "RELIGIOUS" shall refer to any natural PERSON who is a member of an institute of consecrated life or a society of apostolic life.

42.43.  "RELIGIOUS INSTITUTE" means a society in which Roman Catholic members or RELIGIOUS pronounce public vows, either perpetual or temporary, and lead a life of brothers or sisters in common.

43.44.  "RELIGIOUS ORDER" means a type of RELIGIOUS INSTITUTE acknowledged by the Roman Catholic Church as such.

44.45.  "SERRA" refers to the Serra Clergy House (discussed at the PASSARELLO DECL. at ¶ 36) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

45.46.  "SEXUAL ABUSE" means conduct giving rise to an ABUSE CLAIM.

46.47.  "SEMINARY" refers to the Roman Catholic Seminary of San Francisco (as discussed at the PASSARELLO DECL. at ¶ 30) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors

47.48.  "SURVIVOR" refers to a natural PERSON who has or had an ABUSE CLAIM.

48.49.  "TRUST" means a legal entity under a TRUST AGREEMENT naming as a party the DEBTOR, any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE.

49.50.  "TRUST AGREEMENT" means to a written or oral arrangement that evidences, or purports to evidence, a TRUST; and includes declarations of trust and all amendments to such arrangements.

50.51.  "WESTPORT" means the Westport Insurance Company, formerly known as Employers Reinsurance Corporation, including any affiliate, parent, subsidiary, successor or predecessor, or any third-party administrator

51.52.  "YOU" means the DEBTOR.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

52.53.  "VALLOMBROSA" refers to the Vallombrosa Retreat Center (discussed at the PASSARELLO DECL. at ¶ 35) and includes all of its agents, accountants, advisors, employees, experts, attorneys, financial advisors, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, divisions, predecessors, and/or successors.

## DOCUMENT REQUESTS

**STAGE ONE**

**Corporate Governance**

1. All versions of articles of incorporation in effect during the 20 years prior to the PETITION DATE for the following:

    a.    The DEBTOR

    b.    Each PARISH

    c.    Each AFFILIATE

2. All versions of bylaws in effect during the 20 years prior to the PETITION DATE for the following:

    a.    The DEBTOR

    b.    Each PARISH

    c.    Each AFFILIATE

3. Any formation or governance documents (including amendments) other than articles of incorporation or bylaws, for the following:

    a.    The DEBTOR

    b.    Each PARISH

    c.    Each AFFILIATE

4. All versions of the norms, statutes, operating guidelines / policies / instructions and policy manuals issued by / created by DEBTOR during 20 years prior to the PETITION DATE including all guidelines or policies for the PARISHES RELATING TO any subject, including, but not limited to, child protection, accounting manuals, investment policies, employee handbooks or other employment-related policies (pay, leave, etc), risk management policies, whistleblower policies, conflict of interest policies, building and renovation guidelines, budget planning guidelines, finance counsel guidelines, travel expense policies, tuition rate policies, parking policies

5. Schedules of all entities in which the PERSON in the office of the ARCHBISHOP, Chancellor, or Vicar General of the DEBTOR are or have been an officer or director in the 20 years prior to the PETITION DATE, including positions held ex officio. If no such schedule exists, please prepare one in response to this Request.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6. Schedule(s) of all committees, boards, subcommittees, commissions, councils or similar groups that existed ~~over the 20 years prior to the PETITION DATE~~ for the PERSONS listed below. If no such schedules exist, please prepare them in response to this Request.

   a. The DEBTOR

   ~~b. Each PARISH~~

   ~~c.~~b. Each AFFILIATE

7. Minutes of meetings (including any agendas and materials distributed prior to or at meetings) for all bodies identified in response to request 6.a ~~for the 20 years prior to the PETITION DATE.~~.

~~8. Schedules of board members for all AFFILIATES.~~

~~9.~~8. Organization charts (current and historical) of the DEBTOR, PARISHES (including all PARISH schools and cemeteries), all AFFILIATES, and/or all RELIGIOUS ORDERS in the ARCHDIOCESE ~~for 20 years prior to the PETITION DATE~~.

~~10.~~9. An index of the current DEBTOR's archives.

~~11. Minutes of any meetings in the 20 years prior to the PETITION DATE (including any agendas and materials distributed prior to or at meetings) that included a presentation relating to the DEBTOR's solvency.~~

~~12. Minutes of any meetings in the 20 years prior to the PETITION DATE (including any agendas and materials distributed prior to or at meetings) that discussed any transactions by and between the DEBTORS and any PARISH (including PARISH schools and cemeteries) and / or AFFILIATES.~~

~~13.1. All DOCUMENTS between the DEBTOR and the Vatican or Holy See (Congress for Bishops) since January 1, 1993 CONCERNING proposed or actual transfers of assets, protection of assets, realignment or restructuring of the DEBTOR, the PARISHES (including PARISH schools and cemeteries), the AFFILIATES, or similar actions.~~

~~14.1. All Official Catholic Directories RELATING TO the DEBTOR, the PARISHES (including PARISH schools and cemeteries) and the AFFILIATES issued in the 20 years prior to the PETITION DATE.~~

~~15.1. Agreements between any RELIGIOUS INSTITUTE (including entities or institutions operated by RELIGIOUS INSTITUTES, such as schools, monasteries, or convents) and the DEBTOR from January 1, 1945 to the PETITION DATE.~~

~~16.1. Schedules of all RELIGIOUS INSTITUTES that operated in the ARCHDIOCESE between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.~~

~~17.1. Schedules of all faculties given by the ARCHBISHOP to members of RELIGIOUS INSTITUTES between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.~~

~~18.1. Copies of any archived versions of the DEBTOR's website from the 20 years prior to the PETITION DATE.~~

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19.1. ~~DOCUMENTS REGARDING the creation of the Diocese of Oakland and the Diocese of Santa Rosa.~~

20.1. ~~Any agreements between the Archdiocese of San Francisco and the Diocese of Oakland or the Diocese of Santa Rosa from 1961 to 1968.~~

**Parishes and Affiliates**

21.1. ~~All written agreements between or among the DEBTOR and its PARISHES and/or AFFILIATES in effect at any time during the 20 years prior to the PETITION DATE. If identical agreements were used between the DEBTOR and multiple other contracting parties, then a sample form agreement and a schedule of all parties to identical agreements is sufficient.~~

22. ~~All guidelines or policies for the PARISHES from 1970 to the date YOU respond to this Request RELATING TO any subject, including, but not limited to, child protection, accounting manuals, handbooks, policies (current and historical), investment policies.~~

23. ~~All DOCUMENTS which describe or discuss governance of the PARISHES.~~

~~24.~~10. A list of all existing PARISHES (including PARISH schools and cemeteries), including any internal identification numbers / codes and addresses.

~~25.~~11. A list of all former PARISHES (including schools and cemeteries), including those that have been closed, merged, clustered, suppressed, or alienated (including the identification of the surviving PARISH), including any internal identification numbers / codes and addresses.

**Financial Information**

26.1. ~~All DOCUMENTS CONCERNING any strategic plans, PARISH suppressions or mergers, or PARISH governance restructuring for the 30 years prior to the PETITION DATE.~~

27. ~~All DOCUMENTS CONCERNING any changes made to the corporate structure of the DEBTOR, the PARISHES (including PARISH schools and cemeteries), and / or the AFFILIATES in the 20 years prior to the PETITION DATE.~~

28. ~~Information and data regarding PARISH "statistics" (current and historical) including, but not limited to, Catholic population within each PARISH, Mass attendance at each PARISH, sacraments administered by each PARISH, church building capacity for each PARISH, and the number of priests for the ARCHDIOCESE.~~

**Parish and Affiliate Financial Relationship**

29. ~~DOCUMENTS sufficient to IDENTIFY and evidence the calculations or formula for determining PARISH and AFFILIATE assessments for the 20 years prior to the PETITION DATE.~~

30.1. ~~All schedules, accountings, invoices, support, and other DOCUMENTS RELATED TO services provided under any agreement between the DEBTOR and a PARISH, including calculations of amounts owed by, billed to, or allocated to PARISHES in relation to service fees and other costs.~~

31.1. ~~All DOCUMENTS memorializing or in any way relating to any loans between the DEBTOR and AFFILIATES (including, but not limited to, CATHOLIC CHARTIES and Juniper Serra High School located within the ARCHDIOCESE).~~

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

32.1. DOCUMENTS REGARDING any write-off, forgiveness, cancelation, or similar reduction in any amounts owed to the DEBTOR by the PARISHES (including PARISH schools and cemeteries) or AFFILIATES.

**Financial Information**

33.12. Annual (audited, compiled, reviewed or unaudited) and monthly (unaudited) financial statements (including balance sheet, income statement, and statement of cash flows), including the accompanying notes, disclosures, and any internal control reports issued by outside auditors relating to any internal control deficiencies and / or weaknesses for the the 20 years prior to the PETITION DATE for the following:

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

34.1. Consulting reports, strategic plans, assessments, or studies issued by outside consultants or advisors engaged by the DEBTOR within the 20 years prior to the PETITION DATE.

35. Identification of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition, used by the following:

    a.    The DEBTOR

    b.a.    The PARISHES

    c.a.    The AFFILIATES

36.1. Copies of annual trial balances for the following:

    a.    The DEBTOR

    b.a.    The PARISHES

    c.a.    The AFFILIATES

37.1. Copies of all auditor workpapers in the possession of the following:

    a.    The DEBTOR

    b.a.    The AFFILIATES

38.1. Copies of all "Prepared By Client" or "PBC" documentation in the possession of the following:

    a.    The DEBTOR

    b.a.    The AFFILIATES

39.1. Management letters (i.e., from auditor / accounting firm to management / client prepared as part of the audit process) for the following:

    a.    The DEBTOR

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

b.a.    The AFFILIATES

40.1.    Letters of representation / management representation letters / client representation letters (i.e., from management / client to auditor / accounting firm prepared as part of the audit process) for the following:

a.    The DEBTOR

b.a.    The AFFILIATES

41.    All monthly budgets for all departments or agencies of the DEBTOR for the 20 years prior to the PETITION DATE, along with budget versus actual variance reports.

42.1.    Copies of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition for the following:

a.    The DEBTOR

b.a.    The PARISHES

c.a.    The AFFILIATES

43.1.    All DOCUMENTS RELATING TO any secured debt, line of credit, bond issuance, and / or guarantee by or relating to the DEBTOR, including, but not limited to, applications, due diligence materials, credit evaluations / reviews, compliance certifications, agreements, or notes.

44.1.    DOCUMENTS RELATING TO the AAA (including campaign brochures, reports / submissions from PARISHES detailing uses of funds, reports detailing goal amounts and actual amounts, reports detailing amounts retained by the DEBTOR, and amounts transferred to the PARISHES.).

45.    Annual financial statements in Excel (e.g., balance sheets, income statements, cash flows) for each PARISH (including PARISH schools and cemeteries) for the 20 years prior to the PETITION DATE.

46.1.    Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the below and any entity over the past 2 years.

a.    The DEBTOR

b.a.    The PARISHES

47.    Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the DEBTOR and PARISHES and/or the AFFILIATES over the 20 years prior to the PETITION DATE.

48.13.    Chart of Accounts, including open / active accounts, closed / inactive accounts, departments, divisions, segments, projects, programs, etc., for the following:

a.    The DEBTOR

b.    The PARISHES

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

c. The AFFILIATES

14. Annual financial statements in Excel (e.g., balance sheets, income statements, cash flows) for each PARISH (including PARISH schools and cemeteries).

49.1. All business plans and associated financial projections prepared by or for the DEBTOR.

50.1. All solvency analyses, appraisals, and / or valuation reports that were prepared by or for the DEBTOR.

51.1. All historical activity schedules for all credit facilities and bond issuances for the DEBTOR detailing any draws, paydowns, interest accruals, or similar transactions.

52.1. Current DEBTOR accounts receivable aging by payee.

53.1. Copies of all lease agreements, including any amendments, to which at least one of the below is a party:

a. The DEBTOR

b.a. The PARISHES

c.a. The AFFILIATES

54. DOCUMENTS sufficient to show all payments made pursuant to lease agreements produced in response to Request No. 54.

**Cash and Investments**

55.15. A list of all bank, money market, investment, brokerage, or other accounts (historical and current) (including institution, account name, account type, account description, account number, general ledger account number, open date, close date and current balance) held by the following:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

56. All DOCUMENTS (including, but not limited to, account creation documents, signature cards, account statements, deposit slips, deposited check copies, wire advices, check copies, debit memos, and credit memos) RELATING TO bank, money market, investment, brokerage or other accounts (both open / current accounts and closed accounts) of the following:

a. The DEBTOR

b. The PARISHES

c.a. The AFFILIATES

57. All DOCUMENTS regarding credit card accounts of the following:

a. The DEBTOR

1    b.      The PARISHES

2    c.      The AFFILIATES

3    **Real Property**

4    58.16.  A list of all REAL PROPERTY—including internal identification numbers / codes,
        addresses, parcel numbers, acreage, square footage, estimated value, current use (e.g., in use
5        by the entity, leased, vacant) and an identification of whether the REAL PROPERTY is
        critical in providing the mission of the entity—alleged to be currently owned by the
6        following:

7    a.      The DEBTOR

8    b.      The PARISHES

9    c.      The AFFILIATES

10   59.1.   A summary listing of any REAL PROPERTY, including internal identification numbers /
        codes, addresses, parcel numbers, acreage, square footage, transferred by the below at any
11       time in the 20 years prior to the PETITION DATE:

12   a.      The DEBTOR

13   b.a.    The PARISHES

14   c.a.    The AFFILIATES

15   60.     All DOCUMENTS concerning any REAL PROPERTY transfers identified in Request No.
16           60.

16   61.1.   DOCUMENTS sufficient to show the ownership of all REAL PROPERTY owned in title by
17       or on behalf of the following:

18   a.      The DEBTOR

19   b.a.    The PARISHES

20   c.a.    The AFFILIATES

21   62.1.   A list of all REAL PROPERTY for which the below have a reversionary interest, including
        internal identification numbers / codes, addresses, parcel numbers, acreage, square footage,
22       estimated value, and current use (e.g., in use by the entity, leased, vacant).

23   a.      The DEBTOR

24   b.a.    The PARISHES

25   c.a.    The AFFILIATES

26   63.     Any valuation reports, appraisal reports, studies, or evaluations RELATING TO any REAL
27       PROPERTY identified in Request Nos. 59, 60, and 63.

28   64.1.   REAL PROPERTY inventories included in insurance documents (e.g., listing of in-force
        values, replacement costs, statement of value ("SOV")) for the following:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

a. ~~The DEBTOR~~

b.a. ~~The PARISHES~~

c.a. ~~The AFFILIATES~~

~~65.1. Copies of all current mortgages, deeds of trust, assignments of leases or rents, collateral assignments, other assignments, and any other agreements (including any schedules, annexes or exhibits thereto) CONCERNING REAL PROPERTY that are intended to provide, or evidence an agreement to provide, security or collateral for any obligation for the following:~~

a. ~~The DEBTOR~~

b.a. ~~The PARISHES~~

c.a. ~~The AFFILIATES~~

## ~~Personal Property~~

~~66.1. Schedules of all PERSONAL PROPERTY owned by the PERSON below. If no such schedules exist, please prepare them in response to this Request.~~

a. ~~The DEBTOR~~

b.a. ~~The PARISHES~~

c.a. ~~The AFFILIATES~~

~~67.1. All PERSONAL PROPERTY inventories from the 20 years prior to the PETITION DATE, including inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")), for the following:~~

a. ~~The DEBTOR~~

b.a. ~~The PARISHES~~

c.a. ~~The AFFILIATES~~

~~68.1. All appraisals, valuations, studies, and evaluations of PERSONAL PROPERTY owned or transferred during the 20 years prior to the PETITION DATE by the following:~~

a. ~~The DEBTOR~~

b.a. ~~The PARISHES~~

c.a. ~~The AFFILIATES~~

## Allegedly Restricted Assets

~~69.~~17. Schedules detailing specific assets / funds owned or controlled by the PERSONS below alleged to be restricted, held in trust, held for others, or otherwise unavailable for creditors / settlement.

a. The DEBTOR

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

b. The PARISHES (including PARISH schools and cemeteries)

c. The AFFILIATES

70.1. Support for all allegedly restricted assets from Request No. 70, including wills, bequests, agreements, donation records, and correspondence that the DEBTOR intends to rely upon to establish / support restrictions.

71.1. DOCUMENTS REGARDING the original sources of any FHO in the possession, custody, or control of the DEBTOR; how and where alleged FHO funds were maintained (including identification of specific bank, investment or brokerage accounts – both current and historical); and the flow of FHO funds (both current and historical).

72. DOCUMENTS regarding the original sources of any alleged TRUST funds in the possession, custody, or control of the DEBTOR, how and where the alleged TRUST funds have been maintained (including identification of specific bank, investment or brokerage accounts – both current and historical), and the flow of funds (both current and historical).

73.1. Copies of all FINANCIAL DISCLOSURES made by the DEBTOR (or any other trustee or party) to each PARISH (including PARISH schools and cemeteries) and AFFILIATES, and the date of each FINANCIAL DISCLOSURE.

74.1. All DOCUMENTS CONCERNING the use of funds generated from any allegedly restricted assets, contributions, or bequests held by the DEBTOR or AFFILIATES.

75.1. Fully executed copies of all TRUST AGREEMENTS naming as a party the DEBTOR and / or any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE (each a "Trust").

76.1. All drafts of TRUST AGREEMENTS and non-privileged CORRESPONSENCE REGARDING the drafts.

77.1. For each TRUST, complete financial records from inception through the PETITION DATE showing (i) the initial funding, (ii) the source of the initial funding, (iii) all additions to the TRUST fund, (iv) all distributions and disbursements, and (v) all fees, taxes, and administration expenses. For each distribution and / or disbursement of TRUST funds, whether principal or income, identify (i) the date of each distribution and / or disbursement, (ii) the recipient, (iii) the amount, and (iv) the PERSON who authorized the distribution and / or disbursement.

78.1. DOCUMENTS sufficient to separately IDENTIFY all sums paid to or for the benefit of the DEBTOR from each TRUST for any reason and IDENTIFY (i) the date of each payment, (ii) the amount, (iii) the PERSON who authorized the payment, (iv) the recipient, and (v) a brief narrative description of why the payment was made.

79.1. For each TRUST, DOCUMENTS sufficient to IDENTIFY each and every instance where the PARISHES (including PARISH schools and cemeteries) or AFFILIATES compelled a distribution from such TRUST. Provide all DOCUMENTS REGARDING the exercise of such right to compel a distribution.

80.1. If the assets held, or alleged to be held, in any TRUST were commingled at any time with any other TRUST assets or the DEBTOR's assets,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

1  a.    DOCUMENTS sufficient to IDENTIFY all accounts that hold funds belonging to the

2  TRUST, and

3  b.a.    all DOCUMENTS associated with those accounts.

4  81.1.    DOCUMENTS sufficient to describe how TRUST assets for each TRUST were invested and how investment decisions were made.

5

6  82.1.    For each TRUST, DOCUMENTS sufficient to show the legal counsel involved in the preparation of the TRUST AGREEMENT, if any, and whether each party to such TRUST was represented by separate counsel.

7

8  83.1.    DOCUMENTS sufficient to IDENTIFY all PERSONS who assisted the DEBTOR with fulfilling its legal obligations stemming from each TRUST.

9  84.    All donor gift policies, rules, and regulations for the 20 years prior to the PETITION DATE.

10  **Pooled Investments**

11  85.18.    DOCUMENTS IDENTIFYING current deposit balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or any other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership.

12

13  86.19.    DOCUMENTS IDENTIFYING current loan balances RELATED TO any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of borrowers.

14

15

16  87.20.    DOCUMENTS IDENTIFYING current fund / subfund balances related to any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE, including IDENTIFICATION of PERSONS alleging ownership.

17

18

19  88.1.    DOCUMENTS RELATED TO the operation of any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Deposit & Loan Fund" operated and / or currently operates, institution account statements, participant account statements, and transaction DOCUMENTS such as check copies and wire advices).

20

21

22  89.1.    DOCUMENTS RELATED TO to the operation of any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Pooled Investment" program operated and / or currently operates, institution account statements, participant account statements, and transaction documents such as check copies and wire advices).

23

24

25

26  **Pension**

27  90.1.    All DOCUMENTS REGARDING any pension plans covering DEBTOR or PARISH employees (including priests or other CLERGY) including, without limitation, the following

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

for the period from January 1, 2003 to the PETITION DATE: (a) Master Trust Agreements; (b) calculations of reserves; (c) calculations of shortfalls; and (d) financial statements (including balance sheets, profit and loss statements, and statements of cash flows).

**Cemeteries**

91.1. Studies, analyses, reports, or similar DOCUMENTS (whether performed internally or by external consultants) that include information RELATED TO CEMETERY permanent maintenance / perpetual care, including all narrative and associated attachments, schedules, exhibits, and tables.

92. Samples of each form of CEMETERY contract, agreement (including, but not limited to, purchases, sales, and perpetual care) used during the 20 years prior to the PETITION DATE.

**Insurance**

93. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with LMI that reflect the existence of INSURANCE POLICIES (including missing policies).

94. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with FIREMAN's FUND that reflect the existence of INSURANCE POLICIES (including missing policies).

95. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with CHUBB that reflect the existence of INSURANCE POLICIES (including missing policies).

96.21. All DOCUMENTS EVIDENCING historical insurance coverage for the DIOCESE with CONTINENTAL the INSURERS that reflect the existence of INSURANCE POLICIES (including missing policies).

97. All DOCUMENTS EVIDENCING historical insurance coverage for the DEBTOR with WESTPORT that reflect the existence of INSURANCE POLICIES (including missing policies).

98.22. All DOCUMENTS EVIDENCING historical insurance for the DEBTOR with any PERSON not identified in Request Nos. 94-98 as an INSURER under which coverage for the ABUSE CLAIMS could possibly be available.

99.1. Copies of all general liability INSURANCE POLICIES under which the PARISHES and AFFILIATES assert an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

100. For all policies identified in response to Request No. 100, where the PARISHES and/or AFFILIATES have not provided a complete copy of the applicable policy, all DOCUMENTS EVIDENCING historical insurance coverage for the PARISHES and/or AFFILIATES with respect to that policy.

101.23. Copies of all general liability INSURANCE POLICIES under which any NON-DEBTOR asserts a CLAIM an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

102.24. For all INSURANCE POLICIES IDENTIFIED in response to Request No. 102 23 where the NON-DEBTOR has not provided a complete copy of the applicable INSURANCE POLICY, all DOCUMENTS EVIDENCING historical insurance coverage for the NON-DEBTOR with respect to that INSURANCE POLICY.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1. 103.25. Copies of all insurance coverage letters, including, without limitation, reservation of rights letters or coverage denial letters, received by the DEBTOR, PARISHES, AFFILIATES, and/or the NON-DEBTORS with respect to ABUSE CLAIMS.

104.1. A schedule of the amount paid or due to be paid by insurance carriers to the DEBTOR, PARISHES, AFFILIATES, and NON-DEBTORS with respect to defense costs for the ABUSE CLAIMS.

**Abuse Claims**

105.26. All DOCUMENTS CONCERNING ABUSE CLAIMS for any occurrence alleged to have taken place since January 1, 1941, regardless of whether allegations of SEXUAL ABUSE were deemed "credible" or were substantiated by the DEBTOR. This Request includes allegations against living and deceased PERSONS.

106.27. All lists, or partial or draft lists, of all PERSONS accused of SEXUAL ABUSE who have operated within the ARCHDIOCESE since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations."

107.1. All DOCUMENTS during the 20 years prior to the PETITION DATE sufficient to explain the DEBTOR's interpretation at any time of the term "credibly accused" or any synonym that the DEBTOR has used or uses to indicate when it believes a PERSON committed the SEXUAL ABUSE of which he or she was accused.

108. If YOU have no documents in your possession, custody, or control that are responsive to Request No. 107, please prepare such a list and produce all DOCUMENTS RELATING TO the decision not to prepare such a list previously.

109.28. If YOU have no documents in your possession, custody, or control that are responsive to Request No. 17, produce all DOCUMENTS sufficient to identify every PERSON accused of SEXUAL ABUSE who has operated within the ARCHDIOCES since January 1, 1941 and for whose actions the DEBTOR may be responsible or liable. This Request is not limited to "credible accusations."

110. The All DOCUMENTS CONCERING any SUBJECT INDIVIDUAL, including, but not limited to: the personnel files or all personnel records for each SUBJECT INDIVIDUAL. This Request is not limited to DOCUMENTS CONCERNING SEXUAL ABUSE and includes, but is (including but not limited to: educational background; work assignment histories; work performance evaluations; CORRESPONDENCE; reports; complaints (regarding SEXUAL ABUSE and otherwise); disciplinary records (regarding SEXUAL ABUSE and otherwise); medical, psychological and psychiatric records; and laicization DOCUMENTS.

111.29. All ); all DOCUMENTS CONCERING sent to or received from the Papal Nuncio, Apostolic Nuncio, Apostolic Delegate, Presbyteral Council, Priest Personnel Board, Archbishop's Cabinet, College of Consultors, Independent Review Board or any similar body; DOCUMENTS related to the SUBJECT INDIVIDUAL, INDIVIDUAL's discipline (or lack of discipline) and restriction (or lack of restriction) of any services, duties, or responsibilities including, but not limited to: , the restriction of priestly ministries or access to children; all COMMUNICATIONS with any PERSON, including, but not limited to, RELIGIOUS ORDERS and other archdioceses and dioceses CONCERNING all SUBJECT INDIVIDUALS who also served outside of the ARCHDIOCESE at any time; and DOCUMENTS kept separate and apart from the main personnel files for such priests, deacons, or RELIGIOUS. This Request includes, but is not limited to, the following: secret files; secret archives; *sub secreto* files; "Z" files; Canon 489 of The Code of Canon Law (1983) files; Canon 379 of The Pio Benedictine Code of Canon Law (1917) files; Red Files;

"Active Clergy Files;" "The Well;" "The Confidential Archive (archivum secretum);" "Archive;" "Inappropriate Behavior Policies/Referrals;" and/or "Clergy File Room."

112.30. All confidential DOCUMENTS (including, but not limited to, the strictly confidential DOCUMENTS maintained by the ARCHBISHOP or the DEBTOR pursuant to *Crimen Sollicitationis* (Crime of Solicitation) (1962) (Instruction of the Supreme Sacred Congregation of the Holy Office)), CONCERNING PRIESTS and RELIGIOUS against whom ABUSE CLAIMS have or could have been made, regardless of whether such allegations were deemed credible accusations or were substantiated by the DEBTOR or by any agent, officer, or congregation of the Roman Catholic Church.

113.1. All DOCUMENTS CONCERNING the application for laicization, granting of laicization, deferral of laicization, and denial of laicization of PRIESTS, other CLERGY or RELIGIOUS who have been accused of or admitted to SEXUAL ABUSE and for whom the DEBTOR may be responsible or liable.

114. All DOCUMENTS CONCERNING any SUBJECT INDIVIDUAL that were sent to or received from the PERSONS that have been variously known as the Dicastery for the Doctrine of the Faith, the Pontifical Commission for the Protection of Minors, the Congregation for the Doctrine of the Faith, the Sacred Congregation for the Doctrine of the Faith, the Priest Senate Council, Priests' Senate, Diocesan Presbyterium, Priest Senator Council, Presbyteral Council, Priests' Counsel, and/or the Council of Priests.

115. All DOCUMENTS REGARDING any SUBJECT INDIVIDUAL that refer to the Papal Nuncio, Apostolic Nuncio, and/or Apostolic Delegate to the United States of America.

116.31. All DOCUMENTS CONCERNING ABUSE CLAIMS provided to or prepared by any IRP including, but not limited to, complaints, allegations or reports of SEXUAL ABUSE, interview notes, minutes and transcripts of meetings, findings, recommendations, decisions, reports or memoranda, and CORRESPONDENCE.

32. All COMMUNICATIONS with the following PERSONS CONCERNING ABUSE CLAIMS AND SUBJECT INDIVIDUALS dated during the 20 years prior to the PETITION DATE: any state or federal governmental agency, authority, or entity, including, without limitation, district attorneys' offices, the California Attorney General's office, police departments, and the United States Department of Justice; or any other law enforcement agency.

117.1. All minutes or notes of any meeting of any IRP.

All DOCUMENTS REGARDING the operation of all of the DEBTOR's victim's assistance programs , including, but not limited to, manuals

**STAGE TWO**

**Parishes** policies **Affiliates**

33. All written agreements between or among the DEBTOR and its PARISHES and/or AFFILIATES in effect at any time during the 10 years prior to the PETITION DATE. If identical agreements were used between the DEBTOR and multiple other contracting parties, then a sample form agreement and a schedule of all parties to identical agreements is sufficient.

34. All DOCUMENTS CONCERNING any strategic plans, PARISH suppressions or mergers, or PARISH governance restructuring for the 30 years prior to the PETITION DATE.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Parish and Affiliate Financial Relationship**

35. DOCUMENTS sufficient to IDENTIFY and evidence the calculations or formula for determining PARISH and AFFILIATE assessments.

36. All schedules, accountings, invoices, support, and other DOCUMENTS RELATED TO services provided under any agreement between the DEBTOR and a PARISH, including calculations of amounts owed by, billed to, or allocated to PARISHES in relation to service fees and other costs.

37. All DOCUMENTS memorializing or in any way relating to any loans between the DEBTOR and AFFILIATES (including, but not limited to, CATHOLIC CHARTIES and Junipero Serra High School located within the ARCHDIOCESE).

38. DOCUMENTS REGARDING any write-off, forgiveness, cancelation, or similar reduction in any amounts owed to the DEBTOR by the PARISHES (including PARISH schools and cemeteries) or AFFILIATES.

**Financial Information**

39. Copies of annual trial balances for the following:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

40. Copies of all lease agreements, including any amendments, to which at least one of the below is a party:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

41. DOCUMENTS sufficient to show all payments made pursuant to lease agreements produced in response to Request No. 40.

**Real Property**

42. A summary listing of any REAL PROPERTY, including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, transferred by the below at any time in the 20 years prior to the PETITION DATE:

   a. The DEBTOR

   b. The PARISHES

   c. The AFFILIATES

43. All DOCUMENTS concerning any REAL PROPERTY transfers identified in Request No. 42.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

44. A list of all REAL PROPERTY for which the below have a reversionary interest, including internal identification numbers / codes, addresses, parcel numbers, acreage, square footage, estimated value, and current use (e.g., in use by the entity, leased, vacant).

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

**Pooled Investments**

45. DOCUMENTS RELATED TO the operation of any "Deposit & Loan Fund," "Archdiocesan Bank," or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Deposit & Loan Fund" operated and / or currently operates, institution account statements, participant account statements, and transaction DOCUMENTS such as check copies and wire advices).

46. DOCUMENTS RELATED TO the operation of any "Pooled Investment" program or similar programs previously or currently operated or participated in by the DEBTOR, CASC, or other AFFILIATE (including, but not limited to, formation DOCUMENTS, instructions, handbooks, policies, guidelines, or manuals that specify the manner in which the "Pooled Investment" program operated and / or currently operates, institution account statements, participant account statements, and transaction documents such as check copies and wire advices).

**Pension**

47. All DOCUMENTS REGARDING any pension plans covering DEBTOR or PARISH employees (including priests or other CLERGY) including, without limitation, the following for the period from January 1, 2003 to the PETITION DATE: (a) Master Trust Agreements; (b) calculations of reserves; (c) calculations of shortfalls; and (d) financial statements (including balance sheets, profit and loss statements, and statements of cash flows).

**Cemeteries**

48. Studies, analyses, reports, or similar DOCUMENTS (whether performed internally or by external consultants) that include information RELATED TO CEMETERY permanent maintenance / perpetual care, including all narrative and associated attachments, schedules, exhibits, and tables.

49. Samples of each form of CEMETERY contract, agreement (including, but not limited to, purchases, sales, and perpetual care) used during the 10 years prior to the PETITION DATE.

**Abuse Claims**

50. All DOCUMENTS during the 20 years prior to the PETITION DATE sufficient to explain the DEBTOR's interpretation at any time of the term "credibly accused" or any synonym that the DEBTOR has used or uses to indicate when it believes a PERSON committed the SEXUAL ABUSE of which he or she was accused.

51. All minutes or notes of any meeting of any IRP.

118.

LA:4860-9405-7817.5 05068.002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   119.1.  DOCUMENTS sufficient to IDENTIFY the victim's assistance coordinator(s), any victim's
2       assistance personnel, and PERSONS who interacted with SURVIVORS on behalf of the
       DEBTOR with regard to such ABUSE CLAIMS.

3   120.1.  All DOCUMENTS sufficient to IDENTIFY members of the IRP considering ABUSE
       CLAIMS.

4   121.1.  All manuals, memoranda, or other DOCUMENTS CONCERNING procedures for any IRP
5       considering ABUSE CLAIMS.

6   122.52.All DOCUMENTS CONCERNING assertions or concerns during the 20 years prior to the
       PETITION DATE that the DEBTOR or the ARCHBISHOP violated or failed to comply with
7       the United States Conference of Catholic Bishops' *Charter for the Protection of Children
       and Young People* or the *Essential Norms for Diocesan/ Eparchial Policies Dealing with
8       Allegations of Sexual Abuse of Minors by Priests or Deacons*, including, but not limited to,
       CORRESPONDENCE, reports, complaints, and disciplinary records.

9   123.53.All DOCUMENTS CONCERNING complaints, allegations, or reports that the DEBTOR or
10      the ARCHBISHOP violated or failed to comply with any local or state child sexual abuse
       reporting requirements. This Request includes, but is not limited to, notes,
11      CORRESPONDENCE, reports, complaints, and disciplinary records.

12   124.  All DOCUMENTS REGARDING the discipline (or lack of discipline) and restriction (or
       lack of restriction) of any services, duties, or responsibilities of a SUBJECT INDIVIDUAL,
13      including, but not limited to, the restriction of priestly ministries or access to children.

14   125.1.  All DOCUMENTS sufficient to substantiate all amounts of money paid by the DEBTOR any
15      PARISH, and any AFFILIATE for therapy for SURVIVORS.

16   126.1.  All COMMUNICATIONS with the following PERSONS CONCERNING ABUSE CLAIMS
       AND SUBJECT INDIVIDUALS dated during the 20 years prior to the PETITION DATE:
17      any state or federal governmental agency, authority, or entity, including, without limitation,
       district attorneys' offices, the California Attorney General's office, police departments, and
       the United States Department of Justice; or any other law enforcement agency.

18   127.  All COMMUNICATIONS with any PERSON, including, but not limited to, RELIGIOUS
19      ORDERS and other archdioceses and dioceses CONCERNING all SUBJECT
       INDIVIDUALS who also served outside of the ARCHDIOCESE at any time.

20   128.1.  All subpoenas from any governmental agency or entity (local, state, or federal) directed to or
21      served on YOU regarding the issue of SEXUAL ABUSE.

22   129.  All DOCUMENTS CONCERNING the subpoenas referenced in Request No. 129, including,
       but not limited to, written responses, DOCUMENT productions, and CORRESPONDENCE.

23   130.54.All DOCUMENTS CONCERNING the DEBTOR's settlements of then-existing ABUSE
24      CLAIMS in the 20 years prior to the PETITION DATE, including, but not limited to,
       settlement agreements (whether or not "confidential") with SURVIVORS.

25   **STAGE THREE**

26   **Corporate Governance**

27   55.  All DOCUMENTS between the DEBTOR and the Vatican or Holy See (Congress for
28      Bishops) for the 20 years prior to the PETITION DATE CONCERNING proposed or actual
       transfers of assets, protection of assets, realignment or restructuring of the DEBTOR, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PARISHES (including PARISH schools and cemeteries), the AFFILIATES, or similar actions.

56. All Official Catholic Directories RELATING TO the DEBTOR, the PARISHES (including PARISH schools and cemeteries) and the AFFILIATES issued in the 20 years prior to the PETITION DATE.

57. Copies of any archived versions of the DEBTOR's website from the 20 years prior to the PETITION DATE.

58. Consulting reports, strategic plans, assessments, or studies issued by outside consultants or advisors engaged by the DEBTOR within the 20 years prior to the PETITION DATE.

**Financial Information**

59. Copies of all auditor workpapers in the possession of the following:

    a.    The DEBTOR

    b.    The AFFILIATES

60. Copies of all "Prepared By Client" or "PBC" documentation in the possession of the following:

    a.    The DEBTOR

    b.    The AFFILIATES

61. Management letters (i.e., from auditor / accounting firm to management / client prepared as part of the audit process) for the following:

    a.    The DEBTOR

    b.    The AFFILIATES

62. Letters of representation / management representation letters / client representation letters (i.e., from management / client to auditor / accounting firm prepared as part of the audit process) for the following:

    a.    The DEBTOR

    b.    The AFFILIATES

63. All monthly budgets for all departments or agencies of the DEBTOR, along with budget versus actual variance reports.

64. Copies of electronic accounting or management system(s) (e.g., Sage, Dynamics / Navision, Financial Edge, Raiser's Edge, FIMS, QuickBooks), including version and edition for the following:

    a.    The DEBTOR

    b.    The PARISHES

    c.    The AFFILIATES

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

65. All DOCUMENTS RELATING TO any secured debt, line of credit, bond issuance, and / or guarantee by or relating to the DEBTOR, including, but not limited to, applications, due diligence materials, credit evaluations / reviews, compliance certifications, agreements, or notes.

66. DOCUMENTS RELATING TO the AAA (including campaign brochures, reports / submissions from PARISHES detailing uses of funds, reports detailing goal amounts and actual amounts, reports detailing amounts retained by the DEBTOR, and amounts transferred to the PARISHES.).

67. Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the below and any entity over the past 2 years.

   a.    The DEBTOR

   b.    The PARISHES

   c.    The AFFILIATES

68. Schedules of transfers individually over $50,000 or cumulatively over $100,000 between the DEBTOR and PARISHES and/or the AFFILIATES.

**Real Property**

69. DOCUMENTS sufficient to show the ownership of all REAL PROPERTY owned in title by or on behalf of the following:

   a.    The DEBTOR

   b.    The PARISHES

   c.    The AFFILIATES

70. Any valuation reports, appraisal reports, studies, or evaluations RELATING TO any REAL PROPERTY identified in Request Nos. 16, 42, and 44.

71. REAL PROPERTY inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")) for the following:

   a.    The DEBTOR

   b.    The PARISHES

   c.    The AFFILIATES

72. Copies of all current mortgages, deeds of trust, assignments of leases or rents, collateral assignments, other assignments, and any other agreements (including any schedules, annexes or exhibits thereto) CONCERNING REAL PROPERTY that are intended to provide, or evidence an agreement to provide, security or collateral for any obligation for the following:

   a.    The DEBTOR

   b.    The PARISHES

   c.    The AFFILIATES

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Personal Property**

73.   Schedules of all PERSONAL PROPERTY owned by the PERSON below. If no such schedules exist, please prepare them in response to this Request.

   a.   The DEBTOR

   b.   The PARISHES

   c.   The AFFILIATES

74.   All PERSONAL PROPERTY inventories from the 20 years prior to the PETITION DATE, including inventories included in insurance documents (e.g., listing of in-force values, replacement costs, statement of value ("SOV")), for the following:

   a.   The DEBTOR

   b.   The PARISHES

   c.   The AFFILIATES

75.   All appraisals, valuations, studies, and evaluations of PERSONAL PROPERTY owned or transferred during the 20 years prior to the PETITION DATE by the following:

   a.   The DEBTOR

   b.   The PARISHES

   c.   The AFFILIATES

**Insurance**

76.   Copies of all general liability INSURANCE POLICIES under which the PARISHES and AFFILIATES assert an interest in the proceeds thereof, including as an insured, additional insured, or otherwise.

77.   For all policies identified in response to Request No. **Error! Reference source not found.**, where the PARISHES and/or AFFILIATES have not provided a complete copy of the applicable policy, all DOCUMENTS EVIDENCING historical insurance coverage for the PARISHES and/or AFFILIATES with respect to that policy.

78.   A schedule of the amount paid or due to be paid by insurance carriers to the DEBTOR, PARISHES, AFFILIATES, and NON-DEBTORS with respect to defense costs for the ABUSE CLAIMS.

79.   All DOCUMENTS REGARDING all efforts undertaken by the ARCHDIOCESE or anyone on its behalf to locate INSURANCE POLICIES, or secondary evidence of INSURANCE POLICIES.

80.   To the extent not included in Request No. 79, a schedule of (1) the PERSONS who participated in the searches for INSURANCE POLICIES, (2) the dates of the searches; (3) the location(s) of the searches; (4) how long each search lasted; (5) what key words or search terms were used to conduct the searches; and (6) whether the searches involved the review of electronic files, paper records, or both. If no such schedule exists, please prepare it in response to this Request.

**Abuse Claims**

81.     All subpoenas from any governmental agency or entity (local, state, or federal) directed to or served on YOU regarding the issue of SEXUAL ABUSE.

82.     All DOCUMENTS CONCERNING the subpoenas referenced in Request No.1, including, but not limited to, written responses, DOCUMENT productions, and CORRESPONDENCE.

~~131.~~83.  DOCUMENTS sufficient to IDENTIFY the sources of funds the DEBTOR used to pay settlements of ABUSE CLAIMS.

~~132.~~84.  DOCUMENTS sufficient to IDENTIFY all INSURANCE POLICIES that have provided policy proceeds for payment of ABUSE CLAIMS or defense costs on behalf of the DEBTOR or any other named insured.


**STAGE FOUR**

**Potentially Liable Joint Tortfeasors or Successors**

85.     Agreements between any RELIGIOUS INSTITUTE (including entities or institutions operated by RELIGIOUS INSTITUTES, such as schools, monasteries, or convents) and the DEBTOR from January 1, 1945 to the PETITION DATE.

86.     Schedules of all RELIGIOUS INSTITUTES that operated in the ARCHDIOCESE between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.

87.     Schedules of all faculties given by the ARCHBISHOP to members of RELIGIOUS INSTITUTES between January 1, 1945 and the date YOU respond to this Request. If no such schedule exists, please prepare one in response to this Request.

88.     DOCUMENTS REGARDING the creation of the Diocese of Oakland and the Diocese of Santa Rosa.

89.     Any agreements between the Archdiocese of San Francisco and the Diocese of Oakland or the Diocese of Santa Rosa from 1961 to 1968.

**Financial Information**

90.     All business plans and associated financial projections prepared by or for the DEBTOR.

91.     All solvency analyses, appraisals, and / or valuation reports that were prepared by or for the DEBTOR.

92.     All historical activity schedules for all credit facilities and bond issuances for the DEBTOR detailing any draws, paydowns, interest accruals, or similar transactions.

93.     Current DEBTOR accounts receivable aging by payee.

**Cash and Investments**

94.     Account creation documents, signature cards, account statements, deposit slips, deposited check copies, wire advices, check copies, debit memos, and credit memos RELATING TO

bank, money market, investment, brokerage, credit card or other accounts (both open / current accounts and closed accounts) of the following:

a. The DEBTOR

b. The PARISHES

c. The AFFILIATES

**Allegedly Restricted Assets**

95. Support for all allegedly restricted assets from Request No. 17, including wills, bequests, agreements, donation records, and correspondence that the DEBTOR intends to rely upon to establish / support restrictions.

96. DOCUMENTS REGARDING the original sources of any FHO in the possession, custody, or control of the DEBTOR; how and where alleged FHO funds were maintained (including identification of specific bank, investment or brokerage accounts – both current and historical); and the flow of FHO funds (both current and historical).

97. DOCUMENTS regarding the original sources of any alleged TRUST funds in the possession, custody, or control of the DEBTOR, how and where the alleged TRUST funds have been maintained (including identification of specific bank, investment or brokerage accounts – both current and historical), and the flow of funds (both current and historical), and

98. Copies of all FINANCIAL DISCLOSURES made by the DEBTOR (or any other trustee or party) to each PARISH (including PARISH schools and cemeteries) and AFFILIATES, and the date of each FINANCIAL DISCLOSURE.

99. All DOCUMENTS CONCERNING the use of funds generated from any allegedly restricted assets, contributions, or bequests held by the DEBTOR or AFFILIATES.

100. Fully executed copies of all TRUST AGREEMENTS naming as a party the DEBTOR and / or any PARISH (including PARISH schools and cemeteries), and / or any AFFILIATE (each a "Trust").

101. All drafts of TRUST AGREEMENTS and non-privileged CORRESPONSENCE REGARDING the drafts.

102. For each TRUST, complete financial records from inception through the PETITION DATE showing (i) the initial funding, (ii) the source of the initial funding, (iii) all additions to the TRUST fund, (iv) all distributions and disbursements, and (v) all fees, taxes, and administration expenses. For each distribution and / or disbursement of TRUST funds, whether principal or income, identify (i) the date of each distribution and / or disbursement, (ii) the recipient, (iii) the amount, and (iv) the PERSON who authorized the distribution and / or disbursement.

103. DOCUMENTS sufficient to separately IDENTIFY all sums paid to or for the benefit of the DEBTOR from each TRUST for any reason and IDENTIFY (i) the date of each payment, (ii) the amount, (iii) the PERSON who authorized the payment, (iv) the recipient, and (v) a brief narrative description of why the payment was made.

104. For each TRUST, DOCUMENTS sufficient to IDENTIFY each and every instance where the PARISHES (including PARISH schools and cemeteries) or AFFILIATES compelled a distribution from such TRUST. Provide all DOCUMENTS REGARDING the exercise of such right to compel a distribution.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

105. If the assets held, or alleged to be held, in any TRUST were commingled at any time with any other TRUST assets or the DEBTOR's assets,

    a.    DOCUMENTS sufficient to IDENTIFY all accounts that held funds belonging to the TRUST, and

    b.    all DOCUMENTS associated with those accounts.

106. DOCUMENTS sufficient to describe how TRUST assets for each TRUST were invested and how investment decisions were made.

107. For each TRUST, DOCUMENTS sufficient to show the legal counsel involved in the preparation of the TRUST AGREEMENT, if any, and whether each party to such TRUST was represented by separate counsel.

108. DOCUMENTS sufficient to IDENTIFY all PERSONS who assisted the DEBTOR with fulfilling its legal obligations stemming from each TRUST.

109. All donor gift policies, rules, and regulations.

**Abuse Claims**

110. If YOU have no documents in your possession, custody, or control that are responsive to Request No. 1, please prepare such a list and produce all DOCUMENTS RELATING TO the decision not to prepare such a list previously.

111. All DOCUMENTS CONCERNING the application for laicization, granting of laicization, deferral of laicization, and denial of laicization of PRIESTS, other CLERGY or RELIGIOUS who have been accused of or admitted to SEXUAL ABUSE and for whom the DEBTOR may be responsible or liable.

112. All DOCUMENTS REGARDING the operation of all of the DEBTOR's victim's assistance programs , including, but not limited to, manuals and policies written.

113. DOCUMENTS sufficient to IDENTIFY the victim's assistance coordinator(s), any victim's assistance personnel, and PERSONS who interacted with SURVIVORS on behalf of the DEBTOR with regard to such ABUSE CLAIMS.

114. All DOCUMENTS sufficient to IDENTIFY members of the IRP considering ABUSE CLAIMS.

115. All manuals, memoranda, or other DOCUMENTS CONCERNING procedures for any IRB considering ABUSE CLAIMS.

116. All DOCUMENTS sufficient to substantiate all amounts of money paid by the DEBTOR any PARISH, and any AFFILIATE for therapy for SURVIVORS.

117. DOCUMENTS sufficient to IDENTIFY the sources of funds the DEBTOR used to pay settlements of ABUSE CLAIMS.

~~133.~~118. All COMMUNICATIONS among the DEBTOR and financial donors or other financial benefactors to the DEBTOR, any PARISH, and any AFFILIATE REGARDING payment for ABUSE CLAIMS.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

134.119.	All DOCUMENTS generated by private investigators relative to ABUSE CLAIMS, and COMMUNCATIONS between the DEBTOR and private investigators concerning same.

135.120.	Any DOCUMENTS YOU exchanged with the John Jay College of Justice CONCERNING its study on SEXUAL ABUSE or ABUSE CLAIMS in the Roman Catholic Church.

-end-

**EXHIBIT D**

**REDLINE – Proposed Form of Order Ex Parte Application**

LA:4869-9408-5817.5 05068.002

1    James I. Stang (CA Bar No. 94435)
     Debra I. Grassgreen (CA Bar No. 169978)
2    John W. Lucas (CA Bar No. 271038)
     Brittany M. Michael (NY Bar No. 5678552) *admitted pro hac vice*
3    Pachulski Stang Ziehl & Jones LLP
     One Sansome Street, Suite 3430
4    San Francisco, California 94104
     Telephone: 415.263.7000
5    Facsimile: 415.263.7010
     Email: jstang@pszjlaw.com
6           dgrassgreen@pszjlaw.com
            jlucas@pszjlaw.com
7           bmichael@pszjlaw.com

8    Counsel to the Official Committee of Unsecured Creditors

9              **UNITED STATES BANKRUPTCY COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                   **SAN FRANCISCO DIVISION**

12   In re:                              Case No.: 23-30564

13   THE ROMAN CATHOLIC ARCHBISHOP OF    Chapter 11
     SAN FRANCISCO,
14                                       **ORDER GRANTING EX PARTE**
              Debtor and Debtor in Possession.   **APPLICATION OF THE OFFICIAL**
15                                       **COMMITTEE OF UNSECURED**
                                         **CREDITORS FOR ENTRY OF AN ORDER**
16                                       **PURSUANT TO BANKRUPTCY RULE 2004**
                                         **AUTHORIZING ORAL EXAMINATION OF**
17                                       **THE DEBTOR; AND PRODUCTION OF**
                                         **DOCUMENTS OF DEBTOR, PARISHES,**
18                                       **AND AFFILIATES; AND ORDERING**
                                         **DEBTOR TO SUBMIT DECLARATION**
19

20           Upon consideration of the *Ex Parte Application of the Official Committee of Unsecured*

21   *Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Oral Examination of*

22   *the Debtor; and Production of Documents of Debtor, Parishes, and Affiliates; and Ordering Debtor*

23   *to Submit Declaration* (the "Application"), the record in this case, and for good and sufficient cause

24   appearing,

25           IT IS HEREBY ORDERED AS FOLLOWS:

26           1.      The Application is GRANTED.

27           2.      The Committee is authorized to issue a subpoena directed to the Debtor requiring the

28   Debtor (a) to complete its production, by January 12, 2024, of documents responsive to the

Requests, [1][2] in Stage One by January 12, 2024; Stage Two by January 26, 2024; Stage Three by February 9, 2024; and Stage Four by February 23, 2024; and (b) to provide oral testimony, no later than ~~January 24~~ February 29, 2024, relating to the Debtor's search for and possession, custody, or control of documents responsive to the Requests (the "Oral Testimony").

3.    The Debtor is required to submit to the Committee by January ~~12~~26, 2024, a written declaration, signed under penalty of perjury, ~~concerning~~identifying the specific Requests for Parish or Affiliate information for which the Debtor does not have documents in its possession, custody, or control (the "Sworn Statement").

4.    The Debtor's submission to the Committee of the Sworn Statement shall not in any way affect the Committee's right to take Oral Testimony.

5.    After receipt of the Sworn Statement and/or the substantial completion of the Debtor's document review, the Committee is authorized to issue subpoenas to any of the Parishes or Affiliates to seek production of documents responsive to any Requests identified in the Sworn Statement or identified during Oral Testimony or during the Committee's review of the Debtor's document production for which the Debtor did not produce documents in response to the Requests.

6.    The Committee's subpoena(s) directed to any of the Parishes or Affiliates shall require those subpoenaed parties to complete, by February ~~23~~29, 2024 or no fewer than 14 calendar ~~says~~days after service of a subpoena, whichever is earlier, their production of documents responsive to the Requests. 7.    This Order is without prejudice to the Debtor's right to seek a protective order or otherwise object to the discovery sought, nor does it prejudice the Committee's right to respond to such objections or seek to compel production.

**\*\*END OF ORDER\*\***

---

[1]  All terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.
[2]  All terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

1  STATE OF CALIFORNIA       )
                                     )
2  COUNTY OF LOS ANGELES   )

3         I, Nancy H. Brown, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA 90067.

5         On December 13, 2023, I caused to be served the following document(s) in the manner stated below:

**COMMITTEE'S SECOND STATUS REPORT IN SUPPORT OF THE EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF THE DEBTOR; AND PRODUCTION OF DOCUMENTS OF DEBTOR, PARISHES, AND AFFILIATES; AND ORDERING DEBTOR TO SUBMIT DECLARATION [DKT. NO. 292]**

| | |
|---|---|
| ☑ | TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):  Pursuant to controlling General Orders and LBR, the foregoing document was served by the court via NEF and hyperlink to the document.  On **December 13, 2023,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below. |
| ☐ | (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |
| ☐ | (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address. |

       I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

       Executed on December 13, 2023 at Los Angeles, California.

*/s/ Nancy H. Brown*
_____
Nancy H. Brown