1   PAUL J. PASCUZZI, State Bar No. 148810
    JASON E. RIOS, State Bar No. 190086
2   THOMAS R. PHINNEY, State Bar No. 159435
    FELDERSTEIN FITZGERALD
3     WILLOUGHBY PASCUZZI & RIOS LLP
    500 Capitol Mall, Suite 2250
4   Sacramento, CA  95814
    Telephone:    (916) 329-7400
5   Facsimile:    (916) 329-7435
    Email:        ppascuzzi@ffwplaw.com
6                 jrios@ffwplaw.com
                  tphinney@ffwplaw.com
7
8   ORI KATZ, State Bar No. 209561
    ALAN H. MARTIN, State Bar No. 132301
9   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
      Including Professional Corporations
10  Four Embarcadero Center, 17th Floor
    San Francisco, California 94111-4109
11  Telephone:    (415) 434-9100
    Facsimile:    (415) 434-3947
12  Email:        okatz@sheppardmullin.com
                  amartin@sheppardmullin.com
13
14  Attorneys for The Roman Catholic Archbishop of
    San Francisco
15
                    UNITED STATES BANKRUPTCY COURT
16
          NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
17

| | |
|---|---|
| 18  In re | Case No. 23-30564 |
| 19  THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| 20              Debtor and Debtor in Possession. | **MOTION TO MODIFY FINAL ORDER (1) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; (2) AUTHORIZING MAINTENANCE OF EXISTING BUSINESS FORMS, (3) EXCUSING COMPLIANCE WITH SECTION 345(b); AND (4) AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY; OR, IN THE ALTERNATIVE, AUTHORIZING U.S. BANK N.A. BANK CARD PROGRAM** |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | Date:      January 11, 2024 |
| 27 | Time:      1:30 p.m. Via ZoomGov |
| 28 | Judge:     Hon. Dennis Montali |

The Roman Catholic Archbishop of San Francisco (the "RCASF" or the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), moves the Court (the "Modification Motion") for entry of an order to modifying the Court's *Final Order (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy* (ECF 266) (the "Cash Management Order") or, in the alternative, for entry of a new order authorizing the Debtor to enter into a new bank card program with U.S. Bank N.A. ("U.S. Bank").

In support of this Modification Motion, the Debtor relies upon the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and First Day Motions* ("Passarello Background Decl."), the *Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and First Day Motions* ("Gaspari Decl."), the *Declaration of Joseph J. Passarello in Support of the Cash Management Motion* (the "Passarello Decl."), the *Supplemental Declaration of Joseph J. Passarello in Support of the Cash Management Motion,* the *Second Supplemental Declaration of Joseph J. Passarello in Support of the Debtor's the Cash Management Motion,* the *Third Supplemental Declaration of Joseph J. Passarello in Support of the Debtor's the Cash Management Motion,* and the *Declaration of Michael Flanagan* filed in support of this Modification Motion ("Flanagan Decl."),[1] as well as all exhibits filed in support of the declarations. In further support of this Modification Motion, the Debtor respectfully represents as follows:

**RECITALS**

A.      On August 21, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and thereby commenced the Bankruptcy Case.

---

[1] Capitalized terms not otherwise defined in this Modification Motion shall have the same meanings ascribed to them in the Passarello Background Decl., the Gaspari Decl., and the Flanagan Decl.

B.     On the Petition Date, the Debtor filed certain motions for "first day relief," on an emergency basis, and related supporting documents, including, but not limited to the declarations and supplemental declarations of Joseph J. Passarello and Paul E. Gaspari (collectively, the "First Day Motions"), including the motion (ECF 9) resulting in the Cash Management Order.

C.     The Cash Management Order provides among other things that the Debtor may continue to use its existing Cash Management System, which includes:

      i.     The use of credit cards issued by Wells Fargo Bank;

      ii.     Authorization for the Debtor's Cash Management Banks, including U.S. Bank National Association to (a) debit the Debtor's accounts in the ordinary course of business without further order of the Court on account of checks drawn on the respective accounts, and (b) honor the Debtor's request to open or close, as the case may be, any existing bank accounts or additional bank accounts provided however, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation that is organized under the laws of the United States or any State thereof and that such account is either bonded or securitized as described in Bankruptcy Code section 345(b) should the account exceed the FDIC insurance limit, and listed on the U.S. Trustee's list of authorized depositories for the Northern District of California.

      iii.     Authorization for the Debtor, the Cash Management Banks and Wells Fargo Bank (in connection with the continued use of credit cards) to continue to perform pursuant to the terms of any pre-petition agreements that may exist between them.

D.     Wells Fargo Bank has informed the Debtor that it will terminate the Debtor's continued use of its credit cards no later than February 10, 2024.[2]

E.     As explained in the Cash Management Motion and supporting declarations and supplemental declarations of Joseph Passarello, the Debtor uses a credit card or bank card to

_____

[2] Wells Fargo Bank has elected to discontinue the Debtor's credit card program for business reasons and complexities related to the Debtor's bankruptcy case and not for any monetary default or improper conduct by the Debtor.

effectively and efficiently perform its operations.  Such bank cards are used, for example, in the ordinary course of business, to make disbursements to trade vendors and service providers, and by employees for approved expenses.

F.     To replace the Wells Fargo credit cards, U.S. Bank has agreed to provide the Debtor with a new bank card program ("Bank Cards") which will work similar to a debit card and include the following terms:

     i.     Establishment of a master Bank Card account in the name of the Debtor that may be used by the Debtor to process payments up to the amount of funds provided by the Debtor to fund the account in advance.  Advance deposits can be made in any amount, at any time, as often as needed.  The Debtor anticipates that it will initially fund the account with approximately $75,000 to $100,000 and replenish the account as funds are disbursed to pay for charges, and the Debtor agrees to limit the Debtor's pre-funded balance for its Bank Card account to a cap of $200,000 absent further order of the Court.

     ii.     The funds advanced by the Debtor to U.S. Bank will not be held in a Debtor deposit account.  Rather, the Debtor's advance of funds will provide pre-funded credit for use by the Debtor on its Bank Card for its account.[3]

     iii.     The Debtor has the potential to earn rebates from U.S. Bank depending on the amount of funds expended on the Bank Card.  These potential rebates would start at 0.9% depending on the amount of funds expended and the nature of the charged expenditures.

     iv.     Availability for the Debtor's non-debtor affiliated entities (the "Participants") to establish separate sub-accounts in the name of each Participant for Bank Cards to be issued to the respective Participants to the extent of funds provided by each Participant in their respective sub-accounts.  Approximately 35-40 non-Debtor affiliated entities participated in the Wells Fargo credit card program.  The Debtor anticipates that these same affiliated

---

[3] Since the Bank Card account will not be a "deposit account" and is not available for any use other than the Bank Cards, it does not fall under the terms of coverage by the FDIC.

entities and other non-debtor affiliated entities will participate in the U.S. Bank Card program. Participants will establish separate sub-accounts in the name of each Participant.

      v.      Protections for the Debtor's estate via terms including, (i) limiting the use of the Bank Cards to the funds provided by the Debtor and each Participant, respectively, and (ii) Bank Cards may only be used for funds provided by the account holder for each respective account. As such, the Participants will only have access to the funds provided for their respective sub-accounts and will not have access to the funds provided by the Debtor for the Debtor's Bank Card account.

      vi.     Since use of the Bank Cards is limited to the amount of funds provided, the Debtor will not incur interest charges or any annual card fees. Any incurred fees are expected to be minimal and would be based upon certain special circumstances or features such as a default, electronic attachment utility, logo embossing, or customized cards.

      vii.    The card program can be closed at any time at the Debtor's written request.

      viii.   There is no additional cost to the Debtor for the establishment of each Participant's sub-account. However, since the Debtor is the master account holder, the account agreements provide that the Debtor shall be responsible for any unpaid charges by a Participant. This risk is very low since the Participants will be instructed to manage their own accounts, and as noted above, each Participant will be required to post their own funds for use from each Participant's sub-account, each Participant's Bank Cards can only be used to access the available funds in each Participant's respective sub-account, and the Bank Card system is designed to limit any charges to the amount of funds available in each respective account.

G.    The Debtor explored alternatives such as using a Debtor In Possession account with an associated credit card. However, this program would have required the Debtor to advance a minimum collateral deposit of approximately $650,000. The Bank Card system does not require any minimum balance (other than $1.00 to activate). Additionally, the cards are issued under separate names/accounts for the Debtor and each Participant, making for an effective system with flexible advance funding that each entity can manage.

H.    Under the circumstances, the Debtor submits that the new Bank Card program offered by U.S. Bank is similar to the existing credit card program administered by Wells Fargo Bank but utilizing advanced funds instead of credit and closely aligned with the Cash Management System already approved by the Court.  Moreover, the Bank Card program offered by U.S. Bank provides a timely, cost effective, and workable solution to the impending cancellation of the Wells Fargo Bank credit cards.

I.    In consideration of the foregoing, the Debtor requests modification of the Cash Management Order to include the Bank Card program administered by U.S. Bank as follows:

## PROPOSED MODIFICATION OF CASH MANAGEMENT ORDER

1.    The Cash Management Order to be modified to authorize the Debtor open and maintain the Bank Card account program with U.S. Bank and execute any agreements related thereto.

2.    Entry of a proposed modified Cash Management Order with the changes to the existing Cash Management Order noted on the "redline" comparison attached hereto as Exhibit A.

## DEBTOR'S ALTERNATIVE REQUEST FOR ENTRY OF ORDER AUTHORIZING THE DEBTOR'S USE OF THE U.S. BANK, BANK CARD PROGRAM

In the alternative, the Debtor requests that the Court enter an order in substantially the form appended to this Modification Motion as Exhibit B authorizing the Debtor to (i) establish and use the U.S. Bank, Bank Card program with a pre-funded balance up to $200,000 during this Bankruptcy Case, and (ii) enter into an account agreement and related documents for the U.S. Bank, Bank Card program.

## LEGAL ARGUMENT

The proposed Bank Card program with U.S. Bank closely aligns with the Cash Management Order.  As noted above, U.S. Bank is already among the approved Cash Management Banks identified in the Order.  The existing Order already authorizes the Debtor to continue use of its Wells Fargo credit cards, and it further authorizes the debtor to open and close bank accounts. Modification of the Cash Management Order to include authorization for the Bank Card program is reasonable and appropriate under the grounds for the authorizations already included in the existing Cash

Management Order, the circumstances of this case, and the terms of the proposed Bank Card program noted above.

Moreover, with regard to the proposed modification and/or the proposed new order, Section 363 of the Bankruptcy Code provides that a debtor, "[a]fter notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, such use, sale, or lease should be authorized in the sound business judgment of the debtor or trustee. *See The Official Committee of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside the ordinary course of business). In that regard, a sale of assets is appropriate if the debtor or trustee demonstrates a "sound business purpose" for the sale. *See, e.g., In re Am. Dev. Corp.*, 95 B.R. 735, 739 (Bankr. C.D. Cal. 1989); *In re Walters*, 83 B.R. 14 (B.A.P. 9th Cir. 1988). Indeed, "[w]here the debtor articulates a reasonable basis for its business decisions as distinct from a decision made arbitrarily or capriciously, courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

The Debtor has articulated its sound business reasons for pursuing the U.S. Bank Card program. As noted above, the Debtor requires the use of bank issued cards to conduct its business. The proposed Bank Card program with U.S. Bank provides a practical, cost-effective solution to the existing Wells Fargo credit cards. In particular, the Debtor and each Participant will have their own separate account numbers. Thus, the Bank Cards will be issued separately based upon the respective accounts and limited to use only to the funds posted to the account for which the Bank Card has been issued. Moreover, the Bank Cards do not have any minimum prefunding balance which gives the Debtor the flexibility to manage its account balance at amounts reasonably necessary to cover anticipated Bank Card expenses. Finally, since the Bank Cards are pre-funded and limited in

availability to the amount of funds posted, the Bank Cards will not incur high interest rate charges like the Wells Fargo credit cards could have incurred.

Section 364 of the Bankruptcy Code provides that "The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than . . . " in the ordinary course of business. 11 U.S.C. §364(b). Here, since the Debtor is pre-funding the Bank Cards and, therefore, using the Debtor's funds to administer the Bank Card program, the Bank Cards are not a traditional form of credit. However, to the extent that the Bank Cards are considered a form of credit, they should be authorized under Bankruptcy Code Section 364(b) for the same reasson as the Bank Cards should be authorized under Section 363(b).

To the extent necessary, the Debtor also seeks a waiver of the deposit guidelines set forth in section 345(b) to allow the Debtor to maintain its Bank Card account with U.S. Bank. Section 345 of the Bankruptcy Code authorizes a debtor to invest cash and money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Section 345(b) of the Bankruptcy Code provides that, unless the bankruptcy court orders otherwise "for cause,"

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested--
>
> (1) a bond--
> (A) in favor of the United States;
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
> (C) conditioned on--
>
> (i) a proper accounting for all money so deposited or invested and for any return on such money;
> (ii) prompt repayment of such money and return; and
>
> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31.

345.S.C. § 345(b).

Section 345 expressly provides that the Court may modify a debtor's investment requirements for "cause." The Debtor submits that cause exists for allowing it to advance funds to U.S. Bank to fund the Debtor's Bank Card balance, without meeting the strict bond requirements of section 345(b).

The Debtor submits that its practices conform to the intent of section 345(b) to protect and maximize the value for its estate. The use of the Bank Card program also allows the Debtor to avoid posting $650,000 in security collateral that would otherwise be required for a debit card program and instead retain those funds in interest bearing accounts or investments. Moreover, the Debtor has the potential to earn cash rebates based upon the amount of the expenditures on the Bank Cards. Finally, by using the Bank Card program, with advance funding and no minimum balance requirements, the Debtor can manage and tailor the amount of its Bank Card Balance to amounts reasonably necessary for the Debtor's use of its Bank Cards. As noted, the Bank Card program will also avoid the potential interest charges that could otherwise accrue under the existing Wells Fargo credit cards, which function as traditional credit cards without any advance funding. Thus, the Bank Card program is reasonably structured to minimize the costs and risks to the estate while maximizing the Debtor's investment.

The Debtor further notes that U.S. Bank is a large established bank included on the United States Trustee's list of authorized depositories for the Northern District. Courts have routinely granted requests to approve the continued use of deposit guidelines that do not comply strictly with section 345. This is especially the case when, as here, the manner of the proposed investments is safe and prudent. *See, e.g.*, *In re Serv. Merch., Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (enumerating factors to be considered in waiving requirements of section 345, including size of business and safety of debtor's proposed investments). In *In re King Mountain Tobacco Co., Inc.*, 623 B.R. 323, 334 (Bankr. E.D. Wash. 2020), the bankruptcy court held that the debtor was not required to divest its investment accounts because the "totality of the circumstances presented" established cause for waiver of 345(b). Namely, the debtor showed that its investments were safe and that divestment would harm the estate more than it would help increase safety. *See id.* at 333 (approving continued use of investment procedures because "the debtor's management appears to

have made a reasonable business decision that the benefits of maintaining banking relationships and harmony with prepetition operational practices" and that "sticking with the status quo is the path most likely to maximize the value of the debtor's business (and hence the bankruptcy estate)").

Here, because the Debtor's proposed Bank Cards are prudent, reasonably safe, and unlikely to lose value, the Court should allow the Debtor to establish and maintain the Bank Card program. The Debtor submits that given the totality of the circumstances, its request is reasonable and cause exists for the Court to relieve the Debtor from compliance with the requirements of Bankruptcy Code section 345(b). For the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interests of its estate.

Dated: December 21, 2023    FELDERSTEIN FITZGERALD
                            WILLOUGHBY PASCUZZI & RIOS LLP

                            By    /s/ Jason E. Rios
                                  JASON E. RIOS
                                  PAUL J. PASCUZZI
                                  THOMAS R. PHINNEY
                                  Attorneys for The Roman Catholic
                                  Archbishop of San Francisco

Dated: December 21, 2023    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                            By    /s/ Ori Katz
                                  ORI KATZ
                                  ALAN H. MARTIN
                                  Attorneys for The Roman Catholic
                                  Archbishop of San Francisco

# EXHIBIT A

1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD WILLOUGHBY
3    PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA 95814
   Telephone:     (916) 329-7400
5  Facsimile:     (916) 329-7435
   Email:         ppascuzzi@ffwplaw.com
6                 jrios@ffwplaw.com
                  tphinney@ffwplaw.com
7
   ORI KATZ, State Bar No. 209561
8  ALAN H. MARTIN, State Bar No. 132301
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
9    A Limited Liability Partnership
     Including Professional Corporations
10 Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
11 Telephone:     (415) 434-9100
   Facsimile:     (415) 434-3947
12 Email:         okatz@sheppardmullin.com
                  amartin@sheppardmullin.com
13
   Attorneys for The Roman Catholic Archbishop of
14 San Francisco

15            UNITED STATES BANKRUPTCY COURT

16     NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

17 | In re | Case No. 23-30564 |

18 | THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |

19 | | **AMENDED** **FINAL ORDER (1) AUTHORIZING CONTINUED USE OF EXISTING CASH** |
   Debtor and
20 Debtor in Possession.
   **MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED**
21 **INVESTMENT ACCOUNTS;**
   **(2) AUTHORIZING MAINTENANCE OF**
22 **EXISTING BUSINESS FORMS, (3) EXCUSING COMPLIANCE WITH SECTION 345(b); (4)**
23 **AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY; AND**
24 **(5) SCHEDULING A FINAL HEARING**

25

26 Date:      October 26, 2023
   Time:      1:30 p.m.
27            Via ZoomGov

28 Judge:     Hon. Dennis Montali

Pursuant to a motion to modify the existing Cash Management Order previously entered by the Court as ECF No. 266 (the "Modification Motion" Dkt. No. ___) filed by the Debtor, and after hearing on the Modification Motion on January 11, 2023, this Order amends the Order previously entered as Docket No. 266 to include authorization for the Debtor open and maintain the Bank Card account program with U.S. Bank and execute any agreements related thereto.

The motion of The Roman Catholic Archbishop of San Francisco ("Debtor"), debtor in possession, the *Debtor's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and Scheduling a Final Hearing*, filed on August 21, 2023, as ECF No. 9 (the "Motion"),[1] as supplemented from time to time, came on for final hearing on October 26, 2023 at 1:30 p.m., before the Honorable Dennis Montali of the United States Bankruptcy Court for the Northern District of California. Paul J. Pascuzzi, Esq., of Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP and Ori Katz of Sheppard, Mullin, Richter & Hampton LLP appeared on behalf of the Debtor. All other appearances were as noted on the record.

The Court having considered the Motion, the Supplement, the Passarello Background Decl., the Gaspari Decl., the Passarello Decl., the Supplemental Passarello Decl., the Reply, the Second Supplemental Declaration, the Supplemental Reply, the Third Supplemental Declaration, all exhibits filed in support of the Motion, the Supplement, the Reply, the Supplemental Reply and their supporting declarations, the *United States Trustee's Omnibus Objection to Debtor's First Day Motions and Reservation of Rights [ECF Nos. 7 & 9]* filed on August 23, 2023, as ECF No. 25, and the *Objection of the United States Trustee to Final Approval of Debtor's Motion for Continued Use of Existing Cash Management System* filed on September 7, 2023, as ECF No. 71 (collectively, the "UST Objections"), the lack of any other objection to the Motion, and the representations made by counsel at the hearing as reflected in the record of the hearing; and the Court having found that it

---

[1] Unless otherwise indicated, capitalized terms not otherwise defined in this Order shall have the same meanings ascribed to them in the Motion, Supplement, or the Reply as applicable.

has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the U.S. Trustee, the Cash Management Banks, the twenty largest unsecured creditors, all secured creditors, if any, and any applicable governmental entities; that no further notice is necessary; that the concerns and objections stated in the U.S. Trustee Objection as to this Motion either have been consensually resolved as set forth in the Interim Order and the Second Interim Order or overruled as set forth in this Final Order; that the relief sought in the Motion is in the best interests of the Debtor, its estate, and its creditors; and that good and sufficient cause exists for such relief.

It is hereby ORDERED as follows:

1. The *Order Overruling Objection of the United States Trustee Regarding Investment Accounts* entered on October 30, 2023 as ECF No. 257 is adopted and incorporated herein by this reference.

2. The Motion is GRANTED, on a final basis, as set forth herein.

3. Except as otherwise provided herein, the Debtor is authorized to: (a) designate, maintain, and continue to use any and all existing Bank Accounts as defined in the Motion with the same account numbers, provided, however, that such accounts shall be designated as debtor in possession accounts to the extent possible by the relevant banks; and (b) continue to use its existing Cash Management System, which includes use of the Investment Accounts and ~~certain credit cards~~updating its Cash Management System to incorporate the Bank Card program with U.S. Bank described in the Modification Motion. In connection with the ongoing use of the Cash Management System, the Debtor shall continue to maintain strict records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between pre- and post-petition transactions, including transactions between the Debtor and any non-Debtor.

4. Each of the Debtor's existing depository and disbursement banks, as well as U.S. Bank National Association in its capacity as trustee of the Lay SERP ~~and~~, custodian of the Investment Pool Account, and provider of the Bank Card program described in the Modification Motion (collectively, the "<u>Cash Management Banks</u>"), is authorized to debit the Debtor's accounts

in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii)(iii) all amounts incurred pursuant to charges or amounts owed for Bank Card transactions, and (iv) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank for the maintenance of and services related to the Bank Accounts, together with all other fees and obligations relating to the Cash Management System.

5.      Any of the Debtor's Cash Management Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued, or any direction provided pursuant to the applicable deposit, trust or custody agreement, as applicable, by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court without any duty of further inquiry and without liability for following the Debtor's instructions. The Cash Management Banks shall not be deemed in violation of this Order and shall have no liability for relying on such representations by the Debtor or honoring any check or other payment order that is subject to this Order either (a) at the direction of the Debtor to honor such prepetition check or other payment order, (b) in the good faith belief that this Court has authorized such prepetition check or other payment order to be honored, or (c) as a result of an innocent mistake. To the extent that the Debtor directs that any check or other payment order be dishonored or the Cash Management Banks inadvertently dishonor any check or other payment order, the Debtor may issue replacement checks or other payment orders consistent with the orders of this Court.

6.      That (i) those certain existing deposit, trust, and custody agreements, as applicable, between the Debtor and its Cash Management Banks shall continue to govern the post-petition cash management relationship between the Debtor and the Cash Management Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, and (ii) the Debtor and the Cash Management Banks may,

without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, and (iii) the Debtor may enter into the account agreements with U.S. Bank for the Bank Card program and implement changes to the Bank Card program in the ordinary course of business.

7.    Nothing contained herein shall prevent the Debtor from opening any additional bank accounts or closing any existing Bank Account(s) as it may deem necessary and appropriate, and the Cash Management Banks are authorized to honor the Debtor's request to open or close, as the case may be, such bank accounts or additional bank accounts, provided however, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation that is organized under the laws of the United States or any State thereof and that such account is either bonded or securitized as described in Bankruptcy Code section 345(b) should the account exceed the FDIC insurance limit, and listed on the U.S. Trustee's list of authorized depositories for the Northern District of California.

8.    Any and all accounts opened by the Debtor on or after the Petition Date at any Bank shall similarly be subject to the rights and obligations of this Final Order.

9.    The Debtor and the Cash Management Banks and Wells Fargo Bank (in connection with the continued use of credit cards) and U.S. Bank (in connection with the use of the new Bank Cards) are hereby authorized to continue to perform pursuant to the terms of any pre-petition agreements that may exist between them, except to the extent otherwise directed by the terms of this Final Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to authorize such performance. The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, except to the extent modified by the terms of this Final Order or by operation of the provisions of the Bankruptcy Code other than section 362.

10.    Except as provided in this Final Order, the Debtor is authorized to continue to use its existing business forms and stationery without alteration or change.

11. The Debtor shall take the following actions, as requested by the U.S. Trustee and in an effort to resolve, in part, the U.S. Trustee Objections:

      a. Close its Segal Bryant investment account and provided proof of same to the U.S. Trustee following such closure;

      b. Close the FRB account (#9117) and provided proof of same to the U.S. Trustee following such closure; and

      c. Have each of Bank of America, City National Bank, Bridge Bank, FRB, and CB&T designate the Debtor's respective bank accounts at these institutions as "Debtor in Possession" accounts and provide proof of same to the U.S. Trustee following such designation.

12. The Debtor has represented that it has taken the actions identified in Paragraph 11 hereof. If these reported tasks have not been completed to the U.S. Trustee's satisfaction by November 15, 2023, the Debtor shall meet and confer with the U.S. Trustee as to the status and expected timing of completion and either the Debtor or the U.S. Trustee may raise any issues related to the closure or "Debtor in Possession" designation of the Debtor's bank accounts with the Court.

13. The Debtor shall institute systems to regularly "sweep" funds as follows:

      a. Funds from the FRB brokerage account (#0589) into a debtor in possession account at an authorized depository for the Northern District of California, on a regular basis;

      b. Any funds in excess of $250,000 from the Debtor's bank account at Bank of San Francisco into a debtor in possession account at an authorized depository for the Northern District of California, on a daily basis; and

      c. Funds from the BofA Securities Account (#9371) to the associated BofA Investment Account.

14. Except as otherwise set forth in this Final Order, the Debtor is authorized to continue its current investment practices as described in the Motion and related pleadings, including but not limited to the use of the BofA Securities Investment Account, the Investment Pool Checking Account, the Restricted Donations Account, and the Stock Transfer Account. In connection with the foregoing, the Debtor is authorized to maintain the BofA Securities Investment Account #9371

that is tied to the BofA Securities Investment Account without converting or designating such account as a "Debtor in Possession" account.

15.     Neither this Final Order, nor the Debtor's payment of any amounts authorized by this Final Order, shall: (i) result in any assumption of any executory contract by the Debtor; (ii) result in a commitment to continue any plan, program, or policy of the Debtor; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtor.

16.     In granting the Motion, the Court is not making any findings or determinations as to what is or is not property of the estate. Nothing herein constitutes judicial approval or disapproval, or judicial determination, of what assets are or are not restricted or held in trust or property of the estate or what expenditures are reasonable or appropriate.

17.     The Debtor is excused from redesignating the Additional Bank Accounts and Supplemental Additional Bank Accounts as debtor in possession accounts and complying with the requirements of section 345(b) as to the Additional Bank Accounts and Supplemental Additional Bank Accounts.

18.     Notwithstanding the relief granted in this Final Order, all rights of the U.S. Trustee, any statutory committee(s) appointed in this Bankruptcy Case, or any other party in interest, including any right under section 345(b) of the Bankruptcy Code, to object or otherwise challenge the proposed treatment of the BofA Investment Account and the Investment Pool Account invested with fund managers in separate custodial accounts with U.S. Bank, are reserved.

19.     To the extent the fourteen-day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Final Order, such stay is hereby waived.

20.     Nothing in this Final Order authorizes the Debtor to make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise.

21.     The Debtors are authorized to take the actions necessary to effectuate the relief granted in this Final Order.

22.     The Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Interim Order.

APPROVED AS TO FORM:

Dated: ~~October 31,~~December ____, TRACY HOPE DAVIS, UNITED STATES TRUSTEE FOR
2023                                                    REGION 17

                                    By  _____
                                        ~~/s/ Jason Blumberg~~
                                        JASON BLUMBERG
                                        Trial Attorney for the United States Trustee

Dated: ~~October 31,~~December ____, PACHULSKI STANG ZIEHL & JONES LLP
2023

                                    By  _____
                                        ~~/s/ John W. Lucas~~
                                        JAMES I. STANG
                                        DEBRA I. GRASSGREEN
                                        JOHN W. LUCAS
                                        Proposed Attorneys for the Official Committee of
                                        Unsecured Creditors

                                        *** END OF ORDER ***

**Exhibit B**

**[Proposed] Order Authorizing U.S. Bank N.A. Bank Card Program**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and<br>Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**[PROPOSED] ORDER AUTHORIZING U.S. BANK N.A. BANK CARD PROGRAM**<br><br>Date:     January 11, 2024<br>Time:    1:30 p.m.<br>          Via ZoomGov<br>Judge:   Hon. Dennis Montali |

Upon consideration of the motion (the "Modification Motion") for entry of an order (this "Order") authorizing the Debtor to open and maintain a Bank Card[1] account program with U.S. Bank N.A. ("U.S. Bank") and execute any agreements related thereto; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; this is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having considered the Modification Motion, the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and First Day Motions,* the *Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and First Day Motions*, the *Declaration of Joseph J. Passarello in Support of the Cash Management Motion*, the *Supplemental Declaration of Joseph J. Passarello in Support of the Cash Management Motion,* the *Second Supplemental Declaration of Joseph J. Passarello in Support of the Debtor's the Cash Management Motion,* the *Third Supplemental Declaration of Joseph J. Passarello in Support of the Debtor's the Cash Management Motion,* and the *Declaration of Michael Flanagan* filed in support of the Modification Motion all exhibits filed in support of the Motion, and the representations made by counsel at the

---

[1] Capitalized terms shall have the meaning as defined in the Modification Motion.

1  hearing as reflected in the record of the hearing; the Court having found that the relief requested in

2  the Modification Motion is in the best interests of the Debtor's estate, its creditors, and other parties

3  in interest; and it appearing that notice of the Modification Motion and the opportunity for a hearing

4  on the Modification Motion was appropriate under the particular circumstances; and good cause

5  appearing therefor;

6      **IT IS HEREBY ORDERED THAT:**

7      1.      The Modification Motion is hereby GRANTED as set forth herein.

8      2.      The Debtor is authorized to open, maintain, and perform the Bank Card account

9  program with U.S. Bank and execute any agreements related thereto.

10      3.      The Debtor is authorized to take all actions necessary to effectuate the relief granted

11  in this Order in accordance with the Modification Motion.

12      4.      The Court shall retain jurisdiction over any and all matters arising from the

13  interpretation or implementation of this Order.

14  APPROVED AS TO FORM:

15

16  Dated: January ___, 2024          TRACY HOPE DAVIS, UNITED STATES TRUSTEE FOR
                                      REGION 17

17

18                                    By _____

19                                       JASON BLUMBERG
                                         Trial Attorney for the United States Trustee

20  Dated: January ___, 2024          PACHULSKI STANG ZIEHL & JONES LLP

21

22                                    By _____

23                                       JAMES I. STANG
                                         DEBRA I. GRASSGREEN

24                                       JOHN W. LUCAS
                                         Proposed Attorneys for the Official Committee of

25                                       Unsecured Creditors

26          **\*\*\* END OF [PROPOSED] ORDER \*\*\***

27

28

1                                             <u>Court Service List</u>

2                                             ECF Participants