1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD WILLOUGHBY
3    PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA  95814
   Telephone:      (916) 329-7400
5  Facsimile:      (916) 329-7435
   Email:          ppascuzzi@ffwplaw.com
6                  jrios@ffwplaw.com
7                  tphinney@ffwplaw.com

8

9  ORI KATZ, State Bar No. 209561
   ALAN H. MARTIN, State Bar No. 132301
10 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
11   Including Professional Corporations
   Four Embarcadero Center, 17th Floor
12 San Francisco, California 94111-4109
   Telephone:      (415) 434-9100
13 Facsimile:      (415) 434-3947
   Email:          okatz@sheppardmullin.com
14                 amartin@sheppardmullin.com

15 Attorneys for The Roman Catholic Archbishop of
   San Francisco
16
                 UNITED STATES BANKRUPTCY COURT
17
        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
18

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **DECLARATION OF MICHAEL FLANAGAN IN SUPPORT OF MOTION TO MODIFY FINAL ORDER (1) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; (2) AUTHORIZING MAINTENANCE OF EXISTING BUSINESS FORMS, (3) EXCUSING COMPLIANCE WITH SECTION 345(b); AND (4) AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY; OR, IN THE ALTERNATIVE, AUTHORIZING U.S. BANK N.A. BANK CARD PROGRAM** |

1

| | |
|---|---|
| Date: | January 11, 2024 |
| Time: | 1:30 p.m. |
| | Via ZoomGov |
| Judge: | Hon. Dennis Montali |

I, Michael Flanagan, declare as follows:

1. I am the Chief Financial Officer ("CFO") of The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession herein ("RCASF" or the "Debtor"). I have been the CFO of the RCASF since September 8, 2023. Prior to that, I had been a Vice President in the investment banking division at Goldman Sachs & Co. LLC, where I focused on mergers & acquisitions as well as capital raising alternatives. I have a Master of Business Administration from the University of Chicago Booth School of Business and a Bachelor of Business Administration from the University of Notre Dame. In the course and scope of my duties as CFO, I am familiar with the record keeping practices and policies of the RCASF and how it regularly maintains its business records.

2. I make this declaration (the "Second Supplemental Declaration") in support of the *Debtor's Motion to Modify Final Order (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance With Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; or, in the Alternative, Authorizing U.S. Bank N.A, Bank Card Program* (the "Modification Motion"). I give capitalized terms not otherwise defined in this Declaration the same meanings ascribed to them in the Modification Motion.

3. All facts set forth in this declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by the RCASF's professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to the RCASF's operations, financial condition, and related business issues. The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of the RCASF, prepared and maintained in the ordinary and regularly conducted business activity of the RCASF, and used

by me for those purposes. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the RCASF.

4. Wells Fargo Bank has informed the Debtor that it will terminate the Debtor's continued use of its credit cards no later than February 10, 2024.[1]

5. As explained in the Cash Management Motion and supporting Declaration of Joseph Passarello, the Debtor uses a credit card or bank card to effectively and efficiently perform its operations. Such bank cards are used, for example, in the ordinary course of business, to make disbursements to trade vendors and service providers, and by employees for approved expenses.

6. To replace the Wells Fargo credit cards, U.S. Bank has agreed to provide the Debtor with a new bank card program ("Bank Cards") which will work similar to a debit card and include the following terms:

> i. Establishment of a master Bank Card account in the name of the Debtor that may be used by the Debtor to process payments up to the amount of funds provided by the Debtor to fund the account in advance. Advance deposits can be made in any amount, at any time, as often as needed. The Debtor anticipates that it will initially fund the account with approximately $75,000 to $100,000 and replenish the account as funds are disbursed to pay for charges, and the Debtor agrees to limit the Debtor's pre-funded balance for its Bank Card account to a cap of $200,000 absent further order of the Court.

> ii. The funds advanced by the Debtor to U.S. Bank will not be held in a Debtor deposit account. Rather, the Debtor's advance of funds will provide pre-funded credit for use by the Debtor on its Bank Card for its account.[2]

---

[1] Wells Fargo Bank has elected to discontinue the Debtor's credit card program for business reasons and complexities related to the Debtor's bankruptcy case and not for any monetary default or improper conduct by the Debtor.

[2] Since the Bank Card account will not be a "deposit account" and is not available for any use other than the Bank Cards, it does not fall under the terms of coverage by the FDIC.

iii. The Debtor has the potential to earn rebates from U.S. Bank depending on the amount of funds expended on the Bank Card. These potential rebates would start at 0.9% depending on the amount of funds expended and the nature of the charged expenditures.

iv. Availability for the Debtor's non-debtor affiliated entities (the "Participants") to establish separate sub-accounts in the name of each Participant for Bank Cards to be issued to the respective Participants to the extent of funds provided by each Participant in their respective sub-accounts. Approximately 35-40 non-Debtor affiliated entities participated in the Wells Fargo credit card program. The Debtor anticipates that these same affiliated entities and other non-debtor affiliated entities will participate in the U.S. Bank Card program. Participants will establish separate sub-accounts in the name of each Participant.

v. Protections for the Debtor's estate via terms including, (i) limiting the use of the Bank Cards to the funds provided by the Debtor and each Participant, respectively, and (ii) Bank Cards may only be used for funds provided by the account holder for each respective account. As such, the Participants will only have access to the funds provided for their respective sub-accounts and will not have access to the funds provided by the Debtor for the Debtor's Bank Card account.

vi. Since use of the Bank Cards is limited to the amount of funds provided, the Debtor will not incur interest charges or any annual card fees. Any incurred fees are expected to be minimal and would be based upon certain special circumstances or features such as a default, electronic attachment utility, logo embossing, or customized cards.

vii. The card program can be closed at any time at the Debtor's written request.

viii. There is no additional cost to the Debtor for the establishment of each Participant's sub-account. However, since the Debtor is the master account holder, the account agreements provide that the Debtor shall be responsible for any unpaid charges by a Participant. This risk is very low since the Participants will be instructed to manage their own accounts, and as noted above, each Participant will be required to post their own funds for use from each Participant's sub-account, each Participant's Bank Cards can only be used

to access the available funds in each Participant's respective sub-account, and the Bank Card system is designed to limit any charges to the amount of funds available in each respective account.

7. The Debtor explored alternatives such as using a Debtor In Possession account with an associated credit card. However, this program would have required the Debtor to advance a minimum collateral deposit of approximately $650,000. The Bank Card system does not require any minimum balance (other than $1.00 to activate). Additionally, the cards are issued under separate names/accounts for the Debtor and each Participant, making for an effective system with flexible advance funding that each entity can manage.

8. Under the circumstances, I believe that the Debtor has sound business reasons for pursuing the U.S. Bank Card program. The Debtor requires the use of bank issued cards to conduct its business. The proposed Bank Card program with U.S. Bank provides a practical, cost-effective solution to the existing Wells Fargo credit cards. In particular, the Debtor and each Participant will have their own separate account numbers. Thus, the Bank Cards will be issued separately based upon the respective accounts and limited to use only to the funds posted to the account for which the Bank Card has been issued. Moreover, the Bank Cards do not have any minimum prefunding balance which gives the Debtor the flexibility to manage its account balance at amounts reasonably necessary to cover anticipated Bank Card expenses, and the Debtor will have the potential to earn cash rebates based upon the amount of the expenditures on the Bank Cards. Finally, since the Bank Cards are pre-funded and limited in availability to the amount of funds posted, the Bank Cards will not incur high interest rate charges like the Wells Fargo credit cards could have incurred.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 21, 2023 at San Francisco, California.

_____
Michael Flanagan