Christina L. Goebelsmann, Assistant United States Trustee
State Bar No. CA 273379
Jason M. Blumberg, Trial Attorney
State Bar No. 330150
Jared A. Day, Trial Attorney
State Bar No. CA 275687
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
450 Golden Gate Avenue, Room #05-0153
San Francisco, California 94102
Telephone: (775) 784-5530
Fax: (775) 784-5531
E-mail: *jared.a.day@usdoj.gov*

Attorneys for the U.S. Trustee for Region 17
    TRACY HOPE DAVIS

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>               Debtor. | Case No: 23-30564 DM<br><br>Chapter 11<br><br><br><br>Date: January 25, 2024<br>Time: 1:30 p.m.<br>Place: Via Zoom Webinar or Telephone |

**UNITED STATES TRUSTEE'S MOTION FOR ORDER APPOINTING**
**FEE EXAMINER AND ESTABLISHING PROCEDURES FOR REQUESTING**
**PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES**

    Tracy Hope Davis, United States Trustee for Region 17 (the "United States Trustee"), by

and through her undersigned counsel, hereby moves the Court for an *Order Appointing a Fee*

1

*Examiner and Establishing Procedures for Requesting Professional Compensation and Reimbursement of Expenses* (the "Motion").[1]

The United States Trustee moves for the appointment of a fee examiner in order to ensure greater transparency and accountability over the fees billed by professionals in this case, which is of particular importance due to the complexity of this case, the expected magnitude of those fees, and the heightened public attention that this case is likely to attract. The United States Trustee further recommends that either Lori Lapin Jones ("Ms. Jones") of Lori Lapin Jones PLLC or Elise S. Frejka ("Ms. Frejka") of Frejka PLLC be appointed as the fee examiner. This recommendation is supported by the declarations and curricula vitae of Mses. Jones and Frejka, which are attached hereto as Exhibit A. The proposed forms of order for their appointments are attached hereto as Exhibit B.

## I.    INTRODUCTION

The United States Trustee respectfully requests that the Court appoint a fee examiner to provide substantive analysis of the fee requests filed by the numerous estate-paid professionals whose retention has been authorized by the Court in this case or are the subject of pending or forthcoming retention applications. Given the magnitude of this chapter 11 case and the number of retained professionals who will apply to this Court for compensation, scrutiny of professional fees will be challenging. To meet these challenges and to ensure that all professional fee requests meet applicable Bankruptcy Code and Rule requirements, the Court should appoint a fee

---

[1] Hereinafter, all references to "section" in the Motion are to provisions of the Bankruptcy Code, 11 U.S.C. section 101 *et. seq.*, unless otherwise indicated. All references to "Fed. R. Bankr. P." are to the Federal Rules of Bankruptcy Procedure.

Case: 23-30564    Doc# 389    Filed: 12/21/23    Entered: 12/21/23 21:51:50    Page 2 of 44

examiner.  In addition, given the sensitive nature and public interest in the case, the appointment of a fee examiner will help ensure public confidence in the bankruptcy system.

## II.     MEMORANDUM OF POINTS AND AUTHORITIES

### A.     <u>Background & Procedural Posture</u>

1.     On August 21, 2023, The Roman Catholic Archbishop of San Francisco (the "Debtor") commenced the above-captioned case under chapter 11 of the Bankruptcy Code.  *See* ECF No. 1.[2]  No chapter 11 trustee has been appointed, and the Debtor is currently operating as a debtor in possession under sections 1107 and 1108.

2.     An Official Committee of Unsecured Creditors (the "OCUC") was appointed by the United States Trustee on September 1, 2023.  *See* ECF No. 58.

3.     The meeting of creditors under 11 U.S.C. § 341 is scheduled for September 28, 2023.  *See* ECF No. 55.

4.     According to the first day declaration of Joseph J. Passarello (*see* ECF No. 14) (the "First Day Declaration"), the Debtor was incorporated as a California corporation sole in 1854 and "consists of approximately 442,000 Catholics in the counties of San Francisco, San Mateo, and Marin covering approximately 2,325 square miles."  *See* First Day Declaration, at ¶ 14.  There are 88 parishes within the archdiocese.  *Id*.  The parishes are "unincorporated associations" under California law.  *Id.*, at ¶ 18.

5.     In 2007, the Debtor created two support corporations—known as "CASC" and "RPSC"—to "own and maintain certain capital assets and real properties so that the civil structure of asset ownership conforms closely with Canon Law and historical practice, and to

---

[2] "ECF No." refers to the bankruptcy docket for the above-captioned chapter 11 case.

support the mission of Parishes, Schools and Cemeteries." *See* First Day Declaration, at ¶¶ 21-28. According to the First Day Declaration, there are "approximately 537 separate, active lawsuits pending against the Debtor filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor." *See* First Day Declaration, at ¶ 53.[3]

**B.      The Estate-Paid Professionals**

6.      Following the filing, the Debtor employed the following professionals:

   a.      Felderstein Fitzgerald Willoughby Pascuzzi & Rios, LLP, as general bankruptcy counsel;

   b.      Sheppard, Mullin, Richter & Hampton, as general bankruptcy counsel;

   c.      Weinstein & Numbers, LLP, as insurance counsel;

   d.      Weintraub Tobin, as special corporate and litigation counsel;

   e.      Glassratner Advisory & Capital Group, LLC dba Riley Advisory Services, as financial advisor; and

   f.      Omni Agent Solutions, Inc., as administrative agent.

7.      In addition, the OCUC has employed the following professionals:

   a.      Pachulski Stang Ziehl & Jones LLP, as general bankruptcy counsel;

---

[3] The United States Trustee requests that the Court take judicial notice of the Debtor's Petition, Schedules, SOFA, and other documents filed therewith, and any amendments thereto which are in the Court's file in this case pursuant to Fed. R. Evid. 201, as made applicable by Fed. R. Bankr. P. 9017. The information contained in these documents, signed under penalty of perjury by the Debtor, are admissions of the Debtor pursuant to Fed. R. Evid. 801(d).

b.      Berkeley Research Group, LLC, as financial advisor; and

c.      Burns Bair LLP, as special insurance counsel.

8.      It appears that the Debtor and/or the OCUC may be in the process of filing additional retention applications for additional professionals.  *See* ECF Docket *generally*.

9.      The Court granted the various professionals' motion to establish interim compensation procedures (the "Interim Compensation Order") on October 16, 2023.  *See* ECF No. 212.

10.      Prior to filing this Motion, the United States Trustee conferred with general bankruptcy counsel for the Debtor and the OCUC regarding the relief sought, the selection of a specific fee examiner, and the proposed form of order.  The United States Trustee is informed that the Debtor and the OCUC were unable to reach an agreement regarding one specific candidate.  Therefore, the United States Trustee recommends that the Court appoint either Ms. Jones or Ms. Frejka as the fee examiner in this case.

### III.    JURISDICTION AND STANDING

11.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 158(a), (b)(1), and 1334.

12.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

13.      Pursuant to 28 U.S.C. § 586, the United States Trustee is generally charged with overseeing the administration of chapter 11 cases filed in this District.

14.      Under sections 307 and 586 of the Bankruptcy Code, Congress charged the United States Trustee with broad responsibilities in chapter 11 cases and standing to raise and be heard on any issue in any case or proceeding.  Under the law of this circuit, the United States

Case: 23-30564   Doc# 389   Filed: 12/21/23   Entered: 12/21/23 21:51:50   Page 5 of 44

Trustee may be heard on any issue in any bankruptcy case or proceeding. *Stanley v. McCormick, Barstow Sheppard, Wayte & Carruth (In re Donovan)*, 215 F.3d 929, 930 (9th Cir. 2000) (internal quotations and citations omitted). *See also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (the United States Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

## IV.     AUTHORITIES & DISCUSSION

### A.     The Appointment of Fee Examiners Generally.

15.     Section 330(a)(3) of Title 11 sets forth the standards for authorizing compensation to professionals retained in bankruptcy cases:

> In determining the amount of reasonable compensation to be awarded…the court shall consider the nature, the extent, and the value of such services, taking into account all factors, including—
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person … has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

6

11 U.S.C. § 330(a)(3). The United States Trustee is charged with reviewing fee applications and commenting when appropriate. *See* 28 U.S.C. § 586(a)(3)(A). The Court also has responsibility to review applications for compensation and reimbursement of expenses and to enter appropriate Orders on them. *See* 11 U.S.C. § 330 *generally*; *see also In re Auto Parts Club, Inc.*, 211 B.R. 29, 33 (9th Cir. BAP 1997) (citing *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994)) ("[t]he bankruptcy court has a duty to review fee applications notwithstanding the absence of objections by the trustee, debtor, or creditors").

16. In complex cases, bankruptcy courts have appointed fee examiners pursuant to section 105 of the Bankruptcy Code. The role of a fee examiner is different from that of an examiner appointed under 11 U.S.C. § 1104(c) who is charged with conducting "an investigation of the debtor as is appropriate." 11 U.S.C. § 1104; *see also In re Collins & Aikman Corp.*, 368 B.R. 623, 625-27 (Bankr. E.D. Mich. 2007).

17. Fee examiners or fee review committees have been appointed in many significant and complex bankruptcy cases, including but not limited to, *In re PG&E Corporation*, Docket No. 2267, Case No. 19-30088-dm (Bankr. N.D. Cal.); *In re Energy Future Holdings*, Docket No. 1896, Case No. 14-10979-CSS (Bankr. Del.); *In re Budd Company*, Docket No. 346, Case No. 14-11873-jbs (Bankr. N.D.IL.); *In re Mineral Park*, Docket No. 274, Case No. 14-11996-kjc (Bankr. Del.); *In re Exide Technologies*, Docket No. 1283, Case No. 13-11482-kjc (Bankr. Del.); *In re AMR Corp.*, Docket No. 2897, Case No. 11-15463-shl (Bankr. S.D.N.Y.); *In re Motors Liquidation (f/k/a General Motors)*, Docket No. 4708, Case No. 09-50026-reg (Bankr. S.D.N.Y.); *and In re Lehman Brothers Holdings*, Docket No. 3651, Case No. 08-13555-scc (Bankr. S.D.N.Y.).

7

**B.** **The U.S. Trustee Believes the Appointment of a Fee Examiner Is Appropriate in this Case.**

18.     Given the size and complexity of this chapter 11 case, the United States Trustee requests that the Court authorize the appointment of a fee examiner to review and report on as appropriate all interim and final applications for allowance of compensation and reimbursement of expenses filed by professionals retained under sections 105, 327, or 1103 of the Bankruptcy Code or similar authority (the "Retained Professionals"), in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (collectively, the "Applications").

19.     The appointment of a fee examiner will promote consistency, predictability, and transparency when the Retained Professionals file their Applications.    In addition, all parties will maintain their rights to review and contest any of the Applications and, considering the sensitive nature and public interest in the case, the appointment of a fee examiner will help ensure public confidence in the bankruptcy system.  *Cf., In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (where debtor's business affects a large segment of the general public, consideration of public interest becomes an important factor in deciding to appoint trustee).

**C.** **The Duties of a Fee Examiner**

20.     The United States Trustee requests that any order authorizing the appointment of a fee examiner impose upon the candidate the duty to:

   a.     Review and assess all Applications filed by the Retained Professionals, and the fees and reimbursement of expenses for which allowance is sought pursuant to the Applications, for compliance with: (i) Bankruptcy Code Sections 328, 329, 330, and 331, as applicable; (ii) Fed. R. Bankr. P. 2016; (iii) the Interim Compensation Order; (iv) the United

8

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses, 28 C.F.R. Part 58, Appendix A and Appendix B (the "Guidelines"); and (v) the United States Bankruptcy Court for the NDCA Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees (the "NDCA Guidelines");

b. Review the Applications filed by each Applicant in this chapter 11 Case (along with the fee detail related thereto), and to the extent possible, the fee examiner shall avoid duplicative review;

c. During the course of their review of an Application, consult, as they deem appropriate, with each Applicant concerning such Application;

d. During the course of their review of an Application, review, to the extent appropriate, any relevant documents filed in this chapter 11 case to be generally familiar with this chapter 11 case and the associated public docket;

e. Within thirty (30) days after an Applicant files an Application (or such greater time as the Applicant and fee examiner agree), serve an initial report (the "Initial Report") on the Applicant designed to quantify and present factual data relevant to whether the requested fees, disbursements, and expenses are in compliance with the applicable standards of sections 328, 329, 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and whether the Applicant (if required) has made a reasonable effort to comply with the United States Trustee's requests for information and additional disclosures as set forth in the Guidelines and NDCA Guidelines;

f. During the period between service of the Initial Report and filing of the Final Report (as defined below), engage in written communication with each Applicant, the objective of which is to resolve matters raised in the Initial Report and to endeavor to reach consensual resolution with each Applicant with respect to that Applicant's requested fees and expenses, in furtherance of which the Examiner may also use the resolution process to revise findings contained in the Initial Report, and each Applicant may provide the fee examiner with written supplemental information that the Applicant believes is relevant to the Initial Report;

g. Following communications between the fee examiner and the Applicant and the fee examiner's review of any supplemental information provided by such Applicant in

9

response to the Initial Report, conclude the informal resolution period by filing with this Court a report with respect to each Application (the "Final Report") within twenty-one (21) days after the service of the Initial Report, which shall be in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of each Applicant are in compliance with the applicable standards of section 330 of the Bankruptcy Code and Bankruptcy Rule 2016, and whether the Applicant has made a good faith reasonable effort to comply with the Guidelines and the NDCA Guidelines; and

h.   Serve each Final Report on counsel for the Debtor, counsel for the OCUC, the United States Trustee, and each Applicant whose fees and expenses are addressed in the Final Report.

**D.   The Authority of a Fee Examiner**

21.   The United States Trustee also requests that any Court order appointing a fee examiner also authorize the fee examiner to:

a.   File comments on the public docket of the Court regarding any Application by a Retained Professional;

b.   Communicate their concerns regarding any Application to the Retained Professionals to whom such Application pertains, and to request further information as appropriate;

c.   Request Retained Professionals to provide budgets, staffing plans, or other information to the fee examiner;

d.   Establish procedures for the resolution of disputes with Retained Professionals;

e.   Recommend procedures to facilitate the preparation and review of Applications;

f.   Appear and be heard on any matter before the Court;

g.   File and litigate objections to the allowance of any Application;

h.   Take, defend, or appear in any appeal regarding any Application;

i.   Conduct discovery; and

j.   Retain, subject to Court approval, professionals (including attorneys and auditors) to represent or assist the fee examiner in connection with any of the foregoing under standards analogous to section 327 and to be compensated under

10

standards analogous to sections 330 and 331.

22.     The United States Trustee further requests that any order appointing a fee examiner provide that the Debtor, the OCUC, the United States Trustee, and all Retained Professionals shall cooperate with the fee examiner in the discharge of the fee examiner's duties and shall promptly respond to any reasonable requests for information or communications from the fee examiner.

### E.     Compensation of the Fee Examiner

23.     The United States Trustee requests that any order appointing a fee examiner provide that the fee examiner and any professionals retained by the fee examiner shall be entitled to reasonable compensation from the estate for reasonable and necessary fees and expenses.  Any such requests for compensation shall be made by application to the Court and shall be allowed according to the same standards and procedures that apply to the Retained Professionals.

24.     Should the Court decide to adopt the United States Trustee's recommendation and order the appointment of either Ms. Jones or Ms. Frejka as the fee examiner in this case, the supporting declaration of Ms. Jones proposes a compensation structure of $450/hour, representing a discount in her regular hourly rate, and reimbursement of actual expenses.  *See* Exhibit A.  In addition, Ms. Jones intends to utilize the services of database service provider, National CRS, LLC, at an hourly rate of $275.  *Id.*  Ms. Jones does not currently seek the assistance of a fee reviewer but reserves all rights in that regard.  *Id.*

25.     The supporting declaration of Ms. Frejka proposes a compensation structure of $625/hour and reimbursement of actual expenses.  *Id.*  Ms. Frejka anticipates seeking the retention of local counsel to advise her with respect to local practice and procedure and would

11

select a small local firm to perform these services. *Id.* In addition, Ms. Frejka may similarly employ a database service provider depending on the magnitude of fee examiner services required in this case. *Id.*

### F. Immunity of the Fee Examiner

26. The United States Trustee further requests that any order authorizing the appointment of a fee examiner provide that the fee examiner is appointed as an officer of the Court, and the fee examiner along with those employed or paid by them with respect to the appointment, shall be given the maximum immunity permitted by law from civil actions with respect to the performance of the duties set forth herein.

### G. Appointment of a Chapter 11 Trustee

27. Finally, the United States Trustee requests that any order authorizing the appointment of a fee examiner provide that in the event a chapter 11 trustee is appointed in this case, such appointment will not terminate or otherwise modify the duties and responsibilities of the fee examiner. Rather, the fee examiner's appointment shall only be terminated or otherwise modified by entry of an order of the Court.

### H. Proposed Modifications to the Interim Compensation Order

28. Should the Court find that the appointment of a fee examiner is warranted under the circumstances, the United States Trustee requests entry of an order submitted herewith that will supplement the Interim Compensation Order previously entered in this case.

/ / /

12

### V.     CONCLUSION

WHEREFORE, the United States Trustee requests that the Court enter an order appointing Ms. Jones, Ms. Frejka, or another qualified individual as a fee examiner in this case subject to the terms herein and for such other relief as the Court deems appropriate.


Date: December 21, 2023                      Respectfully Submitted,

                                             TRACY HOPE DAVIS
                                             UNITED STATES TRUSTEE

                                   By:       */s/ Jared A. Day*
                                             Jared A. Day
                                             Trial Attorney for the United States Trustee

13

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

The Roman Catholic Archbishop of San
Francisco,

                    Debtor and
                    Debtor in Possession.

_____

Case No.: 23-30564
Chapter 11

## DECLARATION OF DISINTERESTEDNESS
## OF LORI LAPIN JONES, ESQ.

I, Lori Lapin Jones, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

*Background*

1.      I am an attorney in good standing admitted to practice in the State of New York, and in the United States District Courts for the Southern District of New York and the Eastern District of New York.

2.      I have been practicing law since 1982. Following a clerkship in the United States Bankruptcy Court for the Southern District of New York for the Honorable Tina L. Brozman, I spent seventeen years in private practice working on large bankruptcy and restructuring cases at two New York City law firms. In 2005, I founded Lori Lapin Jones PLLC where my practice has focused on fiduciary work in the bankruptcy field. I am a member of the panel of Chapter 7 trustees for the Eastern District of New York and Southern District of New York, and I have served or currently serve in other fiduciary capacities including as Chapter 11 trustee, examiner, mediator, federal court receiver, and post-confirmation plan administrator.

3.      I have served as the Independent Fee Examiner in the chapter 11 cases of *Voyager Digital Holdings, Inc*., *et al.* (S.D.N.Y.). I am currently serving as a Fee Reviewer in the chapter 11 case of *Kidde-Fenwal, Inc*. (D. Del.) and have served as a Fee Reviewer in the chapter 11 cases of *Aearo Technologies LLC, et al.* (S.D. Ind..). I have also served as a fee consultant, and my firm, Lori Lapin Jones PLLC, has represented a fee examiner in a chapter 11 case in the United States Bankruptcy Court for the Southern District of New York.

4.	I am a Fellow of the American College of Bankruptcy (Co-Chair of the Education Committee for the Second Circuit), a member of the Second Circuit Judicial Council Committee on Civic Education & Public Engagement, and a member of the Chapter 11 Lawyers' Advisory Committee for the Eastern District of New York (Vice Chair 2014-2018).

*Disinterestedness*

5.	I submit this Declaration to establish that I am a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) ("Bankruptcy Code") to serve as Fee Examiner in the chapter 11 case of *The Roman Catholic Archbishop of San Fransisco* ("Debtor"). Unless otherwise stated, I have personal knowledge of the facts set forth herein.

6.	I have reviewed the Debtor's schedules, statement of financial affairs, docket, and claims register (each as may be redacted on the docket).

7.	With respect to my "disinterestedness" under Section 101(14) of the Bankruptcy Code, I provide the following information:

   a.	I am not, nor have been, during the pendency of this chapter 11 case, a creditor, equity security holder or insider of the Debtor.

   b.	I am not, nor have been, a director, officer, or employee of the Debtor.

   c.	I do not have an interest materially adverse to the interests of the bankruptcy estate or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

   d.	I am not a relative of any Bankruptcy Judge of the United States Bankruptcy Court for the Northern District of California, the United States Trustee or any person employed by the United States Trustee.

   e.	I have not and do not represent the Debtor or its affiliates, if any. I have not and do not represent any party in interest in connection with the Debtor's chapter 11 case. Except as set forth below, I do not have any connection with any of the creditors or other parties-in-interest or their respective attorneys, financial consultants, or accountants that are included on the Debtor's petition or shown on the Court's docket.

      i.	In my past, current or future roles as chapter 7 trustee, chapter 11 trustee, post-confirmation trustee, examiner, mediator, fee examiner, fee reviewer, or other fiduciary in other cases, I may have had, may have and may in the future have interactions and connections with parties-in-interest and professionals retained by parties-in-interest, but any such interactions and connections would be in cases unrelated to the Debtor's case, and Lori Lapin Jones PLLC has not represented any of the parties-in-interest or their professionals.

*Compensation and Staffing*

8.      My hourly rate is $650.00. I have agreed to a discount and will charge the estate an hourly rate of $450.00 for my services plus out-of-pocket disbursements. I understand that payment of my fees and expenses will be governed by the Order Establishing Procedures and Authorizing Payment of Professional Fees and Expenses on a Monthly Basis [ECF No. 212] and I will file interim and final applications for compensation and reimbursement of expenses.

9.      I will be assisted in this engagement by National CRS, LLC ("NCRS"), a database service provider who will input the time records of the professionals in proprietary software that will allow me to efficiently analyze, navigate, and search the time records. NCRS has substantial experience working with fee examiners and will charge an hourly rate of $275.00. If I needed the additional assistance of a fee reviewer, the hourly rate charged would be $325.00 (or less). Detailed time records of NCRS and a fee reviewer (if any) would be included in my monthly fee statements and fee applications. There would be no mark up and neither I nor Lori Lapin Jones PLLC would profit from these charges.

10.    Except as permitted under Section 504 of the Bankruptcy Code (and as detailed above), I will not share any compensation or reimbursement received in connection with this chapter 11 case with another person.

11.    If I discover any facts materially bearing on the matters described herein, I will supplement the information contained in this Declaration.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 6th day of December 2023

/s/ Lori Lapin Jones
Lori Lapin Jones

**LORI LAPIN JONES PLLC**
**98 Cutter Mill Road - Suite 255 South**
**Great Neck, New York 11021**
**Telephone: (516) 466-4110**
**Facsimile: (516) 466-4009**
**ljones@jonespllc.com**

Lori Lapin Jones began her legal career as a staff attorney in the Manhattan District Counsel's Office of the Internal Revenue Service (1982-1985) following which she served as a law clerk to the Honorable Tina L. Brozman, United States Bankruptcy Judge for the Southern District of New York (1985-1987). After her clerkship, Jones spent seventeen years in private practice at the New York City law firms of Dewey Ballantine (1987-1991) and Luskin, Stern & Eisler LLP (1991-2004). In 2005, Jones formed Lori Lapin Jones PLLC and has devoted a significant part of her practice to fiduciary work. Jones serves as a Chapter 7 Trustee on the panel of Trustees for the Eastern and Southern Districts of New York and as a Court appointed mediator in those districts. She also serves or has served as a federal receiver, post-confirmation liquidation trustee, plan administrator, Chapter 11 operating trustee, examiner, fee examiner, and independent board member and is eligible to receive appointments as a New York State Part 36 Receiver. Jones has represented a wide variety of parties in out of court restructurings and in large and small Chapter 11 and Chapter 7 cases in courts around the country. She has represented debtor in possession lenders, secured and unsecured creditors, creditors' committees, indenture trustees, fee examiner, landlords, equipment lessors, purchasers of assets, trustees, and defendants in adversary proceedings.

Jones is a Fellow in the American College of Bankruptcy and Co-Chair of the Education Committee for the Second Circuit. She is a member of the Chapter 11 Lawyers' Advisory Committee for the Eastern District of New York (Vice Chair 2014-2018), a member of the Second Circuit Judicial Council Committee on Civic Education & Public Engagement, and a member of the SDNY/U.S. Trustee Liaison Group. Jones was a co-author of a column on bankruptcy law for the *New York Law Journal* (2005-2008) and a co-author of *Creditors' Committee Manual* (Warren Gorham & Lamont 1992). She serves as a frequent lecturer on bankruptcy law and has taught legal research and writing at New York Law School. Jones earned her LL.M. degree from New York University Law School and her law degree magna cum laude from Nova Southeastern University Shepard Broad Law Center.

Jones serves as the Vice Chairwoman of the Board of Directors for the Organization for Autism Research. She is the 2019 recipient of the Renaissance Award from the New York Institute of Credit. In 2011, Jones was recognized as one of the top 25 businesswomen of excellence by the National Association of Women Business Owners (Long Island chapter). In 2014, 2012 and 2009, Jones was named one of the Top 50 Most Influential Women in Business on Long Island by Long Island Business News.

December 2023

# LORI LAPIN JONES

**Experience**

Lori Lapin Jones PLLC (2005 – Present)
Great Neck, New York

Luskin, Stern & Eisler LLP (1991 - 2004)
New York, New York

Dewey Ballantine (1987 – 1991)
New York, New York

Law Clerk to the Honorable Tina L. Brozman (1985 – 1987)
United States Bankruptcy Court for the Southern District of New York

Office of the Chief Counsel/Internal Revenue Service (1982 – 1985)
Manhattan District Counsel's Office

Panel of Chapter 7 Trustees:
Eastern District of New York (Brooklyn) (2005 – Present)
Southern District of New York (Poughkeepsie) (2018 – Present)

Panel of Mediators – Southern and Eastern Districts of New York (Bankruptcy Courts)

New York State Part 36 Receiver – multiple counties

**Bar Memberships/Committees/Other**

State of New York (1985)
State of Florida (1982) (inactive)

United States Court of Appeals for the Second Circuit (1995)
United States District Court for the Southern District of New York (1986)
United States District Court for the Eastern District of New York (1987)
United States Tax Court (1982)

American College of Bankruptcy (2018 class of Fellows); Co-Chair, Education Committee for Second Circuit

Member, Chapter 11 Lawyers' Advisory Committee (E.D.N.Y.) (2013 – present; Vice Chair 2013-2018)

Member, Second Circuit Judicial Council Committee on Civic Education & Public Engagement (2015 – present)

**<u>Education</u>**

New York University School of Law
New York, New York
LL.M. (Corporation Law), May 1986

Nova Southeastern University Shepard Broad Law Center
Fort Lauderdale, Florida
J.D. *Magna Cum Laude*, May 1982 (Class Rank – 8th)

State University College at Oneonta
Oneonta, New York
B.S. Psychology (High Honors), May 1979

<u>**Lori Lapin Jones**</u>
<u>**Selected Appointments and Representations**</u>

<u>**Selected Fiduciary Appointments/Fiduciary Representations**</u>

<u>*Healthcare and Not For Profits*</u>

Temporary Receiver for <u>Narco Freedom, Inc.</u>
Appointed Temporary Receiver following indictments of company and executives and issuance of notice of intent to exclude company from Medicaid program. Assumed operational and financial control of $40 million not-for-profit organization with clinical operations (methadone maintenance treatment programs, primary and mental health clinics, and care coordination services) and housing operations (sixteen three quarter houses and three houses serving individuals with HIV/AIDS. Assessed financial and operational viability; converted three-quarter houses to Supported Living Residences; and developed transition and closure plans. Successfully transitioned clinical and housing operations to two not-for-profit providers and closed certain clinics all within a compressed time frame. Facilitated high percentage of continued employment for hundreds of employees. Engaged in post-transition and wind down work. Worked closely with federal, state and city agencies. (U.S. District Court S.D.N.Y. 2015-2016)

Chapter 11 Trustee for <u>Peninsula Hospital Center</u> and <u>Peninsula General Nursing Home</u>
Appointed operating Chapter 11 Trustee following laboratory suspension orders issued by the New York State Department of Health ("DOH"). Trustee obtained approval of DOH to operate the nursing home and obtained approval of the Public Health and Health Planning Council (PHHPC) to operate the hospital; assessed viability of hospital laboratory; prepared and implemented hospital Plan of Closure; conducted extensive machinery and equipment sale process; conducted wind down of hospital; developed and implemented medical records retention plan; operated 200 bed skilled nursing home for eleven months until implementation of receivership including operating nursing home through Superstorm Sandy; marketed hospital and nursing home and obtained approval of the Bankruptcy Court and PHHPC for sale; conducted extensive investigation of pre-petition and post-petition transactions which resulted in pre- and post-litigation multi-million dollar settlements; commenced and settled numerous avoidance actions. Appointed as Chapter 7 Trustee upon conversion and completed wind down through Chapter 7. (Bankruptcy Court E.D.N.Y. 2012-2020)

Chapter 11 Plan Administrator for <u>Long Beach Medical Center</u> and <u>Long Beach Nursing Home</u>
Appointed Plan Administrator following confirmation of Chapter 11 Plan. Implementing wind down of two not-for-profit debtors including: managing claims and distribution process; addressed post-sale issues with purchaser; addressing FEMA reconciliation matters; and general tasks associated with wind down. (Bankruptcy Court E.D.N.Y. 2017 - present)

Chapter 11 Plan Administrator for <u>Aguila Inc</u>
Following confirmation of a creditors' committee chapter 11 plan, appointed Plan Administrator of not-for-profit organization that provided shelter for homeless individual. Implementing wind down including: liquidated miscellaneous assets; managing claims reconciliation/objection process; addressing the collection of receivables from the City of New York; and general wind down tasks (Bankruptcy Court S.D.N.Y. 2022 – present)

Post-Confirmation Liquidation Trustee for North General Hospital, et al.
Directed and implemented the wind down of a hospital following confirmation of a Chapter 11 plan of liquidation. Collected private and government receivables; conducted claims reconciliation and objection process; pursued avoidance actions; sold miscellaneous assets; directed the vacatur of hospital premises; performed numerous tasks associated with a wind-down; and made distributions to all classes of creditors. (Bankruptcy Court S.D.N.Y. 2011-2018)

Represented Chapter 7 Trustee in Far Rockaway Nursing Home
Advised Trustee on financial, operational, and legal aspects as fiduciary of 100 bed skilled nursing home facility. Negotiated global settlement with feuding general partners, New York State Department of Health, 1199 union/funds and interested parties and obtained Bankruptcy Court and regulatory approvals of sale of facility. Creditors received a 100% distribution. (Bankruptcy Court E.D.N.Y. 2016-2018)

*Real Estate*

Chapter 11 Trustee for W133 Owner LLC
Appointed Chapter 11 Trustee in single asset real estate case consisting of a 46-unit condominium in New York City occupied by referrals from New York State Department of Social Services. Managed building for 14 months; addressed 421-a tax issues; conducted auction sale resulting in a $22 million credit bid; confirmed a chapter 11 plan with a 10% distribution to general unsecured creditors (Bankruptcy Court E.D.N.Y. 2020 - 2022)

Chapter 11 Trustee for 51 East 73rd Street LLC
Appointed Chapter 11 Trustee in single asset real estate case consisting of a large townhouse in New York City. Addressed tax issues; negotiated agreement with secured creditor; conducted auction sale of townhouse resulting in $25 million credit bid; confirmed chapter 11 plan with a 30% distribution to general unsecured creditors (Bankruptcy Court S.D.N.Y. 2020- 2022)

Chapter 11 Plan Administrator for EKD Realty LLC and Amadeus 140 LLC
Appointed by Bankruptcy Judge upon a default under a confirmed chapter 11 plan involving two buildings in New York City. Worked closely with lender; managed properties; collected rents; marketed and sold one building at public auction; second building refinanced; managed claims reconciliation and distributions. (Bankruptcy Court S.D.N.Y. 2017)

*Other Industries*

Post-Confirmation Liquidation Trustee for Orius Corporation, et al.
Companies emerged from chapter 11 as Orius Liquidation Trust. Directed litigations around the country; addressed run-off of millions of dollars of insurance claims; negotiated the elimination and reduction of letters of credit; pursued over 150 avoidance actions and ran day-to-day matters of a liquidating trust. (Bankruptcy Court N.D. Ill. 2007-2012)

Chapter 7 Trustee for Craft Retail Holdings Corp., et al. (Rag Shops)
Debtors comprised of over 60 stores on the east coast. Chapter 11 cases converted shortly after sale of leases and inventory. Implemented wind-down of companies including: negotiated cash collateral stipulation with lenders; reviewed liens and claims of second lender/equity holder; sold customer lists; liquidated miscellaneous assets; addressed vacating headquarters and 10,000 cartons of books and records; reconciled disposition of sale proceeds; negotiated and obtained Court approval of global settlement with second lender/equity holder; conducted claims process

and pursued more than 100 avoidance claims; made a 15% distribution to general unsecured creditors. (Bankruptcy Court E.D.N.Y. 2007-2013)

Chapter 7 Trustee for <u>General Fiber Communications, Inc., et al.</u>
Companies were national providers of services in the cable television industry with 42 leased locations in 20 states and over 1700 employees. Liquidated assets through three public auction sales and over sixty private sales; collected more than $5 million in accounts receivable; disposed of 1500 vehicles; communicated with former employees; conducted an investigation of debtors' pre-petition financial affairs, acquisitions and management; paid off first lender and negotiated global settlement with second lender/equity holder; pursued more than 100 avoidance claims; and managed comprehensive claims process which resulted in 60% and 24% distributions to general unsecured creditors in two cases. (Bankruptcy Court E.D.N.Y. 2005-2015)

*Fee Examiner/Reviewer Roles*

Retained as Fee Reviewer in Kidde-Fenwal, Inc. (D. Del. 2023)

Appointed as the Fee Examiner in Voyager Digital Holdings, Inc., <u>et al</u>. (S.D.N.Y. 2023)

Retained as a Fee Reviewer in Aero Technologies LLC, <u>et al</u>. (S.D. Ind. 2022)

Retained as a fee consultant/reviewer in two cases in the United States District Court. (S.D.N.Y. 2019)

Counsel to the Fee Examiner in Navillus Tile Inc (S.D.N.Y. 2018)

*Other Fiduciary Roles/Representations*

Appointed or selected as mediator in cases in Federal District Court and Bankruptcy Court involving a wide variety of federal and state law disputes.

Chapter 11 Examiner in <u>Liberty Towers Realty LLC</u>
Conducted examination and issued written report in connection with unauthorized payments from IOLA account of Debtor's counsel. (Bankruptcy Court E.D.N.Y. – Report rendered in 2018)

Board Member, <u>VI Acquisition Corp/VI CORP Restaurants</u>
Served as sole board member of companies during Chapter 11 post-sale wind-down and claims process. (Bankruptcy Court Del. 2009-2010)

Chapter 11 Examiner in <u>Dominick L. Sartorio and Elizabeth C. Sartorio</u>
Conducted examination and issued written report primarily in connection with insider transactions. (Bankruptcy Court E.D.N.Y. – Report rendered 2010)

**Legal Representations**

*Creditors' Committees/Committee Members*

Group of financial institutions as largest unsecured creditors and as members of unsecured creditors' committee in <u>Birmingham Steel Corp.</u> (Bankruptcy Court Del. 2002)

Member of unsecured creditors' committee in <u>Dictaphone Corporation</u> and <u>Lernout & Hauspie Speech Products, N.V.</u> (Bankruptcy Court Del. 1999)

Unsecured creditors' committee in <u>Giant Carpet Stores</u> (Bankruptcy Court D. N.J. 1996)

Unofficial committee of senior secured noteholders in second restructuring of <u>Trans World Airlines, Inc.</u> (Bankruptcy Court E.D. Mo. 1995)

Unsecured creditors' committee in <u>Cardinal Industries, Inc.</u> (Bankruptcy Court S.D. Ohio 1990)

Unsecured creditors' committee in <u>CIS Corporation</u> (Bankruptcy Court S.D.N.Y. 1990)
*Secured Creditors*

Agent for $42 million syndicated facility secured by aircraft in <u>Atlas Air, Inc.</u> (Bankruptcy Court S.D. Fla. 2004)

Agent for two syndicated project finance facilities (totaling over $1 billion) in <u>National Energy Gas Transmission, Inc.</u> (f/k/a PG&E National Energy Group, Inc.) (Bankruptcy Court Md. 2003)

Agent for $260 million of syndicated bank debt in prepackaged Chapter 11 cases of <u>Leiner Health Products, Inc.</u> (Bankruptcy Court Del. 2002)

Agent for $50 million of syndicated bank debt in prepackaged Chapter 11 case of <u>HCI Direct, Inc.</u> (Bankruptcy Court Del. 2002)

Agent for $260 million of pre-petition syndicated bank debt and $65 million of debtor-in-possession financing in Chapter 11 case of <u>American Pad & Paper Company</u> (Bankruptcy Court Del. 1999)

Financial institution owed $50 million in out of court restructuring of clothing company

Lender in prepackaged Chapter 11 case of <u>Ceres Capital Partners, LLC</u>, a manager of a structured finance vehicle.  (Bankruptcy Court S.D.N.Y. 2008) (local counsel role)


*Real Estate Cases*

Purchaser and plan funder of 500-unit cooperative housing complex in Queens, New York in <u>Anita Terrace Owners Corp.</u> (Bankruptcy Court E.D.N.Y. 2001) (consummated sale in 2004)

Secured creditor in Chapter 11 single asset real estate case through confirmation and appeals to the district court and court of appeals. <u>Coltex Loop Central Three Partners, L.P. v. BT/SAP Pool C Associates, L.P.</u> (<u>In re Coltex Loop Central Three Partners, L.P.</u>), 138 F.3d 39 (2d Cir. 1998) <u>affirming</u> 203 B.R. 527 (S.D.N.Y. 1997)

Secured creditor with $480 million claim secured by mortgages on two New York City buildings in Chapter 11 case of <u>Olympia & York Developments Limited</u> (Bankruptcy Court S.D.N.Y. 1993)

*Other Representations*

Represented landlords in Chapter 11 cases of <u>Toys 'R Us</u>, <u>Blockbuster</u> and <u>Ames</u>

Represented defendants in large and small avoidance actions including in the Chapter 11 cases of <u>Quebecor</u> and <u>Dewey LeBoeuf</u>

Represented purchaser of real estate in Chapter 11 case involving contested sale

Represented minority equity holder in out of court restructuring and contested Chapter 11 case of plastics recycling company

## **Presentations/Publications**

New York State Academy of Trial Lawyers
    What Every State Court Litigator Should Know About Bankruptcy (June 2020)

Practicing Law Institute
    Consumer Bankruptcy Cases (2010-present) (Co-Chair)

National Association of Bankruptcy Trustees
    A Guide to Operating in Chapter 7 (2018); Mediation in Bankruptcy (2017);
    The Very Difficult Debtor (2016); Finding Undisclosed Assets (2015);
    After the Conversion: Legal and Practical Guidelines for Administering a Case
      Converted to Chapter 7 (2011)

Department of Justice, Office of the United States Trustee
    Chapter 7 and Chapter 13 Section 341 Meetings: Preparation, Attendance and
      Follow-Up (May 2010)

New York State Bar Association
    What Every State Court Practitioner Should Know About Bankruptcy: Tips, Traps and
      How the Pandemic Has Impacted the Bankruptcy Courts (Annual Convention 2021)
    What to Expect at a § 341(a) Meeting: A Trustee's Perspective (2014) (Annual
      Convention)
    Practical Skills – Collection and the Enforcement of Money Judgments (June 2009)
    Consumers and Small Businesses in Distress: Using the Bankruptcy Code to Help
      Weather These Troubled Times (May 2009) (Chair)
    Bankruptcy Tips and Traps for Commercial Litigators (2006)
    The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (2005)

New York City Bar Association
    Business Bankruptcy 101 for Small/Mid-Size Firms & Solo Practitioners (March 2021)
    Concealing Assets in Bankruptcy (June 2011); Finding Hidden Assets: What Every
    Divorce, Bankruptcy & Commercial Litigator Needs to Know (April 2008)

New York State Judicial Institute (CLE for State Court Judges and Law Secretaries)
    Bankruptcy Law: The Impact of a Bankruptcy Filing on State Court Proceedings
      and the Substantive Rights of Judgment Creditors in Bankruptcy (2007)

New York County Lawyers Association
   Key Issues in Bankruptcy Litigation (2004 and 2001): Intermediate Bankruptcy (2000);
   Beginning Bankruptcy (1998)

The American Bankruptcy Institute
   Claims Trading (1994)

*New York Law Journal*
Co-author of bimonthly column on bankruptcy law (2005 – 2008)

A. DeNatale, H. Jones, L.L. Jones, R. Raskin & T. Walper, *Creditors' Committee
   Manual*, a book published by Warren Gorham & Lamont (1992 & Supp. 1993)

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.; 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **DECLARATION OF DISINTERESTEDNESS OF ELISE S. FREJKA** |

I, Elise S. Frejka, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I am a member of the law firm of Frejka PLLC (the "Firm"), and I am admitted to practice before the courts of the State of New York, the Supreme Court of the United States, the Second and Federal Circuit Courts of Appeal, and the Southern, Eastern, and Northern Districts of New York.

2. Following my judicial clerkship for the Honorable Prudence Carter Beatty, United States Bankruptcy Judge, Southern District of New York (Retired), I spent the next two decades working in the bankruptcy and restructuring departments of major law firms including Kramer Levin Naftalis & Frankel LLP (Special Counsel, 2009–2015), Dechert LLP, as successor to Swidler Berlin Shereff Friedman LLP (Associate, 1999–2009), Togut Segal & Segal LLP (Associate, 1998 – 1999), and Curtis Mallet-Prevost, Colt & Mosle LLP (Associate, 1994–1998). I founded the Firm in March 2015 where my practice includes a number of fiduciary appointments in the bankruptcy field. I am currently serving as the fee examiner in *In re BlockFi Inc.*, 22-19361 (MBK) (Bankr. D. N.J. Nov. 28, 2022) and I previously served as the fee examiner in the large and complex chapter 11 cases of *In re CL H Winddown LLC (f/k/a*

*CarbonLite Holdings LLC)*, 21-10527 (JTD) (Bankr. D. Del. Mar. 8, 2021), *In re Woodbridge Group of Companies, LLC*, 17-12560 (JKS) (Bankr. D. Del. Dec. 4, 2017), and *In re TSA WD Holdings, Inc. (f/k/a Sports Authority Holdings, Inc.)*, 16-10527 (MFW) (Bankr. D. Del. Oct. 18, 2017).  In each of the years 2017 through 2023, I have been named as one of the Nation's Top Attorney Fee Experts by the National Association of Legal Fee Analysis.  I have also served as an expert witness on fee issues in several non-fee examiner matters.  My other fiduciary roles are privacy related and I was appointed the consumer privacy ombudsman by the United States Trustee Program in *In re Endo International plc*, No. 22-22549 (JLG) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re Fred's Inc.*, No. 19-11984 (CSS) (Bankr. D. Del. Sept. 9, 2019); *In re uBiome, Inc.*, No. 19-11938 (LSS) (Bankr. D. Del. Sept 4, 2019); *In re Insys Therapeutics, Inc.*, No. 19-11292 (JTD) (Bankr. D. Del. June 10, 2019); *In re Ditech Holding Corporation*, No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Sears Holdings Corporation*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 15, 2018); *In re Hooper Holmes, Inc.*, No. 18-23302 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2018); *In re Wall Street Languages Ltd.*, No. 18-11581 (SHL) (Bankr. S.D.N.Y. May 24, 2018); *In re Avaago, Inc.*, No. 17-12926 (MKV) (Bankr. S.D.N.Y. Oct. 19, 2017); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Sept. 18, 2017); *In re Bristlecone, Inc.*, No. 17-50472 (BTB) (Bankr. D. Nev. Apr. 18, 2017); *In re Marbles Holdings LLC*, No. 17-03309 (TAB) (Bankr. N.D. Ill. Feb. 3, 2017); *In re The Wet Seal, LLC*, No. 17-10229 (CSS) *(*Bankr. D. Del. Feb. 2, 2017); *In re VoicePulse, Inc.*, No. 16-25075 (MBK) (Bankr. D.N.J. Aug. 5, 2016); *In re SFX Entm't, Inc.*, No. 16-10238 (MFW) (Bankr. D. Del. Feb. 1, 2016); *In re The Great Atlantic & Pacific Tea Co., Inc.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y. July 19, 2015); and *In re RadioShack Corp.*, No. 15-10197 (BLS) (Bankr. D. Del. Feb. 5, 2015).

3.     I am a Certified Information Privacy Professional (CIPP/US) credentialed by the International Association of Privacy Professionals and have received a Trauma Informed Certification from the National Center for Equity & Agency.

4.     I submit this Declaration to establish that I am a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) in connection with the chapter 11 case of The Roman Catholic Archbishop of San Francisco (the "Debtor").

5.     Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

6.     I have reviewed the Debtor's Creditor Matrix (Dkt. No. 53), the Chapter 11 Voluntary Petition (Dkt. No. 1], the case docket, and the confidential parties-in-interest list obtained from counsel in ascertaining my connections to this case.

7.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry and review of the potential parties in interest:

    a.     Neither the Firm nor I is, and has not been, during the pendency of this chapter 11 case, a creditor, equity security holder, or insider of the Debtor.

    b.     Neither the Firm nor I is, and has not been, a director, officer, or employee of the Debtor.

    c.     Neither the Firm nor I have an interest materially adverse to the interests of this bankruptcy estate or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with or interest in the Debtor, or for any other reason.

    d.     Neither the Firm nor I is a relative of any Bankruptcy Judge of the United States Bankruptcy Court for the Northern District of California, the Office of the United States Trustee for Region 17 or any person employed by the Office of the United States Trustee for Region 17.

    e.     Neither the Firm nor I represent or have in the past represented the Debtor.

    f.     Neither the Firm nor I represent or have in the past represented any party in interest in connection with the Debtor's chapter 11 case except that I am special counsel on privacy matters for Rite Aid Corporation, a creditor herein.

g.　　Neither the Firm nor I have any connection with any of the professionals which have been retained by the Debtor or the Official Committee of Unsecured Creditors (the "Retained Professionals") except that I have reviewed the fees of certain of the Retained Professionals in my capacity as fee examiner.  In my role as counsel to the Claims Administrator in *Jane Doe 1 v. JP Morgan Chase Bank, N.A.*, No. 1:22-CV-10019 -JSR (S.D.N.Y. Nov. 24, 2022) and *Jane Doe 1 v. Deutsche Bank Aktiengesellschaft et al.*, No. 1:22-CV-10018-JSR (S.D.N.Y. Nov. 24, 2022), I retained Omni Agent Solutions, Inc. as the claims and noticing agent.  In addition, both the Firm and I have, in the past, and from time to time, in the future, will likely have numerous interactions with the Retained Professionals, serve as co-counsel with a Retained Professional, hire a Retained Professional as an expert or consultant on behalf of one of our clients or represent a client in a matter in which a Retained Professional represents an adverse party or serves as an expert or consultant for an adverse party.

h.　　Neither the Firm nor I have any connection with any of the members of the Official Committee of Unsecured Creditors.

8.　　I do not believe that any of the disclosures set forth in paragraph 7 above will in any way compromise my disinterestedness in the Debtor's chapter 11 case.

9.　　If I discover any facts bearing on the matters described herein, I will supplement the information contained in this Declaration.

10.　　My 2023 hourly rate is $625, and I expect to increase my hourly rate on January 1, 2024.  However, I am willing to maintain my 2023 hourly rate for the duration of this case.  I anticipate retaining local counsel to assist with local practice and protocol but would select a small local firm and, depending on the magnitude of fees to be reviewed, I may retain a database service provider.  The retention of each will be subject to this Court's approval.

11.　　I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of December, 2023

_____

Elise S. Frejka

# ELISE S. FREJKA, CIPP/US

415 EAST 52ND STREET | SUITE 3
NEW YORK, NEW YORK 10022

(212) 641-0848
efrejka@FREJKA.com

## Professional Experience

**FREJKA PLLC**, New York, New York
*Founding Member*, March 9, 2015 – present

- Broad experience with restructurings, crisis management, corporate governance, financings, and acquisitions involving distressed situations in a wide array of industries. Extensive client contact and interactive adversary relations
- Significant experience in contested matters with respect to various debtor/creditor issues, including fraudulent conveyances, preferences, claims objections, debt recharacterization, and equitable subordination
- Represent debtors, creditors, creditors' committees, investors, hedge funds, private equity firms, and acquirers of distressed assets and securities
- Consulting and testifying expert witness in fee disputes
- Notable recent engagements representing major stakeholders include Consumer Privacy Ombudsman in *Endo*, *Sears*, *A&P*, *uBiome*, *Ditech*, *Fred's*, *Toys R Us*, *RadioShack*, *Hooper Holmes*, *Wet Seal*, *SFX*, *VoicePulse*, *Marbles*, *Bristlecone*, and *Wall Street Languages*; counsel to the Sexual Misconduct Claims Fund in *The Weinstein Company*, counsel to the Claims Examiner and settlement fund in *Jane Doe 1 v. JPM Morgan Chase* and *Jane Doe 1 v. DB*; Fee Examiner in *BlockFi*, *CarbonLite Holdings LLC*, *Woodbridge Group of Companies*, and *Sports Authority*, special counsel on privacy issues to *Rite Aid Corp.*, *Bed Bath & Beyond*, *Destination Maternity*, *PGX*, and *Lord & Taylor*, and customers of *Bernard L. Madoff Investment Securities, LLC* in clawback litigation
- Certified Information Privacy Professional (CIPP/US), trained mediator, and Trauma Informed Certified

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**, New York, New York
*Special Counsel*, Corporate Restructuring & Bankruptcy, 2009 – March 6, 2015

- Notable engagements representing major stakeholders include Official Committee of Unsecured Creditors in *Residential Capital LLC*, POOF-Alex in connection with the acquisition of substantially all of the assets of *Summit Products, LLC* and *Fundex, Inc.*, customers of *Bernard L. Madoff Investment Securities, LLC* in clawback litigation, *Saint Vincents Catholic Medical Center*, Deloitte Consulting in the acquisition of public services division of *BearingPoint, Inc.*, CME Group, Systemax Inc. in the acquisition of the e-commerce business of *Circuit City Stores, Inc.*, Official Committee of Unsecured Creditors in *In re General Motors Corp.*, Citigroup Global Markets Realty Corp. as senior lender in *First Republic Group Realty Group*, *Molecular Insight Pharmaceuticals*, and customers and distressed investors in *MF Global*

**DECHERT LLP**, successor to SWIDLER BERLIN SHEREFF FRIEDMAN, LLP, New York, New York
*Associate*, Business Reorganization and Restructuring, 1999 – 2009

**TOGUT, SEGAL & SEGAL, LLP**, New York, New York
*Associate*, Corporate, Bankruptcy, Creditors and Debtors Rights, 1998-1999

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**, New York, New York
*Associate*, Bankruptcy and Creditors' Rights, 1994-1998

**THE HONORABLE PRUDENCE CARTER BEATTY,** U.S.B.J.-S.D.N.Y.
*Law Clerk,* 1992-1994

## Education

**NEW YORK LAW SCHOOL** – Juris Doctor, *cum laude*, 1990
*Awards:* Professor James P. Kibbey Memorial Award for Excellence in Commercial Law

**VASSAR COLLEGE** – Bachelor of Arts, 1987
*Major:* Economics

## Miscellaneous

**Bar Admissions**: New York, Supreme Court of the United States, Second and Federal Circuit Courts of Appeal, Southern, Eastern, and Northern Districts of New York

**Memberships**: American Bankruptcy Institute, Turnaround Management Association, International Women's Insolvency and Restructuring Confederation, National Association of Legal Fee Analysis, International Association of Privacy Professionals

**Panelist:** NALFA: *Professional Fees in Large Chapter 11 Bankruptcy Cases*, ABI: *The Details of Retail: Can you Reorganize Middle-Market Retailers?*, ABI Live Webinar: *The Importance of Prebankruptcy Planning to Maximize the Value of Customer Data and IP*, ABA: *Who is Minding the Minders: Is Your Personal Data/Information Safe in Sale or Crisis?*; ABI: *Key Issues and Emerging Trends in Hospitality Defaults*, TMA: *Technology's Impact on Distressed Lending & Investing*

**Guest Lecturer:** Bankruptcy, Workouts & Reorganizations, New York University School of Continuing and Professional Studies

# EXHIBIT B

Christina L. Goebelsmann, Assistant United States Trustee
State Bar No. CA 273379
Jason M. Blumberg, Trial Attorney
State Bar No. 330150
Jared A. Day, Trial Attorney
State Bar No. CA 275687
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
450 Golden Gate Avenue, Room #05-0153
San Francisco, California 94102
Telephone: (775) 784-5530
Fax: (775) 784-5531
E-mail: *jared.a.day@usdoj.gov*

Attorneys for the U.S. Trustee for Region 17
      TRACY HOPE DAVIS

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>               Debtor. | Case No: 23-30564 DM<br><br>Chapter 11<br><br><br><br>Date: January 25, 2024<br>Time: 1:30 p.m.<br>Place: Via Zoom Webinar or Telephone |

**ORDER GRANTING UNITED STATES TRUSTEE'S MOTION FOR
ORDER APPOINTING FEE EXAMINER AND ESTABLISHING
PROCEDURES FOR REQUESTING PROFESSIONAL
<u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

Upon consideration of the United States Trustee's *Motion an Order Appointing a Fee*

*Examiner and Establishing Procedures for Requesting Professional Compensation and*

*Reimbursement of Expenses* (the "Motion," ECF No. _____), and appearing that the appointment

of a fee examiner is appropriate,

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS HEREBY ORDERED** that Lori Lapin Jones of Lori Lapin Jones PLLC is appointed as the fee examiner (the "Fee Examiner") in this case. Based upon the supporting declaration accompanying the Motion, the Fee Examiner is a disinterested person as defined under the Bankruptcy Code and does not hold or represent an interest adverse to the estate;

**IT IS HEREBY FURTHER ORDERED** that unless otherwise ordered by the Court, this order shall apply to all professionals in this chapter 11 case that are employed under sections 327 and 1103 (or similar authority) and request compensation and/or reimbursement of expenses for services rendered under sections 328, 330, and 331 (or similar authority);

**IT IS HEREBY FURTHER ORDERED** that the terms and conditions of any interim compensation order shall not be modified by this order, except as set forth in the Motion and/or herein. Given the size and complexity of this chapter 11 case, the Fee Examiner shall review and report on as appropriate all interim and final applications for allowance of compensation and reimbursement of expenses filed by professionals (the "Retained Professionals"), in accordance with sections 328, 330, and 331 (or similar authority) of the Bankruptcy Code and any interim compensation order (collectively, the "Applications");

**IT IS HEREBY FURTHER ORDERED** that the Fee Examiner shall review and assess all Applications filed by the Retained Professionals, and the fees and reimbursement of expenses for which allowance is sought pursuant to the Applications, for compliance with the following:

    a.    Review and assess all Applications filed by the Retained Professionals, and the fees and reimbursement of expenses for which allowance is sought pursuant to the Applications, for compliance with: (i) Bankruptcy Code Sections 328, 329, 330, and 331, as applicable; (ii) Fed. R. Bankr. P. 2016; (iii) any interim compensation order; (iv) the United States Trustee Guidelines for Reviewing Applications for

2

Compensation and Reimbursement of Expenses, 28 C.F.R. Part 58, Appendix A and Appendix B (the "Guidelines"); and (v) the United States Bankruptcy Court for the NDCA Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees (the "NDCA Guidelines");

b.   Review the Applications filed by each Applicant in this chapter 11 Case (along with the fee detail related thereto), and to the extent possible, the fee examiner shall avoid duplicative review;

c.   During the course of their review of an Application, consult, as they deem appropriate, with each Applicant concerning such Application;

d.   During the course of their review of an Application, review, to the extent appropriate, any relevant documents filed in this chapter 11 case to be generally familiar with this chapter 11 case and the associated public docket;

e.   Within thirty (30) days after an Applicant files an Application (or such greater time as the Applicant and fee examiner agree), serve an initial report (the "Initial Report") on the Applicant designed to quantify and present factual data relevant to whether the requested fees, disbursements, and expenses are in compliance with the applicable standards of sections 328, 329, 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and whether the Applicant (if required) has made a reasonable effort to comply with the United States Trustee's requests for information and additional disclosures as set forth in the Guidelines and NDCA Guidelines;

f.   During the period between service of the Initial Report and filing of the Final Report (as defined below), engage in written communication with each Applicant, the objective of which is to resolve matters raised in the Initial Report and to endeavor to reach consensual resolution with each Applicant with respect to that Applicant's requested fees and expenses, in furtherance of which the Examiner may also use the resolution process to revise findings contained in the Initial Report, and each Applicant may provide the fee examiner with written supplemental information that the Applicant believes is relevant to the Initial Report;

g.   Following communications between the fee examiner and the Applicant and the fee examiner's review of any supplemental information provided by such Applicant in response to the Initial Report, conclude the informal

3

resolution period by filing with this Court a report with respect to each Application (the "Final Report") within twenty-one (21) days after the service of the Initial Report, which shall be in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of each Applicant are in compliance with the applicable standards of section 330 of the Bankruptcy Code and Bankruptcy Rule 2016, and whether the Applicant has made a good faith reasonable effort to comply with the Guidelines and the NDCA Guidelines; and

h.  Serve each Final Report on counsel for the Debtor, counsel for the Official Committee of Unsecured Creditors (the "OCUC"), the United States Trustee, and each Applicant whose fees and expenses are addressed in the Final Report.

**IT IS HEREBY FURTHER ORDERED** that the Fee Examiner may:

a.  File comments on the public docket of the Court regarding any Application by a Retained Professional;

b.  Communicate their concerns regarding any Application to the Retained Professionals to whom such Application pertains, and to request further information as appropriate;

c.  Request Retained Professionals to provide budgets, staffing plans, or other information to the fee examiner;

d.  Establish procedures for the resolution of disputes with Retained Professionals;

e.  Recommend procedures to facilitate the preparation and review of Applications;

f.  Appear and be heard on any matter before the Court;

g.  File and litigate objections to the allowance of any Application;

h.  Take, defend, or appear in any appeal regarding any Application;

i.  Conduct discovery; and

j.  Retain, subject to Court approval, professionals (including attorneys and auditors) to represent or assist the fee examiner in connection with any of the foregoing under standards analogous to section 327 and to be compensated under standards analogous to sections 330 and 331.

**IT IS HEREBY FURTHER ORDERED** that the Debtor, the OCUC, the United States Trustee, and all Retained Professionals shall cooperate with the Fee Examiner in the discharge of

4

the Fee Examiner's duties and shall promptly respond to any reasonable requests for information or communications from the Fee Examiner;

**IT IS HEREBY FURTHER ORDERED** that the Fee Examiner and any professionals retained by the Fee Examiner shall be entitled to compensation from the estate for their reasonable and necessary fees and expenses. Any such requests for compensation shall be made by application to the Court and shall be allowed according to the same standards and procedures that apply to the Retained Professionals, including the interim compensation order entered in this case on October 16, 2023 (*see* ECF No. 212);

**IT IS HEREBY FURTHER ORDERED** that the Fee Examiner is appointed as an officer of the Court, and the Fee Examiner along with those employed or paid by her with respect to this appointment, shall be given the maximum immunity permitted by law from civil actions with respect to the performance of the duties set forth herein; and

**IT IS HEREBY FURTHER ORDERED** that in the event a chapter 11 trustee is appointed in this case, such appointment will not terminate or otherwise modify the duties and responsibilities of the Fee Examiner. Rather, the Fee Examiner's appointment shall only be terminated or otherwise modified by entry of an order of the Court.

* * END OF ORDER * *

5

**COURT MAILING LIST:**

ECF Participants Only

6

Christina L. Goebelsmann, Assistant United States Trustee
State Bar No. CA 273379
Jason M. Blumberg, Trial Attorney
State Bar No. 330150
Jared A. Day, Trial Attorney
State Bar No. CA 275687
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
450 Golden Gate Avenue, Room #05-0153
San Francisco, California 94102
Telephone: (775) 784-5530
Fax: (775) 784-5531
E-mail: *jared.a.day@usdoj.gov*

Attorneys for the U.S. Trustee for Region 17
      TRACY HOPE DAVIS

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP<br>OF SAN FRANCISCO,<br><br>                Debtor. | Case No: 23-30564 DM<br><br>Chapter 11<br><br><br><br>Date: January 25, 2024<br>Time: 1:30 p.m.<br>Place: Via Zoom Webinar or Telephone |

**ORDER GRANTING UNITED STATES TRUSTEE'S MOTION FOR
ORDER APPOINTING FEE EXAMINER AND ESTABLISHING
PROCEDURES FOR REQUESTING PROFESSIONAL
<u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

Upon consideration of the United States Trustee's *Motion an Order Appointing a Fee*

*Examiner and Establishing Procedures for Requesting Professional Compensation and*

*Reimbursement of Expenses* (the "Motion," ECF No. _____), and appearing that the appointment

of a fee examiner is appropriate,

1

**IT IS HEREBY ORDERED** that Elise S. Frejka of Frejka PLLC is appointed as the fee examiner (the "Fee Examiner") in this case. Based upon the supporting declaration accompanying the Motion, the Fee Examiner is a disinterested person as defined under the Bankruptcy Code and does not hold or represent an interest adverse to the estate;

**IT IS HEREBY FURTHER ORDERED** that unless otherwise ordered by the Court, this order shall apply to all professionals in this chapter 11 case that are employed under sections 327 and 1103 (or similar authority) and request compensation and/or reimbursement of expenses for services rendered under sections 328, 330, and 331 (or similar authority);

**IT IS HEREBY FURTHER ORDERED** that the terms and conditions of any interim compensation order shall not be modified by this order, except as set forth in the Motion and/or herein. Given the size and complexity of this chapter 11 case, the Fee Examiner shall review and report on as appropriate all interim and final applications for allowance of compensation and reimbursement of expenses filed by professionals (the "Retained Professionals"), in accordance with sections 328, 330, and 331 (or similar authority) of the Bankruptcy Code and any interim compensation order (collectively, the "Applications");

**IT IS HEREBY FURTHER ORDERED** that the Fee Examiner shall review and assess all Applications filed by the Retained Professionals, and the fees and reimbursement of expenses for which allowance is sought pursuant to the Applications, for compliance with the following:

> a. Review and assess all Applications filed by the Retained Professionals, and the fees and reimbursement of expenses for which allowance is sought pursuant to the Applications, for compliance with: (i) Bankruptcy Code Sections 328, 329, 330, and 331, as applicable; (ii) Fed. R. Bankr. P. 2016; (iii) any interim compensation order; (iv) the United States Trustee Guidelines for Reviewing Applications for

2

Compensation and Reimbursement of Expenses, 28 C.F.R. Part 58, Appendix A and Appendix B (the "Guidelines"); and (v) the United States Bankruptcy Court for the NDCA Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees (the "NDCA Guidelines");

b. Review the Applications filed by each Applicant in this chapter 11 Case (along with the fee detail related thereto), and to the extent possible, the fee examiner shall avoid duplicative review;

c. During the course of their review of an Application, consult, as they deem appropriate, with each Applicant concerning such Application;

d. During the course of their review of an Application, review, to the extent appropriate, any relevant documents filed in this chapter 11 case to be generally familiar with this chapter 11 case and the associated public docket;

e. Within thirty (30) days after an Applicant files an Application (or such greater time as the Applicant and fee examiner agree), serve an initial report (the "Initial Report") on the Applicant designed to quantify and present factual data relevant to whether the requested fees, disbursements, and expenses are in compliance with the applicable standards of sections 328, 329, 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and whether the Applicant (if required) has made a reasonable effort to comply with the United States Trustee's requests for information and additional disclosures as set forth in the Guidelines and NDCA Guidelines;

f. During the period between service of the Initial Report and filing of the Final Report (as defined below), engage in written communication with each Applicant, the objective of which is to resolve matters raised in the Initial Report and to endeavor to reach consensual resolution with each Applicant with respect to that Applicant's requested fees and expenses, in furtherance of which the Examiner may also use the resolution process to revise findings contained in the Initial Report, and each Applicant may provide the fee examiner with written supplemental information that the Applicant believes is relevant to the Initial Report;

g. Following communications between the fee examiner and the Applicant and the fee examiner's review of any supplemental information provided by such Applicant in response to the Initial Report, conclude the informal

3

resolution period by filing with this Court a report with respect to each Application (the "Final Report") within twenty-one (21) days after the service of the Initial Report, which shall be in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of each Applicant are in compliance with the applicable standards of section 330 of the Bankruptcy Code and Bankruptcy Rule 2016, and whether the Applicant has made a good faith reasonable effort to comply with the Guidelines and the NDCA Guidelines; and

h. Serve each Final Report on counsel for the Debtor, counsel for the Official Committee of Unsecured Creditors (the "OCUC"), the United States Trustee, and each Applicant whose fees and expenses are addressed in the Final Report.

**IT IS HEREBY FURTHER ORDERED** that the Fee Examiner may:

a. File comments on the public docket of the Court regarding any Application by a Retained Professional;
b. Communicate their concerns regarding any Application to the Retained Professionals to whom such Application pertains, and to request further information as appropriate;
c. Request Retained Professionals to provide budgets, staffing plans, or other information to the fee examiner;
d. Establish procedures for the resolution of disputes with Retained Professionals;
e. Recommend procedures to facilitate the preparation and review of Applications;
f. Appear and be heard on any matter before the Court;
g. File and litigate objections to the allowance of any Application;
h. Take, defend, or appear in any appeal regarding any Application;
i. Conduct discovery; and
j. Retain, subject to Court approval, professionals (including attorneys and auditors) to represent or assist the fee examiner in connection with any of the foregoing under standards analogous to section 327 and to be compensated under standards analogous to sections 330 and 331.

**IT IS HEREBY FURTHER ORDERED** that the Debtor, the OCUC, the United States Trustee, and all Retained Professionals shall cooperate with the Fee Examiner in the discharge of

4

the Fee Examiner's duties and shall promptly respond to any reasonable requests for information or communications from the Fee Examiner;

**IT IS HEREBY FURTHER ORDERED** that the Fee Examiner and any professionals retained by the Fee Examiner shall be entitled to compensation from the estate for their reasonable and necessary fees and expenses. Any such requests for compensation shall be made by application to the Court and shall be allowed according to the same standards and procedures that apply to the Retained Professionals, including the interim compensation order entered in this case on October 16, 2023 (*see* ECF No. 212);

**IT IS HEREBY FURTHER ORDERED** that the Fee Examiner is appointed as an officer of the Court, and the Fee Examiner along with those employed or paid by her with respect to this appointment, shall be given the maximum immunity permitted by law from civil actions with respect to the performance of the duties set forth herein; and

**IT IS HEREBY FURTHER ORDERED** that in the event a chapter 11 trustee is appointed in this case, such appointment will not terminate or otherwise modify the duties and responsibilities of the Fee Examiner. Rather, the Fee Examiner's appointment shall only be terminated or otherwise modified by entry of an order of the Court.

\* \* END OF ORDER \* \*

5

**COURT MAILING LIST:**

ECF Participants Only

6