CHRISTINA L. GOEBELSMANN (SBN 273379)
Assistant United States Trustee
JASON BLUMBERG (SBN 330150)
Trial Attorney
TREVOR R. FEHR (CA SBN 316699)
Trial Attorney
PHILLIP J. SHINE (CA SBN 318840)
Trial Attorney
DEANNA K. HAZELTON (CA SBN 202821)
Trial Attorney
Office of the United States Trustee
450 Golden Gate Avenue, Room 05-0153
San Francisco, California 94102
Phone: (415) 705-3333
Facsimile: (415) 705-3379
Email: jason.blumberg@usdoj.gov

Attorneys for Tracy Hope Davis,
United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and Debtor in Possession. | Bankruptcy Case No. 23-30564<br><br>Chapter 11<br><br>Date: January 11, 2024<br>Time: 1:30 p.m.<br>Place: Via ZoomGov<br><br>Judge: Hon. Dennis Montali |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION TO MODIFY CASH MANAGEMENT ORDER [ECF No. 386]**

Tracy Hope Davis, United States Trustee for Region 17 (the "**UST**"), hereby files this objection to the Debtor's *Motion to Modify Final Order (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance with Section 345(b); and (4) Authorizing Continued Use of Current Investment Policy; or, in the*

1

*Alternative, Authorizing U.S. Bank N.A. Bank Card Program* (ECF No. 386) (the "**Modification Motion**"). In support of her Objection, the UST respectfully represents as follows:

## I.  INTRODUCTION

1. The Debtor has not met its burden of demonstrating cause to waive the collateralization requirements of 11 U.S.C. § 345(b). The Debtor's new bank card account will require the advancement of funds that will not be collateralized like funds deposited into a debtor-in-possession account or otherwise protected by FDIC insurance, which poses a risk to the estate. The Debtor could eliminate this risk and still obtain the benefits of a credit card program by utilizing cards associated with a debtor in possession account (provided the account has a $650,000 balance).

## II.  STATEMENT OF FACTS

2. On August 21, 2023, the Debtor commenced the above-captioned case under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. The Debtor is currently a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

3. The meeting of creditors under 11 U.S.C. § 341 was concluded on October 12, 2023. *See* unnumbered docket entry dated October 12, 2023.

4. On September 1, 2023, the UST appointed the official committee of unsecured creditors. *See* ECF No. 58.

5. On November 2, 2023, the Court entered a final order approving the Debtor's cash management motion. *See* ECF No. 266 (the "**Final Cash Management Order**").

6. Consistent with the Court's *Order Overruling Objection of the United States Trustee Regarding Investment Accounts* (ECF No. 257), the Final Cash Management Order

permits the Debtor to maintain its investment accounts with Bank of America and its U.S. Bank pooled investment accounts. *See Final Cash Management Order*, at ¶¶ 1, 14.

7.  The Final Cash Management Order also permits the Debtor to maintain its credit cards with Wells Fargo Bank. *See* Final Cash Management Order, at ¶ 3. But "any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation that is organized under the laws of the United States or any State thereof and that such account is either bonded or securitized as described in Bankruptcy Code section 345(b) should the account exceed the FDIC insurance limit, and listed on the U.S. Trustee's list of authorized depositories for the Northern District of California." *Id.*, at ¶ 7.

8.  As set forth in the Modification Motion, the Debtor seeks to replace its Wells Fargo credit cards with a new bank card program at U.S. Bank (the "**Bank Cards**"). The Bank Cards will be funded with advances from the Debtor to provide "pre-funded credit for use by the Debtor on its Bank Card for its account." The Debtor has indicated that it anticipates initially funding the account with approximately $75,000 to $100,000, and replenishing the account as funds are disbursed to pay expenses. The Debtor has also agreed to limit the pre-funded balance for its Bank Card account to $200,000. *See* Modification Motion, at ¶ F.

9.  The Debtor has stated that the Bank Card will operate similar to a debit card, except that the funds advanced will not be held in a deposit account and will not be covered by FDIC insurance. *See* Modification Motion, at ¶ F & n.3.

10. As part of the Modification Motion, the Debtor "seeks a waiver of the deposit guidelines set forth in section 345(b) to allow the Debtor to maintain its Bank Card account with U.S. Bank." *See* Modification Motion, at p. 8 of 22.

11. In lieu of the Bank Cards, it appears that the Debtor could also replace its Wells Fargo credit cards by using cards associated with a debtor in possession account. The minimum balance for such debtor in possession account would be $650,000. *See* Declaration of Michael Flanagan (ECF No. 388), at ¶ 7.

### III. OBJECTION

**A.** **Bankruptcy Code Section 345**

12. Bankruptcy Code Section 345(b) protects creditors against the loss of estate funds deposited or invested by debtors. *See In re Columbia Gas Systems Inc.*, 33 F.3d 294, 301 (3d Cir. 1994) ("Ensuring the safety of the bankruptcy funds has been the foremost goal."); *In re CWNevada LLC,* 602 B.R. 717, 744 (Bankr. D. Nev. 2019) ("[t]hose requirements are designed to ensure the safety of the funds held by a trustee or debtor in possession as a fiduciary of a bankruptcy estate").

13. Specifically, Section 345(b) provides that money of the estate shall be insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States. Money of the estate may also be deposited in an entity that has posted a bond in favor of the United States or has deposited securities with the Federal Reserve Bank.

14. A court may waive the requirements of Section 345 upon a showing of "cause." *See* 11 U.S.C. § 345(b). Thus, the Court may modify the requirements of Section 345(b) for "'just cause' where strict compliance might 'work to *needlessly handcuff* larger, more sophisticated debtors.'" *See In re Ditech Holding Corp.*, 605 B.R. 10, 22 (Bankr. S.D.N.Y. 2019) (emphasis added).

15. To ensure compliance with Section 345(b), the UST has implemented guidelines for debtors in possession regarding bank accounts (the "**UST Guidelines**"). Among other things, the UST Guidelines require debtors in possession to close their pre-petition bank accounts and provide proof of the establishment of debtor in possession account(s) at an authorized depositary. *See United States Trustee Chapter 11 Operating and Reporting Guidelines for Debtors in Possession* (Region 17), at § 3, available at https://www.justice.gov/ust-regions-r17/region-17-general-information#ch11.[1]

16. Authorized depositories have agreed to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," (the "**UST Manual**"), §§ 7-1.1 and 7-1.2.1, at pp. 1-2, available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual. Authorized depositories have also agreed to make periodic reports so that the UST can monitor compliance. *See* UST Manual, § 7-1.3.2, at p. 5.

**B.** **The Debtor Has Not Adequately Described Its Proposed Replacement Cash Management System.**

17. As an initial matter, the Debtor has failed to provide an adequate description of the cash management system for which it is seeking a waiver. It is unclear from Debtor's

---

[1] The UST is mindful that some courts have concluded that guidelines established by the UST do not have the force and effect of law. *See, e.g., In re Young*, 205 B.R. 894, 897 (Bankr. W.D. Tenn. 1997); *In re Lani Bird, Inc.*, 113 B.R. 672, 673 (Bankr. D. Hawaii 1990); *In re Gold Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995); *In re Johnson*, 106 B.R. 623, 624-25 (Bankr. D. Neb. 1989). As a result, "if the court is to require debtors to comply with particular provisions of the U.S.T.'s Guidelines, it must be for a reason independent of the Guidelines themselves." *Johnson*, 106 B.R. at 624.

5

description whether the Bank Card account is a deposit account, a secured credit card, a prepaid debit card, or a novel financial facility.

18. For instance, the Bank Card account appears to operate as a deposit account, with the Debtor depositing funds that can be drawn upon with the Bank Card; using funds up to the amount deposited; earning rebates based upon card usage; and incurring fees only upon special circumstances. *See* Modification Motion, at ¶ F. Yet, the Debtor asserts that the Bank Card account is not a deposit account and that the funds deposited in the account will be classified as advances that provide "pre-funded credit" for use by the Debtor. *See* Modification Motion, at ¶ F & n.3.

19. Further, the treatment of the deposited funds as "pre-funded credit" suggests that the Bank Card account operates similar to either a secured credit card or a prepaid debit card. However, a secured credit card incurs interest and does not require replenishment of a deposit, unlike the Bank Card account. Similarly, while a prepaid debit card is eligible for FDIC insurance, the Debtor has represented that the Bank Card account will not be FDIC insured. *Cf.* Federal Deposit Insurance Corporation, Prepaid Cards and Deposit Insurance, available at https://www.fdic.gov/deposit/deposits/prepaid.html (last visited January 3, 2024).

20. It is possible that the Bank Card account differs from a deposit account, secured credit card, and a prepaid debit card because it is a novel financial facility offered to the Debtor.

21. Absent additional information from the Debtor, the expected operation and protections offered by the Bank Card account remain unclear. At most, the information available suggests that any funds advanced by the Debtor to fund the Bank Card account, up to the amount of $200,000, will be unprotected, even by the minimum amount of FDIC insurance.

## C. The Debtor Has Not Demonstrated Cause for a Waiver of Section 345(b).

22. As noted above, a Court may waive the requirements of Section 345(b) for "cause." In determining whether cause exists under 11 U.S.C. § 345(b), courts have examined the totality of the circumstances. *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); *In re Ditech Holding Corp.*, 605 B.R. at 17. As part of this analysis, courts have considered the following factors:

    1. The sophistication of the debtor's business;

    2. The size of the debtor's business operations;

    3. The amount of investments involved;

    4. The bank ratings (Moody's and Standard and Poor) of the financial institutions where debtor-in-possession funds are held;

    5. The complexity of the case;

    6. The safeguards in place within the debtor's own business of insuring the safety of the funds;

    7. The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

    8. The benefit to the debtor;

    9. The harm, if any, to the estate; and

    10. The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*See In re Serv. Merch. Co., Inc.*, 240 B.R. at 896.

23. The Debtor has not demonstrated cause to waive the requirements of Section 345(b). Because the Bank Card account would leave any deposited or advanced funds, up to the amount of $200,000, unprotected by any collateral or FDIC insurance, there would be a risk to the estate. It appears that the Debtor can eliminate this risk and still obtain the benefits

of a credit card program by utilizing cards associated with a debtor in possession account (provided the account has a $650,000 balance) or an alternative cash management system contemplated by the existing cash management order.[2]

24. Accordingly, the UST objects to the Modification Motion because the Debtor has failed to demonstrate cause for a waiver of 11 U.S.C. § 345(b).

### IV. CONCLUSION

25. Based on the foregoing, the UST respectfully requests that the Court (i) sustain the Objection, and (ii) deny the Modification Motion.

Dated: January 4, 2024

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: /s/ Jason Blumberg
Jason Blumberg
Trial Attorney for the United States Trustee

---

[2] U.S. Bank is an authorized depository in the Northern District of California. *See* https://www.justice.gov/media/1169956/dl?inline=.