JENNIFER WITHERELL CRASTZ (SBN 185487)
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
Email: jcrastz@hrhlaw.com
File No. 3789-20240063

Attorneys for Movant,
CITY NATIONAL BANK

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor.<br>_____<br><br>CITY NATIONAL BANK,<br><br>Movant.<br><br>vs.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Respondent. | CASE NO.: 23-30564<br><br>CHAPTER 11<br><br><br><br>RS No.: JWC-1<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY [PERSONAL PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN McDONALD IN SUPPORT THEREOF**<br><br>DATE: March 7, 2024<br>TIME: 1:30 p.m.<br>CTRM: 17 (16th Floor)<br>JUDGE: Hon. Dennis Montali<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

**TO THE HONORABLE DENNIS MONTALI, THE DEBTOR, THE DEBTOR'S COUNSEL, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS' COMMITTEE, AND ALL OTHER PARTIES IN INTEREST:**

　　**PLEASE TAKE NOTICE THAT** on March 7, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 17 of the above-entitled court located at 450 Golden Gate Avenue,

1
MOTION FOR RELIEF FROM THE AUTOMATIC STAY [PERSONAL PROPERTY]

San Francisco, CA 94102, CITY NATIONAL BANK ("Movant") shall, and does hereby, move the Court for an Order granting relief from the automatic stay under 11 U.S.C. § 362(a) against Debtor THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO (hereinafter, "Debtor"), in the above-captioned Chapter 11 case, to permit Movant and its successors and assigns, to exercise the rights granted under that certain agreement and related documents affecting personal property of the Debtor, as more fully described herein. This motion is made and based upon the following facts and circumstances:

## I. STATEMENT OF FACTS

1.      On or about August 21, 2023 ("Petition Date"), Debtor commenced the above-captioned bankruptcy case by filing a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") and imposing an automatic stay upon Movant from proceeding with its state court remedies regarding the personal property discussed herein below.

2.      This Court has jurisdiction in this core proceeding pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(2)(G). Pursuant to 28 U.S.C. § 1409(a), this proceeding is properly commenced and prosecuted in this Court in which Debtor's Chapter 11 case is pending.

3.      On or about January 24, 2006, Debtor executed and delivered to Movant an Irrevocable Standby Letter of Credit Application and Letter of Credit Agreement in the initial face amount of $363,000.00 ("Letter of Credit"). A true and correct copy of the Letter of Credit is attached as **Exhibit 1** to the accompanying Declaration of Brian McDonald.

4.      Along with the Letter of Credit, Debtor pledged a certificate of deposit account ("CD Account") in the face amount of $300,000.00 as a security for a potential draw (hereinafter, "Collateral") in the event Debtor defaults on the Letter of Credit. True and correct copies of the Assignments of Deposit Account dated February 6, 2006, December 5, 2006, and March 7, 2011, as modified and/or extended from time to time, are collectively attached as **Exhibit 2** to the accompanying Declaration of Brian McDonald.

5.      Further modifications and/or extensions of the Letter of Credit are also set forth in the correspondence dated February 8, 2006, January 2, 2007, January 10, 2008, January 13, 2009, May 23, 2010, October 4, 2010, March 15, 2011, October 24, 2011, November 17, 2011, May 17, 2014,

February 3, 2015, September 14, 2017, and November 27, 2019, true and correct copies of which are collectively attached as **Exhibit 3** to the accompanying Declaration of Brian McDonald.

6.   On or about January 2, 2024, the beneficiary under the Letter of Credit issued an "At Sight Draft" in the amount of $76,000.00 at which point Debtor became obligated on the Letter of Credit in the same amount. A true and correct copy of the At Sight Draft is attached as **Exhibit 4** to the accompanying Declaration of Brian McDonald.

7.   Under the Letter of Credit, Movant is entitled to liquidate the CD Account to reimburse itself for the $76,000.00 balance due on the Letter of Credit, plus interests, fees and costs (the "Indebtedness"). The balance in the CD Account is $76,000.00, such that there is no equity above what is due to Movant.

8.   Continuation of the automatic stay of 11 U.S.C. § 362(a) will deprive Movant of the adequate protection to which it is entitled under 11 U.S.C. §§ 361 and 362, and the stay should be lifted, for the following reasons, among others:

(a)   Debtor lacks any equity in the Collateral;

(b)   Interest continues to accrue upon Movant's claim, and in the months since Debtor has defaulted on its obligation; and

(c)   The Collateral is not necessary for an effective reorganization by the Debtor, as evidenced by the lack of equity therein.

WHEREFORE, Movant prays:

1.   For an order providing relief from automatic stay and allowing Movant to immediately commence exercise of its rights under the Letter of Credit and applicable law, to liquidate the CD Account to pay the Indebtedness;

2.   That the 14-day stay is waived; and

3.   For such other and further relief as is just and proper.

DATED: February 12, 2024          HEMAR, ROUSSO & HEALD, LLP

/s/ *Jennifer Witherell Crastz*

BY: _____
JENNIFER WITHERELL CRASTZ
Attorneys for Movant,
CITY NATIONAL BANK

3
MOTION FOR RELIEF FROM THE AUTOMATIC STAY [PERSONAL PROPERTY]

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

# MEMORANDUM OF POINTS AND AUTHORITIES

# IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

# INTRODUCTON

In the present case, the Chapter 11 Petition was filed on August 21, 2023. Since the filing, Debtor has made no payments to Movant. There is no equity in the Collateral, which is a CD Account.

# MOVANT SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY

# OF 11 U.S.C. § 362(A) TO EXERCISE ITS RIGHTS REGARDING THE COLLATERAL.

Section 362(d) of the Bankruptcy Code states that:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -

      (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

      (2) with respect to a stay of an act against property under subsection(a) of this section, if–

          (A) the debtor does not have an equity in such property; and

          (B) such property is not necessary to an effective reorganization.

The facts of this case demonstrate that the automatic stay should be lifted "for cause." The Bankruptcy Code mandates that Movants must, at a minimum, be afforded a reasonable assurance that the value of their security interests in property of a debtor is and will continue to be "adequately protected" by the debtor. Metropolitan Life Ins. v. Murel Holding Corp., 75 F.2d 941 (2nd Cir. 1935). The debtor bears the burden of proving that the creditor's interest in the property is adequately protected. Guavin v. Wagner, 24 B.R. 578, 580 (9th Cir. BAP 1982). If the debtor fails to meet this burden, the creditor is entitled to relief under §362(d)(1). In re Winslow Center Associates, 32 B.R. 685, 687 (Bankr. E.D. Pa. 1983).

In the present case, Movant's interest in the Collateral is not being adequately protected since there is no equity in the Collateral. In determining whether there is equity in the subject Collateral, all encumbrances, including all costs and fees, against the Collateral must be considered. In re

4
MOTION FOR RELIEF FROM THE AUTOMATIC STAY [PERSONAL PROPERTY]

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

1   Development, Inc., 36 B.R. 998 (Bankr. D. Haw. 1984). The amount owing to Movant is not less than

2   $76,000.00 (the "Indebtedness"). The value of the Collateral is $76,000.00. It is apparent that Debtor

3   does not have any equity in the Collateral, and the Collateral is of no value to the estate. The entirety

4   of the elements for relief from stay pursuant to 11 U.S.C. § 362(d)(2) are therefore indisputably

5   present.

6       Finally, the Collateral is not necessary to an effective reorganization since Debtor has failed to

7   make post-petition payments due and owing.

8                                    **RELIEF REQUESTED**

9       WHEREFORE, Movant respectfully requests that this court issue an Order as follows:

10      1.      For an order providing relief from automatic stay and allowing Movant to immediately

11  commence exercise of its rights under the Letter of Credit and applicable law, to liquidate the CD

12  Account to pay the Indebtedness;

13      2.      That the 14-day stay is waived; and

14      3.      For such other and further relief as is just and proper.

15  DATED: February 12, 2024              HEMAR, ROUSSO & HEALD, LLP

16

17                                       /s/ *Jennifer Witherell Crastz*

18                                       BY: _____
                                             JENNIFER WITHERELL CRASTZ
                                             Attorneys for Movant,
19                                           CITY NATIONAL BANK

20

21

22

23

24

25

26

27

28

MOTION FOR RELIEF FROM THE AUTOMATIC STAY [PERSONAL PROPERTY]

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

## DECLARATION OF BRIAN McDONALD

I, BRIAN McDONALD, declare:

1.      I am over the age of 18 years.  I am employed by CITY NATIONAL BANK (hereinafter referred to as the "<u>Movant</u>") as its Vice President/Special Assets Officer Senior.

2.      I have custody of the business records of Movant as they relate to the obligations of Debtor THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO (hereinafter, "<u>Debtor</u>").

3.      All matters contained herein are to the best of my knowledge and/or review of the business records of Movant.  If called as a witness, I could and would competently testify thereto.

4.      The records of Movant, appended hereto and from which certain testimony herein is derived, were created in the ordinary course of Movant's business by persons with a business duty to Movant to make such records.  The records were made at or near the time of the occurrence of the event which they purport to memorialize.  By virtue of my position as an employee of Movant, I have access to those records.

5.      Movant's records are kept on a computer system and organized by account number, including records of all contacts made by Movant to the entities or individuals involved in a particular transaction.  Similarly, a record of each and every payment received by Movant is inputted into Movant's computer system indicating the date on which the payment was received, its application to an outstanding account, the balance remaining due and owing after the application of such proceeds, and whether a late charge is applicable based upon the date the payment was made.

6.      Movant's books and records for Debtor's accounts herein were kept in the manner described above.

7.      I have reviewed Movant's records as they relate to the instant lawsuit, and make this declaration based upon that review.

8.      On or about January 24, 2006, Debtor executed and delivered to Movant another Irrevocable Standby Letter of Credit Application and Letter of Credit Agreement in the initial face amount of $363,000.00 ("<u>Letter of Credit</u>").  A true and correct copy of the Letter of Credit is attached hereto as **Exhibit 1** and here incorporated by reference.

MOTION FOR RELIEF FROM THE AUTOMATIC STAY [PERSONAL PROPERTY]

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

9. Along with the Letter of Credit, Debtor pledged a certificate of deposit account ("CD Account") in the face amount of $300,000.00 as a security for a potential draw (hereinafter, "Collateral") in the event Debtor defaults on the Letter of Credit. True and correct copies of the Assignments of Deposit Account dated February 6, 2006, December 5, 2006, and March 7, 2011, as modified and/or extended from time to time, are collectively attached hereto as **Exhibit 2** and here incorporated by reference.

10. Further modifications and/or extensions of the Letter of Credit are also set forth in the correspondence dated February 8, 2006, January 2, 2007, January 10, 2008, January 13, 2009, May 23, 2010, October 4, 2010, March 15, 2011, October 24, 2011, November 17, 2011, May 17, 2014, February 3, 2015, September 14, 2017, and November 27, 2019, true and correct copies of which are collectively attached hereto as **Exhibit 3** and here incorporated by reference.

11. On or about January 2, 2024, the beneficiary under the Letter of Credit issued an "At Sight Draft" in the amount of $76,000.00 at which point Debtor became obligated on the Letter of Credit in the same amount. A true and correct copy of the At Sight Draft is attached hereto as **Exhibit 4** and here incorporated by reference.

12. Under the Letter of Credit, Movant is entitled to liquidate the CD Account to reimburse itself for the $76,000.00 balance due on the Letter of Credit, plus interests, fees and costs (the "Indebtedness"). The balance in the CD Account is $76,000.00, such that there is no equity above what is due to Movant.

13. Continuation of the automatic stay will deprive Movant of the adequate protection to which it is entitled and the stay should be lifted, for the following reasons, among others:

(a) Debtor lacks any equity in the Collateral;

(d) Interest continues to accrue upon Movant's claim, and in the months since Debtor has defaulted on its obligation; and

(e) The Collateral is not necessary for an effective reorganization by the Debtor, as evidenced by the lack of equity therein.

///

///

MOTION FOR RELIEF FROM THE AUTOMATIC STAY [PERSONAL PROPERTY]

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

1    I declare under penalty of perjury pursuant to the laws of the United States of America that the

2    foregoing is true and correct.

3    Executed on this ⟨ ⟩ day of February, 2024 at Los Angeles, California.

4

5                                          BRIAN McDONALD
6                                          Declarant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

# EXHIBIT 1

☑ Southern California    ☐ Northern California    Date: 1/24/2006
606 South Olive Street, Suite 300    2101 Webster Street, Ground Floor
Los Angeles, California 90014    Oakland, California 94612

**\*\*\*You must select legal sized paper when printing.\*\*\***

**IRREVOCABLE STANDBY LETTER OF CREDIT APPLICATION AND LETTER OF CREDIT AGREEMENT**

**TO: CITY NATIONAL BANK (CNB)**

We (Applicant) request you establish an Irrevocable Standby Letter of Credit by:

☐ Cable    ☐ Overnight courier service    ☐ Same day messenger service

on the following terms and conditions:

| ADVISING BANK (name and address) | APPLICANT (name and address) |
|---|---|
| | The Roman Catholic Archbishop Of San Francisco |
| | 1 Peter Yorke Way |
| | San Francisco, CA  94109-6602 |
| | Enter the applicant's city, state, and zip code here. |

| BENEFICIARY (name and address) | AMOUNT (indicate currency-i.e., U.S. $-and specify amount in figures and words) |
|---|---|
| The Travelers Indemnity Company | USD    363,000.00 |
| Credit Risk Management Attn: R. Thomas Coffey | |
| One Tower Square 10CR | EXPIRY DATE  1/15/2007 |
| Hartford, CT 06183 | |
| | AT CNB'S ISSUING OFFICE |

available by Draft(s) at sight on CNB and accompanied by the following:

WORDING AS PER ATTACHMENT

THIS STANDBY LETTER OF CREDIT IS ISSUED SUBJECT TO UCP500/ISP98, AS APPROPRIATE

CLEAN STANDBY LETTER OF CREDIT

<div style="writing-mode: vertical">EXCEPT SO FAR AS OTHERWISE EXPRESSLY STATED THIS CREDIT WILL BE SUBJECT TO INTERNATIONAL STANDBY PRACTICES 1998 (ISP98), INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION AS IN FORCE AS OF THE DATE OF ISSUANCE OF THE LETTER OF CREDIT</div>

**APPLICANT'S AGREEMENT TO PAY CNB**      Annual fee .25%

Applicant agrees immediately upon CNB's demand or if no demand is made then on _30 days disbursement_, to repay to CNB the total amount of each disbursement by CNB under this Letter of Credit, together with interest thereon at the rate of _Prime_ percent per year in excess of the Prime Rate. The "Prime Rate" shall mean the floating loan rate of CNB announced from time to time as its "Prime Rate". Any change in the interest rate resulting from a change in the Prime Rate shall be effective on the effective date of change in the Prime Rate. Interest shall be calculated on a basis of a 360-day year and actual days elapsed. We further authorize you to charge, without further notice, our account, (or an account of any of us) for all such amounts when and as such are due and payable.

**THE OPENING OF THIS CREDIT IS SUBJECT TO THE TERMS AND CONDITIONS AS SET FORTH IN THE LETTER OF CREDIT AGREEMENT APPEARING ON THE REVERSE HEREOF TO WHICH WE AGREE. WE FURTHER AGREE THAT THE CREDIT AS ISSUED SHALL INCLUDE SUCH REVISIONS OF THE LANGUAGE SET FORTH ABOVE AS YOU DEEM NECESSARY.**

(APPLICANT)

| FOR BANK USE ONLY: APPROVAL OF CREDIT: | The Roman Catholic Archbishop of San Francisco |
|---|---|
| x _Virginia Adas_  Lending Officer | FIRM NAME |
| x _____  Credit Administrator (when applicable) | x _Harry G. Schlitt_  AUTHORIZED SIGNATURE |
| Banking Office _____ | Msgr. Harry G. Schlitt |
| ACCOUNT TO BE DEBITED: ( ) Banking Office G/L No. 11305000 ( ) Customer Acct. No. _____ | SOCIAL SECURITY/TAXPAYER I.D. NO. |

ID 01194E (Rev 05/2005)      1 of 2      (094-01)

Name: The Roman Catholic Archbishop Of San Francisco   A Corporation Sole   H69

Date: 1/24/2006                                    Amount: USD   363,000.00

Beneficiary Name: The Travelers Indemnity Company

## LETTER OF CREDIT AGREEMENT

In consideration of your opening, at our request, a Letter of Credit (herein called "the Credit), the terms and conditions of which appear on the reverse side hereof we hereby agree as follows:

1.   As to drafts under or purporting to be under the Credit, which are payable in lawful United States funds, we agree to pay you on demand at your issuing office in lawful United States funds, the amount of such draft(s) on the presentment to you thereof or, at your request in advance.

2.   As to drafts under or purporting to be under the Credit, which are payable in foreign currency, we agree to pay you at your office on demand, the equivalent of each such draft in lawful United States funds at your then prevailing rate of exchange effective for sales of that other currency for cable transfer to the country of which it is the currency.

3.   We also agree to pay to you any attorneys' fees incurred in the enforcement of this Letter of Credit Agreement, your service charge in accordance with your Schedule of Fees and Charges now existing or as hereafter adopted, and all other charges and expenses paid or incurred by you in connection therewith.

4.   We agree to reimburse you for any losses and charges incurred by you or made against you in connection with this Agreement and related to the reevaluation or fluctuations in the exchange rate of any currency whether United States or any other.

5.   We hereby convey and transfer to you a security interest in all goods, documents and instruments which shall come into your control or into your possession or that of any of your correspondents as the result of opening or in connection with any transactions under the Credit, which goods, documents and instruments are and shall be granted to you as security (a) for all payments made or to be made by you or your correspondents under the Credit; (b) for any interest, commission or other customary charges in relation to the Credit and (c) for any other obligations or liabilities (absolute or contingent) of us to you, which now exist or are hereafter created.  Upon any default by us in any of the undertakings set forth in this Letter of Credit Agreement, you are authorized to sell, under the provisions of the Commercial Code of the State of California, any or all goods, documents and instruments; in the event of any deficiency, we will pay the same to you immediately or in the event of any surplus, you shall pay the same to us or to the persons entitled thereto.  In the event such described property should suffer any decline in value we will upon demand, deliver to you additional collateral to your satisfaction.

6.   We agree that your rights and duties under the Credit are, except as otherwise provided herein, governed by the International Standby Practices 1998 (ISP98), International Chamber of Commerce Publication as in force on the date of issuance of the Credit.

7.   We agree that in the event of any amendments or modifications of the terms of the Credit, this Agreement shall be binding upon us with regard to the Credit as amended.  You may (at your option) issue the requested Credit through a correspondent of your choice.

8.   The users of the Letter of Credit shall be deemed our agents and we assume all risks of their acts of omissions.  Neither you nor your correspondents shall be responsible for/or: the validity, sufficiency, or genuineness of documents, even if such documents should in fact prove to be in any or all respects invalid, insufficient, fraudulent or forged; the solvency or responsibility of any party issuing any documents; delay in arrival or failure to arrive of any documents; delay in giving or failure to give notice of arrival or any other notice; failure of any draft to bear adequate reference to the Credit; failure of documents to accompany any draft at negotiation, or failure of any person to note the amount of any draft on the reverse of the Credit, to surrender or take up the Credit or to send documents apart from drafts as required by the terms of the Credit, each of which provisions, if contained in the Credit itself, it is agreed may be waived by you; errors, or omissions, or interruptions or delays in transmission or delivery of any message by mail, cable, telegraph, wireless or otherwise; nor shall you be responsible for any error, neglect, or default of any of your correspondents; and none of the above shall affect, impair, or prevent the vesting of any of your rights or powers hereunder.  In furtherance and extension and not in limitation of the specific provisions hereinbefore set forth, we agree that any action taken by you or any correspondent of you under or in connection with the Credit or relative drafts or documents, if taken in good faith, shall be binding on us and shall not put you or your correspondent under any resulting liability to us.

9.   We agree at any time and from time to time, on demand, to deliver, convey, transfer, or assign to you, as security for any and all of our obligations and liabilities hereunder, and also for any and all other obligations and liabilities, absolute or contingent, due or to become due, which are or may at any time hereafter be owing to you, additional security of a value and character satisfactory to you, or to make such cash payment as you may require.  We agree that all property belonging to us, or in which we may have an interest, conveyed, transferred, assigned, or paid to you, or coming into your possession or into the possession of anyone for you in any manner whatsoever, whether expressly as security, or for safekeeping or otherwise including any items marked for collection or transmission and the proceeds thereof, whether or not such property is in whole or in part released to us on trust or bailee receipt, is security for each and all such obligations and liabilities.  We agree that upon our failure at all times to keep a margin of security with you satisfactory to you, or upon the making by us of any assignments for the benefit of creditors, or upon the filing of any voluntary or involuntary petition in bankruptcy by or against us, or upon any application for the appointment of a receiver of any of our property, or upon any act of bankruptcy or state of insolvency of us, or if you in good faith deem yourself insecure at any time, or upon the death of any of us, all of such obligations and liabilities shall become and be immediately due and payable without demand or notice notwithstanding any credit or time allowed to us, or any instrument evidencing any such obligation or otherwise; and each of us, and all of us, as to property in which we may have any interest, expressly authorize you in any such event, or upon our failure to pay any of such obligations or liabilities when it or they shall become or be made due, to sell all such property, in accordance with the Commercial Code of the State of California and to apply the net proceeds of such sale or sales, together with any balance of deposits and any sum credited by or due from you to us, in general accounts or otherwise, to the payment of all of our obligations or liabilities to you however arising.

10.   Your rights specified in this Agreement are in addition to any created by statute or rule of law.  You are expressly given the right to execute and file and record endorsements, assignments, financing statements, and other instruments in the name of any of us with respect to property, property and interests relative to the Credit or any property of any of us in which you have a security interest which may at any time come into your possession under the Credit or by virtue of this Agreement.  We agree to pay all expenses, filing fees and other charges incurred by you relative to the perfection or enforcement of your rights and security interests hereunder.

11.   You shall not be deemed to have waived any of your rights hereunder, unless you or your authorized agent shall have signed such waiver, in writing.  No such waiver unless expressly stated therein shall be effective as to any transaction which occurs subsequent to the date of such waiver, nor as to any continuance of a breach after such waiver.

12.   We understand that any credit issued pursuant to this Agreement is the direct obligation of you established in favor of our designated beneficiaries.  Once established, such credit is irrevocable and is not subject to recall or stop payment, and any claim or demand by us to stop payment thereunder is void and of no effect.

13.   The word "property" as used in this Agreement includes goods, merchandise, securities, funds, choses in action, and any and all other forms of property, whether real, personal or mixed and any right or interest therein.

14.   This Agreement incorporates the provisions on the reverse hereof.  Time is of the essence.  Acceptance by you of partial or delinquent payments or your failure to exercise any right, power or remedy shall not waive any obligation of us or modify this Agreement.  You, your successors and assigns have all rights, powers and remedies herein and as provided by law, and may exercise the same and effect any set-off and proceed against any security for the obligations of us at any time notwithstanding any cessation of our liability or running of any statute of limitations, which we hereby waive to the fullest extent permitted by law.  Notice to you must be given at the office of City National Bank with this Credit and Agreement is addressed.

15.   We hereby agree to pay all reasonable fees and costs incurred by you and arising out of any act or action you may take to enforce any provision of this Agreement or to enforce collection of any sums, payments or obligations owing from us to you.

16.   If this Agreement is signed by one individual the terms, "we", "our", "us", shall be read throughout as "I", "my", "me", as the case may be. If this Agreement is signed by two or more parties, it shall be the joint and several Agreement of such parties.

Applicant's Signature: X _Nancy S. Schutt_

IO 01194E (Rev 07/2001)                         2 of 2                         (094P)

# EXHIBIT 2



**CITY NATIONAL BANK**
The way up.®

ORIGINAL

# ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $1,452,000.00 | 02-06-2006 | 01-15-2007 | | | ▓▓▓▓▓ | TS | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:**  THE ROMAN CATHOLIC ARCHBISHOP OF SAN
FRANCISCO, A CORPORATION SOLE
1 PETER YORKE WAY
SAN FRANCISCO, CA  94109-6602

**Lender:**  City National Bank, NA
Private Client Services - San Francisco #343000
150 California Street, 12th Floor
San Francisco, CA  94111

**THIS ASSIGNMENT OF DEPOSIT ACCOUNT** dated February 6, 2006, is made and executed between THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE ("Grantor") and City National Bank, NA ("Lender").

**ASSIGNMENT.**  For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.**  The word "Collateral" means the following described deposit accounts ("Account"):

Certificate of Deposit Account Number ▓▓▓▓ with Lender with an approximate balance of $1,000,000.00
Certificate of Deposit Account Number ▓▓▓▓ with Lender with an approximate balance of $1,000,000.00
Certificate of Deposit Account Number ▓▓▓▓ with Lender with an approximate balance of $1,000,000.00
Certificate of Deposit Account Number ▓▓▓▓ with Lender with an approximate balance of $100,000.00
Certificate of Deposit Account Number ▓▓▓▓ with Lender with an approximate balance of $100,000.00
Certificate of Deposit Account Number ▓▓▓▓ with Lender with an approximate balance of $1,000,000.00
Certificate of Deposit Account Number ▓▓▓▓ with Lender with an approximate balance of $100,000.00

*Perrick*

together with  (A)  all interest, whether now accrued or hereafter accruing;  (B)  all additional deposits hereafter made to the Account;  (C)  any and all proceeds from the Account; and  (D)  all renewals, replacements and substitutions for any of the foregoing.

**CROSS-COLLATERALIZATION.**  In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.**  With respect to the Collateral, Grantor represents and promises to Lender that:

**Ownership.**  Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.**  Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Prior Assignment.**  Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Further Transfer.**  Grantor shall not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.**  There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to this Collateral.

**Proceeds.**  Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

**Validity; Binding Effect.**  This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.**  Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest.  At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property.  Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.  Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default.  Lender may file a copy of this Agreement as a financing statement.  If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.**  While this Agreement is in effect, Lender may retain the rights to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks.  This Agreement will remain in effect until  (a) there no longer is any Indebtedness owing to Lender;  (b) all other obligations secured by this Agreement have been fulfilled; and  (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**ASSIGNMENT OF DEPOSIT ACCOUNT**
(Continued)

ORIGINAL Page 2

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will: (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Grantor to Lender immediately due and payable, without notice of any kind to Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the California Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the California Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any

**SSIGNMENT OF DEPOSIT ACCOU.**
(Continued)

ORIGINAL    Page 3

remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRACISCO County, State of California.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

## ASSIGNMENT OF DEPOSIT ACCOUNT
### (Continued)

Page 4

Account. The word "Account" means the deposit accounts described in the "Collateral Description" section.

Agreement. The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

Borrower. The word "Borrower" means THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE and includes all co-signers and co-makers signing the Note.

Collateral. The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

Default. The word "Default" means the Default set forth in this Agreement in the section titled "Default".

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

Grantor. The word "Grantor" means THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE.

Guaranty. The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

Lender. The word "Lender" means City National Bank, NA, its successors and assigns.

Note. The word "Note" means the Note executed by THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE in the principal amount of $1,452,000.00 dated February 6, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED FEBRUARY 6, 2006.

GRANTOR:

THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE

By: _____
MSGR. HARRY G. SCHLITT, Vicar for Administration of THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE

ORIGINAL



# ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,452,000.00 | 12-05-2006 | 01-15-2008 | ▮▮▮▮ | | ▮▮▮▮ | TKS | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

**Grantor:** THE ROMAN CATHOLIC ARCHBISHOP OF SAN
FRANCISCO, A CORPORATION SOLE
1 PETER YORKE WAY
SAN FRANCISCO, CA 94109-6602

**Lender:** City National Bank, NA
Private Client Services - San Francisco #343000
150 California Street, 12th Floor
San Francisco, CA 94111

THIS ASSIGNMENT OF DEPOSIT ACCOUNT dated December 5, 2006, is made and executed between THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE ("Grantor") and City National Bank, NA ("Lender").

**ASSIGNMENT.** For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" means the following described deposit accounts ("Account"):

Certificate of Deposit Account Number ▮▮▮▮ with Lender with an approximate balance of $500,000.00

Certificate of Deposit Account Number ▮▮▮▮ with Lender with an approximate balance of $500,000.00

Certificate of Deposit Account Number ▮▮▮▮ with Lender with an approximate balance of $500,000.00

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

In addition, the word "Collateral" includes all of Grantor's property (however owned if owned by more than one person or entity), in Lender's possession (or in the possession of a third party subject to Lender's control), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

(A) All property to which Lender acquires title or documents of title.

(B) All property assigned to Lender.

(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(D) All records relating to any of the property described in this Collateral section, whether in the form of writing, microfilm, microfiche, or electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Prior Assignment.** Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Further Transfer.** Grantor shall not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Proceeds.** Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

**Validity; Binding Effect.** This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

Case: 23-30564 Doc# 309 Filed: 02/13/24 Entered: 02/13/24 12:15:06 Page 17 of 49

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain the rights to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until (a) there no longer is any Indebtedness owing to Lender; (b) all other obligations secured by this Agreement have been fulfilled; and (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Grantor to Lender immediately due and payable, without notice of any kind to Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the California Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the California Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Account.** The word "Account" means the deposit accounts described in the "Collateral Description" section.

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means City National Bank, NA, its successors and assigns.

**Note.** The word "Note" means the Note executed by THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE in the principal amount of $1,452,000.00 dated December 5, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 5, 2006.

GRANTOR:

THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE

By: _____
MSGR. HARRY G. SCHLITT, Vicar Adm., Atty in
Fact of THE ROMAN CATHOLIC ARCHBISHOP OF
SAN FRANCISCO, A CORPORATION SOLE

LASER PRO Lending, Ver. 5.26.00.105 Copr. Harland Financial Solutions, Inc. 1997, 2006  All Rights Reserved.  - CA  T:\CFI\LPL\E90.FC  TR-50662  PR-LP-VN\A

Case: 23-30564    Doc# 469    Filed: 02/13/24    Entered: 02/13/24 14:13:56    Page 20 of 49



# The Roman Catholic Archbishop of San Francisco

| |---------------------------------COLLATERAL ---------------------------------| | |---------------SBLC-------------| |
| --- | --- | --- | --- | --- | --- | --- | --- |
| MATURITY | TCD NUMBER | ISSUE DATE | RATE | AMOUNT | TERM | NOTE | DOM |
| 1/8/2008 | | 1/9/2007 | 4.80 | 1,000,000 | 364 | 32664 | |
| 1/8/2008 | | 1/9/2007 | 4.80 | 100,000 | 364 | 32664 | |
| 1/8/2008 | | 1/9/2007 | 4.80 | 100,000 | 364 | 32664 | |
| 1/8/2008 | | 1/9/2007 | 4.80 | 100,000 | | 32664 | |
| <> | | | | 1,300,000 | | 1,248,287 | 1-Jan-08 |
| | | | | | | | |
| 1/8/2008 | | 1/9/2007 | 4.80 | 1,000,000 | 364 | 31460 | |
| 1/8/2008 | | 1/8/2007 | 4.80 | 100,000 | 364 | 31460 | |
| <> | | | | 1,100,000 | | 1,016,000 | 31-Dec-07 |
| | | | | | | | |
| 1/8/2008 | | 1/9/2007 | 4.80 | 500,000 | 364 | 33805 | |
| 1/8/2008 | | 1/9/2007 | 4.80 | 500,000 | 364 | 33805 | |
| 1/8/2008 | | 1/9/2007 | 4.80 | 500,000 | 364 | 33805 | |
| <> | | | | 1,500,000 | | 1,452,000 | 15-Jan-08 |
| | | | | | | | |
| TOTAL | | | | 3,900,000 | | 3,716,287 | |



**CITY NATIONAL BANK**
The way up.•

# ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $601,271.00 | 03-07-2011 | 01-03-2012 | ▓▓▓▓ | | ▓▓▓▓ | TKS | ▓▓▓ |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing " * * * * " has been omitted due to text length limitations.

| | | |
|---|---|---|
| **Grantor:** | THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE<br>1 PETER YORKE WAY<br>SAN FRANCISCO, CA 94109 | **Lender:** City National Bank, a national banking association<br>Private Client Services - San Francisco<br>150 California Street, 12th Floor<br>San Francisco, CA 94111 |

THIS ASSIGNMENT OF DEPOSIT ACCOUNT dated March 7, 2011, is made and executed between THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE ("Grantor") and City National Bank, a national banking association ("Lender").

**ASSIGNMENT.** For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" means the following described deposit accounts ("Account"):

Certificate of Deposit Account Number ▓▓▓▓ with Lender

Certificate of Deposit Account Number ▓▓▓▓ with Lender

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

In addition, the word "Collateral" includes all of Grantor's property (however owned if owned by more than one person or entity), in Lender's possession (or in the possession of a third party subject to Lender's control), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

(A) All property to which Lender acquires title or documents of title.

(B) All property assigned to Lender.

(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(D) All records relating to any of the property described in this Collateral section, whether in the form of writing, microfilm, microfiche, or electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Prior Assignment.** Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Further Transfer.** Grantor shall not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Proceeds.** Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

**Validity; Binding Effect.** This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain the rights

Case: 23-30564    Doc# 469    Filed: 02/13/24    Entered: 02/13/24 14:13:56    Page 22 of 49

# ASSIGNMENT OF DEPOSIT ACCOUNT

to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until (a) there no longer is any Indebtedness owing to Lender; (b) all other obligations secured by this Agreement have been fulfilled; and (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default In Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or ability to perform Grantor's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Grantor to Lender immediately due and payable, without notice of any kind to Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the California Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the California Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

# ASSIGNMENT OF DEPOSIT ACCOUNT

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**FINANCIAL STATEMENT CERTIFICATION.** Grantor represents and warrants to Lender that (a) Grantor's most recent financial statements provided to Lender are true, complete and correct in all respects, (b) they fairly represent Grantor's financial condition as of the date shown on the statements, and (c) no material adverse change has occurred in Grantor's financial condition since that date. Grantor further represents and warrants to Lender that Borrower's most recent federal income tax return and all schedules attached to such return ("Federal Tax Return") that have been delivered to Lender are a true and correct copy of such Federal Tax Return filed with the Internal Revenue Service for the tax period ending on the date indicated in such Federal Tax Return.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Account.** The word "Account" means the deposit accounts described in the "Collateral Description" section.

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means City National Bank, a national banking association, its successors and assigns.

**Note.** The word "Note" means the Irrevocable Standby Letter of Credit Application and Agreement executed by The Roman Catholic Archbishop of San Francisco, a Corporation Sole in the original amounts of $1,240,000.00 dated February 14, 2001 and $363,000.00 dated February 8, 2006, as amended, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 7, 2011.**

**GRANTOR:**

THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE

By: _James T. Tarantino_
JAMES T. TARANTINO, Attorney in Fact of THE
ROMAN CATHOLIC ARCHBISHOP OF SAN
FRANCISCO, A CORPORATION SOLE

LASER PRO Lending, Ver. 5.54.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2011. All Rights Reserved. - CA T:\CFI\LPL\E60.FC TR 24535 PR-17



**TRAVELERS**

Karin Ravalese

*Sr. Collateral Analyst*
*The Travelers Indemnity Company*
*Credit Risk Management*

(860) 277-1585 (phone)
(877) 271-0394 (fax)
kravales@travelers.com

One Tower Square – 8MN
Hartford, CT 06183

The Travelers Insurance Company
St. Paul Fire and Marine Insurance Company

January 7, 2011

Ms. Teni Karakas-Sarkisian
City National Bank
150 California Street, Suite 1200
San Francisco, CA 94111
Email: teni.karakas-sarkisian@cnb.com

| | |
|---|---|
| Applicant: | **The Roman Catholic Archbishop of San Francisco** |
| Re: | **Letter of Credit Number:** ▮▮▮▮▮▮ |
| Bank: | **City National Bank** |
| Amount: | **$601,271** |
| Beneficiary: | **The Travelers Indemnity Company ("Travelers")** |

Dear Ms. Karakas-Sarkisian:

The Travelers Indemnity Company hereby authorizes a reduction of $124,916 to the above referenced Letter of Credit to a new amount of $476,355.

Please process the amendment and **send to:**

The Travelers Indemnity Company
Credit Risk Management
One Tower Square – 8MN
Hartford, CT 06183
Attn: R. Thomas Coffey

If you should have any questions, please contact me at (860) 277-1585.

Sincerely,

Karin Ravalese
Credit Risk Management

cc:  Linda Reynolds, Arthur J. Gallagher Risk Management Services

# The Roman Catholic Archbishop of San Francisco

| | | | | COLLATERAL | | | | SBLC | |
|---|---|---|---|---|---|---|---|---|---|
| MATURITY | TCD NUMBER | | ISSUE DATE | RATE | AMOUNT | TERM | | NOTE | DOM |
| 1/3/2011 2012 | | ✓ | 1/4/2011 | 0.30 ✓ | 500,000 ✓ | 364 | | 32664 | |
| <> | | | | | 500,000 | | | | 1-Jan-11 |
| | | | | | | | | 467,743 | |
| 1/3/2011 2012 | | ✓ | 1/4/2011 | 0.30 ✓ | 100,000 ✓ | 364 | | 31460 | |
| 1/3/2011 2012 | | ✓ | 1/4/2011 | 0.30 ✓ | 100,000 ✓ | 364 | | 31460 | |
| 1/3/2011 4/5/11 | | ✓ | 1/4/2011 | 0.30 0.20 | 100,000 ✓ | 364 | | 31460 | |
| 1/3/2011 4/5/11 | | ✓ | 1/4/2011 | 0.30 0.20 | 100,000 ✓ | 364 | | 31460 | |
| 1/3/2011 4/5/11 | | ✓ | 1/4/2011 | 0.30 0.20 | 100,000 ✓ | 364 | | 31460 | |
| 1/3/2011 4/5/11 | | ✓ | 1/4/2011 | 0.30 0.20 | 100,000 ✓ | 364 | | 31460 | |
| <> | | | | | 600,000 | | | 548,135 | 31-Dec-10 |
| 1/4/2011 1/3/12 | | ✓ | 1/3/2012 | 0.30 ✓ | 500,000 ✓ | 364 | | 33805 | |
| 2/15/2011 ✓ | | | 2/15/2011 | 0.30 ✓ | 300,000 ✓ | 182 | | 33805 | |
| <> | | | | | 800,000 | | | | 15-Jan-11 |
| | | | | | | | | $601,271 New SBLC | |
| TOTAL | | | | | 1,900,000 | | | 548,135 | |

# EXHIBIT 3



## CITY NATIONAL BANK

**AN RBC COMPANY**

350 S. Grand Ave.
Los Angeles, CA 90071
Mail Code 944-01
SWIFT Address: CINAUS6L

November 27, 2019

THE TRAVELERS INDEMNITY COMPANY
CREDIT RISK MANAGEMENT
ONE TOWER SQUARE - GS05
HARTFORD, CT 06183
ATTN: R. THOMAS COFFEY, CHIEF CREDIT OFFICER

| | |
|---|---|
| Letter of Credit Number: | ▉▉▉▉▉▉ |
| Amendment Number: | AMD013 |
| Amendment Date: | 11/27/19 |
| Applicant | THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE |

We hereby amend our Irrevocable Standby Letter of Credit issued in your favor as follows:

1. LETTER OF CREDIT AMOUNT DECREASED BY USD25,000.00 TO AN AGGREGATE TOTAL AMOUNT OF USD76,000.00 (SEVENTY SIX THOUSAND AND NO/100 U.S. DOLLARS).

2. BENEFICIARY ADDRESS IS NOW TO READ:
CREDIT RISK MANAGEMENT
ONE TOWER SQUARE - GS05
HARTFORD, CT 06183
ATTN: R. THOMAS COFFEY, CHIEF CREDIT OFFICER

THIS AMENDMENT IS OPERATIVE WHEN ISSUED PER BENEFICIARY'S CONSENT LETTER DATED NOVEMBER 14, 2019.

All other terms and conditions remain unchanged.

This amendment forms an integral part of the original Letter of Credit and must be attached thereto.

If you have any questions, please call us at (888) 309-5139.

Sincerely,

CNB MEMBER FDIC
City National Bank is a subsidiary of Royal Bank of Canada.

# CITY NATIONAL BANK

## AN RBC COMPANY

350 S. Grand Ave.
Los Angeles, CA 90071
Mail Code 944-01
SWIFT Address: CINAUS6L

_____
Authorized Signature

**Agnes Martinez**
International Operations Manager

_____
Authorized Signature

**Rebecca Forgione**

2 of 2





CITY NATIONAL BANK
The way up.

City National Bank
555 S. Flower Street, 21st Floor
Los Angeles, CA 90071
Swift Address: CINAUS6L

September 14, 2017

THE TRAVELERS INDEMNITY COMPANY
CREDIT RISK MANAGEMENT
ONE TOWER SQUARE 8MN
HARTFORD, CT 06183
ATTN: R. THOMAS COFFEY

Letter of Credit Number: ███████
Amendment Number:     AMD012
Amendment Date:        09/14/17
Applicant              THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A
                       CORPORATION SOLE

We hereby amend our Irrevocable Standby Letter of Credit issued in your favor as follows:

1. LETTER OF CREDIT AMOUNT DECREASED BY USD152,125.00 TO AN AGGREGATE TOTAL
AMOUNT OF USD101,000.00 (ONE HUNDRED ONE THOUSAND AND NO/100 U.S. DOLLARS).

All other terms and conditions remain unchanged.

This amendment forms an integral part of the original Letter of Credit and must be attached thereto.

If you have any questions, please call us at (888) 309-5139.

Sincerely,

Authorized Signature
        Josie Paredes

Authorized Signature

        Rebecca Forgione

Case: 23-30564    Doc# 469    Filed: 02/13/24    Entered: 02/13/24 14:13:56    Page 31 of
                                        49





**CITY NATIONAL BANK**
The way up.

City National Bank
555 S. Flower Street, 21st Floor
Los Angeles, CA 90071
Swift Address: CINAUS6L

**SPECIAL INSTRUCTIONS TO BENEFICIARY:**
PLEASE SIGN AND RETURN IMMEDIATELY BY COURIER SERVICE TO THE ADDRESS
ABOVE THE ATTACHED COPY OF THIS AMENDMENT WITH YOUR ORIGINAL
SIGNATURE SIGNIFYING YOUR CONSENT THERETO OR REJECTION THEREOF. UPON
RECEIPT OF YOUR CONSENT, THIS AMENDMENT WILL BE CONSIDERED OPERATIVE. TO
EXPEDITE, PLEASE EMAIL YOUR RESPONSE TO TSOSTANDBY@CNB.COM

CONSENT:                                    REJECTION:

_____              _____
Authorized Signature                        Authorized Signature

THE TRAVELERS INDEMNITY COMPANY
NAME: _Johanna Johnston_
TITLE: _Sr. Collateral Analyst_
PHONE: (_860_) _954 - 1439_
EMAIL: _jjohnst2@travelers.com_
DATE: _9/18/17_

**SIGNATURE
VERIFIED BY:**
PIA LIRIO ~ 9/18/17 2:07 PM
Confirmed w/ JOHANNA JOHNSTON

2 of 2




The way up.

City National Bank
555 S. Flower Street, 24th Floor
Los Angeles, CA 90071
Swift Address: CINAUS6L

February 03, 2015

THE TRAVELERS INDEMNITY COMPANY
CREDIT RISK MANAGEMENT
ONE TOWER SQUARE 8MN
HARTFORD, CT 06183
ATTN: R. THOMAS COFFEY

Letter of Credit Number: ███████
Amendment Number: AMD011
Amendment Date: 02/03/15
Applicant THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A
CORPORATION SOLE

We hereby amend our Irrevocable Standby Letter of Credit issued in your favor as follows:

1. LETTER OF CREDIT DECREASED BY USD23,440.00 TO AN AGGREGATE TOTAL AMOUNT OF
USD253,125.00 (TWO HUNDRED FIFTY THREE THOUSAND ONE HUNDRED TWENTY FIVE AND
NO/100 U.S. DOLLARS).

All other terms and conditions remain unchanged.

This amendment forms an integral part of the original Letter of Credit and must be attached thereto.

If you have any questions, please call us at (888) 309-5139.

Sincerely,

Authorized Signature   Ron Sefara          Authorized Signature   Josie Paredes

**SPECIAL INSTRUCTIONS TO BENEFICIARY:**
PLEASE SIGN AND RETURN IMMEDIATELY BY COURIER SERVICE TO THE ADDRESS
ABOVE THE ATTACHED COPY OF THIS AMENDMENT WITH YOUR ORIGINAL SIGNATURE
SIGNIFYING YOUR CONSENT THERETO OR REJECTION THEREOF. UPON RECEIPT OF YOUR
CONSENT, THIS AMENDMENT WILL BE CONSIDERED OPERATIVE.



 **CITY NATIONAL BANK**
The way up.

City National Bank
555 S. Flower Street, 24th Floor
Los Angeles, CA 90071
Swift Address: CINAUS6L

CONSENT:                              REJECTION:

_____              _____
Authorized Signature                 Authorized Signature

THE TRAVELERS INDEMNITY COMPANY
NAME: Johanna Johnston
TITLE: Sr. Collateral Analyst
PHONE: (860) 954-1439
FAX: 855-846-0573
DATE: 2/4/15

2 of 2



**CITY NATIONAL BANK**
The way up.

555 S. Flower Street, 24th Floor
Los Angeles, CA 90071
Swift Address: CINAUS6L

## NOTIFICATION

March 17, 2014

THE TRAVELERS INDEMNITY COMPANY
ONE TOWER SQUARE 8MN,
HARTFORD, CT 06183
ATTN: R. THOMAS COFFEY

|  |  |
|---|---|
| Subject: | Standby Letter of Credit No. ███████████ |
| Beneficiary: | THE TRAVELERS INDEMNITY COMPANY |
| Amount: | USD 276,565.00 |

Ladies and Gentlemen:

As a result of a systems change, the subject Standby Letter of Credit No. ███████████ is converted to ██████████ .

Please note that all Letter of Credit related correspondence must quote the new Standby Letter of Credit No. ██████████ .

If you have any questions or require additional information, please do not hesitate to contact us at (888) 309-5139 quoting our reference No. ██████████ .

We appreciate your business and are pleased to be of service to you.

THIS IS A COMPUTER GENERATED ADVICE, NO SIGNATURE IS REQUIRED.

CC:  THE ROMAN CATHOLIC ARCHBISHOP OF SF
     1 PETER YORKE WAY
     SAN FRANCISCO, CA 94109-6602

CC:

1 of 1


**CITY NATIONAL BANK**
The way up.

**555 South Flower Street, 24th Floor**
**Los Angeles, CA 90071**

11/17/11

THE TRAVELERS INDEMNITY COMPANY
CREDIT RISK MANAGEMENT
ONE TOWER SQUARE 8MN
HARTFORD, CT 06183
ATTN; R. THOMAS COFFEY


Letter of Credit Number: ██████████████
Amendment Date:          11/17/11
Applicant:               THE ROMAN CATHOLIC ARCHBISHOP OF

Sir or Madam:

We hereby amend our Irrevocable Standby Letter of Credit dated 02/08/06
issued in your favor as follows:

1.  LETTER OF CREDIT AMOUNT DECREASED BY USD199,790.00 TO AN
    AGGREGATE TOTAL AMOUNT OF USD276,565.00 (TWO HUNDRED SEVENTY SIX
    THOUSAND FIVE HUNDRED SIXTY FIVE AND 00/100 U.S. DOLLARS).

THIS AMENDMENT SHALL BE CONSIDERED OPERATIVE AS PER BENEFICIARY'S
CONSENT LETTER DATED OCTOBER 24, 2011.

All other terms and conditions remain unchanged.

This amendment forms an integral part of the original Letter of Credit
and must be attached thereto.

If you have any questions, please call us at (213) 673-8640.

Sincerely,


_____                    _____
Authorized Signature                    Authorized Signature

Case: 23-30564    Doc# 469    Filed: 02/13/24    Entered: 02/13/24 14:13:56    Page 36 of
49                                                                    Member FDIC



Karin Ravalese

*Sr. Collateral Analyst*
*The Travelers Indemnity Company*
*Credit Risk Management*

(860) 277-1585 (phone)
(877) 271-0394 (fax)
kravalese@travelers.com

One Tower Square – 8MN
Hartford, CT  06183

The Travelers Insurance Company
St. Paul Fire and Marine Insurance Company

October 24, 2011

Ms. Teni Karakas-Sarkisian
City National Bank
150 California Street, Suite 1200
San Francisco, CA 94111
Email: teni.karakas-sarkisian@cnb.com

| | |
|---|---|
| Applicant: | **The Roman Catholic Archbishop of San Francisco** |
| Re: | **Letter of Credit Number:** ▮▮▮▮▮ |
| Bank: | **City National Bank** |
| Amount: | **$476,355** |
| Beneficiary: | **The Travelers Indemnity Company ("Travelers")** |

Dear Ms. Karakas-Sarkisian:

The Travelers Indemnity Company hereby authorizes a reduction of $199,790 to the above referenced Letter of Credit to a new amount of $276,565.

Please process the amendment and **send to**:

> The Travelers Indemnity Company
> Credit Risk Management
> One Tower Square – 8MN
> Hartford, CT 06183
> Attn: R. Thomas Coffey

If you should have any questions, please contact me at (860) 277-1585.

Sincerely,

Karin Ravalese
Credit Risk Management

cc: Linda Reynolds, Arthur J. Gallagher Risk Management Services

Case: 23-30564   Doc# 469   Filed: 02/13/24   Entered: 02/13/24 14:13:56   Page 37 of 49



**CITY NATIONAL BANK**
The way up.

**555 South Flower Street, 24th Floor**
**Los Angeles, CA 90071**

03/15/2011

THE TRAVELERS INDEMNITY COMPANY
CREDIT RISK MANAGEMENT
ONE TOWER SQUARE 8MN
HARTFORD, CT 06183
ATTN: R. THOMAS COFFEY

Letter of Credit Number: ███████████
Amendment Date: 03/15/2011
Applicant: THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO

Sir or Madam:

We hereby amend our Irrevocable Standby Letter of Credit dated 02/08/06
issued in your favor as follows:

1. LETTER OF CREDIT AMOUNT DECREASED BY USD124,916.00 TO AN AGGREGATE
TOTAL AMOUNT OF USD476,355.00 (FOUR HUNDRED SEVENTY SIX  THOUSAND THREE
HUNDRED FIFTY FIVE AND 00/100 U.S. DOLLARS).

THIS AMENDMENT SHALL BE CONSIDERED OPERATIVE AS PER BENEFICIARY'S
CONSENT LETTER DATED JANUARY 7, 2011.

All other terms and conditions remain unchanged.

This amendment forms an integral part of the original Letter of Credit
and must be attached thereto.

If you have any questions, please call us at (213) 673-8640.

Sincerely,

_____
Authorized Signature

_____
Authorized Signature

Page i

Member FDIC



**CITY NATIONAL BANK**
The way up.®

International Department
555 South Flower Street, 24th Floor, Los Angeles, CA 90071
T (213) 673-8640   F (213) 673-8649   SWIFT CINAUS6L

DATE: OCTOBER 04, 2010

AMENDMENT NO. 4 TO IRREVOCABLE STANDBY LETTER OF CREDIT ▮▮▮▮▮▮

BENEFICIARY:     THE TRAVELERS INDEMNITY COMPANY
                 CREDIT RISK MANAGEMENT
                 ONE TOWER SQUARE 8MN,
                 HARTFORD, CT 06183
                 ATTN: R. THOMAS COFFEY

APPLICANT:       THE ROMAN CATHOLIC ARCHBISHOP OF
                 SAN FRANCISCO, A CORPORATION SOLE
                 1 PETER YORKE WAY
                 SAN FRANCISCO CA 94109-6602

LADIES AND GENTLEMEN:

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT DATED
FEBRUARY 08, 2006 ISSUED IN YOUR FAVOR AS FOLLOWS:

1. BENEFICIARY'S ADDRESS AMENDED TO READ:

CREDIT RISK MANAGEMENT
ONE TOWER SQUARE 8MN
HARTFORD, CT 06183
ATTN: R. THOMAS COFFEY

THIS AMENDMENT IS CONSIDERED OPERATIVE AS PER BENEFICIARY'S CONSENT
LETTER DATED MARCH 24, 2010.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS AMENDMENT FORMS AN INTEGRAL PART OF THE ORIGINAL LETTER OF CREDIT
AND MUST BE ATTACHED THERETO.

_____          _____
AUTHORIZED SIGNATURE              AUTHORIZED SIGNATURE
RON SEFARA                        JOSIE PAREDES
INTERNATIONAL BANKING OFFICER     ASSISTANT VICE PRESIDENT

Member FDIC

**CITY NATIONAL BANK**
The way up.®

International Department
555 South Flower Street, 24th Floor, Los Angeles, CA 90071
T (213) 673-8640  F (213) 673-8649  SWIFT CINAUS6L

ISSUE DATE: MARCH 23, 2010

AMENDMENT NO. 3 TO IRREVOCABLE STANDBY LETTER OF CREDIT ▬▬▬▬▬

BENEFICIARY:    THE TRAVELERS INDEMNITY COMPANY
                CREDIT RISK MANAGEMENT
                ONE TOWER SQUARE 10 CR, HARTFORD,
                CT 06183 ATTN: R. THOMAS COFFEY

APPLICANT:      THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO
                A CORPORATION SOLE
                1 PETER YORKE WAY
                SAN FRANCISCO, CALIFORNIA 94109-6602

LADIES AND GENTLEMEN:

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT DATED
FEBRUARY 08, 2006 ISSUED IN YOUR FAVOR AS FOLLOWS:

1. CREDIT AMOUNT INCREASED BY USD159,246.00 TO AN AGGREGATE TOTAL
AMOUNT OF USD601,271.00 (SIX HUNDRED ONE THOUSAND TWO HUNDRED
SEVENTY ONE EXACTLY U.S. DOLLARS).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS AMENDMENT FORMS AN INTEGRAL PART OF THE ORIGINAL LETTER OF CREDIT
AND MUST BE ATTACHED THERETO.


AUTHORIZED SIGNATURE              AUTHORIZED SIGNATURE
RON SEFARA                        JOSIE PAREDES
INTERNATIONAL BANKING OFFICER     ASSISTANT VICE PRESIDENT

Member FDIC

# CITY NATIONAL BANK
## The way up.

International Department
555 South Flower Street, 24th Floor, Los Angeles, CA 90071
T (213) 673-8640  F (213) 673-8649  SWIFT CINAUS6L

ISSUE DATE: JANUARY 13, 2009

AMENDMENT NO. 2 TO IRREVOCABLE STANDBY LETTER OF CREDIT

BENEFICIARY:   THE TRAVELERS INDEMNITY COMPANY
               CREDIT RISK MANAGEMENT
               ONE TOWER SQUARE 10 CR, HARTFORD,
               CT 06183 ATTN; R. THOMAS COFFEY

APPLICANT:     THE ROMAN CATHOLIC ARCHBISHOP OF
               SAN FRANCISCO, A CORPORATION SOLE
               1 PETER YORKE WAY
               SAN FRANCISCO, CA 94109-6602

LADIES/GENTLEMEN:

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT DATED
FEBRUARY 08, 2006 ISSUED IN YOUR FAVOR AS FOLLOWS:

-CREDIT AMOUNT DECREASED BY USD267,847.00 TO AN AGGREGATE TOTAL
 AMOUNT OF USD442,025.00 (FOUR HUNDRED FORTY TWO THOUSAND TWENTY
 FIVE EXACTLY U.S DOLLARS).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS AMENDMENT FORMS AN INTEGRAL PART OF THE ORIGINAL LETTER
OF CREDIT AND MUST BE ATTACHED THERETO.

AUTHORIZED SIGNATURE                    AUTHORIZED SIGNATURE
JOSIE PAREDES                           MUNIR KARKAR
ASSISTANT VICE PRESIDENT                ASSISTANT VICE PRESIDENT

SPECIAL INSTRUCTIONS TO BENEFICIARY:  PLEASE SIGN AND RETURN
IMMEDIATELY BY COURIER SERVICE THE ATTACHED COPY OF THIS
AMENDMENT WITH YOUR ORIGINAL SIGNATURE SIGNIFYING YOUR
CONSENT THERETO OR REJECTION THEREOF.  UPON RECEIPT OF YOUR
CONSENT, THIS AMENDMENT WILL BE CONSIDERED OPERATIVE.

CONSENT:                        REJECTION:

_____             _____
AUTHORIZED SIGNATURE            AUTHORIZED SIGNATURE

Attorney- in Fact
_____             _____
TITLE                           TITLE
THE TRAVELERS INDEMNITY COMPANY    THE TRAVELERS INDEMNITY COMPANY

DATE: _____               DATE: _____

Member FDIC



# CITY NATIONAL BANK

## The way up.

International Department
555 South Flower Street, 24th Floor, Los Angeles, CA 90071
T (213) 673-8640   F (213) 673-8649  SWIFT CINAUS6L

ISSUE DATE: JANUARY 13, 2009

AMENDMENT NO. 2 TO IRREVOCABLE STANDBY LETTER OF CREDIT

BENEFICIARY:   THE TRAVELERS INDEMNITY COMPANY
               CREDIT RISK MANAGEMENT
               ONE TOWER SQUARE 10 CR, HARTFORD,
               CT 06183 ATTN; R. THOMAS COFFEY

APPLICANT:     THE ROMAN CATHOLIC ARCHBISHOP OF
               SAN FRANCISCO, A CORPORATION SOLE
               1 PETER YORKE WAY
               SAN FRANCISCO, CA 94109-6602

LADIES/GENTLEMEN:

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT DATED
FEBRUARY 08, 2006 ISSUED IN YOUR FAVOR AS FOLLOWS:

-CREDIT AMOUNT DECREASED BY USD267,847.00 TO AN AGGREGATE TOTAL
 AMOUNT OF USD442,025.00 (FOUR HUNDRED FORTY TWO THOUSAND TWENTY
 FIVE EXACTLY U.S DOLLARS).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS AMENDMENT FORMS AN INTEGRAL PART OF THE ORIGINAL LETTER
OF CREDIT AND MUST BE ATTACHED THERETO.

AUTHORIZED SIGNATURE               AUTHORIZED SIGNATURE
JOSIE PAREDES                      MUNIR KARKAR
ASSISTANT VICE PRESIDENT           ASSISTANT VICE PRESIDENT

SPECIAL INSTRUCTIONS TO BENEFICIARY: PLEASE SIGN AND RETURN
IMMEDIATELY BY COURIER SERVICE THE ATTACHED COPY OF THIS
AMENDMENT WITH YOUR ORIGINAL SIGNATURE SIGNIFYING YOUR
CONSENT THERETO OR REJECTION THEREOF. UPON RECEIPT OF YOUR
CONSENT, THIS AMENDMENT WILL BE CONSIDERED OPERATIVE.

CONSENT:                           REJECTION:

AUTHORIZED SIGNATURE               AUTHORIZED SIGNATURE

TITLE                              TITLE
THE TRAVELERS INDEMNITY COMPANY    THE TRAVELERS INDEMNITY COMPANY

DATE:                              DATE:

Member FDIC



# CITY NATIONAL BANK
## The way up.

[X] CITY NATIONAL BANK
   INTERNATIONAL DEPT.
   555 SOUTH FLOWER ST., 24TH FLOOR
   LOS ANGELES, CA 90071
   SWIFT ADDRESS:CINAUS6L TLX No. 825717
   TEL No.(213) 673-8620
   FAX No.(213) 673-8649

[ ] CITY NATIONAL BANK
   INTERNATIONAL DEPT.
   2101 WEBSTER ST., GR. FL
   OAKLAND, CA 94612
   TLX No. 825717
   TEL No. (510) 287-3191
   FAX No. (510) 287-3194

ISSUE DATE: JANUARY 10, 2008
AMENDMENT NO. 1 TO IRREVOCABLE STANDBY LETTER OF CREDIT ███████

BENEFICIARY:     THE TRAVELERS INDEMNITY COMPANY
                 CREDIT RISK MANAGEMENT
                 ONE TOWER SQUARE 10 CR
                 HARTFORD, CT 06183
                 ATTN; R. THOMAS COFFEY

APPLICANT:       THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,
                 A CORPORATION SOLE
                 1 PETER YORKE WAY
                 SAN FRANCISCO, CA 94109-6602

LADIES/GENTLEMEN:
WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT DATED
FEBRUARY 8, 2006 ISSUED IN YOUR FAVOR AS FOLLOWS:

1.CREDIT AMOUNT DECREASED BY USD742,128.00 TO AN AGGREGATE TOTAL
AMOUNT OF USD709,872.00 (seven hundred nine thousand eight
hundred seventy two exactly  U.S. Dollars).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.
THIS AMENDMENT FORMS AN INTEGRAL PART OF THE ORIGINAL LETTER
OF CREDIT AND MUST BE ATTACHED THERETO.

AUTHORIZED SIGNATURE                    AUTHORIZED SIGNATURE
OSCAR G. RAMOS                          RON SEFARA
ASST VICE PRESIDENT                     INTERNATIONAL BANKING OFFICER

SPECIAL INSTRUCTIONS TO BENEFICIARY:  PLEASE SIGN AND RETURN
IMMEDIATELY BY COURIER SERVICE THE ATTACHED COPY OF THIS
AMENDMENT WITH YOUR ORIGINAL SIGNATURE SIGNIFYING YOUR
CONSENT THERETO OR REJECTION THEREOF.  UPON RECEIPT OF YOUR
CONSENT, THIS AMENDMENT WILL BE CONSIDERED OPERATIVE.

CONSENT:                                REJECTION:

AUTHORIZED SIGNATURE                    AUTHORIZED SIGNATURE
THE TRAVELERS INDEMNITY COMPANY
Title Financial Analyst
Name Brian M. Quinn
Phone Number 860-277-6311
Date 1/18/08

International Department  555 South Flower Street, 24th Floor  Los Angeles, CA 90071
T: 213.673.8600  F: 213.673.8617    Toll Free: 888.488.9700

Member FDIC



**CITY NATIONAL BANK**

.The way up.*

[X] CITY NATIONAL BANK
   INTERNATIONAL DEPT.
    555 SOUTH FLOWER ST., 24TH FLOOR
    LOS ANGELES, CA  90071
    SWIFT ADDRESS:CINAUS6L TLX No. 825717
    TEL No.(213) 673-8620
    FAX No.(213) 673-8649

[ ] CITY NATIONAL BANK
   INTERNATIONAL DEPT.
   2101 WEBSTER ST., GROUND FL
   OAKLAND, CA  94612
   TLX No. 825717
   TEL No. (510) 287-3191
   FAX No. (510) 287-3194

01/02/2007

THE TRAVELERS INDEMNITY COMPANY·
CREDIT RISK MANAGEMENT
ONE TOWER SQUARE 10 CR
HARTFORD, CT 06183
ATTN: R. THOMAS COFFEY

Subject: Standby Letter of Credit No.
      Applicant: THE ROMAN CATHOLIC ARCHBISHOP OF
               SAN FRANCISCO, A CORPORATION SOLE
      Amount: USD 1,452,000.00

Ladies and Gentlemen:

We are pleased to announce that effective at the close of business on
Friday, November 3rd, 2006, our International Office located at
606 South Olive Street, Suite 300, Los Angeles, CA 90014, has relocated.

Our new location is: 555 South Flower Street, 24th Floor, Los Angeles, CA 90071

Effective November 6th, 2006, all Letter of Credit presentations and
correspondence must be addressed to:
City National Bank
International Department
555 South Flower Street, 24th Floor
Los Angeles, CA 90071

If you have any questions or require additional information, please do
not hesitate to contact us at (213) 673-8620.

Regards,

Authorized Signature
To Man Yuen
Vice President

Member FDIC



**CITY NATIONAL BANK**
The way up.•

CITY NATIONAL BANK
INTERNATIONAL DEPT.                    Northern California - Int'l. Operations
2101 WEBSTER ST.,GROUND FL.
OAKLAND, CA  94612
SWIFT ADDRESS:CINAUS6L TLX No. 825717
TEL No. (510) 287-3191
FAX No. (510) 287-3194

ISSUE DATE:  FEBRUARY 8, 2006

IRREVOCABLE STANDBY LETTER OF CREDIT NUMBER ███████████

BENEFICIARY:     THE TRAVELERS INDEMNITY COMPANY
                 CREDIT RISK MANAGEMENT
                 ONE TOWER SQUARE 10 CR,
                 HARTFORD, CT 06183
                 ATTN: R. THOMAS COFFEY

APPLICANT:       THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,
                 A CORPORATION SOLE
                 1 PETER YORKE WAY
                 SAN FRANCISCO, CA 94109-6602

AMOUNT:          USD 363,000.00
THREE HUNDRED SIXTY THREE THOUSAND EXACTLY U.S. DOLLARS

EXPIRY DATE AND PLACE: JANUARY 15, 2007 AT CITY NATIONAL BANK,
                       INTL DEPARTMENT, LOS ANGELES, CALIFORNIA

GENTLEMEN:

WE HEREBY ESTABLISH THIS CLEAN, IRREVOCABLE STANDBY LETTER OF
CREDIT IN FAVOR OF THE AFORESAID ADDRESSEE ("BENEFICIARY") FOR
DRAWINGS UP TO USD363,000.00 (THREE HUNDRED SIXTY THREE THOUSAND
U. S. DOLLARS) EFFECTIVE IMMEDIATELY. IN ADDITION, THE AMOUNT OF
FUNDS AVAILABLE UNDER THIS LETTER OF CREDIT SHALL INCREASE
PURSUANT TO THE FOLLOWING SCHEDULE:

DATE OF INCREASE TOTAL AGGREGATE AMOUNT (INCLUDING THE INCREASES)
APRIL 1, 2006        USD  726,000.00
JULY 1, 2006         USD1,089,000.00
OCTOBER 1, 2006      USD1,452,000.00

AFTER ALL OF THE SCHEDULED CHANGES, THE TOTAL AGGREGATE AMOUNT OF
THIS LETTER OF CREDIT SHALL BE USD1,452,000.00 (ONE MILLION FOUR
HUNDRED FIFTY TWO THOUSAND U.S. DOLLARS), WHICH AMOUNT SHALL
REMAIN THE TOTAL AGGREGATE AMOUNT OF THIS LETTER OF CREDIT UNTIL
THE EXPIRY DATE, OR ANY FUTURE EXPIRATION DATE.  AFTER THE LETTER
OF CREDIT HAS BEEN ISSUED, IT CANNOT BE REVOKED OR REDUCED
WITHOUT THE WRITTEN CONSENT OF THE BENEFICIARY.

---

2101 Webster Street, Ground Floor  Oakland, CA 94612                    Member FDIC



THIS LETTER OF CREDIT IS ISSUED, PRESENTABLE AND PAYABLE AT OUR OFFICE AT CITY NATIONAL BANK, INTERNATIONAL DEPARTMENT, 606 SOUTH OLIVE STREET, SUITE 300, LOS ANGELES, CA 90014 AND EXPIRES WITH OUR CLOSE OF BUSINESS ON JANUARY 15, 2007. PARTIAL OR FULL DRAWINGS UNDER THIS LETTER OF CREDIT SHALL NOT ALTER THE BANK'S OBLIGATION TO INCREASE THE AMOUNT OF THE LETTER OF CREDIT PURSUANT TO THE ABOVE SCHEDULE. IN NO EVENT SHALL ANY DRAWING BY THE BENEFICIARY IMPAIR THE BENEFICIARY'S RIGHTS TO DRAW UPON ANY INCREASED AMOUNT OF THE LETTER OF CREDIT.

THE TERM "BENEFICIARY" INCLUDES ANY SUCCESSOR BY OPERATION OF LAW OF THE NAMED BENEFICIARY INCLUDING, WITHOUT LIMITATION, ANY LIQUIDATOR, REHABILITATOR, RECEIVER OR CONSERVATOR.

WE HEREBY UNDERTAKE TO PROMPTLY HONOR YOUR SIGHT DRAFT(S) DRAWN ON CITY NATIONAL BANK, INTERNATIONAL DEPARTMENT, LOS ANGELES, CALIFORNIA, INDICATING OUR CREDIT NO. █████████████, FOR ALL OR ANY PART OF THIS CREDIT IF PRESENTED AT OUR OFFICE SPECIFIED ABOVE ON OR BEFORE THE EXPIRY DATE OR ANY AUTOMATICALLY EXTENDED EXPIRY DATE. IF YOU SO CHOOSE, YOU WILL BE ABLE TO DRAW ON THIS LETTER OF CREDIT MORE THAN ONCE, SO LONG AS THE SUM OF THE AMOUNTS, WHICH YOU HAVE DRAWN, DOES NOT EXCEED THE TOTAL AGGREGATE AMOUNT OF THE LETTER OF CREDIT.

THIS LETTER OF CREDIT SETS FORTH IN FULL THE TERMS OF OUR UNDERTAKING, AND SUCH UNDERTAKING SHALL NOT IN ANY WAY BE MODIFIED, AMENDED OR AMPLIFIED BY REFERENCE TO ANY NOTE, DOCUMENT, INSTRUMENT OR AGREEMENT REFERRED TO HEREIN OR IN WHICH THIS LETTER OF CREDIT IS REFERRED TO OR TO WHICH THIS LETTER OF CREDIT RELATES AND ANY SUCH REFERENCE SHALL NOT BE DEEMED TO BE INCORPORATED HEREIN BY REFERENCE. THE OBLIGATION OF CITY NATIONAL BANK, UNDER THIS LETTER OF CREDIT IS THE INDIVIDUAL OBLIGATION OF CITY NATIONAL BANK AND IS NO WAY CONTINGENT UPON REIMBURSEMENT WITH RESPECT THERETO.

PARTIAL DRAWINGS ARE ALLOWED.
MULTIPLE DRAWINGS ARE ALLOWED.

EACH DRAFT MUST STATE ''DRAWN UNDER CREDIT NO. ████████████
OF CITY NATIONAL BANK, LOS ANGELES, CALIFORNIA.''

Member FDIC



IRREVOCABLE STANDBY LETTER OF CREDIT NO. ███████████

PAGE 3 OF 3 PAGES

IT IS A CONDITION OF THIS LETTER OF CREDIT THAT IT IS DEEMED TO BE AUTOMATICALLY EXTENDED WITHOUT AMENDMENT FOR ONE YEAR FROM THE EXPIRY DATE HEREOF, OR ANY FUTURE EXPIRATION DATE, UNLESS AT LEAST NINETY (90) DAYS PRIOR TO ANY EXPIRATION DATE WE NOTIFY YOU BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, THAT WE ELECT NOT TO CONSIDER THIS LETTER OF CREDIT EXTENDED FOR ANY SUCH ADDITIONAL PERIOD.  IN THAT EVENT, YOU MAY DRAW HEREUNDER ON OR PRIOR TO THE THEN RELEVANT EXPIRATION DATE, UP TO THE TOTAL AGGREGATE AMOUNT THEN AVAILABLE HEREUNDER, AGAINST YOUR SIGHT DRAFT(S) ON CITY NATIONAL BANK, INTERNATIONAL DEPARTMENT, LOS ANGELES, CALIFORNIA, BEARING THE NUMBER OF THIS LETTER OF CREDIT.

THIS LETTER OF CREDIT IS SUBJECT TO AND GOVERNED BY THE LAWS OF THE STATE OF CONNECTICUT AND THE 1993 REVISION OF THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS OF THE INTERNATIONAL CHAMBER OF COMMERCE (PUBLICATION NO. 500) AND, IN THE EVENT OF ANY CONFLICT, THE LAWS OF THE STATE OF CONNECTICUT WILL CONTROL. IF THIS CREDIT EXPIRES DURING AN INTERRUPTION OF BUSINESS AS DESCRIBED IN ARTICLE 17 OF SAID PUBLICATION 500, THE BANK HEREBY SPECIFICALLY AGREES TO EFFECT PAYMENT IF THIS CREDIT IS DRAWN AGAINST WITHIN 30 DAYS AFTER THE RESUMPTION OF BUSINESS.

AUTHORIZED SIGNATURE
MIKE CLAYCOMB
VICE PRESIDENT

AUTHORIZED SIGNATURE
MARIA DE SENNA
ASSISTANT VICE PRESIDENT

Member FDIC

# EXHIBIT 4

Los Angeles, CA                                   January 2, 2024

**At Sight Draft**

Pay to the order of    The Travelers Indemnity Company                    US $76,000.00

Seventy Six Thousand and 00/100 U.S. ————————————————————————— Dollars

Drawn Under City National Bank Letter of Credit No. █████████ (prev. █████████

Value Received and Charge to Account of

To    City National Bank                          The Travelers Indemnity Company
      Attn: Standby Letters of Credit
      350 S. Grand Ave., Mail Code: 944-01
      Los Angeles, CA 90071                        Irina Zhovkliy
                                                   Assistant Vice President

M-12287 2-85 Printed in U.S.A.