PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
   WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:    (916) 329-7400
Facsimile:    (916) 329-7435
Email:        ppascuzzi@ffwplaw.com
              jrios@ffwplaw.com
              tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    (415) 434-9100
Facsimile:    (415) 434-3947
Email:        okatz@sheppardmullin.com
              amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop
of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>      Debtor and<br>      Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**DEBTOR'S REQUEST FOR HEARING AND OPPOSITION TO *EX PARTE* APPLICATION OF CERTAIN INSURERS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 COMPELLING PRODUCTION OF DOCUMENTS** |

The Roman Catholic Archbishop of San Francisco ("RCASF" or "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), hereby submits its opposition ("Opposition") to and respectfully requests a status conference hearing to discuss the *Ex Parte Application of the Certain Insurers for Entry of an Order Pursuant to Bankruptcy Rule 2004 Compelling Production of Documents* [ECF No. 571] (the "Application"), filed on April 2, 2024, by the Century Indemnity Company, as successor to CCI Insurance Company and Insurance Company of North America, Pacific Indemnity Company ("Century"), Westchester Fire Insurance Company as successor in interest to Industrial Underwriters Insurance Company for policies JU835-8355 and JU895-0964 ("Westchester"), and Continental Insurance Company ("Continental," and together with Century, Westchester, and any other parties properly joined in the Application, the "Insurers"). In support of this Opposition, the Debtor hereby states as follows:

## I. INTRODUCTION

At the outset of this Bankruptcy Case, the Debtor expressed its readiness and willingness to engage with all parties in interest to work toward achieving the best result possible in the shortest, reasonable amount of time. The Debtor and its professionals have maintained, and again reiterate, this commitment to achieving the most reasonably expedient optimal outcome. The Debtor must, however, oppose the Application in order to correct certain misstatements of fact asserted therein, and because the Insurers' document requests far exceed not only the Committee's discovery requests but also the limits of permissible discovery under Rule 2004. The Debtor further opposes the Application because the Insurers' proposed form of order seeks to compel the Debtor to produce documents, despite the fact that the Insurers have neither requested such documents from the Debtor directly as part of the Bankruptcy Case, nor made any meaningful effort to confer with the Debtor with respect to the production of such documents.

Critically, none of the Insurers themselves have executed the Agreement to be Bound by the Protective Order, and only one of the Insurers' counsel, Simpson Thacher, have done so. The documents already produced by the Debtor to the Committee, and beyond that, the broad swaths of documents now sought by the Insurers on top of the current productions, contain highly sensitive

-1-

CASE NO. 23-30564
DEBTOR'S OPPOSITION TO *EX PARTE* APPLICATION OF CERTAIN INSURERS FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

SMRH:4885-9230-8660

Case: 23-30564   Doc# 580   Filed: 04/08/24   Entered: 04/08/24 19:48:41   Page 2 of 11

and confidential information. The Debtor will not and cannot produce the documents to the Insurers until each signs the Agreement to be Bound.

Moreover, at least some of the Insurers, such as LMI, have represented that they will *not* sign the Agreement to be Bound but want the Court to order production of these highly confidential documents nevertheless. *See, e.g.*, ECF No. 577 at 3. In early February, the Debtor was approached with a request by certain Insurers to modify the Protective Order to clarify the one signature requirement on the Agreement to be Bound for law firms and Insurers. Since then, the Debtor has been working with the Committee and the Insurers on a stipulation to do so. The Debtor believes that stipulation is finalized and ready for signature, although it has taken the Insurers an exorbitant amount of time to get it done. Only recently did LMI insist on a substantive modification to the Protective Order, which the Debtor has rejected.[1]

The Debtor is likewise ready and willing to provide the Insurers with subsets of the document production it has provided to the Committee, which is all the Insurers purport (albeit misleadingly) to seek once the Insurers are subject to a protective order. But instead of engaging in any meaningful way with the Debtor, as they should have, the Insurers have skipped straight to the courthouse in attempt to exempt themselves from the confidentiality obligations accepted by all other discovery stakeholders. Their Application is thus premature and improper.

## II. BACKGROUND

**A. Procedural History.**

On November 7, 2023 the Committee filed an *ex parte* application [ECF No. 292] (the "Committee 2004 Application") for discovery under Rule 2004, which was granted pursuant to the terms of the Court's order [ECF No. 383] (the "Committee 2004 Order") entered on December 19, 2023.

---

[1] The issue involves paragraph 27 of the Protective Order requiring Receiving Parties to return or destroy Designated Materials upon the entry of a final decree in the Bankruptcy Case, except as otherwise ordered by the Court. LMI would like to add an elaborate process for Receiving Parties to retain Designated Materials to meet the requirements of its auditors, accountants, regulatory agencies, or reinsurers. The Debtor's position is the "except as otherwise ordered by the Court" provision allows LMI to seek such relief if and when it is needed at the end of the case and that it would not be prudent to agree to a blanket exception now for circumstances that are unknown at this time.

-2- CASE No. 23-30564
SMRH:4885-9230-8660 DEBTOR'S OPPOSITION TO *EX PARTE* APPLICATION OF CERTAIN INSURERS FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

Case: 23-30564    Doc# 580    Filed: 04/08/24    Entered: 04/08/24 19:48:41    Page 3 of 11

On December 18, 2023, the Court entered the stipulated protective order [ECF No. 374] (the "Protective Order") negotiated between the Debtor and the Committee, which governs discovery in the Bankruptcy Case. The Protective Order includes an Acknowledgment and Agreement to be Bound form (the "Agreement to be Bound") for additional parties to join the Protective Order.

On January 9, 2024, counsel for the Committee served on the Debtor the Committee's *Subpoena [Duces Tecum] for Rule 2004 Examination* and 121 requests for production attached thereto pursuant to the Committee 2004 Order (the "Committee's Subpoena"). Based on prior conferrals with the Debtor, the Committee 2004 Subpoena had been revised and slightly narrowed down from the originally proposed 138 requests for production contained in the Committee 2004 Application.

On October 27, 2023, Century and Westchester filed a motion for relief from the automatic stay to permit a coverage action they had filed in state court less than 30 days prior to the petition date. ECF No. 251. That motion was resolved by a stipulation providing for the withdrawal of the motion for relief from stay, agreement not to re-file the motion without providing at least 45 days notice to the Debtor, and the Debtor agreeing not to remove the coverage action without providing at least 45 days to the moving parties (in addition to all parties reserving all rights). ECF No. 453.

On April 2, 2024, without conferring with the Debtor, Century, Westchester, and Continental filed the Application. ECF No. 571. The Application states that Century, Westchester, and Continental "previously asked the Debtor to provide the [requested documents], but the Debtors have declined to do so," *id.* at 5, but it does not set forth any suggestion that those requests were made as part of the Bankruptcy Case or even post- and not pre-petition.

On April 4, 2024, Chicago Insurance Company, Fireman's Fund Insurance Company, Westport Insurance Corporation f/k/a Employers Reinsurance Corporation, and Appalachian Insurance Company joined in the Application. ECF No. 572. And, on April 5, 2024, First State Insurance Company and Certain Underwriters at Lloyd's London and Certain London Market Companies ("LMI") filed separate joinders to the Application. Notably, LMI's joinder focuses on LMI's *pre-petition* efforts to obtain certain of the documents now requested in the Application. Equally notable is the absence of any suggestion that LMI or any other of the insurers had

Case: 23-30564    Doc# 580    Filed: 04/08/24    Entered: 04/08/24 19:48:41    Page 4 of 11

meaningfully conferred with the Debtor's counsel within the context of the Bankruptcy Case regarding the document requests or any desired revisions to the Protective Order to facilitate the Debtor's production of documents to them.

**B.     The Insurers Failed to Meaningfully Confer Prior to Filing the Application.**

Concurrent with the Debtor and Committee negotiating a protective order and an order on the Committee's 2004 Application, the Debtor and some of the Insurers (and other of the Debtor's insurers) were conferring regarding the stay and potential removal of the state court coverage action. As part of those conferrals, counsel for the Century and Westchester Insurers raised the issue of Century's and Westchester's desire to receive the Debtor's document productions to the Committee in the context of negotiating a stipulation regarding the state court coverage action. In response, on January 26, 2024, counsel for the Debtor acknowledged the Insurers' desire to partake in the Committee's discovery but explained that the Debtor was still conferring with the Committee regarding the scope of the Debtor's document production, and as such, the Debtor could not at that time commit to reproduce to the Insurers *every* document that would be produced to the Debtors. The Debtor's counsel also asked that in the meantime, the Insurers "sign the protective order and send it back. [The Debtor] can't produce anything until we get that. No one has sent in a signed protective order." While Simpson Thacher, as counsel for Century and Westchester, subsequently provided an executed Agreement to be Bound on behalf of Simpson Thacher on January 31, 2024, none of the Insurers have executed the Agreement to be Bound to date. Nor have any of the Insurers meaningfully conferred with the Debtor since that time regarding potential revisions to the Protective Order and to even reiterate the Insurers requests for copies of the Debtor's document production.

In contrast, after receiving the Committee Subpoena, the Debtor and the Committee have worked cooperatively and conferred regularly concerning the Debtor's objections to the document requests, the categories of documents that are of priority to the Committee, initial compromises and limitations on the document requests, such as agreeing generally to a 10-year lookback period for most requests, and on the Debtor's process for responding to the Committee's "abuse claims" requests.

Pursuant to the Protective Order, Committee 2004 Order, the Committee's Subpoena, and the Debtor's and Committee's conferrals, the Debtor has made nine document productions to date, consisting of more than 63,000 pages of documentsm, including hundreds if not thousands of highly confidential financial data files and reports. The Debtor remains willing and ready to provide the subsets of this production to the Insurers and has been awaiting receipt of executed Agreements to be Bound so that the documents can be provided to the Insurers. And the Debtor is optimistic that this issue can be mutually resolved in a timely manner without the Court's intervention if the Insurers' counsel engages and confers with the Debtor's counsel. The Insurers' Application is thus premature.

### III. THE DEBTOR'S OPPOSITION

**A. The Insurers' Requested Discovery Extends Beyond the Committee's Discovery.**

In their Application, the Insurers assert that they "simply request that the Debtor and/or Committee provide a *subset* of" the documents and information the Debtor is producing to the Committee. (App. at 2 (emphasis added)). But that is not true. The Insurers' proposed requests for production, on their face, extend well beyond seeking a reproduction of documents the Debtor has already produced to the Committee in this case.

- The Insurers first request seeks "***all***" documents and communications "relating to" the Debtor's insurance coverage and policies dating back to 1950, "including"—but not by any means limited to—documents responsive to the Committee's request nos. 94-107.

- The Insurers' second request similarly seeks "***all***" documents and communications "relating to" abuse claims, "including"—but not limited to—the documents already produced in response to the Committee's request nos. 108-138.

- In their third request, the Insurers also seek "***all***" documents and communications with the Committee regarding the "scope of the Debtor's search, collection, and production . . ." in response to request nos. 94-138.

- The Insurers' fourth request is completely untethered from the Committee's requests, as it seeks "***all***" documents and communications, "including written discovery

-5-

Case: 23-30564    Doc# 580    Filed: 04/08/24    Entered: 04/08/24 19:48:41    Page 6 of 11

CASE NO. 23-30564
DEBTOR'S OPPOSITION TO *EX PARTE* APPLICATION OF CERTAIN INSURERS FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004

SMRH:4885-9230-8660

responses, jury interrogatory and verdict forms, trial transcripts, deposition transcripts, pre-trial substantive motions, and transcripts of pre-trial hearings" for any litigation involved Fr. Joseph T. Pritchard.

As an initial matter, and reflective of the Insurers' failure to adequately confer with the Debtor before filing the Application, the Insurers' first three requests reference the Committee's *draft*, never served subpoena. Following the Court's order granting the Committee's requested Rule 2004 discovery, the Committee served a revised subpoena containing 121, not 138, requests. As such, the Insurers' first three requests are flawed and in that sense, nonsensical and unanswerable.

Second, by their plain terms, each of the Insurers' first two requests entirely subsume the referenced (but never served) 43 Committee requests. These requests make the Debtor's current production a subset of the information sought by the Insurers and not *vice versa*, as the Insurers would have the Court believe.

Third, the Insurers' requests ignore not only the final requests actually served on the Debtor by the Committee but also the initial compromises that the Debtor and Committee have reached (while respectively reserving all rights) regarding the Committee's "abuse claims" requests. Pursuant thereto, the Debtor's initial production efforts included reproducing the documents produced in JCCP No. 5108 to the Committee. And, presently, the Debtor and Committee are reviewing the proofs of claim filed in this case, and secondarily, in any pending lawsuits against the Debtor or its affiliates that have no corresponding proofs of claim, to identify whether there are accused individuals for whom the Debtor possesses a personnel file that has not been produced, with such documents to comprise the second stage of the Debtor's production in response to the Committee's "abuse claim" requests. The Insurers' second and fourth requests therefore extend far beyond the information the Debtor is providing to the Committee as part of ongoing discovery.

Finally, given the excessive and far-ranging scope of the Insurers' requests, the requested discovery is untethered from the parameters of discovery sanctioned by Rule 2004 and other applicable rules. The Debtors object to the discovery as not relevant to the Insurers' claims in the Bankruptcy Case, unduly burdensome on the Debtor given the lack of apparent relevance of the information sought, temporally overbroad under any possible applicable law in that it seeks

-6- CASE NO. 23-30564
DEBTOR'S OPPOSITION TO *EX PARTE* APPLICATION OF CERTAIN INSURERS FOR ENTRY OF AN ORDER PURSUANT TO RULE 2004
SMRH:4885-9230-8660

Case: 23-30564    Doc# 580    Filed: 04/08/24    Entered: 04/08/24 19:48:41    Page 7 of 11

documents and information within a 75-year time period, and duplicative of the depositions the Committee will take of the Debtor's representative(s) regarding their discovery search efforts.

### B. The Balance of the Insurers' Requested Discovery Exceeds the Limits of Rule 2004.

"The object of the [Rule 2004] examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." *Cameron v. United States*, 231 U.S. 710, 717 (1914); *see also In re Downs*, No. 8:16-BK-12589-SC, 2021 WL 4823508, at *3 (Bankr. C.D. Cal. Oct. 13, 2021) (explaining the purpose of Rule 2004 is "to discover assets, liabilities, improper transfers, and other important information related to the administration of a bankruptcy estate"). While discovery under Rule 2004 is unquestionably broad, it is not unlimited. Indeed, the Ninth Circuit Bankruptcy Appellate Panel has cautioned that Rule 2004 "is not without limits" and cannot "stray into matters which are not relevant to the basic inquiry." *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018); *see also In re Farris-Ellison*, No. 2:11-bk-33861-RK, 2015 WL 5306600, at *3 (Bankr. C.D. Cal. Sep. 10, 2015) ("[A] Rule 2004 examination must be both 'relevant and reasonable.'"). Rule 2004 requires a court to "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-14135-RK, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (quoting *In re SunEdison, Inc.*, 562 B.R. at 250). "That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production." *Id.* Rather, Rule 2004 examinations must be both "relevant and reasonable." *Id.* (citations omitted). The parties seeking Rule 2004 discovery bear "the burden to show good cause for the examination" they seek, and determining whether to grant relief "lies within the sound discretion of the Bankruptcy Court." *In re SunEdison, Inc.*, 562 B.R. at 249.

Here, the Insurers have failed to demonstrate good cause. While the Debtor does not object to providing the Insurers with copies of documents and information the Debtor has produced to the Committee, the Debtor objects to the Insurers' attempt to obtain sweeping, overbroad, and unduly burdensome discovery for almost 75 years' worth of documents. The documents sought by the Insurers have no apparent relevance, and the Insurers have not explained why they need them.

Though the Insurers claim to merely be seeking a "subset" of the Debtor's document production to the Committee, they are actually asking the Court to order the Debtor to engage in overbroad and unduly burdensome discovery for almost 75 years' worth of documents.

**C. The Insurers' Proposed Form of Order Is Improper for a Rule 2004 Application.**

The Insurers have not previously requested these documents from the Debtor, either formally or informally. Despite making these requests for the first time in the Application, the Insurers' seek entry of a proposed form of order which provides that:

> 2. The Insurers are authorized to issue a subpoena directed to the Debtor (the "**Debtor Subpoena**") requiring the Debtor to produce documents responsive to the Debtor Document Requests.
>
> 3. the Debtor shall furnish all documents the Insurers request in the Debtor Subpoena and shall produce the same to the Insurers' counsel within fourteen (14) days of service of the Debtor Subpoena upon entry of this Order."

(App. at Ex. 3, ¶¶ 2-3).

At most, an application under Rule 2004 can seek authority to serve a subpoena that may include document requests, instructions, and a deadline to produce. Yet the Insurer's proposed order would simultaneously authorize the Insurers to issue the requested subpoena, and require the Debtor to comply with the subpoena. The Application therefore effectively operates as a motion to compel and is improper under Rule 2004. If the Court grants the Application, the form of order ultimately entered must preserve the Debtor's right to object to any subpoena issued by the Insurers.

**D. The Application Should Not Be Granted Without Notice and a Hearing.**

Bankruptcy Rule 2004 authorizes the "examination of any entity." Fed. R. Bankr. P. 2004(a). It does not, however, provide for the suspension of the normal due process requirements. Nor does it supplant a normal discovery process. Specifically, Rule 2004 requires that a party file a motion requesting the bankruptcy court to order an examination. In this Court, Local Rule 2004-1 allows "*ex parte*" motions–but the Application gives no reason why the motion should be granted without notice. Based on the foregoing, there are obvious disputes arising from the Insurers'

overbroad Application and RFPs–which are to be treated as a discovery disputes. Local Rule 2004-1(b). Under Local Civil Rule 37-1 and the Court's dispute procedures, discovery disputes should be resolved by conferences among counsel.

Though the Local Rules may permit for a Rule 2004 application to be brought on an *ex parte* basis, *ex parte* relief remains an extraordinary remedy "both as a due process principle and as a procedural rule." *Wright v. Beck*, 981 F.3d 719, 729 (9th Cir. 2020) (citing *Conservatorship of Moore*, 185 Cal. App. 3d 718, 725 (Cal. Ct. App. 1986) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action . . . .") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *People v. Wilshire Ins. Co.*, 46 Cal. App. 3d 216, 222 (Cal. Ct. App. 1975) ("[I]n an adversary proceeding where an order may affect the rights of an adverse party, notice must be given to protect the adverse party's right to be heard on the issue as a matter of due process of law.")).

Ultimately the Insurers, "[*i.e.*, t]he party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks." *In re AOG Entertainment, Inc.*, 558 B.R. 98, 108-09 (Bankr. S.D.N.Y. 2016) (collecting cases). A movant "typically shows good cause by establishing that the proposed examination is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice." *Id.* (internal quotation marks and citations omitted).

The Insurers have not established that good cause exists for this Court to order the requested relief on an *ex parte* basis, or that the Insurers will suffer any hardship if the Application is (1) set for hearing and (2) denied without prejudice or continued in favor of preliminary, informal discovery and a consensual process.

## IV. RESERVATION OF RIGHTS

The Debtor reserves all rights with respect to any subpoena or other discovery request served in this Bankruptcy Case, including without limitation, the right to object on grounds of overbreadth, burden, and relevance, or to assert any applicable claim of privilege. Moreover, to the extent that the Insurers attempts to remedy their failure in the Application to articulate proper bases for the

relief requested, the Debtor reserves all rights to supplement this objection or to reply to any such additional arguments.

V. CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests that the Court deny the Application and grant such other relief as the Court may deem just and appropriate.

Dated: April 8, 2024

FELDERSTEIN FITZGERALD WILLOUGHBY
PASCUZZI & RIOS LLP

PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY

Attorneys for The Roman Catholic Archbishop of San Francisco

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/ Ori Katz
ORI KATZ
ALAN H. MARTIN

Attorneys for The Roman Catholic Archbishop of San Francisco