James I. Stang (CA Bar No. 94435)
Andrew W. Caine (CA Bar No. 110345)
Gillian N. Brown (CA BAR NO. 205132)
Brittany M. Michael (*admitted pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, California 94104-4436
Telephone: 415-263-7000
Facsimile: 415-263-7010
Email:  jstang@pszjlaw.com
         acaine@pszjlaw.com
         gbrown@pszjlaw.com
         bmichael@pszjlaw.com

Counsel to the Official Committee
of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>       Debtor. | Case No.:  23-30564<br><br>Chapter 11<br><br>**DECLARATION OF BRITTANY M. MICHAEL IN SUPPORT OF THE *EX PARTE* APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION AND PRODUCTION OF DOCUMENTS BYU (1) DEBTOR, THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO; (2) THE ARCHDIOCESE OF SAN FRANCISCO PARISH, SCHOOL AND CEMETERY JURIDIC PERSONS CAPITAL ASSETS SUPPORT CORPORATION; AND (3) THE ARCHDIOCESE OF SAN FRANCISCO PARISH AND SCHOOL JURIDIC PERSONS REAL PROPERTY SUPPORT CORPORATION** |

      Pursuant to 28 U.S.C. sec. 1746, I, Brittany M. Michael, hereby submit this declaration (the "Declaration") under penalty of perjury:

1.     I am of counsel at the law firm of Pachulski Stang Ziehl & Jones LLP ("PSZJ") with an office at One Sansome Street, Suite 3430, San Francisco, California 94104.  I am duly admitted to practice law in the United States District Courts for the Southern and Western Districts of New York and the District of Minnesota.  On November 16, 2023, this Court entered an order admitting me to practice *pro hac vice* in the above-captioned case (the "Case").  *See* Docket No. 330.

2.     Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.  If called as a witness, I would testify as to those facts.

3.     The Court has approved PSZJ's employment as counsel to the Official Committee of Unsecured Creditors of The Roman Catholic Archbishop of San Francisco in the Case.  *See* Docket No. 188.

4.     I submit this Declaration in support of the *Ex Parte Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Oral Examination and Production of Documents by (1) Debtor, the Roman Catholic Archbishop of San Francisco; (2) the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation; and (3) the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation*, filed concurrently herewith.

5.     Attached as **Exhibit 1** is a true and correct copy of the *Reply Brief of Petitioner the Roman Catholic Archbishop of San Francisco, a Corporation Sole, on the Second Cause of Action*, No. CGC-10-498795 (Cal. Super. Ct. S.F. Jan. 18, 2011).

6.     Attached as **Exhibit 2** is a true and correct copy of the *Archdiocese's Verified Complaint for Declaratory Relief; Verified Petition for Writs of Mandate; and Request for Stay Order*, No. CGC-10-498795 (Cal. Super. Ct. S.F. Apr. 16, 2010).

Pursuant to 28 U.S.C. sec. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of knowledge and belief. I executed this Declaration on May 8, 2024 at Minneapolis, Minnesota.

By: _/s/ Brittany M Michael_
Brittany M. Michael

3

# EXHIBIT 1

1 PILLSBURY WINTHROP SHAW PITTMAN LLP
JEFFREY M. VESELY #67895
2 KERNE H. O. MATSUBARA #178895
RICHARD E. NIELSEN #72104
3 50 Fremont Street
Post Office Box 7880
4 San Francisco, CA 94120-7880
Telephone: (415) 983-1000
5 Facsimile: (415) 983-1200

6 Attorneys for Plaintiffs and Petitioners
THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION
7 SOLE, and THE ARCHDIOCESE OF SAN FRANCISCO PARISH AND SCHOOL
JURIDIC PERSONS REAL PROPERTY SUPPORT CORPORATION

8

9 SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 CITY AND COUNTY OF SAN FRANCISCO

11 UNLIMITED CIVIL JURISDICTION

12
| | |
13 THE ROMAN CATHOLIC ARCHBISHOP ) No. CGC-10-498795
OF SAN FRANCISCO, A CORPORATION ) (Assigned to Hon. Richard A. Kramer)
14 SOLE, a California corporation sole; THE )
ARCHDIOCESE OF SAN FRANCISCO )
15 PARISH AND SCHOOL JURIDIC ) REPLY BRIEF OF PETITIONER THE
PERSONS REAL PROPERTY SUPPORT ) ROMAN CATHOLIC ARCHBISHOP
16 CORPORATION, a California religious ) OF SAN FRANCISCO, A
corporation, ) CORPORATION SOLE, ON THE
17 ) SECOND CAUSE OF ACTION
Plaintiffs and Petitioners, )
18 )
vs. ) Trial Date: February 8, 2011
19 ) Time: 9:30 A.M.
CITY AND COUNTY OF SAN ) Place: Dept. 304
20 FRANCISCO, a municipal corporation; )
CITY AND COUNTY OF SAN )
21 FRANCISCO REAL PROPERTY )
TRANSFER TAX REVIEW BOARD; and ) Complaint Filed: April 16, 2010
22 PHIL TING, ASSESSOR - RECORDER OF )
CITY AND COUNTY OF SAN )
23 FRANCISCO, )
)
24 Defendants, Respondents and Real Party in )
Interest. )
25 )
)
26 )
)
27 )
)
28 )

702699704

FILED
Superior Court of California
County of San Francisco
JAN 18 2011
CLERK OF THE COURT
BY:
Deputy Clerk

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................... 1

II. STANDARD OF REVIEW ........................................................................ 4

III. ARGUMENT ............................................................................................. 6

    A. Transfer Tax Cannot Be Imposed Because the Parish and School
    Properties Were Not "Realty Sold." ..................................................... 6

        1. The intra-Diocesan restructuring was not a sale in form,
        substance or intent. ................................................................... 6

        2. No consideration was involved in the Diocesan
        restructuring. .......................................................................... 11

            a. Deed A .......................................................................... 12

            b. Deed B .......................................................................... 18

        3. Any conceivable benefit is not consideration. ...................... 20

        4. Intra-diocesan transfers are not "sales" under California
        law. ......................................................................................... 20

    B. The Intra-Diocesan Restructuring Is Exempt From Transfer Tax as
    a "Change in Form" Under SF Transfer Tax Ordinance § 1106(d). ......... 25

        1. The Review Board erred in that it applied the wrong legal
        test for determining whether the change in form exemption
        applies. ................................................................................... 25

            a. The so-called "continuity of interest" test does not
            apply. ........................................................................... 25

            b. The *Columbia Gas* beneficial ownership test is
            controlling. ................................................................... 27

        2. The Review Board's findings are not supported by
        substantial evidence. .............................................................. 31

        3. Petitioner satisfied the requirements of the "change in
        form" exemption under SF Transfer Tax Ordinance
        § 1106(d). .............................................................................. 36

            a. The administrative record establishes that the
            Diocesan restructuring did not change the beneficial
            ownership of the Parish and School Properties ................. 37

            b. Respondent refers to other factors that are irrelevant
            for purposes of the change in form exemption. ................ 38

702699704

i

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

Case: 23-30564   Doc# 681   Filed: 11/27/23   Entered: 11/27/23 11:27:35   Page 6 of
119

| | | c. | *Episcopal Church Cases* confirms that church canons are relevant in civil law matters. | 40 |

C. The Restructuring Is Also Exempt Under California RTC § 11925(d). ........................................................................ 42

    1. San Francisco, as a charter city, does not have unlimited powers. .............................................................. 43

    2. San Francisco adopted RTC § 11925(d) through its own ordinance and in practice. ..................................... 46

D. Deed B Is Not Subject to Tax Because the Transfer of the Parish and School Properties to the Support Corporation Has Not Been Completed. ...................................................................... 49

E. Respondent is Estopped From Imposing a Transfer Tax In This Case. .................................................................................. 51

F. Respondent's Attempt to Impose a Transfer Tax in a Non-Neutral Fashion Is Violative of the First Amendment. ...................... 54

    1. Petitioner has exhausted its administrative remedies and appropriately preserved the Constitutional issues for review. ....... 54

        a. Petitioner timely filed its petition for review with the Review Board. ............................................ 55

        b. Petitioner's petition for review complied with the Review Board's procedural rule regarding form and content. ....................................................... 55

        c. Petitioner raised and preserved its Constitutional issues below ...................................................... 56

        d. The exhaustion doctrine does not preclude consideration of Petitioner's Constitutional objections. ........................................................ 57

    2. The City's failure to administer the transfer tax neutrally violates the Establishment and Free Exercise Clauses... ............... 59

    3. The City's non-neutral administration of the transfer tax gives rise to excessive government entanglement in Church affairs.. ................................................................... 61

IV. CONCLUSION.. ............................................................... 63

702699704

ii

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON THE SECOND CAUSE OF ACTION – CGC-10-498793

Case: 23-30564   Doc# 631   Filed: 06/06/23   Entered: 06/06/23 11:27:30   Page 7 of 119

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

Andal v. City of Stockton,
   137 Cal. App. 4th 86 (2006).................................................58

Associated Oil Co. v. County of Orange,
   4 Cal. App. 2d 5 (1935).....................................................58

Batt v. City and County of San Francisco,
   184 Cal. App. 4th 163 (2010)..............................................24

Beatrice v. State Board of Equalization,
   6 Cal. 4th 767 (1993)...........................................13, 15, 19

Berkeley Savings and Loan Ass'n v. United States,
   301 F. Supp. 22 (Dist. NJ 1969)............................................7

Berry v. Kavanagh,
   137 F.2d 574 (6th Cir. 1943)...............................................7

Berry v. Society of Saint Pius X,
   69 Cal. App. 4th 354 (1999)...............................................10

Brenner v. City of Los Angeles,
   160 Cal. 72 (1911)........................................................58

California Federal Savings & Loan Assn. v. City of Los Angeles,
   54 Cal. 3d 1 (1991).......................................................43

Capitol Square Review and Advisory Bd. v. Pinette,
   515 U.S.753 (1995)........................................................60

Church of Lukumi Babalu Aye. Inc. v. Hialeah,
   508 U.S. 520 (1993).......................................................60

Columbia Gas of Md., Inc. v. United States,
   177 Ct. Cl. 97 (Ct. Cl. 1966).............................................30

Columbia Gas of Pennsylvania, Inc. v. United States,
   446 F.2d 320 (3d Cir. 1971)..........................................*passim*

Davant v. Commissioner,
   366 F.2d 874 (5th Cir. 1966)..............................................26

Employment Div., Dept. of Human Resources of Ore. v. Smith,
   494 U.S. 872 (1990).......................................................60

Emporium Capwell Co. v. Anglim,
   140 F.2d 224 (9th Cir. 1944)..............................................14

702699704

iii

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE ON THE SECOND CAUSE OF ACTION – CGC-10-498793

Case: 23-30564   Doc# 631   Filed 06/06/24   Entered 06/06/24 11:27:30   Page 8 of 119

Episcopal Church Cases,
    45 Cal. 4th 467 (2009) ........................................................................ 40, 62

Everson v. Board of Education of Ewing,
    330 U.S. 1 (1947) .................................................................................... 60

Fisher v. County of Alameda,
    20 Cal. App. 4th 120 (1993) ................................................................... 44

Frohliger v. Richardson,
    63 Cal. App. 209 (1923) .................................................................. 23, 41

Gates Rubber Co. v. Ulman,
    214 Cal. App. 3d 356 (1989) .................................................................... 5

Ghirardo v. Antonioli,
    8 Cal. 4th 791 (1994) ............................................................................... 5

Greyhound Corp. v. United States,
    1953 U.S. Dist. LEXIS 4352 (N.D. Ill. 1953) .................................. 16, 17

Grotenhuis v. County of Santa Barbara,
    182 Cal. App. 4th 1158 (2010) ............................................................... 52

Henneberry v. Henneberry,
    164 Cal. App. 2d 125 (1958) .................................................................. 49

Holmes v. McColgan,
    17 Cal. 2d 426 (1941) ............................................................................... 7

Home Construction Corp. v. United States,
    439 F.2d 1165 (5th Cir. 1971) ................................................................ 26

Innes v. McColgan,
    47 Cal. App. 2d 781 (1941) ...................................................................... 7

Jones v. Wolf,
    443 U.S. 595 (1979) ................................................................................ 40

Kern River Co. v. County of Los Angeles,
    164 Cal. 751 (1913) ................................................................................ 58

Lemon v. Kurtzman,
    403 U.S. 602 (1971) ...................................................................... 59, 62, 63

Lockyer v. City and County of San Francisco,
    33 Cal. 4th 1055 (2004) .......................................................................... 58

McDonald's Corp. v. Board of Supervisors,
    63 Cal. App. 4th 612 (1998) ........................................................ 21, 22, 24

Meanley v. McColgan,
    49 Cal. App. 2d 313 (1942) ........................................................... 7, 8, 27

702699704

iv

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498793

Case: 23-30564    Doc# 631    Filed: 02/09/24    Entered: 02/09/24 11:27:50    Page 9 of
119

Mole-Richardson Co. v. Franchise Tax Bd.,
    220 Cal. App. 3d 889 (1990)...................................................................5

Moyer v. Workmen's Comp. Appeals Bd.,
    10 Cal. 3d 222 (1973)........................................................................47

New v. Kroger,
    167 Cal. App. 4th 800 (2008).........................................................40, 41

Newman v. Franchise Tax Bd.,
    208 Cal. App. 3d 972 (1989).........................................................5, 57

Pac. Coast Co. v. Wells,
    134 Cal. 471 (1901)...........................................................................58

Park 'N Fly of San Francisco, Inc. v. City of South San Francisco,
    188 Cal. App. 3d 1201 (1987)...........................................................58

Parrott & Co. v. City & County of San Francisco,
    131 Cal. App. 2d 332 (1955)............................................................58

Perry v. Wallner,
    206 Cal. App. 2d 218 (1962),.............................................................49

R. H. Macy & Co. v. United States,
    107 F. Supp. 883 (S.D.N.Y. 1952) ................................................16, 17

Rexall Drug Co. v. Peterson,
    113 Cal. App. 2d 528 (1952),.............................................................15

Rochelle Inv. Corp. v. Fontenot,
    34 F. Supp. 118 (E.D. La. 1940),....................................................13, 14

Security Industrial Ins. Co. v. United States,
    702 F.2d 1234 (5th Cir. 1983) .......................................................26, 27

Socony-Vacuum Oil Co. v. Sheehan,
    50 F. Supp. 1010 (E.D. Mo. 1943) .....................................................15

Star-Kist Foods, Inc. v. Quinn,
    54 Cal. 2d 507 (1960)........................................................................57

Steinhart v. County of Los Angeles,
    47 Cal. 4th 1298 (2010).....................................................................58

Stone v. Graham,
    449 U.S. 39 (1980) ...........................................................................60

Thrifty Corp. v. County of Los Angeles,
    210 Cal. App. 3d 881 (1989).........................................................21, 22

Tide Water Associated Oil Co. v. Jones,
    57 F. Supp. 482 (W.D. Okla. 1944)...............................................15, 16

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

United States v. Niagara Hudson Power Corporation,
53 F. Supp. 796 (S.D.N.Y. 1944) ................................................. 6, 7

United States v. Seattle-First National Bank,
321 U.S. 583 (1944) ....................................................... 6, 7, 8, 14, 20

Van Wagner Communications, Inc. v. City of Los Angeles,
84 Cal. App. 4th 499 (2000) ..................................................... 51

Walz v. Tax Commission of the City of New York,
397 U.S. 664 (1970) ............................................................... 62

Wheelock v. First Presbyterian Church of Los Angeles,
119 Cal. 477 (1897) ........................................................... 23, 45

Yamaha Corp. of America v. State Bd. of Equalization,
19 Cal. 4th 1 (1998) ............................................................. 51

Statutes and Codes

California Civil Code
Section 1429 ...................................................................... 11
Section 1605 ................................................................. 11, 12

California Corporations Code
Section 9132(a) ............................................................. 15, 17
Section 10002 ................................................................... 34

California Government Code
Section 53725 ................................................................. 44, 45

California Revenue and Taxation Code
Section 62(k) ........................................ 2, 12, 21, 22, 23, 43, 45
Section 207 ...................................................................... 33
Section 11901 ............................................................... 29, 46
Section 11911 ............................................................... 22, 47
Section 11923(d) ........................................................ 31, 40, 47
Section 11925(d) ............................................................ passim

Internal Revenue Code (Title 26, United States Code)
Section 368(a)(1) ........................................................ 26, 28, 30
Section 501(c)(3) ............................................................ 27, 34
Former section 800, et. seq., Schedule A, subd. 8 ......................... 7
Former section 3482 ............................................................. 7
Former section 4361 ......................................................... 7, 47
Former section 4382 ...................................................... 27, 31, 40, 47

San Francisco Real Property Transfer Tax Ordinance
Section 1101 ........................................................ 29, 43, 46, 47
Section 1102 .................................... 6, 7, 8, 21, 22, 24, 47
Section 1106(d) ............................................................. passim
Section 1108(d) ................................................................ 48
Section 1114 .............................................................. 8, 9, 27
Section 1115.2 .................................................................. 55

Case: 23-30564    Doc# 631    Filed 05/02/24    Entered 05/02/24 11:27:56    Page 11 of
119

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

## Constitutional Provisions

United States Constitution

First Amendment to the United States Constitution ................................................ 59

California Constitution

Article III, Section 3.5 ............................................................... 58

## Regulations

United States Treasury Regulations
Section 47.4361-1(a)(4)(ii) ................................................................ 12, 20
Section 47.4361-2(b)(2) ................................................................ 12, 14, 16, 17

## Other Authorities

California Attorney General Opinion
No. 98-1203, 82 Ops. Cal. Atty. Gen. 56 (Mar. 26, 1999) ............................ *passim*

# I. INTRODUCTION

Respondent City and County of San Francisco resorts to a favorite tactic it used before the San Francisco Transfer Tax Review Board ("Review Board") to now misdirect this Court from the real issues at hand. The sole question before this Court in this Second Cause of Action is whether the San Francisco transfer tax applies to an intra-Diocesan restructuring. Yet, Respondent attempts to sensationalize and color this case by raising the specter of sexual abuse lawsuits, a favorite straw man when it comes to church issues.

Respondent alleges in its Opposition Brief that Petitioner Corporation Sole "transferred the subject properties elsewhere precisely so it could demonstrate, when, if and as necessary, that both of its pockets are empty" in order to protect its assets from future litigants' claims or other liabilities. Respondent's Opposition Brief ("Resp. Br." at 3:15-17, 23-26). Contrary to Respondent's allegations, the administrative record establishes that there were no pending claims or lawsuits against Petitioner at the time of the internal restructuring of the Archdiocese of San Francisco (the "Archdiocese") and any allegations concerning *future* claims or liabilities are wholly speculative and unfounded. VII AR 2515:1-6.[1]

More importantly, the issue regarding lawsuits and claims is completely irrelevant to transfer tax law. As an excuse for raising such issue, Respondent argues that Petitioner "cannot have it both ways"—that is, Petitioner must choose between avoiding such liability or paying the transfer tax. Resp. Br. at 4:4-13. Respondent presents a false dilemma, which simply does not exist. As a legal matter, there is nothing in San Francisco's transfer tax ordinance, or any legal authority pertaining thereto, that provides that corporations must surrender their rights or privileges accorded under civil law, including liability protection, or else pay a transfer tax. Thus, by raising the specter of lawsuits, Respondent is deflecting attention away from what Respondent is attempting to do here—the unprecedented and

---

[1] References to the Administrative Record ("AR") of the Review Board in this matter are preceded by the volume number, followed by the page number.

1     unlawful taxing of an internal church restructuring that is cause for concern not only by the

2     Roman Catholic Church (or "Church") but by all religious faiths.

3            It is important, therefore, for this Court to remain focused on the issue before it—

4     namely, whether the intra-Diocesan transfers of real property (the "Parish and School

5     Properties") among the Corporation Sole, the Welfare Corporation and the Support

6     Corporation[2] pursuant to an internal restructuring within the Roman Catholic Archdiocese

7     of San Francisco ("Archdiocese") are subject to San Francisco's transfer tax. Petitioner

8     submits that San Francisco's transfer tax ordinance, including federal and California legal

9     authority pertaining thereto, compels a determination that such transfers are not subject to

10    tax.

11            First, the threshold issue is whether the Parish and School Properties were "sold"

12    pursuant to the internal Diocesan restructuring. Because the transfer tax is only imposed on

13    "realty sold," the transfer tax does not even arise if realty has not been sold. In its ruling

14    (the "Board's Ruling"), the Review Board determined that the "realty sold" requirement

15    was satisfied because "valuable consideration existed with respect to Grant Deed A and

16    Grant Deed B." IX AR 3612:24-25.[3] The Review Board erred as a matter of law in that it

17    (1) ignored the word "sold" and determined that a sale is not required for transfer tax to

18    arise, (2) failed to consider that intra-Diocesan transfers of real property are not sales under

19    California law (see, e.g., Cal. Rev. & Tax. Code ("RTC") § 62(k)), and (3) relied on the

20    wrong legal definition of "consideration" for transfer tax purposes.

21            Second, even if the Parish and School Properties somehow can be considered to

22    constitute "realty sold," said transfers are exempt from tax under San Francisco Real

23    _____

24    [2] The Corporation Sole, the Welfare Corporation and the Support Corporation herein refer,
      respectively, to The Roman Catholic Archbishop of San Francisco, A Corporation Sole,
25    The Roman Catholic Welfare Corporation of San Francisco, and The Archdiocese of San
      Francisco Parish and School Juridic Persons Real Property Support Corporation.

26    [3] The 111 Archdiocesan school properties ("School Properties") are listed on the exhibit
      attached to the deed dated April 25, 2008 from the Welfare Corporation to the
27    Corporation Sole ("Deed A"). I AR 15. The 232 Parish and School Properties are listed
      on the exhibit attached to the deed dated April 25, 2008 from the Corporation Sole to the
28    Support Corporation ("Deed B," and together with Deed A, the "Deeds"). I AR 22.

Case 3:15-... 119

1 Property Transfer Tax Ordinance ("SF Transfer Tax Ordinance") § 1106(d), because the

2 internal Diocesan restructuring effected a mere "change in form."  In applying the "change

3 in form" exemption, the Review Board relied upon so-called "differences" in the "purpose,

4 control and/or powers" of the Corporation Sole, the Welfare Corporation and the Support

5 Corporation.  IX AR 3614:9-20, 3616:9-17.  In so doing, the Review Board used the wrong

6 legal test.  Rather, the proper legal test is set forth in *Columbia Gas of Pennsylvania, Inc. v.*

7 *United States*, 446 F.2d 320 (3d Cir. 1971), which establishes that the "change in form"

8 exemption is satisfied if the beneficial ownership of the real property remains the same

9 before and after the restructuring.  Here, it is uncontroverted that the Parish and School

10 Properties were and remain owned by the Roman Catholic Church for the benefit of Church

11 schools and parishes in San Francisco.  The internal Diocesan restructuring did not change

12 that fact.[4]

13      Third, an alternative exemption to the transfer tax applies in this case—namely,

14 RTC § 11925(d), which exempts from tax the transfer of title to real property between legal

15 entities, where the direct or indirect ownership interests in the realty remain unchanged.

16 Respondent hides behind its status as a charter city in an attempt to disavow the

17 applicability of RTC § 11925(d).  Notwithstanding such status, charter cities do not have

18 unlimited powers.  The City cannot, for example, simply ignore State law that intra-

19 denominational transfers of real property between religious corporations are not changes in

20 ownership of realty, due to the unique features of religious corporations as agents holding

21 title to the property for the Church.  In any case, in adopting the SF Transfer Tax

22 Ordinance, the City explicitly linked it to the California Transfer Tax Statute, which

23 includes RTC § 11925(d).  Because the Church remains the owner of the Parish and School

24

25 _____

[4] The Review Board's findings and conclusions regarding purpose, control and power are
26     also factually erroneous.  In concluding that the purpose, control and power of the subject
    corporations were "different," the Review Board erroneously failed to consider the unique
27     features of religious corporations and, in particular, the central role of the incumbent
    Roman Catholic Archbishop of San Francisco ("Archbishop") as the "hub of the wheel"
28     around which the Archdiocesan family of religious purpose corporations are connected.

Case 3:13-38559 Doc# 8 Filed 03/20/13 Entered 03/20/13 Page 15 of
119

1   Properties for the benefit of its schools and parishes, the intra-Diocesan transfers should be
2   exempt from transfer tax.

3          Fourth, Respondent should be estopped from imposing a transfer tax in this case.
4   Petitioner justifiably relied on Respondent's long-standing and consistent past practice of
5   not taxing intra-denominational transfers.  Petitioner also justifiably relied on the verbal
6   representations made by the Recorder's office when it submitted the Deeds for recordation.
7   Respondent's conduct in this matter is precisely the type of action or inaction that the
8   doctrine of equitable estoppel was designed to address.

9          Fifth, contrary to Respondent's arguments, Petitioner exhausted its administrative
10  remedies and appropriately raised and preserved the Constitutional issues for review before
11  this Court.  The City's attempt to impose its transfer tax in a non-neutral fashion violates
12  the First Amendment.  The City has interpreted and administered the transfer tax in a
13  manner that treats religious corporations such as Petitioner less favorably than non-religious
14  corporations, in violation of the Free Exercise and Establishment Clauses.  The City's non-
15  neutral administration of the transfer tax also gives rise to excessive government
16  entanglement in Church affairs.

17         It is important to note that *any* of the contentions enumerated above, by itself, is
18  sufficient to compel a decision that no transfer tax may be imposed with respect to either
19  Deed A or Deed B.[5]  In sum, the Review Board erred in this matter.  No transfer tax is
20  owing in this case.

21  II.    STANDARD OF REVIEW

22         Respondent contends that Petitioner misstates and misapplies the applicable
23  standard of review.  Resp. Br. at 10:21-11:13.  After spending several pages of its
24  Opposition Brief (Resp. Br. at 4-7) reciting the relevant authority regarding administrative
25  mandamus and the scope of review it is clear that there is not a dispute between the parties
26

27  [5] Even if intra-Diocesan transfers are somehow found to be subject to transfer tax, no
    transfer tax can be imposed with respect to Deed B, because delivery of that deed to the
28  Support Corporation has not been completed.

1  as to the relevant principles regarding the standard of review.  Compare, Petitioner's
2  Opening Brief ("Pet. Open. Br.") at 17-18.  Rather, Respondent chooses to focus on the
3  substantial evidence test while deemphasizing the de novo review standard applicable to
4  questions of law.[6]

5       Petitioner contends that the resolution of this matter hinges on questions of law.
6  Also, contrary to Respondent's assertions that a four day trial (Resp. Br. at 11:3)
7  necessitates the existence of disputed facts in the record, the evidence introduced by both
8  parties was virtually uncontroverted.  Petitioner's evidence centered around organizational
9  and transactional documents such as corporate articles and bylaws as well as oral testimony
10  regarding such documents.  Respondent's evidence elicited further explanation concerning
11  the admitted documents and testimony from the Recorder's perspective of various events.
12  The evidence presented by both parties was essentially uncontroverted.  Furthermore, if
13  there exists any dispute of some fact, the resolution of which is not evident from the record
14  below, such would not be material to the legal issues.  Therefore any review of the facts in
15  this matter is subject to de novo review.[7]  Where there are no conflicts in the evidence and
16  the facts are undisputed, only questions of law confront a court and the findings do not bind
17  the court.  *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 799 (1994); *Mole-Richardson Co. v.*
18  *Franchise Tax Bd.*, 220 Cal. App. 3d 889, 894 (1990).  The court may examine the facts
19  and make its own conclusions and findings.  *Gates Rubber Co. v. Ulman*, 214 Cal. App. 3d
20  356, 363 (1989); *Newman v. Franchise Tax Bd.*, 208 Cal. App. 3d 972, 977 (1989).

21

22

23  [6] Respondent states "the appropriate standard of review involves not solely an analysis of
24  the legal issue de novo, but also an assessment of ... whether substantial evidence exists
    in the TTRB's administrative record to support the findings."  Resp. Br. at 11:8-11.
25  However, if the findings are not legally sustainable it is unnecessary to conduct a review
    of the evidentiary record under the substantial evidence test.  In addition, because the
26  facts relating to the primary legal issues are undisputed any such review would still be de
    novo.
27  [7] As stipulated, the parties agree that this Second Cause of Action does "not involve any
    material facts in dispute."  Stipulation Concerning Various Procedural Matters and
28  Scheduling, filed August 2, 2010, ¶ 3.

CaseREPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    This Court should not be distracted by Respondent's misguided focus away from the

2    dispositive legal (including constitutional) issues in this matter: the interpretation and

3    application of local transfer tax provisions to an internal Church restructuring. To the

4    extent necessary, the Court may examine the uncontroverted facts to reach its own

5    conclusions and findings. Even if the substantial evidence test may be applicable in this

6    matter, Petitioner submits that Respondent has failed to establish there is substantial

7    evidence in the record to support the Review Board's findings and conclusions.

8    III.    ARGUMENT

9            A.    Transfer Tax Cannot Be Imposed Because the Parish and School Properties
                   Were Not "Realty Sold."
10
                   1.    The intra-Diocesan restructuring was not a sale in form, substance or
11                        intent.

12           SF Transfer Tax Ordinance § 1102 provides that the transfer tax is imposed on

13   "realty sold" to a "purchaser or purchasers." Thus, the purchase and sale of realty are

14   required for the transfer tax to even apply. Respondent reads past the express words of the

15   ordinance and argues that the ordinance does not mean what it says—that is, "realty 'sold'

16   does not require an actual sale" (Resp. Br. at 17:14-18). Respondent's argument is directly

17   contrary to the holding of the United States Supreme Court in *United States v. Seattle-First*

18   *National Bank*, 321 U.S. 583, 590 (1944), wherein the Court ascribed to the words "sold"

19   and "purchaser or purchasers" their ordinary meaning. In concluding that a bank

20   consolidation was not subject to the federal documentary stamp tax—upon which the SF

21   Transfer Tax Ordinance is based—the Court held:

22           Nor can the realty be said to have been "sold" or vested in a "purchaser or
             purchasers" within the ordinary meaning of those terms. Only by straining
23           the realities of the statutory consolidation process can respondent be said
             to have "bought" or "purchased" the real property. That we are unable to
24           do.

25   321 U.S. at 590. Similarly, in another federal documentary stamp tax case, *United States v.*

26   *Niagara Hudson Power Corporation*, 53 F. Supp. 796, 801 (S.D.N.Y. 1944), the Court

27   looked to whether the "elements characteristic of a 'sale'" were present in interpreting the

28

Case                                                                                                          of
                                                                    119

1  terms "realty sold" and "purchaser." In concluding that the federal documentary stamp tax

2  did not apply, the Court held:

3         In the transaction now under consideration the elements characteristic of a
       "sale" are lacking; there is no agreement to sell; there is no deed
4         containing the description of the realty. The usual bargaining leading up
       to and culminating in a sale and fixing the value of the property are absent.
5         The change of title results from the filing of the Certificate of
       Consolidation; it was a form of transfer, but not a sale.

6

7  53 F. Supp. at 801. In *Berry v. Kavanagh*, 137 F.2d 574, 576 (6th Cir. 1943), yet another

8  federal documentary stamp tax case, the Court held that "realty sold" is confined to "actual

9  sales" and thus looked to the intention of the parties to ascertain whether a sale had

10 occurred. See also *Berkeley Savings & Loan Assn. of Newark, N.J. v. United States*, 301

11 F. Supp. 22, 26 (D.N.J. 1969) (citing *Berry* that "[w]hether a taxable sale occurs depends

12 upon the intention of the parties gathered from their whole writing when giving to the

13 words and phrases used, their ordinary signification. . . . If Congress had intended to levy a

14 tax on every transfer of title it could have expressed its purpose in a sentence, but it is clear

15 from the language of the section that it intended to confine the tax to actual sales.").[8] Thus,

16 Respondent's argument that a "sale" is not required for the transfer tax to apply is simply

17 incorrect.

18        Respondent does not cite to any legal authority that specifies that a "sale" is not

19 required for the transfer tax to apply. Instead, Respondent argues that *Seattle-First* does not

20 apply to the instant case. Resp. Br. at 17:20-18:11. Respondent observes that *Seattle-First*

21 _____

22 [8] Respondent asserts that neither *Berry* nor *Berkeley* "have any bearing on this case."
   Resp. Br. at 18:12-16. However, both *Berry* and *Berkeley* interpret the term "realty sold"
23 under the federal documentary stamp tax, which had been in existence as far back as 1932
   until its repeal in 1968. See former IRC § 4361, and its predecessors, former IRC § 3482
24 and IRC § 800, Schedule A-8). SF Transfer Tax Ordinance § 1102 uses the same terms
   as in the federal documentary stamp tax statute, upon which the San Francisco transfer
25 tax is based. Because the SF Transfer Tax Ordinance is patterned after the federal
   documentary stamp tax, *Berry* and *Berkeley* are controlling. See, e.g., *Holmes v.*
26 *McColgan*, 17 Cal. 2d 426, 430 (1941); *Innes v. McColgan*, 47 Cal. App. 2d 781, 784
   (1941); *Meanley v. McColgan*, 49 Cal. App. 2d 313, 317 (1942); see also Attorney
27 General Opinion No. 98-1203, 82 Ops. Cal. Atty. Gen. 56 (Mar. 26, 1999) (applying
   federal documentary stamp tax authorities for purposes of interpreting California's
28 transfer tax).

Case                                                                                                          .pdf
115

1  "predates the Documentary Stamp Tax Regulations," which "were not even promulgated in

2  this form until 1959." Resp. Br. at 17:21-22, 18:7-8. Aside from the fact that Respondent

3  also cites to numerous cases throughout its brief which predate such Regulations (see, e.g.,

4  Resp. Br. at 18:27-28, 19:9-11), Respondent's observation misses the point. *Seattle-First*

5  involves the very tax upon which the SF Transfer Tax Ordinance is based and squarely

6  addresses the identical term "realty sold" that is used in both the federal tax statute and SF

7  Transfer Tax Ordinance § 1102. It is a well-settled principle of statutory construction that,

8  when a tax statute is based on or patterned after a federal tax statute, federal authorities

9  (here, the United States Supreme Court's decision in *Seattle-First*) controls. See, e.g.,

10  *Meanley*, 49 Cal. App. 2d at 317 and authorities cited in footnote 8, above.

11        Respondent then attempts to re-cast the holding in *Seattle-First* as standing for the

12  proposition that: "Essentially, the Supreme Court was making the distinction between a

13  consolidation forced by operation of law and a consolidation resulting from voluntary acts,

14  with the former not being taxable and the latter being taxable." Resp. Br. at 18:4-6.

15  Respondent's characterization of *Seattle-First* essentially guts the Court's holding in

16  *Seattle-First*. The *Seattle-First* Court did not hold that voluntary acts are taxable. Rather,

17  the Court held that the ordinary meaning of the terms "sold" and "purchase or purchaser"

18  must be given to those terms and that courts must look to the "realities" of the subject

19  transaction to determine whether the transferee can "be said to have 'bought' or 'purchased'

20  the real property." 321 U.S. at 590.

21        Lastly, Respondent attacks *Seattle-First* on the basis that the Court "was not

22  addressing the definition of 'sold' found in the Documentary Stamp Tax Regulations."

23  Resp. Br. at 18:6-7. Again, Respondent misses the point. The issue before this Court is

24  whether the Diocesan restructuring can be said to constitute "realty sold" as that term is

25  used in SF Transfer Tax Ordinance § 1102. San Francisco Transfer Tax Ordinance § 1114

26

27

28

702699704                                8

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1   does *not* provide that the Documentary Stamp Tax Regulations[9] are the exclusive source of

2   authority for interpreting the transfer tax provisions; it states that the transfer tax provisions

3   must be interpreted *consistently* with those Regulations. The bottom line is that Petitioner's

4   position *is consistent* with the Documentary Stamp Tax Regulations.

5       In the instant case, and looking at the plain realities of the Diocesan restructuring, it

6   cannot be said that the Parish and School Properties were sold. Nor can it be said that the

7   Corporation Sole or the Support Corporation purchased such properties. The administrative

8   record compels a finding that the Diocesan restructuring was not a sale—in form, substance

9   or by intention of the parties.

10      In form, the Diocesan restructuring was not structured as a sale. The restructuring

11  involved no bargaining or other indicia of a purchase or sale. No purchase or sale

12  agreements were executed in connection with the restructuring. No sales proceeds were

13  generated. In the course of his review of the transaction, Respondent's witness testified that

14  he did not see any purchase or sale agreement. VI AR 2387:8-11.

15      In substance, the Diocesan restructuring involved the dissolution of the Welfare

16  Corporation, the return of the School Properties from the Welfare Corporation upon its

17  dissolution to the Corporation Sole (whence they originally came in 1953), and the

18  entrustment of the Parish and School Properties from the Corporation Sole to the newly

19  formed Support Corporation. As the Archbishop plainly stated in his letter, "the real

20  property and capital assets belonging to the parishes and school under Church law have

21  been segregated from the real property and capital assets of the Archdiocese and are now

22  *entrusted* to two distinct non-profit religious corporations. . . . " I AR 81-82 (emphasis

23  added).[10] Respondent points out that the "Corporation Sole's use of the word 'entrust'

24

25  [9] The Documentary Stamp Tax Regulations to which SF Transfer Tax Ordinance § 1114

26  refers are Treas. Reg. §§ 47.4361-1, 47.4361-2 and 47.4362-1.

    [10] Under the restructuring, the real property and capital assets of the parishes and schools
27  were entrusted, respectively, to the Support Corporation and The Archdiocese of San
    Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support
28  Corporation. I AR 82.

Case:REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON.Dﾉof
THE SECOND CAUSE OF ACTION – CGC-10-498795
119

1   throughout its Opening Brief should not be confused with the meaning of "trust" under

2   California law." Resp. Br. at 31:9-10. The point of using the word "entrust" is that it is the

3   word that the Archbishop used in his letter,[11] and, whether or not a formal trust has been

4   created, the word "entrust" certainly means something *other than* a sale.[12]

5       Furthermore, the intention of the parties that the restructuring was not a sale is

6   manifested not only by Archbishop's letter as noted above, but also on the face of the

7   Deeds. Both Deed A and Deed B expressly state on their face, "No consideration or sale—

8   Transfer of property within The Roman Catholic Church only." I AR 15, 22. The Transfer

9   Tax Affidavits submitted with said Deeds expressly state: "No Transfer Tax Due—No

10  Change in Beneficial Ownership." I AR 206, 227. Similarly, the Preliminary Change of

11  Ownership Reports that were filed in connection with the Deeds state: "Transfer with

12  Roman Catholic Church. No change in beneficial interest." I AR 213, 234. Thus, the very

13  documents relied upon by Respondent with respect to its argument that realty has been

14  "sold" (Resp. Br. at 12:16-28 and 13:1-7) in fact support the opposite conclusion.

15

16

17

18  _____

19  [11] No contrary evidence was produced at the hearing, and the Review Board made no
    contrary findings.

20  [12] In addition, when then Archbishop Joseph S. Alemany first transferred all of Church
    property of the Archdiocese of San Francisco to the newly formed Corporation Sole in
21  1854, he did so "in trust" as follows:

22          And all property held by me as such corporation, is held by me in trust for
            the sole use purpose and behoof of the said Roman Catholic Church in the
23          said Diocese of San Francisco.

24  I AR 290-291. The entrustment of Church property to the Corporation Sole
    accords with one of the fundamental purposes of a religious corporation, which,
    as the Courts consistently have held, is "to stand in the capacity of an agent
25  holding title to the property, with the power to manage and control the same in
    accordance with the interest of the spiritual ends of the church." *Berry v.*
26  *Society of Saint Pius X*, 69 Cal. App. 4th 354, 371 (1999). The entrustment by
    the incumbent Archbishop of the Parish and School Properties to the Support
27  Corporation plainly was not a sale. Such entrustment was no more a "sale"
    than was the entrustment of all of the Church's property to the Corporation
28  Sole in 1854.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1     In sum, the Review Board itself did not find that a sale occurred with respect to

2     either Deed A or Deed B.[13]  Respondent stretches, if not skews, the term "realty sold"

3     beyond any reasonable interpretation.  The administrative record establishes that the Parish

4     and School Properties were not sold pursuant to the Diocesan restructuring.  As such, no

5     sale occurred and the transfer tax cannot be imposed.  Petitioner respectfully submits that

6     on the foregoing basis *alone*, this Court should find that the Board's Ruling is erroneous—

7     whether as a matter of law or on the basis that the Review Board's findings and conclusions

8     are unsupported by substantial evidence.

9                 2.     No consideration was involved in the Diocesan restructuring.

10    Even if an actual sale is not required and "valuable consideration" is all that is

11    required for realty to be "sold," the Review Board also erred in that it applied the incorrect

12    legal definition of "consideration."  The Board's Ruling refers to Cal. Civ. Code § 1605.[14]

13    However, Cal. Civ. Code § 1605 sets forth the definition of consideration for purposes of

14    the interpretation of contracts.  See Cal. Civ. Code § 1429.[15]  Whether Deed A and Deed B

15    are invalid instruments under California contract law for lack of consideration is *not* the

16    issue before this Court.  Rather, the issue is whether sufficient consideration exists to

17    support the imposition of a transfer tax.

18    The definition of consideration in Cal. Civ. Code § 1605 is squarely at odds with the

19    federal Documentary Stamp Tax Regulations, which set forth a much narrower definition.

20    _____

21    [13] The Review Board stated in the Board's Ruling:  "The parties disputed whether the deeds
      covered 'realty sold' within the meaning of the SF Ordinance.  With respect to 'realty
22    sold,' the Board concludes that Grant Deed A and Grant Deed B constitute 'realty sold'
      because valuable consideration existed for both transactions."  IX AR 3612:3-5.  The
23    Review Board plainly erred since it failed to address the fundamental issue—i.e., whether
      a sale and purchase of the Parish and School Properties ever occurred.

24    [14] Cal. Civ. Code § 1605 states:  "Any benefit conferred, or agreed to be conferred, upon the
25    promisor, by any other person, to which the promisor is not lawfully entitled, or any
      prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the
26    time of consent lawfully bound to suffer, as an inducement to the promisor, is a good
      consideration *for a promise*."  (Emphasis added.)

27    [15] Cal. Civ. Code § 1429 provides that the "rules which govern the interpretation of
      contracts" are prescribed by Part II of Division 3 of the Civil Code, of which Cal. Civ.
28    Code § 1605 is a part.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    In particular, Treas. Reg. § 47.4361-1(a)(4)(ii) provides that "valuable consideration"

2    means "money or anything of value"—not, for example, any benefit conferred. The

3    narrower definition of consideration for transfer tax purposes is reflected in the examples

4    provided in Treas. Regs. § 47.4361-2(b)(2) that consideration recited on a deed such as "$1

5    and other valuable consideration" and "desire to promote public welfare and $1," do not

6    constitute consideration for transfer tax purposes.[16] Plainly, what may be consideration for

7    contract law purposes is not sufficient for transfer tax purposes. As described further

8    below, by resorting to the definition of "consideration" for contract law purposes, the

9    Review Board erroneously has ignored an entire body of transfer tax case law, which is

10    relevant and directly applicable, if not controlling, for purposes of interpreting the SF

11    Transfer Tax Ordinance. The Review Board relied on an erroneous definition, and thus, the

12    specific items that the Review Board identified as constituting "consideration" do not

13    trigger the transfer tax.

14                   a.    <u>Deed A</u>

15        The Review Board identified the following two items as consideration for the

16    transfer of the School Properties from the Welfare Corporation to the Corporation Sole in

17    Deed A: (1) the Corporation Sole's assumption of the $33,905,893 of the Welfare

18    Corporation's debt and (2) the Corporation Sole's retention of the operations of the parishes

19    and schools as well as the obligations of the Welfare Corporation (such as the collective

20    bargaining agreement previously held by the Welfare Corporation). IX AR 3612:26-

21    3613:4.

22

23

24

---

25    [16] Respondent itself argues that only authorities interpreting the federal Documentary Stamp Tax Regulations are applicable (see, e.g., Resp. Br. at 18:6-7), yet it relies on Cal. Civ. Code § 1605, which neither relates to transfer taxes nor interprets the Documentary Stamp Tax Regulations. In addition, Respondent argues that California statutes such as RTC § 11925(d) and § 62(k) do not apply to San Francisco as a "charter city with sovereign rights" (Resp. Br. at 37:9-11), but somehow Cal. Civ. Code § 1605 does apply. Respondent's argument can only be described as selective "cherry picking" from California's statutes.

Case3:13-cv-05198-... REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE ...pdf

1     First, the Review Board has mischaracterized the $33,905,893 as "debt" of the

2     Welfare Corporation.  The administrative record does not support a finding that the

3     $33,905,893 was "debt."  Rather, the $33,905,893 was booked as "Total liabilities" on the

4     final balance sheet of the Welfare Corporation at the time of its dissolution.  II AR 386.

5     Such liabilities consisted of $11,669,493 of "Accounts Payable" and a sum of $22,236,399

6     in "Deferred Revenue" and "School Deposits and Loan Fund."  II AR 386.  As Petitioner's

7     witness testified, the deferred revenue and school deposits/loan fund were monies received

8     either from parents who paid their tuition in advance or from internal Church loans.  VII

9     AR 2645:9-21.  Similarly, the accounts payable amount was simply the anticipated payroll

10    for the teachers.  VII AR 2645:3-8.  There were no liabilities owed to outside organizations.

11    VII AR 2645:1-2.  The above amounts were booked as "liabilities" against the $76,382,068

12    of "Cash and Equivalents" (II AR 386) to indicate that a portion of such cash assets was

13    being held in reserve as pre-paid tuition or school deposits—again, not as any debt owed.[17]

14          More importantly, the Corporation Sole's assumption of liabilities—whether the

15    assumption of debt or balance sheet liabilities—is not consideration for transfer tax

16    purposes, because such assumption was not payment or consideration *for* the transfer of the

17    School Properties.  Instead, the return of the School Properties by the Welfare Corporation

18    to the Corporation Sole was required by operation of law.

19          Transfers by operation of law are not subject to transfer tax.  In *Rochelle Inv. Corp.*

20    *v. Fontenot*, 34 F. Supp. 118 (E.D. La. 1940), a federal documentary stamp tax case, the

21    Court held that transfers of realty by operation of law are not subject to transfer tax.  In

22

23    [17] As to the second item identified by the Review Board, the collective bargaining
          agreement is not an additional item, but merely relates to the anticipated payroll for the
24        teachers.  See II AR 591.  Moreover, neither the Review Board nor Respondent explains
          why the Corporation Sole's *retention* of the operation of the parishes and schools—
25        something that the Corporation Sole is obligated to do as part of its core mission of
          "administering and managing the affairs, property and temporalities of the Roman
26        Catholic Church in said Archdiocese of San Francisco" (see I AR 121)—constitutes
          consideration for the Parish and School Properties.  As further discussed below with
27        respect to Deed B, even under the authority cited by Respondent, a "promise to do what
          one is already obligated to do is not consideration."  *Beatrice v. State Board of*
28        *Equalization*, 6 Cal. 4th 767, 783 n.9 (1993).

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
                         THE SECOND CAUSE OF ACTION – CGC-10-498795
125

1  *Rochelle*, two corporations merged pursuant to which the real property of one corporation

2  was transferred to the surviving corporation. 34 F. Supp. at 118. The Court held that such

3  transfer was not subject to transfer tax, agreeing with the plaintiff's contention that the tax

4  "does not apply to all transfers of real estate, but that it applies only to deeds executed to

5  transfer property *sold to a purchaser* or nominee. That the property herein involved was

6  not sold to a purchaser, but was transferred by virtue of the merger agreement *through*

7  *operation of law*, the operating laws being the corporation laws of Delaware and

8  Louisiana." *Id.* at 119 (emphasis added). Such result is wholly consistent with the federal

9  Documentary Stamp Tax Regulations, which expressly indicate that the "[t]ransfer of real

10 estate in a *statutory* merger or consolidation from a constituent corporation to the

11 continuing or new corporation" is not subject to transfer tax. Treas. Regs. § 47.4361-

12 2(b)(12) (emphasis added).

13         Respondent argues that "the government has consistently taken the position that the

14 transfer of ownership rights resulting through voluntary acts of the parties, even though

15 pursuant to statutory requirements or directions of a board of directors, are not transfers

16 'wholly by operation of law.'" Resp. Br. at 19:9-15 (citing *Emporium Capwell Co. v.*

17 *Anglim*, 140 F.2d 224, 226 (9th Cir. 1944)). While the government consistently may have

18 taken such position, Respondent fails to point out that the U.S. Supreme Court resolved this

19 issue in *Seattle-First* by rejecting the government's position. 321 U.S. at 589-90. In

20 *Seattle-First*, the Court held that transfers by operation of law, such as a transfer of assets

21 pursuant to the National Banking Act, were not subject to transfer tax. *Id.* The *Seattle-*

22 *First* Court rejected the government's distinction between so-called "voluntary acts" and

23 transfers by operation of law and held:

24         But in a broad sense, few if any transfers ever take place "wholly by
        operation of law" for every transfer must necessarily be part of a chain of
25         human events, rarely if ever other than voluntary in character. Thus to
        give any real substance to the exemption, we must take a more narrow
26         view and examine the transfer apart from its general background. We
        must look only to the immediate mechanism by which the transfer is made
27         effective. If that mechanism is entirely statutory, effecting an automatic
        transfer without any voluntary action by the parties, then the transfer may
28         truly be said to be "wholly by operation of law."

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1    *Id.* at 587-88. Respondent cites two other cases, *Beatrice Co., supra,* and *Rexall Drug Co.*

2    *v. Peterson,* 113 Cal. App. 2d 528 (1952) (Resp. Br. at 19-20), neither of which is relevant

3    herein, since they involve sales and use taxes (*Beatrice*) and a business license tax (*Rexall*).

4            Here, the Welfare Corporation was a "subordinate corporation" of the Corporation

5    Sole, as indicated in the Bylaws of the Welfare Corporation, Article I of which states in

6    relevant part:

7            This corporation also shall be conducted as a subordinate corporation,
             instituted with the authority of the Roman Catholic Archbishop of San
8            Francisco, a (California) corporation sole, within the meaning of the
             provisions of said Nonprofit Religious Corporation Law relating thereto.
9

10    I AR 336-337. Cal. Corp. Code § 9132(a), which is part of the California Nonprofit

11    Religious Corporation Law (see Cal. Corp. Code § 9110), provides that in the event of the

12    dissolution of a subordinate corporation, "any assets of the corporation . . . *shall be*

13    *distributed* to the head organization" (emphasis added). The statutory requirements of Cal.

14    Corp. Code § 9132(a) were embedded in the Articles of Incorporation of the Welfare

15    Corporation, Article 8 of which provided that upon its liquidation or dissolution the

16    "remaining assets of the corporation shall be distributed . . . to The Roman Catholic

17    Archbishop of San Francisco, a (California) corporation sole." I AR 181. Thus, the return

18    of the School Properties was by operation of law—namely, Cal. Corp. Code § 9132(a).

19    Neither the assumption of liabilities nor any of the other alleged forms of consideration

20    regarding Deed A is relevant as California statutory law required that those properties be

21    returned to the Welfare Corporation upon its dissolution.

22            As indicated in Petitioner's Opening Brief, federal case law supports Petitioner's

23    position. Pet. Open. Br. at 23:25-28. In *Socony-Vacuum Oil Co. v. Sheehan,* 50 F. Supp.

24    1010 (E.D. Mo. 1943), and *Tide Water Associated Oil Co. v. Jones,* 57 F. Supp. 482 (W.D.

25    Okla. 1944), a subsidiary corporation transferred all of its assets and liabilities to its parent

26    corporation upon dissolution. In both cases, the Court held that the assumption or discharge

27    of the subsidiary's liabilities by the parent corporation did not constitute consideration for

28    the assets that were distributed as a consequence of the dissolution. *Socony-Vacuum,* 50 F.

1 Supp. at 1012; *Tide Water*, 57 F. Supp. at 483. Likewise, here, the Welfare Corporation

2 transferred all of its assets to the Corporation Sole upon dissolution, and the Corporation

3 Sole's assumption of any liabilities cannot be regarded as consideration for the transfer for

4 transfer tax purposes.

5      Respondent contends that "transfer tax is owed when a corporation in dissolution

6 transfers its assets to a separate and distinct legal entity, and the new entity assumes the debt

7 of the dissolving corporation." Resp. Br. at 19:7-9 (citing Treas. Reg. § 47.4361-2(a)(8)); see

8 also Resp. Br. at 16:19-28 (citing *R. H. Macy & Co. v. United States*, 107 F. Supp. 883

9 (S.D.N.Y. 1952) and *Greyhound Corp. v. United States*, 1953 U.S. Dist. LEXIS 4352 (N.D.

10 Ill. 1953)). Respondent's reliance on the cited authorities is wholly misplaced. First, Treas.

11 Reg. § 47.4361-2(a)(8) provides that the following transfer may be subject to tax:

12     A conveyance of realty by a corporation in liquidation or in dissolution *to
its shareholders* subject to the debts of the corporation; however, if there

13     are no corporate debts and the conveyance is made solely for the
cancellation and the retirement of the *capital stock*, the tax does not apply.

14

15 Treas. Reg. § 47.4361-2(a)(8) does not apply because, in the instant case, there was neither a

16 dissolution to *shareholders* nor a conveyance made *subject to* the debts of the Welfare

17 Corporation, as described above. As Respondent concedes, the Welfare Corporation did not

18 have shareholders, because "[a]s a legal matter, nonprofit organizations are not 'owned.' As

19 such, no one has a right to the profits and no one has the right to sell interests in the

20 nonprofit."[18] III AR 804. Thus, Treas. Reg. § 47.4361-2(a)(8) has no applicability here.[19]

21

22

---

23 [18] In this case, Respondent argues that the Corporation Sole cannot be regarded as the

24 shareholder of the Welfare Corporation for purposes of analyzing whether a change in the
ultimate ownership of the subject real property has occurred. On the other hand,

25 Respondent relies upon Treas. Reg. § 47.4361-2(a)(8), which necessarily requires that the
Corporation Sole be regarded as the sole shareholder of the Welfare Corporation.

26 Respondent cannot have it both ways.

[19] Respondent also cites, in passing, other examples of taxable transfers under section

27 47.4361-2(a) (e.g., life maintenance, defaulting mortgagor, exchanges for capital stock).
Resp. Br. at 16:12-18. None of those examples apply here, and Respondent does not

28 indicate the relevance of such examples to the specific facts in the instant case.

Case 3:... 115 of

1    Similarly, *Greyhound* and *R. H. Macy* are distinguishable because those cases, like

2    Treas. Reg. § 47.4361-2(a)(8), involved transfers of realty to the dissolving corporation's

3    shareholders. The fact that the transfers at issue in *Greyhound* and *R. H. Macy* involved

4    shareholders, and hence capital stock, was a pivotal factor in the court's decision in those

5    cases. In *Greyhound*, for example, the Court stated:

6            What happened in this case was this: Corporate entity A, which owned all of
             the capital stock of corporate entity B, caused all of the assets, including a
7            parcel of real estate, of B, subject to the liabilities of B, to be conveyed to A.
             In consideration thereof, *A surrendered to B all of the capital stock of B*, and,
8            having done this, caused B to be dissolved. The court is of the opinion that
             the *transfer of the assets of B to A, in consideration of the return to B of all of
9            its capital stock was a "sale."* It was a transfer of title to realty for a valuable
             consideration, which involved something of value, that is, the *rights of a
10           stockholder in the corporation* which was to be dissolved, *evidenced by the
             stock thereof.*
11

12   1953 U.S. Dist. LEXIS 4352 at *4 (emphasis added). In other words, the capital stock of

13   the dissolving corporation provided the necessary consideration to treat the conveyance as

14   a taxable sale. No such consideration was involved in the dissolution of the Welfare

15   Corporation, which had neither shareholders nor capital stock.

16           In sum, with respect to Deed A, the Corporation Sole did not purchase or otherwise

17   provide any "valuable consideration" for the School Properties under transfer tax law.

18   Upon its dissolution, the Welfare Corporation was required by operation of law (Cal. Corp.

19   Code § 9132(a)) to transfer all of its remaining assets, including the School Properties to

20   the Corporation Sole. The "liabilities" on the Welfare Corporation's books were not debts

21   owed to third parties. Rather, they consisted of pre-paid tuition and anticipated payroll to

22   be paid to the teachers in the schools. Any such "liabilities" assumed by the Corporation

23   Sole in connection with the dissolution of the Welfare Corporation were wholly unrelated

24   to the subject realty, and the assumption of such "liabilities" was not made in exchange for

25   the realty. Thus, the realty transfer in connection with the Welfare Corporation's

26   dissolution cannot be considered a "sale" that is subject to the transfer tax.

27

28

Case...................................pdf
115

1          b.     Deed B

2              In its brief, Respondent focuses its "realty sold" and consideration arguments almost

3    entirely on Deed A and not Deed B.  Deed B did not involve a corporate dissolution,

4    transfers by operation of law or any assumption of so-called "liabilities."  Respondent

5    merely re-states the Review Board's conclusion and asserts that, with respect to Deed B, the

6    Review Board "found ample support that valuable consideration existed in the form of" the

7    Support Corporation's "agreement" to undertake the following items:  (1) collect rents and

8    maintain the properties, (2) return the collected rents and profits to the Corporation Sole, (3)

9    allow juridic persons affiliated with the Archdiocese to use the properties and (4) make

10   payments to restore or upgrade facilities.  Resp. Br. at 14:6-14 (see Board Ruling at IX AR

11   3613:5-14).  The Review Board and Respondent erred on the facts and the law.

12             First, the administrative record does not support a finding that any such alleged

13   "agreement" existed between the Corporation Sole and the Support Corporation.

14   Respondent's witness testified that, with regard to consideration, he "looked at everything

15   that was going on" (VII AR 2486:13-16), yet when specifically asked about the existence of

16   the purported agreement between the Corporation Sole and the Support Corporation, he

17   could not identify any.  VI AR 2391:5-9.  Respondent's witness testified:

18             Q:  You refer to an agreement.  What agreement—

19             A:  The statement that you referred to to collect the rents from its
                  properties and make payments to further use of, to restore and upgrade the
20                facilities used.

21   VI AR 2391:5-9.  The "statement" to which Respondent's witness referred was no

22   "agreement."  It simply was "Attachment 7E" to the Support Corporation's tax-exemption

23   application to the California Franchise Tax Board.  VI AR 2390:8-2391:3.  Attachment 7E

24   (see II AR 547) states in full:

25             This corporation will, among other things, collect rents from its properties
                  and make payments to or for the use of, or restore or upgrade the facilities
26                used by, the Juridic Persons.  It will accomplish its purpose under the
                  leadership of a highly qualified and dedicated Board of Directors and Real
27                Estate and Building Advisory Committees.  The corporation's Articles and
                  Bylaws mandate that all activities shall be conducted in accordance with
28                Federal and State non-profit laws applicable to this type of non-profit

Case... THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
115

| | |
|---|---|
| 1 | corporation and in accordance with the law of the Roman Catholic Church. |
| 2 | |

3   Attachment 7E does not indicate the existence of any agreement. Instead, the collection of

4   rents and restoring or upgrading facilities in Attachment 7E simply refers to the Bylaws of

5   the Support Corporation, Section 3.1.3 of which provides:

> This Corporation shall engage solely and exclusively in activities that shall support, or benefit the Corporation Sole, for the purposes stated in This Corporation's Articles of Incorporation, such activities to include, but not be limited to, *collecting rents* from This Corporation's properties and making payments to or for the use of, or *restoring or upgrading the facilities* used by, the aforementioned Juridic persons affiliated with the Corporation Sole; all in accordance with the laws of The Church, which, *inter alia*, respects the *special rights to use of property by Juridic persons* and the concomitant obligation to provide the financial means to maintain and enhance that property.

12   I AR 250-251 (emphasis added). Thus, contrary to the Review Board's conclusion, the

13   alleged "agreement" referred to in the Board's Ruling simply does not exist.[20]

14         Secondly, in light of Section 3.1.3 of the Support Corporation's Bylaws, the items

15   determined by the Review Board to constitute consideration for Deed B are wholly

16   insufficient as a matter of transfer tax law. Bylaws Section 3.1.3 was in place at the time of

17   the Support Corporation's formation in September 2007 (see I AR 244, 249) and well prior to

18   the execution of Deed B in April 2008 (I AR 22). Even under the authority cited by

19   Respondent, namely, *Beatrice Co.*, the items prescribed in Bylaws Section 3.1.3 are not

20   consideration at all. As the California Supreme Court held in *Beatrice Co.*, a "promise to do

21   what one is already obligated to do is not consideration." 67 Cal. 4th at 783, n.9. Because

22   collecting rents, restoring or upgrading facilities and allowing the juridic persons the right to

23   use property as they are entitled under Church law were inherent, pre-existing undertakings

24

25

---

26   [20] The Review Board (IX AR 3613:11) and Respondent (Resp. Br. at 14:11) also point to a flow chart (II AR 375) as support that the Support Corporation agreed to collect and pay
27   rents to the Corporation Sole. On its face, the chart shows just the opposite. The chart indicates that the "Rents & Profits" are "*for* schools & parishes" not payment or a
28   promise of payment to the Corporation Sole in exchange for any properties.

1  of the Support Corporation at the time of its formation, they cannot constitute consideration

2  for the Parish and School Properties whether under transfer tax law or even contract law.

3          In sum, with respect to Deed B, there was no agreement between the Support

4  Corporation and the Corporation Sole in connection with the transfers of the Parish and

5  School Properties. Further, the items found by the Review Board to constitute "valuable

6  consideration" for the properties are not consideration for transfer tax or other purposes, as

7  such items were inherent obligations of the Support Corporation in its role as a supporting

8  corporation of the Corporation Sole. Thus, the Review Board erred as a matter of law and its

9  conclusions are unsupported by substantial evidence in the record.

10         3.       Any conceivable benefit is not consideration.

11         Respondent also argues that the Review Board "found further valuable

12  consideration resulting from the underlying purpose that the subject transfers would

13  insulate the properties transferred to the Support Corporation from claims against the

14  Corporation Sole." Resp. Br. at 14:25-27. First, as discussed above, there were no existing

15  liabilities or claims against the Corporation Sole at the time of the Diocesan restructuring.

16         Second, Respondent urges this Court to accept that any alleged benefit from the

17  transfer of property is sufficient consideration for transfer tax purposes. As discussed

18  above, that simply is not the law. For transfer tax purposes, consideration is defined as

19  "money or anything of value" (Treas. Reg. § 47.4361-1(a)(4)(ii)), which requires something

20  more than a vague, amorphous or speculative benefit as alleged here. To hold otherwise

21  would be to ignore the legal definitions of "realty sold" and "valuable consideration" and

22  cause all realty transfers to be subject to tax, unless the transferor can show that its was

23  *disadvantaged* by the transfer. Such a requirement obviously does not exist. See, e.g.,

24  *Seattle-First* (no sale or consideration found in bank consolidation that "benefitted" the

25  parties involved).

26         4.       Intra-diocesan transfers are not "sales" under California law.

27         A further reason in support of Petitioner's position is that intra-diocesan transfers

28  are not sales under California law. As discussed in Petitioner's Opening Brief, RTC

Case 3:23-cv-... REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON ... of
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1   § 62(k) provides that the transfer of property between a corporation sole, a religious

2   corporation or public benefit corporation, or any combination thereof, is not a "change of

3   ownership," provided that both the transferor and transferee are "regulated by laws, rules,

4   regulations, or canons of the same religious denomination." Pet. Open. Br. at 47:8-24.

5   While RTC § 62(k) is a property tax provision, Courts consistently have looked to the

6   property tax definition of "change of ownership" to interpret the term "realty sold" for

7   transfer tax purposes.  See *McDonald's Corp. v. Board of Supervisors*, 63 Cal. App. 4th

8   612, 615 (1998); *Thrifty Corp. v. County of Los Angeles*, 210 Cal. App. 3d 881, 886 (1989).

9   In *Thrifty*, the Court held that the term "realty sold" for transfer tax purposes is "sufficiently

10  similar to the phrase 'change in ownership'" for property tax purposes "to warrant that each

11  phrase be defined to have the *same meaning*." 210 Cal. App. 3d at 886.  The *McDonald's*

12  Court and the Attorney General in his California transfer tax opinion, Opinion No. 98-1203

13  (copy of which is located at II AR 784), both followed *Thrifty*.[21]

14          Here, the Corporation Sole, the Welfare Corporation and the Support Corporation

15  are all religious corporations expressly governed by the laws of the Roman Catholic

16  Church.  The Review Board did not find, and Respondent does not contend, otherwise.  As

17  such, the transfers of the Parish and School Properties pursuant to the internal Diocesan

18  restructuring (Deed A and Deed B), were not changes of ownership under RTC § 62(k) and

19  thus were not "realty sold" for transfer tax purposes.

20          Respondent argues that the Review Board was correct when it concluded as a matter

21  of law that, in light of San Francisco's status as a charter city, RTC § 62(k) is "not

22  applicable in any determination as to whether documentary transfer taxes are due and

23

24  _____

25  [21] Even the Review Board's own legal counsel, Mr. Nakamae, agreed that the phrase "realty sold" in SF Transfer Tax Ordinance § 1102 means "change in ownership":

26      And that's why Section 1102 refers to realty sold, and if I'm not mistaken, you can correct me if I'm wrong, in the context of a transfer tax question,

27      you look to the definitional change in ownership as defining whether a realty has been sold.

28  VII AR 2577:18-22.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1  owing under the ordinance." Resp. Br. at 38:1-2.  Respondent's argument, and the Board's

2  Ruling, fail for several reasons.  First, it is simply untrue that charter cities have unlimited

3  "home rule" powers that give them carte blanche authority to impose a transfer tax on an

4  intra-diocesan restructuring.  The limitations on a charter city's powers are further

5  discussed under Section C, below, relating to RTC § 11925(d).

6      Second, irrespective of San Francisco's status as a charter city, RTC § 62(k) is

7  persuasive authority in interpreting the SF Transfer Tax Ordinance and the meaning of

8  "realty sold" as used therein.  As discussed above, the *McDonalds's* and *Thrifty* Courts (as

9  well as the Attorney General in his California transfer tax opinion (Opinion No. 98-1203)),

10  looked to the property tax provisions, which include RTC § 62(k), for guidance in

11  interpreting the California transfer tax, and the meaning of "realty sold" as used in RTC

12  § 11911 in particular.  As a matter of statutory construction, it is well settled that "[w]here

13  the same term or phrase is used in a similar manner in two related statutes concerning the

14  same subject, the same meaning should be attributed to the term in both statutes unless

15  countervailing indications require otherwise." *Thrifty*, 210 Cal. App. 3d 886 (citation

16  omitted).  So too here, because SF Transfer Tax Ordinance § 1102 and RTC § 11911 both

17  use the same term "realty sold," this Court should look to property tax provisions, such as

18  RTC § 62(k), to interpret "realty sold."  The issue raised before this Court is how the term

19  "realty sold" should be applied in the context of an intra-diocesan restructuring.  RTC

20  § 62(k) answers that question:  intra-Diocesan transfers are not "changes of ownership" and

21  thus should not be considered the sale of realty for transfer tax purposes.  *McDonald's*

22  (First Appellate District) and *Thrifty* not only provide this Court with a legal roadmap but

23  require that this Court look to RTC § 62(k) in support of Petitioner's position.[22]

24

25

_____

26  [22] Indeed, Respondent itself cites to California property tax statutes and cases in support of
   its position. Resp. Br. at 35:18-36:19.  For example, Respondent urges this Court to look

27  to a case involving RTC § 63.1, a property tax provision relating to the Parent/Child
   Exclusion, but to ignore RTC § 62(k), which specifically relates to intra-denominational

28  transfers such as those at issue here.  Again, Respondent cannot have it both ways.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON of
THE SECOND CAUSE OF ACTION – CGC-10-498795
119

1      Third, irrespective of San Francisco's charter city status, and even if RTC § 62(k)

2  does not apply, long-standing California authorities regarding religious corporations compel

3  a determination that intra-diocesan transfers are not sales for transfer tax purposes.  In

4  *Wheelock v. First Presbyterian Church of Los Angeles,* 119 Cal. 477, 483 (1897), the

5  California Supreme Court explained:

6          The Civil Code of this state . . . expressly permits religious bodies to
           incorporate, but such *incorporation is only permitted as a convenience to*
7          *assist in the conduct of the temporalities of the church.  Notwithstanding*
           *incorporation the ecclesiastical body is still all important.*  The corporation
8          is a subordinate factor in the life and purposes of the church proper.  A
           *religious corporation* like the one at bar, under the laws of this state, is
9          *something peculiar to itself.  Its function and object is to stand in the*
           *capacity of an agent holding the title to the property,* with power to manage
10         and control the same in accordance with the interest of the spiritual ends of
           the church. . . . "The legislature never means by granting or allowing such
11         charters to change the ecclesiastical status of the congregation, but only to
           afford them a *more advantageous* civil status."  [Emphasis added]
12

13 In *Frohliger v. Richardson*, 63 Cal. App. 209 (1923), the Court recognized that, even

14 though civil law title to church property may be held by a religious corporation, the true

15 owner of the church property is the Church itself.  The issue in *Frohliger* was whether State

16 funds could be used for the restoration of the San Diego Mission.  *Id.* at 210.  Under

17 applicable State law, the Legislature was barred from using public funds in the aid of any

18 religious sect or church.  *Id.* at 212.  In *Frohliger*, the Court held:

19         As a matter of common knowledge, we take judicial notice of these facts:  The
           San Diego Mission is owned by the Roman Catholic Church.  The title to the
20         property is in the Archbishop of San Francisco, a corporation sole.

21 *Id.* at 214.  Thus, the fact that title to church property is in the name of a religious

22 corporation does not remove such property from church ownership.

23         Due to the unique features of religious corporations and in light of the foregoing

24 authorities, California taxing authorities have recognized:

25         Title and ownership are not synonymous. . . . [T]he fundamental truth
           recognized by the judicial notice taken in *Frohliger, supra*; namely, that the
26         real owner of property, title to which is vested in the Roman Catholic Bishop,
           a corporation, is the Roman Catholic Church, and since it is recognized that a
27         transfer to an agent is only a transfer of bare legal title, it is now our opinion
           that the subject transfer from one Roman Catholic Bishop, a corporation sole
28         to another should not be considered a change in ownership.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    V AR 1933 (Opinion letter from Glenn L. Rigby, Assistant Chief Counsel, State Board of

2    Equalization, March 24, 1981). Thus, notwithstanding its charter city status, the City

3    cannot ignore the unique features of religious corporations under California law—that they

4    are "peculiar" unto themselves, whose "function and object is to stand in the capacity of an

5    agent holding the title to the property." The Legislature's intent, in permitting religious

6    bodies to incorporate, was to assist and provide a "more advantageous civil status"—*not to*

7    treat them less favorably, as Respondent attempts to do here, than non-religious

8    corporations.

9      In sum, there was no "sale" upon which the transfer tax can be imposed. Neither the

10    Corporation Sole (Deed A) nor the Support Corporation (Deed B) purchased or paid any

11    consideration in exchange for the Parish and School Properties. In addition, as a matter of

12    California law, intra-diocesan transfers do not constitute a change of ownership and thus are

13    not "sales" for transfer tax purposes. To the extent there is any doubt whether the Diocesan

14    restructuring and the transfers thereto are subject to transfer tax, such doubt *must* be

15    resolved in favor of Petitioner. See, e.g., *McDonald's*, 63 Cal. App. 4th at 617 ("It is, of

16    course, well settled that in case of doubt statutes levying taxes are construed most strongly

17    against the government and in favor of the taxpayer.").[23] If this Court determines that the

18    Diocesan restructuring does not constitute "realty sold" for *any* of the foregoing reasons, it

19    need not go any further. Under SF Transfer Tax Ordinance § 1102, neither transfer is

20    subject to transfer tax.

21

22

23

24

---

[23] Respondent asserts that "exemptions from taxation are strictly construed." Resp. Br. at

25   40:5-6 (citing *Batt v. City and County of San Francisco*, 184 Cal. App. 4th 163, 175
(2010)). Here, however, issues regarding "realty sold," "sale" and "consideration"

26   concern whether the subject transaction is even *subject to* the transfer tax, not whether the
transaction qualifies for one of the enumerated *exemptions* from the tax. Thus, any

27   doubts regarding whether the Parish and School Properties were sold for transfer tax
purposes, must be resolved in Petitioner's favor, just as the Court did in *McDonald's* in

28   holding in favor of the taxpayer's interpretation of "realty sold" for transfer tax purposes.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON of
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

B. **The Intra-Diocesan Restructuring Is Exempt From Transfer Tax as a "Change in Form" Under SF Transfer Tax Ordinance § 1106(d).**

If this Court determines that a sale occurred and consideration existed with respect to either or both of Deed A and Deed B (i.e., that there was "realty sold" to a "purchaser or purchasers"), the issue that arises is whether any of the various *exemptions* from the transfer tax applies in this case. Petitioner asserts that the Diocesan restructuring is exempt from transfer tax as a "change in form" under SF Transfer Tax Ordinance § 1106(d). Alternatively, Petitioner asserts that the restructuring is exempt under RTC § 11925(d).

1. **The Review Board erred in that it applied the wrong legal test for determining whether the change in form exemption applies.**

The Review Board erred as a matter of law in its ruling that Deed A and Deed B are not exempt from transfer tax as a "change in form" under SF Transfer Tax Ordinance § 1106(d). IX AR 3613, 3616. In particular, the Review Board erroneously examined factors such as the "differences" in the "purpose, control and/or powers" of the subject corporations to determine whether the transfers reflected in Deed A and Deed B constituted a mere change in form. IX AR 3614:9-15, 3616:9-12. The Review Board concluded that the change in form exemption under SF Transfer Tax Ordinance § 1106(d) did not apply because the purpose, control and powers of the Corporation Sole, the Welfare Corporation and the Support Corporation differed from each other. IX AR 3614:16-20, 3616:12-17. The Review Board's conclusion is erroneous as a matter of law because it applied the wrong legal test to determine whether the change in form exemption applies for transfer tax purposes. Further, in doing so it erroneously considered a series of factors which are completely irrelevant in making such a determination. In all, the Board's Ruling is at odds with the key transfer tax case in this area—*Columbia Gas of Pennsylvania, Inc. v. United States*, 446 F.2d 320 (3d Cir. 1971)—and cannot be sustained.

a. **The so-called "continuity of interest" test does not apply.**

The Review Board does not cite any legal authority to support its conclusion that the factors it relied upon (i.e., purpose, control and powers) are at all relevant for purposes of

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON THE SECOND CAUSE OF ACTION – CGC-10-498795

1   the change in form exemption.  However, relying upon *Home Construction Corp. v. United*

2   *States*, 439 F.2d 1165 (5th Cir. 1971); *Davant v. Commissioner*, 366 F.2d 874 (5th Cir.

3   1966); and *Security Industrial Ins. Co. v. United States*, 702 F.2d 1234 (5th Cir. 1983)

4   (collectively referred to herein as the *Home Construction* cases), Respondent argues that to

5   qualify as a change in form under SF Transfer Tax Ordinance § 1106(d), the so-called

6   "continuity of interest" test must be satisfied—that is, one corporation must "replace" or be

7   the "alter ego" of the other, or there must be "an identity of shareholders and their

8   proprietary interests."  Resp. Br. at 28.  In applying the continuity of interest test,

9   Respondent contends that it is appropriate to look to the "purposes, governance and powers

10  of the three entities."  Resp. Br. at 28:21-22.[24]  However, Respondent's argument must fail.

11  Its reliance on the *Home Construction* cases is wholly misplaced as those cases involved

12  federal *income* taxes and *not* the federal documentary stamp tax upon which San

13  Francisco's transfer tax is based.

14          In the *Home Construction* cases, the issue was whether a corporate reorganization

15  satisfied the requirements of a tax-free reorganization for federal income tax purposes.  For

16  federal income tax purposes, a reorganization is tax-free if it is described in one of the

17  subsections under Internal Revenue Code ("IRC") section 368(a)(1).  For example, a so-

18  called "A" reorganization is exempt under IRC section 368(a)(1)(A), a "B" reorganization

19  is exempt under IRC section 368(a)(1)(B), and so forth.  An "F" reorganization is exempt

20  under IRC section 368(a)(1)(F) as a "mere change identity, form, or place of organization of

21  one corporation, however effected."  At issue in the *Home Construction* cases was whether

22  the subject reorganization was exempt from federal income tax as an "F" reorganization

23  under IRC § 368(a)(1)(F).[25]  In making the determination whether the reorganization at

24

---

25  [24]Respondent's witness also admitted that the factors he looked at in determining whether
26  the change in form exemption applied were based on *Home Constr. Corp.*  VI AR
    2397:2-7, 2398:6-11.

27  [25]*Home Constr. Corp.*, 439 F.2d at 1167 ("whether the merger was a reorganization within
    the meaning of § 368(a)(1)(F) of the Internal Revenue Code of 1954"); *Davant*, 366 F.2d
28  at 883 ("we must now decide . . . [whether] this was a 368(a)(1)(D) or (F)

                                                                    (continued...)

702699704                              26
REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    issue therein satisfied the requirements of an "F" reorganization, the Court in each case

2    applied the so-called continuity of interest test.

3            Unlike the *Home Construction* cases, the issue in this case is not whether the intra-

4    Diocesan restructuring at issue here qualifies as an "F" reorganization for federal income

5    tax purposes. Indeed, as charitable religious corporations under IRC § 501(c)(3),[26] the

6    Corporation Sole, the Welfare Corporation (prior to its dissolution) and the Support

7    Corporation are not even subject to federal income taxes. Rather, the proper legal test for

8    determining whether the "change in form" exemption applies for transfer tax purposes is set

9    forth in *Columbia Gas*, in which the Third Circuit analyzed the change in form exemption

10   within the specific context of the federal documentary stamp tax.[27] Most importantly, in

11   *Columbia Gas*, the Court expressly rejected the "F" reorganization continuity of interest test

12   upon which the Review Board and Respondent has relied and instead looked to whether

13   there has been any change in the *beneficial ownership of the real property* that was

14   transferred.

15                   b.       The *Columbia Gas* beneficial ownership test is controlling.

16           As discussed in Petitioner's Opening Brief (Pet. Open. Br. at 33:18-34:2), in

17   *Columbia Gas*, one corporation transferred its assets to an affiliated corporation, both of

18   which were wholly owned by a common parent corporation. 446 F.2d at 321. The

19   transferor corporation was engaged in the transmission and sale of natural gas in interstate

20   commerce and was subject to the regulation of multiple regulatory agencies, including the

21   Federal Power Commission and the Public Service Commission of Pennsylvania. *Id.*

22

23   _____

24   (...continued)
     reorganization"); *Security Industrial*, 702 F.2d at 1248 ("we reverse the district court and
     hold that the acquisitions . . . do not qualify as F reorganizations").

25   [26] II AR 580-586.

26   [27] Because SF Transfer Tax Ordinance § 1106(d) is patterned after former IRC
     § 4382(b)(1)(D) of the federal Documentary Stamp Tax Act, federal authorities relating

27   thereto apply for purposes of interpreting SF Transfer Tax Ordinance § 1106(d). See
     *Meanley*, 49 Cal. App. 2d at 317 and authorities cited in footnote 8 above; see also SF

28   Transfer Tax Ord. § 1114.

Case 3:13-... REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
119

1 Pursuant to an internal business reorganization, the transferor corporation *segregated* its

2 Pennsylvania assets and moved them to a new, *separate and distinct* corporation so that it

3 would no longer be subject to the Pennsylvania state regulatory agencies. *Id.* The issue was

4 whether the transfer of assets was exempt from federal documentary stamp tax under the

5 "change in form" exemption.

6 The government argued in *Columbia Gas* that because the change in form

7 exemption from documentary stamp tax "is couched in language substantially identical with

8 that of § 368(a)(1)(F), it urges that the exemption is inapplicable unless the reorganization

9 qualifies as an "F" reorganization." 446 F.2d at 322. The *Columbia Gas* Court expressly

10 rejected the government's argument and instead held that the term "mere change in form"

11 for transfer tax purposes more broadly covers corporate reorganizations where no shift in

12 the beneficial ownership of the real property has occurred. The Court held:

13     We hold that in using the language "a mere change in identity, form, or place
    of organization" in § 4382(b)(1)(D) [of the federal Documentary Stamp Tax

14     Act] Congress intended to exempt a generic class of formalistic transactions
    *involving no change in ownership* and no new dedication of capital. It did *not*

15     intend to import into the excise tax field a specific definition of whatever type
    of reorganization is covered by § 368(a)(1)(F) [i.e., an "F" reorganization].

16     We agree with the district court that the simple divisive reorganization here in
    issue, involving *no shift in ownership interests*, qualifies as an exempt

17     transaction.

18 *Id.* at 324 (emphasis added). Thus, the *Columbia Gas* Court concluded that the

19 reorganization was not subject to documentary stamp tax because, even though the property

20 was transferred from one corporate affiliate to another, the property remained ultimately

21 owned by both affiliates' common parent corporation.

22 *Columbia Gas* is controlling in the instant case, since it specifically addresses the

23 "change in form" exemption for transfer tax purposes and involves analogous facts—

24 namely, the transfer of property pursuant to an internal corporate reorganization whereby

25 the underlying ownership of such property remained the same. *Columbia Gas* is also

26 significant in that it expressly rejected the same argument that Respondent makes in this

27 case. The Court in *Columbia Gas* unequivocally rejected the government's argument that

28 the "F" reorganization continuity of interest test used for income tax purposes must be

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

Case... 115

1   satisfied to meet the "change in form" exemption for transfer tax purposes. Rather, the sole

2   and determining factor that must be considered in applying the change in form exemption

3   for transfer tax purposes is whether there has been any *change in the beneficial ownership*

4   *of the real property* transferred—not whether the purpose, power or control of the

5   corporations are identical or whether one corporation is the alter ego or replaces the other

6   corporation.

7        The foregoing is further confirmed by the California Attorney General in a formal

8   published opinion, Opinion No. 98-1203,[28] interpreting the "mere change in form"

9   exemption in the California Transfer Tax Act, under which authority the San Francisco

10  transfer tax ordinance was enacted.[29] As discussed in Petitioner's Opening Brief (Pet.

11  Open. Br. at 34:3-16), the issue addressed by the Attorney General was whether the transfer

12  of real property from a parent corporation to its wholly-owned subsidiary was subject to

13  transfer tax. The Attorney General, specifically referencing *Columbia Gas*, concluded in

14  his opinion that such transfer was not subject to transfer tax because the "*beneficial*

15  *ownership* of the property remains the same," even though "a corporation has a *legal status*

16  *distinct* from its officers and shareholder." 82 Ops. Cal. Atty. Gen. at 58-59 (emphasis

17  added). In a well-reasoned opinion, the Attorney General concluded:

18      In *Columbia Gas of Pennsylvania, Inc. v. United States* (3d Cir. 1971) 446
        F.2d 320, the court concluded that a transfer of real property from one wholly-
19      owned subsidiary corporation to another wholly-owned subsidiary corporation
        was not subject to the federal tax upon which [the California transfer tax] was
20      patterned. The court found the transfer to be part of a "plan of reorganization
        or adjustment" "whereby a mere change in identity, form, or place of
21      organization is effected," which was exempt from the federal tax, and which is
        similarly expressly exempt under the [California transfer tax] Act. In effect,
22      the federal court concluded that the parent corporation was the *beneficial*
        *owner of the property* both before and after the transfer and thus the tax was
23      inapplicable.

24

25

26  [28] 82 Ops. Cal. Atty. Gen. 56 (1999). This opinion interprets the California transfer tax
27  (Cal. Rev. & Tax. Code § 11901 *et seq.*), which like the SF Transfer Tax Ordinance, was
    patterned after the federal documentary stamp tax.

28  [29] SF Ordinance § 1101.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1  82 Ops. Cal. Atty. Gen. at 59 (citations omitted) (emphasis added).  Thus, consistent with

2  *Columbia Gas*, the Attorney General focused on the beneficial ownership of the property

3  and whether it had changed—not whether the purpose, power or control of the corporations

4  were identical.

5      The Review Board failed to address *Columbia Gas* in its ruling, and Respondent

6  makes only scant reference to the decision.  Resp. Br. at 32:4-8.  With respect to *Columbia*

7  *Gas*, Respondent merely observes that the court in *Columbia Gas* never used the term

8  "change in *beneficial* ownership."  Resp. Br. at 32:6-7.  Respondent is off-base.  It ignores

9  the *Columbia Gas* Court's express references to "change in ownership" and "shift in

10  ownership interests" as well as Attorney General Opinion No. 98-1203, which looked to the

11  "beneficial owner of the property." 446 F.2d at 324; 82 Ops. Cal. Atty. Gen. at 59.

12      Respondent makes reference to another "Columbia Gas" case, *Columbia Gas of*

13  *Md., Inc. v. United States*, 177 Ct. Cl. 97 (Ct. Cl. 1966), which pre-dated the Pennsylvania

14  decision discussed above.  Respondent states that in the Maryland case, the Court of Claims

15  "came to a different conclusion" and "held that Congress intended for the stamp tax

16  exemption to be narrowly construed."  Resp. Br. at 32:7-13.  What Respondent fails to

17  mention is that in the Pennsylvania decision, the Third Circuit dismissed the Court of

18  Claims' decision in the Maryland case as fatally flawed for a number of reasons:  (1) the

19  federal legislation enacting the "change in form" exemption dealt solely with excise (e.g.,

20  transfer) taxes, not income taxes, (2) Congress did not intend to adopt the income tax "F"

21  reorganization test (IRC § 368(a)(1)(F)) for purposes of transfer taxes, and (3) the excise tax

22  exemptions that Congress enacted are entirely independent of IRC § 368(a)(1).  446 F.2d

23  323.  Further, the California Attorney General cited to the Third Circuit's decision—not the

24  Court of Claims' decision—in his opinion, as noted above.  Finally, even the Court of

25  Claims in the Maryland case itself dismissed the "continuity of interest" factors relied upon

26  by the Review Board and Respondent.  177 Ct. Cl. at 104 ("However, the continuity of

27  interest aspect is not very helpful here because it is really not the issue.")  Simply put, the

28  so-called continuity of interest factors (e.g., "purpose, control and powers") are not relevant

Case: REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1  with respect to the application of the change in form exemption for transfer tax purposes—

2  even under the authority cited by Respondent.

3         Finally, Respondent attempts to dismiss the Attorney General's transfer tax opinion

4  on the basis that the SF Transfer Tax Ordinance "requires the Assessor-Recorder to look to

5  the Documentary Stamp Tax Regulations, not interpretations of the current California

6  statute used by non-charter general law cities." Resp. Br. at 32:23-25. Again, Respondent

7  is off-base. Respondent wholly ignores the fact that the Attorney General opinion analyzes

8  and interprets the language, "whereby a mere change in identity, form, or place of

9  organization is effected," which is the *identical language* that is used in the federal

10  documentary stamp tax statute (former IRC § 4382(b)(1)(D)), the California transfer tax

11  statute (RTC § 11923(d)) and the SF Transfer Tax Ordinance (SF Tr. Tax Ord. § 1106(d)).

12  Thus, the Attorney General's opinion constitutes persuasive authority, and in any event the

13  legal authorities cited therein—namely, *Columbia Gas*—are controlling for purposes of the

14  San Francisco transfer tax.

15         In short, whether the purpose, control and powers of the subject corporations differ

16  from each other simply is irrelevant.

17         2.    The Review Board's findings are not supported by substantial
             evidence.
18

19         As noted above, the Review Board erroneously applied the continuity of interest test

20  contained in the federal income tax law, rather than the *Columbia Gas* beneficial ownership

21  test, in reaching its determination that the change in form exemption of SF Transfer Tax

22  Ordinance § 1106(d) does not apply in this case. Even if the factors relied upon the Review

23  Board—purpose, control and powers—are at all relevant, the Board's Ruling is still

24  erroneous as a matter of law and on the facts. The Review Board erred as a matter of law in

25  its failure to give due consideration to the fact that the Corporation Sole, the Welfare

26  Corporation and the Support Corporation are religious corporations governed by Church

27  law under the oversight of the Archbishop.

28

Case 3:14-cv-03113 Document 33 Filed 05/08/14 Page 43 of
119

1  In addition, the Review Board's findings that the purpose, control and powers of the

2  above corporations are "different" from each other (see IX AR 3614:22-23, 3615:11-12, 22-

3  23, 3616:19-20, 14-15, 25-26) finds no support in the administrative record. Indeed, the

4  evidence presented below establishes precisely the opposite—the purpose, control and

5  powers of the Corporation Sole, the Welfare Corporation and the Support Corporation were

6  the same, in that the Archbishop is the "hub of the wheel" around which the Archdiocesan

7  family of corporations is connected.

8        For example, it is uncontroverted that the purpose of the Corporation Sole, the

9  Welfare Corporation and the Support Corporation is religious, and specifically to conduct

10  and administer the temporalities of the Church, including the management of Church

11  property. I AR 238-239, 272, 308-309. The Certificate of Amendment of Articles of

12  Incorporation of the Corporation Sole state in relevant part:

13        The Roman Catholic Archbishop of San Francisco, a Corporation Sole,
          was duly organized as such by the authority of and in accordance with the
14        laws of the State of California, on February 24, 1854, by Joseph S.
          Alemany, the then Archbishop of the Roman Catholic Archdiocese of San
15        Francisco, *for the purpose of administering and managing the affairs,
          property and temporalities of the Roman Catholic Church in said
16        Archdiocese of San Francisco,* and has ever since continued to be and to
          act as a corporation sole for such purpose. . . .
17
          This corporation is organized and operated exclusively for *religious
18        purposes* within the meaning of *Section 501(c)(3) of the Internal Revenue
          Code.*
19
     I AR 272 (emphasis added).
20
          The Articles of Incorporation of the Welfare Corporation, as amended, provided in
21
     relevant part:
22
          The specific and primary purposes are *religious purposes,* namely, to
23        conduct religious activities of the Roman Catholic Church within the
          Roman Catholic Archdiocese of San Francisco comprising the City and
24        County of San Francisco and the Counties of Marin, San Mateo and Santa
          Clara in the State of California. . . .
25
          The general purposes and powers are: 1) *To own, maintain and operate
26        church-related facilities of the Roman Catholic Church within said
          Archdiocese of San Francisco* including without limitation Catholic
27        parochial and high schools, parish halls and auditoriums, and religious
          centers such as Newman Centers and Confraternity of Christian Doctrine
28        Centers for religious educational and other religious purposes. . . .

1   Notwithstanding the generality of the foregoing provisions, this
    corporation shall have no purposes or powers, and shall not carry on any
2   activities which will render it ineligible for tax exemption under either
    *501(c)(3) (or corresponding provisions) of the Internal Revenue Code* or
3   Section 23701d of the California Revenue and Taxation Code (or
    corresponding provisions).

4

5   I AR 308-309 (emphasis added).[30]

6       The Articles of Incorporation of the Support Corporation, state:

7       This corporation is a religious corporation and is not organized for the
        private gain of any person.  It is organized under the Nonprofit Religious
8       Corporation Law exclusively for *religious purposes.*

9       This corporation is organized exclusively for *religious purposes within the*
        *meaning of Internal Revenue Code Section 501(c)(3)*, including the
10      corresponding section of any future federal internal revenue law ("IRC"),
        and the canon law of the Roman Catholic Church. . . .

11
        This corporation is organized, and at all times hereafter shall be operated
12      exclusively to *support, benefit, and carry out the purposes* (within the
        meaning of IRC Section 509(a)(3)(B)(ii)) *of The Roman Catholic*
13      *Archbishop of San Francisco, A Corporation Sole*, and specifically for the
        purpose of advancing the mission of those Parish and School Juridic
14      Persons, duly established under the canon law of the Roman Catholic
        Church, that are, pursuant to the canon law of the Roman Catholic Church,
15      governed by the Archbishop of The Roman Catholic Archdiocese of San
        Francisco, and operated civilly by The Roman Catholic Archbishop of San
16      Francisco, A Corporation Sole.

17  I AR 238-239 (emphasis added).

18      Not only does the Board's Ruling misstate the purposes of the Corporation Sole, the

19  Welfare Corporation and the Support Corporation,[31] the Review Board's findings that the

20

21  [30] The Welfare Corporation's Articles were amended in 1981 to reflect the fact that the
22      Archdiocese of San Francisco no longer included the County of Santa Clara.  See I AR
        304.

23  [31] The Board's Ruling misstates the Welfare Corporation's purpose as "to own, maintain
        and operate schools of less than collegiate grade in the Archdiocese of San Francisco."
24      IX AR 3615:3-4.  First, the Review Board cites to the Welfare Corporation's Articles as
        they existed in 1953, which provisions were subsequently amended.  Second and more
25      importantly, the Review Board ignores the specific language in the Articles that the
        specified purposes "includ[e] without limitation" the maintenance and operation of the
26      schools.  Contrary to the Board's Ruling, this does not mean that the Welfare Corporation
        was limited in its purpose to the maintenance and operation of the schools.  And, in any
27      case, operation of the schools is religious.  See, e.g., RTC § 207 (property used for
        religious purposes, including school purposes of less than collegiate grade, is exempt
28      from California property taxation under the religious exemption).

1  purposes of these corporations are somehow "different" for transfer tax purposes are wholly

2  unsupported.  All of these corporations are religious corporations, operated for religious

3  purposes to carry out religious activities of the Church.  They are all operated exclusively

4  for religious purposes in accordance with IRC § 501(c)(3), which exempts charitable and

5  religious organizations from federal income tax.

6         As for the control and powers of these religious corporations being "different," the

7  Review Board's findings are again not supported by the administrative record.  The Review

8  Board ignored the central role of the incumbent Archbishop as the "hub" of the

9  Archdiocesan family of corporations, over which the Archbishop has *direct canonical*

10  *oversight*.  See VII AR 2520:3-2521:1, 2524:19-23; IX AR 3616:2-6.  For example, the

11  Review Board points to the fact that the boards of directors of the subject corporations

12  differ in number and composition.  Yet, the Review Board erred in its utter failure to give

13  any significance to the fact that the Corporation Sole exists as the corporate identity of the

14  incumbent Archbishop (see Cal. Corp. Code § 10002) and all of the board of directors of

15  the Welfare Corporation and the Support Corporation are comprised of the Archbishop

16  himself or persons appointed by the Archbishop *at his pleasure* or confirmed by the

17  Archbishop, in *his sole discretion.*

18         For example, with respect to the Welfare Corporation, its board of directors was

19  comprised of 15 members, one of which was the Archbishop and 10 of which were

20  appointed by the Archbishop at his pleasure.  I AR 337; IX AR 3615:16-20.  What the

21  Review Board failed to consider is that the four remaining members of the Welfare

22  Corporation's board were the persons who held the offices of Vicar General, Chancellor,

23  Director of Finance and Superintendant of Schools of the Archdiocese, all of whom were

24  appointed to such offices solely by the Archbishop.  I AR 337 (Welfare Corporation

25  Bylaws, Art. IV, Sec. 2); II AR 357-358 (R. #13).

26         Similarly, the board of directors of the Support Corporation is comprised of seven

27  members, three of which must be members of the Finance Council and four of which must

28  be members of the College of Consultors.  I AR 255; IX AR 3617:16-18.  The Board's

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
119

1    Ruling fails to note that (1) it is the Archbishop who appoints (and can remove) each of the

2    members of the Finance Council and the College of Consultors and (2) the Archbishop has

3    the sole discretion to confirm that members of the Finance Council and the College of

4    Consultors satisfy the canonical standards necessary for membership on those bodies.  I AR

5    253 (Bylaws Sec. 8.3); VII AR 2517:9-20.  Thus, the Review Board's finding that control

6    of the subject corporations was "different" in any meaningful way for transfer tax purposes

7    is contrary to the evidence presented.

8            With respect to the third "factor" under the continuity of interest test, the Review

9    Board again erred in concluding that the powers of the Corporation Sole somehow differed

10   from those of the Welfare Corporation and the Support Corporation.[32]  To illustrate, the

11   Review Board found that the powers of the Corporation Sole were different from those of

12   the Welfare Corporation on the basis that the directors of the Welfare Corporation may

13   select and remove officers and employees of the corporation, prescribe powers and duties of

14   officers, make rules and regulations, conduct and manage the temporal affairs of the

15   corporation, adopt a corporate seal and borrow money.  IX AR 3615:24-3616:1.  There is

16   nothing in the record that the Corporation Sole does not have the above-enumerated

17   powers.  Rather, as previously noted, the Corporation Sole has the power to administer and

18   manage the affairs, property and temporalities of the Church, which include, without

19   limitation, the above-listed powers.  I AR 272.  In any case, the Archbishop controlled the

20   Welfare Corporation's board of directors which made those decisions such as the selection

21   and removal of officers, the powers and duties of officers and other matters regarding the

22   temporal affairs of the corporation.

23           With respect to the Support Corporation the Review Board found that: (1) the

24   corporate powers reside with the board of directors, (2) the Corporation Sole, as the only

25   member, reserves the right to vote on certain matters, and (3) "in the event of a dispute or

26

27   _____

[32] The Review Board does not articulate how the "control" factor differs from the "powers"
28      factor.

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

Case                                                                                                        of
115

1  question whether action is in accordance with Canon Law and other applicable church laws,

2  the issue shall be decided, once and for all, by the Chancellor, and his decision will be

3  binding on all parties involved." IX AR 3618:5-16. The Review Board made several

4  critical errors in its findings.

5       The record below establishes that the incumbent Archbishop—not the Corporation

6  Sole—is the sole member of the Support Corporation with important reserve powers. I AR

7  247, 253. In addition, the directors of the Support Corporation must be members of the

8  Finance Council or the College Consultors, all of whom are appointed by the Archbishop. I

9  AR 253, 255; VII AR 2517:9-20. Further, the Archbishop has the sole discretion to

10 confirm that members of the Finance Council and the College of Consultors satisfy the

11 canonical standards necessary for membership on those bodies. I AR 253; VII AR 2517:9-

12 20. Finally, the Review Board misstates the role of the Chancellor. The Bylaws of the

13 Support Corporation provide that in "the event of a question or dispute as to whether a

14 director of This Corporation is or is no longer a member of the College of Consultors or

15 Finance Council . . . This Corporation may rely upon a written certification containing the

16 official seal of office of the duly appointed Chancellor of the Diocese, which certification

17 shall be final and binding." I AR 102-103. In effect, the Chancellor plays a role along the

18 lines of a Secretary of State (see VII AR 2518:6-15); while it is the Archbishop who retains

19 sole discretion regarding membership on the College of Consultors and the Finance

20 Council.

21      In sum, in light of the Archbishop's central "hub of the wheel" role vis-à-vis the

22 Corporation Sole, the Welfare Corporation and the Support Corporation, the Review Board

23 plainly erred in concluding that the power and control of those corporations were somehow

24 different.

25            3.    Petitioner satisfied the requirements of the "change in form"
                    exemption under SF Transfer Tax Ordinance § 1106(d).
26

27      In light of *Columbia Gas* and the above authorities, the Review Board and

28 Respondent erred as a matter of law in applying the "F" reorganization continuity of interest

1    test for determining whether the change in form exemption applies for transfer tax purposes.

2    As established in *Columbia Gas* and as confirmed by the Attorney General's opinion, the

3    proper test that should be applied is whether there has been any change in the beneficial

4    ownership of the real property. In the proceedings below, the Review Board failed to

5    consider whether the beneficial ownership of the Parish and School Properties changed as a

6    result of the Archdiocesan restructuring.

7                  a.    <u>The administrative record establishes that the Diocesan</u>
                          <u>restructuring did not change the beneficial ownership of the</u>

8                           <u>Parish and School Properties.</u>

9        In this case, the evidence is undisputed that the owner of the Parish and School

10    Properties was and remains the Roman Catholic Church for the benefit of its parishes and

11    schools in San Francisco both before and after the Diocesan restructuring. The Board's

12    Ruling contains no findings or conclusions contrary to this fact.[33] Respondent now attempts

13    to refute this heretofore undisputed fact by contending that Petitioner somehow has

14    *admitted* that the restructuring changed the beneficial ownership of the Parish and School

15    Properties. Resp. Br. at 30:18-22. Respondent is wholly off the mark.

16        Respondent cites to the testimony of Petitioner's witness at VII AR 2552 (452:14-

17    454:25). Resp. Br. at 30:20. However, the cited testimony *confirms* that the beneficial

18    ownership of the subject properties did not change as a result of the restructuring and thus

19    contains no admission to the contrary. Contrary to Respondent's characterization,

20    Petitioner's witness testified:

21        The beneficial interest, as we constantly maintain remains, with the – under
         the laws of the Catholic Church, that property remains with the juridic person,

22        and that's the way it is

23    VII AR 2552:17-20. Petitioner's witness confirmed:

24

25
_____

26 [33] Respondent alleges that the Review Board rejected the contention that "for tax purposes
     only, no substantive changes in beneficial ownership took place." Resp. Br. at 30:21-23.

27      Respondent cites to the Board's Ruling "at 3:14-17, 4:23-25, and 8:9-15." Respondent
     completely misstates the contents of the Board's Ruling. Neither the cited portions of the

28      Board's Ruling nor anywhere else in the Board's Ruling is there any mention of
     "beneficial ownership." See IX AR 3609:14-17; 3610:23-25; 3614:9-15.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1     We intended to make sure that the property *owned by the Roman Catholic*
    *Church* was used for the purpose in which it was required to use it for
2     under church law, and which is why we *ad nauseum* put compliance with
    church law, the requirement to do what church law says, and that's why
3     we even put in the name of this new corporation that it's the Archdiocese
    of San Francisco Parish and School, *juridic persons*, Real Property
4     Support Corporation.

5     We wanted to enshrine that concept that *these properties under church*
    *law are for the use and benefit of these parishes and schools*, they always
6     were, and the intention is that they always will be, and there were all kinds
    of protections inserted in there to make sure that that would continue to be
7     the case.

8 VII AR 2544:1-15. Petitioner's witness re-affirmed that:

9     The Catholic Church owns the 232 properties that are the subject of this
    hearing, as I have said already two or three times.
10

11 VII AR 2525:22-24.

12     Respondent presented no evidence that the beneficial ownership of the Parish and

13 School Properties has changed. It merely made an unsupported assertion. Indeed, as set

14 forth in Petitioner's Opening Brief, the evidence presented below was undisputed that such

15 beneficial ownership did not change in connection with either transfer (Deed A or Deed B).

16 Pet. Open. Br. at 36-41.

17                 b.     <u>Respondent refers to other factors that are irrelevant for</u>
                        <u>purposes of the change in form exemption.</u>
18

19     Respondent attempts to shore up the Board's Ruling by referring to other, albeit

20 equally irrelevant, "factors." For example, Respondent contends that the transferor

21 corporation must "replace" or be the "alter ego" of the transferee corporation for the change

22 in form exemption to apply. Resp. Br. at 28:10-13.[34] However, in *Columbia Gas* (and the

23

24

_____

25 [34] Contrary to Respondent's entire argument later in its Brief that the "Corporation Sole
    cannot use alter ego as a sword to defeat payment of a tax" (Resp. Br. at 35:8-37-4),
26     Petitioner has not alleged and does not now allege that the Corporation Sole, the Welfare
    Corporation and the Support Corporation are alter egos of one another. Curiously,
27     Respondent itself recognizes this. See Resp. Br. at 28:12-13 (the "Corporation Sole
    pointedly does not claim that the Support Corporation is the alter ego of the Corporation
28     Sole.").

1    California Attorney General Opinion No. 98-1203), the transferor corporation neither

2    replaced nor became the alter ego of the transferee corporation. 446 F.2d at 321.

3         Respondent also argues that the change in form exemption cannot apply because the

4    Corporation Sole, the Welfare Corporation and the Support Corporation are "separate and

5    distinct legal entities." Resp. Br. at 21:18-22:4. Respondent does not cite—and indeed

6    cannot cite—any authority that the transferor and transferee cannot be separate and distinct

7    legal entities for the transfer to be exempt as change in form under SF Transfer Tax

8    Ordinance § 1106(d). The authority is in fact to the contrary. In *Columbia Gas*, the Court

9    held that segregating out certain assets of a corporation and transferring them to a separate

10   and distinct corporation qualified for the change in form exemption since the ultimate

11   ownership of the property did not change. 446 F.2d at 324. The California Attorney

12   General's opinion expressly confirms this. 82 Ops. Cal. Atty. Gen. at 58 ("Even though a

13   corporation has a legal status distinct from its officers and shareholders [citations omitted],

14   the transfer of real property from a parent corporation to a wholly-owned subsidiary

15   corporation is not considered a transfer.")

16        Respondent also apparently contends that the change in form exemption cannot

17   apply because the Church transferred assets from one corporate entity to another allegedly

18   for "the protection of the assets of the Church from litigation claims." Resp. Br. at 28:12-

19   17. First, as discussed above, such allegation is wholly unfounded as there were no existing

20   claims against the San Francisco Archdiocese at the time of the restructuring. Secondly, the

21   segregation of assets between corporations does not defeat the change in form exemption.

22   In *Columbia Gas*, the transferor corporation segregated its Pennsylvania assets and

23   transferred them to a new corporation to insulate itself from Pennsylvania state regulators.

24   446 F.2d at 321. The Court held that the transfer was exempt from transfer tax, even where

25   the express purpose of the transfer was to shift state regulatory and other obligations from

26   the transferor to the transferee corporation.

27        Finally, Respondent asserts that "no formal trust was created in connection with the

28   subject transfers." Resp. Br. at 31:2-3. In making such assertion, Respondent seems to

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1  propose that the establishment of a formal trust is somehow required for the change in form

2  exemption to apply.  Respondent provides no legal authority in support of such proposition.

3  None of the relevant statutory authorities (e.g., former IRC § 4382(b)(1)(D); RTC

4  § 11923(d); SF Tr. Tax Ord. § 1106(d)), federal documentary stamp (transfer) tax

5  regulations or transfer tax cases state that a formal trust is needed to qualify for the change

6  in form exemption.  Again, the entities involved in *Columbia Gas* (as well as in Attorney

7  General Opinion No. 98-1203) were corporations, not trusts, yet the change in form

8  exemption applied.  In short, the creation of a formal trust is not required.

9         c.    *Episcopal Church Cases* confirms that church canons are
              relevant in civil law matters.
10

11        Respondent contends that *Episcopal Church Cases*, 45 Cal. 4th 467 (2009), is not

12  relevant in this case because the instant matter involves taxation, not a question of religious

13  doctrine or faith.  Resp. Br. at 33:6-35:7.  Respondent also contends that *Episcopal Church

14  Cases* is distinguishable because, unlike Episcopal Church canons, Catholic Church canon

15  law allegedly "does not provide for an 'express creation of a trust.'"  Resp. Br. at 34:11-12.

16  Finally, Respondent asserts that "Canon law has no application to documentary transfer

17  taxes."  Resp. Br. at 34:24.  Each of Respondent's contentions are wholly without merit.

18        The importance of *Episcopal Church Cases* is that it re-affirms the principle that,

19  under the "neutral principles of law" approach as articulated by the United States Supreme

20  Court,[35] civil courts must give credence to church laws and canons, where such laws and

21  canons have been incorporated into the civil law organizational documents (e.g., articles

22  and bylaws) of the religious corporation.  45 Cal. 4th at 473, 485.[36]  Similarly, the Court in

23  *New v. Kroger,* 167 Cal. App. 4th 800, 820 (2008), in reversing the trial court, held:

24        The trial court's fundamental mistake in deciding this matter under the
          neutral principles of law approach is that it believed that under this approach
25        it was restrained to rely solely on California corporations law in a vacuum,
          without reference to the articles of incorporation and bylaws of the Parish
26        corporation, as well as the constitution and canons of the Episcopal Church

27  [35] See *Jones v. Wolf,* 443 U.S. 595, 597 (1979).

28  [36] See also Pet. Open. Br. at 43:3-17.

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    and San Diego Diocese, and its failure to recognize that religious
      corporations are, in their basic sense, different from ordinary corporations.
2

3          In the instant case, the articles and/or bylaws of the Corporation Sole, the Welfare

4    Corporation and the Support Corporation expressly incorporated Church law and required

5    that such corporations act in accordance with Church law.[37]  As set forth in the

6    administrative record, under Church law, it is uncontroverted that the Parish and School

7    Properties were and continue to be owned by the Roman Catholic Church for the benefit of

8    its parishes and schools.[38]  The Review Board neither found, nor does Respondent contend,

9    that said properties are *not* owned by the Church for the benefit of its parishes and schools.

10   Rather, Respondent urges this Court, under the guise of the neutral principles of law

11   approach, to ignore Church law and canons and pretend that they do not exist.  That simply

12   is not the law.

13         California courts have long recognized that, notwithstanding civil law title, the true

14   owner of church property is the Church itself.  In *Frohliger*, 63 Cal. App. at 214, "as a

15   matter of common knowledge" the Court took *judicial notice* of the fact that the San Diego

16   Mission "is owned by the Roman Catholic Church [even though] title to property is in the .

17   . . corporation sole."  More recently, the Court in *New* held:

18         As the California Supreme Court has explained, religious corporations are
           merely "permitted as a *convenience to assist in the conduct of the*
19         *temporalities of the church.  Notwithstanding incorporation, the*
           *ecclesiastical body is still all important.  The corporation is a subordinate*
20         factor in the life and purposes of the church proper." (*Wheelock v. First*
           *Presbyterian Church* (1897) 119 Cal. 477, 483.)
21
           "A religious corporation . . . is something peculiar to itself. *Its function and*
22         *object is to stand in the capacity of an agent holding title to the property,*
           *with power to manage and control the same in accordance with the interest*
23   ────────────────

24   [37] See, e.g., Welfare Corporation Articles and Bylaws (I AR 308-309, 336-337); Support
      Corporation Articles and Bylaws (I AR 238-239, 250, 254); and Corporation Sole
25   Articles (I AR 138-145).  Actions by such corporations, including alienation of Church
      property, that are not consistent with Church law would constitute an *ultra vires* act.  See
26   VII AR 2598:18-2599:16.

27   [38] See the Archbishop's letter dated December 4, 2007.  I AR 81-82 (referring to "the real
      property and capital assets belonging to the parishes and schools under Church law"); see
      also Bylaws Section 3.1.3 of the Support Corporation.  I AR 99-100 (referring to "the
28   special rights to use of property by Juridic persons").

CaseREPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, on of
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1     *of the spiritual ends of the church.* . . . The legislature never means by
    granting or allowing such charters to change the ecclesiastical status of the
2     congregation, but only to afford them a more advantageous civil status."
    (*Berry v. Society of Saint Pius X* (1999) 69 Cal. App. 4th 354, 371-372.)
3

4 167 Cal. App. 4th at 820. As applied here, California case law confirms that the function

5 and role of religious corporations—such as the Corporation Sole, the Welfare Corporation

6 and the Support Corporation, are not to strip the Church from ownership of its property

7 when civil title has been transferred between or among such corporations, but to "assist in

8 the conduct of the temporalities of the church" and "stand in the capacity of an agent

9 holding title to" Church property. The Diocesan restructuring did not change the key

10 fundamental fact that the Parish and School Properties remain owned by the Roman

11 Catholic Church for the benefit of its parishes and schools.

12     In sum, SF Transfer Tax Ordinance § 1106(d) expressly exempts from tax transfers

13 "whereby a mere change in identity, form, or place of organization is effected." Under

14 *Columbia Gas* and Attorney General Opinion No. 98-1203, this includes transfers whereby

15 no change in the ultimate or beneficial ownership of the property has occurred. The Review

16 Board failed to follow *Columbia Gas* and Attorney General Opinion No. 98-1203 and

17 erroneously applied the continuity of interest test under the federal income tax law. In so

18 doing, the Review Board erroneously considered factors that are irrelevant for transfer tax

19 purposes—namely, the purpose, control and power of the subject corporations. Notably, the

20 Review Board failed to consider the determinative factor: whether the beneficial ownership

21 of the Parish and School Properties changed. As such, the Review Board erred as a matter

22 of law. As previously set forth in Petitioner's Opening Brief, because it is uncontroverted

23 that the beneficial ownership of the Parish and School Properties did not change as a result

24 of the Diocesan restructuring, the restructuring qualifies a mere change in form and thus

25 exempt from transfer tax under SF Transfer Tax Ordinance § 1106(d).

26     C.    The Restructuring Is Also Exempt Under California RTC § 11925(d).

27     With broad strokes, both the Review Board and Respondent summarily dismiss the

28 application of the exemption under RTC § 11925(d) (as well as the applicability of RTC

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    § 62(k)) on the basis that San Francisco is a charter city "with sovereign rights in its

2    municipal affairs" and thus does not need to follow those California RTC statutes. Resp.

3    Br. at 37:9-11 (referring to the Board's Ruling at IX AR 3618:19-27). The Review Board

4    and Respondent have seriously erred in at least two important respects. First, charter cities

5    do not have unlimited powers. Imposition of a transfer tax, specifically in the context of an

6    internal Diocesan restructuring, is contrary to an express overriding statewide concern that

7    such restructuring not be subject to tax.

8          Second, even if charter cities have the power to impose a transfer tax and dictate the

9    terms thereof, the issue before this Court is not what the City and County of San Francisco

10   *could have done* in the exercise of its so-called sovereign rights. Rather, the issue involves

11   what Respondent City *did do* in enacting the SF Transfer Tax Ordinance, using the express

12   language that it enacted, as well as the actions of the Recorder in administering the transfer

13   tax provisions. The SF Transfer Tax Ordinance plainly "hitched its wagon" to the

14   California transfer tax statute (which includes RTC § 11925(d)) as reflected in both SF

15   Transfer Tax Ordinance § 1101 and the Recorder's actions in accepting exemptions claimed

16   under RTC § 11925(d)). Having done so, Respondent City cannot now hide behind its

17   charter city status to arbitrarily disavow its actions and assert that the SF Transfer Tax

18   Ordinance means what Respondent says it now means because it allegedly has the

19   sovereign power to do so.

20         1.    San Francisco, as a charter city, does not have unlimited powers.

21          The powers of a charter city are not unlimited. The California Supreme Court has

22   held that charter city ordinances must give way to conflicting state statutes that are of

23   statewide concern. *California Federal Savings & Loan Assn. v. City of Los Angeles*, 54

24   Cal. 3d 1, 17 (1991). Whether a state statute is of statewide concern is an ad-hoc inquiry,

25   must be answered in light of all the facts and circumstances surrounding each case, and any

26

27

28

Case3:11-cv-02525-JSW Document10-8 Filed08/12/11 Page55 of

1    doubt as to the statewide concern must be resolved in favor of the state statute.[39] *Id.* at 16,

2    24. The cases upon which Respondent relies (Resp. Br. at 39:5-9) in support of San

3    Francisco's attempt to impose a transfer tax under the specific "facts and circumstances"

4    here are distinguishable.

5        For example, in *Fisher v. County of Alameda*, 20 Cal. App. 4th 120 (1993),

6    taxpayers sold real property for over $1 million and claimed that the real property transfer

7    tax imposed by the charter city of Berkeley was invalid because it directly conflicted with

8    California Government Code § 53725, which provides:

9        Except as permitted in Section 1 of Article XIII of the California Constitution,
no local government or district may impose any ad valorem taxes on real
10        property. *No local government or district may impose any transaction tax or
sales tax on the sale of real property within the city, county, or district.*

11

12    The *Fisher* Court found that Government Code § 53725 was linked to the statewide concern

13    associated with inequitable ad valorem property taxation, noting that "the prohibition on

14    real estate transfer taxes is juxtaposed with restrictions on ad valorem property taxation."

15    *Id.* at 129. The Court found that the statewide concerns with ad valorem property taxation

16    stemmed from the escalation of property values—and therefore rising property taxes—even

17    though those property owners who held on to their property did not realize any cash or

18    money from the mere rise in their property values. *Id.* at 130. In contrast, with respect to

19    transfer taxes, the taxpayers were subject to transfer tax "only upon the successful

20    negotiation of a sale when [the transfer tax] can be paid out of the sales price. Such a tax

21    will lessen the profitability of a sale, but it does not involve the particular inequities that

22    have been a matter of statewide concern in the field of ad valorem taxation." *Id.*

23

24

[39] In *California Federal*, the Court invalidated the imposition of a business license tax by
25    the charter city of Los Angeles on a savings and loan association because the tax
conflicted with a state statute. The statute at issue limited the taxation of financial
26    corporations to the state income tax, and was in lieu of all other taxes, including any
license taxes imposed by a charter city. After a detailed review of the history of the state
27    and local taxation of financial corporations, the Court found that the taxation of the
savings and loan association was a statewide concern, and therefore the statute trumped
28    the conflicting Los Angeles City business license tax ordinance. 54 Cal. 3d at 25.

Case... 119

1    Here, unlike the taxpayers in *Fisher* who realized over $1 million on the property

2    sale, neither the Welfare Corporation nor the Corporation Sole realized anything on the

3    intra-Diocesan property transfers.  There were no sales proceeds generated from which to

4    pay any transfer tax.  Yet, San Francisco seeks to impose millions of dollars in transfer

5    taxes—once on the transfer of the School Properties to the Corporation Sole (Deed A) and a

6    second time on the transfer of the same School Properties, along with the Parish Properties,

7    to the Support Corporation (Deed B).  Thus, the same inequities of statewide concern that

8    California Government Code § 53725 address are present here.

9        Notably, there is another State statute—RTC § 62(k)—which addresses the

10   statewide concern that intra-denominational transfers are not "changes of ownership" for

11   tax purposes.  The legislative history of RTC § 62(k) (see Pet. Open. Br. at 49-50) confirms

12   the State's concern that churches should be permitted to operate in corporate form through

13   the use of religious corporations and freely place title to church property in such

14   corporations as an agent of the church.  The Legislature's intent was aptly summarized by

15   the California Supreme Court in *Wheelock*, as previously discussed:

16       The Civil Code of this state . . . expressly permits religious bodies to
         incorporate, but such *incorporation is only permitted as a convenience to*
17       *assist in the conduct of the temporalities of the church.*  Notwithstanding
         incorporation the ecclesiastical body is still all important.  The corporation is a
18       subordinate factor in the life and purposes of the church proper.  A *religious*
         *corporation* like the one at bar, under the laws of this state, is *something*
19       *peculiar to itself.  Its function and object is to stand in the capacity of an*
         *agent holding the title to the property,* with power to manage and control the
20       same in accordance with the interest of the spiritual ends of the church. . . .

21       The legislature never means by granting or allowing such charters to change
         the ecclesiastical status of the congregation, *but only to afford them a more*
22       *advantageous civil status.*

23   119 Cal. at 483 (emphasis added).  As noted, the function and purpose of a religious

24   corporation are to hold title to property as agent of the church.  The City is attempting to

25   thwart such purpose by taxing the Church when it avails itself of the religious corporate

26   vehicles that have been provided as a "convenience to assist"—not hinder—the conduct of

27   the temporal affairs of the Church.

28

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
119

1    Moreover, and even more troubling, is the fact that the City is treating religious

2    corporations *less favorably* than for-profit corporations.  Here, the City seeks to tax the

3    transfer of the Parish Properties from the Welfare Corporation to the Corporation Sole

4    (Deed A) and the transfer of the Parish and School Properties from the Corporation Sole to

5    the Support Corporation (Deed B).  If, instead, a for-profit parent corporation were to

6    transfer property to its wholly owned subsidiary—something that businesses do routinely—

7    the City would not seek to impose a tax.[40]  Thus, the City's imposition of a transfer tax in

8    this case, in a manner disadvantageous to religious corporations, is a matter of statewide

9    concern and not purely a local matter over which San Francisco has sovereign powers.

10                   2.    San Francisco adopted RTC § 11925(d) through its own ordinance
                           and in practice.

11

12    SF Transfer Tax Ordinance § 1101 expressly states that San Francisco's transfer tax

13    is "adopted pursuant to the authority contained in Part 6.7 (commencing with Section

14    11901) of Division 2 of the Revenue and Taxation Code of the State of California."

15    Respondent contends that "the Corporation Sole overstates the importance of the enabling

16    language in Cal. Rev. & Tax. Code §11901."  Resp. Br. at 38:21-22.  Respondent argues

17    that the "note contained in § 11901 . . . makes clear that the legislature did not intend to

18    restrict the ability of chartered cities and a 'city and county,' i.e., San Francisco, from

19    adopting its own ordinance."  Resp. Br. at 39:14-19.[41]  Respondent's argument misses the

20    point.  San Francisco adopted its own transfer tax ordinance, but it chose to do so in a

21    manner that expressly linked it to the California transfer tax statute.  Having gone down this

22    path, the City must live with the ordinance that it adopted.[42]

23    _____

24    [40] For example, as one member of the public commented during the proceedings below,
      "I cannot understand why major corporations, family partnerships and everything can get
25    away with no tax, yet a tax-exempt organization, you are applying a tax to it." VI AR
      2152:3-8.

26    [41] RTC § 11901 contains no such "note."

27    [42] Respondent also quotes from an article written by Petitioner's counsel (V AR 1681).
      Resp. Br. at 40:27-28.  Respondent neglects to note that the sentence immediately
28    following the quoted language states that "the local county rules should be reviewed to
                                                                              (continued…)

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1       This Court should not ignore the express language used in SF Transfer Tax

2  Ordinance § 1101 referring to the California Revenue and Taxation Code. Under well-

3  settled principles of statutory construction, significance must be given to every word,

4  phrase, sentence or part of a statute and a construction making some words surplusage is to

5  be avoided. See, e.g., *Moyer v. Workmen's Comp. Appeals Bd.*, 10 Cal. 3d 222, 230 (1973).

6  In addition, both the SF Transfer Tax Ordinance and the California transfer tax statute use

7  identical language (e.g., "realty sold . . . to the purchaser or purchasers," "mere change in . .

8  . form"), which, in turn, is identical to the language in the federal Documentary Stamp Tax

9  Act.[43] Thus, San Francisco's linkage of its transfer tax ordinance to the California transfer

10  tax statute was not only express, but intentional.

11       Respondent also argues that "San Francisco, like other charter cities, may impose

12  documentary transfer taxes at different rates, and may have exemptions and exclusions that

13  are more expansive and less expansive then those afforded under the state statute." Resp.

14  Br. at 39:19-22. Again, Respondent misses the point. When California enacted RTC

15  § 11925(d) in 1999, San Francisco *did not* de-couple from this provision. Nothing in the SF

16  Transfer Tax Ordinance provides that San Francisco does not follow or adopt a less

17  expansive exemption than that afforded under RTC § 11925(d). The issue that Respondent

18  focuses on is whether San Francisco *could have* de-coupled from RTC § 11925(d). The

19  fact is San Francisco *did not* de-couple. Indeed, in February 2009 San Francisco eventually

20  codified RTC § 11925(d) as follows:

21       The tax imposed under this Article shall not apply where the deed, instrument,
   or other writing transferring title to real property between an individual or
22       individuals and a legal entity or between legal entities that results solely in a
   change in the method of holding title and in which the proportional ownership
23       interests in the real property, whether represented by stock, membership

24  _____

(...continued)

25  determine whether a particular transaction will be exempt from transfer tax." As relevant
   here, the key fact is that the SF Transfer Tax Ordinance links itself to the California
26  transfer tax statute, and the article in no way indicates or even remotely suggests that a
   charter city has the power to impose a transfer tax on intra-Diocesan transfers.

27  [43] See SF Transfer Tax Ord. § 1102, RTC § 11911 and former IRC § 4361 ("realty sold . . .
   to the purchaser or purchasers"); SF Transfer Tax Ord. § 1106(d), RTC § 11923(d) and
28  former IRC § 4382(b)(1)(D) ("mere change in . . . form").

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON THE SECOND CAUSE OF ACTION – CGC-10-498795

1    interest, partnership interest, cotenancy interest, or otherwise, directly or
     indirectly, remains exactly the same before and after the transfer.
2

3    SF Transfer Tax Ordinance § 1108(d) (as added by SF Ord. No. 20-09, Feb. 5, 2009).

4          Respondent contends that SF Transfer Tax Ordinance § 1108(d) was adopted

5    subsequent to Deed A and Deed B, which were executed in 2008, and thus does not apply.

6    See Resp. Br. at 37:17-20.  Such contention is belied by the actions of Respondent

7    Recorder's office, which, prior to the adoption of SF Transfer Tax Ordinance § 1108(d) in

8    fact and in practice accepted exemptions claimed under the authority of RTC § 11925(d).

9    As contained in the administrative record, there are numerous examples of deeds, claiming

10   exemption of the transfer tax under RTC § 11925(d), that the Recorder's office

11   affirmatively accepted for recordation without payment of any tax.  VII AR 2665-2723.

12   Such deeds were recorded in 2007-2008, the same time period when Deed A and Deed B

13   were presented to the Recorder's office for recordation.

14         Respondent now apparently asserts that "transfer tax declarations on recorded

15   instruments are not evidence in and of themselves that prove the Assessor-Recorder did not

16   later impose a tax after it discovered the wrongful notations." Resp. Br. at 49:18-21.

17   Respondent's assertion contradicts the testimony of its own witness.  When questioned

18   about the Recorder's recordation and audit practices specifically during the 2007-2008 time

19   period, Respondent's witness testified:

20         Q:    Have the resources and staffing at the Recorder's office changed over
               the years?
21
           A:    They have, and particularly since 2005. *We don't do post auditing.*
22         We audit everything *at the time of recordation*.  We require any claimant
           claiming an exemption to provide documentation to substantiate the
23         exemption, to substantiate the value.
                 We don't have a person who does post auditing.  The examiners have
24         been trained to review and analyze a transaction and to request for
           substantiation.
25

26

27

28

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON of
                    THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1 VI AR 2366:9-18 (emphasis added).[44]

2       In sum, notwithstanding its status as a charter city, San Francisco does not have the

3 authority to impose a transfer tax on the intra-Diocesan restructuring which occurred in the

4 instant case. As discussed in Petitioner's Opening Brief, the requirements set forth in RTC

5 § 11925(d) have been satisfied herein, because the Parish and School Properties remain

6 owned by the Church for the benefit of its parishes and schools, and the restructuring did

7 not change this. Pet. Open. Br. at 36-41, 46:8-14. The Review Board did not find, and

8 Respondent does not argue, otherwise. Thus, the restructuring is exempt from transfer tax.

9       **D.**    <u>Deed B Is Not Subject to Tax Because the Transfer of the Parish and School</u>
<u>Properties to the Support Corporation Has Not Been Completed.</u>

10

11       With respect to Deed B in particular, a further reason that the transfer tax cannot be

12 imposed is because the transfer of the Parish and School Properties to the Support

13 Corporation has not been completed. Respondent contends that a "delivery of a grant deed

14 with the intent to transfer the title is necessary before a transfer of real property is valid. . . .

15 In order for the delivery of a deed to be effective and the deed to be operative, acceptance

16 of the deed is required." Resp. Br. at 43:12-19 (citing *Perry v. Wallner*, 206 Cal. App. 2d

17 218, 221-22 (1962)). Respondent contends that "each of the four indicia of acceptance set

18 out in *Henneberry* are met." Resp. Br. at 44:4 (referring to *Henneberry v. Henneberry*, 164

19 Cal. App. 2d 125 (1958)). At least two of the four indicia alleged by Respondent are

20 untrue.

21       First, Respondent alleges that "Grant Deed B was manually handed over to the

22 grantee Support Corporation's representative, Les McDonald." Resp. Br. at 44:5-6.

23 Respondent cites to the following testimony of its witness:

24      Q: Okay. Let me focus my next set of questions now on this series of
transfers that we are talking about in this hearing. When did you first get

25      involved in the Petitioner's transfers?

26

27 _____

[44] Further testimony of Respondent's witness confirms the same. VII AR 2446:4-10 ("We

28   don't do post audit. We have an audit at the time of the recording . . . .").

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    A:  I first – as I recall, I first became involved when I received a telephone call
     from a person named Les McDonald, who is a retiree broker, as I remember,
2    *who was assisting the Petitioner* in drafting their deeds or helping them to
     transfer their properties, and he asked me whether or not we would accept the
3    deeds without a full legal description, with only the APNs, the assessor parcel
     numbers.

4

5    VI AR 2326: 4-16 (emphasis added).  The testimony upon which Respondent relies actually

6    supports Petitioner's position.  Respondent's own witness testified that he met with Mr.

7    McDonald, who was assisting the Petitioner—i.e., the Corporation Sole.  The witness did

8    not state that Mr. McDonald was acting in any capacity as the "Support Corporation's

9    representative."  Moreover, the testimony does not mention anything about manually

10   handing over any deeds.

11        Second, citing the above testimony, Respondent alleges that "Grant Deed B was in

12   the possession of the grantee Support Corporation."  Resp. Br. at 44:7.  Again, the cited

13   testimony indicates no such thing.

14        Respondent goes on and describes as "odd" the letter by Raymond Marino (II AR

15   601), President of the Support Corporation, re-affirming the Support Corporation's position

16   that the transfer of any real property from the Corporation Sole "be without consideration

17   AND that the transfer document could be recorded without cost (i.e., no transfer tax)."

18   Resp. Br. at 42:3-5.  Mr. Marino's letter is far from "odd" as it indicates, quite

19   understandably, that he was surprised to learn that the "Corporation Sole . . . has

20   encountered problems with the San Francisco Recorder's office."  II AR 601.  Mr. Marino's

21   letter substantiates the intent and understanding of the parties as shown *on the face* of

22   Deed B that the transfer of any real property to the Support Corporation be without

23   incidence of tax:  "Transfer Tax: None . . . (No consideration or sale—transfer of property

24   within the Roman Catholic Church only)."  I AR 22.  Any such transfer was always

25   conditional upon the transfer being tax-free.  Mr. Marino's letter also confirms that it was

26   the Corporation Sole—not the Support Corporation—that was dealing with the Recorder's

27   office.

28

Case: ... 119

1    In short, the evidence presented below establishes that the transfer of the Parish and

2 School Properties to the Support Corporation (Deed B) has not been completed. The

3 Review Board's findings to the contrary are not supported by the record. Thus, even if

4 intra-Diocesan transfers are somehow found to be subject to transfer tax, no transfer tax can

5 be imposed with respect to Deed B, because delivery of that deed to the Support

6 Corporation has not been completed.

7    E.  Respondent Is Estopped From Imposing a Transfer Tax In This Case.

8    Based on the Respondent's conduct and past practices, Respondent must be

9 estopped from imposing a transfer tax in the instant case. The fundamental flaw in

10 Respondent's argument is that it assumes that the Recorder's long-standing interpretation

11 and consistent past practice of not taxing intra-denominational transfers cannot serve as

12 "conduct" for estoppel purposes. An administrative agency's long-standing practice may

13 be evidence of the agency's interpretation of a statute it is charged with administering. See,

14 e.g., *Van Wagner Communications, Inc. v. City of Los Angeles*, 84 Cal. App. 4th 499, 509

15 (2000). More weight should be given to an agency's interpretation when it is long-standing

16 and has been consistently maintained. *Yamaha Corp. of America v. State Board of*

17 *Equalization*, 19 Cal. 4th 1, 13 (1998). While Respondent recognizes that even "silence or

18 negative omission" may constitute conduct of a party for purposes of equitable estoppel

19 (Resp. Br. at 46:24-26), it ignores the evidence in the administrative record that intra-

20 denominational transfers of real property in San Francisco *by Petitioner* previously were

21 not taxed *by Respondent*. See, e.g., 1992 Deed from the Corporation Sole to The Sisters of

22 Presentation, PBVM, a California corporation (I AR 43); 1953 Deeds from the Corporation

23 Sole to the Welfare Corporation (II AR 617, 618).[45]

24

25

26

27 [45] While the deeds from the Corporation Sole to the Welfare Corporation were recorded in 1953, prior to San Francisco's adoption of its transfer tax, no federal documentary stamp or other transfer tax was paid or collected when such deed was recorded with the San

28 Francisco Recorder's office. II AR 357.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1    Petitioner not only relied upon the Recorder's past conduct, but *justifiably* relied on

2    such conduct.  Respondent asserts without authority that the standard is "extensive

3    reliance."  Resp. Br. at 50:25.  Rather, the standard is "justifiable reliance."  *Grotenhuis v.*

4    *County of Santa Barbara*, 182 Cal. App. 4th 1158, 1167 (2010).  Here, Petitioner's reliance

5    was justifiable.  Prior to the instant case, the taxation of intra-denominational, non-sale

6    transfers such as those at issue was unprecedented not only in San Francisco but also in

7    other counties throughout the State of California.  For example, in 1982, Petitioner

8    transferred all of its real property located in Santa Clara County without imposition of the

9    transfer tax.  See Deed from the Corporation Sole to The Roman Catholic Bishop of San

10   Jose, a (California) corporation sole (I AR 46).[46]  Other Catholic dioceses throughout the

11   State also made intra-diocesan transfers without imposition of any transfer tax.  See VII AR

12   2728-2831.  Based on its own past dealings with the Recorder and recorders in other

13   counties, Petitioner entered into the Diocesan restructuring based on the expectation that

14   any transfers pursuant thereto would not be subject to transfer tax.  This is confirmed on the

15   face of the Deeds (e.g., "Transfer Tax: None") and in Mr. Marino's June 16, 2008 letter.

16   There was no transfer tax in 1953 when the Corporation Sole transferred the School

17   Properties to the Welfare Corporation, and no transfer tax in 1992 when the Corporation

18   transferred some of its properties to The Sisters of Presentation.  Taken all together,

19   Petitioner's reliance on Respondent's past conduct was justifiable.

20       Respondent accuses Petitioner of being "disingenuous" and "purposely misleading"

21   in referring this Court to the deeds recorded in Marin and San Mateo Counties.  Resp. Br. at

22   48:19-23.  Respondent wholly misses the point of the Marin and San Mateo deeds.  As

23   Petitioner informed this Court, "both Marin and San Mateo Counties accepted deeds, *on*

24   *their face*, for recordation without payment of transfer tax."  Pet. Open. Br. at 52:7-8

25

26

---

[46] See also 1982 Deeds from the Welfare Corporation and The Roman Catholic Seminary of

27   San Francisco to The Roman Catholic Bishop of San Jose, a (California) corporation sole
     indicating "Transfer Tax: None (No consideration or sale – only division of property

28   within the Roman Catholic Church)."  I AR 47, 48.

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

Case3:11-cv-02787-JSW Document31-3 Filed06/29/12 Page15 of

1    (emphasis added). The significance is that the Marin and San Mateo deeds (as well as the

2    San Francisco deeds, Deed A and Deed B) expressly state on their face: "Transfer Tax:

3    None . . . (No consideration or sale – transfer of property within the Roman Catholic

4    Church only)." VII AR 2749, 2798. By recording the deeds, both Marin and San Mateo

5    found the "no tax" explanation to be a facially valid one. The Marin Assessor-Recorder

6    confirmed that "[t]he deeds submitted by the Archdiocese for recordation in Marin County

7    without payment of transfer tax *were accepted at face value in reliance upon the declared*

8    *transfer tax exemptions noted on the deeds*, without an evaluation as to the applicability or

9    non-applicability of such deeds." VIII AR 3106 (emphasis added). Similarly, the San

10   Mateo Assessor-County Clerk Recorder stated, "our Recorder staff accepted the deeds

11   recorded by the Archdiocese on May 12, 2008 *at face value in reliance on the declared*

12   *transfer tax exemptions noted on those deeds*." VIII AR 3122 (emphasis added).

13         Finally, under the facts presented, Respondent's argument that Petitioner's taking

14   the Deeds down to the Recorder's office for recordation is presumed to constitute

15   "delivery" must be rejected (see Resp. Br. at 44:3-9). As noted in the record, Petitioner

16   submitted the Deeds for recordation based on oral representations made by the Deputy

17   Assessor-Recorder. Petitioner's witness, Mr. Hammel, testified that the Deputy Assessor-

18   Recorder told Petitioner to *"Bring them down, and you know, I will do it today. You get the*

19   *stuff together, I will do it today."* VII AR 2563:24-2564:1. Respondent does not deny that

20   the Deputy Assessor-Recorder made the representation alleged by Mr. Hammel.[47] Rather,

21   Respondent argues, "[t]here is no testimony from Mr. Hammel or any other shred of

22   evidence of any representation that 'no tax would be owing' or anything of the sort." Resp.

23   Br. at 47:13-14. Respondent is off-base.

24         First, *prior* to Petitioner's submission of the Deeds for recordation in July 2008,

25   Petitioner already was involved in discussions with the Recorder's office regarding the

26

27   _____

28   [47] Deputy Assessor-Recorder Zoon Nguyen was present at the hearing when Mr. Hammel
     testified about Ms. Nguyen's representations. VII AR 2437.

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1    issue of whether "the proposed real property transactions will be subject to the county

2    transfer tax." See May 16, 2008 email from Mr. Dziedzic to Mr. Hammel, copying the

3    Deputy Assessor-Recorder (I AR 56). Thus, transfer tax plainly was the issue at hand.

4         Second, Mr. Hammel's letter to the Deputy Assessor-Recorder dated August 7,

5    2008 (II AR 347) states:

6         We were told that we should remove any references to 62K and formally
          submit the deeds along with individual transfer tax *exemption affidavits*
7         (referencing the San Francisco Transfer Tax ordinance and attaching the
          related supporting documentation submitted earlier in informal fashion) and
8         PCOR statements for each parcel to be transferred.

9    By informing Petitioner to submit *exemption* affidavits and what specifically should be

10   referenced in the affidavit as well as the supporting documentation, the Deputy Assessor-

11   Recorder's representations concerned more than the mechanical act of recordation of the

12   Deeds—it involved the issue of the transfer tax itself and, specifically, *exemption* from tax.

13   The Deputy Assessor-Recorder was aware of the facts surrounding the Deeds, and she

14   invited Petitioner to "bring them down" so that recordation of the Deeds based on the

15   claimed exemptions would get done. Petitioner relied on such representations and had no

16   reason to believe otherwise. Plainly, Respondent's conduct in this matter is precisely the

17   type of action or inaction that the doctrine of equitable estoppel was designed to address.

18        F.    Respondent's Attempt to Impose a Transfer Tax in a Non-Neutral Fashion Is
                Violative of the First Amendment.
19
                1.    Petitioner has exhausted its administrative remedies and
20                    appropriately preserved the Constitutional issues for review.

21        Petitioner satisfied all the prerequisites for filing a Petition for Review and

22   preserving constitutional issues for review by this Court. Respondent erroneously argues

23   that Petitioner has failed to exhaust its administrative remedies because it did not present its

24   First Amendment arguments at the administrative level before raising them before the trial

25   court for the first time. Resp. Br. 51:12-13. As will be shown below, Petitioner sufficiently

26   articulated its constitutional claims before the Review Board. As such, Petitioner's First

27   Amendment arguments are properly before this Court.

28

Case 3:15 of PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, on
115

1    a.    Petitioner timely filed its petition for review with the Review
          Board.
2

3    Respondent does not contend that Petitioner did not file the required Petition for

4    Review pursuant to SF Transfer Tax Ordinance § 1115.2(b) with the Review Board.  On

5    December 10, 2008, Petitioner filed its Petition for Review with the Review Board.  I AR

6    1 – II AR 619.  Neither SF Transfer Tax Ordinance § 1115.2(b) nor any other section of

7    such Ordinance sets forth what form or content is required for a petition.  The power of the

8    Review Board is to conduct hearings, review the evidence and make rulings upon the

9    Petition.  SF Transfer Tax Ord. § 1115.2(c)(1).  The Review Board's powers are limited to

10   not making any rulings inconsistent with the requirements of the SF Transfer Tax

11   Ordinance. *Id.*

12   b.    Petitioner's petition for review complied with the Review
          Board's procedural rule regarding form and content.
13

14   Immediately prior to the initial hearing in this matter, the Review Board met and

15   adopted Rules of Procedure.  VI AR 1991:2-15.  Rule 1(c) sets forth the form and contents

16   for a petition.  II AR 624.  In addition to name, address, description of the property and

17   facts relied upon to support the petition, "a separate statement of points and authorities

18   (optional)" can be provided.  II AR 624.  There is no requirement to set forth legal

19   arguments—it is "optional."  Therefore, contrary to Respondent's assertion that Petitioner

20   was required to set forth its legal contentions, the rules under which the Review Board

21   operate do not so require.  This is consistent with the fact that SF Transfer Tax Ordinance

22   § 1115.2(c)(1) limits the power of the Review Board to not making "any ruling inconsistent

23   with the requirements of this ordinance."

24

25

26

27

28

Case: REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    c.    Petitioner raised and preserved its Constitutional issues
           below.
2

3         Notwithstanding that there is no administrative requirement to set forth legal

4    arguments in a petition for review, Petitioner indeed did raise and preserve its constitutional

5    arguments below.  First, Petitioner's Petition for Review references the "accommodation of

6    the Free Exercise of religion" required under the law in dealing with religious organizations

7    (II AR 353, response to Q.8[48]) and in the same document states:

8         Because corporations sole are specifically religious entities by statute, to
          single out corporations sole in this way would have significant *Church-state*
9         *constitutional* ramifications as well.
     II AR 359, response to Q.13 (emphasis added).
10

11        Second, Petitioner raised the First Amendment issue in both its Reply and Closing

     Briefs filed below.  Specifically, in Petitioner's pre-hearing Reply Brief the following was
12
     stated:
13
          Of graver concern, Respondent's attempt to exact a transfer tax on internal
14        Church reorganizations undermines a basic right of the Church, under *First
          Amendment* protections, to manage its affairs and organize itself in a manner it
15        deems appropriate to operate through civil law structures in accordance with
          Church law.  Here, the San Francisco family of Archdiocesan corporations
16        simply reorganized itself, using as vehicles legally separate corporations
          within such family, while maintaining their unity with the local Catholic
17        church and its Archbishop.  Respondent's determination to impose a transfer
          tax on such an intra-church reorganization cannot be sustained and should be
18        reversed.

19
     V AR 1822 (emphasis added).  Also, in Petitioner's Closing Brief the First Amendment
20
     constraints were referenced:
21
          Moreover, Respondent fails to consider that, like the civil court in *Episcopal Church
22        Cases*, the City and County (as part of government) is constrained under the *First
          Amendment* and must respect the ownership rights of the Church and the manner in
23        which the Church decides how best to structure its internal affairs, such as those
          wholly within the Archdiocesan family of corporations.  Respondent cannot seek to
24        limit, by way of taxation, the *Constitutional right* to adopt or modify those civil
          corporate structures that the Church needs to operate in a civil law society, based on
25        the Church's internal self-understanding of how that civil structure best fits within
          Church norms.
26

27    _____

      [48] Respondent was certainly aware of this letter as it references the letter for other points in
28    its brief.  See Resp. Br. at 28, fn. 7.

                                      56

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1  VIII AR 3209 (citations omitted) (emphasis added).

2        Third, the First Amendment issues were raised by Petitioner throughout the

3  presentation of its case. See VI AR 2139:2; 2303:14-15. Also, in a statement read by a

4  member of the public to the Review Board, the following was said:

5          Although this particular dispute involves the Catholic church, it is of great
           concern to all religious faiths. The ability to pursue intra-faith corporate

6          restructurings without the threat of taxation by civil authorities is critical to
           the *free exercise of religion*.

7

8  VI AR 2427:23-2428:2 (emphasis added).

9        Fourth, Review Board Member Brown discussed and addressed First Amendment

10  concerns relating to the uneven treatment of the City towards religious organizations. IX

11  AR 3478:22-24 ("I'm just trying to look at why would we grant that sort of leeway, if you

12  will, to other types of corporations but not here to the Archdiocese.").

13        Contrary to Respondent's assertion, the above sufficiently articulates the First

14  Amendment issues and preserved them for review by this Court notwithstanding that the

15  Review Board did not directly address them in its Findings and Conclusions.[49]

16                d.    <u>The exhaustion doctrine does not preclude consideration of
   Petitioner's Constitutional objections.</u>

17

18        The Review Board's function is similar to that of an assessment appeals board in the

19  property tax context in that it is established to deal with valuation issues. In *Star-Kist*

20  *Foods, Inc. v. Quinn*, 54 Cal. 2d 507, 511 (1960), the court held that where the matter

21  involved only constitutional challenges, a taxpayer was not required to seek relief from the

22  local assessment appeals board because there was no question as to valuation that the local

23  board only had competence to decide. Further, prior application to local appeals boards

24  has also not been required where the assessment is a nullity as a matter of law, for example,

25

26

---

[49] All that is generally required is a reviewing body be put on notice of the claimant's
27  assertions that a tax is invalid. See *Newman v. Franchise Tax Board*, 208 Cal. App. 3d at
980, wherein court held that the purpose of refund claim is to put the agency on notice
28  that such right is being asserted.

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1    where the property assessed was tax-exempt (*Brenner v. City of Los Angeles*, 160 Cal. 72,

2    79-80 (1911); *Parrott & Co. v. City & County of San Francisco*, 131 Cal. App. 2d 332, 342

3    (1955)), outside the jurisdiction (*Kern River Co. v. County of Los Angeles*, 164 Cal. 751,

4    755-756 (1913)), or nonexistent (*Pac. Coast Co. v. Wells*, 134 Cal. 471, 473 (1901);

5    *Associated Oil Co. v. County of Orange*, 4 Cal. App. 2d 5, 9, 11 (1935)).[50]

6           In this case, neither the underlying ordinance nor the Review Board's Rules of

7    Procedure set forth any details regarding legal challenges at the administrative level,

8    particularly constitutional challenges with respect to the application of the transfer tax

9    provisions.  In such instances, recourse to the administrative agency is not required before

10   the initiation of a court action.  *Park 'N Fly of San Francisco, Inc. v. City of South San*

11   *Francisco*, 188 Cal. App. 3d 1201, 1209 (1987) (citing *Star-Kist Foods*, 54 Cal. 2d at

12   511).[51]

13          In this matter no authority could be located that empowers the Review Board to

14   declare an ordinance unconstitutional on its face or as applied.  Indeed, Respondent has not

15   pointed to any such authority.  At the State level, administrative agencies are precluded

16   under California Constitution, Art. III, § 3.5 from declaring a statute unconstitutional.

17   Arguably, a similar prohibition should exist at the local level.  As observed by the Court in

18   *Lockyer v. City and County of San Francisco*, 33 Cal. 4th 1055, 1107 (2004), there is a very

19   good reason for such a prohibition since most local executive officials have no legal

20   training and thus lack the relevant expertise to make constitutional determinations.

21          Finally, there is an exception to the exhaustion requirement where it would be futile

22   for the taxpayer to pursue its administrative remedy.  See *Steinhart v. County of Los*

23

---

24   [50] The recent decision in *Steinhart v. County of Los Angeles*, 47 Cal. 4th 1298 (2010), has
25   not changed the law in this regard.  The Court addressed the various exceptions to the
     exhaustion rule but in the end held that the legislature's action made it unnecessary for it
26   to have to decide whether an exception was applicable under the facts before it.

     [51] In *Andal v. City of Stockton*, 137 Cal. App. 4th 86, 92 (2006), the Court held that the
27   taxpayer could institute a judicial challenge to the imposition of the tax where the city's
     ordinance setting forth the administrative remedy failed to mention constitutional
28   challenges.

Case3:14-cv-04506 ...

1    *Angeles*, 47 Cal. 4th 1298, 1313 (2010). In this case for the reasons discussed above, the

2    Review Board lacked the power to invalidate the application of the transfer tax based on

3    Petitioner's First Amendment arguments. Indeed the statement by Board Member

4    Rosenfield is especially clear in this regard:

5            I'd like to thank both parties. This has been a learning experience,
         I think, for all of the board members. I have to say, just to read it into the
6        record, that this is not the sort of case that this body was established to
         decide, from my view.
7
             We're dealing with issues here that if we were just simply talking
8        about a for-profit corporation and trying to deal with the status of parent
         and subsidiary corporations and the application of transfer taxes in a case
9        like this, it would be complicated enough, and layering into that here both
         nonprofit and Canon law issues, as we've talked through, makes it very
10       challenging.

11   IX AR 3595:6-19.

12           Nevertheless, as discussed above, Petitioner did raise its concerns concerning the

13   constitutional implications of imposing a tax in the instant matter and preserved such issues

14   for further court proceedings.

15           2.    <u>The City's failure to administer the transfer tax neutrally violates the
                 Establishment and Free Exercise Clauses.</u>
16

17           Respondent contends that Petitioner "is here seeking preferential, not equal,

18   treatment, and . . . 'cannot moor its request for accommodation to the Free Exercise

19   Clause.'" Resp. Br. at 53:6-8. Contrary to Respondent's contentions, Petitioner does not

20   claim it is immune to *neutral* government policies or rules regarding the transfer tax.

21   Rather, Petitioner asserts that the City has failed to administer its transfer tax neutrally,

22   resulting in the violation of Petitioner's rights under the First Amendment to the United

23   States Constitution.[52] To establish a non-taxable transfer of real property, the City has

24   _____

25   [52] Respondent contends that Petitioner "does not claim or refer to any evidence in the record
         that the Ordinance does not meet the first two prongs of the *Lemon* test." Resp. Br. at
26       52:13-14. Respondent is incorrect. To pass muster under the First Amendment, the
         *Lemon* Court held that a statute (1) must have a secular legislative purposes, (2) must
27       have the principal or primary effect of neither advancing or inhibiting religion *and*
         (3) must not foster excessive government entanglement with religion. *Lemon v.*
28       *Kurtzman*, 403 U.S. 602, 612-613 (1971). Petitioner has asserted that at least two
                                                                              (continued...)

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795
115

1    interpreted and administered the SF Transfer Tax Ordinance in a manner that imposes

2    additional, if not impossible-to-satisfy, requirements upon the Church that are not imposed

3    on non-religious organizations. This disproportionate burden that the City puts on the

4    Church violates both the Establishment and Free Exercise Clauses.

5         Laws burdening religion that are not neutral and generally applicable are invalid

6    under the First Amendment absent a compelling state interest. *Employment Div., Dept. of*

7    *Human Resources of Ore. v. Smith*, 494 U.S. 872, 879 (1990); *Everson v. Board of*

8    *Education of Ewing*, 330 U.S. 1, 18 (1947). The Free Exercise Clause, like the

9    Establishment Clause, extends beyond facial discrimination and also forbids subtle

10   departures from neutrality. *Church of Lukumi Babalu Aye. Inc. v. Hialeah*, 508 U.S. 520,

11   534 (1993). Laws that in practice are applied in a way that discriminates against religion

12   cannot be shielded by mere compliance with the requirement of facial neutrality. *Id.* Thus,

13   for example, the Establishment Clause "forbids a State to hide behind the application of

14   formally neutral criteria and remain studiously oblivious to the effects of its actions. Not all

15   state policies are permissible under the Religion Clauses simply because they are neutral in

16   form." *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 777 (1995).

17        The City historically administered its transfer tax to exempt transfers between

18   commonly controlled entities that are not religious organizations. See VII AR 2665-2723

19   (transfer tax-exempt deeds involving non-religious entities accepted by the City); VII AR

20   2726 (Recorder's written confirmation in a non-religious setting that the transaction was not

21   subject to transfer tax because the beneficial ownership of the real property did not change).

22   Yet, the City has refused to apply the same exemption criteria to the Church. Respondent

23   claims that the "Assessor has the right to assess religious property *just as he or she would*

24   *any other property*." Resp. Br. at 53:20-21. However, in this case, it seeks to assess the

25

26   _____

27   (...continued)
     "prongs" have been violated in that the City's application of the transfer tax both inhibits
     religion and fosters excessive entanglements. If a statute violates *any* of the parts set

28   forth in *Lemon*, the statute must be stricken. *Stone v. Graham*, 449 U.S. 39, 40-41 (1980).

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

1 Church in a way *unlike* any other property – in a manner less favorable to the Church. This

2 very concern was raised by Review Board Member Brown:

3     Thank you for asking that. I really am more focused on this idea,
and I think it was the Housing Development Corporation, perhaps,

4 transaction, that there is an ability within a corporate family, if you will, to
change title . . . from a subsidiary to a different subsidiary or from a parent

5 to a subsidiary for all kinds of reasons, and . . . that there has *not been
transfer tax assessed* on those in the past because there is this recognition

6 that even if it's a different corporate structure *it's within the same
corporate family*, and that's been with respect to civil nonprofits, not

7 religious corporations per se. So I'm not actually getting into Canon law.
    *I'm just trying to look at why would we grant that sort of leeway, if*

8 *you will, to other types of corporations but not here to the Archdiocese.*

9 IX AR 3478:5-24 (emphasis added). Thus, Petitioner is not seeking preferential treatment,

10 but rightfully demands that it be afforded the same treatment the City has afforded non-

11 religious organizations.

12     The City's less favorable treatment of religious organizations is starkly illustrated in

13 its application of the "change in form" exemption. Respondent argues that, in applying

14 such exemption, it must look to whether there is "an identity of *shareholders* and their

15 proprietary interest" and whether "the same *shareholders* have control of the same assets."

16 Resp. Br. at 28:18-20. Because religious corporations such as Petitioner do not, and by law

17 cannot, have shareholders, Respondent argues that it is appropriate to look "at the purposes,

18 governance, and powers" of the Corporation Sole, the Welfare Corporation and the Support

19 Corporation. Resp. Br. at 28:21-24. As applied by the City, both governance (i.e., control)

20 and powers involve looking to see whether the boards of directors of the subject

21 corporations are identical. Unlike the Welfare Corporation and the Support Corporation,

22 Petitioner as a corporation sole does not even have a board of directors. Thus, the City has

23 interpreted and applied the change in form exemption in such a way that Petitioner could

24 never satisfy the exemption.

25     3.    <u>The City's non-neutral administration of the transfer tax gives rise to
excessive government entanglement in Church affairs.</u>

26

27     The extensive and intrusive nature of the information that the City sought from

28 Petitioner, but not non-religious organizations, interferes with the Church's ongoing

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

Case ... 115

1 regulation of its religious affairs, giving rise to excessive entanglement in further violation

2 of the First Amendment. Moreover, the manner in which the City has applied the transfer

3 tax to Petitioner has a chilling effect on religion and the ability of the Church to organize its

4 civil affairs in a manner consistent with its religious beliefs.

5      The government may not administer its laws in such a way as to foster an excessive

6 entanglement in church affairs. *Lemon*, 403 U.S. at 614. Surveillance by the government

7 in the taxation of churches may lead to an impermissible degree of such entanglement.

8 *Walz v. Tax Commission of the City of New York*, 397 U.S. 664, 675 (1970).

9      Here, the criteria used by the City to determine whether religious organizations such

10 as Petitioner either are subject to the transfer tax or qualify for the "change in form"

11 exemption ("purpose, control, and power") assures that the City will be excessively

12 entangled in church affairs. It is not simply the volume of information requested, but the

13 nature of the requested information that necessarily delves into issues of Church law and

14 governance, the discretionary decisions of the Archbishop, and the restrictions imposed

15 upon that discretion under Church law.[53]

16      As discussed, under the "neutral principles of law" approach, civil courts must give

17 credence to church laws and canons, especially where such laws and canons have been

18 incorporated in to the civil law organizational documents of the religious corporations, as is

19 the case here. See *Episcopal Church Cases*. However, in the instant situation, the City has

20 gone too far. For example, Respondent itself argues in its Opposition Brief that "[i]n the

21 instant case, canon law, unlike the canon law in the *Episcopal Church Cases*, does not

22 provide for an 'express creation of a trust.'" Resp. Br. at 34:11-12. In so arguing,

23 Respondent is evaluating the content of Roman Catholic Church canons as compared to the

24 content of Episcopal Church canons, and based on such canonical differences—under the

25 _____

26 [53] Respondent asserts that claiming an exemption from tax is "optional" and that the Church
"voluntarily" provided information in response to requests from the City. Resp. Br. at

27 52:23-24, 54:4. Respondent makes a specious argument in that such "request" was made
under threat of potential tax and penalties of a confiscatory nature (i.e., millions of

28 dollars).

702699704      62

REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON
THE SECOND CAUSE OF ACTION – CGC-10-498795

Case... 115

1   City's view—one church may avail itself of a transfer tax exemption, while the other

2   cannot.  Thus, under the City's interpretation and administration of the transfer tax, the

3   specific content of a church's canons apparently is determinative of the applicability of the

4   transfer tax, which, in turn, results in excessive entanglements in the Church's affairs.  Such

5   government entanglement into the affairs of the Church cannot be tolerated under the First

6   Amendment as "[t]his kind of state inspection and evaluation of the religious content of a

7   religious organization is fraught with the sort of entanglement that the Constitution

8   forbids." *Lemon*, 403 U.S. at 620.

9   In all, the City's attempt to exact a transfer tax on Petitioner's internal Diocesan

10  restructuring violates a basic right of the Church, under First Amendment protections, to

11  arrange its affairs and operate through religious corporations in a manner that it deems to be

12  in accordance with Church law.  As such, the Board's Ruling violates the First Amendment

13  and must be reversed.

14  IV.  <u>CONCLUSION</u>

15  For the foregoing reasons, Petitioner respectfully requests that this Court issue a

16  peremptory writ of mandate directed to the Review Board to set aside the Board's Ruling

17  issued on January 26, 2010.

18  Dated:  January 18, 2011.

19                          PILLSBURY WINTHROP SHAW PITTMAN LLP
                            JEFFREY M. VESELY
20                          KERNE H. O. MATSUBARA
                            RICHARD E. NIELSEN
21

22                          By

23                              Attorneys for Petitioner The Roman Catholic
                                Archbishop of San Francisco, A Corporation
24                              Sole

25

26

27

28

Case REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON of
THE SECOND CAUSE OF ACTION – CGC-10-498795
119

Docket No. CGC-10-498795

PROOF OF SERVICE

I am employed in the City of San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is Pillsbury Winthrop Shaw Pittman LLP, 50 Fremont Street, San Francisco, CA 94105-2228. My mailing address is 50 Fremont Street, P. O. Box 7880, San Francisco, CA 94120-7880. On January 18, 2011, I served the documents titled REPLY BRIEF OF PETITIONER THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, ON THE SECOND CAUSE OF ACTION on the parties in this action as follows:

> Robert L. Stolebarger
> Dena M. Cruz
> Holme Roberts & Owen LLP
> 560 Mission Street, 25th Floor
> San Francisco, CA 94105-2994

☒ **(BY PERSONAL SERVICE)** I delivered to an authorized courier or driver authorized by <u>Nationwide Legal</u> to receive documents to be delivered on the same date.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of January, 2011, at San Francisco, California.

_____
Susan M. Gordon

# EXHIBIT 2



**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Apr-16-2010  3:09 pm

Case Number: CGC-10-498795

Filing Date: Apr-16-2010 2:42

Juke Box: 001    Image: 02822981

COMPLAINT

)LIC ARCHBISHOP OF SAN FRANCISCO, A et al VS. CITY AND COUNTY OF SAN FRANC

001C02822981

**Instructions:**

Please place this sheet on top of the document to be scanned.

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* a municipal corporation Nex
City & County of San Francisco; City & County of San Francisco Real Property Transfer Tax Review Board; and Phil Ting, Assessor-Recorder of City and County of San Francisco

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
The Roman Catholic Archbishop of San Francisco, A Corporation Sole; The Archdiocese of San Francisco Parish & School Juridic Persons Real Property Support Corporation, a California religious corporation Nex

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* <br> Superior Court of California <br> County of San Francisco <br> 400 McAllister Street <br> San Francisco, CA 94012 | CASE NUMBER: *(Número del Caso):* <br> **CGC·10·498795** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Pillsbury Winthrop Shaw Pittman LLP (415) 983 1000
Jeffrey M. Vesely #67895; Kerne H. O. Matsubara #178895; Richard E. Nielsen #72104
50 Fremont Street, P.O. Box 7880, San Francisco, CA 94120-7880

DATE: APR 1 6 2010
*(Fecha)* CLERK OF THE COURT Clerk, by **P. NATT** Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☒ CCP 416.90 (authorized person)
   ☐ other *(specify):* CCP 416.50 (public entity)
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):*
Pillsbury Winthrop Shaw Pittman
Jeffrey M. Vesely #67895; Kerne H. O. Matsubara #178895;
Richard E. Nielsen #72104
50 Fremont St., P.O. Box 7880, San Francisco, CA 94120-7880
TELEPHONE NO.: (415) 983-1000     FAX NO.: (415) 983-1200
ATTORNEY FOR *(Name):* Plaintiffs and Petitioners

**F I L E D**
Superior Court of California
County of San Francisco

APR 16 2010

CLERK OF THE COURT
BY: *Param Natt*
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: The Roman Catholic Archbishop of San Francisco, A Corporation Sole, et al., v. City and County of San Francisco, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC-10-498795 JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☒ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☒ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☐ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: April 16, 2010

Jeffrey M. Vesely
(TYPE OR PRINT NAME)
► *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

SUMMONS ISSUED
**F I L E D**
San Francisco County Superior Court

APR 1 6 2010

CLERK OF THE COURT
BY: ~~signature~~
**P. NATT** Deputy Clerk

1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   JEFFREY M. VESELY  #67895
2  KERNE H. O. MATSUBARA  #178895
   RICHARD E. NIELSEN #72104
3  50 Fremont Street
   Post Office Box 7880
4  San Francisco, CA 94120-7880
   Telephone: (415) 983-1000
5  Facsimile:  (415) 983-1200

6  Attorneys for Plaintiffs and Petitioners
   THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION
7  SOLE, and THE ARCHDIOCESE OF SAN FRANCISCO PARISH AND SCHOOL
   JURIDIC PERSONS REAL PROPERTY SUPPORT CORPORATION
8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 CITY AND COUNTY OF SAN FRANCISCO

11                  UNLIMITED CIVIL JURISDICTION

12  _____
    THE ROMAN CATHOLIC ARCHBISHOP )  No. **CGC·10·498795**
13  OF SAN FRANCISCO, A CORPORATION )
    SOLE, a California corporation sole; THE )  VERIFIED COMPLAINT FOR
14  ARCHDIOCESE OF SAN FRANCISCO )  DECLARATORY RELIEF; VERIFIED
    PARISH AND SCHOOL JURIDIC )  PETITION FOR WRITS OF
15  PERSONS REAL PROPERTY SUPPORT )  MANDATE; AND REQUEST FOR
    CORPORATION, a California religious )  STAY ORDER
16  corporation, )
                                    )  (Cal. Code Civil Proc. §§ 1060, 1085,
17           Plaintiffs and Petitioners, )  1094.5)
                                    )
18      vs.                         )
                                    )
19  CITY AND COUNTY OF SAN )
    FRANCISCO, a municipal corporation, )  CASE MANAGEMENT CONFERENCE SET
20                                  )
             Defendant, )  SEP 1 7 2010  9ᵃᵐ AM
21                                  )
    CITY AND COUNTY OF SAN )  DEPARTMENT 212
22  FRANCISCO REAL PROPERTY )
    TRANSFER TAX REVIEW BOARD, )
23                                  )
          Defendant and Respondent, and )
24                                  )
    PHIL TING, ASSESSOR - RECORDER OF )
25  CITY AND COUNTY OF SAN )
    FRANCISCO, )
26                                  )
    Defendant, Respondent and Real Party in )
27  Interest. )
    _____)
28

1    Petitioners and Plaintiffs, THE ROMAN CATHOLIC ARCHBISHOP OF SAN

2    FRANCISCO, A CORPORATION SOLE, a California corporation sole, and THE

3    ARCHDIOCESE OF SAN FRANCISCO PARISH AND SCHOOL JURIDIC PERSONS

4    REAL PROPERTY SUPPORT CORPORATION, a California religious corporation,

5    complain of Defendant and Respondent THE REAL PROPERTY TRANSFER TAX

6    REVIEW BOARD OF THE CITY AND COUNTY OF SAN FRANCISCO; the CITY

7    AND COUNTY OF SAN FRANCISCO, a California municipal corporation and PHIL

8    TING, ASSESSOR – RECORDER OF THE CITY AND COUNTY OF SAN

9    FRANCISCO as follows:

10                                   **PARTIES**

11          1.      At all relevant times mentioned herein, Petitioner and Plaintiff, The Roman

12   Catholic Archbishop of San Francisco, A Corporation Sole ("Corporation Sole"), has been

13   and now is a nonprofit religious corporation sole, duly incorporated, validly existing and in

14   good standing under the laws of the State of California with all requisite corporate power

15   and authority to own and operate its properties and to carry on its religious non-profit

16   activities as now conducted. The Corporation Sole is a plaintiff and petitioner on behalf of

17   itself and as the distributee of, and successor-in-interest to, The Roman Catholic Welfare

18   Corporation of San Francisco, a now dissolved California nonprofit religious corporation.

19          2.      At all relevant times mentioned herein, Petitioner and Plaintiff, The

20   Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support

21   Corporation ("Support Corporation") has been and now is a nonprofit religious corporation,

22   duly incorporated, validly existing and in good standing under the laws of the State of

23   California with all requisite corporate power and authority to own and operate its properties

24   and to carry on its religious non-profit activities as now conducted.

25          3.      At all relevant times mentioned herein Defendant, Respondent and Real

26   Party In Interest Phil Ting, current Assessor - Recorder of the City and County of San

27   Francisco ("Recorder"), was in that capacity duly charged by the San Francisco Real

28   Property Transfer Tax Ordinance ("SF Transfer Tax Ordinance") with the responsibility of

1   collecting and administering real property transfer taxes and that the Recorder is, in that

2   capacity, a real party in interest in this matter.

3       4.      At all relevant times mentioned herein, Defendant City and County of San

4   Francisco ("City") was a charter city of the State of California, having adopted a charter as

5   authorized by the Constitution of the State of California, Article XI.

6       5.      At all relevant times mentioned herein, Defendant and Respondent City and

7   County of San Francisco Real Property Transfer Tax Review Board ("Review Board") has

8   been and now is the administrative board duly organized and governed under the Municipal

9   Code and duly charged pursuant therewith to hearing appeals concerning the City's real

10  property transfer tax.

**JURISDICTION AND VENUE**

12      6.      This Court has jurisdiction under Cal. Code Civ. Proc. ("CCP") § 1060 to

13  award declaratory relief in favor of the Corporation Sole and Support Corporation. This

14  Court also has jurisdiction under CCP § 1085 and/or § 1094.5 to issue a writ of mandate

15  and under its general equity powers to issue a stay order.

16      7.      Venue is proper in this County pursuant to CCP § 394 because Plaintiffs,

17  Defendants and Respondents are situated in this County and the events giving rise to claims

18  arose in this County.

**FACTUAL BACKGROUND**

20      _The Archdiocese of San Francisco_

21      8.      The Roman Catholic Archdiocese of San Francisco (the "Archdiocese"),

22  comprised of 450,000 Catholics, including 150,000 in San Francisco, is the ecclesiastical

23  name given to the local manifestation of the Roman Catholic Church (or "Church") and is

24  also a common phrase used in civil-law parlance to describe the specific family of

25  corporations with operations in San Francisco, Marin, and San Mateo Counties under the

26  auspices of the Roman Catholic Archbishop of San Francisco (the "Archbishop").

27

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF, VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

9.      The Church is a hierarchical church, and the Archbishop is required under the laws, rules, regulations, codes, canons and discipline of the Church ("Church law") to govern the Archdiocese in accordance with the norms of Church law.

10.     A core function of the Archdiocese is to operate the more than 90 parishes and 60 Archdiocesan schools (kindergarten through grade 12) within the Archdiocese. According to Church law, this core function is under the direct canonical oversight of the Archbishop, represented in civil law as the Corporation Sole.

11.     The Church has to operate within a civil law society and civil law, with respect to contracts, and civil laws in general, should be observed by the Church. The Church may set up civil law corporations to assist in its operations within a civil law society, as recognized by the courts.

12.     Pursuant to Cal. Corp. Code § 10002, a corporation sole exists as the corporate identity of the incumbent "bishop, chief priest, presiding elder, or other presiding officer of any religious denomination . . . for the purpose of administering and managing the affairs, property and temporalities thereof." The Corporation Sole was incorporated in 1854. Pursuant to the rules, regulations and discipline of the Church, the Corporation Sole was formed to administer the temporalities and manage the property of the Church. The incorporating articles of the Corporation Sole provided that "all property held by me as such corporation, is held by me in trust for the sole use, purpose and behoof of the said Roman Catholic Church in the said Diocese of San Francisco."

13.     As a corporation sole, the Corporation Sole does not have a board of directors.

14.     The Archbishop as the Corporation Sole operates the parishes and schools within the Archdiocese.

15.     The current Archdiocesan family of corporations totals five corporations, including the Corporation Sole and the Support Corporation, and prior to its dissolution, a sixth corporation, The Roman Catholic Welfare Corporation of San Francisco, a California religious corporation (the "Welfare Corporation"), all of which are subject to Roman

1  Catholic Church law under the direct canonical oversight of the Archbishop. The

2  Archdiocesan family of corporations is connected as "spokes in a wheel," the "hub" of

3  which is the Archbishop in his ecclesiastical office.

4      16.    The Corporation Sole, the Welfare Corporation (prior to its dissolution) and

5  the Support Corporation are all regulated, pursuant to their respective Articles of

6  Incorporation ("Articles") and/or bylaws ("Bylaws"), by Church law. The actions of the

7  above corporations would be *ultra vires* if conducted in a manner inconsistent with Church

8  law.

9      17.    The Corporation Sole, the Welfare Corporation (prior to its dissolution) and

10  the Support Corporation are all organizations that are exempt from federal income tax

11  under Internal Revenue Code ("IRC") § 501(c)(3).

12      18.    The 232 properties at issue in this case are the parish properties ("Parish

13  Properties") and Archdiocesan school properties ("School Properties," collectively, the

14  "Parish and School Properties") located within the Archdiocese and, specifically, in the

15  City and County of San Francisco that are subject to the direct canonical supervision of the

16  Archbishop. The School Properties are listed on the deed dated April 25, 2008 from the

17  Welfare Corporation to the Corporation Sole (the "First Deed"). The Parish and School

18  Properties are listed on the deed dated April 25, 2008 from the Corporation Sole to the

19  Support Corporation (the "Second Deed").

20      19.    The 232 Parish and School Properties are used directly by the parishes and

21  schools, or portions are leased to other non-profit organizations, with the exception of 17 or

22  18 properties, consisting of 12 leased residential properties, one leased to an elementary

23  school and four or five leased to small mom-and-pop shops, which were given to the

24  Church in individual's wills. Those 17 or 18 properties, and any rental income therefrom,

25  belong to the Church for the benefit of its parishes and schools.

26      20.    A juridic person is a personhood under Church canon law ("Canon Law")

27  that has rights and obligations that are recognized by the Church. A listing of the school

28

702107422

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1 and parish juridic persons in San Francisco is contained in the Official Catholic Directory

2 (the Kenedy Directory).

3     21.    A parish and school juridic person includes both the parish and its related

4 school, if any. The property of a parish and its related school belongs to the same juridic

5 person under Church law. For example, the St. Stephen's parish property and the St.

6 Stephen's school property belong to the St. Stephen's parish and school juridic person

7 under Church law.

8     22.    Canon Law provides that parish and school properties are owned by the

9 Roman Catholic Church and specifically the parish and school juridic persons that were

10 established and erected under Canon Law.

11     23.    Under Canon Law, the approval of the Archbishop, made in accordance with

12 the norm of Church law, is required for the valid alienation of property belonging to a

13 parish and school juridic person.

14     24.    The Welfare Corporation was incorporated on February 18, 1953, and civil

15 law (as distinguished from Canon Law) title to the School Properties was placed in the

16 Welfare Corporation by the Archbishop, as Corporation Sole (without imposition of a

17 transfer tax). Civil law title to the School Properties was thereafter held by the Welfare

18 Corporation, while civil law title to the Parish Properties remained held by the Corporation

19 Sole.

20     25.    Pursuant to its Bylaws, the Welfare Corporation was a "subordinate

21 corporation" of the Corporation Sole within the meaning of the California Nonprofit

22 Religious Corporation Law. The Welfare Corporation incorporated Church law as its

23 Bylaws for the regulation and management of the corporation's affairs. Pursuant to its

24 Articles and Bylaws, the Welfare Corporation was permitted to engage in religious

25 activities authorized by the laws, rules, regulations and discipline of the Church. The

26 Welfare Corporation was not permitted under its Articles and Bylaws to engage in any

27 activities that were not in furtherance of the corporation's religious purposes.

28

702107422

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

26.     The purpose of the Welfare Corporation was to conduct religious activities of the Church within the Archdiocese.  Specifically, the Welfare Corporation was formed to hold and operate church-related facilities of the Church within the Archdiocese, including, but not limited to, Catholic parochial and high schools, for religious educational and other religious purposes.

*Corporate Restructuring of the Archdiocese*

27.     Since the establishment of the Corporation Sole over a century and a half ago, the Archdiocese has created and dissolved corporations (without the imposition of transfer tax) to restructure itself in accordance with its religious purposes and goals.

28.     In late 2007, the Archbishop decided that the corporate organizational structure of the Archdiocese needed to be simplified and better reflect the unique status of parishes and schools as unified entities (juridic persons) under Church law.  In addition, there was a public misperception that the Archbishop had the unfettered discretion to use the parish and school juridic persons' property in any way he deemed fit.  Under both Church law and civil law, the Archbishop did not, and does not, have such discretion.

29.     The restructuring was intended to make the civil organizational structure more clearly reflect Church law and correct the public misperception described in paragraph 28 above.  It was simply another corporate change or evolution in the manner in which the Archbishop chose to hold civil law title to the properties that were under his canonical and civil oversight.

30.     At the time of the restructuring all outside claims made concerning the operations of the schools and parishes by the Corporation Sole had been concluded and the restructuring did not have any effect on those former claims.

31.     The Archbishop set forth a plan of corporate restructuring and its purpose, as outlined in a letter dated December 4, 2007 to Principals, Presidents, Agency Heads and Chancery Staff.  The corporate restructuring was to be done by entrusting the real property belonging to the parishes and schools under Church law to a single, new corporation, the Support Corporation, which would hold civil law title and administer that property on

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1  behalf of the Archdiocese under the continued direct canonical oversight of the Archbishop.

2  The sole and exclusive purpose of the Support Corporation would be to benefit the parish

3  and school juridic persons operated civilly by the Corporation Sole.

4      32.    Although civil law title to the parish and school properties may change under

5  the corporate restructuring, such properties continue to be owned by the Roman Catholic

6  Church for the benefit of its parishes and schools, and the discretion of the Archbishop and

7  the limitations thereon with respect to those properties also remain the same.

8      33.    To accomplish this corporate restructuring, the Welfare Corporation was

9  dissolved on April 1, 2008, and as required by law (Cal. Corp. Code §§ 9132(a)(2)(i) & (ii))

10  and its Articles, all of the Welfare Corporation's assets, including the School Properties,

11  were distributed to the Archbishop as Corporation Sole (the "First Transfer").

12      34.    The California Attorney General approved of the distribution of the Welfare

13  Corporation's assets upon dissolution as described in 33 above.

14      35.    As with any corporation, the Welfare Corporation had a balance sheet that

15  reflected its assets and liabilities.  The liabilities "assumed" by the Corporation Sole, as

16  distributee, upon the Welfare Corporation's dissolution totaled $33,905,893, which

17  consisted of accounts payable (employee payroll, insurance and incidental costs), deferred

18  revenue (prepaid tuition and fees) and loans payable (internal canonical loans).  These

19  liabilities were either internal to the Archdiocese or voluntarily assumed as part of the

20  Corporation Sole's decision to continue operations of the schools, not in exchange or

21  consideration for the distribution of the real property.  There were no liabilities owed to

22  outside organizations or individuals.

23      36.    There was no purchase and sale agreement in connection with the

24  distribution of the School Properties by the Welfare Corporation to the Corporation Sole.

25  The Welfare Corporation did not sell, and the Corporation Sole did not pay for, the School

26  Properties which the Welfare Corporation distributed to the Corporation Sole upon

27  dissolution.  Such distribution was not conditioned upon the Corporation Sole's assumption

28  of any liabilities.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1      37.    A new corporation, the Support Corporation, was formed on September 10,

2  2007. The Support Corporation was formed as an IRC § 501(c)(3) supporting organization

3  (under IRC § 509(a)(3), which allows one § 501(c)(3) organization to support another

4  § 501(c)(3) organization) of the Corporation Sole, to be supervised or controlled in

5  connection with the Corporation Sole and in accordance with the Canon Law of the Roman

6  Catholic Church.

7      38.    The Archbishop, in his ecclesiastical office, is the sole member of the

8  Support Corporation with key reservation powers. The board of directors of the Support

9  Corporation is comprised of persons serving as members of either the Finance Council or

10 the College of Consultors. The Archbishop appoints the members of the Finance Council

11 and the College of Consultors. The Archbishop has sole discretion to confirm that

12 members of the College of Consultors and the Finance Council satisfy canonical standards

13 necessary for membership on those bodies.

14     39.    The Archbishop appoints the Chancellor of the Diocese, who under Church

15 law is charged with verifying and keeping certain records, acting as a secretary of state of

16 the Archdiocese. With respect to the Support Corporation, the Chancellor of the Diocese is

17 responsible for ensuring that the Support Corporation operates according to the norms of

18 Church law.

19     40.    The sole purpose of the Support Corporation is to support, benefit and carry

20 out the purposes of the Corporation Sole, and specifically to advance the mission of those

21 parish and school juridic persons which are governed by the Archbishop and operated

22 civilly by the Corporation Sole, all in accordance with Church law, which, *inter alia*,

23 respects the special rights to use of property by such juridic persons.

24     41.    Pursuant to the Support Corporation's Articles and Bylaws, all of the

25 activities of the Support Corporation must be conducted in accordance with Church law.

26     42.    The Support Corporation, pursuant to Section 3.1.3 of its Bylaws, would

27 maintain and upgrade the properties and may collect and pay over rents to the Corporation

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF, VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1 Sole, but only as it deems prudent and necessary for the support of the Corporation Sole's

2 operation of the parishes and schools.

3     43.   Section 3.1.2 of the Support Corporation's Bylaws states: "As provided in

4 the Articles of Incorporation of This Corporation, This Corporation has been organized and

5 shall be operated to support, benefit, and carry out the purposes of (within the meaning of

6 IRC Section 509(a)(3)(B)(ii)) the Corporation Sole - specifically, for the purpose of

7 advancing the mission of those Parish and School Juridic persons, duly established under

8 the laws of The Church, that are, pursuant to the laws of The Church, governed by the

9 Archbishop, and operated civilly by the Corporation Sole, within the meaning of IRC

10 Section 509(a)(3)."

11     44.   Section 3.1.3 of the Support Corporation's Bylaws states: "This Corporation

12 shall engage solely and exclusively in activities that shall support, or benefit the

13 Corporation Sole, for the purposes stated in This Corporation's Articles of Incorporation,

14 such activities to include, but not be limited to, collecting rents from This Corporation's

15 properties and making payments to or for the use of, or restoring or upgrading the facilities

16 used by, the aforementioned Juridic persons affiliated with the Corporation Sole, all in

17 accordance with the laws of The Church, which, *inter alia*, respects the special rights to use

18 of property by Juridic persons and the concomitant obligation to provide the financial

19 means to maintain and enhance that property."

20     45.   Under the Support Corporation's Bylaws, the alienation of any property by

21 the Support Corporation must be made in accordance with Church law and with the

22 approval of the Archbishop. In order for the Support Corporation to sell or alienate real

23 property, it also must obtain a written certification from the Chancellor of the Diocese that

24 the requirements of Canon Law and other applicable Church law concerning the alienation

25 of the Church's property have been met. The directors of the Support Corporation must get

26 permission from the Archbishop and the Chancellor's certification that in fact Church law

27 has been followed by them in attempts to alienate any property. The Archbishop himself

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1    has to get the advice and consent of the College of Consultors and the Finance Council

2    before property can be alienated.

3         46.    The Corporation Sole proposed to transfer and entrust the Parish and School

4    Properties to the Support Corporation (the "Second Transfer").

5         47.    No purchase and sale agreement was executed with respect to the Second

6    Transfer. The Support Corporation has not paid any money to the Corporation Sole. The

7    Support Corporation's obligation to collect rents and upgrade or restore properties is stated

8    in the Bylaws of the Support Corporation, which were in place long before the First Deed

9    and the Second Deed (the "Deeds") were prepared and signed.

10        *The Deeds*

11         48.    On April 25, 2008, pursuant to the dissolution of the Welfare Corporation,

12    the First Deed was executed by the Welfare Corporation, reflecting the distribution of the

13    School Properties from the Welfare Corporation to the Corporation Sole (the First

14    Transfer).

15         49.    On the same date, the Second Deed was executed by the Corporation Sole

16    with respect to the proposed transfer of the Parish and School Properties from the

17    Corporation Sole to the Support Corporation (the Second Transfer).

18         50.    The Support Corporation did not accept the Second Deed. The Support

19    Corporation, in a letter dated June 16, 2008 from its President, Raymond Marino, indicated

20    to the Corporation Sole that the acceptance of delivery of the Second Deed has always been

21    conditioned on the transfer being free and clear of all costs and charges, including

22    exemption of the transfer from transfer tax. Mr. Marino's letter specified that the Support

23    Corporation would not accept delivery of the Second Deed unless it could be recorded

24    without imposition of a transfer tax.

25         51.    The transfer of the Parish and School Properties from the Corporation Sole

26    to the Support Corporation has not been completed, since the Support Corporation was not

27    willing to accept the properties unless the condition set forth in Mr. Marino's letter was

28    satisfied. Notwithstanding the Recorder's recordation of the Second Deed on

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1  November 30, 2009 discussed below in paragraph 70, Plaintiffs and Petitioners maintain

2  that the Corporation Sole currently holds civil law title to the Parish and School Properties.

3  The Support Corporation has not acted as the owner of the Parish and School Properties

4  located in San Francisco.

5       52.    Both the First Deed and the Second Deed reflect that there was no

6  consideration for the respective transfers.

7  *Actions of the Recorder*

8       53.    In May 2008, a representative of the Corporation Sole went to the

9  Recorder's office to record the Deeds, both of which bore the following notation:

10      Transfer Tax:  None
    Per Rev & T C § 62(k)
11  (No consideration or sale –
    transfer of property within
12  The Roman Catholic Church only)

13       54.    By e-mail dated May 16, 2008, the Recorder's office initially informed the

14  Corporation Sole representative of a tentative opinion (which the Recorder's office

15  confirmed was not yet a final determination), that the Deeds could not be recorded without

16  payment of a transfer tax or additional information or documentation to support an

17  exemption from the tax.

18       55.    In July 2008, after the exchange of documentation and numerous discussions

19  with the Recorder's office, the Corporation Sole's representatives were informed that there

20  was a "misunderstanding" created by the reference on the deeds to Revenue and Taxation

21  Code ("RTC") § 62(k).  The Recorder's office indicated that it would not accept RTC

22  § 62(k) as a valid exemption to the transfer tax and that references to such section should be

23  removed from the Deeds and any transfer tax exemption affidavits.  The Recorder's office,

24  through Deputy Assessor-Recorder Zoon Nguyen, invited resubmission of the Deeds to be

25  recorded that very day without tax, provided the resubmissions were made without mention

26  of RTC § 62(k) and included a completed Transfer Tax Affidavit and a Preliminary Change

27  of Ownership Report ("PCOR") for each parcel.

28

1    56.    When a Corporation Sole representative suggested to the Recorder's office

2    that perhaps it was best to transfer only a single parcel in the second part of the transaction

3    (i.e., from the Corporation Sole to the Support Corporation), he was informed that the

4    Recorder would not want to be faced with the prospect of separately dealing with hundreds

5    of deeds. In reliance on that statement and the statements by the Recorder's office in

6    paragraph 55 above and on the belief that the Support Corporation's condition for the

7    acceptance of the deed was being met, the First Deed and the Second Deed were presented

8    to the Recorder at the same time.

9    57.    On July 16, 2008, after being invited to bring the Deeds for immediate

10   recording, a representative of the Corporation Sole presented the First Deed, the Second

11   Deed and the completed Transfer Tax Affidavits and PCORs to the Recorder's office for

12   recordation on the condition that no transfer tax would be due. The transfer tax affidavits

13   which accompanied the respective deeds claimed exemption from the tax for the following

14   reasons, 1) the transfers are being made pursuant to an intra-denominational restructuring

15   whereby a mere change in identity, form or place of organization is effected, 2) the

16   transfers result solely in a change in the method of holding title to realty but no change in

17   beneficial ownership and 3) no consideration has been paid in connection with the transfers.

18   *Determination of Tax Made Prior to Recording*

19   58.    The Recorder's office did not record the Deeds and, by letter dated July 28,

20   2008, presented 14 detailed questions requesting additional documents and information.

21   After the Corporation Sole's representative responded to that request and expressed surprise

22   that the Deeds had not been recorded in accord with the above-referenced understandings,

23   the Recorder's office sent a letter dated August 25, 2008 asking for further information, to

24   which the Corporation Sole's representative promptly responded.

25   59.    The Corporation Sole's representatives met with the Recorder and his staff

26   on November 6, 2008 and December 4, 2008. At the December 4, 2008 meeting, the

27   Recorder informed the Corporation Sole's representatives of his determination that the

28   above-described transfers were subject to transfer tax. In response to a request for a written

1  determination, the Recorder indicated that a written determination would not be

2  forthcoming and that his verbal determination should be construed as a determination of tax

3  for purposes of SF Transfer Tax Ordinance § 1115.2. The Recorder did not indicate the

4  amount of transfer tax that was allegedly due on either the First Deed or the Second Deed.

5      60.    SF Transfer Tax Ordinance § 1115.2(b) provides that a determination of tax

6  made prior to recording of a document ("pre-recordation determination of tax") may be

7  appealed if a petition for review is filed with the Review Board within 10 days from the

8  determination of tax.

9      61.    On December 10, 2008, the Corporation Sole timely filed with the Review

10  Board a Petition to Review Transfer Tax Determination pursuant to SF Transfer Tax

11  Ordinance § 1115.2 ("Initial Petition").

12      62.    On June 16, October 6 and October 8, 2009, the Initial Petition came on for

13  hearing before the Review Board.

14      63.    On November 30, 2009, the Review Board orally announced its tentative

15  decision upholding the Recorder's determination and concluding that the Recorder did not

16  err or abuse his discretion in determining that the transfer tax was due on both the First

17  Deed and the Second Deed.

18      64.    On January 26, 2010, the Review Board issued its Findings of Fact and

19  Conclusions of Law, which included its written decision upholding the Recorder's

20  determination (the "Board's Ruling").

21      65.    The Board's Ruling did not indicate the amount of transfer tax that was due

22  on either the First Deed or the Second Deed.

23      66.    The Review Board mailed a copy of the Board's Ruling to the Corporation

24  Sole on January 26, 2010.

25      67.    Pursuant to SF Transfer Tax Ordinance § 1115.2, the Board's Ruling may be

26  set aside by court action commenced within one year from the date that notice of the

27  Board's Ruling was personally served upon or mailed to the taxpayer.

28

1    

2     68.     The Board's Ruling, including the Review Board's Findings of Fact and

3   Conclusions of Law, is erroneous, unsupported by substantial evidence and contrary to law

4   for numerous reasons, including but not limited to, the following:

5     (a)     Neither the First Transfer nor the Second Transfer is subject to transfer tax

6   because no consideration was paid for either transfer. The transfer tax is imposed on

7   "realty sold," which require that consideration be paid for the transfer of realty. The First

8   Transfer involved the return of the School Properties from the Welfare Corporation upon its

9   dissolution to the Corporation Sole, as required by the California Nonprofit Religious

10   Corporation Law and the Welfare Corporation's Articles. The Second Transfer involved

11   the entrustment of the Parish and School Properties from the Corporation Sole to the newly

12   formed Support Corporation. There was no money or other consideration paid in either the

13   First Transfer or the Second Transfer. There was no purchase and sale agreement in

14   connection with either transfer.

15     (b)     The First Transfer and the Second Transfer were pursuant to an internal

16   corporate restructuring within the Archdiocese, which effected a "mere change in form" of

17   organization that is exempt from transfer tax under SF Transfer Tax Ordinance § 1106(d).

18   The Archdiocesan corporate restructuring was a mere change in form because the Parish

19   and School Properties remain owned by the Roman Catholic Church for the benefit of its

20   schools and parishes in San Francisco, and the restructuring has not changed such

21   ownership.

22     (c)     The Archdiocesan corporate restructuring did not change the beneficial

23   ownership of the Parish and School Properties, and thus, both the First Transfer and the

24   Second Transfer are exempt from transfer tax pursuant to RTC § 11925(d). SF Transfer

25   Tax Ordinance § 1101 states that the SF Transfer Tax Ordinance is adopted pursuant to the

26   authority of the RTC, commencing with RTC § 11901. Since at least 2007 and during the

27   time when the First Deed and the Second Deed were presented for recordation, the

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1   Recorder's office had accepted for recordation without payment of transfer tax deeds,

2   which on their face recited RTC § 11925(d) as the basis for exemption from the tax.

3       (d)     The First Transfer and the Second Transfer involved intra-denominational

4   transfers that were wholly internal to the Archdiocesan family of corporations. The First

5   Transfer and the Second Transfer are exempt from transfer tax because no change in

6   ownership of the Parish and School Properties has occurred. The SF Transfer Tax

7   Ordinance should be interpreted consistently with California's property tax rules and, in

8   particular, RTC § 62(k) which addresses the unique characteristics of religious

9   organizations and provides that intra-denominational transfers are not changes of ownership

10  of the transferred property. More generally and not limited to the property tax context,

11  RTC § 62(k) merely reflects long-standing judicial recognition that, notwithstanding civil

12  law title, the true owner of church property is the Church.

13      (e)     Imposition of a transfer tax on purely intra-denominational transfers violates

14  the California and United States Constitutions by imposing a tax on a church for exercising

15  its recognized constitutional rights to choose and change those civil law corporate forms

16  that best accommodate its religious structure and needs.

17      (f)     The Recorder is estopped from determining that a transfer tax is owed on the

18  First Transfer and the Second Transfer in that such a determination is without precedent,

19  and in fact contravenes the established practice in the City and County of San Francisco as

20  well as in other California counties.

21      (g)     The transfer of the Parish and School Properties from the Corporation Sole

22  to the Support Corporation (the Second Transfer) was conditioned on the transfer being free

23  and clear of all costs and charges, including exemption from the transfer tax. Because the

24  Recorder has asserted a transfer tax in connection with the Second Transfer, the Support

25  Corporation has not accepted the Parish and School Properties or the deed thereto. With

26  respect to the Second Deed, there has been no delivery or transfer upon which the transfer

27  tax can be imposed.

28

1    *Erroneous Recordation of Deeds and Notices of Delinquent Tax*

2        69.    SF Transfer Tax Ordinance § 1111 provides that the Recorder shall not

3    record any deed, instrument or writing subject to the transfer tax unless the tax is paid.

4        70.    The Recorder's office retained possession of the unrecorded Deeds from the

5    time that the Deeds were originally presented for recordation in July 2008.  Over one year

6    later, on November 30, 2009, immediately following the Review Board's oral

7    announcement of its tentative decision, the Recorder recorded both the First Deed and the

8    Second Deed.  The Recorder's office unilaterally recorded the Deeds without Plaintiffs'

9    authorization, or seeking such authorization, in violation of the condition set forth on the

10   face of the Deeds that no transfer tax would be due.

11       71.    The Recorder's recordation of the Deeds subsequent to the Review Board's

12   oral announcement of its tentative decision was erroneous, in that such recordation violated

13   SF Transfer Tax Ordinance § 1111 and the condition set forth on the face of the Deeds that

14   no transfer tax would be due, and was made without Plaintiffs' authorization.

15       72.    SF Transfer Tax Ordinance § 1115 in effect at the time of the purported

16   delivery of the Deeds provided that the tax imposed by the SF Transfer Tax Ordinance is

17   delinquent if unpaid at the time that a deed is recorded.

18       73.    On November 30, 2009, immediately following the recordation of the

19   Deeds, the Recorder erroneously issued Notices of Delinquent Tax to the Corporation Sole

20   and the Support Corporation and recorded the same.  The Recorder's office mailed the

21   Notices of Delinquent Tax to Plaintiffs on December 1, 2009.

22       74.    The Notices of Delinquent Tax, for the first time, set forth the Recorder's

23   determination of the *amount* of transfer tax, interest and penalties that allegedly was due

24   with respect to the First Deed and the Second Deed, with interest accruing from the date the

25   Deeds were executed.

26       75.    The Notice of Delinquent Tax on the First Deed was issued to the Welfare

27   Corporation as transferor and the Corporation Sole as transferee in the amount of

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1    $7,637,214.58, comprised of a delinquent tax amount of $5,057,758.00, a delinquency

2    penalty of $1,770,215.30 and interest on delinquent tax of $809,241.28.

3        76.    The Notice of Delinquent Tax on the Second Deed was issued to the

4    Corporation Sole as transferor and the Support Corporation as transferee in the amount of

5    $14,133,717.78, comprised of a delinquent tax amount of $9,360,078.00, a delinquency

6    penalty of $3,276,027.30 and interest on delinquent tax of $1,497,612.48.

7        77.    The Notices of Delinquent Tax are erroneous.  Because the Recorder

8    improperly recorded the Deeds, no amounts are currently delinquent and no delinquency

9    penalty and interest may be imposed.

10       78.    The Notices of Delinquent Tax erroneously fail to state separately, by parcel,

11    the alleged amounts of tax, penalties and interest and the basis upon which such amounts

12    were determined.

13       79.    The amounts of tax, penalties and interest alleged in the Notices of

14    Delinquent Tax are arbitrary and excessive.

15       80.    The issuance and recordation of the Notices of Delinquent Tax and the

16    arbitrary and excessive amounts of tax, penalties and interest alleged therein have virtually

17    eliminated available third-party lines of credit for Plaintiffs and hindered Plaintiffs' ability

18    to conduct transactions with respect to the subject real property.

19       81.    The Notices of Delinquent Tax are arbitrary and invalid.

20       82.    SF Transfer Tax Ordinance § 1115.2(b) provides that a determination of

21    delinquent taxes may be appealed if a petition for review is filed with the Review Board

22    within 10 days from the date of service or mailing of the notice of delinquent tax.

23       83.    On December 9, 2009 and December 11, 2009, the Corporation Sole and the

24    Support Corporation, respectively, each timely filed with the Review Board a Petition to

25    Review Transfer Tax Determination pursuant to SF Transfer Tax Ordinance § 1115.2 in

26    protest of the Notices of Delinquent Tax (collectively, the "Subsequent Petitions").

27       84.    In the Subsequent Petitions, the Corporation Sole and the Support

28    Corporation have challenged, without limitation, the validity of the Notices of Delinquent

Case: 23-30564   Doc# 631   Filed: 05/08/24   Entered: 05/08/24 11:27:30   Page 98 of
702107422
119

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1    Tax, the basis for imposing any penalties and interest, and the amount of the alleged

2    transfer tax, which was not separately stated by parcel.  To the extent that the transfer tax is

3    properly based on property value, the Recorder has grossly overvalued the subject real

4    properties in determining the amounts of the alleged tax.

5        85.     Since the time that Plaintiffs filed the Subsequent Petitions, Plaintiffs

6    repeatedly have requested information from the Recorder regarding the basis upon which

7    the alleged amounts of transfer tax were determined, including the values of the real

8    property that the Recorder used to determine the tax amounts.  To date, Plaintiffs have not

9    received information regarding those values or the basis on which such values were

10   determined.

11       86.     No hearing date has been scheduled by the Review Board on the Subsequent

12   Petitions concerning the Notices of Delinquent Tax.

13       87.     Pursuant to SF Transfer Tax Ordinance § 1115.1, if the full amount of the

14   delinquent tax, penalties and interest is not paid within 30 days following mailing of the

15   notice of delinquent tax or, in the event of an appeal to the Review Board, within 10 days

16   following service or mailing of the Review Board's ruling, the Recorder has one year in

17   which to report the delinquent tax to the San Francisco Board of Supervisors and request

18   the Board of Supervisors to create a special assessment and initiate lien proceedings against

19   the subject real property.  A court action to set aside a special assessment and the lien

20   created thereby is required to be commenced within one year from and after the date the

21   notice of the Board of Supervisors' confirmation of the Recorder's report is given to the

22   persons liable for the tax and to the property owners.  The nature or type of action is not

23   specified.

24       88.     The Recorder reported the Notices of Delinquent Tax to the San Francisco

25   Board of Supervisors, which set a public hearing on January 26, 2010 regarding said

26   Notices.

27       89.     The Recorder's report to the San Francisco Board of Supervisors of the

28   Notices of Delinquent Tax was premature and in violation of SF Transfer Tax Ordinance

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1 § 1115.1, in that Plaintiffs timely filed the Subsequent Petitions with the Review Board

2 appealing the Notices of Delinquent Tax, as noted in paragraph 83 above.

3     90.    In a memorandum dated January 25, 2010 to the San Francisco Board of

4 Supervisors, the City Attorney's office of the City and County of San Francisco confirmed

5 that the Recorder's report was premature and that the Board of Supervisors did not have

6 jurisdiction to confirm the Recorder's report or create special assessments and liens.

7     91.    At its meeting held on January 26, 2010, the San Francisco Board of

8 Supervisors tabled indefinitely its hearing on the Recorder's report of the Notices of

9 Delinquent Tax.

10     *Lack of a Plain, Speedy and Adequate Remedy*

11     92.    On January 26, 2010, the Review Board issued its written ruling regarding

12 the Corporation Sole's Initial Petition filed on December 10, 2008 challenging the

13 Recorder's pre-recordation determination of transfer tax.  The administrative proceedings

14 before the Review Board on the Initial Petition lasted over 13 months.

15     93.    SF Transfer Tax Ordinance § 1115.2(b) provides that rulings of the Review

16 Board on pre-recordation determinations of tax are final and conclusive and a court action

17 to set aside such a ruling shall be commenced within one year from and after the date that

18 notice of the Review Board's ruling is personally served upon or mailed to the taxpayer.

19 The nature or type of action is not specified.

20     94.    Pursuant to SF Transfer Tax Ordinance § 1115.2(b), Plaintiffs' sole remedy

21 to set aside the Board's Ruling is to commence a court action within one year from and

22 after the date of the service or mailing of the Board's Ruling which occurred on January 26,

23 2010.

24     95.    There are no provisions in the SF Transfer Tax Ordinance which require the

25 Review Board to issue its written ruling on the Subsequent Petitions regarding the *amount*

26 of transfer tax, penalties and interest allegedly due within the one-year period that Plaintiffs

27 have to file court action to set aside the Board's Ruling.

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1    96.    It is likely that the proceedings before the Review Board regarding the issue

2    of the valuation of the subject properties in the Subsequent Petitions will not be completed

3    within the one-year period that Plaintiffs have to file a court action to set aside the Board's

4    Ruling, in that 1) 232 properties are involved, 2) the amounts of transfer taxes, penalties

5    and interest alleged by the Recorder are arbitrary and excessive, 3) the Notices of

6    Delinquent Taxes fail to state separately, by parcel, the alleged amounts of tax imposed,

7    4) said Notices fail to state the basis upon which such amounts were determined, and 5) the

8    Recorder has not provided information regarding the values of the real property that were

9    used to determine the alleged amounts of transfer tax or the basis on which such values

10   were determined.

11   97.    The SF Transfer Tax Ordinance was amended by San Francisco Ordinance

12   20-09, effective February 5, 2009.  The amendments to various sections have created

13   ambiguities, inconsistencies and conflicts within the SF Transfer Tax Ordinance and the

14   provisions applicable to the First Transfer and Second Transfer, in that the purported

15   delivery of the Deeds occurred prior to the effective dates of these amendments.

16   98.    For the reasons enumerated above in paragraphs 87 through 97, Plaintiffs do

17   not have a plain, speedy and adequate remedy to set aside the Board's Ruling and obtain

18   review of the validity of the Recorder's issuance of the Notices of Delinquent Tax or

19   otherwise obtain review of the Recorder's determination that transfer taxes are owing with

20   respect to the subject transactions.

21                              **FIRST CAUSE OF ACTION**

22                              **Declaratory Relief**

23                              **(Against All Defendants)**

24   99.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 98

25   above as though fully set forth herein.

26   100.   Plaintiffs bring this cause of action pursuant to CCP § 1060, seeking a

27   judicial determination of the respective rights and duties as between Plaintiffs and

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1  Defendants in respect to the applicability of the City's real property transfer tax to the

2  transactions in issue.

3      101.   An actual controversy has arisen and exists between Plaintiffs and

4  Defendants concerning the imposition of the City's real property transfer tax on Plaintiffs

5  and the transactions herein.   Plaintiffs contend that the imposition of the City's real

6  property transfer tax on the transactions in issue is invalid for numerous reasons including,

7  but not limited to, the following:

8      (a)    the SF Transfer Tax Ordinance does not establish the basis for any

9  imposition of a transfer tax on these transactions;

10      (b)    the amount of transfer taxes, penalties and interest that the Recorder alleges

11  is owed is arbitrary and excessive;

12      (c)    the imposition of transfer taxes, penalties and interest on nonprofit religious

13  corporations or a corporation sole in connection with an internal Church restructuring

14  involving no exchange or receipt of money from which to pay any tax, is inequitable and

15  threatens to confiscate substantial Church assets that are devoted to religious purposes;

16      (d)    the reasons enumerated above in paragraph 68.

17      102.   In order to avoid a multiplicity of actions, and to effectuate a just and speedy

18  resolution of the issues and liabilities alleged herein, the requested declaration is necessary

19  and appropriate at this time to determine the respective rights, duties and liabilities of

20  Plaintiffs and Defendants with respect to whether the Archdiocesan corporate restructuring

21  triggered the imposition of any transfer tax.

22      103.   Declaratory relief is proper in this case because Plaintiffs do not have a

23  plain, speedy and adequate remedy at law.   As noted in paragraphs 95 and 96 above, there

24  is no certainty when the Review Board will issue a written ruling on the Subsequent

25  Petitions regarding the Notices of Delinquent Tax.   On the Initial Petition, the Review

26  Board took over a year to issue its written ruling.   If a similar amount of time elapses on the

27  pending Subsequent Petitions, the time provided under the SF Transfer Tax Ordinance

28

1 § 1115.2 to bring a court action to set aside the Board's Ruling on the Initial Petition will

2 have expired.

3     104.    The Court should issue a declaratory judgment declaring that no transfer tax

4 is owing with respect to the First Transfer, the Second Transfer and the Deeds thereto.

5     105.    The Court should issue a declaratory judgment declaring that the Deeds were

6 erroneously recorded and the Notices of Delinquent Tax were invalidly issued.

7 <center>**SECOND CAUSE OF ACTION**</center>

8 <center>**Writ of Mandate under CCP § 1085 or § 1094.5**</center>

9 <center>**(Against Respondent Review Board)**</center>

10     106.    Petitioner Corporation Sole incorporates by reference the allegations in

11 paragraphs 1 through 105 above as though fully set forth herein.

12     107.    The Review Board erred in upholding the illegal and erroneous

13 determination of tax made by the Recorder which is unsupported by the facts and the law.

14     108.    The Board's Ruling is invalid for numerous reasons including, but not

15 limited to, those set forth in paragraphs 68 and 101.

16     109.    The Board's Ruling is not supported by the Review Board's Findings of

17 Facts and Conclusions of Law.

18     110.    Pursuant to CCP § 1085 or CCP § 1094.5, this Court should direct

19 Respondent Review Board to set aside the Board's Ruling issued on January 26, 2010.

20 <center>**THIRD CAUSE OF ACTION**</center>

21 <center>**Writ of Mandate under CCP § 1085**</center>

22 <center>**(Against Respondent Recorder)**</center>

23     111.    Corporation Sole and Support Corporation incorporate by reference the

24 allegations in paragraphs 1 through 110 above as though fully set forth herein.

25     112.    The Recorder acted arbitrarily in issuing and recording Notices of

26 Delinquent Tax which are limited by law (SF Transfer Tax Ordinance §§ 1111 and 1115 in

27 effect during 2008) to be issued only when the tax is delinquent. Delinquency is triggered

28 only if the tax is unpaid at the time of recordation of the deeds. Recordation of the deeds is

1     limited to situations where transfer tax has been paid or an exemption applies. Here,

2     Plaintiffs had not paid any tax and the Recorder had determined that the transactions were

3     not exempt from the transfer tax. Therefore, the Recorder erred in recording the Deeds and

4     issuing and recording the Notices of Delinquent Tax.

5         113.     Pursuant to CCP § 1085, this Court should direct Respondent Recorder to

6     cancel the recordation of the Deeds, withdraw his Notices of Delinquent Tax and record the

7     appropriate documents confirming the same.

8                          **FOURTH CAUSE OF ACTION**

9                           **Request for Stay Order**

10           **(Against Respondent Review Board re Subsequent Petitions)**

11         114.     The Corporation Sole and the Support Corporation incorporate by reference

12     the allegations in paragraphs 1 through 113 above as though fully set forth herein.

13         115.     The Recorder acted arbitrarily in issuing and recording Notices of

14     Delinquent Tax which are limited by law (SF Transfer Tax Ordinance §§ 1111 and 1115 in

15     effect during 2008) to be issued only when the tax is delinquent. Delinquency is triggered

16     only if the tax is unpaid at the time of recordation of the deeds. Recordation of the deeds is

17     limited to situations where transfer tax has been paid or an exemption applies. Here,

18     Plaintiffs had not paid any tax and the Recorder had determined that the transactions were

19     not exempt from the transfer tax. Further, the Recorder's office recorded the Deeds without

20     Plaintiffs' authorization, in violation of the condition set forth on the face of the Deeds that

21     no transfer tax would be due. Therefore, the Recorder erred in recording the Deeds and in

22     issuing and recording the Notices of Delinquent Tax.

23         116.     Plaintiffs were required to file the Subsequent Petitions with the Review

24     Board in order to preserve their rights to obtain review of the Notices of Delinquent Tax.

25         117.     The Recorder should have determined transfer tax amounts when he made

26     his determination that a transfer tax was due prior to recording of documents. His failure to

27     do so cannot be cured by issuing the Notices of Delinquent Tax.

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

1        118.    If Plaintiffs are successful in the instant action and the Board's Ruling is set

2   aside, the Notices of Delinquent Tax will be withdrawn and the Subsequent Petitions will

3   be moot.

4        119.    Plaintiffs seek a stay order directed to the Review Board to hold in abeyance

5   the administrative proceedings before the Review Board on the pending Subsequent

6   Petitions regarding the Notices of Delinquent Tax until a final court decision is rendered in

7   the action brought herein to set aside the Board's Ruling issued on January 26, 2010.

8        120.    Plaintiffs will suffer great or irreparable injury if the administrative

9   proceedings before the Review Board on the pending Subsequent Petitions are permitted to

10   go forward while this action is pending, in that Plaintiffs will be required to incur

11   significant attorneys' fees and related costs in prosecuting the instant litigation while

12   simultaneously pursuing its administrative rights before the Review Board, where the

13   Subsequent Petitions may be mooted depending on the outcome of the pending action.

14        121.    Plaintiffs will suffer great or irreparable injury if the Review Board proceeds

15   to issue a ruling upholding the Recorder's actions with respect to the Notices of Delinquent

16   Tax prior to resolution of the pending action to set aside the Board's Ruling, in that special

17   assessment liens will be imposed on Plaintiff's real property and collection proceedings

18   may ensue.

19                       **PRAYER FOR RELIEF**

20        WHEREFORE,  prays that this Court:

21        1.    For a declaration by the Court that no transfer tax is owing with respect to

22   the First Transfer, the Second Transfer and the Deeds thereto.

23        2.    For a declaration by the Court that the Deeds were erroneously recorded and

24   the Notices of Delinquent Tax were invalidly issued.

25        3.    For a peremptory writ of mandate directed to Respondent Review Board to

26   set aside the Board's Ruling issued on January 26, 2010.

27

28

702107422   -25-

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST FOR STAY ORDER

1      4.     For a peremptory writ of mandate directed to Respondent Recorder to cancel

2 the recordation of the Deeds, withdraw his Notices of Delinquent Tax and record the

3 appropriate documents confirming the same.

4      5.     For a stay order directing Respondent Review Board to hold in abeyance any

5 proceedings related to the Subsequent Petitions pending final resolution of the matters

6 herein.

7      6.     For attorneys' fees as permitted by law.

8      7.     For costs of suit incurred herein; and

9      8.     For such other and further relief as the Court deems just and proper.

10 Dated: April 15, 2010.

                          PILLSBURY WINTHROP SHAW PITTMAN LLP

11                           JEFFREY M. VESELY
                          KERNE H. O. MATSUBARA

12                           RICHARD E. NIELSEN

13

14                           By _____
                                  Jeffrey M. Vesely

15                              Attorneys for Plaintiffs and Petitioners

16

17

18

19

20

21

22

23

24

25

26

27

28

       702167422                            - 26 -

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

VERIFICATION

2    I, George H. Niederauer, declare as follows:

3    1.    I am the Incumbent Archbishop of The Roman Catholic Archbishop of San

4    Francisco, A Corporation Sole, Plaintiff and Petitioner, to wit, and as such am authorized to

5    make this Verification.

6    2.    I have read the foregoing document VERIFIED COMPLAINT FOR

7    DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND

8    REQUEST FOR STAY ORDER and am familiar with its contents.  I am personally

9    familiar with Plaintiff's/Petitioner's real property transfer tax matter.  The facts alleged in

10    said document are true of my own knowledge.

11    I declare under penalty of perjury under the laws of California that the foregoing is

12    true and correct.

13    Executed this 15th day of April, 2010, at San Francisco, California.

14

15    _George N. Kiesbauer_

16    George H. Niederauer

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST
FOR STAY ORDER

| 1 | <u>VERIFICATION</u> |

1                      <u>VERIFICATION</u>

2        I, Robert W. McElroy, declare as follows:

3          1.    I am an officer and a director of The Archdiocese of San Francisco Parish

4 and School Juridic Persons Real Property Support Corporation, Plaintiff and Petitioner, to

5 wit, and as such am authorized to make this Verification.

6          2.    I have read the foregoing document VERIFIED COMPLAINT FOR

7 DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND

8 REQUEST FOR STAY ORDER and am familiar with its contents.  I am personally

9 familiar with Plaintiff's/Petitioner's real property transfer tax matter.  The facts alleged in

10 said document are true of my own knowledge.

11        I declare under penalty of perjury under the laws of California that the foregoing is

12 true and correct.

13        Executed this 13th day of April, 2010, at San Francisco, California.

Robert W. McElroy

VERIFIED COMPLAINT FOR DECLARATORY RELIEF; VERIFIED PETITION FOR WRITS OF MANDATE; AND REQUEST FOR STAY ORDER

James I. Stang (CA Bar No. 94435)
Andrew W. Caine (CA Bar No. 110345)
Gillian N. Brown (CA Bar No. 205132)
Brittany M. Michael (*admitted pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email: jstang@pszjlaw.com
        acaine@pszjlaw.com
        gbrown@pszjlaw.com
        bmichael@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **CERTIFICATE OF SERVICE** |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| | |
|---|---|
| 1 | STATE OF CALIFORNIA        ) |
| 2 |                                                        )<br>CITY OF LOS ANGELES      ) |

I, Maria R. Viramontes, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., Suite 1300, Los Angeles, California 90067.

On May 8, 2024, I caused to be served the **DECLARATION OF BRITTANY M. MICHAEL IN SUPPORT OF THE EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION AND PRODUCTION OF DOCUMENTS BYU (1) DEBTOR, THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO; (2) THE ARCHDIOCESE OF SAN FRANCISCO PARISH, SCHOOL AND CEMETERY JURIDIC PERSONS CAPITAL ASSETS SUPPORT CORPORATION; AND (3) THE ARCHDIOCESE OF SAN FRANCISCO PARISH AND SCHOOL JURIDIC PERSONS REAL PROPERTY SUPPORT CORPORATION** in the manner stated below:

| | |
|---|---|
| ☑ | TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders and LBR, the foregoing document was served by the court via NEF and hyperlink to the document. On May 8, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below.  See Attached |
| ☑ | (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.<br><br>The Honorable Judge Dennis Montali<br>United States Bankruptcy Court<br>Northern District of California<br>450 Golden Gate Avenue, 16th Floor<br>San Francisco, CA 94102<br><br>See Attached |
| ☑ | (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.<br><br>See Attached. |

I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 8, 2024, at Los Angeles, California.

*/s/ Maria R. Viramontes*
_____
Maria R. Viramontes

2

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Darren Azman on behalf of Interested Party Sacred Heart Cathedral Preparatory
dazman@mwe.com, mco@mwe.com

Jesse Bair on behalf of Creditor Committee The Official Committee of Unsecured Creditors
jbair@burnsbair.com, aturgeon@burnsbair.com

Hagop T. Bedoyan on behalf of Interested Party The Roman Catholic Bishop of Fresno
hagop.bedoyan@mccormickbarstow.com, ecf@kleinlaw.com

Jason Blumberg on behalf of U.S. Trustee Office of the U.S. Trustee / SF
jason.blumberg@usdoj.gov, ustpregion17.sf.ecf@usdoj.gov

Gillian Nicole Brown on behalf of Creditor Committee The Official Committee of Unsecured Creditors
gbrown@pszjlaw.com

John Bucheit on behalf of Interested Party Appalachian Insurance Company
jbucheit@phrd.com

Timothy W. Burns on behalf of Creditor Committee The Official Committee of Unsecured Creditors
tburns@burnsbair.com, kdempski@burnsbair.com

George Calhoun on behalf of Interested Party Century Indemnity Company
george@ifrahlaw.com

Robert M Charles, Jr on behalf of Interested Party Parishes of the Roman Catholic Archdiocese of San Francisco
rcharles@lewisroca.com

Jason Chorley on behalf of Interested Party Century Indemnity Company
jason.chorley@clydeco.us, Robert.willis@clydeco.us

Amanda L. Cottrell on behalf of Debtor The Roman Catholic Archbishop of San Francisco
acottrell@sheppardmullin.com, JHerschap@sheppardmullin.com

Jennifer Witherell Crastz on behalf of Creditor City National Bank
jcrastz@hemar-rousso.com

Blaise S Curet on behalf of Interested Party Westport Insurance Corporation f/k/a Employers Reinsurance Corporation
bcuret@spcclaw.com

Jared A. Day on behalf of U.S. Trustee Office of the U.S. Trustee / SF
jared.a.day@usdoj.gov

Allan B Diamond on behalf of Interested Party The Archdiocese of San Francisco Capital Asset Support Corporation
adiamond@diamondmccarthy.com

David Elbaum on behalf of Interested Party Century Indemnity Company
david.elbaum@stblaw.com

Michael W Ellison on behalf of Interested Party First State Insurance Company
mellison@sehlaw.com

Trevor Ross Fehr on behalf of U.S. Trustee Office of the U.S. Trustee / SF
trevor.fehr@usdoj.gov

3

| | |
|---|---|
| 1 | Robert David Gallo on behalf of Interested Party Appalachian Insurance Company |
| 2 | dgallo@phrd.com |
| 3 | Christina Lauren Goebelsmann on behalf of U.S. Trustee Office of the U.S. Trustee / SF |
| | christina.goebelsmann@usdoj.gov |
| 4 | Debra I. Grassgreen on behalf of Creditor Committee The Official Committee of Unsecured Creditors |
| 5 | dgrassgreen@pszjlaw.com, hphan@pszjlaw.com |
| 6 | John Grossbart on behalf of Interested Party Appalachian Insurance Company |
| | john.grossbart@dentons.com |
| 7 | Joshua K Haevernick on behalf of Interested Party St. Paul Fire and Marine Insurance Co. |
| 8 | joshua.haevernick@dentons.com |
| 9 | Robert G. Harris on behalf of Creditor Archbishop Riordan High School |
| | rob@bindermalter.com, RobertW@BinderMalter.com |
| 10 | Deanna K. Hazelton on behalf of U.S. Trustee Office of the U.S. Trustee / SF |
| 11 | deanna.k.hazelton@usdoj.gov |
| 12 | Todd C. Jacobs on behalf of Interested Party Appalachian Insurance Company |
| | tjacobs@phrd.com |
| 13 | Daniel James on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market |
| 14 | Companies |
| | daniel.james@clydeco.us |
| 15 | Christopher D. Johnson on behalf of Interested Party The Archdiocese of San Francisco Capital Asset Support |
| 16 | Corporation |
| | chris.johnson@diamondmccarthy.com |
| 17 | Jeff D. Kahane on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market |
| 18 | Companies |
| | jkahane@duanemorris.com |
| 19 | Ori Katz on behalf of Debtor The Roman Catholic Archbishop of San Francisco |
| 20 | okatz@sheppardmullin.com, LSegura@sheppardmullin.com |
| 21 | Jeannie Kim on behalf of Debtor The Roman Catholic Archbishop of San Francisco |
| | jekim@sheppardmullin.com, dgatmen@sheppardmullin.com |
| 22 | David S. Kupetz on behalf of Interested Party Daughters of Charity Foundation |
| 23 | David.Kupetz@lockelord.com, Mylene.Ruiz@lockelord.com |
| 24 | Christina Marie Lincoln on behalf of Interested Party Appalachian Insurance Company |
| | clincoln@robinskaplan.com |
| 25 | Lisa Arlyn Linsky on behalf of Interested Party Sacred Heart Cathedral Preparatory |
| 26 | llinsky@mwe.com |
| 27 | John William Lucas on behalf of Creditor Committee The Official Committee of Unsecured Creditors |
| | jlucas@pszjlaw.com, ocarpio@pszjlaw.com |
| 28 | Betty Luu on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market Companies |
| | bluu@duanemorris.com |

4

1

Pierce MacConaghy on behalf of Interested Party Century Indemnity Company
pierce.macconaghy@stblaw.com, janie.franklin@stblaw.com

2

3

Alan H. Martin on behalf of Debtor The Roman Catholic Archbishop of San Francisco
AMartin@sheppardmullin.com, lwidawskyleibovici@sheppardmullin.com

4

Patrick Maxcy on behalf of Interested Party Appalachian Insurance Company
patrick.maxcy@dentons.com, docket.general.lit.chi@dentons.com

5

6

Patrick Maxcy on behalf of Interested Party St. Paul Fire and Marine Insurance Co.
docket.general.lit.chi@dentons.com

7

Andrew Mina on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market
Companies
amina@duanemorris.com

8

9

M. Keith Moskowitz on behalf of Interested Party Appalachian Insurance Company
keith.moskowitz@dentons.com

10

11

Michael Norton on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market
Companies
michael.norton@clydeco.us, nancy.lima@clydeco.us

12

13

Office of the U.S. Trustee / SF
USTPRegion17.SF.ECF@usdoj.gov

14

Paul J. Pascuzzi on behalf of Debtor The Roman Catholic Archbishop of San Francisco
ppascuzzi@ffwplaw.com, docket@ffwplaw.com

15

16

Mark D. Plevin on behalf of Interested Party Continental Casualty Company
mplevin@crowell.com, mark-plevin-crowell-moring-8073@ecf.pacerpro.com

17

Douglas B. Provencher on behalf of Other Prof. Douglas B. Provencher
dbp@provlaw.com

18

19

Nathan W. Reinhardt on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market
Companies
nreinhardt@duanemorris.com

20

21

Jason E. Rios on behalf of Debtor The Roman Catholic Archbishop of San Francisco
jrios@ffwplaw.com, docket@ffwplaw.com

22

Kathleen Mary Derrig Rios on behalf of Interested Party Parishes of the Roman Catholic Archdiocese of San Francisco
kderrig@lewisroca.com

23

24

Matthew Roberts on behalf of Interested Party Appalachian Insurance Company
mroberts@phrd.com

25

Annette Rolain on behalf of Interested Party First State Insurance Company
arolain@ruggerilaw.com

26

27

Cheryl C. Rouse on behalf of Creditor Victoria Castro
rblaw@ix.netcom.com

28

Phillip John Shine on behalf of U.S. Trustee Office of the U.S. Trustee / SF

5

phillip.shine@usdoj.gov

James I. Stang on behalf of Creditor Committee The Official Committee of Unsecured Creditors
jstang@pszjlaw.com

Jason D. Strabo on behalf of Interested Party Sacred Heart Cathedral Preparatory
jstrabo@mwe.com

Catalina Sugayan on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market Companies
catalina.sugayan@clydeco.us, Nancy.Lima@clydeco.us

Joshua D Weinberg on behalf of Interested Party First State Insurance Company
jweinberg@ruggerilaw.com

Matthew Michael Weiss on behalf of Interested Party Appalachian Insurance Company
mweiss@phrd.com

Harris Winsberg on behalf of Interested Party Appalachian Insurance Company
hwinsberg@phrd.com

Yongli Yang on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market Companies
yongli.yang@clydeco.us

6

# Via Email and U.S. Mail

| Description | Name | Address | Fax | Email |
|---|---|---|---|---|
| *NOA - Request for Notice | A.S. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| Debtor's Counsel, Registered ECF User | Amanda L. Cottrell | | | acottrell@sheppardmullin.com<br>JHerschap@sheppardmullin.com |
| *NOA Counsel for Junipero Serra High School/Counsel for Marin Catholic High School/Counsel for Riordan High School/Counsel for Salesian Society, Registered ECF User | Binder & Malter, LLP | Attn: Robert G Harris<br>2775 Park Ave<br>Santa Clara, CA 95050 | | rob@bindermalter.com<br>robertw@bindermalter.com |
| Registered ECF User | Burns Bair LLP | | | jbair@burnsbair.com |
| | | Jesse Bair | | aturgeon@burnsbair.com |
| *NOA - Request for Notice | C.B. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| Corresponding State Agencies | California Department of Tax And Fee Admin | P.O. Box 942879<br>Sacramento, CA 94279 | | |
| The Office of the California Attorney General | California Office of the Attorney General | 1300 I St, Ste 1142<br>Sacramento, CA 95814 | | |
| Registered ECF User on behalf of Creditor Victoria Castro | Cheryl C. Rouse | Attn: Annette Rolain | | rblaw@ix.netcom.com |
| *NOA - Counsel for Century Indemnity Company, Pacific Indemnity Company, and Westchester Fire Insurance Company | Clyde & Co US LLP | Attn: Alexander Potente<br>Attn: Jason J Chorley<br>150 California St, 15th Fl<br>San Francisco, CA 94111 | 415-365-9801 | alex.potente@clydeco.us<br>jason.chorley@clydeco.us |
| *NOA - Counsel for Certain Underwriters at Lloyd's, London and Certain London Market Companies, Registered ECF User | Clyde & Co US LLP | Attn: Catalina J Sugayan<br>30 S Wacker Dr, Ste 2600<br>Chicago, IL 60606 | 312-635-6917 | Catalina.Sugayan@clydeco.us |
| Registered ECF User on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market Companies | Clyde & Co US LLP | Attn: Nancy Lima<br>Attn: Yongli Yang<br>Attn: Jason J Chorley<br>Attn: Daniel James<br>Attn: Michael Norton | | Nancy.Lima@clydeco.us<br>yongli.yang@clydeco.us<br>jason.chorley@clydeco.us<br>Robert.willis@clydeco.us<br>daniel.james@clydeco.us<br>michael.norton@clydeco.us |
| Corresponding State Agencies | Colorado Department of Revenue | 1881 Pierce St<br>Lakewood, CO 80214 | | |
| *NOA - Counsel for Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation | Craig & Winkelman LLP | Attn: Robin D Craig<br>2001 Addison St, Ste 300<br>Berkeley, CA 94704 | | rcraig@craig-winkelman.com |
| *NOA - Counsel for Continental Casualty Company | Crowell & Moring LLP | Attn: Miranda H Turner<br>Attn: Jordan A Hess<br>1001 Pennsylvania Ave, NW<br>Washington, DC 20004 | 202-628-5116 | mturner@crowell.com<br>jhess@crowell.com |
| *NOA - Counsel for Continental Casualty Company, Registered ECF User | Crowell & Moring LLP | Attn: Mark D Plevin<br>Three Embarcadero Ctr, 26th Fl<br>San Francisco, CA 94111 | 415-986-2827 | mplevin@crowell.com<br>mark-plevin-crowell-moring-8073@ecf.pacerpro.com |
| *NOA - Request for Notice | D.R. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| *NOA - Counsel for St. Paul Fire and Marine Insurance Company and Travelers Casualty and Surety Company, Employers Reinsurance Corporation, Appalachian Insurance Company, First State Insurance Company, and The Insurance Company of North America, Registered ECF User | Dentons US LLP | Attn: Joshua Haevernick<br>1999 Harrison St, Ste 1300<br>Oakland, CA 94612 | 415-882-0300 | joshua.haevernick@dentons.com |

**Roman Catholic Archbishop of San Francisco**
**Limited Service List**

| Description | Name | Address | Fax | Email |
|---|---|---|---|---|
| *NOA - Counsel for St. Paul Fire and Marine Insurance Company and Travelers Casualty and Surety Company, Employers Reinsurance Corporation, Appalachian Insurance Company, First State Insurance Company, and The Insurance Company of North America | Dentons US LLP | Attn: Patrick C Maxcy<br>Attn: John Grossbart<br>233 S Wacker Dr, Ste 5900<br>Chicago, IL 60606 | 312-876-7934 | patrick.maxcy@dentons.com<br>john.grossbart@dentons.com |
| Registered ECF User | Dentons US LLP | | | docket.general.lit.chi@dentons.com;<br>patrick.maxcy@dentons.com |
| Registered ECF User | Dentons US LLP | M. Keith Moskowitz | | keith.moskowitz@dentons.com |
| *NOA - Counsel for St. Paul Fire and Marine Insurance Company and Travelers Casualty and Surety Company, Employers Reinsurance Corporation, Appalachian Insurance Company, First State Insurance Company, and The Insurance Company of North America | Dentons US LLP | Attn: Geoffrey M Miller<br>Attn: Lauren Macksoud<br>1221 Ave of the Americas<br>New York, NY 10020-1089 | 212-768-6800 | geoffrey.miller@dentons.com<br>lauren.macksoud@dentons.com |
| *NOA - Counsel for The Archdiocese of San Francisco Capital Assets Support Corporation, Registered ECF User | Diamond McCarthy LLP | Attn: Allan Diamond<br>Attn: Christopher Johnson<br>909 Fannin, Ste 3700<br>Houston, TX 77010 | 713-333-5199 | chris.johnson@diamondmccarthy.com<br>adiamond@diamondmccarthy.com |
| *NOA - Counsel for The Archdiocese of San Francisco Capital Assets Support Corporation | Diamond McCarthy LLP | Attn: Damion D D Robinson<br>355 S Grand Ave, Ste 2450<br>Los Angeles, CA 90071 | | damion.robinson@diamondmccarthy.com |
| *NOA - Counsel for Certain Underwriters at Lloyd's, London and Certain London Market Companies | Duane Morris LLP | Attn: Jeff D Kahane<br>Attn: Russell W Roten<br>Attn: Andrew Mina<br>Attn: Nathan Reinhardt<br>Attn: Betty Luu<br>865 S Figueroa St, Ste 3100<br>Los Angeles, CA 90017-5450 | 213-689-7401 | JKahane@duanemorris.com<br>RWRoten@duanemorris.com<br>AMina@duanemorris.com<br>NReinhardt@duanemorris.com<br>BLuu@duanemorris.com |
| Registered ECF User on behalf of Interested Party Certain Underwriters at Lloyds London and Certain London Market Companies | Duane Morris LLP | Nathan W Reinhardt<br>Andrew Mina<br>Jeff D Kahane<br>Betty Luu | | nreinhardt@duanemorris.com<br>amina@duanemorris.com<br>JKahane@duanemorris.com<br>BLuu@duanemorris.com |
| *NOA - Other Professional, Registered ECF User | Emboldon Law PC | Attn: Douglas B Provencher<br>823 Sonoma Ave<br>Santa Rosa, CA 95404-4714 | 707-284-2387 | dbp@provlaw.com |
| Corresponding State Agencies | Employment Development Department | P.O. Box 989061<br>West Sacramento, CA 95798 | | |
| *NOA - Counsel for Abuse Claimant | Estey & Bomberger, LLP | Attn: Stephen Estey<br>2869 India St<br>San Diego, CA 92103 | 619-295-0172 | steve@estey-bomberger.com |
| Debtors' Counsel | Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP | Attn: Paul Pascuzzi<br>Attn: Thomas Phinney<br>Attn: Jason Rios<br>500 Capitol Mall, Ste 2250<br>Sacramento, CA 95814 | | ppascuzzi@ffwplaw.com<br>tphinney@ffwplaw.com<br>jrios@ffwplaw.com<br>docket@ffwplaw.com |
| Debtors' Counsel, Registed ECF User | Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP | Attn: Paul Pascuzzi<br>Attn: Jason Rios | | ppascuzzi@ffwplaw.com<br>jrios@ffwplaw.com<br>docket@ffwplaw.com |
| *NOA - Request for Notice | Fiore Achermann | Attn: Sophia Achermann<br>605 Market St, Ste 1103<br>San Francisco, CA 94105 | 415-550-0605 | sophia@theFAfirm.com |
| Corresponding State Agencies | Florida Department of Revenue | 5050 W Tennessee St<br>Tallahassee, FL 32399 | | |
| Fee Examiner | Frejka PLLC | Attn: Elise S. Frejka | | Efrejka@frejka.com |
| *NOA - Request for Notice | GDR Group, Inc | Attn: Robert R Redwitz<br>3 Park Plz, Ste 1700<br>Irvine, CA 92614 | | randy@gdrgroup.com |
| Corresponding State Agencies | Georgia Department of Revenue Processing Center | P.O. Box 740397<br>Atlanta, GA 30374 | | |
| *NOA - Request for Notice | H.F. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| *NOA - Counsel for Century Indemnity Company, Pacific Indemnity Company, and Westchester Fire Insurance Company, Registered ECF User | Ifrah PLLC | Attn: George Calhoun<br>1717 Pennsylvania Ave, NW, Ste 650<br>Washington DC 20006 | | george@ifrahlaw.com |
| Internal Revenue Service | Internal Revenue Service | Attn: Centralized Insolvency Operation<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | | |

**Roman Catholic Archbishop of San Francisco**
**Limited Service List**

| Description | Name | Address | Fax | Email |
|---|---|---|---|---|
| *NOA - Request for Notice | J.B. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| *NOA - Request for Notice | J.D. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| Registered ECF User on behalf of Creditor City National Bank | Jennifer Witherell Crastz | | | jcrastz@hemar-rousso.com |
| *NOA - Claims Representative for the County of Kern | Kern County Treasurer and Tax Collector Office | Attn: Bankruptcy Division<br>P.O. Box 579<br>Bakersfield, CA 93302-0579 | | bankruptcy@kerncounty.com |
| *NOA - Counsel for Parishes of the Roman Catholic Archdiocese of San Francisco, and The Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation, Registered ECF User | Lewis Roca Rothgerber Christie LLP | One S Church Ave, Ste 2000<br>Tucson, AZ 85701-1666 | 520-622-3088 | RCharles@lewisroca.com |
| *NOA - Counsel for Daughters of Charity Foundation; Registered ECF User | Locke Lord LLP | Attn: David S Kupetz<br>300 S Grand Ave, Ste 2600<br>Los Angeles, CA 90071 | | david.kupetz@lockelord.com<br>Mylene.Ruiz@lockelord.com |
| *NOA - Counsel for The Roman Catholic Bishop of Fresno, Registered ECF User | McCormick, Barstow, Sheppard, Wayte & Carruth LLP | Attn: Hagop T Bedoyan<br>7647 N Fresno St<br>Fresno, CA 93720 | | hagop.bedoyan@mccormickbarstow.com<br>ecf@kleinlaw.com |
| *NOA - Counsel to Sacred Heart Cathedral Preparatory (SHCP) | McDermott Will & Emery LLP | Attn: Carole Wurzelbacher<br>444 West Lake St, Ste 4000<br>Chicago, IL 60606 | 312-984-7700 | cwurzelbacher@mwe.com |
| *NOA - Counsel to Sacred Heart Cathedral Preparatory (SHCP) | McDermott Will & Emery LLP | Attn: Darren Azman<br>Attn: Lisa A. Llinsky<br>Attn: Natalie Rowles<br>Attn: Cris W. Ray<br>One Vanderbilt Ave<br>New York, NY 10017-3852 | 212-547-5444 | dazman@mwe.com<br>llinsky@mwe.com<br>nrowles@mwe.com<br>cray@mwe.com |
| *NOA - Counsel to Sacred Heart Cathedral Preparatory (SHCP) | McDermott Will & Emery LLP | Attn: Jason D. Strabo<br>2049 Century Park E, Ste 3200<br>Los Angeles, CA 90067-3206 | 310-277-4730 | jstrabo@mwe.com |
| Registered ECF Party on behalf of Interested Party Sacred Heart Cathedral Preparatory | McDermott Will & Emery LLP | Darren Azman | | dazman@mwe.com;<br>mco@mwe.com |
| Corresponding State Agencies | New Mexico Taxation and Revenue Department | P.O. Box 25127<br>Santa Fe, NM 87504 | | |
| *NOA - Counsel for Chicago Insurance Company and Fireman's Fund Insurance Company | Nicolaides Fink Thorpe Michaelides Sullivan LLP | Attn: Matthew C Lovell<br>101 Montgomery St, Ste 2300<br>San Francisco, CA 94104 | | mlovell@nicolaidesllp.com |
| Registered ECF User | Office of the U.S. Trustee / SF | Attn: Christina Lauren Goebelsmann | | christina.goebelsmann@usdoj.gov<br>USTPRegion17.SF.ECF@usdoj.gov |
| U.S. Trustee, Registered ECF User | Office of the United States Trustee | Attn: Phillip J. Shine<br>450 Golden Gate Ave, Rm 05-0153<br>San Francisco, CA 94102 | | phillip.shine@usdoj.gov |
| U.S. Trustee, Registered ECF User | Office of the United States Trustee | Attn: Jason Blumberg<br>Attn: Trevor R Fehr<br>Attn: Jared A. Day<br>501 I Street, Ste 7-500<br>Sacramento, CA 95814 | | jason.blumberg@usdoj.gov<br>Trevor.Fehr@usdoj.gov<br>jared.a.day@usdoj.gov<br>USTP.Region17@usdoj.gov |
| U.S. Trustee, Registered ECF User | Office of the United States Trustee | Attn: Deanna K. Hazelton<br>2500 Tulare St, Ste 1401<br>Fresno, CA 93721 | | deanna.k.hazelton@usdoj.gov |
| *NOA - Proposed Counsel for the Official Committee of the Unsecured Creditors | Pachulski Stang Ziehl & Jones LLP | Attn: Brittany M Michael<br>780 3rd Ave, 34th Fl<br>New York, NY 10017-2024 | 212-561-7777 | bmichael@pszjlaw.com |
| *NOA - Proposed Counsel for the Official Committee of the Unsecured Creditors, Registered ECF User | Pachulski Stang Ziehl & Jones LLP | Attn: James I Stang<br>10100 Santa Monica Blvd, 13th Fl.<br>Los Angeles, CA 90067 | | jstang@pszjlaw.com |
| *NOA - Proposed Counsel for the Official Committee of the Unsecured Creditors, Registered ECF User | Pachulski Stang Ziehl & Jones LLP | Attn: Debra I Grassgreen<br>Attn: John W Lucas<br>1 Sansome St, 34th Fl, Ste 3430<br>San Francisco, CA 94104-4436 | | dgrassgreen@pszjlaw.com<br>jlucas@pszjlaw.com |
| Registered ECF User on behalf of Creditor Committee The Official Committee of Unsecured Creditors | Pachulski Stang Ziehl & Jones LLP | Debra I. Grassgreen<br>Gillian Nicole Brown | | dgrassgreen@pszjlaw.com<br>hphan@pszjlaw.com<br>ocarpio@pszjlaw.com<br>gbrown@pszjlaw.com |

**Roman Catholic Archbishop of San Francisco**
**Limited Service List**

| Description | Name | Address | Fax | Email |
|---|---|---|---|---|
| *NOA - Counsel for Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation, Counsel for Chicago Insurance Company and Fireman's Fund Insurance Company, Registered ECF User | Parker, Hudson, Rainer & Dobbs LLP | Attn: Todd C Jacobs<br>Attn: John E Bucheit<br>2 N Riverside Plz, Ste 1850<br>Chicago, IL 60606 | 404-522-8409 | tjacobs@phrd.com<br>jbucheit@phrd.com |
| *NOA - Counsel for Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation, Counsel for Chicago Insurance Company and Fireman's Fund Insurance Company,Counsel for Appalachian Insurance Company, Registered ECF User | Parker, Hudson, Rainer & Dobbs LLP | Attn: Harris B Winsberg<br>Attn: Matthew M Weiss<br>Attn: R David Gallo<br>303 Peachtree St NE, Ste 3600<br>Atlanta, Georgia 30308 | 404-522-8409 | hwinsberg@phrd.com<br>mweiss@phrd.com<br>dgallo@phrd.com |
| *NOA - Counsel for Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation, Counsel for Chicago Insurance Company and Fireman's Fund Insurance Company, Counsel for Appalachian Insurance Company Registered ECF User | Parker, Hudson, Rainer & Dobbs LLP | Attn: Matthew G Roberts<br>303 Peachtree St NE, Ste 3600<br>Atlanta, Georgia 30308 | 404-522-8409 | mroberts@phrd.com |
| *NOA - Request for Notice | R.C. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| *NOA - Request for Notice | R.F. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| *NOA - Request for Notice | R.F. Jr. | Attn: Kim Dougherty, Esq.<br>Just Law Collaborative<br>210 Washington St<br>N Easton, MA 02356 | 385-278-0287 | kim@justcelc.com |
| *NOA - Counsel for Appalachian Insurance Company | Robins Kaplan LLP | Attn: Christina M. Lincoln<br>2121 Ave of the Stars, Ste 2800<br>Los Angeles, CA 90067 | 310-229-5800 | clincoln@robinskaplan.com |
| *NOA - Counsel for Appalachian Insurance Company | Robins Kaplan LLP | Attn: Melissa M D'Alelio<br>Attn: Taylore E Karpa Schollard<br>Attn: Michele N Detherage<br>800 Boylston St, Ste 2500<br>Boston, MA 02199 | 617-267-8288 | mdalelio@robinskaplan.com<br>tkarpa@robinskaplan.com<br>mdetherage@robinskaplan.com |
| *NOA - Request for Notice | Rosalie Marcic | Attn: Jeannette A. Vaccaro, Esq.<br>315 St., 10th Fl<br>San Francisco, CA 94104 | 415-366-3237 | jv@jvlaw.com |
| *NOA - Counsel for Interested Party First State Insurance Company, Registered ECF User | Ruggeri Parks Weinberg LLP | Attn: Annette P Rolain<br>Attn: Joshua Weinberg<br>1875 K St NW, Ste 600<br>Washington, DC 20006-1251 | | Arolain@ruggerilaw.com<br>jweinberg@ruggerilaw.com |
| Corresponding State Agencies | San Francisco County Clerk | 1 Dr Carlton B Goollett Pl<br>City Hall, Room 168<br>San Francisco, CA 94102 | | |
| Corresponding State Agencies | San Francisco Tax Collector | c/o Secured Property Tax<br>P.O. Box 7426<br>San Francisco, CA 94120 | | |
| Corresponding State Agencies | San Mateo County Tax Collector | 555 County Center, 1st Floor<br>Redwood City, CA 94063 | | |
| Debtor's Counsel, Registered ECF User | Sheppard, Mullin, Richter & Hampton LLP | Attn: Ori Katz<br>Attn: Alan H Martin<br>4 Embarcadero Ctr, 17th Fl<br>San Francisco, CA 94111-4109 | | amartin@sheppardmullin.com<br>katz@sheppardmullin.com |
| Debtor's Counsel, Registered ECF User | Sheppard, Mullin, Richter & Hampton LLP | Attn: Jeannie Kim<br>Attn: Ori Katz | | jekim@sheppardmullin.com<br>dgatmen@sheppardmullin.com<br>okatz@sheppardmullin.com<br>LSegura@sheppardmullin.com<br>lwidawskyleibovici@sheppardmullin.com |
| *NOA - Counsel for Century Indemnity Company, Pacific Indemnity Company, and Westchester Fire Insurance Company | Simpson Thacher & Bartlett LLP | Attn: Andrew T Frankel<br>Attn: Michael H Torkin<br>425 Lexington Ave<br>New York, NY 10017 | 212-455-2502 | afrankel@stblaw.com<br>michael.torkin@stblaw.com |
| *NOA - Counsel for Century Indemnity Company, Pacific Indemnity Company, and Westchester Fire Insurance Company, Registered ECF User | Simpson Thacher & Bartlett LLP | Attn: Pierce A MacConaghy<br>2475 Hanover St<br>Palo Alto, CA 94304 | 650-251-5002 | pierce.macconaghy@stblaw.com<br>janie.franklin@stblaw.com |

**Roman Catholic Archbishop of San Francisco**
**Limited Service List**

| Description | Name | Address | Fax | Email |
|---|---|---|---|---|
| *NOA - Counsel for Century Indemnity Company, Pacific Indemnity Company, and Westchester Fire Insurance Company, Registered ECF User | Simpson Thacher & Bartlett LLP | Attn: David Elbaum<br>425 Lexington Ave<br>New York, NY 10017 | 212-455-2502 | david.elbaum@stblaw.com |
| *NOA - Counsel for Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation, Registered ECF User | Sinnott, Puebla, Campagne & Curet, APLC | Attn: Blaise S Curet<br>2000 Powell St, Ste 830<br>Emeryville, CA 94608 | 415-352-6224 | bcuret@spcclaw.com |
| *NOA - Counsel for Interested Party First State Insurance Company , Registered ECF User | Smith Ellison | Attn: Michael W Ellison<br>2151 Michelson Dr, Ste 185<br>Irvine, CA 92612 | 949-442-1515 | mellison@sehlaw.com |
| Corresponding State Agencies | State of California Franchise Tax Board | P.O. Box 942867<br>Sacramento, CA 94267 | | |
| Debtor | The Roman Catholic Archbishop of San Francisco | One Peter Yorke Way<br>San Francisco, CA 94109 | | |
| Corresponding State Agencies | Virginia Department of Taxation | P.O. Box 1115<br>Richmond, VA 23218 | | |
| Corresponding State Agencies | Virginia Employment Commission | P.O. Box 26441<br>Richmond, VA 23261 | | |