PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
 WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
Email: ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
 A Limited Liability Partnership
 Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email: okatz@sheppardmullin.com
amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop
of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>    Debtor and<br>    Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**MOTION FOR ENTRY OF AN ORDER REFERRING PARTIES TO GLOBAL MEDIATION, APPOINTING MEDIATOR AND GRANTING RELATED RELIEF**<br><br>Date: June 13, 2024<br>Time: 1:30 p.m.<br>Location: via Zoom<br>Judge: Hon. Dennis Montali |

The Roman Catholic Archbishop of San Francisco, debtor and debtor in possession (the "RCASF" or "Debtor"), hereby moves (the "Motion") for entry of an order, substantially in the

form attached hereto as Exhibit 1 (the "Proposed Order"), pursuant to sections 105(a), 363(b), 502(b) and 541 of title 11 of the United States Code (the "Bankruptcy Code"),[1] and Federal Rule of Bankruptcy Procedure ("FRBP") 1001 referring the Mediation Parties (as defined herein) to mediation of the Mediation Matters (as defined herein) and appointing the Honorable Christopher S. Sontchi (Ret.) ("Judge Sontchi") and Hon. Daniel J. Buckley (Ret.) ("Judge Buckley" and together with Judge Sontchi, the "Mediators") as mediators for all issues among the Mediation Parties (including the Official Committee of Unsecured Creditors (the "Committee"), the Debtor and the Debtor's Insurers (as defined below)) and all issues related to the Debtor's insurers and insurance coverage, subject to supplementation or adjustment as may be requested by the Mediation Parties.

This Motion is supported by the accompanying declarations of Judge Sontchi (the "Sontchi Declaration") and Judge Buckley (the "Buckley Declaration," and together with the Sontchi Declaration, the "Mediator Declarations"), each filed concurrently herewith.

In support of this Motion, the Debtor states as follows:

**PRELIMINARY STATEMENT**

From even before this Chapter 11 Case began, the Debtor has openly stated that it has sought relief under the Bankruptcy Code <u>not</u> to avoid its obligations to claimants, but rather to formulate a plan that addresses such obligations while fulfilling the Debtor's mission. When the Debtor began this Chapter 11 Case, there were 537 known separate, active lawsuits and mediation demands pending. The Debtor believes that to achieve an optimal result in this Chapter 11 Case, it must work collaboratively with the major stakeholders in this Chapter 11 Case to negotiate and develop a chapter 11 plan that addresses the claims and concerns of the major stakeholders, namely the Debtor, the Committee (on behalf of claimants) and the Debtor's Insurers.

The Debtor believes that a mediation at this relatively early stage in the Chapter 11 Case increases the likelihood of a successful outcome in this Chapter 11 Case. Given the nature and scope of the insurance coverage believed to exist, the Debtor believes that the participation of the

---

[1] Unless otherwise indicated, all section references in this Motion shall be to the Bankruptcy Code.

Insurers, alongside the Debtor and Committee, will be critical. The Debtor requests an order authorizing and requiring the Mediation Parties to participate in mediation to negotiate a confirmable chapter 11 plan.

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The statutory bases for the relief sought herein are Bankruptcy Code sections 105(a), 363(b), 502(b) and 541 and FRBP 1001.

**BACKGROUND**

2. On August 21, 2023 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate and manage its operations as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On September 1, 2023, the Office of the United States Trustee (the "UST") appointed the Committee under section 1102(a)(1) of the Bankruptcy Code. *See* ECF 58. On October 24, 2023, the Court approved the Committee's employment of Pachulski Stang Ziehl & Jones LLP as counsel. *See* ECF 237.

4. The RCASF was incorporated as a California corporation sole in 1854. The Archdiocese of San Francisco (the "Archdiocese")[2] was canonically established on July 29, 1853, by Pope Pius IX.

5. As of February 20, 2024 (the "Bar Date" as defined in that *Order: (1) Fixing Time for Filing Proofs of Claim; (2) Approving Proof of Claim Forms; (3) Providing Confidential Protocols; and (4) Approving Form and Manner of Notice* [ECF 337] (the "Claims Procedures

---

[2] The term "Archdiocese" is used herein exclusively to refer to geographic territory under the jurisdiction of the RCASF, and the terms RCASF, Debtor, or Debtor in Possession are used herein exclusively to refer to the secular legal embodiment of the Archdiocese.

Order")), 541 Survivor Claimants (as defined in the Claims Procedures Order) have filed confidential Survivor Claims against the Debtor.[3]

6. The RCASF's goals in seeking chapter 11 relief are twofold: (a) to protect and preserve the RCASF's assets that are properly available for distribution to the RCASF's creditors and ensure that assets are marshaled to be distributed equitably to all creditors; and (b) to continue the work of the Catholic Church within the Archdiocese to the fullest extent possible using the resources dedicated to those purposes.

7. The RCASF seeks to negotiate a plan of reorganization as early as practicable that will: (a) provide a process to fully, fairly and expeditiously address the claims of Abuse survivors by a global settlement that includes the RCASF and Non-Debtor Catholic Entities (as defined in that *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions* [ECF 14]); and (b) permit the RCASF to carry on the RCASF's essential ministries and services so the RCASF can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCASF's ministry, education, and charitable outreach.

8. Other diocesan and religious organization cases that have resulted in confirmed reorganization plans provide examples of the terms that are necessary for consensual confirmation of a chapter 11 plan here. In these cases, diocesan and religious debtors confirmed consensual chapter 11 plans after participating in mediation and, in most circumstances, follow a common pattern: Generally, consensual chapter 11 plans are funded from three sources—the debtor's estate, resources of non-debtor entities (including parishes), and insurers—the contributions of which sources fund a trust overseen by a third-party trustee who evaluates and pays valid claims from the trust under the terms of the reorganization plan. Further, in these cases, the reorganization plan provided for a mechanism (the channeling injunction) that enjoined claimants from asserting directly claims against non-debtor entities and insurers; instead, the parties agreed that in exchange for the non-debtor entities' and insurers' contributions to the trust (i.e., the plan

---

[3] As of March 6, 2024, approximately 542 confidential Survivor Claims have been filed against the Debtor.

funding), claimants had to assert any such claims against non-debtor entities and insurers against the trust rather than the non-debtor entities or insurers for administration under the terms of the confirmed plan. In each of these cases, all interested parties, including the debtor, non-debtor entities, insurers, and claimants, participated in the court-ordered mediations in order to reach agreement with respect to contributions by the respective contributing parties.

9. The Debtor has identified the Insurers that have issued policies that may provide coverage for the claims asserted against it by the Survivor Claimants. Such policies are property of the Debtor's bankruptcy estate and cover certain non-debtor entities. The Debtor's insurers and other coverage providers, including the insurance companies relating to the Debtor's historical insurance policies identified in the Debtor's Schedule A/B, at ¶ 73 and Exhibit AB Question 73[4] (collectively, the "<u>Insurers</u>"), are identified on Exhibit 2 to this Motion, together with counsel information, where known, for the scheduled Insurance Policies.

**Claims Bar Date Order**

10. On November 21, 2023, the Court entered its *Order: (1) Fixing Time for Filing Proofs of Claim; (2) Approving Proof of Claim Forms; (3) Providing Confidential Protocols; and (4) Approving Form and Manner of Notice* [ECF 337] (the "<u>Bar Date Order</u>"), which set February 20, 2024 (the "<u>Bar Date</u>"), as the deadline for creditors, including potential Survivor Claimants (as defined in the Bar Date Order) to file claims against the Debtor. As approved by the Bar Date Order, the Debtor has undertaken an extensive effort to provide notice and to coordinate local, regional, and national publication of the Bar Date to creditors, survivors, and other parties in interest.

11. In accordance with the Bar Date Order, the Debtor has provided the Committee and certain Insurers (after review and execution by each of the Claims Confidentiality Agreement approved by the Bar Date Order) with access to confidential claims filed by Survivor Claimants. The Debtor is in the process of analyzing the Survivor Claims (as defined by the Bar Date Order) to prepare for mediation and believes that the Committee and Insurers also are doing the same.

---

[4] *See* ECF [372] (the "<u>Insurance Schedule</u>").

**Mediation Preparation**

12. The Debtor and Committee anticipate material disagreements with respect to the terms of a plan of reorganization, including but not limited to, potential contributions by the Debtor and other Non-Debtor Catholic Entities to fund a global settlement to be implemented under a chapter 11 plan; the value of certain estate property; and the insurance coverage available to compensate claimants. Further, the Debtor and the Committee agree that negotiation of the Mediation Matters (described below) pursuant to a Court-ordered mediation as requested by this Motion may facilitate a consensual resolution of the disputes among the Mediation Parties.

13. The Debtor and the Committee further believe that the proposed Mediators, Judges Sontchi and Buckley, have the requisite background, skills and experience to serve as effective Mediators of the disputes among the Mediation Parties. As set forth in the Mediator Declarations, Judge Sontchi has agreed to charge an hourly rate of $1,500 and to utilize his associate, Sara Beth Kohut, at the hourly rate of $400; and Judge Buckley has agreed to charge an hourly rate of $2,000 for mediation services to be provided to the Debtor's estate. The hourly rates, fees and expenses of the Mediators shall be subject to approval by the Court under Bankruptcy Code section 330.

14. The Debtor circulated to the Insurers the names of certain proposed mediators on February 23, 2024, and the names of Judges Sontchi and Buckley on April 12, 2024. On May 10, 2024, certain Insurers[5] responded to counsel for the Debtor and indicated a preference for the selection of Timothy Gallagher of The Gallagher Law Group as the mediator to mediate disputes among the Mediation Parties related to insurance.

---

[5] The Insurers who have expressed a preference for Mr. Gallagher's appointment as a mediator pursuant to this Motion include: Chicago Insurance Company; Fireman's Fund Insurance Company; Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation; and Appalachian Insurance Company; certain Underwriters at Lloyd's, London and Certain London Market Insurers; St. Paul Fire and Marine Insurance Company; Travelers Casualty and Surety Company; Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America; Pacific Indemnity Company; Westchester Fire Insurance Company as successor in interest to Industrial Underwriters Insurance Company; and First State Insurance Company.

# BASIS FOR ORDERING MEDIATION

15. The Debtor seeks entry of the Proposed Order pursuant to Bankruptcy Code sections 105(a), 363(b), 502(b) and 541 and FRBP 1001 referring the Mediation Matters to mediation and appointing the proposed Mediators.

16. Rule 9044-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California ("B.L.R.") provides that the Court may refer any contested matter or adversary proceeding to its Bankruptcy Dispute Resolution Panel ("BDRP"). "While participation in the BDRP is intended to be voluntary, any Judge, acting *sua sponte* or on the request of a party, may designate specific Matters for inclusion in the program." B.L.R. 9044-1(a).

17. Bankruptcy Code section 105 provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a); *see also In re Atl. Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002) ("There are four potential sources of judicial authority for ordering mandatory non-binding mediation of pending cases, namely (a) the court's local rules, (b) an applicable statute, (c) the Federal Rules of Civil Procedures, and (d) the court's inherent powers."); *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order a party to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), *rev'd on other grounds*, 452 B.R. 374 (Bankr. S.D.N.Y. 2011).

18. Section 502 governs the Court process for allowance and disallowance of claims in a chapter 11 case. Section 541 provides the parameters of what is property of a bankruptcy estate. Section 1334 of title 28 grants the Court exclusive jurisdiction over property of the estate and jurisdiction over all cases under title 11. *See* 28 U.S.C. § 1334. Section 157 of title 28 provides for the Bankruptcy Court's jurisdiction in cases under title 11.[6] *See* 28 U.S.C. § 157.

19. FRBP 1001 provides this Court with the discretion to manage this Chapter 11 Case in a manner that promotes resolution of the parties' disputes insofar as it requires that the FRBP

---

[6] Section 157(b)(2)(B) of title 28 excludes from a "core" proceeding the liquidation or estimation of contingent or unliquidated personal injury tort claims. *See* 28 U.S.C. § 157(b)(2)(B).

be construed "to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001.

20. The Debtor seeks entry of the Proposed Order requiring the Mediation Parties to attempt to mediate in good faith the formulation of material terms and conditions of a consensual plan of reorganization and all related issues, including any disputes related to property of the estate, treatment of claims filed by Survivor Claimants, and insurance coverage for such claims. Targeted negotiations regarding the economic and other terms of a plan of reorganization and related issues, facilitated by experienced mediators such as the proposed Mediators, may permit the Mediation Parties to make progress towards a resolution of this Chapter 11 Case.

21. Virtually all other courts presiding over bankruptcies arising from sexual abuse allegations have ordered parties to mediation. *See, e.g., In re The Roman Cath. Bishop of Santa Rosa,* Case No. 23-10113, (Bankr. N.D. Ca. Mar. 13, 2023); *In re The Roman Cath. Bishop of Oakland*, Case No. 23-40523 (Bankr. N.D. Cal. Jan. 22, 2024) (ECF 810); *In re Norwich Roman Cath. Diocese Corp.,* Case No. 21-20687 (Bankr. D. Conn. Aug. 4, 2022) (ECF 752); *In re Diocese of Rockville Centre, N.Y.*, Case No. 20-12345 (Bankr. S.D.N.Y. Oct. 20, 2021) (ECF 794); *In re Diocese of Camden, N.J.*, Case No. 20-21257 (Bankr. D.N.J., May 20, 2021) (ECF 640); *In re USA Gymnastics*, Case No. 18-09108 (Bankr. S.D. Ind. May 17, 2019) (ECF 514); *Roman Cath. Church of the Archdiocese of Santa Fe*, Case No. 18-13027 (Bankr. D.N.M. Sept. 9, 2019) (ECF 252); *In re Roman Cath. Bishop of Great Falls Mont.*, Case No. 17-60271 (Bankr. D. Mont. Jul. 26, 2017) (ECF 159); *In re The Diocese of New Ulm*, Case No. 17-30601 (Bankr. D. Minn. Mar. 23, 2017) (ECF 41); *In re Diocese of Duluth*, Case No. 15-50792 (Bankr. D. Minn. Mar. 10, 2016) (ECF 70); *In re The Roman Cath. Bishop of Stockton*, Case No. 14-20371 (Bankr. E.D. Cal. Feb. 3, 2014) (ECF 113).

**Mediation Parties**

22. The proposed participants in the mediation (the "Mediation Parties") are:

    a) the Debtor;

    b) the Committee;

    c) the Debtor's Insurers and other coverage providers, including the insurance

companies relating to the Debtor's historical insurance policies identified in the Insurance Schedule;

  d) the Non-Debtor Catholic Entities, including all entities for whom the Debtor will require protection for it to exit this Chapter 11 Case;[7]

  e) the unknown claimants' representative, once appointed; and

  f) any other person or entity that the Mediator or the Mediation Parties determine is necessary or appropriate for mediation. For each of the Mediation Parties, individual representatives shall be available to participate as directed by the Mediator, including in person meetings if required by the Mediator.

**Selection of Mediators**

23. The Debtor and the Committee have agreed upon, and respectfully request the appointment of Judges Sontchi and Buckley as Mediators. The Debtor and the Committee believe this Chapter 11 Case would benefit from the appointment of these two mediators because each of the proposed Mediators has special experience and skills applicable to this matter. Judge Sontchi has extensive experience resolving large chapter 11 bankruptcy cases, including the Diocese of Wilmington chapter 11 case; and Judge Buckley has extensive experience resolving claims of sexual abuse in cases with one to five plaintiffs who allege sexual abuse claims against schools, churches, and hospitals.

24. Judge Sontchi's background and qualifications are set forth in his *curriculum vitae* attached to the Sontchi Declaration as Exhibit 1. Judge Sontchi is a retired U.S. Bankruptcy Judge for the District of Delaware (the "Delaware Bankruptcy Court") and an accomplished mediator with experience mediating large chapter 11 bankruptcy cases, including mass tort bankruptcy disputes. After retiring from the Delaware Bankruptcy Court, Judge Sontchi has been appointed mediator in the pending Oakland and Ogdensburg diocese chapter 11 cases. The Debtor and the Committee selected Judge Sontchi after an extensive search of potential mediators and in consultation with the other Mediation Parties and believe that he is best suited to mediate the

---

[7] The Debtor notes that Committee disputes that the Non-Debtor Catholic Entities are separate from the Debtor and reserves all rights to seek a court determination as to the status of such entities.

Mediation Matters (set forth below) to a successful resolution. As further set forth in the Judge Sontchi Declaration, he is a disinterested person and eligible to be employed by the Debtor pursuant to Bankruptcy Code section 327(a).

25. Judge Buckley's background and qualifications are set forth in his *curriculum vitae* attached as Exhibit 1 to the Buckley Declaration. Judge Buckley has served as a mediator since 2022 and has extensive experience conducting mediations in a wide range of case types. Additionally, Judge Buckley regularly mediates mass tort and clergy sexual abuse matters across the country. While a judge of the Superior Court of California, County of Los Angeles, he conducted numerous mandatory settlement conferences on behalf of his colleagues. Notably, Judge Buckley assisted in the settlement of a number of large, high-profile lawsuits, including Riot Games (a high profile class action case with allegations of equal pay accusations) and mass tort lawsuits, including cases against (a) the University of Southern California and its Board of Trustees (allegations of assault, abuse, sexual harassment, and medical malpractice against Dr. George M. Tyndall while Dr. Tyndall was employed by USC), and (b) the Regents of the University of California (allegations of assault and abuse against Dr. James M. Heaps while Dr. Heaps was employed by UCLA). Currently, he serves as a mediator in the global mediation proceedings pending in connection with multiple pending state court actions alleging liability against the Archdiocese of Los Angeles, the Roman Catholic Bishop of Orange, the Diocese of Monterey, and Jesuits West Province for assault, sexual abuse, and harassment. The Debtor and the Committee selected Judge Buckley after an extensive search of potential mediators and in consultation with the other Mediation Parties and believe that he is best suited to mediate the Mediation Matters to a successful resolution. As further set forth in the Buckley Declaration, Judge Buckley is a disinterested person and eligible to be employed by the Debtor pursuant to Bankruptcy Code section 327(a).

**Identification of Mediation Matters**

26. The Debtor requests that the following matters may be referred to mediation (the "Mediation Matters"):

    a)     Terms of a consensual chapter 11 plan of reorganization;

      b)      Terms of a channeling injunction to benefit any party making a contribution to the chapter 11 plan of reorganization;

      c)      The resolution of any disputes related to coverage or alleged coverage provided by any of the Insurers;

      d)      Assessment of claim credibility, valuation and the Debtor's potential legal liability for the Abuse Claims (as defined in the Bar Date Order);

      e)      Contributions by the Debtor, Non-Debtor Catholic Entities, and Insurers to fund any reorganization plan;

      f)      Development of a claims submission and evaluation process for administration of future claims by a post-confirmation trust;

      g)      Payment of claims issues including future claims of currently unknown claimants;

      h)      Non-monetary plan provisions; and

      i)      The resolution of any other issue necessary to determine the rights of the parties to reach agreement on the terms of a confirmable consensual plan of reorganization.

27.      The Debtor believes that the Mediators, once appointed, should determine, among other things, the schedule for the mediation, the participation (or non-participation) of certain Mediation Parties based on the topics/issues to be covered. The Mediators will have the ability to consider all of the Mediation Parties' positions on the process by which the mediation will take place and formulate the best course of action.

28.      The Debtor proposes that the Debtor and the Insurers pay for the fees and expenses of the Mediators. The Debtor will update the Court as to any agreement with the Insurers to share costs as soon as practicable.

29.      To facilitate a productive mediation, the Proposed Order provides that any communications, evidence, or other information exchanged with the Mediators will be treated as confidential by all Mediation Parties, unless otherwise expressly stated, and that neither the Mediators nor any of the Mediation Parties can be compelled to turn over any such information or otherwise testify regarding same. The Proposed Order further contemplates that this Court will authorize the Mediators to issue instructions to the Mediation Parties on their participation in the mediation of the Mediation Matters and the procedure to be followed, and it requires the Mediation Parties to follow all such instructions and procedures unless otherwise ordered by this Court.

30. The Proposed Order further clarifies that the mediation shall be non-binding and the Mediators shall not have authority to render a decision that shall bind the Mediation Parties except as discussed above in paragraph 29. Likewise, no Mediation Party shall be bound by mediation negotiations without a signed written agreement that has been approved by this Court under Bankruptcy Rule 9019. Finally, the Proposed Order further clarifies that participation in the mediation will not require disclosure of privileged information nor prejudice the Mediation Parties' rights to assert any rights or claims not resolved by an agreement.

31. The Debtor respectfully submits that good cause exists to refer the Mediation Matters to mediation. For these reasons, mediation will benefit the Debtor's estate, its creditors, and all parties in interest. Accordingly, the Debtor respectfully requests that the Court enter an order, in substantially the form presented by the Proposed Order, appointing the Mediators and directing the Mediation Parties to participate in the mediation.

32. Notice of this Motion and the Motion have been served on the limited service list authorized by this Court and each of the Mediation Parties' counsel. Insurers or other parties that have not already appeared in the Chapter 11 Case through counsel have been served with Notice of this Motion and the Motion in accordance with Bankruptcy Rule 7004(b)(4).

**RESERVATION OF RIGHTS**

33. Nothing contained in this Motion is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a promise to pay any claim, (iii) a waiver of the Debtor's or any Mediation Party's rights to dispute any claim, or (iv) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

34. Nothing contained in this Motion is intended to be or shall be construed as a waiver of any of the Debtor's rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution of the State of California, California Corporations Code §§ 10000-10015, *et seq.*, the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb-2000bb-4), the church autonomy doctrine, charitable trust law, California trust law, or the Debtor's rights under any insurance policies and

to proceeds thereof, or the Debtor's rights to object to disclosure of information and contend that certain assets discussed in this Motion are not property of its estate. The Insurers and the Committee likewise reserve all of their respective rights.

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: May 15, 2024  FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By: */s/ Paul J. Pascuzzi*
PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY

Attorneys for The Roman Catholic Archbishop of San Francisco

Dated: May 15, 2024  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Ori Katz*
ORI KATZ
ALAN H. MARTIN

Attorneys for The Roman Catholic Archbishop of San Francisco

# Exhibit 1

[Proposed Order]

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and<br>Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**[PROPOSED] ORDER REFERRING CASE TO MEDIATION AND APPOINTING MEDIATOR**<br><br>Date: June 13, 2024<br>Time: 1:30 p.m.<br>Location: via Zoom<br>Judge: Hon. Dennis Montali |

The Court having reviewed and considered the motion of The Roman Catholic Archbishop of San Francisco, debtor and debtor in possession (the "Debtor"), for entry of an order pursuant to sections 105(a), 363(b), 502(b) and 541 of title 11 of the United States Code (the "Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure ("FRBP") 1001 referring certain Mediation Parties (described below)[1] to a mediation of the Mediation Matters (described below) and appointing the Hon. Christopher S. Sontchi (Ret.) and the Hon. Daniel J. Buckley (Ret.) (together, the "Mediators") as mediators to mediate the Mediation Matters on regular notice, and the Court having found that notice given of the Motion is appropriate under the circumstances and good cause appearing,

---

[1] Capitalized terms used herein but not defined shall have the meaning set forth in the Motion filed on _____ at ECF \_\_\_.

IT IS HEREBY ORDERED:

1. The Motion is GRANTED as set forth in this Order;

2. <u>Mediation Parties</u>. The proposed participants in the mediation (the "<u>Mediation Parties</u>"),[2] through their respective counsel, are:

   (a) the Debtor;

   (b) the Committee;

   (c) the Debtor's Insurers and other coverage providers, including the insurance companies relating to the Debtor's historical insurance policies identified in the Insurance Schedule;

   (d) the Non-Debtor Catholic Entities;

   (e) the unknown claimants' representative, once appointed; and

   (f) any other person or entity that the Mediator or the Mediation Parties determine is necessary or appropriate for mediation.

3. <u>Mediation Matters</u>. The following matters are hereby referred to mediation:

   (a) Terms of a consensual chapter 11 plan of reorganization;

   (b) Terms of a channeling injunction to benefit any party making a contribution to the chapter 11 plan of reorganization;

   (c) The resolution of any disputes related to coverage or alleged coverage provided by any of the Insurers;

   (d) Assessment of claim credibility, valuation and the Debtor's potential legal liability for the Abuse Claims (as defined in the Bar Date Order);

   (e) Contributions by the Debtor, Non-Debtor Catholic Entities, and Insurers to fund any reorganization plan;

   (f) Development of a claims submission and evaluation process for administration of unknown claims by a post-confirmation trust;

   (g) Potential issues related to payment of claims;

   (h) Non-monetary plan provisions; and

   (i) The resolution of any other issue necessary to determine the rights of the parties to reach agreement on the terms of a confirmable consensual plan of reorganization.

4. <u>Mediators</u>. Judges Sontchi (Ret.) and Buckley (Ret.) are appointed as the Mediators to mediate the Mediation Matters.

---

[2] Additional parties may participate in the Mediation and will be bound by the terms of this Order.

5. <u>Non-Binding Nature of Mediation.</u>

    a. The Mediation shall be non-binding and the Mediators shall not have authority to render a decision that shall bind the Mediation Parties.

    b. No Party shall be bound by anything said or done during the Mediation unless and until either a written and signed stipulation is entered into, or the Mediation Parties enter into a written and signed agreement, which shall be subject to this Court's approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure, upon application, notice, and hearing.

6. <u>Mediation Procedures.</u>

    a. <u>Mediation Meetings, Confidential Statements.</u> The Mediation shall take place on such date(s) and location(s) to be determined and noticed by the Mediators after consulting with counsel for the Mediation Parties. The Mediators shall have the authority to establish the time for all Mediation activities, including joint and private meetings between the Mediators and Mediation Parties during the course of the Mediation. The Mediation Parties shall submit a confidential mediation statement to the Mediator as directed by the Mediators and containing such information as requested by the Mediators.

    b. <u>Attendance by Persons with Settlement Authority.</u> In addition to counsel, a representative of each of the Mediation Parties shall personally attend the Mediation meeting(s) either in person or via video conference subject to the directions of the Mediators; such representatives must have complete authority to negotiate and settle all disputed issues and amounts.

    c. <u>The Mediation Procedure, and Good Faith Participation.</u> The Mediators shall have authority to control all procedural aspects of the Mediation(s), including when the Mediation Parties will meet jointly and/or separately with the Mediator(s), and whether meetings shall be by telephone, video conference, or in person. The Mediators may require Mediation Parties to sign a mediation agreement as may be reasonably required to promote the Mediation, except that any such supplemental agreement shall be consistent with and subject in all respects to the terms of this order. The Mediators may report to the Court any willful failure to attend or participate in good

faith in the mediation process or mediation conference. Such failure may result in the imposition of sanctions by the Court.

        d.    <u>No Prejudice from Participation in Mediation.</u> Participation by any party in the Mediation will not prejudice their rights with respect to any disputed issue in the Chapter 11 Case, and all such rights, to the extent they existed prior to this Order, are preserved and may be exercised consistent with any order of the Court. This includes, without limitation, the Mediation Parties' rights (if any) to (a) seek a judicial determination from this Court with respect to any issue that may arise during the Mediation requiring judicial resolution; (b) contest the jurisdiction of the Bankruptcy Court; (c) contest the entry of final orders or judgments by the Bankruptcy Court; (d) withdraw the reference; or (e) demand arbitration or a trial by jury.

    7.    <u>Modification of Mediation Procedures and Addition of Mediation Parties</u>. The Mediators may establish requirements or procedures for the Mediation as the Mediators deem necessary or appropriate, or as agreed upon by the Mediation Parties and Mediators, in addition to the procedures described in the order ("<u>Mediation Procedures</u>"). Any party who participates in the mediation process either voluntarily or by Court order will be bound to the Mediation Procedures and all provisions of this order as if they were a named Mediation Party. Furthermore, Mediation Parties added by stipulation or by order of the Court may be compelled to attend the Mediation by the Mediator.

    8.    <u>Report of Result of the Mediation.</u> After the Mediation concludes, the Mediators will report to this Court's chambers staff whether the Mediation resulted in a settlement.

    9.    <u>Confidentiality</u>. There shall be an absolute mediation privilege, and all communications during the Mediation shall be confidential, protected from disclosure and shall not constitute a waiver of any existing privileges and immunities, shall not be disclosed to any third party for any reason, and shall not be used for any purpose other than Mediation. Submissions to the Mediators shall not be delivered to anyone else without the consent of the submitting party. Any statements made by the Mediators, any of the Mediation Parties, or other parties that participate in the mediation process shall not be divulged by any of the participants in the Mediation (or their attorneys, representatives, or agents) or by the Mediators to the Court or to any third party. Except

for an executed settlement agreement, all records, reports, or other documents received or made by the Mediators while serving such capacity shall be confidential and shall not be provided to the Court. The Mediators and each participant or party to the Mediation shall not be compelled to divulge any records, reports, or other documents shared in the Mediation, and shall not be compelled to testify in regard to the Mediation in connection with any arbitral, judicial or other proceeding, including any hearing held by this Court. Notwithstanding anything in Federal Rule of Evidence 408 to the contrary, no person may rely on or introduce as evidence in connection with any arbitral, judicial or other proceeding, including any hearing held by this Court, any aspect of the Mediation effort, including but not limited to (a) views expressed or suggestions made by any of the Mediation Parties, or the Mediators, with respect to a possible settlement of the Dispute; (b) statements or admissions made by any of the Mediation Parties in the course of the Meditation and (c) proposals made or views expressed by the Mediators, or any of the Mediation Parties. Nothing in this paragraph, however, precludes a report to the Court of (i) whether a settlement was reached or (ii) any material failure on the part of one or more of the Mediation Parties to comply with the party's obligations under this order. Further, nothing in this paragraph makes a document or other information confidential that was received or developed by a Mediation Party without an obligation of confidentiality that relates to the Mediation. The Mediators and Mediation Parties may agree on confidentiality provisions in addition to those stated in this Order.

10. <u>Discovery</u>. The Mediation Parties shall cooperate in pre-mediation discovery. If a discovery dispute arises that cannot be resolved by the Mediators or negotiation among the Mediation Parties involved, the complaining party may file with the Court and serve a discovery dispute letter not to exceed 5 pages. The complaining party shall contact chambers and notify the Court of the fact that the letter has been filed. The Court will then notify the parties about any response or hearing to address the relief requested. The Court may hold hearings on shortened time on any discovery dispute. The Court expects the Mediation Parties to obtain such information as they may deem reasonable to participate meaningfully in the Mediation. Any discovery ordered by the Court will not be subject to the mediation privilege. Moreover, nothing in this Order shall limit

Case: 23-30564   Doc# 635   Filed: 05/15/24   Entered: 05/15/24 21:43:53   Page 18 of 20

a party's right to seek an order under Bankruptcy Rule 2004 compelling the production of documents.

11. <u>No Impairment of Privileges.</u>  Notwithstanding any provision of this Order to the contrary, nothing contained in this Order shall require any Mediation Party to produce documents or information that are subject to attorney-client privilege, attorney work product, or any other legally recognized privilege.

12. <u>Immunity.</u>  The Mediators, as Court appointed mediators, shall be immune from claims arising out of acts or omissions incident to the Mediators' services rendered in connection with the Mediation.

13. <u>Compliance with Bankruptcy Code and Rules.</u>  Nothing in this Order shall relieve any of the Mediation Parties or any other party in interest from complying with applicable requirements of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, such as requirements for obtaining court approval of any compromises of controversies, stipulated stay relief or adequate protection, or sales of property outside the ordinary course of business.

14. <u>Modification of the Mediation Process</u>.  The Court reserves jurisdiction to modify this Order, including the identification of Mediation Parties, Mediated Matters, and the appointment of additional or different mediator(s).  Any of the Mediation Parties may at any time file a motion with the Court to withdraw from, suspend, and/or terminate the Mediation for cause.

15. <u>No Effect on Insurance Rights or Obligations</u>.  Notwithstanding any provisions of this Order to the contrary, nothing contained in this Order shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the Mediation Parties' rights or obligations under any insurance coverage that is the subject of the Mediation or otherwise.

16. <u>Employment and Compensation of the Mediators.</u>  The Debtor is authorized to employ and retain, under section 327(a) of the Bankruptcy Code, Judges Sontchi and Buckley as Mediators in this Chapter 11 Case, as described above, and the Mediators are hereby authorized to perform any and all such necessary and appropriate mediation services for the Debtor in this Chapter 11 Case.

Case No. 23-30564
MOTION FOR ENTRY OF MEDIATION ORDER – Ex. 1
-6-

Case: 23-30564   Doc# 635   Filed: 05/15/24   Entered: 05/15/24 21:45:53   Page 19 of 20

17. Judge Sontchi shall charge the Debtor's estate for his services in accordance with his hourly rate as set forth in the Motion and shall maintain detailed records of all actual, necessary and appropriate costs and expenses incurred in connection with the aforementioned professional services. As set forth in the Motion, Sara Beth Kohut may assist Judge Sontchi in connection with the services to be provided to the Debtor's estate, in the ordinary course of Ms. Kohut's employment with Sontchi, LLC. Similarly, Judge Buckley shall charge the Debtor's estate for his services in accordance with his hourly rate as set forth in the Motion and shall maintain detailed records of all actual, necessary and appropriate costs and expenses incurred in connection with the aforementioned professional services.

18. The Mediators shall apply for the allowance of their respective fees and reimbursement of their respective expenses in conformity with sections 330 and 331 of the Bankruptcy Code, and applicable provisions of the Bankruptcy Rules, B.L.R., and any order of this Court regarding compensation. Payment of the Mediators' allowed fees and expenses will be shared equally (50% each) by the Debtor's estate and the Insurers.

19. <u>Post Confirmation Employment of Mediator(s).</u> Unless all Mediation Parties otherwise agree, the Mediators shall not be eligible for post-confirmation employment by any trust or similar organization formed pursuant to a plan of reorganization in this Chapter 11 Case for the purposes of resolving and/or liquidating abuse claims.

20. The Court retains discretion to modify any aspect of this Order and retains exclusive jurisdiction to hear and determine all matters arising from the implementation or interpretation of this Order.

*** END OF [PROPOSED] ORDER ***