PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
  WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Telephone:     (916) 329-7400
Facsimile:     (916) 329-7435
Email:         ppascuzzi@ffwplaw.com
               jrios@ffwplaw.com
               tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     (415) 434-9100
Facsimile:     (415) 434-3947
Email:         okatz@sheppardmullin.com
               amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop of
San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>       Debtor and<br>       Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>Date:     June 13, 2024<br>Time:    1:30 p.m.<br>Location: Via ZoomGov<br>Judge:   Hon. Dennis Montali |

**DEBTOR'S THIRD MOTION FOR ORDER EXTENDING EXCLUSIVITY PERIODS [11 U.S.C. § 1121(d)]**

-1-
Case No. 23-30564
THIRD MOTION FOR EXTENSION
OF EXCLUSIVITY PERIODS

The Roman Catholic Archbishop of San Francisco ("RCASF" or "Debtor"), the Debtor and debtor in possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), hereby files this third motion (the "Motion") for entry of an order extending for an additional approximately three months the exclusive period of time during which only the Debtor may file a plan of reorganization and the exclusive period of time to solicit acceptances thereof, without prejudice to the Debtor's right to seek further extensions of these periods. In support of this Motion, the Debtor relies upon the *Declaration of Fr. Patrick Summerhays* filed in support of this Motion ("Summerhays Decl."), the *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions* (ECF No. 14) ("Passarello Background Decl."), and the *Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and Debtor's Emergency Motions* (ECF No. 15) ("Gaspari Decl."), the court filings in this case and the following points and authorities. The Debtor informed the Committee through counsel that this Motion would be filed and the extension requested.

## JURISDICTION

This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory basis for relief is 11 U.S.C. § 1121(d).[1]

## RELIEF REQUESTED

By this Motion, the Debtor asks the Court for entry of an order extending the exclusivity periods within which Debtor has the exclusive right to propose a plan (which currently expires on June 25, 2024) and obtain acceptance of such a plan (which currently expires on August 26, 2024),

///

---

[1] The Debtor does not, by filing its petition for relief and other documents in this bankruptcy case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution for the State of California, California's law on corporations sole (California Corporations Code §§ 10000-10015), the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, California trust law, and the rights to object to disclosure of information and to contend that certain assets are not property of the estate.

until September 27, 2024 (94 days), and November 29, 2024 (95 days), respectively. Attached hereto as **Exhibit A** is a proposed form of order.

## SUMMARY OF POSTPETITION BANKRUPTCY EVENTS

1. Since August 21, 2023 (the "Petition Date"), the Debtor has established itself as a debtor in possession and successfully navigated the early stages of the Chapter 11 case, including: (i) completed schedules have been filed, (ii) the first meeting of creditors has been conducted, (iii) all first day motions have been granted, and (iv) the court authorized the employment of professionals for the Debtor and the Official Committee of Unsecured Creditors ("Committee"). Summerhays Decl. ¶ 4.

2. On November 16, 2023, the RCASF filed its initial motion for order extending exclusivity periods (ECF No. 317) and the order granting the motion was entered on the Court's docket on December 14, 2023 (ECF No. 366).

3. On February 8, 2024, the RCASF filed its second motion for an order extending the exclusivity periods (ECF No. 459) and the order granting the motion was entered on the Court's docket on March 5, 2024 (ECF No. 532).

4. The Debtor obtained approval of an extensive claims bar date notice procedure by order dated November 21, 2023 (ECF No. 337) ("Bar Date Order"). The Debtor implemented the extensive noticing procedures for the February 20, 2024, claims bar date. See Notices at ECF No. 349, 350. For "Permitted Parties" that have executed the court-approved confidentiality agreement, the Debtor has provided access to the filed confidential Survivor Proofs of Claim. The Debtor's statement and summary of steps taken to comply with the Bar Date Order was filed on April 15, 2024 (ECF No. 587). Summerhays Decl. ¶ 5.

5. The Debtor and the Committee met and conferred extensively relating to the form of a detailed Stipulated Protective Order (ECF No. 374), which governs the production of records to the Committee in response to the Committee's Rule 2004 requests. The Debtor has been meeting and conferring and producing documents on a rolling basis, including confidential documents, requested by the Committee as part of the parties' preparation for an expected mediation. Given the extensive breadth of the Committee's document requests, a significant amount of resources are

being devoted to this task. At the Committee's insistence, the Debtor also has been facilitating the production of affiliate discovery on a rolling basis. Summerhays Decl. ¶ 6. Notwithstanding these voluntary productions, the Committee recently filed an additional ex parte application under Bankruptcy Rule 2004 (ECF No. 630) seeking to compel testimony and production of documents from the Debtor and certain non-debtor affiliates on topics already covered by the initial application. The Debtor has reviewed that application and expects to meet and confer with the Committee.

6. The Debtor also has met and conferred with the insurers regarding their ex parte application under Bankruptcy Rule 2004 (ECF No. 571). On April 4, 2024, and April 8, 2024, the Committee and Debtor filed oppositions to the insurer's *ex parte* application (ECF No. 573 and 580). As set forth in the Status Report (ECF No. 591), the insurers and Debtor have made progress towards resolving the issues relating to the 2004 application.[2]

7. The Debtor and the Committee have met and conferred extensively relating to a motion for entry of an order referring parties to global mediation, the selection of a mediator(s), and granting related relief. Summerhays Decl. ¶ 7. Drafts of the motion have been prepared and shared with the Committee. The Debtor and the Committee have reached consensus on the identity of the two mediators. The Debtor circulated to the insurers the names of certain proposed mediators on February 24, 2024, and the names of the two mediators the Debtor and the Committee agreed upon on April 12, 2024. On May 10, 2024, the Debtor received a communication from certain insurers suggesting a different mediator, which communication has been passed on to the Committee. The Debtor anticipates that the motion to refer to mediation will have been filed prior to the hearing on this motion.

8. To some extent, the Debtor benefits from the experience of other dioceses who preceded the Debtor into Chapter 11. Of the approximately 32 Chapter 11 diocesan or religious organization cases filed prior to the Debtor's filing that have proceeded through plan confirmation,

---

[2] As noted in the status report, the Debtor and insurers are meeting and conferring over the insurers' requests to modify the existing protective order.

-4- Case No. 23-30564
THIRD MOTION FOR EXTENSION OF EXCLUSIVITY PERIODS

Case: 23-30564 Doc# 638 Filed: 05/16/24 Entered: 05/16/24 10:29:30 Page 4 of 15

approximately 22 of those cases have resulted in consensually confirmed reorganization plans. In virtually all of those cases, terms for a consensual reorganization plan were reached following a mediation process in which the Debtor, Non-Debtor Entities, Insurers and the Creditors' Committee representing the interests of survivors of sexual abuse participated. Similarly, two other pending diocese cases pending in this District that have not yet reached plan confirmation filed by the Roman Catholic Bishop of Santa Rosa and the Roman Catholic Bishop of Oakland are proceeding on a similar course. The Debtor is working to expeditiously advance this process to determine the parties' interests and contributions to fund a plan to provide recovery for creditors. Until those issues are resolved, the Debtor will not be in a position to file a proposed reorganization plan.

9. The Debtor believes that the relief requested is necessary and appropriate given the stage of the case, the complexity of the case, the steady progress in the post-petition management of the case, and the progress toward developing a process to facilitate a plan of reorganization. Summerhays Decl. ¶ 8. The requested relief is without prejudice to the: (a) Debtor's right to seek further extensions and the rights of parties in interest with standing to oppose such requests, and (b) rights of parties in interest with standing to seek to shorten or terminate Debtor's exclusivity periods and Debtor's right to oppose such requests.

**BACKGROUND OF THE DEBTOR AND THE BANKRUPTCY CASE**

10. On the Petition Date, the Debtor commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code (ECF No. 1). The Debtor continues to operate its businesses and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Bankruptcy Case. On September 1, 2023, the Office of the United States Trustee for the Northern District of California appointed a statutory committee of unsecured creditors ("Committee") in this case pursuant to section 1102 of the Bankruptcy Code (ECF No. 58).

11. The RCASF filed this Bankruptcy Case to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCASF and bring healing to

-5- Case No. 23-30564
Case: 23-30564   Doc# 638   Filed: 05/16/24   Entered: 05/16/24 10:29:30   Page 5 of 15
THIRD MOTION FOR EXTENSION OF EXCLUSIVITY PERIODS

survivors, parishioners and others affected by past acts of sexual abuse. Summerhays Decl. ¶ 4. The RCASF requires the Bankruptcy Court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of the claims against it, including the claims by survivors of abuse, trade creditors, and others, while continuing its ministries and support it offers to Catholic parishes and communities. *See* Passarello Background Decl. ¶ 60-61.

12. Until recently, the RCASF has maintained financial viability while funding compensation for survivors and continued litigation regarding claims of abuse. Passarello Background Decl. ¶ 52. However, there are currently approximately 537 lawsuits against the RCASF. *Id*. ¶ 53. The projected demands in these cases are likely to exceed RCASF's assets, thus necessitating this bankruptcy. *Id*. ¶ 56. The RCASF is a not-for-profit religious organization and while it does have significant resources including insurance, these resources could be inadequate to respond to over 500 lawsuits. *Id*. Thus, the hundreds of lawsuits put the RCASF in immediate and dire financial distress and in need of a forum to resolve these claims while continuing to serve the faithful and those in need. *Id*.

13. The RCASF's goals in seeking chapter 11 relief are twofold: (a) to protect and preserve the RCASF's assets that are properly available for distribution to the RCASF's creditors and ensure that assets are marshaled to be distributed equitably to all creditors; and (b) to continue the work of the Church within the Archdiocese, to the fullest extent possible, using the resources dedicated to those purposes. *Id*. ¶ 62. The RCASF seeks to negotiate a plan of reorganization as early as practicable which will: (a) allocate the RCASF's remaining assets fairly among the legitimate competing interests for such property; (b) provide a process to fully, fairly and expeditiously liquidate claims of survivors; and (c) permit the RCASF to carry on the RCASF's essential ministries and services so the RCASF can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCASF's ministry, education, and charitable outreach. *Id*. ¶ 63.

14. The Debtor continues to seek a global mediation process and expects to file a motion to refer the parties to mediation soon. The Debtor is in the early stages of the case and working to build a foundation for a plan of reorganization. It is actively taking steps to develop a plan of

-6-

Case No. 23-30564
THIRD MOTION FOR EXTENSION OF EXCLUSIVITY PERIODS

reorganization with its constituents. This Chapter 11 Case is large and complex. The Debtor's estate includes substantial claims and assets to be administered. The Debtor has been working expeditiously with the Committee and other key stakeholders, including the Debtor's insurers, to begin toward the path to develop a consensual plan to emerge from chapter 11. However, this case remains in the early stages and additional time is needed to explore potential outcomes.

## LEGAL ARGUMENT

### A. Legal Standard

15. Section 1121(b) of the Bankruptcy Code provides that a debtor has the exclusive right to file a plan of reorganization for an initial period of 120 days after commencement of its Chapter 11 case (the "Exclusivity Period"). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan of reorganization within the 120-day initial period under section 1121(b), the debtor has 180 days after commencement of the Chapter 11 case within which to solicit and obtain acceptances of its plan, during which time competing plans may not be filed by any party in interest (the "Exclusive Solicitation Period"). The Debtor's initial Exclusivity Period and Exclusive Solicitation Period (collectively, the "Exclusive Periods") were originally set to expire on December 19, 2023, and February 20, 2024, respectively. These Exclusive Periods were extended by order of the Court (ECF No. 366) to March 21, 2024, and May 23, 2024, respectively. These Exclusive Periods were further extended by order of the Court (ECF No. 532) to June 25, 2024, and August 26, 2024, respectively.

Section 1121(d)(1) of the Bankruptcy Code provides:

> Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1). The Debtor notes that Bankruptcy Code section 1121(d)(2) provides that any such extension cannot extend beyond 18 months after the Petition Date for the 120-day period and 20 months after the Petition Date for the 180-day period. The relief requested by the Debtor in the Motion does not exceed these restrictions.

16. The Exclusive Periods under Bankruptcy Code section 1121 are intended to afford a debtor a meaningful opportunity to develop and confirm a consensual plan of reorganization. *See In re Ames Dep't Stores, Inc.*, 1991 U.S. Dist. LEXIS 17074, at *8, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors"). The Bankruptcy Code does not define "cause" for an extension of the Exclusive Periods. However, the legislative history of section 1121(d) indicates that the initial 120-day period established by section 1121(b) merely represents a baseline from which bankruptcy courts are free to deviate, particularly in complex cases such as that of the Debtor:

> The court is given the power . . . to increase or reduce the 120-day period depending on the circumstances of the case. For example, if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1977).

17. Extensions of the Exclusive Periods are matters committed to the discretion of the Court. *First Am. Bank of New York v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Courts have developed a list of several factors to consider in determining whether a debtor has had an adequate opportunity to negotiate a Chapter 11 plan and thus whether cause exists to extend the Exclusive Periods under Bankruptcy Code section 1121(d). Those factors are:

(a) the size and complexity of the case;

(b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(c) the existence of good faith progress toward reorganization;

(d) the fact that the debtor is paying its bills as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in negotiations with its creditors;

(g) the amount of time which has elapsed in the case;

(h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(i) whether an unresolved contingency exists.

*In re Adelphia Communications Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).

18. Although a court need not find the existence of each and every one of these factors to justify an extension of the Exclusive Periods, taken as a whole, these factors favor granting the Debtor its requested extension of the Exclusive Periods.

**B. Cause Exists to Extend the Exclusive Periods**

19. As discussed in more detail below, the factors cited above support granting the Debtor's request for a 94-day and 95-day extension of the Exclusive Periods.

*Factor 1: Size and Complexity of the Case*

20. In order to move forward with a plan of reorganization, certain complex issues must first be resolved. The Debtor has timely taken steps to put itself in a position to formulate a plan of reorganization. The bar date for Survivor Claims has been established and passed. As such, parties in interest have been analyzing the survivor claims and the available insurance coverage for such claims. The Debtor contends that the limited estate resources should not be consumed with extensive discovery and litigation and, the interests of all parties are served by progressing toward a global mediation process. Consequently, this factor supports granting the requested extension.

*Factors 2; 3; 5 and 6: Time to Permit the Debtor to Negotiate a Plan of Reorganization; Good Faith Progress Toward Reorganization; Prospects of Filing a Viable Plan; Progress in the Debtor's Negotiations with Creditors*

21. In each diocesan bankruptcy where a plan of reorganization has been confirmed, the plan confirmed by the bankruptcy court was a pot plan negotiated among the interested parties in the case which settled disputes over insurance coverage, property of the bankruptcy estate, and estimated claims of survivors. The Debtor intends to propose a similar type of pot plan. The process generally takes over a year. Key to the achievement of this goal is progress toward a process to resolve the amount and nature of claims, and available insurance coverage.

22. Since the inception of this case, the Debtor has steadily progressed in good faith towards reorganization. For instance, the Debtor has (i) filed its schedules of assets and liabilities and statement of financial affairs, (ii) filed a motion to approve claims procedures and a deadline for filing claims, (iii) filed numerous motions to allow the Debtor to comply with its postpetition

Case: 23-30564    Doc# 638    Filed: 05/16/24    Entered: 05/16/24 10:29:30    Page 9 of 15

obligations as a Debtor in Possession, and (iv) actively worked with the parties in the case to lay the groundwork for plan negotiations. The Debtor has been meeting and conferring and producing documents on a rolling basis, including confidential documents, requested by the Committee as part of the parties' preparation for an expected mediation. Given the extensive breadth of the Committee's document requests, a significant amount of resources have been and are being devoted to this task. At the Committee's request and insistence, the Debtor has also been facilitating the production of affiliate discovery on a rolling basis. The Debtor has also met and conferred with the insurers regarding their ex parte application under Bankruptcy Rule 2004 (ECF No. 571). On April 4, 2024, and April 8, 2024, the Committee and Debtor filed oppositions to the insurer's ex parte application (ECF Nos. 573, 580). As set forth in the Status Report (ECF No. 591), the insurers and Debtor have made progress towards resolving the issues relating to the 2004 application.

23. Additionally, the Debtor has engaged with the Committee and insurers to establish mediation parameters. The Debtor expects to have filed its motion to refer the plan development process to mediation before the hearing on this motion, with a joinder by the Committee.

24. The Debtor is seeking an extension of the Exclusive Periods to focus on resolving key issues that will make formulating a plan of reorganization and proceeding to mediation possible, while continuing to maintain an open dialogue with its creditor constituencies. The good faith progress toward resolving the issues that need to be resolved before a plan can be proposed and, the prospects of a viable plan support granting the requested extension.

*Factor 4: Payment of Obligations as They Become Due*

25. Since the Petition Date, the Debtor has been paying its debts as they have come due. *See* Summerhays Decl. ¶ 9. This practice will continue, and thus, the requested extension of the Exclusive Periods will not prejudice the interests of creditors. This factor also favors approval of the requested extension.

*Factor 7: Amount of Time that Has Elapsed in the Case*

26. This request for an extension of the Exclusive Periods comes less than nine months after the commencement of this bankruptcy case. During this period, the Debtor has worked with

the Committee and insurers on a comprehensive procedure for obtaining a Bar Date Order and addressed numerous other case issues, such as the filing of a motion for an order referring the parties to global mediation. The relatively short period of time from the Petition Date to this request favors an extension of the Exclusive Periods.

*Factor 8: No Pressure on Creditors*

27. This is not a case in which the Debtor is seeking to extend the Exclusive Periods in order to maintain leverage over a group of creditors whose interests are being harmed by the Chapter 11 case. To the contrary, as described above, the Debtor has been diligently working to resolve critical issues in this case for the benefit of its creditors as a whole, and to lay the groundwork for an anticipated global mediation process. *See* Summerhays Decl. ¶ 5-12. The Debtor is not seeking an extension of the Exclusive Periods in order to pressure creditors to acquiesce to its reorganization demands and, therefore, this factor also supports the extension. *See* Summerhays Decl. ¶ 12.

*Factor 9: Unresolved Contingency*

28. The composition of the Debtor's proposed plan will be based in significant part on addressing the survivor claims. The claims and the available insurance coverage for such claims, are being analyzed since the claims bar date has been established and passed. Accordingly, this factor also favors the requested extension.

29. Based on the foregoing, cause exists for the requested approximate three-month extension. Similar motions have been approved in other diocesan bankruptcy cases across the country. *See, e.g., In re The Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113 (Bankr. N.D. CA January 5, 2024) (ECF No. 572) (second extension of exclusivity by 178 and 180 days respectively); *In re The Roman Catholic Bishop of Oakland*, Case No. 23-40523 (Bankr. N.D. CA April 24, 2024) (ECF No. 1088) (third extension of exclusivity); *In re Roman Catholic Diocese of Harrisburg*, No 20-00599 (Bankr. Middle Dist. Penn. July 20, 2021) (ECF No. 665) (Fourth Extension of Exclusivity Period, granted in increments of approximately 6 months, 3 months, 3 months, and 37 days, respectively; Order Further Extending Exclusive Periods for the Filing and Solicitation of Acceptance of a Chapter 11 Plan, *In re The Norwich Roman Catholic Diocesan*

*Corporation*, No. 21-20687 (Bankruptcy District of Connecticut, November 15, 2021) (ECF No. 912) (Fifth Extension of Exclusivity Period); *In re Roman Catholic Church of the Diocese of Gallup, et al.*, Case No. 13-13676 (Bankr. D.N.M. Mar. 11, 2014) (ECF No. 200) (extending Exclusive Periods for additional 180 days) (unopposed); *In re Archdiocese of Milwaukee*, Case No. 11-20059 (Bankr. E.D. Wis. May 18, 2011), (ECF No. 237) (extending Exclusive Periods for additional 180 days) (unopposed); *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (Bankr. D. Del. Mar. 1, 2010) (ECF No. 360) (extending Exclusive Periods for additional 165 days) (limited opposition to factual predicates in motion but not as to relief requested); *In re Catholic Bishop of Northern Alaska*, Case No. 08-00110 (Bankr. D. Alaska June 19, 2008) (ECF No. 213) (extending Exclusive Periods for additional 200 days) (per stipulation with the creditors' committee); *In re The Diocese of Davenport*, Case No. 06-02229 (Bankr. S.D. Iowa Mar. 16, 2007) (ECF No. 99) (extending Exclusive Periods for additional 189 days) (unopposed); *In re Roman Catholic Archbishop of Portland in Oregon*, Case No. 04-37154 (Bankr. D. Or. Oct. 28, 2004) (ECF No. 497) (extending Exclusive Periods for additional 210 days) (unopposed).

## CONCLUSION

The requested extension should be granted because each of the factors indicates that cause exists for the requested approximate three-month extension. The Motion is without prejudice to the Debtor's right to seek further extensions of the Exclusive Periods.

WHEREFORE, the Debtor respectfully requests that the Court enter its order:

1. Granting the Motion;

2. Extending the exclusive period for the Debtor to file a plan of reorganization to September 27, 2024;

3. Extending the exclusive period for the Debtor to solicit acceptances of such a plan to and including November 29, 2024; and

///

///

///

///

4. Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: May 16, 2024

FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By: */s/ Paul J. Pascuzzi*
PAUL J. PASCUZZI
JASON E. RIOS
THOMAS R. PHINNEY

Attorneys for The Roman Catholic Archbishop of San Francisco

Dated: May 16, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Ori Katz*
ORI KATZ
ALAN H. MARTIN

Attorneys for The Roman Catholic Archbishop of San Francisco

**Exhibit A**

**[Proposed Order]**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>　　　Debtor and<br>　　　Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>Date:　　　June 13, 2024<br>Time:　　　1:30 p.m.<br>Location:　Via ZoomGov<br>Judge:　　　Hon. Dennis Montali |

**[PROPOSED] ORDER GRANTING DEBTOR'S THIRD MOTION TO EXTEND EXCLUSIVITY PERIODS**
**[11 U.S.C. § 1121(d)]**

　　Upon consideration of the Debtor's Third Motion for Order Extending Exclusivity Periods [11 U.S.C. § 1121(d)] (the "Motion") filed by The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession (the "RCASF" or the "Debtor") for entry of an order extending the exclusive period of time during which only the Debtor may file a plan of reorganization and the exclusive period of time to solicit acceptances thereof, and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

　　1.　　The Motion is hereby GRANTED as set forth herein.

　　2.　　The exclusive period for the Debtor to file a plan of reorganization is extended to September 27, 2024;

　　3.　　The exclusive period for the Debtor to solicit acceptances of such a plan is extended to November 29, 2024;

4. The Motion is without prejudice to the Debtor's right pursuant to 11 U.S.C. § 1121(d) to seek a further increase of the exclusive periods.

**\*\*END OF [PROPOSED] ORDER\*\***