James I. Stang (CA Bar No. 94435)
Andrew W. Caine (CA Bar No. 110345)
Gail S. Greenwood (CA Bar No. 169939)
Brittany Mitchell M. Michael *(Pro Hac Vice)*
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, California 94104-4436
Telephone: 415-263-7000
Email: jstang@pszjlaw.com
          acaine@pszjlaw.com
          ggreenwood@pszjlaw.com
          bmichael@pszjlaw.com

Timothy W. Burns (*Pro Hac Vice*)
Jesse J. Bair (*Pro Hac Vice*)
BURNS BAIR LLP
10 East Doty Street, Suite 600
Madison, Wisconsin 53703-3392
Telephone: 608-286-2808
Email: tburns@burnsbair.com
          jbair@burnsbair.com

Attorneys for the Official Committee of
Unsecured Creditors

**REDACTED VERSION OF PROPOSED REDACTED JESSE BAIR DECLARATION**

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor. | **DECLARATION OF JESSE BAIR IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER GRANTING CERTAIN TRIAL-READY SURVIVORS RELIEF FROM THE AUTOMATIC STAY TO PURSUE STATE COURT LITIGATION** |

I, Jesse J. Bair, declare under penalty of perjury as follows:

1.     I am a partner of the law firm of Burns Bair LLP, special insurance counsel to the Official Committee of Unsecured Creditors (the "Committee"). I am duly admitted to practice law in the state of Wisconsin and admitted *pro hac vice* to practice before the Northern District of California in this case. I submit this Declaration in support of *The Official Committee of*

1  *Unsecured Creditors' Motion for an Order Granting Certain Trial-Ready Survivors Relief From*

2  *the Automatic Stay to Pursue State Court Litigation* (the "Motion for Stay Relief"),[1] filed

3  herewith.  I have personal knowledge of the facts set forth herein unless otherwise stated.

4          2.      I have reviewed the Archdiocese's records regarding its historical insurance

5  program and the policies it had in place since approximately 1951.  All of the insurance policies

6  produced by the Archdiocese have been designated as "Confidential" pursuant to *Order Approving*

7  *Stipulated Protective Order* [Docket No. 374] ("Stipulated Protective Order").

8  █ ██████████████████████████

9  ████████████████████████████████

10 ██████████████████████████████████

11 ██████████████████████████████

12 ██████████████████████████████████

13 █████████████████████████████████

14 ████████████████████████████████

15 ██████████████████████████████████

16 ████████████████████████████████

17 ███████████████████

18 █ █████████████████████████████████████

19 ███████████████████████████████

20 █ ███████████████████████████████

21 █████████████████████

22 █ █████████████████████████████████

23 ██████████████████████████████

24 ██████████████████████████████████

25 ████

26

27  _____

28  [1] Capitalized terms have the meanings set forth in the Motion for Stay Relief unless otherwise defined.

2

1    7.    ██████████████████████████████████████

2    ████████████████████████████████████████████

3    ████████████████████████████████████████████

4    ████████████████████████████████████████████

5    █████████████████████████  Judgments in the Trial Cases can provide the

6    "actual" basis for liability necessary to trigger a conclusive evaluation of indemnity and serve as a

7    basis to resolve alleged defenses under the policies including, for example, whether the sexual

8    abuse was "expected or intended."  In sum, I believe that relief from stay to permit litigation of the

9    Trial Cases is an opportunity to move the parties, including the Archdiocese's Insurers, closer to a

10   resolution.

11        Pursuant to 28 U.S.C. sec. 1746, I declare under penalty of perjury that the foregoing is true

12   and correct to the best of my knowledge and belief.  Executed on February 21, 2025 at Madison,

13   Wisconsin.

14                                   By:      */s/ Jesse Bair*
                                             Jesse Bair

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4897-4836-0985.3 05068.002

# EXHIBIT E



**MULTICOVER POLICY**

SERIES: 2000

NEW

Former Policy No.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY
Section I ☒     Section II ☒

ST. PAUL MERCURY INSURANCE COMPANY
Section I ☐     Section II ☐

St. Paul, Minnesota

*A CAPITAL STOCK COMPANY*

Coverage is provided as designated by an ☒

699NA0626

# DECLARATIONS

NAME AND MAILING ADDRESS OF INSURED (including zip code)

**THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE
445 CHURCH STREET, SAN FRANCISCO, CALIFORNIA**

| Effective Date of Policy* | | | Expiration Date of Policy* | | | THE NAMED INSURED IS: | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mo. | Day | Yr. | Mo. | Day | Yr. | Individual | Co-Partnership | Corporation | Joint Venture | Other: |
| 07 | 08 | 72 | 07 | 08 | 75 | ☐ | ☐ | ☒ | ☐ | ☐ |

*This Policy and each of its Insuring Agreements unless otherwise indicated therein, shall take effect on the date indicated above.

**TERMINATION OF PRIOR COVERAGE.** The Insured by the acceptance of this Policy, gives notice to the Company terminating or cancelling prior bonds or policies as listed below. Such termination or cancellation to be effective as of the time this Policy and its Insuring Agreements become effective.

The Company, in consideration of the payment of the agreed premium(s) and subject to the terms of this Policy and its Insuring Agreements, agrees to indemnify or pay to or on behalf of the Insured in accordance with such Insuring Agreements, with respect to the occurrence of any of the therein mentioned casualties or events during the policy period.

The limit of the Company's liability for each coverage of each Insuring Agreement or endorsement shall be as indicated therein, subject to all the terms of this Policy having reference thereto.

| PREMIUMS | PREPAID OR | | ANNUAL INSTALLMENTS | |
|---|---|---|---|---|
| | Advance Premium | Due at Inception | Due at Each Subsequent Anniv. | Total 3 Yr. |
| A. Subject to term rule. (including Provisional Premium if any) | $ | $ | $ | $ |
| B. *Not subject to term rule. | $ | $ | To Be Determined | |
| A and B Combined | $ | $█ | | |

\* The Premium, if any, shown in Item B above is for one year only and is for the coverages shown below.
Premiums for subsequent years will be determined at the rates in effect at each anniversary.

Countersignature Date ___July 8 1972___ Agency at ___San Francisco Calif___

Assignment of this Policy shall not be valid except with the written consent of the Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

Robert Baker
Authorized Representative

21011 Ed. 10-71 Printed in U.S.A.      **DECLARATIONS**      Page 1 of 1

**PRIVILEGED AND CONFIDENTIAL
PRODUCED IN THE COURSE OF MEDIATION
(Evidence Code § 1119)**

CONFIDENTIAL    Document Filed Under Seal    Pursuant to Agreement 03/21/05 12:14    DEBTOR 000549

## GENERAL CONDITIONS
### General Conditions Applicable to Sections I and II.

1. **POLICY PERIOD.** The policy period with respect to any Insuring Agreement shall begin at noon, standard time, on the effective date stated in the Declarations, and ends at noon, standard time on the expiration date stated in the Declarations, or the effective date of the cancellation of this Policy; as an entirety, or the cancellation of such Insuring Agreement, as hereinafter provided, whichever expiration or cancellation shall first occur. If subsequent to the date hereof, any Insuring Agreement is made a part of this Policy by mutual agreement, then the policy period, with respect to such Insuring Agreement, shall begin on the date stated therein, and if, prior to the cancellation of this Policy as an entirety, any Insuring Agreement is terminated, as hereinafter provided, then noon, standard time, of the effective date of such termination, shall be the end of the policy period, with respect to such Insuring Agreement. However, to the extent that coverage in this Policy replaces coverage in other policies terminating at 12:01 A.M. (standard time) on the inception date of this Policy, this Policy shall be effective at 12:01 A.M. (standard time) instead of at noon standard time.

2. **CANCELLATION.** This Policy or any of its Insuring Agreements may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. The Policy or any of its Insuring Agreements may be cancelled by the Company by mailing to the Named Insured at the address shown in this Policy written notice stating when not less than Ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

   If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

3. **INSPECTION AND AUDIT.** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

   The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this Policy, as far as they relate to the subject matter of this insurance.

4. **SPECIAL STATUTES.** Any and all terms of this Policy which are in conflict with the statutes of any state in which coverage is granted are understood, declared and acknowledged by the Company to be amended to conform with such statutes.

5. **PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY.** "This Policy is issued under and in pursuance of the Laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909. (This provision applies only if the Policy is issued in the St. Paul Fire and Marine Insurance Company.)

### General Conditions Applicable to Section I.

6. **LIBERALIZATION CLAUSE.** If during the period that insurance is in force under this Policy or within 45 days prior to the inception date thereof, on behalf of the Company there be adopted, or filed with and approved or accepted by the insurance supervisory authorities, all in conformity with law, any changes in this Policy by which this form of insurance could be extended or broadened without increased premium charge by endorsement or substitution of form then such extended or broadened insurance shall inure to the benefit of the Insured hereunder as though such endorsement or substitution of form had been made.

7. **BENEFIT OF INSURANCE.** This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or bailee other than the Named Insured.

### GENERAL CONDITIONS 8 THROUGH 25
### APPLY TO INLAND MARINE INSURING AGREEMENTS ONLY

8. **PREMIUM.** The premium for which this Policy is written shall be an estimated premium only. At the end of each annual period the earned premium shall be computed in accordance with the terms agreed upon. If the earned premium thus computed, exceeds the premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid, subject, however, to the agreed upon annual minimum premium.

   The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

9. **LIMIT OF LIABILITY.** The limit(s) of the Company's liability as expressed in this Policy shall not be:

   (A) Cumulative from year to year, or period to period, regardless of the number of premiums paid or payable;

   (B) Increased by the inclusion herein of, or by reference herein to, more than one party in interest as the Insured, the one first named being deemed the Named Insured and authorized agent of and entitled to priority over the others for all purposes of this Policy, and if the Named Insured ceases to be covered hereunder the one next named shall thereafter be deemed the Named Insured.

10. **CHANGES.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by an Officer and countersigned by an agent of the Company.

PRIVILEGED AND CONFIDENTIAL
CONFIDENTIAL64    Dpr̵o̵d̵u̵c̵e̵d̵ i̵n̵ t̵h̵e̵ c̵o̵u̵r̵s̵e̵ o̵f̵ m̵e̵d̵i̵a̵t̵i̵o̵n̵ 12:14DEBTOR00651f
(Evidence Code § 1119)

11. **LOSS REPORTING AND ADJUSTMENT.**

(A) The Insured shall as soon as practicable report to the Company or its agent every loss or damage which may become a claim under this Policy and shall also file with the Company or its agent within ninety (90) days from date of loss a detailed sworn proof of loss. Failure by the Insured to report the said loss or damage and to file such sworn proof of loss as hereinbefore provided shall invalidate any claim under this Policy for such loss.

(B) The Insured shall submit, and so far as is within his or their power cause all other persons interested in the property and members of the household and employees to submit, to examinations under oath by any persons named by the Company, relative to any and all matters in connection with a claim and subscribe the same; and shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representatives, and shall permit extracts and copies thereof to be made.

(C) Unless otherwise provided in an Insuring Agreement made a part of this Policy, the Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality nor the invoice value whichever may be lesser.

(D) All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company.

(E) The Company shall not be liable for loss caused by neglect of the Insured to use all reasonable care to save and preserve the property at and after any disaster insured against.

12. **SUBROGATION AND SALVAGE.**

(A) In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(B) If the Insured shall sustain any loss covered by this Policy, which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

13. **NO ADDITIONAL PREMIUM.** Payment by the Company of any obligation hereunder shall not entitle the Company to an additional or reinstatement premium unless otherwise stated in the Insuring Agreement providing for such payment.

14. **ASSIGNMENT.** Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

15. **FRAUD AND MISREPRESENTATION.** This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

16. **OTHER INSURANCE.** No Insuring Agreement hereof shall apply to any loss if the Insured is, or would be but for the existence of such Insuring Agreement, insured against such loss under any other policy or policies, except as respects any excess beyond the amount which would have been payable under any other policy or policies, had such Insuring Agreement not been effective.

17. **WAR EXCLUSION.** This Policy does not insure against loss or damage caused by or resulting from:

(A) Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual impending or expected attack, (1) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (2) by military, naval or air forces; or (3) by an agent of any such government, power, authority or forces;

(B) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

(C) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or Customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

18. **NUCLEAR EXCLUSION.** If any Inland Marine Insuring Agreement of this Policy insures against the peril of Fire, Clause (A) below shall apply, but if the Insuring Agreement does not insure against the peril of Fire, Clause (B) below shall apply, as follows:

(A) The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy;

(B) The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy.

**PRIVILEGED AND CONFIDENTIAL**
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**

CONFIDENTIAL    Deposition of Peter Ng 12/21/21 12:14    DEBTOR_000752

19. **PAIR AND SET CLAUSE.** It is understood and agreed that, in the event of loss of or damage to any article or articles which are a part of a set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the set, giving consideration to the importance of said article or articles; but in no event shall such loss or damage be construed to mean total loss of set.

20. **MACHINERY CLAUSE.** In case of loss or injury to any part of the insured property consisting, when complete for sale or use, of several parts, the Company shall only be liable for the insured value of the part lost or damaged.

21. **LABEL CLAUSE.** In cases of damage to labels only, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels and relabeling the goods.

22. **LIVE ANIMAL CLAUSE.** Live animals if insured hereunder are insured against risk of mortality only, directly caused by the perils named in the Policy. No claim to be made on these Insurers on any animal able to walk from the conveyance or able to walk after unloading therefrom. Insurers to have full benefit of salvage in the event of valid claim hereunder.

23. **SUE AND LABOR CLAUSE.** In case of loss or damage, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance; nor shall the acts of the Insured or the Company, in recovering, saving and preserving the property insured in case of loss or damage, be considered a waiver or an acceptance of abandonment; to the charge whereof the Company will contribute according to the rate and quantity of the sum herein insured.

24. **SUIT CLAUSE.** No suit, action or proceeding for the recovery of any claim this Policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

25. **ARBITRATION CLAUSE.** If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

### General Conditions Applicable to Section II

26. **PREMIUM.** The premium for which this Policy is written shall be an estimated premium only. At the end of each annual period the earned premium shall be computed in accordance with the terms agreed upon. If the earned premium thus computed, exceeds the premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid, subject, however, to the agreed upon annual minimum premium.

The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

27. **LIMIT OF LIABILITY** The limit(s) of the Company's liability as expressed in this Policy shall not be:

   (A) Cumulative from year to year, or period to period, regardless of the number of premiums paid or payable;

   (B) Increased by the inclusion herein of, or by reference herein to, more than one party in interest as the Insured, the one first named being deemed the Named Insured and authorized agent of and entitled to priority over the others for all purposes of this Policy, and if the Named Insured ceases to be covered hereunder the one next named thereafter be deemed the Named Insured.

28. **CHANGES.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by an Officer and countersigned by an agent of the Company.

29. **NO ADDITIONAL PREMIUM.** Payment by the Company of any obligation hereunder shall not entitle the Company to an additional or reinstatement premium unless otherwise stated in the Insuring Agreement providing for such payment.

30. **INSURED'S DUTIES IN THE EVENT OF LOSS, OCCURRENCE, CLAIM OR SUIT.**

   (A) Upon the occurrence of any casualty or event for which coverage is afforded by this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable. The Named Insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this Policy.

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL    PRODUCED IN THE COURSE OF MEDIATION    DEBTOR 000453
**(Evidence Code § 1119)**

(B) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his respresentative.

(C) The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of bodily injury or property damage with respect to which insurance is afforded under this Policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

(D) Upon request of the Company the Insured shall, within a reasonable time after determining the amount of any loss submit to the Company an itemized proof of loss, duly sworn to.

31. **ASSISTANCE AND COOPERATION OF THE INSURED.** The Insured shall cooperate (except in a pecuniary manner) with the Company and, at the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the casualty or event.

32. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** As respects any insurance afforded by the terms of this Policy, the Company shall:

(A) Defend in the name and on behalf of the Insured any suit against the Insured alleging injury, sickness or disease, damage or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;

The Company will pay, in addition to the applicable limit of liability:

(B) All expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which does not exceed the limit of the Company's liability thereon;

(C) Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this Policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this Policy applies, but the Company shall have no obligation to apply for or furnish any such bonds;

(D) Expenses incurred by the Insured for first aid to others at the time of an accident, for bodily injury to which this Policy applies;

(E) Reasonable expenses incurred by the Insured at the Company's request, including actual loss of wages or salary (but not loss of other income) not to exceed \$25 per day because of his attendance at hearings or trials at such request.

33. **ACTION AGAINST COMPANY.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

34. **SUBROGATION AND SALVAGE.**

(A) In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(B) If the Insured shall sustain any loss covered by this Policy, which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

35. **OTHER INSURANCE.** The insurance afforded by this Policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this Policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(A) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer

**GENERAL CONDITIONS**

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL64    DPRODUCED IN THE COURSE OF MEDIATION 2:14 DEBTOR_000154
25
**(Evidence Code § 1119)**

contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(B) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this Policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

36. **ASSIGNMENT.** Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

37. **FRAUD AND MISREPRESENTATION.** This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

38. **FINANCIAL RESPONSIBILITY LAWS.** When this Policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this Policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this Policy except for the agreement contained in this paragraph.

39. **MULTI-YEAR POLICY.** If this Policy is issued for a period of more than one year, the limits of the Company's liability shall apply separately to each consecutive annual period thereof.

40. **DECLARATIONS.** By acceptance of this Policy, the Named Insured agrees that the statements in the Declarations are his agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between himself and the Company or any of its agents relating to this Policy.

**GENERAL CONDITIONS 38, 39, and 40 apply only to those Insuring Agreements and Endorsements where so indicated therein.**

In witness whereof, the Company(s) indicated in the Declarations, has caused this Policy to be executed and attested, but this Policy and any Insuring Agreement or Endorsement shall not be valid unless signed by an officer or an agent or an attorney-in-fact of the Company.

*Secretary.*

*Carl B. Drake jr*
*President.*

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL64     DPRODUCED IN THE COURSE OF MEDIATION 12:10 DEBTOR_000155
of 35
**(Evidence Code § 1119)**



The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.

| Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 699NA0626 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

_Robert S Baker_
Authorized Representative

NAMED INSURED:

THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE
THE ROMAN CATHOLIC WELFARE CORPORATION OF SAN FRANCISCO.
THE ROMAN CATHOLIC SEMINARY OF SAN FRANCISCO
CATHOLIC CHARITIES OF THE ARCHDIOCESE OF SAN FRANCISCO
SAN FRANCISCO BOYS HOME, A CORPORATION
SAN FRANCISCO SOCIETY FOR THE PROPAGATION OF THE FAITH
ST. VINCENTS ROMAN CATHOLIC ORPHAN ASYLUM OF SAN FRANCISCO FOR BOYS
CATHOLIC YOUTH ORGANIZATION OF THE ARCHDIOCESE OF SAN FRANCISCO
YOUTH ACTIVITIES OF THE ARCHDIOCESE OF SAN FRANCISCO, A CORPORATION
MOST REVEREND JOSEPH T. MCGUCKEN
AND
ALL OTHER CORPORATIONS, COMPANIES, ORGANIZATIONS AND/OR ENTITIES
ALL UNDER THE CONTROL AND JURISDICTION OF
THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE
ALL AS NOW OR MAY HEREAFTER BE CONSTITUTED,
ALL JOINTLY AND SEVERALLY.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

_Carl B. Drake Jr_
President.

ENDORSEMENT NO. __1__   TO ~~THE DECLARATIONS~~ ___   Page _1_ of _1_

21073     Ed. 10-71 Printed In U.S.A.

PRIVILEGED AND CONFIDENTIAL
PRODUCED IN THE COURSE OF MEDIATION
(Evidence Code § 1119)

CONFIDENTIAL164    Dpro 00006 Filed 06/20/05 Entered 06/20/05 12:10 DEBTOR_000156
of 35





# INSURING AGREEMENT 36

| Forming Part of Policy No. | Effective Date of Insuring Agreement | Issued to: |
|---|---|---|
| 699NA0626 | 7-8-72 | THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE |

### 1. SCHEDULE.

The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific limit of liability.

| COVERAGES | LIMITS OF LIABILITY | | |
|---|---|---|---|
| A. Automobile Bodily Injury Liability | Each Person $ SEE ENDORSEMENT #1 | Each Occurrence | |
| B. Bodily Injury Liability Other Than Automobile | Each Person $ TO INSURING AGREEMENT | Each Occurrence | Aggregate $36 |
| C. Automobile Property Damage Liability | | Each Occurrence SEE ENDORSEMENT #1 | |
| D. Property Damage Liability Other Than Automobile | | Each Occurrence TO INSURING AGREEMENT | Aggregate $#36 |

$ _____ Deductible per claim under Coverage D.

If an "X" is inserted in the box opposite any of the optional exclusions, such exclusions as set forth in this Insuring Agreement shall apply to the insurance afforded.

☐ (Optional Exclusion 1) Owned Automobile Exclusion;
☐ (Optional Exclusion 2) Products and Completed Operations Exclusion;
☐ (Optional Exclusion 3) Explosion Hazard Exclusion;
☐ (Optional Exclusion 4) Collapse Hazard Exclusion;
☐ (Optional Exclusion 5) Underground Property Damage Hazard Exclusion.

If an "X" is inserted in the box opposite any of the following Malpractice and Professional Services exclusions, such exclusions shall apply to the insurance afforded under Coverages B and D of this Insuring Agreement.

(G314)

☒ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to:
  A. The rendering of or failure to render:
    (1) Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;
    (2) Any service or treatment conducive to health or of a professional nature; or
    (3) Any cosmetic or tonsorial service or treatment;
  B. The furnishing or dispensing of drugs, or medical, dental or surgical supplies or appliances;
  C. The handling of or performing of autopsies on dead bodies.

(G315)

☐ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to the rendering of or failure to render any cosmetic, ear piercing, tonsorial, message, physiotherapy, chiropody, hearing aid, optical or optometrical services or treatments.

(G316)

☒ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to the rendering of or failure to render any professional service.

In Witness Whereof, the Company has caused this Insuring Agreement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

_____
Authorized Representative

Carl B. Drake
*President.*

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL164    PRODUCED IN THE COURSE OF MEDIATION    DEBTOR_000191
**(Evidence Code § 1119)**

2. **COVERAGES.**

   A. **Coverage A; Automobile Bodily Injury Liability.**

      **Coverage C; Automobile Property Damage Liability.**

      The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

      **Coverage A.** Bodily injury; or

      **Coverage C.** Property damage;

   to which this Insuring Agreement applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

   B. **Coverage B; Bodily Injury Liability Other Than Automobile;.**

      **Coverage D; Property Damage Liability Other Than Automobile.**

      The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

      **Coverage B.** Bodily injury; or

      **Coverage D.** Property damage;

   to which this Insuring Agreement applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

3. **EXCLUSIONS.**

   THIS INSURING AGREEMENT DOES NOT APPLY:

   **As respects Coverages A and C.**

   A. To liability assumed by the Insured under any contract or agreement;

   B. To any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

   C. To bodily injury to any employee of the Insured arising out of and in the course of his employment by the insured, but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the Insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

   D. To property damage to:

      (1) Property owned or being transported by the Insured; or

      (2) Property rented to or in the care, custody or control of the Insured, or as to which the Insured is for any purpose exercising physical control, other than property damage to a residence or private garage by a private passenger automobile covered by this Insuring Agreement;

   E. To bodily injury due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to expenses for first aid under the Supplementary Payments General Condition 32(d);

   **As respects Coverages B and D.**

   F. To liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or qualify of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner;

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL164     Document 1 Filed 02/02/05 Entered 02/02/05 12:14:08 DEBTOR_000193
**PRODUCED IN THE COURSE OF MEDIATION**
of 35
**(Evidence Code § 1119)**

G. To bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

    (1) Any automobile or aircraft owned or operated by or rented to the Named Insured; or

    (2) Any other automobile or aircraft operated by any person in the course of his employment by the Named Insured;

but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the Named Insured or the ways immediately adjoining, if such automobile is not owned by or loaned to the Named Insured;

H. To bodily injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to the Named Insured;

I. To bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to:

    (1) Liability assumed by the Insured under an incidental contract; or

    (2) Expenses for first aid under the Supplementary Payments General Condition 32(d);

J. To bodily injury or property damage for which the Insured or his indemnitee may be held liable, as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or as an owner or lessor of premises used for such purposes, by reason of the selling, serving or giving of any alcoholic beverage:

    (1) In violation of any statute, ordinance or regulation;

    (2) To a minor;

    (3) To a person under the influence of alcohol; or

    (4) Which causes or contributes to the intoxication of any person;

K. To any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

L. To bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured; but this exclusion does not apply to liability assumed by the Insured under an incidental contract;

M. To property damage to:

    (1) Property owned or occupied by or rented to the Insured;

    (2) Property used by the Insured; or

    (3) Property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the Named Insured;

N. To property damage to premises alienated by the Named Insured arising out of such premises or any part thereof;

O. To bodily injury or property damage resulting from the failure of the Named Insured's products or work completed by or for the Named Insured to perform the function or serve the purposes intended by the Named Insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any Insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

P. To property damage to the Named Insured's products arising out of such products or any part thereof;

Q. To property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

R. To damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

**PRIVILEGED AND CONFIDENTIAL**
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**

4. **OPTIONAL EXCLUSIONS.**

(None of the following exclusions shall apply to the insurance provided by this Insuring Agreement unless an "X" has been inserted in the box opposite the appropriate exclusion in the Schedule.)

THIS INSURING AGREEMENT DOES NOT APPLY:

(1) **Owned Automobile Exclusion.**

Under Coverages A and C to any automobiles:

(a) Owned by the Insured; or

(b) Leased by the Insured for a period of one year or longer;

(2) **Products and Completed Operations Hazard Exclusion.**

Under Coverages B and D to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard;

(3) **Explosion Hazard Exclusion.**

Under Coverage D to property damage included within the explosion hazard in connection with operations which are subject to this exclusion in the Company's manual;

(4) **Collapse Hazard Exclusions.**

Under Coverage D to property damage included within the collapse hazard in connection with operations which are subject to this exclusion in the Company's manual;

(5) **Underground Property Damage Hazard Exclusion.**

Under Coverage D to property damage included within the underground property damage hazard in connection with operations which are subject to this exclusion in the Company's manual.

5. **SPECIAL CONDITIONS.**

A. **Persons Insured.**

Each of the following is an Insured under this Insuring Agreement to the extent set forth below:

As respects **Coverages A and C.**

(a) The Named Insured;

(b) Any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the Named Insured;

(c) Any other person while using an owned automobile or a hired automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an Insured only if he is:

(1) A lessee or borrower of the automobile; or

(2) An employee of the Named Insured or of such lessee or borrower;

(d) Any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a), (b) or (c) above;

None of the following is an Insured:

(i) Any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;

(ii) The owner or lessee (of whom the Named Insured is a sub-lessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee;

(iii) An executive officer with respect to an automobile owned by him or by a member of his household;

(iv) Any person or organization, other than the Named Insured, with respect to:

(1) A motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company (except a trailer designed for use with a private passenger automobile and not being used for business purposes with another type motor vehicle);

(2) A trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the Company;

(v) Any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the Named Insured.

This Insuring Agreement does not apply to bodily injury or property damage arising out of (1) a non-owned automobile used in the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured, or (2) if the Named Insured is a partnership, an automobile owned by or registered in the name of a partner thereof.

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL164    Produced in the course of mediation 12:11 DEBTOR_00015
**PRODUCED IN THE COURSE OF MEDIATION**
of 35
**(Evidence Code § 1119)**

As respects Coverages B and D.

    (e) If the Named Insured is designated in this Policy as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor;

    (f) If the Named Insured is designated in this Policy as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;



    (g) If the Named Insured is designated in this Policy as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

    (h) Any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured; and

    (i) With respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law;

        (i) An employee of the Named Insured while operating such equipment in the course of his employment; and

        (ii) Any other person while operating with the permission of the Named Insured any such equipment registered in the name of the Named Insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization; provided that no person or organization shall be an Insured under this paragraph (i) with respect to:

            (1) Bodily injury to any fellow employee of such person injured in the course of his employment; or

            (2) Property damage to property owned by, rented to, in charge of or occupied by the Named Insured or the employer of any person described in subparagraph (ii);

This Insuring Agreement does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured.

**B. Additional Definitions.**

**As respects Coverages A and C.**

When used in reference to this Insuring Agreement (including endorsements forming a part of the Policy):

"Automobile Business" means the business or occupation of selling, repairing, servicing, storing or parking automobiles;

"Hired Automobile" means an automobile not owned by the Named Insured which is used under contract in behalf of, or loaned to, the Named Insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the Named Insured or (b) an employee or agent of the Named Insured who is granted an operating allowance of any sort for the use of such automobile;

"Non-owned Automobile" means an automobile which is neither an owned automobile nor a hired automobile;

"Owned Automobile" means an automobile owned by the Named Insured;

"Private Passenger Automobile" means a four wheel private passenger or station wagon type automobile;

"Trailer" includes semi-trailer but does not include mobile equipment.

**C. Amended Definition.**

When used in reference to this Insuring Agreement (including endorsements forming a part of this Insuring Agreement):

**As respects Coverages B and D.**

"Incidental Contract" means:

1. Any lease of premises, easement agreement, undertaking to indemnify a municipality required by a municipal ordinance, sidetrack agreement or elevator maintenance agreement;

2. Any other contract or agreement; except:

    (a) A contract or agreement between the Insured and any employee or his representative wherein liability is assumed by the Insured for bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured;

**INSURING AGREEMENT 36**

Page 5 of 7

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL64    PRODUCED IN THE COURSE OF MEDIATION 12:14 DEBTOR_000196
of 35
**(Evidence Code § 1119)**

(b) If the Insured or his indemnitee is an architect, engineer or surveyor, any contract or agreement with respect to bodily injury or property damage arising out of professional services performed or which should have been performed by such Insured or indemnitee, including:

(i) The preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

(ii) Supervisory, inspection or engineering services;

(c) Any contract or agreement with respect to any obligation for which the Insured may be held liable in an action on a contract by a third party beneficiary for bodily injury or property damage arising out of a project for a public authority other than an action by the public authority or any other person or organization engaged in the project.

D. **Limits of Liability.**

**As respects Coverages A and C.**

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage or (4) automobiles to which this Insuring Agreement applies, the Company's liability is limited as follows:

**Coverage A.** The limit of bodily injury liability stated in the Schedule as applicable to "each person" is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provisions respecting "each person", the total liability of the Company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the Schedule as applicable to "each occurrence";

**Coverage C.** The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the Schedule as applicable to "each occurrence";

**Coverages A and C.** For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence;

**As respects Coverages B and D.**

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

**Coverage B.** The limit of bodily injury liability stated in the Schedule as applicable to "each person" is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total liability of the Company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence which shall exceed the limit of bodily injury liability stated in the Schedule as applicable to "each occurrence".

Subject to the above provisions respecting "each person" and "each occurrence", the total liability of the Company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the Schedule as "aggregate";

**Coverage D.** The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the Schedule as applicable to "each occurrence".

Subject to the above provisions respecting "each occurrence", the total liability of the Company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the Schedule as "aggregate":

(1) All property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including property damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph (2) below;

(2) All property damage arising out of and occurring in the course of operations performed for the Named Insured by independent contractors and general supervision thereof by the Named Insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph (2) does not include property damage arising out of maintenance or repairs at premises owned by or rented to the Named Insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL64    REPRODUCED IN THE COURSE OF MEDIATION 12:10 DEBTOR_000197
of 35
**(Evidence Code § 1119)**

(3) All property damage included within the products hazard and all property damage included within the completed operations hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the Named Insured.

**Coverages B and D.** For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.



E. **Deductible Property Damage Liability.**

**As respects Coverage D.**

The insurance afforded by this Insuring Agreement for Coverage D, Property Damage Liability Other Than Automobile, applies subject to the deductible, if any, entered in the Schedule, of this Insuring Agreement, and subject to the following provisions:

(1) The amount entered in the Schedule shall be deducted from the total amount which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages on account of each claim;

(2) The terms of the Policy, including those with respect to the notice of claim and the Company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount;

(3) The Company may pay any part or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

F. **Policy Period; Territory.**

**As respects Coverages A and C.**

This Insuring Agreement applies only to bodily injury or property damage which occurs during the policy period within the territory described in paragraph (1) or (2) of the definition of policy territory.

**As respects Coverages B and D.**

This Insuring Agreement applies only to bodily injury or property damage which occurs during the policy period within the policy territory.

6. **APPLICABLE POLICY CONDITIONS.**

Paragraphs 38, 39 and 40 of the General Conditions of the Policy and the Nuclear Energy Exclusions and Definitions Section apply with respect to this Insuring Agreement.

7. **INAPPLICABLE POLICY CONDITIONS.**

Paragraphs 32(a) and 37 of the General Conditions of the Policy do not apply with respect to this Insuring Agreement.

8. **SPECIAL EXCEPTIONS.**

Arizona and California Exceptions—(If this Policy is written in the State of Arizona or California, the following applies):

It is agreed that as respects any automobile coverage afforded under this Policy, Item (1) of the definition of "policy territory" of the BASIC DEFINITIONS is amended to read as follows:

A. The United States of America, its territories or possessions, or Canada, or Republic of Mexico.

**WARNING**

*Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.*



**PRIVILEGED AND CONFIDENTIAL**
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**

CONFIDENTIAL164    Date Produced Filed 02/CBURSE Entered 03/21/05 12:14 DEBTOR_000198 of 35



THE ST. PAUL

MULTICOVER POLICY

# SINGLE LIMIT OF LIABILITY ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 699NA0626 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

*Robert S Baker*

Authorized Representative

It is agreed that parts 1 and 2 of this endorsement apply separately and then only if the box contains an "X" insertion and a limit of liability is shown under that part.

**COMPREHENSIVE GENERAL LIABILITY.**

1.  ☒  In consideration of the premium charged it is agreed that the limit of liability stated below is the total limit of the Company's liability under Coverage B and Coverage D, combined, of the Comprehensive General and Automobile Liability Insuring Agreement, for all damages as the result of any one occurrence.

    Such limit shall also apply as a combined aggregate limit for all coverage provided under Coverage B and Coverage D of the Comprehensive General and Automobile Liability Insuring Agreement which is subject to aggregate limits in accordance with the terms of said Insuring Agreement.

Limit of Liability $ __1,000,000.__ Each Occurrence

**COMPREHENSIVE AUTOMOBILE LIABILITY.**

2.  ☒  In consideration of the premium charged it is agreed that the limit of liability stated below is the total limit of the Company's liability under Coverage A and Coverage C, combined, of the Comprehensive General and Automobile Liability Insuring Agreement, for all damages as the result of any one occurrence; provided, with respect to any occurrence for which the notice of this Policy is given in lieu of security, or when this Policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied in accordance with the applicable terms of such law, except that the total limit of liability shall not be reduced.

Limit of Liability $ __1,000,000.__ Each Occurrence

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Carl B. Drake Jr*
President.

ENDORSEMENT NO. __1__ TO INSURING AGREEMENT __36__ Page 1 of 1

21101 Ed. 10-71 Printed in U.S.A.

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL    PRODUCED IN THE COURSE OF MEDIATION    DEBTOR_000201
**(Evidence Code § 1119)**
of 35



ST. PAUL FIRE AND MARINE INSURANCE COMPANY
Section I ☒          Section II ☒

ST. PAUL MERCURY INSURANCE COMPANY
Section I ☐          Section II ☐
St. Paul, Minnesota
*A CAPITAL STOCK COMPANY*
Coverage is provided as designated by an ☒

SERIES: 2000

699NA0626
Former Policy No.

**MULTICOVER POLICY**

## DECLARATIONS

**NAME AND MAILING ADDRESS OF INSURED (including zip code)**

THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE
445 CHURCH STREET, SAN FRANCISCO, CALIFORNIA

| Effective Date of Policy* | | | Expiration Date of Policy* | | | THE NAMED INSURED IS: | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mo. | Day | Yr. | Mo. | Day | Yr. | Individual | Co-Partnership | Corporation | Joint Venture | Other: |
| 07 | 08 | 75 | 07 | 08 | 78 | ☐ | ☐ | ☒ | ☐ | ☐ |

*This Policy and each of its Insuring Agreements unless otherwise indicated therein, shall take effect on the date indicated above.*

**TERMINATION OF PRIOR COVERAGE.** The Insured by the acceptance of this Policy, gives notice to the Company terminating or cancelling prior bonds or policies as listed below. Such termination or cancellation to be effective as of the time this Policy and its Insuring Agreements become effective.

699NA0626
The Company, in consideration of the payment of the agreed premium(s) and subject to the terms of this Policy and its Insuring Agreements, agrees to indemnify or pay to or on behalf of the Insured in accordance with such Insuring Agreements, with respect to the occurrence of any of the therein mentioned casualties or events during the policy period.

The limit of the Company's liability for each coverage of each Insuring Agreement or endorsement shall be as indicated therein, subject to all the terms of this Policy having reference thereto.

| PREMIUMS | PREPAID | OR | ANNUAL INSTALLMENTS | | |
|---|---|---|---|---|---|
| | Advance Premium | | Due at Inception | Due at Each Subsequent Anniv. | Total 3 Yr. |
| A. Subject to term rule. (including Provisional Premium if any) | $ | | | $ | |
| B. *Not subject to term rule. | $ | | $ | To Be Determined | |
| A and B Combined | $ | | | | |

* *The Premium, if any, shown in Item B above is for one year only and is for the coverages shown below. Premiums for subsequent years will be determined at the rates in effect at each anniversary.*

Countersignature Date  JULY 8, 1975      Agency at  SAN FRANCISCO, CALIFORNIA

Assignment of this Policy shall not be valid except with the written consent of the Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

_____
Authorized Representative

21011 Ed. 10-71 Printed in U.S.A.          **DECLARATIONS**          Page 1 of 1

**PRIVILEGED AND CONFIDENTIAL**
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**

CONFIDENTIAL164     Document Filed 02/COURSE Entered 02/27/05 12:1   DEBTOR_000245
of 35



THE ST. PAUL
COMPANIES

MULTICOVER
POLICY

SECTION

*The following spaces preceded by an asterisk (*) need be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 699NA4270 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President and countersigned by a duly authorized representative of the Company.

_____
Authorized Representative

NAMED INSURED:

THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE
THE ROMAN CATHOLIC WELFARE CORPORATION OF SAN FRANCISCO
THE ROMAN CATHOLIC SEMINARY OF SAN FRANCISCO
CATHOLIC CHARITIES OF THE ARCHDIOCESE OF SAN FRANCISCO
SAN FRANCISCO BOYS HOME, A CORPORATION
SAN FRANCISCO SOCIETY FOR THE PROPAGATION OF THE FAITH
ST. VINCENTS ROMAN CATHOLIC ORPHAN ASYLUM OF SAN FRANCISCO FOR BOYS
CATHOLIC YOUTH ORGANIZATION OF THE ARCHDIOCESE OF SAN FRANCISCO
YOUTH ACTIVITIES OF THE ARCHDIOCESE OF SAN FRANCISCO, A CORPORATION
MOST REVEREND JOSEPH T. MCGUCKEN
AND
ALL OTHER CORPORATIONS, COMPANIES, ORGANIZATIONS AND/OR ENTITIES
ALL UNDER THE CONTROL AND JURISDICTION OF
THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE
ALL AS NOW OR MAY HEREAFTER BE CONSTITUTED,
ALL JOINTLY AND SEVERALLY.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

_____
President.

ENDORSEMENT NO. __1__ TO __THE DECLARATIONS__     Page 1 of 1

21073 Rev. 6-72 Printed in U.S.A.

PRIVILEGED AND CONFIDENTIAL
CONFIDENTIAL    PRODUCED IN THE COURSE OF MEDIATION    DEBTOR_000248
(Evidence Code § 1119)

## GENERAL CONDITIONS
### General Conditions Applicable to Sections I and II.

1. **POLICY PERIOD.** The policy period with respect to any Insuring Agreement shall begin at noon, standard time, on the effective date stated in the Declarations, and ends at noon, standard time on the expiration date stated in the Declarations, or the effective date of the cancellation of this Policy, as an entirety, or the cancellation of such Insuring Agreement, as hereinafter provided, whichever expiration or cancellation shall first occur. If subsequent to the date hereof, any Insuring Agreement is made a part of this Policy by mutual agreement, then the policy period, with respect to such Insuring Agreement, shall begin on the date stated therein, and if, prior to the cancellation of this Policy as an entirety, any Insuring Agreement is terminated, as hereinafter provided, then noon, standard time, of the effective date of such termination, shall be the end of the policy period, with respect to such Insuring Agreement. However, to the extent that coverage in this Policy replaces coverage in other policies terminating at 12:01 A.M. (standard time) on the inception date of this Policy, this Policy shall be effective at 12:01 A.M. (standard time) instead of at noon standard time.

2. **CANCELLATION.** This Policy or any of its Insuring Agreements may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. The Policy or any of its Insuring Agreements may be cancelled by the Company by mailing to the Named Insured at the address shown in this Policy written notice stating when not less than Ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

   If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

3. **INSPECTION AND AUDIT.** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

   The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this Policy, as far as they relate to the subject matter of this insurance.

4. **SPECIAL STATUTES.** Any and all terms of this Policy which are in conflict with the statutes of any state in which coverage is granted are understood, declared and acknowledged by the Company to be amended to conform with such statutes.

5. **PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY.** "This Policy is issued under and in pursuance of the Laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909. (This provision applies only if the Policy is issued in the St. Paul Fire and Marine Insurance Company.)

### General Conditions Applicable to Section I.

6. **LIBERALIZATION CLAUSE.** If during the period that insurance is in force under this Policy or within 45 days prior to the inception date thereof, on behalf of the Company there be adopted, or filed with and approved or accepted by the insurance supervisory authorities, all in conformity with law, any changes in this Policy by which this form of insurance could be extended or broadened without increased premium charge by endorsement or substitution of form then such extended or broadened insurance shall inure to the benefit of the Insured hereunder as though such endorsement or substitution of form had been made.

7. **BENEFIT OF INSURANCE.** This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or bailee other than the Named Insured.

### GENERAL CONDITIONS 8 THROUGH 25
### APPLY TO INLAND MARINE INSURING AGREEMENTS ONLY

8. **PREMIUM.** The premium for which this Policy is written shall be an estimated premium only. At the end of each annual period the earned premium shall be computed in accordance with the terms agreed upon. If the earned premium thus computed, exceeds the premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid, subject, however, to the agreed upon annual minimum premium.

   The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

9. **LIMIT OF LIABILITY.** The limit(s) of the Company's liability as expressed in this Policy shall not be:
   (A) Cumulative from year to year, or period to period, regardless of the number of premiums paid or payable;
   (B) Increased by the inclusion herein of, or by reference herein to, more than one party in interest as the Insured, the one first named being deemed the Named Insured and authorized agent of and entitled to priority over the others for all purposes of this Policy, and if the Named Insured ceases to be covered hereunder the one next named shall thereafter be deemed the Named Insured.

10. **CHANGES.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by an Officer and countersigned by an agent of the Company.

PRIVILEGED AND CONFIDENTIAL
CONFIDENTIAL64　　DPRODUCED IN THE COURSE OF MEDIATION 12:10 DEBTOR_000251
(Evidence Code § 1119)

11. **LOSS REPORTING AND ADJUSTMENT.**

    (A) The Insured shall as soon as practicable report to the Company or its agent every loss or damage which may become a claim under this Policy and shall also file with the Company or its agent within ninety (90) days from date of loss a detailed sworn proof of loss. Failure by the Insured to report the said loss or damage and to file such sworn proof of loss as hereinbefore provided shall invalidate any claim under this Policy for such loss.

    (B) The Insured shall submit, and so far as is within his or their power cause all other persons interested in the property and members of the household and employees to submit, to examinations under oath by any persons named by the Company, relative to any and all matters in connection with a claim and subscribe the same; and shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representatives, and shall permit extracts and copies thereof to be made.

    (C) Unless otherwise provided in an Insuring Agreement made a part of this Policy, the Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality nor the invoice value whichever may be lesser.

    (D) All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company.

    (E) The Company shall not be liable for loss caused by neglect of the Insured to use all reasonable care to save and preserve the property at and after any disaster insured against.

12. **SUBROGATION AND SALVAGE.**

    (A) In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

    (B) If the Insured shall sustain any loss covered by this Policy, which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

13. **NO ADDITIONAL PREMIUM.** Payment by the Company of any obligation hereunder shall not entitle the Company to an additional or reinstatement premium unless otherwise stated in the Insuring Agreement providing for such payment.

14. **ASSIGNMENT.** Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

15. **FRAUD AND MISREPRESENTATION.** This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

16. **OTHER INSURANCE.** No Insuring Agreement hereof shall apply to any loss if the Insured is, or would be but for the existence of such Insuring Agreement, insured against such loss under any other policy or policies, except as respects any excess beyond the amount which would have been payable under any other policy or policies, had such Insuring Agreement not been effective.

17. **WAR EXCLUSION.** This Policy does not insure against loss or damage caused by or resulting from:

    (A) Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual impending or expected attack, (1) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (2) by military, naval or air forces; or (3) by an agent of any such government, power, authority or forces;

    (B) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

    (C) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or Customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

18. **NUCLEAR EXCLUSION.** If any Inland Marine Insuring Agreement of this Policy insures against the peril of Fire, Clause (A) below shall apply, but if the Insuring Agreement does not insure against the peril of Fire, Clause (B) below shall apply, as follows:

    (A) The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy;

    (B) The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy.

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL64    PRODUCED IN THE COURSE OF MEDIATION 12:10 DEBTOR_000252
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**

19. **PAIR AND SET CLAUSE.** It is understood and agreed that, in the event of loss of or damage to any article or articles which are a part of a set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the set, giving consideration to the importance of said article or articles; but in no event shall such loss or damage be construed to mean total loss of set.

20. **MACHINERY CLAUSE.** In case of loss or injury to any part of the insured property consisting, when complete for sale or use, of several parts, the Company shall only be liable for the insured value of the part lost or damaged.

21. **LABEL CLAUSE.** In cases of damage to labels only, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels and relabeling the goods.

22. **LIVE ANIMAL CLAUSE.** Live animals if insured hereunder are insured against risk of mortality only, directly caused by the perils named in the Policy. No claim to be made on these Insurers on any animal able to walk from the conveyance or able to walk after unloading therefrom. Insurers to have full benefit of salvage in the event of valid claim hereunder.

23. **SUE AND LABOR CLAUSE.** In case of loss or damage, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance; nor shall the acts of the Insured or the Company, in recovering, saving and preserving the property insured in case of loss or damage, be considered a waiver or an acceptance of abandonment; to the charge whereof the Company will contribute according to the rate and quantity of the sum herein insured.

24. **SUIT CLAUSE.** No suit, action or proceeding for the recovery of any claim this Policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

25. **ARBITRATION CLAUSE.** If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

## General Conditions Applicable to Section II

26. **PREMIUM.** The premium for which this Policy is written shall be an estimated premium only. At the end of each annual period the earned premium shall be computed in accordance with the terms agreed upon. If the earned premium thus computed, exceeds the premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid, subject, however, to the agreed upon annual minimum premium.

   The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

27. **LIMIT OF LIABILITY** The limit(s) of the Company's liability as expressed in this Policy shall not be:
   (A) Cumulative from year to year, or period to period, regardless of the number of premiums paid or payable;
   (B) Increased by the inclusion herein of, or by reference herein to, more than one party in interest as the Insured, the one first named being deemed the Named Insured and authorized agent of and entitled to priority over the others for all purposes of this Policy, and if the Named Insured ceases to be covered hereunder the one next named thereafter be deemed the Named Insured.

28. **CHANGES.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by an Officer and countersigned by an agent of the Company.

29. **NO ADDITIONAL PREMIUM.** Payment by the Company of any obligation hereunder shall not entitle the Company to an additional or reinstatement premium unless otherwise stated in the Insuring Agreement providing for such payment.

30. **INSURED'S DUTIES IN THE EVENT OF LOSS, OCCURRENCE, CLAIM OR SUIT.**
   (A) Upon the occurrence of any casualty or event for which coverage is afforded by this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL64     DPRODUCED IN THE COURSE OF MEDIATION 12:1 DEBTOR_000253
**(Evidence Code § 1119)**

(B) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his respresentative.

(C) The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of injury or damage with respect to which insurance is afforded under this Policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

(D) Upon request of the Company the Insured shall, within a reasonable time after determining the amount of any loss submit to the Company an itemized proof of loss, duly sworn to.

31. **ASSISTANCE AND COOPERATION OF THE INSURED.** The Insured shall cooperate (except in a pecuniary manner) with the Company and, at the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the casualty or event.

32. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** As respects any insurance afforded by the terms of this Policy, the Company shall:

(A) Defend in the name and on behalf of the Insured any suit against the Insured alleging injury, sickness or disease, damage or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;

The Company will pay, in addition to the applicable limit of liability:

(B) All expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which does not exceed the limit of the Company's liability thereon;

(C) Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this Policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this Policy applies, but the Company shall have no obligation to apply for or furnish any such bonds;

(D) Expenses incurred by the Insured for first aid to others at the time of an accident, for bodily injury to which this Policy applies;

(E) Reasonable expenses incurred by the Insured at the Company's request in assisting the Company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

33. **ACTION AGAINST COMPANY.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

34. **SUBROGATION AND SALVAGE.**

(A) In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(B) If the Insured shall sustain any loss covered by this Policy, which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

35. **OTHER INSURANCE.** The insurance afforded by this Policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this Policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(A) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL164   PRODUCED IN THE COURSE OF MEDIATION 12:1 DEBTOR 000254
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**

contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(B) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this Policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

36. **ASSIGNMENT.** Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

37. **FRAUD AND MISREPRESENTATION.** This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

38. **FINANCIAL RESPONSIBILITY LAWS.** When this Policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this Policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this Policy except for the agreement contained in this paragraph.

39. **MULTI-YEAR POLICY.** If this Policy is issued for a period of more than one year, any limit of the Company's liability stated in this Policy as "aggregate" shall apply separately to each consecutive annual period thereof.

40. **DECLARATIONS.** By acceptance of this Policy, the Named Insured agrees that the statements in the Declarations are his agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between himself and the Company or any of its agents relating to this Policy.

**GENERAL CONDITIONS 38, 39, and 40 apply only to those Insuring Agreements and Endorsements where so indicated therein.**

In witness whereof, the Company(s) indicated in the Declarations, has caused this Policy to be executed and attested, but this Policy and any Insuring Agreement or Endorsement shall not be valid unless signed by an officer or an agent or an attorney-in-fact of the Company.

*Secretary.*                                                                                     *President.*

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL    DPROBUCED Filed in COURSE OF MEDIATION 12:1 DEBTOR 000255 of 35
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**



THE ST. PAUL COMPANIES

**MULTICOVER** POLICY

SECTION II

COMPREHENSIVE GENERAL
AND AUTOMOBILE
LIABILITY COVERAGE

# INSURING AGREEMENT 36

| Forming Part of Policy No. | Effective Date of Insuring Agreement | Issued to: |
|---|---|---|
| 699NA4270 | 7-8-75 | THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE |

1. **SCHEDULE.**

The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific limit of liability.

| COVERAGES | LIMITS OF LIABILITY | | |
|---|---|---|---|
| A. Automobile Bodily Injury Liability | Each Person $ SEE ENDORSEMENT 1 | Each Occurrence | |
| B. Bodily Injury Liability Other Than Automobile | | Each Occurrence TO INSURING AGREEMENT | Aggregate $ 36 |
| C. Automobile Property Damage Liability | SEE ENDORSEMENT 1 | Each Occurrence | |
| D. Property Damage Liability Other Than Automobile | | Each Occurrence TO INSURING AGREEMENT | Aggregate $ 36 |

$ _____ Deductible per claim under Coverage D.

If an "X" is inserted in the box opposite any of the optional exclusions, such exclusions as set forth in this Insuring Agreement shall apply to the insurance afforded.

☐ (Optional Exclusion 1) Owned Automobile Exclusion;

☐ (Optional Exclusion 2) Products and Completed Operations Exclusion;

☐ (Optional Exclusion 3) Explosion Hazard Exclusion;

☐ (Optional Exclusion 4) Collapse Hazard Exclusion;

☐ (Optional Exclusion 5) Underground Property Damage Hazard Exclusion.

If an "X" is inserted in the box opposite any of the following Malpractice and Professional Services exclusions, such exclusions shall apply to the insurance afforded under Coverages B and D of this Insuring Agreement.

(G314)

☐ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to:
   A. The rendering of or failure to render:
      (1) Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;
      (2) Any service or treatment conducive to health or of a professional nature; or
      (3) Any cosmetic or tonsorial service or treatment;
   B. The furnishing or dispensing of drugs, or medical, dental or surgical supplies or appliances;
   C. The handling of or performing of autopsies on dead bodies.

(G315)

☐ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to the rendering of or failure to render any cosmetic, ear piercing, tonsorial, massage, physiotherapy, chiropody, hearing aid, optical or optometrical services or treatments.

(G316)

☐ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to the rendering of or failure to render any professional service.

In Witness Whereof, the Company has caused this Insuring Agreement to be signed by its President and countersigned by a duly authorized representative of the Company.

_____
Authorized Representative

*President.*

21112 Rev. 5-74 Printed in U.S.A. (CP 0010)    **INSURING AGREEMENT 36**    Page 1 of 7

PRIVILEGED AND CONFIDENTIAL
PRODUCED IN THE COURSE OF MEDIATION
(Evidence Code § 1119)

CONFIDENTIAL

2. **COVERAGES.**

   A. **Coverage A; Automobile Bodily Injury Liability.**

      **Coverage C; Automobile Property Damage Liability.**

      The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

      **Coverage A.** Bodily injury; or

      **Coverage C.** Property damage;

   to which this Insuring Agreement applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

   B. **Coverage B; Bodily Injury Liability Other Than Automobile.**

      **Coverage D; Property Damage Liability Other Than Automobile.**

      The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

      **Coverage B.** Bodily injury; or

      **Coverage D.** Property damage;

   to which this Insuring Agreement applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

3. **EXCLUSIONS.**

   THIS INSURING AGREEMENT DOES NOT APPLY:

   As respects Coverages A and C.

   A. To liability assumed by the Insured under any contract or agreement;

   B. To any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

   C. To bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury; but this exclusions does not apply to any such injury arising out of and in the course of domestic employment by the Insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

   D. To property damage to:

      (1) Property owned or being transported by the Insured; or

      (2) Property rented to or in the care, custody or control of the Insured, or as to which the Insured is for any purpose exercising physical control, other than property damage to a residence or private garage by a private passenger automobile covered by this Insuring Agreement;

   E. To bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to expenses for first aid under the Supplementary Payments General Condition 32(d);

   F. To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden or accidental.

   As respects Coverages B and D.

   G. To liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in workmanlike manner;

   H. To bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

      (1) Any automobile or aircraft owned or operated by or rented or loaned to any Insured; or

      (2) Any other automobile or aircraft operated by any person in the course of his employment by any Insured;

   but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the Named Insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any Insured;

**INSURING AGREEMENT 36**

Page 2 of 7

PRIVILEGED AND CONFIDENTIAL
CONFIDENTIAL64   PRODUCED IN THE COURSE OF MEDIATION 12:1 DEBTOR 000284
(Evidence Code § 1119)

I. To bodily injury or property damage arising out of:
   (1) The ownership, maintenance, operation, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity; or
   (2) The operation or use of any snowmobile or trailer designed for use therewith;

J. To bodily injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to any Insured;

K. To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

L. To bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to:
   (1) Liability assumed by the Insured under an incidental contract; or
   (2) Expenses for first aid under the Supplementary Payments General Condition 32(d);

M. To bodily injury or property damage for which the Insured or his indemnitee may be held liable:
   (1) As a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages; or
   (2) If not so engaged, as an owner or lessor of premises used for such purposes;
   If such liability is imposed
   (a) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage; or
   (b) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
   but part (b) of this exclusion does not apply with respect to liability of the Insured or his indemnitee as an owner or lessor described in (2) above;

N. To any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

O. To bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury;
   but this exclusion does not apply to liability assumed by the Insured under an incidental contract;

P. To property damage to:
   (1) Property owned or occupied by or rented to the Insured;
   (2) Property used by the Insured; or
   (3) Property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;
   but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the Named Insured;

Q. To property damage to premises alienated by the Named Insured arising out of such premises or any part thereof;

R. To loss of use of tangible property which has not been physically injured or destroyed resulting from:
   (1) A delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or
   (2) The failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;
   but this tangible exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

S. To property damage to the Named Insured's products arising out of such products or any part of such products;

T. To property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

U. To damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

4. **OPTIONAL EXCLUSIONS.**
   (None of the following exclusions shall apply to the insurance provided by this Insuring Agreement unless an "X" has been inserted in the box opposite the appropriate exclusion in the Schedule.)

PRIVILEGED AND CONFIDENTIAL
PRODUCED IN THE COURSE OF MEDIATION
(Evidence Code § 1119)

CONFIDENTIAL64   Document Filed Under Protective Order 04/27/05 12:14:00 DEBTOR_000285 of 35

THIS INSURING AGREEMENT DOES NOT APPLY:

(1) **Owned Automobile Exclusion.**
Under Coverages A and C to any automobiles:
(a) Owned by the Insured; or
(b) Leased by the Insured for a period of one year or longer;

(2) **Products and Completed Operations Hazard Exclusions.**
Under Coverages B and D to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard;

(3) **Explosion Hazard Exclusion.**
Under Coverage D to property damage included within the explosion hazard in connection with operations which are subject to this exclusion in the Company's manual;

(4) **Collapse Hazard Exclusions.**
Under Coverage D to property damage included within the collapse hazard in connection with operations which are subject to this exclusion in the Company's manual;

(5) **Underground Property Damage Hazard Exclusion.**
Under Coverage D to property damage included within the underground property damage hazard in connection with operations which are subject to this exclusion in the Company's manual.

5. **SPECIAL CONDITIONS.**

A. **Persons Insured.**
Each of the following is an Insured under this Insuring Agreement to the extent set forth below:

**As respects Coverages A and C.**

(a) The Named Insured;

(b) Any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the Named Insured;

(c) Any other person while using an owned automobile or a hired automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an Insured only if he is:
(1) A lessee or borrower of the automobile; or
(2) An employee of the Named Insured or of such lessee or borrower;

(d) Any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a), (b) or (c) above;

None of the following is an Insured:

(i) Any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;

(ii) The owner or lessee (of whom the Named Insured is a sub-lessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee;

(iii) An executive officer with respect to an automobile owned by him or by a member of his household;

(iv) Any person or organization, other than the Named Insured, with respect to:
(1) A motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the Company (except a trailer designed for use with a private passenger automobile and not being used for business purposes with another type motor vehicle);
(2) A trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the Company;

(v) Any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the Named Insured.

This Insuring Agreement does not apply to bodily injury or property damage arising out of (1) a non-owned automobile used in the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured, or (2) if the Named Insured is a partnership, an automobile owned by or registered in the name of a partner thereof.

**As respects Coverages B and D.**

(e) If the Named Insured is designated in this Policy as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the Named Insured with respect to the conduct of such a business;

(f) If the Named Insured is designated in this Policy as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

21112 Rev. 5-74 Printed in U.S.A. (CP 0010)

**PRIVILEGED AND CONFIDENTIAL**
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**
CONFIDENTIAL DEBTOR_000286

(g) If the Named Insured is designated in this Policy as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(h) Any person (other than an employee of the Named Insured) or organization while acting as a real estate manager for the Named Insured; and

(i) With respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law;

    (i) An employee of the Named Insured while operating any such equipment in the course of his employment; and

    (ii) Any other person while operating with the permission of the Named Insured any such equipment registered in the name of the Named Insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization; provided that no person or organization shall be an Insured under this paragraph (i) with respect to:

        (1) Bodily injury to any fellow employee of such person injured in the course of his employment; or

        (2) Property damage to property owned by, rented to, in charge of or occupied by the Named Insured or the employer of any person described in subparagraph (ii);

This Insuring Agreement does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured.

**B. Additional Definitions.**

**As respects Coverages A and C.**

When used in reference to this Insuring Agreement (including endorsements forming a part of the Policy):

"Automobile Business" means the business or occupation of selling, repairing, servicing, storing or parking automobiles;

"Hired Automobile" means an automobile not owned by the Named Insured which is used under contract in behalf of, or loaned to, the Named Insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the Named Insured or (b) an employee or agent of the Named Insured who is granted an operating allowance of any sort for the use of such automobile;

"Non-owned Automobile" means an automobile which is neither an owned automobile nor a hired automobile;

"Owned Automobile" means an automobile owned by the Named Insured;

"Private Passenger Automobile" means a four wheel private passenger or station wagon type automobile;

"Trailer" includes semi-trailer but does not include mobile equipment.

**C. Amended Definitions.**

When used in reference to this Insuring Agreement (including endorsements forming a part of this Insuring Agreement):

**As respects Coverages B and D.**

"Incidental Contract" means:

1. Any lease of premises, easement agreement, undertaking to indemnify a municipality required by a municipal ordinance, sidetrack agreement or elevator maintenance agreement;

2. Any other contract or agreement; except:

    (a) A contract or agreement between the Insured and any employee or his representative wherein liability is assumed by the Insured for bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured;

    (b) If the Insured or his indemnitee is an architect, engineer or surveyor, any contract or agreement with respect to bodily injury or property damage arising out of professional services performed or which should have been performed by such Insured or indemnitee, including:

        (i) The preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

        (ii) Supervisory, inspection or engineering services;

    (c) Any contract or agreement with respect to any obligation for which the Insured may be held liable in an action on a contract by a third party beneficiary for bodily injury or property damage arising out of a project for a public authority other than an action by the public authority or any other person or organization engaged in the project.

Page 5 of 7

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL    Produced in the course of mediation    DEBTOR_000287
(Evidence Code § 1119)

D. **Limits of Liability.**

**As respects Coverages A and C.**

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage or (4) automobiles to which this Insuring Agreement applies, the Company's liability is limited as follows:

**Coverage A.** The limit of bodily injury liability stated in the Schedule as applicable to "each person" is the limit of the Company's liability for all damages, including damages for care and loss of services, because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provisions respecting "each person", the total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the Schedule as applicable to "each occurrence";

**Coverage C.** The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the Schedule as applicable to "each occurrence";

**Coverages A. and C.**

For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence;

**As respects Coverages B and D.**

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

**Coverage B.** The total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the Schedule as applicable to "each occurrence".

Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the Schedule as "aggregate";

**Coverage D.** The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the Schedule as applicable to "each occurrence".

Subject to the above provisions respecting "each occurrence", the total liability of the Company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the Schedule as "aggregate":

(1) All property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including property damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph (2) below;

(2) All property damage arising out of and occurring in the course of operations performed for the Named Insured by independent contractors and general supervision thereof by the Named Insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph (2) does not include property damage arising out of maintenance or repairs at premises owned by or rented to the Named Insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) All property damage included within the products hazard and all property damage included within completed operations hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the Named Insured.

**Coverages B and D.** For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

21112 Rev. 5-74 Printed in U.S.A. (CP0010)

**PRIVILEGED AND CONFIDENTIAL**
CONFIDENTIAL164 Document Filed Under Seal pursuant to [Proposed] Order 03/21/05 12:18 DEBTOR_000283
**PRODUCED IN THE COURSE OF MEDIATION** of 35
**(Evidence Code § 1119)**

**E. Deductible Property Damage Liability.**

**As respects Coverage D.**

The insurance afforded by this Insuring Agreement for Coverage D, Property Damage Liability Other Than Automobile, applies subject to the deductible, if any, entered in the Schedule, of this Insuring Agreement, and subject to the following provisions:

(1) The amount entered in the Schedule shall be deducted from the total amount which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages on account of each claim;

(2) The terms of the Policy, including those with respect to the notice of claim and the Company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount;

(3) The Company may pay any part or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

**F. Policy Territory.**

**As respects Coverages A and C.**

This Insuring Agreement applies only to bodily injury or property damage which occurs within the territory described in paragraph (1) or (2) of the definition of policy territory.

**As respects Coverages B and D.**

This Insuring Agreement applies only to bodily injury or property damage which occurs within the policy territory.

**G. Excess Insurance — Hired and Non-Owned Automobiles.**

**As respects Coverages A and C.**

With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the Insured.

**H. Out-Of-State Insurance**

**As respects Coverages A and C.**

If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the Policy, the limits of the Company's liability and the kinds of coverage afforded by the Policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the Policy; but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss.

**6. APPLICABLE POLICY CONDITIONS.**

Paragraphs 38, 39 and 40 of the General Conditions of the Policy and the Nuclear Energy Exclusions and Definitions Section apply with respect to this Insuring Agreement.

**7. INAPPLICABLE POLICY CONDITIONS.**

Paragraphs 32(a) and 37 of the General Conditions of the Policy do not apply with respect to this Insuring Agreement.

**8. SPECIAL EXCEPTIONS.**

Arizona and California Exceptions-(If this Policy is written in the state of Arizona or California, the following applies):

It is agreed that as respects any automobile coverage afforded under this Policy, Item (1) of the definition of "policy territory" of the BASIC DEFINITIONS is amended to read as follows:

A. The United States of America, its territories or possessions, or Canada, or Republic of Mexico.

### WARNING

*Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid such complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.*

**INSURING AGREEMENT 36**

Page 7 of 7

**PRIVILEGED AND CONFIDENTIAL**
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**



THE ST. PAUL COMPANIES

**MULTICOVER POLICY**

SECTION II

# SINGLE LIMIT OF LIABILITY ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 699NA4270 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President and counter-signed by a duly authorized representative of the Company.

_____
Authorized Representative

It is agreed that parts 1 and 2 of this endorsement apply separately and then only if the box contains an "X" insertion and a limit of liability is shown under that part.

### COMPREHENSIVE AUTOMOBILE LIABILITY.

☒ 1. In consideration of the premium charged it is agreed that the limit of liability stated below is the total limit of the Company's liability under Coverage A and Coverage C, combined, of the Comprehensive General and Automobile Liability Insuring Agreement, for all damages as the result of any one occurrence; provided, with respect to any occurrence for which the notice of this Policy is given in lieu of security, or when this Policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied in accordance with the applicable terms of such law, except that the total limit of liability shall not be reduced.

Limit of Liability $ 1,000,000. Each Occurrence

### COMPREHENSIVE GENERAL LIABILITY.

☒ 2. In consideration of the premium charged it is agreed that the limit of liability stated below is the total limit of the Company's liability under Coverage B and Coverage D, combined, of the Comprehensive General and Automobile Liability Insuring Agreement, for all damages as the result of any one occurrence.

Such limit shall also apply as a combined aggregate limit for all coverage provided under Coverage B and Coverage D of the Comprehensive General and Automobile Liability Insuring Agreement which is subject to aggregate limits in accordance with the terms of said Insuring Agreement.

Limit of Liability $ 1,000,000. Each Occurrence

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Carl B. Drake jr*
*President.*

**ENDORSEMENT NO. 1 TO INSURING AGREEMENT 36** Page 1 of

21101 Rev. 11-72 Printed In U.S.A.

**PRIVILEGED AND CONFIDENTIAL**
**PRODUCED IN THE COURSE OF MEDIATION**
**(Evidence Code § 1119)**

CONFIDENTIAL   Doc 6016 Filed 02/03/15 Entered 02/21/25 12:DEBTOR_0009235
of 35