Robert J. Pfister (State Bar No. 241370)
PFISTER & SASO, LLP
10250 Constellation Boulevard, Suite 2300
Los Angeles, California 90067
Telephone: (310) 414-4901
Email: rpfister@pslawllp.com

*Bankruptcy Counsel for Shajana Steele*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>                Debtor. | Case No. 23-30564-DM<br><br>Chapter 11<br><br>**REPLY IN FURTHER SUPPORT OF MOTION OF SHAJANA STEELE FOR RELIEF FROM STAY TO PROSECUTE SUPERIOR COURT LAWSUIT (NON-SEX ABUSE) AND FOR RELATED RELIEF (ANNULMENT, EXTENSION OF TIME)**<br><br>Date: February 27, 2025<br>Time: 1:30 p.m.<br>Place: Via Zoom<br>Before: Hon. Dennis Montali |

        Shajana Steele ("Ms. Steele"), by and through her undersigned bankruptcy counsel, respectfully submits this reply (the "Reply") in further support of her motion for relief from stay [Docket No. 975] (the "Motion") and in response to the opposition [Docket No. 1011] (the "Opposition") filed by The Roman Catholic Archbishop of San Francisco (the "Debtor"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the declaration of Douglas Shaffer [Docket No. 977] (the "Shaffer Declaration") that accompanied the Motion, or the Debtor's Opposition to the Motion.[1]

---

[1] This Reply is timely filed on February 24, 2025, in accordance with the Court's order [Docket No. 993] approving the parties' stipulation [Docket No. 991] to modify the briefing schedule.

**Only the Debtor Opposes the Motion – Not the Committee (or Anyone Else)**

1. The only objection to the Motion was filed by the Debtor. No objection (or joinder to the Debtor's Opposition) was filed by the Official Committee of Unsecured Creditors (the "Committee"), which is zealously advocating for sex abuse claimants – including by pursuing its own relief from stay motion for a subset of trial-ready sex abuse cases. *See* Docket No. 1015. Nor has any individual creditor, co-defendant, insurer, or other party in interest opposed Ms. Steele's Motion or joined the Debtor's Opposition.

2. This silence is telling given that the essential basis of the Debtor's Opposition is an assertion (which is not correct) that "the practical result of the requested relief would prefer Steele over all other holders of unsecured claims against the Debtor …." Opp'n at 2:8–9. *See, e.g., id.* at 3:3–4 (point heading: "Granting Stay Relief as Requested at This Time Would Result in Inequitable Use of Estate Assets to Benefit a Single Creditor"). Nowhere does the Debtor claim any prejudice to its own interests. With the Debtor offering only this prejudice-to-other-creditors argument, it is significant that neither the Committee (as fiduciary to all unsecured creditors) nor any other creditor opposes Ms. Steele's Motion or joins the Debtor's Opposition.

**The Debtor's Opposition is Narrowly Focused on an Alleged Self-Insured Retention**

3. Ms. Steele appreciates the Debtor's efforts to "meet[] and confer[] … in an effort to resolve consensually Steele's request to lift the stay," Opp'n at 2:6–7, as well as the Debtor's offer to stipulate to stay relief so long as "the Debtor is not required to use postpetition estate assets" to satisfy what the Debtor represents is a $250,000 self-insured retention (the "SIR"). *See id.* at 2:12–16 (the Debtor's offer in this regard); *id.* at 5:18–21 (the Debtor's representation that its insurance coverage "includes SIR obligations that require the Debtor to pay up to Two Hundred Fifty Thousand Dollars ($250,000) before the insurer expends any amount, including defense costs").[2]

---

[2] No declaration or other evidence accompanied the Debtor's Opposition. During the parties' meet-and-confer efforts, the Debtor provided an 81-page insurance policy (No. RRG 1073-05) issued by The National Catholic Risk Retention Group, Inc. to the Debtor (the "RRG Policy"), which does appear to contemplate a $250,000 self-insured retention. However, there is no indication – and certainly no evidence before the Court – as to whether that SIR has been satisfied

*(Footnote Continued)*

4. The Debtor has no objection to modification of the automatic stay to facilitate Ms. Steele's pursuit of non-debtor Cruise and Cruise's insurance coverage, even to the extent that insurance coverage may constitute property of the Debtor's estate (given the Debtor's status as an Additional Insured under Cruise's policy). *See* Opp'n at 5:6–12 & 8:5–6.[3] And Ms. Steele is offering (through the Motion) to "waive any claim against the Debtor or property of the Debtor's estate." Mot. at 2:2–3. Accordingly, the only dispute between the parties with respect to stay relief appears to be whether Ms. Steele should **also** be required to waive any pursuit of the Debtor's RRG Policy, given the Debtor's choice to structure that policy with a $250,000 self-insured retention.

**The Self-Insured Retention Is Not a Basis to Deny Ms. Steele's Motion**

5. There are three reasons why Ms. Steele should not be required to waive pursuit of the RRG Policy as a condition to relief from stay.

6. **First**, the Debtor's choice to structure its policy as one with a self-insured retention of this particular magnitude (or, indeed, any deductible or self-insured retention at all) is merely a business decision that allowed the Debtor to pay lower premiums. It should have no bearing on the stay relief inquiry. The Lease obligated the Debtor to "procure and maintain in full force and effect CGL insurance," Shaffer Decl. Ex. 2 (Lease) § 9.1(b), and specified that such coverage must be "issued by good, responsible companies," *id.* § 9.1(d). The Debtor's business decision to retain a larger share of risk in exchange for a lower premium should not *ipso facto* deprive creditors of the well-established path chosen by Ms. Steele here (*i.e.*, electing to forego a claim against the Debtor in exchange for permission to pursue available insurance coverage) – any more than a vehicle owner's

---

in whole or in part, or whether the RRG Policy is implicated by any other claims against the Debtor (including but not limited to sex abuse claims). The Debtor has also represented that there is excess coverage above the RRG Policy, but declined to provide any further details (or a copy of the excess policy). Finally in this regard, the Debtor somewhat cryptically observes that "[b]ankruptcy courts have even held that insurers are not relieved of their coverage liability obligations under an applicable policy based on a debtor's inability to pay its SIR obligations." Opp'n at 3:10–14 (citing *Sturgill v. Beach at Mason Ltd. P'ship, et al. (In re Beach at Mason Ltd. P'ship)*, No. 1:14CV0784 (WOB), 2015 WL 6163787 (S.D. Ohio Oct. 20, 2015), at *5-12).

[3] The Debtor indicates in a footnote that Cruise's insurer is National Union and that the Debtor has, in fact, been named as an Additional Insured on the National Union policy (the "National Union Policy"). *See* Opp'n at 5 n.3.

decision to purchase coverage with a high deductible should prejudice an accident victim (with respect to third-party coverage) or the lender who financed the vehicle (with respect to first party coverage). Instead, just as vehicle owners are admonished not to select a deductible higher than their capacity to satisfy in the ordinary course, the Debtor here should be presumed capable of performing its executory contract with the insurer (*i.e.*, satisfying the self-insured retention that it selected) in the ordinary course.

7. The Debtor's ability to satisfy any self-insured retention obligations in the ordinary course is illustrated by the stay relief granted to at least one other non-sex-abuse personal injury claimant pursuing a similar claim notwithstanding the existence of a $250,000 self-insured retention. *See* Mot. ¶ 5 (describing the Castro relief from stay motion and stipulated order). Ms. Steele's stay relief request is essentially identical to what the Debtor agreed to for Castro. The same $250,000 self-insured retention that exists here also existed in Castro. It is true that stay relief for Castro was entered on consent of the Debtor (and the Committee). But the fact remains that the Debtor's bargained-for self-insured retention was not an insurmountable hurdle with respect to a similar premises liability action, and there is no good reason to single out Ms. Steele for less favorable treatment than the Debtor has voluntarily afforded to other non-sex-abuse litigants.[4]

---

[4] This point has special significance here, where the Debtor is simultaneously opposing Ms. Steele's request to have her claim either deemed timely filed under the informal proof of claim doctrine or treated as timely by virtue of her alternative request under Bankruptcy Rule 9006(b). Nowhere in the Opposition does the Debtor dispute that a timely proof of claim is beside the point so long as the creditor is waiving any claim against the debtor or property of the debtor's estate (as Ms. Steele is offering to do here, if stay relief is granted). *See* Mot. ¶ 8 (citing *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 733 (7th Cir. 1991), and *In re Cini*, No. 10-62715, 2012 WL 2374224, at *13 (Bankr. D. Mont. June 22, 2012), for the proposition that a timely proof of claim is not necessary when the creditor is willing to waive any claim against the debtor or property of the debtor's estate). Here, by opposing **both** stay relief and Ms. Steele's attempt to have her claim deemed timely (which would at least allow her to share in the estate *pro rata* if stay relief is denied), the Debtor isn't seeking to equalize Ms. Steele's treatment to that of other creditors; it is arguing that Ms. Steele should recover nothing whatsoever on account of her claim against the Debtor. Once again it is significant that only the Debtor – not to Committee or anyone else – is seeking so harsh a result. And for what purpose? The Debtor does not appear to have opposed a single other late claim motion or stay relief motion.

8.  **Second**, there is no factual or evidentiary basis to conclude that permitting this slip-and-fall case to proceed will actually "require the Debtor to expend" anything close to $250,000, which is what the Opposition repeatedly asserts. *See* Opp'n at 5:23; *see also id.* at 2:8–9 ("the requested relief would prefer Steele over all other holders of unsecured claims against the Debtor, to the tune of up to $250,000"); *id.* at 6:8–9 (granting the Motion will "**inevitably** require the Debtor to expend up to $250,000 of assets outside of the ordinary course of its business" (emphasis added)). As the Motion sets out and the Opposition emphasizes, non-debtor defendant Cruise is contractually required (under the Lease) to defend and hold the Debtor harmless from this type of premises liability claim, and has added the Debtor as an additional insured to Cruise's own National Union Policy. *See* Mot. ¶¶ 2 & 4; Opp'n at 4:9–5:9; *supra* n. 3. Although the Debtor is incorrect in its supposition that Ms. Steele was employed by Cruise, *see* Opp'n at 4:6–8, there may be defenses interposed by Cruise concerning, *e.g.*, workers' compensation exclusivity that would make Ms. Steele's path to recovery from Cruise more expeditious if it goes from Ms. Steele to the Debtor to Cruise (by virtue of Cruise's indemnification and insurance obligations) rather than directly from Ms. Steele to Cruise. In any event, the parties ultimately agree that the Debtor can, should, and will be made whole by Cruise and/or the National Union Policy on account of Cruise's obligations under the Lease.

9.  The Opposition stridently argues that Ms. Steele's primary target should be Cruise: "Steele should be pursuing Cruise in the Superior Court Lawsuit and seeking stay relief to do so, not seeking stay relief against the Debtor. At a minimum, it is **premature** to require the Debtor to use estate assets in this manner …." Opp'n at 6:14–16 (emphasis added). To be clear, Ms. Steele does intend to pursue Cruise and Cruise's insurance policy. But under California law, the Debtor (as the owner of the premises) is also a potentially liable party. *See Ortega v. Kmart Corp.*, 36 P.3d 11, 14–15 (Cal. 2001); *Hatfield v. Levy Bros.*, 117 P.2d 841, 844–45 (Cal. 1941). The contractual allocation of such liability to Cruise via the Lease is a matter between the Debtor and Cruise – not Ms. Steele. And in any event, the Debtor is amply protected via the Lease and Cruise's National Union Policy. Granting stay relief will allow Ms. Steele to pursue all potentially liable parties in a single forum at a single time – a quintessential example of cause for relief from stay. *See, e.g., In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986) (stay relief to "allow[] the entire case to be determined in one forum").

10.     **Third**, there is no reason to delay the liquidation of Ms. Steele's claim pending confirmation of a plan when it is crystal clear that such liquidation will need to take place regardless of the terms of any plan – and that when it does occur, the very same self-insured retention will still apply.  As the Motion explains (and the Opposition nowhere disputes), Ms. Steele's claim is a garden variety personal injury tort lawsuit that must be resolved in a forum other than this Court.  *See* Mot. ¶ 1 & n.2.  The dichotomy the Opposition sets up – between liquidating Ms. Steele's claim as a one-off matter versus confirming "a consensual plan of reorganization that adequately addresses **all** unsecured claims asserted against [the] estate" (Opp'n at 6:18–21 (emphasis in original)) – is a false choice.  It is true that the hundreds of sex abuse claims pending against the Debtor will presumably be liquidated, at least in the first instance, via some type of matrix.  But there is no realistic possibility that the same will be true for Ms. Steele's slip-and-fall claim.  At most, the plan will specify a payment percentage and/or payment terms that will necessarily require liquidation somewhere other than this Court.[5]  And at that point, the Debtor's RRG Policy will still have the same self-insured retention, so the Debtor will be in exactly the same position it is in now.

11.     The Bankruptcy Appellate Panel's decision in *In re Merriman*, 616 B.R. 381 (B.A.P. 9th Cir. 2020), is instructive in this regard.  There, the debtor opposed stay relief on the ground that he had no insurance to fund a defense of a lawsuit in state court.  *Id.* at 387–88.  In affirming the bankruptcy court's grant to stay relief, the Panel observed that "Mr. Merriman would face the same problem if the case were litigated in bankruptcy court."  *Id.* at 388; *see also id.* at 391 ("he would probably face the same problem no matter which court adjudicated the claims").  As in *Merriman*, the Debtor's sizeable self-insured retention is a circumstance that exists during the bankruptcy case and will persist after the bankruptcy case.  It is not a basis on which to deny stay relief.

---

[5] The likelihood of the District Court conducting a jury trial in this slip-and-fall action is vanishingly small, *cf.* 28 U.S.C. § 1334(c)(1), so the forum for liquidation will almost certainly be the Superior Court.  *Cf. Evans v. Windsor Vallejo Care Center, LLC (In re Windsor Terrace Healthcare, LLC)*, Bankr. No. 24-00203 & Adv. Proc. No. 24-2190, ___ B.R. ___, 2025 Bankr. LEXIS 394 (Bankr. E.D. Cal. Feb. 20, 2025) (remanding removed tort claim against chapter 11 debtor to Superior Court for liquidation, and explaining why the Superior Court is manifestly the proper forum for personal injury and wrongful death tort claims).

**The Debtor Has Not Meaningfully Responded to Ms. Steele's Timeliness Points**

12. In addition to relief from stay, the Motion also seeks retroactive annulment of the stay and a determination that Ms. Steele's proof of claim is either timely under the informal proof of claim doctrine or by virtue of Ms. Steele's request under Bankruptcy Rule 9006(b). *See* Mot. ¶¶ 6–13. These requests are supported by points and authorities, including the unrebutted testimony of Ms. Steele's state court counsel that "[a]t the time [he] initiated the Superior Court Lawsuit, [he] was not aware of the Debtor's bankruptcy case"; he "did not intend to violate the automatic stay"; and he "was not aware of" the Bar Date. Shaffer Decl. ¶ 5. Further, there is no dispute that the Debtor was aware of Ms. Steele's claims prior to the Bar Date on account of the Superior Court complaint that Ms. Steele argues is an informal proof of claim, and the Debtor makes no claim of prejudice. And here too, the fact remains that only the Debtor – and not the Committee or any individual creditor – opposes the relief sought by Ms. Steele.

13. In response to the foregoing, the Opposition offers … nothing. The point heading ("Steele Did Not Timely File a Proof of Claim Against the Debtor," Opp'n at 6:22) is true as far as it goes, but neither it nor the text that follows meaningfully engages with Ms. Steele's evidence and argument. Nowhere does the Debtor dispute that a timely proof of claim is unnecessary if the creditor agrees to waive any claim against the debtor or property of the debtor's estate. *See supra* n.4. Nor does the Debtor engage with the relevant case law concerning informal proofs of claim, *see* Mot. ¶ 10 (discussing and applying *In re Holm*, 931 F.2d 620 (9th Cir. 1991); *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir. 1985); and *In re Sambo's Restaurants, Inc.*, 754 F.2d 811 (9th Cir. 1985)), or excusable neglect, *see* Mot. ¶ 12 (same, as to *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993); and *In re Pac. Gas & Elec. Co.*, 311 B.R. 84 (Bankr. N.D. Cal. 2004)).

14. In short, Ms. Steele has presented her arguments for relief in the form of retroactive annulment of the stay and a determination (either via the informal proof of claim doctrine or affirmative relief pursuant to Rule 9006(b)) that her proof of claim may be deemed timely. The Debtor offers no meaningful response to those arguments. The Court can and should grant the requested relief.

\*　　\*　　\*

15.     Through the months of negotiations (involving both the Debtor and the Committee) and then full briefing and argument on this Motion, the Debtor will almost certainly have incurred more in administrative expenses than the net out-of-pocket costs the Debtor will ultimately bear in defense of the Superior Court Lawsuit without reimbursement from Cruise and/or Cruise's National Union Policy.  Meanwhile, the Debtor stands alone in stridently refusing to facilitate some measure of relief for an injured party.  Ms. Steele respectfully requests that the Court overrule the Debtor's Opposition and grant the Motion.

DATED:  February 24, 2025          PFISTER & SASO, LLP


By:     /s/   Robert J. Pfister
        10250 Constellation Boulevard, Suite 2300
        Los Angeles, California 90067
        Telephone:     (310) 414-4901
        Email:         rpfister@pslawllp.com

*Bankruptcy Counsel for Shajana Steele*