PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
   WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone:    (916) 329-7400
Facsimile:    (916) 329-7435
Email:        ppascuzzi@ffwplaw.com
              jrios@ffwplaw.com
              tphinney@ffwplaw.com

ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
AMANDA L. COTTRELL, TX Bar No. 24064972 *[admitted pro hac vice]*
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    (415) 434-9100
Facsimile:    (415) 434-3947
Email:        okatz@sheppardmullin.com
              amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>        Debtor and<br>        Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**DECLARATION OF AMANDA L. COTTRELL IN SUPPORT OF DEBTOR'S OPPOSITION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER AUTHORIZING DISCLOSURE OF INDEPENDENT REVIEW BOARD MINUTES AND AGGREGATED CLAIMS DATA**<br><br>Judge:    Hon. Dennis Montali<br>Date:     March 13, 2025<br>Time:     1:30 p.m.<br>Place:    In-Person Hearing:<br>          Courtroom 17<br>          450 Golden Gate Avenue, 16th Floor<br>          San Francisco, CA |

I Amanda Cottrell, declare as follows:

1. I am a partner of the law firm Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin"). I am an attorney licensed to practice law in all Courts of the State of Texas, and I was admitted *pro hac vice* by this Court in the above-captioned matter. I am also recently admitted to practice law in California, Bar Number 360215. Sheppard Mullin is co-counsel of record for The Roman Catholic Archbishop of San Francisco ("RCASF" or the "Debtor").

2. The matters stated herein are true and correct and are within my personal knowledge or information provided to me by other attorneys or employees of Sheppard Mullin, and if called upon to testify as a witness, I could and would testify competently thereto.

3. This declaration is made in support of the *Debtor's Opposition to the Official Committee of Unsecured Creditors' Motion for an Order Authorizing Disclosure of Aggregated Claims Data* (the "Motion"). I give capitalized terms not defined here the same meaning given to them in the Opposition to the Motion.

4. Attached to this declaration as Exhibit 1 are true and correct copies of excerpts from the transcript of the first Section 341 meeting, on September 28, 2023, in the above-captioned matter.

5. Attached to this declaration as Exhibit 2 are true and correct copies of excerpts from the transcript of the continued Section 341 meeting, on October 12, 2023, in the above-captioned matter.

6. As co-counsel for the Debtor, I participated in and worked with attorneys at Sheppard Mullin with respect to the Committee's discovery requests, including meeting and conferring with the Committee in response to the Committee's Rule 2004 document subpoena requests. By February 2024, I was engaging in discussions with Committee counsel regarding potential production of IRB minutes, including meetings to discuss the scope of redactions and feasible timelines for production. The IRB minutes were part of "Stage Two" of the Committee's Rule 2004 document subpoena requests, specifically Request for Production No. 39. These negotiations continued through spring 2024, with the Committee raising IRB production during discovery calls.

For example, on May 15, 2024, the Committee's email correspondence to me listed multiple categories of requested documents, including "Files regarding alleged abuse regardless of the name appearing on a proof of claim (including IRB minutes)" and "Documents related to past treatment of abuse claims."  By mid-June 2024, the parties had reached agreement on a framework for production of redacted IRB materials.

7.     The parties reached agreement that the Debtor would produce certain IRB documents, which would be designated as Confidential under the Protective Order, and based on that confidentiality protection, the Debtor would make very limited redactions.  Accordingly, on July 10, 2024, the Debtor produced 1,261 pages of documents (Bate stamped DEBTOR_072669 through DEBTOR_073929) that were designated as Confidential under the Protective Order.  This Bates range represents the entire IRB production in this case.  Each of the binders produced is preceded by a detailed Privilege Log, which is also marked as Confidential.  The Motion omits the first privilege log in the production (72669 and begins at 72680 with the first production document).  The Motion also ignores that certain redactions were applied to withhold attorney-client communication.

8.     Attached to this Declaration as <u>Exhibit 3</u> is a true and correct copy of excerpts from the July 18, 2023 Hearing Transcript on the Motion for An Order Authorizing and Approving Special Notice and Confidentiality Procedures and Motion to Set Bar Date, before the Honorable William J. Lafferty, in the United States Bankruptcy Court for the Northern District of California – Oakland Division, in the Chapter 11 matter of *In re:  The Roman Catholic Bishop of Oakland*, Debtor, Case No. 4:23-BK-40523.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 27th day of February 2025, at Dallas, Texas.

_Amanda Cottrell_
Amanda L. Cottrell

# EXHIBIT 1

**ROMAN CATHOLIC ARCHBISHOP**

**OF SAN FRANCISCO**

<u>**MEETING OF CREDITORS**</u>

**SEPTEMBER 28, 2023**



**Court Reporting • Video**

310.230.9700 • els@elitigationservices.com
www.elitigationservices.com

**CEDRIC:** --listen-only mode during today's Q&A session. If you'd like to ask a questions, please press star, then one. And I'd like to turn today's (inaudible) to your host, Mr. Jason Blumberg. Thank you, you may begin.

**BLUMBERG:** Good morning. This is the first meeting of creditors for the Roman Catholic Archbishop of San Francisco. That's case number 23-30564. This case was filed on August 21, 2023. Today's date is September 28, 2023. It's approximately 10:14 a.m. My name is Jason Blumberg. I'm a Trial Attorney with the Office of the United States Trustee.

This meeting is required under Section 341(A) of the Bankruptcy Code. The purpose of the meeting is to allow for an examination of the debtor under oath. Questions may include but are not limited to why the case was filed, the operation of the business, and the prospects for the organization. I will initially question the debtor the some degree. Creditors will also have an opportunity to examine the debtor.

As a reminder, the meeting is being digitally recorded. Please remember that the recorder cannot see who you are or your head nodding so please identify yourself when asking a question and please remember to give verbal responses, which can be picked up by the recorder. The recorder works best when only one person is speaking at a time so please allow for questions to be completed before answering and please wait for answers to be completed before asking follow-up questions. Whenever you are not speaking, please mute your line to prevent background noise. We keep the recording for two years after case closure. If anyone would like to obtain a duplicate of today's proceeding or a transcript, the arrangements are made to the Office of the United States Trustee.

Before we proceed with the 341 meeting, I'm going to take a few minutes to explain what this meeting is and how it will proceed. As I mentioned, this meeting is being conducted under Section 341 of the United States Bankruptcy Code in conjunction with the bankruptcy case currently pending before the United States Bankruptcy Court in the Northern District of California. As such, it is expected that every participant will conduct themselves in a manner appropriate for a legal proceeding.

Preliminarily, the statutory purpose of the meeting is to allow creditors the opportunity to ask questions of the debtor under oath. If you don't have any questions for the debtor's representatives, you may stay on the line and listen, but you also may drop off the call at any time.

The representatives of the debtor are Archbishop Cordileone, Father Patrick Summerhays, and Joseph Passarello. By court order, Father Summerhays has been designated as the debtor's responsible individual in this case. Mr. Passarello is the debtor's senior financial director. He signed the debtor's schedules and statements.

MEETING OF CREDITORS | eLitigation Services, Inc.   2
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1  This meeting is an opportunity for creditors to ask questions about the debtor's
2  general financial affairs. If you have concerns about your specific claim or
3  situation, this is not the appropriate time to express those concerns. This is a legal
4  proceeding with the debtor's representatives testifying under oath about the debtor's
5  financial affairs.

6  To ensure there's enough time for everyone to ask questions, please keep questions
7  concise and avoid asking repeat questions. While I understand that many people's
8  claims arose under very troubling and painful circumstances, this is not the place to
9  address specific claims. To the extent you need additional information about the
10  debtor this bankruptcy case, you should visit the courts electronic docket or the
11  debtor's claims agent website on the Agent Solutions.

12  Information on the claims agent website is available to you free of charge and will
13  updated as additional information becomes available. The website address is
14  https://omniagentsolution.com/rcasf. You should also carefully review any filings
15  or notices you receive to preserver your rights.

16  The examination today will conducted as if it were in court. This means that only
17  representatives will answer any questions. If a represented does--representative,
18  excuse me, does not know the answer, then the answer will simply be, "I don't
19  know." If the, excuse me, if the purpose of the meeting is being frustrated by
20  anyone's conduct, then I'll stop the meeting.

21  Of note the following rules need to be followed. First, the same question should not
22  be asked repeated times, even by different people. It is, therefore, important that
23  you listen to each question and each answer and not ask the same question again.
24  Second, only one person may ask questions of the representatives at one time.
25  Third, questions can only be asked of the representatives. It's not appropriate to
26  speak to anyone other than the debtor's representatives. Fourth, if the
27  representatives do not know the answer to a question, please do not ask the question
28  again, including by asking it in a different way. Fifth, the person asking the question
29  should not be combative or engage in personal attacks.

30  Now that the purpose and rules of the meeting have been established, the order of
31  this meeting will be as follows. I will take the appearance of the debtor and counsel
32  for the Official Committee of Unsecured Creditors. I will, then, permit the rep--
33  excuse me, I will then put the representatives of the debtor under oath. I will, then,
34  permit the debtor's counsel and the archbishop to make an opening statement. A
35  statement is not mandatory. I will, then, permit counsel for the official committee of
36  unsecured creditors committee, excuse me, counsel for the official committee of
37  unsecured creditors to make its own opening statement if it chooses. After that, I
38  will ask questions of the debtor's representatives. Please listen carefully to all my

MEETING OF CREDITORS | eLitigation Services, Inc.   3
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

Case: 23-30564    Doc# 1028-1    Filed: 02/27/25    Entered: 02/27/25 12:47:09    Page 7 of 42

1   questions. If I've already asked a question, you don't need to repeat the question.
2   After I conclude my questions, I will invite members of the creditors committee to
3   ask questions. I will invite counsel for the creditors committee to ask questions if
4   they have any.

5   And then after that, I will open the line for any other creditor to ask a question
6   during a group question-and-answer period. Please do not indicate that you wish to
7   ask a question until I announce that the question-and-answer portion of the meeting
8   has commenced. Once I announce the general question-and-answer period, that is
9   has started, so to speak, if you do wish to ask a question, you must provide your full
10  name, with spelling, prior to speaking. Please note, if you do not identify yourself, I
11  may have to ask the operator to mute your line.

12  The operator, Cedric, is there anything specific that creditors need to do during the
13  question-and-answer period to indicate that they wish to ask questions?

14  **CEDRIC:**   Yes, that would be star one.

15  **BLUMBERG:**   Star one. So when we get to the question-and-answer period, if you do
16  wish to ask a question, you'll hit star one on your phone. We'll repeat that
17  instruction at that time but just keep that in mind.

18  So if everyone cooperates and there are no repeat questions, this call may be able to
19  be concluded today. However, we will not require the representatives to provide
20  testimony today for more than four hours. If the meeting is not concluded at the
21  four-hour mark, we will discontinue the meeting, and I will decide whether we will
22  schedule a continued meeting of creditors in the future for additional questioning.
23  The notice of the new date and time will be on the website Seth Worth, on the
24  claims agent website, which, again, is https://omniagentsolutions.com/rcasf. It will
25  also be on the case docket for this case.

26  Okay, and so with that out of the way, will the debtor's attorney please make his
27  appearance for the record?

28  **PASCUZZI:**   Good morning, Mr. Blumberg. This is Paul Pascuzzi, Felderstein Fitzgerald
29  Willoughby Pascuzzi & Rios for the debtor.

30  **BLUMBERG:**   Good morning, Mr. Pascuzzi. And will counsel for the creditors
31  committee please make their appearances?

32  **STANG:**   Good morning. James Stang, S-t-a-n-g, Pachulski Stang Ziehl & Jones, counsel for
33  the creditors committee, subject to appointment, pursuant to an employment
34  application that will be filed shortly.

35  **BLUMBERG:**   And is there anyone else, Mr. Stang, from your office making an
36  appearance today?

MEETING OF CREDITORS | eLitigation Services, Inc.     4
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1  **STANG:**     No.

2  **BLUMBERG:**     Okay.

3  **STANG:**     There are attorneys from my office who are listening in today, but I don't expect
4              that they will be making any statements on the record.

5  **BLUMBERG:**     Thank you. Archbishop Cordileone, are you on the line, sir?

6  **CORDILEONE:**     Yes, I am.

7  **BLUMBERG:**     Good morning.

8  **CORDILEONE:**     Good morning.

9  **BLUMBERG:**     Would you please raise your right hand and let me know when you're
10              doing that.

11  **CORDILEONE:**     Yes, I am.

12  **BLUMBERG:**     Do you swear or affirm that you will tell the truth, the whole truth, and
13              only the truth?

14  **CORDILEONE:**     I do.

15  **BLUMBERG:**     Do you understand that you are testifying under penalty of perjury?

16  **CORDILEONE:**     I do.

17  **BLUMBERG:**     Is there any reason why you can't give your best testimony today?

18  **CORDILEONE:**     No.

19  **BLUMBERG:**     Thank you. I will note for the record that prior to the meeting I received a
20              copy of the archbishop's driver's license, which appears to be in order. Archbishop.
21              to the best of your knowledge, was that a true and correct copy of your driver's
22              license?

23  **CORDILEONE:**     Yes.

24  **BLUMBERG:**     And, Mr. Pascuzzi, can you confirm that this is, in fact, the Archbishop,
25              the representative of your client on the line?

26  **PASCUZZI:**  Yes.

27  **BLUMBERG:**     Thank you. Father Patrick Summerhays, are you on the line, sir?

28  **SUMMER:** I am.

29  **BLUMBERG:**     Good morning.

MEETING OF CREDITORS | eLitigation Services, Inc.     5
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1   **SUMMER:** Good morning.

2   **BLUMBERG:** Would you please raise your right hand and let me know when you're
3   doing that?

4   **SUMMER:** Yeah, I'm doing that.

5   **BLUMBERG:** Do you swear or affirm that you will tell the truth, the whole truth, and
6   only the truth?

7   **SUMMERHAYS:** Yes.

8   **BLUMBERG:** Do you understand that you are testifying under penalty of perjury?

9   **SUMMERHAYS:** Yes.

10   **BLUMBERG:** Is there any reason why you can't give your best testimony today?

11   **SUMMERHAYS:** No.

12   **BLUMBERG:** I will note for the record that prior to meeting I received a copy of Father
13   Summerhays' driver's license, and it appears to be in order. Father Summerhays, to
14   the best of your knowledge, was that a true and correct copy of your driver's
15   license?

16   **SUMMERHAYS:** Yes, it is

17   **BLUMBERG:** And, Mr. Pascuzzi, can you confirm for the record that you recognize Mr.
18   Summerhays as the representative of your client?

19   **PASCUZZI:** Yes, Father Summerhays is sitting right next to me. I recognize him.

20   **BLUMBERG:** Thank you. And, Father Summerhays, would you please state your full
21   name for the record?

22   **SUMMER:** My full name is Patrick John Summerhays.

23   **BLUMBERG:** And what is your position as it relates to the debtor?

24   **SUMMER:** I am the Vicar General and Moderator of the Curia for the Archdiocese of San
25   Francisco.

26   **BLUMBERG:** Thank you. And, Mr. Joseph Passarello, are you on the line, sir?

27   **PASSARELLO:** Yes, I am.

28   **BLUMBERG:** Good morning, sir. Would you please raise your right hand and let me
29   know when you're doing that?

30   **PASSARELLO:** I am doing that.

MEETING OF CREDITORS | eLitigation Services, Inc.
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

6

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 10
of 42

pending in the joint coordinator proceeding in Alameda County. There were two cases set for trial on August 23. Mediation efforts prior to trial were unsuccessful. Based on the information available now, these AB 218 claims are historical claims. The dates of alleged abuse range from the 1950s to approximately 2008. Nearly half involve clergy members who were previously accused in the last reopening of the statute of limitations in 2003 and/or were clergy members that are long since deceased.

We say that because it's important to the Archbishop and the debtor that this abuse stops and that the procedures are in place to ensure that it doesn't happen again. The archdiocese is and has been, prior to the bankruptcy filing, committed to ensuring the safety of all children. For over 20 years the archdiocese's policies have gone above and beyond the requirements of--and recommendations of the U.S. Conference of Catholic Bishops Charter to protect children from abuse and to provide healing for those who have been harmed, including providing resources, both monetary and nonmonetary, for survivors. Through education and awareness, continuous improvement of policies, proactive measures to prevent abuse, and accountability efforts, the archdiocese has demonstrated its commitment to the safety of all those who are part of the community, especially children.

And while no amount of money can adequately compensate survivors for the harms they've suffered, the archdiocese and its insurers have paid more than $70 million over the past 20 years to survivors, either directly or by funding group settlement funds, to fulfill its responsibility for the abuse by diocesan clergy. At this time, however, the archdiocese has determined that it has neither the financial means nor the practical ability to litigate the multitude of abuse claims on multiple timelines while still serving the Catholic community. So to ensure the archdiocese fulfills both its foundational and morale obligations to the survivors, the faithful, and others who have put their trust in the archdiocese, it made the difficult decision to commence this bankruptcy case.

A large number of these diocesan Chapter 11 cases have allowed religious institutions and non-profit organizations who are debtors to emerge from Chapter 11 with a plan acceptable to survivors, to address and compensate both monetarily and nonmonetary survivors, while continuing to serve their respective constituents. The archdiocese desires a similar outcome in this bankruptcy case and is and will continue to be working diligently toward that end.

Thank you.

**BLUMBERG:** All right, thank you, Mr. Pascuzzi. Mr. Stang, would you like to make a statement on behalf of the committee?

MEETING OF CREDITORS | eLitigation Services, Inc.
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

10

Case: 23-30564    Doc# 1028-1    Filed: 02/27/25    Entered: 02/27/25 12:47:09    Page 11 of 42

**STANG:** Thank you. Archbishop Cordileone, my name is Jim Stang. I'm a principal of the law firm Pachulski Stang Ziehl & Jones that the committee selected to serve as bankruptcy counsel.

Has U.S. Trustee alluded, committee is made up of adults who were sexually abused as children by people for whom the archdiocese is responsible. Neither the committee members nor any of the constituents in the committee wanted the archdiocese to file bankruptcy. It was done without consultation with the constituency or the state court lawyers representing those people. And committee members feel that taking their cases away from the California state court system and bringing them in to a federal bankruptcy court is a fundamental violation of their rights to be heard before a jury. So we will perform our duties as outlined by the bankruptcy code and as required by the court in this reorganization, but this is not something that the survivors wanted.

Archbishop, the committee understands recently that you're out of town, out of the country, but it is disappointed that you don't have enough time in your schedule today to hear from them, to hear their questions, and to respond to their questions. We appreciate that you will be making time soon to do just that in what we hope is a continued first meeting of creditors.

And while Father Summerhays was designated as the responsible individual for the debtor, and he is testifying today and he is available for the entire meeting, that was done before the committee was appointed, it was done without consultation to the state co-counsel, who have cases pe--who had cases pending in the civil court, and there certainly was no opportunity to be heard before Judge Montali. And my point, Archbishop, about Father Summerhays, and it's no criticism of Father Summerhays, he and I have not gotten to know each other yet, but Cali--the Archdiocese of San Francisco, is a corporation sole. And to put it in real layperson's terms, Archbishop, you're the guy.

I have represented close to tw--20 sexual abuse committees in different Chapter 11 cases, and I have learned over the course of the 20 years that I have done that that there will be a settlement in this case if you want there to be a settlement in this case and a more personal involvement is essential to any progress in the case and the accomplishment of the goal of protection of children.

So it is not the intention of the committee to ask Father Summerhays any questions or, and I'm--I'm sorry if I'm mispronouncing his name, Mr. Passarelli [sic], and, of course, you're--you're moving out to another meeting, but we look forward to the opportunity to do it when you're available.

I wasn't intending to say anything about the particulars of your statements because, of course, I didn't know what you were going to say, but there are two things that I

MEETING OF CREDITORS | eLitigation Services, Inc.    11
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1     want to know. You talked about the Church setting a standard for child protection,
2     this archdiocese is the only archdiocese in the State of California, I'm sorry, diocese
3     in the State of California that has not published a list of credibly accused priests. It
4     has published a list of priests in good standing, but it has not done what every other
5     archdiocese has done. And that will be the subject of questions when we get to meet
6     again.

7     The second thing that I wanted to know, and this is where I'll le--I'll stop, is Mr.
8     Pascuzzi, who I know from our involvement into Diocese of Stockton and who I
9     have very high regard for from our professional relationship over the many years,
10    said that the archdiocese and its insurers have spent $70 million in settlements over
11    the course of some years. A question that I'll be asking at the next meeting is how
12    much was spent in legal defense funds and how much was spent on therapy
13    provided by the archdiocese for survivors.

14    So, Mr. Blumberg, I appreciate the opportunity to make the statement and to
15    highlight at least those two points that I noted from the statements that Mr. Pascuzzi
16    and Archbishop Cordileone made. And the committee will per--attend this meeting,
17    we intend to listen very carefully to the testimony, but we will not be asking any
18    questions.

19 **BLUMBERG:**     All right.

20 **STANG:**    Thank you.

21 **BLUMBERG:**     Thank you, Mr. Stang. I thank you for your statement on behalf of the
22    committee. So now I'm going to switch over to really what I would regard as very
23    bankruptcy-specific, case-specific schedules and statement-specific questions. And,
24    for that, my questions will now turn to Father Summerhays and, in particular, Mr.
25    Passarello.

26    So, Mr. Passarello, you attended the initial debtor interview at--with my office, is
27    that correct, sir?

28 **PASSARELLO:**    Yes. Yes.

29 **BLUMBERG:**     I--I would--

30 **PASSARELLO:**    It was a call in.

31 **BLUMBERG:**     It was a call in, that's correct. I--I will just note for the record that there are
32    a number of documents that my office requested that the debtor is still trying to
33    obtain. I would request that, unless an earlier date has been provided by the
34    bankruptcy analysts for the United States Trustee, that all those documents be
35    provided to my office by no later than October 6.

MEETING OF CREDITORS | eLitigation Services, Inc.    12
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

I hereby certify that the foregoing is a true and correct transcription of the audiotape labeled 9-28-23 JB Recording.

___10-4-23___
Date

*Brittany Baynes*
Printed Name

*Brittany Baynes*
Signature

# EXHIBIT 2

**MEETING OF CREDITORS FOR THE**

**ROMAN CATHOLIC ARCHBISHOP**

**OF SAN FRANCISCO**

**DATE: OCTOBER 12, 2023**



**Court Reporting • Video**

310.230.9700 • els@elitigationservices.com
www.elitigationservices.com

Case: 23-30564    Doc# 1028-1    Filed: 02/27/25    Entered: 02/27/25 12:47:09    Page 16 of 42

**BLUMBERG:**      All right.  So, this is the continued meeting of creditors for the Roman Catholic Archbishop of San Francisco.  That's Case No. 23-30564.  This case filed on August 21, 2023.  Today's date is October 12, 2023.  It's approximately 9:05 a.m.  My name is Jason Blumberg.  I'm a trial attorney with the Office of the United States Trustee.  This meeting is required under §341(a) of the Bankruptcy Code.  The purpose of the meeting is to allow for an examination of the debtor, under oath.  Questions may include, but are not limited to why the case was filed, the operation of the business, and the prospects for reorganization.  I will initially question the debtor. Creditors will also have the opportunity to examine the debtor.

As a reminder, this meeting is being digitally recorded.  Please remember that the recorder cannot see who you are or your head nodding, so identify yourself when asking a question, and please remember to give verbal responses which can be picked up by the recorder.  The recorder works best when only one person is speaking at a time, so please allow for questions to be completed before answering, and wait for answers to be completed before asking follow-up questions.  Whenever you are not speaking, please mute your line to prevent background noise.  We keep the recording for two years after case closure.  If anyone would like to obtain a duplicate of today's proceeding or a transcript, the arrangements are made through the Office of the United States Trustee.

Now, before we proceed with the continued 341 meeting, I'm going to take a few minutes to explain what this meeting is and how it will proceed.  As I mentioned, this meeting is being conducted under §341 of the United States Bankruptcy Code in conjunction with the bankruptcy case currently pending before the United States Bankruptcy Court in the Northern District of California.  As such, it is expected that every participant will conduct themselves in a manner appropriate for a legal proceeding.  Preliminarily, the statutory purpose of the meeting is to provide creditors with the opportunity to examine the debtor under oath.  If you do not have any questions for the debtor's representatives, you may stay on the line and listen.  You may drop off the call at any time, though.  The representatives of the debtor are Archbishop Cordileone, Father Patrick Summerhays, and Joseph Passarello.  By court order, Father Summerhays has been designated as the debtor's responsible individual in this case.  Mr. Passarello is the debtor's senior financial director.  He signed the debtor's schedules and statements.

The meeting is an opportunity for creditors to ask questions about the debtor's general financial affairs.  If you have concerns about your specific claim or situation, this is the not the appropriate time to express those concerns.  This is a legal proceeding, with the debtor's representatives testifying under oath about the debtor's financial affairs.  To ensure that there is enough time for everyone to ask questions, please keep questions concise and avoid asking repeat questions.  While I understand that many people's claims arose under very troubling and painful

October 12, 2023 | eLitigation Services, Inc.    2
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

Case: 23-30564    Doc# 1028-1    Filed: 02/27/25    Entered: 02/27/25 12:47:09    Page 17 of 42

circumstances, this is not the place to address specific claims.  To the extent you need additional information about the debtor of this bankruptcy case, you should visit the court's electronic docket or the debtor's claim's agent website.  Information on the claim's agent website is available to you free of charge and will be updated as additional information becomes available.  The website address is https://omniagentsolutions.com/rcasf.  You should also carefully review any filings or notices you receive to preserve your rights.

The examination today will be conducted as if it were in court.  This means that only the representatives will answer questions.  If a representative does not know the answer, then the answer will simply be, "I don't know."  If the purpose of the meeting is being frustrated by anyone's conduct, then I may stop the meeting.  Of note, the following rules should be followed and need to be followed today.  First, the same question should not be asked repeated times even by different people.  It is, therefore, important that you listen to each question and each answer and not ask the same question again.  Second, only one persons may ask questions of the representatives at a time.  Third, questions can only be asked of the representatives.  It is not appropriate to speak to anyone other than the representatives.  Fourth, if the representatives do not know the answer to a question, pleases do not ask the question again, including by asking it in a different way.  Fifth, the person asking the question should not be combative or engage in personal attacks.

Now that the purpose and the rules of the meeting have been established, the order of the meeting will be as follows.  I will appearance of counsel for the debtor and counsel for the Official Committee of Unsecured Creditors.  I will then put the representatives of the debtor under oath.  I will then permit the debtor's counsel and the Archbishop to make an opening statement, if they so choose.  A statement is not mandatory.  I then may ask questions of the debtor's representatives.  Please listen to all my questions, if I ask any.  If I've already asked a question, you don't need to repeat the question.  After I conclude my questions, I will ask members of the Creditor's Committee if they wish to ask questions.  After that period concludes, I will ask all creditors, any creditors, if they wish to ask questions, and then finally, I will ask if counsel for the Creditor's Committee wishes to ask any questions.  So, please don't indicate that you wish to ask a question until I announce that the question and answer session has begun.  Once I announce that that general question and answer period has started, if you do wish to ask a question, you must provide your full name, with spelling, prior to speaking.  Please note, if you don't identify yourself, I will ask the operator to mute your line.  Sandy is the operator.  I believe when we get to that section, what you would do is you would press *1, but we'll come back to that as we proceed.

If everyone cooperates and there are no repeat questions, this call may be able to be concluded today.  I anticipate that it will be concluded today because this is a

October 12, 2023 | eLitigation Services, Inc.   3
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

Case: 23-30564    Doc# 1028-1    Filed: 02/27/25    Entered: 02/27/25 12:47:09    Page 18 of 42

1    continued meeting.  However, we will not require the representatives to provide
2    testimony for more than three hours.  If the meeting is not concluded at the three-
3    hour mark, we will discontinue the meeting, and I will decide whether I will
4    schedule a continued meeting of creditors in the future for additional questioning.
5    As I noted though, because this is the continued meeting, it is unlikely that this
6    meeting will be continued.  But if the meeting is continued, the notice of the new
7    date and time will be on the website set forth on the claim's agent website, which
8    again, is https://omniagentsolutions.com/rcasf, also on the court docket for this
9    case.

10    All right.  Could I ask the debtor's attorney to please make his appearance for the
11    record?

12  **PASCUZZI:**  Good morning, Mr. Blumberg.  This is Paul Pascuzzi, bankruptcy counsel for the
13    debtor the Roman Catholic Archbishop of San Francisco, and also here is Paul
14    Gaspari, special litigation counsel approved by the court from Weintraub Tobin.

15  **BLUMBERG:**    Good morning.  May I ask counsel for the Official Committee of
16    Unsecured Creditors to make his appearance as well?

17  **STANG:**  Good morning.  James Stang S-T-A-N-G, Pachulski, Stang, Ziehl & Jones, counsel
18    to Official Creditors Committee.

19  **BLUMBERG:**    Good morning.  Father Patrick Summerhays, are you on the line, sir?

20  **SUMMERHAYS:**    Yes, I am.

21  **BLUMBERG:**    Good morning to you.

22  **SUMMERHAYS:**    Good morning.

23  **BLUMBERG:**    Would you please raise your right hand and let me know when you're
24    doing that?

25  **SUMMERHAYS:**    I am doing that.

26  **BLUMBERG:**    Do you swear or affirm that you will tell the truth, the whole truth, and
27    only the truth?

28  **SUMMERHAYS:**    I do.

29  **BLUMBERG:**    Do you understand that you are testifying under penalty of perjury?

30  **SUMMERHAYS:**    I do.

31  **BLUMBERG:**    Is there reason why you can't give your best testimony today?

32  **SUMMERHAYS:**    No.

October 12, 2023 | eLitigation Services, Inc.    4
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

| | | |
|---|---|---|
| 1 | **BLUMBERG:** | And would you mind just stating your full name for the record? |
| 2 | **SUMMERHAYS:** | My full name is Patrick John Summerhays. |
| 3 4 | **BLUMBERG:** | And you are the same Father Summerhays who signed the petition in this case, correct, sir? |
| 5 | **SUMMERHAYS:** | That is correct. |
| 6 | **BLUMBERG:** | Mr. Passarello, are you there sir? |
| 7 | **PASSARELLO:** | Yes, I am. |
| 8 9 | **BLUMBERG:** | Would you please raise your right hand and let me know when you are doing that, sir? |
| 10 | **PASSARELLO:** | I am doing that. |
| 11 12 | **BLUMBERG:** | Do you swear or affirm that you will tell the truth, the whole truth, and only the truth? |
| 13 | **PASSARELLO:** | Yes, I do. |
| 14 | **BLUMBERG:** | Do you understand that you are testifying under penalty of perjury? |
| 15 | **PASSARELLO:** | Yes, I do. |
| 16 | **BLUMBERG:** | Is there any reason why you can't give your best testimony today? |
| 17 | **PASSARELLO:** | No, there is not. |
| 18 | **BLUMBERG:** | And would you please state your full name for the record? |
| 19 | **PASSARELLO:** | Joseph James Passarello, Jr. |
| 20 21 | **BLUMBERG:** | And sir, are you the same Mr. Passarello that signed the schedules and statements in this case? |
| 22 | **PASSARELLO:** | Yes, I am. |
| 23 | **BLUMBERG:** | Thank you.  Archbishop Cordileone, are you there, sir? |
| 24 | **CORDILEONE:** | Yes, I am. |
| 25 26 | **BLUMBERG:** | Would you please raise your right hand and let me know when you are doing that? |
| 27 | **CORDILEONE:** | I'm doing that. |
| 28 29 | **BLUMBERG:** | Do you swear or affirm that you will tell the truth, the whole truth, and only the truth? |

October 12, 2023 | eLitigation Services, Inc.   5
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

| | | |
|---|---|---|
| 1 | **CORDILEONE:** | I do. |
| 2 | **BLUMBERG:** | Do you understand that you are testifying under penalty of perjury? |
| 3 | **CORDILEONE:** | I do. |
| 4 | **BLUMBERG:** | Is there any reason why you can't give your best testimony today? |
| 5 | **CORDILEONE:** | No, there is not. |
| 6 | **BLUMBERG:** | And sir, would you please state your full name for the record? |
| 7 | **CORDILEONE:** | Salvatore Joseph Cordileone. |
| 8-9 | **BLUMBERG:** | Thank you. Mr. Pascuzzi, all the debtor's representatives are in the same room with you, sir? |
| 10 | **PASCUZZI:** | That's correct. |
| 11-16 | **BLUMBERG:** | Okay. So, I would ask that when someone asks a question to the debtor's representatives, that they ask -- rather answer the questions based on their own knowledge, and if they are going to seek guidance or some kind of reference from another source, that they clearly disclose that for the record. So, that means that there shouldn't be any notes being passed back and forth unless that's noted for the record. |
| 17 | | Mr. Pascuzzi, would you like to make an opening statement today, sir? |
| 18 | **PASCUZZI:** | No, but the Archbishop would. |
| 19 | **BLUMBERG:** | Okay. Archbishop, would you like to make an opening statement, sir? |
| 20 | **CORDILEONE:** | Yes, I would. |
| 21 | **BLUMBERG:** | Okay. Please go ahead, sir. |

| | | |
|---|---|---|
| 22-33 | **CORDILEONE:** | Thank you. And thank you for arranging a time to speak with me at greater length. I wish to repeat that I am in full agreement with Pope Francis who has called the sexual abuse of a minor monstrous, noting that even one such case perpetrated by a member of the clergy would be abhorrent. In hearing the harm and confusion these acts of abuse have caused in the lives of innocent children and their families, the stories of abuse survivors are stories of stolen innocence. Having sat with victims and listened to their stories, I'm always moved and deeply saddened. These acts have no place in any society, and especially within a church where there should be a greater sense of security and compassion. Pope Francis has exhorted all his brother Bishops to shoulder the weight of these past sins. I pray every day for continued healing for all survivors in hopes that they find the peace they deserve. Around the time I was appointed as Bishop, the issue of clergy sexual abuse became |

October 12, 2023 | eLitigation Services, Inc.   6
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

| | |
|---|---|
| 1 | a national story. The revelation of these abominable acts within the church over |
| 2 | previous decades had a lasting impact on how I approach the responsibility of being |
| 3 | first a Bishop and now an Archbishop. I have striven to maintain an unwavering |
| 4 | commitment to fighting sexual abuse of minors and helping the church atone for the |
| 5 | sins of the past perpetrated by her ministers. |
| 6 | At the heart of our outreach to abuse survivors, is creating a welcoming |
| 7 | environment and providing compassion and assistance, which includes a variety of |
| 8 | counseling, spiritual direction and other healing services. I have appointed three |
| 9 | diligent and serious people who spend all their time at the Archdiocese on |
| 10 | managing different aspects of our safe environment department. These |
| 11 | professionals engage in regular education, background screening and fingerprinting |
| 12 | of employees and volunteers who work with minors. The Archdiocese of San |
| 13 | Francisco has, in fact, established policies and protocols to protect children and |
| 14 | address and reports incidents of sexual abuse of minors even before the U.S. |
| 15 | bishops adopted the Charter for the Protection of Children and Young People in |
| 16 | 2002. |
| 17 | Our reporting process is straightforward. Cases of abuse in which the alleged |
| 18 | abuser and the abuse survivor are of the same household are reported to Child |
| 19 | Protective Services. Allegations of abuse of minors by clerics, church employees or |
| 20 | volunteers are first reported to civil authorities and then to the Archdiocesan Victim |
| 21 | Assistance coordinator. Every allegation is treated seriously, and immediate steps |
| 22 | are taken to protect the rights of both the alleged abuse survivor and the alleged |
| 23 | abuser. We have taken exhaustive steps to satisfy the Charter by immediately |
| 24 | keeping out of active ministry any minister accused of sex abuse of a minor while |
| 25 | an investigation or canonical trial is pending. And we would remove permanently |
| 26 | from ministry any priest for which the statable evidence abuse has been determined. |
| 27 | We require criminal background checks for clergy employees and volunteers who |
| 28 | work with youth, and we implement educational programs for both children and |
| 29 | adults to prevent abuse. We maintain an Independent Review Board, which we |
| 30 | refer to as the IRB, as an essential step in internal procedures or handling |
| 31 | allegations of sexual abuse. A qualified investigator conducts investigations into |
| 32 | allegations and submits a report to the IRB whose members include an abuse |
| 33 | survivor, psychologist, two physicians, and a retired police officer. These are |
| 34 | experts in their respective fields with unique experiences that I do not possess, so I |
| 35 | heavily rely on their expertise. They make recommendations as to whether there is |
| 36 | sufficient evidence to warrant a canonical trial or if, on the other hand, an |
| 37 | accusation is manifestly unfounded. Their recommendations are indispensable to |
| 38 | me in helping to determine the best course of action, including when injustice we |
| 39 | should remediate damage to the reputation of a priest who has been wrongly |
| 40 | accused. I have always followed their guidance. |

October 12, 2023 | eLitigation Services, Inc.    7
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1   The Archdiocese also has an Office of Child and Youth Protection to maintain the
2   highest standards for its Preventative Safe Environment Program and address
3   allegations of past and current abuse by any clergy, employee, or volunteer.  We
4   employee safe environment coordinators to monitor compliance with the Charter.
5   In addition, a victim assistance coordinator maintains a hotline for reporting abuse,
6   provides counseling, and offers other supportive services.  The office is also
7   responsible for coordinating the fingerprinting of employees, volunteers, and clerics
8   who interact with children, as well as facilitating annual compliance audits
9   conducted by independent auditors to review the implementation of policies and
10  procedures for the protection of children.

11  As I indicated previously, I am grateful to my predecessors and other leaders in the
12  Archdiocese who have worked hard to put effective educational and preventative
13  measures in place, as I am encouraged by the fact that occurrences of abuse within
14  the Catholic church are now very rare.  I believe the church has set the standard
15  today for other organizations showing what can and should be done to protect our
16  children.

17  After listening carefully to the opening remarks of the Committee's attorney in last
18  month's call, I want people listening to know that filing for Chapter 11 bankruptcy
19  was not our first choice.  We work very hard to settle cases, just as we successfully
20  did in 2003.  We started, as we did in 2003, by looking at settling small groups of
21  cases.  But with more than 500 cases, and the skyrocketing financial demands made
22  by several plaintiff attorneys, we realized that it was financially impossible to settle
23  cases.  Without the financial means to meet the demands that were being placed
24  upon us, we were left with no choice but to file for Chapter 11, and we signaled to
25  the attorneys in advance that we were strongly considering a Chapter 11 filing.  We
26  realize that the bankruptcy process does not provide abuse survivors with the
27  opportunity to tell their stories as they would be able to in a trial setting.  I
28  recognize that this is an important part of the healing process, as I have sat and
29  listened to the powerful stories shared by abuse survivors, including those survivors
30  who serve us so well on our Independent Review Board.  I know first hand the
31  courage and resilience shown by these individuals in the face of so much suffering.
32  While we recognize that financial remuneration alone will not compensate for all
33  the suffering caused, we do believe the Chapter 11 bankruptcy process is the best
34  solution for providing timely, fair, and equitable compensation to the innocent
35  abuse survivors who have been harmed.  The process is transparent and under the
36  supervision of bankruptcy court.  It brings all parties to the table, including our
37  insurance carriers, and works to resolve difficult claims collectively, rather than one
38  at a time.  It eliminates a scenarios where the first few cases that are resolved extend
39  all available resources to pay claims leaving nothing for survivors whose cases are
40  resolved later.  The Chapter 11 process also allows the Archdiocese to reorganize,

October 12, 2023 | eLitigation Services, Inc.    8
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

Case: 23-30564    Doc# 1028-1    Filed: 02/27/25    Entered: 02/27/25 12:47:09    Page 23 of 42

| | | |
|---|---|---|
| 1 | | to continue its vital ministries to the faithful and to the communities that rely on its |
| 2 | | services and charity.  We will work to emerge from Chapter 11 as quickly as |
| 3 | | possible to provide a faster, more equitable resolution for abuse survivors, provide |
| 4 | | them with fair compensation and, hopefully, some level of closure and peace. |
| 5 | | Thank you. |
| 6 | **BLUMBERG:** | Thank you, Archbishop.  This is Jason Blumberg again from the United |
| 7 | | States Trustee's office.  Next, at this point, we are going to turn to the question and |
| 8 | | answer period, and this first question and answer period will be directed or |
| 9 | | permitted or will be directed again at members of the Official Committee of |
| 10 | | Unsecured Creditors.  Sandy, the operator on the line, can you please give |
| 11 | | instructions about how the committee members will indicate that they wish to ask |
| 12 | | questions? |
| 13 | **SANDY:** | Yes.  If they'd like to ask a question, please unmute your phones, record your name |
| 14 | | clearly when prompted, and your name is required to introduce your question.  You |
| 15 | | will need to press *1 to do this. |
| 16 | **BLUMBERG:** | And I would also ask that, in addition to that, when your line is opened up, |
| 17 | | that you state your name again for the record and that you spell it, just so that we |
| 18 | | have a good record in the event that there's a transcript. |
| 19 | **SANDY:** | Just one moment, please.  The person that just asked to speak for the *1, I'm going |
| 20 | | to remove your selection, and please come back, but this time unmute your phone |
| 21 | | and record your name, please.  Once again, if you'd like to ask a question, please |
| 22 | | press *1, unmute your phone and record your name.  All right.  Our first question |
| 23 | | comes from Margie O'Driscoll.  [phonetic] You may go ahead, ma'am. |
| 24 | **O'DRISCOLL:** | Thank you.  Archbishop, I'm Margie O'Driscoll, and I serve as the co-chair |
| 25 | | of the survivor's committee. |
| 26 | **BLUMBERG:** | Ms. O'Driscoll, I'm sorry to interrupt you.  Could I just ask you to spell |
| 27 | | your name for the record just so we have it?  I apologize. |
| 28 | **O'DRISCOLL:** | Yes.  My legal name is Margaret M-A-R-G-A-R-E-T, and my last name |
| 29 | | O'Driscoll O-D-R-I-S-C-O-L-L. |
| 30 | **BLUMBERG:** | Thank you.  Please go ahead. |
| 31 | **O'DRISCOLL:** | Archbishop, I'm Margie O'Driscoll, and I serve as co-chair of the |
| 32 | | Survivor's Committee, however, I speak to you today as an individual.  Archbishop, |
| 33 | | I've heard you tell the story that you received your calling to become a priest while |
| 34 | | at a college retreat.  My last experience at a Catholic retreat was when one of the |
| 35 | | priests from my Catholic high school attempted to rape me when I was 16.  Our |
| 36 | | difference experiences at a retreat shape both of our lives, and it has brought you |

October 12, 2023 | eLitigation Services, Inc.   9
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1    somebody.  These complaints are within the universe of accusations that could be
2    sent to the Internal Review Board?

3   **CORDILEONE:**      Yes.

4   **STANG:**      Okay.  So, before something goes to the Internal Review Board, is there someone
5                who makes a determination as to the credibility of the claim?  Because it sounded
6                like you were -- it suggested to me that someone's looking at this to determine if it's
7                manifestly unfounded, I think was the phrase you used earlier in your statement.  Is
8                there someone screening that before it goes to the Internal Review Board?

9   **CORDILEONE:**      It automatically goes to the Internal Review Board and going through our
10                legal counsel, or victim's assistance coordinator, the usual first point of contact.

11   **STANG:**      So any accusation of child sex abuse that comes into the Archdiocese goes to the
12                Internal Review Board?  There's no filter before it goes to them; is that correct?

13   **CORDILEONE:**      Correct.

14   **STANG:**      So, you said that in the 11 years of your service as the Archbishop, you've not yet
15                received a credible accusation against a priest.  Did I get that right?

16   **CORDILEONE:**      So far, correct.

17   **STANG:**      Okay.  I'll try to keep it up.  Since you became Archbishop, how many investigation
18                -- how many cases have been submitted to the Internal Review Board?

19   **CORDILEONE:**      Let's say there's been accusations in which we've had to conduct an
20                investigation, maybe seven, I believe, maybe eight.  Seven I could think of offhand.

21   **STANG:**      Okay.  I'm sorry, Archbishop.  I have to come back to something I was asking you
22                about earlier.  You just said "that we've had to conduct," "investigations that we've
23                had to conduct."  My understanding is that whatever accusation comes in goes to
24                the Internal Review Board.

25   **CORDILEONE:**      Yes.

26   **STANG:**      So -- okay.  I want to make sure that that -- your comment about how to conduct it
27                implies some kind of filter before it went to them.

28   **CORDILEONE:**      When I say "conduct an investigation," "we conduct an investigation," I
29                mean the Independent Review Board discusses it and then hires a professional
30                investigator to conduct the investigation.  That's what I -- that's what I mean when I
31                say "we conduct the investigation."  I mean it's under the direction of the
32                Independent Review Board.

33   **STANG:**      Got it.  And who is the "we" in that "we conduct the investigation?"

October 12, 2023 | eLitigation Services, Inc.     28
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1  **CORDILEONE:**    The Independent Review Board.  So, an accusation is made.

2  **STANG:**    Yes.

3  **CORDILEONE:**    Some official in the chancery office, it could be our legal counsel, victim's
4  assistance coordinator, as I had said, and then we review it, present it the
5  Independent Review Board and, again, if the facts at least line up, then the priest
6  informed he has to stay out of ministry while we conduct the investigation.  "We"
7  being the internal Independent Review Board advised me that an investigation
8  needs to be conducted.

9  **STANG:**    Okay.

10  **CORDILEONE:**    And then the Board will identify an investigator to do that.

11  **STANG:**    Got it.  All right.  Thank you.  That's helping me understand the process a little
12  better.  Who appoints the members of the Internal Review Board?

13  **CORDILEONE:**    I do.

14  **STANG:**    And of the, I think there are five members, if I remember correctly, who has had the
15  short -- who is the shortest seniority, I mean, how recently is the last appointee
16  appointed?

17  **CORDILEONE:**    Oh, I think it's -- I think two years ago.

18  **STANG:**    Got it.

19  **CORDILEONE:**    Is it okay if I ask someone in the room who may know the answer?

20  **STANG:**    Sure.  Thank you.

21  **CORDILEONE:**    Yeah, that's right.  I was reminded.  There's one who just started recently
22  this year.

23  **STANG:**    And who is that?  By the way, their names are public.  They're on your website, so
24  I'm not invading anyone's privacy by asking you that.

25  **CORDILEONE:**    His name is Paul.  He's the survivor on the --

26  **STANG:**    Right.  All right.  I know his last name.  So, thank you.  Does the Internal Review
27  Board have any role in reviewing the child protection policies of the Archdiocese?

28  **CORDILEONE:**    Yes.

29  **STANG:**    And how often does the Internal Review Board review those policies?

30  **CORDILEONE:**    We would review those policies usually after we're audited, and if there
31  are suggestions that are made, we would review it then.  For example, one thing

October 12, 2023 | eLitigation Services, Inc.  29
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 26
of 42

1    **CORDILEONE:**    Yes.

2    **STANG:**    Okay.  There were a lot of questions that I asked last time about whether the
3    Archdiocese maintains a list of credibly accused priests.  Do you have -- can you
4    provide me today a definition of what this Archdiocese -- how this Archdiocese
5    defines "credibly accused?"

6    **CORDILEONE:**    As you know, that's not a category in law, so different -- I've heard
7    different theories as to what "credibly accused" means.  I try not to use that term
8    and rather use a term "sustained" or "not sustained."

9    **STANG:**    Does the term -- I'm sorry, Archbishop.

10    **CORDILEONE:**    No, go ahead.

11    **STANG:**    I apologize.  I thought you were --

12    **CORDILEONE:**    Go ahead.

13    **STANG:**    Well, does the Internal Review Board, when they report to you the outcome of an
14    investigation, you said there have been some during your tenure, what do they say?
15    Do they say "This accusation is sustained," "This accusation is not sustained?"  Is
16    that how the phrase their report to you?

17    **CORDILEONE:**    Yes.

18    **STANG:**    Okay.  Does the Archdiocese have a list of clergy who are -- where the Internal
19    Review Board has made a determination that the accusation is sustained?

20    **CORDILEONE:**    We know which ones those are.  Yeah, we have our own lists.

21    **STANG:**    Okay.  Is it important to the Catholic community of the Bay area that there be a
22    consistent standard treatment of abuse claims, say example Santa Rosa, Oakland, or
23    San Francisco.  Do you think it's important that there be a standard approach to how
24    abuse claims are addressed?

25    **CORDILEONE:**    Well, within the church we do have a standard approach.

26    **STANG:**    Okay.

27    **CORDILEONE:**    We have the, you know, policies of the Charter for the Protection of
28    Children and Young People.  Our Dioceses follow those procedures.

29    **STANG:**    Right.  So, the Diocese of Santa Rosa publishes, and I don't know if they use the
30    term "sustained" or "credibly accused."  I'll stick with your terminology.  They have
31    published -- I'm sorry, it has published a list of sustained -- subjects of sustained
32    accusations.  The Diocese of Oakland has done that, and I may have said it while
33    you were still on the phone last time, every Diocese in California has done it except

October 12, 2023 | eLitigation Services, Inc.    31
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

Case: 23-30564    Doc# 1028-1    Filed: 02/27/25    Entered: 02/27/25 12:47:09    Page 27
of 42

1    for the Archdiocese of San Francisco.  Can you tell me why the Archdiocese of San
2    Francisco has not published the list of sustained -- a list of the names of those who
3    have sustained accusations?

4    **CORDILEONE:**    We publish a list of the names of priests and deacons in good standing
5    with faculties in the Archdiocese.  So, if anyone has a question about someone
6    presenting himself as a priest or a deacon, they can check the list to see if that name
7    is on the list.

8    **STANG:**    I understand that list exists, and I've looked at it.  Can you tell me why the
9    Archdiocese of San Francisco has not published the names of those who are the
10    subject of sustained accusations?

11    **CORDILEONE:**    I don't -- nobody's given me a reason why -- what -- a reason for doing so.
12    The most important thing is that our young people are being protected and that
13    those who abuse are kept out of ministry.  We're doing that.

14    **STANG:**    I agree with you that that is if not the most important thing, very close to the most
15    important thing.  But if I were the subject of sexual abuse by a priest in the
16    Archdiocese, do you think it is relevant at all to my healing to know whether the
17    Archdiocese has sustained accusations against my perpetrator?

18    **CORDILEONE:**    Yes.

19    **STANG:**    How do I know that?

20    **CORDILEONE:**    The name is not on our list of priests and deacons in good standing.  And I
21    haven't been involved in these investigations in the past.  If I were to be in an
22    investigation now, certainly the survivor would be informed of that.

23    **STANG:**    If my perpetrator were dead, he wouldn't be on the list, would he?

24    **CORDILEONE:**    That depends.

25    **STANG:**    Well, the ministers who are in good standing that you publish are all alive, aren't
26    they?

27    **CORDILEONE:**    Oh, that list.  That's correct.

28    **STANG:**    So, I wouldn't know because my perpetrators are deceased.  I wouldn't know if any
29    accusation had been sustained against him?  There's a question mark at the end of
30    that sentence.

31    **CORDILEONE:**    Oh, I see.  A survivor could obtain that information by contacting our
32    victim assistance coordinator.

October 12, 2023 | eLitigation Services, Inc.    32
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1    I hereby certify that the foregoing is a true and correct transcription of the audiotape labeled

2    10-12-23 JB RECORDING.

3

4    10/31/2023                              Carol Holmes
5    DATE                                    Printed Name
6
7                                            Carol Holmes
8                                            Signature
9

October 12, 2023 | eLitigation Services, Inc.   58
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

# EXHIBIT 3

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4    In Re:                    ) Case No. 4:23-bk-40523
                               ) Chapter 11
5    THE ROMAN CATHOLIC BISHOP OF  )
     OAKLAND                   ) Oakland, California
6                              ) Wednesday, July 19, 2023
                    Debtor.    ) 1:30 PM
7    _____ )
                               MOTION FOR AN ORDER
8                              AUTHORIZING AND APPROVING
                               SPECIAL NOTICING AND
9                              CONFIDENTIALITY
                               PROCEDURES (DOC. 6). CONT'D
10                             FROM 5/9/23, 5/23/23, 6/6/23,
                               6/20/23, 7/18/23
11
                               MOTION OF THE DEBTOR FOR AN
12                             ORDER ESTABLISHING DEADLINES
                               FOR FILING PROOFS OF CLAIM
13                             AND
                               GRANTING RELATED RELIEF (DOC.
14                             181). CONT'D FROM 7/18/23

15              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE WILLIAM J. LAFFERTY
16             UNITED STATES BANKRUPTCY JUDGE

17   APPEARANCES:
     For the Debtor:           ANN M. UETZ
18                             MARK C. MOORE
                               MATTHEW D. LEE
19                             Foley & Lardner LLP
                               555 California Street
20                             Suite 1700
                               San Francisco, CA 94104
21                             (415)434-4484

22   For the Creditors:        GABRIELLE ALBERT, ESQ.
                               Keller Benvenutti Kim LLP
23                             650 California Street
                               Suite 1900
24                             San Francisco, CA 94108
                               (415)496-6723

25

**eScribers, LLC**

```
 1  For the Creditors:        JEFFREY D. PROL
                              COLLEEN M. RESTEL
 2                            BRETT WEISENBERG
                              Lowenstein Sandler LLP
 3                            1 Lowenstein Drive
                              Roseland, NJ 07068
 4                            (973)597-2500

 5  For the Creditors:        MARK D. PLEVIN
                              Crowell & Moring LLP
 6                            3 Embarcadero Center
                              26th Floor
 7                            San Francisco, CA 94111
                              (415)365-7446
 8
    For the Creditors:        TANCRED SCHIAVONI
 9                            EMMA JONES
                              O'Melveny
10
    For the Trustee:          JASON BLUMBERG, ESQ.
11                            United States Department of
                              Justice
12                            501 I Street
                              Suite 7-500
13                            Sacramento, CA 95814
                              (916)930-2100
14

15

16

17
    Court Recorder:           NASH SINGH
18                            United States Bankruptcy Court
                              1300 Clay Street
19                            Oakland, CA 94612

20
    Transcriber:              RAVEN WOOD
21                            eScribers, LLC
                              7227 N. 16th Street
22                            Suite #207
                              Phoenix, AZ 85020
23                            (800) 257-0885

24  Proceedings recorded by electronic sound recording;
    transcript provided by transcription service.
25
```

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 32 of 42

1      OAKLAND, CALIFORNIA, WEDNESDAY, JULY 19, 2023, 1:32 PM

2                         -oOo-

3          (Call to order of the Court.)

4          THE CLERK:  Yes, Your Honor.  Calling line

5      (Whereupon these proceedings were concluded at 2:37 PM)

6  item number one for the Roman Catholic Bishop of Oakland.  Case

7  Number 23- 40523.

8          THE COURT:  Okay.  Why don't we do appearances on this

9  side of the room first.

10         MS. UETZ:  Good afternoon, Your Honor.  Ann Marie Uetz

11  of Foley & Lardner for the debtor.

12         MR. MOORE:  Mark Moore, Foley & Lardner on behalf of

13  the debtor.

14         THE COURT:  Okay.

15         MS. ALBERT:  Good afternoon, Your Honor.  Gabrielle

16  Albert, on behalf of the Creditors Committee.  And I have with

17  me Jeff Prol, Bert Weisenberg, and Colleen Restel.

18         THE COURT:  Okay.

19         MS. ALBERT:  And Ms. Restel will be taking over the

20  argument today on behalf of the committee.

21         THE COURT:  Okay.  Go ahead.

22         MR. PLEVIN:  Good afternoon, Your Honor.  Mark Plevin

23  on behalf of Continental Casualty Company.

24         MR. SCHIAVONI:  Your Honor, Tancred Schiavoni from

25  O'Melveny for Pacific.  And my colleague, Emma Jones.

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 33
of 42

1            THE COURT:  Okay.

2            MR. SCHIAVONI:  Also from O'Melveny.

3            THE COURT:  And on the screen, the Zoom folks.  Go

4    ahead.

5            MR. LEE:  Good afternoon, Your Honor.  Matt Lee of

6    Foley & Lardner, appearing for the debtor.

7            THE COURT:  Okay.

8            MR. BLUMBERG:  Good afternoon, Your Honor.  Jason

9    Blumberg for the United States Trustee.

10           THE COURT:  Okay.  Anybody else speaking?  No.

11           THE CLERK:  These are the only appearances for our

12   case.

13           UNIDENTIFIED SPEAKER:  Your Honor, there may be a

14   colleague of mine on it.  But I've told them not to appear

15   because he's not going to speak.

16           THE COURT:  Okay.  Gee, what's new?  Right?  I

17   listened to some of the hearing this morning, although I had to

18   leave before anything decreed happened.  So I, for the record,

19   I offered to put this off.  Everybody needs to go get a

20   sandwich or something that I was told that it was more

21   important that we start and end so people could make airport

22   schedules and such.  So I'm deferring to you guys on that one.

23   Okay?  All right.  So I think we have two big categories to

24   talk about, right?

25           MS. UETZ:  Hopefully, yes.

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 34
of 42

1          MS. UETZ:  We will resubmit with that revision.

2          THE COURT:  I Appreciate it.  Okay.  What else did we

3     have?

4          MS. UETZ:  I have nothing further for Your Honor

5     today.

6          THE COURT:  How about the confidentiality issues we

7     talked about yesterday?

8          MS. UETZ:  We await your ruling on that, Your Honor.

9          THE COURT:  You want it now?

10         MS. UETZ:  Please.

11         THE COURT:  Okay.  Thank you all for your very good

12    arguments.  What I find difficult about this is -- and I

13    sometimes tell people who work with me that the hard part of

14    this job is rarely the answer.  The answer, once you figured

15    out the question, the answer is usually pretty obvious.  That's

16    not the hard part.  The hard part is squaring the question so

17    that if people don't appear to be talking about the same thing,

18    you can come up with an approach that acknowledges that, gives

19    appropriate respect and deference to arguments that are really

20    sometimes ships passing in the night in some ways for a whole

21    bunch of reasons, and come up with something that is

22    notwithstanding responsive to the issues raised.  This is one

23    of those situations in the sense that there are there is a

24    seminal ninth Circuit case that I think you cannot read it

25    other than to say it assumes certain things that might

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 35
of 42

1    otherwise need to be proven.

2            Which is what, number one, is there any intellectual

3    or doctrinal competition anymore between what's set forth in

4    Section 107 and other common law doctrines and other sources of

5    protection for privacy or reputational matters?  And what the

6    Ninth Circuit seemed to say is no, 107 is 107.  It covers the

7    field.  It also says there are remarkable things that certain

8    kinds of accusations are, by their nature, scandalous.  So

9    therefore, when we find those, we're going to be protective.

10   It doesn't say exactly where and how you have to find them,

11   which is part of the problem.  That case, as I think Mr.

12   Weisenberg told me eloquently yesterday, and he's right, is a

13   case in which there were specific references to specific

14   documents.  There was testimony, and there were things that

15   emanated from the testimony that clearly checked every box.  So

16   in that sense, it was a relatively easy case for the Ninth

17   Circuit.

18           And let me pause there and say that is one avenue to

19   explore and to think about when we're trying to figure out

20   whether it's appropriate to grant the relief that the debtor is

21   asking for.  And I'll come back to the relief in a second.  The

22   other is clearly there is overlap here in that these issues

23   emanate from a different system.  That is a system by which the

24   California legislature has taken some care to be protective in

25   its own right.  And there are protocols, and there are

Case: 23-30564    Doc# 1028-1    Filed: 02/27/25    Entered: 02/27/25 12:47:09    Page 36
of 42

1    regulations, and there are safeguards there in that I don't

2    want to disrespect, but I'm not entirely sure to what extent

3    they're necessarily relevant.  And I'll come back to that in a

4    second, because what the Ninth Circuit seems to tell me as

5    we're talking about what happens in a bankruptcy case.  This is

6    your lane, Judge.  So in some ways, this is a little

7    discordant.  It feels odd that I would not be perhaps more

8    invested in what the State courts are going to do than I think

9    I might need to be.  But there it is.  I think that's -- the

10   Father M case sort of leaves that is an open question.

11          I take Mr. Weisenberg's point that the Father M case

12   certainly focused on documents, and accusations, and very

13   specific sets of difficult facts that are not presented in

14   exactly the same way here.  I don't find that to be an

15   impediment because -- and I if I'm overstating this, this would

16   be argument one in somebody's appeal -- there is simply so much

17   this is such a known quantity now.  Unfortunately, this problem

18   has been percolating around the country, unfortunately.  There

19   are thousands of individuals who've been horribly impacted by

20   bad acts.  Now, further, unfortunately, there are some

21   individuals who've been accused of those bad acts whose

22   liability is unknown and highly uncertain.  So that leads to a

23   lot of uncertainty about ultimate liability.  It doesn't lead

24   to uncertainty about what this is about.

25          And there's no doubt what this is about.  This is

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 37
of 42

1   about whether naming somebody publicly in the context of a

2   bankruptcy case, in the context of somebody says they were

3   molested by that person, sufficiently falls under what the

4   Court was worried about in Father M.  In my instinct is it

5   does, because there just is no doubt what this is about.  And

6   there's no doubt in my mind as to how that would cause

7   reputational damage.  The very fact that -- I mean, it's

8   somewhat poignant that one of these individuals, when accused

9   of that, maybe their lawyer would have told them, for heaven's

10  sake, don't say anything.  And that was that was something they

11  couldn't avoid doing.  They couldn't avoid saying, I never and

12  this is outrageous, et cetera, et cetera.

13          So the first point is to the level of evidentiary

14  support.  I think that is overcome by a realistic assessment of

15  what the controversy is here, and what the debtor's looking

16  for.  Which is simply to protect a couple of names in a

17  situation where it's clear what the accusation is, although the

18  details are not necessarily in front of us yet.  And it's even

19  clear what the reputational affect that would be.  What I think

20  the Ninth Circuit's also telling me, at least implicitly, is

21  we're telling you how to act in the bankruptcy case, Judge.

22  This is a court of extremely limited jurisdiction, and it's not

23  your job to tell state courts what to do.  It's not your job to

24  tell parties who are not in front of you what to do.  It is

25  your job to protect within the context of your case privacy,

1  confidentiality, protections against dissemination of

2  potentially scandalous information.

3       So that leads me to think that that is something I

4  need to look at independently.  So I think that leads me to the

5  conclusion that I should grant the motion.  I will come back in

6  a second -- I'll come back right now, to what is the effect of

7  the information having been made public.  My instinct is I may

8  well, as I think you use the phrase, I may be informed by

9  something that the State court does.  And at the moment, what I

10  understand is from the debtors perspective and certainly from

11  the accused press perspective, that dissemination, to the

12  extent it was even in official pleadings, was wrongful.  I went

13  back and had a look at what the proposed corrective action is,

14  the proposed corrective action is a little bit ambiguous to me

15  because I think it's a motion to seal and how the State court

16  will look at a motion to seal after fact, I don't know.

17       But they may say all kinds of things that are very

18  interesting, but one way or the other, that is for them to fix

19  and they'll fix it whatever way they want.  If that if anybody

20  thinks that fix changes the result that I'm coming to today,

21  they can tell me that that.  That I'm over my skis or whatever

22  the right term would be.  That I've done something that is

23  overbroad or is unnecessary because the State courts indicated

24  some relief is appropriate there.  And I I should, if not be

25  precluded by that, I should be informed by that.  I'm open to

1    that. And they'll do whatever they're going to do. But I do

2    think that the father case is instructive to me that, with

3    respect to this system, I should keep that information

4    confidential. And the fact that it has been disseminated to

5    some degree doesn't change that for me, because I think the

6    further dissemination in the course of something is otherwise

7    public as a bankruptcy case and potentially notorious as a

8    bankruptcy case has its own detriment. And I'm going to agree

9    to that, at least indirectly, that is what the Father M case

10   tells me.

11        So all of this is now, I will concede something that

12   Mr. Weisenberg also said, which is this is a little bit

13   amorphous. So at the moment I'm making this ruling because I

14   think that's the direction I'm told to go by the Ninth Circuit,

15   to be especially protective in this realm, in this context. It

16   doesn't mean that something couldn't change tomorrow and then

17   this would be improvident or unnecessary. So this ruling is

18   for today.

19        It's with respect to information that is out there in

20   one form, not in another. It's not yet out in this form. So

21   I'm protecting this form, not any other. It's not my job to

22   protect any other. If anybody thinks that whatever the State

23   court does, when they get around to ruling on a motion to seal

24   or whatever, it's going to be as relevant, I'll be all ears.

25   Either side. Okay. But for today's purposes, I think the

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 40
of 42

1 better result here is that I protect this information in this

2 form the way I think the Ninth Circuit told me to.  Okay.  So

3 the motion is granted without -- if you want to just say, for

4 the reasons stated on the record, say so.  All right.

5          MS. UETZ:  Yes, Your Honor.  Thank you.

6          THE COURT:  And by the way, and thank you to all of

7 you for your good arguments and for reminding me of  -- and I

8 don't mean to be flip by this, the passion behind the different

9 positions here.  I am enormously respectful of that.  And there

10 is no way to square some things in this case.  There just

11 isn't.  So thank you, all of you, for your wonderful arguments

12 and I look forward to many wonderful arguments from you in the

13 future.  Okay.?

14          MS. UETZ:  Thanks, Your Honor.

15          THE COURT:  Okay.  You're welcome.  All right.

16 (Indiscernible).  We're done.  Okay.  Thank you.

17          (Whereupon these proceedings were concluded)

18

19

20

21

22

23

24

25

Case: 23-30564   Doc# 1028-1   Filed: 02/27/25   Entered: 02/27/25 12:47:09   Page 41
of 42

1          C E R T I F I C A T I O N

2

3    I, Raven Wood, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7    *Raven Wood*

8    _____

9    /s/ RAVEN WOOD

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  July 23, 2023

16

17

18

19

20

21

22

23

24

25