

**Signed and Filed: March 26, 2025**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 23-30564-DM |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | ) |
| | ) |
| Debtor. | ) |
| | ) |

**MEMORANDUM DECISION ON MOTION FOR ORDER AUTHORIZING DISCLOSURE OF INDEPENDENT REVIEW BOARD MINUTES AND AGGREGATED CLAIMS DATA**

I. <u>INTRODUCTION</u>

On March 13, 2025, the court conducted a hearing on The Official Committee of Unsecured Creditors' ("OCC") Motion ("Motion") for an Order Authorizing Disclosure of Independent Review Board Minutes ("Minutes") and Aggregated Claims Data ("Claims Data") (Dkt. 988). Appearances are noted on the record.

For the reasons explained below, the court will grant the Motion as to the Minutes and grant the Motion, with modifications, regarding the Claims Data.

-1-

## II. BACKGROUND

Since around 2002, the Debtor has maintained an Independent Review Board ("IRB") that is an advisory board that investigates and makes recommendations directly to the Archbishop concerning cases in which a clergy member is accused of sexual abuse of a minor, along with other related tasks. By the Motion, the OCC seeks "disclosure of non-privileged portions of the IRB Minutes for the sake of public safety because the Archdiocese continues to assure the public that children are safe by emphasizing the role of the IRB's 'expertise' and their 'independent' evaluation of sexual abuse allegations." (Motion, page 1). The Minutes that are specifically identified and which the OCC wants freed from the court's Order Approving Stipulated Protective Order ("Protective Order") (Dkt. 374) are set forth in a sealed Exhibit B to the Motion. The information set forth in Exhibit B is the product of discovery undertaken by the OCC, which discovery is covered by Fed. R. Civ. P. 26(c) ("Rule 26(c)") incorporated by Fed. R. Bankr. P. 7016 and subject to the Protective Order.

The OCC also seeks to make public the Claims Data that it has extracted and anonymized from hundreds of confidential proofs of claim filed by abuse survivor claimants (the Survivor Claimants") in this case. The Claims Data is found in Exhibit A to the Motion. It consists of six parts: the age range of survivors at the beginning of abuse; the current age range of survivors; specific types of abuse alleged in the proofs of claim; the names of the perpetrators identified in the claims;

the parishes and parish schools where the abuses occurred; the non-parish schools or orphanages where the abuses occurred.

The Claims Data is subject to the court's Order: (1) Fixing Time for Filing Proofs of Claim; (2) Approving Proof of Claim Forms; (3) Providing Confidential Protocols; and (4) Approving Form and Manner of Notice ("Bar Date Order") (Dkt. 337) and 11 U.S.C. § 107(a) and (b) ("Section 107"). The controlling authority that governs this court's disposition in interpreting and applying Section 107 is *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F. 3d 417 (9th Cir. 2011) ("*Father M*"). *Father M* and the Protective Order dictate the outcome under Rule 26(c) insofar as Exhibit B is concerned; Section 107 controls the outcome regarding Exhibit A.[1]

III. **BANKRUPTCY PURPOSE OF THE MOTION**

The Debtor argues there is no bankruptcy purpose for the Motion. As there is no pending objection before the court, no specific provision of the Bankruptcy Code or Rules discussing

---

[1] While the Debtor's Opposition and some caselaw interpreting *Father M* tend to blend the separate analyses under Section 107 and Rule 26(c), the court clarifies that the text of *Father M* applies a Rule 26(c) analysis to discovery documents that were subject to a protective order, and a Section 107 analysis applies to a sealed memorandum estimating damages due to clergy abuse that was filed on the court's docket. In this case and mirroring *Father M*, a Rule 26(c) analysis is appropriate as to the Minutes that were produced in discovery pursuant to the Protective Order. A Section 107 analysis is appropriate as to the Claims Data, which is aggregated from proofs of claim, but for the court's employment of a claims and noticing agent, would have been filed directly with the court. The Minutes have only been filed under seal on this court's docket as part of the Motion—that alone does not mean the Minutes are "filed with the court" for Section 107 purposes.

-3-

the merits of the request, Debtor feels that the Motion is presented for improper purposes. The court disagrees.

This is not a situation where a particular claimant is prosecuting civil litigation against the Debtor, wherein the facts and circumstances of whatever occurred were governed by individualized specific facts and applicable law and that could result in civil damages awarded to a single plaintiff. That was the prospect Debtor faced before filing bankruptcy, albeit many times over. Rather, presented here is a much broader question dealing with the function of the bankruptcy court in this substantial case involving hundreds of claims alleging clergy abuse, all of which have been yanked out of traditional state courts and have been thrust into this bankruptcy court, at the Archbishop's behest. This is an increasingly common situation in the reorganization of an entity facing numerous similar tort claims under the Bankruptcy Code, and invariably includes not only the fixing and payment of allowed claims but also some sort of curative, remedial or corrective conduct affecting future actions and the protection of unwitting future victims.[2]

---

[2] See, e.g., *Corrected Order Confirming Debtor's Plan of Reorganization Dated October 26, 2016, In re Roman Catholic Bishop of Stockton*, Case No. 14-20371-C-11, Dkt. 843 at Ex. 12 (containing all non-monetary commitments of the Debtor post-confirmation, including a commitment to publishing a list of clergy members credibly accused of abuse of minors, a letter of apology to all abuse claimants and/or family members, and public forums at each parish and school where abuse had been alleged); *Order Confirming Second Amended Chapter 11 Plan of Reorganization Dated September 15, 2015, Proposed by the Archdiocese of Milwaukee*, Case No. 11-20059-svk, Dkt. 3322 at Sec. 13.5 (detailing nonmonetary commitments to child protection and transparency, including commitment to publishing a list of

This is the way the bankruptcy system deals with wildfires, drug purveyors, product defects, and countless other tort liabilities owned to substantial numbers of unwitting and involuntary claimants. The public purpose and the role of the court is obvious and is a critical component of a critical process.

In this case, as in many other bankruptcies involving mass torts, the plan resolution is only successful when all parties, including those tort claimants unwillingly brought into the bankruptcy court, feel as though the process is fair and progress is being made. They have an important role in the process, albeit hard to measure in any tangible way. The OCC has made clear that progress towards a consensual resolution is not being made, and while the Debtor disagrees as to that, the Motion serves as a possible step toward a consensually mediated plan. This is an admirable goal.

Recently, another bankruptcy court addressed the bankruptcy purpose of ensuring abuse survivors are heard:

> The reality is that profound human, psychological, and spiritual aspects of church sex abuse cases transcend tort damages. The bankruptcy reorganization process may be proficient in the hard-headed business of marshaling diocesan resources and insurance coverage available to fund tort damage payments, but it does little to heal festering psychological wounds.
>
> Anything that promotes reconciliation, catharsis, and solace for sex abuse victims in a chapter 11 case

---

clergy members credibly accused of abuse of minors, a letter of apology to all abuse claimants and a written statement of gratitude to survivors of clergy abuse who were brave enough to come forward and tell their stories).

-5-

> serves the interests of justice and is a worthy task for a bankruptcy judge.

*Memorandum Order on Motion to Authorize Presentation of Survivor Statements*, E.D. Cal. Case No. 24-21326-C-11, Doc. 1153, page 2, lines 11-24.

The Motion serves a clear bankruptcy purpose, and an argument that no such purpose exists, from the very Debtor who brought these claims and discovery into this court, is not credible and is rejected.

**IV. DISCUSSION**

    A.   Exhibit A – Claims Data

Section 107(b) "require[s] courts to use care in determining when documents containing sensitive information affecting a person's privacy interests can be made public over that person's objections." *Father M* at 433. Here, the objecting party is the Debtor, and as to the court's inquiry under Section 107, its focus shall be the Debtor's privacy interests and whether the information contained in Exhibit A would be scandalous for the Debtor. The privacy interests of the Survivor Claimants are analyzed in relation to the confidentiality provisions of the Bar Date Order. The court first addresses the interests of the Debtor, then the Survivor Claimants.

Subject to certain exceptions, documents filed in a bankruptcy case are public records. Section 107(a). "On request of a party in interest, the bankruptcy court shall . . . protect a person with respect to **scandalous** or defamatory matter contained in a paper filed in a case under this title. Section

107(b)(2). The Debtor objects to Exhibit A's being made public on the grounds that Exhibit A contains scandalous matter.

Under *Father M*, "matter is 'scandalous' if it is disgraceful, offensive, shameful, and the like . . . allegations that a priest has sexually abused children are most assuredly 'scandalous' because they bring discredit on the alleged perpetrators." *Id.*

The key difference between the facts of *Father* M and the Motion here is that in *Father M*, the parties seeking to keep sealed a specific memorandum measuring damages related to priest abuse, were two individuals, anonymous priests purportedly named in the memorandum and/or exhibits to the memorandum, and **not** the Roman Catholic Archbishop of Portland, Oregon. Here, the person seeking to keep the Claims Data confidential is the Debtor, The Roman Catholic Archbishop of San Francisco. The scandal of being an individual (and as yet publicly unknown) priest accused of specific scandalous conduct is not at issue here as it was at issue in *Father M*, and the court sees no reason to extend the definition of scandal of accusation beyond the one actually being accused. Section 107 and *Father M* cannot be broadly applied in the way Debtor wishes, but it is clear to this court that even if a specific priest is not seeking the protections of Section 107, allegations against specific priests are indeed scandalous due to the potential discredit brought upon them. Thus, the names of perpetrators in Exhibit A that the Motion seeks to make public must remain confidential. Identification by initial only ensures scandalous material remains protected,

Case: 23-30564    Doc# 1105    Filed: 03/26/25    Entered: 03/26/25 09:50:14    Page 7 of 11

while allowing for information that would otherwise be deemed public under Section 107(a) to be made public.

Next, the court turns to the Bar Date Order and the confidentiality of Survivor Claimants' information. The Bar Date Order sets forth a procedure for those defined as Survivor Claimants (those alleging claims against the Debtor for sexual abuse by persons for which the Debtor was responsible). That procedure was the filing of the Confidential Survivor Proof of Claim and the Optional Confidential Survivor Supplement. The Survivor Proofs of Claim and Optional Confidential Survivor Supplements were to be filed with the claims agent on a strictly confidential basis in order to maintain the privacy of the Survivor Claimants. The purpose of the Bar Date Order was to ensure Survivor Claimants felt safe enough to file claims in a timely fashion to ensure the main purpose of this bankruptcy — administration of the hundreds of claims of Survivor Claimants — was successful.

The OCC filed the Motion. Sitting on the OCC are Survivor Claimants who duly represent the interests of Survivor Claimants generally. The OCC in this instance, however, cannot claim to speak for **all** Survivor Claimants on the topic of the strict confidentiality that those Survivor Claimants may have relied on when submitting detailed proofs of claim. Thus, the court will grant the Motion as to the Claims Data, with names of accused priests removed or reduced to initials as discussed above, and only after all Survivor Claimants are given notice and opportunity to opt out of having their anonymized data be a part of the Claims Data. To that end, the OCC should provide a

twenty-one (21) day written notice to each Survivor Claimant and any counsel of record to request that any data included in the Claims Data derived from their claims be extracted and excluded from the Claims Data. Counsel for the OCC should meet and confer with counsel for the Debtor to agree on the exact form of the notice, and the court will resolve quickly any disagreement as to that form. The court notes that opt out (that is, requesting that Survivor Claimants respond only if they wish to exclude their information from the aggregated claims data) is appropriate.

The Claims Data, so revised, may then be made public by the OCC.

B. Exhibit B – The Minutes

*Father M* sets forth the two-step test of Rule 26(c) a court must follow upon a request to make public information that is currently confidential pursuant to a protective order. "First, it must determine whether particularized harm will result from disclosure of information to the public . . . .. Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether maintaining a protective order is necessary." *Id.* at 424 (internal citations and quotation marks omitted).

As to the first step, Debtor does not allege any particular harm that will result from the disclosure of the Minutes to the public, beyond a general claim that the material of the Minutes is scandalous pursuant to Section 107, as the Minutes contain deliberations on the merits of abuse allegations against clergy

-9-

members and other employees of the Debtor. In Rule 26(c) analysis, a general allegation that the material is the type of "broad allegation[] of harm, unsubstantiated by specific examples of articulated reasoning" that does not satisfy the Rule 26(c) test. *Id.*

Without any particular harm articulated by Debtor, the analysis under Rule 26(c) must end here. Without any particular harm looming, there is no need to go to the second *Father M* step. The Minutes should be made public under presumption of public access to information produced during discovery. As to whether material in the Minutes is scandalous to any accused individual under Section 107, the Minutes are already anonymized (via initialization or nicknames) and redacted, so the scandal related to naming an individual accused of abuse of a minor is already avoided.

Accordingly, the court will enter two orders consistent with this Memorandum Decision. The first will be as to the Minutes entirely, and counsel for the OCC should serve and upload that order. The second will be granting the Motion in part as to the Claims Data, to be served and uploaded after the time has run for Survivor Claimants to opt out as to their information.

**END OF MEMORANDUM DECISION**

COURT SERVICE LIST

ECF Recipients