Entered on Docket
April 10, 2025
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: April 10, 2025**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 23-30564-DM |
| THE ROMAN CATHOLIC ARCHBISHOP | ) |
| OF SAN FRANCISCO, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**MEMORANDUM DECISION ON MOTION FOR RELIEF FROM STAY**

I.  **INTRODUCTION**

On March 27, 2025, the court heard *The Official Committee Unsecured Creditors' Motion for an Order Granting Certain Trial-Ready Survivors Relief from the Automatic Stay to Pursue State Court Litigation* ("Motion") (Dkt. 1015); the *Debtor's Opposition to the Official Committee Unsecured Creditors' Motion for an Order Granting Certain Trial-Ready Survivors Relief from the Automatic Stay to Pursue State Court Litigation* ("Opposition") (Dkt. 1083); *Certain Insurers' Objection to the Official Committee Unsecured Creditors' Motion for an Order Granting Certain Trial-Ready Survivors Relief from the Automatic Stay to*

-1-

*Pursue State Court Litigation* ("Objection") (Dkt. 1081); and *The Official Committee of Unsecured Creditors' Reply Brief in Support of an Order Granting Certain Trial-Ready Survivors Relief from the Automatic Stay to Pursue State Court Litigation* (Dkt. 1097). Appearances are noted on the record.

For the reasons that follow, the court will grant the Motion in part and will overrule the Opposition and the Objection.

## II. BACKGROUND

Prior to bankruptcy, the Debtor and other California based dioceses and Catholic entities were parties to a matter pending in the Superior Court of California, County of Alameda, entitled *In re Northern California Clergy Cases*, JCCP No. 5108 ("Coordinated Proceedings"). On December 5, 2022, the court in the Coordinated Proceedings identified five cases described as "Bellwether Cases" for trial. Two of those cases (the "Trial Cases") are pending against Debtor (and no other defendant) in San Francisco Superior Court. The Trial Cases were days away from trial when Debtor filed its Chapter 11 case on August 21, 2023.

Now, almost twenty months into this Chapter 11 case, the Official Committee of Unsecured Creditors ("OCC") filed the Motion to obtain relief from the automatic stay to permit the Trial Cases to proceed to trial. Debtor and certain insurers ("Insurers") opposed that Motion. No party has questioned the standing of the OCC to act on behalf of the individual plaintiffs in the Trial Cases; no party has questioned the standing of the Insurers to file the Objection. For that

reason, the court will not question the standing of either the OCC or the Insurers and will proceed to address the merits of the Motion as presented.

As is well established by case law and bankruptcy practice, motions for relief from stay generally turn on case specifics and are decided through the court's exercise of broad discretion. Bankruptcy courts routinely consider the so-called "*Curtis*" factors in deciding to grant or deny such requests.[1] There are twelve *Curtis* factors, and some applicable factors will be considered briefly.[2] The most important factors that apply here will be discussed in more detail.

---

[1] *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).
[2] The *Curtis* factors are:
    (1)  Whether the relief will result in a partial or complete resolution of the issues
    (2)  The lack of any connection with or interference with the bankruptcy case;
    (3)  Whether the foreign proceeding involves the debtor as a fiduciary;
    (4)  Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;
    (5)  Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
    (6)  Whether the action essentially involves third parties, and the debtor only functions as a bailee o or conduit for the goods or proceeds in question;
    (7)  Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, or other parties;
    (8)  Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

## III. DISCUSSION

### A. Less Persuasive *Curtis* Factors

Factor 5 questions whether the debtor's insurance carrier(s) has assumed full financial responsibility for defending the litigation. Here, although the record is not completely clear, that factor weighs in favor of granting the Motion.

Next, Factor 7 asks whether litigation elsewhere will prejudice the interests of other creditors, the OCC or other interested parties. In a complex Chapter 11 reorganization where full payment by a debtor, with or without assistance of insurance, is highly unlikely, and others may be adversely impacted, denying such a motion would be appropriate. The present record, with no reason to suspect that allowed claims will not be paid in full, together with the active involvement of the OCC in bringing the Motion, supports granting the Motion. Added to that, the Trial Cases involve just two of hundreds of pending similar cases against the Debtor, so results there

---

(9)  Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial;

(12) The impact of the stay on the parties and the 'balance of hurt'

*Id.* at 799-800. The third, fourth, sixth, eight, and ninth factors have no application to this case and will not be addressed.

-4-

following jury trials may help facilitate a global resolution. This factor again weighs in favor of granting the Motion.

Factor 10 looks to the interest of judicial economy and expeditious and economical determination of litigation. Because the Trial Cases involve personal injury matters, 28 U.S.C. § 157(b)(5) precludes this court from deciding the Motion and thus a California Superior Court, or perhaps a United States District Court, is a more suitable forum. This factor also weighs in favor of granting the Motion.

Factor 11 looks to whether the matter is ready for trial. The comments of OCC counsel strongly indicated at the hearing that trial before a jury for the two plaintiffs in the Trial Cases is perhaps only weeks away. That factor clearly weighs in favor of granting the Motion.

### B. <u>Significant Curtis Factors</u>

It is inefficient separately to analyze and discuss the first, second, and last Curtis factors: whether relief from stay will result in partial or complete resolution of the issues; lack of interference with the bankruptcy case; and balance of hurt. The court will consider the first two factors in tandem, then apply them to assess the final one.

To begin, the court rejects the argument of the Debtor and the Insurers that no new data points are needed regarding the accused perpetrator. Though the court understands that the parties use the term "data point" to describe the outcome of a jury trial, the court emphasizes that the two plaintiffs themselves (along with other Survivor Claimants) are not data points. They are aging survivors of clergy abuse, with stories

that are both unique to themselves and similar to other survivors.

Letting two cases go to trial involving wrongful conduct committed decades ago by a long-deceased perpetrator, whose similar conduct resulted in two substantial judgments against the Debtor in previous decades, will not result in a complete resolution of issues in this bankruptcy. Verdicts in favor of those two plaintiffs will not resolve everything for them, since relief would only be to obtain and defend judgments, but not to collect on them except perhaps from the Insurers. But the insights provided from trying these cases, even if the outcome is a partial resolution for the two plaintiffs, will move the entire case toward, and not away from, a global resolution of these abuse cases.

Nor will trial of these cases, as Debtor contends, interfere with the main bankruptcy case. Despite the protests of both the Debtor and Insurers that allowing the Trial Cases to proceed will interfere with Debtor's mediation and reorganization efforts, neither have provided anything but responses without specifics to support their contention. The court is well-aware of the moving parts of any complex corporate reorganization, whether it be a massive public utility, a law firm, a tech company or a religious organization. The Debtor is not a small, understaffed business. It has its own panoply of active components engaged in a variety of schools, churches, charitable activities, administrative tasks, and religious functions, and more. This work is aided by many employees, one of whom is its general counsel. It has also engaged a

substantial number of outside attorneys and other professionals to deal with insurance, real estate, litigation, bankruptcy and other related matters. It can defend two long standing lawsuits, manage several hundred more (protected by the automatic stay) and move forward on its mediation and reorganization efforts at the same time. If the Archbishop personally, or any senior member of his staff, or any of his outside counsel, wish or need to attend sessions of the Trial Cases that conflict with a mediation session, or vice versa, the court is confident that either the mediators or the presiding superior court judge will accommodate them

In this court's experience as both a trial judge and as an occasional mediator, the actual conflicts between such parallel actions are more imagined than real. This case is no different. These two factors weigh in favor of granting the Motion.

### C. <u>Pending Mediation</u>

Before completing the assessment of the *Curtis* factors, it is necessary to look to one other important factor not explicitly found on the *Curtis* list. Mediation is now a regular part of the bankruptcy landscape for many large-scale tort-related bankruptcies. All parties have mentioned the numerous clergy-abuse cases around the country that have turned to mediation. This case is no exception. While ongoing mediation may be wrapped into one or multiple *Curtis* factors, the court feels that is a significant process that merits its own consideration when weighing a related motion for relief from stay.

-7-

This court has appointed the mediators, with the concurrence of the Debtor, the OCC, the Insurers and others. It has been and remains impressed by the mediators' experience and efforts in carrying out their assignment. It knows of several sessions that have occurred and several that are scheduled in coming days. The OCC says not enough progress is being made and relief from stay will encourage all parties to mediate in a more serious and meaningful manner. The Debtor and the Insurers say things are early in the process and on track. Somewhere in between is probably the case.

This court will not speak to the mediators. They know how to declare an impasse and they have not. The fact that they have scheduled more mediation is in this court's mind a good sign, not a bad one. This factor, which the court terms the progress of mediation, weighs in favor of denying the Motion <u>at this time.</u>

**IV.  BALANCE OF HARM**

The twelfth *Curtis* factor, the impact of the stay and balance of harm, is the driving factor of the court's ultimate decision. It is more properly thought of as a summation of all the considerations taken together and leading to the proper conclusion. The court concludes that more good than harm will be achieved, more progress forward than retreat backward or status quo will be the case, by granting the Motion but delaying the effectiveness of that grant for a short period. This will permit if not encourage the parties and the mediators to have a meaningful impact on the case. Both the OCC's citations to other bankruptcies that have progressed after relief from stay

-8-

has been lifted (and others that have languished where no stay relief was granted) and the court's own experience lead the court to this decision.

**V.    <u>CONCLUSION</u>**

Having considered all of the applicable factors, and weighing the interest of the parties and the potential for harm on both sides, the court exercises its discretion and will grant the Motion, effective June 30, 2025.  This brief pause is to allow more time for ongoing mediation, potentially to achieve a global resolution of matters that would render adjudication of the Trial Cases unnecessary.  After that, all sides will need to attend to both the trials and the mediation.

Concurrent with this Memorandum Decision, the court is issuing an order granting the Motion and permitting the Trial Cases to proceed without regard to and free of the automatic stay, effective as of June 30, 2025.

**END OF MEMORANDUM DECISION**

## COURT SERVICE LIST

ECF Recipients