SheppardMullin

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com

415.774.3238 direct
okatz@sheppardmullin.com

May 23, 2025

**Via Efile**

The Honorable Dennis Montali
United States Bankruptcy Court, N.D. Cal.
450 Golden Gate Ave., 16th Floor
San Francisco, CA 94102

Re:   *In re The Roman Catholic Archbishop of San Francisco*
      Case No. 23-30564 / **Response to Committee's Discovery Dispute Letter**

Dear Judge Montali:

The Roman Catholic Archbishop of San Francisco, a California corporation sole (the "Debtor" or "Archdiocese"), writes in response to the May 19, 2025 letter from the Official Committee of Unsecured Creditors (the "Committee"). The relief sought in the Committee's letter is improper and must be denied for five key reasons:

### I.   The Committee's Adversary Proceeding Precludes Rule 2004 Discovery

The Committee's letter conspicuously fails to mention its recently filed adversary proceeding (Adv. Proc. No. 25-03021), which broadly seeks to consolidate the Debtor with over 150 parishes, missions, schools, and other Catholic entities. The Committee's complaint alleges the Debtor operated these non-debtor entities as "divisions" of one unified enterprise. Established case law in this circuit and other jurisdictions clearly holds that once an adversary proceeding is filed, Rule 2004 discovery in connection with any issues in dispute in the adversary proceeding is impermissible and discovery must instead proceed under the more restrictive confines of Bankruptcy Rules 7026 through 7037 (incorporating Civil Rules 26 through 37).[1] The Committee's informal "BRG" requests relate to disputed issues and entities in the adversary proceeding and are a transparent attempt to avoid required discovery procedures.

---

[1] *See, e.g., Differential Engineering Inc. v. Geo-Logic Assocs., Inc. (In re Metal Recovery Solutions, Inc.)*, No. 22-1081-BFL, 2023 WL 215285, at *9 (B.A.P. 9th Cir. Jan. 17, 2023) (Under the "pending proceeding rule" … "if an adversary proceeding or a contested matter is pending and related to the instant dispute, then the parties to that proceeding or matter may no longer utilize the liberal provisions of Rule 2004 and should utilize the discovery devices provided for in Rules 7026 through 7037.") (citing *In re Art & Architecture Books of 21st Century*, No. 13-14135-RK, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019)); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (same).

**II.     The "BRG High-Priority Requests" Were Never Formal Discovery and are Misdirected at the Debtor**

<u>First</u>, the Debtor responded to 121 formal document requests. (*See* ECF 383, Order Granting Ex Parte Application). The so-called "**BRG** High-Priority Requests" were never formal Rule 2004 document requests but, rather, they were informal email communications between financial advisors (later shared with counsel). The Committee cannot bootstrap informal mediation discussions into compellable discovery without following proper procedures. Moreover, the Committee has already served Rule 2004 subpoenas on the auditor, BPM, whose files pertain to a variety of non-debtors, all of which have independent outside counsel. To the extent the Committee's letter seeks supplemental production from those non-debtors, it should pursue discovery directly from these third parties who maintain their own business records.

<u>Second</u>, the Committee's letter misleadingly suggests the Debtor has been unresponsive, but the written record demonstrates otherwise.  On March 17, 2025, the Debtor first replied to the "3.4.25" BRG list by email, explaining that some requests had already been addressed with no responsive documents found after diligent search, while others appeared to seek supplemental production following robust production sets that spanned up to 10 years or more, and specifically noted the Debtor was not able to provide or supplement non-debtors' production sets since those were non-debtor entities. The Debtor further clarified that if these constituted new requests rather than supplemental production, "they need to be reviewed and addressed with both written objections and a longer turnaround timeframe"—no formal requests were ever served.

Following a meet and confer call on March 24, 2025, Committee counsel emailed her annotated version of the BRG list with comments in red ink. What the Committee's letter conspicuously omits is any reference to these contemporaneous annotations, which reveal that for four of the five items now characterized as urgent in their discovery dispute letter, Committee counsel made *zero* follow-up notations.[2] This absence of red ink confirms that these items were not subject to further discussion, as the Debtor's counsel had already explained that responsive documents had been produced or that the Committee should pursue discovery directly from the relevant non-debtor third parties with independent counsel. The Debtor had previously facilitated introductions between the Committee's attorneys and counsel for these entities on these specific issues. The Committee's own March 24 annotations thus objectively demonstrate that the Debtor did not agree to supplement production on these disputed items.

Where red ink did appear as it relates to the letter—only next to item #16—Ms. Brown's March 24 notation merely indicated that the Debtor's firm "will check in with financial people" – her words. Significantly, the Debtor's counsel immediately responded that same day to clarify what was actually being checked, confirming any informal agreement was unrelated to item #16,

---

[2] Copies of the parties' email conferrals can be provided upon request, including in the event additional briefing is ordered.

and expressly stated the need to maintain written correspondence exactly so there would not be any disputes later.

The continuing written record confirms this understanding. The Debtor provided written email updates on agreed-upon BRG items on March 26, March 27, March 31, April 4, and April 11. Conspicuously absent from these updates is any agreement to address item #16 or the items now featured in the Committee's letter to this Court. Moreover, Committee counsel never once raised these five requests as urgent matters requiring resolution during the weeks of ongoing correspondence following the March 24 call.

On April 4, 2025, for example, the Debtor continued its cooperative approach by reiterating that it was "still analyzing our prior productions re: D&L" and specifically inquiring whether the Committee sought existing files "reproduced in a different format" or entirely new documents. The Committee never replied, formalized new requests, or clarified their scope. The Committee now seeks emergency relief for what appears to be largely third-party discovery that should properly be pursued directly from the relevant non-debtors who maintain their own business records and independent counsel, or alternatively, through new formal document requests in the pending adversary proceeding.

### III. The Committee Violated Mediation Confidentiality

The Committee's letter makes improper references to confidential mediation communications in violation of Local Rule 9047-1 pertaining to the "Confidentiality" of the Bankruptcy Dispute Resolution Program and the Court's Order Referring Case to Mediation (ECF 747). The Debtor will not respond in kind to these inaccurate characterizations, but notes that the Committee's disclosures directly undermine the Court-ordered mediation process.[3]

### IV. The Committee Can't Have It Both Ways: Claiming Pre-Petition Urgency While Demanding Post-Petition Documents

The Committee claims urgency to investigate pre-petition transfers under § 546 before the August 20, 2025 deadline, yet primarily seeks post-petition information (June 2024 statements) that cannot possibly relate to pre-petition avoidance actions. This contradiction reveals the Committee's true purpose: gathering evidence for substantive consolidation claims in its adversary proceeding—precisely what requires Rule 26 discovery pursuant to the "pending proceeding" rule. Moreover, had the Committee genuinely believed these requests were urgent for pre-petition transfer analysis, it would not have been silent during above-described informal discussions for months while repeatedly corresponding about other BRG items.

---

[3] The Debtor has **not** copied the mediators with this letter response. The Committee could have sought relief either from the mediators or this Court. Attempting to mix both together is inappropriate.

## V. The Debtor Has Already Provided Voluminous Responsive Data

Contrary to the Committee's assertions, the Debtor has already produced extensive information directly responsive to the Committee's informal requests. The Debtor's professionals have provided: live access to the Debtor's current financial system (Sage Intacct) for custom queries and reports; full database backup files (.bak) for the legacy accounting system (Serenic); and raw data exports in Excel format from both systems. The Committee has all pre-petition transaction-level data and does not claim otherwise.

The Debtor has also produced: statements of Debtor's balance pool fund (DEBTOR_047710-745) further supplemented by Debtor's monthly statements for the Investment Pool included in the MORs,[4] comprehensive D&L Committee meeting materials spanning from 2012 through 2019, including detailed Excel spreadsheets with financial statements, deposit account listings, loan portfolios, payment schedules, funds availability reports, and projected interest calculations (DEBTOR_084196, DEBTOR_084207, DEBTOR_084208); complete meeting agendas and draft/final minutes from the Archdiocese's Institutional Deposit & Loan Committee documenting governance oversight, policy decisions, and operational discussions from February 2014 through April 2019 (DEBTOR_084197-DEBTOR_084225); trial balance reports for deposit accounts showing proposed dividend fund calculations and distribution methodologies (DEBTOR_084207); complete D&L client databases containing detailed information for Catholic schools, churches/parishes, cemeteries, religious orders/retreat centers, and charity/youth organizations, including customer IDs, contact information, addresses, and account details (DEBTOR_010017, DEBTOR_010026); comprehensive deposit account records spanning from November 1995 through November 2022, showing account numbers, balances, principal deposits, interest earned, withdrawals, opening dates, and account status for projects including capital improvements, endowments, estates, cemetery operations, and other Catholic institutional purposes (DEBTOR_010017, DEBTOR_010026); detailed loan portfolios documenting loans for various purposes including COVID relief, equipment purchases, capital improvements, and construction projects, with complete loan numbers, descriptions, balances, origination dates from October 2020 through August 2022, and borrower information (DEBTOR_010017, DEBTOR_010026); transaction-level D&L ledgers containing over 5,000 detailed records from January 2014 through July 2023, including deposit transaction records from September 2021 through July 2023 for different customers and loan transaction records from November 2021 through July 2023, documenting all deposit and loan activities including initial balances, deposits, withdrawals, transfers, interest payments, principal payments, adjustments, and payoff information with corresponding payment methods (ACH, check, record transfer, undeposited funds), transaction dates, and system creation dates (DEBTOR_010018, DEBTOR_010027); and extensive annual financial reports and balance sheets for over 150 parishes, schools, and other

---

[4] Each MOR has a single page summary of the account activity for each of the Investment Pool accounts, called Schedule 2 in the Exhibits.

Catholic entities spanning fiscal years 2012 through 2023 (DEBTOR_003334-DEBTOR_006816, DEBTOR_010007).

Finally, insofar as the Committee's seeks to compel a search for more than 25-year-old setup documents (i.e., BRG issue 16) – that exceeds all norms of Rule 26 discovery, as they've identified no transfer theory extending back more than a decade. If such historical documents were necessary (they are not), the Committee must still seek them through proper Rule 26 discovery in the adversary proceeding subject to appropriate scope and proportionality limitations.

## VI.   Conclusion

The Committee's motion should be denied because it is nothing more than an improper attempt to sidestep well-settled Ninth Circuit law embodied in the "pending proceeding" rule and the discovery rules that apply to their own adversary proceeding.

Respectfully submitted,

Ori Katz
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP