Paul J. Pascuzzi, State Bar No. 148810
Jason E. Rios, State Bar No. 190086
Thomas R. Phinney, State Bar No. 159435
Mikayla E. Kutsuris, State Bar No. 339777
FELDERSTEIN FITZGERALD
 WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Telephone:     (916) 329-7400
Facsimile:      (916) 329-7435
Email:           ppascuzzi@ffwplaw.com
                    jrios@ffwplaw.com
                    tphinney@ffwplaw.com
                    mkutsuris@ffwplaw.com

Ori Katz, State Bar No. 209561
Alan H. Martin, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     (415) 434-9100
Facsimile:      (415) 434-3947
Email:           okatz@sheppardmullin.com
                    amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop of
San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and<br>Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>**DEBTOR'S OMNIBUS REPLY TO OBJECTION TO MOTION TO APPROVE COMPROMISE AND STIPULATION MODIFYING THE AUTOMATIC STAY**<br><br>Date:      September 4, 2025<br>Time:      1:30 p.m.<br>Location:  via Zoom<br>Judge:     Hon. Dennis Montali |

# Table of Contents

I. INTRODUCTION .................................................................................................... 4

II. LEGAL ARGUMENTS .......................................................................................... 5

   A. The Stipulation is a Compromise Reached in the Mediation. ............................... 5

   B. The Insurers Recycle their Unsuccessful Arguments Previously Made in the Santa Rosa Diocese Case. .................................................................................................... 6

   C. The Insurers' Objection to Demand Letters Lacks Basis and Hinders Efficient Case Evaluation. ............................................................................................................ 7

   D. The Insurers' Request to Condition the Lifting of the Stay on the Debtor's Non-Interference is Procedurally Unnecessary. ........................................................... 8

   E. The Stipulation Satisfies the A&C Properties Test. ............................................... 9

      1. The Probability of Success in Litigation. ....................................................... 10

      2. The Difficulties, if any, to be Encountered in the Matter of Collection. ........ 10

      3. The Complexity of the Litigation Involved, and the Expense, Inconvenience, and Delay Necessarily Attending it. ................................................................ 10

      4. The Paramount Interest of Creditors. ............................................................. 11

   F. There is Cause to Modify the Stay. ...................................................................... 12

III. CONCLUSION ..................................................................................................... 13

# Table of Authorities

**Cases**

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) .................................................................................................................................. 12

*Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 659 (1958) ............................................. 5

*Grief & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016), aff'd 705 F. App'x 600 (9th Cir. 2017) .................................................................................................. 9

*In re Arkoosh Produce, Inc.*, 2003 Bankr. LEXIS 2222, *28 (Bankr. D. Idaho 2003) ................. 7, 9

*In re Roman Catholic Bishop of Sacramento*, Bankr. E.D. Cal., Case No. 24-21326 ..................... 5

*Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986) ................................ 9

*Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 n. 9 (9th Cir. 1987) .................. 12

*The Roman Catholic Archbishop of San Francisco*, Bankr.N.D.Cal., Case No. 23-30564 ........... 10

**Statutes**

Fed. R. Evid. 201 ............................................................................................................................. 12

The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession ("Debtor" or "RCASF"), in the above-captioned chapter 11 case (the "Bankruptcy Case" or "Main Case"), submits this omnibus reply (the "Reply")[1] to the Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America), Pacific Indemnity Company, Westchester Fire Insurance Company (as successor in interest to Industrial Underwriters Insurance Company for policies JU835-8355 and JU895-0964), Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation, and Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (collectively, the "Insurers") Objection (the "Objection") to the *Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay* (the "Motion").[2]

## I. INTRODUCTION

By the Motion, the Debtor seeks approval of a Stipulation limiting the automatic stay to release five cases, a move that protects both the Insurers and the insureds from defending approximately 40 simultaneous lawsuits that would have inevitably eroded the insurance of the Debtor, put the Debtor at risk for the "empty chair" problem, burdened the Debtor—the discovery burden alone would be substantial—and interfered with the mediation. As set forth in the Injunction Motion, every covered lawsuit that proceeds to judgment against a parish or school without the Debtor, for example, most certainly depletes the same limited insurance policy that belongs to the bankruptcy estate—and potentially leaves the Debtor uninsured on those claims. [AP, ECF No. 8-1, page 2, lines 6-13].

Substantially similar stipulations were approved over the objections of insurers by the United

---

[1] All terms not otherwise defined herein have the same meaning as set forth in the Motion (defined below).

[2] Chicago Insurance Company and Fireman's Fund Insurance Company (collectively, the "Interstate Insurers") and Appalachian Insurance Company ("Appalachian" and collectively, with the Interstate Insurers, the "Joining Insurers"), filed a Joinder to the Objection on August 21, 2025, and requested the Court deny the Motion for the same reasons set forth in the Objection. [ECF No. 1303]. The Joining Insurers, along with those insurers listed above at page 1, lines 3-8 are collectively referred to herein as the "Insurers."

States Bankruptcy for the Eastern District of California and the United States Bankruptcy Court for the Northern District of California in the Roman Catholic Bishop of Sacramento and Roman Catholic Bishop of Santa Rosa cases, respectively. *See In re Roman Catholic Bishop of Sacramento*, Bankr. E.D. Cal., Case No. 24-21326 ECF No. 1484 and *In re Roman Catholic Bishop of Santa Rosa*, Bankr. N.D. Cal., Case No. 23-10113, ECF No. 1480; *see also*, Declaration of Paul Pascuzzi in Support of Reply at Exhibit A for the Sacramento hearing transcript and Exhibit B for the Santa Rosa hearing transcript.

This Stipulation, seemingly beneficial to all parties by preventing an onslaught of litigation and allowing the parties to focus on mediation, has been opposed by the Insurers. Importantly, the Motion does not seek to impose any obligations upon the Insurers that they would not otherwise have outside of this Bankruptcy Case. Yet by advocating for a denial of this Motion, the Insurers risk exposing their insureds to the very floodgates of litigation the Debtor has worked hard to keep at bay while mediation occurs, raising serious questions about whether the Insurers are fulfilling their duties under California law to act in good faith and defend the insureds' interests. *See e.g., Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 659 (1958) (the implied covenant of good faith and fair dealing requires the insurer to give at least as much consideration to the interest of the insured as it does its own interest).

Like the courts in the Sacramento and Santa Rosa cases, the Court should not entertain the Insurers' quagmire of issues in an attempt to divert attention from the simple question of whether the compromise before the Court should be approved. The Court should approve the Stipulation in the Adversary Proceeding and the main case.[3]

## II. LEGAL ARGUMENTS

**A. The Stipulation is a Compromise Reached in the Mediation.**

The Debtor filed the Adversary Proceeding and the Injunction Motion because the state court

---

[3] The Debtor filed a Notice of Amended Exhibit B to the Stipulation in the main case and the Adversary Proceeding to add six cases to the enjoined cases list by agreement of the Debtor, the Committee and the particular plaintiff claimant in those six cases. *See* ECF No. 1305 and AP ECF No. 22.

judge presiding over the coordinated proceeding requested clarification on the scope of the automatic stay. This was addressed in the *Declaration of Paul Gaspari* and Exhibits A and B, incorporated therein, filed in support of the Injunction Motion, including:

> "On March 27, 2025, Judge Chatterjee issued a written order for the March 26 Case Management Conference, stating, in part: "Defendants who wish to seek clarification on this issue [**whether an automatic stay regarding a debtor defendant applies to non-debtor defendants**] from a bankruptcy court where a defendant in this JCCP has filed a petition seeking bankruptcy protection **shall file a request for clarification within the next 30 days…**" [AP, ECF No. 8-2, ¶ 11] (emphasis added).

Subsequently, and during the mediation of this Bankruptcy Case, the Debtor was able to reach a compromise with the Committee, whereby, under the Stipulation, the operational burden of releasing five cases was considered tolerable, under the circumstances and in light of the likely alternatives absent a compromise.[4] The terms of the Stipulation, including the selection of the five Released State Court Actions, were negotiated in mediation. Contrary to the Insurers' mischaracterization, the Committee did not unilaterally select the Released State Court Actions. And this Court should not embark on a process to re-select different cases, as the cases were negotiated at length by the Debtor and the Committee with extensive involvement of the mediators.

**B.  The Insurers Recycle their Unsuccessful Arguments Previously Made in the Santa Rosa Diocese Case.**

The Insurers claim that the Released State Court Actions may not be representative of the broader pool. [Insurers Obj., p. 6, lines 13-15]. They do not, however, even attempt to show how or why these five cases, negotiated by the parties with the assistance of the mediators, are inappropriate. They offer no evidence, nor argument that the cases are not representative.

Judge Novack in the *In re Roman Catholic Bishop of Santa Rosa* case rejected this argument because it was not the primary function of the Motion. *See* Transcript of Hearing August 15, 2025, at page 35, lines 19-20 (attached to the Pascuzzi Declaration at Exhibit B). The Insurers propose

---

[4]  Of course, if the Court were to grant the Injunction Motion in full as requested, there would be no need for a compromise. However, given the risks and damage to the estate and mediation process that would occur had the Court not granted the Injunction Motion in full, the Debtor viewed the compromise to be the best course of action. *See generally* Decl. Fr. Patrick Summerhays, ECF No. 1288.

that the Court select the cases using either the existing federal MDL procedures with input from the plaintiffs and the Insurers, or the same selection methods used in the JCCP 5108 proceeding. [Insurers Obj., page 7, lines 6-7, page 8, lines 6-7, page 9, lines 6-13]. The Insurers' proposal is in effect a request for the Court to rewrite the Stipulation. *See* Stipulation at ¶ 3 (providing that, "[a]attached as Exhibit C is a list identifying 5 state court actions…to be released from the Stipulated Stay Injunction that shall proceed to trial…").

However, a bankruptcy court cannot rewrite the agreement, and by doing so, approve terms that differ from those to which the parties agreed. *See In re Arkoosh Produce, Inc.*, 2003 Bankr. LEXIS 2222, *28 (Bankr. D. Idaho 2003) (recognizing that to allow courts to effectively rewrite the terms of settlement agreements is contrary to the principle that courts should not substitute their preferences for the trustee's business judgment); *see also*, Pascuzzi Dec. Exhibit B, Transcript of Hearing August 15, 2025, at page 67, lines 3-11 ("It's their stipulation. It's not my stipulation. Their stipulation is this is what we want. Please grant relief from the automatic stay to allow these things to occur. And you're right. I can say, okay I'll do X, I'll do Y, and they can say, no, no, thank you. And then we're back to square one…"). Without providing any evidence, the Insurers boldly claim that "lifting the stay to allow five non-representative cases to proceed to trial, while hundreds of other cases remain subject to the automatic stay, serves no useful purpose in this case." [Insurers Obj., page 6, lines 4-6]. However, their argument ignores two crucial facts: (1) the Debtor entered into this compromise to prevent the significant disruption to the estate and the mediation process that could have occurred if the Injunction Motion had been denied, and (2) the Debtor and the Committee (likely the two most critical voices before the Court) believe the Stipulation serves a useful purpose.

**C.  The Insurers' Objection to Demand Letters Lacks Basis and Hinders Efficient Case Evaluation.**

The Insurers object to modifying the automatic stay to allow demand letters to be sent. Their primary argument, suggesting that this action would negatively impact the mediation process, is speculative. [Insurers Obj., page 14, lines 17-18]. This argument also was rejected by the Sacramento and Santa Rosa bankruptcy courts.

At the outset, the Insurers present no evidence to support their claim that sending demand letters would hinder the mediation and serve no "legitimate purpose in this case." [Insurers Obj., page 14, lines 16-23]. Moreover, it's axiomatic that insurance carriers routinely request detailed information about cases within their policy periods. Permitting individual demand letters for each plaintiff would require plaintiffs to evaluate the settlement value of their case and provide a basis for the demand. This process will provide information to the Insurers (and the Debtor) so that they may evaluate the settlement value of the cases in their policies. Therefore, the Insurers' assertion that currently available information is insufficient to respond to such demand letters disregards the established procedure designed to provide that very information. [Insurers Obj., page 14, lines 18-19].

**D. The Insurers' Request to Condition the Lifting of the Stay on the Debtor's Non-Interference is Procedurally Unnecessary.**

The Insurers argue that the "Court should condition any stay-lift on the Insurers being permitted to defend the cases without interference from the Debtor…" [Insurers Obj., page 11, lines 17-19].[5] This is procedurally unnecessary as the parties are obligated to not interfere with each other's contractual rights. Moreover, as recognized by the court in the *In re Roman Catholic Bishop of Santa Rosa* case:

> "…[A]ll the insurance companies are being asked to do is to live up to their contractual obligations, whatever they may be…No one's restricting the insurance company's rights at all here. So I mean, no one's altering anyone's rights here. We're just letting three cases proceed, if I grant the Motion." *See* Transcript of Hearing August 15, 2025, at page 40, lines 13-20.

---

[5] The Insurers are wrong in arguing that California Civil Code Section 2860 (which allows an insured the right to choose independent counsel) does not protect this insured Debtor. Contrary to the Insurers' representations, the Stipulation does not necessarily guarantee that the Debtor will be insulated from liability (for example, plaintiffs may argue that the stipulation does not apply if the Chapter 11 is dismissed). Moreover, the Debtor has a fiduciary duty to protect the Estate's assets, including the insurance assets, for the benefit of the estate. Accordingly, the Insurers' assertion that their coverage defenses cannot create a conflict between the interests of the Insureds and those of the Insurers is false, and their claim that the Stipulation relieves the Insurers of their good faith obligations to protect their insured is itself a reflection of the Insurers' bad faith conduct.

In short, the Stipulation does not in any way impact or interfere with the Insurers or the Debtor's rights and obligations under their insurance contracts. If the Insurers believe they need relief from stay for some reason, the Debtor will meet and confer with them, and if necessary, they can file a motion (or a stipulation if one is reached).[6] The Court should not grant unspecified relief from stay based on an opposition to a motion to approve a compromise.[7]

### E. The Stipulation Satisfies the A&C Properties Test.

As noted in the Motion, the Ninth Circuit has instructed that "[i]n determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) The probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). The law favors compromise, and "as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *Id*. "Each factor need not be treated in a vacuum; rather, the factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Grief & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016), aff'd 705 F. App'x 600 (9th Cir. 2017). As an initial matter, it is important to note that in making a determination of whether the proposed settlement meets the four-part *A&C Props* test, the proposed settlement should be viewed as a whole and, consequently, approved or denied as a whole. *In re Arkoosh Produce, Inc.*, 2003 Bankr. LEXIS 2222, *28 (Bankr. D. Idaho 2003). "To do otherwise would allow courts to effectively rewrite the terms of settlements contrary to the

---

[6] In any event, an insurer's motion for relief from the stay in order to pursue coverage litigation undoubtedly would fail if the coverage issues involved facts that overlapped with the underlying abuse case. Even outside of bankruptcy, coverage litigation with overlapping facts generally must be stayed or dismissed pending the outcome of the underlying abuse action. *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 301-302 (1993).

[7] The Debtor is not aware of any counter-motion for relief from stay having been filed by the Insurers.

principle…that courts should not substitute their preferences for the trustee's business judgment."[8] *Id*.

As set forth below and in the Motion, after applying the *A&C Properties* factors, the Court should determine that the Stipulation is adequate, fair, and reasonable, and is in the best interests of the estate and creditors. The Debtor was able to reach a compromise that it considered tolerable, in light of the alternatives without a compromise.

### 1. The Probability of Success in Litigation.

Given the inherent uncertainty with respect to the outcome of this dispute, this factor weighs heavily in favor of the approval of the Stipulation. Although the RCASF is confident in the merits of its position, there is no guarantee that the RCASF would ultimately be successful on the Injunction Motion. The Injunction Motion and supporting evidence demonstrate the adverse impact on the estate if the approximately 40 cases were allowed to proceed against the Non-Debtor co-defendants. Yet, other diocesan cases, including this Court, have shown a trend toward granting relief from the automatic stay in similar scenarios, a risk that was carefully weighed by the RCASF. *See The Roman Catholic Archbishop of San Francisco,* Bankr.N.D.Cal., Case No. 23-30564, ECF No. 1139 (granting in part certain trial-ready survivors relief from the automatic stay to pursue state court litigation); *see also The Roman Catholic Bishop of Oakland*, Bankr.N.D.Cal., Case No. 23-40523 ECF No. 2168 (granting the renewed motion of the Official Committee Of Unsecured Creditors to lift the automatic stay to permit plaintiff's personal injury claims to proceed in state court).

### 2. The Difficulties, if any, to be Encountered in the Matter of Collection.

This factor is not applicable.

### 3. The Complexity of the Litigation Involved, and the Expense, Inconvenience, and Delay Necessarily Attending it.

The expense, inconvenience, and delay that would ensue should the Court reject the Stipulation supports approval of the Stipulation. Litigating this dispute would involve the

---

[8] The Debtor notes that it appears the Insurers apply the *A&C Props.* test to only a portion of the Stipulation-the settlement demands. This is contrary to case law which provides that the proposed Stipulation should be viewed as a whole.

adjudication of complex legal and factual issues. Litigation also would divert the RCASF's attention from working on the resolution of this chapter 11 case. [*See* ECF. No. 1288, ¶ 5]. Absent the Stipulation, the RCASF would be required to incur significant fees and costs in the Adversary Proceeding. Furthermore, if the Court were to deny the Injunction Motion, then litigation of the approximately 40 Affiliate State Court Actions on a piecemeal basis would result in all of the detriments and risks that are outlined in the Injunction Motion. Despite the early stage of the Adversary Proceeding, the estate has already incurred significant fees and costs, indicating there is sufficient complexity and a high likelihood that litigating the Adversary Proceeding would result in considerable administrative costs to the estate. Furthermore, throughout this case, the RCASF has emphasized its goal of negotiating a plan of reorganization as early as possible. [ECF No. 14, ¶ 63]. The Stipulation is consistent with that objective.

**4. The Paramount Interest of Creditors.**

The paramount interest of creditors is sometimes said to be the most significant factor supporting approval. The Committee joined this Motion [ECF No. 1293], and no survivors opposed the Motion. Rather, a good number of survivors, and a good number of counsel for all survivors, approved the Stipulation.

As set forth in the Declaration of Fr. Patrick Summerhays filed in support of the Motion, modifying the stay upon the limited terms set forth in the Stipulation, to allow the *five* Released State Court Actions to go forward on a limited basis, dramatically alleviates the burden of litigation, and allows the Debtor, the Debtor's professionals, and many of the Non-Debtor Affiliates and their professionals, to focus their attention on the mediation, and on their collective efforts to reach a prompt consensual resolution of this Bankruptcy Case. [ECF No. 1288, ¶ 5]. Litigation of the approximately 40 Affiliate State Court Actions on a piecemeal basis would result in all of the detriments and risks that are outlined in the Injunction Motion, including substantial concerns about eroding the estate's insurance coverage by cases going forward against co-insureds without the Debtor. Additionally, the Committee joined this Motion [ECF No. 1293], and no survivors opposed the Motion.

Having weighed the four factors set forth by the Ninth Circuit in *A&C Properties*, the

1  RCASF believes that the Stipulation is fair and equitable, and approval of the Stipulation is in the
2  best interest of the estate and its creditors.

3  **F.     There is Cause to Modify the Stay.**

4  Section 362(d) of the Bankruptcy Code authorizes the Court to grant relief from the
automatic stay for cause. 11 U.S.C. § 362(d)(1). Although the Bankruptcy Code itself does not
define "cause," courts determine whether cause exists to lift the automatic stay on a case-by-case
basis. *See MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985); *see
also Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir.
1990). The Insurers argue that the *Curtis* factors do not support granting relief from stay. [Insurers
Obj., page 15, lines 15-17]. To the extent the *Curtis* factors apply to approval of a Stipulation for
relief from stay, they support the granting of the Motion.

The undisputed facts presented to the Court established that the Stipulation: (1) resolves the
litigation of the Adversary Proceeding; (2) prevents the expense and time associated with litigating
automatic stay issues in the Adversary Proceeding and underlying litigation in the state court actions;
and (3) streamlines the litigation process, narrowing the scope of the released state court actions to
*five* designated state court actions, thereby eliminating the uncertainty and potential burden of
defending against approximately 40 concurrent lawsuits. *See Declaration of Fr. Patrick
Summeryhays in Support of the Motion* [ECF No. 1288].[9]

Additionally, the Debtor has requested the Court take judicial notice of certain pleadings and
other court filings, including formal declarations, which are matters of public record and the proper
subject of judicial notice. *See* Fed. R. Evid. 201 (finding that a court may take judicial notice of a
fact "not subject to reasonable dispute in that it is either generally known within the territorial
jurisdiction of the trial court or capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questions"); *see generally Mullis v. United States Bankruptcy
Court*, 828 F.2d 1385, 1388 n. 9 (9th Cir. 1987). The Insurers have not disputed the taking of judicial

---

[9]   The Insurers' argument that his Declaration is somehow inadmissible because it states legal
conclusions and offers improper lay opinions is baseless. [Insurers Obj., page 4, n. 6].

notice of any of these documents—namely the Injunction Motion, and all pleadings and evidence in support of the Injunction Motion—and as they are proper documents for which judicial notice can be taken, the Court can and should take judicial notice of all such documents requested. In short, there is ample evidence of "cause" for modification of the stay under the limited terms set forth in the Stipulation.

### III. CONCLUSION

The Debtor respectfully requests the Court to grant the Motion.

Dated: August 28, 2025　　　　　　　　　FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By: */s/ Paul J. Pascuzzi*
Paul J. Pascuzzi
Jason E. Rios
Thomas R. Phinney
Mikayla E. Kutsuris
Attorneys for The Roman Catholic Archbishop of San Francisco

Dated: August 28, 2025　　　　　　　　　SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Ori Katz*
Ori Katz
Alan H. Martin
Attorneys for The Roman Catholic Archbishop of San Francisco