Mark D. Plevin  (State Bar No. 146278)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California  94104
Telephone:    (202) 580-6640
Email:    mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C.  20004
Telephone:    (202) 5809-6640
Email:    mturner@plevinturner.com,
jhess@plevinturner.com

Alexander Potente (State Bar No. 208240)
Jason J. Chorley (State Bar No. 263225)
CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California  94111
Telephone:  (415)_365-9800
Email:  alex.potente@clydeco.us,
jason.chorley@clydeco.us

Attorneys for CENTURY INDEMNITY COMPANY, PACIFIC INDEMNITY COMPANY, and WESTCHESTER FIRE INSURANCE COMPANY

[additional counsel listed in signature blocks below]

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and<br>Debtor in Possession. | No.  23-30564<br><br>Chapter 11<br><br>Judge Montali<br><br>**INSURERS' MOTION FOR STAY PENDING APPEAL**<br><br>Date: _____, 2025<br>Time:<br>Location:  via Zoom<br>Judge:  Hon, Dennis Montali<br><br>Objections due:  ____, 2025 |

Pursuant to Bankruptcy Rule 8007, the insurers identified in the signature blocks below hereby move for stay pending appeal of this Court's *Docket Text Order* issued on September 2, 2025 at 9:07 a.m. (the "Text Order"), on the grounds stated below.

/ / /

**Legal standard**

"Parties seeking a stay pending appeal must make a showing under four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"[1]  "The four factors may be weighed in a sliding scale, 'where a stronger showing of one element may offset a weaker showing of another.'"[2]

**Argument**

Movants submit that the requirements for issuance of a stay pending appeal are met under the circumstances of this case.

**A.    Likelihood of success on appeal**

"While it is not necessary for [movant] to show that it is more likely than not that it will win on the merits, 'at a minimum' . . . the petitioner must show that there is a 'substantial case for relief on the merits.'"[3]

Here, Movants believe they have a strong likelihood of success on appeal and, at a minimum, a substantial case for relief on the merits.  The evidence proffered by Debtor to support its claim that "cause" existed to lift the stay was inadmissible, thin, and conclusory. Debtor offered the declaration of Fr. Summerhays, which merely said that allowing the Five Cases "to go forward" on the terms set forth in the Stipulation "dramatically alleviates the burden of litigation," allows Debtor and others "to focus their attention on the mediation," and is "in the best interests of the Debtor's estate" because "it resolves the Injunction Motion with little to no additional expense to the estate."[4]  These are legal conclusions, not facts, and therefore

---

[1]    *Schoenmann v. Schoenmann (In re Schoenmann)*, 2025 WL 438716, *2 (Bankr. N.D. Cal. Feb. 7, 2025), quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  *See also In re Akhlaghpour*, 2018 WL 3357367, *2 (Bankr. C.D. Cal. July 9, 2018) (same, also citing *Nken*).

[2]    *In re Akhlaghpour*, 2018 WL 3357367 at *2, quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

[3]    *In re Blixseth*, 509 B.R. 701, 706 (Bankr. D. Mont. 2014), quoting *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012).

[4]    Dkt. No. 1288, ¶ 5.

inadmissible.[5]

In particular, Fr. Summerhays does not state a single fact, and does not explain what "burden of litigation" Debtor faced given that it is protected by the automatic stay, or why Debtor was not previously able to "focus [its] attention on the mediation." Indeed, the burden of litigation the Summerhays declaration appears to refer to is not litigation against Debtor, but rather litigation against Debtor's affiliates, who are not debtors. Ostensibly to "alleviate" this burden on other entities, Debtor invited an entirely new burden onto itself in the form of five cases that were previously stayed. Until it agreed to allow these cases to go forward, Debtor faced no articulated litigation burden that was interfering with its ability to participate in mediation.[6]

Since the evidence supporting the Court's determination in the Text Order that Debtor proved "cause" was not admissible, Debtor failed to prove "cause" to lift the automatic stay. The Insurers therefore have, at a minimum, a substantial case for relief on the merits.

In addition, the Court made a critical factual finding in the Text Order that "[t]he OCC did not unilaterally select the test cases." But there is not a single shred of evidence to support that finding. The Court appears to have relied on a completely unsupported statement in the Committee's reply brief that "the five cases slated to move forward were not unilaterally selected by the Committee."[7] But counsel's legal argument is not evidence, and may not be relied upon by a court to support a finding of fact. This is another reason the Insurers have a substantial case for relief on the merits.

Further, Debtor made no attempt to show that the "test cases," as the Text Order calls them, are in any way representative. If and when cases that are not representative go to judgment, the Insurers will rightfully not treat them as representative in the mediation process.

---

[5] The Insurers objected to admission of Fr. Summerhays' declaration into evidence because it states legal conclusions and offers improper lay opinions (Dkt. No. 1302 at 4 n.6), but the Text Order does not expressly address Insurers' evidentiary objections. *See also* N.D. Cal. Local Bankruptcy Rule 9013-1(d)(2) ("declarations shall contain only facts . . . and shall avoid conclusions and argument").

[6] Debtors have represented to the Court that they are in fact very focused on the mediation, which it says is "progressing as expected." Dkt. No. 1318, ¶ 5. *See also id.*, ¶¶ 4, 12)

[7] Dkt. No. 1315 at 2.

- 2 -

INSURERS' MOTION FOR STAY PENDING APPEAL
Case: 23-30564    Doc# 1342    Filed: 09/16/25    Entered: 09/16/25 18:13:22    Page 3 of 13

Thus, the entire exercise of allowing "test cases" to proceed will serve no useful purpose, and will only distract the parties and delay the mediation. Also, Debtor provided the Court with no information about the "test cases," other than their names and civil action numbers.[8] For example, Debtor provided no information regarding whether the cases are trial-ready, whether they have already been the subject of discovery, or even whether they are at-issue (*i.e.*, whether Debtor has answered any of the complaints); as a result, the Court had no basis to judge whether allowing the cases to proceed will achieve the stated purpose of providing the parties with information to use in the mediation. Nor did Debtor provide any evidence about the JCCP proceeding or any estimate as to when any of the Five Cases would likely be set for trial. The complete lack of information provided about the Five Cases alone should have led the Court to deny Debtor's motion for lack of "cause" for lack of any evidentiary support.

Accordingly, the Court had no evidentiary basis whatsoever to accept the stated purpose of allowing the Five Cases to proceed—obtaining judgments that give the parties useful information to use in the mediation. Resolution in fact is further away because of the Court's Text Order, not closer. This is yet another reason Insurers have a substantial case for relief on the merits of their appeal.[9]

In addition, the Court's Text Order appears to not fully apprehend the massive harm the Insurers will suffer from allowing issuance of more than 500 demand letters to Insurers. The Text Order dismissively concludes that the Insurers "cannot be surprised or harmed" by the demand letters, but that is far from the reality. Debtor's bankruptcy case has created an artificial circumstance whereby hundreds of claims are aggregated and paused, with no discovery proceeding and the insurers unable to obtain information beyond the limited amount that the

---

[8] The *only* information provided to the Court about the Five Cases is the list in Exhibit C to the Stipulation (Dkt. No. 1285-1 at p. 33 of 33).

[9] Debtor's August 29 status conference statement undermines the principal argument underlying the lift-stay motion, specifically that allowing the Five Cases to proceed in the tort system is necessary to permit the parties to understand the value of the cases. In that status conference statement, Debtor advised the Court that "[s]ettlement data points and paths for these cases are readily known and achievable here." *Debtor's Status Conference Statement for September 4, 2025 Status Conference*, Dkt. No. 1318, ¶ 6.

- 3 -

claimants voluntarily provide.[10]  The proposal that *all* claimants will suddenly and at once issue demand letters—potentially more than 500 of them—stands in contrast to the normal progression of cases in the tort system, where some cases proceed at a time through discovery pursuant to negotiated or court-approved scheduling orders, and demand letters are issued once sufficient discovery has taken place to allow parties to value a particular case and trial is approaching.  Authorizing issuance of hundreds of demand letters at the same time creates a compressed and burdensome timetable that is substantially different from how insurers would normally receive such demand letters, which here will undoubtedly present both "surprise" and harm.  And Debtors' claim that relief from stay is needed so that the claimants can determine the value of their claims makes absolutely no sense, since their demands necessarily will be based on the information they already have (but which Insurers do not).[11]

Apart from the burden of having to respond to so many letters, and the interference that will cause to the mediation by distracting the Insurers and their counsel, the Insurers do not have sufficient information about the claims to respond on the merits to the hundreds of demand letters they will receive.[12]  The Committee is candid in acknowledging that purpose of the demand letters is not to advance resolution, but instead to manufacture a risk "that do[es] not presently exist,"[13] specifically, to expose the Insurers to what the Committee would contend is tens of millions of dollars of extracontractual liability—that is, liability beyond policy limits—should the Insurers not accept whatever outlandish demands are set forth in the letters that will be sent.  The only way for the Insurers to respond to the letters on the merits is to seek

---

[10]  The Bar Date Order entered by the Court established a regime under which abuse claimants had the option, but were not required, to provide detailed information about their claims.  *See, e.g.*, Dkt. No. 337 at 21-27 of 39.

[11]  Dkt. No. 1311 at 5:22-26.

[12]  Advancing a *non sequitur*, the Committee's reply argued that it "has been pursuing discovery to investigate the Debtor's assets and liabilities pursuant Bankruptcy Rule 2004(a) since the Committee was appointed," and that "Insurers presumably have those documents or could seek them."  Dkt. No. 1315 at 4.  But information about Debtor's assets and liabilities is not what Insurers need to investigate the claims at issue in order to respond to demand letters.  Rather, Insurers need discovery from claimants, including depositions—none of which can take place because the stay continues to bar Insurers from taking such discovery.

[13]  Dkt. No. 1311 at 8.

to lift the stay to open discovery in every single case for which a letter is sent—thereby completely undercutting the purported justification for Debtor's stipulation with the Committee (which was to limit the number of cases proceeding in the tort system to just five). The upshot is that the stay here is improperly being deployed as both a sword and a shield—the stay is being lifted to allow issuance of demand letters, but is being kept in place to bar the Insurers from obtaining, through discovery, the very information they need to respond to the demands. And the harm from this tactic will fall entirely on the insurers, since there is no consequence for claimants who serve unsupported, unreasonable demands.[14]

Last, the Court erred by not holding the scheduled hearing on Debtor's motion. The Court should have held a hearing so that Insurers could have cross-examined Debtor's declarant, Fr. Summerhays. Because the Insurers were not given any chance to cross-examine Fr. Summerhays, it was error for this Court to consider his declaration—and without the Summerhays declaration, the Text Order is likely to be reversed because its finding of "cause" is completely without evidentiary support. In addition, the Insurers were given no opportunity to respond to the combined 20 pages of reply briefing submitted by Debtor and the Committee, which they could have done if the Court had allowed the scheduled hearing to go forward. The Court should have allowed the Insurers an opportunity to provide their responses during a

---

[14] In *Diocese of Syracuse*, the bankruptcy court rejected a request by individual claimants for relief from the automatic stay in order to serve demand letters. The *Syracuse* court ruled that the relief sought "would not result in partial or complete resolution of the claims" and would significantly and negatively impact the bankruptcy case:

> There's also a huge connection with the bankruptcy case and interference with it. It detracts from the mediation process that's undergoing. It detracts from the reorganization process. . . . And the discovery and the process involved in those demands would be expensive, would have to result in delay, and could impede the negotiations and the good faith that has gone on with the mediation process.

Transcript of Sept. 28, 2023 Hearing at 51:17-24, *In re The Roman Catholic Diocese of Syracuse*, Case No. 20-30663-WAK (N.D.N.Y. Sept. 28, 2023), attached as Exhibit C to the Insurers' Objection to the Motion (Dkt. No. 1302). It is worth noting that the *Syracuse* case is now on the eve of being resolved pursuant to a fully consensual plan, with the bankruptcy court having never authorized service of outside-of-mediation demand letters. Likewise, the *Diocese of Rochester* bankruptcy court earlier this month issued an order confirming a completely consensual plan without ever having permitted demand letters to issue. *See Decision and Order Confirming Eighth Amended Joint Chapter 11 Plan of Reorganization for the Diocese of Rochester*, Dkt. No. 3379, *In re Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y. Sept. 5, 2025).

- 5 -

hearing.

In sum, the fact that the Text Order was issued without any proper evidentiary basis makes it "more likely than not" that the Insurers "will win on the merits" or, "'at a minimum' . . . show that there is a 'substantial case for relief on the merits.'"[15]

**B.     The Insurers will be irreparably injured absent a stay**

Defense of the Five Cases will be irreparably harmed unless a stay pending appeal is issued. Since the Stipulation provides that the Insurers are the only ones exposed to having to pay the claims, any interference with the defense will harm the Insurers and them alone.

As soon as the Court's order lifting the stay is effective, the Five Cases will begin moving forward, potentially resulting in prejudice or even judgments before Insurers' appeal is decided. As an initial matter, defense counsel must be identified. As noted in Insurers' Objection to the Motion, there is an existing dispute over who will control the defense of the Five Cases—Debtor, which pursuant to the Stipulation has no financial exposure whatsoever to the cases, or the Insurers, who have the sole financial risk. The Five Cases will proceed toward judgment even as the issue of who has the right to defend them remains undecided. The Insurers will be irreparably harmed if Debtor is the one directing the defense of claims for which the Insurers have all the exposure and Debtor has none.[16]

Assuming Debtor's defense counsel is the one defending the Five Cases while an appeal is pending, litigation positions will be taken by Debtor's defense counsel and, once taken, may be impossible to reverse. Such inability to overcome or modify decisions by Debtor's defense counsel constitutes irreparable harm.

---

[15]  *In re Blixseth*, 509 B.R. 701 at 706, quoting *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012).

[16]  This assumes that previous defense counsel selected by Debtor will continue in that role. But Debtor has made no representation that that is so. In the *Diocese of Santa Rosa* case, the debtor, represented by the same lawyers as Debtor in this case, waited until after the court lifted the stay to release three cases to disclose that previous defense counsel would be unable to continue in that role. *See Insurers' Supplemental Statement*, Dkt. No. 1477 at 2-3, *In re The Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113 (Bankr. N.D. Cal. Aug. 24, 2025) (noting, after obtaining lift-stay relief, that previous defense counsel selected by Debtor would not be able to defend the cases for which stay relief had been granted). As a result, new counsel—whether selected by the debtor there, or the insurers—must be retained brought up to speed. The same may well be true here.

- 6 -

INSURERS' MOTION FOR STAY PENDING APPEAL

In addition, the Text Order permits more than 500 settlement demands to be issued, to which the Insurers will have to respond within whatever time the claimants unilaterally set, with potentially draconian consequences as described above. Being potentially exposed to extracontractual liability in hundreds of cases, while being barred (due to the automatic stay) from obtaining the information needed to respond to the letters, will irreparably harm the insurers.

The litigation activity and activity relating to generating responses to demands will interfere with the mediation proceedings—harming not only the Insurers, but also other parties.

### C. Whether issuance of a stay pending appeal will substantially injure the other parties interested in the proceeding

Issuance of a stay pending appeal will not harm any of the other parties to this case. A stay will merely reinstate the *status quo ante*, which was not harming Debtor (which entered into the Stipulation only to neutralize the alleged threat that *all* the cases would be permitted proceed in the tort system against non-debtor entities) or the claimants. The automatic stay is one of the most important provisions in the Bankruptcy Code. It is not only a key debtor protection, it also protects creditors from a race to the courthouse.[17] There can be no injury resulting from keeping the automatic stay in place while the question of whether it was improperly lifted is determined on appeal.

In fact, when the bankruptcy court in the *Diocese of Syracuse* case denied a similar motion to lift stay, the court specifically noted that lifting the stay would "detract[]" from the mediation process.[18] And issuing a stay pending appeal will protect all the claimants whose cases were not chosen as one of the Five Cases from the discriminatory treatment they will suffer if the plaintiffs in the Five Cases are able to obtain judgments and recover from Insurers while all the

---

[17] *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 157 (2021) (the automatic stay "benefits creditors **as a group** by preventing individual creditors from pursuing their own interests to the detriment of the others") (emphasis added).

[18] *See* footnote 8 above.

other claimants' claims remain stayed.[19] Issuance of a stay will certainly not harm those 500+ claimants, whose cases are not proceeding in any event, whether or not a stay pending appeal is issued.

Another party whose interests are impaired by the Text Order, particularly the Court's waiver of the 14-day stay of Rule 4001(a)(4), is the District Court. The purpose of Rule 4001(a)(4) and the various other 14-day stay provisions in the Bankruptcy Rules is to permit orderly processing of appeals, including to give appellants, bankruptcy courts, and district courts time to process motions for stay pending appeal brought under Bankruptcy Rule 8007. As the bankruptcy court in *AIO US, Inc.* recently explained, in declining to waive the 14-day stays imposed by Bankruptcy Rules 3020(e) and 6004(h):

> Those rules operate primarily as a courtesy to the district court. In the event that a party seeks a stay pending appeal of this Court's confirmation order, these rules are intended to provide the district court (assuming a motion for a stay pending appeal is filed promptly) some time to consider the merits of the motion for a stay pending appeal before a plan is consummated. For that reason, this Court would only be prepared waive that period if no party in interest intended to seek a stay pending appeal.[20]

The Motion makes no attempt to explain why the ordinary procedures put in place by the drafters of the Rules should be jettisoned in connection with the Motion. Most particularly, Debtor has not explained what harm, if any, would befall it if the ordinary 14-day period in Rule 4001(a)(4) were respected here. And the Text Order likewise does not state why it is appropriate here to waive the 14-day stay.

In the *Diocese of Santa Rosa* case, Judge Novack recently stayed the effective date of a similar lift-stay order for 30 days to permit the debtor and the insurers to arrange for the defense of three lawsuits for which the court was lifting the automatic stay.[21] Such a delay is also

---

[19] The Text Order observed that no claimants whose cases would remain stayed objected to the proposed relief, but there is no evidence that any of them (as opposed to their counsel) had notice of the proposed relief.

[20] *In re AIO US, Inc.*, Dkt. No. 1442 at 70, Case No. 24-11836-CTG (Bankr. D. Del. Aug. 21, 2025).

[21] *See Order on Debtor's Motion to Approve Stipulation Modifying the Automatic Stay*, Dkt. No. 1480, ¶ 5. *In re Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113 (Bankr. N.D. Cal. Aug. 26, 2025) ("This Order is effective 30 days from the date it is entered on the docket"). *See also Insurers' Supplemental*

(continued…)

appropriate here, to avoid prejudicing the defense of the Five Cases. This Court itself recognized earlier in this case that delaying the effective date of a lift-stay order to avoid undue prejudice is warranted; the same is true here.[22]

D. **Whether issuance of a stay pending appeal will result in harm to the general public**

This factor does not seem directly appropriate here. But to the extent the general public (including parishioners of the Archdiocese and claimants in this case whose cases remain stayed) have an interest in seeing an earlier consensual resolution of this bankruptcy case through mediation, anything that threatens to impair or delay the mediation process is a negative because it will delay progress toward a confirmed plan.[23] Here, as the *Syracuse* court noted, allowing a handful of claims to proceed will impede the mediation effort, not promote it. That case fully resolved on a consensual basis without the stay being lifted to allow any abuse claims to proceed in the tort system.

**Conclusion**

For the reasons stated above, the Court should issue a stay pending appeal. Doing so is necessary to protect the Insurers' rights and the defense of the Five Cases, and will not harm any other parties to this case or the general public.

At a minimum, the Court should stay its order for 14 days, as contemplated by Rule 4001(a)(4), to maintain the status quo so that the District Court can consider an application

---

*Statement*, Dkt. No. 1477 at 2-3, *In re The Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113 (Bankr. N.D. Cal. Aug. 24, 2025) (explaining why time was needed to stand up the defense of the cases released from stay).

[22] *See Order Approving Stipulation to Withdraw Without Prejudice the Motion of Certain Insurers for Relief from Automatic Stay to Permit California Coverage Action to Continue*, Dkt. No. 453 (when this Court lifted the stay last April in response to the Committee's motion to lift stay for just two cases, the Court made its lift-stay order effective after a "brief pause" of 2-½ months, "to allow more time for ongoing mediation").

[23] Debtor has repeatedly noted that diocesan bankruptcy cases are resolved through mediations. *See, e.g.*, *Debtor's Status Conference Statement for September 4, 2025 Status Conference*, Dkt. No. 1318, ¶ 3 (in "all" of the diocesan bankruptcy cases that have resulted in confirmed plans, "the terms of a consensual reorganization plan were reached following a mediation process in which the debtor, non-debtor entities, insurers and the creditors' committee representing the interests of survivors of sexual abuse participated").

- 9 -

for a stay pending appeal under Bankruptcy Rule 8007(b), if this Court does not issue the stay requested herein.

DATED: September 16, 2025

Respectfully submitted,

By:    /s/ *Mark D. Plevin*
Mark D. Plevin (State Bar No. 146278)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (202) 580-6640
Email: mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20004
Telephone: (202) 5809-6640
Email: mturner@plevinturner.com, jhess@plevinturner.com

Alexander Potente (State Bar No. 208240)
Jason J. Chorley (State Bar No. 263225)
CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800
Email: alex.potente@clydeco.us, jason.chorley@clydeco.us

*Attorneys for Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America), Pacific Indemnity Company, and Westchester Fire Insurance Company (as successor in interest to Industrial Underwriters Insurance Company for policies JU835-8355 and JU895-0964)*

Catalina J. Sugayan
Michael Norton
Yongli Yang
CLYDE & CO US LLP
30 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 635-7000
Email: Catalina.Sugayan@clydeco.us, Michael Norton@clydeco.us, Yongli.Yang@clydeco.us

Russell W. Roten
Jeff D. Kahane
Nathan Reinhardt
Timothy Evanston

- 10 -

SKARZYNSKI MARICK & BLACK LLP
633 West Fifth Street, 26th Floor
Los Angeles, California 90071
Telephone: (213) 721-0650
Email: jkahane@skarzynski.com,
rroten@skarzynski.com,
nreinhardt@skarzynski.com,
tevanston@skarzynski.com

*Attorneys for Certain Underwriters at Lloyd's London and Certain London Market Companies*[24]

Mark D. Plevin (State Bar No. 146278)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (202) 580-6640
Email: mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20004
Telephone: (202) 5809-6640
Email: mturner@plevinturner.com,
jhess@plevinturner.com

*Attorneys for Continental Casualty Company*

Joshua Haevernick (State Bar No. 308380)
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
Telephone: (415) 882-5000
Email: joshua.haevernick@dentons.com

Patrick C. Maxcy (admitted *pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
Email: patrick.maxcy@dentons.com

Andrew D. Telles Wyatt (State Bar No. 316740)
DENTONS US LLP

---

[24] London Market Insurers are Certain Underwriters at Lloyd's, London; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.); the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited); River Thames Insurance Company Limited; Dominion Insurance Company Limited; Companhia de Seguros Fidelidade-Mundial f/k/a Fidelidade Insurance Company of Lisbon; and R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.).

| | |
|---|---|
| 1 | |
| 2 | 4675 MacArthur Court, Suite 1250<br>Newport Beach, California 92660<br>Telephone: (949) 732-3700<br>Email: andrew.wyatt@dentons.com |
| 3 | |
| 4 | *Attorneys for St. Paul Fire and Marine Insurance Company and Travelers Casualty and Surety Company* |