Paul J. Pascuzzi, State Bar No. 148810
Jason E. Rios, State Bar No. 190086
Thomas R. Phinney, State Bar No. 159435
Mikayla E. Kutsuris, State Bar No. 339777
FELDERSTEIN FITZGERALD
    WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Telephone:      (916) 329-7400
Facsimile:       (916) 329-7435
Email:            ppascuzzi@ffwplaw.com
                      jrios@ffwplaw.com
                      tphinney@ffwplaw.com
                      mkutsuris@ffwplaw.com

Ori Katz, State Bar No. 209561
Alan H. Martin, State Bar No. 132301
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:      (415) 434-9100
Facsimile:       (415) 434-3947
Email:            okatz@sheppardmullin.com
                      amartin@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop of
San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and<br>Debtor in Possession. | Case No. 23-30564<br><br>Chapter 11<br><br>[No Hearing Set]<br><br>Judge:     Hon. Dennis Montali |

**OPPOSITION TO INSURERS' MOTION FOR STAY PENDING APPEAL**

The Roman Catholic Archbishop of San Francisco, the debtor and debtor in possession herein (the "Debtor" or "RCASF"), hereby files this opposition to the *Insurers' Motion for Stay Pending Appeal* [ECF No. 1342] (the "Stay Motion").

## I. PRELIMINARY STATEMENT AND BACKGROUND

RCASF has been in bankruptcy for over two years since its voluntary petition for relief was filed August 21, 2023. From the outset of this chapter 11 case, RCASF has worked diligently to seek a negotiated pot plan of reorganization as early as possible which will: (a) allocate the RCASF's remaining assets fairly among the legitimate competing interests for such property; (b) provide a process to fully, fairly and expeditiously liquidate claims of abuse survivors; and (c) permit the RCASF to carry on the RCASF's essential ministries and services so the RCASF can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCASF's ministry, education, and charitable outreach.

On July 15, 2024, this Court entered its Order Referring Case to Mediation and Appointing Mediator [ECF No. 747] appointing the Hon. Daniel J. Buckley (Ret.), Timothy V.P. Gallagher, and the Hon. Christopher S. Sontchi (Ret.) as mediators (collectively, the "Mediators"). The Debtor has been and continues to work towards the steps that have been successful in other Catholic Diocese cases for a productive mediation. This includes exchanging information among the Debtor, Committee, insurers, and related parties; the Debtor and the Committee working together on the abuse claims noticing and filing procedures (approved by court order at ECF No. 337); determining a course to stay the litigation against co-defendants, additional insured parties, and potential contributors to a reorganization plan settlement; selection and appointment of an unknown claims representative; selection of the Mediators; and mediation. The Debtor has participated in five in-person mediation sessions with other mediation sessions scheduled over the next several months. The results of the mediation typically form the basis for the chapter 11 plan of reorganization.

Notwithstanding the progress that has been made in this case and the mediation, the plaintiffs in the pending Affiliate State Court Actions[1] sought to prosecute those actions against the Non-Debtor Affiliates. As reported from the outset of this case, there were 537 state court actions pending against the Debtor when this case was filed, at least 39 of which include claims against the

---

[1] Capitalized terms not defined herein shall have the meaning as defined in the Stipulation referenced below and filed as part of Exhibit A to the Relief from Stay Motion (defined below).

2

CASE NO. 23-30564
OPP'N INSURER'S MOTION FOR STAY
PENDING APPEAL

Case: 23-30564    Doc# 1368    Filed: 09/30/25    Entered: 09/30/25 13:15:58    Page 2 of 10

Non-Debtor Affiliates who are co-insureds under the Debtor's insurance policies. The Debtor believes that continued litigation across these dozens of cases would impair its assets (the insurance policies) and its ability to achieve a timely and successful negotiated plan. Therefore, as part of the Debtor's efforts to make progress in the mediation and this case, on April 28, 2025, the Debtor initiated Adversary Proceeding No. 25-03019 (the "Adversary Proceeding") by filing a complaint for declaratory and injunctive relief that seeks to prevent all of the Affiliate State Court Actions from proceeding for the duration of the Debtor's Bankruptcy Case. [Adv. Pro. ECF No. 1]. On May 29, 2025, the Debtor filed the *Motion for Order Extending Stay to All State Court Cases in Which Debtor and/or Nondebtor Affiliate are Named as Defendants Under Bankruptcy Code Sections 105(a) and 362* along with supporting declarations and exhibits [Adv. Pro. ECF No. 8, 8-1, 8-2, 8-3, 9, 10, 12] (the "Injunction Motion"), seeking both a declaration that the automatic stay extends to all Affiliate State Court Actions and, in the alternative, an injunction that would prevent all Affiliate State Court Actions from proceeding for the duration of the Debtor's Bankruptcy Case.

In order to resolve the Injunction Motion, the Debtor, Committee, and the Survivor Defendants (as defined in the Stipulation) entered into the Stipulation [Adv. Pro. ECF No. 21, ECF No. 1285-1] that was approved by the Court's order that is now the subject of the Insurers' pending appeal (the "Stipulated Order," ECF No. 1346). Generally, the Stipulation provides that (i) except as to the five Released State Court Actions, all pending Affiliate State Court Actions shall be enjoined, (ii) the five Released State Court Actions may proceed to trial, (iii) the Survivors may make written settlement demands on the Debtor and any non-Debtor defendant(s) and request that the Debtor and any non-Debtor defendant(s) tender those demands on their respective insurers and request that the insurers pay those demands. This Stipulation strikes a careful balance by allowing the five Released State Court Actions to proceed to trial, while otherwise preserving the status quo in the dozens of other pending Affiliate State Court Actions to allow the Debtor, the Non-Debtor Affiliates, the Committee, and the Insurers to focus their efforts and resources on the continuing mediation towards a plan of reorganization.

Movants (collectively, the "Insurers") ask this Court to simply put all of this on hold while they pursue an appeal of the Stipulated Order granting Debtor's *Motion to Approve Compromise*

3

Case: 23-30564    Doc# 1368    Filed: 09/30/25    Entered: 09/30/25 13:15:58    Page 3 of 10

*and Stipulation Modifying the Automatic Stay* (the "Compromise and Relief from Stay Motion," ECF 1285). That appeal will likely take months (perhaps years) to progress through the District Court and the Ninth Circuit Court of Appeals. The impact of such a lengthy stay on the Debtor's ability to reach a compromise through the mediation and a plan of reorganization would be significant. Were the Stipulated Order and the underlying compromise of the Stipulation stayed, the Debtor would continue to be embroiled in the litigation of the Adversary Proceeding and the Injunction Motion thereby putting the Debtor and the Debtor's efforts to keep the focus and resources of the Debtor and the Non-Debtor Affiliates on the mediation at risk.

Yet to justify their purported need to stay the implementation of the Order, the Insurers submit no evidence that they will suffer some grave and irreparable harm. Indeed, the Insurers did not submit any evidence at all in support of their Motion. This showing is so half-hearted that one wonders whether the purpose of their Motion is not actually to obtain a stay, but rather simply to satisfy their "burden *to seek* a stay if post-appeal transactions could render the appeal moot." *In re Gotcha Int'l L.P.*, 311 B.R. 250, 255 (B.A.P. 9th Cir. 2004) (emphasis added) (citing *In re Filtercorp, Inc.*, 163 F.3d 570, 576-577 (9th Cir. 1998)). Whether the Insurers' perfunctory Motion sufficiently checks this box is a question for another day and another court. But it comes nowhere close to justifying a stay that would forestall the Debtor's attempt to emerge from bankruptcy while the Insurers continue to litigate their challenge to the Order on appeal and while the Debtor would be left to continue litigation of the Adversary Proceeding and the Injunction Motion instead of pursuing mediation. The Insurers' Motion should therefore be denied.

## II. STANDARD GOVERNING THE INSURERS' MOTION

Generally, "[a] stay is not a matter of right …. It is instead an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted). That discretion is guided by four factors, which mirror in large part the traditional standard that applies to a motion for preliminary injunctive relief: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426; *In re Blixseth*, 509 B.R. 701, 705-06

(Bankr. D. Mont. 2014). The Insurers bear the burden on each and every one of these factors. *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012). "[F]ailure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion." *In re Irwin*, 338 B.R. 839, 843 (Bankr. E.D. Cal. 2006).

The Insurers correctly identify the four relevant factors at the outset of their Motion, but they misstate how they apply. The Insurers ask the Court to apply a "sliding-scale," test (Insurer Mot. at 1:6-7) and maintain that "a stronger showing of one element may offset a weaker showing of another." *Id*. (citing *In re Akhlaghpour*, 2018 WL 3357367 at *2, quoting All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011)*). That erroneous statement of the law is perhaps why the stay Motion is top heavy with discussion of the merits—based on hope that it will excuse the paltry showing on the other factors.

That strategy no longer holds any water. In *Winter v. Natural Res. Def. Council, Inc.*, "the Supreme Court definitively refuted [the Ninth Circuit's] 'possibility of irreparable injury' standard." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); *see Winter*, 555 U.S. 7, 22 (2008) ("[T]he Ninth Circuit's 'possibility' standard is too lenient."). In *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), the Ninth Circuit repeatedly explained that "[u]nder *Winter*, [movants] must establish that irreparable harm is *likely*, not just possible," *id.* at 1131. *See id.* at 1132; 1135.

In light of *Winter* and other Ninth Circuit authority post-*Winter*, the Insurers cannot skirt the requirement that they show a likelihood of irreparable harm. Their failure to do so is fatal to their Motion regardless of the showing on the other factors. And the stay Motion is also properly denied because of the inadequacy of their showing on those factors as well.

III. **THE INSURERS HAVE NOT DEMONSTRATED ENTITLEMENT TO A STAY PENDING APPEAL**

The Insurers devote most of their Motion to advancing the same legal arguments this Court has already carefully examined and rejected. Insurers' Mot. 2-7. This Court need not rehash the merits to resolve the Insurers' Motion because the Insurers have mustered next to nothing on the other three relevant factors. First, the Insurers have completely failed to show that it is likely that

5

they will be irreparably harmed absent a stay. Second, against the Insurers' non-existent showing of harm, the Debtor provided persuasive evidence of the harm that it and various constituencies risk suffering as a result of a lengthy delay in implementing the Stipulation in the record that supported the Compromise and Stay Relief Motion. And third, the Insurers have done nothing to refute the obvious public interest in the Debtor's emergence from bankruptcy. Each of these failures is a sufficient basis upon which to deny the Motion. The failure on all three renders the Motion completely without merit. If the Court does feel the need to dive back into the Insurer's likelihood of success on the merits, however, the Insurer's Motion plainly fails on that basis, too.

### A. The Insurers Have Not Demonstrated a Likelihood of Irreparable Harm

As explained above, the Insurers erroneously suggest that they may obtain a stay by showing something less than a likelihood of irreparable harm. *Winter* and a host of Ninth Circuit authority hold directly to the contrary. No stay can issue unless the Insurers show that irreparable harm is likely. *Winter*, 555 U.S. at 22; *Stormans, Inc.*, 586 F.3d at 1127; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32, 35; *Am. Trucking*, 559 F.3d at 1052. The Insurers' asserted harm is illusory, and they did not produce any evidence to satisfy this standard.

The Insurers simply invoke the possibility that they may be compelled to perform their contractual duties to defend five of several hundred cases. First, the Insurers fail to explain how their being called to perform their duties under their insurance policies constitutes irreparable harm. Second, if the stay requested by the Insurers is granted, the Non-Debtor Affiliates will be put at risk of dozens of Affiliate State Court Actions going forward, not just the five actions allowed by the Stipulation and Order. The Insurers fail to explain how only five actions proceeding to trial is an irreparable harm compared to dozens of actions going forward.[2] Third, the Supreme Court has squarely held that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24

---

[2] The Debtor and Insurers are meeting and conferring over the selection of defense counsel for the Released Cases.

Case: 23-30564    Doc# 1368    Filed: 09/30/25    Entered: 09/30/25 13:15:58    Page 6 of 10

(1974). "[T]ime and expenses due to litigation are not enough." *Bakersfield City School Dist. v. Boyer*, 610 F.2d 621, 626 (9th Cir. 1979).

It was the Insurers' burden to show that they will likely suffer irreparable harm if a stay is not granted, *Lair*, 697 F.3d at 1203, and they have not carried that burden. Thus, under *Winter*, their Motion must be denied.

### B. A Stay Would Inflict Serious Harm on the Debtor and Other Interested Parties

The Motion must also be denied because "issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 426. The Insurers wrongly argue that issuance of a stay pending appeal will not harm any of the other parties to this case as it will simply preserve the *status quo ante*. Insurers Mot. 7:10-11. This argument blithely ignores that the *status quo ante* is (i) the Debtor engaged in protracted litigation in the Adversary Proceeding, and (ii) the plaintiffs in the Affiliate State Court Actions seeking to proceed with dozens of lawsuits against the Non-Debtor Affiliates. These actions are diverting time, energy, and resources from the mediation and a global resolution in this case that will allow the Debtor to proceed to a confirmation of a Plan.

As explained in the Injunction Motion and its supporting evidence, proceeding with the dozens of lawsuits against the Non-Debtor Affiliates puts the entire bankruptcy case and the ultimate recovery of the estate's creditors at risk of delay and impaired recovery. Further litigation in the Adversary Proceeding will result in significant administrative expenses that must be paid before general unsecured creditors and further state court litigation against the Non-Debtor Affiliates would adversely affect any contribution that they might otherwise provide to a plan. The Debtor has already spent two years diligently seeking a resolution in this case, and the Stipulation was entered as a compromise to help advance the mediation process and maximize the amount of funds that can be available to creditors in this case. Thus, if a stay pending appeal were granted, the Debtor's mediation efforts, plan completion and hundreds of creditors would suffer.

### C. The Public Interest Supports Denial of a Stay

For similar reasons, the public interest cuts decidedly against a stay. The Insurers cannot overcome this fact. The purpose of chapter 11 is to permit a debtor in financial distress to adjust its debts and emerge from bankruptcy. The sooner the Debtor can get a plan of reorganization

Case: 23-30564    Doc# 1368    Filed: 09/30/25    Entered: 09/30/25 13:15:58    Page 7 of 10

confirmed, the sooner the Debtor can provide compensation to the Survivors and the sooner the Debtor can return to focusing on meeting the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCASF's ministry, education, and charitable outreach.

The Insurers seek to avoid this basic truth by wrongly asserting that the Stipulation and Court's Order threaten to impair or delay the mediation. This argument simply misses the mark. As explained above, the primary purpose and effect of the Stipulation is to move the mediation forward and help the Debtor get to a confirmed plan. When the Insurers' weak claim of injury is stacked up against the near certain damage that a lengthy stay pending appeal will cause the Debtor, the Survivors, and the public, this is not even a close case.

### D. The Insurers' Appeal Is Unlikely to Succeed on the Merits

Finally, the Insurers have little chance of succeeding on the merits. Their arguments are no more compelling than when they failed to persuade the Court in opposition to the Relief from Stay Motion[3].

First, the Insurers begin their argument on the merits with an assertion that the Stipulated Order is not supported by any admissible evidence by attempting to characterize the Fr. Summerhays Declaration [ECF No. 1288] as conclusory. However, the Insurers inexplicably ignore the incorporation into the record in support of the Compromise and Relief From Stay Motion of all of the underlying pleadings, argument and evidence on the Injunction Motion (See Request for Judicial Notice ECF No. 1287) and the Stipulation itself submitted as part of Exhibit A to the Relief from Stay Motion [ECF No. 1285-1].[4] The Injunction Motion and underlying pleadings, including

---

[3] The standard of review for the Bankruptcy Court's Order granting relief from stay is for abuse of discretion. *In re Veal*, 449 B.R. 542, 2011(9th Cir. BAP June 10, 2011); *In re Kronemyer*, 405 B.R. 915, 919 (9th Cir. BAP 2009). Similarly, the bankruptcy court's decision to approve a compromise is reviewed for abuse of discretion. *In re A & C Props.*, 784 F.2d 1377, 1380 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986); *In re MGS Mktg.*, 111 B.R. 264, 266-67 (9th Cir. BAP 1990). However, regardless of what standard of review is applied, the Insurers' challenges are unlikely to succeed under any standard of review.

[4] The Insurers' objection to the admissibility of the Declaration of Fr. Summerhays in support of the Compromise and Relief from Stay Motion on the grounds that it contained "legal conclusions and offers improper lay opinions" were similarly weak. This Court and any court can tell the difference between facts and legal conclusions and consider lay opinion as appropriate.

8

CASE NO. 23-30564
OPP. TO INSURERS' MOTION FOR STAY
PENDING APPEAL

Case: 23-30564   Doc# 1368   Filed: 09/30/25   Entered: 09/30/25 13:15:58   Page 8 of 10

substantial evidence of the insurance situation, demonstrate to the Court that the compromise was fair and equitable, in the best interests of the estate, and reasonable under Federal Rule of Bankruptcy Procedure 9019 and further demonstrate that cause existed to grant relief from the automatic stay to implement the Stipulation.

As noted above, Stipulation strikes a careful balance among the interests of the Debtor's estate in preserving insurance and other resources in enjoining the dozens of Affiliate State Court Actions, on the one hand, and the interests of the Committee and the Survivors in allowing a small number (five) of Survivor Actions to proceed to trial. The Stipulation protects the Debtor's estate from any enforcement remedies for any judgments that might be entered against the Debtor in those five actions by lifting the stay for the five Survivor actions to be litigated and tried to judgment only. As further noted above, this Stipulation puts to rest the Adversary Proceeding and the Injunction Motion, which have been heavily litigated and would otherwise detract from the resolution of this case through the mediation. The Insurers' lead argument of lack of evidence supporting the Stipulated Order does not hold water.

The Insurers further assert that the Stipulated Order should be overturned because the Insurers attempt to cast some of the Court's findings, *e.g.* that the OCC did not unilaterally select the test cases, as unsupported by "a single shred" of evidence. (Insurers' Mot. 3:14-15.) Once again, the Insurers ignore the Stipulation submitted as part of Exhibit A to the Compromise and Relief from Stay Motion, which was approved by the Stipulated Order. That Stipulation includes the Released Cases identified as Exhibit C. The Committee did not unilaterally enter the Stipulation with itself. As noted above, the Stipulation had the Debtor, the Committee and the Survivors as parties. Thus, the Insurers criticism of the Court's findings as unsupported by evidence is based upon the Insurers' ignoring the actual evidence submitted in support of the Compromise and Relief from Stay Motion and will not prevail on appeal.

Moreover, these evidentiary complaints, and Insurers' assertion that the Court did "not fully apprehend" the potential impact of the demand letters that would be allowed by the Stipulated Order on the Insurers (Insurers' Mot. 4:17-20), do not provide a basis for an appellate court to reverse the Stipulated Order as an abuse of discretion. As the Insurers acknowledge, the Stipulated Order states

Case: 23-30564    Doc# 1368    Filed: 09/30/25    Entered: 09/30/25 13:15:58    Page 9 of 10

the Court's evaluation of the evidence and finding that the Insurers cannot be surprised or harmed by the order. Thus, the Court did take the potential impact of the Stipulated Order on the Insurers into consideration. The Insurers provide no evidence in taking the presumptuous position that the Court did not understand the Insurers' opposition to the Motion or that the Court abused its discretion in weighing the balance of interests. Even if an appellate court were to assume that the Insurers being asked to perform their contractual duties to perform under their insurance policies constitutes harm, there is no basis for that appellate court to find that this Court abused its discretion in weighing the interest advanced by the Stipulation and the Stipulated Order as being more beneficial to the Debtor's estate and the parties in interest.

Finally, the Insurers object to the Court's management of its docket by complaining that the Court decided the Motion without oral argument or a sur-reply brief from the Insurers in response to the reply brief submitted by the Debtor and the Committee in response to the Insurers' opposition. This argument also will fail on appeal. There is no requirement that the Court hold oral argument or provide a party opposing a motion with a second opportunity to object to the motion after the movant's reply brief. The Court has the discretion to manage its own docket, and no appellate court is going to find an abuse of discretion in the Court's entry of its order after briefing by the Debtor, the Committee, and the Insurers.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny the Insurers' Motion to stay the Stipulated Order pending the Insurers' appeal.

Dated: September 30, 2025

FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By: */s/ Paul J. Pascuzzi*
Paul J. Pascuzzi
Jason E. Rios
Thomas R. Phinney
Mikayla E. Kutsuris
Attorneys for The Roman Catholic Archbishop of San Francisco