

**Signed and Filed: October 9, 2025**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 23-30564-DM |
| THE ROMAN CATHOLIC ARCHBISHOP | ) |
| OF SAN FRANCISCO, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**ORDER DENYING MOTION FOR STAY PENDING APPEAL**

**I.**  **Background**

Like nearly all Catholic diocesan cases that have been filed before and after this one, The Roman Catholic Archbishop of San Francisco ("Debtor") filed bankruptcy to manage the hundreds of lawsuits alleging child sexual abuse by clergy members. Those lawsuits were commenced after state law extended the statute of limitations to pursue such claims.[1] Some of those cases were on the eve of trial when this bankruptcy was filed. (See, e.g., Declaration of Joseph J. Passarello in Support of

---

[1] In California, the relevant law is AB 218.

-1-

Chapter 11 Petition and Debtor's Emergency Motions, Dkt. 14, paras. 8-11).

The Debtor acknowledged from the outset of this bankruptcy that active engagement with a creditors' committee comprised of abuse survivors would be necessary to forming a successful reorganization plan. (Id. at para. 11). To this end, the court entered an Order Referring Case to Mediation and Appointing Mediator (Dkt. 747) and appointed three highly qualified mediators to assist in brokering a resolution.

For the two years this case has been pending, and the year this case has been in mediation, insurers who otherwise would have had to defend (and potentially provide payment to successful survivor claimants) hundreds of state court cases filed against the Debtor have benefited from the Debtor's automatic stay. The court is aware that this automatic stay represents potentially large savings to those insurers.[2] Meanwhile, the Debtor has spent more than seven million dollars on legal fees through August 2025 (Dkt. 1356) with more fees accruing every day, with no end to mediation in sight and no money having reached the pockets of the more than 500 abuse survivors whose lawsuits precipitated this case.

There have been some signals to the court that mediation was not progressing towards a consensual resolution, in the form

---

[2] It is a broadly accepted concept that "money is worth more today than the same nominal amount in the future because that money could be put to use by its owner in the meantime." *United States SEC. v. Barry*, 146 F.4th 1242, 1263 (9th Cir. 2025) (citing Cong. Budget Off., H*ow CBO Uses Discount Rates to Estimate the Present Value of Future Costs or Savings* (2024)).

Case: 23-30564   Doc# 1392   Filed: 10/09/25   Entered: 10/09/25 16:44:48   Page 2 of 9

of Adversary Proceeding Nos. 25-3019 and 25-3021.[3] The first of those two proceedings is relevant here, in which the Debtor sought to extend the automatic stay to non-Debtor affiliates that were named as defendants or co-defendants in thirty-nine pending state court cases filed by abuse survivor claimants.[4]

Rather than continue with the expense and risk of litigation, the Debtor filed a Compromise and Stipulation Modifying the Automatic Stay ("Stipulation") (Dkt. 1285). This Stipulation between the Debtor, the Official Committee of Unsecured Creditors ("Committee"), and the Survivor Defendants (as defined in the Stipulation) agreed to modify the automatic stay and allow five pending state court actions filed by survivors of clergy abuse against the Debtor and/or its affiliates to proceed to finality, while leveling the playing field for all survivor claimants by allowing any survivor claimant to make a written settlement demand on the Debtor or non-Debtor defendant, who would then tender those demands to their respective insurers for review. The court approved the Stipulation over the objection of a group of insurers ("Insurers") (Docket Text Order entered September 2, 2025; Order

---

[3] A third adversary proceeding, A.P. No. 25-03070, was filed while this matter was pending. The new matter is filed by a certain insurer against the Debtor raising coverage issues. While different, it underscores the apparent never-ending expensive litigation plaguing this and other religious abuse cases.

[4] The latter Adversary Proceeding seeks a finding that the non-Debtor affiliates that are party to the state court cases (among other non-defendant affiliates) are a part of the Debtor and thus the Debtor's bankruptcy estate.

-3-

Granting Debtor's Motion To Approve Compromise and Stipulation Modifying the Automatic Stay (Dkt. 1346)).

The Insurers appealed the approval and filed a Motion for Stay Pending Appeal ("Motion") (Dkt. 1342). The court has considered the Motion, and the Oppositions which were timely filed by the Committee (Dkt. 1363) and Debtor (Dkt. 1368). The court determines that no hearing on the matter is necessary and DENIES the Motion.

## II. Discussion

A court may grant a stay pending appeal at its discretion upon the weighing of four, non-equal factors. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Those factors are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Courts should weigh the first two factors more heavily than the latter two, and a showing of irreparable harm must be more than a mere possibility. *Id.*

The Insurers are not likely to succeed on the merits of the appeal. The court has already considered the merits of their argument in the form of the Objection (Dkt. 1302) to the Stipulation, which the court overruled when it approved the Stipulation. Additionally, while the September 2, 2025 Docket Text Order referred to the five cases that will proceed in state court pursuant to the Stipulation as "test cases," the parties

did not do so. There was no burden for the Debtor or Committee to show that these cases were representative of most other lawsuits. This was a compromise to allow only five cases, as opposed to thirty-nine, proceed to trial against the Debtor's and its affiliates' wishes. The Stipulation was entered into on the basis that this compromise is less expensive than litigating the Adversary Proceeding to completion and will lead to more fruitful mediation discussions, and the court agrees. The possibility that the court would deny Debtor's stay request and allow all thirty-nine cases to go to trial loomed large and would have resulted in much greater expense to the Insurers than what they complain of now. Argument that the court wrongly accepted Fr. Summerhays' Declaration (Dkt. 1288) over evidentiary objections is also unlikely to succeed at the appellate level. Despite protestations that the court allowed conclusory statements to lead to factual conclusions, it did not do so. As the Debtor notes, "this court and any court can tell the difference between facts and legal conclusions and consider lay opinions as appropriate." (Dkt. 1368 at fn. 4). Likewise, argument that the Insurers' rights were cut off by the court taking the matter off calendar and issuing a ruling after all papers had been filed is baseless. The Insurers, as objecting parties to a motion, were not entitled to file a reply, and any oral argument at a hearing would have been extraneous. An objecting party does not get multiple procedural bites at the apple, while a movant has an opportunity to respond to objections. The court also notes that the Insurers did not request permission to file a sur-reply, which would have put the

court on notice that there may have been further, and hopefully relevant and new, arguments to be made by the Insurers.

Second, the Insurers will not be irreparably injured absent a stay. "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974). That the Insurers now, after two years of benefiting from the Debtor's automatic stay, may have to perform some of their contractual obligations regarding a smaller number of lawsuits than they would have otherwise had to if the Debtor lost its request for injunctive relief is not an injury. The Insurers will also not suffer harm by receiving settlement demands. There is no requirement that the Insurers pay those demands sight unseen, and to the extent the stay may need to be modified to evaluate those demands, the Insurers could seek such relief. It is more likely that stay relief would have been granted to all abuse claimants to make their demands on Debtor for the purposes of the Debtor then sending them on to the Insurers.

Third, other parties would indeed be injured by the granting of a stay pending appeal, including the Debtor, the Committee, and all survivor claimants (not just those whose cases may now proceed to trial). While the Insurers argue that a stay would merely result in a return to the status quo while their appeal worked its way through the appellate system, the status quo is simply no longer tenable. The court refuses to let this bankruptcy languish without a confirmable plan in sight for much longer, and a status quo that results in the same

standstill in mediation that seems apparent without this Stipulation, is a status quo that brings this case ever closer to dismissal, in which case the Insurers will face the many economic consequences in the form of litigation and settlement demands they currently seek to avoid.

Fourth, the public interest lies in favor of denial of a stay. "[P]ublic policy wisely encourages settlements," *McDermott, Inc. v. Amclyde*, 511 U.S. 202, 215 (1994), and the principle of compromise and settlement is built into the fabric of bankruptcy in the form of Fed. R. Bankr. P. 9019 and chapter 11 plans of reorganization, as almost all complex plans require rigorous negotiation to reach a confirmable consensual plan. After such compromise is reached, the "court's role in approving any settlement under Rule 9019 is limited. Rather than an exhaustive investigation or mini-trial on the merits, this court need only find that the settlement was negotiated in good faith and is reasonable, fair, and equitable." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417-18 (Bankr. N.D. Cal. 2004) (citing *Martin v. Kane (In re A & C Props.)*, 784, F.2d 1377, 1381 (9th Cir. 1986)). So long as the court evaluates the issues pursuant to what are widely known as the *A & C* factors, and the compromise falls within a range of reasonableness, it should be approved. *In re Pacific Gas & Elec. Co.*, 304 B.R. at 418 (internal citations removed). In this case, the stakes for the Debtor, its many parishioners, and the survivor claimants are so high that this compromise in the form of the Stipulation is an excellent result and may represent a significant step toward a confirmable reorganization plan.

-7-

Case: 23-30564    Doc# 1392    Filed: 10/09/25    Entered: 10/09/25 16:44:48    Page 7 of 9

### III. Conclusion

Accordingly, the Motion is DENIED. The Insurers' alternative request for the imposition of the 14-day stay pursuant to Fed. R. Bankr. P. 4001(a)(4) is also DENIED.

**END OF ORDER**

COURT SERVICE LIST

ECF Recipients