**Entered on Docket**
**August 17, 2026**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: August 17, 2026**

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor. | Bankruptcy Case No. 23-30564-DM<br><br>Chapter 11 |

**TENTATIVE RULING ON MOTION TO APPROVE FORM OF BALLOT AND RELATED MATTERS**

The court has reviewed The Roman Catholic Archbishop of San Francisco's Motion to Approve Form of Ballot and Related Procedures (Dkt. 1780) (the "Motion to Approve"), the Objection and Reservation of Rights of the United States Trustee to Debtor's Moton to Approve Form of Ballot and Related Procedures (Dkt. 1838) (the "Objection"), the Debtor's Reply to Objection and Reservation of Rights of the United States Trustee to Debtor's Moton to Approve Form of Ballot and Related Procedures (Dkt. 1875), the Official Committee of Unsecured Creditors' Joinder in Support of The Roman Catholic Archbishop of San Francisco's Motion to Approve Form of Ballot and Related

Procedures; Reply of the Official Committee of Unsecured Creditors' Joinder in Further Support of The Roman Catholic Archbishop of San Francisco's Motion to Approve Form of Ballot and Related Procedures (Dkts. 1782 & 1873), and the several joinders by other entities (Dkts. 1783, 1808, 1810, 1827, 1829, 1830, 1876-1877, 1881-1883).

**1. OPT-OUTS**

The use of an "opt-out" in this case is completely understandable and appropriate. The nature of the past conduct being dealt with, the scope and extent of the anticipated recoveries for survivors, the efforts of the parties and the mediators, the number of claimants, the notoriety of this case and other diocesan bankruptcies around the country, and the extensive and thorough explanation of the opt-out process in the Motion to Approve, the Ballot and other papers all support this approach.

More particularly, the arguments of the Debtor and the Official Committee of Unsecured Creditors are more persuasive than those of the United States Trustee. The issues presented are governed by the provisions of the Bankruptcy Code, especially Section 1123(b)(6), and not state contract law. Knowing and well-informed consent principles apply to opt-outs. The Purdue Pharma case, Ninth Circuit law, and this court's PG&E decision (admittedly involving opt-ins), are consistent with this approach. This is nothing like an unsolicited trap set for strangers to invoke arbitration or some other result. Safeguards here are much like those in Rule 23 class actions even if that rule is inapplicable. Finally, the joinder by

many others supports this outcome without objection from any party with actual interests at stake.

Tentatively the court will OVERRULE the Objection. If the United States Trustee does not accept this Tentative Ruling and wishes to be heard in opposition to the Motion to Approve at the hearing on August 20, 2026, at 1:30 PM, his counsel must file a statement to that effect no later than **4:00 PM on August 19, 2026.**

**2. SPECIFIC COMMENTS**

If the court adheres to the Tentative Ruling and GRANTS the Motion to Approve, counsel for the Debtor and the Official Committee of Unsecured Creditors, as proponents of the Joint Plan, are asked to consider the following.

In the Motion to Approve, at 9:7-8, the statement is made that the financial contributions from Participating Parties are "expressly conditioned on them obtaining releases from one-hundred percent of Survivors." This appears to be at odds with a statement in the Ballot for Accepting or Rejecting etc. (the "Ballot") at page 4, Item 3.1. There, the language reads that "The Protected Parties will contribute the money and insurance rights ONLY if enough Class 4 Claimants consent. . . ." It then concludes that if "too many Class 4 Abuse Claimants opt out granting them releases, a key condition of the Joint Plan may fail . . .." Clarification on this point is needed.

On page 2 of the first full paragraph (in bold), the ballot explains that if the Joint Plan becomes effective and ". . . you do not make the opt-out election on this ballot or you object to the Joint Plan . . . ." That language appears to



Case: 23-30564 Doc# 1886 Filed: 08/17/26 Entered: 08/17/26 16:40:12 Page 3 of 5

confuse voting to accept or reject with objecting to confirmation of a plan. That is a separate act that should be distinguished clearly from submitting a ballot to Accept or Reject the Joint Plan. The language should be revised to clarify this difference and to state separately that any party objecting to confirmation must file an objection, a separate document that is not dealt with by the Ballot.

Also on page 2 in the BACKGROUND section, the language in italics refers to a Disclosure Statement provided with the ballot and then refers to "both documents". In fact, there are three documents: the Disclosure Statement, the Joint Plan itself, and the Ballot. A clarification of this language is in order.

In the HOW THE JOINT PLAN GETS CONFIRMED section on page 2, the voting rules in Chapter 11 are slightly incomplete. The second sentence states that "[i]f more than half of the voting Class 4 Abuse Claims vote to "accept" the Joint Plan, the Court will give "Acceptance". It then goes on to say what could happen if the Plan is "not accepted by more than half of the voting [C]lass (sic)." This does not include the additional requirement of Bankruptcy Code Section 1126(c), requiring acceptance to include "at least two-thirds in amount" of creditors that have accepted. This correct statement of the voting rule should be added.

In the WHO SHOULD USE THIS BALLOT section on page 2, the language appears again that the Ballot is for the purpose of voting and to state whether the submitter opts out of the releases. It then goes on to say it is not for purposes of

allowance or disallowance of a claim. The court agrees and repeats the suggestion that this provision in the Ballot also note that it is not for purposes of objecting to confirmation.

Also in the WHO SHOULD USE THIS BALLOT section on page 2, the language regarding the voting deadline should be amended to "unless such time is extended by the RCASF **or by court order**." (Emphasis added to denote the court's addition).

On page 4 at the top, a box clearly directs that ballots may not be submitted by fax or email. It is appropriate to include the same highlighted warning on page 3 at the INSTRUCTIONS FOR COMPLETING THE BALLOT section.

On page 5, in the box designated for electing to opt-out, the instruction states "Check one box only:". But there is only one box. Contrast this provision with that on page 4, where there are two boxes and the instruction is to check only one. It is appropriate to clarify the instruction on page 5.

**END OF TENTATIVE RULING**



Case: 23-30564 Doc# 1886 Filed: 08/17/26 Entered: 08/17/26 16:40:12 Page 5 of 5